ETHAN P. DAVIS
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
KEVIN P. HANCOCK
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-3183
Fax: (202) 616-8470
E-mail: kevin.p.hancock@usdoj.gov

*Attorneys for the Federal Agency Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA,<br><br>        Plaintiffs,<br><br>     v.<br><br>WILLIAM BARR, Attorney General of the United States; TIMOTHY J. SHEA, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Department of Homeland Security; MARK A. MORGAN, Acting Commissioner of the U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Department of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY,<br><br>        Defendants. | No. 3:20-cv-3098-WHO<br><br><br>**FEDERAL AGENCY DEFENDANTS' MOTION TO STAY OR IN THE ALTERNATIVE TO ENLARGE TIME TO RESPOND TO THE COMPLAINT**<br><br>Date: September 9, 2020<br>Time: 2:00 pm<br>Place: Courtroom 2, 17th Floor<br>Honorable William H. Orrick |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 9, 2020, at 2:00 p.m. before the Honorable William H. Orrick, in Courtroom 2 of the 17th Floor of the Philip E. Burton Courthouse and Federal Building, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants William Barr, Attorney General of the United States; Timothy Shea,[1] Acting Administrator of the U.S. Drug Enforcement Administration ("DEA"); Chad Wolf, Acting Secretary of the Department of Homeland Security ("DHS"); Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); and the United States of America (collectively, the "Federal Agency Defendants"), by and through undersigned counsel, will move the Court to stay further proceedings in this case against the Federal Agency Defendants pending the Supreme Court's review of *Tanvir v. Tanzin*, 889 F.3d 72 (2d Cir. 2018), *cert. granted sub. nom*, *Tanzin v. Tanvir*, 140 S. Ct. 550 (Nov. 22, 2019), or in the alternative, to enlarge the Federal Agency Defendants' time to file a responsive pleading.  The Federal Agency Defendants respectfully request that the Court decide this motion on the papers submitted, without oral argument, pursuant to Civil L.R. 7-1(b).

### MOTION TO STAY OR IN THE ALTERNATIVE TO ENLARGE TIME TO RESPOND TO THE COMPLAINT

The Federal Agency Defendants hereby move to stay further proceedings against them in this case pending the Supreme Court's review of *Tanvir*, or in the alternative to enlarge the Federal Agency Defendants' time to file a responsive pleading.[2]  Should the Court grant the Federal Agency Defendants' requested stay, the Federal Agency Defendants further respectfully request that they be permitted, within two weeks of the Supreme Court's resolution of *Tanvir*, to file a status report indicating whether this case and all proceedings should continue to be held in

---

[1]     Plaintiffs named the DEA's former Acting Administrator Uttam Dhillon in his official capacity as a defendant, *see* ECF No. 1, but Dhillon was succeeded by Timothy J. Shea on May 19, 2020.  *See* https://www.dea.gov/press-releases/2020/05/19/attorney-general-barr-announces-timothy-j-shea-new-acting-administrator.  Under Federal Rule of Civil Procedure 25(d), Shea in his official capacity is "automatically substituted as a party" for Dhillon.

[2]     The Federal Agency Defendants further request that a stay in their favor be granted without prejudice to their ability, after the conclusion of a stay, to assert any available defenses under Federal Rule of Civil Procedure 12(b), including but not limited to lack of subject-matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

---

abeyance or proposing a schedule for continuing the litigation.  The reasons for this Motion are set forth in the following Memorandum of Points and Authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' complaint asserts claims under the Religious Freedom Restoration Act of 1993 ("RFRA") and the Administrative Procedure Act ("APA") against the United States and, in their official capacities, the most senior officials at DOJ, DEA, DHS, and CBP.  Those claims allege that the DEA has maintained an illegal policy of denying applications for religious exemptions under RFRA to the Controlled Substances Act ("CSA") filed by groups such as Plaintiffs, which allege that their members drink a tea containing a Schedule I controlled substance as part of their religious activities.

On the basis of closely related legal and factual allegations, Plaintiffs also assert a RFRA claim seeking monetary damages from Thomas Prevoznik ("DAA Prevoznik"), a Deputy Assistant Administrator of DEA's Diversion Control Division, in his individual capacity.  On July 15, 2020, DAA Prevoznik separately moved this Court for a stay of the RFRA claim against him pending the Supreme Court's review of *Tanvir*, which is scheduled for argument on October 6, 2020 and which squarely presents the issue of whether RFRA authorizes suits seeking money damages against individual federal employees.

If the Court stays the RFRA claim against DAA Prevoznik pending the Supreme Court's ruling in *Tanvir*, the Court should also extend that stay to all claims against the Federal Agency Defendants.  Four reasons support that conclusion.

First, a stay would allow the DEA to make substantial progress on, if not conclude, a rulemaking currently underway that would moot Plaintiffs' RFRA and APA claims by replacing the religious-exemption application process being challenged here.

Second, the requested stay would also allow the parties and the Court to avoid piecemeal litigation of the intertwined RFRA and APA claims in this case, preventing the duplication of effort and waste of resources that would result if two rounds of discovery and dispositive briefing were required for these substantially identical claims.

Third, the stay would prevent hardship and injury to DAA Prevoznik by ensuring that, during the pendency of any stay he might be granted, he would not be burdened by litigation against the Federal Agency Defendants that might affect his interests, as he is entitled to seek qualified immunity, which is designed to shield government officials from such burdens.

Finally, the requested stay would cause no harm to Plaintiffs, especially given that they have never filed a petition for a religious-exemption with the DEA and thus have not been affected by the process they challenge as violating RFRA and the APA.

Counsel for Plaintiffs has stated that Plaintiffs will oppose this motion to stay.

**BACKGROUND**

**I.     Statutory and Regulatory Background**

The Controlled Substances Act ("CSA"), regulates the importation, manufacture, distribution, and use of psychotropic substances.  21 U.S.C. § 801 *et seq.* (2000 ed. and Suppl. I).  "Schedule I" substances under the CSA are those that have the highest potential for abuse and which are therefore subject to the most comprehensive restrictions, including a ban on nearly all importation and use.  The CSA grants the Attorney General the power to register an applicant to import, distribute, or manufacture a Schedule I controlled substance so long as doing so is consistent with the public interest.  *Id.* § 823(b).  The Attorney General has delegated its registration authority to the DEA, whose Office of Diversion Control reviews registration applications.  *See* 21 C.F.R. § 1301.31.

RFRA provides that the federal government may not substantially burden a person's sincere exercise of religion, unless doing so is the least restrictive means of advancing a compelling interest.  42 U.S.C. § 2000bb–1(b).  To establish a *prima facie* violation of RFRA, a plaintiff must present sufficient evidence to allow a trier of fact to rationally find that the plaintiff's activities are a sincere "exercise of religion" and that the Government action "substantially burdens" the plaintiff's exercise of religion.  *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1068-69 (9th Cir. 2008).

In 2006, the Supreme Court held that government action taken pursuant to the CSA is subject to RFRA.  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418,

432-33 (2006).  After a subsequent increase in requests for religious exemptions from the CSA, the DEA publicly issued guidelines in 2009 to serve as an "interim measure intended to provide guidance to parties who wish to petition [the DEA] for a religious exemption to the CSA" (the "2009 Guidance").[3]  The 2009 Guidance directs a petitioner to provide information demonstrating that the application of the CSA to its activities would "(1) be a substantial burden on (2) his/her sincere (3) religious exercise," and information detailing the petitioner's planned use and handling of the controlled substance.  *Id.*  Following review of a religious exemption petition, the DEA's Deputy Assistant Administrator of Diversion Control Division (currently, DAA Prevoznik) issues a written final determination granting or denying the petition.  *Id.*  That determination is a final agency decision subject to judicial review in a United States Court of Appeals.  21 U.S.C. § 877.

The DEA is currently updating and revising its regulations implementing the CSA for the purpose of describing the procedures by which the DEA will evaluate applications for religious exemptions under RFRA.  *See* Ex. A (Decl. of Scott A. Brinks ("Brinks Decl.") ¶¶ 4-6).  When implemented, these revised regulations would supersede the 2009 Guidance.  *Id.* ¶ 5.  Once a draft regulation replacing the 2009 Guidance is approved by the DEA, the agency must then submit that draft to the Department of Justice's Office of Legal Policy and the Office of Management and Budget for regulatory review.  *Id.* ¶ 6.  While subject to extension under some circumstances, the period for OMB Office of Information and Regulatory Affairs (OIRA) review of a draft regulation is limited under Executive Order 12866 to 90 days.  *Id.*  Following DOJ and OMB review, the DEA expects to publish a Notice of Proposed Rulemaking ("NPRM") in the Federal Register to obtain the views of the regulated community and the public at large.  *Id.* ¶ 7.  By the NPRM, DEA will open a public comment period, likely of 60 days, in accordance with DEA's typical practice.  *Id.*  DEA will consider any comments received, make any needed revisions, and then publish a Final Rule in the Federal Register.  *Id.*

---

[3]      *See* Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, at https://www.deadiversion. usdoj.gov/GDP/(DEA-DC-5)%20Guidance%20Regarding%20Petitions%20for%20Religious %20Exemptions.pdf.

## II.    Plaintiffs' Allegations

Plaintiff Arizona Yagé Assembly ("Arizona Yagé") alleges that it is a "religious nonprofit corporation[]," First Am. and Suppl. Compl. ("Compl.") ¶ 6 (Jun. 15, 2020), ECF No. 12, that was established "as a visionary church in 2015," and which uses "Ayahuasca" as its communion sacrament, *id.* ¶ 47.   Ayahuasca is a tea that contains the hallucinogen dimethyltryptamine ("DMT"), a Schedule I controlled substance under the CSA.  *Id.* ¶ 6. Ayahuasca is made "by brewing leaves from DMT-containing plants jointly with slices of *Banisteropsis Caapi*, the 'yagé' vine."  *Id.* ¶ 43.   Arizona Yagé does not allege that it has stopped using ayahuasca or that it is not currently using ayahuasca in its activities by virtue of the CSA's prohibitions on ayahuasca.   Plaintiff North American Association of Visionary Churches ("NAAVC") describes itself an "interdenominational association of visionary churches."  Compl. ¶ 62.   NAAVC claims that its "central act of Free Exercise is initiating a lawful system for importing and sharing sacramentally-prepared Ayahuasca with visionary churches at reasonable cost[.]"  *Id.* ¶ 64.   Plaintiff Clay Villaneuva is a member of NAAVC's board of directors.  *Id.* ¶ 7.

On May 5, 2020, Arizona Yagé and NAAVC filed the original complaint, which contains three claims.   ECF No. 1.   On June 16, 2020, Plaintiffs filed a First Amended and Supplemental Complaint ("Complaint"), adding two new claims based on events allegedly occurring on May 17, 2020, without moving the Court to do so.   ECF No. 12 ("Compl."); *see* Fed. R. Civ. P. 15(d) (requiring a "motion and reasonable notice" for a "supplemental pleading setting out any" alleged fact "that happened after the date of the pleading to be supplemented").

The first of Plaintiffs' original three claims alleges that the United States and the DEA violated the APA by maintaining an alleged policy, furthered by the DEA's 2009 Guidance, of refusing to grant religious exemptions under RFRA to "visionary churches" such as Arizona Yagé (the "Policy").  Compl. ¶¶ 76, 172.   Plaintiffs also claim that the DEA violated the APA by failing to replace the 2009 Guidance with "a system of providing regulatory services to visionary churches[.]" *Id.* ¶ 172.   None of the Plaintiffs alleges that it has filed a petition for a religious exemption with the DEA.

Second, Arizona Yagé and NAAVC allege that they are entitled under RFRA to a blanket exemption from the CSA's prohibitions on ayahuasca. Compl. ¶¶ 128-52. This claim is asserted against the Federal Agency Defendants and DAA Prevoznik in his personal capacity, and asks the Court to hold DAA Prevoznik liable for damages. *Id.* pp. 36, 70. The Complaint alleges, in a conclusory fashion, that "Prevoznik has been responsible during the last two years for the maintenance of the [DEA's] Policy, which he has expressed in the DEA's refusal to review and rescind the Guidance[.]" *Id.* ¶ 151; *see also id.* ¶ 152 (alleging that Plaintiffs "have been damaged by the acts . . . that Thomas Prevoznik took pursuant to the [DEA's] Policy and in violation of RFRA, to keep the Policy and the Guidance in place, and to continue denying regulatory services to visionary churches").

Third, Plaintiffs claim they are entitled to a declaration "stating the rights and relations of the parties" under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Compl. ¶¶ 234-38.

As relief for these three claims, Plaintiffs seek, in addition to damages against DAA Prevoznik, a declaratory judgment and an injunction requiring the Federal Agency Defendants to, among other things, rescind the 2009 Guidance and register Arizona Yagé and NAAVC under the CSA to import, manufacture, dispense, and use ayahuasca. *See* Compl. ¶¶ 65-70.

The two claims added to this case by the First Amended and Supplemental Complaint are alleged by Plaintiff Villanueva, against four new Defendants: the State of Arizona, the Arizona Attorney General, Maricopa County, Arizona, and a Maricopa County detective ("Arizona Defendants"). *See* Compl. First, Villanueva and the NAACV assert a claim under 42 U.S.C. § 1983 against the Arizona Defendants, who allegedly conspired to deprive Villanueva and NAAVC of their constitutional rights by directing law enforcement to seize ayahuasca from Villanueva's home on May 17, 2020. *Id.* ¶¶ 173-222. Plaintiffs also assert a section 1983 claim against "Mark A. Morgan on behalf of the DEA, and unnamed DEA agents." *Id.* p. 46. Second, Villanueva alleges that he is entitled under Arizona law to an exemption from Arizona state regulations of ayahuasca. *Id.* ¶¶ 223-32.

### III.     The Supreme Court's Writ of Certiorari in *Tanvir v. Tanzin*

On November 22, 2019, the U.S. Supreme Court granted a petition for writ of *certiorari* to review the U.S. Court of Appeals for the Second Circuit's ruling in *Tanvir v. Tanzin*, which held that "RFRA permits a plaintiff to recover money damages against federal officials sued in their individual capacities for violations of RFRA's substantive protections[.]"  894 F.3d at 453. *Tanvir* is scheduled for argument on October 6, 2020 and for decision during its October 2020 term.[4]  In light of the question presented in *Tanvir*, DAA Prevoznik has moved this Court to stay Plaintiffs' RFRA claim against him until the Supreme Court decides *Tanvir*.  *See* Def. Prevoznik's Notice of Mot. to Stay Proceedings Pending the Supreme Court's Decision in *Tanvir v. Tanzin* and Mem. of Points and Authorities (July 15, 2020) ("Prevoznik Mot."), ECF No. 17.

### <u>STANDARD OF REVIEW</u>

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936).  To determine whether to exercise its discretion to grant a stay, a district court must consider: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

---

[4]     *See* https://www.supremecourt.gov/oral_arguments/argument_calendars/ MonthlyArgumentCalOctober2020.pdf.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ARGUMENT

**I. THE COURT SHOULD STAY THIS CASE AGAINST THE FEDERAL AGENCY DEFENDANTS UNTIL THE SUPREME COURT'S DECISION IN *TANVIR***

### A. The Requested Stay Would Allow the DEA to Make Substantial Progress on, if not Complete, a Rulemaking Already Underway Which Will Likely Moot Plaintiffs' Claims Against the Federal Agency Defendants

The orderly course of justice would be served if the Court stayed the claims against the Federal Agency Defendants, because the DEA's ongoing rulemaking will likely moot the claims against them, or at the very least, alter or narrow the issues to be resolved.

The Ninth Circuit has held that, under *Landis*, a district court may, "with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case," including "administrative" proceedings. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (citing *Landis*, 299 U.S. at 254-55). In particular, courts have stayed cases where the pending administrative proceeding would moot claims by superseding the alleged agency action or policy being challenged. *See Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1122-24 (9th Cir. 1997) (explaining that "any challenge to the 1994-1998 Biological Opinion is moot" after it was "superseded by the 1995 Biological Opinion," which the agency issued after the district court granted a stay); *see also Nat'l Wildlife Fed'n v. EPA*, 925 F.2d 470, 473 (D.C. Cir. 1991) (staying case to allow agency to complete new rulemaking because it "carried the prospect of mooting . . . procedural attacks and of changing the substance to be reviewed").

Here, the DEA is in the midst of a rulemaking that will replace the 2009 Guidance, *see* Brinks Decl. ¶¶ 4-7, which is directly challenged by Plaintiffs' RFRA and APA claims. Indeed, no fewer than 79 paragraphs of the Complaint are dedicated to detailing the 2009 Guidance's alleged deficiencies. *See* Compl. ¶¶ 15, 90-102, 110, 113-15, 117, 119-27, 149-52, 154-56, 159-61, 163-64, 166, 168, 172, 184, 236m-u, 236w, 236y-ee; Prayer for Relief ¶ 1. Findings ¶¶ m-v, x, z-ee; Prayer for Relief ¶ 1.Wherefore ¶ a. For instance, the Complaint's RFRA claim alleges that Plaintiffs' religious exercise has been "substantially burdened by the DEA's use of the

Guidance," Compl. ¶ 150, and establishing a substantial burden is an essential element of Plaintiffs' *prima facie* case, *see Navajo Nation*, 535 F.3d at 1068.  Similarly, Plaintiffs' APA claim alleges that the "DEA agency action and inaction due to the Policy and the Guidance . . . was arbitrary, capricious, an abuse of discretion, [and] not in accordance with law," and that the DEA should be compelled to replace the 2009 Guidance with a new "system of providing regulatory services."  Compl. ¶ 172.

Replacing the 2009 Guidance is precisely the goal of the DEA's ongoing rulemaking, *see* Brinks Decl. ¶ 5, although the agency disputes Plaintiffs' assertions about the legality of the process currently in place.  The rulemaking aims to implement a regulatory regime governing the agency's evaluation of applications for religious exemptions under RFRA.  *See id.* ¶¶ 4-5. Although there are additional layers of review that must be completed before an NPRM can be published, once complete, the rulemaking will supersede the 2009 Guidance, *id.* ¶¶ 5-7, almost certainly rendering Plaintiffs' RFRA and APA claims moot, or at the very least substantially affecting those claims, *see Leyva*, 593 F.2d at 863-64 (explaining that it is "not require[d] that the issues in such proceedings [be] necessarily controlling of the action before the court" to justify a stay under *Landis*).[5]

The duration of the requested stay is reasonable.  The Federal Agency Defendants request that the stay end following the Supreme Court's decision in *Tanvir*, to coincide with any stay that may be granted in favor of DAA Prevoznik.  The Supreme Court's ruling in *Tanvir* will likely occur no later than the conclusion of the October 2020 term in the summer of 2021.  *Cf. Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007) (explaining that stays should "last only for a reasonable time" and reversing stay that had already lasted for two years and that "provide[d] no specific deadline for when the stay will terminate"). By the time the Court issues a ruling, the DEA will likely either have issued or made significant

---

[5]    Any stay should also extend to the section 1983 claim that Plaintiffs have asserted against the DEA and Mark Morgan, since Plaintiffs improperly supplemented the original complaint with that claim (which is based on alleged facts occurring after the original complaint) without a motion, *see* Fed. R. Civ. P. 15(d), and because that claim patently lacks merit under blackletter law.  *Buckley v. Meis*, 76 F. App'x 192, 194 (9th Cir. 2003) (stating that "§ 1983 does not apply to federal officials").

progress on issuing a Notice of Proposed Rulemaking, and the propriety of continuing the litigation in light of the status of the rulemaking could be reevaluated at that time.

It would be inefficient and wasteful to proceed with the claims against the Federal Agency Defendants in light of the DEA's rulemaking.  During the rulemaking process, Plaintiffs and other stakeholders will have the opportunity to submit comments regarding whether and how the DEA's procedure for evaluating religious exemptions should be modified and to influence the rule that the DEA ultimately adopts.  If this litigation were to proceed in parallel with that process, the parties would be briefing, and the Court judging, the legality of a procedure that is likely to change and may even be influenced by Plaintiffs' comments during the rulemaking.  Also, any Court decision during this time would risk prejudging the regulatory options available to the DEA before the agency has a chance to issue an NPRM, consider comments, finalize the rule, and explain its reasons for the course it ultimately chooses.  *Cf. Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) ("To obtain judicial review under the APA, [a plaintiff] must challenge a final agency action.").  Finally, even assuming Plaintiffs' challenges to the DEA's current process could be fully adjudicated before the DEA's rulemaking is complete, any decision likely would be rendered inapplicable once the DEA finalizes its new rule.  Thus, the stay requested here is appropriate to mitigate the possibility that the Court and the parties will unnecessarily expend resources litigating claims that are likely to be overtaken by events.

### B.   The Requested Stay Would Prevent Inefficient and Duplicative Piecemeal Litigation of the Closely Related Claims Asserted Against DAA Prevoznik and the Federal Agency Defendants

In the event DAA Prevoznik is granted his requested stay, a corresponding stay of the claims against the Federal Agency Defendants would promote the orderly course of justice for an additional reason:  it would prevent the closely related claims Plaintiffs have asserted against DAA Prevoznik and the Federal Agency Defendants from proceeding piecemeal, which would result in duplicative litigation and the inefficient use of judicial resources.

When determining whether the orderly course of justice weighs in favor of a stay, "considerations of judicial economy are highly relevant" and such considerations weigh in favor

of a stay where "conducting further proceedings" could cause the "unnecessary expenditure of judicial resources." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846-LHK, 2016 WL 9021536, at *2 (N.D. Cal. Mar. 22, 2016) (citation omitted).  For instance, district courts have ordered broad stays to avoid "piecemealing claims," which would "require duplication of efforts to resolve closely related issues on separate occasions." *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1096 (E.D. Cal. 2008); *see, e.g.*, *Calvillo Manriquez v. DeVos*, No. 17-CV-07210-SK, 2018 WL 5316174, at *3 (N.D. Cal. Aug. 30, 2018) ("The Court finds that a stay is appropriate because the Court will be forced to address the summary judgment claims in piecemeal fashion[.]").

Here, if the litigation against DAA Prevoznik is stayed pending the Supreme Court's consideration of *Tanvir*, but is allowed to proceed against the Federal Agency Defendants, it would likely result in an inefficient and duplicative two rounds of discovery and two rounds of merits briefing on identical or substantially similar issues.  Plaintiffs' RFRA and APA claims against the agencies rest in part upon alleged acts by DAA Prevoznik.  *See supra* p. 5.  As a result, if only DAA Prevoznik receives a stay, once that stay is complete, and assuming the case against him resumes, additional motions practice and discovery would likely be necessary, *see, e.g.*, Prevoznik Mot. at 7-8 (stating entitlement to assert qualified immunity if claim against him survives *Tanvir*), even though by that time, the case against the Federal Agency Defendants might have moved on to a different stage of proceedings.  The requested stay would limit the possibility of such disjointed and inefficient litigation.  Moreover, if the Court granted DAA Prevoznik a stay, but did not stay the case for the Federal Agency Defendants, it would be difficult—if not impossible—to complete discovery without entangling DAA Prevoznik in the process; avoiding such entanglement is essential to "protect[ ] the substance of the qualified immunity defense." *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998).  *See infra* Section I.C.

**C.      The Requested Stay Would Prevent Hardship and Inequity to DAA Prevoznik by Ensuring He Is Not Subject to Burdensome Litigation Pending His Claim of Qualified Immunity**

Heeding the Supreme Court's entanglement concern, many district courts have stayed discovery against all defendants on all related claims until it could be determined if a subset of those claims were barred due to a meritorious qualified immunity defense.  *See e.g.*, *Skinner v. Ard*, No. CV 19-66-JWD-EWD, 2020 WL 2245179, at *5 (M.D. La. May 7, 2020) ("A stay is mandated as to the federal claims to which qualified immunity applies," and, "[b]ecause the pendent state law claims are factually intertwined with the federal claims, the purpose of staying discovery when the qualified immunity defense is raised, as well as judicial economy, support a stay of discovery as to the state law claims as well."); *M.G. v. Metro. Interpreters & Translators, Inc.*, No. 12CV460-JM (MDD), 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013) (staying all discovery where the "Federal defendants" asserted qualified immunity, noting their conduct was "inextricably intertwined with the allegations against the non-Federal defendants[,]" who were not asserting qualified immunity);[6] *A.A. ex rel. Archuletta v. Martinez*, No. 12-CV-00732-WYD-KMT, 2012 WL 5974170, at *2 (D. Colo. Oct. 9, 2012) (stating that "it is very clear[] that the Supreme Court believes discovery should be stayed in the case as a whole even when only one defendant is asserting qualified immunity"); *Rainsaw v. United States*, No. 10CV1672, 2011 WL 1752160, at *2 (N.D. Ohio May 5, 2011) (staying discovery on a Federal Tort Claims Act claim against the United States because, *in a separate case* involving overlapping claims, individual-capacity defendants had asserted a yet-to-be decided sovereign immunity defense).

---

[6]      In *Mendia v. Garcia*, a court in this District distinguished *M.G.* and allowed piecemeal discovery in a case against the United States (which had not asserted sovereign immunity), despite staying discovery against the federal official co-defendants (who had asserted qualified immunity), in part because the defendants were all represented by the same attorneys, who would "be in a position to ensure that the Defendants' individual positions are not prejudiced, and that they are not unduly burdened" as the case proceeded against only the United States.  No. 10-CV-03910-MEJ, 2016 WL 3249485, at *5 (N.D. Cal. June 14, 2016).  In so holding, the *Mendia* court admitted that the Supreme Court's "concerns about the burdens that discovery proceedings can impose on parties asserting qualified immunity" expressed in *Iqbal* were "potentially significant," but nevertheless dismissed those concerns as "dicta."  *Id.* at *3.  In any event, this case is distinguishable from *Mendia* since DAA Prevoznik and the Federal Agency Defendants are represented by separate attorneys, working in different branches of the Department of Justice's Civil Division. *Compare infra at* 17 *with* Prevoznik Mot. at 10.

Here, the Federal Agency Defendants' co-defendant, DAA Prevoznik, has claimed that he is entitled to qualified immunity against the RFRA claim against him.  Prevoznik Mot. at 7-8. Even if the Court granted his stay, if the RFRA claim against the Federal Agency Defendants proceeded to discovery or to trial, DAA Prevoznik would likely be required to participate directly as a fact witness, despite the claim against him technically being stayed.  This would undermine the effectiveness of DAA Prevoznik's stay (if granted) and the protections of the qualified immunity defense.

Because summary judgment or a trial on the claims against the Federal Agency Defendants would also significantly affect DAA Prevoznik's rights and require his attention regardless of whether he receives a stay, a stay of all proceedings, and not just discovery, for the Federal Agency Defendants is necessary to avoid undermining the qualified immunity defense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (stating that qualified immunity protects an official from the burdens of all "litigation," including "trial," and not just discovery).[7]

### D.   Plaintiffs Will Suffer No Prejudice or Harm from the Granting of the Requested Stay

Finally, while granting the requested stay would further the orderly course of justice and prevent hardship or inequity to a party, the stay would result in no prejudice or harm to Plaintiffs.

First, the Complaint provides no reason to believe that Plaintiffs, who have not sought preliminary injunctive relief, are suffering any present or ongoing harm to their ability to practice their religion that would continue during a stay.  Arizona Yagé admits that it has been using ayahuasca since it was founded five years ago and does not claim that it has stopped using ayahuasca at any time.  *See, e.g.*, Compl. ¶ 47 ("After working with Ayahuasca for six years, the founder (the "Founder") established [Arizona Yagé] as a visionary church in 2015, using Ayahuasca as [Arizona Yagé]'s communion sacrament."); ¶ 49 ("In [Arizona Yagé], healing

---

[7]   In many cases, a stay of only discovery and not all proceedings is sufficient to protect a defendant who has asserted qualified immunity because the qualified immunity question would be settled in a pending motion to dismiss or interlocutory appeal, *see, e.g.*, *M.G. v. Metro. Interpreters & Translators, Inc.*, No. 12CV460-JM (MDD), 2013 WL 690833, at *1 (S.D. Cal. Feb. 26, 2013) (explaining that the federal defendants moved to stay discovery "pending the outcome of their motion to dismiss" in which they had asserted sovereign and qualified immunity), which would not be the case here if DAA Prevoznik's motion for a stay is granted.

takes place in sacred communion by means of drinking sacramental Ayahuasca.").  Arizona Yagé and NAAVC also admit in the Complaint to attempting to import ayahuasca as recently as April 2020.  Compl. ¶ 135.

Moreover, even though the Complaint devotes dozens of paragraphs to detailing the alleged deficiencies of the DEA's 11-year-old guidance and process for evaluating petitions for religious exemption, Plaintiffs themselves have never subjected themselves to that process or had a petition for religious exemption adjudicated by the DEA.  It is not true, as Plaintiffs assert, that the DEA "has a policy of denying regulatory services to visionary churches and refusing all requested religious exemptions from the CSA," Compl. ¶ 76, and Plaintiffs proffer no allegation of even a single such denial.  But even if the DEA had such a policy, it could not have harmed Plaintiffs since they have not applied for a religious exemption.  *See, e.g.*, *Bova v. City of Medford*, 564 F.3d 1093, 1096-97 (9th Cir. 2009) (holding that plaintiff lacked standing to challenge city's policy of discontinuing post-retirement health-care insurance to city employees because plaintiff had yet to retire or be denied benefits).

Second, as discussed above, during the requested stay, the DEA's rulemaking would proceed and would at some point provide Plaintiffs with an opportunity to raise their apparent generalized grievances with the 2009 Guidance during the comment period for the new rule.  Even if that guidance had injured Plaintiffs in some manner, the rulemaking already underway is likely to moot Plaintiffs' claims before they could be finally resolved, and thus a stay of the case pending that rulemaking would not harm Plaintiffs.

Third, Plaintiffs will suffer no harm from a stay of their section 1983 claim.  Plaintiffs improperly supplemented the original complaint with that claim, which is based on events occurring after the date of the original pleading, *see supra* p. 6, without a "motion and reasonable notice," as required under Rule 15(d).  Moreover, the section 1983 claim patently lacks merit to the extent it is asserted against the DEA and "unnamed DEA agents," Compl. p. 46, given that the Ninth Circuit's "case law clearly establishes that a § 1983 action is not available to redress actions taken under color of federal law."  *Buckley v. Meis*, 76 F. App'x 192, 194 (9th Cir. 2003) (stating that "§ 1983 does not apply to federal officials").

1   Finally, and in any event, even if a stay would cause some harm to Plaintiffs, the benefits

2   to judicial economy that the requested stay would confer outweigh any conceivable harm.  *See*

3   *Landis*, 299 U.S. at 254-55 (explaining that the Court "must weigh competing interests and

4   maintain an even balance" when determining whether to stay a case); *id.* at 256 (stating that a

5   party "may be required to submit to delay not immoderate in extent and not oppressive in its

6   consequences if . . . convenience will thereby be promoted").  The 2009 Guidance has been in

7   place for 11 years, and Plaintiffs have not filed a petition with the DEA under that guidance.  It is

8   sensible to permit the status quo to continue for a reasonable duration while the DEA completes

9   the ongoing rulemaking, at which time Plaintiffs may attempt to challenge any aspects of the

10   final rule to which they object.

11   
12   **II.   IN THE ALTERNATIVE, THE FEDERAL AGENCY DEFENDANTS MOVE FOR AN ENLARGEMENT OF TIME TO RESPOND TO THE AMENDED AND SUPPLEMENTAL COMPLAINT**

13   In the alternative, if the Court declines to grant the stay requested by DAA Prevoznik and

14   the stay requested by this motion, the Federal Agency Defendants respectfully move under Civil

15   Local Rule 6-3 for an extension of their deadline to respond to Plaintiffs' Complaint to 60 days

16   after service of process upon DAA Prevoznik (who has yet to be served, *see* ECF No. 11, ¶ 12),

17   so that the federal defendants' responsive pleading deadlines will coincide.  *See* Fed. R. Civ. P.

18   12(a)(3).  The Federal Agency Defendants also request that the Court vacate the current July 16,

19   2020 deadline to meet and confer and file an ADR certificate, the July 30, 2020 deadline for the

20   parties' Rule 26(f) report and initial disclosures, *see* ECF No. 8, the August 4, 2020 deadline for

21   the parties' case management statement, and the August 11, 2020 case management conference,

22   *see* ECF No. 10, and reset those deadlines to coincide with the federal defendants' new

23   responsive pleading deadline.

24   If the Court grants the stay requested by DAA Prevoznik but denies the stay requested by

25   the Federal Agency Defendants, the Federal Agency Defendants respectfully request that their

26   responsive pleading deadline be extended to the later of September 30, 2020 or 60 days from the

27   Court's ruling on this motion.  The Federal Agency Defendants also request that the Court grant

28   an extension for a corresponding period of time of the current July 16, 2020 deadline to meet and

confer and file an ADR certificate, the July 30 deadline for the parties' Rule 26(f) report and initial disclosures, *see* ECF No. 8, the August 4 deadline for the parties' case management statement, and the August 11 case management conference, *see* ECF No. 10.

There is good cause for these requested extensions, without which the Federal Agency Defendants would suffer substantial harm or prejudice.  First, the Federal Agency Defendants have moved in good faith for the stay requested by this motion; if that stay is denied, the requested extensions would provide them with sufficient time to prepare a response to the First Amended and Supplemental Complaint and to meet the case management deadlines.  *See* Ex. B. (Decl. of Kevin P. Hancock ("Hancock Decl.") ¶¶ 8-9.)

Second, the requested extension would allow the Federal Agency Defendants sufficient time to prepare a response in light of the substantial length of the First Amended and Supplemental Complaint, which is 73-pages long and contains more than 300 paragraphs of allegations.  *See* Hancock Decl. ¶ 10.

Third, the time that the Federal Rules provide for Defendants to respond to the Complaint, *see* Fed. R. Civ. P. 12(a)(2), was effectively shortened when Plaintiffs substantially amended and supplemented their original complaint 21 days after it was served on Defendants, *see* ECF No. 12, which was the last day Plaintiffs could file an amendment without seeking consent or leave, *see* Fed. R. Civ. P. 15(a)(1)(A).  The additions to the Complaint included one new plaintiff, two new claims, four new defendants, almost 20 pages, and approximately 70 paragraphs of new allegations.  The requested extension would provide the Federal Agency Defendants with sufficient time to formulate any needed responses to Plaintiffs' lengthy new allegations and claims.  *See* Hancock Decl. ¶ 11.

Fourth, as of today, DAA Prevoznik has yet to be served with either complaint, and a certificate of service has yet to be filed on the case docket for the four new non-federal defendants.  The requested extension would allow time for Plaintiffs to effect service upon these co-defendants and for Federal Agency Defendants subsequently to consult with their non-federal co-defendants to the extent necessary for their response to the First Amended and Supplemental Complaint.  *See* Hancock Decl. ¶ 12.

Fifth, and finally, the requested extension would account for undersigned counsel's scheduled time away from work during the latter half of August, which time will include travel and pre-paid accommodations.  *See* Hancock Decl. ¶ 13.

There have been no previous time modifications in this case and the requested modification would not otherwise affect the schedule for this case.  *See* Hancock Decl. ¶ 14. Undersigned counsel asked counsel for Plaintiffs by telephone on July 16, 2020 if Plaintiffs would agree to the extension requested by this alternative motion.  Counsel for Plaintiffs responded that Plaintiffs would not oppose an extension of 30 days from the date of any denial of the motion to stay.  *See* Hancock Decl. ¶ 15.

## CONCLUSION

For the foregoing reasons, the Federal Agency Defendants request that the Court stay the claims against them concurrently with any stay granted to Defendant DAA Prevoznik pending the Supreme Court's ruling in *Tanvir v. Tanzin*.  In the alternative, the Federal Agency Defendants request that the Court extend their deadline to respond to the Amended Complaint.

DATED: July 16, 2020                          Respectfully submitted,


                                              ETHAN P. DAVIS
                                              Acting Assistant Attorney General

                                              BRIGHAM J. BOWEN
                                              Assistant Branch Director

                                              */s/  Kevin P. Hancock*
                                              KEVIN P. HANCOCK
                                              Trial Attorney
                                              U.S. Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street NW
                                              Washington, DC 20005
                                              (202) 514-3183 (phone)
                                              (202) 616-8470 (fax)
                                              kevin.p.hancock@usdoj.gov

                                              *Counsel for the Federal Agency Defendants*