CHARLES CARREON (CSB # 127139)
3241 E. Blacklidge Drive
Tucson, Arizona 85716
Tel:  628-227-4059
Email: chascarreon@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches, and
Clay Villanueva

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA, | Case No.: 3:20-CV-03098-WHO |
|  | PLAINTIFFS' MOTION FOR PRELIMINARY INJU0NCTION |
| Plaintiffs, | Date:  August 26, 2020 |
| vs. | Time:  2:00 P.M. |
|  | Courtroom:  2 (17th floor) |
| WILLIAM BARR, Attorney General of the United States; UTTAM DHILLON, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Dept. of Homeland Security; MARK A. MORGAN, Acting Commissioner of U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Dept. of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY, |  |
| Defendants. |  |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN, PLEASE TAKE

NOTICE THAT at 2:00 p.m. on August 26, 2020 in Courtroom 2 on the 17th floor of the United

States Courthouse at 450 Golden Gate Avenue, San Francisco, California, plaintiffs North

American Association of Visionary Churches ("NAAVC"), and NAAVC Board Member Clay Villanueva ("Villanueva"), and Arizona Yagé Assembly ("AYA") will move the Court for an order pursuant to L.R. 7-2, L.R. 65-2, F.R.Civ.P. 65, 42 U.S.C. § 1983, and 28 U.S.C. § 2201 – 2202,  preliminarily enjoining all defendants from pursuing a conspiracy grounded in retaliatory animus by the Drug Enforcement Administration ("DEA") towards plaintiff NAAVC, that instigated state authorities to execute a retaliatory search against Villanueva, a *de facto* represented party under the protection of this Court at the time of the retaliatory search. The attack on Villanueva was an attack on this Court's power to do equity between and among all of the parties by giving the defendants inappropriate advantage, and thus, the Court's aid is sought to protect the dignity of the Court as the exclusive arbiter of plaintiff's claims against defendants. The retaliatory animus of the DEA towards NAAVC poses a continuing threat to plaintiffs' Security, Privacy, Free Exercise, Free Religious Expression, and Freedom of Association, for which plaintiffs have no adequate remedy at law.  Plaintiffs therefore seek an order that will re-establish the *status quo ante* the search of Villanueva's home and church on May 19, 2020, by prohibiting the defendants, and each of them, from retaining possession of property and evidence seized during the search, or profiting from the unlawful search and custodial interrogation of Villanueva in any way.  Accordingly, plaintiffs will request the Court to enter a prohibitory order enjoining defendants from interfering with NAAVC, its Board of Directors, AYA and its congregation, and Villanueva and the VOLC congregation ("Plaintiff's Personnel") by:

1. Criminally investigating Plaintiff's Personnel and/or sharing information about Plaintiff's Personnel with other law enforcement agencies, in any jurisdiction;

2. Making use of any of the materials seized, observed, photographed, or video-recorded during the HIDTA raid of VOLC in this litigation against NAAVC, AYA, VOLC, or any of Plaintiff's Personnel;

3. Retaining any of the property seized from Villanueva and VOLC;

4. Performing any acts intended to cause damage to the person, property, or Free Exercise of NAAVC, AYA, Villanueva, or Stanley;

5.  Utilizing police resources such as the NCIC database, the DEA's Hemisphere program, or other resources designed for criminal investigation, to investigate Plaintiff's Personnel; and/or

6.  Joining AYA's Facebook group for the purpose of surveilling its activities and personnel.

Plaintiff made a good faith effort to resolve the issues raised in this motion informally before filing by proposing a stipulation to achieve the same effect as the Order sought herein.

The motion will be made based on the attached memorandum of points and authorities, the declarations of Clay Villanueva, Charles Carreon, and Winfield Scott Stanley III, the associated exhibits, the proposed Order submitted herewith, and such further evidence and argument as the Court finds relevant.

Dated:  July 22, 2020             CHARLES CARREON, ESQ.
                                  By: /s/Charles Carreon
                                  CHARLES CARREON (127139)
                                  Attorney for Plaintiffs
                                  Arizona Yagé Assembly.
                                  North American Association of Visionary Churches,
                                  Clay Villanueva

## **TABLE OF CONTENTS**

I.     PREFATORY STATEMENT ........................................................................... 1

II.    FACTS ........................................................................................................... 3

III.   ARGUMENT ................................................................................................ 12

       A.   Plaintiffs Submitted Themselves to the Jurisdiction of This Court ........... 12

       B.   The Conspiracy Injured NAAVC in This Litigation .................................... 12

       C.   This Court May Enjoin the DEA and the Arizona Defendants ................... 13

       D.   A Preliminary Injunction is Needed to Restore the Status Quo Ante ......... 14

       E.   NAAVC Triggered the DEA's Retaliatory Animus by Submitting A
            Petition for Redress of Grievances to the DEA in January 2020 ............... 15

       F.   Pursuant to a DEA-Instigated Conspiracy Driven by Retaliatory Animus
            Against NAAVC, the Arizona Defendants Obtained and Executed a Search
            Warrant Against NAAVC Board Member Clay Villanueva ....................... 17

       G.   The DEA/MCSO Raid Chilled Villanueva's Rights of Free Exercise, Free
            Religious Expression, and Freedom of Association .................................... 19

       H.   Villanueva is Likely to Prevail on His Section 1983 Claim ....................... 19

       I.   Plaintiffs Will Suffer Irreparable Harm If Preliminary Injunctive Relief Is
            Not Granted ............................................................................................... 21

       J.   The Balance of the Hardships Tips Sharply Towards the Plaintiffs ........... 22

       K.   To Restore the Status Quo Ante, The Court Should Prohibit Exploitation of
            Tactical Advantages Gained by Searching Villanueva's Home and
            Church ....................................................................................................... 23

       L.   The Public Interest Favors Injunctive Relief .............................................. 24

       M.   Plaintiffs Should Not Be Required to Post a Bond. ................................... 24

IV.    CONCLUSION ............................................................................................ 25

1

2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5

6

*Am. Motorcyclist Ass'n v. Watt,*
714 F.2d 962 (9th Cir. 1983) ................................................................ 24

7

8

*Arizona Dream Act Coal. v. Brewer,*
757 F.3d 1053 (9th Cir. 2014) .............................................................. 21

9

10

*Barahona-Gomez v. Reno,*
167 F.3d 1228 (9th Cir. 1999) .............................................................. 24

11

12

*Billings v. United States,*
57 F.3d 797 (9th Cir. 1995) .................................................................. 14

13

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682, 134 S. Ct. 2751, 189 L.Ed.2d 675 (2014).......................... 12

14

15

*Cabrera v. Martin,*
973 F.2d 735 (9th Cir., 1992) ......................................................... 13, 21

16

17

*Cantwell v. Connecticut,*
310 U.S. 296, 60 S. Ct. 900, 84 L.Ed. 1213................................................ 5

18

19

*CE Distribution, LLC v. New Sensor Corp.,*
380 F.3d 1107 (9th Cir. 2004) .............................................................. 13

20

21

*Chambers v. NASCO, Inc.,*
501 U.S. 32, 111 S. Ct. 2123 (1991)....................................................... 15

22

23

*Church of the Holy Light of the Queen v. Mukasey,*
615 F.Supp.2d 1210 (Oregon 2006) ............................................. 3, 17, 18

24

*Crawford-El v. Britton,*
523 U.S. 574, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998).................... 13, 20

25

26

*DeNieva v. Reyes,*
966 F.2d 480 (9th Cir. 1992) ................................................................ 14

27

28

*DISH Network L.L.C. v. Rios,*
No. 2:14-cv-2549-WBS-KJN, 2015 U.S. Dist. LEXIS Case No. 3:15-
cv-3522 21sf-3559156 18285 (E.D. Cal. Feb. 13, 2015).......................... 23

*DVD Copy Control Assn., Inc. v. Bunner*,
    31 Cal. 4th 864 (2003) ........................................................ 23

*Earth Island Inst. v. Carlton*,
    626 F.3d 462 (9th Cir. 2010) ............................................... 22

*Follet v. Town of McCormick*,
    321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944) .................... 5

*Goldie's Bookstore, Inc. v. Superior Court*,
    739 F.2d 466 (9th Cir. 1984) ............................................... 15

*Gonzalez v. O Centro Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S.
    Ct. 1211, 163 L.Ed.2d 1017 (2006) ................................. 3, 17

*Green v. Dumke*,
    480 F.2d 624 (9th Cir. 1973) ............................................... 14

*Hafer v. Melo*,
    502 U.S. 21 (1991) ............................................................. 14

*Harris v. Bd. of Supervisors, Los Angeles Cnty.*,
    366 F.3d 754 (9th Cir. 2004) ............................................... 22

*Hartman v. Moore*,
    547 U.S. 250, 126 S. Ct. 1695, 164 L.Ed.2d 441 (2006) .......... 20

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ........................................................... 14

*L.A. Memorial Coliseum Comm'n v. NFL*,
    634 F.2d 1197 (9th Cir.1980) ............................................... 14

*Mandel v. Bd. of Trustees. of the Cal. State University*,
    2018 U.S. Dist. LEXIS 39345, 2018 WL 1242067 (N.D. Cal. March 9,
    2018) ................................................................................ 21

*Merritt v. Mackey*,
    932 F.2d 1317 (9th Cir. 1991) ............................................. 21

*Miranda v. Clark County, Nev.*,
    319 F.3d 465 (9th Cir. 2003) ............................................... 14

*Mitchum v. Foster*,
    407 U.S. 225 (1972) ........................................................... 15

*Perry* v. *Sindermann*,
    408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)............................................ 20

*Porter v. Jones*,
    319 F.3d 483 (9th Cir. 2003) ................................................................................... 14

*Regents of Univ. of California v. Am. Broad. Companies, Inc.*,
    747 F.2d 511 (9th Cir. 1984) ................................................................................... 22

*Scott v. Rosenberg*,
    702 F.2d 1263 (9th Cir. 1983) ................................................................................. 14

*Sepehry-Fard v. Dep't Stores Nat'l Bank*,
    No. 13-cv-03131-WHO, 2013 U.S. Dist. LEXIS 144985 (N.D. Cal. Oct.
    4, 2013) ..................................................................................................................... 18

*Sierra Forest Legacy v. Rey*,
    577 F.3d 1015 (9th Cir. 2009) ................................................................................. 14

*Thompson v. City of Los Angeles*,
    885 F.2d 1439 (9th Cir. 1989), overruled on other grounds by *Bull v.
    City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010)............................... 14

*Tongol v. Usery*,
    601 F.2d 1091 (9th Cir. 1979) ................................................................................. 14

*United States EPA v. Environmental Waste Control, Inc.*,
    917 F.2d 327 (7th Cir. 1990) ................................................................................... 22

*United States v. Classic*,
    313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)............................................. 14

*Vasquez-Valle v. Sessions*,
    899 F.3d 834 (9th Cir. 2018) ................................................................................... 18

*Winter v. NRDC, Inc.*,
    555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)............................................ 15

**Statutes**

18 U.S.C. § 1152 ............................................................................................................ 18

18 U.S.C. § 1512(a)(2(A) ............................................................................................. 18

28 U.S.C. § 1331 ............................................................................................................ 13

28 U.S.C. §1367 ........................................................................................... 13

28 U.S.C. § 2201 – 2202 .................................................................................. 2

42 U.S.C. § 2000bb-4 ...................................................................................... 2

42 U.S.C. § 1983 P. 65 ............................................................................ *passim*

Administrative Procedure Act § 702 ............................................................... 13

Anti-Injunction Act, 28 U.S.C. § 2283 ........................................................... 15

Controlled Substances Act, 21 U.S.C. § 801, *et. seq.* ........................... 2, 3, 5, 15

*Guidance Regarding Petitions for Religious Exemption from the Controlled*
    *Substances Act Pursuant to the Religious Freedom Restoration Act* ............. 4, 5, 6, 16

Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ................................. 2, 4, 5, 16

**Rules**

Civil L.R. 65-1(a) ......................................................................................... 25

L.R. 7-2 ........................................................................................................... 2

L.R. 65-2 ......................................................................................................... 2

**Other Authorities**

First Amendment ................................................................................... *passim*

Fourth Amendment ....................................................................................... 22

https://tinyurl.com/y8kplc73 ..................................................................... 5, 16

https://www.change.org/p/drug-enforcement-administration-keep-the-dea-
    s-hands-off-visionary-
    churches?recruiter=1003378382&utm_source=share_petition&utm_me
    dium=copylink&utm_campaign=share_petition .......................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PREFATORY STATEMENT

The United States was conceived in a vision of religious liberty that provided twin protections for Freedom of Conscience that are enshrined in the First Amendment – the Free Exercise Clause and the Establishment Clause.  The first protection promises freedom to worship according to the dictates of one's own heart, the second, freedom from compulsion to worship in or pay to support a state-sponsored church.  The definition of religious faith has proven flexible over the years, and First Amendment jurisprudence has expanded to provide protection for all sincere moral dictates of conscience, independent of formal doctrine.

It has often been said that religious freedom in America is accorded to all faiths, with bias toward none.  The truth has been otherwise.  Sects with unpopular practices have suffered retaliation for acts of Free Exercise and Religious Expression at the hands of local governments, federal institutions, private actors, and conspiracies among the three.  Currently, "visionary churches" that dispense a pharmacologically active substance to their congregants as a communion sacrament are struggling to obtain a legal legitimacy that has been declared in theory but remains difficult to claim in practice.

Thousands of visionary religion practitioners have traveled to South America to drink plant medicines with native churches and tribal shamanic practitioners.  Some of those international pilgrims, like plaintiff Clay Villanueva ("Villanueva"), returned to share the experience with peers in North America, where hundreds of visionary churches have sprung up during the last fifteen years.

A group of visionary church leaders, including Villanueva's Vine of Light Church ("VOLC"), formed the North American Association of Visionary Churches ("NAAVC"), a religious corporation asserting rights of Free Exercise to establish and pursue a ministry to, *inter alia*, import and distribute Ayahuasca to member churches.  On behalf of its member churches, NAAVC petitioned the Drug Enforcement Administration ("DEA") for redress, sending a letter endorsed by hundreds of online petitioners requesting

changes in the DEA's system for issuing exemptions from the Controlled Substances Act ("CSA")[1] under the Religious Freedom Restoration Act ("RFRA").[2]  NAAVC's efforts to petition the DEA for redress provoked retaliatory animus at the DEA, and the impulse to punish NAAVC and its Board members.  Accordingly, the DEA instigated a retaliatory scheme in conspiracy with the DEA-funded Arizona SW HIDTA[3] joint task force and directed an Arizona detective at the Maricopa County Sheriff's Office ("MCSO") to conduct a search of Villanueva and VOLC.  The DEA's retaliatory scheme had the purpose and effect of punishing NAAVC for publicizing a detailed legal critique of DEA policy.  Further, as the herein action had been filed by the time the detective procured a warrant for the search, the HIDTA search team indulged in *ex parte* contact with Villanueva, violating the attorney-client relationship, custodially interrogating Villanueva, and seizing Villanueva's sacramental Ayahuasca and other property, thus obtaining improper leverage over NAAVC in this action. The DEA grievously torqued the equities in the action by instigating state actors to attack an NAAVC Board member, a represented party herein, by procuring a warrant in another jurisdiction

The raid abruptly truncated Villanueva's ministry to his congregation, substantially burdening Villanueva and the VOLC congregation's Free Exercise, and the prejudicial effects of the retaliatory raid go beyond the painful financial and emotional effects on Villanueva personally.  Villanueva and the VOLC congregation will continue suffering irreparable harm until MCSO returns Villanueva and VOLC's sacramental Ayahuasca, property, currency and data.  These things, seized by the Arizona defendants under a pretext of narcotics enforcement, are being held without legal justification, retaliatory animus was a substantial cause of the HIDTA raid.  Accordingly, the defendants should relinquish all seized items to Villanueva's possession, and be

---

[1] 21 U.S.C. § 801, *et. seq.*
[2] 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4
[3] HIDTA is an acronym for High Intensity Drug Trafficking Area, described *infra*.  As noted in Exhibit 6 hereto, the DEA's 2019 budget for all HIDTA zones, of which Arizona is 1 of 22, was $254,000,000.

prohibited from exploiting unlawfully seized evidence or continuing to criminally investigate plaintiffs.  Such an order will restore the *status quo ante,* level the litigation playing field, and confirm this Court's authority over all of the parties herein to adjudicate all of the issues raised by plaintiffs' claims for relief.

## II.  **FACTS**

NAAVC member churches are visionary churches that administer a communion sacrament that contains a controlled substance regulated by the DEA pursuant to the CSA.  (Carreon Dec. ¶ 1.)  For fourteen years, the DEA has refused to provide regulatory services to any visionary church seeking a religious exemption ("Free Exercise Exemption") from the CSA.  (Carreon Dec. ¶ 1.)[4]  The law permitting the use of sacraments containing a controlled substance was carved out by the North American branches of two South American visionary churches, the UDV and the Santo Daime (the "Daime"),[5] that both prevailed in litigation against the DEA.  (Carreon Dec. ¶ 2.)  Both the UDV and the Daime were provoked to file suit by DEA searches and seizures of visionary church sacraments that the courts later held to be improper.  (FASC ¶ 82: Carreon Dec. ¶ 3; Exhibit 1.)  Both the UDV and the Daime were raided by the DEA during the same two-day period, while both churches believed they were in negotiations with Janet Reno's DOJ.  (Carreon Dec. ¶ 3; Exhibit 1, ¶ 26 at p. 8 and ¶45 at p. 15.)

Seen in the context of the DEA's past actions, the search of Villanueva's home and the VOLC sanctuary was merely a repeat from the DEA's coercive playbook.  Following that playbook, the DEA responds to legal challenges with armed raids, and acquires evidence through criminal investigations to defend against the civil claims of visionary churches alleging that the DEA's enforcement regime burdens their Free Exercise.  However, in the UDV and Daime cases, the DEA got federal warrants and conducted its own seizures, while in the case *sub judice*, it acted through Arizona SW

---

[4] *Gonzalez v. O Centro Beneficente Uniao do Vegetal,* 546 U.S. 418, 126 S. Ct. 1211, 163 L.Ed.2d 1017 (2006)(upholding injunction requiring DEA to grant exemtion to UDV church).
[5] *Church of the Holy Light of the Queen v. Mukasey*, 615 .Supp.2d 1210, 1215 (Oregon , 2006)(vacated  on other grounds).

HIDTA[6] to direct Maricopa County Sheriff's Office ("MCSO"), the Arizona Attorney General ("Arizona AG"), the State of Arizona, and Det. Matthew Shay ("Shay") (collectively, the "Arizona defendants") to search the VOLC sanctuary and Villanueva's home.  (Carreon Dec. ¶ 8; Exhibit 6; Villanueva Dec. ¶ 15.)

Why did the DEA avoid overt involvement by engaging state law enforcement officers to pursue the same end that it had previously pursued with the UDV and the Daime?  Perhaps because the last time the DEA tried to justify a search and seizure of Ayahuasca from the Daime in federal court, it lost the case, and was ordered to pay the Daime's attorney's fees.  (Carreon Dec. ¶ 10; Exhibit 1.)  Since the Daime victory in Oregon District Court, the DEA has not sought or obtained a federal search warrant to search for sacramental Ayahuasca in the United States, to the knowledge of plaintiffs.  (Carreon Dec. ¶ 11.)  But the reason may be even simpler.  Given the status of RFRA law on Free Exercise use of Ayahuasca, the DEA likely suspects that a federal judge would be no more easily persuaded to issue a warrant to search for Ayahuasca in an Ayahuasca church, than would a Prohibition-era judge who had been asked to issue a warrant to search for communion wine in a Catholic sacristy.

The Arizona defendants were enlisted because the DEA required an outlet for its animus towards visionary religion, that had taken the concrete form of NAAVC and the person of Villanueva.  Why did NAAVC and Villanueva merit special attention?  Because the DEA has been hostile to visionary religion since it learned of it, and even after it saw all of its traditional arguments in opposition refuted in the *O Centro* decision, it persevered in its policy of refusing visionary churches regulatory services.  (FASC ¶¶ 76 – 84, Docket # 12.)

NAAVC gained the DEA's attention in January 2020, when it critiqued the DEA's *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act* (the "Guidance") in a letter to the

---

[6] The Southwest Arizona SW HIDTA extends to San Diego, California, into New Mexico, and down the entire West coast of the Texas peninsula in the Gulf of Mexico.  See page 2, Exhibit 5, a map of HIDTA areas taken from DEA.gov.

DEA that recommended the agency rescind the Guidance to comply with the requirements of Executive Order 13891 (the "DEA Letter").[7]

The DEA was not amused.  The Guidance has been the centerpiece of its strategy to refuse regulatory services and Free Exercise Exemptions to visionary churches.  The Guidance imposes burdens on Free Exercise under the guise of implementing an exemption procedure.  As one legal commentator has observed, "the Guidance establishes a new, substantive requirement for DEA registration for religious exercise where none currently exists under Federal law."[8]  By establishing this new, substantive requirement, the DEA arrogated to itself the right to withhold or grant permission to drink Ayahuasca as a religious sacrament.  This was an unconstitutional violation of Free Exercise, because the Supreme Court has announced that sacramental use of Ayahuasca is protected Free Exercise, and Free Exercise may not be subjected to prior restraint.[9]

Finally, the DEA was likely not pleased with NAAVC's attack on the Guidance because, after the DEA lost its last two Ayahuasca church RFRA lawsuits, it grew uncertain about its ability to pursue prosecutions or obtain warrants under the CSA against visionary churches, and devised an alternative strategy to burden the Free Exercise of visionary churches, using the Guidance as a pretext to issue *de facto* cease and desist orders.  (Carreon Dec. ¶ 13.)  These cease and desist orders "invited" visionary church leaders to submit a Guidance-compliant petition for a Free Exercise Exemption,

---

[7] A hardcopy of the DEA Letter was posted Priority Mail to William T. McDermott, Assistant Administrator for the Diversion Control Division shortly after the January 8, 2020 date, and copied in PDF format as confirmed-receipt email attachment to top Government attorneys at the DEA and the Department of Justice, at their official .gov domain email addresses.  (Carreon Dec. ¶ 12.) Exhibit 2.

[8] B.Bartlett, *The U.S. Drug Enforcement Administration Problematic Process for Religious Exemption for Use of Prohibited Psychoactive Substances* (July 16, 2019). https://tinyurl.com/y8kplc73

[9] *Follet v. Town of McCormick,* 321 U.S. 573, 576, 64 S.Ct. 717, 88 L.Ed. 938 (1944).

10 *Cantwell v. Connecticut*, 310 U.S. 296, 307, 60 S. Ct. 900, 904-05, 84 L.Ed. 1213, 1219 (1940) (statute imposed "forbidden burdens" on Free Expression and Free Exercise by prohibiting religious door-to-door solicitation without a permit from a "public welfare council" authorized to "determine whether such cause is a religious one."

and directed them to use no Ayahuasca pending the processing of the petition.[10]  (Carreon Dec. ¶ 13; Exhibit 3.)  These *de facto* cease and desist letters placed the recipients under law enforcement scrutiny, chilling and substantially burdening their Free Exercise. (Carreon Dec. ¶ 13.)  The targets of the two DEA cease and desist letters were so concerned that they submitted petitions, but neither petition received any attention from the DEA.  (Carreon Dec. ¶ 13.)

NAAVC's DEA Letter was disseminated throughout the visionary church community through an online petition posted at Change.org, collecting signatures under the petition title, "Stop the DEA from Regulating Visionary Religions."[11]  (Carreon Dec. ¶ 17.)  NAAVC thus announced to the visionary church community that the Guidance was unconstitutional and otherwise unlawful, and that the DEA's *de facto* cease and desist orders violate the First Amendment prohibition on prior restraints on Free Exercise.

Thus, sufficient retaliatory animus had accumulated in the DEA towards NAAVC that, in February 2020, someone at the DEA prompted Shay to get a warrant to search Villanueva's home and the VOLC sanctuary in Phoenix, Arizona.  (Carreon Dec. ¶¶ 12-22; Villanueva Dec. ¶ 15.)  Shay certainly received this assignment from the DEA.  Shay is a 22-year veteran of the City of Phoenix drug squad, now detailed to the federally-funded HIDTA Task Force.  (Carreon Dec. ¶ 18.)  Arizona SW HIDTA funds collaboration between the DEA, the Arizona AG, and MCSO for purposes of disrupting large scale drug organizations.  (Carreon Dec. ¶ 18; Exhibit 5.)  Several of the deputies who served the warrant and conducted the search were wearing t-shirts printed "SHERIFF HIDTA" on the back.  (Villanueva Dec. ¶ 38; Carreon Dec. ¶ 26; Exhibit 11.) Given that Shay is an expert narcotics officer with a specialty in disrupting large cartel

---

[10] The recipients of the de facto cease and desist letters were Soul Quest and Ayahuasca Healing. An example of the letter the DEA sent to Soul Quest is attached as Exhibit 3.

[11] As of July 22, 2020, the petition has collected 472 signatures. See https://www.change.org/p/drug-enforcement-administration-keep-the-dea-s-hands-off-visionary-churches?recruiter=1003378382&utm_source=share_petition&utm_medium=copylink&utm_campaign=share_petition

drug manufacturing operations, it is virtually impossible that he would have spontaneously developed an investigative interest in VOLC or Villanueva's activities, or that it would have fallen within the proper scope of his investigative duties if he had. (Carreon Dec. ¶ 18.) Villanueva had no contact with drug cartels or money laundering, indeed no criminal history whatsoever, putting him outside HIDTA's declared area of expertise and interest. (Carreon Dec. ¶ 19; Exhibit 5.)

As a former Navy communications officer, Villanueva knows how to manage information flow and attendant risks. (Villanueva Dec. ¶ 22.)  VOLC had no interactions with local law enforcement, health authorities, or other government agents. (Villanueva Dec. ¶ 22.)  VOLC's media profile was discreetly managed and generated no interest from local news media. (Villanueva Dec. ¶ 22.)  VOLC made no effort to proselytize, and Villanueva held VOLC ceremonies only for trusted individuals whose religious sincerity was confirmed.  (Villanueva Dec. ¶ 22.)  There was no "word on the street" about VOLC. (Villanueva Dec. ¶ 22.)

There is no reasonable interpretation of the facts that does not conclude that, to strike NAAVC, DEA commandeered HIDTA to procure a warrant to search Villanueva's home and the VOLC sanctuary.  Through its power to fund and direct HIDTA, MCSO, Shay, and the other Arizona defendants, the DEA did was unwilling to do directly – contrive probable cause to raid a church for its sacraments. (Carreon Dec. ¶ 22.)  Thus, the sole reasonable interpretation of the facts compels the conclusion that the DEA's Arizona SW HIDTA task force funded operations and personnel to violate Villanueva's civil rights.

Villanueva began the journey that set him on his collision course with the DEA in 2011, when he found a packet labeled "Ayahuasca" among some possessions he had been carrying around for many years.  (Villanueva Dec. ¶ 6.)  When he looked up the word "Ayahuasca" in the Google search engine, he was amazed to discover the world of visionary religion, and felt an immediate attraction to the practice, even though he had not previously considered himself to be a religious person.  (Villanueva Dec. ¶¶ 6 - 8.)

Villanueva's background is in communications, electronics, sound recording, and computer-aided design, skills that he began accumulating as a communications technician during his 7 years in the Navy.  (Villanueva Dec. ¶8.)  He considered himself a hard-headed materialist, but became so interested in Ayahuasca that in 2011, he took a plane to Iquitos, Peru to attend his first Ayahuasca ceremony.  (Villanueva Dec. ¶¶ 7 - 8.)  This experience, continuing to the present day, has transformed Villanueva's view of the world.  (Villanueva Dec. ¶¶ 8 - 9.)  As Villanueva's personal practice of Ayahuasca communion became established, others began expressing interest in the practice. (Villanueva Dec. ¶ 9.)  Accordingly, Villanueva began conducting small ceremonies in California and Arizona, that have blossomed into a small religious congregation that he incorporated as an Arizona religious nonprofit corporation in 2017 called the Vine of Light ("Vine of Light Church" or "VOLC"). (Villanueva Dec. ¶ 9.)

In 2019, Villanueva joined NAAVC as one of three founding Board members, with his friend Scott Stanley serving as the Director of the Board, and enrolled VOLC as the first visionary church to join NAAVC.  (Villanueva Dec. ¶¶ 2 and 10; Stanley Dec.¶ 4.)  Villanueva responded to NAAVC's message that more needs to be done with the DEA and the courts before visionary churches can truly enjoy the promise of Free Exercise held out by the O Centro decision, free of the fear of unlawful searches, seizures, and arrests.  (Stanley Dec. ¶ 5.)  Villanueva voted in favor of sending the DEA Letter and in favor of commencing this litigation on behalf of NAAVC. (Stanley Dec. ¶ 6; Villanueva Dec. ¶¶ 13 - 14.)  By initiating the NAAVC lawsuit, Villanueva and Stanley placed themselves under the jurisdiction of this court. (Stanley Dec. ¶ 7; Villanueva Dec. ¶ 2.)  Villanueva and Stanley both sought to protect their own religious Free Exercise and that of their congregations when they directed NAAVC's counsel to file this action. (Stanley Dec. ¶ 8; Villanueva Dec. ¶ 2.)  Thus, attacks against Villanueva are attacks on NAAVC's Free Exercise, and those of all NAAVC Board members. (Stanley Dec. ¶ 9; Villanueva Dec. ¶ 2.)  Villanueva did not expect that by taking action as a member of NAAVC's board that he would bring himself into a position of danger

with respect to the DEA.  (Villanueva Dec. ¶ 14.)  He fully expected that the DEA would respond to NAAVC's claims through this Court, and not through an *ex parte* criminal search warrant application in another state.  (Villanueva Dec. ¶ 14.)  His expectations were mistaken.

Around 8:30 a.m., on May 19, 2020, Shay and a phalanx of six or seven MCSO deputies wearing "SHERIFF HIDTA" t-shirts, and a finance investigator from the Arizona AG Office, carrying long guns and a battering ram, parked around the corner from Villanueva's home, gathering there for the assault on the Vine of Light Church. (Villanueva Dec. ¶¶ 15, 34; Exhibit 11.)  Although heavily armed, the deputies dressed lightly, as if aware that they would only be confronting two senior citizens living in a visionary church with no guns.  (Villanueva Dec. ¶ 16.)  As they marched to the church, one of the neighbors asked, "Where are you going?"  (Villanueva Dec. ¶ 16.)  They answered gaily, voices joined in sing-song -- *"We're going to serve a search warrant!"* Moments later, after forcing the front gate with a pry-bar, the deputies stood banging loudly on Villanueva's front door, threatening to bring it down if it wasn't opened immediately. (Villanueva Dec. ¶ 17.)  Dressed in only a t-shirt and jockey shorts, Villanueva tumbled out of bed and rushed to open the door, where he was pulled out of his house and put in handcuffs in his front yard, for his neighbors to witness his humiliation.  (Villanueva Dec. ¶ 17.)  From the very start, Shay conducted the MCSO raid with the intent to render Villanueva vulnerable to effective interrogation by providing alternating stimuli, first threatening, then friendly.  (Villanueva Dec. ¶¶ 17 – 18; ¶¶ 24 - 29.)

*First*, Shay threatened Villanueva by taking him into custody, with a substantial show of lethal force, needlessly handcuffing him in his front yard, ignoring his concerns about being exposed to COVID by the deputies swarming around his house without masks, and forcing him to submit to custodial interrogation in his underwear, surrounded by fully dressed law enforcement officers.  (Villanueva Dec. ¶¶ 17 – 18; ¶¶ 24 and 32.) This was done to frighten and humiliate Villanueva, who had no weapons, no record of

having sought to purchase a gun, and no concealed weapons permit; so his profile indicated little to no possibility of armed resistance to a search, and no reason to deploy a large group of heavily armed deputies.  (Villanueva Dec. ¶¶ 19 – 21; Carreon Dec. ¶ 19.) Most notably, Shay knew Villanueva to be a declared Ayahuasca minister teaching a path of love and peace based on visionary communion with the spirit of life, who would respond peaceably if presented with a search warrant.  (Villanueva Dec. ¶ 21.)

*Second*, Shay manifested a genteel demeanor, demonstrated sympathetic interest in Villaneuva's religious and travel activities, and thorough knowledge of his PayPal account.  (Villanueva Dec. ¶¶ 25 and 29.)  Notwithstanding Shay's recital of something that sounded like Miranda warnings, Villanueva cannot remember being told he had the right to have an attorney present during interrogation; accordingly, Villanueva did not think to call the NAAVC Board's attorney to attend an interrogation telephonically. (Villanueva Dec. ¶ 26.)  The attorney could have obliged such a request.  (Carreon Dec. ¶ 23.)

Shay made an audio recording of Villanueva's interrogation, and MCSO deputies recorded videos and took photographs of the VOLC sanctuary and Villanueva's house. (Villanueva Dec. ¶ 27.)  The scope of the search went beyond Villanueva's private home and into that of a lodger who rents a space in the house, and some of the lodger's possessions were seized. (Villanueva Dec. ¶ 28.)

Before Shay left, he adopted a warm and understanding tone in his conversation with Villanueva, stating that it was apparent to him that Villanueva was not a drug dealer, and that he had no idea whether charges might be filed, because he would simply be filing a report, not making any arrest today, and it would be up to a prosecutor whether to proceed with criminal charges.  (Villanueva Dec. ¶ 29.)  Upon reflection, Villanueva realized that Shay's conduct and statements added up to a tacit admission that he lacked probable cause to believe Villanueva was a drug dealer, and knew all along that the presence of sacramental Ayahuasca at the VOLC church was not evidence of criminal conduct.  (Villanueva Dec. ¶ 29.)

Villanueva's life has been injured by the DEA's *ex parte* coup.  (Villanueva Dec. ¶ 30.)  He has no sacrament to share with the VOLC congregation. (Villanueva Dec. ¶ 31.) He is threatened with prosecution. (Villanueva Dec. ¶ 29.)  His mobile phones were seized, and their contents copied. (Villanueva Dec. ¶ 31.)  For the last couple of years, Villanueva had been saving U.S. currency in his home, and had saved enough to upgrade to a vehicle somewhat newer than his 2005 Toyota.  (Villanueva Dec. ¶ 31.) Shay seized the entire amount that Villanueva had saved up, not even recording the amount seized on the receipt.  (Exhibit 9; Villanueva Dec. ¶ 31.)

Villanueva and his wife are both nearly sixty years of age, at high risk of suffering lethal consequences from COVID, and were quarantining when the MCSO threatened to break down their door; nonetheless, MCSO deputies wore no masks and took no precautions to protect the Villanuevas from contamination by the group of eight or nine people who grabbed him and his wife, and handled all of the possessions in their home. (Villanueva Dec. ¶ 32.)  Mrs. Villanueva has symptoms of post-traumatic stress – trouble sleeping, fear of going out, fear that she is not safe in her home, or that strangers could invade at any time and destroy their peace and tranquility.  (Villanueva Dec. ¶ 33.) Due to the economic stress imposed by the HIDTA raid, Villanueva is unable to continue quarantining despite the risk to his health, and has resumed offering his services as an on-site computer consultant. (Villanueva Dec. ¶ 34.)  The DEA and the Arizona defendants demonstrated deliberate indifference to the health and civil rights of the Villanuevas when they forced their way into the home where the vulnerable couple were quarantining, with a warrant obtained by a bad faith affidavit, not to search for evidence of crime, but merely to act out a pretext for a home invasion under color of law, at the behest of the DEA.  (Villanueva Dec. ¶ 35.)  The HIDTA raid has truncated Villanueva's Free Exercise and that of the VOLC congregation; additionally, it has chilled the Free Exercise rights of the other NAAVC Board members, and placed them in implicit peril of suffering the same assault on their civil rights as the HIDTA raid visited upon Villanueva.  (Stanley Dec. ¶ 12.)  The equities of the case have been violently disrupted,

and the prejudicial consequences can be remedied only through this Court's issuance of an order restoring the *status quo ante,* to level the playing field going forward, and most importantly, to protect the plaintiffs from irreparable harm to their First Amendment freedoms of religion, speech, and association.  (Carreon Dec. ¶ 24.)

## III.   <u>ARGUMENT</u>

### A.   **Plaintiffs Submitted Themselves to the Jurisdiction of This Court**

NAAVC and AYA filed this action in California, their states of incorporation, and properly joined the federal defendants in this venue.  Villanueva and Stanley, acting as NAAVC's Board members, directed counsel to file suit against the DEA to protect themselves and their congregations from the DEA conduct complained of in the Complaint (Docket # 1).  (Stanley Dec. ¶ 8; Villanueva Dec. ¶ 2.)   While Villanueva was not personally named in the original Complaint, as a Board member he was subject to the Court's jurisdiction, and he has now been joined as a plaintiff in the FASC (Docket # 12). As the Supreme Court explained in *Burwell v. Hobby Lobby Stores*:

> [T]he purpose of extending rights to corporations is to protect the rights of people associated with the corporation, including shareholders, officers, and employees. Protecting  the free-exercise rights of closely held corporations thus protects the religious liberty of the humans who own and control them.
>
> *Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 683-684, 134 S. Ct. 2751, 2759, 189 L.Ed.2d 675, 683 (2014).

In this case, NAAVC and AYA came to Court seeking to protect, "the religious liberty of the humans who control them," Villanueva and Stanley.

### B.   **The Conspiracy Injured NAAVC in This Litigation**

Shay, MCSO, and the Arizona AG transmitted the DEA's retaliatory animus to NAAVC through its assault on Villanueva's civil rights.  Arizona SW HIDTA's reach is vast, and allows the DEA to strike anywhere in the nation, but the geographic location of the search is incidental to the influence the DEA wished to have, and has had, on this litigation.  Villanueva had sought the Court's protection for his Free Exercise by asserting the associational standing of all NAAVC visionary church members seeking the same protection.  The attack on Villanueva's rights was therefore an attack on the fair and

equitable character of these proceedings, which it is within this Court's power to protect by means of prohibitory orders, governing the conduct of the litigants.  Tortious acts directed at interfering with the course of justice, like all tortious acts causing intentional injury, give rise to jurisdiction in the forum where the damage occurred.

> When an intentional tort claim is asserted, purposeful availment of the privilege of conducting activities in the forum state can be met by the "purposeful direction of a foreign act having effect in the forum state."
> *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004)

The damage was directed and caused injury to the plaintiffs' rights in this Court; therefore jurisdiction over the Arizona Defendants is proper here.

## C.    This Court May Enjoin the DEA and the Arizona Defendants

This Court has jurisdiction over all of the defendants, who have been served with the initiating process.  Service on DEA and other federal defendants was accomplished per the proofs of service filed on June 3, 2020.  (Docket # 11.)  A supplemental Summons was issued for the Arizona Defendants (Docket # 15) to accompany the FASC (Docket # 12), and all were served on June 30, 2020.  (Carreon Dec. ¶ 25; Exhibit 10.)  This Court has supplemental jurisdiction over the FERA under 28 U.S.C. §1367.

The DEA is subject to injunction.[12]  "It is well settled that federal officials sued in their official capacity are subject to injunctive relief under § 1983 if they 'conspire with or participate in concert with state officials who, under color of state law, act to deprive a person of protected rights.'" *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992), *quoting Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir. 1983).  "[T]he relevant inquiry focuses not on whose law is being implemented, but rather on whether the authority of

---

[12] Immunity is not an issue on this motion.  "Congress expressly waived whatever sovereign immunity the United States enjoyed from prospective relief when it amended § 702 of the Administrative Procedure Act ("APA") in 1976. HN7 Section 702 now provides [**16] a broad waiver of immunity for injunctive actions filed against the federal government. Contrary to the assertions of the federal defendants, this Court has repeatedly found that § 702 waives the sovereign immunity of the United States with respect to any action for injunctive relief under 28 U.S.C. § 1331".  *Cabrera v. Martin*, 973 F.2d 735, 741, (9th Cir., 1992), *citing* 5 U.S.C. § 702.

the state was exerted in enforcing the law." *Tongol v. Usery*, 601 F.2d 1091, 1097 (9th Cir. 1979), *quoting United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941); *Green v. Dumke*, 480 F.2d 624, 628-29 (9th Cir. 1973).  "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995), *quoting Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir. 1983), *cert. denied*, 465 U.S. 1078, 79 L. Ed. 2d 760, 104 S. Ct. 1439 (1984), *quoting United States v. Classic*, 313 U.S. 299, 326, 85 L. Ed. 1368, 61 S. Ct. 1031 (1941).

Shay is subject to injunction.  State officials sued in their personal capacity are persons for purposes of § 1983. See *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992). "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Liability in a personal-capacity suit can be demonstrated by showing that the official caused the alleged constitutional injury. See id. at 166.

Maricopa County and the Arizona Attorney General, in his capacity as the State of Arizona, are subject to injunction.  *Miranda v. Clark County, Nev.*, 319 F.3d 465, 469 (9th Cir. 2003), *en banc*; *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), overruled on other grounds by *Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010), *en banc*.

### D.    A Preliminary Injunction is Needed to Restore the *Status Quo Ante*

The sole purpose of a preliminary injunction is to 'preserve the status quo ante litem pending a determination of the action on the merits.

*Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009), *quoting L.A. Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir.1980).

In evaluating the merits of a motion for preliminary injunctive relief, the court considers whether the movant has shown that "he is likely to succeed on the merits, that

he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc*., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

Section 1983 actions are not subject to the Anti-Injunction Act, 28 U.S.C. § 2283, that bars federal courts from enjoining state-court proceedings unless expressly authorized to do so by Congress. *See Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972); *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 468 (9th Cir. 1984).   As plaintiffs have set forth in the foregoing statement of facts, the DEA used its power to influence state law enforcement authorities to take action under color of law against Villanueva, a represented party, in a separate, *ex parte* judicial proceeding in the State of Arizona.  The result has been a civil rights calamity.  The equities in this proceeding have been intentionally attacked by the DEA, determined to get extrajudicial leverage against NAAVC, just as tried to obtain leverage against the UDV and the Daime by mounting criminal seizures in response to their petitions to the DOJ for CSA exemptions.  The DEA simply will not compete on a level playing field if a tilted one can be arranged. This Court must deny the DEA the unlawful advantages it has sought to secure by executing a conspiracy against Villanueva, grounded in retaliatory animus.  That is the purpose of the injunctive authority of 42 U.S.C. § 1983, and it is properly invoked here to remedy the DEA's unlawful acts.[13]

E.   **NAAVC Triggered the DEA's Retaliatory Animus by Submitting A Petition for Redress of Grievances to the DEA in January 2020**

The Guidance issued by the DEA was the sole support of its policy justifying denial of regulatory services to visionary churches since it was issued in 2006, and well served the agency's policy of denying regulatory services to visionary churches.

_____

[13] The Court's authority does not end with Section 1983.  In addition to the adjudicative authority of the declaratory relief statute, the Court has equitable authority over the conduct of its own proceedings.  As long as a party receives an appropriate hearing, the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 57, 111 S. Ct. 2123, 2139 (1991).  A breach of the ethical prohibition on *ex parte* contact with represented litigants would certainly be remediable under the Court's inherent powers.

(Carreon Dec. ¶ 13.)  The Guidance was also a useful offensive weapon, providing a pretext for issuing *de facto* cease and desist orders to chill Free Exercise throughout the entire visionary church community. (Carreon Dec. ¶ 14.)  Until AYA and NAAVC started sponsoring analysis of the constitutional and administrative law defects in the Guidance, there was no indication that visionary churches realized that the Guidance was actually a ruse to keep them from filing RFRA lawsuits. (Carreon Dec. ¶ 14.)  NAAVC pushed the analytic process forward in the community of visionary church lawyers, and popularized the results of the analysis by drafting a letter to the DEA recommending that the Guidance be rescinded, combined with a petition campaign at Change.org to request the DEA to "stop regulating visionary religion."  (Carreon Dec. ¶¶ 15 - 17.)

NAAVC's DEA Letter was a petition for redress of grievances under the First Amendment, sent by U.S. Mail to the Acting Director of the Office of Diversion Control, and to the personal email addresses of several DEA and DOJ attorneys.  (Carreon Dec. ¶  12.)  Upon receiving it, the DEA conceived retaliatory animus towards NAAVC, because the Guidance had been the bedrock of the DEA's anti-visionary religion policy, and NAAVC had exposed it, and stimulated a dialogue that moved other lawyers to opine that the Guidance lacks all force of law.  *Eg.,* B.Bartlett, *The U.S. Drug Enforcement Administration Problematic Process for Religious Exemption for Use of Prohibited Psychoactive Substances* (July 16, 2019).[14]  Thus, rather than respond in this action with pen and paper, the DEA decided to reach out and touch Villanueva, and let him know just what kind of game he had gotten into.

Before it lost the UDV and Daime cases,[15] the DEA would have applied to a U.S. District Court to get a warrant, and send federal agents to execute it.  However, the DEA ultimately lost the proceedings that it initiated by executing warrants in the UDV and Daime cases, when the UDV prevailed in the District Court of New Mexico, Fifth

---

[14] https://tinyurl.com/y8kplc73

[15] *Gonzalez v. O Centro Beneficente Uniao do Vegetal,* 546 U.S. 418, 126 S. Ct. 1211, 163 L.Ed.2d 1017 (2006); and *Church of the Holy Light of the Queen v. Mukasey*, 615 F.Supp.2d 1210 (Oregon 2006).

Circuit, in the Supreme Court, and also in the District Court of Oregon, winning a fee award.  (Carreon Dec. ¶ 10.)  Indeed, a cautious AUSA might well refuse to seek a warrant to search an Ayahuasca church, given the holdings in the UDV and Daime cases.

### F.   Pursuant to a DEA-Instigated Conspiracy Driven by Retaliatory Animus Against NAAVC, the Arizona Defendants Obtained and Executed a Search Warrant Against NAAVC Board Member Clay Villanueva

The search on May 19th was the product of a conspiracy incubated with HIDTA funding and direction, that brought together several actors – Shay, MCSO, and the Arizona AG's Office, who until then, had no interest in searching the homes of Ayahuasca ministers to seize their Ayahuasca sacrament.  (Villanueva Dec. ¶¶ 20-23; Carreon Dec. ¶¶ 18-22.)  The only connection any of them had with Ayahuasca was that they all had staff detailed to the DEA-funded HIDTA task force.  Shay admitted he was directed to do the search in February 2020.  (Villanueva Dec. ¶ 29.)  Villanueva had done nothing to attract the attention of local law enforcement, and the only reference Shay made to the cause of the search was that it "came across his desk in February." (Villanueva Dec. ¶ 29.)  There was only one logical source for this assignment – the DEA.  (Carreon Dec. ¶ 22.)

### G.   The DEA/MCSO Raid Was Intended to Influence or Prevent Villanueva's Testimony in this Action, and Compromise the Fairness of This Proceeding

Villanueva was, from the outset, intended to be a key witness for plaintiffs, both as an NAAVC Board member who can articulate the nature and purpose of NAAVC's ministry and Free Exercise, and as the VOLC minister, with a congregation eager to receive sacramental Ayahuasca from a safe, reliable, lawfully-approved source free of CBP interdiction and DEA scrutiny.  (Carreon Dec. ¶ 24; Villanueva Dec. ¶ 36.)  The raid was concocted for retaliatory effect with intent to alter Villanueva's posture in this litigation, by influencing or preventing Villanueva's testimony, and by fishing for evidence outside of discovery in this action, to deter Villanueva from testifying for NAAVC, and to attempt impeachment when he testifies.  This is the black-letter definition of witness tampering, made unlawful by 18 U.S.C. § 1512(a)(2(A) (using

physical force to influence, delay or prevent testimony in an official proceeding). The DEA and DOJ have in the past made use of evidence seized by warrant against the Daime church in the Oregon *CHLQ v. Mukasey* trial.[16]

Although 18 U.S.C. § 1152, the federal witness tampering statute, grants no private right of action,[17] in order to protect the integrity of these proceedings and the administration of justice, the Court may properly take notice that the acts of defendants are by nature so injurious to the processes of justice that they are subject to criminal prosecution.  Under other circumstances, the DOJ has argued that a state court conviction for witness tampering was a conviction for a "crime involving moral turpitude." [18]

Certainly, the DEA's incursion on Villanueva's rights was a corrupting act that usurped the judicial authority of the State of Arizona to (1) satisfy retaliatory animus against Villanueva as NAAVC Director and civil litigant, (2) intimidate Villanueva as witness, and (3) chill Villanueva's personal and ministerial rights of Free Exercise. Unfortunately for plaintiffs, the federal prosecutors authorized to charge such misconduct as witness tampering are likely in sympathy with the perpetrators.  Accordingly, for this ongoing injury to their rights of Free Exercise, they have no remedy at law.  Plaintiffs' claims merit a remedy for manifest, Government-instigated state law enforcement misconduct.  An order prohibiting the DEA from profiting from its misdeeds is necessary to protect the integrity of the judicial process, and thereby, to protect plaintiffs from the

---

[16] The DOJ and the DEA introduced marijuana seized by DEA Agent Dan Lakin in the search of plaintiff Jonathan Goldman's property, to impeach his religious sincerity.  Although Judge Panner dismissed the argument, pointing out that religious people don't have to adhere perfectly to every tenet of their religion to be sincere, the DOJ made the most of what it had obtained. "Defendants point out that when federal agents raided Goldman's house in 1999 to confiscate a shipment of Daime tea, they also seized an unspecified amount of marijuana from Goldman's bedroom."  *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1213-14 (D. Or. 2009)

[17] *Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-cv-03131-WHO, 2013 U.S. Dist. LEXIS 144985, at *32 (N.D. Cal. Oct. 4, 2013).

[18] *Vasquez-Valle v. Sessions*, 899 F.3d 834 (9th Cir. 2018) (reversing BIA finding that state court conviction for witness tampering was a crime involving moral turpitude as a matter of law).

chilling of Free Exercise within their religious sanctuaries, and of their access to a level playing field in litigation within this Court.

### H.   The DEA/MCSO Raid Chilled Villanueva's Rights of Free Exercise, Free Religious Expression, and Freedom of Association

The HIDTA raid had no legitimate criminal prosecution purpose, because Shay lacked probable cause to believe a crime had been committed at the Villanueva home, and didn't acquire any evidence of criminal conduct while he was there.  The seizures of VOLC's sacramental Ayahuasca, and his other property, interrupted his Free Exercise as VOLC's minister, and caused him economic injury that forced him to abandon quarantining from COVID to do computer consulting in people's homes and offices. (Villanueva Dec. ¶ 34.)  Economic injury always leads to psychological stress, and the desire to reduce stressful stimuli, such as interacting with lawsuits and courts.  The raid was therefore essentially a psychological operation, conducted for its projected effect on Villanueva and NAAVC, and it had negative psychological effects on Villanueva and his wife.  (Villanueva Dec. ¶¶ 30 -33.)  Villanueva's wife is now suffering post-traumatic stress.  (Villanueva Dec. ¶ 33.)  Being unable to remain in quarantine because he has lost his ministerial livelihood and savings, Villanueva cannot now enjoy the peace of mind of knowing that he is staying safe at home, and must venture forth into the commercial environment in a state where the infection rate has at times been the highest in the world. (Villanueva Dec. ¶ 34.)  The arbitrary infliction of psychological trauma on the Villanuevas for strategic purposes makes the conduct of the DEA's conduct a fit target for this Court's strong censure, in order to deter future such misconduct.

### I.   Villanueva is Likely to Prevail on His Section 1983 Claim

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Villanueva has shown a probable likelihood of success on his claim that the DEA and the Arizona Defendants conspired to make him the retaliatory target of the DEA's animus towards NAAVC.

> Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.
>
> *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 1701, 164 L.Ed.2d 441, 451 (2006)(citations in note below).[19]

Villanueva's evidence establishes a clear case of retaliatory conduct directed at punishing his participation, as Board member and VOLC minister, in NAAVC's pro-visionary religion advocacy. The effect of the unlawful search has been to truncate Villanueva's work as VOLC's minister by depriving him of the sacrament he administers, thus destroying the basis for his relationship with his congregation, his Free Exercise, his Free Expression, and his Freedom of Association. (Villanueva Dec. ¶¶ 30 – 31.) These facts establish a probable likelihood of prevailing on the Sec. 1983 claim.

> To state a First Amendment infringement of freedom of association claim *** plaintiffs must plead that the individuals actions imposed a "serious burden upon, affect[ed] in a significant way, or substantially restrain[ed]" the plaintiffs' ability to associate. To state a First Amendment claim for infringement of free speech *** a plaintiff must allege facts showing that "by his actions the defendant deterred or chilled the plaintiff's speech and such deterrence was a substantial motivating factor in the defendant's conduct." A plaintiff need not show that his or her speech was actually inhibited or suppressed, but that "an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."
>
> *Mandel v. Bd. of Trustees. of the Cal. State University*, 2018 U.S. Dist. LEXIS 39345, *27-28, 2018 WL 1242067 (N.D. Cal. March 9, 2018) (Citations omitted.)

---

[19] *Citing Crawford-El* v. *Britton,* 523 U.S. 574, 588, n. 10, 592, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)*,* and *Perry* v. *Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) (government may not punish for engaging in "constitutionally protected speech").

Villanueva's Section 1983 claim warrants injunctive relief because he was subjected to treatment that would chill or silence a person of ordinary firmness from future acts of Free Exercise, Free Expression, and Petitioning for Redress.  His Free Exercise and Freedom of Association have been severely chilled by an actionable conspiracy instigated by the DEA, using Arizona SW HIDTA as a platform for all of the Arizona Defendants to do the DEA's bidding with DEA funding.

"[F]ederal officials, who act in concert or conspiracy with state officials to deprive persons of their federal rights, may be held liable for prospective relief under § 1983 when sued in their official capacity. *Cabrera*, 973 F.2d 735, 741 (9th Cir. 1992)(citations omitted).  "This Circuit held that a federal health official who collaborated with a state official in publishing a report could be held liable under § 1983 since the state defendant had 'significantly participated in the [federal defendant's] challenged activity.'"  *Cabrera*, 973 F.2d at 741, *quoting Merritt v. Mackey*, 932 F.2d 1317, 1323 (9th Cir. 1991).

> "The record reflects substantial cooperation between the state and federal governments, which cooperation carried significant legal implications. Accordingly, I find that the federal defendants acted under color of state law and are liable for attorney's fees."  *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992).

In this action, as in *Cabrera*, federal-state cooperation through HIDTA has lead to "significant legal implications," *i.e.*, Section 1983 liability.  *Cabrera at id.*

### J.   Plaintiffs Will Suffer Irreparable Harm If Preliminary Injunctive Relief Is Not Granted

A prime purpose of injunctive relief is to prevent "intangible injuries" that are not remediable in damages, including physical injury, pain, suffering, death, and injury to reputation. *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (because they lack adequate remedies, "intangible injuries" constitute irreparable harm). In the current COVID pandemic, where the criminally accused are exposed to dangerously crowded and unsanitary conditions, being exposed to garden variety prosecutorial overreach could be fatal; accordingly, conduct that will cause such injury may be enjoined.  *Harris v. Bd. of Supervisors, Los Angeles Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004) (physical harm including pain, suffering and death constitute irreparable injury

for purposes of injunctive relief).  The MCSO/DEA raid was injurious to Villanueva's reputation, as any shadow of criminal accusation is for a person practicing a religious ministration.  Accordingly, additional retaliatory acts to further damage his reputation may be enjoined.  *Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 520 (9th Cir. 1984) (harm to reputation is irreparable injury).

Villanueva will suffer irreparable harm if the conspiracy against him is not restrained by injunction.  Having been the victim of an armed and unlawful search under color of law, he fears Government investigation and prosecution, injury to his Free Exercise and Freedom of Association, the complete interruption of his means of religious practice, and loss of privacy and personal security. (Villanueva Dec. ¶¶ 30 – 31.)

## K.    The Balance of the Hardships Tips Sharply Towards the Plaintiffs

The Court need not balance the equities where "the defendant's conduct has been willful."  *United States EPA v. Environmental Waste Control, Inc.,* 917 F.2d 327, 332 (7th Cir. 1990).  NAAVC, AYA, Villanueva, and Stanley are suffering irreparable harm to their Free Exercise and sense of civil security, an injury that continues as long as the DEA's conspiracy against them is allowed to continue unchecked, and may lead to further abuses if not promptly redressed.  Nor will redressing the defendants' abuses cause them any cognizable legal harm, but merely blunt the illicit advantage obtained by unconstitutional acts under color of law.  The defendants will suffer no hardship from being enjoined that will remotely compare with the potential future injury to plaintiffs' First and Fourth Amendment rights that arises from the DEA's misconduct, and the Arizona Defendants' collusion with them.  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010).

Under the Court's power to control the litigation so as to do complete equity between plaintiffs and the DEA, this Court should enter prohibitory orders to restore the *status quo ante* the DEA's initiation of retaliatory action against NAAVC.  The DEA and Arizona Defendants cannot seriously complain of this remedy, that eliminates the unlawful advantage they would otherwise obtain.  Defendants would therefore "suffer no

cognizable hardship" because they are "merely being prevented from engaging in unlawful activity." *DISH Network L.L.C. v. Rios*, No. 2:14-cv-2549-WBS-KJN, 2015 U.S. Dist. LEXIS Case No. 3:15-cv-3522 21sf-3559156 18285, *17 (E.D. Cal. Feb. 13, 2015) (granting injunctive relief).

The defendants violated the constitutional rights of Villanueva to obtain evidence against him; accordingly, they have no right to distribute information that was "acquired by improper means." *See, e.g., DVD Copy Control Assn., Inc. v. Bunner*, 31 Cal. 4th 864, 887 (2003) (approving injunction enjoining defendant from distributing content that was "acquired by improper means").

## L.    To Restore the *Status Quo Ante,* The Court Should Prohibit Exploitation of Tactical Advantages Gained by Searching Villanueva's Home and Church

The Court has authority to issue any procedural orders that will protect the equitable character of these proceedings by prohibiting a party that has acted unlawfully to gain unfair advantage from its misdeeds.  In the current situation, there is a considerable risk that, if not enjoined, the DEA and the Arizona Defendants will continue to use "law enforcement communications resources," such as HIDTA, to continue their conspiracy against NAAVC and Villanueva under the guise of working a joint defense. Accordingly, the Court should enter a prohibitory order enjoining all defendants from interfering with NAAVC, its Board of Directors, AYA and its congregation, and Villanueva and the VOLC congregation ("Plaintiff's Personnel") by:

1.    Criminally investigating Plaintiff's Personnel and/or sharing information about Plaintiff's Personnel with other law enforcement agencies, in any jurisdiction;

2.    Making use of any of the materials seized, observed, photographed, or video-recorded during the HIDTA raid of VOLC in this litigation against NAAVC, AYA, VOLC, or any of Plaintiff's Personnel;

3.    Retaining any of the property seized from Villanueva and VOLC;

4.  Performing any acts intended to cause damage to the person, property, or Free Exercise of NAAVC, AYA, Villanueva, or Stanley;

5.  Utilizing police resources such as the NCIC database, the DEA's Hemisphere program, or other resources designed for criminal investigation, to investigate Plaintiff's Personnel; and/or

6.  Joining AYA's Facebook group for purpose of surveilling its activities and personnel.

## M.   The Public Interest Favors Injunctive Relief

"[T]he public interest is a factor which courts must consider in any injunctive action in which the public interest is affected." *Am. Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 967 (9th Cir. 1983).  NAAVC's ministry includes increasing awareness of the substantial burdens on visionary church Free Exercise.  The DEA Letter was written, and this action was filed, to advance the public interest in the Free Exercise of visionary religion for the benefit all people and society as a whole.  For their troubles, plaintiffs' received a threatening message from the DEA.  (Stanley Dec. ¶ 18.)  The public interest favors the prophylactic prohibition of further unlawful governmental conduct that has already chilled First Amendment Free Exercise, Free Speech, and Free Association.

## N.   Plaintiffs Should Not Be Required to Post a Bond.

The Ninth Circuit allows no bond, or a nominal one, where there is little or no likelihood of harm to the party enjoined. *E.g., Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).  Security may be waived where the injunction serves a public interest. *Barahona-Gomez*, 167 F.3d at 1237.  That is the case here.  Further, if the Court issues the requested injunction, the DEA, the DOJ, and the Arizona Defendants, will be where they should have been if they had not instigated and executed a retaliatory conspiracy to punish NAAVC for petitioning for redress of grievances.  Accordingly, the defendants cannot show the good cause required by Civil L.R. 65-1(a) for requiring a bond.

IV.   **<u>CONCLUSION</u>**

For all of the above reasons, the Court is requested to issue a preliminary injunction in the form submitted herewith, to remain in force until entry of final judgment.

Dated:  July 22, 2020         CHARLES CARREON, ESQ.
                                  By: /s/Charles Carreon
                                  CHARLES CARREON (127139)
                                  Attorney for Plaintiffs
                                  Arizona Yagé Assembly.
                                  North American Association of Visionary Churches,
                                  Clay Villanueva