CHARLES CARREON (CSB # 127139)
3241 E. Blacklidge Drive
Tucson, Arizona 85716
Tel:  628-227-4059
Email: chascarreon@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches, and
Clay Villanueva

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANEUVA,<br><br>Plaintiffs,<br><br>vs.<br><br>WILLIAM BARR, Attorney General of the United States; UTTAM DHILLON, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Dept. of Homeland Security; MARK A. MORGAN, Acting Commissioner of U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Dept. of Diversion Control, in my personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY,<br><br>Defendants. | Case No.: 3:20-CV-03098-WHO<br><br>DECLARATION OF CLAY VILLANUEVA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION TO RESTORE *STATUS QUO ANTE*<br><br>Date:  August 26, 2020<br>Time:  2:00 P.M.<br>Courtroom:  2 (17th floor) |

Clay Villanueva declares and affirms:

**1.** I am one of the three founding members of the Board of Directors of the North American Association of Visionary Churches, plaintiff herein. I am also the founder of

the Vine of Light Church, that offers sacramental Ayahuasca communion as its form of religious Free Exercise and Free Religious Expression.  I make this declaration in support of plaintiff's Ex Parte Application for Temporary Restraining Order and Preliminary Injunction to Restore *Status Quo Ante* on personal knowledge.  If called as a witness, I could and would so competently testify.

**2.**   I placed myself under the jurisdiction of this Court on May 5, 2020, when NAAVC filed this action, because I had been a founding Board member of NAAVC since the first day of incorporation, July 3, 2019.  In my capacity as NAAVC Board member, I directly authorized the commencement of this litigation, by which we sought to protect the Vine of Light, my congregation, and my pastoral status from Government interference.  My status as a Board member and my home address was determinable from the Statement of Information filed September 17, 2019, that since then and currently appears in public records online in the California Secretary of State business registry of California-incorporated religious nonprofit corporations, of which NAAVC is one.

**3.**   I have now joined the action as a name plaintiff, and the plaintiff most centrally aggrieved by the acts alleged in the Third Claim for Relief alleging constitutional torts under Section 1983 in the First Amended and Supplemental Complaint (the "FASC").

**4.**    I became a practitioner of visionary religion unexpectedly, and it transformed my life.  I left my home in rural Florida in 1979 to join the Navy.  I qualified for technical occupations based on vocational testing, and became trained in communications and diving.  I was regularly promoted, and was honorably discharged in 1985 as a Petty Officer First Class, equivalent to a Army Sergeant in rank.

**5.**    I worked successfully in various technical fields after my discharge from the Navy, in communications, multimedia systems, sound recording, and computer-aided design, eventually becoming the lead IT professional at a major business furnishings manufacturer that was acquired by Target in 2007, for whom I continued to work as a contract consultant until 2013.

6. In 2011, I was prompted to use a search engine to look up the word, "Ayahuasca," when I discovered it written on a labeled packet among my personal effects from years past. I remembered that, almost twenty years before, someone had given me the packet with the statement, "I somehow feel that you should have this." That person had no knowledge of what the word "Ayahuasca" meant or what was in the packet. I had never investigated the packet contents or been curious enough to research the topic, so when I finally did, I was astounded to discover the existence of the world of Amazonian visionary religion, based on this sacrament called Ayahuasca.

7. I immediately felt compelled to travel to Peru and drink Ayahuasca at a shamanic healing center in Iquitos, Peru. When I arrived, I discovered that I was the only "passenger" (as the center described those who came to receive Ayahuasca) scheduled to attend ceremonies during the time I was there.

8. My experiences were unusually powerful, and radically restructured my view of reality. My background in the military, technology, and commerce had given me a materials-based perspective on reality that allowed me to manipulate material reality effectively. Ayahuasca communion revealed a realm of human action where the power of Divine Love is the central governing force, and harmonious human action flows from continuous compassionate awareness. The healing center facilitators perceived the unusual intensity of my communion experience, which were intensely visionary and unusually prolonged. During the communion state, I displayed an intuitive ability to play traditional shamanic musical instruments, and in other ways demonstrated a comfort level with the Ayahuasca communion experience rarely seen among novices.

9. My life slowly transformed over the next six years. I returned to Peru to receive communion again in 2014 and 2015, and eventually received guidance to drink Ayahuasca regularly on a weekly basis, a discipline I continued for approximately one year. Eventually, I began to share Ayahuasca with a small circle in California, and then in Arizona as well.

**10.** In 2017, I incorporated the Vine of Light Church as an Arizona nonprofit corporation. In 2019, the Vine of Light Church joined NAAVC as its first member church.

**11.** I have conducted ceremonies as the minister of the Vine of Light Church in California and Arizona on a substantial number of occasions over the last two years, placing special emphasis on ministering to veterans suffering from PTSD, and members of the African American community. I assert a state law claim against the Arizona defendants under the Court's supplemental jurisdiction,[1] arising under the same common nucleus of facts as the claims alleged in plaintiff's initiating Complaint (Docket # 1). I assert entitlement to a religious exemption from state law burdening my Free Exercise under the Arizona Free Exercise of Religion Act ("FERA"), A.R.S. § 41-1493.01.

**12.** My practice of Ayahuasca communion is the Free Exercise of religion and Free Religious Expression.

**13.** The decision to file this action was made directly by the NAAVC Board members. We initiated this action for the declared purpose of protecting ministers and congregations of visionary churches, including myself and the Vine of Light Church, from CSA enforcement action by the DEA and all agencies the United States Government. NAAVC and its Board of Directors, of which I am a founding member, placed themselves under the jurisdiction of this Court by filing this action, and prayed protection from DEA interference with our Free Exercise.

**14.** When I cast my vote as an NAAVC Board member to direct our counsel to initiate this action, I knew I could expect to be subject to discovery demands, and perhaps a deposition, but I did not think that I would open myself to an attack on my civil rights by the DEA. My wife and I live quiet lives, and were quarantining away from the world when suddenly, the quiet of our ordinary life was shattered.

**15.** The person the DEA used to disrupt my life was Maricopa County Sheriff's Office Detective Matthew Shay ("MCSO" and "Shay"). Around 8:30 a.m. on May 19, 2020,

---

[1] 28 U.S.C. § 1367.

Shay and a phalanx of six or seven MCSO deputies, and a finance investigator from the Arizona AG Office, carrying long guns and a battering ram, parked around the corner from my home, gathering there for an assault on the Vine of Light Church ("VOLC").

16.  Although heavily armed, the deputies dressed lightly, as if aware that they would only be confronting two senior citizens living in a visionary church with no guns. As they marched to the church, one of the neighbors asked, "Where are you going?" They answered gaily, voices joined in sing-song -- *"We're going to serve a search warrant!"*

17.  Arriving at my home, the VOLC sanctuary, the deputies banged loudly on the door, threatening to bring it down if it wasn't opened immediately. I tumbled out of bed and rushed to open the door, dressed in a t-shirt and jockey shorts.  Shay, the deputies and other law enforcement personnel, immediately took control of me and cuffed me in the front yard, for every neighbor and passerby to observe my humiliation.

18.  Shay indulged in an extreme and unnecessary show of force to serve a warrant on a fifty-nine year-old religious man, a retired Navy non-commissioned officer, at my church-residence.

19.  Shay delivered a search warrant issued by a Maricopa County Justice of the Peace, which I would have no reason or means to resist by force.

20.  I have no weapons, no criminal record, and no criminal background whatsoever.

21.  Before the raid described in this motion, I had a publicly viewable online record of conducting visionary church ceremonies using Ayahuasca as Free Exercise displayed on my website at www.smilequick.com.  Shay told me he had studied the website contents in detail, and remarked on the beauty of the Amazon jungle scenery.  From that website, he would have determined that, through VOLC, I am teaching a path of love and peace based on visionary communion with the spirit of life, and would respond peaceably if presented with a search warrant.

22.  As a Navy communications officer, I was trained in keeping military secrets, and know how to manage information flow discreetly.  VOLC had no interactions with local law enforcement, health authorities, or other government agents.  VOLC's media profile

was discreetly managed, and generated no interest from local news media.  VOLC made no effort to proselytize, and I held VOLC ceremonies only for trusted individuals whose religious sincerity was confirmed.  There was no "word on the street" about VOLC.

23.  VOLC's sacrament was secured from trusted sources that did not transmit information to the DEA or the Arizona defendants.

24.  I of course felt threatened and frightened by being arrested, placed in handcuffs, and surrounded by men with guns and rifles.  Shay threatened me by arresting me in my own home with a substantial show of force, cuffing me unnecessarily, not allowing me to get dressed in street clothes, and ignoring my concerns about being exposed to COVID by the deputies swarming around my house without masks.

25.  Shay also demonstrated sympathetic interest in my religious and travel activities, and a thorough knowledge of my PayPal account.

26.  Notwithstanding Shay's recital of something that sounded like Miranda warnings, I cannot remember being told I had the right to have an attorney present during interrogation; accordingly, I did not think to call the NAAVC Board's attorney to attend an interrogation telephonically. I understand now that our attorney would have obliged such a request, but I did not realize I had the right to make that request.

27.  Shay audio-recorded my interrogation, and MCSO deputies recorded videos and took photographs of the VOLC sanctuary and my house.

28.  The scope of the search went beyond my private home and into that of a lodger who rents a space in the house, and some of the lodger's possessions were seized.

29.  Before Shay left, he adopted a warm and understanding tone in his conversation with me, stating that it was apparent to him that I was not a drug dealer.  Shay said that he worked in "HIDTA."[2] He said the matter of VOLC had "come across his desk" in February of this year, but he had not gotten the search warrant until now because of delays due to the COVID pandemic.  He said that he had greatly enjoyed the video of one

---

[2] I had not heard of HIDTA before Shay mentioned the acronym.

**CASE # 3:20-cv-03098-WHO**
**DECLARATION OF CLAY VILLANEUVA IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION TO RESTORE *STATUS QUO ANTE***

6

of my trips to Peru, and that it looked like a fun adventure. I am confident he would not have said this if I he had believed I were engaged in criminal activity. He said he had no idea whether charges might be filed, because he would simply be filing a report, not making any arrest today, and it would be up to a prosecutor whether to proceed with criminal charges. Upon reflection, Shay's conduct and statements add up to a tacit admission that he never had probable cause to believe I was committing a crime. Before Shay left, he verbally assured me that his recommendation would be for leniency, and his manner expressed doubt that he had seen any evidence of criminal conduct. Accordingly, prior to the search, he must have had even less information, and therefore less basis for thinking VOLC's activities to be anything but sacramental Free Exercise.

**30.** My life and my wife's life have been injured by the DEA's coup against our privacy and property, and it has a chilling effect on my Free Exercise of religion to be shadowed by the fear of further harassment by MCSO, Shay, and the Arizona defendants, who continue to be at the disposal of the DEA through the HIDTA program.

**31.** My Free Exercise, and my ministry through VOLC, has been interrupted, because I have no sacrament to share with the VOLC congregation. My mobile phones were seized, and their contents copied. Shay seized a very substantial sum of U.S. currency in what I had presumed was a safe place in my home, that I was saving for a newer used vehicle. MCSO did not record the amount seized on the receipt.

**32.** My wife and I both are almost sixty years of age, at elevated risk of suffering severe and deadly consequences from COVID, so we were quarantining when the MCSO threatened to break down our door. MCSO took no precautions to protect us from contamination by the group of eight or nine people, none wearing masks, who grabbed me and my wife, and handled nearly all of the possessions in our home.

**33.** The invasion of our home by armed men has triggered strong emotional fears in my wife, who now fears to leave our home, and does not even feel safe in our home. Her sleep is disturbed, and she has symptoms of post-traumatic stress, a condition with which I am familiar from my work as the VOLC minister.

34.  Due to the economic stress imposed by the MCSO raid, I was unable to continue quarantining, so despite the risk to my health, I have resumed offering my services as an on-site computer consultant.

35.  The DEA and the Arizona defendants demonstrated deliberate indifference to my health and civil rights when they used a warrant, secured on a pretext of narcotics enforcement by an HIDTA detective, to barge into a home where a vulnerable couple were quarantining. It is painful to know that they were not there to search for evidence of a crime, but merely to act out a pretext for a home invasion under color of law, at the behest of the DEA, to send me a message about just how much Free Exercise I would have without a court order to protect me.  That means that the injuries my wife and I have suffered were intended by the DEA – indeed, they were the only purpose of the raid.

36.  I have always planned to provide my testimony in this action as a witness for plaintiffs.  As an NAAVC Board member, I can articulate the nature and purpose of NAAVC's ministry to promote Free Exercise and Free Religious Expression by the importation and distribution of Ayahuasca. As the VOLC minister, I would testify that I have a modest congregation eager to receive sacramental Ayahuasca from a safe, reliable, lawfully-approved source, free of the risk of CBP interdiction and DEA scrutiny.

37.  I respectfully submit that the foregoing averments establish good cause for the Court to issue the *ex parte* order submitted herewith, to exercise jurisdiction over the DEA, the DOJ, and the Arizona defendants, and order them to restore the *status quo ante* the raid of May 19, 2020, by ceasing to conspire against me, ceasing to make use of wrongfully seized evidence, releasing my wrongfully-seized property, currency, and data, and preserving for expedited production all records of communications among defendants regarding the conspiracy alleged in the FASC.

38.  The security cameras in my office captured images of MCSO deputies in HIDTA t-shirts searching my office.  They disconnected the cameras once they saw them, but some

recordings had already been uploaded to the data cloud, and I retrieved these and forwarded them to counsel.

I declare and affirm, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct, and that this declaration was signed on July 22, at Phoenix, Arizona.

_____
Clay Villanueva, Declarant