CHARLES CARREON (CSB # 127139)
3241 E. Blacklidge Drive
Tucson, Arizona 85716
Tel: 628-227-4059
Email: chascarreon@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches, and
Clay Villanueva

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>WILLIAM BARR, Attorney General of the United States; UTTAM DHILLON, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Dept. of Homeland Security; MARK A. MORGAN, Acting Commissioner of U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Dept. of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY,<br><br>　　　　Defendants. | Case No.: 3:20-CV-03098-WHO<br><br>DECLARATION OF WINFIELD SCOTT STANLEY III IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION TO RESTORE *STATUS QUO ANTE*<br><br>Date:  August 26, 2020<br>Time:  2:00 P.M.<br>Courtroom:  2 (17th floor) |

Winfield Scott Stanley III declares and affirms:

**1.** I am the founder of plaintiff Arizona Yage Assembly ("AYA"), and the Chair of the Board of Directors of plaintiff North American Association of Visionary Churches ("NAAVC"). I make this declaration in support of all plaintiffs' Ex Parte Application for Temporary Restraining Order and Preliminary Injunction to Restore *Status Quo Ante* on personal knowledge. If called as a witness, I could and would so competently testify.

**2.** AYA and NAAVC are two religious nonprofit corporations whose religious exercise, and that of their member churches and congregants, is substantially burdened by laws prohibiting importation, distribution, and possession of Ayahuasca, an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act 21 U.S.C. § 801 et. seq. (the "CSA").

**3.** As RFRA claimants seeking religious exemptions from the proscriptions of general law, plaintiffs AYA and NAAVC allege a *prima facie* case of sincere religious belief. Plaintiffs further allege that specified statutes and regulations found in the CSA and 21 CFR 1300 *et seq.*, and the DEA's *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act*[1] (the "Guidance") substantially burden their religious exercise. Plaintiffs further allege that the provisions of the CSA, 21 CFR 1300 *et seq.* and the Guidance, are not reasonably tailored to fit the needs of visionary churches, and impose a substantial burden on their rights of Free Exercise by way of visionary communion.

**4.** In 2019, Clay Villanueva ("Villanueva") joined NAAVC as one of three founding Board members. Villanueva also enrolled his own visionary church, the Vine of Light Church ("VOLC") as the first visionary church to join NAAVC.

**5.** Villanueva responded to NAAVC's message that more needs to be done with the DEA and the courts before visionary churches can truly enjoy Free Exercise, free of the

---

[1] *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act*, https://www.deadiversion.usdoj.gov/pubs/rfra_exempt_022618.pdf. January 2009.

fear of unlawful searches, seizures, and arrests, all of which seem to be promised in the Supreme Court's seminal *O Centro* decision.

**6.** Villanueva voted in favor of sending the DEA Letter, and in favor of commencing this litigation on behalf of NAAVC.

**7.** By initiating the NAAVC lawsuit, Villanueva and I placed ourselves under the jurisdiction of this court.

**8.** Villanueva and I both sought to protect our own, personal religious Free Exercise, and that of our respective visionary church congregations, when, acting as Board members, we directed NAAVC's counsel to file this action.

**9.** Thus, attacks against Villanueva are attacks on NAAVC's Free Exercise, and those of all NAAVC Board members.

**10.** Neither Villanueva nor I expected that, by taking action as a member of NAAVC's Board, we would bring ourselves into a position of danger with respect to the DEA.

**11.** Villanueva and I fully expected that the DEA would respond to NAAVC's claims through this Court proceeding, and not by means of a secret application for a search warrant in a state court, before an Arizona Justice of the Peace.

**12.** The DEA/MCSO raid on Villanueva and VOLC has truncated Villanueva's Free Exercise and that of the VOLC congregation; additionally, it has chilled my Free Exercise, in my capacity as an NAAVC Board member.

**13.** The DEA/MCSO raid was a clear message to NAAVC. When Villanueva called and told me what had occurred, I immediately got the message that I believe I was intended to get: "You have angered the DEA, and you are now exposed to potential retaliatory action, just like Villanueva."

**14.** While NAAVC is willing to engage in adversarial exchanges with the DEA before this Court, the DEA has now gained unfair advantage. It has attacked Villanueva, and compelled the Board to consider the risks of proceeding. We have of course considered that I, as another identified Board member with a declared visionary church affiliation, may be exposed to investigation, surveillance, search and/or arrest by state agencies.

Like Villanueva, I too reside in the State of Arizona, and the federal law enforcement presence here is considerable. The discovery, set forth in this *ex parte* application, that the DEA funds and directs the activities of many local law enforcement agencies through the High Intensity Drug Trafficking Area ("HIDTA") program, in Arizona and in twenty-seven other HIDTA zones throughout the nation, causes us considerable concern that, as the DEA has used this resource once to harass a NAAVC Board, it may do so again. I believe it is reasonable for me to anticipate that, if not enjoined, the DEA may pursue investigation, surveillance, search, and arrest me or the AYA congregation.

**15.** In 2009 I was introduced to Ayahuasca in the forests north of San Francisco from a traveling troupe of Ayahuasqueros from South America. From that point forward I began my ongoing introduction to the sacrament of Ayahuasca and the attendant plant medicines of the Amazon, eventually conducting my own small ceremonies. In June 2015, I incorporated our small church, the Arizona Yagé Assembly ("AYA"). The founding of the church was a group effort expressing the clear intention of our growing congregation for healing. Our belief, born out of experience, is that a spiritual practice is a healing practice and a healing practice is a spiritual practice. To that I would add, that an organized spiritual practice is a religion. To that end, our church is engaged in a sacred religious practice.

**16.** Since we founded our church, I have lead more than 300 ceremonies, participated in many more, and have been privileged to work and learn with the extraordinarily dedicated, focused, talented, and kind people in both our congregation and the people of Peru. We continue to bring small groups for teaching and healing to the Upper Amazon in Peru. I owe a debt of gratitude to our teacher, Eladio Melendez Garcia, a third generation Ayahuasquero living and working in Jenaro Herrera, Peru, a small community off the banks of the Ukayali River and 20 some kilometers upriver from the confluence of the Ucayali, the Marañon, and the Amazon rivers.

**17.** I am heartened by the dedication and the personal growth of our church's congregation. We have taken protections for our members quite seriously from our

founding, including, of course, legal protections.  It has taken us years of preparation to begin redressing the conscious disregard of our free exercise by such a powerful federal agency as the DEA.  By powerful I mean one that using law-enforcement proxies, can raid the home of any member of our church or religious movement, direct their movements with the threat of weapons, place them in handcuffs in the view of their neighbors, take their sacrament, halt their ceremonies, take any money they may have, and leave with the parting suggestion that any court proceedings, if any, may not occur until the following year.  This certainly was Clay Villanueva's experience.

**18.**  As Villanueva is a friend, a member of our community and religious movement, and a board member of the NAAVC, I am troubled for my friend, our community, our movement, our organizations, my family, and lastly myself.  Even as it has ignored the NAAVC's written requests, the DEA is abusing its power by using a home raid on Clay Villanueva to send a message to the members of our religious community, including myself, that "You are next."  A threat to my friend's house is a threat to my house. I am asking the court to immediately stop the DEA from its retaliatory threats against our religious community.

**19.**  Accordingly, in my capacity as the Chair of the NAAVC Board of Directors, I request the Court to issue an injunction protecting NAAVC, its Board members, VOLC, AYA, and their respective congregations ("Plaintiff's Personnel") from further civil rights violations  by prohibiting the defendants, and each of them from:

    a. Continuing the DEA/MCSO conspiracy against NAAVC and Villanueva under the guise of coordinating their defense in this action, by investigating Plaintiff's Personnel and sharing information with other law enforcement agencies, in any jurisdiction;

    b. Making use of any of the materials seized, observed, photographed, or video-recorded during the DEA/MCSO raid of Villaneuva and VOLC in this litigation against NAAVC, AYA, VOLC, or any of Plaintiff's Personnel;

    c. Retaining any of the property wrongfully seized from Villanueva and VOLC;

    d. Utilizing police resources such as the NCIC database, the DEA's Hemisphere program, or other resources designed for criminal investigation, to investigate Plaintiff's Personnel; and/or

    e. Joining AYA's Facebook group for purpose of surveilling our activities and personnel.

I declare and affirm, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct, and that this declaration was signed on July 22, 2019, at Tucson, Arizona.

*[signature]*
Winfield Scott Stanley, III, Declarant