CHARLES CARREON (CSB # 127139)
3241 E. Blacklidge Drive
Tucson, Arizona 85716
Tel:  628-227-4059
Email: chascarreon@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches, and
Clay Villanueva

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA, <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM BARR, Attorney General of the United States; UTTAM DHILLON, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Dept. of Homeland Security; MARK A. MORGAN, Acting Commissioner of U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Dept. of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY, <br><br> Defendants. | Case No.: 3:20-CV-03098-WHO <br><br> DECLARATION OF CHARLES CARREON IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION TO RESTORE *STATUS QUO ANTE* <br><br> Date:  August 26, 2020 <br> Time:  2:00 P.M. <br> Courtroom:  2 (17th floor) |

Charles Carreon declares and affirms:

**1.**   I am an attorney licensed to practice before all courts in the State of California and a member of the bar of this Court.  I make this declaration in support of plaintiff's Motion

for Preliminary Injunction to Restore *Status Quo Ante* on personal knowledge.  If called as a witness, I could and would so competently testify.

**2.**   In this action, "visionary churches" refers to churches that administer a communion sacrament that contains a pharmacologically active controlled substance, some of which are regulated by the Drug Enforcement Administration ("DEA") pursuant to the Controlled Substances Act ("CSA").

**3.**   It is not ordinarily your Declarant's practice to cite case law in declarations; however, I find that this litigation makes the discussion of legal history unavoidable, because this case is but one in a long chain of cases in which the DEA has played the role of an institutional litigant deeply committed to a position adverse to the interests of a single, discrete and insular minority group, *i.e.*, visionary churches and their congregations, controlled substance users asserting religious exemptions from the CSA pursuant to the Religious Freedom Restoration Act ("RFRA").  The DEA's refusal to accord legitimacy to visionary churches, and their requests for religious exemptions, is by now an unquestioned institutional obsession that, in this case, has driven the DEA to violate the constitutional rights of two elderly religious people in order to satisfy retaliatory animus against an activist visionary church association, plaintiff North American Association of Visionary Churches ("NAAVC").

**4.**   For fourteen years, since the Supreme Court handed down *Gonzalez v. O Centro Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S. Ct. 1211, 163 L.Ed.2d 1017 (2006), the DEA has failed to provide regulatory services to any visionary church seeking a religious exemption from the CSA (a "Free Exercise Exemption"), unless and until compelled by injunction.  It is no leap of inference to conclude that the cause of the DEA's unwavering commitment, evidenced by consistent action with a consistent purpose and effect over decades, spanning four administrations controlled by both political parties, is due to a DEA policy that plaintiffs define as "the Policy."  *See,* FASC, Docket # 12, ¶¶ 76 – 125, alleging facts regarding the purpose and application of the

Policy to further the DEA's intent to substantially burden Free Exercise of visionary churches.

**5.**     The law permitting the use of sacramental substances containing a controlled substance was carved out by two U.S. branches of South American visionary churches, the Uniao do Vegetal ("UDV") and the Santo Daime (the "Daime"), who sequentially prevailed in litigation against the DEA.  The UDV won the seismically-disruptive *O Centro* case cited *supra*.  The Daime won its exemption in an opinion by the late Judge Owen Panner that was highly critical of the DEA's evident unwillingness to fairly evaluate evidence of the Daime's religious sincerity and Ayahuasca's physical and psychological safety in *Church of the Holy Light of the Queen v. Mukasey*, 615 .Supp.2d 1210, 1215 (Oregon , 2006)(vacated  on other grounds).

**6.**     *O Centro* and *CHLQ v. Mukasey* are founded on the rights established by Congress when it enacted RFRA, providing exemptions from general laws that substantially burden First Amendment Religious Free Exercise and fail the strict scrutiny test.  The strict scrutiny test requires the Government to show that the burden imposed by the law is the least restrictive means of advancing a compelling government interest.  This requires a case-by-case analysis of each Free Exercise claim of burden, considering whether, in the case *sub judice*, the Government can carry its burden.  In both *O Centro* and the *CHLQ v. Mukasey* cases cited *supra*, the DEA could not carry that burden.  Because the UDV and the Santo Daime churches have rather similar practices, and use the exact same Ayahuasca sacrament as many visionary churches, the principles applicable to the UDV and the Daime should apply to other visionary churches with similar cases.

**7.**     Both the UDV and the Santo Daime were provoked to file suit by DEA searches and seizures of visionary church sacraments that the courts later held to be improper.  Both the UDV and the Santo Daime were raided by the DEA during the same two-day period in May 1991, while both churches believed they were in negotiations with Janet Reno's DOJ.  This statement is made in reliance upon the statement of the Daime's attorneys under Rule 11 requirements in the Daime's Complaint in *CHLQ v. Mukasey, supra.*

(Exhibit 1, ¶ 26 at p. 8 and ¶45 at p. 15.)  To my knowledge, based on reading the case file extensively on PACER, this statement was not disputed by the Government.

**8.**    In the UDV and Daime cases, the DEA obtained federal warrants and conducted its own seizures, while in the case *sub judice*, it enlisted the Maricopa County Sheriff's Office ("MCSO"), the Arizona Attorney General ("Arizona AG"), the State of Arizona, and Det. Matthew Shay ("Shay") (collectively, the "Arizona defendants") to search the Vine of Light Church sanctuary and Villanueva's home.

**9.**    The only reasonable interpretation of the facts leads to the conclusion that the DEA directed MCSO and the Arizona AG to pursue the same end that it had previously pursued directly with the UDV and the Daime – to seize the Ayahuasca in the possession of an NAAVC Board member to "rein in" the activist organization.

**10.**  But why did the DEA not get its *own* warrant and do its *own* search and seizure? The Phoenix Division of the DEA is one of 22 divisional centers, and its press releases announce Arizona drug seizures by a DEA Task Force.[1]  One factor deterring the DEA may be that it is on notice that it should not be initiating criminal investigations against Ayahusca churches, arresting and interrogating their ministers, and asking for warrants to seize their sacramental Ayahuasca.  After the DEA presented its trial defense to the search and seizure of the Daime Ayahuasca, and the arrest of Daime leader Jonathan Goldman, it lost the case and was ordered to pay the Daime's attorney's fees.  The amount – well over a million dollars, was settled by stipulation.

**11.**  Since the Daime victory in Oregon District Court, the DEA has not sought or obtained a federal search warrant to search for sacramental Ayahuasca in the United States, to the knowledge of your declarant.  If the UDV case was the first strike, and the Daime case the second, the DEA likely did not want the NAAVC case to be the third.

**12.**  NAAVC gained the DEA's attention in January 2020, when it critiqued the DEA's *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances*

---

[1] https://www.dea.gov/press-releases?sort_bef_combine=field_press_release_date_value%20DESC&field_press_release_drugs_target_id=All&organization=86&year=all&field_press_release_subject_target_id=All

*Act Pursuant to the Religious Freedom Restoration Act* (the "Guidance"*)* in a letter to the DEA that recommended the agency rescind the Guidance to comply with the requirements of Executive Order 13891 (the "DEA Letter" attached as Exhibit 2).  A hardcopy of the DEA Letter was posted Priority Mail to William T. McDermott, Assistant Administrator for the Diversion Control Division, shortly after the January 8, 2020 date, and copied in PDF format as confirmed-receipt email attachment to top Government attorneys at the DEA and the Department of Justice, at their official .gov domain email addresses.

**13.**   After the DEA lost both Ayahuasca church RFRA lawsuits, and grew chary about seizing Ayahuasca from churches and arresting its communion celebrants, it devised an alternative strategy to burden the Free Exercise of visionary churches.  The Guidance became the sole support of the DEA's policy of denying regulatory services to visionary churches since it was issued in 2006, and it has served the agency's purpose of maintaining its policy of denying regulatory services to visionary churches well.  The DEA began using the Guidance as a pretext to issue *de facto* cease and desist orders. These cease and desist orders "invited" visionary church leaders to submit a Guidance-compliant petition for Free Exercise Exemption, and directed them to use no Ayahuasca pending the processing of the petition.[2]  (Exhibit 3.)  These *de facto* cease and desist letters placed the recipients under law enforcement scrutiny, chilling and substantially burdening their Free Exercise.  (FASC ¶¶ 103 - 110.)  The recipients of these cease and desist letters both submitted petitions, but neither was processed or received any attention from the DEA.  One of these petitioners has since filed suit in the Middle District of Florida against the DEA in Case No. 6:20-cv-00701-WWB-DCI, filed April 22, 2020, detailing the mystifying exchange with the DEA, that first demanded the filing of a petition, then ignored it.  (Exhibit 4.).  Currently, I am advised that the DEA and Soul Quest are in mediation, pursuant to a Court order.

---

2 The recipients of the de facto cease and desist letters were Soul Quest and Ayahuasca Healing. An example of the letter the DEA sent to Soul Quest is attached as Exhibit 3.

**14.**  The DEA's *de facto* cease and desist orders did not have to be sent to more than two visionary churches to have a chilling effect throughout the visionary church community. I have personal knowledge of the communication flow regarding legal issues that are moving the interests of the visionary church community, and the issuance of the *de facto* cease and desist letters initiated more discussion than any other event I can recall.  The crucial question being asked, of course, was – "Do visionary churches all need to submit Guidance-compliant petitions to the DEA?"  Until AYA and NAAVC began their advocacy work, sponsoring analysis of the constitutional and administrative law defects in the Guidance, there was no indication that visionary churches had more than an inkling that the Guidance was actually a ruse to keep them from filing RFRA lawsuits.

**15.**  The answer came only after a group of attorneys working for the visionary church community had studied the Guidance through the lens of the First Amendment, the Fifth Amendment protections against compelled self-incrimination, and the Administrative Procedure Act, for an extended period of time.  Once we had, we compared our research and analysis, and concluded that the Guidance was, in effect, a Trojan Horse, filled with legal detriments that the DEA wanted visionary churches to assume.[3]

**16.**  NAAVC compiled its criticisms of the Guidance into a letter to the DEA dated January 8, 2020 (the "DEA Letter").  The DEA Letter had been reviewed and revised by a team of lawyers, and reflected a consensus among us that not only was the Guidance constitutionally defective, it was not published in the Federal Register or adopted pursuant to the notice and comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et. seq.*, and thus was unenforceable.  Further, as of its issuance in October 2019, Executive Order 13891 required the Guidance to be re-evaluated and, as NAAVC recommended in the DEA Letter, rescinded on or before February 28, 2020. *See* the DEA Letter, Exhibit 2, at 11.

---

[3] At ¶¶ 90 – 127 of the FASC, plaintiffs allege how the DEA used the Guidance to substantially burden visionary church Free Exercise while purporting to advance it.

17.  NAAVC used the process of drafting the DEA Letter to promulgate the new, critical analysis of the Guidance through the legal network of attorneys working for visionary churches.  NAAVC also disseminated the DEA Letter through the membership and congregations of the visionary church community by promoting an online petition directed to the DEA, posted at Change.org, collecting signatures under the petition title, "**Stop the DEA from Regulating Visionary Religions**."[4]  The petition campaign presented the DEA Letter's legal arguments in everyday language, and had gathered 472 signatures as of July 22, 2020.

18.  Shay admitted he was directed to investigate Villanueva and VOLC by something that "came across his desk" at HIDTA in February 2020, but hadn't gotten around to getting the warrant due to the COVID crisis.  This raises the question: From whom did the directive come?  Shay is a 22-year veteran of the City of Phoenix drug squad, now detailed to the federally-funded HIDTA Task Force.[5]  Arizona SW HIDTA funds collaboration between the DEA, the Arizona AG, and MCSO for purposes of disrupting international narcotics cartels and money laundering operations -- vast criminal enterprises.  (Exhibit 5.)  The DOJ's latest budget request notes that since 2019, HIDTA funding comes out of the DEA's budget, and DEA directly controls HIDTA:

> **High Intensity Drug Trafficking Areas (HIDTA) Programs: +254.0 million, transferred from the Office of National Drug Control Policy**
> The FY 2019 President's Budget permanently transfers $254 million to DEA from the Office of National Drug Control Policy (ONDCP) for the purpose of facilitating coordination of the HIDTA Program with other drug enforcement assets.  DEA currently participates in and coordinates with the various HIDTAs. Transferring the administration of the program will allow HIDTA resources to be focused on combating drug trafficking in areas where the threat is the greatest and where there is a coordinated law enforcement presence. There are currently 28 HIDTAs located in 49 states, as well as in Puerto Rico, the U.S. Virgin Islands, and the District of Columbia.

---

[4] As of last checking on July 22, 2020, the petition has collected 472 signatures.  It is posted at https://www.change.org/p/drug-enforcement-administration-keep-the-dea-s-hands-off-visionary-churches?recruiter=1003378382&utm_source=share_petition&utm_medium=copylink&utm_campaign=share_petition

[5] HIDTA stands for "High Intensity Drug Trafficking Area," of which the Arizona-Southwest area is one of the largest out of the 28 HIDTA areas so designated by the Office of National Drug Control Policy, that funds operations, equipment, and training for local law enforcement.

U.S. Department of Justice FY 2019 Budget Request (Exhibit 6.)

**19.**  Villanueva had no contact with drug cartels or money laundering, indeed no criminal history whatsoever, which put him outside HIDTA's declared area of expertise and interest.  VOLC was not known by "word on the street."  VOLC kept a very low profile, as Villanueva administered the Ayahuasca sacrament only to trusted individuals whose faith was confirmed.  VOLC and Villanueva had no contacts with local law enforcement. In law enforcement, only the DEA knew of his VOLC ministry, due to his NAAVC Board membership.

**20.**  Given that Shay is an expert narcotics officer with a specialty in disrupting large cartel-funded manufacturing facilities,[6] he would have no investigative interest in a small Ayahuasca church that would bring VOLC's activities to his attention.

**21.**  Nor is there any indication that Maricopa County law enforcement had any interest in policing Ayahuasca churches before Shay conducted the HIDTA raid of Villanueva's home and the VOLC sanctuary.  Quite the contrary.  While the MCSO.org website is filled with press releases about marijuana, heroin and meth busts, there are none concerning Ayahuasca. A site-specific Google search for "Ayahuasca" at MCSO.org produces zero results, two less than "Peyote," that appears on the MCSO job-application form.  *Compare* Exhibit 7 *with* Exhibit 8.  MCSO has no interest in prosecuting Ayahuasca use.

**22.**  Eliminating the impossible – that someone at MCSO decided to waste Shay's time by assigning him a fool's errand -- there remains only one answer.  The DEA told Shay, or someone else at HIDTA, to get a warrant and search Villanueva's house. By using HIDTA to direct MCSO and Shay, DEA accomplished what it wouldn't do directly – contrive probable cause to raid a third Ayahusaca church for its sacraments.  Through HIDTA, the federal Government funded a DEA conspiracy to retaliate against NAAVC for exercising its right to petition the DEA for redress of grievances.

---

[6] www.ecsforall.org/detective-matthew-shay.html

**23.**  If Villanueva had called me by telephone when Shay asked to question him, I would have accepted the call from my current litigation client, and provided him with counsel during custodial interrogation.

**24.**  As trial counsel for plaintiffs, I marked Villanueva as a key witness for plaintiffs, both as an NAAVC Board member who can articulate the nature and purpose of NAAVC's ministry, and as the VOLC minister, with a congregation eager to receive sacramental Ayahuasca from a safe, reliable, lawfully-approved source free of CBP interdiction and DEA scrutiny.  As trial lawyer responsible for presenting evidence to carry plaintiffs' burdens of proof in this case, my ability to do that job has been negatively affected by the HIDTA raid on the Villanueva's home and church.  I have spent several hours listening to their story and fears, and counseling to help them recover some of the sense of security that the HIDTA raid shattered.  In my estimation, Villanueva has been affected as a witness, and were additional pressure placed on him by the workings of the conspiracy detailed in this motion, it could diminish his willingness to proceed with providing testimony or to participating further as an NAAVC Board member.  Certainly, most reasonable people would feel their First Amendment rights chilled by the harrowing experience he and his wife endured.  Many negative consequences have resulted from the raid, requiring plaintiffs to make this motion.  An order restoring the *status quo ante* the May 19th raid and the conspiracy that led up to it can remedy the prejudice to plaintiffs by removing the improper advantages gained by defendants, and protecting plaintiffs from irreparable harm to their First Amendment freedoms going forward.  Accordingly, I respectfully submit that plaintiffs have shown good cause to grant the requested preliminary injunction in the form of decree submitted herewith as a Proposed Order.

**25.**  I caused all Arizona Defendants to be served on June 30, 2020, as affirmed by the registered process server's attestations attached as Exhibit 10, establishing service at each defendant's regular place of business, where the process was accepted in due course.

**26.** I received video recording footage of MCSO deputies wearing t-shirts printed with "SHERIFF HIDTA" on the back, searching Villanueva's office.  Screen captures of time-dated footage are shown in Exhibit 11.  These are true and correct screencaptures that accurately reflect the video that Villanueva gave me.  Each image is date and time stamped in the lower right corner.

**27.** The chart below indexes the Exhibits identified in the foregoing declaration.

| Exhibit No. | Document |
| --- | --- |
| 1. | Daime Complaint recording DEA raids on UDV and Daime |
| 2. | DEA Letter (including attachments) |
| 3. | *De Facto* DEA Cease and Desist Letter to Soul Quest |
| 4. | Soul Quest lawsuit |
| 5. | Webpages from DEA.gov, MCSO.org and AZHIDTA.org re HIDTA |
| 6. | U.S. Department of Justice FY 2019 Budget Request |
| 7. | Google Site-specific search of MCSO.org pages referring to "marijuana"= 77 results, "heroin"= 29 results, "meth" = 31 results |
| 8. | Google Site-specific search of MCSO.org hyperlinked pages referring to "Ayahuasca"= 0, and "Peyote"= 2 |
| 9. | Maricopa County search warrant |

| 10. | Proofs of service on all Arizona Defendants |
|---|---|
| 11. | Screen captures of video recordings of the HIDTA raid |

I declare and affirm, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct, and that this declaration was signed on July 22, 2020, at Tucson, Arizona.

/s/Charles Carreon
Charles Carreon, Declarant