CHARLES CARREON (CSB # 127139)
3241 E. Blacklidge Drive
Tucson, Arizona 85716
Tel: 628-227-4059
Email: chascarreon@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches, and
Clay Villanueva

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA,<br><br>Plaintiffs,<br><br>vs.<br><br>WILLIAM BARR, Attorney General of the United States; UTTAM DHILLON, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Dept. of Homeland Security; MARK A. MORGAN, Acting Commissioner of U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Dept. of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY,<br><br>Defendants. | Case No.: 3:20-CV-03098-WHO<br><br>DECLARATION OF WINFIELD SCOTT STANLEY III IN SUPPORT OF ARIZONA YAGÉ ASSEMBLY'S MOTION FOR PRELIMINARY INJUNCTION<br><br>Date: September 9, 2020<br>Time: 2:00 P.M.<br>Courtroom: 2 (17th floor) |

Winfield Scott Stanley III declares and affirms:

**1.**     I am the founder and Director of Arizona Yage Assembly ("AYA") and North American Association of Visionary Churches ("NAAVC"). I make this declaration in support of AYA's motion for preliminary injunction prohibiting the DEA U.S. Customs and Border Patrol from substantially burdening AYA's Free Exercise of Religion. The matters stated herein are true of personal knowledge and from an informed review of relevant documents. I could and would so competently testify if called as a witness.

## Background in Ayahuasca Practice

**2.**     In 2009 I attended my first Ayahuasca ceremony in the woods north of San Francisco, offered by a group of South American ayahuasqueros. That experience marked my introduction to the sacrament of Ayahuasca and the attendant plant medicines of the Amazon, which lead to me travelling to Peru, where there are no legal obstructions to attending or conducting ceremonies.

**3.**     In Peru, I deepened my experience of Ayahuasca communion through apprenticeship with Eladio Melendez Garcia, a third generation Ayahuasquero who lives and conducts Ayahuasca ceremonies in Jenaro Herrera, Peru, a small community off the banks of the Ukayali River about 20 kilometers upriver from the confluence of the Ucayali, the Marañon, and Amazon rivers. Eventually, after four or five years of personal practice, I began to conduct small ceremonies sharing the sacrament with others.

## Developing a Group Practice and Incorporating AYA

**4.**     My practice gave rise to a group practice that our growing congregation is carrying on here in the United States through three corporate entities. Since we founded Arizona Yagé Assembly ("AYA") in 2015, I have lead more than 300 ceremonies, and participated in many more. AYA incorporated in Arizona, Oregon and California, all states where we have substantial congregations returning to ceremonies for several years running now. I have been privileged to work with and learn with many extraordinarily kind, dedicated, focused, and talented people. We have shared Ayahuasca communion with people from around the world, in ceremonies in Peru and across the United States, in

Arizona, California, Oregon, Washington, Utah, Colorado, Kansas, Louisiana, Wisconsin, and Maine. I currently live in Tucson, Arizona, and travel extensively throughout the year to the above-listed places to share AYA practice.

### Our Manner of Religious Practice

5. Our use of Ayahuasca as our sacrament of communion is no placebo. But the sacrament is of little use without the intention of practitioners for healing. In that healing, I often see congregants return from their experiences in ceremony with the message of love and forgiveness.

6. Through my practice of Ayahuasca communion, I have learned that we do not need to begin from dogmatic structures to have an inspired, living, religious practice. We can begin with the experience of love and forgiveness itself. A man takes the measure of religion using his own conscience. It must be so, and I am proud and thankful that as an American, the First Amendment allows me to make my conscience my guide, and choose my own path of Free Exercise. I am also deeply thankful that I am able to petition this Court to protect our rights to practice visionary religion as our chosen form of Free Exercise.

7. Our scripture and song are to be found within the sacrament itself. In organized spiritual practice we trust each individual's direct connection with the Divine. We do not seek to intervene in that connection. Peace of mind is having a clear conscience and an open heart. We can trust each practitioner to be drawn to their own purity of conscience.

8. A meaningful number of AYA's members came to ceremony seeking healing from psychic wounds suffered in a variety of traumatic environments. Indeed, many people carry unconscious psychic wounds that express their need for healing in the course of ceremony. My belief, born of experience, is that a spiritual practice is a healing practice, and a healing practice is a spiritual practice. A religion is an organized spiritual practice. AYA is a a spiritual practice organized for the healing of the congregation, with the goal of benefiting all humanity.

### Ceremonial Environment and Mindset

9. In AYA, establishment of the proper ceremonial environment and inner mindset are essential. AYA's Ceremonial Instructions and Code of Ethics instruct facilitators in how to establish the ceremonial environment and embody the ceremonial mindset.

10. The proper ceremonial environment is established by dedicating the space, ideally a "maloka," a circular structure in a quiet rural area, by commencing the ceremony in a peaceful, harmonious spirit, by administering the sacrament with sensitivity and respect for the sacrament and the congregation, and by facilitating the communion experience of the practitioners.

11. The mindset of the practitioners must also be properly prepared. The congregants, have been screened for contraindicated health conditions, and have undertaken some dietary restrictions in advance of ceremony. Additionally, they have been asked to refine and focus their wholesome intention for receiving the Ayahuasca sacrament. With this outer and inner preparation, ceremony becomes a sacred space where inner growth can occur, with the help of the Ayahuasca communion.

12. Each person who wishes to participate in a ceremony must complete an online questionnaire that asks the questions recorded in the document attached as Exhibit 4. (Ceremonial Instructions, ¶ 7, Exhibit 2.) After eliciting contact information and an emergency contact phone number, the questionnaire requires each prospective communicant to list allergies, medications, and to answer the "yes" or "no" question: "Have you used Antidepressant medications?" (Questionnaire, Exhibit 4.) A "yes" answer to this question will end the online questionnaire process and notify the submitter that they are, unfortunately, not able to receive communion at an AYA ceremony. Thus, no one who is taking anti-depressant medications partakes of the communion Sacrament in AYA ceremonies. The health questionnaire also requires disclosure of recent hospitalizations, surgeries, cardiac problems, high blood pressure, use of hypertensive medications, pregnancy, seizures, psychoses, or other mental or physical health conditions or restrictions that might be adversely affected by participating in the ceremony. If such conditions are disclosed, further inquiries are made of the prospective

practitioners, and participation may be denied or conditioned participation upon the approval of the individual's physician.

**13.** AYA's belief system explains the Ayahuasca experience to congregants as a communion with Divine Love made available through the beneficent nature of the Sacrament. The ceremony is conducted with attention to ethics and discipline, in an atmosphere of kindness and respect. Preparation for ceremony includes a controlled diet, limited sexual contact, and the use of the South American teas Pau D'arco and Cat's Claw. (Confirmation Letter, Exhibit 4.) Use of alcohol or non-medicinal drugs "in or around ceremony," is absolutely forbidden. (AYA Code of Ethics, Exhibit 3.) Dosage is controlled by a facilitator who makes an assessment of the congregant's condition before allowing additional servings of tea. Facilitators provide a physically supportive, psychologically protective, spiritually-inspired ceremonial environment. AYA is a social group that supports each congregant in sacred Communion. In the course of attending hundreds of AYA ceremonies, I have never seen anyone suffer serious harm during an AYA ceremony.

**14.** Ceremonies are conducted with a congregation of between two and twenty-four practitioners, all of whom commit to remain within the ceremonial environment until the conclusion of the ceremony.

### Ayahusaca Communion Is AYA's Central Act of Free Exercise

**15.** AYA uses essentially identical and interchangeable plant materials and preparation methods as do the Santo Daime and the UDV, to brew a tea of substantially identical effective strength, and administers it at similar dosage levels, producing comparable effects upon practitioners. The plants are gathered in Peru by people familiar with the needs of AYA, and gather the plants with respect for their extraordinary capacity to benefit those who receive Ayahuasca as their Sacrament. AYA's use of Ayahuasca is effectively parallel to that of the Santo Daime and the UDV; accordingly, prior evidence, findings, and judicial rulings regarding Ayahuasca should be persuasive authority for reaching similar conclusions on similar issues in this proceeding.

16. Ceremonies are usually conducted in the evening after dark, and conclude at dawn. The ceremony is preceded by the cleansing of the ceremonial land.  The ceremony begins with an invocation to the Spirit and a call for the cleansing of the congregation's individual and collective intent to participate in ceremony.  Each practitioner makes the commitment to remain within the ceremonial environment until the conclusion of the ceremony, and facilitators monitor this commitment.  These and other regular practices are codified in AYA's Ceremonial Instructions.  (Exhibit 2.)

17. AYA simply teaches love, acceptance, and forgiveness – we apply the same spiritual principles in ceremony that serve us best in daily life.  AYA does not dictate dogma.  Our scripture and song arise during communion from within the sacrament itself.

18. AYA practitioners perceive, and sometimes express, profound visions that reveal insights into our selves, our world, and our fellow beings.  This stream of visionary insights is unique to each individual, and yet leads to a unifying understanding of what it means to lead a meaningful, dignified life.  In organized spiritual practice we trust each individual's direct connection with the Divine.  We do not seek to intervene in that connection.  We trust the sanctity of each practitioner's conscience.  With a clear conscience and an open heart comes deep peace of mind, what all have acknowledged as life's most priceless attainment.

19. AYA practitioners can only enter into the stream of profound visionary understanding through Ayahuasca communion.  Therefore, Ayahuasca communion is our visionary religious practice, and the AYA congregation is our church.

During May and June 2018, using the online software at SurveyMonkey.com, AYA distributed an 80-question survey to 1,430 ceremonial participants.  Responses were tabulated electronically by SurveyMonkey.com.  An accurate summary of the results of the survey is attached as Exhibit 6. Although the rather lengthy survey required an average of twenty minutes to complete, we received 253 responses.  That works out to 17.7% of the total, which my research confirmed was sufficient to establish a statistically significant sampling for purposes of inferring the views of the entire group.

**20.** AYA ministers to a gender-balanced congregation that is 58% male, 41% female, and 1% cross-gender. These are mature individuals, 46% percent over age 40, and 24% over age 50, with an existing religious and meditative practice -- 96% pray or meditate. Almost all, 91.1%, approach Ayahuasca communion as a religious experience, and 90.3% say AYA connects them with a community of sacred Ayahuasca use.

**21.** The survey provided areas for additional comment. Congregants' comments express strongly religious experiences, sentiments, and insights. Drawing the first ten from the seventy transcribed in the survey summary:

- "I, like everybody, have searched for meaning, purpose, God, and guidance in my life. This sacred sacrament, and ritual practice, which is thousands of years old, has given my life meaning, clarity, and healing. There is no better way to get in touch with one's heart and spiritual life."
- "Prior to my first ceremony, I had a very bleak outlook on life and death. These ceremonies have shown me my purpose and that death, as scary as it is, is just another chapter, not the finale."
- "For me, the Aya experience is for healing and spiritual growth."
- "I was in search of spiritual growth and didn't feel or find it with the Catholic Church."
- "I am not a Christian but I believe in the Christ-like vibratory state that speaks to me through Ayahuasca: Love, Kindness, Compassion and Forgiveness."
- "I feel that ayahuasca brings us closer to what other religions would consider to be "God". It is an extremely religious and spiritual experience for me."
- "Because it connects you with divine love."
- "Oneness with the creator."
- "It has opened my eyes to the God of the universe and allowed me to connect."
- "From the root to the fruit. It brings me clarity and roots me to living with intent. It makes me a more present person and fortifies my moral compass."

Exhibit 6 at pages 3 – 10.

**22.** The survey also allowed people to disclose that our church is a church that dares not speak its own name outside of the select circle of other congregants. For a church with so many members speaking highly of the benefits of ceremony, it is telling that 69.7% of

respondents hesitate to tell others of their experience with AYA ceremonies because of questions about the legality of our practice, and 53.9% are hesitant to tell even close friends and family that they have drunk the sacrament.

### AYA's Efforts to Utilize the DEA's Guidance Procedure

23. AYA and its congregation have ventured to engage in Free Exercise visionary communion in reliance upon Federal court rulings that have, in individual cases, required the DEA to honor a bona-fide religious exemption. However, the DEA has never developed a process for visionary churches to obtain such an exemption without going to federal Court. Unfortunately, the DEA maintains that it has created an avenue for exemption via its DEA's *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act* (the "Guidance"). And yet, in the fourteen years since the DEA established its exemption guidance, it has yet to issue a single exemption in response to a petition (to our relatively informed knowledge).

24. Nevertheless, optimistically thinking that we'd grab the bull by the horns, four years ago in August 2016, we engaged counsel to prepare a Guidance-compliant petition. It was a gradual process, working with counsel to understand our legal position, a nascent legal field in which he educated himself on the law, science and culture of Ayahuasca religion.

25. By July of 2017, AYA had completed nearly a year of legal work in formulating its DEA application for exemption. This involved months of legal research, review, compiling and codifying ethics, procedures, and best practices, and drafting answers to all questions required to complete a Guidance-compliant petition. We surveyed our congregation, and sought comment from lawyers for other churches and supporting organizations on our legal analysis. We reached out for advice from the Ayahuasca community lions such as Jeffrey Bronfman of the UDV and Jonathan Goldman of the Santo Daime, who have already suffered their trials, and delivered their congregations to the promised land of DEA-recognized exemption.

## We Realize that Filing a Petition Would
## Burden the Congregation's Free Exercise and Produce No Benefit

**26.**  At the close of 2017, we were on the brink of filing the petition.  We had completed a near-final draft of the application when our counsel expressed reservations about assuming the good faith of the DEA in processing.  We had consciously decided to suppress those inquiries at the outset, but as the moment for filing the petition approached, AYA's counsel, a former Federal Public Defender, said he was hearing "Fifth Amendment alarm bells."  Ultimately, his research made it clear that I, who would sign the petition, would be waiving my Fifth Amendment rights to be free of compelled self-incrimination, and providing the DEA with a detailed blueprint for future prosecution of AYA, myself, and leaders of the congregation.

**27.**  Even more concerning to myself and the AYA congregation, however, was the second point our counsel raised when advising us to hold off submitting the petition.  Paragraph 7 of the Guidance provides: "No petitioner may engage in any activity prohibited under the Controlled Substances Act or its regulations unless the petition has been granted and the petitioner has applied for and received a DEA Certificate of Registration."  AYA's compliance with paragraph 7 of the Guidance would require AYA to stop engaging in Ayahuasca communion upon submission of the petition.

**28.**  We had deferred thinking how we would confront this problem as well, but as we faced it head on, it was clear there was no way to finesse it.  If AYA filed a petition, and I signed it under penalty of perjury, it would imply that AYA had stopped offering Ayahuasca communion.  I could not make a promise that I could not keep.

**29.**  Thus, as we alleged in the FASC:

> AYA has learned … that submitting a petition would waive the Fifth Amendment rights of the Founder, subject the entire congregation to an interruption in Free Exercise due to paragraph 7 of the Guidance, and expose the congregation to potential criminal enforcement based on the contents of a petition.

(FASC ¶ 101, Docket #12.)

30.  Contemporaneously with reaching this conclusion, AYA received additional evidence establishing that submitting a petition would not only compromise our Constitutional rights, it would be a total waste of time.  This evidence arose from the non-occurrence of an event.  The DEA never processed the two petitions it had frightened Soul Quest and Ayahuasca Healings into filing by sending them "invitations" to submit petitions under the Guidance, and ordering them, pending review of their petitions, to stop dispensing Ayahuasca.  Soul Quest received its cease and desist letter in August 2016, and submitted a petition for exemption in August 2017.  The DEA had studiously ignored it for thirty-two months when Soul Quest filed its lawsuit on April 22, 2020 in the Middle District of Florida.[1]

31.  During the intervening years, the elders of the visionary community were well aware that the DEA was letting Soul Quest's petition languish, and we would have all learned quickly if the DEA had ever responded.  As the years ticked by – first in August 2018, then a year later in August 2019 – and the DEA continued to ignore Soul Quest's petition, it became obvious that it would never respond.  Thus, even if AYA submitted a petition to the DEA, it would just gather dust while our congregation sacrificed its Free Exercise to remain in compliance with paragraph 7.  Alternatively, we could engage in Free Exercise use of Ayahuasca, exposing myself as the petition-signer to charges of perjury for misrepresenting our implicit prospective intent to refrain from such practice.

32.  Since we had no intention to stop our religious services, and filing a Guidance-compliant petition would provide the DEA with a map to obtain search warrants and launch a criminal investigation leading to the interruption of our Free Exercise by arrest, and imprisonment, AYA's congregation had no legal remedy for the burdens on our Free Exercise.  We couldn't file a petition with the DEA, and continue our practice as if

---

[1] Case No. 6:20-cv-00701-WWB-DCI.

paragraph 7 of the Guidance meant nothing, hoping for the best.  Although we had finished the petition, signing it would injure the very rights we needed to protect.

### NAAVC Formed to Lift the Burdens on Free Exercise Afflicting the Community

33.  I knew that AYA wasn't the only church facing this burden on Free Exercise of being unable to submit a petition for exemption.  We are also facing the substantial burden of obtaining Ayahuasca from South America and having it subject to seizure, or actually seized by Customs and Border Protection.

34.  Few mainstream religions would thrive if their congregations faced criminal penalties for attending services or possessing sacramental objects for worship purposes.  So I established NAAVC to help other churches like AYA lift the burdens on Free Exercise that continue to afflict the visionary church community.

35.  I was fortunate to enlist Clay Villanueva, the founder of the Vine of Light Church, to serve as an NAAVC Board Member.  NAAVC began educational activities in 2019, beginning with online conferences and videos posting information, to encourage discussion and the development of solutions to the legal uncertainties that continue to burden visionary church Free Exercise.

36.  NAAVC's legal counsel planned and held discussions, shared research, and encouraged other lawyers to perform scholarly work necessary to respond effectively to the DEA's regime for denying services to visionary religion.  This legal work gave rise to a revised consensus regarding the lawfulness and enforceability of the Guidance.

### NAAVC Petitions the DEA to Withdraw the Guidance

37.  NAAVC first launched a Petition to the DEA on Change.org, requesting the DEA to "Stop Regulating Visionary Religion," promoting the Petition through the visionary church community.  On January 8, 2020, having gathered over two hundred signatures, NAAVC mailed a letter to the Acting Director of the DEA asking the agency to rescind the Guidance pursuant to Executive Order 13891.  The DEA received the letter on January 10th.  NAAVC's counsel independently confirmed delivery of the DEA Letter to email addresses for multiple DEA attorneys.  If any avenue of dialogue with the DEA had

opened up as a result of the DEA Letter, NAAVC and AYA would have been eager to pursue it. However, the DEA did not acknowledge receipt.

### AYA and NAAVC File This Action

**38.** On May 5th, 2020, AYA and NAAVC filed this action seeking protection from the clear and present danger that members of the AYA or the NAAVC could be threatened, searched, arrested, and have our sacrament seized. To prevent this risk from eventuating, we petitioned this court for protection from DEA enforcement activity. As alleged in our original complaint:

> **132.** There exists a clear and present danger: (1) that AYA and its members may be arrested for violations of the CSA, (2) that warrants could be issued for the arrest of AYA and its members, (3) that warrants may be issued allowing the search of AYA properties or that of its members, and (4) that AYA's sacramental Ayahuasca may be seized during the importation, manufacturing, or dispensing process.
>
> **133.** AYA and its members are aggrieved by this situation, that forces them to procure, share and celebrate their communion sacrament secretly, and to risk the loss of liberty and the personal anguish and humiliation of bearing an unmerited stain of criminality, in order to engage in the Free Exercise of religion protected by the First Amendment.

### Villanueva's Home and Church Are Raided by the DEA's HIDTA Task Force

**39.** Two weeks after we filed the action, almost as if to confirm the validity of our fears, on May 19, 2020, the DEA used the power of its federally-funded HIDTA task force to raid the home and church of Clay Villanueva, an NAAVC Board member, founder of his own Vine of Light Church, a Navy veteran with no criminal record, nearly sixty years of age, handcuffing him in his front yard, dressed in nothing but boxer shorts and a t-shirt.

**40.** I instantly felt I had gotten a message from the DEA when Clay called to report the traumatic incident: "This is how the DEA lets you know who you're dealing with." The search was intended to chill our resolve to continue petitioning this Court to protect our Free Exercise of visionary church practice, and to carry on with our Free Exercise.

**An Injunction is Needed to Avoid Irreparable Harm to AYA and its Congregation**

41.  Our religious community is being intimidated to halt its religious practice.  If the DEA is willing to threaten a witness in our case with drawn weapons, where does a man have to turn to openly worship in peace with his own conscience? In the face of assault by the government we have no other recourse but to seek an injunction from this Court.  I am concerned that the DEA has extended its conscious indifference to our Free Exercise to their now violent intimidation of those participating in our suit.

42.  AYA continues to engage in visionary communion.  We bring small groups for teaching and healing to the Upper Amazon in Peru.  We will persevere as well in our practice in North America; however, we are in danger of suffering irreparable harm to our Free Exercise, and are uncertain when or whether what befell Clay Villanueva, or worse, will befall one of our congregation.  Accordingly, we have no remedy at law for the damage and injury that is threatened by the actions of the DEA and other named Government agencies.  The threat to our health from an unnecessary encounter with law enforcement who may not even wear PPE (masks and gloves), as they did not when searching Villanueva and his home and church, filling the residence with potentially deadly COVID-19-laden exhalations.  The State of Arizona is in "triage" status currently, and as explained in the Arizona Department of Public Health document attached as Exhibit 11, and at last report there were no ICU beds in Tucson, and many patients are transferred to Phoenix.

43.  I would like to conclude this declaration by expressing a debt of gratitude to my teacher, Eladio Melendez Garcia, who kindly provided a letter attached as Exhibit 14, summarizing his qualifications, confirming my training, expressing approval for my mission, and his wish that I shall enjoy Free Exercise in my homeland.  The letter reads:

> My name is Eladio Melendez Garcia.  I live in the Peruvian Jungle four hours upriver from Iquitos, Peru, a city itself unreachable by road.  I am Quechua.  My father was a curandero, an ayahuasquero, a shaman – as was my grandfather, as am I.  I am also a Christian.  I am neither Protestant nor Catholic.  In Peru, I am free to practice my religion.  At the heart of my spiritual practice is the use of ayahuasca.

> I have been teaching Scott Stanley what I know: the spirit of the plants, the spirit of the icaros, the spirit of the jungle, the spirit of healing, and the door to the divine. Mr. Stanley has stepped through this door. He has returned to tell the people of the United States what he has learned, what he has witnessed, how to heal the spirit with the help of the ayahuasca. I hope that one day he will be able to adhere to his religious convictions in his home country without fear of persecution.
>
> I am sad to hear that in a country as powerful and free as the United States, that this man is not yet truly free to abide by the word of his God without fear of arrest. In Peru I am free to practice the tenets of my faith. My prayer is that one day all people will be so free.
>
> – Eladio Melendez Garcia (Nov 11, 2017)

Exhibit 14.)

**44.**  I respectfully submit that the facts stated in this declaration establish good cause for this Court to grant AYA's motion for preliminary injunction. Accordingly, I request the Court to issue a preliminary injunction enjoining the DEA and all other Government agencies from acting in any way to impose substantial burdens on AYA's free exercise.

I declare and affirm, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct, and that this declaration was signed on August 5, 2020, at Tucson, Arizona.



Winfield Scott Stanley III, Declarant