CHARLES CARREON (CSB # 127139)
3241 E. Blacklidge Drive
Tucson, Arizona 85716
Tel:  628-227-4059
Email: chascarreon@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches, and
Clay Villanueva

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA, <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM BARR, Attorney General of the United States; UTTAM DHILLON, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Dept. of Homeland Security; MARK A. MORGAN, Acting Commissioner of U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Dept. of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY, <br><br> Defendants. | Case No.: 3:20-CV-03098-WHO <br><br> DECLARATION OF CHARLES CARREON IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION <br><br> Date:  September 9, 2020 <br> Time:  2:00 P.M. <br> Courtroom:  2 (17th floor) |

Charles Carreon declares and affirms:

**1.**   I am an attorney licensed to practice before all courts in the State of California and a member of the bar of this Court.  I am counsel of record for plaintiff Arizona Yagé

Assembly ("AYA"), and make this declaration in support of the motion for preliminary injunction of plaintiff Arizona Yage Assembly ("AYA") for an order enjoining the Drug Enforcement Administration (the "DEA") and U.S. Customs and Border Protection ("CBP") from enforcing the Controlled Substance Act ("CSA") prohibitions on possession of Ayahuasca tea against AYA. Ayahuasca is AYA's sacramental communion substance, and it contains a small amount of Dimethyltryptaline ("DMT").[1] If called as a witness, I could and would so competently testify.

**2.** The chart below indexes the Exhibits identified in the foregoing declaration, that are authenticated hereinbelow, except for Exhibit 14, authenticated at Stanley Dec. ¶ 44.

| Exhibit | Document |
|---|---|
| 1. | AYA Tenets and Precepts |
| 2. | Ceremonial Instructions |
| 3. | Code of Ethics |
| 4. | Questionnaire |
| 5. | Confirmation Letter |
| 6. | Summary of Survey Results |
| 7. | Halpern Declaration from *CHLQ v. Mukasey* |
| 8. | Halpern scientific article cited in *CHLQ* |
| 9. | Gerding Declaration from *CHLQ v. Mukasey* |
| 10. | Opinion Letter of Dr. Paulo Barbosa |
| 11. | Documents regarding risks to life arising from the COVID-19 crisis in Arizona hospitals and prisons.<br>• Pages 1 – 15: Arizona Dept. of Public Health Triage Rules.<br>• Pages 16 – 17: August 5, 2020 Tucson.com article re inmate COVID-19 infection in Tucson prison afflicting 50% of inmates. |
| 12. | Los Angeles Times op-ed: Arizona's rules for rationing health care in the COVID-19 pandemic should terrify you |
| 13. | Oregon District Court's final injunction to the DEA in *CHLQ v. Mukasey* |
| 14. | Eladio's Letter |

---

[1] A Schedule I substance made unlawful under 21 U.S.C. Sec. 841(a)(1).

3.   Exhibits 1 – 4 listed above are true and correct copies of AYA's corporate policies relevant to this motion.

4.   Exhibit 6 is a true and correct summary of the data harvested during May and June 2018, using the online survey software at SurveyMonkey.com, when AYA distributed an 80-question survey to 1,430 ceremonial participants.  These are tabulated electronically by SurveyMonkey.com.  An accurate summary of the results of the survey is attached as Exhibit 6.  Although the rather lengthy survey required an average of twenty minutes to complete, AYA received 253 responses, a 17.7% response rate, that research will confirm is generally accepted as a sufficient response rate for purposes of inferring the views of the entire group.

5.   Exhibits 7, 8 and 9 are offered as evidence pursuant to F.R.E. 804(b)(1)(B) because the declarant expert witnesses for the Santo Daime plaintiff in *Church of the Holy Light of the Queen v. Mukasey*, 615 F.Supp.2d 1210 (2006), are unavailable, and the DEA was the adverse party in *CHLQ v. Mukasey,* where identical issues were raised and cross-examination was possible; accordingly, the declarations of the Daime experts are properly admitted in support of AYA's contentions.

6.   Exhibit 10 is the Opinion Letter of AYA's expert, Dr. Paulo Cesar Ribeiro Barbosa, offered as a summary of voluminous scientific evidence under F.R.E. 1006, and a source of helpful opinions on relevant matters pursuant to F.R.E. 702.

7.   Exhibit 11 contains two documents: The first is an official document downloaded from the Arizona Department of Health Services ("DHS") entitled "COVID-19 Addendum: Allocation of Scarce Resources in Acute Care Facilities Recommended for Approval by State Disaster Medical Advisory Committee (SDMAC) – 6/12/2020."  This document provides a directive currently in use in many Arizona hospitals that must triage medical care, *i.e.*, deny medical care, by allocating scarce resources, such as ventilators and ICU beds, on the basis of factors set by health administrators coping with a terrifying catastrophe.  Exhibit 11 uses a color-coded system for determining which color is

assigned to which patient, and what kind of care that entitles them to, given which color other patients are.  The triage system assigns older persons scores that are likely to deprive them of equal access to care in this deathbed competition.  The second document in Exhibit 11 is an article from August 5, 2020, today's date, announcing that 50% of the prisoners incarcerated at one prison facility in Tucson are infected with COVID-19.

**8.**    A quote from one of the rating systems established by DHS in Exhibit 11 gives a taste of the dire decisions to be made by health care providers under these rules:

> If two or more patients require a single resource, additional factors *may* be considered as priorities, including:
>
> 1. Pediatric patients < 18 years of age
>
> 2. First responders or frontline healthcare workers (HCWs). This prioritization reflects the instrumental value HCWs serve in the community during a pandemic, as well as an acknowledgement of the increased risk they are assuming in caring for high-risk patients. They specifically do not receive priority because of an estimation of worth.
>
> 3. Single caretakers for minors or dependent adults
>
> 4. Pregnant patients
>
> 5. Opportunity to experience life stages (childhood, young adulthood, middle years, and older years). The justification for this principle does not rely on considerations of one's intrinsic worth or social utility, but rather that younger individuals have had the least opportunity to live through life's stages. Public engagement regarding allocation of critical care resources supports the use of this principle for allocation decisions. (Neuberger 1998)
>
> If patients requiring the same scarce resource cannot be effectively prioritized with any of the above, allocation should proceed randomly.

**9.**    Exhibit 12 is a true and correct copy of an article from the Los Angeles Times, dated June 30, 2020, criticizing the Arizona Triage Rules, and stating, "Under the rules, doctors making triage judgments that deprive patients of necessary care will be immune from legal liability."  I have not yet confirmed this statement, but will seek to determine the source of the comment and report to the Court in AYA's reply brief.  The article also reports that "Arizona … is the only state that has activated its crisis standards of care procedures – so far."  The article appears to charge DHS director Cara Christ of misstating the uniquely bad situation the state finds itself in by saying that "A lot of states actually have activated their crisis standards of care plans," The LA Times fact-checked

her statement directly: "That appears to be untrue. Though most states have prepared a crisis plan, no others have activated it." Accordingly, Arizona is clearly a uniquely dangerous state in which to be incarcerated.

**10.** I respectfully submit that AYA's motion establishes grounds for the Court to make the following findings:

1. AYA is a proper plaintiff under the Religious Freedom Restoration Act to seek protection for the Free Exercise rights of its minister and congregation.
2. AYA is likely to prevail on its RFRA claim, because:
    a. AYA's system of belief in its system of practice is genuine;
    b. AYA's system of belief and practice makes Ayahuasca communion the central practice of the faith;
    c. AYA's Ayahuasca communion ceremonies are safe;
    d. AYA handles Ayahuasca as its Sacrament, which provides a reasonable and reliable source of security that it will not divert Ayahuasca into illicit commerce;
    e. No compelling governmental interest justifies imposition of a complete prohibition on AYA that bars it from all importation, manufacturing, and dispensing of Ayahuasca;
    f. The imposition by the DEA and the CBP of a complete prohibition on AYA, substantially burdens the Free Exercise of AYA, its minister, and the AYA congregation;
3. To engage in their chosen form of Free Exercise, AYA's minister and congregation must reaffirm their faith in the face of the risk of criminal prosecution;
4. The Free Exercise of a reasonable individual would be chilled by exposure to the risks of felony criminal prosecution in order to practice their religion;

5. The risk of felony criminal prosecution always comes with serious risks to life, liberty, happiness, and economic interests;
6. The balance of the hardships tips sharply and imminently towards AYA, that is suffering a chilling effect upon its right of Free Exercise at this time, because its minister and congregation must risk arrest and prosecution to engage in Free Exercise;
7. AYA's minister resides in Tucson, Arizona, where COVID-19 has surged through the facilities, and in one Tucson prison facility, 500 inmates, over 50% of the total inmates, have been infected with the potentially deadly virus.
8. AYA's minister is 57 years of age. Many members of the AYA congregation live and practice in Arizona, and could be exposed to arrest during an AYA ceremony.
9. Pursuant to a statistically reliable internal survey of its membership, twenty-four percent (24%) of AYA's congregation is over the age of 50, and these persons would be at elevated risk of dying if exposed to COVID-19 through detention or incarceration.
10. Twenty-four percent of AYA's congregation, being over 50, would be disfavored for receiving treatment under the medical Triage Rules adopted by the Arizona Department of Public Health.
11. The exposure of AYA's minister and congregation from the often deadly COVID-19 virus that they would be at high risk of contracting during an unconstitutional confinement arising out of their Free Exercise of religion presents a high risk of irreparable harm, because death is irreversible.
12. The requested injunction will serve the public interest in protecting First Amendment rights from prior restraint and threats of prosecution that impose prior restraint on Free Exercise, and chill Free Expression and Freedom of Association.
13. The requested injunction will further serve the public interest by protecting vulnerable older persons from being exposed to severe risks to their health, including a highly elevated risk of death by COVID-19, resulting from their Free

Exercise of religion as an AYA practitioner of Ayahuasca communion, due to being detained, searched, prosecuted, or incarcerated by the DEA, the CBP, or any other law enforcement agency acting in active concert with the said defendants.

**11.** Based upon the above findings, the Court may enter a preliminary injunction that provides all of the protection needed for AYA pending final judgment. The form of prohibitory order issued by the Oregon District Court in *CHLQ v. Mukasey* is a model of simplicity, enjoining the DEA "from prohibiting plaintiffs' importation, storage distribution, and use of Daime tea for plaintiffs' religious ceremonies." Accordingly, AYA has submitted a Proposed Order in the said form, and respectfully requests the Court to issue the same pursuant to its authority under F.R.Civ.P. 65.

I declare and affirm, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct, and that this declaration was signed on August 5, 2020, at Tucson, Arizona.

/s/Charles Carreon
Charles Carreon, Declarant