ETHAN P. DAVIS
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
KEVIN P. HANCOCK
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-3183
Fax: (202) 616-8470
E-mail: kevin.p.hancock@usdoj.gov

*Attorneys for the Federal Agency Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM BARR, Attorney General of the United States; TIMOTHY J. SHEA, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Department of Homeland Security; MARK A. MORGAN, Acting Commissioner of the U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Department of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY, <br><br> Defendants. | No. 3:20-cv-3098-WHO <br><br><br> **FEDERAL AGENCY DEFENDANTS' OPPOSITION TO PLAINTIFFS' FIRST MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 22)** <br><br> Date: September 9, 2020 <br> Time: 2:00 pm <br> Place: Courtroom 2, 17th Floor <br> Honorable William H. Orrick |

## <u>TABLE OF CONTENTS</u>

BACKGROUND ............................................................................................................ 4

I.  STATUTORY AND REGULATORY BACKGROUND ................................................. 4

II. THIS LAWSUIT ......................................................................................................... 5

    A.  The Original Complaint ....................................................................................... 5

    B.  The First Amended and Supplemental Complaint................................................ 6

    C.  Plaintiffs' First Motion for Preliminary Injunction ............................................ 7

    D.  The Federal Agency Defendants' Motion to Strike the FASC ............................ 8

    E.  Plaintiffs' Second Motion for Preliminary Injunction ........................................ 8

III. THE FEDERAL AGENCY DEFENDENTS' DECLARATIONS .................................. 8

LEGAL STANDARD .................................................................................................... 9

ARGUMENT ................................................................................................................ 10

I.  PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS ............................ 10

    A.  The Motion Seeks Relief for a Claim Added to the Case by a Supplemental
        Complaint That Plaintiffs Admit They Filed in Violation of Rule 15(d) ............. 10

    B.  Venue is Improper in this District ....................................................................... 11

    C.  Plaintiffs Have Not Pleaded Any Waiver of Sovereign Immunity, Which Bars
        Plaintiffs' Claim at Least to the Extent It Seeks Monetary Relief ....................... 13

    D.  Plaintiffs Lack Standing Because They Have Failed to Plead a Sufficient Injury-
        in-Fact to Support the Injunctive Relief They Seek............................................. 14

    E.  Plaintiffs' Alleged Injuries Cannot Be Redressed to the Extent Plaintiffs Seek an
        Injunction Against the Federal Agency Defendants Barring the Use and Requiring
        the Return of Evidence Seized from Villanueva.................................................. 17

    F.  The Section 1983 Claim is Unlikely to Succeed on Its Merits ............................ 18

II. PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUBSTANTIAL
    AND IMMEDIATE IRREPARABLE HARM............................................................... 22

III. THE BALANCE OF THE EQUITIES WEIGHS HEAVILY AGAINST A
    PRELIMINARY INJUNCTION ................................................................................. 25

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ................................................. 10

*Ariz. Dream Act Coal. v. Brewer*,
855 F.3d 957 (9th Cir. 2017) ................................................. 23

*Blye v. California Supreme Court*,
No. CV 11-5046-DWM, 2014 WL 229830 (N.D. Cal. Jan. 21, 2014)................... 13

*Cabrera v. Martin*,
973 F.2d 735 (9th Cir. 1992) ................................................. 18, 19

*DISH Network Corp. v. FCC*,
653 F.3d 771 (9th Cir. 2011) ................................................. 10, 11

*District of Columbia v. Carter*,
409 U.S. 418 (1973) ................................................. 18

*Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*,
774 F.2d 1371 (9th Cir. 1985) ................................................. 22

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) ................................................. 25

*Elias v. Connett*,
908 F.2d 521 (9th Cir. 1990) ................................................. 24

*Employment Division v. Smith*,
494 U.S. 872 (1990) ................................................. 15

*FAA v. Cooper*,
566 U.S. 284 (2012) ................................................. 13

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) ................................................. 4, 5

*Hartikka v. United States*,
754 F.2d 1516 (9th Cir. 1985) ................................................. 24

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ................................................. 12

*Hiramanek v. Clark*,
No. C-13-0228 EMC, 2013 WL 5082640 (N.D. Cal. Sept. 13, 2013) ................... 23

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) ................................................. 15, 16, 23

*Ibrahim v. Department of Homeland Security*,
538 F.3d 1250 (9th Cir. 2008) ................................................. 19

*Kali v. Bowen*,
    854 F.2d 329 (9th Cir. 1988) ........................................................................ 18

*Kolender v. Lawson*,
    461 U.S. 352 .................................................................................... 14, 16

*Land v. Dollar*,
    330 U.S. 731 (1947) ............................................................................ 14

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010) ................................................................ 16

*LSO, Ltd. v. Stroh*,
    205 F.3d 1146 (9th Cir. 2000) .............................................................. 15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................ 14, 17

*Lydo Enterprises, Inc. v. City of Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984) .............................................................. 23

*Lyons v. City of Los Angeles*,
    461 U.S. 95 (1983) ..................................................................... 14, 16, 23

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ............................................................................. 9

*Morse v. N. Coast Opportunities, Inc.*,
    118 F.3d 1338 (9th Cir. 1997) .............................................................. 18

*Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*,
    474 F. Supp. 2d 1133 (N.D. Cal. 2007), *aff'd sub nom. Multi-Denominational Ministry of
    Cannabis & Rastafari, Inc. v. Holder*, 365 F. App'x 817 (9th Cir. 2010) .............................. 13

*Nation v. Trump*,
    395 F. Supp. 3d 1271 (N.D. Cal. 2019), *aff'd*, No. 19-16443, 2020 WL 3410887 (9th Cir. June
    22, 2020) .......................................................................................... 13

*Navajo Nation v. United States Forest Serv.*,
    535 F.3d 1058 (9th Cir. 2008) ................................................................ 4

*Nelsen v. King Cty.*,
    895 F.2d 1248 (9th Cir. 1990) .......................................................... 14, 15

*Piedmont Label Co. v. Sun Garden Packing Co.*,
    598 F.2d 491 (9th Cir. 1979) ................................................................ 12

*S. Bay United Pentecostal Church v. Newsom*,
    959 F.3d 938 (9th Cir. 2020) ................................................................ 24

*Sampson v. Murray*,
    415 U.S. 61 (1974) ....................................................................... 23, 24

*Strickland v. Shalala*,
    123 F.3d 863 (6th Cir. 1997) ............................................................. 18, 19

*Tosco Corp. v. Cmtys. for a Better Env't,*
    236 F.3d 495 (9th Cir. 2001) ............................................................................. 13

*United States v. Mitchell,*
    445 U.S. 535 (1980) ............................................................................................. 13

*United States v. Mitchell,*
    463 U.S. 206 (1983) ............................................................................................. 13

*United States v. Stephens,*
    2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) .................................................... 25

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
    865 F.2d 1539 (9th Cir. 1989) ............................................................................. 21

*Univ. of Tex. v. Camenisch,*
    451 U.S. 390 (1981) ............................................................................................. 22

*Universal Semiconductor, Inc. v. Tuoi Vo,*
    No. 5:16-CV-04778-EJD, 2016 WL 9211685 (N.D. Cal. Nov. 29, 2016) ............... 23

*Vegetal v. Mukasey,*
    No. 00-1647, 2008 WL 11451470 (D.N.M. June 16, 2008) ............................ 15, 22

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ....................................................................................... *passim*

**Statutes**

21 U.S.C. § 801 ..................................................................................................... 4, 18

21 U.S.C. § 873 ......................................................................................................... 18

21 U.S.C. § 877 ........................................................................................................... 5

28 U.S.C. § 1391 .............................................................................................. 2, 11, 12

28 U.S.C. § 1404(a) .................................................................................................. 12

28 U.S.C. § 1406(a) .................................................................................................. 11

28 U.S.C. §§ 2201-02 .................................................................................................. 6

42 U.S.C. § 1983 ............................................................................................... 1, 6, 18

42 U.S.C. § 2000bb–1(b) ............................................................................................ 4

**Rules**

Fed. R. Civ. P. 12(b) ........................................................................................... 11, 18

Federal Rule of Civil Procedure 15(d) ........................................................................ 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Regulations**

21 C.F.R. § 1301.31 ................................................................................................ 4

**Other Authorities**

Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act
     Pursuant to the Religious Freedom Restoration Act,
     https://www.deadiversion.usdoj.gov/GDP/
     (DEA-DC-5)%20Guidance%20Regarding%20Petitions%20for%20Religious
     %20Exemptions.pdf................................................................................................ 4

In their motion for a preliminary injunction, Plaintiffs assert that they are entitled to emergency relief on their claim under 42 U.S.C. § 1983 against the Federal Agency Defendants[1] because more than nine weeks before their motion, Arizona *state* law enforcement officials executed a search warrant against Plaintiff Clay Villanueva and seized controlled substances. Plaintiffs seek a sweepingly broad injunction against several federal law enforcement agencies, including the U.S. Drug Enforcement Administration ("DEA"), because they claim that the search was the result of a DEA "conspiracy" with Arizona officials to deprive Villanueva of his rights in retaliation for a letter sent to the DEA by Plaintiff North American Association of Visionary Churches ("NAAVC"). To support this implausible claim, Plaintiffs rely upon nothing more than their own speculation. In contrast, the DEA's declarations demonstrate that the DEA did not and could not have acted in retaliation against Plaintiffs because the DEA forwarded an anonymous tip it had received about Villanueva's activities to state officials *before* receiving any letter from NAAVC. Moreover, the DEA played no role in the subsequent investigation of Villanueva and at no point has possessed his seized property.

Plaintiffs' motion should be denied. They have failed to satisfy any of the four requirements that must be met to justify the extraordinary relief of a preliminary injunction. Moreover, Plaintiffs' claim under section 1983, on which the motion is based, is unlikely to succeed on the merits for several reasons.

First, Plaintiffs have admitted that they improperly attempted to add their section 1983 claim to the original complaint in a supplemental pleading that was filed in violation of Federal Rule of Civil Procedure 15(d). That pleading should therefore be stricken, and the Federal Agency Defendants should have the opportunity to oppose Plaintiffs' supplementation of the

---

[1]     The "Federal Agency Defendants" are William Barr, Attorney General of the United States; Timothy Shea, Acting Administrator of the U.S. Drug Enforcement Administration ("DEA"); Chad Wolf, Acting Secretary of the Department of Homeland Security ("DHS"); Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); and the United States of America. Contrary to Plaintiffs' statement that "all of the defendants[] . . . have been served," *see* Pls.' Mot. for Prelim. Inj. at 21 (July 22, 2020), ECF No. 22, upon information and belief, Defendant Deputy Assistant Administrator of the DEA's Department of Diversion Control, Thomas Prevoznik, who was recently dismissed from this action, *see* ECF No. 37, was never served with initiating process.

original complaint in the context of a motion properly brought under Rule 15(d) first, before potentially facing the extraordinary and drastic remedy of a preliminary injunction on the basis of those supplemental allegations.

Second, venue is improper in this District under 28 U.S.C. § 1391(e)(1)(c), because Plaintiffs have failed to plead that any Plaintiff resides in the Northern District of California. Indeed, this case has no connection to this District at all, as it involves Arizona-based plaintiffs suing defendants based in the Washington, D.C. area and Arizona over events that allegedly took place in or near Washington, D.C. and Arizona.

Third, Plaintiffs have failed to plead any sovereign immunity waiver by the Federal Agency Defendants, even though their lawsuit seeks in excess of $1 million from the federal government.

Fourth, Plaintiffs lack standing. Even though Plaintiffs seek an injunction, they have not demonstrated any likelihood that they will, in the future, be subjected again to the injuries they allege. Plaintiffs do not allege that they will again violate the laws that resulted in the search warrant against Villanueva, do not allege Villanueva will be subject to another search warrant, and offer nothing more than their speculative and insufficient fears of "additional retaliatory acts." Also, to the extent Plaintiffs' requested injunction demands that the Federal Agency Defendants return the evidence seized from Villanueva, Plaintiffs' claims are not redressable since the DEA does not have and has never had such evidence.

Fifth, Plaintiffs' section 1983 claim against the Federal Agency Defendants fails to state a claim upon which relief could be granted. As the Ninth Circuit has observed, "by its very terms, § 1983 precludes liability in federal government actors." Plaintiffs incorrectly assert that the DEA's routine cooperation with state law enforcement transforms DEA officials acting to enforce federal laws into officials acting under color of state law. But the Ninth Circuit has rejected this very argument, and instead requires a nexus between federal and state actors so close that the actions of federal officers may be treated as that of the State itself. Plaintiffs have come nowhere near meeting that standard, given that Arizona had nothing to do with the DEA's decision to forward an anonymous tip about Villanueva's activities. Additionally, that decision

by the DEA could not have been in retaliation for NAAVC's letter, which was sent to the DEA after the tip had already been forwarded.  Because there was no retaliation, and because the DEA had no meaningful involvement in Maricopa County's execution of Villanueva's state-issued search warrant, Plaintiffs also cannot show that the Federal Agency Defendants "conspired" to deprive them of their rights, as they claim.  In any event, even if Plaintiffs could show that the DEA effectively became a state actor that conspired against Villanueva in retaliation for a letter, Plaintiffs cannot show that they were deprived of any rights under the Free Exercise Clause. That clause does not prohibit enforcement of generally applicable and neutral regulations of controlled substances.

Plaintiffs have also failed to demonstrate irreparable harm.  None of the injuries they claim to have previously suffered as a result of the search of Villanueva's residence are sufficiently likely to reoccur.  Even if they were, none of those alleged injuries would be irreparable.  Indeed, Plaintiffs have implicitly admitted as much by waiting until nine weeks after the search to seek "emergency" relief.  Plaintiffs were able to file a 20-page supplement to the original complaint in just under four weeks after the search, but offer no explanation as to why they then waited another five weeks to seek a preliminary injunction.  In any event, the economic, reputational, and emotional harms they claim are categorically not irreparable. Villanueva also appears to claim that he will suffer irreparable harm because, if he is arrested, charged, convicted, and imprisoned as a result of the search, he will catch COVID-19 and could suffer death.  That wildly speculative claim fails to show immediate irreparable harm for several reasons, including that Villanueva would have an opportunity to defend against any charges against him in a state criminal proceeding or seek to oppose his detention based on the pandemic.

Finally, Plaintiffs have failed to show that the balance of the equities weighs in favor of the startlingly broad and intrusive injunction they seek.  While Plaintiffs are unable to demonstrate any likelihood of future injury, the injunction they request would bar the DEA and other Federal Agency Defendants from performing fundamental law enforcement tasks pursuant to their mission of enforcing the Controlled Substances Act.

The motion for preliminary injunction should be denied.

1

**BACKGROUND**

2

**I.    STATUTORY AND REGULATORY BACKGROUND**

3

The Controlled Substances Act ("CSA"), regulates the importation, manufacture,

4

distribution, and use of psychotropic substances.  21 U.S.C. § 801 *et seq.* (2000 ed. and Suppl. I).

5

"Schedule I" substances under the CSA are those that have no currently accepted medical use

6

and the highest potential for abuse and which are therefore subject to the most comprehensive

7

restrictions, including a ban on nearly all importation and use.  The CSA grants the Attorney

8

General the power to register an applicant to import, distribute or manufacture a Schedule I

9

controlled substance so long as doing so is consistent with the public interest.  *Id.* § 823(b).  The

10

Attorney General has delegated its registration authority to the DEA, whose Office of Diversion

11

Control reviews registration applications.  *See* 21 C.F.R. § 1301.31.

12

The Religious Freedom Restoration Act ("RFRA") provides that the federal government

13

may not substantially burden a person's sincere exercise of religion, unless doing so is the least

14

restrictive means of advancing a compelling interest.  42 U.S.C. § 2000bb–1(b).  To establish a

15

*prima facie* violation of RFRA, a plaintiff must present sufficient evidence to allow a trier of fact

16

to rationally find that the plaintiff's activities are a sincere "exercise of religion" and that the

17

Government action "substantially burdens" the plaintiff's exercise of religion.  *Navajo Nation v.*

18

*United States Forest Serv.*, 535 F.3d 1058, 1068-69 (9th Cir. 2008).

19

In 2006, the Supreme Court held that government action taken pursuant to the CSA is

20

subject to RFRA.  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418,

21

432-33 (2006).  After a subsequent increase in requests for religious exemptions from the CSA,

22

the DEA publicly issued guidelines in 2009 to serve as an "interim measure intended to provide

23

guidance to parties who wish to petition [the DEA] for a religious exemption to the CSA" (the

24

"2009 Guidance").[2]  The 2009 Guidance directs a petitioner to provide information

25

demonstrating that the application of the CSA to its activities would "(1) be a substantial burden

26

27

28

---

[2]      *See* Guidance Regarding Petitions for Religious Exemption from the Controlled
Substances Act Pursuant to the Religious Freedom Restoration Act, at https://www.deadiversion.
usdoj.gov/GDP/(DEA-DC-5)%20Guidance%20Regarding%20Petitions%20for%20Religious
%20Exemptions.pdf.

1   on (2) his/her sincere (3) religious exercise," and information detailing the petitioner's planned

2   use and handling of the controlled substance.  *Id.*  Following review of a religious exemption

3   petition, the DEA's Deputy Assistant Administrator of Diversion Control Division issues a

4   written final determination granting or denying the petition.  *Id.*  That determination is a final

5   agency decision subject to judicial review in a United States Court of Appeals.  21 U.S.C. § 877.

6   **II.    THIS LAWSUIT**

7        **A.    The Original Complaint**

8        Plaintiff Arizona Yagé Assembly ("Arizona Yagé") alleges that it is a "religious

9   nonprofit corporation[]" that was established "as a visionary church in 2015," and which uses

10  "Ayahuasca" as its communion sacrament.  *See* Compl. ¶¶ 6, 42 (May 5, 2020), ECF No. 1

11  ("Original Complaint").  Ayahuasca is a tea that contains the hallucinogen dimethyltryptamine

12  ("DMT"), a Schedule I controlled substance under the CSA.  *Id.*  ¶ 6. Ayahuasca is made "by

13  brewing leaves from DMT-containing plants jointly with slices of Banisteropsis Caapi, the

14  'yagé' vine."  *Id.* ¶ 38.  Plaintiff NAAVC describes itself as an "interdenominational association

15  of visionary churches."  *Id.* ¶ 57.  NAAVC claims that its "central act of Free Exercise is

16  initiating a lawful system for importing and sharing sacramentally-prepared Ayahuasca with

17  visionary churches at reasonable cost[.]"  *Id.* ¶ 59.  Neither group has petitioned the DEA for a

18  RFRA exemption from the CSA.  *Id.* ¶ 96.

19       On May 5, 2020, Arizona Yagé and NAAVC filed the original complaint in this action,

20  which contains three claims, one each under the RFRA, the Administrative Procedure Act

21  ("APA"), and the Declaratory Judgment Act.  Original Compl. at 1.

22       First, in their RFRA claim, Arizona Yagé and NAAVC allege that they are entitled to a

23  blanket exemption from the CSA's prohibitions on ayahuasca.  Original Compl. ¶¶ 123-47.  This

24  claim is asserted against the Federal Agency Defendants and Thomas Prevoznik in his personal

25  capacity.  *Id.* at 36, 70.  Second, in their APA claim, Arizona Yagé and NAAVC allege that the

26  United States and the DEA have maintained an alleged policy of refusing to grant religious

27  exemptions under RFRA to "visionary churches" such as Arizona Yagé.  *Id.* ¶¶ 71, 148-67.  In

28  that claim, they also allege that the DEA violated the APA by failing to replace its current

1   guidance for RFRA petitions with "a system of providing regulatory services to visionary

2   churches[.]"  *Id.* ¶ 167.  Third, Plaintiffs claim they are entitled to a declaration "stating the

3   rights and relations of the parties" under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

4   *Id.* ¶¶ 168-71.

5          As relief for the three claims of the Original Complaint, Plaintiffs ask the Court for a

6   declaratory judgment and an injunction requiring the Federal Agency Defendants to, among

7   other things, rescind the 2009 Guidance and register Arizona Yagé and NAAVC under the CSA

8   to import, manufacture, dispense, and use ayahuasca.  Original Compl. ¶¶ 65-70.

9          **B.     The First Amended and Supplemental Complaint**

10          On June 16, 2020, without seeking leave of Court, Plaintiffs filed a First Amended and

11   Supplemental Complaint, adding one new plaintiff, four new defendants, and two new claims

12   based on events allegedly occurring on May 19, 2020, approximately two weeks after the date of

13   the Original Complaint.  First Am. and Suppl. Compl. ("FASC") at 46-59 (Jun. 15, 2020), ECF

14   No. 12; *see also* Notice of Errata at 2, ECF No. 21.

15          In the first new claim (claim 3 of the FASC), new Plaintiff Clay Villanueva and the

16   NAAVC assert a cause of action under 42 U.S.C. § 1983 against the four new defendants—the

17   State of Arizona; Arizona Attorney General Mark Brnovich; Maricopa County, Arizona; and

18   Maricopa County Deputy Matthew Shay (collectively, the "Arizona Defendants")—and "Mark

19   A. Morgan on behalf of the DEA and unnamed DEA agents."[3]  FASC at 46-59.  In the FASC,

20   Plaintiffs allege that Villanueva is a board member of NAAVC and the founder of the "Vine of

21   Light visionary church," where Villanueva has "conducted ceremonies as the minister."  FASC

22   ¶¶ 7-8.  The section 1983 claim further alleges that NAAVC "sent a letter dated January 8, 2020"

23   to the DEA requesting that it rescind the 2009 Guidance.  *Id.* ¶¶ 122, 184.  Upon receiving it, the

24   DEA allegedly "conceived animus for NAAVC and its Board," including Villanueva.  *Id.* ¶ 184.

25   As a result, Plaintiffs allege, the DEA conspired to "proactively retaliate against NAAVC," *id.*,

26   by seizing Villanueva's property "to obtain tactical leverage in the pending litigation by placing

27   ────────────────

28   [3]      The Federal Agency Defendants note that Mr. Morgan, who serves as Acting
    Commissioner of CBP and who is sued in his official capacity, does not have authority to take
    any action "on behalf of DEA."

an NAAVC Board member at risk of prosecution," *id.* ¶ 189.  Acting on this "retaliatory

animus," the DEA allegedly conspired with Arizona state and local officials via a drug

trafficking task force including members from both state and federal law enforcement entities.

*See id.* ¶¶ 187, 190.  Plaintiffs further allege that a search and seizure of items from Villanueva's

home occurred on May 19, 2020.  *Id.* ¶ 199; *see also* ECF No. 21.  Specifically, Plaintiffs assert

that on that date, after Mr. Shay "delivered a search warrant issued by a Maricopa County Justice

of the Peace," law enforcement officers searched Villanueva's home and seized "the Vine of

Light Church's Ayahuasca sacrament" and Villanueva's marijuana, mobile phones, and financial

records, among other things.  *Id.* ¶¶ 199-200.  Plaintiffs claim that the search and seizure violated

Villanueva's First, Fourth, Fifth, and Fourteenth Amendment rights.  *Id.* ¶¶ 211-15.

As relief for their section 1983 claim, Villanueva and NAAVC seek monetary relief and

an injunction preventing the DEA and the Arizona Defendants "from taking further unlawful

action[.]"  *Id.* ¶¶ 219-20.

In the second new claim of the FASC (claim 4 of the FASC), Villanueva asserts a claim

under the Arizona Free Exercise of Religion Act against the State of Arizona and the Arizona

Attorney General claiming Villanueva is entitled to an exemption from Arizona state regulation

of ayahuasca.  FASC ¶¶ 223-32.[4]

## C.    Plaintiffs' First Motion for Preliminary Injunction

On July 22, 2020—nine weeks after the May 19 search of Villanueva's home, and five

weeks after Plaintiffs' June 16 FASC—Plaintiffs moved for a preliminary injunction against all

Defendants on the basis of Villanueva and NAAVC's section 1983 claim.  *See* Pls.' Mot. for

Prelim. Inj. ("PI Mot.") (July 22, 2020), ECF No. 22.  Plaintiffs seek an injunction prohibiting

Defendants from "[m]aking any use of" and "[r]etaining any of the property seized from

Villanueva."  *See* Proposed Order Granting Prelim Inj. at 2 (July 22, 2020), ECF No. 22-15.

They also seek an injunction barring the Defendants from "[p]erforming any acts intended to

---

[4]    Plaintiffs' claim under the Arizona Free Exercise of Religion Act is not relevant to
Plaintiffs' motion for preliminary injunction and is asserted only against the state defendants and
thus is not further addressed in this brief.

1  cause damage" to Plaintiffs, and from "[c]riminally investigating" Plaintiffs, including by using

2  specific databases and by "[j]oining [Arizona Yagé]'s Facebook group." *Id.* at 2-3.

3       Plaintiffs assert that an injunction is warranted because the May 19 search of

4  Villanueva's home has caused him economic, emotional, reputational, First Amendment, and

5  other injuries, FASC ¶¶ 195, 200, 208, 216-19; *see also* PI Mot. at 11, 19, 21-22.  Plaintiffs

6  claim that as a result of the May 19 search, they fear "future enforcement by state actors

7  operating at the behest of the DEA."  FASC ¶ 216; *see also* PI Mot. at 22 (asserting that,

8  "[h]aving been the victim of an armed and unlawful search," Plaintiffs fear "potential future

9  injury" from "additional retaliatory acts" and the alleged "DEA[] conspiracy against them").

10       **D.      The Federal Agency Defendants' Motion to Strike the FASC**

11       On July 29, 2020, the Federal Agency Defendants moved to strike the FASC because

12  Plaintiffs improperly filed that supplemental pleading without first moving this Court for leave to

13  do so as required by Rule 15(d).  *See* ECF No. 31.  In a later filing, Plaintiffs admitted that they

14  "failed to obtain leave of Court under Rule 15(d)" when filing the FASC because they had

15  "failed to read the text of Rule 15(d)" before filing.  Pl. Arizona Yagé Assembly's Mot. for

16  Relief Under Rules 60(b)(1) and 6(b) at 3 (Aug. 5, 2020), ECF No. 34.

17       **E.      Plaintiffs' Second Motion for Preliminary Injunction**

18       On August 5, 2020, three months after Plaintiffs filed the original complaint, Plaintiffs

19  filed a second motion for a preliminary injunction, this time based on the RFRA claim asserted

20  in their FASC and first asserted in the original complaint.  *See* ECF No. 33.  Plaintiffs' motion

21  argues that the Court should grant their second requested preliminary injunction in part due to

22  the search of Villanueva's home on May 19.  *Id.* at 21.  Defendants' opposition to Plaintiffs'

23  second motion for a preliminary injunction is currently due by August 19, 2020.

24  **III.   THE FEDERAL AGENCY DEFENDENTS' DECLARATIONS**

25       The Federal Agency Defendants have submitted three declarations in support of their

26  opposition to Plaintiffs' first preliminary injunction motion.  They establish that on January 8,

27  2020, DEA Special Agent Marco Paddy of the DEA's Phoenix Field Division, received a tip

28  from an anonymous caller who reported that Villanueva manufactured, possessed, and sold

ayahuasca containing DMT.  Ex. A (Decl. of Marco A. Paddy ("Paddy Decl.")) ¶ 5).  That same day, Special Agent Paddy, acting pursuant to his duties as a federal law enforcement officer charged with implementing the CSA, forwarded that tip to an officer in the Phoenix Police Department.  *Id.* ¶¶ 4, 6.  At that time, Special Agent Paddy had never heard of the NAAVC, Plaintiffs' attorney, or any letter written by them.  *Id.* ¶ 9.  After passing along the tip, Special Agent Paddy did not initiate any DEA investigation into Villanueva's alleged activities and did not participate in any Maricopa County investigation resulting from forwarding that tip.  *Id.* ¶ 8.

At 7:21 pm on January 9—that is, after the close of business on the day after Special Agent Paddy forwarded the tip to Maricopa County—several officials in the DEA's Office of Diversion Control received an email message from Plaintiffs' attorney forwarding a letter (which was dated January 8, 2020) regarding petitions for RFRA exemptions from the CSA.  Ex. B (Decl. of Loren Miller ("Miller Decl.") ¶ 7).  The Diversion Control Office receives a "steady volume of correspondence from members of the public."  *Id.* ¶ 6.  As it does for all incoming correspondence, DEA administrative staff forwarded Plaintiffs' letter for routine processing to the DEA's Policy Section.  *Id.* ¶¶ 6, 8.

The DEA's Phoenix task force group did not participate in any way in Maricopa County's execution of a state-issued search warrant upon Villanueva in May 2020, with the exception of one Arizona state officer (who was then on detail with the DEA) who lent routine assistance.  *See* Ex. C (Decl. of Michael G. Brown ("Brown Decl.") ¶¶ 3-6).  At the time the Villanueva search warrant was executed, the supervisor of DEA's Phoenix task force group had never heard of NAAVC, Plaintiffs' attorney, or any letter written by them.  *Id.* ¶ 8.  The DEA also did not generate any reports regarding Maricopa County's execution of that warrant, nor did it take custody of any evidence seized during that search by Maricopa County.  *Id.* ¶ 7.

## LEGAL STANDARD

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*) (citation omitted).  A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citation omitted).  A "possibility" of irreparable harm is insufficient; irreparable harm must be likely absent an injunction.  *Id.*; *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (rejecting Ninth Circuit's rule that the "possibility" of irreparable harm, as opposed to its likelihood, may justify a preliminary injunction).  Plaintiffs bear the burden of demonstrating that each of these four factors is met.  *DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).

## ARGUMENT

## I.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

### A.   The Motion Seeks Relief for a Claim Added to the Case by a Supplemental Complaint That Plaintiffs Admit They Filed in Violation of Rule 15(d)

Plaintiffs are unlikely to succeed on the merits of their section 1983 claim because they have improperly attempted to add that claim to this case.  As fully explained in the Federal Agency Defendants' currently pending Motion to Strike Plaintiffs' First Amended and Supplemental Complaint, *see* ECF No. 31, Plaintiffs' improperly filed that pleading without first moving this Court for leave to do so as required by Rule 15(d).  Plaintiffs ignored Rule 15(d) even though the FASC purports to add to this case one new plaintiff, four new defendants, 20 new pages of allegations about events post-dating the original complaint, and two new causes of action—including the section 1983 claim at issue here—that are legally and factually unrelated to the original complaint's three claims.  *See* Mot. to Strike Pls.' FASC at 6-9.

Plaintiffs' violation of Rule 15(d) is no mere foot fault: the FASC improperly introduces distinct new causes of action; unnecessarily complicates this case; and has caused the Federal Agency Defendants prejudice—Plaintiffs' motion for preliminary injunction seeks relief on the basis of the section 1983 claim that the FASC newly and improperly asserts.  *Id.* at 7-9.

In an August 5, 2020 filing, Plaintiffs conceded that their FASC violates Rule 15(d).  *See* Pl. Arizona Yagé Assembly's Mot. For Relief Under F.R.Civ.P. Rules 60(b)(1) and 6(b) ("Pl.'s Mot.") at 3 (Aug. 5, 2020), ECF No. 34.  That filing states that Plaintiffs' "counsel has admitted

that he failed to obtain leave of Court under Rule 15(d)[.]"  *Id.*  Indeed, counsel for Plaintiffs

declared that despite having been a member of the bar of this Court for 33 years, he "*failed to*

*read the text of Rule 15(d)* before filing the [FASC]."  Decl. of Charles Carreon ¶ 2, ECF No.

34-1 (emphasis added).  Moreover, Plaintiffs' counsel effectively admitted that the FASC

improperly adds new claims to this case, stating, "had there been any doubt in my mind about the

procedure I was using, I would simply have drafted a separate complaint alleging all of the new

material, [and] paid a second filing fee[.]"  *Id.* ¶ 6.

Plaintiffs' motion for preliminary injunction should therefore be denied given that it is

founded on an inoperative complaint.  The motion lacks merit for all of the additional reasons

explained in this opposition, but the Federal Agency Defendants should have the opportunity to

oppose Plaintiffs' supplementation of the original complaint in the context of a motion properly

brought under Rule 15(d) first, before potentially facing the extraordinary and drastic remedy of

a preliminary injunction on the basis of that supplemental pleading.  *See* Mot. to Strike Pls.'

FASC at 9.; *see also* Fed. Agency Defs.' Opp'n to Pl. Arizona Yagé Assembly's Mot. For Relief

Under FRCP 60(b)(1) and 6(b) (Aug. 7, 2020), ECF No. 36.

## B.    Venue is Improper in this District

Plaintiffs are also unlikely to succeed on their section 1983 claim because venue is

improper in this District.  *See* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).  Plaintiffs claim that

venue is proper under 28 U.S.C. § 1391(e)(1)(c).  FASC ¶ 3.  That provision states that a civil

action against the United States or its agencies or officers may be brought in any judicial district

in which "the plaintiff resides if no real property is involved in the action."  28 U.S.C.

§ 1391(e)(1)(c).  While Plaintiffs state that no real property is involved in this action, they fail to

allege that any Plaintiff resides in the Northern District of California.  *See* FASC ¶ 3.  Villanueva

resides in Arizona.  *See, e.g.*, FASC ¶¶ 190, 193, 199, 203, 227; Decl. of Winfield Scott Stanley

III ("Stanley Decl.") ¶ 14, ECF No. 22-2.  And Plaintiffs' allegation that Arizona Yagé and

NAAVC "are California corporations domiciled in California, their state of incorporation,"

FASC ¶ 3, does not establish that either Plaintiff *resides* in *this District.*  For purposes of the

federal venue statute, a plaintiff-entity is deemed to reside "only in the judicial district in which

1   it maintains its principal place of business."  28 U.S.C. § 1391(c)(2); *see also Hertz Corp. v.*

2   *Friend*, 559 U.S. 77, 93 (2010) (explaining that a corporation's principal place of business is its

3   "actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an

4   office where the corporation holds its board meetings").  Neither complaint alleges any location

5   for Arizona Yagé's or NAAVC's principal place of business.  Proper venue has not been

6   established for this reason alone.  *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d

7   491, 496 (9th Cir. 1979) ("Plaintiff had the burden of showing that venue was properly laid in

8   the Northern District of California.").

9           Moreover, Plaintiffs' filings and public sources suggest that neither Arizona Yagé nor

10  NAAVC in fact maintains its principal place of business this District.  Arizona Yagé is

11  incorporated in Arizona, *see* Defs. Maricopa Cty and Matthew Shay's Mot. to Dismiss

12  ("Maricopa MTD"), Ex. B, ECF No. 20-2, and it filed a corporate annual report there in June

13  2020, *id.* at Ex. C, ECF No. 20-3.  Arizona Yagé's articles of incorporation provide a Tuscon,

14  Arizona, address for its place of business.  *See id.* at Ex. B.  Although Arizona Yagé has also

15  incorporated in California, its corporate filings in that state also provide a Tuscon address as the

16  "mailing address of the corporation."  *See id.* at Ex. E, ECF No. 20-5; *see also id.* at Ex. D, ECF

17  No. 20-4.  Indeed, consistent with its name, *Arizona* Yagé, holds a significant number of

18  "ayahuasca ceremonies" in Arizona, according to its website.[5]  As for NAAVC, the supplemental

19  complaint states that it is "operated by members of existing Ayahuasca visionary churches,"

20  FASC ¶ 62, and all three of NAAVC's officers reside in Arizona, *see* FASC at 1 & ¶ 190;

21  Stanley Decl. ¶ 14; Maricopa MTD, Ex. G, ECF No. 20-7.

22          Accordingly, the motion for preliminary injunction should be denied because this case

23  should be dismissed for improper venue.[6]

24  _____

25  [5]      *See* https://www.aya.guide/ceremonies (last visited Aug. 5, 2020).  The site indicates that
    the vast majority of Arizona Yagé's ceremonies are held outside this District.  *Id.*

26  [6]      Even if Plaintiffs had established venue as to the Federal Agency Defendants under 28
    U.S.C. § 1391(e)(1)(c), their claim would still be unlikely to succeed on the merits, because the
27  convenience of the parties and witnesses and the interests of justice would clearly be served by
    transferring this action to a District with some connection to this case.  *See* 28 U.S.C. § 1404(a).
28  This action involves Arizona-based plaintiffs suing defendants based in the Washington, D.C.
    area and Arizona over events that allegedly took place in or near Washington, D.C. and Arizona.

C.     **Plaintiffs Have Not Pleaded Any Waiver of Sovereign Immunity, Which Bars Plaintiffs' Claim at Least to the Extent It Seeks Monetary Relief**

The United States is immune from suit, absent its express consent. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Sovereign immunity is not limited to cases naming the United States as a defendant; it also generally bars cases against federal officials in their official capacities because the relief requested would run against the federal government. *Id.* Any waiver of sovereign immunity must be strictly construed in favor of the United States. *FAA v. Cooper*, 566 U.S. 284, 290 (2012).

The plaintiff bears the burden of establishing that subject-matter jurisdiction is proper. *Nation v. Trump*, 395 F. Supp. 3d 1271, 1274 (N.D. Cal. 2019), *aff'd*, No. 19-16443, 2020 WL 3410887 (9th Cir. June 22, 2020). To satisfy this burden, the complaint must show "'affirmatively and distinctly the existence of whatever is essential to federal jurisdiction.'" *Id.* (quoting *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001)). The United States' express consent to suit "is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). As a result, a complaint "must plead a proper statute that waives the sovereign immunity." *Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1141 (N.D. Cal. 2007), *aff'd sub nom. Multi-Denominational Ministry of Cannabis & Rastafari, Inc. v. Holder*, 365 F. App'x 817 (9th Cir. 2010); *see also Blye v. Cal. Supreme Court*, No. CV 11-5046-DWM, 2014 WL 229830, at *4 (N.D. Cal. Jan. 21, 2014) ("None of Plaintiffs' pleadings establish a waiver of sovereign immunity.").

Here, neither Plaintiffs' original complaint nor their improperly filed FASC alleges a waiver of sovereign immunity. *See* Orig. Compl. ¶¶ 1-3; FASC ¶¶ 1-3. In any event, Plaintiffs could not have pleaded that the Federal Agency Defendants have waived sovereign immunity against Plaintiffs' section 1983 claim to the extent that claim seeks monetary relief. Although Plaintiffs' *motion* cites the APA's sovereign immunity waiver, as Plaintiffs admit, that waiver applies only to "injunctive actions." PI Mot. at 13 n.12. Plaintiffs' section 1983 claim, however,

---

Indeed, the Arizona defendants have moved to dismiss in part due to lack of personal jurisdiction and improper venue. *See* Maricopa MTD at 3-13; State of Arizona's Mot. to Dismiss Pls.' First Am. Compl. at 3-5 (July 27, 2020), ECF No. 29.

explicitly seeks "economic damages" and "non-economic damages to plaintiff in the amount of not less than $1,000,000[.]"  FASC ¶¶ 218-219; *see also id.* at 70-71 (seeking, "[o]n the third claim for relief, . . . economic damages, non-economic damages, and punitive damages" from "various unnamed DEA agents").  As a result, even had Plaintiffs attempted to properly plead jurisdiction, sovereign immunity would nevertheless bar Plaintiffs' section 1983 against the Federal Agency Defendants to the extent it seeks monetary relief.  *See, e.g.*, *Land v. Dollar*, 330 U.S. 731, 738 (1947) ("The general rule is that a suit is against the sovereign" and thus barred if "the judgment sought would expend itself on the public treasury or domain").

### D.   Plaintiffs Lack Standing Because They Have Failed to Plead a Sufficient Injury-in-Fact to Support the Injunctive Relief They Seek

To carry their burden of demonstrating Article III standing, Plaintiffs must at a minimum prove that they have suffered a concrete and particularized "injury in fact" that is "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).  For a plaintiff seeking injunctive relief, "past exposure to harm is largely irrelevant[.]"  *Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990).  Instead, there must be a "'sufficient likelihood' that the plaintiff will be injured again[.]"  *Id.* at 1250 (quoting *Lyons v. City of Los Angeles*, 461 U.S. 95, 108, 111 (1983)); *see also Kolender v. Lawson*, 461 U.S. 352, 355 n. 3 (1983) (requiring a "credible threat" of future injury).  This standard cannot be met "where the litigant's claim [to future injury] relies upon a chain of speculative contingencies, particularly a chain that includes the [plaintiff's] violation of an unchallenged law."  *Nelsen*, 895 F.2d at 1252.

Here, although Plaintiffs assert repeatedly that the May 19, 2020 search of Villanueva's home has already caused him economic, emotional, reputational, First Amendment, and other injuries, FASC ¶¶ 195, 200, 208, 216-19; *see also* PI Mot. at 11, 19, 21-22, they make comparatively little effort to allege any credible threat of *future* injury, as they must.  Plaintiffs claim that as a result of the May 19 search, they fear "future enforcement by state actors operating at the behest of the DEA."  FASC ¶ 216; *see also* PI Mot. at 22 (asserting that, "[h]aving been the victim of an armed and unlawful search," Plaintiffs fear "potential future

injury" from "additional retaliatory acts" and the alleged "DEA[] conspiracy against them"). But "enforcement history alone is not dispositive," *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000), and for the following reasons, Plaintiffs' speculative fears of hypothetical future harm are also not enough.

First, Plaintiffs do not allege that the series of events culminating with the May 19 search is likely to occur again in the future. Nor do they allege any facts from which the Court could draw such a conclusion. In particular, Plaintiffs' failure to claim that they will resume the illegal activities that resulted in the May 19 search, and failure to challenge the validity of any laws pursuant to which the search was conducted, are fatal to their standing. *See Nelsen*, 895 F.2d at 1253 ("[A] claim of standing which is not only speculative, but is predicated upon the violation of an unchallenged law is insufficient."); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040-41 (9th Cir. 1999) (explaining that where past harm resulted from illegal conduct, "the plaintiff's ability to avoid engaging in illegal conduct" in the future precludes standing for an injunction).[7]

Even if Plaintiffs had alleged that Villanueva would violate laws regulating ayahuasca in the future (or that any such laws are invalid), Plaintiffs have not established that they will be subject to a similar search again. The FASC does not claim that Plaintiffs will again write a letter to the DEA "provok[ing] retaliatory animus" causing the DEA to "instigate[] a retaliatory scheme in conspiracy" with state law enforcement officials "to conduct a search of Villanueva[.]" PI Mot. at 2; *see also* FASC ¶¶ 184-89. Indeed, the FASC does not establish that Villanueva is imminently likely to be subject to a search of any kind: Villanueva has been using ayahuasca since 2011 (sometimes on a "weekly basis"), FASC ¶¶ 178-79, 181, and, as "the minister of the Vine of Light Church in California and Arizona," he has conducted ayahuasca

---

[7]	Despite not bringing a claim under the Free Exercise Clause in this case, Plaintiffs repeatedly state that Villanueva suffered "injury to his right to Free Exercise." PI Mot. at 22. On the contrary, the Free Exercise Clause does not prohibit enforcement of generally applicable and neutral regulation of controlled substances, including ayahuasca. *See, e.g.*, *O Centro Espirita Beneficente Uniao do Vegetal v. Mukasey*, No. 00-1647, 2008 WL 11451470, at *1-3 (D.N.M. June 16, 2008) (following *Employment Division v. Smith*, 494 U.S. 872 (1990)). Additionally, while RFRA and analogous state laws may support exemptions from laws regulating controlled substances in certain cases, Plaintiffs have neither sought nor obtained any such exemption from the DEA or any analogous state authority. *See* FASC ¶ 101.

ceremonies "on a substantial number of occasions over the last two years," Decl. of Clay Villanueva ("Villanueva Decl.") ¶ 11, ECF No. 22-1.  Nevertheless, besides the May 19 search, Plaintiffs do not allege that Villanueva has ever been the subject of law enforcement efforts.  In fact, Plaintiffs admit that Villanueva has "no criminal record" despite his "announced history of conducting visionary church ceremonies."  FASC ¶ 199.  Plaintiffs therefore cannot establish any credible threat of future injury.  *Compare Hodgers-Durgin*, 199 F.3d at 1042 (finding no credible threat of future Fourth Amendment injury where plaintiff had been stopped by border patrol agents just once in 10 years), *with Kolender*, 461 U.S. at 355 n. 3 (finding a credible threat of future constitutional injury where plaintiff "ha[d] been stopped on approximately 15 occasions pursuant to [the challenged statute] . . . in a period of less than two years").

Second, to the extent Plaintiffs may be claiming that they have been injured due to an alleged "continu[ing]" conspiracy or because the DEA allegedly will investigate or prosecute Plaintiffs as a result of the evidence seized on May 19, *see* PI Mot. at 22, these claims also fail. Although "[p]ast exposure to illegal conduct" may support a claim of standing if accompanied "by any continuing, present adverse effects," *Lyons*, 461 U.S. at 102, Plaintiffs have not alleged any such effects here:  The FASC itself speaks of the alleged conspiracy (and the alleged harm arising therefrom) in the past tense; it does not claim that any conspiracy has continued beyond the May 19 search.  While Plaintiffs' motion suggests there is a continuing conspiracy, it provides nothing but pure speculation regarding the unspecified "additional retaliatory acts" and "further abuses" that allegedly may result "if not promptly redressed."  PI Mot. at 22.  Similarly, despite not bringing a Free Exercise claim in this case, Villanueva asserts that "it has a chilling effect on [his] Free Exercise of religion to be shadowed by the fear of further harassment," Villanueva Decl. 30; *see also, e.g.*, FASC ¶ 200, but Plaintiffs' "mere '[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm,'" *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010)).  In reality, the motion's amorphous assertions about ongoing harm from an alleged "continuing" conspiracy are merely additional speculative claims of future injuries that would fail for lacking credibility even had they been located in the complaint.

1    Finally, like Villanueva, NAAVC has not suffered a "direct injury," as it contends.

2   FASC ¶ 216.  Plaintiffs do not claim that the alleged conspiracy resulted in the search or seizure

3   of any NAAVC property, or in an investigation or potential prosecution of NAAVC.  *See* FASC

4   ¶ 200 (alleging that law enforcement "seiz[ed] the Vine of Light Church's Ayahuasca

5   sacrament" and Villanueva's marijuana and mobile phones); PI Mot. at 11 (same).  NAAVC

6   asserts that the "ultimate purpose" of the alleged conspiracy was to "obtain leverage in this court

7   proceeding" and "injure NAAVC's position in this litigation by extrajudicial means," FASC ¶¶

8   195, 216, but Plaintiffs provide no explanation for this speculative claim.  If anything, it is

9   NAAVC which has sought to leverage the May 19 search by using it to improperly assert two

10   new claims and two motions for preliminary injunction in this case.

11    For the foregoing reasons, Villanueva and NAAVC lack Article III standing and

12   therefore cannot succeed on the merits of their claim.[8]

13    **E.    Plaintiffs' Alleged Injuries Cannot Be Redressed to the Extent Plaintiffs**

14   **Seek an Injunction Against the Federal Agency Defendants Barring the Use**
   **and Requiring the Return of Evidence Seized from Villanueva**

15    A plaintiff lacks Article III standing if it is unlikely that the alleged injury will be

16   "redressed by a favorable decision."  *Lujan*, 504 U.S. at 561.  Here, it is not just unlikely, it is

17   certain that Plaintiffs' alleged injuries relating to evidence seized from Villanueva's home on

18   May 19 cannot be redressed by the injunction Plaintiffs request against the Federal Agency

19   Defendants.  Plaintiffs ask the Court to enjoin the Federal Agency Defendants from "[m]aking

20   use of" or "[r]etaining any of the property seized from Villanueva."  PI Mot. at 23.  But the

21   Federal Agency Defendants do not have Villanueva's seized property.  *See* Brown Decl. ¶ 7.

22   The DEA did not generate any reports about Maricopa County's warrant execution and did not

23   take custody of any evidence or controlled substances seized by Maricopa County.  *Id.*  The

24   requested injunction therefore could not redress the injuries alleged.

25

26   ───────────────
   [8]    The preliminary injunction should also be denied to the extent it seeks relief for Plaintiff
27   Arizona Yagé, which does not assert the FASC's section 1983 claim, *see* FASC at 46, and non-
   parties Vine of Light Church and Winfield Scott Stanley III.  *See* Proposed Order, ECF No. 22-
28   15; PI Mot. at 22 (alleging that "NAAVC, AYA, Villlanueva, and Stanley are suffering
   irreparable harm").

**F.      The Section 1983 Claim is Unlikely to Succeed on Its Merits**

Plaintiffs' argument that they have a likelihood of success on the merits mentions only the third claim in the FASC, asserting a cause of action against "Mark A. Morgan on behalf of the DEA, and Unnamed DEA Agents" for "Conspiracy to Injure Civil Rights in Violation of 42 U.S.C. § 1983." FASC at 46 (§ VIII). Even if venue were proper and the Court had jurisdiction to hear this claim, the claim should still be dismissed for failure to state a claim against the Federal Agency Defendants. *See* Fed. R. Civ. P. 12(b)(6).

The Ninth Circuit has spoken clearly about the viability of section 1983 claims against federal officials: "Lest there be any continuing confusion, we . . . remind the Bar that by its very terms, § 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (finding the plaintiff's complaint "invalid on its face in its reliance upon § 1983 as a cause of action against alleged federal government actors"). Under the terms of section 1983, "a district court must find that the defendants acted 'under color of state law' and deprived the plaintiffs of their rights under federal law." *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992). Because federal officials "generally do not act under 'color of state law,'" they are usually not liable under Section 1983. *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988); *see also District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973) (because section 1983 only deals with acts accomplished under color of state law, the "actions of the Federal Government and its officers are at least facially exempt from its proscriptions").

To the extent the Federal Agency Defendants engaged in any of the acts alleged in the FASC, they acted exclusively under federal law: enforcement of the Controlled Substances Act, 21 U.S.C. § 801 *et seq. See* Paddy Decl. ¶¶ 4-7. While the CSA directs that the "Attorney General shall cooperate with local, State, tribal, and Federal agencies concerning traffic in controlled substances and in suppressing the abuse of controlled substances," 21 U.S.C. § 873, this level of cooperation does not mean federal officers are acting under color of state law, nor does it subject their actions to liability under section 1983. *See Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997) (participating in, and implementation of, a "cooperative federalism

1    scheme" is insufficient to subject federal officers to § 1983 liability).  Thus, Plaintiffs cannot
2    prevail on their section 1983 claims against the Federal Agency Defendants.
3        Plaintiffs' argument to the contrary—that "federal-state cooperation through HIDTA has
4    lead [(sic)] to . . . Section 1983 liability," PI Mot. 21—is based entirely on a single case, *Cabrera*
5    *v. Martin*.  Contrary to Plaintiffs' suggestion, the Ninth Circuit found no section 1983 violation
6    by the federal defendants in that case because "the federal defendants derived their power
7    exclusively from federal law and acted without any significant cooperation or assistance from"
8    the state officials.  *Id.*  In support of their argument, Plaintiffs misleadingly quote language from
9    *Cabrera* that is, in fact, an excerpt of the very district court opinion that the Ninth Circuit
10   reversed in that decision.  *See* PI Mot. 21 (quoting *Cabrera* as holding that "'[t]he record reflects
11   substantial cooperation between the state and federal governments, which cooperation carried
12   significant legal implications'" and "'[a]ccordingly, . . . find[ing] that the federal defendants
13   acted under color of state law'").  Plaintiffs fail to note that the appellate court went on to find
14   that "the district court's holding that the federal defendants were acting 'under color of state law'
15   is unsupportable under the applicable authorities."  *Cabrera*, 973 F.2d at 742.
16       Nor do Plaintiffs' allegations show the required "sufficiently close nexus between the
17   State and the challenged action of the [federal actors] so that the action of the latter may be fairly
18   treated as that of the State itself.'"  *Id.*  In *Ibrahim v. Department of Homeland Security*, the
19   Ninth Circuit rejected the notion that *Cabrera* "mak[es] an exception to this rule where . . .
20   federal officials recruit local police to help enforce federal law."  538 F.3d 1250, 1257 (9th Cir.
21   2008).  On the contrary, as *Ibrahim* explained, *Cabrera* "reaffirmed" the "long-standing"
22   requirement that there must be a "sufficiently close nexus between the State and the challenged
23   action of the [federal actors]."  *Id.* (quoting *Cabrera*, 973 F.2d at 744 (internal quotation marks
24   and citation omitted) (alterations in original)).  That "sufficiently close nexus" was lacking in
25   *Ibrahim* where "the federal defendants acted pursuant to federal laws," 538 F.3d at 1256, and the
26   state officials "had nothing to do" with the federal government's decisions and actions, *id.* at
27   1257.
28

So, too, here: the Federal Agency Defendants acted pursuant to the federal CSA, and Arizona had nothing to do with the decision of a DEA Special Agent to pass along a tip about Villanueva to the Maricopa County Sheriff's Office. Paddy Decl. ¶¶ 5-7. The DEA had only *de minimis* subsequent involvement in Maricopa County's execution of a state-issued warrant on Villanueva, and has never possessed any of Villanueva's seized property. *See* Paddy Decl. ¶ 8; Brown Decl. ¶¶ 3-8.[9]

Plaintiffs are unlikely to succeed on their section 1983 claim for three additional reasons. First, the FASC is devoid of non-conclusory allegations that DEA harbored retaliatory animus toward Plaintiffs. To substantiate this claim, Plaintiffs offer only their lawyer's declaration in which he speculates about the DEA's actions and intentions, and then concludes that the "only reasonable interpretation of the facts" is that the DEA sought to retaliate against Plaintiffs over a letter he had sent to the DEA on behalf of NAAVC in January 2020. Carreon Decl. ¶ 9; *see also id.* ¶¶ 10, 13, 22; *see also* PI Mot. 5-7. But the Federal Agency Defendants' evidence shows otherwise: The DEA informed Maricopa County about the Villanueva tip *before* receiving NAAVC's letter and so the DEA could not have been acting in retaliation. While DEA Special Agent Paddy sent Maricopa County the tip on January 8, *see* Paddy Decl. ¶¶ 5-6, the NAAVC did not email its letter to the DEA until after close of business on the next day, January 9, *see* Miller Decl. ¶ 7. Indeed, Plaintiffs' own declarant admits that the "[t]he DEA received the [mailed version of the NAAVC's] letter on January 10th." Decl. of Winfield Scott Stanley III ¶ 37, ECF No. 33-1. As a result, neither Special Agent Paddy nor anyone else at the DEA knew about NAAVC's letter at the time of the tip. Paddy Decl. ¶ 9; Miller Decl. ¶ 7.

---

[9]    Although a Surprise, Arizona, police officer who was detailed to the DEA's Phoenix field office at the time assisted Maricopa County in executing the Villanueva state-issued search warrant, Brown Decl. ¶¶ 3-6, that fact does not establish that state officials had anything to do with Special Agent Paddy's decision to convey the Villanueva tip to the Maricopa County Sheriff's Office on January 8 (which they did not), *see* Paddy Decl. ¶¶ 6-7. The DEA's Phoenix task force group otherwise did not participate in any way in Maricopa County's execution of that warrant, generated no DEA reports concerning the warrant execution, and did not take custody of any evidence or controlled substances which may have been seized by Maricopa County. Brown Decl. ¶¶ 6-7.

Second, the FASC does not establish any conspiracy.  While section 1983 does not, by its terms, have conspiracy as a required element, the FASC's Third Claim does center around what Plaintiffs call a "Conspiracy to Injure Civil Rights."  FASC at 46.  To prove a conspiracy between a state and other parties under § 1983, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (*en banc*) (quotations and citation omitted). While "each participant in the conspiracy need not know the exact details of the plan, . . . each participant must at least share the common objective of the conspiracy."  *Id.* at 1541.

Here, the FASC does not allege facts sufficient to suggest any agreement or "meeting of the minds" between or among the Federal Agency Defendants and any of the State Defendants, or that all participants "share[d] the common objective" of depriving Villanueva of his civil rights.  Rather, all the FASC alleges is that "Shay was prompted to initiate enforcement action against Villanueva by agents of the DEA with whom he had contact through HIDTA, or through some other agency," and that "Shay agreed to proceed with the DEA's suggestion or request, intending thereby to further the conspiracy against Villanueva."  FASC ¶ 194.  Nowhere in this allegation do Plaintiffs assert either that the DEA passed along its "suggestion or request" in order to conspire to deprive Villanueva of his civil rights or, more importantly, that Shay and the "agents of the DEA" had any understanding—let alone any discussion—about an intention to deprive Villanueva of his civil rights.  Moreover, although the Ninth Circuit has found that "[e]vidence that police failed to exercise independent judgment will support an inference of conspiracy" under section 1983, *United Steelworkers*, 865 F.2d at 1541, the FASC is also devoid of any allegation that Shay or his colleagues "failed to exercise independent judgment" in planning and executing the raid on Villanueva's residence.  In any event, the DEA's declarations show not only that DEA did not retaliate against Plaintiffs, but also that there was in fact no meeting of the minds or shared objective between the Federal Agency Defendants and the State Defendants.  Special Agent Paddy had never heard of NAAVC or its attorney or their letter until August 2020.  Paddy Decl. ¶ 9.  Similarly, the supervisor of the DEA's Phoenix task force had

not heard of NAAVC or its attorney or their letter until months after the May 19 search, in which the DEA did not participate in any non-*de minimis* way.  *See* Brown Decl. ¶¶ 6-8.

Third and finally, even crediting *arguendo* Plaintiffs' assertions that the DEA conspired with local officials to search Villanueva's home in retaliation for NAAVC's letter, Plaintiffs have not demonstrated any likely violations of Villanueva's civil rights in the course of that search.  The civil rights that Plaintiffs' motion alleges have been violated are Villanueva's rights to "Free Exercise, . . . Free Expression, and . . . Freedom of Association."  Pls.' Mot. at 20.  But any rights to "Freedom of Expression" or "Freedom of Association" that Villanueva claims have been "chilled" by the search of his home are simply derivative of the asserted Free Exercise rights.  *See id.* at 20 (stating that "the effect" of the search on his residence has been to "depriv[e] him of the sacrament he administers, thus destroying the basis for his relationship with his congregation, his Free Exercise, his Free Expression, and his Freedom of Association").  And while RFRA may support an exemption from the CSA in certain cases for sincere religious use of ayahuasca, Plaintiffs have neither sought nor obtained any such exemption, FASC ¶ 101, and the Free Exercise Clause does not prohibit enforcement of the CSA's generally applicable and neutral regulation of the Schedule I controlled substance dimethyltryptamine, the active ingredient in ayahuasca, *see O Centro Espirita Beneficente Uniao do Vegetal v. Mukasey*, No. 00-1647, 2008 WL 11451470, at *1-3 (D.N.M. June 16, 2008).  Accordingly, Plaintiffs cannot establish the violation of any recognized rights.

For all of these reasons, Plaintiffs have not established a likelihood of success on their claim that the Federal Agency Defendants are liable under section 1983.

## II.   PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUBSTANTIAL AND IMMEDIATE IRREPARABLE HARM

A preliminary injunction serves the "limited purpose" of "preserv[ing] the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  Accordingly, "[a]n essential prerequisite" before granting a preliminary injunction is a showing that irreparable injury is likely in the absence of an injunction.  *See Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985).

1    "Irreparable harm" is traditionally defined as harm for which there is no adequate legal remedy,

2    such as an award of damages.  *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir.

3    2017).  This standard is demanding: "The possibility that adequate compensatory or other

4    corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable

5    harm."  *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

6           Here, Plaintiffs allege that, absent a preliminary injunction, they will suffer harms in the

7    form of physical pain and suffering, injury to reputation, loss of privacy, and harm to their

8    exercise of religion.  *See* PI Mot. at 21-22.  None of these putative harms are both sufficiently

9    likely and irreparable, as they must be to warrant a preliminary injunction.

10          First, Plaintiffs cannot demonstrate that irreparable harm will result from the future

11   injuries they claim to fear for the same reason those claims fail to grant them Article III standing:

12   the "irreparable injury" requirement "cannot be met where there is no showing of any real or

13   immediate threat that the plaintiff[s] will be wronged again—a 'likelihood of substantial and

14   immediate irreparable injury.'"  *Hodgers-Durgin*, 199 F.3d at 1042 (quoting *Lyons*, 461 U.S. at

15   111).  As explained above, whether irreparable or not, the wrongs Plaintiffs claim to fear are not

16   likely to occur again.  *See supra* Part I.D.

17          Second, even if Plaintiffs had demonstrated that their claimed future injuries are likely to

18   occur, their nine-week delay in seeking a preliminary injunction undermines any argument that

19   they need urgent relief to prevent harm that would be irreparable.  While the extraordinary relief

20   of a preliminary injunction may be justified by an "urgent need for speedy action to protect the

21   plaintiff's rights, . . . [b]y sleeping on its rights a plaintiff demonstrates the lack of need for

22   speedy action.'"  *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.

23   1984); *Universal Semiconductor, Inc. v. Tuoi Vo*, No. 5:16-CV-04778-EJD, 2016 WL 9211685,

24   at *2 (N.D. Cal. Nov. 29, 2016) (finding that plaintiff's unexplained delay "over the past month"

25   to be "fatal"); *Hiramanek v. Clark*, No. C-13-0228 EMC, 2013 WL 5082640, at *1 (N.D. Cal.

26   Sept. 13, 2013) (denying preliminary injunction where after "the allegedly wrongful conduct"

27   took place, plaintiff "did not seek any relief from this Court until almost a month later"), *aff'd*,

28   (9th Cir. Nov. 19, 2013).  Here, Plaintiffs' motion and its accompanying declarations provide no

explanation for their delay of more than two months.  In any event, Plaintiffs could not have

explained that delay given that they were able to file a supplemental complaint adding nearly 20

pages and two claims to their original complaint within a month of the May 19 search.  *See* ECF

No. 12.  Yet Plaintiffs did not seek an emergency injunction at that time and do not now claim

that anything has occurred since the FASC necessitating emergency relief.

Third, even if Plaintiffs had not delayed in seeking an injunction, and even if any future

injuries were sufficiently likely to occur, they are not irreparable.  The FASC claims that the

May 19 search "injur[ed] Villanueva financially," FASC ¶ 200, but it is blackletter law that

monetary injuries are not irreparable.  *Elias v. Connett*, 908 F.2d 521, 526 (9th Cir. 1990)

(explaining that "monetary harm" and "financial hardship" are not irreparable injuries).

Plaintiffs also claim to have suffered reputational, emotional, and privacy harms, but

these are also not irreparable.  *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974) (concluding that

"humiliation and damage to [plaintiff's] reputation" are not irreparable); *Hartikka v. United

States*, 754 F.2d 1516, 1518 (9th Cir. 1985) (concluding that damage to a military service

member's reputation resulting from the stigma of a less than-honorable discharge did not

constitute irreparable harm).  Indeed, Plaintiffs recognize that such injuries are not irreparable as

they are seeking $1 million to compensate for alleged "painful emotions."  FASC ¶ 219.

Next, Plaintiffs claim irreparable harm to their Free Exercise rights, but asserting a Free

Exercise injury does not automatically equal irreparable harm, *see S. Bay United Pentecostal

Church v. Newsom*, 959 F.3d 938, 940 (9th Cir. 2020), and in any event, as explained above, the

Free Exercise Clause does not prohibit the application of neutral and generally applicable

controlled substances laws to the religious use of ayahuasca.  *See supra* p. 22.

Finally, Villanueva appears to allege that, if he is arrested, charged, convicted, and

imprisoned as a result of the May 19 search, he will catch COVID-19 and suffer physical injury

and even death by virtue of his age.  *See* PI Mot. 21-22.  These wildly speculative allegations are

not in the FASC.  In any event, there is no immediate irreparable injury since, even if Plaintiff

were charged with wrongdoing, he would have an opportunity to defend against the charges (and

imprisonment) by arguing in that proceeding, as he does in this case, that the search was illegal,

as well as an opportunity to oppose his detention pending the resolution of any criminal action based on circumstances related to the pandemic. *See, e.g.*, *United States v. Stephens*, --- F. Supp. 3d ---, No. 15-cr-95 (AJN), 2020 WL 1295155, at *1-3 (S.D.N.Y. Mar. 19, 2020) (ordering defendant released from pre-trial detention in part due to COVID-19 risks).

## III.   THE BALANCE OF THE EQUITIES WEIGHS HEAVILY AGAINST A PRELIMINARY INJUNCTION

Under the third prong of the preliminary injunction inquiry, courts "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Under the fourth prong, courts consider the public interest. Where the government is a party, the balance of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Here, the balance of the equities weighs heavily against the requested injunction. On the one hand, Plaintiffs admittedly added the claim that is the subject of this motion to this case in violation of the Federal Rules, cannot show that this Court has jurisdiction, are in the wrong venue, have failed to state a valid section 1983 claim, and have failed to demonstrate that they will suffer any immediate harm (irreparable or otherwise) absent the injunction.

On the other hand, the scope of the requested preliminary injunction is startling in both its intrusiveness and breadth. It would bar the DEA and other Federal Agency Defendants from performing basic yet important law enforcement tasks (including using specific databases and investigation techniques, and even from joining a Facebook group) to enforce the CSA, the validity of which Plaintiffs do not challenge. *See* PI Mot. at 23-24. And it would broadly bar the DEA and other Federal Agency Defendants from "[p]erforming any acts intended to cause damage" not only to NAAVC and Villanueva, but also to Plaintiff Arizona Yagé (who does not assert the section 1983 claim at issue here), and even to non-party Stanley. *Id.* at 24. Plaintiffs have made no showing that could justify such harm to the public's interest in the DEA's ability to fulfill its mission of enforcing the CSA.

## CONCLUSION

For the foregoing reasons, the motion for preliminary injunction should be denied.

DATED: August 12, 2020                    Respectfully submitted,


                                          ETHAN P. DAVIS
                                          Acting Assistant Attorney General

                                          BRIGHAM J. BOWEN
                                          Assistant Branch Director

                                          /s/  Kevin P. Hancock
                                          KEVIN P. HANCOCK
                                          Trial Attorney
                                          U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L Street NW
                                          Washington, DC 20005
                                          (202) 514-3183 (phone)
                                          (202) 616-8470 (fax)
                                          kevin.p.hancock@usdoj.gov

                                          *Counsel for the Federal Agency Defendants*