CHARLES CARREON (CSB # 127139)
3241 E. Blacklidge Drive
Tucson, Arizona 85716
Tel: 628-227-4059
Email: chascarreon@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches, and
Clay Villanueva

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA,<br><br>Plaintiffs,<br><br>vs.<br><br>WILLIAM BARR, Attorney General of the United States; UTTAM DHILLON, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Dept. of Homeland Security; MARK A. MORGAN, Acting Commissioner of U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Dept. of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY,<br><br>Defendants. | Case No.: 3:20-CV-03098-WHO<br><br>DECLARATION OF CHARLES CARREON IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS OF MARICOPA COUNTY AND MATTHEW SHAY<br><br>Date: September 9, 2020<br>Time: 2:00 P.M.<br>Courtroom: 2 (17th floor) |

Charles Carreon declares and affirms:

**1.** I am an attorney licensed to practice before all courts in the State of California and a member of the bar of this Court. I make this declaration in opposition to the motion to

dismiss of defendants Maricopa County and Matthew Shay, naming them as co-conspirators in a retaliatory conspiracy against plaintiffs initiated by the Drug Enforcement Agency (the "DEA"), and accomplished using the federally funded HIDTA ("High Intensity Drug Trafficking Area") Arizona SW HIDTA task force, that funds drug interdiction operations of Maricopa County Sheriff's Office ("MCSO"). If called as a witness, I could and would so competently testify.

**2.** In this action, "visionary churches" refers to churches that administer a communion sacrament that contains a pharmacologically active controlled substance, some of which are regulated by the Drug Enforcement Administration ("DEA") pursuant to the Controlled Substances Act ("CSA").

**3.** The Maricopa County Sheriff's Office ("MCSO"), the Arizona Attorney General ("Arizona AG"), the State of Arizona, and Det. Matthew Shay ("Shay") (collectively, the "Arizona defendants") searched the Vine of Light Church ("VOLC") sanctuary and Villanueva's home.

**4.** As set forth in much greater detail in my declaration submitted in support of the Motion for Preliminary Injunction of Clay Villanueva (Docket # 22-3), the only reasonable interpretation of the facts leads to the conclusion that the DEA directed MCSO and the Arizona AG to seize the Ayahuasca in the possession of an NAAVC Board member to "rein in" the activist organization. (Carreon Dec. ¶¶ 4 – 22, Docket # 22-3.) Judicial notice of that portion of my declaration is respectfully requested in support of the summary statement made above and cited in plaintiffs' brief, pursuant to F.R.E. 201(b)(2), in order to avoid duplication of evidence and needless redundancy in the Court's file.

**5.** Shay is a 22-year veteran of the City of Phoenix drug squad, now detailed to the federally-funded HIDTA Task Force.[1]  Arizona SW HIDTA funds collaboration between the DEA, the Arizona AG, and MCSO for purposes of disrupting international narcotics

---

[1] HIDTA stands for "High Intensity Drug Trafficking Area," of which the Arizona-Southwest area is one of the largest out of the 28 HIDTA areas so designated by the Office of National Drug Control Policy, that funds operations, equipment, and training for local law enforcement.

cartels and money laundering operations -- vast criminal enterprises. (Exhibit 5.) The DOJ's latest budget request notes that since 2019, HIDTA funding comes out of the DEA's budget, and DEA directly controls HIDTA:

> **High Intensity Drug Trafficking Areas (HIDTA) Programs: +254.0 million, transferred from the Office of National Drug Control Policy**
> The FY 2019 President's Budget permanently transfers $254 million to DEA from the Office of National Drug Control Policy (ONDCP) for the purpose of facilitating coordination of the HIDTA Program with other drug enforcement assets. DEA currently participates in and coordinates with the various HIDTAs. Transferring the administration of the program will allow HIDTA resources to be focused on combating drug trafficking in areas where the threat is the greatest and where there is a coordinated law enforcement presence. There are currently 28 HIDTAs located in 49 states, as well as in Puerto Rico, the U.S. Virgin Islands, and the District of Columbia.

U.S. Department of Justice FY 2019 Budget Request (Exhibit 6.)

**6.** Villanueva had no contact with drug cartels or money laundering, indeed no criminal history whatsoever, which put him outside HIDTA's declared area of expertise and interest. VOLC was not known by "word on the street." VOLC kept a very low profile, as Villanueva administered the Ayahuasca sacrament only to trusted individuals whose faith was confirmed. VOLC and Villanueva had no contacts with local law enforcement. In law enforcement, only the DEA knew of his VOLC ministry, due to his NAAVC Board membership.

**7.** Given that Shay is an expert narcotics officer with a specialty in disrupting large cartel-funded manufacturing facilities,[2] he would have no investigative interest in a small Ayahuasca church that would bring VOLC's activities to his attention.

**8.** Nor is there any indication that Maricopa County law enforcement had any interest in policing Ayahuasca churches before Shay conducted the HIDTA raid of Villanueva's home and the VOLC sanctuary. Quite the contrary. While the MCSO.org website is filled with press releases about marijuana, heroin and meth busts, there are none concerning Ayahuasca. A site-specific Google search for "Ayahuasca" at MCSO.org produces zero results, two less than "Peyote," that appears on the MCSO job-application

---

[2] www.ecsforall.org/detective-matthew-shay.html

form.  *Compare* Exhibit 7 *with* Exhibit 8.  MCSO has no interest in prosecuting Ayahuasca use.

**9.**  Eliminating the impossible – that someone at MCSO decided to waste Shay's time by assigning him a fool's errand -- there remains only one answer.  The DEA told Shay, or someone else at HIDTA, to get a warrant and search Villanueva's house. By using HIDTA to direct MCSO and Shay, DEA accomplished what it wouldn't do directly – contrive probable cause to raid a third Ayahusaca church for its sacraments.  Through HIDTA, the federal Government funded a DEA conspiracy to retaliate against NAAVC for exercising its right to petition the DEA for redress of grievances.

**10.**  If Villanueva had called me by telephone when Shay asked to question him, I would have accepted the call from my current litigation client, and provided him with counsel during custodial interrogation.

**11.**  As trial counsel for plaintiffs, I marked Villanueva as a key witness for plaintiffs, both as an NAAVC Board member who can articulate the nature and purpose of NAAVC's ministry, and as the VOLC minister, with a congregation eager to receive sacramental Ayahuasca from a safe, reliable, lawfully-approved source free of CBP interdiction and DEA scrutiny.  As trial lawyer responsible for presenting evidence to carry plaintiffs' burdens of proof in this case, my ability to do that job has been negatively affected by the HIDTA raid on the Villanueva's home and church.  I have spent several hours listening to their story and fears, and counseling to help them recover some of the sense of security that the HIDTA raid shattered.  In my estimation, Villanueva has been affected as a witness, and were additional pressure placed on him by the workings of the conspiracy detailed in the FASC and motions for preliminary injunction (Docket Nos. 22 and 23), it could diminish his willingness to proceed with providing testimony or to participating further as an NAAVC Board member. Certainly, most reasonable people would feel their First Amendment rights chilled by the harrowing experience he and his wife endured.

12. The Arizona SW HIDTA area is one of the largest in the nation. As depicted on Exhibit 5 to the Villanueva Motion for Preliminary Injunction (Docket # 22-8, page 3), and on the Government website,[3] the Arizona SW HIDTA begins on the West Coast, in San Diego, extends all along California's southern border, then encompasses much of Arizona, New Mexico, and western coast of the Texas peninsula down to the Gulf of Mexico.

13. The purpose of HIDTA is to encourage collaboration between and among state, county, city and federal law enforcement. This activity presumably means that law enforcement officers from Arizona, in particular MCSO HIDTA deputies, will be taking action to assist HIDTA and other law enforcement officers in California, particularly in San Diego County, that appears to be part of the Arizona SW HIDTA.

14. Because HIDTA activity with MCSO in Maricopa County is the focus of the Third Claim for Relief against the moving defendants, it should be the subject of discovery that plaintiffs will be proposing at meet and confer sessions to prepare the Joint Case Management Conference Statement ("JCMS"). Plaintiffs will advise the Court of its proposals in the JCMS, and requests leave of Court to conduct discovery into these jurisdictional matters.

15. Arizona SW HIDTA hosts a training facility that invites law enforcement professionals from around the United States, undoubtedly many from California.

16. The millions in HIDTA funding is focused on building up the types of purposeful availments between states and municipal entities that enables law enforcement collaboration. The DEA's HIDTA website says the money is used for the following purposes:

- Facilitating cooperation among Federal, state, local, and tribal law enforcement agencies to share information and implement coordinated enforcement activities;
- Enhancing law enforcement intelligence sharing among Federal, state, local, and tribal law enforcement agencies;

---

[3] https://www.dea.gov/high-intensity-drug-trafficking-areas-hidta.

- Providing reliable law enforcement intelligence to law enforcement agencies to facilitate the design of effective enforcement strategies and operations; and

- Supporting coordinated law enforcement strategies that make the most of available resources to reduce the supply of illegal drugs in designated areas of the United States and in the Nation as a whole.

(https://www.dea.gov/hidta)

Thus, HIDTA funds have presumptively been used to coordinate law enforcement relations between California and Arizona to an even higher degree than was already the case.

**17.** Arizona shares its entire western border with California; accordingly, law enforcement collaboration between the two states has been established by a series of Interstate Compacts to which both states are co-signatories.  Each one of these Compacts establishes the basis for a vast network of economic transactions between the states of California and Arizona and their governmental subunits.  The integration of criminal justice systems allows the processing of the criminally accused in either state to be accomplished swiftly and efficiently, and results in very large expenditures for transportation.   The Compacts are evidence of widespread purposeful availment of each state of the laws of the neighboring state, and lead to vast economic expenditures by the State of Arizona and Maricopa County to pursue collaborative law enforcement activities.  The amounts of these purposeful availments are reasonably believed to be so vast as to establish general jurisdiction over Maricopa County and the Arizona Attorney General.

**18.**  Your declarant admitted excusable neglect when acting under pressing circumstances in failing to move the Court for leave to file the FASC.  (Docket # 34.)

**19.**  I respectfully request that the error be deemed harmless, because if plaintiffs had not named moving defendants in the FASC, Villanueva and NAAVC would have filed a new complaint alleging the Section 1983 claim, and submitted a Notice of Related Case and a Motion to Consolidate the Action with this case.  The reason for this approach would simply be that waiting 35 days for the Court to rule on a motion to file a supplemental

complaint would not have accorded with the urgency of the situation. Thus, the defendants would have been subjected to a lawsuit in this venue within the same time frame; accordingly, they have not suffered cognizable prejudice.

**20.** California has an interest in adjudicating the dispute. NAAVC has incorporated and has its place of business in California. Many churches for which NAAVC asserts associational standing are located in this Court's jurisdiction. Many visionary church leaders travel to minister to the needs of small groups that depend on what might be considered "itinerant preachers," and a good number of those small groups are in California.

**21.** Arizona is not a satisfactory alternative forum for NAAVC, a California corporation, that has been injured in this litigation by the acts of moving defendants. The Arizona forum has already been surreptitiously used by the DEA to obtain a state court warrant that it would likely not have been able to obtain in Federal District Court, given the current state of the law of visionary religion.

**22.** It is respectfully submitted that plaintiffs' evidence establishes good cause to deny the motion of defendants to dismiss the First Amended and Supplemental Complaint.

**23.** Good cause is further shown to allow discovery into jurisdictional facts, which are entirely congruent with the operative facts that will determine the outcome on the merits.

    I declare and affirm, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct, and that this declaration was signed on August 12, 2020, at Tucson, Arizona.

                  /s/Charles Carreon
                Charles Carreon, Declarant