1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Evan F. Hiller (No. 294420)
Hiller@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone:  480.425.2600

*Attorney for Defendants Maricopa County
and Matthew Shay*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

ARIZONA YAGÉ ASSEMBLY, et al.,

Plaintiffs,

v.

WILLIAM BARR, et al.,

Defendants.

Case No.  3:20-cv-03098-WHO

**DEFENDANTS MARICOPA
COUNTY AND MATTHEW
SHAY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (DOC. 20)**

Date:  Sept. 9, 2020
Time: 2:00 p.m.
Place: Courtroom 2, 17th Floor
Hon. William H. Orrick

Defendants Maricopa County and Matthew Shay (collectively, the "Maricopa County Defendants") hereby reply to Plaintiffs' Opposition (Doc. 43) (the "Opposition" or "Opp.") in support of the Maricopa County Defendants' Motion to Dismiss (Doc. 20) (the "Motion").  For the reasons stated in the Motion and in the below Memorandum of Points and Authorities, all claims against the Maricopa County Defendants should be dismissed.

1

2

# TABLE OF CONTENTS

3

TABLE OF AUTHORITIES ............................................................................. 3

4

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 5

5

I.    Introduction ............................................................................................ 5

6

II.   Portions of the Carreon Declaration Should Be Stricken or Disregarded .................... 6

7

III.  The Maricopa County Defendants Are Not Subject to General Jurisdiction in the State of California .......................................................... 7

8

A. Plaintiffs do not allege any continuous contacts between Matthew Shay and the State of California. ....................................................... 8

9

10

B. Maricopa County lacks systematic, continuous contacts with California. ............. 9

11

IV.   The Court Lacks Specific Jurisdiction over the County and Shay .............................. 10

12

V.    Venue in the Northern District of California Is Improper ........................................... 13

13

VI.   Conclusion ........................................................................................... 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

Cases

3

4

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC,*
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) ........................................................ 13

5

6

*Argueta v. Banco Mexicano, S.A.,*
   87 F.3d 320 (9th Cir. 1996) ....................................................................... 13

7

*Boyd v. Arizona,*
   469 Fed.Appx. 92 (3d Cir. 2012) ............................................................... 12

8

9

*Chirila v. Conforte,*
   47 Fed. Appx. 838 (9th Cir. 2002) ............................................................. 11

10

11

*Daimler A.G. v. Bauman,*
   571 U.S. 117 (2014) ............................................................................. 8, 10

12

13

*Dunlop Tires Ops., S.A. v. Brown,*
   564 U.S. 915 (2011) ................................................................................... 8

14

15

*Kelly v. Echols,*
   No. Civ. F05118 AWI SMS, 2005 WL 2105309 (E.D. Cal. Aug. 30, 2005) ............... 13

16

*Mansour v. Superior Court,*
   38 Cal. App. 4th 1750 (1995) ................................................................... 11

17

18

*Mondaca-Vega v. Holder,*
   718 F.3d 1075 (9th Cir. 2013) ................................................................... 9

19

20

*Muckleshoot Tribe v. Lummi Indian Tribe,*
   141 F.3d 1355 ......................................................................................... 9

21

22

*Mulato v. Wells Fargo Bank, N.A.,*
   76 F.Supp.3d 929 (N.D. Cal. 2014) ............................................................. 6

23

*Park v. Dole Fresh Vegetables, Inc.,*
   964 F.Supp.2d 1088 (N.D. Cal. 2013) ....................................................... 14

24

25

*Piedmont Label Co. v. Sun Garden Packing Co.,*
   598 F.2d 491 (9th Cir. 1979) ............................................................... 11, 12

26

27

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ..................................................................... 8

28

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ................................................................. 9

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................ 10

*Williams v. Yamaha Motor Co., Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ................................................................ 11

Statutes

28 U.S.C. § 1391 ........................................................................................ 5, 13

Rules

Cal. Rules of Professional Conduct 3.7 ......................................................... 6

Fed.R.Civ.P. 56(c)(4) ..................................................................................... 6

Fed.R.Civ.P. 56(e) .......................................................................................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

In the Motion, Defendants raised three grounds for dismissal.  <u>First</u>, Plaintiffs failed to obtain leave to file their First Amended and Supplemental Complaint (Doc. 12) (the "FASC").  Defendants William Barr, Timothy Shea, Chad Wolf, Mark A. Morgan, and the United States of America (collectively, the "Federal Agency Defendants") also noted this failing in their motion to strike the FASC (Doc. 31).  Plaintiffs have filed a separate motion for relief under Fed.R.Civ.P. 60(b)(1) and 6(b) (Doc. 34), to which the Maricopa County Defendants will respond separately.

<u>Second</u>, Plaintiffs' FASC failed to meet their burden to establish that this Court has personal jurisdiction over the Maricopa County Defendants.  Plaintiffs now argue—although they did not allege in the FASC—that this Court has general jurisdiction over the Maricopa County Defendants, but they do not identify *any* continuous contacts between Shay and California, and the contacts that Plaintiffs do suggest regarding HIDTA and collaborative law enforcement are speculative, or do not involve the County, or both. Plaintiffs' renewed assertions of specific personal jurisdiction based upon the search of Villanueva's residence as an act of California-directed "witness tampering" are not plausible; the Complaint in this lawsuit was not served until *after* the search that allegedly targeted Villanueva as a witness.

<u>Third</u>, venue is not proper in the Northern District of California.  None of the defendants reside in this district, none of the events giving rise to Plaintiffs' claims occurred here, and none of the property at issue is located here.[1]  Even if 28 U.S.C. § 1391(b) could be satisfied in California, transfer to the District of Arizona would still be warranted because the attorneys, key witnesses, and evidence are all located there rather

---

[1] The evidence demonstrates that none of Plaintiffs are resident in California, either; even though NAAVC is incorporated in California, its principal place of business is likely in Arizona.  *See* Motion (Doc. 20) at 7-8; Federal Agency Defendants' Opposition to Plaintiffs' First Motion for Preliminary Injunction (Doc. 41) at 11-12.

1    than in this district.

2    **II.      Portions of the Carreon Declaration Should Be Stricken or Disregarded**

3             "An affidavit or declarations may contain only facts, must conform as much as

4    possible to the requirements of Fed.R.Civ.P. 56(e), and must avoid conclusions and

5    argument.  Any statement made upon information or belief must specify the basis therefor.

6    An affidavit or declaration not in compliance with this rule may be stricken in whole or in

7    part."  Civil L.R. 7-5.  Federal Rule of Civil Procedure 56(c)(4) (previously in subdivision

8    (e)) provides that "[a]n affidavit or declaration used to support or oppose a motion must be

9    made on personal knowledge, set out facts that would be admissible in evidence, and show

10   that the affiant or declarant is competent to testify on the matters stated."  An attorney's

11   declaration that fails to meet this standard "does not constitute competent evidence because

12   it is not based on personal knowledge."  *Mulato v. Wells Fargo Bank, N.A.*, 76 F.Supp.3d

13   929, 947 (N.D. Cal. 2014) (striking portions of declaration of plaintiffs' attorney and

14   granting motion to dismiss for lack of personal jurisdiction).

15            The Opposition relies heavily upon the declaration of Charles Carreon (the "Carreon

16   Declaration" or "C.Decl.") (Doc. 43-1).  However, while Carreon states that he "could and

17   would so competently testify," *id.* at ¶ 1, nowhere does he avow to having any personal

18   knowledge of the facts stated therein.   Most of the Carreon Declaration consists of

19   conclusions, arguments, and unsupported conjecture.  For example:

20            <u>Factual assertions without personal knowledge</u>.[2]  Carreon declares that "Villanueva

21   had no contact with drug cartels or money laundering," nor "with local law enforcement,"

22   and that the Vine of Light Church ("VOLC") "was not known by 'word on the street' [and]

23   kept a very low profile."  C.Decl. at ¶ 6.  He also declares that "MCSO had no interest in

24   prosecuting Ayahuasca use."   *Id.* at ¶ 8.   He states that "[m]any churches for which

25

26   [2] It is conceivable that, as the CFO of NAAVC, Carreon has personal knowledge of certain
     facts.  However, he does not declare that he has such personal knowledge, and Carreon
27   could not "competently testify" to disputed factual matters in this litigation while serving
     as counsel.  *See* Cal. Rules of Professional Conduct 3.7.
28

NAAVC asserts associational standing are located in Court's jurisdiction" and that "[m]any visionary church leaders travel to minister to the needs of small groups … in California." *Id.* at ¶ 20.

Speculation and conjecture.   Carreon speculates that Shay "would have no investigative interest in a small Ayauhausca church that would bring VOLC's activities to his attention." C.Decl. at ¶ 7.  He similarly speculates that HIDTA's collaborative purpose "presumably means that law enforcement officers from Arizona, in particular MCSO HIDTA deputies, will be taking action to assist HIDTA and other law enforcement officers in California," *id.* at ¶ 13, and that "HIDTA funds have presumptively been used to coordinate law enforcement relations between California and Arizona," *id.* at ¶ 16.

Argument.  Carreon argues that because it is "impossible [] that someone at MCSO decided to waste Shay's time by assigning him a fool's errand" to investigate Villanueva, the DEA must have directed Shay to get a warrant and search Villanueva's house.  C.Decl. at ¶ 9.  He also makes outright arguments that "California has an interest in adjudicating the dispute," that "Arizona is not a satisfactory alternative forum for NAAVC," and that "plaintiffs' evidence establishes good cause to deny the motion of defendants to dismiss the [FASC]."  *Id.* at ¶¶ 20-22.

Paragraphs 4, 6-9, 13-17, and 19-23 of the Carreon Declaration should be stricken or disregarded by this Court because they are argumentative, speculative, conclusory, and/or not based on personal knowledge.

## III.   The Maricopa County Defendants Are Not Subject to General Jurisdiction in the State of California

Plaintiffs state that "[t]he Court must determine whether this Court has (1) general jurisdiction over each moving defendant, based upon pervasive purposeful availment of the laws and resources of the State of California" and that "[n]either defendant denies having economic or legal contacts with California that would subject them to general jurisdiction here." Opp. (Doc. 43) at 2:5-7, 2:12-13.  This is simply incorrect.  The Motion

observes that "Plaintiffs make no allegation that general jurisdiction exists over the Maricopa County Defendants." Motion (Doc. 20) at 4:10-11. Plaintiffs have not responded to this (correct) assertion, and have identified no such allegation in the FASC. There was therefore no occasion, and certainly no obligation, for the Maricopa County Defendants to deny something that was never alleged. To the extent that such a denial is now required, here it is the Maricopa County Defendants do not have economic or legal contacts with California that would subject them to general jurisdiction in California.

The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). As the Supreme Court has said:

> *Goodyear* [*Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011)] made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction. Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable.

*Daimler A.G. v. Bauman*, 571 U.S. 117, 138 (2014) (internal quotation marks and citations omitted). There can be no question that the contacts alleged in the Opposition fall far short of meeting Plaintiffs' burden to establish jurisdiction.

### A.   Plaintiffs do not allege any continuous contacts between Matthew Shay and the State of California.

Plaintiffs allege that Shay, "commanding a team of federally-funded HIDTA [MCSO] deputies, conducted a retaliatory search of the home and church of NAAVC Board Member Clay Villanueva … in order to deter Villanueva from testifying and participating in this litigation in this California forum." Opp. (Doc. 43) at 2:24-28. This is the only allegation made in the FASC or argued in the Opposition connecting Shay to

California, and it cannot establish general jurisdiction.  *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1173 (9th Cir. 2006) ("Generally, an isolated contact with the forum state … will not support general jurisdiction.").

      **B.**    **Maricopa County lacks systematic, continuous contacts with California.**

As an initial matter, most of the alleged contacts asserted in the Opposition are between the *State of Arizona* and the State of California, not between *Maricopa County* and the State of California.  *See*, *e.g.*, Opp. (Doc. 43) at 2:23-24 ("the States of California and Arizona have extensive interjurisdictional criminal justice compacts in force"); 8:4-8 (speculating about use of HIDTA funds to "coordinate law enforcement relations between California and Arizona").  Plaintiffs also devote attention to the interstate compacts providing for shared jurisdiction by California and Arizona within 25 miles of the Colorado River (*i.e.*, the states' shared border).  Opp. (Doc. 43) at 8-10.

Although it would not matter even if Maricopa County *did* share a border with California, the County requests that the Court take judicial notice of the fact that the County and California do *not* share a border and, in fact, are more than 25 miles apart.  "The court permissibly took judicial notice of distances between geographical points.  A "court may take judicial notice of undisputed geographical facts."  *Mondaca-Vega v. Holder*, 718 F.3d 1075, 1085 (9th Cir. 2013), *adhered to on reh'g en banc sub nom. Mondaca-Vega v. Lynch*, 808 F.3d 413 (9th Cir. 2015) (quoting *Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355, 1358 n. 4 (9th Cir. 1998).  Maricopa County is separated from the California border by La Paz County (to the north) and Yuma County (to the south), and it is presumably those counties, and not Maricopa County, that participate in shared law enforcement jurisdiction near the Colorado River.  Thus, Plaintiffs' assertions regarding shared jurisdiction and collaborative law enforcement simply have nothing to do with Maricopa County.  Plaintiffs provide no legal authority, and we are not aware of any, for the proposition that a county is subject to personal jurisdiction (or to liability) based on the acts of its state or of neighboring counties.

Maricopa County also is not subject to personal jurisdiction based upon the asserted "vast interstate geographic area" or training activities of the Arizona SW HIDTA. *See* Opp. (Doc. 43) at 6-8. Plaintiffs speculate that Arizona law enforcement officers (including MCSO HIDTA deputies) take action to assist HIDTA and other law enforcement officers in California, and that California law enforcement professionals attend training offered by HIDTA in Chandler, Arizona. *Id.* However, these asserted contacts would only relate to jurisdiction over HIDTA, not over Maricopa County. Moreover, the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). As a result, "a defendant's relationship with a plaintiff or *third party*, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286 (emphasis added). Thus, even if these asserted connections[3] were between MCSO and individual law enforcement officers who reside in California, they would not be relevant to specific jurisdiction, much less general jurisdiction.

Finally, in the only general jurisdiction assertion specific to Maricopa County, Plaintiffs argue that "vast economic expenditures by … Maricopa County to pursue collaborative law enforcement activities … are reasonably believed to be so vast as to establish general jurisdiction over Maricopa County." Opp. (Doc. 43) at 8:26-9:4. Even if this were not pure speculation unsupported by specific facts, Plaintiffs' formulation of general jurisdiction is, in the words of the Supreme Court, "unacceptably grasping." *Daimler A.G.*, 571 U.S. at 138. MCSO conducts its law enforcement activities in Arizona; even "vast" collaborative law enforcement activities undertaken with California entities would not make Maricopa County equally "at home" in California.

## IV.   The Court Lacks Specific Jurisdiction over the County and Shay

The case against each prong of the specific jurisdiction inquiry is addressed at length

---

[3] As discussed in Part II, *supra*, these asserted connections are pure speculation and are not based upon any personal knowledge or information possessed by the declarant, Plaintiffs' counsel Charles Carreon, and should therefore be disregarded.

in the Motion.  In addressing these problems, Plaintiffs essentially double down on their DEA conspiracy / witness tampering theory.  Plaintiffs argue that "if the retaliatory purpose of the HIDTA May 19th raid is assumed … then DEA intent to affect Villanueva's testimony is ineluctably deduced from its occurrence."  Opp. (Doc. 43) at 11:9-12.

However, only the Maricopa County Defendants' own acts and connections can establish specific personal jurisdiction.  "California does not recognize conspiracy as a basis for acquiring personal jurisdiction over a party." *Mansour v. Superior Court*, 38 Cal. App. 4th 1750, 1760 (1995). Likewise, the Ninth Circuit has not adopted the conspiracy theory of jurisdiction. *See*, *e.g.*, *Chirila v. Conforte*, 47 Fed. Appx. 838, 842 (9th Cir. 2002); *cf. Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 492 (9th Cir. 1979) (rejecting conspiracy theory of venue).  The (non-existent) "indicia of a conspiracy between DEA and Maricopa County," Opp. (Doc. 43) at 11:6, are not relevant.

Specific personal jurisdiction over Maricopa County and Shay thus hinges on whether the May 19th search of Villanueva's residence was purposefully directed at California. *Williams v. Yamaha Motor Co., Ltd.*, 851 F.3d 1015, 1022-23 (9th Cir. 2017). In the words of the Opposition, "Plaintiffs have alleged that the search of Villanueva's home by HIDTA deputies from Maricopa County and at least one HIDTA investigator from the Arizona Attorney General's Office acted for the purpose and with the intent of terrifying Villanueva, a witness and, through his status as an NAAVC Board Member, a litigant in this case."  Opp. (Doc. 43) at 15:8-12.

This allegation is not plausible.  Deputy Shay applied for the relevant search warrant on May 17, 2020, and the warrant issued the same day.  *See* Doc. 39-3.  The search of Villanueva's residence occurred on May 19, 2020.  *See* Opp. (Doc. 43) at 5:24-25; Doc. 39-4 at 2.  However, Plaintiffs did not attempt service of the summons and complaint in this litigation until May 21, 2020—*after* the search.  *See* Proof of Service (Doc. 11) at 4-5. Most of the Federal Agency Defendants, including the DEA, were served by certified mailing postmarked May 26, 2020.  *See* Doc. 11-3 at 2; Doc. 11-4 at 2; Doc. 11-5 at 2;

Doc. 11-6 at 2.  Assuming that the Maricopa County Defendants were informed of Villanueva and his role in the litigation by the DEA, as Plaintiffs allege,[4] such communication would necessarily have occurred *after* the service of this lawsuit upon the Federal Agency Defendants—*i.e.*, after the search had already been conducted.  This precludes any possibility (and thus, any reasonable inference) that the Maricopa County Defendants could have known the impact of the search would occur in California or that they could have intended to interfere with litigation in California.

Plaintiffs' reliance on *Boyd* is misplaced.  Although Plaintiffs offer it as an example of "a tort committed outside the state to cause tortious effects in the state," Opp. (Doc. 43) at 15:14-16:3, the analogy does not hold.  In *Boyd*, information was passed between Ward and New Jersey prosecutors; Ward traveled to New Jersey; and Ward prepared an affidavit in support of extradition from New Jersey.  *Boyd v. Arizona*, 469 Fed.Appx. 92, 99 (3d Cir. 2012).  Ward clearly must have known, and intended, to interact with the State of New Jersey through these acts.  By contrast, the only connections between Villanueva and the State of California are (1) Villanueva's membership in the board of NAAVC and (2) his participation in the lawsuit by NAAVC against the Federal Agency Defendants in this Court.  Plaintiffs themselves allege that only the DEA knew of his NAAVC Board membership.  *See* Opp. (Doc. 43) at 43:2-3.  And as discussed above, the Maricopa County Defendants could not have been aware of the *existence* of the lawsuit, much less Villanueva's role as a fact witness.

It is simply not possible to conclude that the search was "expressly aimed" at California when the Maricopa County Defendants lacked any awareness of Villanueva's connections to California.  This negates any possibility of purposeful direction, and therefore this Court lacks personal jurisdiction over the Maricopa County Defendants.

---

[4] This allegation is contradicted by competent evidence; the sworn testimony of Matthew Shay is that he did not communicate further with the DEA regarding Villanueva following receipt of an anonymous tip via the DEA on January 8, 2020.  *See* Doc. 39-1 at ¶¶ 10-15.

**V.    Venue in the Northern District of California Is Improper**

The plaintiff has the burden of showing that venue is proper in this district. *See Piedmont Label Co.*, 598 F.2d at 496 ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California").  "When there are multiple parties and/or multiple claims in an action, the plaintiff must establish that venue is proper as to each defendant and as to each claim." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (quoting *Kelly v. Echols*, No. Civ. F05118 AWI SMS, 2005 WL 2105309, *11 (E.D. Cal. Aug. 30, 2005). "Unlike a motion to dismiss … under Rule 12(b)(6), the pleadings need not be accepted as true …." *Kelly*, 2005 WL 2105309, *11; *see also*, *e.g.*, *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (holding that "the pleadings are not accepted as true" and that "facts outside of the pleadings" may be considered in a 12(b)(3) motion).

First, Plaintiffs restate their inadequate purposeful direction allegations.  Even if those allegations of the *impact* of the Maricopa County Defendants' actions being felt in California were true, however, it is still the case that none of the three prongs of 28 U.S.C. § 1391(b) are met.  None of the defendants reside in the Northern District of California. *See* 28 U.S.C. § 1391(b)(1).  Venue would be proper in Arizona as the place of residence of Maricopa County, Matthew Shay, the Arizona Attorney General, and the State of Arizona, which bars this Court as a default venue. *See* 28 U.S.C. § 1391(b)(3).  And finally, *none* of the "events or omissions giving rise to the claim occurred" in California; the search (and all actions by the Maricopa County Defendants) giving rise to the claim took place in Arizona, and "the property that is the subject of this action" was seized in Arizona and is being held in Arizona. *See* 28 U.S.C. § 1391(b)(2).  Thus, venue is simply improper under 28 U.S.C. § 1391; the Court is not required to balance the convenience of this District against the convenience of the District of Arizona.

Second, to the extent it is even relevant, Plaintiffs falsely claim that the Maricopa County Defendants will not be substantially burdened by litigation in this District until a

trial date arrives, and that any burden is "a conjectural one that is unsupported by evidence, and cannot provide the basis for a venue change." Not so. "Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify, and the convenience of witnesses is often the most important factor in resolving a motion to transfer." *Park v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088, 1095 (N.D. Cal. 2013). This Court ruled in *Park* that "since Plaintiff, Plaintiff's counsel, and Defendant's counsel reside in the Central District, it will be cheaper and more efficient for both parties to litigate there." *Id*. Plaintiffs' counsel, counsel for the Maricopa County Defendants, and counsel for the State of Arizona and Arizona Attorney General all reside in Arizona. *See* Motion (Doc. 20) at 7-8. Numerous key witnesses who have already given declarations in this matter reside in Arizona: Clay Villanueva, Winfield Scott Stanley III, Matthew Shay, and Marco Paddy. *See* Doc. 22-1 (unsigned, but stating that it was signed in Phoenix, Arizona); Doc. 22-2 (signed in Tucson, Arizona); Doc. 39-1; Doc. 41-1. As in *Park*, the burden on parties and witnesses is clear and dispositive.

Plaintiffs do not even address the issue of ease of access to evidence, which weighs equally clearly against venue in California. Evidence relating to rulemaking by and policies of the Federal Agency Defendants is likely to be found in Washington, D.C., not in California. Evidence relating to the criminal investigation of Clay Villanueva, however, will be found exclusively in Arizona (in the possession of MCSO, or, conceivably, the DEA's Phoenix Field Division). *See* Declaration of Marco A. Paddy (Doc. 41-1). "Although developments in electronic conveyance have reduced the cost of document transfer somewhat, costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored." *Park*, 964 F.Supp.2d at 1095.

Plaintiffs' counsel's speculation about California's interest in adjudicating this matter is not competent evidence, *see* Part II, *supra*.

Finally, Plaintiffs argue that the Northern District of California is the "most efficient

judicial forum" because in "a similar scenario" a court would not wait for another venue to deal with alleged tampering (occurring there) that made the other party unable to produce a witness at trial.  Opp. (Doc. 43) at 19:5-10.  There are few words less applicable to Plaintiffs' hypothetical than "similar."  The Court is not "conducting a trial" in this matter—none of the parties have even answered the Complaint, discovery has not begun, and no case management conference has yet been held.  No witnesses have been noticed for deposition, much less refused to appear for trial such that they need to be hauled before the Court by the U.S. Marshals.  Plaintiffs' imaginative scenario does not render "venue issues [] less than secondary."  Opp. (Doc. 43) at 19:15-16.

## VI.   Conclusion

For the foregoing reasons, the claims against the Maricopa County Defendants should be dismissed.

Respectfully submitted this 19th day of August, 2020.

**SACKS TIERNEY, P.A.**

*/s/ Evan F. Hiller*
Evan F. Hiller

## **PROOF OF SERVICE**

On August 19, 2020, I served the following foregoing Reply in Support of Motion to Dismiss on the person or persons below, as follows, via Northern District of California ECF:

Charles Carreon
3241 E. Blacklidge Drive
Tucscon, Arizona 85716
*Counsel for Plaintiffs*

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
*Attorney for Defendants William Barr, Timothy Shea,*
*Chad Wolf, Mark Morgan, and United States of America*

Leah Brownlee Taylor
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
*Attorney for Defendant Thomas Prevoznik*

Drew C. Ensign
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
*Attorney for Defendants State of Arizona and Mark Brnovich*

I declare under penalty of perjury that the foregoing is true and correct.


08/19/2020 _____                              */s/ Michelle L. Curtsinger* _____
Date                                                              Michelle L. Curtsinger