ETHAN P. DAVIS
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
KEVIN P. HANCOCK
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-3183
Fax: (202) 616-8470
E-mail: kevin.p.hancock@usdoj.gov

*Attorneys for the Federal Agency Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA,

        Plaintiffs,

        v.

WILLIAM BARR, Attorney General of the United States; TIMOTHY J. SHEA, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Department of Homeland Security; MARK A. MORGAN, Acting Commissioner of the U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Department of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY,

        Defendants.

No. 3:20-cv-3098-WHO

**FEDERAL AGENCY DEFENDANTS' OPPOSITION TO PLAINTIFF ARIZONA YAGÉ ASSEMBLY'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 33)**

Date: September 9, 2020
Time: 2:00 pm
Place: Courtroom 2, 17th Floor
Honorable William H. Orrick

# **TABLE OF CONTENTS**

BACKGROUND ................................................................................................................ 3

I.    STATUTORY AND REGULATORY BACKGROUND .............................................. 3

    A.    The Controlled Substances Act and the Regulatory Structure Governing
the Legitimate Use of Controlled Substances ............................................... 3

    B.    The Religious Freedom Restoration Act and Its Application to Schedule I
Substances Such as DMT ................................................................................ 4

        1.    *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal* .......... 4

        2.    *Church of Holy Light of the Queen v. Holder* ................................... 5

        3.    The DEA's 2009 Guidance for Parties Seeking Religious
Exemptions ......................................................................................... 5

II.   PLAINTIFF ARIZONA YAGÉ ASSEMBLY ............................................................ 7

III.  THIS LAWSUIT ....................................................................................................... 8

    A.    The Original Complaint ................................................................................. 8

    B.    The First Amended and Supplemental Complaint ......................................... 8

    C.    Plaintiffs' First Motion for Preliminary Injunction ...................................... 9

    D.    Plaintiffs' Second Motion for Preliminary Injunction ................................. 10

LEGAL STANDARD ..................................................................................................... 10

ARGUMENT .................................................................................................................. 11

I.    PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS .................................. 11

    A.    Plaintiff's Claim is Not Ripe Because It Has Failed to Demonstrate a
Genuine Risk of Prosecution Sufficient to Establish an Imminent Injury ........... 11

    B.    Even if Constitutionally Ripe, Plaintiff's Claim Should Be Dismissed for
Failure to Exhaust Administrative Remedies ............................................... 13

    C.    The Court Lacks Subject-Matter Jurisdiction Under 21 U.S.C. § 877 ......... 15

    D.    Plaintiff's RFRA Claim Is Unlikely to Succeed on Its Merits ..................... 16

        1.    Plaintiff Has Not Made a *Prima Facie* Case Under RFRA ............... 16

            a.    Sincere Exercise of Religion ....................................................... 17

            b.    Substantial Burden ...................................................................... 18

2.    The CSA's Prohibitions and Regulations Further Compelling
      Governmental Interests Through the Least Restrictive Means .................. 19

            i.    Protecting Health and Safety Until a Group Obtains a
                  RFRA Exemption and Is Registered ............................................ 20

            ii.   Preventing the Diversion of Ayahuasca to Non-Religious
                  Use ................................................................................................. 20

            iii.  Requiring Compliance with the CSA's Regulatory Scheme ........ 22

II.    PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF
       SUBSTANTIAL AND IMMEDIATE IRREPARABLE HARM .................................... 23

III.   THE BALANCE OF THE EQUITIES WEIGHS HEAVILY AGAINST A
       PRELIMINARY INJUNCTION ............................................................................. 25

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ............................................................. 10, 11

*Burwell v. Hobby Lobby*,
  573 U.S. 682 (2014) ................................................................................ 18

*Cassirer v. Kingdom of Spain*,
  616 F.3d 1019 (9th Cir. 2010) ................................................................ 14

*CHLQ v. Holder*,
  443 F. App'x 302 (9th Cir. 2011) .......................................................... 5, 6

*CHLQ v. Mukasey*,
  615 F. Supp. 2d 1210 (D. Or. 2009) ................................... 5, 13, 17, 20

*DISH Network Corp. v. FCC*,
  653 F.3d 771 (9th Cir. 2011) .................................................................. 11

*Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*,
  774 F.2d 1371 (9th Cir. 1985) ................................................................ 23

*Employment Division v. Smith*,
  494 U.S. 872 (1990) ................................................................................ 25

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal* ("*O Centro*"),
  546 U.S. 418 (2006) ............................................................. 5, 13, 20

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ................................................................................ 17

*John Doe, Inc. v. DEA*,
  484 F.3d 561 (D.C. Cir. 2007) .......................................................... 15, 16

*Lawson v. Hill*,
  368 F.3d 955 (7th Cir. 2004) .................................................................. 24

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................ 11

*Lydo Enterprises, Inc. v. City of Las Vegas*,
  745 F.2d 1211 (9th Cir. 1984) ................................................................ 24

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ............................................................................................ 10

*McCarthy v. Madigan*,
503 U.S. 140 (1992) ............................................................................................ 14

*Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*,
474 F. Supp. 2d 1133 (N.D. Cal. 2007),
*aff'd*, 365 F. App'x 817 (9th Cir. 2010) ................................................ 16, 17, 19

*Navajo Nation v. U.S. Forest Service*,
535 F.3d 1058 (9th Cir. 2008) ............................................................................ 19

*Nelsen v. King Cty.*,
895 F.2d 1248 (9th Cir. 1990) ............................................................................ 11

*O Centro Espirita Beneficente Uniao Do Vegetal v. Mukasey*,
No. CV 00-1647, 2008 WL 11451328 (D.N.M. Aug. 4, 2008) ............................. 5

*O Centro Espirita Beneficente Uniao do Vegetal v. Mukasey*,
No. 00-1647, 2008 WL 11451470 (D.N.M. June 16, 2008) ........................... 24, 25

*Rossides v. Gonzales*,
210 F. App'x 711 (9th Cir. 2006) ........................................................................ 12

*S. Bay United Pentecostal Church v. Newsom*,
959 F.3d 938 (9th Cir. 2020) .............................................................................. 24

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ............................................................................ 23

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ...................................................................... 12, 13

*United States v. Christie*,
825 F.3d 1048 (9th Cir. 2016) .................................................... 16, 20, 21, 22

*United States v. Christie*,
No. CR 10-00384 01 LEK, 2013 WL 6860822 (D. Haw. Dec. 30, 2013),
*aff'd*, 825 F.3d 1048 (9th Cir. 2016) .............................................................. 21, 22

*United States v. Lepp*,
No. CR 04–00317 MHP, 2008 WL 3843283 (N.D. Cal. Aug. 14, 2008)............... 22

*United States v. Meyers*,
95 F.3d 1475 (10th Cir. 1996) ............................................................................ 17

*United States v. Stephens*,
   --- F. Supp. 3d ---, No. 15-cr-95 (AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) .......... 25

*United States v. Vasquez-Ramos*,
   531 F.3d 987 (9th Cir. 2008) ............................................................................... 17

*Univ. of Tex. v. Camenisch*,
   451 U.S. 390 (1981) .......................................................................................... 23

*Universal Semiconductor, Inc. v. Tuoi Vo*,
   No. 5:16-CV-04778-EJD, 2016 WL 9211685 (N.D. Cal. Nov. 29, 2016) ............................. 24

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ...................................................................................... 11, 23

*World Wide Rush, LLC v. City of Los Angeles*,
   No. CV 07-238 ABC (JWJX), 2007 WL 9710934 (C.D. Cal. July 23, 2007) ........................ 12

**STATUTES**

21 U.S.C. § 801 *et seq.* ........................................................................................ 3

21 U.S.C. § 812 .................................................................................................. 3

21 U.S.C. § 822 .............................................................................................. 4, 6

21 U.S.C. § 823 .............................................................................................. 4, 6

21 U.S.C. § 824 ................................................................................................. 6

21 U.S.C. § 877 ............................................................................................. 7, 15

21 U.S.C. § 880 ................................................................................................. 4

21 U.S.C. § 958 ................................................................................................. 4

28 U.S.C. §§ 2201-02 ........................................................................................... 8

42 U.S.C. § 1983 ............................................................................................... 9

42 U.S.C. § 2000bb-1 .................................................................................. 4, 5, 16, 17

**REGULATIONS**

21 C.F.R. Pts. 1301 ............................................................................................ 4

21 C.F.R. Pts. 1312 ................................................................................................ 4

21 C.F.R. § 1301.37 ............................................................................................... 6

21 C.F.R. § 1301.46 ............................................................................................... 6

21 C.F.R. §§ 1301.01-1301.52 .............................................................................. 4

21 C.F.R. §§ 1301.71-1301.76 .............................................................................. 4

21 C.F.R. §§ 1301.90-1301.93 .............................................................................. 4

21 C.F.R. §§ 1302.01-1302.07 .............................................................................. 4

21 C.F.R. §§ 1304.21-1304.22 .............................................................................. 4

21 C.F.R. §§ 1316.01-1316.13 .............................................................................. 4

21 C.F.R. § 1316.03 ............................................................................................... 6

21 C.F.R. § 1316.67 ............................................................................................... 6

28 C.F.R. § 0.100 .................................................................................................. 4

**RULES**

Fed. R. Civ. P. 15 ............................................................................................ 1, 11

**OTHER AUTHORITIES**

Ariel Levy,
    "The Drug of Choice for the Age of Kale," *The New Yorker* (Sept. 5, 2016),
    https://www.newyorker.com/magazine/2016/09/12/the-ayahuasca-boom-in-the-u-s ......... 20, 21

AYA Ceremony Preparation, https://d0454afd-e674-4758-8be7-
    c9df25b40096.filesusr.com/ugd/f21d41_2e476ecedf864afd919fe8a8ead77d8f.pdf .................. 7

Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act
    Pursuant to the Religious Freedom Restoration Act,
    https://www.deadiversion.usdoj.gov/pubs/rfra_exempt_022618.pdf ........................................ 6

http://www.kirasalak.com/Ayahuasca.html ................................................................ 21

https://www.aya.guide/ceremonies ...................................................................... 7, 8

Kira Salak,
    "Ayahuasca Healing in Peru," kirasalack.com ....................................................... 21

Rachel Harris,
  *Listening to Ayahuasca:  New Hope for Depression, Addiction, PTSD, and Anxiety* (New World Library 2017) ........................................................................................... 21

Tupper, Kenneth W.,
  "The Economics of Ayahuasca:  Money, Markets, and the Value of the Vine," in Labate, Beatriz Caiuby*, et al.*, eds., *The World Ayahuasca Diaspora: Reinventions and Controversies* (Routledge, Ltd. 2017) ........................................................................................... 21

In the second motion for a preliminary injunction that Plaintiffs have filed in this case, Plaintiff Arizona Yagé Assembly ("Arizona Yagé" or "AYA") admits that since its founding in 2015, it has conducted hundreds of "ayahuasca ceremonies" in several states during which it has provided a Schedule I controlled substance to at least 1,400 alleged members, and that it has no intention of stopping.  Indeed, its website (www.aya.guide) indicates that it has held at least 15 such ceremonies since the start of this litigation and will hold nine more between now and mid-October.  Plaintiff also admits that in 2017, it had all but completed a Religious Freedom Restoration Act ("RFRA") petition to Defendant U.S. Drug Enforcement Administration ("DEA") requesting an exemption from the Controlled Substances Act ("CSA") for its use of ayahuasca.  Yet Plaintiff decided not to file its petition, and then waited 28 months before filing a RFRA claim in this suit.  Plaintiff then waited another three months before filing this motion, in which it now asserts it needs emergency relief against the Federal Agency Defendants.[1]

Arizona Yagé's motion should be denied.  It has failed to satisfy any of the four requirements that must be met to justify the extraordinary relief of a preliminary injunction.

At the outset, Plaintiff's RFRA claim is unlikely to succeed for several reasons.  First, it suffers from a number of the same defects that plague the section 1983 claim at issue in Plaintiffs' first motion for a preliminary injunction: it is based on a supplemental complaint filed in violation of Federal Rule of Civil Procedure 15(d), venue is improper, and Plaintiff has not pleaded any waiver of sovereign immunity.

Second, Arizona Yagé lacks standing to obtain an injunction because it has failed to demonstrate that it faces any genuine threat of imminent prosecution by federal authorities.  Plaintiff's declarant's willingness to admit under penalty of perjury to years of CSA violations undermines Plaintiff's assertions that it fears prosecution, and Plaintiff identifies no specific warning or threat to initiate such proceedings or any relevant history of past prosecution.

---

[1]     The "Federal Agency Defendants" are William Barr, Attorney General of the United States; Timothy Shea, Acting Administrator of the DEA; Chad Wolf, Acting Secretary of the Department of Homeland Security; Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection; and the United States of America.

Third, Plaintiff has failed to exhaust its administrative remedy of seeking a RFRA exemption through the DEA's process for doing so.  Though not a predicate to jurisdiction, that process should be required.  It allows the DEA to use its expertise to develop a robust factual record to inform whether Plaintiff is entitled to an exemption and able to handle a Schedule I controlled substance safely and without diversion into illicit markets.  That process may render this litigation unnecessary or at a minimum would provide a detailed factual record of agency action for judicial review.

Fourth, Arizona Yagé should not be permitted to circumvent the statutory requirement that only a Court of Appeals may review DEA findings and conclusions.  By falsely claiming that the DEA "denied" it a RFRA exemption while failing to file a petition, Plaintiff has attempted an improper end-run around Congress's mandated venue for review of DEA decisions.

Fifth, Plaintiff's RFRA claim is unlikely to succeed on its merits.  The Court should reject Arizona Yagé's invitation to grant an emergency injunction against the CSA on the basis of a few self-serving exhibits and two distinguishable court rulings that are more than a decade old.  Plaintiff has failed to establish a *prima facie* RFRA claim.  There is insufficient evidence on this record to conclude that Plaintiff or its unknown number of alleged members use ayahuasca as part of a sincere exercise of religion.  For example, Plaintiff does not claim to use any screening process to evaluate the religious sincerity of its participants, as other religious groups do.  The record also does not reflect that the CSA substantially burdens Plaintiff's practice, which, as Plaintiff freely admits, is robust and continuing.  The CSA does not impose a "total prohibition," as Plaintiff claims; instead, it prophylactically bars the use of Schedule I substances until a petitioner is registered to handle them—something that Plaintiff has refused to do.

Even if Arizona Yagé had put forth a *prima facie* case, its claim would still likely fail on this record because enforcement of the CSA furthers at least three compelling government interests through the least restrictive means.  First, the pre-registration prohibition on dangerous Schedule I substances like ayahuasca is necessary to protect health and safety, particularly here, where Plaintiff's alleged expert witness suggests that ayahuasca use is safe for adolescents.  Second, the government's anti-diversion interest is compelling.  There is a growing recreational

ayahuasca industry, Plaintiff has no apparent membership requirements other than the payment of a one-time fee, and Plaintiff has provided no information on whether the quantity of ayahuasca it plans on importing is proportional to its allegedly religious membership.  Third and finally, the government has a compelling interest in ensuring that CSA exemptions are granted only after the DEA's rigorous administrative process, which is the least restrictive means for collecting and evaluating a complete body of information when DEA considers requests for religious-use exemptions.

Plaintiff has also failed to demonstrate any imminent irreparable harm.  Plaintiff has delayed seeking this injunction for five years, and there is no genuine threat of imminent prosecution (and thus no threat of COVID-19 infection from hypothetical incarceration).

Finally, the balance of the equities favors Defendants, not Plaintiff:  the injunction would not only enjoin the CSA's ban on ayahuasca but also any DEA regulation of its importation, storage, distribution, or use.  Plaintiff has demonstrated no legitimate need for such an injunction, which relief would endanger public health while increasing the chances that a Schedule I substance will be diverted to the growing recreational ayahuasca market.

The motion should be denied.

## **BACKGROUND**

## I.      STATUTORY AND REGULATORY BACKGROUND

### A.      The Controlled Substances Act and the Regulatory Structure Governing the Legitimate Use of Controlled Substances

The CSA regulates the importation, manufacture, distribution, and use of psychotropic substances.  21 U.S.C. § 801 *et seq.* (2000 ed. and Suppl. I).  "Schedule I" substances under the CSA, such as the dimethyltryptamine ("DMT") found in ayahuasca, are those that have no currently accepted medical use and the highest potential for abuse and which are therefore subject to a ban on nearly all importation and use.  21 U.S.C. § 812(b)(1).

The CSA, however, is not limited to the outright prohibition of controlled substances.  It also governs the legitimate importation, manufacture, distribution, and dispensing of controlled substances by persons and entities, from manufacturers to researchers, health care professionals,

and pharmacies.  *See* 21 U.S.C. § 822.  That is, the CSA provides that no individual or entity may manufacture, distribute, or dispense a Schedule I controlled substance unless registered by the DEA.  *Id.* § 822(a); 28 C.F.R. § 0.100(b).

The legitimate handling of these substances is governed by longstanding DEA regulations, which establish an orderly system to ensure that these substances are handled safely and properly safeguarded to prevent loss, theft, or diversion to illicit use.  *See* 21 U.S.C. §§ 823, 958; *see generally* 21 C.F.R. Pts. 1301, 1312.  DEA regulations require those who import, export, manufacture, distribute, or dispense controlled substances to maintain a valid registration with DEA.  21 C.F.R. §§ 1301.01-1301.52; *see id.* Pt. 1312.  Registration is dependent upon, among other things, adequate assurances that the registrant will maintain effective controls against diversion.  For instance, the regulations establish physical security requirements governing how controlled substances must be stored, as well as measures to guard against loss or theft in transit.  *See* 21 C.F.R. §§ 1301.71-1301.76.  Registrants also must ensure proper labeling and packaging of controlled substances.  *Id.* §§ 1302.01-1302.07.  Moreover, registrants must maintain a complete and accurate record of their importation, receipt, distribution and disposal of controlled substances, and take a physical inventory at least once a year.  *See id.* §§ 1304.21-1304.22.  In addition, registrants must permit DEA to conduct inspections and to audit their records to ensure that controlled substances are being handled properly.  21 U.S.C. § 880; 21 C.F.R. §§ 1316.01-1316.13.  The regulations also set screening procedures for employees who have access to controlled substances.  *Id.* §§ 1301.90-1301.93.

### B. The Religious Freedom Restoration Act and Its Application to Schedule I Substances Such as DMT

RFRA provides that the federal government may not substantially burden a person's sincere exercise of religion, unless doing so is the least restrictive means of advancing a compelling interest.  42 U.S.C. § 2000bb-1(b).

#### 1. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*

In *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal* ("*O Centro*"), the Supreme Court held that the CSA's provisions banning the use of Schedule I substances are

subject to individualized, case-by-case exemptions under RFRA.  546 U.S. 418, 430-31 (2006).
The Court acknowledged that "Schedule I substances such as DMT are exceptionally
dangerous," but nevertheless held that "the compelling interest test is satisfied through
application of the challenged law 'to the person'—the particular claimant whose sincere exercise
of religion is being substantially burdened."  *Id.* at 430-32 (citing 42 U.S.C. § 2000bb–1(b)).

Although *O Centro* held that RFRA exemptions to the CSA's *ban* on Schedule I
substances are possible, *O Centro* did not bar the DEA from applying the CSA's *regulatory
scheme* to Schedule I substances.  On remand, the district court explained that *O Centro* "cannot
be read to exempt Plaintiffs from any and all regulation under the CSA, because the balancing of
interests required by RFRA may be different for regulation of hoasca than for a ban on hoasca."
*O Centro Espirita Beneficente Uniao Do Vegetal v. Mukasey*, No. CV 00-1647, 2008 WL
11451328, at *2 (D.N.M. Aug. 4, 2008).

### 2. *Church of Holy Light of the Queen v. Holder*

Similarly, in *Church of Holy Light of the Queen* ("*CHLQ*") *v. Holder*, the district court
concluded that RFRA "requires that plaintiffs be allowed to import and drink Daime tea [(which
also contains DMT)] for their religious ceremonies, subject to reasonable restrictions."  *CHLQ v.
Mukasey*, 615 F. Supp. 2d 1210, 1212 (D. Or. 2009), v*acated sub nom. CHLQ v. Holder*, 443 F.
App'x 302 (9th Cir. 2011).  As the Ninth Circuit later explained in reversing the district court's
enjoining of DEA regulations, the district court's ruling that CHLQ could not be banned from
using Daime did not extend to prohibit the DEA from "enforcing certain regulations and
corresponding statutory provisions set forth in the [CSA]," which were not successfully
challenged by CHLQ.  *CHLQ*, 443 F. App'x at 303.

### 3. The DEA's 2009 Guidance for Parties Seeking Religious Exemptions

Following *O Centro*, and pursuant to its authority to register the legitimate use and
handling of Schedule I controlled substances, the DEA publicly issued guidelines in 2009 to
serve as an "interim measure intended to provide guidance to parties who wish to petition [the

DEA] for a religious exemption to the CSA" (the "2009 Guidance").[2]  The 2009 Guidance directs a petitioner to provide information demonstrating that the application of the CSA to its activities would "(1) be a substantial burden on (2) his/her sincere (3) religious exercise."  *Id.* This information allows the DEA to determine whether the petitioner qualifies for a RFRA exemption from the prohibition on the possession and use of Schedule I controlled substances.

The 2009 Guidance also directs the petitioner to state "the specific controlled substance that the party wishes to use[,]" and "the amounts, conditions, and locations of its anticipated manufacture, distribution, dispensing, importation, exportation, use or possession."  *Id.* Assuming the petitioner has met its burden under RFRA, this information then allows the DEA to determine whether the DEA can register the petitioner and regulate its use of the controlled substance consistent with the public interest, including the need to mitigate the risk of diversion of the controlled substance into illicit channels.  21 U.S.C. § 823(b)(1).  As part of the fact-finding process, investigators from the DEA's Office of Diversion Control routinely interview the petitioner's officers and may conduct on-site inspections of each location where the controlled substance will be stored and handled.  *Id*. § 822(f); 21 C.F.R. § 1316.03.

After completing the fact-finding process, the DEA may (1) deny the petition for failure to provide sufficient information; (2) register the petitioner subject to the terms of a Memorandum of Understanding governing the petitioner's handling of the controlled substance; or (3) deny the petition if the record demonstrates that the petitioner failed to satisfy its burden under RFRA or that registration would not be in the public interest under the CSA.  In the case of such a denial, the DEA would issue an Order to Show Cause why the registration should not be denied.  21 U.S.C. § 824(c); 21 C.F.R. §1301.37.   The petitioner would then have the opportunity to request a hearing before an Administrative Law Judge ("ALJ"), after which the Administrator would issue a final agency decision under authority delegated by the Attorney General.  21 C.F.R. §§ 1301.46, 1316.67.

---

[2]      *See* Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, at https://www.deadiversion.usdoj.gov/pubs/rfra_exempt_022618.pdf (last visited Aug. 18, 2020).

The agency's final determination on the petition, like all final determinations of the Attorney General, is subject to judicial review only in a U.S. Court of Appeals.  21 U.S.C. § 877.

## II.    PLAINTIFF ARIZONA YAGÉ ASSEMBLY

Plaintiff Arizona Yagé alleges that it is a "religious nonprofit corporation[]" that was established "as a visionary church in 2015," and which uses ayahuasca as its communion sacrament.  *See* Compl. ¶¶ 6, 42 (May 5, 2020), ECF No. 1 ("Original Complaint").  Ayahuasca is a tea that contains DMT, which is made "by brewing leaves from DMT-containing plants jointly with slices of *Banisteropsis Caapi*, the 'yagé' vine."  *Id.* ¶¶ 6, 38.

Arizona Yagé further alleges it was founded in 2015 by Winfield Scott Stanley III, who has been using ayahuasca since 2009.  *See* Decl. of Winfield Scott Stanley III ("Stanley Decl.") ¶¶ 1-2 (Aug. 5, 2020), ECF No. 33-1.  Stanley is currently the director of Arizona Yagé.  *Id.* ¶ 1.  Since Arizona Yagé's founding, Stanley has led more than 300 ayahuasca ceremonies and has participated in "many more."  *Id.* ¶ 4.  Arizona Yagé is incorporated in three states where it has "substantial congregations returning to ceremonies for several years running now."  *Id.*  Arizona Yagé has provided ayahuasca to "people from around the world," and Stanley has "travel[ed] extensively" to several states to use ayahuasca with others.  *Id.*  In 2018, Arizona Yagé distributed a survey to 1,430 people who had participated in its ayahuasca ceremonies.  *Id.* ¶ 19.  Plaintiff states that it "continues to engage in visionary communion," *i.e.*, to use and distribute ayahuasca, and that it has no intention of stopping.  *Id.* ¶ 42.

Arizona Yagé operates a website where it publicly advertises its ayahuasca ceremonies.  *See* https://www.aya.guide/ceremonies (last visited Aug. 19, 2020).  According to that website, Plaintiff has conducted at least 15 ayahuasca ceremonies since the start of this litigation in May 2020, and is currently advertising nine more to take place between now and October 11, 2020.  *Id.*  For example, on September 11, 12, and 13, Arizona Yagé will be holding ceremonies in Tuscon, Arizona, and is charging "$185 one evening, $350 two evenings, $475 three evenings."  *Id.*  The website offers a five-page guide to participants on "AYA Ceremony Preparation."[3]  The

---

[3]    AYA Ceremony Preparation, https://d0454afd-e674-4758-8be7-c9df25b40096.filesusr.com/ugd/f21d41_2e476ecedf864afd919fe8a8ead77d8f.pdf (last visited, Aug. 17, 2020).

1  guide touches on various issues, such as whether to eat certain foods or watch television

2  beforehand, but does not mention the words "religion," "sacrament," or "communion," or state

3  any religious requirements for participants.  *Id.*

4  Four years ago, in August 2016, Arizona Yagé alleges that it prepared a petition to

5  request a RFRA exemption from the CSA under the DEA's 2009 Guidance.  Stanley Decl. ¶ 24.

6  After approximately 16 months, Arizona Yagé "w[as] on the brink of filing the petition," but

7  then chose not to.  *Id.* ¶¶ 24-26, 32.  Stanley's signed declaration states that Arizona Yagé did

8  not file its petition because Stanley was concerned about signing a document that would

9  incriminate himself in a violation of the CSA, "[s]ince we had no intention to stop our religious

10  services[.]"  *Id.* ¶¶ 26-27, 32.

11  **III.    THIS LAWSUIT**

12      **A.    The Original Complaint**

13  On May 5, 2020, Arizona Yagé and its co-plaintiff, the North American Association of

14  Visionary Churches ("NAAVC"), filed the original complaint in this action, which contains three

15  claims, one each under the RFRA, the Administrative Procedure Act ("APA"), and the

16  Declaratory Judgment Act.  Original Compl. at 1.

17  First, in their RFRA claim, Arizona Yagé and NAAVC allege that they are entitled to a

18  blanket exemption from the CSA's prohibitions on the manufacture, distribution, dispensing, and

19  importation of ayahuasca.  Original Compl. ¶¶ 123-47.  Second, in their APA claim, Arizona

20  Yagé and NAAVC allege that the United States and the DEA have maintained an alleged policy

21  of refusing to grant religious exemptions under RFRA to "visionary churches" such as Arizona

22  Yagé.  *Id.* ¶¶ 71, 148-67.  Third, Plaintiffs claim they are entitled to a declaration under the

23  Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  *Id.* ¶¶ 168-71.

24      **B.    The First Amended and Supplemental Complaint**

25  On June 16, 2020, without seeking leave of Court, Plaintiffs filed a First Amended and

26  Supplemental Complaint, adding one new plaintiff, four new defendants, and two new claims

27  based on events allegedly occurring on May 19, 2020, approximately two weeks after the date of

28

the Original Complaint.  First Am. and Suppl. Compl. ("FASC") at 46-59 (Jun. 15, 2020), ECF No. 12; *see also* Notice of Errata at 2 (July 22, 2020), ECF No. 21.

In the first new claim (claim 3 of the FASC), new Plaintiff Clay Villanueva and the NAAVC assert a cause of action under 42 U.S.C. § 1983 against the four new defendants—the State of Arizona; Arizona Attorney General Mark Brnovich; Maricopa County, Arizona; and Maricopa County Deputy Matthew Shay (collectively, the "Arizona Defendants")—and "Mark A. Morgan on behalf of the DEA and unnamed DEA agents[.]"[4]  FASC at 46-59.  In the FASC, Plaintiffs allege that Villanueva is an NAAVC board member and the founder of the "Vine of Light visionary church," where Villanueva has "conducted ceremonies as the minister."  FASC ¶¶ 7-8.  The section 1983 claim alleges that the DEA retaliated against the NAAVC for sending the DEA a letter by conspiring with the Arizona Defendants to deprive Villanueva of his civil rights.  *Id.* ¶¶ 122, 184, 187, 189-90.  That alleged deprivation of rights occurred on May 19, 2020, according to Plaintiffs, when Maricopa County, Arizona executed a state-issued search warrant for Villanueva's home, and seized mobile phones, financial records, and significant amounts of marijuana and ayahuasca.  *Id.* ¶¶ 199-200.

In the second new claim of the FASC (claim 4 of the FASC), Villanueva asserts a claim under the Arizona Free Exercise of Religion Act against Arizona and its Attorney General.[5]

### C.    Plaintiffs' First Motion for Preliminary Injunction

On July 22, 2020, Plaintiffs moved for a preliminary injunction against all Defendants on the basis of Villanueva and NAAVC's section 1983 claim.  *See* Pls.' Mot. for Prelim. Inj. ("PI Mot.") (July 22, 2020), ECF No. 22.  The Federal Agency Defendants and the Arizona Defendants filed oppositions on August 12, 2020.  ECF Nos. 39-41.

Maricopa County's opposition brief states that the county's investigation of Villanueva revealed that he had been advertising ayahuasca ceremonies online, and that his PayPal account,

---

[4]    The Federal Agency Defendants note that Mr. Morgan, who serves as Acting Commissioner of CBP and who is sued in his official capacity, does not have authority to take any action "on behalf of DEA."

[5]    *See* FASC ¶¶ 223-32.  Plaintiffs' claim under the Arizona Free Exercise of Religion Act is not relevant to Arizona Yagé's motion for preliminary injunction and is asserted only against the state defendants and thus is not further addressed in this brief.

which he used to collect fees from ayahuasca customers, had received more than $248,000 in approximately one year.  Maricopa Cty Defs.' Resp. to Mot for Prelim Inj. ("Maricopa PI Opp'n") at 10 (Aug. 12, 2020), ECF No. 39.  Maricopa County obtained and executed a search warrant for Villanueva's home, *id.* at 11-12, which Villanueva claims is a "church," FASC ¶ 186.  Although that search revealed "no signage or other indication that Villanueva's residence is a church," it did uncover "4.19 pounds of marijuana . . . , 91 pounds of ayahuasca paste, 15 bottles of ayahuasca liquid, 260.5 grams of suspected psilocybin mushrooms, and $14,025 in U.S. currency," in addition to 33 pounds of marijuana plants, "numerous customer lists, price lists, and ledgers," and cell phone records showing "that he has been engaging in sales of marijuana and DMT for months if not years."  Maricopa PI Opp'n at 13.

### D.    Plaintiffs' Second Motion for Preliminary Injunction

On August 5, 2020—five years after being founded, four years after starting work on a RFRA petition, three years after deciding not to file that petition, and three months after filing its original complaint—Arizona Yagé filed a motion for a preliminary injunction based on its RFRA claim, asserting that it is "in danger of suffering irreparable harm."  Stanley Decl. ¶ 42; *see* Pl. Arizona Yagé Assembly's Mot. for. Prelim. Inj. ("PI Mot.") (Aug. 5, 2020), ECF No. 33.  NAAVC does not also seek a preliminary injunction.  *See* PI Mot. at 1.  The preliminary injunction Plaintiff requests would prevent the Federal Agency Defendants "from prohibiting, or in any way interfering with AYA's importation, storage, distribution, and use of Ayahuasca tea or its herbal constituents for AYA's religious ceremonies."  Proposed Ord. Granting Prelim. Inj. at 4 (Aug. 5, 2020), ECF No. 33-16.

### LEGAL STANDARD

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*) (citation omitted).  A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052

(9th Cir. 2009) (citation omitted).  A "possibility" of irreparable harm is insufficient; irreparable harm must be likely absent an injunction.  *Id.*; *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (rejecting Ninth Circuit's rule that the "possibility" of irreparable harm, as opposed to its likelihood, may justify a preliminary injunction).  Plaintiffs bear the burden of demonstrating that each of these four factors is met.  *DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).

## ARGUMENT

## I.   PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS

At the outset, Plaintiff is unlikely to succeed on the merits due to three defects that are also fatal to its first preliminary injunction motion, as the Federal Agency Defendants have previously explained.  First, Plaintiff's motion seeking a preliminary injunction should be stricken because it relies on facts added to the original complaint by the FASC, which Plaintiff admits was filed in violation of Rule 15(d).  *See* ECF Nos. 31, 36, 41.  Second, venue is improper in this District, which has no connection to any party or facts in this case.  *See* ECF No. 41 at 11-12.  Third, Plaintiffs have not pleaded any waiver of sovereign immunity, as they must to carry their burden of demonstrating jurisdiction.  *Id.* at 13-14.

### A.   Plaintiff's Claim is Not Ripe Because It Has Failed to Demonstrate a Genuine Risk of Prosecution Sufficient to Establish an Imminent Injury

To satisfy its burden of establishing Article III standing, Plaintiff must at a minimum show that it has suffered a concrete and particularized "injury in fact" that is "actual or imminent, not conjectural or hypothetical[.]"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).  A plaintiff seeking injunctive relief must demonstrate a sufficient likelihood of *future* injury.  *Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990).

Arizona Yagé asserts vague fears of "having its Free Exercise interrupted, its minister prosecuted on drug charges, and its sacrament seized as contraband," PI Mot. at 1, but these assertions are not enough.  The Ninth Circuit has "held that neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy'

requirement." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Instead, there must be a "*genuine* threat of *imminent* prosecution." *Id.* (emphases added).

To determine if a genuine risk of imminent prosecution exists, courts consider three factors: (1) "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question," (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (3) "the history of past prosecution or enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139. Here, although Plaintiff has made clear that it and its members have been violating the law for years and plan to continue doing so, *see supra* pp. 7-8, Plaintiff cannot satisfy the other two factors.

First, Plaintiffs do not allege that federal authorities have communicated a specific warning or threat to initiate proceedings against it or its members. *See Rossides v. Gonzales*, 210 F. App'x 711, 712 (9th Cir. 2006) (finding no standing where "[n]o prosecuting authorities have ever communicated a specific threat or warning to initiate proceedings against [plaintiff]"). The absence of such an allegation is unsurprising given the frankness with which Arizona Yagé's founder declares that he and Arizona Yagé members have been violating the CSA. *See supra* pp. 7-8. Those admissions completely undermine Plaintiff's generalized assertions that it is being "chill[ed]," PI Mot. at 19, "stifl[ed]," *id.* at 20, and "intimidated to halt its religious practice," Stanley Decl. ¶ 41. Indeed, Plaintiff does not claim that any of its members have in fact stopped their practice—even those who Arizona Yagé claims are reluctant to tell others about their ayahuasca use given "questions about the legality of our practice." Stanley Decl. ¶ 22.[6]

Second, the DEA's lack of history of past prosecution or enforcement of the CSA against ayahuasca use also indicates that Plaintiff faces no genuine threat of imminent prosecution. Plaintiffs do not point to a single federal criminal prosecution relating to ayahuasca. This failure is fatal to Plaintiff's standing. *See Thomas*, 220 F.3d at 1140 (denying standing in part because a

---

[6] Contrary to Plaintiff's suggestion, *see* Stanley Decl. ¶ 39, Maricopa County's execution of a state-issued search warrant upon Arizona Yagé's co-plaintiff, Clay Villanueva, does not qualify as a specific warning or threat of prosecution by federal authorities against Arizona Yagé. *See* FADs' First PI Opp'n at 18-22; Maricopa PI Opp'n at 5-17; *see also World Wide Rush, LLC v. City of Los Angeles*, No. CV 07-238 ABC (JWJX), 2007 WL 9710934, at *8 (C.D. Cal. July 23, 2007) (explaining that a citation issued "to Plaintiff Insite Outdoor, [] is not relevant to prove imminent enforcement against Plaintiff World Wide Rush").

1   lack of criminal prosecution).  This lack of prosecution history is particularly telling given that

2   the number of organizations offering ayahuasca ceremonies is apparently large enough for

3   Plaintiff to refer to them as a "community," FASC ¶ 37, and Arizona Yagé itself has been

4   offering ayahuasca for five years to at least hundreds of members on hundreds of occasions, *see*

5   *supra* p. 7.  Even Arizona Yagé's co-Plaintiff, Villanueva, admits that he has "no criminal

6   record" despite his "announced history of conducting visionary church ceremonies."  FASC ¶

7   199; *see also* Stanley Decl. ¶ 39.  Plaintiff identifies two additional non-party ayahuasca groups

8   in its complaint, but does not claim that anyone has prosecuted either of those groups either.  *See*

9   FASC ¶¶ 103-07.  On the contrary, the DEA is currently working with one of those groups "to

10  conduct the fact-finding that is necessary for it to adjudicate [its] pending petition for a religious

11  exemption from the [CSA.]"  Joint Mot. to Stay All Proceedings for 120 Days at 1, ECF No. 23,

12  *Soul Quest Church of Mother Earth, Inc. v. Barr, et al.*, 6:20-cv-701-WWB-DCI (M.D. Fla. Jun.

13  15, 2020).

14        Although ayahuasca groups have been the subject of previous CSA litigation, as Plaintiff

15  points out, FASC ¶¶ 82-83, both *O Centro* and *CHLQ* were pre-enforcement lawsuits, *see O*

16  *Centro*, 546 U.S. at 425; *CHLQ*, 615 F. Supp. 2d at 1214.  Moreover, the attempts by the federal

17  government to seize substances containing DMT described in those cases are not relevant here,

18  because they occurred before the Supreme Court's ruling in *O Centro*, which required the DEA

19  to abandon its previous practice of categorically not considering exemptions to the CSA's ban on

20  Schedule I substances.  *See CHLQ*, 615 F. Supp. 2d at 1214 ("The [government] refused to

21  consider a religious exemption for plaintiffs.").  Since 2009, the DEA has considered religious

22  exemptions for ayahuasca groups, and Plaintiff has refused to engage in that process.

        **B.     Even if Constitutionally Ripe, Plaintiff's Claim Should Be Dismissed for
23              Failure to Exhaust Administrative Remedies**

24        Even if Plaintiff could show that its claim is constitutionally ripe, that claim would still

25  be unlikely to succeed because it is nevertheless premature given Plaintiff's failure to exhaust

26  available administrative remedies.  Plaintiff repeatedly asserts that there has been a "DEA[]

27  *denial* of AYA's right to Free Exercise use of Ayahuasca."  PI Mot. at 15 (emphasis added); *see*

28

1  *also* FASC ¶¶ 56, 67, 80, 139, 149, 156, 162, 167.  But this is not true:  Arizona Yagé has never

2  filed a petition with the DEA for a RFRA exemption.  *See supra* p. 8; FASC ¶ 101.

3       Courts have discretion to require exhaustion even when the governing statutes and

4  regulations do not.  *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  Such "[j]udicially-

5  imposed or prudential exhaustion is not a prerequisite to the exercise of jurisdiction, but rather is

6  one among related doctrines—including abstention, finality, and ripeness—that govern the

7  timing of federal-court decisionmaking.'"  *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1037

8  (9th Cir. 2010).  The doctrine is premised on "the notion, grounded in deference to Congress'

9  delegation of authority to coordinate branches of Government, that agencies, not the courts,

10  ought to have primary responsibility for the programs that Congress has charged them to

11  administer."  *McCarthy*, 503 U.S. at 145.  Exhaustion also respects the agency's decision-making

12  process by discouraging "frequent and deliberate flouting of administrative processes."  *Id.*

13  Moreover, "even where a controversy survives administrative review, exhaustion of the

14  administrative procedure may produce a useful record for subsequent judicial consideration,

15  especially in a complex or technical factual context."  *Id.*

16       Considering these factors, requiring exhaustion would be proper here.  Plaintiff falsely

17  claims that "the DEA has never developed a process for visionary churches to obtain . . . an

18  exemption," Stanley Decl. ¶ 23, but there is such a process.  *See supra* pp. 5-7.  Through that

19  process, the DEA collects comprehensive factual information from the petitioner.  That process

20  could result in Plaintiff receiving an exemption, which would moot this case.  If the DEA instead

21  initially denied the petition, Plaintiff would have the opportunity to be heard before an ALJ, and

22  then the Court of Appeals, which would have the benefit of a fully developed factual record.

23       Plaintiff admits that it was able to compile the information necessary to complete a "near-

24  final" petition by "the close of 2017."  Stanley Decl. ¶¶ 24-26.  Despite working on that petition

25  for more than a year, Plaintiff then determined that filing it would be a "total waste of time,"

26  because by that point, another ayahuasca group's petition had been pending since August 2017.

27  *Id.* ¶ 30.  Even if just four months of delay could justify that conclusion, the DEA is currently

28  working with that group on the fact-finding necessary to adjudicate its petition.  *See supra* p. 13.

1   Plaintiff also claims that its director chose not to file its petition over concerns that he

2   "would be waiving [his] Fifth Amendment rights to be free of compelled self-incrimination."

3   Stanley Decl. ¶ 26.  But those alleged concerns are simply not credible (or are at least now

4   moot), given that they appear in a declaration in which Stanley freely admits to years of

5   numerous violations of the CSA.  *See supra* p. 7.  In any event, contrary to Plaintiff's claims,

6   applying for an exemption presents no valid Fifth Amendment concern, because the 2009

7   Guidance does not require a petitioner to identify any prior illegal conduct, but instead requires

8   information about the petitioner's future plans.  *See, e.g.*, *supra* n.2 (2009 Guidance) (requesting

9   the name of the controlled substance the party "wishes to use" and details about its "anticipated"

10   handling of the substance).  Plaintiff also states that it did not want to stop using ayahuasca while

11   its petition was pending.  Stanley Decl. ¶ 27.  In effect, Arizona Yagé prioritized its desire to

12   continue using ayahuasca instead of applying for an exemption.  That choice may reflect hope in

13   the aphorism that it is often easier to seek forgiveness than it is to get permission.  But it does not

14   reflect much effort to comply with the CSA or the DEA's petition process.

15   **C.      The Court Lacks Subject-Matter Jurisdiction Under 21 U.S.C. § 877**

16   As explained above, Plaintiff's repeated claims that the DEA has "denied" Plaintiff a

17   RFRA exemption are false.  But even if that were true, Plaintiff's claim in this case would still be

18   unlikely to succeed because jurisdiction to hear that "denial" would lie only in a United States

19   Court of Appeals.  21 U.S.C. § 877.

20   The exclusive jurisdiction of the courts of appeals over the DEA's "final determinations,

21   findings, and conclusions" is well-established.  *See, e.g.*, *John Doe, Inc. v. DEA*, 484 F.3d 561,

22   568-69 (D.C. Cir. 2007) (Court of Appeals had exclusive jurisdiction over statutory and

23   constitutional challenge to DEA's controlled substances import "permit denial").  Jurisdiction

24   over the DEA's alleged "denial of regulatory services" to Plaintiff, FASC ¶ 72, would plainly

25   exist only in a Court of Appeals if Plaintiff had exhausted its administrative remedies.

26   This Court therefore should not reward Plaintiff's attempt to perform an end-run around

27   section 877 by refusing to file a petition with the DEA.  Doing so would "encourage[] forum

28   shopping and encourage[] dissatisfied claimants to 'jump the gun' by going directly to the

district court to develop their case instead of exhausting their administrative remedies before the agency." *Doe*, 484 F.3d at 570.  Allowing litigants to circumvent § 877 also "encourages 'duplicative and potentially conflicting review, and the delay and expense incidental thereto.'" *Id.*  To the extent Plaintiff's challenge is judicially reviewable at all, the proper forum for that review is the Court of Appeals after administrative exhaustion.

### D.  Plaintiff's RFRA Claim Is Unlikely to Succeed on Its Merits

Plaintiff asks this Court to grant it a blanket exemption from the prohibitions and regulations applicable to Schedule I controlled substances on the basis of a few self-serving exhibits attached to a dilatory emergency motion and the rulings in *O Centro* and *CHLQ*, which are now more than a decade old.  These materials not only fall far short of the robust record that would have been before a Court of Appeals had Plaintiff exhausted its administrative remedies, they also fall far short of showing a likelihood of success on the merits.

Critically, Plaintiff's motion ignores that, by its terms, RFRA requires the Court to analyze the alleged burden imposed by a governmental action upon an individual's religious exercise "to the person."  42 U.S.C. § 2000bb-1(b).  Thus, to show likelihood of success on its RFRA claim, Plaintiff "cannot simply point to other groups who have won accommodations for the sacramental use of . . . hoasca and say 'we'll have what they're having,'" particularly when there are "material differences between those particular groups and their sacramental practices on the one hand, and the [plaintiff's allegedly] religious exercise, on the other."  *United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016).

### 1.  Plaintiff Has Not Made a *Prima Facie* Case Under RFRA

To establish a *prima facie* claim under RFRA, a plaintiff must "demonstrate that the government's action was a (1) substantial burden on a (2) sincere (3) exercise of religion."  *Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1145 (N.D. Cal. 2007) (citing 42 U.S.C. § 2000bb-1(b)), *aff'd*, 365 F. App'x 817 (9th Cir. 2010).

#### a.  Sincere Exercise of Religion

Insufficient evidence accompanies Plaintiff's motion to conclude that Plaintiff is likely to succeed in proving that its and its members' use of ayahuasca is a sincere exercise of religion,

rather than a recreational or other secular activity.  The sincerity element of a *prima facie* case

under RFRA must be satisfied by each person seeking relief.  *See* 42 U.S.C. § 2000bb-1(b); *see*

*also United States v. Vasquez-Ramos*, 531 F.3d 987, 993 (9th Cir. 2008) ("The burden on

religion prohibited by RFRA . . . 'is written in terms of what the government cannot do to an

individual, not in terms of what an individual can exact from the government[.]'").

Here, there is no evidence from which the Court could draw any conclusions about the

sincerity of Plaintiff's alleged members, which Plaintiff must prove.  Arizona Yagé claims that it

"has associational standing to assert *the claims of its members* to receive sacramental Ayahuasca

in AYA ceremonies, because their Free Exercise is substantially burdened[.]"  FASC ¶ 60

(emphasis added).  The Supreme Court's test for associational standing requires the entity

bringing suit to demonstrate, among other things, that "its members would otherwise have

standing to sue in their own right."  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S.

333, 343 (1977).  Plaintiff's website and filings do not indicate that it uses any screening process

to determine the sincerity of the religious beliefs of the hundreds upon hundreds who pay for its

ayahuasca.  *Cf. CHLQ*, 615 F. Supp. 2d at 1212, 126-17 (plaintiff had about 120 members and a

"screening process" in which it "attempts to select only those who are serious about the Santo

Daime religion" by requiring "a serious commitment of time and energy from members").  It is

therefore impossible to conclude that Plaintiff's members are using ayahuasca for religious

reasons.  *See, e.g.*, *United States v. Meyers,* 95 F.3d 1475, 1484 (10th Cir. 1996) (affirming

denial of RFRA claim because plaintiff's "beliefs more accurately espouse a philosophy and/or

way of life rather than a 'religion'").  Indeed, even in Arizona Yagé's own poll, only 16% of the

1,430 people surveyed responded and said that using ayahuasca was "religious or spiritual."  *See*

Stanley Decl. ¶¶ 19-20; ECF No. 33-8 at 3.  This is not enough for a preliminary injunction.

As for Arizona Yagé itself, it claims to be a "person" with "corporate standing" to assert

a RFRA claim in its own right.  PI Mot. at 13; FASC ¶ 33.  There are significant reasons to doubt

Arizona Yagé's own sincerity given the commercial nature of its website.  But even assuming it

could establish its own sincerity, that would not also prove that any of the other "person[s]" in its

alleged membership are also using ayahuasca as part of a sincere religious practice or that the

CSA substantially burdens that practice.  Nor would it justify the broad relief Plaintiff seeks, which would apply to its alleged members.  *See* ECF No. 33-16.[7]

### b.    Substantial Burden

Plaintiff has also failed to demonstrate that it is likely to succeed in showing that the CSA substantially burdens its or its members' exercise of religion.

At the outset, Plaintiff mischaracterizes the alleged burden on its alleged religious practice as being a "total prohibition on AYA's use of Ayahuasca."  PI Mot. at 15.  As Plaintiff is aware, FASC ¶ 101, the government has a process by which a party may seek a religious-based exemption from the CSA and its implementing regulations.  *See supra* pp. 5-7.  To cast the "burden" as a "total prohibition," therefore, is incorrect.  More accurately, the CSA's prohibitions on Schedule I controlled substances function as a prophylactic measure that remains in place until an applicant is able to demonstrate entitlement under RFRA and that it can comply with the CSA's registration requirements.  *See supra* pp. 3-4.  As a result, the question here is not whether a "total prohibition" on Plaintiff's ayahuasca use constitutes a substantial burden; instead, the question is whether Plaintiff can show that the regulatory requirement that it seek an exemption from the CSA through the administrative process (and refrain from consuming ayahuasca in the meantime) imposes a substantial burden.[8]

Plaintiff has not demonstrated that it is likely to make this showing.  As the Ninth Circuit has explained, under RFRA there are only two ways that a plaintiff can demonstrate a substantial

---

[7]    This case is therefore distinguishable from *Burwell v. Hobby Lobby*, upon which Plaintiff mistakenly relies.  PI Mot. at 13.  There, the Supreme Court concluded that three for-profit corporations qualified as "person[s]" under RFRA, and as such, could not be required to "provide health-insurance coverage for methods of contraception that violate the sincerely held religious beliefs of the companies' *owners*."  573 U.S. 682, 689-91 (2014) (emphasis added). The plaintiff-corporations were not also attempting to vindicate any sincere religious beliefs of their customers or employees, who were not regulated by the contraception mandate.  *See id.*  In contrast here, Arizona Yagé has asserted associational standing to vindicate the distinct "claims of its members to receive sacramental Ayahuasca in AYA ceremonies."  FASC ¶ 60.

[8]    For this reason, this case is not simply a replay of *O Centro* and *CHLQ,* as Plaintiff suggests.  *See, e.g.*, PI Mot. at 3-11, 13.  The holding in both of those cases—that the dangerousness of Schedule I substances does not *categorically* preclude any consideration of individualized exemptions to the CSA's ban on such substances—is not disputed or at issue here. *See supra* pp. 4-5 (explaining that neither *O Centro* nor *CHLQ* decided that the DEA could not regulate substances containing DMT).

burden: either "when individuals are forced to choose between following the tenets of their religion and receiving a government benefit (*Sherbert*) or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions (*Yoder*)."  *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1069-70 (9th Cir. 2008).  Arizona Yagé does not claim the former and cannot satisfy the latter.  The scope of the injunction Plaintiff seeks far exceeds the religious justification it proffers.  Plaintiff alleges that its religious beliefs require its congregants to consume ayahuasca as a sacrament during its ceremonies.  PI Mot. at 5.  And yet the relief Plaintiff seeks would enjoin not just the CSA's *prohibition* on Plaintiff's use of ayahuasca, but also enjoin the DEA from "in any way interfering" or otherwise regulating Arizona Yage's "importation, storage, distribution, and use of Ayahuasca tea or its herbal constituents." Proposed Order Granting Prelim. Inj. at 1 (Aug. 12, 2020), ECF No. 33-16; *cf.*, *Gonzales*, 474 F. Supp. 2d at 1147 (finding that plaintiff failed to make RFRA *prima facie* case because "[n]othing before the court explains why the asserted sacraments of the Rastafari faith require complete immunity from the federal government's drug laws").  Indeed, Arizona Yage's extensive admissions that it has been holding ayahuasca ceremonies for years and will continue to do so, *see supra* p. 7, makes clear that it has in fact not been "coerced to act contrary to [its] religious beliefs by the threat of civil or criminal sanctions," *Navajo Nation*, 535 F.3d at 1069-70.

### 2. The CSA's Prohibitions and Regulations Further Compelling Governmental Interests Through the Least Restrictive Means

Even if Plaintiff had sufficiently pled a *prima facie* case under RFRA, Plaintiff still cannot show likelihood of success on its claim because enforcement of the CSA furthers at least three compelling governmental interests by the least restrictive means.

### i. Protecting Health and Safety Until a Group Obtains a RFRA Exemption and Is Registered

The Supreme Court has recognized that "Schedule I substances such as DMT are exceptionally dangerous."  *O Centro*, 546 U.S. at 430-31 ("We do not doubt the validity of . . . the general interest in promoting public health and safety be enforcing the Controlled Substances Act[.]"); *see also CHLQ*, 615 F. Supp. 2d at 1217 ("There is no question that Diame tea could be dangerous if used improperly.")  The government thus has a compelling interest in protecting

public health and safety from the risks associated with the consumption of ayahuasca by groups like Plaintiff that have yet to demonstrate that application of DEA regulations to their practices would substantially interfere with sincere religious exercise.  Despite Plaintiff's assurances that ayahuasca is "safe," PI Mot. at 17, some anecdotal accounts suggest otherwise.[9]

The government's interest in health and safety is particularly compelling when it comes to protecting special populations including, minors, pregnant women and developing fetuses, and persons with history of substance abuse.  That concern is heightened here since Plaintiff does not state whether it allows minors to participate in its ayahuasca ceremonies and no such restriction appears on its website or in its exhibits.  In addition, Plaintiff asserts that ayahuasca is safe based on an alleged expert opinion that suggests ayahuasca is safe for "adolescents."  *See* ECF No. 33-11 at 4-5, 7.  Yet the Ninth Circuit has recognized that in particular there is a "compelling interest in protecting the physical and psychological well-being of minors" from the hazards of Schedule I controlled substances.  *Christie*, 825 F.3d at 1057 (citation omitted); *cf. CHLQ*, 615 F. Supp. 2d at 1217 ("There is no evidence that the church allows children to drink enough Daime tea to experience psychoactive effects.").

### ii.    Preventing the Diversion of Ayahuasca to Non-Religious Use

The Ninth Circuit has stated that it has "little trouble concluding that the government has a compelling interest in preventing drugs set aside for sacramental use from being diverted to non-religious, recreational users."  *Christie*, 825 F.3d at 1057.  The anti-diversion interest here is compelling on the limited available facts of this case.

First, there is a significant and growing illicit market in DMT and ayahuasca.  Especially in the last decade, interest in and consumption of ayahuasca for non-religious purposes have seen a remarkable increase in the United States and elsewhere, as has ayahuasca tourism to the Amazon.  *See, e.g*., Ariel Levy, "The Drug of Choice for the Age of Kale," *The New Yorker*

---

[9]    *See, e.g.,* Ariel Levy, "The Drug of Choice for the Age of Kale," *The New Yorker* (Sept. 5, 2016), *see* https://www.newyorker.com/magazine/2016/09/12/the-ayahuasca-boom-in-the-u-s (last visited Aug. 18, 2020).

(Sept. 5, 2016);[10] Kira Salak, "Ayahuasca Healing in Peru," kirasalack.com.[11]  In fact, the wave of "international ayahuasca tourism" has prompted concern over the commodification and cultural appropriation of indigenous cultural practices by profit-minded westerners.  *See, e.g.*, Tupper, Kenneth W., "The Economics of Ayahuasca:  Money, Markets, and the Value of the Vine," in Labate, Beatriz Caiuby*, et al*., eds., *The World Ayahuasca Diaspora: Reinventions and Controversies* (Routledge, Ltd. 2017).  Increasing numbers of vendors offer ayahuasca experiences on the internet to those seeking to self-medicate for conditions ranging from PTSD to cancer.  *See, e.g.,* Rachel Harris, *Listening to Ayahuasca:  New Hope for Depression, Addiction, PTSD, and Anxiety* (New World Library 2017).

Second, given the burgeoning ayahuasca market, what is known about Plaintiff's particular practices keenly evokes the concerns discussed in *Christie*.  *See* 825 F.3d at 1057. There, the plaintiff's "distribution methods create[] a realistic probability that [ayahuasca] intended for members of the Ministry would be distributed instead to outsiders who were merely feigning membership in the Ministry and adherence to its religious tenets."  *Id*.  The Ninth Circuit concluded that an unacceptable risk of diversion exists where, as here, "[t]here is no evidence of how [an alleged church] determined whether persons at the . . . services were sincere, nor is there evidence of how [the alleged church] dealt with an attendee . . . found to be insincere."  *United States v. Christie*, No. CR 10-00384 01 LEK, 2013 WL 6860822, at *8 (D. Haw. Dec. 30, 2013), *aff'd*, 825 F.3d 1048 (9th Cir. 2016).  The group at issue in *Christie* had a "barebones membership requirement" that was "not enforced as a meaningful check on who could receive" the controlled substance it distributed.  *Christie*, 825 F.3d at 1063.  Instead, the alleged church "simply gave [the controlled substance] to those who showed up, took their money, and sent them on their way."  *Id.*  So too here: Arizona Yagé's website and filings

---

[10]     *See* https://www.newyorker.com/magazine/2016/09/12/the-ayahuasca-boom-in-the-u-s ("If cocaine expressed and amplified the speedy, greedy ethos of the nineteen-eighties, ayahuasca reflects our present moment—what we might call the Age of Kale. It is a time characterized by wellness cravings, when many Americans are eager for things like mindfulness, detoxification, and organic produce, and we are willing to suffer for our soulfulness.").

[11]     *See* http://www.kirasalak.com/Ayahuasca.html (last visited Aug. 18, 2020).

indicate that any member of the public can simply pay a one-time fee, fill out a questionnaire, and receive ayahuasca. *See generally* Stanley Decl.

Third, the government's interest in anti-diversion is compelling also where the applicant for an exemption is producing or obtaining the controlled substance in "large quantities" that indicate "it is far more likely than not that the [substance] cold have been diverted to non-adherents." *United States v. Lepp*, No. CR 04–00317 MHP, 2008 WL 3843283 (N.D. Cal. Aug. 14, 2008); *see also Christie*, 2013 WL 6860822, at *10 (observing that "*Lepp* distinguished *O Centro*, which only involved three drums of hoasca, as opposed to the thousands of marijuana plants at issue in *Lepp*").  Plaintiff has provided no information on these important points.  But Arizona Yagé has compared itself to its co-Plaintiff Villanueva and his Vine of Light Church, Stanley Decl. ¶¶ 35, 39-40, which was recently found to be harboring 91 pounds of ayahuasca and enough cash, customer lists, price lists, ledgers, and cell phone records to indicate years of DMT sales, Maricopa PI Opp'n at 13, suggesting a business rather than religious use.

### iii.     Requiring Compliance with the CSA's Regulatory Scheme

The government also has a compelling interest in ensuring that persons granted exemptions from the otherwise general applicability of the CSA receive such exemptions only after rigorous review pursuant to applicable regulations and administrative processes.  The administrative process is best equipped to conduct the intensive, fact-specific inquiry necessary for evaluating requests for exemption from the CSA and its implementing regulations.  That process provides the best and least restrictive means for collecting and evaluating a sufficiently detailed and complete body of information as is necessary to ensure the compelling governmental interests while considering individual requests for religious use exemptions.

Plaintiff's motion illustrates the compelling nature of this interest.  Setting aside (or, indeed, confirming) that emergency litigation is a poor substitute for a settled regulatory process, Plaintiff has not provided anywhere near sufficient information to determine whether it should be granted an exemption.  For instance, Plaintiff has provided no information regarding the quantity of ayahuasca sought to be imported, distributed, processed, or consumed; or the adequacy of security measures for safeguarding stored illicit substances.  Instead, Arizona Yage seeks an

injunction barring the DEA from "in any way interfering" with its "importation, storage, distribution, and use of Ayahuasca tea." Proposed Order Granting Prelim. Inj. at 1 (Aug. 12, 2020), ECF No. 33-16.  In contrast, the churches in *O Centro* and *CHLQ* entered into agreements with DEA under which imported tea could be tracked from its entry into the United States until its ultimate consumption, thus preventing diversion.  This predictability enabled DEA to accommodate the churches' religious needs within the regulatory framework enforced by DEA to minimize the risk of diversion.

## II. PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUBSTANTIAL AND IMMEDIATE IRREPARABLE HARM

A preliminary injunction serves the "limited purpose" of "preserv[ing] the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  Accordingly, "[a]n essential prerequisite" before granting a preliminary injunction is a showing that irreparable injury is likely in the absence of an injunction. *See Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985); *Winter*, 555 U.S. at 19.  A mere "possibility" of repairable injury is not enough. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*).  The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22.

Plaintiff claims that absent its requested injunction, it will suffer irreparable harm "due to the stifling of the minister and congregation's right of Free Exercise," and due to risk of COVID-19 infection.  PI Mot. at 20-22.  Neither of these putative harms are both sufficiently likely and irreparable, as they must be to warrant a preliminary injunction.

First, Plaintiff has failed to demonstrate the necessary genuine threat of imminent prosecution that is required for Article III standing, and its frank admissions of continuing ayahuasca use undermine its claim to have been "stifled."  Plaintiff has therefore also failed to make the more difficult showing that any such harm is irreparable. *See, e.g.*, *Lawson v. Hill*, 368 F.3d 955, 959 (7th Cir. 2004) ("Even if we are wrong to suppose the risk of prosecution too

1  remote to confer standing to sue . . . the district judge was right not to enter an injunction. . . .

2  [A]n injunction is an extraordinary remedy.").

3      Second, Plaintiff's years-long delay in seeking a preliminary injunction undermines any

4  argument that it needs urgent relief to prevent irreparable harm.  While a preliminary injunction

5  may be justified by an "urgent need for speedy action to protect the plaintiff's rights . . . [b]y

6  sleeping on its rights a plaintiff demonstrates the lack of need for speedy action[.]"  *Lydo*

7  *Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984); *see, e.g.*, *Universal*

8  *Semiconductor, Inc. v. Tuoi Vo*, No. 5:16-CV-04778-EJD, 2016 WL 9211685, at *2 (N.D. Cal.

9  Nov. 29, 2016) (finding that plaintiff's unexplained delay "over the past month" to be "fatal").

10     Here, despite being founded in 2015, Arizona Yagé, waited until August 2016 before

11 starting a lackadaisical 14-month effort to put together an exemption petition, only to then

12 abandon that effort at the end of 2017.  *See supra* p. 8.  Arizona Yagé then waited another *28*

13 *months* before filing the original complaint in this case in May 2020.  ECF No. 1.  Even if it had

14 moved for a preliminary injunction at that point, its delay would have been fatal, but instead,

15 Plaintiff then waited yet another three months before doing so.  ECF No. 33.  Plaintiff's chronic

16 delays in seeking emergency relief for the alleged stifling of its claimed rights illustrates that not

17 even Plaintiff is convinced it is in danger of suffering irreparable harm.

18     Third and finally, Plaintiff's alleged injuries are not irreparable.  Plaintiff claims

19 irreparable harm to its "Free Exercise" rights, PI Mot. at 20, but asserting a Free Exercise injury

20 does not automatically equal irreparable harm, *see S. Bay United Pentecostal Church v. Newsom*,

21 959 F.3d 938, 940 (9th Cir. 2020), and in any event, the Free Exercise Clause does not prohibit

22 enforcement of the CSA's generally applicable and neutral regulation of controlled substances,

23 including ayahuasca, *see O Centro Espirita Beneficiente Uniao do Vegetal v. Mukasey*, No. 00-

24 1647, 2008 WL 11451470, at *1-3 (D.N.M. June 16, 2008) (following *Employment Division v.*

25 *Smith*, 494 U.S. 872 (1990)).

26     Finally, Plaintiff alleges that if its members are arrested, charged, convicted, and

27 imprisoned as a result of their ayahuasca use, they will catch COVID-19 and suffer physical

28 injury and even death.  *See* Stanley Decl. ¶¶ 20-22.  These wildly speculative allegations are not

in the FASC.  In any event, there is no immediate irreparable injury since, even if Plaintiff or its members were charged, they would have an opportunity to defend against the charges (and imprisonment), as well as to oppose detention pending the resolution of any criminal action based on circumstances related to the pandemic.  *See, e.g.*, *United States v. Stephens*, --- F. Supp. 3d ---, No. 15-cr-95 (AJN), 2020 WL 1295155, at *1-3 (S.D.N.Y. Mar. 19, 2020) (pre-trial detention litigation regarding COVID-19).

## III.   THE BALANCE OF THE EQUITIES WEIGHS HEAVILY AGAINST A PRELIMINARY INJUNCTION

Finally, Arizona Yagé has failed to show that the balance of the equities weighs in favor of the blanket exemption it demands:  the injunction would not only enjoin the CSA's ban on ayahuasca but also any DEA regulation of its importation, storage, distribution, or use of ayahuasca.  Plaintiff has demonstrated no legitimate need for such an injunction, while if granted, it would endanger public health while increasing the chances that a Schedule I substance will be diverted to the growing recreational ayahuasca market.

### CONCLUSION

For the forgoing reasons, Plaintiff's motion for preliminary injunction should be denied.


DATED: August 19, 2020                    Respectfully submitted,


                                          ETHAN P. DAVIS
                                          Acting Assistant Attorney General

                                          BRIGHAM J. BOWEN
                                          Assistant Branch Director

                                          */s/  Kevin P. Hancock*
                                          KEVIN P. HANCOCK
                                          Trial Attorney
                                          U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L Street NW
                                          Washington, DC 20005
                                          (202) 514-3183 (phone)
                                          (202) 616-8470 (fax)
                                          kevin.p.hancock@usdoj.gov

                                          *Counsel for the Federal Agency Defendants*