1  CHARLES CARREON (CSB # 127139)
2  3241 E. Blacklidge Drive
   Tucson, Arizona 85716
3  Tel:  628-227-4059
   Email: chascarreon@gmail.com
4
5  Attorney for Plaintiffs Arizona Yagé Assembly,
   North American Association of Visionary Churches, and
6  Clay Villanueva

7             UNITED STATES DISTRICT COURT

8             NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 9  ARIZONA YAGÉ ASSEMBLY,<br>NORTH AMERICAN ASSOCIATION<br>10 OF VISIONARY CHURCHES, and<br>CLAY VILLANUEVA,<br>11<br>12         Plaintiffs,<br>13    vs.<br>14<br>WILLIAM BARR, Attorney General of<br>15 the United States; UTTAM DHILLON,<br>Acting Administrator of the U.S. Drug<br>16 Enforcement Administration; CHAD F.<br>WOLF, Acting Secretary of the Dept. of<br>17 Homeland Security; MARK A.<br>MORGAN, Acting Commissioner of U.S.<br>18 Customs and Border Protection;<br>THOMAS PREVOZNIK, Deputy<br>19 Assistant Administrator of the DEA Dept.<br>20 of Diversion Control, in his personal<br>capacity; the UNITED STATES OF<br>21 AMERICA; the STATE OF ARIZONA;<br>MARK BRNOVICH, Arizona Attorney<br>22 General; MARICOPA COUNTY, a<br>political subdivision of the State of<br>23 Arizona; and, MATTHEW SHAY,<br>24<br>           Defendants.<br>25 | Case No.: 3:20-CV-03098-WHO<br><br>**PLAINTIFFS'CONSOLIDATED**<br>**REPLY BRIEF IN SUPPORT OF**<br>**CLAY VILLANUEVA'S MOTION FOR**<br>**PRELIMINARY INJUNCTION,**<br>**RESPONDING TO OPPOSITION**<br>**MEMORANDA OF U.S. AGENCY**<br>**DEFENDANTS, MARICOPA**<br>**COUNTY, AND ARIZONA**<br>**ATTORNEY GENERAL**<br><br>Date:  September 9, 2020<br>Time:  2:00 P.M.<br>Courtroom: 2 (17th floor) |

_____._____
**CASE # 3:20-cv-03098-WHO**
**PLAINTIFFS'CONSOLIDATED REPLY BRIEF IN SUPPORT OF NAAVC AND CLAY VILLANUEVA'S MOTION FOR**
**PRELIMINARY INJUNCTION, RESPONDING TO ALL DEFENDANTS' OPPOSITION MEMORANDA**

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. SUMMARY OF ARGUMENT

Plaintiffs North American Association of Visionary Churches ("NAAVC") and Clay Villanueva ("Villanueva") will prevail at jury trial on their Section 1983 claim, based upon facts accurately alleged in the First Amended and Supplemental Complaint ("FASC"), and those presented in the Clay Villanueva and Scott Stanley Declarations, and most recently, those gleaned from the Declaration of Matthew Shay ("Shay," Docket # 39-1) and DEA Agent Marco Paddy ("Agent Paddy," Docket # 41-1), confirming the existence of a conspiracy that has been backdated to the date of January 8, 2020 by Agent Paddy's fabrication of an anonymous tip, that for purposes of jury comprehension, counsel proposes to refer to at trial as "Operation Fig-Leaf," to emphasize the contrived nature of the deception, that presents an utterly unlikely happenstance – an anonymous tip about Villanueva received on an unidentified "DEA tip line" at 4:48 PM on January 8, 2020, the very day before NAAVC emailed the DEA Letter to seven DOJ lawyers and the Office of Legal Counsel.  The cover story that the DEA, Agent Paddy, and Shay offer is a mere fig leaf, emphasizing rather than concealing the naked retaliatory intent that provoked the May 19th raid on Villanueva's home and Vine of Light Church.  This act of witness tampering established personal jurisdiction over all defendants, based upon their knowing participation in a scheme to injure Villanueva's civil rights, even though they may have been personally unaware of Villanueva's status as a litigant in this California action.  "In for a dime, in for a dollar."  Once Agent Paddy and Shay, and their respective agencies, decided to join in for the DEA's version of a "night ride" to put the fear of Government in the visionary religionists, they became subject to jurisdiction for all the foreseen and unforeseen effects of their constitutional torts.  The untimely venue argument of the DEA is rebutted by the Declaration of Scott Stanley submitted herewith, establishing that he put 120,000 miles on the California roads last year, ministering to over 800 AYA congregants in the State of California, and that the purposes of NAAVC

---

CASE # 3:20-cv-03098-WHO
**PLAINTIFFS' CONSOLIDATED REPLY BRIEF IN SUPPORT OF NAAVC AND CLAY VILLANUEVA'S MOTION FOR PRELIMINARY INJUNCTION, RESPONDING TO ALL DEFENDANTS' OPPOSITION MEMORANDA**

are closely rooted to its state of incorporation.  Plaintiffs will prevail at trial.  NAAVC and Villanueva's motion should be granted.

**2.   ARGUMENT**

In September 2019, NAAVC launched a petition at Change.org entitled "Stop the DEA from Regulating Visionary Religions."  (Carreon Dec. ¶ 3; Exhibit 1.)  The focus of the Petition was to send the DEA a letter dated January 8, 2020, that ultimately was sent to the DEA by mail on that date and delivered on January 10, 2020, addressed to William T. McDermott, Assistant Administrator Diversion Control Division Attn: Liaison and Policy Section Drug Enforcement Administration, 8701 Morrissette Drive Springfield, Virginia 22152.  (Docket # 22-5, the "DEA Letter;" Exhibit 2, USPS delivery confirmation.)

On January 9, 2020, NAAVC sent an email attaching the DEA Letter to the following email addresses:[1]

- ODLL@usdoj.gov,
- ODLP@usdoj.gov,
- Thomas.W.Prevoznik@usdoj.gov,
- Melissa.A.Kellstrom@usdoj.gov,
- Diane.M.Parks@usdoj.gov,
- Aziz.Elkholy@usdoj.gov
- Scott.Brinks@usdoj.gov

---

[1] When Attorney General Jeff Sessions issued his Memorandum on Federal Law Protections for Religious Liberty (the "AG's Religious Liberty Memo;" FASC ¶ 118; Docket # 22-5, page 50- ) pursuant to Executive Order 13798 (Docket # 22-5, page 47), binding every administrative agency including the DEA and the DOJ to its provisions, he also issued an Implementation Memorandum dated October 6 2019, and sent it to every U.S. Attorney in the nation, who presumably distributed it to all of their AUSAs.  The Implementation Memorandum tells interested persons to contact the Office of Legal Policy: "Any questions about the interpretive guidance or this memorandum should be addressed to the Office of Legal Policy, U.S. Department of Justice, 950 Pennsylvania A venue N. W ., Washington, D.C. 20530, phone (202) 514-4601."  (Docket # 22-5, page 100.)

- Sarah.C.Boblenz@usdoj.gov

These attorneys collectively have now opened the email attaching the DEA Letter (the "Prevoznik Email") at least 44 times. (Carreon Dec. ¶ 4; Exhibit 3, the email and the opening-tracking report.) The lawyers first began opening the Prevoznik Email on January 15, 2020, and it is a near-certainty that some or all of these attorneys discussed the contents of the DEA Letter in additional email exchanges with each other. (Carreon Dec. ¶ 4.) They are the most likely sources of the discriminatory animus that reached out through Agent Paddy to touch Villanueva in the privacy of his home, in order to make him aware of the power of the agency he was challenging through NAAVC activities.

DEA employee Loren T. Miller is at pains to suggest that the Prevoznik Email received no attention from anyone. (Docket # 41-2.) DEA lawyer Scott Brinks filed a declaration in support of the DEA's motion to stay that intends to issue a Notice of Intended Rulemaking during some unspecified time period in the future (Docket # 19-1); however, Brinks does not mention receiving the DEA Letter, which in all likelihood, was the only conceivable stimulus to reconsider the Guidance that the DEA had received in many years. (See, Brinks Dec., generally, Docket # 19-1). The DEA's motion to stay assured the Court with bland promises that the DEA was acting on the very problems that NAAVC had been harping on for nearly the last year, and would soon render its concerns moot. However, that meritless motion is now revealed as an effort to delay disclosing the inherently unbelievable tale told by Agent Paddy and Shay in their declarations (Docket # 41-1 and # 39-1, respectively).

Shay's Declaration in Opposition to Villanueva's Motion for Preliminary Injunction is notable primarily for its complete ignorance of the requirement for verification of anonymous tips pursuant to the Supreme Court case of *Illinois v. Gates*, 462 U.S. 213, 239 (1983). It will be a treasure trove of cross-examination delights,[2] beginning with Paragraph 17 of his Declaration, where he pronounces the anonymous tip

---

[2] At paragraphs 5 -

_____._____
CASE # 3:20-cv-03098-WHO
**PLAINTIFFS'CONSOLIDATED REPLY BRIEF IN SUPPORT OF NAAVC AND CLAY VILLANUEVA'S MOTION FOR PRELIMINARY INJUNCTION, RESPONDING TO ALL DEFENDANTS' OPPOSITION MEMORANDA**

"valid on its face," thus falling on his face. Such a pronouncement, and a warrant affidavit that embraces the presumption of validity, flies in the face of the precautions set forth in *Illinois v. Gates*:

> Since a tip from an unknown informant is highly suspect, the officer must provide some basis for the magistrate to believe that the tip is true through independent corroboration through police investigation or some other indication of reliability.
>
> *Eres v. Cty. of Alameda*, No. C-96-2094 MHP, 1999 U.S. Dist. LEXIS 1385, at *15 (N.D. Cal. Feb. 2, 1999), *citing Illinois v. Gates*, 462 U.S. at 241-46 (citations omitted).

Having decided to assume that the tip was valid, Shay never called the telephone number that is supposed to be under the redaction mark on the photocopy. Thus, he does not know who the informant was, even though that person was willing to speak with police further. Both of these goals could have been accomplished, and would have brought the investigation and warrant application possibly closer to conformity with the requirements of *Illinois v. Gates*. However, he did not do so. Shay's affidavit concealed from the magistrate that he had deliberately not called an available phone number to end the "anonymity" of the informant. Instead, he exercised clairvoyant powers to see a DMT manufacturing lab for which no physical evidence existed, to discern excessive quantities of medical marijuana being grown behind the walls of Villanueva's home, and trumpeted his conclusory mis-findings of probable cause in precisely the way that has been improper since *Illinois v. Gates* announced the rule:

> An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in Nathanson failed to meet this requirement. ***An officer's statement that "[a]ffiants have received reliable information from a credible person and do believe" that heroin is stored in a home, is likewise inadequate***. *Aguilar v. Texas*, 378 U.S. 108 (1964). As in *Nathanson*, this is ***a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause***. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; ***his action cannot be a mere ratification of the bare conclusions of others***. In order to ensure that such an abdication of the magistrate's duty does not occur, ***courts must continue to conscientiously review the sufficiency of affidavits*** on which

warrants are issued.

*Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 2332-33 (1983) (emphasis added).

Thanks to Shay's deception, this Court does not know if the phone number on the "tip" was a fake, if it went to a burner phone, or if the person who gave the "tip" was actually a friend of a DEA agent, or even another employee of the DEA, planting the tip in order to provide a fig leaf to cover the nakedness of the Government's unlawful actions toward Villanueva. Seeking refuge in the "facial validity" of the-tip-that-must-be-true, Shay is hiding from the truth in the darkness of willful blindness:

> [C]ourts applying the doctrine of willful blindness hold that defendants cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances. The traditional rationale for this doctrine is that defendants who behave in this manner are just as culpable as those who have actual knowledge. *** It is also said that persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts. *** Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C. § 271(b).

*Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766-68 (2011), citing *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (*en banc*).

The doctrine of willful blindness is now accepted as grounds for civil liability in all civil actions, and it parallels the *mens rea* of deliberate or conscious indifference that provides the standard of culpability in a Section 1983 claim. It fits Shay's manner of handling the "anonymous tip" to a "T".

Shay's total conflation of DMT with Ayahuasca in the affidavit was a rank misrepresentation that runs counter to the science presented in Dr. Barbosa's Opinion Letter:

> **Do ayahuasca and dimethyltryptamine have substantially different effects?**
>
> Yes. DMT is a psychedelic and, in humans, is usually administered intravenously, felt nearly instantaneously, and exhausts its powerful effects

> within under a half hour. Regarding intensity of effect, the effects of DMT are estimated to be twice as intense compared to equivalent dosages of ayahuasca. By comparison, ayahuasca is consumed orally, and its effects are slow and progressive, leading to a 4 - 6 hour experience that is more controllable than DMT.

(Barbosa Opinion Letter, Docket #33-11, page 5.)

Shay labeled of all of Villanueva's conduct as a fraudulent scheme in the warrant affidavit, placing all of the references to his religious work in quotation marks, deceptively conflating some vague medical marijuana regulatory improprieties with the idea that "this is a phony religion that Villanueva runs as a cover for drug dealing," which Shay clearly knew was untrue.  This was a dishonest tactic to smear Villanueva in the affidavit and assure Shay of getting a warrant, as was made clear when, after the search was over and he had custodially interrogated Villanueva to his heart's content, he basically told Villanueva he had never had probable cause to search his home in the first place.

The efforts of the DEA, Maricopa County, and Shay to label Villanueva a drug dealer have been based entirely on the results of the unlawful search.  However, they contend that obtaining evidence to use against Villanueva was never their plan.  They could have done a better job of proving that by simply refraining from slandering him.  After all, it is elementary Fourth Amendment law that the evidence found in a search is irrelevant to determining whether there was probable cause to seek a warrant.  But the truth is other than the Government and its co-conspirators contend.  It seeks to gain improper advantage, and exploits it.

 Villanueva was never a drug dealer, and a review of the facts as currently revealed, although still obscured by official deceptions, makes it clear that Villanueva was almost certainly the target of a DEA vendetta, and Shay committed himself to fabricating probable cause to seek a warrant on any possible grounds.  As a result, Shay placed Grail-like faith in a worthless anonymous tip that he'd been warned not to probe. Shay's failure to exercise independent judgment sent him on a mission to concoct

_____._____
**CASE # 3:20-cv-03098-WHO
PLAINTIFFS'CONSOLIDATED REPLY BRIEF IN SUPPORT OF NAAVC AND CLAY VILLANUEVA'S MOTION FOR PRELIMINARY INJUNCTION, RESPONDING TO ALL DEFENDANTS' OPPOSITION MEMORANDA**

probable cause, in the service of which he expanded beyond his bad faith DMT-manufacturing case (that the garbage search had shown to be groundless), to invent a medical marijuana overgrowing case and present it to the magistrate, and get the must-have warrant to search Villanueva's home.

As fascinating as Operation Fig-Leaf and its veil of implausible deniability are, they are not the only way that Villanueva and NAAVC win their Section 1983 claim against the DEA, on which they seek only injunctive relief. The undisputed facts, colored by deception as they remain, will come clear in discovery, and establish "a sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself." *Cabrera v. Martin*, 973 F.2d 735, 744 (9th Cir., 1992).

Maricopa County, Shay and the Arizona AG argue that there is a lack of personal jurisdiction over them; however, in their motions to dismiss on those grounds, they were not candid with the Court. Shay and Maricopa County remained silent, failing to provide any averments to contradict the well-pled allegations of the FASC, which are therefore presumed true on those motions. Now, faced with this Motion for Preliminary Injunction, they have decided to loosen their tongues, but the tale that they have told is naught but deception. Shay and Agent Paddy have fabricated evidence, Shay by contriving probable cause to search Villanueva by validating a toxic tip and making misrepresentations of fact under oath, and Paddy by giving life to the lie that a tip prompted Villanueva's investigation, search and false arrest.

> "[D]eliberately falsifying information during civil investigations which result in the deprivation of protected liberty or property interests may subject [state actors] to § 1983 liability."
>
> *Richter v. Ausmus*, No. 19-cv-08300-WHO, 2020 U.S. Dist. LEXIS 128719, at *10 n.2 (N.D. Cal. July 21, 2020), *quoting Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1115 (9th Cir. 2010).

Thus, the evidence fabrications by Shay and Agent Paddy are further constitutional torts, clearly directed at Villanueva because of his status as a witness in this

litigation. The charge of witness tampering in violation of 18 U.S.C. § 1512 seems to have left the defendants quiet. If so, that is because every trial judge and trial lawyer knows that the very notion of witness tampering is anathema to our system of justice, literally a heinous crime against the instruments of adjudication themselves. Yet that is what plaintiffs came to this Court alleging, and the defendants have now confessed to all but the *mens rea* of their crime, that the coverup makes more plain.

Jurisdiction over the persons of the defendants is proper under *Hanson v. Denckla*, 357 U.S. 235 (1958) and its progeny, because "one who intentionally shoots a bullet into a state is as subject to the judicial jurisdiction of the state as to causes of action arising from the effects of the shot as if he had actually fired the bullet in the state." *Schlussel v. Schlussel*, 141 Cal. App. 3d 194, 197, 190 Cal. Rptr. 95, 96 (1983), *citing Hanson v. Denckla*, 357 U.S. 235 (1958) and *McGee v. International Life Ins. Co.* 355 U.S. 220 (1957). NAAVC, incorporated here, with its place of business here, while litigating in this North District of California Court, drew the lightning that struck Villanueva, and it was not particularized animus towards Villanueva that drove Shay to bend all notion of honesty to obtain the warrant to search Villanueva's home, but rather the desire to "kneecap" NAAVC by terrorizing its Board and causing the Board Members to "pull in their horns."

There is no venue issue properly before the Court at this stage. Venue is generally waived if not raised at the first opportunity. *Eg., Fox Factory, Inc. v. SRAM, LLC*, No. 3:16-cv-00506-WHO, 2017 U.S. Dist. LEXIS 168311, at *4 (N.D. Cal. Oct. 11, 2017) (motion to change venue denied because not raised in answer). The DEA's motion to stay, the first-filed document, raised no objection to venue, and no motion under Rule 12 to object to venue has been filed. In light of Brinks' culpable non-disclosure of his receipt of the DEA Letter via email when signing his declaration in support of the DEA's motion for stay, the DEA should not be permitted to elect venue. Parceling out its objections to the pleadings will not advance the progress of the action, and the grounds for venue have been properly alleged as to NAAVC, based on its place of incorporation

and only place of business in California. (Stanley Dec. ¶ 8.) It is here in California that NAAVC intends to begin its ministry, in large part because there are more visionary churches in California than in any other state in the Union. Seizures of Ayahuasca Sacrament arriving through the mails in California, as happened to NAAVC and AYA, is increasing. (Stanley Dec. ¶ 9.) Arizona Yage Assembly, for example, has a very large California congregation that it serves through the California corporation. (Stanley Dec. ¶¶ 3 - 7.) Stanley spends enormous amounts of time and energy ministering to California residents, driving approximately 120,000 miles in California last year, and conducting many ceremonies in the State. (Stanley Dec. ¶¶ 3 - 7.) Both NAAVC and AYA are deeply rooted in the State of California, and Stanley's nominal address in Arizona is no indication of where he may be on any given day, because that could be Peru, California, Oregon, or any of another half-dozen states where AYA practitioners are joining together in Free Exercise. (Stanley Dec. ¶¶ 2.) The state of incorporation is fundamental to the corporate identity. It is chosen with care, to take advantage of the laws of the state of incorporation, and California is a leader in the decriminalization of visionary medicines. The City of Oakland has been in the forefront of a movement to mainstream the practice of visionary religion by declining assistance for enforcement of laws imposing criminal penalties for the use and possession of Entheogenic Plants by adults, and making investigations for such possession "the lowest law enforcement priority." Accordingly, NAAVC's incorporation in California will dovetail with the goal of placing the distribution facility in a location where local laws will be in pre-existing harmony with NAAVC's corporate plans. Thus, the argument of defendants, that there is no ground for NAAVC venue, is simply grasping at straws.

      As for Villanueva, he did not pick this venue. The defendants chose it for him when they identified him as the pressure point to press on NAAVC in this litigation. But for his position on the NAAVC Board, Agent Paddy would not have fabricated a tip to accuse Villanueva of selling DMT, and Shay would not called the tip "valid on its face" and proceeded with robotic commitment to concoct a false affidavit averring the

existence of probable cause that was entirely lacking.  As clearly as if he had been felled by a bullet in California, the search against him was executed to hurt NAAVC here.  Accordingly, venue is proper in this Court, that has unquestionable jurisdiction over those who tamper with its witnesses.

3. **CONCLUSION**

    The Court should grant NAAVC and Villanueva's motion for preliminary injunction.

Dated:  August 19, 2020        CHARLES CARREON, ESQ.

                                  By: /s/Charles Carreon
                                  CHARLES CARREON (127139)
                                  Attorney for Plaintiffs
                                  Arizona Yagé Assembly.
                                  North American Association of Visionary Churches,
                                  Clay Villanueva