CHARLES CARREON (CSB # 127139)
3241 E. Blacklidge Drive
Tucson, Arizona 85716
Tel: 628-227-4059
Email: chascarreon@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches, and
Clay Villanueva

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, NORTH AMERICAN ASSOCIATION OF VISIONARY CHURCHES, and CLAY VILLANUEVA,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>WILLIAM BARR, Attorney General of the United States; UTTAM DHILLON, Acting Administrator of the U.S. Drug Enforcement Administration; CHAD F. WOLF, Acting Secretary of the Dept. of Homeland Security; MARK A. MORGAN, Acting Commissioner of U.S. Customs and Border Protection; THOMAS PREVOZNIK, Deputy Assistant Administrator of the DEA Dept. of Diversion Control, in his personal capacity; the UNITED STATES OF AMERICA; the STATE OF ARIZONA; MARK BRNOVICH, Arizona Attorney General; MARICOPA COUNTY, a political subdivision of the State of Arizona; and, MATTHEW SHAY,<br><br>　　　　Defendants. | Case No.: 3:20-CV-03098-WHO<br><br>DECLARATION OF CHARLES CARREON IN SUPPORT OF AYA'S REPLY BRIEF IN SUPPORT OF AYA'S MOTION FOR PRELIMINARY INJUNCTION, RESPONDING TO THE OPPOSITION OF ALL FEDERAL AGENCY DEFENDANTS<br><br>Date: September 9, 2020<br>Time: 2:00 P.M.<br>Courtroom: 2 (17th floor) |

Charles Carreon declares and affirms:

**1.** I am an attorney licensed to practice before all courts in the State of California and a member of the bar of this Court. I am counsel of record for plaintiff Arizona Yagé

---

CASE # 3:20-cv-03098-WHO
DECLARATION OF CHARLES CARREON IN SUPPORT OF AYA'S REPLY BRIEF
1

Assembly ("AYA"), and make this declaration in support of the motion for preliminary injunction of plaintiff Arizona Yage Assembly ("AYA") for an order enjoining the Drug Enforcement Administration (the "DEA") and U.S. Customs and Border Protection ("CBP") from enforcing the Controlled Substance Act ("CSA") prohibitions on possession of Ayahuasca tea against AYA.  Ayahuasca is AYA's sacramental communion substance, and it contains a small amount of Dimethyltryptaline ("DMT").[1]  If called as a witness, I could and would so competently testify.

2.   I am responding to the DEA's assertion that AYA was "lackadaisickal" about preparing for this lawsuit with the United States of America after I advised AYA minister Winfield Scott Stanley III ("Mr. Stanley") that submitting a "petition for religious exemption" (that we referred to as a "PRE") under the DEA's *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act* ("Guidance") would waive his personal Fifth Amendment rights, and acquiesce in an express agreement with the DEA to cease administering Ayahuasca Sacrament to the AYA congregation during the pendency of the petition review process.  Mr. Stanley's declaration in support of the motion dates this decision to "the close of 2017."

3.   I have consulted my bills to determine what I was doing at the end of 2017, and have determined that 2017 is not when the decision not to file a PRE was made.  Rather, it was the fall of *2018* when I began raising these issues with Mr. Stanley.  I apologize for this error, which I failed to observe when reviewing Mr. Stanley's declaration before filing.  The correct date is of some significance in showing AYA's diligence; accordingly, I am providing this correction.  In preparing this declaration, I have consulted my billings, which are as a habit and practice I record immediately after or contemporaneously with the work performed, and which I review for accuracy before issuance.

4.   In late 2017 and into the summer of 2018, I was performing tasks related to preparing AYA's draft PRE: surveying the AYA congregation, communicating with

---

[1] A Schedule I substance made unlawful under 21 U.S.C. Sec. 841(a)(1).

prospective experts, reading scientific literature on Ayahuasca research, and communicating with others in the visionary church community. A typical billing entry from the period records PRE-preparation tasks: "04/21/18 – Read and reply to emails from S.Stanley to R.********* and P.Barbosa." Dr. Barbosa's Opinion Letter has been filed in this case to provide expert opinions on the safety and efficacy of Ayahuasca in religious settings (Docket # 33-11, pages 4 – 10); however, Dr. Barbosa's original Opinion Letter was solicited with the intent to support AYA's PRE, and in fact was initially addressed to the DEA.

5.   In October of 2018, I received an inspiration that lead me to recommend that AYA sue the DEA under RFRA rather than submit a PRE under the Guidance. In October 2018, I remembered that in *Leary v. United States*, 395 U.S. 6 (1969), the Supreme Court struck down the Marihuana Tax Act as an unconstitutional violation of the Fifth Amendment ban on compelled self-incrimination. I took action on this line of inquiry, as recorded in this entry in my November 2018 bill to AYA: "10/25/18 – Conduct Guidance Letter Phase II research; **read US v. Leary**; revise Guidance Letter to v.2.0." A few days later, I followed up by reading the *Marchetti v. United States*, 390 U.S. 39 (1968), the case *Leary* cited as primary precedent. Thus, in November, 2018, I had just begun what became an extensive research project into the Fifth Amendment protections against compelled self-incrimination.

6.   The decision not to file a PRE for AYA was momentous, and reached only after thorough research and consultation with other attorneys in the visionary church legal community. Mr. Stanley reached the decision only after I submitted a research paper entitled *The DEA's Guidance Regarding Petitions for Religious Exemption from the Controlled Substances.*[2] I referred to this in billings as the "Fifth Amendment Article" or "FAA," and my last draft of the article was printed to PDF for distribution on March 25, 2019. I also wrote two other articles, less legalistic in presentation, for lay members of the visionary church community, and on March 25, 2019, I shared all of these with a

---

[2] https://www.researchgate.net/publication/331986523

handful of visionary church lawyers in preparation for a Zoom meeting.  My billing records from March 2019 state: "3/25 – Revise and finalize all three articles: FAA, 1st Am. Article, and Summary Critique; insert footnotes and upload to ResearchGate.net; send email to I.***, J.******, and S.Stanley with links to all published locations."

**7.** Mr. Stanley made the decision to not file a PRE with the DEA one week after I delivered the Fifth Amendment Article, when he and I met personally on April 2, 2019 to discuss the matter.  My billing entry for the meeting reads:  "Meet with S.Stanley; review status of all projects: collaborations with attorneys; Union for the Protection of Sacred Plants; prospects of attacking the guidance judicially for violations of Constitution and APA; discuss timetable for proceeding…."

**8.** Thus, the actual length of time between the decision not to file a PRE with the DEA, and instead to file a RFRA lawsuit in District Court, was from April 2019 until May 2020, a period of a year.  During that year, I was as busy as I could be handling all of the business for AYA, a small Intellectual Property practice, and my personal life obligations.

**9.** My personal life obligations have been something that Mr. Stanley has been quite patient with during the last three years, because I have been caring for my wife, who was diagnosed with breast cancer in 2017, and since then has undergone several courses of chemotherapy, two surgeries, and a full course of radiation treatment.  Each of these therapies imposes its own type of secondary trauma and disability, including impairment of mobility, ability to drive, perform household tasks, etcetera.  My wife and are very close, having been married over forty-six years ago, on August 2, 1974.  We had three children, Joshua, Maria and Ana.  Joshua passed away in 2007.  We are each other's best friends, and during some times during her course of treatment, that did not conclude until October 2019, I was not able to work much on AYA's projected plan to submit a PRE, or to spend much time preparing the litigation.  During some periods of time in 2018, that continued for months, my ability to produce work was slowed down quite a bit as the grueling character of cancer treatment took its toll on my wife, the endless round of

appointments consumed one day after another, and financial and insurance concerns became oppressive.

10. In summary, during 2018 and 2019, Mr. Stanley often exercised considerable patience as my turnaround time on projects would stretch out, and have to be extended, sometimes more than once. Mr. Stanley never mentioned it in a negative way, sometimes kindly observing that we were progressing at a measured pace. His support as a client during this time period was vital to my own well-being, and I was very glad when 2020 came, my wife's treatments were all over, and I was able to resume more normal productivity levels after New Year 2020.

11. There was another legal and organizational project that consumed my time from mid-to-late 2019. Mr. Stanley decided to organize the North American Association of Visionary Churches ("NAAVC") as a California religious non-profit, and I took on the role of organizer and temporary Board member to organize that corporation and establish its corporate purposes and staffing. In order to establish NAAVC and give life to its corporate mission, a considerable amount of writing, communicating with other attorneys, and networking was required. Relative to that, I devoted a considerable amount of time to preparing and promoting NAAVC's Change.org petition to the DEA. (*See* Carreon Dec. in Support of Villanueva Motion for Preliminary Injunction, ¶ 17; Docket # 22-3, p. 7.)

12. At all times during my work for AYA, Mr. Stanley has maintained a quiet sense of urgency regarding the need to obtain the legal imprimatur of the Government for AYA's practice of Free Exercise. Specifically, when I recommended not filing a PRE, and he accepted that recommendation, he was decisive when he authorized litigation, and took concrete steps to proceed, including funding the increase in legal efforts required. He asked for estimated costs and timelines for litigation, and when I provided them, he made firm commitments to provide the necessary resources. He is an earnest litigant seeking a just outcome for AYA and its congregation in this judicial proceeding.

13. When AYA filed this action, it did not intend to file a Motion for Preliminary Injunction, and instead, was planning on seeking Summary Adjudication of AYA's RFRA claim. However, the May 19, 2020 search of plaintiff Clay Villanueva's home by HIDTA drug squad put a different perspective on things. Suddenly, I remembered what another attorney had suggested to me *might happen* after reviewing a draft of AYA's RFRA lawsuit in Spring 2020. He had suggested, presciently, "Of course, the DEA may reach out to its friends in Arizona…." I suddenly found myself considering the strange accuracy of his forecast. Upon consideration of the facts and the alternatives, it became evident to me that he had known whereof he spoke.

14. Accordingly, I set about preparing an *ex parte* application for TRO on behalf of NAAVC and Villanueva. I was about done with it when defense attorneys for the DEA, Maricopa County and the Arizona Attorney General began filing appearances in this action in mid-July, 2020.

15. When I first spoke with Kevin Hancock, counsel of record for the DEA in this action (Docket # 18, filed 07/16/2020), I told him I was glad that he'd filed a Notice of Appearance, because NAAVC and Villanueva were about to file an *ex parte* motion for TRO. He asked if we could perhaps not do that, and I said that we could turn that into a noticed motion for preliminary injunction, based on what I construed as a lawyerly commitment that there would be no criminal investigations or enforcement activities taken against any of the plaintiffs.

16. I sent a letter to Mr. Hancock hoping to confirm such an informal understanding:

> Based on your assurance that such an emergency application is not required to protect my clients' personal security, advised that we would present it as a motion for preliminary injunction on the noticed motion calendar, filing on Wednesday next week.

(Exhibit 1, 7/16/2020 Letter from C.Carreon to K.Bishop.)

17. However, Mr. Bishop replied via email disconfirming my hopeful understanding, as reflected in Exhibit 2:

> While I hope that we can avoid an emergency motion for preliminary relief, and am willing to explore ways to do so, I do need to correct your letter's

statement that I gave an "assurance that . . . an emergency application is not required to protect [your] client's personal security." I am not in a position or have the necessary knowledge to make representations about your client's personal security, and it was not my intention to do so.

(Exhibit 2, 7/16/2020 Email from K.Bishop to C.Carreon.)

**18.** Mr. Bishop's declaration that he lacked the knowledge to provide representations about the DEA's future conduct toward my clients made it clear that the DEA is not providing its attorney with authority to make commitments about the DEA's future conduct with respect to AYA and Mr. Stanley. Accordingly, I understood that I could not protect AYA, its congregation and Mr. Stanley, by means of negotiation with the DEA.

**19.** To protect AYA, the congregation, and Mr. Stanley's person from DEA interference with their Free Exercise, personal security, and privacy, I recommended to Mr. Stanley that he direct me to file a motion for preliminary injunction, and he said to do so.

**20.** Accordingly, the Motion for Preliminary Injunction (Docket # 33) was filed on August 5, 2020, the earliest date on which it could be filed in the exercise of reasonable diligence, after due performance of all necessary preparation for federal litigation.

**21.** I am aware of no prejudice that any party to this litigation has suffered that would have been avoided by an earlier filing of either the entire action or AYA's Motion for Preliminary Injunction.

I declare and affirm, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct, and that this declaration was signed on August 26, 2020, at Tucson, Arizona.

        /s/Charles Carreon
    Charles Carreon, Declarant