1  CHARLES CARREON (CSB # 127139)
2  3241 E. Blacklidge Drive
   Tucson, Arizona 85716
3  Tel: 628-227-4059
   Email: chascarreon@gmail.com
4
   Attorney for Plaintiffs Arizona Yagé Assembly,
5  North American Association of Visionary Churches, and
   Clay Villanueva
6

7            **UNITED STATES DISTRICT COURT**

8            **NORTHERN DISTRICT OF CALIFORNIA**

9   ARIZONA YAGÉ ASSEMBLY, NORTH      ) Case No.: 3:20-CV-03098-WHO
    AMERICAN ASSOCIATION OF           )
10  VISIONARY CHURCHES, and CLAY      ) JOINT CASE MANAGEMENT
    VILLANUEVA,                       ) STATEMENT
11                                    )
12            Plaintiffs,             ) Date: September 9, 2020
                                      ) Time: 2:00 P.M.
13       vs.                          ) Courtroom: 2 (17th floor)
                                      )
14  WILLIAM BARR, Attorney General of the )
15  United States; TIMOTHY J. SHEA, Acting )
    Administrator of the U.S. Drug Enforcement )
16  Administration; CHAD F. WOLF, Acting )
    Secretary of the Dept. of Homeland Security; )
17  MARK A. MORGAN, Acting Commissioner )
    of U.S. Customs and Border Protection; the )
18  UNITED STATES OF AMERICA; the     )
    STATE OF ARIZONA; MARK            )
19  BRNOVICH, Arizona Attorney General; )
    MARICOPA COUNTY, a political      )
20  subdivision of the State of Arizona; and, )
    MATTHEW SHAY,                     )
21                                    )
22            Defendants.             )
                                      )
23                                    )
                                      )
24                                    )
                                      )
25  _____ )

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# JOINT CASE MANAGEMENT STATEMENT

## PREFATORY STATEMENT

Counsel  for plaintiffs Arizona Yagé Assembly ("AYA"), North American Association of Visionary Churches ("NAAVC"), NAAVC Board member Clay Villanueva ("Villanueva") , the Federal Agency Defendants,[1]  Mark Brnovich, Arizona Attorney General  (the "Arizona AG"), and Maricopa County and Matthew Shay (the "County Defendants"),  met via Zoom teleconferencing at on August 31, 2020 to discuss the matters set forth in this Court's Standing Order for All Judges of the Northern District of California (the "Standing Order").

## 1.   JURISDICTION AND SERVICE

Agreed Statement: All defendants remaining in this case and appearing through counsel have been served.

Plaintiffs' Statement:  Personal jurisdiction over defendants Maricopa County, Shay, and the Arizona AG is established based on these defendants' performance of acts in furtherance of a retaliatory conspiracy against NAAVC and one of NAAVC's Board members, Villanueva, with the intent to influence his testimony, willingness to testify, and other participation in this lawsuit, in violation of 18 U.S.C. § 1512.  Plaintiffs alleged this in the First Amended Supplemental Complaint ("FASC," Docket # 12).  The oppositions to the motions for preliminary injunction of Maricopa County, Matthew Shay, and the DEA confirm all elements of the conspiracy.  The overlap between the merits and the jurisdictional predicates are unavoidable.  The determination of jurisdictional predicates is an issue of fact, not subject to determination via attacks on the pleadings, and when serious disputed issues of fact going to jurisdiction are raised, they should be fleshed out in discovery and decided based on full factual disclosure.

Federal Agency Defendants' Statement: The Federal Agency Defendants dispute the existence of subject-matter jurisdiction and the propriety of venue in the Northern District of

---

[1]    The "Federal Agency Defendants" are William Barr, Attorney General of the United States; Timothy Shea, Acting Administrator of the U.S. Drug Enforcement Administration ("DEA"); Chad Wolf, Acting Secretary of the Department of Homeland Security; Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection; and the United States of America.

California for the reasons stated in their oppositions to Plaintiffs' currently pending motions for preliminary injunction.  *See* ECF Nos. 41, 49.

County Defendants' Statement:

Defendants Maricopa County and Matthew Shay (collectively, the "County Defendants") dispute the existence of personal jurisdiction and the propriety of venue in the Northern District of California.  *See* Motion to Dismiss (Doc. 20).

Arizona AG Statement: The Arizona AG contends that personal jurisdiction (and venue) are lacking over him for all of the reasons explained in his motion to dismiss.  He further enjoys sovereign immunity from any claim for damages.

**2.   FACTS**

Federal Agency Defendants' Statement:  The Federal Agency Defendants have moved to strike Plaintiffs' First Amended and Supplemental Complaint ("FASC").  ECF No. 31.  In addition, the Federal Agency Defendants have moved to stay the claims against them.  ECF No. 19.  Furthermore, Plaintiffs have stated that they do not oppose a 30-day extension of the Federal Agency Defendants' time to file a responsive pleading from the date of any denial of that motion to stay.  *Id.* at 17.  The Federal Agency Defendants anticipate moving to dismiss under Rule 12(b) by the date the Court determines to be their responsive pleading deadline.  *See* ECF No. 19.  The Federal Agency Defendants therefore respectfully submit that it would be premature to detail disputes over the factual allegations of the improperly filed FASC prior to the Court's determination of the currently pending motions and the Federal Agency Defendants' anticipated motion to dismiss.

**1.   Agreed Facts**

County Defendants' Statement:

There are numerous pending motions that may result in the dismissal of Plaintiffs' claims or the striking of the First Amended and Supplemental Complaint.  The various motions and responses already filed with the Court, including particularly the motions for preliminary injunction and responses thereto, contain extensive discussion of jurisdictional facts and legal

theories.  Additional recitation of agreed and disputed facts in this document is not an efficient use of the parties' or Court's time and resources.

2. **Disputed Facts**

AYA is a church that professes use of Sacramental Ayahuasca in AYA communion ceremonies ("Ayahuasca communion").

AYA is incorporated in three states: Arizona, California, and Oregon.

AYA is a California religious nonprofit corporation, and Stanley is its founder, minister and director.

NAAVC is a California nonprofit corporation with its physical address in San Francisco, California.  Stanley and Villanueva are members of the NAAVC Board of Directors.

AYA's Sacramental Ayahuasca  is a tea containing two ingredients – *Banisteriopsis Caapi* and one of two alternative traditional dimethyltryptamine sources – *Psychotria Viridis* or *Diplopterys Cabrerana*.

The DEA published the *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act*, (the "Guidance ") in 2009, that announced the DEA would issue a "Certificate of Exemption" from the Controlled Substances Act ("Act") to petitioners who submitted a Petition for Religious Exemption ("PRE") that was approved under the Guidance.

The DEA invited Ayahuasca Healings and Soul Quest each to submit a PRE.

Ayahuasca Healings submitted a PRE to the DEA dated April 4, 2016.

Soul Quest submitted a PRE to the DEA dated August 21, 2017.

The DEA has not processed the PREs of either Ayahuasca Healings or Soul Quest.

On January 9, 2020, NAAVC sent an email attaching the DEA Letter to the following email recipients (the "DEA Letter Recipients"):

- ODLL@usdoj.gov,
- ODLP@usdoj.gov,
- Thomas.W.Prevoznik@usdoj.gov,
- Melissa.A.Kellstrom@usdoj.gov,

- Diane.M.Parks@usdoj.gov,
- Aziz.Elkholy@usdoj.gov
- Scott.Brinks@usdoj.gov
- Sarah.C.Boblenz@usdoj.gov

DEA Agent Marco A. Paddy ("Agent Paddy") averred in Docket # 41-1 that he received a tip from a person who accused Villanueva of selling DMT at his home, and provided a telephone number to provide additional assistance.  This was recorded in an unauthenticated hardcopy of an email (the "Email Tip") dated January 8, 2020.

DEA Agent Marco Paddy contacted Micah Kaskavage and conveyed the Email Tip.

Kaskavage did not forward the Email Tip to Shay, but he directed Shay to take action on it.

Shay did not call the telephone number on the Tip Email he attached as Exhibit B to his declaration.

Shay did not observe any DMT or marijuana sales by Villanueva.

Shay had no information regarding DMT sales other than the Tip Email.

On May 17, 2020, Shay obtained the search warrant for Villanueva's home, in his employment as a Maricopa County Sheriff's Deputy Detective assigned to the Arizona SW HIDTA task force.

The Arizona SW HIDTA task force was and is federally funded from the DEA's budget.

HIDTA funds are used to foster communication, collaboration, information, and operational coordination between and among federal and local law enforcement to enforce federal and state Controlled Substances Acts.

The May 19, 2020 search of Villanueva's home was executed by law enforcement agents and investigative personnel from agencies including the DEA, the Arizona AG, and Maricopa County Sheriff's Office.

None of the members of the HIDTA search team wore masks to protect the public from potential COVID 19 exposure.

Shay seized Sacramental Ayahuasca from Villanueva's home.

Shay seized U.S. legal tender from Villanueva's home.

Shay subjected Villanueva to custodial interrogation.

Villanueva was in handcuffs and underwear during his interrogation.

Villanueva told Shay he was engaging in Free Exercise use of Ayahuasca as the Vine of Light Church communion Sacrament.

AYA serves a congregation of visionary religion practitioners who reside in the State of California and attend AYA ceremonies.

AYA's founder, Winfield Scott Stanley III ("Stanley"), has practiced Ayahuasca communion since 2009. Stanley studied the practice of Ayahuasca communion with Peruvian teacher Eladio Melendez Garcia in a small community near the Akayali River in Peru. Stanley ministers personally to the congregation, and has driven approximately 120,000 miles in Califonia, administering communion to his California congregants approximately 120 times within the State. This action was filed by AYA to benefit its California congregation.

NAAVC is an interdenominational association of visionary churches with a ministry to advocate for the practice of lawful visionary religion, and lawfully share the Ayahuasca Sacrament with visionary churches by obtaining all necessary legal permissions to import, and distribute Ayahuasca Sacrament to North American visionary churches.

Sacramental Ayahuasca is safe when used in a ceremonial environment as a religious sacrament. Use of Sacramental Ayahuasca as a religious sacrament is not drug abuse, and has no tendency to lead to use of drugs of abuse.

AYA's belief system explains the Ayahuasca experience to congregants as a communion with Divine Love made available through the beneficent nature of the Sacrament.

Each person who wishes to participate in a ceremony must complete an online questionnaire that asks the questions recorded in the document attached as Exhibit 3. After eliciting contact information and an emergency contact phone number, the questionnaire requires each prospective communicant to list allergies, medications, and screens out anyone taking anti-depressant medications. The health questionnaire also requires disclosure of recent hospitalizations, surgeries, cardiac problems, high blood pressure, use of hypertensive

medications, pregnancy, seizures, psychoses, or other mental or physical health conditions or restrictions that might be adversely affected by participating in the ceremony.  If such conditions are disclosed, further inquiries are made of the prospective practitioners, and participation may be denied or conditioned upon the approval of the individual's physician.  Minors never receive Sacramental Ayahuasca at AYA ceremonies.  Preparation for ceremony includes a controlled diet, limited sexual contact, and the use of the South American teas Pau D'arco and Cat's Claw.

In an AYA ceremony, the lead facilitator serves ceremonial doses of Ayahuasca of similar strength to that used by the Daime and the UDV. Every AYA ceremony is conducted with attention to ethics and discipline, in an atmosphere of kindness and respect.  The lead facilitator controls the dispensing of the Sacrament so that practitioners receive a first serving of between15 and 30 milliliters (between 0.5 and 1 fluid ounces).  An hour and a half after the first offering of the Sacrament, a facilitator rings a singing bowl, and practitioners are offered the opportunity to receive an additional serving of the Sacrament.   The lead facilitator will sometimes recommend to the practitioner who is requesting a second serving to sit with the Sacrament a bit longer before drinking an additional cup.  Administration of the Sacrament in this measured fashion permits practitioners to gradually adjust to perceptual changes.

Facilitators attend to the physical needs of practitioners during the ceremony.  Facilitators also monitor the psychic well-being of practitioners, and lend assistance to those who require it, guiding their awareness and ensuring their comfort and sense of security.  When the ceremony is concluded with a closing prayer, practitioners are encouraged to take a few hours to rest, and to reflect on their experience in an attitude of contemplation.  Practitioners are given ample time to return to their baseline state of awareness, and facilitators take care that each practitioner departs the ceremonial location in a state of clear awareness.  Should any practitioners require assistance or transportation after the ceremony, facilitators are trained to identify the need, and provide whatever additional care is required to assure the safety of the individual, the community, and the public.

In September 2019, NAAVC launched a petition at Change.org entitled "Stop the DEA from Regulating Visionary Religions."

As noted above, the DEA Letter was sent via email to the DEA Letter Recipients on January 9, 2020.  The DEA Letter Recipients have collectively opened the email attaching the DEA Letter (the "Prevoznik Email") at least 46 times.   One of the DEA Letter Recipients, Scott Brinks ("Brinks"), signed the declaration in support of the Government's motion for stay. Neither Brinks nor any of these attorneys who received the DEA Letter have disclosed the material fact of their knowledge of the DEA Letter to the Court.  The DEA's position, as expressed in the Declaration of Loren T. Miller, appears to be that the letter was filed but not read.

DEA Agent Marco Paddy ("Agent Paddy") has sworn in Docket # 41-1 that he  received a tip on January 8, 2020 accusing Villanueva of dealing DMT.  Agent Paddy's declaration says he "forwarded the information  to Phoenix Police Department Sergeant Micah J. Kascavage [sic] that same day," and notified "DEA Task Force Group 3 Group Supervisor Toby D. Curry… I had forwarded the information to Sergeant Kascavage [sic] who supervises the HIDTA cvlandestine laboratory group because of the possible DMT lab."

Shay attached Exhibit B  to his declaration in opposition to Villanueva's motion for preliminary injunction (Docket # 39-2) that purports to be a hardcopy of an email from Agent Paddy to Kaskavage dated  January 8, 2020 (the "Tip Email").  However, Shay is incapable of authenticating the Tip Email, so the Tip Email remains unauthenticated.  Agent Paddy's declaration does not say he sent Kaskavage an email, nor does it authenticate any email document at all.  Kaskavage's declaration was not submitted to authenticate the Tip Email.

Shay was told to get a warrant to search Villanueva's house, based on the Tip Email.  The Tip Email was fabricated in some or all of its particulars.  The telephone number of the "tipper" is purportedly written on the Tip Email, however, it has been obliterated on Exhibit B.  Agent Paddy's declaration omits to state how the "tipper" contacted the DEA.  Shay was told by Kaskavage or some other HIDTA or DEA authority not to call the phone number on the Tip Email.

Shay's independent judgment was overborne by the directive to get a warrant and search Villanueva's house.  He determined to contrive probable cause, whatever his investigation

showed.  He began by deeming the Tip Email "valid on its face," thus eliminating all possibility of corroborating its contents through direct conversation with the "tipper," and cutting himself off from information important to his investigation, such as whether there were guns on the premises, guards or guard dogs, stored chemicals, or other features of drug houses that makes searching them hazardous.  Coming from a drug detective of twenty-three years experience, this lapse in proper investigative procedure could not have been accidental.  Rather, it is evidence of the fabricated  nature of the Tip Email, and his reliance upon it.

Shay's investigation discorroborated all claim of criminal conduct on the part of Villanueva.  Shay discovered no DMT chemical residues in Villanueva's trash.  Shay claimed to have discovered the smell of marijuana in the trash.  Nevertheless, Shay averred in a search warrant affidavit that Villanueva was manufacturing DMT at his home.

With the assistance of the Arizona AG, Shay obtained Villanueva's financial records, and from them inferred that he was making too much money; however, Shay had no knowledge of Villanueva's employment as a computer consultant, and imputed all of his earning to unlawful sources.  This imputation was false, and was based on no specific, articulable facts, and was rather the result of his commitment to impute criminal conduct to Villanueva in order to obtain a warrant to search his home.

Villanueva has a license to grow marijuana for medical patients.  The Tip Email said nothing about marijuana.  Shay had no tip from anyone saying that Villanueva sold marijuana.  Shay simply extrapolated, without any specific, articulable fact to base it upon, that Villanueva must have been growing vast amounts of marijuana to explain the amount of money in his PayPal account.  The inference was entirely unwarranted, as was imputing validity to the Tip Email, and thus it was false for Shay to declare to the magistrate that probable cause existed to believe that DMT manufacturing and large huge marijuana overgrowing violation was underway at Villanueva's home.

On May 19, 2020, using the warrant obtained by means of Shay's bad faith affidavit, HIDTA personnel, including Maricopa County Deputy Sheriffs,  Shay, and unnamed person(s) employed by the Arizona AG, raided Villanueva's home in the early morning hours.  Shay

intentionally publicly humiliated Villanueva by handcuffing him in his front yard while dressed only in boxer shorts and a t-shirt.

The HIDTA raid team wore HIDTA t-shirts, but did not wear facemasks, notwithstanding Maricopa County then being a hotspot for the COVID 19 pandemic.

The HIDTA raid traumatized Villanueva and his wife.

During the HIDTA raid, Villanueva's Sacramental Ayahuasca and other property was seized, including U.S. legal tender.

<u>County Defendants' Statement:</u>

The County Defendants have moved to dismiss Plaintiffs' claims for lack of personal jurisdiction and improper venue.  Depending on the outcome of the now pending motions, there may not even be an operative complaint asserting claims against the County Defendants.  It is the position of the County Defendants that a lengthy recitation of agreed and disputed facts is a waste of the Court's and parties' resources at this time.  Other than a small subset of jurisdictional facts relevant to and at issue in the now pending motions, the County Defendants have not yet investigated Plaintiffs' allegations (and may never be required to do so).  Accordingly, the County Defendants are not presently in a position to agree to Plaintiffs' factual allegations, nor to present disputed facts.

<u>Arizona AG Statement</u>: Because the Arizona AG has moved to dismiss for *inter alia* lack of personal jurisdiction and venue, he has not investigated the allegations of the Complaint because he is not yet required to file an answer.  He is therefore not in a position to agree that any factual allegations are true.

## 3.   LEGAL ISSUES

### a.   PLAINTIFFS' STATEMENT ON LEGAL ISSUES

*AYA's First Claim for Relief Under RFRA*

Whether AYA is a religious person within the meaning of the Religious Freedom Restoration Act ("RFRA").

Whether AYA's use of Ayahuasca Sacrament in Ayahuasca communion is protected Free Exercise of Religion.

Whether the DEA's complete prohibition on AYA's use of Ayahuasca is the least restrictive means of furthering the Government's compelling interest in preventing DMT from entering into the illicit drug traffic.

### NAAVC's First Claim for Relief Under RFRA

Whether NAAVC is a religious person within the meaning of the Religious Freedom Restoration Act ("RFRA").

Whether NAAVC's ministry of importing and distributing Ayahuasca Sacrament to visionary churches is protected as the Free Exercise of Religion.

Whether the DEA's complete prohibition on NAAVC's importation and distribution of Ayahuasca is the least restrictive means of furthering the Government's compelling interest in preventing DMT from entering into the illicit drug traffic.

### AYA and NAAVC's Second Claim for Relief Under Section 702

Whether the DEA engaged a reviewable agency action or inaction by following the Policy of denying regulatory services to visionary churches, enacting the Guidance, adhering to the Policy, issuing *de facto* stop orders and administrative subpoenas, and citing the Guidance as grounds for application of the doctrine of prudential exhaustion.

Whether the Guidance:

- Was adopted by the DEA without a jurisdictional basis.
- Was adopted in violation of the Administrative Procedure Act requirement that legislative regulations be subject to notice and public comment.
- Imposes an unconstitutional prior restraint on Free Exercise.
- Is a pretext enacted to deny plaintiffs regulatory services due to prejudice towards their manner of Free Exercise.
- Substantially burdens Free Exercise with its vague, indefinitely prolonged process of review.
- Substantially burdens Free Exercise by imposing useless expense on prospective petitioners.

- Substantially burdens Free Exercise when used by the DEA as a pretext for issuing *de facto* stop orders and administrative subpoenas.
- Substantially burdens Free Exercise by extracting inculpatory statements from some Visionary Church leaders in violation of their Fifth Amendment rights to be free of compelled self-incrimination.

### *Villanueva and NAAVC's Third Claim for Relief Under Section 1983*

Whether the DEA instigated a retaliatory conspiracy against NAAVC and Villanueva due to their activism in support of visionary religious Free Exercise, and due to their exercise of the Right to Petition for Redress of Grievances by initiating the Change.org petition, sending the DEA Letter, and commencing this litigation – all prior to the HIDTA raid on Villanueva's home.

Whether the DEA acted with conscious disregard of the constitutional rights of Villanueva and NAAVC by directing Shay to get a warrant to search Villanueva's home by whatever means might afford themselves, including by fabricating probable cause.  Shay complied by averring without evidence that he had probable cause to believe that Villanueva was manufacturing DMT and overgrowing his legal permits to grow medical marijuana.  Shay made these misleading averments in a bad faith warrant affidavit that (a) omitted facts that should have been included to the magistrate, such as Shay's characterization of the informant as "anonymous," when he had a phone number to call, (b) asserted probable cause to believe that DMT and marijuana were being unlawfully sold without having a single informant or direct observation upon which to base the claim, and (c) asserted that Villanueva's church was a fraudulent cover for drug sales when he actually believed Villanueva's church to be genuine.

Whether Villanueva suffered damages, and if so in what amount.

### *Villanueva's Fourth Claim for Relief Under the Arizona Free Exercise of Religion Act ("FERA")*

Whether the Court will exercise its discretion to adjudicate this state law claim under its supplemental jurisdiction.  28 U.S.C. § 1367.

Whether Villanueva and his Vine of Light Church have standing under FERA.

Whether AYA's use of Ayahuasca Sacrament in Ayahuasca communion is protected Free Exercise of Religion under FERA.

Whether the Arizona AG's complete prohibition on Villanueva and Vine of Light Church's use of Ayahuasca is the least restrictive means of furthering the State of Arizona's compelling interest in preventing DMT from entering into the illicit drug traffic.

### All Plaintiffs' Claims for Declaratory Relief

The declaratory relief claim is included to provide the Court with complete flexibility in finding facts and making equitable orders to accomplish the purposes of justice.  The plaintiffs' request for declaratory thus accumulates all of the remedies available under the three federal statutes invoked by plaintiffs in the first three claims for relief under a single heading.  Thus, they are not repeated here.

### b.  FEDERAL AGENCY DEFENDANTS' STATEMENT ON LEGAL ISSUES

As detailed more fully in their currently pending motions and oppositions to Plaintiffs' currently pending motions, and without waiver of any additional legal arguments they may make, the Federal Agency Defendants assert the following legal contentions:

- Plaintiffs' FASC should be stricken because it was filed in violation of Rule 15(d).  *See* ECF Nos. 31, 36, 50.

- Plaintiffs' claims against the Federal Agency Defendants should be stayed pending an agency rulemaking that would render those claims moot or significantly alter them.  *See* ECF Nos. 19, 51.

- Plaintiffs have failed to demonstrate that they are entitled to either of the two preliminary injunctions they have requested on their claims against the Federal Agency Defendants under 42 U.S.C. 1983 and the Religious Freedom Restoration Act ("RFRA").  *See* ECF Nos. 41, 49.

- Plaintiffs have failed to plead any waiver of sovereign immunity by the Federal Agency Defendants.  *See* ECF Nos. 41, 49.

- Plaintiffs have failed to establish that venue is proper in this District.  *See* ECF Nos. 41, 49.

- Plaintiffs lack Article III standing.  *See* ECF Nos. 41, 49.
- Plaintiffs have failed to state a section 1983 or RFRA claim upon which relief could be granted against the Federal Agency Defendants.  *See* ECF Nos. 41, 49.
- Plaintiffs have failed to exhaust available administrative remedies for their RFRA claim. *See* ECF No. 49.

### c.  MARICOPA COUNTY AND SHAY'S STATEMENT ON LEGAL  ISSUES

The County Defendants contend that—assuming that the leave to amend and to file supplemental complaint, personal jurisdiction, and venue issues do not result in the dismissal of the County Defendants from this case—additional legal issues in this matter include whether defendant Shay is entitled to qualified immunity and whether the search warrant was supported by probable cause.

### d.  ARIZONA AG STATEMENT ON ISSUES

In addition to the foregoing issues raised by other defendants, the Arizona Attorney General cannot be sued for damages under a section 1983 claim and further enjoys sovereign immunity against any other damages claims.

## 4.  MOTIONS

### a.  Pending Motions

The Federal Agency Defendants' Pending Motions:

- Motion to stay or in the alternative to enlarge time to respond to the complaint by 60 days from the date of any denial of the motion to stay (which Plaintiffs do not oppose up to 30 days).  ECF No. 19.
- Motion to Strike Plaintiffs' FASC.  ECF No. 31.

 The County Defendants have filed a motion to dismiss for lack of jurisdiction, improper venue, and failure to obtain leave to file the First Amended and Supplemental Complaint.

The Arizona AG has filed a motion to dismiss for lack of jurisdiction, improper venue, and unavailability of a cause of action for damages against him.

### b.  **Future Motions**

<u>Plaintiffs' Statement</u>: Plaintiffs have filed motions for preliminary injunctions (Docket # 22 and # 33.)  All parties will file cross-motions for summary judgment at the conclusion of any discovery.

<u>Federal Agency Defendants' Statement</u>:  The Federal Agency Defendants anticipate moving to dismiss under Rule 12(b) by the date the Court determines to be their responsive pleading deadline.  *See* ECF No. 19.  The Federal Agency Defendants respectfully submit that once all motions to dismiss in this matter have been decided, if any claims remain in this case, the remaining parties should meet and confer at that time for the purpose of proposing a schedule for any appropriate discovery, for the production of an administrative record relating to Plaintiffs' claim against the Federal Agency Defendants under the Administrative Procedure Act (if necessary), and for any subsequent cross-motions for summary judgment.

## 5.   AMENDMENT OF PLEADINGS

<u>Plaintiffs' Statement</u>: All parties (except for the Federal Agency Defendants, whose position is stated below) reserve the right to seek leave to file amended pleadings on or before either November 6, 2020 (Maricopa County and Shay's proposal) or December 16, 2020 (plaintiffs' proposal), and propose these dates as the cutoff date for filing amended pleadings. Plaintiffs will amend to name additional defendants and to accord to proof, as discovery reveals the full scope of the civil rights conspiracy alleged in the FASC.

<u>Federal Agency Defendants' Statement</u>: Any amendment or supplement of pleadings should occur consistent with Rule 15 and any Court order on the Federal Agency Defendants' currently pending motion to strike Plaintiffs' improperly filed FASC.  *See* ECF No.  31.

## 6.   EVIDENCE PRESERVATION

<u>Plaintiffs' Statement</u>: Plaintiffs request preservation of all evidence seized in the May 19, 2020 search of plaintiff Villanueva's home and VOLC sanctuary.

<u>Federal Agency Defendants' Statement</u>:  The Federal Agency Defendants have moved to strike Plaintiffs' FASC.  ECF No. 31.  In addition, the Federal Agency Defendants have moved to stay the claims against them.  ECF No. 19.  Furthermore, Plaintiffs have stated that they do not oppose a 30-day extension of the Federal Agency Defendants' time to file a responsive pleading

from the date of any denial of that motion to stay. *Id.* at 17.  The Federal Agency Defendants anticipate moving to dismiss under Rule 12(b) by the date the Court determines to be their responsive pleading deadline. *See* ECF No. 19.  The Federal Agency Defendants respectfully submit that once all motions to dismiss in this matter have been decided, if any claims remain in this case, the remaining parties should meet and confer at that time for the purpose of proposing a schedule for any appropriate discovery and regarding any reasonable and proportionate steps that may be necessary to preserve evidence relevant to the issues reasonably evident in this action.  Finally, the Federal Agency Defendants also note that they do not possess any evidence or controlled substances that may have been seized from Plaintiff on May 19, 2020. *See* ECF No. 41-4 at 7.

**7.   DISCLOSURES**

    <u>Plaintiffs' Statement</u>: Plaintiff offered to make disclosure pursuant to F.R.Civ.P. 26(f) prior to the date of the Case Management Conference.  Plaintiffs wish for the exchange to be reciprocal.  Defendants have declined plaintiffs' proposal for this prompt exchange, and propose an alternative.  Plaintiffs and defendants (except for the Federal Agency Defendants', whose position is stated below) propose to make disclosures pursuant to F.R.Civ.P. 26(f). thirty (30) days after this Court resolves the currently pending motion to stay (Doc. 19), motions to dismiss (Doc. 20, 29), and motion to strike the First Amended and Supplemental Complaint (Doc. 31).

    <u>Federal Agency Defendants' Statement</u>:  The Federal Agency Defendants have moved to strike Plaintiffs' FASC.  ECF No. 31.  In addition, the Federal Agency Defendants have moved to stay the claims against them.  ECF No. 19.  Furthermore, Plaintiffs have stated that they do not oppose a 30-day extension of the Federal Agency Defendants' time to file a responsive pleading from the date of any denial of that motion to stay. *Id.* at 17.  The Federal Agency Defendants anticipate moving to dismiss under Rule 12(b) by the date the Court determines to be their responsive pleading deadline. *See* ECF No. 19.  The Federal Agency Defendants therefore respectfully submit that it would be premature to exchange initial disclosures prior to the Court's determination of the currently pending motions and the Federal Agency Defendants' anticipated motion to dismiss.

## 8.   DISCOVERY

### a.   Plaintiff's Proposed Discovery

Because they have a reasonable focus for their discovery efforts, that is likely to produce evidence warranting the imposition of personal jurisdiction over Shay, Maricopa County and the Arizona AG, plaintiffs are entitled to jurisdictional discovery before the adjudication of the fact-based issue of personal jurisdiction over each of the defendants.

Depositions

- Matthew Shay, with an accompanying request for production of:
  - The Villanueva investigation file, including the financial records acquired before the search, and all applications submitted to financial processors to obtain such records
  - All communications with
    - Marco Paddy
    - Micah Kaskavage
    - Any person providing information on Villanueva
    - Any person to whom Shay reported regarding Villanueva
- Designated witness under F.R.Civ.P. 30(b)(6) from DEA regarding
  - training of DEA agents regarding Ayahuasca churches
  - training of DEA agents regarding application of RFRA to their work
  - why Agent Paddy routed the "tip" to Kaskavage instead of sending it to Diversion Control in Washington D.C., so the head of Diversion Control could apply the Guidance
  - all independently corroboratable evidence beyond the direct testimony of Agent Paddy available to support the matters stated in his declaration submitted as Docket # 41-1, his declaration in opposition to Villanueva's motion for preliminary injunction at Docket # 22

- o   operation of the "tip line"
- o   the operation of the recording system available to record DEA tips
- o   investigative procedure available to inquire into the legitimacy of the "tip" about Villanueva, and investigative procedure that Agent Paddy used
- o   all permanent records of tips received regarding Ayahuasca or DMT by the Arizona SW HIDTA during the last five years
- o   all documents regarding communications with Arizona SW HIDTA regarding Ayahuasca or DMT before the "tip" regarding Villanueva "came in"
- o   supervisor of Marco Paddy responsible for his training and handling of "tips"
- o   status of the review process for PREs under the Guidance
- o   particulars of the DEA's plans to revise the Guidance, per the declaration of Scott Brinks
- o   the email and other communications between and among the following persons who received the DEA Letter, and the significance of those communications to the DEA:
  - ▪   Thomas W. Prevoznik
  - ▪   Melissa A Kellstrom
  - ▪   Diane M. Parks
  - ▪   Aziz Elkholy
  - ▪   Scott Brinks
  - ▪   Sarah C. Boblenz
  - ▪   DEA Letter Recipients at ODLL@usdoj.gov
  - ▪   DEA Letter Recipients at ODLP@usdoj.gov
- •   Designated witnesses from HIDTA and Arizona AG re training of investigators, detectives and law enforcement officers ("LEOs") in tip

corroboration, warrant affidavit drafting duties, Fourth Amendment right to Privacy, application of RFRA to colorable Free Exercise activities in criminal investigations.

- Designated Witnesses from HIDTA and Arizona AG to produce documents relevant and testify regarding
    - ○ HIDTA annual funding for Maricopa County for the last five years
    - ○ Organization charts for HIDTA
    - ○ Documents showing expenditures involving California-related law enforcement activity:
        - ▪ DEA collaboration across state borders through HIDTA
        - ▪ Cross-border compacts and enforcement agreements
        - ▪ Extradition requests
        - ▪ Prisoner accommodations
        - ▪ LEO training in California
        - ▪ Provision of training at Chandler HIDTA facility for LEOs from around the nation
        - ▪ Cultural exchange among law enforcement in California and Arizona
        - ▪ Investment of Maricopa County and Arizona LEO retirement funds in California-based financial instruments
- Rule 34 Document Demands to All Defendants and a Subpoena to HIDTA for
    - ○ All communications between and among the defendants and their agents regarding:
        - ▪ RFRA Religious Exemptions
        - ▪ Training of their agents, attorneys and LEOs in First Amendment Free Exercise use of Controlled Substances
        - ▪ The Guidance

- NAAVC
- AYA
- The DEA Letter
- All communications between and among the DEA Letter Recipients from the date of their first receipt of the DEA Letter via email until the date of their testimony to be given herein
- Potential Evidence against plaintiffs to be used in any proceeding
- All investigative files on plaintiffs and their agents
- All manuals or other documents used by the DEA, DOJ, DHS, HIDTA, Maricopa County, and/or the Arizona AG to teach the use of the method of "Parallel Construction" to create "alternative" explanations for how evidence from questionable or plainly unlawful sources was obtained
- Training in corroboration of tipster information
- Search warrant application training
- Training in how to avoid fabricating, misrepresenting, or overstating evidence in court submissions
- Any and all legal Opinions regarding the lawfulness of Free Exercise use of Ayahuasca that have been issued to the defendants' agents and LEOs
- HIDTA funding documents
- HIDTA organization charts
- DEA Diversion Division organization charts
- Shay's investigative file
- All documents to identify the "anonymous tipster" and recording any communications with that person

- Subpoenas
  - Plaintiff will issue subpoenas to any third parties having knowledge of the matters stated herein, including but not limited to the caller who purportedly provided the "tip" about Villanueva
- Plaintiff will propound the statutory number of Interrogatories and Requests for Admissions to each defendant

**b.** Defendants' Proposed Discovery

The County Defendants and the Arizona AG believe that discussion of discovery should be deferred until this Court resolves the pending dispositive motions.

Federal Agency Defendants' Statement:  The Federal Agency Defendants have moved to strike Plaintiffs' FASC.  ECF No. 31.  In addition, the Federal Agency Defendants have moved to stay the claims against them.  ECF No. 19.  Furthermore, Plaintiffs have stated that they do not oppose a 30-day extension of the Federal Agency Defendants' time to file a responsive pleading from the date of any denial of that motion to stay. *Id.* at 17.  The Federal Agency Defendants anticipate moving to dismiss under Rule 12(b) by the date the Court determines to be their responsive pleading deadline. *See* ECF No. 19.  The Federal Agency Defendants therefore respectfully submit that once all motions to dismiss in this matter have been decided, if any claims remain in this case, the remaining parties should meet and confer at that time for the purpose of proposing a schedule for any appropriate discovery, for the production of an administrative record relating to Plaintiffs' claim against the Federal Agency Defendants under the Administrative Procedure Act (if necessary), and for any subsequent cross-motions for summary judgment.

**9.  CLASS ACTIONS**

This is not a class action.

**10.  RELATED CASES**

None.

**11.  RELIEF**

### a. **Plaintiffs' Statement on Relief**

Plaintiffs seek the right to engage in Free Exercise of Ayahuasca communion without the threat of prosecution, of having their homes searched, of being threatened with incarceration during a pandemic for practicing their religion.  In particular, AYA requests the Court, under its authority as the protector of the First Amendment Free Exercise rights of meritorious RFRA claimiants,  to enjoin all DEA intereference with its Free Exercise activity in using Ayahuasca in its communion rite.  NAAVC seeks to establish a regulatory relationship with the DEA pursuant to a CSA exemption that would permit NAAVC to import and distribute Ayahuasca to visionary churches for sacramental purposes.  Villanueva seeks an injunction to protect him from future acts against him arising out of the conspiracy to retaliate against him for his participation in NAAVC leadership and presenting himself as a prospective witness for the need for NAAVC to pursue and succeed in its ministry.  Villanueva, a veteran about to turn sixty when HIDTA destroyed the peace of his home,  is also entitled to a jury trial on the issue of the damages he sustained due to the humiliating, economically devastating, and emotionally traumatizing attack on his privacy and personal security, all with the purpose of intimidating him into silence.

### b. **Defendants' Statements on Relief**

The County Defendants contend that Plaintiffs are not entitled to any compensatory, injunctive, or declaratory relief.

The Arizona AG agrees with the statements of the other defendants.

The Federal Agency Defendants contend that Plaintiffs are not entitled to any relief of any kind.

## 12.  SETTLEMENT AND ADR

Plaintiff and defendants have been advised of their duties under ADR L.R. 3-5 to participate in ADR by counsel.  The parties have not yet engaged in settlement discussions, but are willing to explore settlement options.

It is the County Defendants' position that because Plaintiffs seek to establish precedent concerning complicated constitutional issues and because dispositive motions requiring little

preparation will probably resolve this matter as to the County, this case likely would not benefit from ADR.

The Arizona AG agrees that this case is ill-suited for settlement, particularly given the nature of the issues and relief sought.

<u>Federal Agency Defendants' Statement</u>: Although the Federal Agency Defendants are willing to explore settlement options at any time, given the nature of Plaintiffs' claims and the relief sought, alternative dispute resolution is unlikely to enhance the chances of settlement.

## 13.  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. ___ Yes  <u>X</u>  No

## 14.  OTHER REFERENCES

None.

## 15.  NARROWING OF ISSUES

The Court has discretion to decline to hear the FERA claim.

## 16.  EXPEDITED TRIAL PROCEDURE

Not applicable.

## 17.  SCHEDULING

Subject to court approval, the parties have proposed the following alternate schedules:

Plaintiffs Propose

| Proceeding | Proposed Date |
|---|---|
| Last date to amend pleadings | December 16, 2020 |
| Designation of Experts | January 20, 2021 |
| Discovery Cutoff | March 24, 2021 |
| Hearing on Dispositive Motions | April 21, 2021 |
| Pretrial Conference | May 10, 2021 |
| Trial | June 7, 2021 |

Maricopa County Defendants Propose:

| Proceeding | Proposed Date |
|---|---|

| | |
|---|---|
| Last date to amend pleadings | November 5, 2020 |
| Designation of Experts | April 2, 2021 |
| Discovery Cutoff | July 9, 2021 |
| Hearing on Dispositive Motions | October 6, 2021 |
| Pretrial Conference | February 2, 2022 |
| Trial | February 14-18, 2022 |

The Arizona AG believes that the schedule should be based off of this Court's resolution of the pending dispositive motions.

Federal Agency Defendants' Proposal:  The Federal Agency Defendants have moved to strike Plaintiffs' FASC.  ECF No. 31.  In addition, the Federal Agency Defendants have moved to stay the claims against them.  ECF No. 19.  Furthermore, Plaintiffs have stated that they do not oppose a 30-day extension of the Federal Agency Defendants' time to file a responsive pleading from the date of any denial of that motion to stay.  *Id.* at 17.  The Federal Agency Defendants anticipate moving to dismiss under Rule 12(b) by the date the Court determines to be their responsive pleading deadline.  *See* ECF No. 19.  The Federal Agency Defendants therefore respectfully submit that once all motions to dismiss in this matter have been decided, if any claims remain in this case, the remaining parties should meet and confer at that time for the purpose of proposing a schedule for any appropriate discovery, for the production of an administrative record relating to Plaintiffs' claim against the Federal Agency Defendants under the Administrative Procedure Act (if necessary), for any subsequent cross-motions for summary judgment, and for any subsequent pre-trial and trial dates.

## 18.  TRIAL

Plaintiff anticipates a five-day jury trial.

Federal Agency Defendants' Statement: For the reasons described above, the Federal Agency Defendants respectfully submit that it would premature to determine the length or nature of any trial in this matter.

**19.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The parties have complied with Local Rule 3-16.

**20.  ADDITIONAL MATTERS**

None.

Dated:  September 2, 2020

CHARLES CARREON
/s/Charles Carreon
CHARLES CARREON (127139)
Attorney for Plaintiffs
Arizona Yagé Assembly,
North American Association of Visionary Churches, and
Clay Villanueva

Dated:  September 2, 2020

KEVIN P. HANCOCK
/s/Kevin P. Hancock
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 514-3183 (phone)
(202) 616-8470 (fax)
kevin.p.hancock@usdoj.gov
*Counsel for the Federal Agency Defendants*

Dated:  September 2, 2020

EVAN HILLER
By: /s/Evan Hiller
Sacks Tierney P.A.
4250 N. Drinkwater Boulevard, 4th Floor
Scottsdale, AZ 85251
Attorney for Maricopa County and Matthew Shay

Dated:  September 2, 2020

DREW C. ENSIGN
/s/Drew C. Ensign
Deputy Solicitor General
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
Attorney for Arizona Attorney General Mark Brnovich
and the State of Arizona