Jeffrey S. Leonard (No. 3809)
Jeffrey.Leonard@SacksTierney.com
Evan F. Hiller (No. 28214)
Evan.Hiller@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone:  480.425.2600
*Attorneys for Defendants Maricopa County
and Matthew Shay*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, et al., | Case No.  20-cv-02373-MTL |
| Plaintiffs, | **DEFENDANTS MARICOPA COUNTY AND MATTHEW SHAY'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| v. | |
| WILLIAM BARR, et al., | |
| Defendants. | (Hon. Michael T. Liburdi) |
| | (Oral Argument Requested) |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Maricopa County (the "County") and Matthew Shay ("Shay") (collectively, the "County Defendants") respectfully move that this Court dismiss the Third Amended Complaint (Doc. 77) and this action, as to all claims against the County Defendants, for failure to state a claim upon which relief can be granted.  This motion is supported by the existing record in this case and by Plaintiff Villaneuva's Notice of Claim, attached hereto as **Exhibit A**.

Pursuant to LRCiv 12.1(c) undersigned counsel certifies that, before filing this motion, he notified opposing counsel of the issues asserted in the motion and the parties were unable to agree that the Third Amended Complaint was curable in any part by a permissible amendment to be offered by Plaintiffs.

## I.    Introduction

Plaintiffs' Third Amended Complaint (the "TAC") reiterated Plaintiffs' claims for violation of 42 U.S.C. § 1983 and the Arizona Free Exercise of Religion Act on behalf of Clayton Villanueva against the County Defendants, which were first raised in Plaintiffs'

1

2937915.v5

First Amended and Supplemental Complaint (the "FASC") and are based upon events alleged to have occurred in Arizona after the filing of the original Complaint in this matter. The TAC also raised additional state-law claims for trespass, battery, conversion, and negligence against the County Defendants.

Arizona law requires the service of a notice of claim upon public entities and employees.  Plaintiffs served a notice of claim upon Maricopa County, but did not serve a notice of claim upon Matthew Shay within the limitations period set by A.R.S. § 12-821.01 (or at all).  Thus, all of Plaintiffs' state-law claims against Shay are barred.

Although Plaintiffs fail to allege whether Shay is sued in his individual or official capacity, claims against him in his official capacity would be barred by *Kentucky v. Graham*, 473 U.S. 159 (1985).  Plaintiffs' § 1983 claim against Shay individually is barred by the doctrine of qualified immunity because Plaintiffs fail to state a plausible claim that Shay violated clearly established federal law.

Plaintiffs' state-law claims against the County are based upon *respondeat superior* theories of liability for the actions of Shay or other MCSO deputies; Arizona case law establishes that the County has no municipal liability for such claims.  Finally, Plaintiffs' § 1983 claim against the County fails to state a claim in light of *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), which requires that a constitutional injury be caused by the implementation of official policy or established customs; the policies and customs alleged by Plaintiffs (warrantless traffic stops, stop-and-frisks, and mass arrests targeting Hispanic individuals) are not closely related to the alleged injury (the execution of an improper search warrant on a white male).

Thus, all of Plaintiffs' claims against Shay and the County should be dismissed.

## II.    Plaintiffs Fail to State a Claim against Shay

### A.    The State-Law Claims against Shay Are Barred by A.R.S. § 12-821.01

Arizona's Notice of Claim statute, A.R.S. § 12-821.01, bars claims against public entities and employees unless those entities are given a prescribed notice including, *inter alia*, the basis for liability, within 180 days of the accrual of the claim.  "Claims that do not

2

comply with A.R.S. § 12–821.01.A are statutorily barred." *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 295 (2007). "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12-821.01(A)." *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527 (2006). "To perfect his claims against an individual officer, [plaintiff] had to deliver a notice of claim to the officer personally, an individual of suitable age and discretion residing with the officer, or the officer's appointed agent." *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 61 (App. 2010); *see also* A.R.S. § 12–821.01(A); Ariz. R. Civ. P. 4.1(d).

Villanueva's Notice of Claim was served upon the State of Arizona (through the Arizona Department of Administration) and the County (through the Clerk of the Maricopa County Board of Supervisors), but not upon Shay. *See* Ex. A.[1]  Because Plaintiffs did not strictly comply with A.R.S. § 12-821.01, Plaintiffs' state-law claims (Counts IV through IX) against Shay are barred.

### B.    Plaintiffs' § 1983 Claim Fails against Shay in His Official Capacity

As an initial matter, the TAC fails to specify whether Shay is sued in his personal or official capacity.  If Shay is being sued in his official capacity, such a lawsuit is "only another way of pleading an action against the entity of which an officer is an agent." *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. Dept. of Soc. Servs*, 436 U.S. 658, 690 n. 55 (1978)).  "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (*internal quotation marks omitted) (citing Graham, 473 U.S. at 166; Monell, 436 U.S. at 694*).  As discussed in Part III.B, *infra*, the TAC fails to state a plausible claim that official policy or established custom is related to the alleged constitutional injury.

---

[1] "Numerous cases … have allowed consideration of matters incorporated by reference or integral to the claim, … orders, [and] items appearing in the record of the case … without converting the motion into one for summary judgment.  These matters are deemed to be a part of every complaint by implication."  5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, Civ. § 1357 (3d ed. 2008); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (considering subpoenas not attached to complaint but critical to lawsuit); *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998-999 (9th Cir. 2011).

### C.      Plaintiffs' § 1983 Claim Fails against Shay Personally

If Shay is being sued in his personal capacity, he is entitled to qualified immunity. *Hafer*, 502 U.S. at 25.  Qualified immunity is "an immunity from suit rather than a mere defense to liability… it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  The TAC must therefore allege sufficient facts constituting a plausible claim that Shay violated clearly established federal law.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

To prevail on a claim that a police officer procured a warrant through deception, Plaintiffs "must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223-24 (9th Cir. 2009) (citations omitted).  "If an officer submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant.  If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause." *Id.* at 1224 (citations omitted).

Critically, nowhere do Plaintiffs deny that Villanueva was selling ayahuasca from his home, which would be a violation of Arizona law.  Nor do Plaintiffs deny that Villanueva was growing and selling marijuana from his home, which would also be a violation of Arizona law.[2]  Plaintiffs also admit that Arizona investigators obtained financial records showing the proceeds from such sales, although Plaintiffs do allege that "funds derived from those activities were not the proceeds of criminal conduct" based upon Plaintiffs' alleged free exercise right to possess ayahuasca. TAC, ¶ 211.  Finally, Plaintiffs themselves allege that the source of the DEA tip about Villanueva, Rami Najjar, "had recently received a refund of his deposit to attend an Ayahuasca ceremony," TAC, ¶ 159, demonstrating that Villanueva received payment for the ayahuasca administered in his

---

[2] In May 2020, the Arizona Medical Marijuana Act (the "AMMA") permitted caregivers to grow marijuana on behalf of patients, but only licensed dispensaries were permitted to sell marijuana. A.R.S. §§ 36-2811(B)(3), (E), and (F); A.R.S. § 36-2815(C).

4

2937915.v5

"ceremonies." The allegedly exculpatory fact that Shay did not find evidence of ayahuasca manufacture in Villanueva's trash does not negate the financial, social media, and witness evidence of marijuana and ayahuasca sales.

The warrant is not rendered without probable cause by the addition of alleged "exculpatory" information or the correction of "misleading" information. Plaintiffs allege that Shay knew Villanueva's activities were sincere but implied that Villanueva's religious activities were fraudulent. TAC, ¶ 163. Even assuming that allegation were to be true, correcting the supposed "false impression" about religious sincerity would not change the illegal nature of selling ayahuasca and particularly marijuana (which is *not* alleged to be related to Plaintiffs' religion). Nor would the evidence of ayahuasca and marijuana sales gathered by MCSO be invalidated by "exculpatory" evidence that the tipper, Najjar, did not personally witness actual sales or visit Villanueva's home. TAC, ¶ 165. None of the allegedly exculpatory evidence discussed in the TAC undermines that the search warrant was supported by ample probable cause following a months-long investigation that included obtaining incriminating financial records.

In short, the only plausible understanding of the allegations in Plaintiffs' TAC is that Shay did not violate any clearly-established federal law by submitting a search warrant affidavit based upon Villanueva's apparent sale of ayahuasca / DMT and apparent growing and sale of marijuana.

Plaintiffs' conspiracy theories also fail to allege a plausible violation of established federal law. Plaintiffs allege that "[a]ll of Shay's actions were contemplated, intended and furthered by Agent Paddy's initiating the investigation of Villanueva from a retaliatory motive." TAC, ¶ 168. However, nowhere do Plaintiffs allege that Shay was aware of Paddy's purported retaliatory animus, was himself motivated by such animus, or shared in such animus. Plaintiffs also allege that Shay participated in a conspiracy through the High Intensity Drug Trafficking Areas ("HIDTA") program based upon the federal funding received by local law enforcement under that program, and through DEA personnel participating in the search of Villanueva's home pursuant to the search warrant. TAC, ¶

5

2937915.v5

199.  The existence of the HIDTA program is not sufficient to allege a plausible conspiracy between local, state, and federal agencies.  The participation of DEA personnel through HIDTA in the search warrant execution fails to establish—and Plaintiffs have ***not*** alleged—that the DEA or other supposed conspirators actually played a role in the ***investigation*** of Villanueva that resulted in the search warrant and its subsequent execution.  Thus, the Plaintiffs' allegations regarding retaliatory animus and conspiracy do not support Plaintiffs' § 1983 claims against ***Shay***.

In sum, the TAC fails to plausibly allege that Shay knowingly violated established federal law.  Plaintiffs' § 1983 claims—the only claims not barred by the failure to serve a notice of claim on Shay—must be dismissed.

### III.    Plaintiffs Fail to State a Claim against the County

#### A.    The State-Law Claims Fail because the County Is Not Liable under *Respondeat Superior* for the Acts of Sheriff's Deputies

In their state-law claims, Plaintiffs allege that Shay "was acting in the course and scope of his employment by Maricopa County."  TAC, ¶¶ 245, 251, 257, 264, 270.[3]  Plaintiffs further allege that Shay's acts, and those of other unnamed deputies, "were either authorized by Maricopa County or ratified thereafter by taking no disciplinary action against Shay and the said deputies."  *Id.*  Neither of these allegations is sufficient to establish the County's liability for any of Plaintiffs' state-law claims.

The starting point in analyzing the County's liability for Plaintiffs' state-law claims is *Fridena v. Maricopa County,* 18 Ariz.App. 527 (1972).  Mrs. Fridena brought a tort action against several defendants, including Maricopa County and the Maricopa County Sheriff.  She sought to hold the County liable in tort on five separate claims, arising from the conduct of deputy sheriffs "acting as agents of the county" in executing a writ of restitution and her subsequent arrest.  The Arizona Court of Appeals held as follows:

We are aware of the fact that there are numerous actions brought each year in this

---

[3] Plaintiffs do not include this allegation in the Arizona Free Exercise of Religion ("FERA") claim, but appear to similarly invoke *respondeat superior* liability by attributing Shay's actions to the County.  *See* TAC, ¶¶ 236, 240.

6

2937915.v5

state against the Sheriff, his deputies, and the various counties.  The State Supreme Court has never been called upon to determine whether a county is automatically liable for every tort committed by its deputies.  The County exercises supervision of all county officers as provided by A.R.S. § 11-251, subsec. 1.  Inasmuch as the Sheriff is a county officer under A.R.S. § 11-401 subsec. A, par. 1, the County exercises supervision of the official conduct of the Sheriff.  However, in the instant case, the County, having no right of control over the Sheriff or his deputies in service of the writ of restitution, is not liable under the doctrine of *respondeat superior* for the Sheriff's torts.

18 Ariz. App. at 530, 504 P.2d at 61.  *Fridena* thus approved of the principle that where duties are imposed upon a county official by law rather than by the county, the county is not responsible for their breach of duty or misfeasance in relation to such duty.  *Id*.

In *Yamamoto v. Santa Cruz County Bd. of Sup'rs*, 124 Ariz. 538, 606 P.2d 28 (App. 1979), the court similarly held that the defendant county could not be held liable for the purportedly tortious conduct of the court clerk, her deputy, and the justice of the peace.  The court concluded that "[t]heir duties are imposed by law, not by the county.  Having no right of control over either, the county cannot be liable for their torts under the doctrine of *respondeat superior*."  *Id.* at 540, 606 at 30 (citing *Fridena*).

In *Hernandez v. Maricopa County*, the court likewise rejected an attempt to impose county liability for the acts of a justice of the peace, noting that the duties of the JP, who "is an elected official are imposed by the Arizona Constitution and by statutes," that "Maricopa County has no power to control the implementation and execution of those duties," and that "the doctrine of *respondeat superior* cannot be invoked to impute liability to Maricopa County for [his] acts" and those of his staff.  138 Ariz. 143, 146, 673 P.2d 341, 344 (App. 1983).

The court's decision in *Hounshell v. White,* 220 Ariz. 1, 202 P.3d 466 (App. 2008), discusses control over the actions of the Sheriff.  There, the Apache County Board of Supervisors imposed disciplinary action against an employee of the Apache County Sheriff's Office.  The Sheriff filed suit, asserting that he, not the Board of Supervisors or

7

2937915.v5

the County Manager, had authority to mete out discipline to classified employees of his office.  The court sustained the Sheriff's position, holding that, inasmuch as he was the appointing authority with respect to his own deputies and employees, only he had the power to discipline them for misconduct.  220 Ariz. at 4, 202 P.3d at 469.

In *State v. Pima County Adult Probation Dep't,* 147 Ariz. 146, 708 P.2d 1337 (App. 1985), the court similarly held that Pima County could not be held vicariously liable for the acts of probation officers, who were under the control of the court.  The Court noted that *Robarge v. Bechtel Power,* 131 Ariz. 280, 640 P.2d 211 (App. 1980), found that in order to hold an employer vicariously liable for the negligent act of his employee, the employee must be subject to the employer's control or right of control, and that "[e]ven though the county may have provided the probation officers with funds, facilities, and equipment, the right of control rested with the court, not with the county, and the officers acted in furtherance of the business of the court, not the county."  147 Ariz. at 149-50, 708 P.2d at 1340-41.  The court cited *Fridena, Yamamoto,* and *Hernandez* in holding that the county was entitled to summary judgment.

*Fridena* has been followed by this Court in multiple unpublished decisions, including **at least** the following:[4]

- *Ochser v. Maricopa County*, CIV 05-2060, 2007 WL 1577910 (D. Ariz. May 31, 2007) (Hon. Robert Broomfield) (county's supervisory authority over its officers is clearly delineated at A.R.S. § 11–251, and does not encompass any power over the sheriff's statutorily mandated duty to arrest those persons who have committed a public offense; County cannot be held liable for the MCSO officers' conduct under the doctrine of *respondeat superior,* and is entitled to judgment as a matter of law with respect to state law claims).

- *Kloberdanz v. Arpaio*, 2:13-CV-02182, 2014 WL 309078 (D. Ariz. Jan. 28, 2014

---

[4] In *Donahoe v. Arpaio*, CV10-2756-PHX-NVW, 2011 WL 5119008, at *7 (D. Ariz. Oct. 28, 2011), Judge Wake questioned but did not decide the correctness of *Fridena*: "Because Plaintiffs' complaints will be dismissed on other grounds, the Court need not now decide the correctness of *Fridena*."

(Hon. John Sedwick) (conduct at issue, involving the service of a writ of restitution, is sheriff's statutory duty; likewise, legislature has imposed statutory duties on the sheriff that require him to "[p]reserve the peace" and "[a]rrest ... all persons who attempt to commit or who have committed a public offense"; sheriff's deputies are employees of the sheriff who are hired by the sheriff; actions of the deputies were committed in furtherance of sheriff's exercise of his statutory duties to preserve the peace and make arrests; County has no control of Sheriff Arpaio or his deputies in the execution of these statutory duties, and cannot be liable for their actions under the doctrine of *respondeat superior*).

- *Kaufmann v. Pima County,* CV 11-534, 2013 WL 3864260 (D. Ariz. July 25, 2013) (Hon. David Bury) (Pima County not liable for actions taken by the sheriff or his deputies).

- *Nevels v. Maricopa County*, CV11-2466, 2012 WL 1623217 (D. Ariz. May 9, 2012) (Hon. James Teilborg) (duty to operate jails has been statutorily delegated to sheriff and county has no right to control operation of jails, and county cannot be held vicariously liable for the torts of sheriff's deputies or detention officers).

- *Mora v. Arpaio,* CV-09-1719, 2011 WL 1562443 (D. Ariz. Apr. 25, 2011) (Hon. David Campbell) (plaintiffs concede that county is not vicariously liable for such violations).

- *Stricker v. Yavapai County*, CIV 11-8096, 2012 WL 5031484 (D. Ariz. Oct. 18, 2012) (Hon. Paul Rosenblatt) (because county has no right to control operation of the jails, the county cannot be held vicariously liable for torts of sheriff's deputies or detention officers.).

- *Norton v. Arpaio*, CV-15-00087-PHX-SPL, 2015 WL 13759956, at *6 (D. Ariz. Nov. 20, 2015) (Hon. Steven P. Logan) ("*Fridena* and *Braillard,* read together, appear to bar all state-law claims against a county for the acts of a sheriff's department. … [F]ederal judges in this district have agreed with the holding in *Fridena,* even after the holding in *Braillard* [citations omitted]. This Court

1    follows suit. Accordingly, all state-law claims against Maricopa County will be
2    dismissed.").

3         These cases demonstrate that under well-established Arizona law, set out in *Fridena*
4    and followed in numerous cases, there is no basis for the imposition of vicarious liability
5    on Maricopa County for the acts or omissions of MCSO deputies in carrying out the duties
6    imposed by law on the Maricopa County Sheriff.[5] Thus, Plaintiffs' state-law claims against
7    the County must be dismissed.

8         **B.    Plaintiffs' § 1983 Claims Fail under *Monell* because the Alleged
9              Misconduct Is Unrelated to Alleged County Policy or Custom**

10        A municipality or county is liable under § 1983 only "when implementation of its
11   official policies or established customs inflicts the constitutional injury."  *Monell v. Dept.*
12   *of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring). Such an action may be
13   maintained when "systemic and gross deficiencies in staffing, facilities, equipment, or
14   procedures, or the need for more or different training, [are] so obvious, and … so likely to
15   result in the violation of constitutional rights, that the policymakers of the [county] can
16   reasonably be said to have been deliberately indifferent to the need." *Braillard v. Maricopa*
17   *Cty.*, 224 Ariz. 481, 492 (App. 2010) (internal citations and quotation marks omitted,
18   alterations original). "Moreover, for liability to attach in this circumstance the identified
19   deficiency ... must be closely related to the ultimate injury." *Id.* (quoting *City of Canton v.*
20   *Harris*, 489 U.S. 378, 391 (1989).

21        Plaintiffs allege two bases for finding that their alleged constitutional injuries can be
22   tied back to County policy or custom.  First, Plaintiffs allege that the County has "a policy
23   of complying with federal requests for local law enforcement assistance." TAC, ¶ 10.  This
24   is an unremarkable allegation, since most municipalities likely have a general policy of
25   complying with federal requests for local law enforcement assistance, but it also clearly
26   cannot state a plausible claim for municipal liability.  If general policies such as "complying
27   with federal requests" or "enforcing laws as written" were sufficient, municipalities would

28
---
[5]Enforcing state law is one such duty.  *See* A.R.S. § 11-441(A); *cf.* Op.Atty.Gen. No. 63-15
(county sheriff's offices have duty to enforce criminal provisions of the liquor laws).

be liable for every law enforcement action and *Monell* would be a dead letter.  Even assuming County approval of compliance with federal requests, Plaintiffs' alleged Constitutional injuries—search and seizure of property based upon a search warrant supported by a false affidavit—are too far divorced from the alleged "policy" to state a plausible claim.

Second, Plaintiffs allege that the County has "a policy of unfair policing of Latino citizens."  TAC, ¶ 10.  It is clear from the Third Amended Complaint that the policy, training, and custom allegations relate to the immigration-related policies of former Maricopa County Sheriff Joseph Arpaio.[6]  *See* TAC, ¶¶ 200-203.  Plaintiffs describe "unlawful collaboration between Maricopa County and the federal government against people with Hispanic surnames," as well as Sheriff Arpaio's alleged setting of policies "designed to comprehensively violate the civil rights of Hispanics and other people of color who they subjected to pretextual traffic stops, pedestrian stop-and-frisks, and mass roundups."  TAC, ¶ 200.  Plaintiffs similarly allege that Arpaio "trained MCSO deputies to violate constitutional rights in defiance of federal court orders."  *Id.*  Plaintiffs cite reports from court-ordered monitoring for the proposition that unlawful traffic stops continue.[7]  TAC, ¶ 201.

There are two common threads to Plaintiffs' allegations of County policy or custom: Sheriff Arpaio and hostility to Hispanic/Latino individuals.[8]  Both commonalities reveal that Plaintiffs' claims do not plausibly link the alleged constitutional injury to County policy

---

[6] Sheriff Arpaio was defeated by Maricopa County's current Sheriff, Paul Penzone, in the November 2016 general election and had not been Sheriff for more than three years at the time of the events described in the TAC.

[7] In fact, the report of the Independent Monitor covering May 2020 found that MCSO was in compliance with court orders regarding bias-free traffic enforcement policies.  *See* Twenty-Fifth Report of the Independent Monitor, Case No. 2:07-cv-25613-GMS (D.Ariz.), Doc. 2569 (Nov. 16, 2020), at 20-21.  MCSO continues to develop its process to identify individual "outlier" deputies who may be treating persons differently during traffic stops based on ethnicity, *id.* at 274, but any such bias is clearly no longer a matter of policy or custom. "[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Gemtel Corp. v. Cmty. Redevelopment Agency of City of Los Angeles*, 23 F.3d 1542, 1544 n.1 (9th Cir. 1994).

[8] Plaintiffs appear to use the terms "Hispanic" and "Latino" interchangeably.

or custom.  First, former Sheriff Arpaio is no longer in charge of MCSO and had not been for more than three years when Villanueva's home was searched.  Sheriff Penzone set policy for MCSO in 2020, not former Sheriff Arpaio, and Plaintiffs do not allege that racially discriminatory traffic stops are still official policy under Sheriff Penzone.

Second, there is no causal connection between any such policy or custom and Plaintiffs' alleged constitutional injury.  Villanueva is a non-Hispanic[9] U.S. citizen investigated for manufacturing and distributing illegal drugs, and whose home was then searched, allegedly based upon a false and misleading search warrant affidavit.  The investigation of Villanueva was allegedly motivated by federal animus towards Villanueva, based on his religion and on challenges to DEA policy on ayahuasca.  These factors are in no way related to any alleged County policy or custom.

Thus, Plaintiffs have failed to state a plausible claim against the County.

## IV.   *Younger* Abstention Is Required

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court established that "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72, (2013).  Plaintiffs seek to enjoin the County Defendants from any criminal investigation of Plaintiffs (and their officers, and members) and from using the evidence of criminal acts by Plaintiffs that was seized when executing the search warrant.  *See* TAC, at 82-85.  Judge Orrick noted, in denying Plaintiffs' motions for preliminary injunctions, that "[t]he [requested] injunction might run afoul of *Younger v. Harris*, 401 U.S. 37 (1971), because it arises out of a state criminal proceeding." Doc. 57 at 23.  The injunctive relief sought by Plaintiffs cannot be granted.

## V.   Conclusion

For the foregoing reasons, the Third Amended and Supplemental Complaint (Doc. 12) and this action against Maricopa County and Matthew Shay should be dismissed.

---

[9] Villanueva does not allege he is Hispanic, only that he has a "Hispanic surname."  The search warrant, attached by Plaintiffs as an exhibit to their Motion for Preliminary Injunction, identifies Villanueva as a white male.  Doc. 22-12, at 2.

2937915.v5

Respectfully submitted this 22nd day of March, 2021.

**SACKS TIERNEY, P.A.**

*/s/ Evan F. Hiller*
Jeffrey S. Leonard
Evan F. Hiller
*Attorneys for Defendants Maricopa County
and Matthew Shay*

13

2937915.v5