# EXHIBIT A



NOTICE OF CLAIM TO:
STATE OF ARIZONA and MARICOPA COUNTY

FROM: Clay L. Villanueva

To:
Arizona Department of Administration
Property and Liability Claims
100 North 15th Avenue
Suite 301
Phoenix, Arizona 85007

✓ Clerk of the Maricopa County Board of Supervisors
301 W. Jefferson
10th Floor
Phoenix AZ 85003

Date of Loss and Injury: May 19, 2020

Time of Loss and Injury: 8:30 a.m.

Location of Loss and Injury: 1134 WEST Glenrosa Avenue, Phoenix, AZ 85013

CLAIMANTS:

Clay L. Villanueva / DOB: 05/12/1961 / SSN: 263-71-564

✓ Cecilia P. Villanueva / DOB: 04/19/1961 / SSN: 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

PLEASE SEND ALL RESPONSES TO THIS CLAIM TO CLAIMANTS AT:    Clay and Cecilia Villanueva
1134 WEST GLENROSA AVE
PHOENIX, AZ 85013


CLAIMS: Maricopa County through Maricopa County Sheriff's Office ("MCSO") and MCSO Det. Matthew Shay ("Shay"), and the State of Arizona acting through employees in the Office of the Attorney General ("Arizona") ( all referred to herein as "Conspirators"), conspired with the Drug Enforcement Administration ("DEA") to procure and execute a search warrant without probable cause on the home of Clay L. Villanueva ("Mr. Villanueva") and Cecilia P. Villanueva ("Mr. Villanueva," "Mrs. Villanueva," and the "Villanuevas") with retaliatory animus and intent to engage in party/witness intimidation with respect to a federal law suit Mr. Villanueva initiated against the DEA. Independent of retaliatory motive, Shay misrepresented the existence of probable cause in a search warrant to search Villanueva's home and church at 1134 West Glenrosa in Phoenix. In the course thereof, committing constitutional torts against the Villanuevas, in violation of 18 U.S.C. § 1983, the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb , *et seq.*, the Arizona Free Exercise of Religion Act, ARS § 41-1493.01, ("FERA") and common law intentional torts of false arrest and imprisonment, assault, intentional infliction of emotional

2 | Page

NOTICE OF CLAIM TO:
STATE OF ARIZONA and MARICOPA COUNTY

distress, negligent infliction of emotional distress, negligence, negligent training of warrant-procuring officers, and loss of consortium.

**OCCURRENCE GIVING RISE TO CLAIMS:**

The facts are currently the subject of litigation in Arizona Yage Assembly, et al. v. Will Barr, et al, Northern District of California, 3:20-CV-03098-WHO, pending transfer to the District of Arizona.

The Conspirators acted as follows. DEA Agent Marco A. Paddy ("Agent Paddy") forwarded a tip from a person who accused Villanueva of selling DMT at his home, and provided a telephone number to provide additional assistance. This was recorded in an unauthenticated hardcopy of an email (the "Email Tip") dated January 8, 2020.

DEA Agent Marco Paddy contacted Micah Kaskavage ("Kaskavage"), Shay's superior at HIDTA, and conveyed the Email Tip.

Kaskavage did not forward the Email Tip to Shay, but he directed Shay to take action on it.

Shay did not call the telephone number on the Tip Email.

Shay did not observe any DMT or marijuana sales by Villanueva.

Shay had no information regarding DMT sales other than the Tip Email.

On May 17, 2020, Shay obtained the search warrant for Villanueva's home, in his employment as a Maricopa County Sheriff's Deputy Detective assigned to the Arizona SW HIDTA task force.

The Arizona SW HIDTA task force was and is federally funded from the DEA's budget.

HIDTA funds are used to foster communication, collaboration, information, and operational coordination between and among federal and local law enforcement to enforce federal and state Controlled Substances Acts.

The May 19, 2020 search of Villanueva's home was executed by law enforcement agents and investigative personnel from agencies including the DEA, Arizona, and Maricopa County Sheriff's Office.

None of the members of the HIDTA search team wore masks to protect the public from potential COVID 19 exposure.

Shay seized Sacramental Ayahuasca from Villanueva's home.

Shay seized U.S. legal tender from Villanueva's home.

Shay subjected Villanueva to custodial interrogation.

NOTICE OF CLAIM TO:
STATE OF ARIZONA and MARICOPA COUNTY

Villanueva was held at gunpoint, placed in handcuffs, and denied any clothing to wear besides the underwear he was arrested in, and was so attired during his interrogation by Shay.

Mrs. Villanueva was held at gunpoint in her own home.

Villanueva, an older veteran supporting suicidal vets, told Shay he was engaging in Free Exercise use of Ayahuasca as the Vine of Light Church communion Sacrament.

Agent Paddy has sworn in AYA v. Barr, Docket # 41-1, that he received a tip on January 8, 2020 accusing Villanueva of dealing DMT. Agent Paddy's declaration says he "forwarded the information to Phoenix Police Department Sergeant Micah J. Kascavage [sic] that same day," and notified "DEA Task Force Group 3 Group Supervisor Toby D. Curry… I had forwarded the information to Sergeant Kascavage [sic] who supervises the HIDTA clandestine laboratory group because of the possible DMT lab."

Shay was told to get a warrant to search Villanueva's house, based on the Tip Email. The Tip Email was fabricated in some or all of its particulars. The telephone number of the "tipper" is written on the Tip Email. Agent Paddy's declaration fails to state how the "tipper" contacted the DEA. Shay was told by Kaskavage or some other HIDTA or DEA authority not to call the phone number on the Tip Email.

Shay's independent judgment was overborne by the directive to get a warrant and search Villanueva's house. He determined to contrive probable cause, whatever his investigation showed. He began by deeming the Tip Email "valid on its face," thus eliminating all possibility of corroborating its contents through direct conversation with the "tipper," and cutting himself off from information important to his investigation, such as whether there were guns on the premises, guards or guard dogs, stored chemicals, or other features of drug houses that makes searching them hazardous. Coming from a drug detective of twenty-three years experience, this lapse in proper investigative procedure could not have been accidental. Rather, it is evidence of the fabricated nature of the Tip Email, and his reliance upon it.

Shay's investigation discorroborated all claim of criminal conduct on the part of Villanueva. Shay discovered no DMT chemical residues in the investigation of Villanueva's trash. Shay claimed to have discovered the smell of marijuana in the investigation of the trash. Nevertheless, Shay averred in a search warrant affidavit that Villanueva was manufacturing DMT at his home.

With the assistance of the Arizona AG, Shay obtained Villanueva's financial records, and from them inferred that he was making too much money; however, Shay had no knowledge of Villanueva's employment as a computer consultant, and imputed all of his earning to unlawful sources. This imputation was false, and was based on no specific, articulable facts, and was rather the result of his commitment to impute criminal conduct to Villanueva in order to obtain a warrant to search his home.

Villanueva has a license to grow marijuana for medical patients. He has cancer. The Tip Email said nothing about marijuana. Shay had no tip from anyone saying that Villanueva sold marijuana. Shay simply extrapolated, without any specific, articulable fact to base it upon, that Villanueva must have

NOTICE OF CLAIM TO:
STATE OF ARIZONA and MARICOPA COUNTY

been growing vast amounts of marijuana to explain the amount of money in his PayPal account. The inference was entirely unwarranted, as was imputing validity to the Tip Email, and thus it was false for Shay to declare to the magistrate that probable cause existed to believe that DMT manufacturing and a huge marijuana overgrowing violation was underway at Villanueva's home.

On May 19, 2020, using the warrant obtained by means of Shay's bad faith affidavit, HIDTA personnel, including Maricopa County Deputy Sheriff, Shay, and unnamed person(s) employed by the Arizona AG, raided Villanueva's home in the early morning hours. Shay intentionally publicly humiliated Villanueva by handcuffing him in his front yard while dressed only in jockey shorts and a t-shirt. Shay intentionally traumatized Mr. Villanueva and Mrs. Villanueva by falsely imprisoning them in their own home by threat of deadly force, and by humiliating the husband in front of the wife, making his religious occupation the focus of a home invasion by armed men employed by the government.

The HIDTA raid team wore HIDTA t-shirts, but did not wear facemasks, notwithstanding Maricopa County then being a hotspot for the COVID 19 pandemic.

**INJURY TO PERSONS**

Clay L. Villanueva and Cecilia P. Villanueva, and each of them, suffered unlawful arrest by force of lethal threat, invasion of quarantine, invasion of privacy procured by false swearing, physical restraint and confinement imposed without lawful grounds, physical pathology, humiliation, PTSD, anxiety, depression, and severe emotional distress.

**DAMAGE TO PROPERTY AND OTHER ECONOMIC LOSS**

Seizure of currency not less than $14,000. Seizure of medical marijuana and Ayahuasca Sacrament valued at $ 25,000. Interruption of medical marijuana grow lawfully operated by Mr. Villanueva to support his cancer therapy to the benefit of both Villanuevas.

**SPECIFIC AMOUNT FOR WHICH CLAY L. VILLANUEVA'S CLAIM CAN BE SETTLED: $500,000**

Grounds for Amount: In an action for the torts alleged, general damages are within the discretion of the jury, and the intentional element of the home invasion under color of law for retaliatory purposes, pursued with deceptive intent by a fraud on the warrant-issuing magistrate, greatly elevates the gravity of the emotional injury, which in this case will be supported by evidence of physical and psychological pathology suffered by Mr. Villanueva. An anticipatable court judgment for the conduct alleged herein could well exceed the proposed settlement amount herein by a very considerable amount. This analysis is supportable by verdicts and settlements data.

CLAY L. VILLANUEVA, CLAIMANT: _____

DATE: 11/13/20