BRIAN M. BOYNTON
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
KEVIN P. HANCOCK
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-3183
Fax: (202) 616-8470
E-mail: kevin.p.hancock@usdoj.gov

*Attorneys for the Federal Agency Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; North American Association of Visionary Churches; Clay Villanueva; and the Vine of Light Church,<br><br>Plaintiffs,<br><br>v.<br><br>Merrick B. Garland, Attorney General of the United States, *et al.*,[1]<br><br>Defendants. | No. 2:20-cv-2373-MTL |

## FEDERAL AGENCY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT [ECF No. 77]

---

[1] Merrick B. Garland, D. Christopher Evans, Alejandro N. Mayorkas, and Troy Miller have been substituted for Jeffrey A. Rosen, Timothy J. Shea, Chad F. Wolf, and Mark A. Morgan, respectively, as defendants in their official capacities in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES...........................................................1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD ....................................................................................................... 3

ARGUMENT .................................................................................................................... 3

I.      PLAINTIFFS' APA CLAIM SHOULD BE DISMISSED UNDER RULE
        12(b)(1) DUE TO A LACK OF FINAL AGENCY ACTION .................................. 3

II.     PLAINTIFFS' RFRA CLAIM SHOULD BE DISMISSED UNDER RULE
        12(b)(1) FOR LACK OF STANDING.................................................................. 5

        A.      Plaintiffs Fail to Allege Any Genuine Threat of Imminent Prosecution .......... 5

        B.      Any Genuine Threat of Imminent Prosecution Would Not Be Fairly
                Traceable to the Federal Agency Defendants ........................................... 9

        C.      Plaintiffs Lack Prudential Standing Because They Have Not Exhausted
                Available Administrative Remedies ....................................................... 10

III.    PLAINTIFFS' RFRA CLAIM SHOULD BE DISMISSED UNDER RULE
        12(b)(6) FOR FAILURE TO STATE A CLAIM ............................................... 11

IV.     PLAINTIFFS' SECTION 1983 CLAIM SHOULD BE DISMISSED UNDER
        RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM........................................ 12

        A.      Plaintiffs Have Failed to Sufficiently Plead that the DEA Acted Under
                Color of State Law or that a Conspiracy Existed ................................... 13

        B.      The Allegations that DEA Retaliated Against Plaintiffs Are Implausible ....... 16

CONCLUSION................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*4805 Convoy, Inc. v. City of San Diego,*
    183 F.3d 1108 (9th Cir. 1999) ......................................................... 6

*Arizona State Dep't of Educ. v. U.S. Dep't of Educ.,*
    No. 06-cv-1719, 2007 WL 433581 (D. Ariz. Feb. 6, 2007) ............... 3, 5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................... 3, 13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................... 13

*Brooks v. Snow,*
    313 F. Supp. 2d 654 (S.D. Tex. 2004),
    *aff'd*, 126 F. App'x 173 (5th Cir. 2005) ............................................. 4

*Cabrera v. Martin,*
    973 F.2d 735 (9th Cir. 1992) ........................................................... 13

*Cassirer v. Kingdom of Spain,*
    616 F.3d 1019 (9th Cir. 2010) ......................................................... 10

*Church of the Holy Light of the Queen v. Holder,*
    443 F. App'x 302 (9th Cir. 2011) ..................................................... 12

*Church of the Holy Light of the Queen v. Mukasey,*
    615 F. Supp. 2d 1210 (D. Or. 2009) ................................................. 9

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ........................................................................ 5, 6

*Cty. of Santa Clara v. Trump,*
    267 F. Supp. 3d 1201 (N.D. Cal. 2017) ............................................ 12

*District of Columbia v. Carter,*
    409 U.S. 418 (1973) ......................................................................... 13

*Fleming v. Charles Schwab Corp.,*
    878 F.3d 1146 (9th Cir. 2017) ........................................................... 5

*Haase v. Sessions,*
    835 F.2d 902 (D.C. Cir. 1987) ........................................................... 4

*Havasupai Tribe v. Provencio,*
    906 F.3d 1155 (9th Cir. 2018) ........................................................... 4

*Hodgers-Durgin v. de la Vina,*
    199 F.3d 1037 (9th Cir. 1999) ........................................................... 7

*Ibrahim v. Dep't of Homeland Sec.,*
   538 F.3d 1250 (9th Cir. 2008) ............................................................................ 14,

*John Doe, Inc. v. DEA,*
   484 F.3d 561 (D.C. Cir. 2007) ............................................................................ 5

*Kali v. Bowen,*
   854 F.2d 329 (9th Cir. 1988) .............................................................................. 13

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ............................................................................................ 3

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) .............................................................................. 14

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ....................................................................................5, 6, 7, 9

*McCarthy v. Madigan,*
   503 U.S. 140 (1992) ............................................................................................ 10

*Morse v. N. Coast Opportunities, Inc.,*
   118 F.3d 1338 (9th Cir. 1997) ............................................................................ 13

*Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales,*
   474 F. Supp. 2d 1133 (N.D. Cal. 2007),

   *aff'd,* 365 F. App'x 817 (9th Cir 2010) ........................................................... 11

*Navajo Nation v. U.S. Forest Service,*
   535 F.3d 1058 (9th Cir. 2008) ............................................................................ 11

*Nelsen v. King Cty.,*
   895 F.2d 1248 (9th Cir. 1990) ............................................................................ 7

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder,*
   676 F.3d 829 (9th Cir. 2012) ..........................................................................6, 7

*Olson v. Norman,*
   830 F.2d 811 (8th Cir. 1987) .............................................................................. 14

*Perkel v. U.S. Dep't of Justice,*
   365 F. App'x 755 (9th Cir. 2010) ....................................................................4, 11

*Rattlesnake Coal. v. EPA,*
   509 F.3d 1095 (9th Cir. 2007) ............................................................................ 3

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
   173 F. Supp. 2d 41 (D.D.C. 2001) ..................................................................... 5

*Rossides v. Gonzales,*
   210 F. App'x 711 (9th Cir. 2006) ....................................................................... 7

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) ........................................................................... 3

*San Diego Cty. Gun Rights Comm. v. Reno,*
   98 F.3d 1121 (9th Cir. 1996) ............................................................................ 6

*Strickland v. Shalala,*
   123 F.3d 863 (6th Cir. 1997) .......................................................................... 14

*Tenacre Found. v. I.N.S.,*
   78 F.3d 693 (D.C. Cir. 1996) ........................................................................... 4

*Thomas v. Anchorage Equal Rights Comm'n,*
   220 F.3d 1134 (9th Cir. 2000) .................................................................. 6, 7, 8

*United States v. Friday,*
   525 F.3d 938 (10th Cir. 2008) ....................................................................... 11

*United States v. Hugs,*
   109 F.3d 1375 (9th Cir. 1997) ...................................................................... 4, 9

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) .......................................................................... 13

*United States v. Seljan,*
   547 F.3d 993 (9th Cir. 2008) ............................................................................ 8

*United States v. Tawahongva,*
   456 F. Supp. 2d 1120 (D. Ariz. 2006) ........................................................... 11

*United States v. Winddancer,*
   435 F. Supp. 2d 687 (M.D. Tenn. 2006) ......................................................... 9

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
   865 F.2d 1539 (9th Cir. 1989) ....................................................................... 15

*Vill. of Bald Head Island v. Army Corp of Eng'rs,*
   714 F.3d 186 (4th Cir. 2013) ............................................................................ 4

*Williams v. Ryan,*
   No. CV-2000-068, 2020 WL 1188337 (D. Ariz. Mar. 12, 2020) ..................... 13, 17

**Statutes**

5 U.S.C. § 551(13) ............................................................................................... 4

5 U.S.C. § 704 ...................................................................................................... 3

21 U.S.C. § 801 .................................................................................................... 2

21 U.S.C. § 873 .................................................................................................. 15

21 U.S.C. § 877 .................................................................................................... 5

21 U.S.C. § 1706 ........................................................................................................... 15

42 U.S.C. § 1983 ..................................................................................................... *passim*

42 U.S.C. § 2000bb–1(b) ............................................................................................... 2

**Rules**

Fed. R. Evid. 201(b)(2) ................................................................................................. 14

**Regulations**

21 C.F.R. § 1301.31 ...................................................................................................... 2

Defendants, Merrick B. Garland, U.S. Attorney General; D. Christopher Evans, Acting Administrator of the U.S. Drug Enforcement Administration ("DEA"); Alejandro N. Mayorkas, Secretary of the Department of Homeland Security ("DHS"); Troy Miller, Senior Official Performing the Duties of Commissioner of U.S. Customs and Border Protection; and the United States of America (collectively, the "Federal Agency Defendants" or "Defendants"), hereby move to dismiss Plaintiffs' Third Amended Complaint,[2] ECF No. 77 ("Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

The Complaint should be dismissed under Rule 12(b). Despite its 85 pages and more than 280 paragraphs, the Complaint fails for two straightforward reasons.  First, Plaintiffs seek relief that is potentially available from the DEA (and reviewable in the Court of Appeals) and yet they refuse to apply for it. Plaintiffs claim that for years they have been using a Schedule I controlled substance for religious reasons, and now—despite not identifying any genuine threat of imminent federal prosecution—they seek a sweeping injunction that would bar enforcement of the Controlled Substances Act ("CSA"). Yet Plaintiffs have not utilized the DEA's long-standing application process for religious-based CSA exemptions. Plaintiffs thus lack standing and Defendants have not substantially burdened their alleged religious exercise.

Second, with allegations that the Northern District of California has already described as "baseless and speculative," the Complaint implausibly alleges that the Federal Agency Defendants violated 42 U.S.C. § 1983 by acting under color of state law to conspire with Arizona officials to injure one Plaintiff's rights in "retaliation" over, *inter alia*, his promotion of a "Change.org petition." But it is far more likely that Defendants' routine actions were pursuant to their federal authority, as confirmed by the already credited record on Plaintiffs' denied preliminary injunction motion. The Complaint fails to show any retaliation, federal-state conspiracy, or that the DEA acted under color of state law, as it must under section 1983.

---

[2] To avoid confusion, Defendants describe the operative complaint as the "Third Amended Complaint," as that document is styled, *see* ECF No. 77, even though Plaintiffs have amended their original complaint in this case only once previously, *see* ECF No. 12.

# BACKGROUND

The CSA, 21 U.S.C. § 801 *et seq.*, regulates the use of psychotropic substances, including "Schedule I" controlled substances, the importation and use of which is generally banned due to the high risk of abuse and lack of accepted medical use, *id.* § 812(b)(1). Under the CSA, the DEA has authority to register an applicant to import, distribute, or manufacture a Schedule I controlled substance when doing so is consistent with the public interest. *Id.* § 823(b); 21 C.F.R. § 1301.31. The Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–1(b), provides that the federal government may not substantially burden a person's sincere exercise of religion, unless doing so is the least restrictive means of advancing a compelling interest. In 2009, the DEA issued "guidance to parties who wish to petition for a religious exemption to the CSA" pursuant to RFRA (the "2009 Guidance").[3]

Plaintiffs Arizona Yagé Assembly ("AYA"), North American Association of Visionary Churches ("NAAVC"), Vine of Light Church ("VOLC"), and Clay Villanueva allege they are or associate with "visionary churches," which claim to "practice visionary communion" by ingesting ayahuasca, a tea brewed from leaves from plants containing the Schedule I controlled substance dimethyltryptamine ("DMT"). Compl. ¶¶ 5, 32-34, 39. No Plaintiff has sought a CSA exemption from the DEA for their allegedly religious ayahuasca use. *E.g., id.* ¶ 104.

Plaintiffs assert claims against Defendants under the Administrative Procedure Act ("APA"), RFRA, 42 U.S.C. § 1983, and the Declaratory Judgment Act. Plaintiffs assert that the DEA has maintained a policy of refusing to grant religious exemptions under RFRA to "visionary churches" in violation of the APA. Compl. ¶¶ 172-91. They further assert they are entitled to a blanket exemption from the CSA's prohibitions on ayahuasca under RFRA. *Id.* ¶¶ 131-71. And they assert under § 1983 that the DEA and its co-defendants Maricopa County, Arizona ("County"), and County Deputy Matthew Shay, engaged in a "conspiracy" to deprive Villanueva of his rights in retaliation for "promoting [a] Change.org petition," for "sending the DEA [a] Letter," and for suing DEA. *Id.* ¶¶ 194-95.

---

[3] https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)%20Guidance%20Regarding%20Petitions%20for%20Religious%20Exemptions.pdf (last visited Mar. 22, 2021).

Plaintiffs originally filed this suit in the Northern District of California. ECF No. 1. On September 21, 2020, the Honorable William H. Orrick III denied Plaintiffs' two preliminary injunction motions (on their RFRA and § 1983 claims) for improper venue. ECF No. 57 at 28-29. Judge Orrick also identified "serious concerns about the plaintiffs' ability to demon-strate a likelihood of success on the merits for either motion," on multiple other grounds, including that Plaintiffs' § 1983 allegations were "baseless and speculative." *Id.* at 23. On No-vember 6, 2020, Judge Orrick granted Plaintiffs' motion to transfer to this District, again not-ing "that there are likely numerous barriers to the plaintiffs successfully obtaining injunctions and pursuing their claims." ECF No. 65 at 1. On January 21, 2021, Plaintiffs amended their complaint, ECF No. 77, without materially altering their claims against Defendants.

## LEGAL STANDARD

Under Rule 12(b)(1), the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) attacks can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Under Rule 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted," including if the complaint fails to allege enough facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

## I. PLAINTIFFS' APA CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(1) DUE TO A LACK OF FINAL AGENCY ACTION

Plaintiffs' APA claim asserts that the DEA's process for evaluating petitions for ex-emptions to the CSA under RFRA (as articulated in the 2009 Guidance) is contrary to law. Compl. ¶¶ 173-74. This claim is not ripe, however, because the APA only permits judicial review of "final agency action." 5 U.S.C. § 704. Absent final agency action, courts lack juris-diction to review an APA claim. *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007). Final agency action is required "because it may resolve the issue between the parties," and, failing that, provides the administrative record to which judicial review is limited. *Arizona State Dep't of Educ. v. U.S. Dep't of Educ.*, 2007 WL 433581, at *7 (D. Ariz. Feb. 6, 2007).

Plaintiffs fail to challenge any agency "action," final or otherwise. The APA defines agency "action" as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). Each "action" is "focuse[d] on an agency's *determination* of rights and obligations." *Vill. of Bald Head Island v. Army Corp of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013); *see also Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1162-63 (9th Cir. 2018). Here, Plaintiffs admit that AYA "did not submit a petition" for a CSA exemption to the DEA, Compl. ¶ 104, and do not allege that any plaintiff has ever done so. The DEA thus has not taken any "action" (let alone "final" action) determining Plaintiffs' rights or obligations. *See, e.g.*, *Brooks v. Snow*, 313 F. Supp. 2d 654, 659 (S.D. Tex. 2004) (no final agency action where plaintiffs "never applied [with IRS] under the regulation to obtain the ultimate relief they seek"), *aff'd*, 126 F. App'x 173 (5th Cir. 2005); *see also United States v. Hugs*, 109 F.3d 1375, 1378-79 (9th Cir. 1997) ("[T]he [plaintiffs] have never sought to use the permit system and therefore have no standing to challenge the way in which the scheme operates.").

Plaintiffs attempt to justify their failure to seek an exemption with conclusory assertions that the DEA has a "policy" of refusing all religious exemptions. Compl. ¶¶ 79, 104, 157. But a plaintiff "seek[ing] injunctive or declaratory relief specifically for the purpose of challenging an alleged policy" of the government, cannot do so with a mere "nebulous assertion of the existence of a 'policy.'" *Haase v. Sessions*, 835 F.2d 902, 910-11 (D.C. Cir. 1987). Implausible and nebulous assertions are all the Complaint offers here; Plaintiffs' rely upon two cases that predate the 2009 Guidance, Compl. ¶¶ 79, 85-87, fail to identify any actual DEA denials of exemption petitions, and do not account for the numerous legitimate bases upon which a petition could be denied*, see, e.g.*, *Perkel v. U.S. Dep't of Justice*, 365 F. App'x 755 (9th Cir. 2010) (affirming DEA's denial of petition under 2009 Guidance for failure to demonstrate that CSA enforcement substantially burdened church's religious exercise).[4]

---

[4] Plaintiffs' failure to allege plausibly that the "Policy" exists is also grounds for dismissal under Rule 12(b)(6), because an essential element of any case challenging a governmental policy is identifying the policy. *See, e.g.*, *Tenace Found. v. I.N.S.*, 78 F.3d 693, 696 (D.C. Cir. 1996).

Even assuming such a policy exists, courts have held that "any prudential concern regarding futility cannot overcome the APA's clear requirement for final agency action," given that "determining futility will often amount to little more than a guessing game regarding agency intent and the likely outcome of administrative proceedings." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 173 F. Supp. 2d 41, 51 (D.D.C. 2001), *aff'd*, 324 F.3d 726 (D.C. Cir. 2003); *see Ariz. State Dep't of Educ.*, 2007 WL 433581, at *7 ("Requiring final agency action, even if the ultimate results can be surmised, is not at all futile[.]" (cleaned up)).

Finally, requiring final agency action before judicial review is particularly necessary here because jurisdiction over any DEA decision on a petition lies exclusively in a U.S. Court of Appeals. *See* 21 U.S.C. § 877; *see, e.g.*, *John Doe, Inc. v. DEA*, 484 F.3d 561, 568-69 (D.C. Cir. 2007). Plaintiffs should not be rewarded for their attempt to contravene Congress's clear intent to channel petitions for relief into the agency followed by review in the courts of appeals. Further, allowing Plaintiffs' claim to proceed would "encourage[] forum shopping and encourage[] dissatisfied claimants to 'jump the gun' by going directly to the district court to develop their case" rather than the agency. *Doe*, 484 F.3d at 570.

## II. PLAINTIFFS' RFRA CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(1) FOR LACK OF STANDING

### A. Plaintiffs Fail to Allege Any Genuine Threat of Imminent Prosecution

In their RFRA claim, all four Plaintiffs ask the Court to enter an injunction ordering DEA to register them as exempt from enforcement of the CSA's prohibitions on importing, manufacturing, and distributing ayahuasca. Compl. ¶ 150. Plaintiffs claim they are entitled to this relief because they "fear prosecution" for these activities. *Id.* ¶ 137.

To demonstrate Article III standing, *each* Plaintiff must show that *each* provision they challenge has caused them a concrete and particularized "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). To establish an injury-in-fact to support a claim for injunctive relief, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy[.]'" *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 n.1 (9th Cir. 2017) (quoting *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 102 (1983)). Instead, there must be a "sufficient likelihood that [the plaintiff] will again be wronged in a similar way[.]" *Lyons*, 461 U.S. at 111. Where, as here, the allegedly feared future harm is prosecution, there must be a "genuine threat of imminent prosecution," and "neither the mere existence of a proscriptive statute nor a generalized threat" is sufficient. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

Prior to transfer, Judge Orrick observed that "plaintiffs have not shown [for their RFRA claim], as they must to obtain a pre-enforcement injunction, that there has been any realistic, imminent threat of prosecution or enforcement action by the federal government." ECF No. 57 at 23. The current Complaint also fails to make this showing for three reasons.

***First***, no Plaintiff has articulated a concrete plan to violate each of the three CSA provisions in question. *See Thomas*, 220 F.3d at 1139 (requiring Plaintiffs to "articulate[] a 'concrete plan' to violate the law" including "when" and "where, or under what circumstances"). Mere "'some day' intentions–without any description of concrete plans" do not suffice. *Lujan*, 504 U.S. at 565. Here, the Complaint does not allege that *each* Plaintiff has a concrete plan to violate *each* challenged CSA prohibition. *See 4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112-13 (9th Cir. 1999) (injury-in-fact must be shown for each challenged law). VOLC does not claim that it will import, manufacture, or distribute ayahuasca in the future. *See, e.g.*, Compl. ¶¶ 209, 222, 236 (alleging only previous possession of ayahuasca). Villanueva does not allege any plan to import or manufacture ayahuasca. *See, e.g., id.* And although Villanueva asserts, in support of a separate claim, that "he needs to be free to obtain and share Ayahuasca with his congregation," *id.* ¶ 235, this allegation falls far short of a concrete plan, *compare San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (finding it insufficient for plaintiffs to allege that they "wish and intend" to violate the law), *with Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835-36 (9th Cir. 2012) (finding a "concrete plan" where plaintiffs alleged they were "violat[ing] the CSA daily" and had "no plan to stop").

AYA alleges no plan to manufacture ayahuasca. *See, e.g.*, Compl. ¶ 57. While it asserts that it has previously attempted to import ayahuasca, *see id.* ¶¶ 138-41, AYA alleges no concrete plan to do so again, *see, e.g., id.* ¶ 57. And although AYA claims that it "shares" ayahuasca with

alleged congregants and seeks an order allowing it to do so, *id.* ¶¶ 46, 55, 57, Plaintiffs nowhere specifically allege "any description of concrete plans" for distribution, *Lujan*, 504 U.S. at 565, or even that AYA has "no plan to stop" any distribution, *see Oklevueha*, 676 F.3d at 836.

Finally, NAAVC's allegations are also insufficient. It admits that the ayahuasca it seeks to acquire is manufactured in South America, and claims it attempted to import ayahuasca once in the past. Compl. ¶¶ 66, 138. As for the future, however, Plaintiffs allege only a some-day intention that NAAVC would like to "initiat[e] a lawful system for importing and sharing" ayahuasca, *id.* ¶ 60; *see also id.* ¶¶ 62-66, which is not enough, *see Lujan*, 504 U.S. at 564. NAAVC's assertions regarding distribution fail for the same reasons. *See* Compl. ¶¶ 60-66.

**Second**, Plaintiffs also fail to allege that Defendants "have communicated a specific warning or threat to initiate proceedings" against them. *Thomas*, 220 F.3d at 1139; *see Rossides v. Gonzales*, 210 F. App'x 711, 712 (9th Cir. 2006) (finding no standing where "[n]o prosecuting authorities have ever communicated a specific threat or warning to initiate proceedings against [plaintiff]"). Plaintiffs rest instead on claims of past harm. *E.g.*, Compl. ¶¶ 138-41, 159-70. However, "the Supreme Court has concluded that past exposure to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm." *Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990); *see Lyons*, 461 U.S. at 108.

The alleged May 19, 2020 search of Villanueva's home, Compl. ¶¶ 159-71, does not support Plaintiffs' claims of future harm by Defendants. Plaintiffs admit that the search was conducted not by the Federal Agency Defendants, but by state officials. *Id.* ¶ 208. Although Villanueva and VOLC allege that they fear "future enforcement by state actors operating at the behest of the DEA," *id.* ¶ 225, Judge Orrick already found that their allegations of a "federal-state conspiracy" were "baseless and speculative," ECF No. 57 at 23, *see infra* Section IV.A. Moreover, one past event does not establish a credible future threat given that Villanueva admits to many years of ayahuasca use and distribution without incident otherwise. Compl. ¶¶ 72-75, 208; *see Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (no credible threat of future 4th Amendment injury where police stopped plaintiff only once in 10 years).

The Department of Homeland Security's ("DHS") alleged seizures of AYA's and

NAAVC's imported ayahuasca at the border, Compl. ¶¶ 138-41, are also insufficient. In no case could these allegations support standing for Villanueva and VOLC. As to AYA and NAAVC, the seizures alone cannot establish any genuine threat of imminent prosecution given that DHS has broad authority to inspect all packages entering the United States without any individualized suspicion, *United States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008), and AYA and NAAVC do not claim that the seizures owed to any investigation aimed at them. In fact, eleven months have passed since DHS allegedly first seized their ayahuasca, Compl. ¶ 138, and Plaintiffs do not allege any resultant threats or proceedings. Finally, neither AYA nor NAAVC allege any concrete plan to import ayahuasca in the future, *see supra* pp. 6-7, and so even if these seizures suffice to establish a "specific threat" to initiate proceedings for importation, there is no established future importation to prosecute. *Cf. Oklevueha*, 676 F.3d at 836 (finding that past seizures of plaintiff's marijuana obviated *Thomas*'s second prong only after concluding that plaintiff had alleged a concrete plan to continue violating CSA in the future).[5]

**Third and finally**, the DEA's lack of historical prosecution under the CSA for ayahuasca use also undermines Plaintiffs' claims that they face a genuine threat of imminent prosecution. *See Thomas*, 220 F.3d at 1140. Plaintiffs do not point to a single federal criminal prosecution relating to ayahuasca, which is telling given that there is a "community" of organizations and people using ayahuasca, Compl. ¶ 188, including AYA, which has been distributing ayahuasca since 2015, *id.* ¶ 43; Villanueva, who admits he has "no criminal record" despite his "announced history of conducting visionary church ceremonies," *id.* ¶ 208; and two non-party groups identified in the Complaint, who also have not faced prosecution,[6] *see id.* ¶¶ 107-10.

---

[5] While AYA's and NAAVC's allegations regarding the ayahuasca seizures are insufficient to support a claim for injunctive relief predicated on *future* harm, they may sufficiently allege an injury-in-fact to support their claim for relief for *past* harm relating to those seizures, *see* Compl. at 82, ¶ 3 (seeking an order directing DHS to return the seized ayahuasca). However, any such claim for past harm lacks redressability, since for each of the four allegedly seized packages, Compl. ¶¶ 138-41, DHS either does not currently possess the package in question or the Complaint has not provided sufficient information for DHS to determine whether it possesses it. *See* Ex. A (Decl. of Lee Baxley ¶ 3); Ex. B (Decl. of Lionel Andrade ¶¶ 3-4).

[6] On the contrary: for one of those non-parties, the DEA has "completed the fact-finding process associated with" that group's RFRA petition, "begun adjudicating [its] petition," and anticipates that it will "issue a final determination on [the] petition on or about April 15, 2021."

8

Although organizations using ayahuasca have been the subject of CSA civil litigation, *see* Compl. ¶¶ 85-87, the two cases Plaintiffs identify were pre-enforcement lawsuits brought against, not by, the DEA. Moreover, the two-decade-old attempts by the federal government to seize substances containing DMT described in those cases are not relevant here: they occurred before the Supreme Court's 2006 ruling in *O Centro*, pursuant to which the DEA abandoned its previous practice of categorically not considering exemptions to the CSA's ban on Schedule I substances. *See Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1214 (D. Or. 2009). Since 2009, DEA has considered exemptions for "visionary churches," yet Plaintiffs have refused to engage in that process.

### B.  Any Genuine Threat of Imminent Prosecution Would Not Be Fairly Traceable to the Federal Agency Defendants

Even if each Plaintiff could establish an injury-in-fact as to each of the CSA provisions for which they demand an exemption under RFRA, they would still lack standing. Plaintiffs must also show that any injury is "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (cleaned up). Courts, including the Ninth Circuit, have held that criminal defendants lack standing to assert a RFRA defense to prosecution where they could have applied for a permit to engage in the otherwise illegal activity, and yet failed to do so. *See, e.g.*, *Hugs*, 109 F.3d at 1378; *United States v. Winddancer*, 435 F. Supp. 2d 687, 693 (M.D. Tenn. 2006).

Similarly here, any genuine threat of imminent criminal prosecution Plaintiffs might face would be traceable to their own refusal to seek from the DEA the exemptions for which they claim to qualify. *See, e.g.*, Compl. ¶ 104. Plaintiffs allege no legitimate reason for their failure to seek an exemption. First, as stated above, the Complaint fails establish that the process for seeking an exemption is futile. *See supra* Part I. Second, although Plaintiffs claim that AYA chose not to file its petition over concerns that its founder would thereby waive his Fifth Amendment rights, Compl. ¶ 104, those alleged concerns are simply not credible (or are at least now moot), given that Plaintiffs (and AYA's founder, Scott Stanley) now freely admit to

---

Joint Status Report at 2-3, ECF No. 27, *Soul Quest Church of Mother Earth, Inc. v. Garland, et al.*, 6:20-cv-701-WWB-DCI (M.D. Fla. Feb. 22, 2021).

years of numerous violations of the CSA. *See, e.g.*, Compl. ¶¶ 5, 39, 43, 104, 139, 140; *see also* ECF No. 49 at 7. In any event, contrary to Plaintiffs' claims, applying for an exemption presents no valid Fifth Amendment concern. The 2009 Guidance makes clear that "[n]o petitioner may engage in any activity prohibited under the [CSA] unless the petition has been granted." *Supra* p. 2 n.3 (2009 Guidance) (requesting the name of the controlled substance the party "wishes to use" and details about its "anticipated" handling of the substance). Moreover, Plaintiffs do not allege that any person has been subjected to criminal process on the basis of their exemption application. Although AYA objects that it did not want to stop using ayahuasca while any petition was pending, Compl. ¶ 104, the cited concern only highlights that AYA's *choice* to forego the exemption process caused its alleged injuries.

### C. Plaintiffs Lack Prudential Standing Because They Have Not Exhausted Available Administrative Remedies

Finally, even if Plaintiffs could establish constitutional standing for their RFRA claim, the Court should nevertheless exercise its discretion to decline to review Plaintiffs' claims and instead require Plaintiffs to exhaust available administrative remedies. Although RFRA does not require exhaustion, courts have discretion to require exhaustion even when the governing statute does not. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Such "[j]udicially-imposed or prudential exhaustion is not a prerequisite to the exercise of jurisdiction, but rather is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking." *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1037 (9th Cir. 2010) (citation omitted). The doctrine serves many of the same purposes as the APA's final agency action requirement, *see supra* Part I, including deference to the expertise of the Executive Branch, prevention of "frequent and deliberate flouting of administrative processes," and the production of "a useful record for subsequent judicial consideration, especially in a complex or technical factual context." *McCarthy*, 503 U.S. at 145. If required to exhaust their administrative remedies, Plaintiffs might receive the exemptions they seek, mooting this case. If instead the DEA denies the petition, Plaintiffs would have the opportunity to be heard before the Court of Appeals, which would rule on a fully developed factual record (absent here). *See,*

*e.g.*, *Perkel*, 365 F. App'x at 755-56.

### III.   PLAINTIFFS' RFRA CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Plaintiffs' RFRA claim also fails to state a claim upon which relief could be granted. RFRA requires a plaintiff to show "that the government's action was a (1) substantial burden on a (2) sincere (3) exercise of religion." *Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1145 (N.D. Cal. 2007), *aff'd*, 365 F. App'x 817 (9th Cir. 2010). Plaintiffs' allegations fail to satisfy this standard for at least three reasons.

First, the burden imposed on Plaintiffs' alleged exercise of religion is not "substantial" as a matter of law. Plaintiffs claim that they are "burdened by the prohibitions" in the CSA. Compl. ¶ 133. But that characterization is incorrect, given the DEA's religious-based exemption process. More accurately, the CSA's prohibitions function as a prophylactic measure that remains in place until an applicant is able to demonstrate entitlement to an exemption. The question is thus whether Plaintiffs' religion is substantially burdened, not by the CSA's *prohibitions*, but by the DEA's *regulatory exemption process*. *See, e.g.*, *United States v. Tawahongva*, 456 F. Supp. 2d 1120, 1132 (D. Ariz. 2006) ("[A]lthough slightly burdened, [Plaintiff was] not substantially burdened [under RFRA] by the requirement that he acquire a permit" excepting his alleged religious exercise from criminal sanction); *see also United States v. Friday*, 525 F.3d 938, 947-48 (10th Cir. 2008) ("We are skeptical that the bare requirement of obtaining a permit can be regarded as a 'substantial burden' under RFRA[.]").

Second, Plaintiffs fail to sufficiently allege any "substantial burden" as they do not claim that they (or any alleged members) have been forced to stop practicing their religion. *See* Compl. ¶¶ 134-35, 188-190. Under RFRA, a burden on religious exercise becomes "substantial" when parties are "coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1069-70 (9th Cir. 2008). And while Plaintiffs assert conclusorily that such coercion has occurred, *see* Compl. ¶ 134, they do not claim that any Plaintiff (or alleged member) has actually stopped using ayahuasca; they allege instead only vague claims of "chilling effects," including that some AYA members are

allegedly "hesitant" to tell others about their ayahuasca use. *See id.* ¶¶ 189-90.[7] Plaintiffs' allegations of years of ayahuasca use, distribution, and importation further belie that they have been coerced to act contrary to their religious beliefs. *See* Compl. ¶¶ 43-51, 71-74, 138-41.

Third, Plaintiffs' fail to satisfy RFRA's "exercise of religion" element for each activity covered by the CSA for which they seek an injunction. Plaintiffs seek a sweeping injunction that would "establish[] [their] right to exemptions from the prohibitions on manufacturing, distributing, or dispensing a controlled substance in [21 U.S.C.] § 841(a)(2), and [from] the prohibition on importation in § 952(a) of the CSA." Compl. ¶ 150; *see also id.* at 81, ¶¶ 1(e)-(f). While Plaintiffs allege that AYA's exercise of religion includes the use and distribution of ayahuasca, Compl. ¶¶ 43-44, 132, and that NAAVC's exercise of religion includes the importation and distribution of ayahuasca, *id.* ¶¶ 60, 63, Plaintiffs assert no such allegations for any of the several other CSA-prohibited activities for which they seek an injunction and RFRA exemption. Indeed, as explained above, *supra* pp. 6-7, some Plaintiffs do not even allege that they engage in the importation, manufacturing, or distribution of ayahuasca *at all*. Plaintiffs' claims therefore should be dismissed to the extent that they seek an injunction extending beyond their allegedly religious activities. *See Church of the Holy Light of the Queen v. Holder*, 443 F. App'x 302, 303 (9th Cir. 2011) (holding that an injunction issued under RFRA "should not reach more conduct than that which . . . violated RFRA") (unpublished opinion).[8]

## IV.   PLAINTIFFS' SECTION 1983 CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Plaintiffs assert a claim under 42 U.S.C. § 1983 against the DEA, asserting that the DEA retaliated against Villanueva by acting under color of state law and conspiring with Arizona officials to violate his rights during a May 2020 search.  Compl. ¶¶ 192-231. However,

---

[7] To the extent Plaintiffs claim that they have been substantially burdened by an inability to speak freely about their ayahuasca use, such is not a burden on their alleged religious practice of using ayahuasca. In any event, neither the CSA nor Defendants could be the source of any such burden, as neither the CSA nor any federal law criminalizes speech about illegal drug use.

[8] Plaintiffs' also assert a Declaratory Judgment Act claim, Compl. ¶¶ 276-78, but it should be dismissed for the same reasons as Plaintiffs' substantive claims because "the Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action," *Cty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1215-16 (N.D. Cal. 2017).

the Ninth Circuit has spoken clearly about the viability of § 1983 claims against federal defendants: "Lest there be any continuing confusion, we . . . remind the Bar that by its very terms, § 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (finding plaintiff's complaint "invalid on its face in its reliance upon § 1983 as a cause of action against alleged federal government actors"). And even absent this clear precedent, Plaintiffs' allegations that DEA was motivated by "retaliatory animus towards Villanueva" to pass along an anonymous tip to the County, Compl. ¶¶ 194, 159, lack facial plausibility. Accordingly, this claim must be dismissed under Rule 12(b)(6).

### A. Plaintiffs Have Failed to Sufficiently Plead that the DEA Acted Under Color of State Law or that a Conspiracy Existed

Plaintiffs' § 1983 claim fails because the allegations both that DEA officials acted under color of state law and that a federal-state conspiracy existed are baseless, speculative, and wholly conclusory. Indeed, as Judge Orrick found when denying Plaintiffs' motion for a preliminary injunction, Plaintiffs' previous Complaint's materially similar allegations of a "federal-state conspiracy" were so "baseless and speculative" that "the Section 1983 claim might not survive a Rule 12(b)(6) motion." ECF No. 57 at 23.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," as opposed to alleging facts that "are merely consistent with a defendant's liability[.]" *Iqbal*, 556 U.S. at 678 (citation omitted). Even where "a plaintiff's specific factual allegations may be *consistent* with a . . . claim," dismissal is proper where "there are other 'more likely explanations' for a defendant's conduct." *Williams v. Ryan*, No. CV-2000-068, 2020 WL 1188337, at *1 (D. Ariz. Mar. 12, 2020) (quoting *Iqbal*, 556 U.S. at 681).

Under the terms of § 1983, "a district court must find that the defendants acted 'under color of state law' and deprived the plaintiffs of their rights under federal law." *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992) (finding no § 1983 violation by federal defendants because they "derived their power exclusively from federal law and acted without any significant cooperation or assistance from" the state officials). Because federal officials "generally do

not act under 'color of state law,'" they are usually not liable under Section 1983. *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988); *see District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973).

Plaintiffs acknowledge, as they must, that the DEA derives its authority from federal law. Compl. ¶ 7 & n.1. Consistent with that authority, to the extent any DEA official engaged in any of the acts alleged in the Complaint, they acted exclusively under their authority to enforce the CSA. *See* ECF No. 41-1 ¶¶ 4-7.[9] While the CSA directs that the DEA shall cooperate with state and local agencies in preventing the traffic and abuse of controlled substances, 21 U.S.C. § 873, this level of cooperation—including through the HIDTA program, *see* 21 U.S.C. § 1706—does not mean federal officers are acting under color of state law for purposes of § 1983. *See Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997) (participating in, and implementation of, a "cooperative federalism scheme" is insufficient to subject federal officers to § 1983 liability); *Olson v. Norman*, 830 F.2d 811, 821 (8th Cir. 1987) ("The intergovernmental nature of a joint state-federal program does not by itself make out a conspiracy.").

Plaintiffs thus fail to establish that the DEA was acting under color of state law. Their allegations do not show the required "sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself.'" *Cabrera*, 973 F.2d at 743; *see also Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008) (explaining that *Cabrera* "reaffirmed" the "long-standing" "sufficiently close nexus" requirement). For example, in *Ibrahim*, the Ninth Circuit found that the required "sufficiently close nexus" was lacking where "the federal defendants acted pursuant to federal laws," and the state officials "had nothing to do" with the federal government's decisions and actions. 538 F.3d at 1256-57. So, too, here: the DEA officials acted pursuant to the federal CSA, *see* Compl. ¶ 7 & n.1, and no state official had anything to do with Agent Paddy's decision to pass along a tip about Villanueva to the County Sheriff's Office, *see* ECF

---

[9] The court may take judicial notice of "matters of public record" without converting this motion into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); Fed. R. Evid. 201(b)(2) (a "judicially noticed fact" is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Despite multiple opportunities to do so, including when amending their complaint, Plaintiffs have not disputed the facts in Defendants' sworn declarations credited by Judge Orrick at the preliminary injunction stage, ECF No. 57 at 18-19.

No. 41-1 ¶¶ 5-7. The DEA had only *de minimis* involvement in the County's execution of a state-issued warrant on Villanueva, and has never possessed any of Villanueva's seized property. *See* ECF No. 41-1 ¶ 8; ECF No. 41-4 ¶¶ 3-8. Indeed, Judge Orrick agreed when denying Plaintiffs' preliminary injunction motion that "plaintiffs have likely not demonstrated" *Cabrera*'s sufficiently close-nexus requirement. ECF No. 57 at 23.

Plaintiffs' § 1983 claim additionally fails because the Complaint does not establish any conspiracy. While § 1983 does not, by its terms, have conspiracy as a required element, the Complaint's Third Claim centers around what Plaintiffs call a "conspiracy to violate Villanueva's civil rights." Compl. ¶ 212; *see also generally id.* ¶¶ 200-31. To prove a conspiracy between a state and other parties under § 1983, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1548 (9th Cir. 1989) (*en banc*) (quotations and citation omitted). While "each participant in the conspiracy need not know the exact details of the plan, . . . each participant must at least share the common objective of the conspiracy." *Id.* at 1541.

Here, Plaintiffs do not allege facts sufficient to meet this standard. Rather, all Plaintiffs allege is that: (1) "Shay was prompted to initiate enforcement action against Villanueva by his HIDTA boss, [Micah] Kaskavage," a Phoenix Police Department officer detailed to the HIDTA Arizona SW Task Force, Compl. ¶ 204; (2) "[a]ll of Shay's actions were contemplated, intended and furthered by Agent Paddy's initiating the investigation of Villanueva from a retaliatory motive," *id.* ¶ 168; and (3) "[p]ursuant to the conspiracy formed at the DEA's instigation, and using HIDTA as their meeting ground and funding source, Maricopa County and Shay initiated an investigation of Villanueva to further the purposes of the conspiracy," *id.* ¶ 205. In none of these wholly conclusory allegations do Plaintiffs allege either that the DEA passed along its "suggestion or request" to conspire to deprive Villanueva of his civil rights or, more importantly, that Kaskavage or Shay and the "agents of the DEA" had any joint understanding—let alone any discussion—about an intention to deprive Villanueva of his civil rights. Although Plaintiffs allege that Paddy told Kaskavage that the DEA wanted HIDTA to search Villanueva's home, "by whatever means might be required, including the fabrication of

15

evidence," and that Shay "mak[e] inculpatory accusations against Villanueva in the [search] warrant affidavit with knowledge of their falsehood, a reckless disregard for the truth, and the preconceived intention to mislead the reviewing magistrate," *id.* ¶ 162, these allegations are—in the words of Judge Orrick—"baseless and speculative," ECF No. 57 at 23. And even if these allegations were well-founded, the Complaint fails to "connect the dots": it does not allege that Shay ever communicated with Paddy, or that Kaskavage relayed the objective of any conspiracy to Shay. *See* Compl. ¶ 204.

Finally, even if Plaintiffs' allegations supported a § 1983 conspiracy claim, defendants' sworn representations refute them, as they demonstrate that there was in fact no meeting of the minds or shared objective between DEA officials and state officials. Paddy had never heard of NAAVC or its attorney or their letter until August 2020. ECF No. 41-1 ¶ 9. And the supervisor of the DEA's Phoenix task force had not heard of NAAVC or its attorney or their letter until months after the May 19 search. *See* ECF No. 41-4 ¶¶ 6-8. No other DEA official is alleged to have been involved in the alleged conspiracy.[10]

### B. The Allegations that DEA Retaliated Against Plaintiffs Are Implausible

Plaintiffs' § 1983 claim fails for an additional reason. The viability of that claim depends in part on the plausibility of Plaintiffs' allegations that DEA held a "retaliatory animus towards Villanueva," which motivated the agency to pass along an anonymous tip it had received regarding his activities to the County. Compl. ¶¶ 194, 159. Plaintiffs claim DEA "conceived" this animus "when it discovered that [Villanueva] was . . . [involved with] promoting the Change.org petition, . . . sending the DEA Letter requesting rescission of the Guidance,[11]

---

[10] Plaintiffs' § 1983 claim is also not redressable and should be dismissed under Rule 12(b)(1) to the extent it seeks an injunction prohibiting the Federal Agency Defendants from "[u]tilizing any evidence derived from the unconstitutional pre-search investigations and May 19, 2020 search of the Vine of Light Church and Villanueva's home and premises in any proceeding"; and (2) "compelling the return of all property seized[.]" Compl. at 76, 81-84. The DEA did not conduct any "pre-search investigations" related to the search, and does not have any evidence derived from or any property seized during the search. ECF No. 41-4 ¶ 7.

[11] The Court may consider NAAVC's letter to DEA, ECF No. 41-3, without converting this motion into a motion for summary judgment. For, while Plaintiffs did not attach the letter to the Complaint, the letter has been "incorporated by reference into" the Complaint because "the plaintiff refers extensively to" it and it "forms the basis of the plaintiff's claim." *See United*

1   and . . . commencing this action." *Id.* ¶ 194.

2       These allegations, however, lack facial plausibility, as they are largely grounded in spec-

3   ulation, rather than fact. Plaintiffs present no facts suggesting "animus" or retaliatory intent.

4   The § 1983 claim should fail for that reason alone. *See Williams*, 2020 WL 1188337, at *1.

5   Moreover, the more likely explanation for DEA's actions—that the DEA was simply carrying

6   out its enforcement duties in the normal course—has been confirmed. Judge Orrick already

7   found that "defendants' sworn representations"—that the DEA had not yet received

8   NAAVC's letter when DEA sent the County the Villanueva tip—together with the letter itself,

9   refute Plaintiffs' allegation concerning the letter. ECF No. 57 at 18-19; ECF Nos. 41-1, 41-2,

10  41-3. Similarly, Plaintiffs' allegation that the "retaliatory animus" arose out of the initiation of

11  this lawsuit is refuted by Defendants' sworn representations (already accepted by Judge Orrick,

12  ECF No. 57 at 18) that Paddy informed the County about the tip nearly four months *before*

13  Plaintiffs filed this suit. *Compare* Original Compl., ECF No. 1 (filed May 5, 2020) *with* ECF No.

14  41-1 ¶¶ 5-6. All that remains, then, as possible grounds for any animus is Villanueva's role

15  "promoting the Change.org petition." Compl. ¶ 194; *see also id.* ¶¶ 159-60. But Plaintiffs offer

16  no allegation that anyone at DEA was aware of the online petition, or NAAVC or Villanueva's

17  role in "promoting" it. Finally, in support of their conclusory allegation that Paddy was moti-

18  vated by "retaliatory animus," Plaintiffs offer only their own supposition that "[t]here was no

19  other reason why one call made to the DEA tip line about one person holding religious cere-

20  monies would warrant an immediate investigative referral to local drug-lab law enforcement[.]"

21  Compl. ¶ 160. But the much more plausible "other reason" is that the DEA was simply car-

22  rying out its routine CSA-enforcement responsibilities, and indeed, that is confirmed by De-

23  fendants' sworn representations. ECF No. 57 at 20 (crediting testimony that "the DEA for-

24  warding tips to local law enforcement is 'not unusual'").

## CONCLUSION

26      For the foregoing reasons, the Court should grant this motion to dismiss.

28  *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (quotations and citations omitted).

17

Dated: March 22, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ Kevin P. Hancock
KEVIN P. HANCOCK
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-3183
Fax: (202) 616-8470
E-mail: kevin.p.hancock@usdoj.gov

*Attorneys for the Federal Agency Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2021, I electronically transmitted the foregoing Federal Agency Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint [Doc. 77] to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

/s/ Kevin P. Hancock
KEVIN P. HANCOCK