PAUL ANTHONY MARTIN
Acting United States Attorney
District of Arizona

KWAN PIENSOOK
Arizona State Bar No. 030743
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Facsimile:  (602) 514-7693
Email: Kwan.Piensook@usdoj.gov

*Attorneys for Defendant Paddy*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yage Assembly, North American Association of Visionary Churches, Clay Villaneuva, and the Vine of Light Church,<br><br>Plaintiffs,<br><br>v.<br><br>William Barr, Attorney General of the United States; Timothy J. Shea, Acting Administrator of the U.S. Drug Enforcement Administration; Chad F. Wolf, Acting Secretary of the Dept. of Homeland Security; Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection; the United States of America; Maricopa County, Matthew Shay, and Marco Paddy,<br><br>Defendants.[1] | Case No. 2:20-CV-02373-MTL<br><br>**DEFENDANT MARCO PADDY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Doc. 77)** |

---

[1]  Merrick B. Garland, D. Christopher Evans, Alejandro N. Mayorkas, and Troy Miller have been substituted for Jeffrey A. Rosen, Timothy J. Shea, Chad F. Wolf, and Mark A. Morgan, respectively, as defendants in their official capacities in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1   Defendant Marco Paddy, pursuant to Federal Rule 12(b)(6), moves to dismiss
2   Plaintiffs' Third Amended Complaint ("Complaint") (Doc. 77).[2,3]  Specifically, Plaintiffs'
3   Complaint fails to state a claim under the Religious Freedom Restoration Act because (1)
4   Defendant Paddy's actions did not substantially burden the exercise of religion and (2) he
5   is entitled to qualified immunity.  Further, Plaintiffs' 42 U.S.C. § 1983 claim fails as to
6   Defendant Paddy because he is not a state actor.  This Motion is supported by the following
7   Memorandum of Points and Authorities and the Court's entire record in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

8

9   **I.  Factual and Procedural Background**

10   On May 5, 2020, Plaintiffs filed their original complaint in the United States District
11   Court Northern District of California against various federal defendants.  (Doc. 1).  In
12   general, Plaintiffs' original complaint alleged that "they use ayahuasca, which contains the
13   controlled substance DMT [Dimethyltryptamine], as part of their sincere religious
14   practice" and "requested an exemption from the federal Controlled Substances Act under
15   the Religious Freedom Restoration Act [("RFRA")]."  (Doc. 57, 1:16-19).  On June 16,
16   2020, Plaintiffs filed an amended complaint that added new defendants from the State of
17   Arizona and Maricopa County.  (Doc. 12).  As to the State and County defendants,
18   Plaintiffs "alleged that a law enforcement investigation, search, and seizure carried out by
19   the Maricopa County Sheriff's Office was a pretextual attempt to interfere with this suit."
20   (Doc. 57, 1:20-22).  Plaintiffs' lawsuit was ultimately transferred to the United States
21   District Court for the District of Arizona.

22   Plaintiffs filed the operative complaint (Doc. 77) on January 21, 2021.  The
23   Complaint names for the first time, United States Drug Enforcement Administration

24

25   [2]  Defendant Paddy and Plaintiffs met and conferred regarding Defendant Paddy's Motion
26   to Dismiss by email on April 2, 2021 and April 5, 2021.  The parties were unable to come
     to an agreement.

27   [3] Plaintiffs refer to Doc. 77 as their Third Amended Complaint.  However, based on the
28   docket, Doc. 77 appears to be Plaintiff's Second Amended Complaint.  (*Cf.* Doc. 1; Doc.
     12).

1   ("DEA") Agent Marco Paddy, as a defendant in his individual capacity.  (Doc. 77, ¶ 8).

2   As to Defendant Paddy, the Complaint alleges that on January 8, 2020, he received an

3   anonymous phone call to the DEA tip line.  (Doc. 77, ¶¶ 159, 164; Doc. 39-2:2; Doc. 39-

4   3, 15-16).[4]  Plaintiffs allege that Defendant Paddy emailed Micah Kaskavage regarding the

5   tip.    (Doc. 77, ¶ 159; Doc. 39-2).   The Complaint describes Officer Kaskavage as a

6   "Phoenix Police Department officer detailed to the HIDTA [High Intensity Drug

7   Trafficking Area] Arizona SW Task Force and the "HIDTA boss" of Defendant Shay.

8   (Doc. 77, ¶¶ 159, 204).  The email stated:

> Caller reported that Clay Villanueva conducts Ayahuasca Ceremonies at the
> Center for Divine Awakenings located at 15801 North 40th Street, Phoenix, AZ.
> The caller stated that during ceremony Mr. Villanueva provides DMT to his
> patients with DMT at a cost.  When asked how Villanueva obtains DMT, the
> caller stated that he makes the DMT at an unknown location.   The next
> ceremony will occur on Friday January 10, 2020, at 7:00 pm, at the Center for
> Divine Awakening.  The caller provided a website where these ceremonies are
> offered SmileQuick.com.  The caller stated that Villanueva can be located on
> Facebook as well (profile name Clay Villanueva).  Furthermore, the caller stated
> that Villanueva collects payments through paypal (Vol@Wavz.net) for those
> interested in receiving a dose of DMT.

(Doc. 39-2, 2).

        After Defendant Paddy communicated the tip to Officer Kaskavage, Plaintiffs allege

that Officer Kaskavage initiated an investigation into Plaintiff Villanueva through

Defendant Shay.  (Doc. 77, ¶¶ 159, 162-168, 204).  Defendant Shay obtained a warrant,

issued on May 17, 2020, by the Maricopa County Superior Court, to search Plaintiff

Villanueva's home (Doc. 77, ¶¶ 162, 204; Doc. 39-3).  Defendant Shay executed the search

warrant on Plaintiff Villanueva's house on May 19, 2020.  (Doc. 77, ¶ 208; Doc. 39-4).  As

a result of the search, Plaintiffs allege that Defendants Shay and Maricopa County seized

"[Plaintiff] Villanueva's personal property, including Sacramental Ayahuasca, medical

---

[4] "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

marijuana, United States currency, and mobile telephones." (Doc. 77, ¶ 258).  Specifically, the Maricopa County Sheriff's Office reported that the following items were found at Plaintiff Villanueva's house: 4.19 lbs. of marijuana, 91 lbs. of Ayahuasca paste, 15 bottles of Ayahuasca liquid, 260.5 grams of suspected psilocybin mushrooms, and $14,025 United States currency.  (Doc. 39-4, 4).   The Complaint alleges that Defendant Shay ultimately arrested Plaintiff Villanueva.  (Doc. 77, ¶ 209).

## II.   Legal Standard

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 579 (2007).  The Court in *Twombly* explained that a complaint is read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief.  *Id.* at 556 n.3.  While blanket assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests.  *Id*.  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Id.* at 555 (quoting 5 C. Wright & A. Miller, § 1216, pp. 235- 36 (2004)).  Instead, a plaintiff must plead "enough facts" to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court emphasized that, while a trial court examining a complaint for sufficiency must accept the factual allegations as true, the trial court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 678.   Similarly, "'naked assertion[s]' devoid of 'further factual enhancement,'" as well as "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," are insufficient.  *Id*.  (quoting *Twombly*, 550 U.S. at 557).  Determining whether a complaint states a plausible claim for relief is "a context-specific task" requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.  Where well-

1    pleaded facts only "permit the court to infer more than the mere possibility of misconduct,"

2    the complaint has not shown that a plaintiff is entitled to relief. *Id* at 678-79. (holding that

3    a claim possesses "facial plausibility" only when a plaintiff pleads "sufficient factual

4    matter" to permit "the court to draw the reasonable inference that the defendant is liable

5    for the misconduct alleged")*; Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007)

6    ("Conclusory allegations and unreasonable inferences, however, are insufficient to defeat

7    a motion to dismiss.").  Satisfying this standard requires that a plaintiff demonstrate "more

8    than a sheer possibility that a defendant has acted unlawfully," and is satisfied only when

9    a plaintiff pleads more than "facts that are merely consistent with a defendant's liability."

10    *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

11    **III.    Argument**

12
13               **A. Plaintiff Villanueva Fails to State a RFRA Claim Against Defendant Paddy**

14    Count One of the Complaint is entitled "First Claim for Relief by AYA, NAACV,

15    Villanueva and VOLC Against the United States, All Agency Defendants, and DEA Agent

16    Marco Paddy In His Personal Capacity Under [RFRA]."  Plaintiffs' RFRA claim is divided

17    into two parts.  The first part of the claim focuses on "RFRA Plaintiffs' (AYA, Villanueva,

18    VOLC, and NAACV) challenge against the United States and Agency Defendants' alleged

19    policy in denying religious exemptions of the Controlled Substances Act for the use of

20    Ayahuasca.  (Doc. 77, ¶¶ 131-158, 171).  The second part of the RFRA claim focuses on

21    the actions of Defendant Paddy.  Specifically, Plaintiff Villanueva[5] alleges that Defendant

22    Paddy violated RFRA when he passed on the tip he received on the DEA tip line to Officer

23    Kaskavage.  (Doc. 77, ¶ 159).  Plaintiff Villanueva further alleges that Defendant Paddy

24    initiated an investigation into him by "communicat[ing] to Kaskavage that the DEA wished

25    HIDTA to conduct a search of Villanueva's home, by whatever means might be required,

26

27
28    [5] Although Paragraph 159 references Plaintiff NAACV, because the remaining allegations and claims for damages focus on Plaintiff Villanueva, Defendant Paddy treats the RFRA claim as raised by Plaintiff Villanueva against Defendant Paddy.  (*See* Doc. 77, ¶¶ 159-170).

1   including the fabrication of evidence."  (Doc. 77, ¶ 162).  Officer Kaskavage, in turn,

2   allegedly caused Defendant Shay to investigate Plaintiff Villanueva. (Doc. 77, ¶ 162).  The

3   Complaint alleges that Defendant Shay obtained a search warrant based on false

4   information, which led to the allegedly unlawful search of Plaintiff Villanueva's house and

5   arrest by Defendant Shay.  (Doc. 77, ¶¶ 162-170).  As a result of the issuance of the warrant,

6   search of his home, and his arrest, Plaintiff Villanueva claims damages in the form of "lost

7   property, lost income, humiliation, anger, frustration, anxiety, and other forms of painful

8   thoughts and feelings."  (Doc. 77, ¶¶170-171).

9        Plaintiffs' RFRA claim fails as to Defendant Paddy because Defendant Paddy's

10  alleged conduct, accepted as true, did not substantially burden Plaintiff Villanueva's

11  exercise of religion, and because Defendant Paddy is entitled to qualified immunity.

12
13              **i.  Defendant Paddy's Actions Did Not Impose a Substantial
                   Burden on Plaintiff Villanueva**

14       "To establish a prima facie RFRA claim, a plaintiff must present evidence sufficient

15  to allow a trier of fact rationally to find the existence of two elements.  First, the activities

16  the plaintiff claims are burdened by the government action must be an 'exercise of

17  religion.'   Second, the government action must 'substantially burden' the plaintiff's

18  exercise of religion."  *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1068 (9th Cir.

19  2008) (citing 42 U.S.C. § 2000bb-1(a) (internal citations omitted).  If the plaintiff fails to

20  establish either element, the RFRA claim fails.  *Navajo Nation*, 535 F.3d at 1068.

21       Under RFRA, a burden is substantial "when individuals are forced to choose

22  between following the tenets of their religion and receiving a governmental benefit

23  (*Sherbert* ) or coerced to act contrary to their religious beliefs by the threat of civil or

24  criminal sanctions (*Yoder* )."  *Navajo Nation*, 535 F.3d at 1070 (citing to *Sherbert v.

25  Verner*, 374 U.S. 398 (1963) *abrogated on different grounds by Holt v. Hobbs*, 574 U.S.

26  352 (2015) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)).  "An effect on an individual's

27  'subjective, emotional religious experience' does not constitute a substantial burden nor

28  does 'a government action that decreases the spirituality, the fervor, or the satisfaction with

which a believer practices his religion.'" *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1061 (9th Cir. 2020) (quoting *Navajo Nation*, 535 F.3d at 1063, 1070)).  Whether an action imposes a "substantial burden" is a question of law.  *Guam v. Guerrero*, 290 F.3d 1210, 1222 n.20 (9th Cir. 2002) (recognizing that "a prosecution for importation of marijuana substantially burdens one's religion is a legal question for courts to decide").  Further, for a RFRA claim, the Court determines whether a causal relationship exists between the alleged wrongful conduct of the individual defendant and the plaintiff's injuries "by the same legal standard as the question of whether the complaint adequately alleges a causal relationship . . . for constitutional purposes." *Wong v. United States*, 373 F.3d 952, 977 (9th Cir. 2004) (citing to *Stevenson v. Koskey*, 877 F.2d 1435, 1439 (1989)).

Here, the actions attributed to Defendant Paddy do not constitute a substantial burden on Plaintiff Villanueva's exercise of religion.   The Complaint alleges that Defendant Paddy passed on a tip to Officer Kaskavage, in which the caller alleged that Plaintiff Villanueva sold DMT. (Doc. 77, ¶¶ 159-170).  The Complaint further alleges that Defendant Paddy "communicated to Kaskavage that the DEA wished for HIDTA to conduct a search of Villanueva's home, by whatever means might be required, including the fabrication of evidence."  (Doc. 77, ¶ 162).  From these actions, Plaintiff Villanueava asserts he suffered the unlawful search of his home, seizure of property, and arrest.  (Doc. 77, ¶¶ 169-170).  However, Defendant Paddy's actions did not result in an alleged RFRA violation because (1) his conduct did not "coerce[] [Plaintiff Villanueva] to act contrary to [his] religious beliefs by the threat of civil or criminal sanctions" and (2) because the causal chain to the alleged violation was disrupted by the intervening and independent actions alleged against Defendant Shay.  *See Navajo Nation*, 535 F.3d at 1070; *see also Wong*, 373 F.3d at 977.

Here, the Complaint does not allege that Defendant Paddy, in his capacity as a DEA agent, personally investigated Plaintiff Villanueva because of the tip.   Nor does the Complaint allege that Defendant Paddy charged or threatened to charge Plaintiff Villanueva with violating any federal statutes.  Instead, the Complaint states:

1
2
-   Defendant Shay obtained a warrant to search Plaintiff Villanueva's house (Doc. 77, ¶ 162);

3
4
-   Defendant Shay and other deputies executed the search warrant on Plaintiff Villanueva's house (*id.* at ¶ 208);

5
6
-   Defendant Shay directed Maricopa County Sheriff's Deputies to seize evidence from Plaintiff Villanueva's house (*id*. at ¶ 258);

7
-   and Defendant Shay arrested Plaintiff Villanueva (*id.* at ¶ 209).

8
9
10
11
12
13
14
Accordingly, to the extent that Plaintiff Villanueva was "coerced to act contrary to [his] religious beliefs by the threat of civil or criminal sanctions," which Defendant Paddy challenges, Defendant Paddy's actions in passing on the tip cannot be characterized as a "threat of civil or criminal sanctions." *See Navajo Nation*, 535 F.3d at 1070. Put another way, no causal nexus can be drawn from Defendant Paddy's actions and the RFRA injuries that Plaintiff Villanueva claims because those injuries relate to actions alleged against Defendant Shay.

15
16
17
18
19
20
21
22
23
24
25
26
27
28
In an attempt to establish a causal chain between Defendant Paddy's actions and Plaintiff Villanueva's alleged RFRA injuries, the Complaint characterizes Defendant Paddy's actions as an instigation or initiation of the investigation that ultimately led to the issuance of a warrant, execution of the search warrant on Plaintiff Villanueva's house, and Plaintiff Villanueva's arrest. (Doc. 77, ¶¶ 159-162). The Complaint further states that Defendant Paddy (1) passed on the tip based on "retaliatory animus of the DEA and officials within the DEA" (Doc. 77, ¶ 160), initiated the tip to "vent to the DEA's retaliatory animus" (*id.* at ¶ 162), and/or utilized the tip "as a convenient vehicle for the DEA's retaliatory animus" (*id.* at ¶ 162). As a preliminary matter, these allegations are conclusory and speculative and thus, the Court need not accept them as true. *See Iqbal*, 556 U.S. 678 (recognizing that the trial court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *Sanders*, 504 F.3d at 910 ("Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss."). Moreover, even if the Court were to accept them as true, the allegations would still fail to

satisfy the requirement that Plaintiff Villanueva demonstrate the causal relationship between Defendant Paddy's actions and his RFRA injuries.

The Ninth Circuit in *Stevenson* stated that to demonstrate a causal relationship or "causal nexus" between the alleged conduct and the alleged injuries:

> [R]equires one of three things before liability may be imposed upon a defendant:
>
> 1. The defendant must do an affirmative act which results in the plaintiff being deprived of his federally protected rights;
>
> 2. The defendant must participate in the affirmative acts of another which, acting concurrently, results in the plaintiff being deprived of his federally protected rights; or
>
> 3. The defendant must omit to perform an act which he is legally required to do which causes the deprivation of the plaintiff's federally protected rights.

*Stevenson*, 877 F.2d at 1439. Even assuming that Plaintiff Villanueva properly supported the allegation that Defendant Paddy "initiated" the investigation based on retaliatory animus, the "causal nexus" under *Stevenson* is still not satisfied because Defendant Paddy did not obtain and execute the alleged unlawful search warrant, nor did he arrest Plaintiff Villanueva.

At most, the Complaint states that:

> Agent Paddy's accusations of Villanueva to Kaskavage were a substantial factor in causing Kaskavage to initiate an investigation by Shay, an MCSO detective detailed to HIDTA. Agent Paddy had communicated to Kaskavage that the DEA wished for HIDTA to conduct a search of Villanueva's home, by whatever means might be required, including the fabrication of evidence. Thus, at Agent Paddy's instigation, Shay procured a warrant to search Villanueva's home, making inculpatory accusations against Villanueva in the warrant affidavit with knowledge of their falsehood, a reckless disregard for the truth, and the preconceived intention to mislead the reviewing magistrate.

(Doc. 77, ¶ 163). However, these allegations only serve to demonstrate that Defendant Paddy was removed by two to three degrees of separation from the alleged RFRA

1   violations.⁶  Here, the Complaint alleges that, after receiving the tip from Defendant Paddy,

2   Officer Kaskavage initiated the investigation into Plaintiff Villanueva through Defendant

3   Shay (Doc. 77, ¶¶ 162, 204), thereafter, Defendant Shay conducted an investigation (*id*. at

4   ¶ 167), applied for a search warrant (*id*. at ¶¶ 162, 167-168), was granted a search warrant

5   by the Maricopa County Superior Court (*id*. at ¶ 208), executed the search warrant on

6   Plaintiff Villanueva's residence (*id*. at ¶¶ 169, 208), and arrested him (*id*. at ¶ 209).  Thus,

7   the conduct of Officer Kaskavage, Defendant Shay, and potentially the judicial officer who

8   issued the search warrant, break any causal chain to Defendant Paddy's actions in passing

9   on the tip.

10      Accordingly, the RFRA claim as to Defendant Paddy fails because Plaintiff

11  Villanueva cannot demonstrate that Defendant Paddy's conduct was a substantial burden

12  on his exercise of religion or was causally related to his alleged RFRA injuries.

13              **ii.      Defendant Paddy is Entitled to Qualified Immunity**

14      Defendant Paddy is also entitled to qualified immunity against Plaintiff

15  Villanueva's RFRA claim.  *See Fazaga*, 965 F.3d at 1062 (recognizing the defense of

16  qualified immunity for RFRA claims).  "'Qualified immunity shields government officials

17  from civil damages liability unless the official violated a statutory or constitutional right

18  that was clearly established at the time of the challenged conduct.'"  *Taylor v. Barkes*, 575

19  U.S. 822, 825 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "Qualified

20  immunity balances two important interests—the need to hold public officials accountable

21  when they exercise power irresponsibly and the need to shield officials from harassment,

22  distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*,

23  555 U.S. 223, 231 (2009); *Wyatt v. Cole*, 504 U.S. 158, 167-68 (1992) ("Qualified

24  immunity strikes a balance between compensating those who have been injured by official

25  conduct and protecting government's ability to perform its traditional functions.").  It is

26  meant to give "government officials breathing room to make reasonable but mistaken

27  ───────────────

28  ⁶ Defendant Paddy does not concede that the search warrant obtained by Defendant Shay
    was unlawful and therefore incorporates by reference Defendant Shay's argument (Doc.
    85, pp. 4-11) that the warrant was supported by probable case.

judgments," and it should apply to protect "all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted).

Qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). When a defendant asserts qualified immunity, courts examine two questions: (1) do the facts establish that the defendant violated a constitutional right? and (2) if so, was that right clearly established at that time? *Plumhoff v. Richard*, 572 U.S. 765, 773 (2014) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Pearson*, 555 U.S. at 231) (recognizing that qualified immunity applies if the official's "conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'"); *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc). "If the answer to either question is 'no,' then the [Defendants] are entitled to qualified immunity." *Reichle*, 566 U.S. at 663. The Court may consider either question first. *Mattos*, 661 F.3d at 440 (citing *Pearson*, 555 U.S. at 236).

A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although there need not be a case directly on point, "existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To be clearly established, the law must be particularized to the facts of the case so that the unlawfulness is apparent. *White v. Pauly*, 137 S. Ct.  at 551-52 (2017); *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (en banc) ("[W]hat is required is that government officials have 'fair and clear warning' that their conduct is unlawful.") (citation omitted). It is a plaintiff's burden to prove "that the right allegedly violated was clearly established." *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

1

2

### 1. No Personal Participation by Defendant Paddy in Alleged Violation of Plaintiff's Rights[7]

3

4

5

6

7

8

9

10

As a threshold matter, for purposes of qualified immunity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution [or a federal statutory right]." *Iqbal*, 556 U.S. at 676; *al-Kidd*, 563 U.S. at 735 (recognizing that the complaint must "plead[] facts showing ... that [those] officials violated a statutory or constitutional right"). Further, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Abbasi*, 137 S. Ct. 1843, 1860 (2017) (quoting *Iqbal*, 556 U.S. at 676).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Here, Defendant Paddy did not personally participate in the alleged violation of Plaintiff Villanueva's rights under RFRA. As articulated previously, *supra* § III(A)(i), Defendant Paddy's personal conduct did not result in a violation of Plaintiff Villanueva's RFRA rights. To reiterate, the Complaint does not allege that Defendant Paddy obtained and/or executed the alleged unlawful search warrant or that he was involved in arresting Plaintiff Villanueva. Further, to the extent the Court considers the conclusory and speculative allegations that Defendant Paddy initiated the investigation into Plaintiff Villanueva, those allegations are insufficient to establish Defendant Paddy's personal involvement in the alleged RFRA violations. The Complaint alleges that Defendant Shay obtained and executed the search warrant and arrested Plaintiff Villanueva. As such, Defendant Paddy cannot be held vicariously liable for wrongful conduct attributed to another individual. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Abbasi*, 137 S. Ct. at 1860. Therefore, Defendant Paddy is entitled to qualified immunity

26

27

28

---

[7] Defendant Paddy incorporates by reference Defendant Shay's argument (Doc. 85, pp. 4-11) that the warrant was supported by probable case. As such, Defendant Paddy is entitled to qualified immunity because no constitutional or statutory right was violated. *See Plumhoff*, 572 U.S. at 773.

because he did not personally participate in the alleged RFRA violations.

### 2. No Clearly Established Law Supports Plaintiff's Claim Against Defendant Paddy.

Even assuming that Plaintiff Villanueva's RFRA rights were violated, qualified immunity protects Defendant Paddy because his "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *See Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is no Supreme Court or Ninth Circuit case law that clearly establishes a RFRA right for an individual to be free from a federal law enforcement officer passing on a tip that he or she received to a state and/or local law enforcement agency. *See Anderson*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

Accordingly, because Defendant Paddy did not personally participate in the violation of Plaintiff Villanueva's alleged RFRA rights, or alternatively, because those rights were not clearly established, Defendant Paddy is entitled to qualified immunity on the RFRA claim.

### B. Plaintiffs Fail to State a 42 U.S.C. § 1983 Claim Against Defendant Paddy

#### i. Defendant Paddy Cannot Be Characterized as a State Actor

"To establish a claim under § 1983, a plaintiff must demonstrate that: (1) the defendants deprived him 'of a right secured by the Constitution and laws of the United States,' and (2) that an individual 'acting under color of state law' accomplished the deprivation." *Paul v. Redwood Nat'l & State Parks Dep't*, No. 17-CV-07197-SI, 2018 WL 4859317, at *5 (N.D. Cal. Oct. 5, 2018) (quoting *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011)). The Supreme Court in *Lugar v. Edmondson Oil Co. Inc.*, recognized that "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." 457 U.S. 922, 937 (1982). "To determine whether an action is fairly attributable to the state, courts apply a two-prong test, asking: (1) whether

the deprivation was 'caused by the exercise of some right or privilege created by the State or ... by a person for whom the State is responsible[,]' and (2) whether 'the party charged with the deprivation ... may fairly be said to be a state actor.' *Paul*, 2018 WL 4859317, at *5 (quoting *Lugar*, 457 U.S. at 937).

In general, federal officials are not considered to be state actors for purposes of 42 U.S.C. § 1983, unless "they are found to have conspired with or acted in concert with state officials to some substantial degree."  *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992).  The Ninth Circuit in *Cabrera* further stated that:

> Federal officials do not become "state actors" unless "[t]he State has so far insinuated itself into a position of interdependence with ... [the federal officials] that it must be recognized as a joint participant in the challenged activity."  To transform a federal official into a state actor, the appellees must show that there is a "'symbiotic relationship' between the [federal defendants] and the state such that the challenged action can 'fairly be attributed to the state.'"

*Cabrera*, 973 F.2d at 742–43 (internal citations omitted).

As a preliminary matter, the allegations within Count Three of the Complaint mainly reference the "DEA" in general and not alleged actions specifically conducted by Defendant Paddy.  (Doc. 77, ¶¶ 192-231; *cf.* ¶ 199 (sole reference to "Agent Paddy")).  Such "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *Krause v. Yavapai Cty.*, No. CV1908054PCTMTLESW, 2020 WL 2512761, at *9 (D. Ariz. May 15, 2020) (citing *Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991) for the proposition that "[c]onclusionary allegations, unsupported by facts [are insufficient] to consider a private party a state actor for the purposes of § 1983) (internal citations and quotation marks omitted)).

Furthermore, the sole allegation that Defendant Paddy "initiated" the operation is insufficient to demonstrate that his actions were fairly attributable to the state or, put differently, that Defendant Paddy's actions were so closely tied to those of state officials as to be treated as the behavior of the state itself.  *See Lugar*, 457 U.S. at 937; *see also Cabrera*, 973 F.2d at 744 ("The touchstone of this analysis is ultimately 'whether there is

1   a sufficiently close nexus between the State and the challenged action of the [federal actors]

2   so that the action of the latter may be fairly treated as that of the State itself.'") (quoting

3   *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

4       Here, the challenged state actions include obtaining and executing the search

5   warrant and arresting Plaintiff Villanueva.  (Doc. 77, ¶¶ 211-219).  As discussed, *supra* §

6   III(A), the Complaint does not allege that Defendant Paddy directly participated in any of

7   these actions.   Further, Plaintiff Villanueva's characterization of Defendant Paddy's

8   conduct in passing on the phone tip as "initiating" the investigation is conclusory and

9   speculative and therefore insufficient to establish that Defendant Paddy was a state actor.

10  Accordingly, the Complaint fails to establish that Defendant Paddy was a state actor for

11  purposes of 42 U.S.C. § 1983 liability.

12  **IV.    Conclusion**

13      Based on the foregoing, Defendant Paddy respectfully requests that the Court grant

14  his Motion to Dismiss and dismiss him completely from this action.

15      Respectfully submitted on 6th day of April, 2021.

16

17      PAUL ANTHONY MARTIN
        Acting United States Attorney

18      District of Arizona

19      *s/ Kwan Piensook*

20      KWAN PIENSOOK
        Assistant U.S. Attorney

21      *Attorneys for Defendant Paddy*

22

23

24

25

26

27

28

- 15 -

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants in this case:

JOHN SULLIVAN (CSB#204648) *Pro Hac Vice*
10857 Kling Street
North Hollywood, California 91602
Tel:818-769-7236 Fax:818-301-2175
Email: Sullivan.John84@gmail.com
CHARLES H CARREON
Charles Carreon Attorney at Law
3241 E Blacklidge Dr.
Tucson, AZ 85716
*Attorneys for Plaintiffs Arizona Yagé Assembly,*
*North American Association of Visionary Churches,*
*Clay Villanueva, and the Vine of Light Church*

KEVIN PAUL HANCOCK
US Dept of Justice - Civil Division - Fed Programs - L St.
1100 L St. NW, Rm. 12304
Washington, DC 20005
Tel: 202-514-3183 Fax: 202-616-8470
Email: kevin.p.hancock@usdoj.gov
*Attorney for Defendants William Barr; Uttam Dhillon*
*Acting Administrator, U.S. Drug Enforcement Administration;*
*Chad Wolf, Acting Secretary, Department of Homeland Security;*
*Mark Morgan, Acting Commissioner, U.S. Customs and Border Protection;*
*the United States of America; Jeffrey A. Rosen, Acting Attorney General;*
*Timothy J Shea, Acting Administrator, U.S. Drug Enforcement Administration*

EVAN F. HILLER
JEFFREY S. LEONARD
Sacks Tierney PA
4250 N Drinkwater Blvd., 4th Fl.
Scottsdale, AZ 85251-3647
Tel: 480-425-2652 Fax: 480-970-4610
Email: evan.hiller@sackstierney.com
          jeffrey.leonard@sackstierney.com
*Attorneys for Defendants Maricopa County, Matthew Shay*

DREW CURTIS ENSIGN
Office of the Attorney General - Phoenix
2005 N Central Ave.
Phoenix, AZ 85004-1592
Email: drew.ensign@azag.gov
*Attorney for State of Arizona, Mark Brnovich*

s/Mary C. Finlon
U.S. Attorney's Office