JOHN SULLIVAN (CSB#204648) Pro Hac Vice
10857 Kling Street
North Hollywood, California 91602
Tel:818-769-7236 Fax:818-301-2175
Email:Sullivan.John84@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Church,
Clay Villanueva, and the Vine of Light Church

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

Arizona Yagé Assembly, North American
Association of Visionary Churches, Clay
Villaneuva, and the Vine of Light Church,

            Plaintiffs,

    vs.

Merrick Garland, Attorney General of the
United States, *et al.*,

            Defendants.

Case No.:20-CV-02373-ROS

OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

I.   STATEMENT OF THE ARGUMENT ................................................................. 1

II.  STATEMENT OF FACTS ................................................................................ 1

III. THE STANDARD ON THIS MOTION ........................................................... 3

IV.  PLAINTIFFS STATE A CLAIM UNDER RFRA ........................................... 3

  A.   Plaintiffs Free Exercise is Substantially Burdened by the DEA's Policy of Total
  Prohibition on Ayahuasca Use and Importation. ........................................... 4

  B.   DEA's Guidance Increases the Burden on Plaintiffs' Free Exercise ................ 6

V.   PLAINTIFFS HAVE STANDING TO BRING THEIR RFRA CLAIMS .......... 7

  A.   Plaintiffs' RFRA Claim is Based on Ongoing Injury, and the Government's "Pre-
  Enforcement" Challenge Argument is a Straw Man ....................................... 7

  B.   Plaintiffs Have Standing To Bring a "Pre-enforcement" RFRA suit ............... 8

  C.   Plaintiffs' Injuries Were Caused by Federal Defendants ................................. 9

  D.   Prudential Standing Based on Exhaustion ...................................................... 10

VI.  DEFENDANTS EFFECTIVELY CONCEDE THAT PLAINTIFFS MAY BRING A
DECLARATORY RELIEF ACT CLAIM ......................................................... 11

VII. PLAINTIFFS' APA CLAIM IS PROPERLY BEFORE THE COURT ............ 11

  A.   Publication and Use of the Guidance is an "Agency Action" .......................... 12

  B.   DEA's Agency Action is Both Unconstitutional and ultra vires ...................... 12

  C.   The Guidance is a "Final" Agency Action ..................................................... 13

    1.   The Guidance was the Consummation of DEA's Decisionmaking Process .......... 13
    2.   The Guidance Contained Legal Consequences ............................................. 14

  D.   Seeking an Exemption From DEA Would be Futile ........................................ 14

VIII. PLAINTIFFS HAVE STATED A CLAIM UNDER § 1983 ............................. 15

  A.   The Federal Defendants Acted under the Color of State Law .......................... 16

  B.   Plaintiffs' Allegations are Plausible ............................................................... 17

IX.  REQUEST FOR LEAVE TO AMEND ........................................................... 17

X.   CONCLUSION ............................................................................................... 17

## I.     STATEMENT OF THE ARGUMENT

Forced to practice their religion under fear of criminal sanction, Plaintiffs come before this Court to fight for their religious rights.  The First Amendment, the Religious Freedom Restoration Act ("RFRA"), and Supreme Court jurisprudence strongly favor Plaintiffs' position and the protection of their rights.  Unfortunately, this suit is necessary because regulatory agencies – namely the Drug Enforcement Agency ("DEA") and Department of Homeland Security ("DHS") – continue to carry out their missions in ways that are contrary to law and irreconcilable with religious freedom.  Plaintiffs respectfully ask this Court to reject the Government's positions in its Motion to Dismiss so conclusively that these agencies will change their policies and respect the religious rights of similarly situated groups in the future.

## II.    STATEMENT OF FACTS

Plaintiff North American Association of Visionary Churches ("NAAVC") is an interdenominational association whose members are substantially burdened by laws prohibiting importation, distribution, and possession of Ayahuasca, an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act (the "CSA").  *See* Dkt. 77, Third Amended Complaint (hereinafter "TAC") ¶¶ 5, 132.

Plaintiff Arizona Yagé Assembly ("AYA") is a member of NAAVC that uses Ayahuasca (also known as yagé) as religious sacrament.  TAC ¶¶ 43, 59.  In communion ceremonies at the AYA Visionary Church, congregants receive the transmission of wisdom and Divine Love that comes through sacramental use of Ayahuasca.  TAC ¶ 132.

On April 22, 2020, NAAVC and AYA were notified that their joint property, a container of Ayahuasca ordered for the use of NAAVC and AYA, had been labeled contraband and seized by the Department of Homeland Security ("DHS") during the customs process.  TAC ¶ 138.  The Government Defendants seized similar shipments of Ayahuasca in October 2020, November 2020, and December 2020.  TAC ¶ 139-41.  Without access to the Ayahuasca seized by the Defendants, AYA does not have a sacrament to share, and AYA congregants are unable to practice their religion.  *Id.*

Plaintiff Clay Villanueva is a 59-year-old religious man and veteran of the United States Navy.  TAC ¶ 69.  In 2017, Villanueva founded Vine of Light Church, a Visionary Church in Arizona where congregants ingest the Ayahuasca sacrament as part of their religious practice.  TAC ¶¶ 75, 215.  Like members of AYA, the congregants of Vine of Light Church are unable to practice their religion without Ayahuasca.  TAC ¶ 215, 222.  The Vine of Light Church was the first church to join the North American Association of Visionary Churches ("NAAVC"), and Villanueva serves on the NAAVC Board.  TAC ¶ 6.  On May 19, 2020, a task force funded by the Drug Enforcement Agency ("DEA") – acting on a DEA-initiated tip – conducted an armed raid on the Vine of Light Church.  TAC ¶ 208.  Villanueva was arrested, the Vine of Light Church's Ayahuasca sacrament was seized, and the other members of the NAAVC were put on notice that they could be next.  TAC ¶¶ 145, 209, 225-226.  Until he was held at gunpoint and arrested at his church-residence, Villanueva had no criminal record.  TAC ¶ 208.

The DEA purports to provide an avenue for religious groups like AYA and Vine of Light Church to apply for exemptions from the CSA.  TAC ¶¶ 12, 93.  In 2009, DEA finalized its policies on religious exemptions and published a document called "*Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act*."  *Id*.  The Guidance imposes substantial burdens on Plaintiffs, such as requiring applicants to disclose inculpatory information and incur significant financial costs before filing a petition.  TAC ¶¶ 102, 116-20.  Despite imposing these substantial burdens, the Guidance is a sham.  TAC ¶ 278(u).  DEA has never granted an exemption under the Guidance.  TAC ¶ 278(p).  DEA has never even acted on a petition submitted under the Guidance, instead allowing petitions to languish for years without action.  TAC ¶ 278(w).  In furtherance of its longstanding policy of refusing regulatory services to Visionary Churches, DEA uses the Guidance to chill Free Exercise by issuing *de facto* cease and desist letters to Visionary Churches.  TAC ¶ 107-09.  DEA also uses the guidance as an investigative tool by "inviting" targeted churches to submit "Petitions for Religious Exemption" ("PREs") that require disclosure of inculpatory information under oath, *i.e.* confessions usable for prosecutorial purposes.  TAC ¶¶ 112, 278(t).

1

2

### III.    THE STANDARD ON THIS MOTION

3    "When analyzing a complaint under Rule 12(b)(6), the factual allegations 'are taken as

4    true and construed in the light most favorable to the nonmoving party.'" *George v. AZ Eagle TT*

5    *Corp.*, 961 F.Supp. 2d 971 (D. Ariz. 2013) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067

6    (9th Cir. 2009)).  Plaintiffs' complaint must allege "sufficient factual matter, accepted as true, to

7    'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

8    (quoting *Bell Alt. Corp. v. Twombly*, 550 U.S. 544. 570 (2008)).  "A claim has facial plausibility

9    when the plaintiff pleads factual content that allows the court to draw the reasonable inference

10    that the defendant is liable for the misconduct alleged." *Id.* at 678.

### IV.    PLAINTIFFS STATE A CLAIM UNDER RFRA

11    Congress enacted the Religious Freedom Restoration Act ("RFRA") to protect religious

12    groups like Visionary Churches from the very burdens imposed by Defendants in this case.  *See*

13    42 U.S.C. §2000bb-1(c).  The Supreme Court has held that the Controlled Substances Act is

14    "amenable to *judicially crafted* exemptions" and that RFRA "plainly contemplates that *courts*

15    would recognize exceptions – that is how the law works." *O Centro*, 546 U.S. at 434 (emphasis

16    in original).

17    The facts of *O Centro* are nearly identical to the present case and its holding is

18    dispositive.  *O Centro* also involved a church ("UDV") whose members received communion by

19    drinking "hoasca," a tea brewed from South American plants that contains DMT.[1]  After U.S.

20    Customs inspectors seized a hoasca shipment addressed to the UDV and threatened prosecution,

21    the UDV filed a lawsuit seeking declaratory and injunctive relief alleging, *inter alia*, that

22    applying the CSA to its sacramental hoasca use violated RFRA.  *Id.* at 425.  Both the District

23    Court and the Tenth Circuit found that UDV was entitled to relief, and the Supreme Court held

24    that the lower courts "did not err in determining that the Government failed to demonstrate, at

25    the preliminary injunction stage, a compelling interest in barring the UDV's sacramental use of

26    hoasca." *Id.* at 439.

27

28    [1] "Hoasca," "ayahuasca" and "yage" are synonyms that refer to the tea prepared from plants native to South America that contains small amounts of DMT.  *See* Ayahuasca, Miriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/ayahuasca (last visited April 19. 2021).

According to the Ninth Circuit, "RFRA does not allow the government to refuse an accommodation to a group which is materially indistinguishable from one already exempted." *See United States v. Christie*, 825 F.3d 1048, 1059 (9th Cir. 2016).  The District of Oregon applied this basic RFRA principle in a suit brought by the Church of the Holy Light of the Queen ("CHLQ") – a church that used Daime tea (containing DMT similar to Hoasca and Ayahuasca) as religious sacrament – and held: "Guided by the unanimous decision of the United States Supreme Court in a very similar case, *Gonzales v. O Centro*, I conclude that the Religious Freedom Restoration Act requires that plaintiffs be allowed to import and drink Daime tea for their religious ceremonies, subject to reasonable restrictions. I will enter a judgment and permanent injunction."  *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1211-12 (D. Or. 2009).

Plaintiffs are in the same position as the churches in *O Centro* and *CHLQ*.  In light of the statutory language of RFRA, the Supreme Court's holding in *O Centro*, and the Ninth Circuit's principle that accommodations should be granted in materially indistinguishable cases, Defendants' motion to dismiss the RFRA claim should be summarily denied.

## A.  Plaintiffs Free Exercise is Substantially Burdened by the DEA's Policy of Total Prohibition on Ayahuasca Use and Importation.

Religious persons are "substantially burdened" when they are "coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions."  *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008).  The DEA burdens Free Exercise by its blanket prohibition on importation and use of Ayahuasca, by its seizure of Ayahuasca, and by the self-contradictory DEA requirement that, to submit a petition for exemption requires cessation of all visionary communion practice for an indeterminate period.  Additional substantial burdens are:

*First*, Plaintiffs are burdened by the CSA's complete ban on Ayahuasca use and importation due to the small amount of a Schedule I controlled substance contained therein. Without access to Ayahuasca, Plaintiff Visionary Churches do not have a sacrament to share and congregants are unable to practice their religion.  *Id.*  TAC ¶ 139-41, 215. 222.  Plaintiffs face the classic Catch-22 dilemma that RFRA was meant to remediate: exercise of their religion under fear of civil or criminal sanction.  TAC ¶ 134; *see Oklevueha Native Am. Church of Haw., Inc. v.*

*Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016) (finding "substantial burden" where prohibition forces the group to "choose between obedience to their religion and criminal sanction."); *Snoqualmie Indian Tribe v. FERC*, 545 F.3d 1207, 1213-15 (9th Cir. 2008) (explaining the nature of the forced choice captured in RFRA's substantial burden component).

*Second*, Plaintiffs are burdened by the Government's failure to provide a RFRA exemption under the CSA's implementing regulations to allow for Free Exercise. The Supreme Court recently held that government regulations trigger strict scrutiny under the Free Exercise Clause "whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. ___, slip. op. at 1 (April 9, 2021) (emphasis in original). Because the Government provides an exemption under the CSA to allow law enforcement, pharmacy employees, and physicians to carry out their professional duties, the Government is required under *Tandon* to provide the same or similar exemption to allow Visionary Churches to carry out their Free Exercise. The Government "cannot assume the worst when people go to worship but assume the best when people go to work." *Id.* slip op. at 3 (quoting *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020).

*Third*, Plaintiffs are burdened by heavily armed police raids carried out by the HIDTA Task Force with DEA personnel aiding in the raids. TAC ¶ 199. Plaintiff Villanueva's church-residence was raided and searched by a DEA-funded task force due to a DEA-initiated tip about DMT manufacturing. TAC ¶¶ 34. 199. Notwithstanding the Government's assertions that Visionary Churches face no "imminent threat of prosecution," the threat of more police raids has forced NAAVC members into the shadows and underground. TAC ¶ 135, 189.

*Fourth*, Plaintiffs are burdened by DHS's seizure of Plaintiffs' sacramental Ayahuasca destined for sharing with congregations. TAC ¶¶ 33, 138-40. As a result of the HIDTA raid, religious sacrament was seized from Plaintiff Villanueva's home in violation of Plaintiff's Fifth Amendment rights under the Takings Clause. TAC ¶¶ 63, 225, 278(h); *see Horne v. Dep't of Agric.*, 576 U.S. 351 (2015). DHS's action led to the complete shut-down of one of Plaintiffs NAAVC's member churches and thus permanently interrupted Plaintiffs' Free Exercise.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.  DEA's Guidance Increases the Burden on Plaintiffs' Free Exercise

The Government asks the Court to ignore the substantial burden caused by the CSA's criminalization of Ayahuasca, and instead focus narrowly on whether Plaintiffs' religion is substantially burdened by the DEA's regulatory exemption process.  ECF No. 86, Government's Motion to Dismiss (hereinafter "GOV") at 17.  Even if the Court were inclined to limit its inquiry in this way, the Guidance actually increases the substantial burden on Plaintiffs' Free Exercise.  First, the DEA Guidance is a "wall" and not a "door," as evidenced by the fact that DEA has never granted an exemption or even responded to an application for an exemption.  TAC ¶ 278.  Second, the DEA Guidance requires applicants to forfeit their Fifth Amendment rights and make inculpatory statements under oath that could lead to criminal prosecution.  TAC ¶ 118-20.  Third, the DEA Guidance poses a financial barrier because no church would submit a Guidance-complaint petition to DEA without first consulting with informed legal counsel.  TAC ¶ 102-03.  Finally, the DEA Guidance is a vehicle for chilling Free Exercise with *de facto* cease and desist notices and *de facto* administrative subpoenas under the guise of invitations to submit a PRE.  TAC ¶ 106-07, 113, 158. 278(t).

The case relied upon by the Government, *United States v. Tawahongva*, 456 F. Supp. 2d 1120 (D. Ariz. 2006), is easily distinguishable.  In *Tawahongva*, the District Court heard testimony that the Defendant "did not find applying for a permit objectionable . . . or require him to endure any delay in performing rites necessary to the free exercise of his religion." *Id.* at 1132.  By contrast, Plaintiffs in this case strongly object to the Guidance process and allege in dozens of paragraphs that the Guidance is substantially burdensome.  TAC ¶¶ 93-120, 278

Far more applicable to the present facts is *United States v. Gonzalez*, 957 F. Supp. 1225 (D.N.M. 1997), in which a Native American defendant was charged with killing a bald eagle.  In *Gonzalez,* the defendant did not submit an application for a permit before shooting the eagle because the application process forced him to disclose very personal information about a religious ceremony.  957 F. Supp. at 1228.  The Court found that the application process itself imposed a substantial burden on the exercise of his religion.  *Id.*  The court so found, not because the defendant had been prosecuted, but because the application regulations required him to

disclose confidential information that was sacred to him.  *Id.*  Like *Gonzales*, the application process in this case demands Plaintiffs to disclose highly sensitive and self-inculpating information.  TAC ¶¶ 115, 118-20.  For these reasons, DEA's Guidance imposes its own substantial burden.

## V.   PLANTIFFS HAVE STANDING TO BRING THEIR RFRA CLAIMS

All "religious persons" whose Free Exercise is substantially burdened by the Government have standing to file a RFRA lawsuit.  42 U.S.C. § 2000bb-1(c).  Plaintiffs have standing to bring this suit because their religious rights are directly targeted by the Government defendants and this injury is redressable.  *See O Centro*, 546 U.S. 439; *Church of the Holy Light of the Queen*, 615 F. Supp. 2d at 1212 (D. Or. 2009).  "Because standing overlaps substantially with ripeness" in these circumstances, Plaintiffs have standing to bring its RFRA claims.  *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1085 (9th Cir. 2003).  Where at least one plaintiff has demonstrated standing, the court may reach the merits of the claim without determining whether the remaining plaintiffs also have standing.  *See Bd. of Natural Res. v. Brown*, 992 F.2d 937, 942 (9th Cir. 1993).

### A.   Plaintiffs' RFRA Claim is Based on Ongoing Injury, and the Government's "Pre-Enforcement" Challenge Argument is a Straw Man

The Government's motion sets up a straw man – claiming that Plaintiffs present a "pre-enforcement challenge" – and must therefore plead the threat of imminent prosecution.  GOV at 11.  To the contrary, Plaintiffs' RFRA claim alleges recent, current, deliberate, and likely future interference with their rights of Free Exercise.  The TAC alleges distinct, actionable, DEA and DHS interference with their Free Exercise:

- Federal agencies have seized Plaintiffs' sacramental Ayahuasca destined for sharing with congregations, *see* TAC at ¶¶ 33, 138-140.

- Plaintiff Villanueva's home was raided and searched by a DEA-funded task force due to a DEA-initiated tip, and DEA personnel aided in the raid, *see* TAC ¶¶ 34, 199;

- Seizure of religious sacrament seized from Plaintiff Villanueva's home led to the complete shut-down of one of Plaintiffs NAAVC's member churches, *see* TAC ¶ 225;

- Plaintiffs are forced to practice their religion in the shadows and "underground," which limits outreach and attendance, *see* TAC ¶¶ 135; 189;

- DHS continues to maintain control over several packages of religious sacrament seized from Plaintiffs and this seizure continues to injure Plaintiff Visionary Churches, *see* TAC ¶¶ 139, 144;

- The Guidance imposes a financial barrier for visionary churches, *see* TAC ¶ 102;

- The Guidance demands disclosure of self-inculpating information under oath, information individuals are privileged not to divulge under coercion due to the Fifth Amendment prohibition on compelled self-incrimination, *see* TAC ¶ 118.

The Controlled Substances Act, as implemented through the DEA Guidance, imposes a blanket prohibition on Plaintiffs' importation and distribution of Ayahuasca necessary for the Free Exercise of their religion.  Plaintiffs ongoing injury confers standing to seek a judicial remedy for "direct and current injury … capable of being redressed through injunctive relief." *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991).

**B.   Plaintiffs Have Standing To Bring a "Pre-enforcement" RFRA suit**

Assuming, *arguendo*, that Plaintiffs' RFRA claim is "pre-enforcement" rather than seeking redress for an ongoing injury, Plaintiffs have sufficiently alleged injury-in-fact and can establish Article III standing in a "pre-enforcement" RFRA suit.

In *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012), the Ninth Circuit reviewed a case with similar facts and rejected the precise arguments the Government now makes to this Court.  In *Oklevueha*, the Ninth Circuit observed that establishing injury-in-fact in a CSA pre-enforcement claim requires plaintiffs to allege a "genuine threat of imminent prosecution."  *Oklevueha*, 676 F.3d at 835.  However, the Ninth Circuit specifically noted that "[t]he 'genuine threat' analysis ***presumes that no enforcement has previously occurred***," and that allegations that the CSA has been recently enforced against the plaintiffs has the effect of "mitigating the relevance of a hypothetical future-enforcement."  *Id.* (emphasis added).  "In contrast to cases in which the courts are left to hypothesize about how the law might be applied, Plaintiffs' claims arise from an enforcement action that has already occurred."  *Id.* at 838.

Applying the holding of *Okleveuha* to the facts in this case, this Court should find that Plaintiffs can establish all three prongs of the "genuine threat of prosecution" inquiry. As in *Oklevueha*, Plaintiffs have sufficiently alleged a "concrete plan" by establishing that a central component of their religious ceremonies is the ingestion of Ayahuasca, *see,* TAC ¶¶ 5, 39, 43, 104, 139, 140, and that their members have attended such ceremonies and will attend them in the future. *See* TAC ¶ 47.

As in *Oklevueha*, Plaintiffs in this case can establish a "specific warning or threat to initiate proceedings" because the HDITA Task Force has recently taken enforcement action against the religious group and its members. *See* TAC ¶ 199; *Oklevueha*, 676 F.3d at 836 ("Plaintiffs need not allege a threat of future prosecution because the statute has already been enforced against them."); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 174 (2014) (locating a "substantial" threat of future prosecution in a "history of past enforcement").

Finally, as in *Oklevueha*, Plaintiffs in this case are likely to suffer a similar fate in the future because the Government has already taken enforcement action against Plaintiffs through the seizure of their Ayahuasca by DHS and through seizure of their Ayahuasca during an DEA-instigated raid on Villanueva's home. *See* TAC ¶¶ 139, 144, 199.

### C. <u>Plaintiffs' Injuries Were Caused by Federal Defendants</u>

At the pleading stage, Plaintiffs need only allege that their injury is "fairly traceable" to Defendants' conduct. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Here, Plaintiffs allege that DHS and DEA have infringed, and continue to infringe, upon their First Amendment rights. There is no dispute that the Federal Defendants, acting by and through DHS, are responsible for the seizure of AYA and NAAVC's Ayahuasca sacrament that has yet to be returned. TAC ¶ 138-41. There is also no dispute that the arrest of Plaintiff Villanueva and the seizure of Ayahuasca sacrament from Plaintiff Vine of Light Church was the result of a tip passed from DEA agent Marco Paddy. TAC ¶¶ 159-60. Thus, Plaintiffs have established "a line of causation between defendants' action and their alleged harm that is more than attenuated." *Maya*, 658 F.3d at 1068.

The Government seeks to turn the causation element on its head by blaming Plaintiffs for not seeking an exception under the Guidance and thereby injuring their own constitutional rights. Dkt. 86 at 15.  This is not really a "causation" argument and should be dismissed out of hand. Plaintiffs may challenge the facial validity of the CSA and the Guidance under RFRA even if they have not sought an exception under the Guidance.  *See United States v. Gonzalez*, 957 F. Supp. 1225 (D.N.M. 1997) (defendant had standing to challenge statute and regulations governing bald eagles under RFRA, both as applied and facially, even though he had not engaged in the application process); *see also Bennett v. Spear*, 520 U.S. 154, 169 (1997) (causation established even where a defendant's actions were not the very last step in the chain of causation); *United States v. Hugs*, 109 F.3d 1375, 1378-79 (9th Cir. 1997) (finding Plaintiff had standing to assert facial challenge to statute and implementing regulations under RFRA).  In short, Plaintiffs' refusal to participate in a sham administrative process does not break the line of causation between Defendants' actions and Plaintiffs' injuries.

**D.  Prudential Standing Based on Exhaustion**

In *Oklevueha,* the Ninth Circuit rejected the prudential standing argument asserted by the Government in this case.  *Oklevueha*, 676 F.3d at 838.  Indeed, the Honorable Judge Orrick has already rejected the Government's efforts to require exhaustion in this case, relying on the reasoning in *Oklevueha* and finding it persuasive that *Oklevueha* was issued after the 2009 Guidance was in effect.  Dkt. 57 at 14.

In addition, this Court should reject the Government's arguments about agency expertise.[2]  RFRA does not delegate to any regulatory agency the authority to determine violations, but rather charges Federal courts with determining violations.  *See* 42 U.S.C. §

---

[2] Defendants argue that Plaintiffs must participate in the Government's intrusive regulatory process because jurisdiction over any DEA decision on a petition lies exclusively in a U.S. Court of Appeals. GOV at 5.  This argument wrongly assumes that a determination of Plaintiff's religious rights and religious sincerity by DEA would be subject to the judicial review provisions of 21 U.S.C. § 877.  To the contrary, any such determination would not be made "under" Title 21 and therefore would not be subject to the judicial review provisions of 21 U.S.C. § 877.

2000bb-1(c); *O Centro*, 546 U.S. at 434 ("RFRA makes clear that it is the obligation of the courts to consider whether exceptions are required under the test set forth by Congress").

## VI.   DEFENDANTS EFFECTIVELY CONCEDE THAT PLAINTIFFS MAY BRING A DECLARATORY RELIEF ACT CLAIM

Defendants argue in a footnote that Plaintiffs' claim under the Declaratory Relief Act should be dismissed. GOV at 12 fn 8. The lack of a serious attack on Plaintiffs' Declaratory Relief Act claim demonstrates that declaratory relief is an appropriate remedy for Defendants' current and future APA and RFRA violations. Indeed, a decree that Plaintiffs are entitled to an exemption from future interceptions of sacraments is required because the Government's seizure and destruction of sacramental Ayahuasca amounts to targeted interference with Free Exercise.

If Defendants are not enjoined, Plaintiffs will suffer irreparable harm for which they have no remedy at law. TAC ¶ 156. The requested injunction will serve the public interest in protecting Free Exercise from prior restraint and post-hoc detention, prosecution, and punishment. *Id.* "Applicants are likely to succeed on the merits of their Free Exercise claim: they are irreparably harmed by the loss of free exercise rights 'for even minimal periods of time'; and the State has not shown that 'public health would be imperiled' by employing less restrictive measures." *Tandon*, slip op. at 3-4 (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. __, slip op. at 5 (2020)).

## VII.   PLAINTIFFS' APA CLAIM IS PROPERLY BEFORE THE COURT

Under the APA, judicial review is triggered by a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "The APA 'creates a **strong presumption of reviewability** that can be rebutted only by a clear showing that judicial review would be inappropriate.'" *Defs. of Wildlife v. Tuggle*, 607 F. Supp. 2d 1095, 1098 (D. Ariz. 2009) (quoting *Nat'l Res. Def. Council v. SEC*, 606 F.2d 1031, 1043 (D.C. Cir. 1979)) (emphasis added). The Government argues that there has been no "final agency action" because Plaintiffs did not submit a petition under DEA's Guidance. GOV at 4. The Government mischaracterizes Plaintiffs' APA claim. Plaintiffs do not seek judicial review of a particular petition or even

allege they submitted a petition under DEA's sham Guidance.  Rather, Plaintiffs allege that the Guidance is illegal because it vests DEA with authority to evaluate whether their religious beliefs are "sincere" and strips Plaintiffs of their constitutional rights to practice their religion.  The Guidance is a tactic designed to deny "regulatory services to visionary churches and refuse[] all requested religious exemptions from the CSA until and unless compelled by court order."  TAC ¶ 174.

## A.  Publication and Use of the Guidance is an "Agency Action"

The threshold for finding an "agency action" is not high.  *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (the word "action" in "agency action" as used in the APA is meant to "cover comprehensively every manner in which an agency may exercise its power."). The Ninth Circuit has found reviewable agency actions where the agency takes some action that is at least the equivalent of one of the enumerated actions in 5 U.S.C. § 551(13).  *See Or. Nat'l Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 983 (9th Cir. 2006) (finding that annual operating instructions to grazing permittee were "agency actions" as the equivalent of a license).

For the last 12 years the Guidance has served as "the DEA's religious-based exemption process."  GOV at 11.  As significant and determinative as any legislative rule, the Guidance document is used by DEA to make legislative-type decisions about where prohibitions in the CSA begin and end.  *Id.*  As Plaintiffs allege throughout their complaint, DEA has used the Guidance to implement DEA's *de facto* policy of refusing regulatory services by denying every single exemption application that has ever been submitted under the Guidance.  TAC ¶ 278(p). As an agency action with the force and effect of an administrative rule, the DEA Guidance is reviewable under the APA.

## B.  DEA's Agency Action is Both Unconstitutional and *ultra vires*

Plaintiffs challenge the Guidance "on its face" and "as applied."  First, Plaintiffs challenge the Guidance as *ultra vires*.  Congress did not delegate the authority to publish the Guidance or make determinations about religious freedom or the sincerity of religious beliefs. Without notice-and-comment rulemaking and without a statutory basis, DEA vested itself with exclusive authority to decide whether Plaintiffs may freely practice their religion or must

continue to practice their religion in the shadows.  DEA exercises this authority in secret, without

deadlines, and without explanation.  TAC ¶¶ 97-98, 278.

Second, Plaintiffs challenge the Guidance as violative of Plaintiffs' Fifth Amendment

rights against self-incrimination.  To seek an exemption under the Guidance, DEA: (1) demands

that Plaintiffs self-incriminate themselves in violation of their Fifth Amendment rights, (2)

requires Plaintiffs to put themselves at risk of criminal perjury under 18 U.S.C. §1001, and (3)

opens Plaintiffs to unlimited requests for more information.  TAC ¶¶ 99-120.

Finally, Plaintiffs bring an "as applied" challenge to the Guidance based on the

Government's assertion that Plaintiffs were <u>required</u> to submit an exemption request that

contained incriminating statements.  Given that Plaintiffs were subjected to multiple enforcement

actions by and through the Federal Defendants, a facial challenge and an "as applied" challenge

are virtually identical.  *See Gonzalez*, 957 F. Supp at 1227 (where Native American defendant

did not submit an application for a permit before shooting a bald eagle, the Court found that a

facial challenge and an "as applied" challenge to the regulations governing permits were are

"virtually identical.").

For all of these reasons, the Guidance is *ultra virus* and unconstitutional and should be

invalidated.

C.  **The Guidance is a "Final" Agency Action**

To qualify as a "final" agency action, the decision under review must be (1) the

"consummation of the agency's decisionmaking process" and (2) one by which "rights or

obligations have been determined," or from which "legal consequences flow."  *Bennett*, 520 U.S.

at 177-78).  The Supreme Court has long taken a "pragmatic approach" to finality.  "  *U.S. Army

Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016).

1.  **The Guidance was the Consummation of DEA's Decisionmaking Process**

In determining whether the DEA's Guidance is "final" under the first prong of the

*Bennett* test, the Court must consider "the effect of the action and not its label," which means

focusing on "the practical and legal effects of the agency action" and interpreting finality in a

"pragmatic and flexible manner." *Or. Nat'l Desert Ass'n*, 465 F.3d at 982.  Here, DEA has used the same Guidance since 2009, never granting an exemption under the Guidance and never making substantive changes.  TAC ¶¶ 278.[3]

### 2.  The Guidance Contained Legal Consequences

By adopting the Guidance without notice-and-comment rulemaking, DEA was able to vest itself with far more authority than was delegated to the agency in the CSA or RFRA, and to implement a long-standing policy to reject or ignore all requests submitted through the guidelines.  TAC ¶ 123, 157.  Because these nonbinding policy guidelines established firm agency policy that resulted in legal consequences for Plaintiffs, the Guidance document had a "legal effect."  *See Gill v. U.S. DOJ*, 913 F.3d 1179, 1185 (9th Cir. 2019) (holding that nonbinding policy guidelines related to a voluntary government program can result in legal consequences).

### D.  <u>Seeking an Exemption From DEA Would be Futile</u>

Plaintiffs' APA claims are properly before this Court because requiring further administrative procedure would be futile.  *See El Rescate Legal Servs., Inc. v. Exec. Off. of Immigration Review*, 959 F.2d 742, 747 (9th Cir. 1992) ("where the agency's position on the question at issue 'appears already set' and it is 'very likely' what the result of recourse to administrative remedies would be, such recourse would be futile and is not required.") (quoting *SAIF Corporation/Or. Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir. 1990)).  This is a well-settled Ninth Circuit principle of law that is especially applicable where, as here, there is "objective and undisputed evidence of administrative bias which would render pursuit of an administrative remedy futile."  *White Mtn. Apache Tribe v. Hodel*, 840 F.2d 675, 677-78 (9th Cir. 1988); *see also Agua Caliente of Cupeño Indians v. Sweeney*, 932 F.3d 1207, 1219 (9th Cir. 2019) (same); *Fones4all Corp. v. FCC*, 550 F.3d 811, 818 (9th Cir. 2008) (same).

---

[3] Last year an organization based in Florida, Soul Quest Church of Mother Earth, Inc., filed suit against the DEA in Federal District Court after waiting nearly three years for a response to its petition under the Guidance.  *See Soul Quest Church of Mother Earth, Inc. v. Barr,* 20-cv-00701- (M.D.Fla. April 22, 2020).

VIII.   **PLAINTIFFS HAVE STATED A CLAIM UNDER § 1983**

Plaintiffs Villanueva and NAAVC assert a claim against the Federal Defendants under 42 U.S.C. § 1983 seeking only injunctive relief.  The following well pled allegations form the basis for Plaintiffs' claim:

- On September 12, 2019, NAAVC posted a petition to Change.org encouraging members of the public to contact DEA and advocate for Plaintiffs' religious rights. TAC ¶ 194; Carreon Dec. ¶ 3; Exhibit 1.

- In a letter dated January 8, 2020, NAAVC notified the Assistant Administrator for the Diversion Control Division that litigation would be forthcoming if DEA did not rescind the Guidance.  TAC  ¶¶ 125, 195.

- On the exact same date as the DEA letter, DEA Agent Marco Paddy allegedly received a tip on an unidentified "DEA tip line" from an individual who implicated Clay Villanueva in a criminal conspiracy to distribute DMT during Ayahuasca ceremonies.  TAC ¶ 159.

- Agent Paddy initiated the process of investigating Villanueva by contacting the supervisor of the Federal/State joint MCSO Arizona High Intensity Drug Trafficking Task Force ("HIDTA") and accusing Mr. Villanueva of selling DMT. TAC ¶ 159.  Agent Paddy communicated to Kaskavage that the DEA wished for HIDTA to conduct a search of Villaueva's home.  TAC ¶ 162.

- Sergeant Kascavage caused another member of the task force – MCSO Detective Matthew Shay – to initiate an investigation into Mr. Villanueva. TAC ¶ 162.  Shay's investigation discovered no evidence of DMT manufacturing in Mr. Villanueva's trash after several site visits.  TAC ¶ 167.

- On May 5, 2020, NAAVC filed the original Complaint in this case in the Northern District of California against the Federal Defendants.  Dkt. 1.

- Less than two weeks after Plaintiffs filed the original complaint – on May 17, 2020 -- Defendant Shay procured a search warrant for Mr. Villanueva's church-residence.  Shay's affidavit to the Magistrate Judge contained several false statements and material admissions. TAC ¶ 168.

- Two days later – on May 19, 2020 – the HIDTA task force conducted an armed raid, arrested Villanueva, and seized religious sacrament.  TAC ¶ 208.

- On June 16, 2020, Plaintiffs amended the operative Complaint to add a 42 U.S.C. § 1983 claim against the Federal and State defendants.

If the Court is to believe the Government's assurances in their legal brief that Plaintiffs do not face a "genuine threat of imminent prosecution," GOV at 8, DEA's initiation of the

investigation was a marked departure from DEA practice.  The same can be said for Detective Shay, who typically investigates major crimes and large drug syndicates, yet put this other important work on hold to investigate a 59-year-old Navy veteran and religious leader who uses Ayahuasca as sacrament.  Given the timing of events, the actions of the DEA agent, the actions of the Federal/State joint task force, and the admissions of the law enforcement officers involved, this Court may draw the reasonable inference that the Federal Defendants sought to retaliate against the NAAVC and conspired with – or acted in concert with – state officials to some substantial degree to intimidate NAAVC and Villanueva and injure their First Amendment and Fourth Amendment rights.

### A.   The Federal Defendants Acted under the Color of State Law

"Although federal officials acting under federal authority are generally not considered to be state actors, they may be liable under Section 1983 if they are found to have conspired with or acted in concert with state officials to some substantial degree."  *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992).  "The touchstone of this analysis is ultimately 'whether there is a sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Here, Plaintiffs have sufficiently alleged a "close nexus" between the federal defendants and the state to claim liability under §1983.  DEA "significantly participated" in the infringement of Plaintiffs' civil rights by instigating the investigation, setting the goals for the investigation, and aiding in the raid.  TAC ¶ 199.  *See Motley v. Parks*, 432 F.3d 1072, 1076-77 (9th Cir. 2005) (analyzing action brought against law enforcement officers who participated in a combined state and federal gang task force under § 1983) (overruled on other grounds by *United States v. King*, 687 F.3d 1189 (9th Cir. 2012)); *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979) (federal law enforcement officers who conspired with the Chicago Police Department in a raid on the Black Panther Party, acted under "color of state law" because the action was the "joint product of the exercise of a State power and of a non-State power" and the State and its officials played a 'significant' role in the result."); *see also Reynoso v. City & Cnty. of S.F.*, 2012 U.S.

Dist. LEXIS 25584 (N.D. Cal. Feb. 28, 2012) (finding plaintiffs sufficiently alleged a symbiotic relationship between policy officers and ATF agents engaging in a search of plaintiff's residence to claim liability under section 1983.").

### B.  **Plaintiffs' Allegations are Plausible**

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678

The Government would have the Court ignore the well-pled facts, the suspicious timeline, and the marked departures from procedure, and instead find that Mr. Villanueva was a drug dealer and that the DEA agents were simply following protocol.  As the Court considers this case for religious freedom, the Government's position helps demonstrate the extent of the extreme bias that pervades the law enforcement community.  The truth of this matter is still obscured by official deceptions and the inability of Plaintiffs to conduct discovery into the conduct of the DEA and State officers.  However, there can be no doubt that Mr. Villanueva was never a drug dealer, the "tip" passed along from Agent Marco Paddy has all the indicia of being fabricated, and the warrant procured by Detective Shay was full of misrepresentations and omissions.  Plaintiffs have alleged a plausible conspiracy to intimidate NAAVC, and respectfully request the ability to conduct discovery into: (1) Rami Joseph Najjar (the source of Agent Paddy's tip) to determine the extent of his relationship with Agent Paddy; (2) communications among and between DEA officials regarding the activities of NAAVC, and (3) communications among and between the State officials regarding their purpose and goals.

## IX.    REQUEST FOR LEAVE TO AMEND

Plaintiffs request leave to correct any pleading defects in a Fourth Amended Complaint.

## X.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Federal Defendants' Motion to Dismiss.

Dated:  April 19, 2021                    JOHN SULLIVAN
                                          /s/John Sullivan
                                          JOHN SULLIVAN (127139)
                                          Attorney for Plaintiffs
                                          Arizona Yagé Assembly,
                                          North American Association of Visionary Churches, and
                                          Clay Villanueva