JOHN SULLIVAN (CSB#204648) Pro Hac Vice
10857 Kling Street
North Hollywood, California 91602
Tel:818-769-7236 Fax:818-301-2175
Email:Sullivan.John84@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Church,
Clay Villanueva, and the Vine of Light Church

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, North American Association of Visionary Churches, Clay Villaneuva, and the Vine of Light Church, | **Case No.:20-CV-02373-ROS** |
| Plaintiffs, | OPPOSITION TO SHAY AND MARICOPA COUNTY'S MOTION TO DISMISS |
| vs. | |
| Merrick Garland, Attorney General of the United States, *et al.*, | |
| Defendants. | |

# TABLE OF CONTENTS

I.   STATEMENT OF THE ARGUMENT ................................................... 1

II.  STATEMENT OF FACTS ........................................................ 1

III. THE STANDARD ON THIS MOTION ............................................... 4

IV.  QUALIFIED IMMUNITY IS IRRELEVANT TO THIS MOTION, AND WAS VITIATED BY SHAY'S CONSCIOUS INDIFFERENCE TO VILLANUEVA AND NAAVC'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS ........................... 4

    A.   *Shay Violated Villanueva's Fourth Amendment Rights By Engaging in Judicial Deception* ................................................................4

    B.   *Shay Violated Plaintiffs' First Amendment Rights to Be Free of Retaliatory Animus* ..................................................................9

    C.   *Shay Violated Plaintiffs' First Amendment Right to the Free Exercise of Religion* ................................................................11

    D.   *Shay Violated Villanueva's Fourth Amendment Rights to be Free from Unreasonable Seizure* ...............................................12

V.   MARICOPA COUNTY IS LIABLE UNDER § 1983.................................. 12

VI.  PLAINTIFFS' FERA CLAIMS AGAINST SHAY ARE NOT SUBJECT TO THE NOTICE OF CLAIM REQUIREMENT .......................................... 14

VII. PLAINTIFFS' REMAINING STATE LAW CLAIMS AGAINST SHAY ARE NOT SUBJECT TO THE NOTICE OF CLAIM REQUIREMENT ..................... 15

VIII. THE COUNTY IS LIABLE UNDER THE STATE LAW CLAIMS ........................ 15

IX.  YOUNGER ABSTENTION IS NOT REQUIRED ..................................... 17

X.   CONCLUSION ................................................................ 17

## I.      STATEMENT OF THE ARGUMENT

In the early morning hours of May 19, 2020, Clay Villanueva stood handcuffed in his underwear while heavily armed members of a Federal/State task force searched his church residence.  Mr. Villanueva is a 59-year-old shamanic priest of the Vine of Light Church who incorporates Ayahuasca sacrament into his religious practice, yet he was treated by Defendants Matthew Shay and Maricopa County like a violent drug offender.  Villanueva's arrest, and the seizure of his religious sacrament, was motivated by retaliatory animus that was initially conceived at the Federal level and then passed to Shay at the State level.  The Drug Enforcement Agency ("DEA") illegally targeted Mr. Villanueva because he held a leadership position in the North American Association of Visionary Churches ("NAAVC"), an organization that had petitioned the Drug Enforcement Agency for redress of its grievances and filed a lawsuit against DEA just two weeks before the armed raid.  Shay violated Villanueva's Fourth Amendment rights by engaging in judicial deception to obtain a search warrant and by subjecting Villanueva to an unnecessarily intrusive detention during the search.  Shay also violated Villanueva's First Amendment rights by conspiring with DEA agents to retaliate against Villanueva's protected speech.  Finally, both Shay and Maricopa County directly violated Villanueva's right to Free Exercise and his religious rights under State law.  This Court should reject Shay and Maricopa County's attempts to skirt liability and deny the Motion to Dismiss.

## II.      STATEMENT OF FACTS

Clay Villanueva is a 59-year-old religious man who makes his home in Phoenix, Arizona.  TAC ¶ 6.  Villanueva left rural Florida in 1979 to join the Navy and spent 7 years serving his country as a communications technology specialist.  TAC ¶ 69.  Villanueva received regular promotions in the Navy until he was honorably discharged in 1985 as a Petty Officer First Class, equivalent to an Army Sergeant in rank.  *Id.*  After he left the Navy, Villanueva worked in the IT industry for over 25 years, eventually becoming the top IT professional at a major business furnishings manufacturer that was acquired by Target in 2007.  TAC ¶ 70.

In search of the Divine Love and compassionate awareness, Villanueva learned about Ayahuasca and Amazonian visionary religion in 2011.  TAC ¶ 71.  On several occasions

between 2011 and 2015, he travelled to a shamanic healing center in Iquitos, Peru, to receive Ayahuasca communion.  TAC ¶ 72-73.  Villanueva discovered that during the communion state, he had an intuitive ability to play traditional shamanic musical instruments and demonstrated a comfort level with the Ayahuasca communion experience that is rarely seen among novices. TAC ¶ 73.

Villanueva's life underwent a transformation as he continued to follow his religious calling.  TAC ¶ 74.  Nearly six years after discovering Visionary Religion, Villanueva began to share Ayahuasca with a small circle in California, and then in Arizona as well.  TAC ¶ 74.  In 2017, Villanueva incorporated the Vine of Light Church as an Arizona nonprofit corporation. TAC ¶ 75.  In 2019, the Vine of Light church joined the North American Association of Visionary Churches ("NAAVC") as its first member church.  TAC ¶ 75.

NAAVC was established to help secure the religious rights of its member churches.  On September 12, 2019, NAAVC posted a petition to Change.org encouraging members of the public to contact DEA and advocate for Plaintiffs' religious rights.  TAC ¶ 194; Dkt. 94-2.  On January 8, 2020, NAAVC sent a letter to the Drug Enforcement Agency on behalf of its member churches, addressed to William T. McDermott, Assistant Administrator for Diversion Control Division recommending that the DEA take certain actions and making clear that litigation would be forthcoming.  TAC ¶¶ 125, 195.  The DEA and other conspirators were able to determine the identity and address of NAAVC's Board members from the public record.  TAC ¶ 196.  All Board members, including Villanueva, permitted their addresses to be posted in the California Secretary of State's business entity directory, which accordingly recorded the address of Villanueva's home and the Vine of Light Church.  *Id.*

DEA Agent Marco Paddy conceived and communicated retaliatory animus toward NAAVC and Villanueva for their activism in promoting the online petition.  TAC ¶ 159.  On the exact same day that NAAVC dated its letter to DEA, Agent Paddy allegedly received a tip from an individual named Rami Joseph Najjar.  TAC ¶ 477.  Pleading in the alternative, Plaintiffs allege that Agent Paddy either (a) initiated the tip to give vent to the DEA's retaliatory animus

against Villanueva and NAAVC, or (b) utilized the tip as a convenient vehicle for the DEA's retaliatory animus.  TAC ¶ 162.

Paddy initiated the process of investigating Villanueva by contacting Phoenix Police Department Sergeant Micah J. Kaskavage and accusing Mr. Villanueva of selling DMT.  TAC ¶ 159.  Paddy had allegedly received a tip on an unidentified "DEA tip line" from an individual who allegedly implicated Villanueva in a criminal conspiracy to distribute DMT during Ayahuasca ceremonies.  TAC ¶ 159.[1]  Sergeant Kaskavage supervises the Federal/State joint MCSO Arizona High Intensity Drug Trafficking Task Force ("HIDTA").  *Id.*  Agent Paddy communicated to Kaskavage that the DEA wished for HIDTA to conduct a search of Villanueva's home.  TAC ¶ 162.

On May 5, 2020, NAAVC filed the original Complaint in this case in the Northern District of California against the Federal Defendants asserting claims under RFRA, the APA, and the Declaratory Judgment Act.  *See* Dkt. 1.  As a result of the filing, DEA's retaliatory animus grew to encompass the intent to chill Villanueva's Free Exercise, to silence his Free Religious Expression, and to obtain tactical leverage in the pending litigation by placing an NAAVC Board member at risk of prosecution.  TAC ¶ 198.

Two weeks after filing the Complaint in this case – in the early morning hours of May 19, 2020 – the HIDTA task force conducted an armed raid of Villanueva's church-residence.  TAC ¶ 208.  Accompanied by a large number of heavily armed deputies who announced themselves by pounding on the front door and threatening to bring it down if it were not opened immediately, Detective Matthew Shay had his deputies place Villanueva in handcuffs as he stood in his underwear.  TAC ¶ 208.  Villanueva had no weapons and – until his arrest at the hands of Defendant Shay – had no criminal record.  TAC ¶ 208.

---

[1] This is one of three extraordinary coincidences in this case: (1) Plaintiffs sent a letter dated January 8 to DEA threatening litigation, and a tipster allegedly provided a tip to Agent Paddy on the exact same date, TAC ¶ 162; (2) the instant lawsuit was filed on May 5th, and Shay decided to act on the 4-month-old tip and submit his Search Warrant to the Magistrate two weeks later on May 17th, *see* Dkt. 39-3; (3) the summons issued in this case on May 13th, and six days later on May 19th Shay initiated his illegal raid on Villanueva's church residence.  TAC ¶ 208.

1

2

### III.    THE STANDARD ON THIS MOTION

3

"When analyzing a complaint under Rule 12(b)(6), the factual allegations 'are taken as

4

true and construed in the light most favorable to the nonmoving party.'" *George v. AZ Eagle TT*

5

*Corp.*, 961 F.Supp. 2d 971 (D. Ariz. 2013) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067

6

(9th Cir. 2009).  Plaintiffs' Third Amended Complaint must allege "sufficient factual matter,

7

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

8

U.S. 662 (2009) (quoting *Bell Alt. Corp. v. Twombly*, 550 U.S. 544. 570 (2008)).  "A claim has

9

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

10

### IV.    QUALIFIED IMMUNITY IS IRRELEVANT TO THIS MOTION, AND WAS VITIATED BY SHAY'S CONSCIOUS INDIFFERENCE TO VILLANUEVA AND NAAVC'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS

11

12

Plaintiffs Villanueva and NAAVC are entitled to relief under § 1983 because they "allege

13

the violation of a right secured by the Constitution and the laws of the United States," and show

14

that the "deprivation was committed by a person acting under color of law."  *West v. Atkins*, 487

15

U.S. 42, 48-49 (1988).  In response, the State Defendants argue that Shay is entitled to qualified

16

immunity.  Shay Mot. at 4.

17

Whether Shay has qualified immunity is not relevant to the existence of Plaintiff's cause

18

of action.  *See Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980) ("this Court has never indicated

19

that qualified immunity is relevant to the existence of the plaintiff's cause of action).  Because

20

Plaintiffs have alleged that Shay deprived them of a federal right while acting under the color of

21

state law, *see* TAC ¶¶ 206, 278ff, Plaintiffs' complaint must survive a motion to dismiss.  *Id.*

22

However, even if the Court were inclined to evaluate Shay's qualified immunity defense

23

at this stage in the proceedings, Plaintiffs' have sufficiently alleged that Shay violated NAAVC

24

and Villanueva's clearly established Fourth and First Amendment rights.

25

### A.  Shay Violated Villanueva's Fourth Amendment Rights By Engaging in Judicial Deception

26

The Fourth Amendment States in relevant part that "no Warrants shall issue, but upon

27

probable cause. . . . " U.S. Const. amend. IV.  The Fourth Amendment "is no barrier at all if it

28

can be evaded by a policeman concocting a story that he feeds to a magistrate."  *Baldwin v.*

*Placer Cty.*, 418 F.3d 966, 970 (9th Cir. 2005).  Hence, a Fourth Amendment violation occurs where "'the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading,'" or where the "alleged judicial deception was brought about by material false statements or material omissions." *Liston v. Cty. Of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997) (*quoting United States v. Stanert*, 762 F.3d 775, 881 (9th Cir. 1985).  Moreover, such a showing is sufficient to overcome a qualified immunity defense:

> [I]f an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, . . . he cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost."

*Chism v. Wash. State*, 661 F.3d 380, 393 (9th Cir. 2011) (*quoting Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

      To survive a motion to dismiss, NAAVC and Villanueva's § 1983 claim based on judicial deception need only "contain nonconclusory allegations that the defendant knowingly included false statements in the affidavit or did so with reckless disregard." *Tunnell*, 937 F.2d at 1387.  The Ninth Circuit has explained that the standard at the motion to dismiss stage is far less demanding than the standard at summary judgment:

> We hasten to add this standard is a low one.  It serves the limited purpose of enabling the district court to dismiss "insubstantial" suits prior to discovery and allowing the defendant to prepare an appropriate response.  It should be distinguished from the standard at summary judgment, where a plaintiff alleging judicial deception "must make a substantial showing of deliberate falsehood or reckless disregard for truth" and "establish that, but for the dishonesty, the challenged action would not have occurred."

*Id.* at 1387-88 (citations omitted).

      Shay had a duty to be candid with the Magistrate who authorized the search of Villanueva's church-residence.  As the Supreme Court noted in the context of a suppression hearing, "[w]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks v. Delaware*, 438 U.S. 154, 164 (1978) (quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005

(S.D.N.Y. 1966)) (emphasis in original).  Here, Shay violated that duty by signing a misleading, deceptive and bad faith affidavit that contained at least nine false or misleading statements.  TAC ¶ 219.

*First*, Shay's affidavit contained the false statement that his immediate supervisor, Micah Kaskavage, received a tip through a federal "tip line" about Clay Villanueva, when in fact the tip was allegedly received by (or planted by) DEA Agent Marco Paddy and then passed along to Kaskavage.  TAC ¶ 162.  Not only did Shay misstate the true origin of the tip received and transmitted to Kaskavage by DEA Agent Paddy, he also omitted the fact that DEA had been sued in Federal Court just two weeks earlier by NAAVC (an association on which Villanueva served on the Board of Directors).  TAC ¶ 225.[2]  This is material because DEA was motivated by retaliatory animus when it initiated the investigation of Villanueva.  *See* TAC ¶ 159.

*Second*, Shay's affidavit misrepresented the tip as "anonymous," when in fact the Tipster allegedly stated that he was willing to help law enforcement and provided a callback telephone number (with a 310 California area code) where he could be reached.  TAC ¶ 166.  Shay intentionally or negligently omitted the fact that he had contact information for the Tipster and had the opportunity to question the Tipster as to his credibility and basis of knowledge for the tip.  *Id.*  Shay's misrepresentation and omission are material because: (1) there are serious questions surrounding the authenticity of the tip and Agent Paddy's relationship with the tipster; (2) the tip was five months old by the time Shay signed his affidavit, and the misrepresentation regarding anonymity allowed Shay to avoid inquiry by the Magistrate regarding the freshness of the tip.

*Third*, Shay's affidavit omits the fact that his extensive investigation – including at least five surveillance visits – uncovered no evidence of DMT manufacturing.  TAC ¶ 167.  Shay concealed this negative discovery in his warrant affidavit and presented the tip regarding DMT manufacturing as if it had been corroborated rather than dis-corroborated, and used the false impression to ramp up the probably cause calculus.  *Id.*

---

[2] Plaintiffs can and will seek to amend the Third Amended Complaint to allege that Paddy, Kaskavage and Shay's entire handling of the Villanueva investigation, warrant application and raid violated DEA and HIDTA policy.

*Fourth*, Shay's affidavit contained the false statement that Shay had probable cause to believe Villanueva was manufacturing DMT, when in fact Shay knew that Villanueva was not manufacturing DMT out of his home.  TAC ¶ 167.  This is material because the original Tip (as alleged by DEA Agent Paddy) accused Villanueva of manufacturing DMT in his home.

*Fifth*, Shay's affidavit contains false statements equating the blessed sacrament Ayahuasca tea with the controlled substance DMT (N, N-Dimethyltrypltamine), when in fact Ayahuasca tea is not the same as the chemical DMT.  TAC ¶ 5.  This distinction is very important because Ayahuasca has been identified by the Ninth Circuit as peculiarly unlikely to be diverted into unlawful channels.  *See United States v. Christie*, 825 F.3d 1048, 1059 (9th Cir. 2016).  Shay's false statements are material because they misled the Magistrate about whether Shay had probable cause to believe Villanueva – a Visionary Church who publicly had advertised his practice of offering Ayahuasca in religious ceremonies – was manufacturing and dealing DMT out of his home.  TAC ¶ 164.

*Sixth*, Shay's affidavit contained misleading statements and made stylistic choices (*i.e.* quotation marks around religious terms like "ceremony") meant to convey that Villanueva's religious activities were fraudulent, when in fact Shay knew that Villanueva's activities at the Vine of Light Church were sincere Free Exercise.  TAC ¶ 163.  These misleading statements are material because it allowed Shay to concoct a story for the Magistrate that Villanueva was a drug dealer, when in fact he is not.

*Seventh*, Shay's affidavit included false statements about the number of marijuana plants being grown at Villanueva's residence pursuant to Villanueva's lawful, state-licensed cannabis-growing operation for medical marijuana users and medicinal hemp.  TAC ¶ 209.  Shay's claim that he could estimate the number of plants growing at Villanueva's church-residence by "smell evidence" is preposterous and was intended to deceive the Magistrate.  *See United States v. Thomas*, 211 F.3d 1186, 1991-92 (9th Cir. 2000) (referring humorously to an officer's "incredible claimed powers of auditory recognition" and declining to find that testimony about the "distinctive sound of marijuana" can provide probable cause).

*Eighth*, Shay's affidavit included the false statement that Shay's residence was a "drug house," when in fact Shay knew – or should have known – that Villanueva did not illegally sell drugs out of his church residence.  TAC ¶ 212.  This false statement was contradicted by Shay's own narrative, in which Shay states that after extensive surveillance of Villanueva's home he saw only one visitor, and that person was not a suspected marijuana purchaser.  *See* Dkt. 39-3.[3] Shay mischaracterized Villanueva's residence as a "Drug House" to deceive the Magistrate.

*Ninth*, in an astonishing break with investigatory protocol and controlling law, Shay took no steps to investigate the tip that was allegedly received by Agent Paddy and passed along to Kaskavage.  TAC ¶ 164-167.  Deputy Shay never spoke to the Tipster, never heard a recording of the Tipster, never tried to contact the Tipster with the telephone number left with the DEA agent, and never spoke to anyone at the DEA about the tip before filing the warrant affidavit. *Id.*; *see also* Dkt. 39-1.[4]  Shay's failure to conduct any investigation into the source or veracity of the tip runs contrary to basic standards and practices and Supreme Court precedent.  *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) (requiring verification of anonymous tips).  Shay's failure to investigate the tip – which enabled Shay to omit information about the relationship between Villanueva and the Tipster – established Shay's reckless disregard for the truth.

These nine allegations of specific misstatements and omissions from Shay's affidavit, individually and as part of a conspiracy to deny Villanueva's civil rights, are plausible and exceed the "low bar" set by the Ninth Circuit for allowing § 1983 claims based on judicial deception to proceed to discovery.  *See, e.g.*, *Wheeler v. Broggi*, 2020 U.S. Dist. LEXIS 78289 at *4 (W.D. Wash. May 4, 2020) (allegations of specific misstatements and omissions from a search warrant affidavit that were material to the probable cause determination were sufficient to survive a motion to dismiss); *Sigal v. County of Los Angeles*, 2017 U.S. Dist. LEXIS 225763 at *8 (C.D. Cal. Aug. 28, 2017) (based upon allegations of "specific omissions and misrepresentations" and deliberate misrepresentation of those facts, the plaintiff was found to

---

[3] The Court can appropriately take judicial notice of documents in its docket under Fed. R. Evid. 201(b).

[4] Plaintiffs will plead supplementally that Shay's failure to vet the tip and contact the tipster violated DEA policies for DEA/HIDTA raids that are intended to avoid allowing law enforcement to be manipulated by malicious tips and "swatting."  *See* Request for Leave to Amend, *infra*.

have stated a cognizable judicial deception claim); *Hunt v. Davis*, No. CV-16-08280-PCT-GMS, Docket No. 31 (D. Ariz. May 15, 2017) (finding that the omissions in a search warrant affidavit identified by plaintiff plausibly suggested that plaintiff was entitled to relief under § 1983).

**A.** <u>**Shay Violated Plaintiffs' First Amendment Rights to Be Free of Retaliatory Animus**</u>

Once scrubbed of its misrepresentations, Shay's warrant lacks probable cause. *See* Section IV.B *supra*. Even assuming, *arguendo*, that probable cause existed, Villanueva may still bring a § 1983 claim because Shay made the arrest in retaliation for Villanueva's protected speech. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019); *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006). Specifically, the arrest was prompted by Villanueva and NAAVC exercising their First Amendment rights to petition the Government for the redress of grievances by promoting a Change.org petition, sending a demand letter to DEA, and filing the instant suit. TAC ¶¶ 194, 223, 230, Prayer at 82:15-18.

In *Nieves v. Bartlett*, the Supreme Court identified circumstances where a plaintiff need not plead the absence of probable cause in order to state a claim for retaliation under § 1983:

> Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, **but typically exercise their discretion not to do so.** In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech."

*Id*. (quoting *Lozman v. Riviera Beach*, 138 S. Ct. 1945, 1953 (2018) (emphasis added). As Justice Gorsuch explained, the point of a First Amendment retaliatory arrest claim "isn't to guard against officers who *lack* authority to make an arrest. Rather, it's to guard against officers who *abuse* their authority by making an otherwise lawful arrest for an unconstitutional *reason*." *Nieves*, 139 S. Ct. at 1731 (Gorsuch, J. dissenting) (emphasis in original); *accord Skoog*, 469 F.3d at 1235; *Ford v. Yakima*, 706 F.3d 1188, 1195-96 (9th Cir. 2013); *Donahoe v. Arpaio*, 986 F.Supp. 2d 1091, 1136 (D. Ariz. 2013).

This case fits neatly into the exception identified in *Bartlett*. In the years since Congress passed RFRA and Arizona legalized medical cannabis, law enforcement officers – especially Federal task force members like Shay who face the herculean task of investigating major drug

cartels and stemming the tide of opiates and methamphetamine flowing through the Phoenix area, TAC ¶ 160 – have typically exercised their discretion not to arrest local religious leaders who ingest sacramental tea with trace amounts of DMT. *See, e.g.*, Dkt. 86 (Federal Defendants' Motion to Dismiss) at 8 (stating that Plaintiffs face no genuine threat of prosecution and noting there has not been "a single federal criminal prosecution related to ayahuasca, which is telling given there is a 'community' of organizations of and people using ayahuasca…."); s*ee also* TAC ¶ 214 (Shay admitted to Villanueva that he did not know whether charges would be filed against him).

Plaintiffs have alleged sufficient facts and inferences to show that Shay would not have led a heavily armed HIDTA task into Villanueva's church-residence but for a retaliatory motive. *See Adlerstein v. United States Customs & Border Prot.*, 2020 U.S. Dist. LEXIS 181540 at * 35 (D. Ariz. Oct. 1, 2020) (denying motion to dismiss based on comments by individual officers and the proximity in time between the protected conduct and retaliatory action).  NAAVC first garnered the attention of DEA on September 12, 2019, when it posted a petition to Change.org encouraging members of the public to contact DEA and advocate for Plaintiffs' religious rights. TAC ¶ 194; *see* Carreon Dec. ¶ 3; Exhibit 1 (date-stamped email confirming first signature on Petition).  DEA Agent Marco Paddy conceived and communicated retaliatory animus toward NAAVC and Villanueva for their activism in promoting the online petition.  TAC ¶ 159.

In a letter dated January 8, 2020 (the "DEA letter"), NAAVC notified DEA that litigation would be forthcoming.  TAC ¶¶ 125, 195.  Attorneys at the DOJ opened the email attaching the DEA letter at least 44 times.  *See* Dkt. 52-3.  Also on January 8, 2020, Agent Paddy initiated the process of investigating Villanueva by contacting Phoenix Police Department Sergeant Micah J. Kaskavage and accusing Mr. Villanueva of selling DMT.  TAC ¶ 159.  Agent Paddy communicated to Kaskavage that the DEA wished for HIDTA to conduct a search of Villanueva's home.  TAC ¶ 162.  In turn, Kaskavage prompted Shay to initiate an enforcement action against Villanueva and to procure a search of Villanueva's home.  TAC ¶ 204.  Two weeks after the Plaintiffs filed its complaint in this case, Shay decided to act on the 4-month-old tip and seek a warrant from the Magistrate.  Dkt. 39-3.  The retaliatory search was intended to

injure, and did injure, Villanueva's clearly established First Amendment rights of Free Exercise, Free Expression, and his Right to Petition the Government for Redress of Grievances.  *Id.*

**B.**    <u>**Shay Violated Plaintiffs' First Amendment Right to the Free Exercise of Religion**</u>

The First Amendment contains two clauses that protect the freedom of religion: the Establishment Clause and the Free Exercise Clause.  *See* U.S. Const. amend I.  In order to establish a violation of the Free Exercise Clause, a plaintiff must show that the challenged conduct resulted in an impairment of the plaintiff's free exercise of genuinely held beliefs.  *See United States v. Lee*, 455 U.S. 252, 256-57 (1982).

It is clearly established that sincere religious groups may practice their religion by ingesting Ayahuasca.  *See, e.g. O Centro Espirita Beneficente União do Vegetal¸*546 U.S. 418, 434 (2006); *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009).  Indeed, since Congress passed RFRA and the Supreme Court decided *O Centro*, Visionary Churches, the victorious UDV Church and its congregations enjoy Free Exercise visionary communion without fear of prosecution.  *See generally* https://udvusa.org/.

At the motion to dismiss stage, the following facts from the Third Amended Complaint are deemed admitted: (1) During the custodial interview, Shay told Villanueva he was familiar with the *O Centro* decision, which means Shay had actual knowledge of Villanueva's clearly established right to exercise his religious beliefs, *see* TAC ¶ 213; and (2) Shay knew that Villanueva's activities at the Vine of Light Church were sincere Free Exercise.  TAC ¶ 163. Based on these well-pled facts, Shay is not entitled to qualified immunity because Shay knowingly and willfully ignored Villanueva's clearly established First Amendment rights by arresting him and seizing the Vine of Light Church's sacramental Ayahuasca.  The search of Villanueva's residential church, the seizure of his person, and the seizure of the Vine of Light Church's sacramental Ayahuasca violated Villanueva's protected right of Free Exercise of religion and Free Religious Expression.  TAC ¶ 236.

C.  <u>**Shay Violated Villanueva's Fourth Amendment Rights to be Free from Unreasonable Seizure**</u>

Shay violated Villanueva's clearly established Fourth Amendment rights by fabricating probable cause for a retaliatory purpose, and executing the warrant with an extreme and unnecessary show of force on a law-abiding 59-year-old retired Navy non-commissioned officer openly offering visionary communion, and only visionary communion, at his church-residence. TAC ¶ 208. Shay and Maricopa County have been on notice for *thirteen years* that Villanueva had a Fourth Amendment right to be free from public humiliation under the guise of an investigative detention during a search of his home.  *See Bettin v. Maricopa County*, 2007 U.S. Dist. LEXIS 42979, *33-34 (D. Ariz., June 12, 2007)(deputies stood homeowner in her front yard in her underwear while searching her home for stolen motorcycles).  But they are still doing it.  For Maricopa County and Shay to claim such conduct enjoys qualified immunity shows open contempt for the citizenry.  Like Magistrate Judge Aspey, this Court may also be "left to wonder if such actions are standard policy at the Maricopa County Sheriff's Office." *Id.*

V.   **MARICOPA COUNTY IS LIABLE UNDER § 1983**

Municipalities are "persons" under Section 1983 and thus may be liable for causing a constitutional deprivation.  *See Monell v. Dep't of Social Servs. Of the City of New York*, 436 U.S. 658, 690-91 (1978).  *Monell* instructs that in order to impose liability on a municipality or a subdivision of the municipality under § 1983, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-04 (citations omitted).  "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404 (citations omitted).  Even a single decision by a municipal policymaker may be sufficient to

trigger section 1983 liability under *Monell*.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).

"[S]heriffs in Arizona act as final policymakers for their respective counties on law-enforcement matters."  *United States v. Cty. of Maricopa*, 889 F.3d 648, 651 (9th Cir. 2018). The unlawful collaboration between the MSCO, Maricopa County and the federal task forces against people with Hispanic surnames, *e.g.*, Villanueva, has been the longstanding policy and custom of Maricopa County.  TAC ¶ 200.  As this Court is well-aware, Arizona law enforcement has a long history of violating the civil rights of Hispanics and other people of color who they subject to pretextual traffic stops, pedestrian stop-and-frisks, and mass roundups.  *See United States v. Maricopa County*, 151 F. Supp. 3d 998, 1004 (D. Ariz. 2015) (discussing findings of fact issued by the Arizona District Court in *Melendres v. Maricopa Cnty.*, No. 07-cv-02513). Conscious indifference to the civil rights of persons in Maricopa County thus became endemic within the MCSO.  TAC ¶ 200**. In open defiance of federal court orders to promulgate and enforce unlawful, banned policies,**[5] Sheriff Joe Arpaio ("Arpaio") trained MCSO deputies to violate constitutional rights in defiance of federal court orders.  *Id.*  Indeed, MCSO remains under a federal court-ordered injunction that appointed a monitor that submits quarterly reports on MCSO's progress in eliminating unconstitutional conduct.  TAC ¶ 201.

The unconstitutional actions by Shay and the MSCO in the instant case demonstrate that the customs and policies of Maricopa County that were openly displayed during the Arpaio era are still very much in place.  During his custodial interrogation of Villanueva, Shay stated he knew Villanueva was running a church called the Vine of Light, and expressed wide knowledge of the church's website.  TAC ¶ 213.  Shay also stated he was familiar with the Supreme Court's decision in *O Centro*, which held that the Government failed to demonstrate a compelling interest in barring the sacramental use of Ayahuasca.  *Id.*  By and through these statements, Shay admitted that probable cause for the search had been lacking all along, and the search had been a pretext for another purpose altogether: chilling Villanueva's Free Exercise, Free Expression, and

[5] Convicting Arpaio of contempt of court in violation of 18 U.S.C. § 401(3), the Honorable Judge Bolton found that the Sheriff had "announced to the world and to his subordinates that he was going to continue business as usual no matter who said otherwise."

the Right to Petition this Court for redress of grievances.  TAC ¶ 214.  The fact that Villanueva

has a Hispanic surname, and the fact that Ayahuasca originates from Latin American indigenous

culture, gave rise to the unconstitutional attack on Villanueva's civil rights that have become a

matter of policy and custom in Maricopa County.  TAC ¶ 210.

## VI.   PLAINTIFFS' FERA CLAIMS AGAINST SHAY ARE NOT SUBJECT TO THE NOTICE OF CLAIM REQUIREMENT

It is well settled that the notice of claim requirement in ARS 12-821.01 only applies to

monetary claims and does not apply to claims for declaratory relief.  *See, e.g., Allstate Life Ins.*

*Co. v. Robert W. Baird & Co.*, 756 F.Supp. 2d 1113, 1156 (D. Ariz. 2010) ("Arizona courts have

held that the notice of claim provisions set forth in § 12-821.01(A) generally do not apply to

declaratory judgment or reformation actions."); *Chen v. Maricopa County*, 2013 U.S. Dist.

LEXIS 35382 at * 31 (D. Ariz. March 14, 2013) ("'[t]he notice of claim statute applies to a

request for damages, rather than to a request for declaratory or injunctive relief.'") (*quoting*

*Home Builders Ass'n of Cent. Arizona v. Kard*, 219 Ariz. 374, 381 (Ariz. Ct. App. 2008);

*Martineau v. Maricopa County*, 207 Ariz. 332, 2004 Ariz. App. LEXIS 37 (Ariz. Ct. App. 2004)

(same).  Moreover, non-compliance with the notice claim statute does not preclude Plaintiffs

from requesting costs and attorneys' fees in conjunction with their request for declaratory relief.

*See Chen*, 2013 U.S. Dist. LEXIS 35382 at * 31; *see also Martineau*, 207 Ariz. at 336-37 (claims

statute does apply to declaratory relief even though plaintiff requested costs and attorneys' fees).

Shay fails to make even a colorable claim that Plaintiffs' FERA claim should be

dismissed against him based on ARS 12-821.01.  Shay's labored attempt to avoid his obligations

under FERA as imposed by the Arizona legislature speaks volumes about the lack of respect that

Shay and Maricopa County have for Arizona's otherwise strong commitment to religious

freedom.  *See Brush & Nib Studios, LC v. City of Phoenix*, 247 Ariz. 269, 305 (2019) ("In a

diverse, pluralistic society such as ours, tolerance of another's beliefs and point of view is

indispensable to the survival and growth of our democracy.").

## VII.   PLAINTIFFS' REMAINING STATE LAW CLAIMS AGAINST SHAY ARE NOT SUBJECT TO THE NOTICE OF CLAIM REQUIREMENT

The Third Amended Complaint currently seeks a monetary award from both Maricopa County and Deputy Shay.  Plaintiffs request leave to amend their complaint and withdraw their prayers for money damages against Shay on all counts based on Arizona law (not including § 1983 which is not subject to a notice of claims requirement).  Granting such leave would allow the state law claims to proceed against Shay, without running afoul of the notice provisions of the legislative intent and purpose of A.R.S. 12-821.01.  *See Stulce v. Salt River Project Agric. Improvement & Power Dist.*, 197 Ariz. 87, 1999 Ariz. App. LEXIS 189 (Ariz. Ct. App. 1999) (observing that a primary purpose of the law is to provide a public entity with an opportunity to settle a claim for money damages before being faced with a lawsuit).

## VIII.   THE COUNTY IS LIABLE UNDER THE STATE LAW CLAIMS

### A.  Maricopa County is Directly Liable for FERA Violations

The Arizona Legislature passed FERA "to protect Arizona citizens' right to exercise their religious beliefs free from undue governmental interference."  *State v. Hardesty*, 222 Ariz. 363, 365 ¶ 8 (2009).  FERA provides that the "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  A.R.S. § 41-1393.01(B).  Because the text and requirements of FERA and RFRA are nearly identical, Arizona courts "rely on cases interpreting RFRA as persuasive authority in construing the requirements of FERA."  *Brush & Nib Studios, LC v. City of Phoenix*, 47 Ariz. 269, 298 (2019).

Plaintiffs do not rely on a *respondeat superior* theory of liability for its FERA claim against Maricopa County.  Plaintiffs allege direct, not derivative, liability against Maricopa County for the County's own acts, policies and omissions in violation of FERA.  Specifically, Plaintiffs allege that a "complete ban on Villanueva's use of Ayahuasca is not the least restrictive means of advancing Maricopa County's interest in regulating the illegal market in DMT, or any other substance."  TAC ¶ 237.  In addition, Plaintiffs expressly allege that the County was part of the conspiracy to deprive Plaintiffs of their rights under FERA.  TAC ¶ 206.  Finally, in its prayer for relief, Plaintiffs ask the Court to find that Maricopa County is prohibited from

"[i]mposing any system of prior restraints on the Free Exercise of religion by AYA, NAAVC, or their respective members."  TAC, page 81.

**B.  The County is Liable for Plaintiffs' State Law Claims Because it Supervises and Exercises Control Over the Sheriff's Office and its Deputies**

*Fridena v. Maricopa County*, 18 Ariz. App. 527, 1972 Ariz. App. LEXIS 915 (Ariz. Ct. App. 1972) is an Arizona appellate decision which held Maricopa County was not liable under the doctrine of *respondeat superior* for torts committed by the sheriff's office when serving a writ of restitution.  The Arizona Supreme Court has not addressed whether the *Fridena* line of cases is correct, and Judge Wake's decision in this Court has expressly questioned the holding of *Fridena.  See Donahoe v. Arpaio*, 2011 U.S. Dist. LEXIS 126512 (D. Ariz. 2011).

This Court's analysis should begin with the fact that Maricopa County and its Board of Supervisors do, in fact, exercise supervision over the Maricopa County Sheriff and have the power to control the implementation and execution of MSCO's duties.  "Under Arizona law, the Sheriff has final policymaking authority with respect to County law enforcement and jails, and the County can be held responsible for constitutional violations resulting from these policies." *United States v. Maricopa County*, 915 F. Supp. 2d 1073, 1084 (D. Ariz. 2012).  Additional authority for this proposition can be found in the tortured reasoning of *Fridena* itself, which held that "[i]nasmuch as the Sheriff is a county officer under A.R.S. § 11-401 subsec. A, par 1. the County exercises supervision of the official conduct of the Sheriff."  *Fridena*, 18 Ariz. App. at 530.  Further evidence that the County exercises supervisory and control powers over the Sheriff's office includes, but is not limited to: A.R.S. § 11-253, A.R.S. § 11-251(1), A.R.S. § 11-201(A)(6), A.R.S. § 11-444(A), A.R.S. § 11-444(B)-(C), and A.R.S. § 11-251(25).

This Court should reject Maricopa County's attempt to use *Fridena* as a shield for the County to enjoy impunity from torts committed by its employees and officers under its supervision and control.  All acts by Shay and Maricopa County deputies were either authorized or ratified by the County because it took no disciplinary action against Shay and said deputies for the matters alleged in the Third Amended Complaint.  TAC ¶¶ 245, 251, 257, 264, 270.  For this reason, the County is liable for Plaintiffs' state-law claims.

Defendants' reliance on *Fridena* fails for two reasons. First, the *Fridena* decision only makes sense if it is limited to the specific duty (serving a writ of restitution) at issue in that case. The facts of *Fridena* did not concern anything similar to the allegations in the case at hand, *i.e.* that the MCSO and the County had a general policy, pattern and/or practice of not disciplining officers for infringing on the civil rights of residents, and deliberate and conscious indifference to people's rights including the right to the free exercise and free expression of religion.

Second, the Arizona Court of Appeals quietly overruled *Fridena* in *Flanders v. Maricopa County*, 203 Ariz. 368 (Ariz. App. Ct. 2002), which reached the opposite result with respect to the County's liability for the acts of the sheriff's deputies. *Id.* ("Liability is imposed, not on the grounds of *respondeat superior*, but because the agent's status cloaks him with the governmental body's authority").

## IX.     YOUNGER ABSTENTION IS NOT REQUIRED

At the end of their brief, the State Defendants make a half-hearted *Younger* abstention argument.  Although not explained or discussed, it appears that the State Defendants are moving to dismiss certain of Plaintiffs' claims under Rule 12(b)(1).  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998) (treating *Younger* abstention as jurisdictional).  The Court should reject this argument for its failure to specify which of Plaintiffs claims, if any, this Court should dismiss for lack of subject matter jurisdiction.

Under the *Younger* doctrine, "abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 712 (9th Cir. 1995).  The State Defendants fail to even identify these factors, much less make any showing that they are satisfied in this case.  Because Shay and Maricopa are barred from raising these issues for the first time on a reply, whatever relief the State Defendants are seeking under *Younger* should be summarily denied.

## X.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Federal Defendants' Motion to Dismiss.

1

2    Dated:  April 19, 2021            JOHN SULLIVAN

3                                      /s/John Sullivan
                                       JOHN SULLIVAN (204648)
4                                      Attorney for Plaintiffs
                                       Arizona Yagé Assembly,
5                                      North American Association of Visionary Churches, and
                                       Clay Villanueva
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28