JOHN SULLIVAN (CSB#204648) Pro Hac Vice
10857 Kling Street
North Hollywood, California 91602
Tel:818-769-7236 Fax:818-301-2175
Email:Sullivan.John84@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches,
Clay Villanueva, and Vine Of Light Church

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, North American Association of Visionary Churches, Clay Villanueva, and Vine of Light Church, <br><br> Plaintiffs, <br><br> vs. <br><br> Merrick B. Garland, Attorney General of the United States; D. Christopher Evans, Acting Administrator of the U.S. Drug Enforcement Administration; Alejandro N. Mayorkas, Secretary of the Dept. of Homeland Security; Troy Miller, Senior Official Performing the Duties of Commissioner of U.S. Customs and Border Protection; the United States of America; Maricopa County, Matthew Shay, and Marco Agent Paddy, <br><br> Defendants. | Case No.:20-CV-02373-MTL <br><br> PLAINTIFFS' CORRECTED OPPOSITION TO DEFENDANT MARCO PADDY'S MOTION TO DISMISS |

i

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ............................................................................... 1

II. FACTUAL BACKGROUND ............................................................................... 1

    A. Statement of the Facts .......................................................................... 1

    B. Supplemental Facts ............................................................................... 3

        1. Newly Discovered Facts Show it is Plausible that Najjar is a DEA Limited Use Confidential Source ........................................................... 3

        2. Additional Facts Demonstrate it is Plausible that Agent Paddy Utilized Najjar's call as a vehicle for DEA's retaliatory animus ........... 7

III. THIS COURT ASSUMES THE TRUTH OF "WELL-PLEADED" FACTS ........................ 9

IV. *TANZIN v. TANVIR* ALLOWS PLAINTIFFS TO OBTAIN MONEY DAMAGES AGAINST PADDY ............................................................................................ 10

V. PADDY SUBSTANTIALLY BURDENED PLAINTIFF'S RELIGIOUS FREEDOM ........ 10

    A. Agent Paddy Intended to Burden Plaintiffs' Free Exercise and Free Expression 11

    B. Agent Paddy's Actions Did, In Fact, Substantially Burden Plaintiffs' Free Exercise and Free Expression ............................................................. 11

VI. PADDY IS NOT ENTITLED TO QUALIFIED IMMUNITY ................................... 13

    A. Agent Paddy Personally Participated in the Violation of Villanueva's Rights .... 13

    B. Agent Paddy's Conduct Violated Clearly Established Law ............................... 15

VII. PADDY ACTED UNDER THE COLOR OF STATE LAW FOR THE PURPOSES OF 42 U.S.C. §1983 ............................................................................................... 16

VIII. CONCLUSION .............................................................................................. 17

ii

## I.      SUMMARY OF ARGUMENT

Special Agent Marco Agent Paddy ("Agent Paddy") acted with an improper motive and engaged in misconduct that substantially burdened the Free Exercise of plaintiffs Clay Villanueva ("Villanueva"), North American Association of Visionary Churches ("NAAVC"), the Vine of Light Church ("VOLC"), and Arizona Yage Assembly ("AYA" and all plaintiffs jointly "Plaintiffs") by: (a) utilizing a paid DEA Confidential Informant ("CI") to infiltrate Plaintiffs' activities and initiate criminal investigation against some or all of them, and (b) to provide the pretext for defendants Maricopa County ("Maricopa County") and Matthew Shay ("Shay") to fabricate probable cause and obtain a bad faith search warrant for Villanueva's home. Accordingly, Agent Paddy is liable in damages for the injuries to Villanueva and the damages to all Plaintiffs under the new tort of *Bivens*-type liability under the Religious Freedom Restoration Act, recently announced by the United States Supreme Court in *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).  Agent Paddy's motion should concede the truth of all well-pleaded facts, but instead, he invites the Court into error by urging it to judge the facts on this Rule 12 motion.  Accepting Plaintiffs' facially plausible allegations as true, Agent Paddy's arguments for dismissal quickly fall apart.

## II.      FACTUAL BACKGROUND

### A.      <u>Statement of the Facts</u>

On September 12, 2019, Plaintiff North American Association of Visionary Churches ("NAAVC") posted an online petition at Change.org encouraging members of the public to contact DEA and advocate for Plaintiffs' religious rights.  *See* Dkt. 77 (Third Amended Complaint (hereinafter "TAC") at ¶ 194; Dkt. 94-2.  NAAVC is an interdenominational association whose members are substantially burdened by laws prohibiting importation, distribution, and possession of Ayahuasca, an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act (the "CSA").  *See* TAC ¶¶ 5, 132.  NAAVC's public efforts to petition the Government for redress of its grievances caught the DEA's attention.  TAC ¶ 194.  The identity of every member of the NAAVC's Board of Directors is a matter of public record in the

1

California Secretary of State's business entity directory, including the name and address of Plaintiff Clay Villanueva.

Following up on its Change.org petition, NAAVC exercised its First Amendment rights by sending a letter to the Assistant Administrator for the Diversion Control Division.  TAC ¶ 125.  The letter was dated January 8, 2020, and it threatened litigation against DEA if the agency did not review and rescind its policies contained in the agency's *de facto* rule entitled: *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act*.  TAC  ¶¶ 125, 195.

DEA Special Agent Marco Paddy conceived and communicated retaliatory animus toward NAAVC and Villanueva for their activism in promoting the online petition calling on DEA to "Stop Regulating Visionary Religion" and for the actions that led to this litigation. TAC ¶ 159.  On the exact same date as the DEA letter, Agent Paddy allegedly received a tip on an unidentified "DEA tip line" from Rami Najjar ("Najjar"), who implicated Clay Villanueva in a criminal conspiracy to distribute DMT during Ayahuasca ceremonies.  *Id.*  Agent Paddy then triggered the investigation of Villanueva by contacting Sergeant Micah Kaskavage, the supervisor of the Federal/State joint MCSO Arizona High Intensity Drug Trafficking Task Force ("HIDTA").  TAC ¶ 159.  Agent Paddy accused Mr. Villanueva of illegally selling DMT and indicated the DEA's desire for HIDTA to conduct a search of Villanueva's home.  TAC ¶ 162. Sergeant Kaskavage caused another member of the task force – MCSO Detective Matthew Shay – to investigate Mr. Villanueva.  *Id.*

On May 5, 2020, Plaintiffs filed suit in the Northern District of California against officials in the Department of Justice, DEA, and Department of Homeland Security seeking to protect their religious freedom.  *See* Dkt. 1.  Less than two weeks later, MCSO Detective Shay procured a search warrant to search Villanueva's church-residence.  TAC ¶ 162.  On May 19, 2020, a Federal/State task force executed an armed raid on the church-residence, arrested Villanueva, and seized his religious sacrament.  TAC ¶ 208.  As a result of this illegal and unconstitutional act, Plaintiffs amended the operative Complaint to add a 42 U.S.C. § 1983 claim against the Federal and State defendants.  Dkt. 12.

2

While this matter was pending in the Northern District of California, Plaintiffs filed a motion for preliminary injunction.  Dkt 22.  In opposition, DEA attached the declaration of Agent Paddy in which he claimed to have received a tip about the illegal activities of Villanueva.  Dkt. 41-1.  Agent Paddy admitted in his Declaration that he was aware ***at the time of the alleged tip*** that Villanueva conducted "Ayahuasca Ceremonies" and publicly advertised his religious activities on Facebook and through a website.  *Id.*  Despite Agent Paddy's actual knowledge that Villanueva's activities were protected religious activities, he nonetheless instigated the investigation of Villanueva which led to the raid by the State/Federal Task Force and an arrest of the 59-year-old minister of the Vine of Light Church.  TAC ¶¶ 34, 160, 199.  Upon learning Agent Paddy's role and illegal actions, Plaintiffs added Agent Paddy as a Defendant in this case in the Third Amended Complaint.  Dkt. 77.

### B.  Supplemental Facts

Pleading in the alternative, Plaintiffs' TAC alleges that Agent Paddy either (a) initiated the tip from Najjar to give vent to the DEA's retaliatory animus against Villanueva and NAAVC; or (b) utilized Najjar's call as a convenient vehicle for the DEA's retaliatory animus.  TAC ¶ 162.  Plaintiffs have alleged inculpating facts in the alternative, and since Plaintiffs filed the Third Amended Complaint, Plaintiffs have uncovered new facts related to the allegations in TAC. ¶ 162.  Plaintiffs have moved the Court for leave to include these new facts in a supplemental pleading, and attached a Proposed Fourth Amended Complaint ("PFAC") to the motion.  *See* Dkt. 100-1.[1]  Newly discovered facts, summarized below, support the plausibility of Plaintiffs' theory that Najjar is a DEA CI, hired to infiltrate Plaintiffs and instigate enforcement.

1.  Newly Discovered Facts Show it is Plausible that Najjar is a DEA Limited Use Confidential Source

New facts discovered since the filing of the Third Amended Complaint bolster the allegation that the tip was planted and that Najjar is a protected confidential informant receiving compensation and protection from DEA.  These facts include, but are not limited to:

---

[1] The PFAC contains, *inter alia*, newly discovered facts, supplemental facts related to the Department of Justice's Office of Inspector General Report on the DEA, and removes claims for money damages against Defendant Matthew Shay.  *See* Dkt. 98-2 (Proposed Fourth Amended Complaint (hereinafter "PFAC")).

3

- Najjar has a criminal record in Maricopa County, with an arrest record that includes charges for Assault, Theft, and Preventing or Interfering with a Telephonic Emergency. *See* Dkt 98-2 (Proposed Fourth Amended Complaint (hereinafter "PFAC")) at ¶167 fn. 55.

- Najjar is a Screen Actors Guild ("SAG") Actor with an IMDb profile who could not be lawfully recruited as a Confidential Informant ("CI") without written permission from the Confidential Informants Review Committee ("CIRC"), which Agent Paddy did not obtain.  PFAC ¶167.

- Najjar was acquired as a Confidential Informant to infiltrate the Visionary Church community, because he could do what DEA agents cannot do, because he is professionally trained, is attractive, well-spoken, remembers his cues, is skilled in assuming roles and memorizing scripts, and has "social engineering skills." PFAC ¶¶ 171, 192.

- Najjar received an email[2] from AYA on September 8, 2019, notifying him and all AYA members that NAAVC had been launched, and in response, Najjar opted in to the AYA email list on September 8, 2019.  PFAC ¶ 192.

- Najjar learned more about NAAVC and Villanueva's visionary religion activism through Visionary Religion Facebook groups he joined, and by opting into the AYA newsletter, where Plaintiffs posted links to the Change.org Petition and an outline of NAAVC's January 8, 2020 DEA Letter that requested changes to DEA policy.  PFAC ¶ 193.

- Najjar had been directed to infiltrate AYA as his infiltration target of choice; however, due to differences in their procedures for vetting applicants for ceremonies, Villanueva became the target of convenience.  PFAC ¶ 192.

- Najjar initiated infiltration of Villanueva's Vine of Light Church by contacting Villanueva's Visionary Religion Facebook friends to provide him with a favorable reference.  PFAC ¶193.

- Najjar contacted the Vine of Light Church by email on December 7, 2019, and then signed up on the internet to participate in a two-night Ayahuasca Ceremony using the truncated alias "Rami Joseph" in lieu of his true name, "Rami Joseph Najjar."  PFAC ¶174.

- Najjar signed up to participate in an Ayahuasca Ceremony scheduled for January 10-11, 2020.  PFAC ¶ 174.

- Najjar concocted a dispute with Villanueva three days before the ceremony as an excuse to demand a refund of his ceremonial fee, after he had received all of the information and details about the ceremony. Najjar stated he was no longer able to attend because "work hit hard."  PFAC ¶ 174.

---

[2] Najjar obtained this email by unknown means, presumably by social engineering AYA's Facebook members, as internal records of AYA appear to suggest.

4

- Najjar filed for bankruptcy on January 4, 2021, Case No. 2:21-BK-10035-WB (C.D. Cal.) and failed to include sources of income consistent with his observable financial conduct. PFAC ¶¶185 and 174.

- With monetary assistance from an unknown source, Najjar was able to dismiss his bankruptcy proceedings on March 1, 2021, and move into the upscale Sherman Oaks Riviera Apartments on March 20, 2021.  PFAC ¶¶ 183, 185.

- Najjar became aware of Plaintiff's interest in serving him with a subpoena on February 15, 2021, when he was living in a secure building in Pacific Palisades.  PFAC ¶¶185 and 179.

- Najjar filed a Petition for Name Change on February 15, 2021 at the Santa Monica branch of the Los Angeles Superior Court.  PFAC ¶ 179.  *See also In the matter of Rami Joseph Najjar*, Case No. 21SMCP00015 (Super. Ct. Cal. 2021).  PFAC ¶¶179 - 180.

- Najjar's Petition for Name Change was denied on April 30, 2021, when the Hon. Chester Horn found, after questioning Najjar under oath, that "the petitioner has an active restraining order against him that expires 03/22/2022 and a pending criminal hearing 06/24/2021."  PFAC ¶180.

- Najjar has an Arizona driver's license with a listed address in Glendale, Arizona, but at all times relevant to this case was a resident of California.  As a California resident without a California Driver's License, Najjar has been illegally operating a motor vehicle in California in violation of Cal. Veh. Code § 12504(b).  PFAC ¶ 167.

- Najjar has been observed driving on the streets of Los Angeles in a black Mercedes SUV (model ML350) with no front or back license plates.  PFAC ¶ 184.

- Najjar has been observed being extremely cautious of his surroundings and performing counter-surveillance on the street prior to entering a certain location.  PFAC ¶ 184.

- Najjar has over twenty street addresses attached to his name in public records, and has used a large number of different email addresses.  PFAC ¶ 167.

- Najjar continues to surveil AYA, over a year after he accused Villanueva of being a drug dealer to Agent Paddy, and blocked his Visionary Religion Facebook friends on January 8, 2020.  Najjar continues to receive and read AYA emails, most recently on February 24, 2021, when he opened the email "Invitation to Ceremony (March 12th – 14th in Ukiah, CA)." PFAC ¶ 192.

Najjar's criminal record, his quick recovery out of bankruptcy, his decision to seek a name change, his cautiousness on the street, and his willingness to flaunt basic traffic laws in California without fear of prosecution, all lend support to the allegation that Najjar is a DEA CI.

Agent Paddy's mishandling of Najjar is unsurprising, given the revelations of the *Audit of the Drug Enforcement Administration's Management and Oversight of its Confidential Source Program* issued by the Department of Justice's Office of Inspector General (hereinafter "OIG

**PLAINTIFFS' CORRECTED OPPOSITION TO MARCO PADDY'S MOTION TO DISMISS**

Report"). PFAC ¶ 188.[3] The OIG Report found problems related to DEA's oversight of confidential sources the agency categorizes as "Limited Use" informants, often referred to as "tipsters." PFAC ¶ 189.[4] The OIG found that Special Agents commonly choose not to disclose that their information came from a confidential informant: "DEA Special Agents do not always include evidence that the investigation involved confidential source information in the applicable DEA-6 investigative report and do not always accurately cross-file the DEA-6 to the applicable confidential source file." PFAC ¶ 190.[5] In the instant case, Agent Paddy violated the Attorney General's Guidelines Regarding the Use of Confidential Informants (the "AG Guidelines") by failing to enter Najjar into the CI Database, and further improperly failed to enter Villanueva, NAAVC, VOLC, and AYA into the NADDIS database. PFAC ¶166. ***The OIG also found that DEA's practices*** with regard to Tipsters ***"call into question whether the source was truly providing information independently or acting as DEA's agent,*** the latter of which could have implications related to compliance with the Fourth Amendment's protections against unreasonable searches and seizures." PFAC ¶ 191 (emphasis added). ***Based on the DEA's documented history of doing exactly what is alleged here, it is plausible that Najjar was a paid Limited Use confidential source and that – consistent with the misconduct identified by the OIG – Agent Paddy chose not to identify Najjar as an informant in the case file.***

These new facts about Najjar also take on extra significance when considered in conjunction with DEA's long-standing policy prohibiting the initiation of criminal investigations based solely on anonymous tips in order to avoid becoming a vehicle used to cause damage

---

[3] *Available at* https://oig.justice.gov/reports/2016/a1633.pdf (last visited April 29, 2021)

[4] According to the Report, a confidential source is assigned to the Limited Use category if the following are established: (1) the person may be recruited by DEA, but must provide information independently (without direction by DEA); (2) the person would not be required to testify as a witness in any legal proceeding (DEA could independently corroborate); (3) DEA anticipates rewarding this person for information/services provided; and (4) the information obtained by this person is not provided because of criminal association with a person of investigative interest to the DEA." PFAC at ¶ 189. ***Tipsters were some of the highest paid DEA confidential sources.*** Id.

[5] Special Agents reported to the OIG that "they do not always mention the confidential sources' contributions because the DEA hopes to minimize exposure of the confidential source in the event that the DEA-6 must be provided for legal proceedings." PFAC ¶ 190.

PLAINTIFFS' CORRECTED OPPOSITION TO MARCO PADDY'S MOTION TO DISMISS

between warring neighbors, lovers, business partners, or being tricked into "swatting" a person who is the target of retaliatory animus.  PFAC ¶ 196.  If Plaintiffs' other alternative is correct, and the Najjar tip was not planted, Agent Paddy committed an extraordinary violation of DEA policy by "forwarding" the tip to Kaskavage without further investigation or NADDIS database review, and the matter is made worse by his communication of the DEA's desire that Villanueva's house be searched.  TAC ¶¶ 159, 162.  However, it is equally or more plausible that **Agent Paddy did not need to investigate Najjar or access NADDIS before** communicating with Sergeant Kaskavage **because the DEA used Najjar as its agent to initiate a retaliatory search**.

Finally, these new facts about Najjar illuminate the significance of the nature and timing of Najjar's contacts with the Vine of Light Church.  Najjar's email to the Vine of Light Church came less than three months after NAAVC posted its online petition on Change.org openly challenging DEA.  PFAC ¶ 174 fn. 58.  In his email purporting to express interest in attending an Ayahuasca ceremony hosted by the Vine of Light Church, Najjar lied about his past experience with a shaman.  PFAC ¶ 173.  Najjar was residing in Los Angeles, but rather than try to attend one of the numerous Ayahuasca ceremonies held by churches in California, Najjar registered for a ceremony at the Vine of Light Church which was more than six hours away in Arizona.  Id.  Then, after weeks of cordial communications with Villanueva, Najjar abruptly became hostile and stated he would not be attending the ceremony.  PFAC ¶¶ 174-76.  Najjar's communications with Villanueva ceased on the same day that Agent Paddy passed the alleged tip to Sergeant Kaskavage.  PFAC ¶ 175*; see also* TAC ¶ 159; Dkt. 41-1.  Najjar's ongoing surveillance of AYA makes it plausible that Najjar purposely infiltrated the Vine of Light Church.  PFAC ¶ 192.

2.  <u>Additional Facts Demonstrate it is Plausible that Agent Paddy Utilized Najjar's call as a vehicle for DEA's retaliatory animus</u>

Plaintiffs allege in the alternative that even if Agent Paddy did not plant the tip, he utilized it as a vehicle for DEA's retaliatory animus.  TAC ¶162.  The following four undisputed or publicly available facts support Plaintiffs' alternative allegation that Agent Paddy utilized Najjar's call as a vehicle for DEA retaliatory animus.

*First,* in Agent Paddy's Declaration filed in this case, he stated that he received a call from an individual with a 310 area code, and that he "forwarded the information to Phoenix Police Department Sergeant Micah J. Kaskavage [sic] that same day." Dkt. 41-1. The word "forwarded" misleadingly suggests that he transmitted the information to Sergeant Kaskavage by email or other forms of one-sided communication. In fact, Agent Paddy first picked up the phone and spoke to Kaskavage "off-the-record," and then followed-up this phone call with an email. Dkt. 39-2 (email from Agent Paddy to Kaskavage: "Like always it was a pleasure speaking with you. Below is the information we spoke of."). It is plausible that the reason Agent Paddy felt it was necessary to call and then email was so he could provide Kaskavage with directions that he was uncomfortable providing in writing.

*Second*, Agent Paddy joined the DEA in 2018 as a GS-1811 Criminal Investigator. Dkt. 41-1 at ¶ 1. The starting salary for a GS-1811 Criminal Investigator at Grade 07 is $42,698 per year (exclusive of locality and LEAP adjustments). According to Office of Personnel Management standards for the 1811 series, Agent Paddy could qualify for the GS-1811 position with either one year of specialized experience OR a 2.95 GPA from a four year college. PFAC ¶ 163.[6] When Agent Paddy passed the tip to Kaskavage in January 2019, he had only worked at DEA for a short time. PFAC ¶ 163. Because the OIG Report identified poor special agent training as a cause of informant mishandling, Agent Paddy's inexperience makes it further plausible that he improperly acquired and misused Najjar's telephone call to satisfy retaliatory animus.

*Third,* in 2018 when Agent Paddy became a Special Agent, DEA had two separate "acting" DEA Administrators (Uttam Dhillon, Robert Patterson) and a rotating cast of characters at the upper levels of the Department of Justice. PFAC ¶ 164. Given Agent Paddy's lack of experience at the DEA, and fact that DEA was going through several periods of transition when he joined, it is plausible that he did not receive the proper training on: (a) how to react when a

---

[6] *See generally https://www.dea.gov/careers/special-agent/special-agent-quiz* (last visited April 29, 2021)).

**PLAINTIFFS' CORRECTED OPPOSITION TO MARCO PADDY'S MOTION TO DISMISS**

group publicly questions the authority of DEA; (b) how to treat religious groups that knowingly violate the CSA in his jurisdiction; and (c) how to handle anonymous tips about Ayahuasca ceremonies.

### III.    THIS COURT ASSUMES THE TRUTH OF "WELL-PLEADED" FACTS

To survive a motion to dismiss, a party must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Telesaurus VPC, L.L.C. v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In reviewing a dismissal for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

Citing *Iqbal*, Agent Paddy urges this Court to treat all of Plaintiffs' factual allegations about Agent Paddy's improper motives and actions as "conclusory and speculative," so he can argue that "the Court need not accept them as true." Dkt. 90 at 8.  Thus, Agent Paddy misinterprets the applicable standard and invites the Court to weigh the facts.  *Iqbal* does not invite the Court to review Plaintiffs' well-pleaded contentions about Agent Paddy's misconduct and decline to accept them as true.  Indeed, in the Ninth Circuit, so long as all other *Iqbal-Twombly* factors are satisfied, allegations plead "on information and belief" are sufficient, and warrant denial of a motion to dismiss.  *See Globaltranz Enters. v. Shipper's Choice Glob. L.L.C.*, 2017 U.S. Dist. LEXIS 234215 (D. Ariz. Feb. 23, 2017).

Pursuant to *Twombly* and *Iqbal*, the correct standard is whether the plaintiff's allegations, assumed to be true, have set forth a plausible, not speculative, claim for relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Here, the factual allegations easily surpass the speculative level, pleading factual content beyond labels and conclusions.  *See id.* at 555.  Plaintiffs' claims have facial plausibility, pleading factual content that allows the Court to draw

the reasonable inference that Agent Paddy is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 677.

## IV.   *TANZIN v. TANVIR* ALLOWS PLAINTIFFS TO OBTAIN MONEY DAMAGES AGAINST PADDY

The Supreme Court recently decided a case in which respondent Muhammad Tanvir, a practicing Muslim, alleged that FBI agents placed him on the Government's No Fly List in retaliation for his refusal to act as an informant against his religious community.  *See Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).  Tanvir sued the agents in their official capacities, seeking removal from the No Fly List, but also seeking money damages from the agents in their individual capacities.  After bringing his RFRA suit, the Department of Homeland Security ("DHS") removed Tanvir from the No Fly List.  DHS's removal of Tanvir from the No Fly List mooted his claims for injunctive relief, and the District Court dismissed his damages claims against the individual agents.  *See id.* at 489.  The Second Circuit reversed, holding that RFRA's remedies provision, combined with its broad definition of "Government," authorizes monetary relief against federal officials in their individual capacities.  *Id.*  The Supreme Court unanimously affirmed and concluded:  "RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities."  *Id.* at 493.

## V.   PADDY SUBSTANTIALLY BURDENED PLAINTIFF'S RELIGIOUS FREEDOM

Under the Religious Freedom Restoration Act ("RFRA"), a "substantial burden" is imposed when individuals are "coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions."  *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008).  The Ninth Circuit has repeatedly found that a religious group is "substantially burdened" when a prohibition forces the group to "choose between obedience to their religion and criminal sanction."  *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016).  Here, Agent Paddy intended to substantially burden Villanueva's rights to Free Exercise and Free Expression, and to chill free exercise by NAAVC, the Vine of Light

Church, and AYA.  Agent Paddy's actions resulted in an armed raid that would be sufficient to chill any reasonable person's Free Exercise, thus violating Villanueva's First Amendment rights.

**A.  Agent Paddy Intended to Burden Plaintiffs' Free Exercise and Free Expression**

The DEA conceived its retaliatory animus for NAAVC when DEA's attorneys and agents learned of the Change.org petition and Letter to DEA advocating the religious rights of NAAVC members.  TAC ¶ 194; Dkt. 94-2.  Whether or not the tip from Najjar was planted, Special Agent Paddy's intent was to use the High Intensity Drug Trafficking Areas ("HIDTA") task force to chill Villanueva's Free Exercise and to silence his Free Religious Expression.  TAC ¶ 198.  When Agent Paddy contacted Sergeant Kaskavage on January 8 to pass along the alleged tip, Agent Paddy had **actual knowledge** that Villanueva's possession and use of Ayahuasca was tied to his religious practice.  Dkt. 39-2 (email from Agent Paddy to Kaskavage stating: "Clay Villanueva conducts Ayahuasca Ceremonies at the Center for Divine Awakenings….").  By initiating a criminal investigation into Villanueva's "Ayahuasca Ceremonies," and expressing DEA's desire for Villanueva's house to be searched, Agent Paddy intended for the HIDTA task force to investigate Villanueva and chill his Free Exercise rights.  TAC ¶ 162.  In this way, Agent Paddy's intention was to violate both the spirit and letter of RFRA.  *See Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1211-12 (D. Or. 2009).

**B.  Agent Paddy's Actions Did, In Fact, Substantially Burden Plaintiffs' Free Exercise and Free Expression**

Agent Paddy planted or passed the tip from Najjar, and communicated the DEA's desire to have the joint Federal/State HIDTA task force investigate and search Villanueva's home.  TAC ¶ 162.  These actions led directly to the armed raid on Villanueva's church-residence and the seizure of his Ayahuasca sacrament.  TAC ¶¶ 34, 199.

Plaintiffs don't have the ability, without discovery, to know what additional instructions Agent Paddy gave Kaskavage, MCSO, and Shay about the Villanueva case.  Accordingly, at this point, it is an extraordinary, inculpatory coincidence that two weeks after Plaintiffs filed this

**PLAINTIFFS' CORRECTED OPPOSITION TO MARCO PADDY'S MOTION TO DISMISS**

action, Shay sprang into action on a stale, four-month-old "tip," and engaged in judicial deception to fabricate probable cause for the search of Villanueva's home.  TAC ¶¶ 162, 167-68.

Even if Agent Paddy's actions were limited to passing along the tip and communicating DEA's desire that Villanueva's house be searched, Agent Paddy's actions have unquestionably burdened Plaintiffs' religious rights.  Specifically, Agent Paddy's actions put NAAVC and its membership on notice that the DEA will support and encourage investigations of "Ayahuasca Ceremonies."  Dkt. 39-2 (email from Agent Paddy to Kaskavage); TAC ¶¶ 188, 190, 226.  By triggering the investigation into Villanueva's Ayahuasca Ceremonies, Agent Paddy substantially burdened Plaintiffs' religious exercise by pressuring them to abandon their plans to hold future Ayahuasca Ceremonies.  *See Guam v. Guerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002) (finding a substantial burden is created when enforcement of a law "results in the choice to the individual of either abandoning his religious principle or facing criminal prosecution."); *see also United States v. Boyll*, 774 F. Supp. 1333, 1341 (D.N.M. 1991) (concluding that a regulation restricting peyote use would substantially burden sincerely held religious beliefs because of the importance peyote played in the religion practiced by the defendant.).  Plaintiffs seek declaratory relief under RFRA because Agent Paddy's actions on the Villanueva matter constitute an ongoing and continuing threat to the religious rights of NAAVC members.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (locating a "substantial" threat of future prosecution in a "history of past enforcement").

Agent Paddy mistakenly relies on *Stevenson v. Koskey*, 877 F.2d 1435 (9th Cir. 1989), a case decided four years **before** Congress enacted RFRA, to argue that Plaintiffs cannot establish the causal link necessary to support their RFRA claim.  Dkt. 90 (Agent Paddy Motion to Dismiss) at 9-10.  The *Stevenson* case is inapposite, and Agent Paddy does not cite a single case that applies the *Stevenson* factors to a RFRA claim.

Contrary to Agent Paddy's assertions, Federal courts that have addressed the issue have held that "[c]ommon law principles of causation, however fundamental to our legal heritage, are simply too unreliable a light to guide RFRA's substantial-burden analysis."  *Eternal Word TV Network, Inc. v. Sec'y of the U.S. HHS*, 818 F.3d 1122, 1188 (11th Cir. 2016) (vacated and

12

remanded on other grounds).  "Reading into RFRA some sort of proximate-cause limitation would reintroduce the exact same 'attenuat[ion]' argument rejected by the Supreme Court in *Hobby Lobby* for 'dodg[ing] the question that RFRA presents.'"  *Id.* (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014)).

Rather, as the Eighth Circuit has observed in conjunction with a RFRA claim, the alleged injury need only be "fairly traceable" to a defendant for causation purposes:

> An injury may be "fairly traceable" to a defendant for causation purposes even when that defendant's actions are not "the very last step in the chain of causation." "While . . . it does not suffice if the injury complained of is 'th[e] result [of] the *independent* action of some third party not before the court,' that does not exclude injury produced by determinative or coercive effect upon the action of someone else."

*Wieland v. U.S. HHS*, 793 F.3d 949, 954 (8th Cir. 2015) (quoting *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997)).

Here, Plaintiffs allege that Agent Paddy conceived and communicated retaliatory animus toward NAAVC and Villanueva for their activism in promoting the online petition.  TAC ¶ 159.  Plaintiffs further allege that Agent Paddy communicated to the Maricopa Sheriff's office the DEA's desire to search Villanueva's church-residence.  TAC ¶ 162.  Thus, Agent Paddy set in motion a chain of events that led to the reasonably foreseeable outcome that Villanueva's church-residence would be searched and his free exercise would be substantially burdened.  The fact that Agent Paddy himself did not procure the search warrant or take part in the raid does not break the causal connection or shield Agent Paddy from liability under RFRA.  Agent Paddy triggered the investigation and gave direction to Sergeant Kaskavage, creating a situation where the logical outcome of his communications to Kaskavage was the search of Villanueva's home.  Agent Paddy is therefore is liable under RFRA for causing the foreseeable result of burdening Plaintiffs' Free Exercise.

## VI.   PADDY IS NOT ENTITLED TO QUALIFIED IMMUNITY

### A.   <u>Agent Paddy Personally Participated in the Violation of Villanueva's Rights</u>

Agent Paddy argues that he is entitled to qualified immunity because "he did not personally participate in the alleged RFRA violations."  Dkt. 90 at 12-13.  This assertion is contradicted by the well-pleaded allegations in the complaint.  Specifically, Plaintiffs allege:

13

Agent Paddy conceived and communicated retaliatory animus toward NAAVC and Villanueva for their activism in promoting an online petition calling on the DEA to "Stop Regulating Visionary Religion," and for initiating this litigation against the DEA.  Agent Paddy acted with conscious indifference toward the Fourth Amendment rights of Villanueva by passing a tip to Micah Kaskavage ("Kaskavage"), a Phoenix Police Department officer detailed to the HIDTA Arizona SW Task Force, accusing Villanueva of selling DMT.  Agent Paddy averred in Docket # 41-1 that the basis for the accusation was a phone call to a DEA tip line from a person in the 310 area-code who wanted to remain nameless, but left his phone number.  Agent Paddy did not disclose the name of the caller in his email to Kaskavage, but provided the telephone number.

TAC ¶ 159.

Agent Paddy shares responsibility for the RFRA and § 1983 violations because he knowingly and willfully triggered an enforcement action with the intent to: (a) retaliate against NAAVC for petitioning the Government for redress of grievances and (b) coerce Villanueva and NAAVC members into abandoning their religious practice.  TAC ¶ 162, 188; *see also* Section V, *supra.*  According to the Ninth Circuit, "[t]he qualified immunity test 'does not rule out the need to inquire into the actual reasons behind an official's conduct when the official's state of mind is a necessary component of the constitutional violation he allegedly committed.'"  *Gonsalves v. Gallegos*, No. 91-16759, 1993 U.S. App. LEXIS 11805, at *4 (9th Cir. May 14, 1993) (quoting *Feliciano-Angulo v. Rivera-Cruz*, 858 F.2d 40, 45 (1st Cir. 1988)); *see also Burgess v. Pierce County*, 918 F.2d 104 (9th Cir. 1990) (summary judgment on qualified immunity grounds was inappropriate where there was a factual issue as to whether termination would have taken place regardless of constitutionally protected speech); *Gutierrez v. Mun. Court of Se. Judicial Dist.*, 838 F.2d 1031, 1051 (9th Cir. 1988) (qualified immunity unavailable because "where the lawfulness of a challenged act is dependent upon the actor's motive or intent, the purpose for which the act was undertaken must be analyzed") (vacated as moot by *Municipal Court of Southeast Judicial Dist. v. Gutierrez*, 490 U.S. 1016 (1989)); *Morse v. S.F. Bay Area Rapid Transit Dist.* (*BART*), No.: 12-cv-5289 JSC, 2014 U.S. Dist. LEXIS 17369 (N.D. Cal. Feb. 11, 2014) (qualified immunity inapplicable because whether the officer retaliated against the journalist for his protected speech was a question of disputed fact).

Here, Agent Paddy admits his role in passing information to a fellow law enforcement officer about Villanueva's possession and use of DMT in Ayahuasca ceremonies.  Dkt. 41-1. Qualified immunity is unavailable at this stage of the proceedings because Agent Paddy's motive and intent for passing this information is a matter of disputed fact that forms one basis for Plaintiffs' RFRA and §1983 claims.  *See Gutierrez*, 838 F.2d at 1051 ("We also hold that in deciding whether a defendant is entitled to qualified immunity in cases in which unlawful motive is a critical element, the court must consider the actor's intent in carrying out the act that is alleged to have resulted in the violation of the plaintiff's rights.").

### B.  Agent Paddy's Conduct Violated Clearly Established Law

Agent Paddy is not entitled to qualified immunity because Agent Paddy's conduct violated clearly established law.  *First*, Agent Paddy's conduct violated the clearly established law that sincere religious groups may practice their religion by ingesting Ayahuasca.  *See, e.g. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 434 (2006); *Church of the Holy Light of the Queen*, 615 F. Supp. 2d 1210.  In this very case the Department of Justice has disclaimed an intent to prosecute individuals who use Ayahuasca use for their religious practice. Dkt. 86 at 8 (stating that Plaintiffs face no genuine threat of prosecution and noting there has not been "a single federal criminal prosecution related to ayahuasca, which is telling given there is a 'community' of organizations of and people using ayahuasca….").  Thus, Agent Paddy's conduct and initiation of the investigation into Villanueva is a dramatic departure from clearly established law and DEA practice for the last twelve years.

*Second*, Agent Paddy's conduct violated Plaintiffs' clearly established right to be free from retaliatory arrest for protected speech.  *See, e.g.,* N*ieves v. Bartlett,* 139 S. Ct. 1715, 1722 (2019); *Ford v. City of Yakima*, 706 F.3d 1188, 1195-96 (9th Cir. 2013); *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006); *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1136 (D. Ariz. 2013).  Plaintiffs engaged in constitutionally protected conduct in the form of petitioning the government for redress of grievances, TAC ¶ 68, and Agent Paddy initiated the investigation of Villanueva to deter Villanueva and NAAVC from exercising their constitutional

rights.  TAC ¶ 194, 223.  Because Agent Paddy violated Plaintiffs' clearly established First Amendment rights he is not entitled to qualified immunity.

*Third*, Agent Paddy's conduct violated Plaintiffs' clearly established right to be free of investigatory tactics which substantially burden religious exercise.  *See e.g., Mockaitis v. Harcleroad*, 104 F.3d 1522 (9th Cir. 1997) (overturned on other grounds by *City of Boerne v. Flores*, 521 U.S. 507 (1997)); *In re Grand Jury*, 171 F.3d 826 (3d Cir. 1999).  Here, Plaintiffs have the First Amendment right to be free from Agent Paddy's unconstitutional investigatory tactics intended to chill Villanueva and NAAVC's religious Free Exercise.

## VII.  PADDY ACTED UNDER THE COLOR OF STATE LAW FOR THE PURPOSES OF 42 U.S.C. §1983

To determine whether a person acts under state law, courts look to the totality of the circumstances and then consider the following two factors:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by rule of conduct imposed by the State or by a person for whom the State is responsible. * * * Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

In applying these factors to joint task forces like HIDTA, courts look beyond the label of an officer's authority and consider whether the circumstances show action taken under the color of state law, federal law, or both.  *See, e.g.,* C*ouden v. Duffy,* 446 F.3d 483, 399 (3d Cir. 2006); *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976).  *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 534–35 (M.D.N.C. 2008); *Adams v. Springmeyer*, No. 11-790, 2012 U.S. Dist. LEXIS 71136, at *5-6 (W.D. Pa. May 22, 2012).  Courts in the Third and Fifth Circuits have held that an officer may act under color of both state and federal law.  *See Johnson v. Orr*, 780 F.2d 386, 392 (3d Cir. 1986); *NeSmith v. Fulton*, 615 F.2d 196 (5th Cir. 1980).

In this case, Agent Paddy significantly participated in the infringement of Plaintiffs' civil rights by initiating the process of investigating Villanueva to satisfy the retaliatory animus of the DEA and officials within the DEA.  TAC ¶ 160.  Agent Paddy then communicated to Kaskavage

that the DEA wished for HIDTA to conduct a search of Villanueva's home.  TAC ¶ 162.  All of the actions by the State actors in this case were contemplated, intended, and furthered by Agent Paddy's initiating the investigation of Villanueva from a retaliatory motive.  TAC ¶ 199.  Agent Paddy may fairly be said to be a state actor in that he acted together and obtained significant aid from state officials, and because his conduct may be otherwise fairly chargeable to the State.  *See Motley v. Parks*, 432 F.3d 1072, 1076-77 (9th Cir. 2005) (analyzing action brought against law enforcement officers who participated in a combined state and federal gang task force under § 1983) (overruled on other grounds by *United States v. King*, 687 F.3d 1189 (9th Cir. 2012)); *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979) (federal law enforcement officers who conspired with the Chicago Police Department in a raid on the Black Panther Party, acted under "color of state law" because the action was the "joint product of the exercise of a State power and of a non-State power" and the State and its officials played a 'significant' role in the result."); *see also Reynoso v. City & Cnty. of S.F.*, No. 10-00984, 2012 U.S. Dist. LEXIS 25584 (N.D. Cal. Feb. 28, 2012) (finding plaintiffs sufficiently alleged a symbiotic relationship between policy officers and ATF agents engaging in a search of plaintiff's residence to claim liability under section 1983.").

Even assuming Agent Paddy was a federal official, he is not precluded from acting under "color of state law."  The Ninth Circuit has explicitly ruled that a §1983 claim may be brought against a federal official if that official did "conspire with or participate in concert with state officials, who, under color of state law, act to deprive a person of protected rights."  *Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir. 1983).  Plaintiff specifically alleged that Agent Paddy engaged in a conspiracy to violate Villanueva and NAAVC's constitutional rights.  TAC ¶ 200, 203, 205, 206.  Moreover, Plaintiffs have alleged that Agent Paddy engaged in said conspiracy with a variety of other actors who acted under color of state law – to include Sergeant Kaskavage and Deputy Shay.  As such, Plaintiffs have stated a cognizable claim against Agent Paddy even if he is found to have been acting as a federal official.

## VIII.   CONCLUSION

The Court should deny Agent Paddy's Rule 12 motion.

May 4, 2021                    /s/John Sullivan                              
                               JOHN SULLIVAN
                               CSB#204648
                               10857 Kling Street
                               North Hollywood, California 91602
                               Tel:818-769-7236 Fax:818-301-2175
                               Email:Sullivan.John84@gmail.com

                               *Pro Hac Vice* Attorney for Plaintiffs Arizona Yagé
                               Assembly, North American Association of Visionary
                               Churches, Clay Villanueva, and Vine Of Light Church

**PLAINTIFFS' CORRECTED OPPOSITION TO MARCO PADDY'S MOTION TO DISMISS**