BRIAN M. BOYNTON
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; North American Association of Visionary Churches; Clay Villanueva; and the Vine of Light Church,<br><br>Plaintiffs,<br><br>v.<br><br>Merrick B. Garland, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373-PHX-ROS |

**FEDERAL AGENCY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT [Doc. 100]**

Plaintiffs seek leave to file a fourth iteration of their complaint. But this latest pleading is still fatally flawed as to each of the claims for relief against the Federal Agency Defendants. Jurisdictional and pleading defects that plagued the previous three complaints remain uncorrected, despite several rounds of motions briefing and a court order pointing out those deficiencies. Indeed, in the more than 30 new paragraphs of allegations, Plaintiffs did not even attempt to correct these jurisdictional and pleading deficiencies—many of which have been identified by Judge Orrick—in the latest Proposed Complaint. Under Federal Rule of Civil Procedure 15, a motion for leave to amend should be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiffs have been given several opportunities to correct the deficiencies in their complaint. Justice surely does not require granting leave to amend (and additional rounds of dispositive briefing by all Defendants) when Plaintiffs have repeatedly failed to correct known deficiencies, thus making this latest amendment futile. This court should deny leave to amend the complaint.

**BACKGROUND**

Plaintiffs AYA and NAAVC filed their original complaint on May 5, 2020, against various federal defendants in the Northern District of California. ECF No. 1. This complaint alleged that RFRA requires that Plaintiffs' religious use of ayahuasca be exempt from the Controlled Substances Act's ("CSA") prohibition on the use of ayahuasca and that DEA's process for administrating religious exemptions to the CSA violates the Administrative Procedure Act. *Id.* ¶¶ 123-71. On June 16, 2020, Plaintiffs filed an amended and supplemental complaint, adding a new Plaintiff: Villanueva, and new Defendant officials from the State of Arizona and Maricopa County. ECF No. 12. Villanueva and NAAVC sought relief under 42 U.S.C. § 1983 for an allegedly unlawful retaliatory conspiracy by federal, state, and county defendants. *Id.* ¶¶ 173–222. On September 21, 2020, Judge Orrick denied Plaintiffs' two preliminary injunction motions (on their RFRA and § 1983 claims) for improper venue. ECF No. 57 at 28-29. Notably, Judge Orrick also identified "serious concerns about the plaintiffs' ability to demonstrate a likelihood of success on the merits for either motion," on multiple other grounds, including that Plaintiffs' § 1983 allegations were "baseless and speculative." *Id.* at 23. On November 6,

2020, Judge Orrick granted Plaintiffs' motion to transfer to this District, again noting "that there are likely numerous barriers to the plaintiffs successfully obtaining injunctions and pursuing their claims." ECF No. 65 at 1.

On January 21, 2021, Plaintiffs amended their complaint for a second time (although captioned "Third Amended Complaint"). ECF No. 77. Despite having been put on notice by Judge Orrick of numerous pleading deficiencies, Plaintiffs did not materially alter their allegations or claims against Defendants. On March 22, Federal Defendants moved to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim. ECF No. 86. On May 4, 2021 Plaintiffs sought leave to file yet another amended complaint. ECF No. 97-1

In the Proposed Fourth Amended Complaint, the proposed additional allegations are listed under the heading for Plaintiffs' First Claim for Relief—Plaintiffs' RFRA claim against all defendants. However, the proposed additional allegations appear to concern Plaintiffs' Third Claim for Relief—their § 1983 claim. According to Plaintiffs' allegations in the Third Amended Complaint (unchanged in the Proposed Complaint), the tip that Agent Paddy passed along to Maricopa County law enforcement was received via "a phone call to a DEA tip line from a person in the 310 area-code who wanted to remain nameless, but left his phone number." Proposed Compl. ¶ 159. Plaintiffs further allege (in the Third Amended Complaint and the Proposed Complaint) that the telephone number left on the tip line "is listed to Rami Joseph Najjar." *Id.* Proposed new paragraphs 161-193 assert allegations concerning Agent Paddy's relationship with Najjar and, in particular, whether that relationship complied with DOJ and DEA policies concerning handling of confidential informants. Proposed new paragraph 196 alleges that DEA has a "long-standing policy prohibiting the initiation of criminal investigations based solely on anonymous tips." Finally, in a proposed new sentence in renumbered paragraph 229, Plaintiffs allege that "the DEA obtained knowledge of NAAVC, AYA, the Change.org Petition, and the plan to send the DEA Letter by infiltrating the Visionary Religion community." *See also* Proposed Compl. ¶ 193 (alleging that "Najjar and/or the DEA became aware of [Plaintiffs'] visionary religion activism through the Change.Org petition and

[Plaintiffs'] Facebook groups, that distributed the Petition hyperlink and shared an outline of the contents of the DEA Letter on Facebook on September 17, 2019" and "Najjar had put himself and the DEA on the email lists of one or more of these . . . Facebook groups . . . in order to surveil their activities, and pass along the information to the DEA, which Najjar did, thus providing the DEA with the knowledge that inflamed its institutional hostility towards visionary religion and stimulated the retaliatory raid . . . on May 19, 2020").

## LEGAL STANDARD

Whether to grant leave to amend is within the trial court's sound discretion. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). A district court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend may be properly denied on grounds of futility if the amendment would fail to state a valid claim. *Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 650 (9th Cir. 1984); *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995).

## ARGUMENT

Plaintiffs have amended their complaint twice after filing suit, and now seek leave to amend once more. Despite having a district court order and multiple rounds of briefing by state and federal defendants setting forth the numerous pleading deficiencies in Plaintiffs' complaint, their "Fourth" amended complaint fails to cure these deficiencies. Even with the addition of proposed new allegations related to their § 1983 claim, Plaintiffs' claims still cannot survive a motion to dismiss for three reasons. *See Jones*, 733 F.2d at 650.

*First*, Plaintiffs' APA claims must be dismissed under Rule 12(b)(1) because they have not alleged a justiciable final agency action, they failed to seek a RFRA exemption from the DEA, and any facial challenges to DEA's guidance are time-barred. *Second*, Plaintiffs' RFRA claims also cannot survive dismissal under Rules 12(b)(1) or 12(b)(6). *Third*, the new allegations

related to Plaintiffs § 1983 claim does not cure the previously identified deficiencies and likewise cannot survive a motion to dismiss. Even with the addition of Plaintiffs' proposed new allegations, Plaintiffs' claims would not survive dismissal, and justice would not be served by giving Plaintiffs fourth, and futile, bite at the apple.  "Because any amendment would be futile, there [is] no need to prolong the litigation by permitting further amendment." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002); s*ee, e.g.*, *Foman*, 371 U.S. at 82 (noting that denial is warranted for "repeated failure to cure deficiencies by amendments previously allowed").

## I. AMENDMENT IS FUTILE BECAUSE PLAINTIFFS HAVE STILL FAILED TO CURE THE DEFICIENCIES THAT PLAGUED THEIR PRIOR THREE COMPLAINTS.

### A. Plaintiffs' APA Claim is Subject to Dismissal Under Rule 12(b)(1).

Plaintiffs' request to amend their complaint is futile because the fourth iteration of their complaint still does not present a challenge to a final agency action. Plaintiffs' APA claim asserts that the DEA's process for evaluating petitions for exemptions to the CSA under RFRA (as articulated in the 2009 Guidance) is contrary to law. Proposed Compl. ¶¶ 207-08. This claim is not ripe, however, because the APA only permits judicial review of "final agency action." 5 U.S.C. § 704. Absent final agency action, this court lacks jurisdiction to review Plaintiffs' APA claim. *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007). Final agency action is required "because it may resolve the issue between the parties," and provides the administrative record to which judicial review is limited. *Arizona State Dep't of Educ. v. U.S. Dep't of Educ.*, 2007 WL 433581, at *7 (D. Ariz. Feb. 6, 2007).

Plaintiffs' most recent complaint—which does not amend or supplement the allegations supporting Plaintiffs' APA claims—fails to challenge any agency "action," final or otherwise, for all of the reasons identified in the Federal Agency Defendants' Motion to Dismiss, ECF No. 86. The APA defines agency "action" as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). Each "action" is "focuse[d] on an agency's *determination* of rights and obligations." *Vill. of Bald Head Island v. Army Corp of Eng's*, 714 F.3d 186, 193 (4th Cir. 2013); *see also Havasupai Tribe v. Provencio*, 906

4

F.3d 1155, 1162-63 (9th Cir. 2018). Here, Plaintiffs admit that AYA "did not submit a petition" for a CSA exemption to the DEA, Proposed Compl. ¶ 104, and do not allege that any Plaintiff has ever done so. The DEA thus has not taken any "action" (let alone "final" action) determining Plaintiffs' rights or obligations. *See, e.g.*, *Brooks v. Snow*, 313 F. Supp. 2d 654, 659 (S.D. Tex. 2004) (no final agency action where plaintiffs "never applied [with IRS] under the regulation to obtain the ultimate relief they seek"), *aff'd*, 126 F. App'x 173 (5th Cir. 2005); *see also United States v. Hugs*, 109 F.3d 1375, 1378-79 (9th Cir. 1997) ("[T]he [plaintiffs] have never sought to use the permit system and therefore have no standing to challenge the way in which the scheme operates.").

Requiring final agency action before judicial review is particularly necessary here because jurisdiction over any DEA decision on a petition lies exclusively in a United States Court of Appeals. *See* 21 U.S.C. § 877; *see, e.g.*, *John Doe, Inc. v. DEA*, 484 F.3d 561, 568-69 (D.C. Cir. 2007). In a recent decision, the United States District Court for the District of Columbia dismissed a challenge to an interim final rule issued by DEA on the basis of the exclusive-review provision of § 877; in doing so, that court surveyed the body of federal court authority on the scope of § 877 holding that "this provision 'vests exclusive jurisdiction in the courts of appeals over "[a]ll final determinations, findings, and conclusions" of the DEA applying the CSA.'" *See Hemp Indus. Ass'n v. DEA*, 20-cv-2921-JEB, 2021 WL 1734920, at *5 (D.D.C. May 3, 2021). Entertaining Plaintiffs' claims in district court, in the absence of any agency action to review, would contravene Congress's clear intent both to limit APA review to agency actions and to channel petitions for relief first to the agency for administrative review, and then to the courts of appeals. Allowing Plaintiffs' claim to proceed would "encourage[] forum shopping and encourage[] dissatisfied claimants to 'jump the gun' by going directly to the district court to develop their case" rather than the agency. *Doe*, 484 F.3d at 570.

Although the complaint appears on its face to raise only an as-applied APA challenge to the DEA's process for evaluating petitions for exemptions to the CSA under RFRA (as articulated in the 2009 Guidance), *see* Proposed Compl. ¶¶ 207-08, Plaintiffs previously argued that they, in fact, assert both an as-applied and a facial challenge to the Guidance based on

5

these allegations. But even if reasonably within the four corners of their complaint, Plaintiffs' facial challenge to the Guidance is subject to dismissal because it runs headlong into the six-year statute of limitations period applicable to APA challenges. *See* 28 U.S.C. § 2401(a); *Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991).

Under § 2401(a), if a plaintiff "wishes to bring a policy-based facial challenge to the government's decision," the suit must be brought within six years. *Wind River*, 946 F.2d at 715 (considering *ultra vires* claim). After that time, a plaintiff may only contest a government decision if the complaint seeks "review of the adverse application of the decision to the particular challenger." *Id.* But there has been no adverse application of the guidelines to any Plaintiff, as they have never applied for an exemption. Proposed Compl. ¶ 104. Plaintiffs previously argued that the Guidance, which DEA issued in 2009, is, on its face, "ultra vires," "unconstitutional," promulgated "without notice and comment rulemaking," and "without a statutory basis." ECF No. 94 at 12-13. Because none of these claims depend in any way on the particular application of the Guidance to Plaintiffs, they have been time-barred since 2015. *See Wind River*, 946 F.2d at 715 (where "a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision"); *Ctr. for Bio. Div. v. Salazar*, 695 F.3d 893, 904 (9th Cir. 2012).

Perhaps to evade the clear time bar, Plaintiffs previously argued that their challenge to the Guidance is "as applied" on the basis that those seeking a religious exemption to use ayahuasca "were required to submit an exemption request that contained incriminating statements." ECF No. 94 at 13. But this argument (should Plaintiffs re-assert it), is not fairly within the four corners of their complaint and, moreover, simply re-packages their facial challenge to the validity of the policy, under which individuals file a petition and undergo a pre-registration investigation to seek a religious exemption. *See Willis v. Seattle*, 943 F.3d 882, 886 (9th Cir. 2019) ("A facial challenge is a claim that a law or policy is unconstitutional in all of its applications."); *see also* ECF No. 94 at 13 (admitting that Plaintiffs as-applied challenge is "virtually identical" to their facial challenge). Under *Wind River*, this is not an "as applied" challenge (i.e., the Guidance has been applied to Plaintiffs) for one simple reason: Plaintiffs have chosen not to avail

6

themselves of the exemption process they challenge, and thus, their claim is not a "review of the adverse application of the decision to the particular challenger." *Id.*

Because Plaintiffs' APA claim is subject to dismissal for lack of jurisdiction, it would be futile to allow Plaintiffs to amend their complaint to assert this claim.

**B.   Plaintiffs' RFRA Claim is Subject to Dismissal.**

As Defendants previously pointed out, Plaintiffs' RFRA claims cannot survive dismissal under Rule 12(b)(1) or (b)(6). *See* ECF No. 86 at 5-12. Plaintiffs' proposed complaint does not attempt to cure these deficiencies, and their motion for leave to amend should therefore be denied.

1.   Plaintiffs' RFRA claim is subject to dismissal for lack of standing.

In their RFRA claim, all four Plaintiffs ask the Court to enter an injunction ordering DEA to register them as exempt from enforcement of the CSA's prohibitions on importing, manufacturing, and distributing ayahuasca. Proposed Compl. ¶ 150. Plaintiffs claim they are entitled to this prospective relief because they "fear prosecution" for these activities. *Id.* ¶ 137.

To demonstrate Article III standing, *each* Plaintiff must show that *each* provision they challenge has caused them a concrete and particularized "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). To establish an injury-in-fact to support a claim for injunctive relief, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy[.]'" *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 n.1 (9th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Plaintiffs lack standing to assert a pre-enforcement RFRA claim because Plaintiffs have not pleaded a genuine threat of imminent prosecution. To be ripe, a complaint seeking an injunction based on "a claimed threat of prosecution" (i.e., asserting a pre-enforcement challenge) must plead a "genuine threat of imminent prosecution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). As Defendants previously argued, Plaintiffs failed to satisfy that standard, ECF No. 86 at 5-9, and Judge Orrick previously agreed:

7

in denying Plaintiffs' motion for a preliminary injunction, he concluded that "the plaintiffs have not shown, as they must to obtain a pre-enforcement injunction, that there has been any realistic, imminent threat of prosecution or enforcement action by the federal government." ECF No. 57 at 23; *see also id.* at 2 ("[P]laintiffs have not alleged a pre-enforcement threat by the DEA."). Plaintiffs have already admitted as much, ECF No. 53 at 7 (arguing that "arrest is not necessarily a prerequisite for an individual to bring a pre-enforcement claim"), and they did not include additional allegations to satisfy the three-part test the *en banc* Ninth Circuit announced in *Thomas* for a genuine threat of imminent prosecution. ECF No. 86. at 6-9. In their attempt to satisfy that test, Plaintiffs previously relied nearly exclusively on claims of past harm—including alleged border seizures and the County's search of Villanueva's alleged "church-residence."[1] ECF No. 94 at 2, 7-8. However, "past exposure to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm." *Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990); *see also Munns v. Kerry*, 782 F.3d 402, 411-12 (9th Cir. 2015) ("Despite being harmed in the past, [plaintiffs] must still show that the threat of injury in the future is 'certainly impending' or that it presents a 'substantial risk' of recurrence for the court to hear their claim for prospective relief.").[2] Plaintiffs' proposed complaint does not add any new allegations of future harm—let alone of the "certainly impending" nature.

---

[1] The County's search of Villanueva's home, which had "no signage or other indication that [it is] a church," ECF No. 39 at 12, yielded "substantial evidence of criminal conduct, including some 70 pounds of DMT, evidence of the sale and shipment of DMT, more than 100 marijuana plants, five pounds of processed marijuana, psilocybin mushrooms, and a small quantity of methamphetamine," *id.* at 9.

[2] The Complaint alleges that DHS seized AYA's and NAAVC's imported ayahuasca at the border, Proposed Compl. ¶¶ 138-41, and seeks retrospective injunctive relief in the form of an order directing DHS to return it, *id.* ¶ 82, 3. But as Defendants previously argued, this aspect of Plaintiffs' RFRA claim is not redressable, since DHS either does not currently possess, or cannot determine if it possesses, the ayahuasca in question. ECF No. 86 at 8 n.5; *see Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 840 (9th Cir. 2012) (affirming dismissal of claim for "return of . . . seized marijuana under RFRA" because "the court cannot order the government to return something it does not have"). Plaintiffs' proposed complaint does not fix this deficiency.

8

In addition, Plaintiffs lack standing because they cannot establish that a threat of prosecution is fairly traceable to the Federal Agency Defendants. *See Lujan*, 504 U.S. at 560 (plaintiffs must show that any alleged injury is "fairly traceable to the challenged action of the defendant" (cleaned up)). Courts, including the Ninth Circuit, have held that criminal defendants lack standing to assert a RFRA defense to prosecution where they could have applied for a permit to engage in the otherwise illegal activity, and yet failed to do so. *See, e.g.*, *United States v. Hugs*, 109 F.3d 1375, 1378 (9th Cir. 1997) ("[T]he [plaintiffs] have never sought to use the permit system and therefore have no standing to challenge the way in which the scheme operates."); *United States v. Winddancer*, 435 F. Supp. 2d 687, 693 (M.D. Tenn. 2006). Any genuine threat of imminent prosecution Plaintiffs might face is traceable only to their own refusal to seek from the DEA the exemptions for which they claim to qualify. *See, e.g.*, Proposed Compl. ¶ 104.

        2.        Plaintiffs' RFRA claim is subject to dismissal under 12(b)(6) because the Complaint has not pleaded a prima facie claim.

The complaint does not sufficiently plead the three elements required to state a prima facie RFRA claim. *See* ECF No. 86 at 11-12. RFRA requires a plaintiff to show "that the government's action was a (1) substantial burden on a (2) sincere (3) exercise of religion." *Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1145 (N.D. Cal. 2007), *aff'd*, 365 F. App'x 817 (9th Cir. 2010).

First, the burden imposed on Plaintiffs' alleged exercise of religion is not "substantial" as a matter of law. *See* ECF No. 86 at 11-12. Plaintiffs allege that they are "burdened by the prohibitions" in the CSA. Proposed Compl. ¶ 133. But that characterization is incorrect, given the DEA's religious-based exemption process. More accurately, the CSA's prohibitions function as a prophylactic measure that remains in place until an applicant is able to demonstrate entitlement to an exemption. The question is thus whether Plaintiffs' religion is substantially burdened, not by the CSA's *prohibitions*, but by the DEA's *regulatory exemption process*. *See, e.g.*, *United States v. Tawahongva*, 456 F. Supp. 2d 1120, 1132 (D. Ariz. 2006) ("[A]lthough slightly burdened, [Plaintiff was] not substantially burdened [under RFRA] by the requirement that he

9

acquire a permit" excepting his alleged religious exercise from criminal sanction); *see also United States v. Friday*, 525 F.3d 938, 947-48 (10th Cir. 2008) ("We are skeptical that the bare requirement of obtaining a permit can be regarded as a 'substantial burden' under RFRA[.]").

Plaintiffs previously admitted, as they must, that to satisfy RFRA's "substantial burden" prong, they must show that they have been "coerced to act contrary to their religious beliefs." ECF No. 94 at 4 (citation omitted). But nowhere among Plaintiffs' various alleged burdens in the latest complaint is an allegation that any Plaintiff has stopped importing, manufacturing, distributing, or using ayahuasca. Indeed, any assertion to the contrary would be contradicted by Plaintiff AYA's own website, www.aya.guide, which states that AYA has been selling access to "ayahuasca ceremonies" since before Plaintiffs filed this action on May 5, 2020. The site further states that AYA will hold "ayahuasca ceremonies" throughout May, June, and July 2021, including in just nine days from today. *Id.*; *see* ECF No. 86 at 14 n.9.

Finally, Plaintiffs Complaint cannot satisfy RFRA's "exercise of religion" element for each discrete activity for which they seek a CSA exemption. *Id.* at 12. Even if only one plaintiff must demonstrate *standing*, ECF No. 94 at 7, each plaintiff must satisfy the three elements of a prima facie RFRA claim, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006) ("*O Centro*") (explaining that a RFRA's "focused" inquiry is applied "to the person—the particular claimant whose sincere exercise of religion is being substantially burdened" (citation omitted)). But in the latest Complaint, Villanueva and VOLC do not allege that their sincere religious exercise requires importing, manufacturing, or distributing ayahuasca. *See* ECF No. 86 at 12. AYA does not allege that its sincere religious exercise requires importing or manufacturing ayahuasca. *Id.* And NAAVC does not allege that its sincere religious exercise requires manufacturing ayahuasca. *Id.*

Plaintiffs' RFRA claims are not immune from dismissal under Rule 12(b)(6) under *O Centro* or *Church of Holy Light of Queen v. Holder* ("*CHLQ*"). Despite Plaintiffs previous *assertion* that they "are in the same position as the churches in *O Centro* and *CHLQ*," ECF No. 94, the latest complaint does not *allege* that Plaintiffs are "in the same position" as the *O Centro* and

*CHLQ* plaintiffs, *see, e.g.*, Proposed Compl. ¶¶ 91-92. Under RFRA's individualized, fact-specific inquiry, claimants "cannot simply point to other groups who have won accommodations for the sacramental use of . . . hoasca and say 'we'll have what they're having[.]'" *United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016). In *O Centro*, on appeal from a preliminary injunction, the Supreme Court held that the RFRA requires "case-by-case consideration of religious exemptions" even for "exceptionally dangerous" Schedule I substances like hoasca (another term for the substance also known as ayahuasca). 546 U.S. at 430-36. The DEA implemented that holding with the very 2009 Guidance Plaintiffs here claim violates RFRA. *CHLQ* which likewise pre-dated the guidance, involved a trial on the merits, a partial reversal of a broad injunction, and an out-of-court settlement tailored to CHLQ and to DEA's regulatory interests. *CHLQ v. Mukasey*, 615 F. Supp. 2d 1210, 1212, 1216-17 (D. Or. 2009); *Church of Holy Light of Queen v. Holder*, 443 F. App'x 302, 303 (9th Cir. 2011). Nor does either case support the conclusion that RFRA requires a CSA exemption for all groups using ayahuasca. Finally, even accepting Plaintiffs' theory, they cannot prevail under it, for the proposed Complaint does not allege that Plaintiffs are "in the same position" as the *O Centro* and *CHLQ* plaintiffs, *see, e.g.*, Proposed Compl. ¶¶ 91-92.

### C. The Declaratory Relief Act Claim is Subject to Dismissal

Plaintiffs proposed Complaint again asserts a Declaratory Judgment Act claim, ¶¶ 310-312, but it is subject dismissal for the same reasons as Plaintiffs' substantive claims because "the Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action," *Cty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1215-16 (N.D. Cal. 2017).

### D. Plaintiffs' Section 1983 Claim is Subject to Dismissal

Binding circuit precedent clearly establishes that "by its very terms, § 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997). This is so, the Ninth Circuit has explained, because under § 1983, "a district court must find that the defendants acted 'under color of state law,'" *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992), and federal officials "generally do not act under 'color of state law.'" *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988). Thus, to bring a claim against federal

officials under § 1983, a plaintiff must show a "sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself.'" *Cabrera*, 973 F.2d at 743; *see also Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008) (explaining that *Cabrera* "reaffirmed" the "long-standing" "sufficiently close nexus" requirement); ECF No. 94 at 16 (acknowledging *Cabrera*'s "sufficiently close nexus" standard). In *Ibrahim*, when affirming dismissal of the plaintiff's § 1983 claim, the Ninth Circuit held that the required "sufficiently close nexus" is lacking where "the federal defendants acted pursuant to federal laws," and the state officials "had nothing to do" with the federal government's decisions and actions. 538 F.3d at 1256-57.

The allegations in the Third Amended Complaint failed to make this showing, ECF No. 86 at 13-16, and the new allegations in the proposed Complaint do not remedy this deficiency. None of the allegations Plaintiffs have identified from the Third Amended Complaint as "form[ing] the basis for Plaintiffs' [§ 1983] claim," ECF No. 94 at 15, assert that any state official had anything to do with Agent Paddy's decision to pass along the tip to Kaskavage or Paddy's actions in doing so.[3] Nor does the one additional allegation Plaintiffs cite as support for the proposition that "DEA 'significantly participated' in the infringement of Plaintiffs' civil rights by instigating the investigation, setting the goals for the investigation, and aiding in the raid," satisfy the standard. *See* ECF No. 94 at 17 (citing Third Am. Compl. ¶ 199). The cited paragraph simply describes the HIDTA and alleges that "DEA personnel aided in the raid." Third Am. Compl. ¶ 199. But federal officers' participation in a "cooperative federalism scheme" does not mean those officers act under color of state law for purposes of § 1983. *See*

---

[3] Plaintiffs' recitation of these allegations misleadingly suggests that DEA received NAAVC's letter prior to Agent Paddy's sending Maricopa County the tip. But sworn declarations filed in this case, which are undisputed and are documents of the sort plaintiffs agree the Court can judicially notice, *see* ECF No. 86 at 14 n.9 & ECF No. 95 at 8 n.3, establish that Paddy informed the County about the tip before DEA received NAAVC's letter. *See* ECF No. 41-1 at ¶¶ 5-6 (Paddy sent the tip to Maricopa County on January 8, 2020) & ECF No. 41-2 at ¶ 7 (NAAVC emailed letter after close of business on January 9, 2020); *accord* ECF No. 33-1 at ¶ 37 (Plaintiffs' own declarant admitting that the "[t]he DEA received the [mailed version of the NAAVC's] letter on January 10th"). The undisputed evidence in the record belies any suggestion that Paddy sent the tip out in retaliation for NAAVC's letter because neither he nor anyone else at DEA knew about the letter at the time of the tip. ECF No. 41-1 at ¶ 9 (Paddy "had never heard of" NAAVC or its letter until August 2020).

*Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997); *Olson v. Norman*, 830 F.2d 811, 821 (8th Cir. 1987). And even if DEA agents did participate in the search, Plaintiffs concede in the Complaint that the DEA derives its authority from *federal* law, Third Am. Compl. ¶ 7 & n.1, and nowhere allege that Agent Paddy or another DEA agent was not acting pursuant to this authority or that any state official had anything to do with the DEA agents' decisions or actions. None of Plaintiffs proposed new allegations address these deficiencies; thus, under *Ibrahim*, Plaintiffs' allegations do not establish the "sufficiently close nexus," and dismissal of the proposed complaint would still be proper. 538 F.3d at 1256-57.

Further, neither the Third Amended Complaint nor the proposed Complaint establishes any conspiracy under § 1983 because: (1) plaintiffs do not allege "an agreement or 'meeting of the minds' to violate constitutional rights," *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1548 (9th Cir. 1989) (*en banc*) (quotations and citation omitted); and (2) defendants' sworn representations demonstrate that there was in fact no meeting of the minds or shared objective between DEA officials and state officials. *See* ECF No. 86 at 15-16; *id.* at 16 (citing ECF No. 41-1 ¶ 9 & ECF No. 41-4 ¶¶ 6-8).

In the Third Amended Complaint, Plaintiffs did not allege facts sufficient to establish a § 1983 conspiracy. All Plaintiffs allege is that: (1) "Shay was prompted to initiate enforcement action against Villanueva by his HIDTA boss, [Micah] Kaskavage," a Phoenix Police Department officer detailed to the HIDTA Arizona SW Task Force, Third Am. Compl. ¶ 204; (2) "[a]ll of Shay's actions were contemplated, intended and furthered by Agent Paddy's initiating the investigation of Villanueva from a retaliatory motive," *id.* ¶ 168; and (3) "[p]ursuant to the conspiracy formed at the DEA's instigation, and using HIDTA as their meeting ground and funding source, Maricopa County and Shay initiated an investigation of Villanueva to further the purposes of the conspiracy," *id.* ¶ 205. In none of these wholly conclusory allegations do Plaintiffs allege either that the DEA passed along its "suggestion or request" to conspire to deprive Villanueva of his civil rights or, more importantly, that Kaskavage or Shay and the "agents of the DEA" had any joint understanding—let alone any discussion—about an inten-

tion to deprive Villanueva of his civil rights. Although Plaintiffs allege that Paddy told Kaskavage that the DEA wanted HIDTA to search Villanueva's home, "by whatever means might be required, including the fabrication of evidence," and that Shay "mak[e] inculpatory accusations against Villanueva in the [search] warrant affidavit with knowledge of their falsehood, a reckless disregard for the truth, and the preconceived intention to mislead the reviewing magistrate," *id.* ¶ 162, these allegations are—in the words of Judge Orrick—"baseless and speculative," ECF No. 57 at 23. And even if these allegations were well-founded, the Proposed Complaint fails to connect the dots: it does not allege that Shay ever communicated with Paddy, or that Kaskavage relayed the objective of any conspiracy to Shay. *See* Proposed Compl. ¶ 204. The new allegations in the Proposed Amended Complaint do nothing to cure this deficiency. The only reference to state officials in the proposed new paragraphs merely repeats allegations in the Third Amended Complaint that Agent Paddy passed along the tip to Kaskavage. *Id.* ¶ 164.

Moreover, even if Plaintiffs' allegations supported a § 1983 conspiracy claim, defendants' sworn representations refute them, as they demonstrate that there was in fact no meeting of the minds or shared objective between DEA officials and state officials. Paddy had never heard of NAAVC or its attorney or their letter until August 2020. ECF No. 41-1 ¶ 9. And the supervisor of the DEA's Phoenix task force had also not heard of NAAVC or its attorney or their letter until months after the May 19 search. *See* ECF No. 41-4 ¶¶ 6-8. No other DEA official is alleged to have been involved in the alleged conspiracy. For this reason, the allegations in proposed new paragraph 193 that "the DEA became aware of NAAVC and Villanueva's visionary religion activism through the Change.Org petition and the AYA, NAAVC, and/or Villanueva's Facebook groups, that distributed the Petition hyperlink and shared an outline of the contents of the DEA Letter on Facebook on September 17, 2019," cannot be credited or accepted as true for the purposes of a motion under Rule 12(b)(6). *See* ECF No. 57 at 20 ("The sworn evidence indicates that the investigation was unconnected to this lawsuit."); *id.* at 21 ("The basic flaw of the plaintiffs' theory remains: there is sworn evidence that the search had nothing to do with this case."). And even if the proposed new allegations that

14

Najjar was aware of the Change.org petition or "the contents of the DEA letter" were accepted as true for the purposes of a Rule 12 motion, the Proposed Amended Complaint would still fail to connect the dots needed to establish the requisite meeting of the minds or shared objective: the Proposed Amended Complaint does not allege that Najjar ever communicated with any state official, or himself harbored any shared retaliatory purpose. In fact, Plaintiffs proposed new allegations specifically preclude finding the requisite agreement: in proposed new paragraph 163, Plaintiffs allege that DEA deliberately obscured from Agent Paddy "the purpose and scope of the conspiracy" in which he is alleged to have been the link among Najjar, the larger DEA, and state officials.

For all of these reasons, even accepting as true all of the allegations, including those newly proposed, Plaintiffs' § 1983 claim is subject to dismissal, and it would be futile to allow Plaintiffs an additional amendment on this claim.

**II.    JUSTICE WOULD NOT BE SERVED BY GRANTING PLAINTIFFS' MOTION.**

Under Rule 15(a)(2), leave to amend should be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiffs have now had numerous opportunities to correct the jurisdictional and pleading deficiencies in their complaint. Instead of using any of their amendments, including the latest, as an opportunity to try to correct these defects, Plaintiffs added over 30 paragraphs of allegations that do nothing to cure defects previously identified by not only Federal Agency Defendants, but also by Judge Orrick. For the reasons explained, allowing this futile amendment would waste judicial resources and contravene the interests of justice because Plaintiffs' claims still cannot survive a motion to dismiss. *See, e.g.*, *Foman*, 371 U.S. at 82 (noting that denial is warranted for "repeated failure to cure deficiencies by amendments previously allowed"); *Nichols v. Holder*, 238 F. Supp. 3d 1, 12 (D.D.C. 2017) (denying leave to file third amended complaint because last "amended pleading does not cure—and, in fact, scarcely addresses—the shortcomings noted in the Court's prior opinion"); *City of Livonia Emps.' Retirement Sys. v. The Boeing Co.*, No. 09-7143, 2010 WL 2169491, at *5 (N.D. Ill. May 26, 2010) (plaintiffs "not entitled to leisurely repeated bites at the apple, forcing a district judge to decide

whether each successive complaint was adequate."). Justice does not require allowing an amended complaint, and more rounds of briefing by three sets of Defendants, when Plaintiffs steadfastly refuse to address previously identified shortcomings with their pleadings.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated: May 19, 2021                                              Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ Lisa Newman
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2021, I electronically transmitted the foregoing Federal Agency Defendants' Opposition to Plaintiffs' Motion for Leave to File Fourth Amended and Supplemental Complaint [Doc. 100] to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

/s/ Lisa Newman
LISA NEWMAN