Jeffrey S. Leonard (No. 3809)
Jeffrey.Leonard@SacksTierney.com
Evan F. Hiller (No. 28214)
Evan.Hiller@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
*Attorneys for Defendants Maricopa County
and Matthew Shay*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Merrick Garland, et al., <br><br> Defendants. | Case No. 20-cv-02373-PHX-ROS <br><br> **DEFENDANTS MARICOPA COUNTY AND MATTHEW SHAY'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT** <br><br> (Oral Argument Requested) |

Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, Defendants Maricopa County (the "County") and Matthew Shay ("Shay") (collectively, the "County Defendants") move the Court for an order dismissing the Fourth Amended Complaint (Doc. 109) (the "FAC" or the "Complaint") and this action, as to the County Defendants, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Pursuant to LRCiv 7.2(b), this motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.   Introduction**

Plaintiffs' claims against the County Defendants arise from the May 19, 2020 execution of a search warrant at the residence of Plaintiff Clay Villanueva ("Villanueva"), also the address of the Vine of Light Church. The Maricopa County Sheriff's Office ("MCSO") seized 70 pounds of ayahuasca paste (a compound containing the hallucinogenic drug DMT), more than 100 marijuana plants, and five pounds of processed marijuana.

Plaintiffs allege that the search was not supported by probable cause and was intended to further a "conspiracy" by the DEA (of which no County Defendant is alleged to be aware) to chill the religious freedom and free speech of Villanueva, all in retaliation for Villanueva's role (also unknown to the County Defendants) in advocating for an exemption from the Controlled Substances Act for use of ayahuasca by visionary churches. Plaintiffs' claims are entirely without merit.

The County Defendants previously moved to dismiss Plaintiffs' Third Amended Complaint (Doc. 77) based, in part, upon failure to comply with Arizona's Notice of Claims statute, A.R.S. § 12-821.01; Shay's qualified immunity; the lack of County liability for the acts of MCSO deputies under *Fridena v. Maricopa County,* 18 Ariz.App. 527 (1972); and the lack of any causal connection between official County policy or custom and the allegedly unconstitutional investigation and search under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). *See generally* Doc. 85. Plaintiffs' Fourth Amended Complaint does not address any of these issues, nor the County Defendants specifically, other than by surrendering any damages claims against Shay. The instant Motion to Dismiss further addresses Plaintiffs' claims for injunctive relief, which are not justified by real and immediate threat of irreparable injury.

Importantly, many of Plaintiffs' allegations are directly refuted by the affidavit submitted in support of the search warrant, previously filed as Doc. 39-3. "Numerous cases … have allowed consideration of matters incorporated by reference or integral to the claim, … orders, [and] items appearing in the record of the case … without converting the motion into one for summary judgment. These matters are deemed to be a part of every complaint by implication." 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, Civ. § 1357 (3d ed. 2008); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (considering subpoenas not attached to complaint but critical to lawsuit); *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998-999 (9th Cir. 2011). When the actual contents of the affidavit are considered, it is clear that Plaintiffs have failed to state a claim against the County Defendants.

2

All of Plaintiffs' claims against Shay and the County should be dismissed.

## II. Plaintiffs Fail to State a Claim against Shay.

### A. Status of Plaintiffs' Claims for Money Damages against Shay

Plaintiffs never served Shay with the Notice of Claim required by A.R.S. § 12-821.01. That statute—which requires strict compliance—bars **all** claims for money damages against a public employee absent such notice. *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 61 (App. 2010) ("To perfect his claims against an individual officer, [plaintiff] had to deliver a notice of claim to the officer personally, an individual of suitable age and discretion residing with the officer, or the officer's appointed agent."); *see also* A.R.S. § 12–821.01(A); Ariz. R. Civ. P. 4.1(d). Plaintiffs have conceded that their state-law claims for money damages against Shay are barred by Arizona's Notice of Claims statute, and have further stated that they intend to withdraw any such claims. *See* Doc. 95 at 17.

Plaintiffs have now stricken all requests for damages against Shay from their Prayer for Relief. *See* Doc. 100-2 at 93, 94; FAC at 93, 94. If Plaintiffs continue to seek money damages from Shay on their § 1983 claim—and it is not clear that they do—then such damages are barred by qualified immunity.

### B. Shay Is Entitled to Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The Complaint must therefore allege sufficient facts constituting a plausible claim that Shay violated clearly established federal law. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In their Opposition to the County's Motion to Dismiss the Third Amended Complaint, Plaintiffs identified four supposed violations of clearly established law, *see* Doc. 95 at 4-12; this section therefore discusses

3

each supposed violation in turn.

### 1. Judicial Deception

To prevail on a claim that a police officer procured a warrant through deception, Plaintiffs "must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223-24 (9th Cir. 2009) (citations omitted). This materiality requirement means that "a plaintiff must make not only a substantial showing of deliberate falsehood or reckless disregard for the truth regarding an officer's statements in an affidavit for a warrant, but establish that 'without the dishonestly included or omitted information,' the warrant would not have issued." *Morley v. Walker*, 175 F.3d 756, 760 (9th Cir. 1999) (*quoting Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995)).

First, Plaintiffs suggest that Shay concealed or falsely presented the source of the tip leading to his investigation. *See*, *e.g.*, FAC ¶ 200. Even if this were true, the tip is discussed in only a single paragraph of the synopsis and three paragraphs of the narrative supporting the search warrant. Doc. 39-3 at 15, 16-17. The remainder of the affidavit – which is ***twenty pages long*** – describes the investigation that Shay then conducted, including his review of social media linking Villanueva to ayahuasca and other drug use; multiple visits to Villanueva's home, at which the scent of green, growing marijuana was detected; obtaining and reviewing records of PayPal accounts held by Villanueva and likely linked to ayahuasca or marijuana sales; obtaining and reviewing medical marijuana patient and caregiver records linked to Villanueva; and linking what Shay found to his past experiences investigating DMT laboratories and illegal marijuana grows. *See generally* Doc. 39-3 at 17-34. The tip played no significant role in establishing probable cause for the search warrant, and the evidence of marijuana cultivation and sale would have justified the issuance of the warrant regardless of how the tip was characterized.

Second, Plaintiffs suggest that Shay falsely created an impression that Villanueva's religious activities were not sincere and that his home was a "run-of-the-mill Phoenix drug packaging house, not a church." FAC ¶¶ 197, 247. But the impression that Villanueva was

4

3036481.v7

dealing in drugs is not false; rather, it is an accurate characterization of his (i) possession of numerous fraudulent "qualified patient" marijuana cards transferring cultivation rights; (ii) cultivation of marijuana at his home; (iii) description of himself as "El Presidente and Gardner[1] [sic] at Wavz Research"; and (iv) control of PayPal accounts linked to "Wavz" that received significant amounts of money. See Doc. 39-3 at 20-23. Sincerity was irrelevant.

Third, Plaintiffs suggest that Shay concealed exculpatory evidence that his investigation discovered no evidence of DMT manufacturing in Villanueva's trash. FAC ¶ 201. Not so; Shay in fact wrote that he "conducted multiple checks of this address" to inspect trash for evidence, but "the can was not to the curb in the evening or early mornings prior to trash pickup each time I checked." Doc. 39-3 at 20.

Critically, nowhere do Plaintiffs deny that Villanueva was growing and selling marijuana from his home, which would also be a violation of Arizona law.[2] Plaintiffs themselves allege that the source of the DEA tip about Villanueva, Rami Najjar, "had recently received a refund of his deposit to attend an Ayahuasca ceremony," FAC ¶ 159, demonstrating that Villanueva received payment for the ayahuasca administered in his ceremonies.

None of the alleged omissions or misrepresentations negate the extensive financial, social media, and witness evidence of marijuana and ayahuasca sales discussed in the affidavit and establishing probable cause for the warrant.

### 2.  Retaliatory Animus

The Complaint attributes retaliatory animus exclusively to Agent Paddy and the DEA. *See* FAC ¶¶ 159, 160, 228, 232. Shay (and the County) are accused only of having "initiated an investigation of Villanueva to further the purposes of the conspiracy." FAC ¶

---

[1] Marijuana growers often refer to themselves as "gardeners." Doc. 39-3 at 23.

[2] In May 2020, the Arizona Medical Marijuana Act (the "AMMA") permitted caregivers to grow marijuana on behalf of patients, but only licensed dispensaries were permitted to sell marijuana. A.R.S. §§ 36-2811(B)(3), (E), and (F); A.R.S. § 36-2815(C).

5

3036481.v7

239. "Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). "To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (quotation marks and internal citation omitted). Plaintiffs have never alleged that Shay *knew* of retaliatory animus,[3] nor that he *agreed* to participate in a "common design" to violate Villanueva's rights.

Moreover, the record is clear that probable cause existed for the search. *See* Part II.A.1, *supra*. The absence of probable cause is a required element in retaliatory animus cases, with a narrow exception only "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1727 (2019). Shay wrote in his affidavit that over the course of investigating "well over 300 illicit marijuana grows," including "at least twenty 'Care Giver Cultivator' conspiracy investigations," he has "dismantle[d] no less than 100 narcotic cannabis manufacture operations" and "seized, or assisted in the seizure of, over 100,000 pounds of bulk marijuana." Doc. 39-3 at 31-32. Thus, far from being a situation where officers do not take action against similarly situated individuals, MCSO in fact "disrupts" illegal marijuana operations like Villanueva was running by "destroying the crop, seizing [un]lawfully-grown medicinal plants, and confiscating growing equipment." TAC at ¶ 209.[4]

### 3. Free Exercise

Plaintiffs rely heavily on *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418 (2006) ("*O Centro*"), and Shay's knowledge thereof. FAC ¶ 247.

---

[3] Indeed, Plaintiffs admit that Shay was not "alerted" that "Villanueva was an NAAVC Director who initiated both the Change.org Petition and this lawsuit." FAC ¶ 166.

[4] Plaintiffs have not alleged that MCSO does not make arrests or seizures relating to marijuana, only that Villanuva's marijuana operation was "lawful" and "state-licensed." FAC ¶ 243. The record makes clear that it was neither. Doc. 39-3.

6

As Plaintiffs themselves admit, however, *O Centro* addresses only the federal government's blanket refusal to consider any exemptions to the Controlled Substances Act for sacramental use of ayahuasca. FAC ¶¶ 36, 37. What the Supreme Court determined the Religious Freedom Restoration Act required, in *O Centro*, was for the DEA to "licens[e] the church to import, manufacture and distribute its sacrament exclusively to its church members." *Id.* The Vine of Light Church does not currently have such an exemption, and Plaintiffs do not allege that the church abides by similar restrictions to those imposed on the prevailing church by the *O Centro* decision. To the contrary, it is clear from the social media reviewed by Shay (and detailed in his affidavit) that Villanueva markets ayahuasca ceremonies to the public, and that such ceremonies are not restricted to members of the Vine of Light Church. Doc. 39-3 at 18. It would hardly have been clear to a reasonable law enforcement officer that the *O Centro* decision immunized Villanueva from criminal prosecution for manufacturing or selling ayahuasca, much less from growing and selling marijuana pursuant to fraudulently obtained and ineffective caregiver licenses.

### 4.    Unreasonable Seizure

Plaintiffs claim that Shay (as one of the purported "conspirators") violated Villanueva's Fourth Amendment rights "by demanding entry to his home and the Vine of Light Church, holding him at gunpoint, handcuffing him, and keeping him a prisoner in his own home for several hours." FAC ¶ 254. Entry into Villanueva's home was permitted by possession of a facially valid search warrant. *See Messerschmidt v. Millender*, 565 U.S. 535, 555 (2012). And because federal law "permit[s] officers executing a search warrant 'to detain the occupants of the premises while a proper search is conducted,'" *Bailey v. United States*, 568 U.S. 186, 193 (2013) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)), detaining Villanueva to prevent him from destroying evidence or interfering in the search is not contrary to "clearly established" law.

\*    \*    \*

In sum, the Complaint fails to plausibly allege that Shay knowingly violated established federal law. Plaintiffs' § 1983 claims are barred by qualified immunity.

7

### C. Plaintiffs Do Not Make a Plausible Claim for Injunctive Relief

As to Shay specifically, Plaintiffs request only an injunction prohibiting him "from conspiring to infringe or chill" Plaintiffs' First Amendment rights, "from acting in furtherance of any such conspiracy," and from "conducting criminal investigations" of Plaintiffs.[5] FAC at 93, 94. However, Plaintiffs have not alleged that they are "realistically threatened by a *repetition* of the violation" of their rights by **Shay** himself. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (internal citations omitted) (emphasis original). Rather, Plaintiffs allege "the threat of pending prosecution and future enforcement by state actors operating at the behest of the DEA." FAC ¶ 259. The criminal investigation of Villanueva (and the search of his property, and the seizure of his contraband) has already occurred; there is no plausible basis to conclude that an injunction against Shay ***himself*** would be necessary (or, for that matter, effective) to address the highly speculative "threat" alleged by Plaintiffs.

### D. There Is No Justification to Entertain a Declaratory Action against Shay

This Court has discretion to determine "whether the investment of judicial time and resources in a declaratory action will prove worthwhile in resolving a justiciable dispute." *Minnesota Min. & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1992).

Declaratory relief against Shay would not serve a useful purpose; such relief would be useless standing alone and would be cumulative of any injunctive or declaratory relief actually obtained by Plaintiffs against the County or against the Federal Agency Defendants. There is no justification for keeping Shay, individually, in this litigation solely

---

[5] Villanueva also requests an injunction compelling the return of his property, but this does not affect Shay, who is not alleged to be in possession of that property.

3036481.v7

as a named defendant for Plaintiffs' claims for declaratory relief.

### III. Plaintiffs Fail to State a Claim against the County

#### A. Employer Liability for State-Law Claims Is Barred by *Fridena*

Plaintiffs first allege that the County is liable "for acts committed by its employees and agents under color of law." FAC ¶ 10. In their state-law claims, Plaintiffs then repeatedly allege that Shay "was acting in the course and scope of his employment by Maricopa County." TAC, ¶¶ 245, 251, 257, 264, 270.[6] Plaintiffs further allege that Shay's acts, and those of other unnamed deputies, "were either authorized by Maricopa County or ratified thereafter by taking no disciplinary action against Shay and the said deputies." *Id.* These allegations are not sufficient to establish the County's liability for any of Plaintiffs' state-law claims.

The starting point in analyzing the County's liability for Plaintiffs' state-law claims is *Fridena v. Maricopa County,* 18 Ariz. App. 527 (1972). Mrs. Fridena brought a tort action against several defendants, including Maricopa County and the Maricopa County Sheriff. She sought to hold the County liable in tort on five separate claims, arising from the conduct of deputy sheriffs "acting as agents of the county" in executing a writ of restitution and her subsequent arrest. The Arizona Court of Appeals held as follows:

> We are aware of the fact that there are numerous actions brought each year in this state against the Sheriff, his deputies, and the various counties. The State Supreme Court has never been called upon to determine whether a county is automatically liable for every tort committed by its deputies. The County exercises supervision of all county officers as provided by A.R.S. § 11-251, subsec. 1. Inasmuch as the Sheriff is a county officer under A.R.S. § 11-401 subsec. A, par. 1, the County exercises supervision of the official conduct of the Sheriff. However, in the instant case, the County, having no right of control over the Sheriff or his deputies in service of the writ of restitution, is not liable under the doctrine of *respondeat superior* for the Sheriff's torts.

18 Ariz. App. at 530, 504 P.2d at 61. *Fridena* thus approved of the principle that where duties are imposed upon a county official by law rather than by the county, the county is

---

[6] Plaintiffs do not include this allegation in the Arizona Free Exercise of Religion ("FERA") claim, but appear to similarly invoke *respondeat superior* liability by attributing Shay's actions to the County. *See* TAC, ¶¶ 236, 240.

9

not responsible for their breach of duty or misfeasance in relation to such duty. *Id*; *accord Yamamoto v. Santa Cruz County Bd. of Sup'rs*, 124 Ariz. 538, 606 P.2d 28 (App. 1979); *Hernandez v. Maricopa County*, 138 Ariz. 143, 146 (App. 1983). *Fridena* has been followed in this District in multiple decisions.[7] *See Ochser v. Maricopa County*, CIV 05-2060, 2007 WL 1577910 (D. Ariz. May 31, 2007) (Hon. Robert Broomfield); *Kloberdanz v. Arpaio*, 2:13-CV-02182, 2014 WL 309078 (D. Ariz. Jan. 28, 2014 (Hon. John Sedwick); *Kaufmann v. Pima County*, CV 11-534, 2013 WL 3864260 (D. Ariz. July 25, 2013) (Hon. David Bury); *Nevels v. Maricopa County*, CV11-2466, 2012 WL 1623217 (D. Ariz. May 9, 2012) (Hon. James Teilborg); *Mora v. Arpaio*, CV-09-1719, 2011 WL 1562443 (D. Ariz. Apr. 25, 2011) (Hon. David Campbell); *Stricker v. Yavapai County*, CIV 11-8096, 2012 WL 5031484 (D. Ariz. Oct. 18, 2012) (Hon. Paul Rosenblatt); *Norton v. Arpaio*, CV-15-00087-PHX-SPL, 2015 WL 13759956, at *6 (D. Ariz. Nov. 20, 2015) (Hon. Steven P. Logan); *Wilson v. Pima County*, CV-04-502-TUC-JM, 2006 WL 8440433 (D. Ariz. May 31, 2006) (Hon. Jacqueline Marshall); *Folsom v. Pima County*, CV 08-524-TUC-FRZ, 2012 WL 12957382 (D. Ariz. Sept. 13, 2012) (Hon. Frank R. Zapata); *Dains v. Maricopa County*, 2:07-CV-2606-HRH, 2009 WL 10673606 (D. Ariz. Jan. 12, 2009) (Hon Russel Holland); and *Altamirano v. County of Pima*, CV-15-00169-TUC-RM, 2017 WL 11589192 (D. Ariz. Feb. 6, 2017) (Hon. Rosemary Márquez); *Donahoe v. Arpaio*, CV10-2756-PHX-NVW, 2011 WL 5119008, at *7 (D. Ariz. Oct. 28, 2011) (Hon. Neil Wake) (Questioning the correctness of *Fridena*, but "[b]ecause Plaintiffs' complaints will be dismissed on other grounds, the Court need not now decide the correctness of *Fridena*.").

It is also clear that the County has no ability to impose disciplinary action on Shay, and thus a failure to do so cannot constitute ratification. *See Hounshell v. White,* 220 Ariz. 1 (App. 2008) (holding that the county sheriff was the appointing authority with respect to his own deputies and employees, and only he had the power to discipline them for misconduct); *accord Puente Arizona v. Arpaio,* CV-14-01356-PHX-DGC, 2017 WL 1133012, at *13 (D. Ariz. Mar. 27, 2017); *State v. Pima County Adult Probation Dep't,* 147

---

[7] More such decisions exist, but only one decision is listed here for each judge.

3036481.v7

Ariz. 146 (App. 1985) (holding that Pima County could not be held vicariously liable for the acts of probation officers, who were under the control of the court); *Robarge v. Bechtel Power,* 131 Ariz. 280 (App. 1980).

These cases demonstrate that under well-established Arizona law, set out in *Fridena* and followed subsequently in Arizona cases and in numerous cases in this District, there is no basis for the imposition of vicarious liability on Maricopa County for the acts or omissions of MCSO deputies in carrying out the duties imposed by law on the Maricopa County Sheriff.[8] Thus, Plaintiffs' state-law claims against the County must be dismissed.

### B. Plaintiffs Fail to Plausibly Allege the County is Liable based upon County Policy or Custom

Plaintiffs allege that Maricopa County is liable for "acts committed … pursuant to a municipal policy, pursuant to a policy of complying with federal requests for local law enforcement assistance, and a policy of unfair policing of Latino citizens." FAC ¶ 10. The actual specifics later alleged by Plaintiffs are that the County (through former Sheriff Arpaio) had policies "designed to comprehensively violate the civil rights of Hispanics and other people of color who they subjected to pretextual traffic stops, pedestrian stop-and-frisks, and mass roundups" and that "Arpaio trained MCSO deputies to violate constitutional rights in defiance of federal court orders." FAC ¶ 234.

A municipality or county is liable under § 1983 only "when implementation of its official policies or established customs inflicts the constitutional injury." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring). The official policy must have been the "moving force of the constitutional violation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985). A similar showing of direct County liability must be made on Plaintiffs' state-law claims, since *respondeat superior* theories of liability are barred by *Fridena*. *See* discussion at Part III.A, *supra*. Plaintiffs are not entitled to "unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State*

---

[8] Enforcing state law is one such duty. *See* A.R.S. § 11-441(A); *cf.* Op.Atty.Gen. No. 63-15 (county sheriff's offices have duty to enforce criminal provisions of the liquor laws).

11

*Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

### 1. Alleged "Policy" of Racial Discrimination against Latinos

The racially discriminatory "policies" that Plaintiffs allege consisted of "anti-Hispanic bias," manifested through various warrantless detentions (traffic stops, pedestrian stop-and-frisks, and mass roundups) targeting individuals of Latin American descent.[9] FAC ¶ 234. Plaintiffs specifically link these policies to "Arpaio and his top commanders." *Id.* Plaintiffs do not specifically allege that these policies continue to be official, only that "MCSO deputies continue to be tainted by unconstitutional bias." FAC ¶ 235. Regardless, Plaintiffs fail to state a plausible claim for relief based upon the 2020 criminal investigation of Villanueva culminating in the execution of a search warrant on his residence.

First, the continued "official" nature of discriminatory, anti-Hispanic policies is not a ***reasonable*** inference or a ***warranted*** deduction of fact. Arpaio is no longer the Sheriff of Maricopa County, and had not been Sheriff for more than three years when the criminal investigation of Villanueva began.[10] Plaintiffs have not alleged ***any*** facts to support an inference that Sheriff Penzone, who ran for office on a platform of reforming Tent City[11] and addressing racial profiling,[12] has instead decided to continue the unconstitutional

---

[9] Plaintiffs appear to use the terms "Hispanic" and "Latino" interchangeably.

[10] Sheriff Arpaio was defeated by Maricopa County's current Sheriff, Paul Penzone, in the November 2016 general election and took office January 1, 2017. Penzone was reelected in November 2020.

[11] "Tent City," where inmates were housed in uncooled and unheated outdoor tents, is discussed to in Paragraph 234 of the Complaint. Penzone closed Tent City in October 2017. *See* Megan Cassidy, *Maricopa County's Tent City jail officially shut down*, ARIZONA REPUBLIC (Oct. 9, 2017), available at https://www.azcentral.com/story/news/local/phoenix/2017/10/09/maricopa-countys-tent-city-jail-officially-shut-down/748348001/

[12] *See*, *e.g.*, https://ballotpedia.org/Paul_Penzone (describing Penzone's 2016 campaign theme of "Racial Profiling"); Courtney Columbus, *Democrat Paul Penzone unseats Maricopa County Sheriff Joe Arpaio*, Cronkite News (Nov. 8, 2016), available at https://cronkitenews.azpbs.org/2016/11/08/arpaio-penzone-race/ ("His campaign advocates for reform. Penzone claims he will improve Tent City, calling conditions there unsafe for both officers and inmates, and he plans to address racial profiling.").

3036481.v7

policies Plaintiffs link to Arpaio.

Second, even if anti-Hispanic bias were an official policy or custom of MCSO, such bias would have no causal connection to the injuries suffered by Plaintiffs. The investigation of Villanueva is alleged to have been motivated by federal animus towards Villanueva based on his religion and on challenges to DEA policy on ayahuasca. FAC ¶¶ 160, 228, 232. Even if a contradictory, anti-Hispanic motive for MCSO were inferred, the alleged MCSO "policies and customs" all related to pretextual, warrantless detentions or arrests of ethnic Hispanics. Villaneuva does not allege he is Hispanic, only that he has a "Hispanic surname." FAC ¶¶ 244, 258. Villanueva is identified in the search warrant, attached by Plaintiffs as an exhibit to their Motion for Preliminary Injunction, as a white male. Doc. 22-12, at 2. He was investigated for manufacturing and distributing illegal drugs, and his home was then searched based on that allegedly false and misleading search warrant and affidavit.

### 2. Alleged "Policy" of Training to Violate Constitutional Rights

In *Braillard v. Maricopa Cty.*, 224 Ariz. 481 (App. 2010), the Arizona Court of Appeals held that a municipal liability claim can be maintained when "systemic and gross deficiencies in staffing, facilities, equipment, or procedures, or the need for more or different training, [are] so obvious, and … so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." 224 Ariz. at 492 (internal citations and quotation marks omitted, alterations original). "Moreover, for liability to attach in this circumstance the identified deficiency ... must be closely related to the ultimate injury." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Thus, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 390. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city …." *Id.*

Plaintiffs cite an outdated report from court-ordered monitoring of MCSO for the

13

proposition that unlawful traffic stops (which this case is not about) continue. FAC ¶ 235. This is contradicted by the subsequent report for the actual time period of the events at issue in this case.[13] The report of the Independent Monitor covering May 2020 found that MCSO was in compliance with court orders regarding bias-free traffic enforcement policies. *See* Twenty-Fifth Report of the Independent Monitor, Case No. 2:07-cv-25613-GMS (D.Ariz.), Doc. 2569 (Nov. 16, 2020), at 20-21. MCSO continues to develop its process to identify individual "outlier" deputies who may be treating persons differently during traffic stops based on ethnicity, *id.* at 274, but the disapproved-of actions of a small number of individuals do not constitute official, County-sanctioned policy or custom. And even if the allegation of unlawful traffic stops were not refuted by the record, such warrantless detentions would still have nothing to do with the alleged injuries to Plaintiffs in this case.

Thus, Plaintiffs have failed to state a plausible claim of County liability.

### C. Plaintiffs Fail to State a Claim for Injunctive Relief against the County

Plaintiffs request injunctive relief prohibiting the County from (i) conspiring to infringe the Plaintiffs' constitutional rights or (ii) acting in furtherance of such a conspiracy, (iii) conducting criminal investigations of NAAVC, its board, and its member churches, and (iv) utilizing evidence derived from the May 19, 2020 search or preceding investigation in any proceeding, and also (v) compelling the return of seized property. FAC at 93-95.

Standing to assert Plaintiffs' claims requires that they "'ha[ve] sustained or [are] immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Moreover, Plaintiffs must "establish the basic requisites of the issuance of equitable relief in these circumstances—the likelihood of substantial and immediate irreparable injury, and

---

[13] "[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Gemtel Corp. v. Cmty. Redevelopment Agency of City of Los Angeles*, 23 F.3d 1542, 1544 n.1 (9th Cir. 1994).

14

3036481.v7

the inadequacy of remedies at law." *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974).

First, Plaintiffs have failed to plausibly allege that future injuries are "real and immediate" rather than "conjectural or hypothetical." Plaintiffs do not allege any ***intent*** by Villanueva (or other member churches, or the NAAVC) to manufacture, import, possess, sell, or distribute ayahuasca ***in the future*** even absent the successful resolution of their claims for injunctive and declaratory relief in this matter. Plaintiffs also appear to think that any possibility of actual criminal prosecution is remote—they argue that there was no "probable cause to believe a crime had been committed at the Vine of Light church by Villaneuva." FAC ¶ 248.

Second, the injunctive relief against criminal investigation and prosecution is ***precisely*** the kind of federal interference that is discouraged by *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny. As the Supreme Court explained,

> [W]hen absolutely necessary for protection of constitutional rights, courts of the United States have the power to enjoin state officers from instituting criminal actions. But this may not be done, except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such [state] officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.
>
> ... [I]n view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Younger*, 401 U.S. at 45-46 (internal citations omitted); *see also O'Shea*, 414 U.S. at 502 (despite lack of pending prosecution, dismissal was required under *Younger* abstention, because "if any of the [plaintiffs] are ever prosecuted and face trial, or if they are illegally sentenced, there are available state and federal procedures which could provide relief from the wrongful conduct alleged."). It is clear from these cases both that this Court should not

15

grant the requested injunction *and* that the possibility of future criminal prosecution based on the criminal investigation and the May 19, 2020 search is not an "irreparable" injury.

Thus, Plaintiffs have both failed to establish their standing to seek injunctive relief, and have failed to state a plausible claim that such relief is necessary to prevent substantial and immediate irreparable injury.

### D. Plaintiffs Fail to State a Claim for Declaratory Relief against the County

Declaratory relief is a remedy, not a cause of action. *California Dump Truck Owners Ass'n v. Associated Gen. Contractors*, 562 F.2d 607, 609 n. 1 (9th Cir.1977) (28 U.S.C. §§ 2201-2202 "simply create remedies; they are not independent bases for federal jurisdiction."). Because Plaintiffs have failed to state a valid cause of action against the County under federal or state law, the request for declaratory judgment must also be denied.

Moreover, "It should go without saying that a declaratory judgment action must serve some purpose in resolving a dispute. If the relief serves no purpose, or an illegitimate one, then the district court should not grant it." *Exxon Shipping Co. v. Airport Depot Diner, Inc.*, 120 F.3d 166, 168 (9th Cir. 1997). The declaratory relief sought by Plaintiffs is merely duplicative of their § 1983 and state-law claims; it serves no purpose that a ruling on the merits of those claims does not.

### V. Conclusion

For the foregoing reasons, the Fourth Amended Complaint (Doc. 109) and this action against Maricopa County and Matthew Shay should be dismissed.

Respectfully submitted this 15th day of June, 2021.

**SACKS TIERNEY, P.A.**

*/s/ Evan F. Hiller*
Jeffrey S. Leonard
Evan F. Hiller
*Attorneys for Defendants Maricopa County and Matthew Shay*

16

3036481.v7