BRIAN M. BOYNTON
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Arizona Yagé Assembly; North American Association of Visionary Churches; Clay Villanueva; and the Vine of Light Church, <br><br> Plaintiffs, <br><br> v. <br><br> Merrick B. Garland, Attorney General of the United States, *et al.*,[1] <br><br> Defendants. | No. 2:20-cv-2373-MTL |

## FEDERAL AGENCY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT [Doc. 109]

---

[1] Merrick B. Garland, D. Christopher Evans, Alejandro N. Mayorkas, and Troy Miller have been substituted for Jeffrey A. Rosen, Timothy J. Shea, Chad F. Wolf, and Mark A. Morgan, respectively, as defendants in their official capacities in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.................................................... 1

BACKGROUND ....................................................................................................... 2

LEGAL STANDARD ............................................................................................... 3

ARGUMENT ........................................................................................................... 3

I.      This Court Lacks Jurisdiction Over Plaintiffs' APA and RFRA Claims...................... 4

        A.  Plaintiffs' facial challenges are time-barred.............................................. 4

        B.  Jurisdiction is lacking for Plaintiffs' as-applied challenge for
            want of final agency action............................................................... 5

        C.  Section 877 vests in the court of appeals exclusive jurisdiction
            over both facial and as-applied challenges to the Guidance. ..................... 7

II.     Plaintiffs' RFRA Claim Should Be Dismissed For Lack Of Standing...................... 11

        A.  Plaintiffs Fail to Allege Any Genuine Threat of Imminent
            Prosecution.......................................................................... 11

        B.  Any Genuine Threat of Imminent Prosecution Would Not
            Be Fairly Traceable to the Federal Agency Defendants........................... 16

III.    Plaintiffs' RFRA Claim Should Be Dismissed For Failure To State
        A Claim................................................................................... 16

IV.     Plaintiffs' SECTION 1983 claim should be dismissed....................................... 18

        A.  The Allegations that DEA Retaliated Against Plaintiffs Are
            Implausible.......................................................................... 19

        B.  Plaintiffs Have Failed to Sufficiently Plead that the DEA Acted
            Under Color of State Law Or That a Conspiracy Existed..................... 21

CONCLUSION........................................................................................ 25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Adorers of the Blood of Christ ("ABC") v. FERC,*
   897 F.3d 187 (3d Cir. 2018)...................................................................................... 8

*Bold All. v. FERC,*
   No. 17-CV-1822-RJL, 2018 WL 4681004 ............................................................... 8

*Brooks v. Snow,*
   313 F. Supp. 2d 654 (S.D. Tex. 2004) ..................................................................... 4

*Cabrera v. Martin,*
   973 F.2d 735 (9th Cir. 1992) .................................................................................. 15

*Church of the Holy Light of the Queen v. Mukasey,*
   615 F. Supp. 2d 1210 (D. Or. 2009)....................................................................... 11

*Cty. of Santa Clara v. Trump,*
   267 F. Supp. 3d 1201 (N.D. Cal. 2017) ................................................................... 5

*Demaree v. Krause,*
   No. CV-11-00046-PHX-ROS, 2012 WL 12548135 (D. Ariz. Apr. 17, 2012)..............13, 14

*Fleming v. Charles Schwab Corp.,*
   878 F.3d 1146 (9th Cir. 2017) ................................................................................. 8

*Haase v. Sessions,*
   835 F.2d 902 (D.C. Cir. 1987) ................................................................................. 4

*Havasupai Tribe v. Provencio,*
   906 F.3d 1155 (9th Cir. 2018) ................................................................................. 4

*Hemp Indus. Ass'n v. DEA,*
   No. 20-cv-2921-JEB, 2021 WL 1734920 (D.D.C. May 3, 2021)....................................6, 7

*Ibrahim v. Dep't of Homeland Sec.,*
   538 F.3d 1250 (9th Cir. 2008) ..........................................................................15, 16

*John Doe, Inc. v. Gonzalez,*
   2006 WL 1805685...................................................................................................... 8

*Kali v. Bowen,*
   854 F.2d 329 (9th Cir. 1988) .................................................................................. 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994).................................................................................................3

*Lee v. City of L.A.*,
   250 F.3d 668 (9th Cir. 2001) ..............................................................................14

*Morse v. N. Coast Opportunities, Inc.*,
   118 F.3d 1338 (9th Cir. 1997) ............................................................................15

*Multi-Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*,
   474 F. Supp. 2d 1133 (N.D. Cal. 2007) .............................................................11

*Nation v. Trump*,
   395 F. Supp. 3d 1271 (N.D. Cal. 2019) ...............................................................7

*Navajo Nation v. U.S. Forest Serv.*,
   535 F.3d 1058 (9th Cir. 2008) ............................................................................12

*Nelsen v. King Cty.*,
   895 F.2d 1248 (9th Cir. 1990) ............................................................................10

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
   676 F.3d 829 (9th Cir. 2012) ................................................................................9

*Olson v. Norman*,
   830 F.2d 811 (8th Cir. 1987) ..............................................................................15

*Oregon v. Ashcroft*,
   868 F.3d 1118 (9th Cir. 2004),
   *aff'd sub nom.*, *Gonzalez v. Oregon*, 546 U.S. 243 (2006)................................15

*Perkel v. U.S. Dep't of Justice*,
   365 F. App'x 755 (9th Cir. 2010)..........................................................................5

*Rossides v. Gonzales*,
   210 F. App'x 711 (9th Cir. 2006)..........................................................................9

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ..............................................................................3

*San Diego Cty. Gun Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) ................................................................................9

*Strickland v. Shalala*,
   123 F.3d 863 (6th Cir. 1997) ..............................................................................15

iii

*Tenacre Found. v. I.N.S.,*
 78 F.3d 693 (D.C. Cir. 1996) ............................................................................... 5

*Thomas v. Anchorage Equal Rights Comm'n,*
 220 F.3d 1134 (9th Cir. 2000) ........................................................... 8, 9, 10

*Ukiah Valley Med. Ctr. v. FTC,*
 911 F.2d 261 (9th Cir. 1990) ............................................................................ 4

*United States v. Friday,*
 525 F.3d 938 (10th Cir. 2008) ........................................................................ 12

*United States v. Ritchie,*
 342 F.3d 903 (9th Cir. 2003) .......................................................................... 14

*United States v. Seljan,*
 547 F.3d 993 (9th Cir. 2008) .......................................................................... 10

*United States v. Tawahongva,*
 456 F. Supp. 2d 1120 (D. Ariz. 2006) ........................................................... 12

*United States v. Winddancer,*
 435 F. Supp. 2d 687 (M.D. Tenn. 2006) ....................................................... 11

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
 865 F.2d 1539 (9th Cir. 1989) ........................................................................ 16

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
 546 U.S. 418 (2006) ......................................................................................... 12

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992) ................................................................................. 8, 9, 11

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ............................................................................... 3, 13, 14

*United States v. Hugs,*
 109 F.3d 1375 (9th Cir. 1997) ..................................................................... 4, 11

*Nation v. Trump,*
 818 F. App'x 678 (9th Cir. 2020) ................................................................. 5, 7

*John Doe, Inc. v. DEA,*
 484 F.3d 561 (D.C. Cir. 2007) ...................................................................... 6, 7

*Jarkesy v. S.E.C.,*

iv

803 F.3d 9 (D.C. Cir. 2015)................................................................7, 12

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983)........................................................................8, 10

*Vill. of Bald Head Island v. Army Corp of Eng'rs,*
714 F.3d 186 (4th Cir. 2013) .............................................................. 4

*Wind River Min. Corp. v. United States,*
946 F.2d 710 (9th Cir. 1991) ...........................................................3, 4

*Woods v. DEA,*
283 F. Supp. 3d 649 (W.D. Tenn. 2017)............................................ 7

**Statutes**

5 U.S.C. § 551(13) .................................................................................. 4

5 U.S.C. § 704 ........................................................................................ 1

21 U.S.C. § 801 ...................................................................................... 2

21 U.S.C. § 812(c) .................................................................................. 6

21 U.S.C. § 877 ...........................................................................1, 3, 5, 6

28 U.S.C. § 1331 .................................................................................... 8

28 U.S.C. § 2401(a)............................................................................1, 3

42 U.S.C. § 1983.......................................................................1, 2, 15, 17

42 U.S.C. § 2000bb–1(b) ....................................................................... 2

**Rules**

Fed. R. Evid. 201(b)(2)......................................................................... 14

Federal Rule of Civil Procedure 12(b)(1).............................................. 1

**Rules and Regulations**

21 C.F.R. § 1301.31............................................................................... 2

28 C.F.R. § 0.100(b) .............................................................................. 5

**<u>Other Authorities</u>**

"Change.org, Stop the DEA from Regulating Visionary Religions," https://www.change.org/p/stop-the-dea-from-regulating-visionary-religions?redirect=false— (June 15, 2021)

Defendants hereby move to dismiss Plaintiffs' Fourth Amended Complaint, ECF No. 109 ("Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

The Complaint should be dismissed under Rule 12(b). Despite its 95 pages and 314 paragraphs, the Complaint fails for three straightforward reasons. First, jurisdiction is lacking for Plaintiffs' APA and RFRA claims under the applicable statute of limitations, 28 U.S.C. § 2401(a), and the APA, 5 U.S.C. § 704. Even were it not, by statutory mandate, jurisdiction over these claims would lie exclusively in the courts of appeals. 21 U.S.C. § 877. Plaintiffs make an end-run around the jurisdictional limitations and administrative-review scheme set forth by Congress by asking this court to step into the shoes of DEA to issue relief. Plaintiffs claim that for years they have been using a Schedule I controlled substance for religious reasons, and now—despite not identifying any genuine imminent threat of federal prosecution— they seek a broad injunction that would bar enforcement of the Controlled Substances Act ("CSA"), against them. Yet Plaintiffs have not utilized the DEA's long-standing application process for religious-based exemptions from the CSA, and that failure dooms their claims in several ways.

Second, Plaintiffs' RFRA claims should be dismissed for lack of standing and for failure to state a claim. Plaintiffs readily admit to violating the CSA and yet identify no imminent threat of prosecution. Plaintiffs accordingly lack standing for the pre-enforcement injunction they seek. Plaintiffs' RFRA claim should also be dismissed pursuant to Rule 12(b)(6).

Third, with allegations that Judge Orrick (N.D. Cal.) described as "baseless and speculative," ECF No. 57 at 23, the Complaint implausibly alleges that the Federal Agency Defendants violated 42 U.S.C. § 1983 by acting under color of state law to conspire with Arizona officials to injure one Plaintiff's rights in "retaliation" over, *inter alia*, his promotion of a "Change.org petition." But it is far more likely that Defendants' routine actions were pursuant to their federal authority, as confirmed by the already credited record on Plaintiffs' denied

1

preliminary injunction motion. The Complaint fails to show any retaliation, federal-state conspiracy, or that the DEA acted under color of state law, as it must under section 1983.

## BACKGROUND

The CSA, 21 U.S.C. § 801 *et seq.*, regulates the use of psychotropic substances, including "Schedule I" controlled substances, the importation and use of which is generally banned due to the high risk of abuse and lack of accepted medical use, *id.* § 812(b)(1). Under the CSA, the DEA has authority to register an applicant to import, distribute, or manufacture a Schedule I controlled substance when doing so is consistent with the public interest. *Id.* § 823(b); 21 C.F.R. § 1301.31. The Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–1(b), provides that the federal government may not substantially burden a person's sincere exercise of religion, unless doing so is the least restrictive means of advancing a compelling interest. In 2009, the DEA issued "guidance to parties who wish to petition for a religious exemption to the CSA" pursuant to RFRA (the "Guidance").[2]

Plaintiffs Arizona Yagé Assembly ("AYA"), North American Association of Visionary Churches ("NAAVC"), Vine of Light Church ("VOLC"), and Clay Villanueva allege they are or associate with "visionary churches" which "practice visionary communion" by ingesting ayahuasca, a tea brewed from plants containing the Schedule I controlled substance dimethyltryptamine ("DMT"). Compl. ¶¶ 5, 32-34, 39. No plaintiff has sought a CSA exemption from the DEA for their allegedly religious ayahuasca use. *Id.* ¶ 104.

Plaintiffs assert claims against Defendants under the Administrative Procedure Act ("APA"), RFRA, 42 U.S.C. § 1983, and the Declaratory Judgment Act. Plaintiffs assert that DEA's guidance is "unconstitutional," and violates the APA. *Id.* ¶¶ 206-25. They further assert they are entitled under RFRA to a blanket exemption from the CSA's prohibitions on ayahuasca. *Id.* ¶¶ 131-205. And they assert under § 1983 that the DEA and its co-defendants Maricopa County ("County"), and County Deputy Matthew Shay, engaged in a "conspiracy"

---

[2] U.S. Dep't. of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, *available at* https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)%20Guidance%20Regarding%20Petitions%20for%20Religious%20Exemptions.pdf (last visited June 15, 2021).

to deprive Villanueva of his rights in retaliation for "promoting [a] Change.org petition," for "sending the DEA [a] Letter," and for suing DEA. *Id.* ¶¶ 228-29.

## LEGAL STANDARD

Under Rule 12(b)(1), the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) attacks can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Under Rule 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted," including if the complaint fails to allege enough facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

## I.   This Court Lacks Jurisdiction Over Plaintiffs' APA and RFRA Claims.

Federal courts "are courts of limited jurisdiction" that "possess only that power authorized by the Constitution and statute" which "is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377. Whether facial or as-applied, jurisdiction is lacking over Plaintiffs' APA and RFRA claims. Under 28 U.S.C. § 2401(a), Plaintiffs' challenge to the Guidance itself is too late, and, under the APA, it is too soon for Plaintiffs to challenge application of the Guidance because they refuse to participate in the process set forth therein. But even if timing posed no obstacle, Plaintiffs have brought their claims in the wrong court under 21 U.S.C. § 877.

### A.   Plaintiffs' facial challenges are time-barred.

To the extent Plaintiffs challenge the Guidance itself, their facial challenges must be dismissed because they are barred by six-year statute of limitations applicable to civil actions against the United States. *See* 28 U.S.C. § 2401(a); *Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991). Under § 2401(a), if a plaintiff "wishes to bring a policy-based facial challenge to the government's decision," the suit must be brought within six years. *Id.* (considering *ultra vires* claim). After that time, a plaintiff may only contest a government decision if the complaint seeks "review of the adverse application of the decision to the particular challenger." *Id.* But there has been no adverse application of the Guidance to any Plaintiff. Plaintiffs have chosen not to avail themselves of the exemption process they challenge, Compl.

3

¶ 104, and thus, their claim is not a "review of the adverse application of the decision to the particular challenger." *Wind River*, 946 F.2d at 715. Because Plaintiffs' facial RFRA and constitutional claims do not depend in any way on, or seek review of the particular application of the Guidance to Plaintiffs, they, too, have been time-barred since 2015. *See id.*; *Ctr. for Bio. Div. v. Salazar*, 695 F.3d 893, 904 (9th Cir. 2012).

   B.   Jurisdiction is lacking for Plaintiffs' as-applied challenge for want of final agency action.

   To the extent Plaintiffs challenge the Guidance as applied to them, they fail to identify any agency "action," final or otherwise. The APA defines agency "action" as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). An "action" is "focuse[d] on an agency's *determination* of rights and obligations." *Vill. of Bald Head Island v. Army Corp of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013); *see also Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1162-63 (9th Cir. 2018). Here, Plaintiffs admit that they have not submitted an exemption petition to DEA. Compl. ¶ 104 (noting that AYA "did not submit a petition").[3] DEA thus has not taken any "action" determining Plaintiffs' rights or obligations. *See, e.g.*, *Brooks v. Snow*, 313 F. Supp. 2d 654, 659 (S.D. Tex. 2004) (no final agency action where plaintiffs "never applied [with IRS] under the regulation to obtain the ultimate relief they seek"), *aff'd*, 126 F. App'x 173 (5th Cir. 2005); *see also United States v. Hugs*, 109 F.3d 1375, 1378-79 (9th Cir. 1997) (Plaintiffs "have never sought to use the permit system and therefore have no standing to challenge the way in which the scheme operates.").

   Plaintiffs attempt to justify their failure to seek an exemption with conclusory assertions that the DEA has a "policy" of refusing all religious exemptions. Compl. ¶¶ 79, 104, 157. But a plaintiff seek[ing] injunctive or declaratory relief specifically for the purpose of challenging an alleged policy of the government, cannot do so with a mere "nebulous assertion of the existence of a 'policy,'" *Haase v. Sessions*, 835 F.2d 902, 910-11 (D.C. Cir. 1987), and that is all

---

[3] If it is Plaintiffs' contention that they have not submitted a petition because the Guidance does not impose any legal obligation on Plaintiffs to do so, their challenge to the Guidance similarly fails for lack of "final agency action." Plaintiffs cannot have it both ways. Either Plaintiffs are required to comply with the Guidance and submit a petition to DEA, or the Guidance does not impose any legal obligations and is therefore unreviewable in this court or any other. *See Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 (9th Cir. 1990).

Plaintiffs offer here. They rely upon two cases that predate the Guidance, Compl. ¶¶ 79, 85-87, and do not account for the numerous legitimate bases upon which DEA might deny a petition, *see, e.g.*, *Perkel v. U.S. Dep't of Justice*, 365 F. App'x 755 (9th Cir. 2010) (affirming DEA's denial of petition under Guidance for failure to demonstrate that CSA enforcement substantially burdened church's religious exercise); *see also Soul Quest Church of Mother Earth, Inc. v. Garland, et al.*, 6:20-cv-701-WWB-DCI, ECF No. 38, Ex. 1 (M.D. Fla. May 11, 2021) (DEA final determination denying petition under Guidance because petitioner did not establish substantial burden of sincere religious beliefs and, even if it had, CSA prohibitions as applied to petitioner constituted least restrictive means of furthering compelling government interests).[4] Plaintiffs' failure to seek and obtain an exemption from DEA is fatal to their APA claim.[5]

    C. <u>Section 877 vests in the court of appeals exclusive jurisdiction over both facial and as-applied challenges to the Guidance.</u>

Section 877 bars Plaintiffs from bringing either facial or as-applied challenges to the Guidance in this court. Congress vested jurisdiction over DEA's administration and application of the CSA exclusively in the courts of appeals. *See* 21 U.S.C. § 877. Specifically, Congress provided that:

> All final determinations, findings, and conclusions of the Attorney General under [the CSA] shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision.

*Id.*[6] Courts, including the Ninth Circuit, have repeatedly affirmed that § 877 channels review over DEA's administration and application of the CSA exclusively into the courts of appeals. *See, e.g.*, *Nation v. Trump*, 818 F. App'x 678, 681 (9th Cir. 2020) (review of DEA's scheduling

---

[4] Plaintiffs' failure to allege plausibly that a policy exists is also grounds for dismissal under Rule 12(b)(6), because an essential element of any case challenging a governmental policy is identifying the policy. *See, e.g.*, *Tenace Found. v. I.N.S.*, 78 F.3d 693, 696 (D.C. Cir. 1996).

[5] Plaintiffs also assert a Declaratory Judgment Act claim, Compl. ¶¶ 310-312, but "the Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action," *Cty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1215-16 (N.D. Cal. 2017).

[6] The Attorney General has delegated his authority under the CSA to DEA. *See* 28 C.F.R. § 0.100(b).

determination lies exclusively in court of appeals, even where plaintiff did not petition DEA for review); *Oregon v. Ashcroft*, 368 F.3d 1118, 1120 & n.1 (9th Cir. 2004), *aff'd sub nom. Gonzales v. Oregon*, 546 U.S. 243 (2006); *Hemp Indus. Ass'n v. DEA*, No. 20-cv-2921-JEB, 2021 WL 1734920, at *1 (D.D.C. May 3, 2021). The D.C. Circuit has held that § 877 vests "exclusive jurisdiction in the courts of appeals over '[a]ll final determinations, findings, and conclusions' of the DEA applying the CSA." *John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007) (considering APA and Due Process claims).

To the extent that Plaintiffs are raising a broad, policy-based challenge to DEA's imple- mentation of the CSA, that challenge must be brought in a court of appeals because Plaintiffs' challenges to the Guidance concern a "final determination[], finding[], [or] conclusion[]" made by DEA regarding the CSA's application to religious exemption petitions. 21 U.S.C. § 877; Compl. ¶¶ 131-205 (RFRA Claim), *id.* ¶¶ 206-225 (APA Claim). Plaintiffs seek to enjoin DEA's process for considering religious exemption petitions that is articulated in the Guidance. *See* Compl. ¶¶ 157-158, 207-25 (alleging Guidance violates First, Fifth, and Fourteenth Amend- ments). Plaintiffs' APA claim asserts that DEA's process for evaluating petitions for RFRA exemptions to the CSA is contrary to law. *Id.* ¶¶ 207-08. Likewise, the crux of plaintiffs' RFRA claim is that the religious exemption process contained in the Guidance "is not the least re- strictive means for the Government to accomplish its interests in preventing the illicit distri- bution of controlled substances," including DMT. *Id.* ¶ 149. Plaintiffs' requests for relief, di- rected at declaring the Guidance unlawful in at least 30 ways, confirm that they challenge DEA's process for considering petitions for religious exemptions articulated in the Guidance. *See id.* Prayer for Relief, a-dd.

Plaintiffs also challenge the longstanding determination in the CSA that DMT carries a high potential for abuse and poses significant risk to health; in light of this determination, the CSA is intended to prevent diversion of DMT from legitimate to illegitimate channels. *See* 21 U.S.C. § 812(c), Schedule I(c)); Compl. Prayer for Relief, d. ("Ayahuasca is not subject to the risks of diversion applicable to other substances regulated by the CSA"). In that way, Plaintiffs seek to enjoin Congress's prohibition against importing and distributing DMT because they

believe they are entitled to a religious exemption. *Id.* at i. As relief, they request an order enjoining defendants from "[t]aking any enforcement action under the CSA" against plaintiffs "for importing, manufacturing, or dispensing sacramental Ayahuasca." *Id.* at e-f.

In essence, Plaintiffs' RFRA and APA claims challenge DEA's determination about its decisional process for considering petitions for religious exemptions from the CSA. Multiple courts have held that these sorts of claims challenging a DEA policy must be brought in the court of appeals. *Hemp Indus.*, 2021 WL 1734920, at *1, *6 (observing that plaintiffs seeking "declaratory and injunctive relief that would functionally nullify" a "conclusion[] made by DEA" must "obtain review of decision in the court of appeals" under § 877); *Woods v. DEA*, 283 F. Supp. 3d 649, 663 (W.D. Tenn. 2017) (§877 applied where plaintiffs were "not challenging a final action but the applicability of the regulation entirely").

Where Congress has established a "special statutory review scheme"—as it did in § 877—courts assume that "Congress intended [for] that procedure to be the *exclusive means* of obtaining judicial review in those cases in which it applies." *Jarkesy v. S.E.C.*, 803 F.3d 9, 15 (D.C. Cir. 2015) (emphasis added). Thus, if Plaintiffs allege a constructive denial of any petition they would submit because of an alleged policy of refusing all religious exemptions, *see* Compl. ¶¶ 79, 104, 157, that claim must also be brought in a court of appeals. *See, e.g.*, *Nation*, 818 F. App'x at 681 (review of DEA's scheduling determination lies exclusively in courts of appeals, even where plaintiff did not petition DEA). Plaintiffs may not subvert the exclusive review scheme by bringing their claims directly in district court without following the CSA's petition process. *See Nation v. Trump*, 395 F. Supp. 3d 1271, 1275–77 (N.D. Cal. 2019) (dismissing challenge to DEA's marijuana scheduling and surveying cases holding that the CSA provides an exclusive review scheme for scheduling decisions, including constitutional challenges). Nor should the court permit evasion of Congress's clear intent to channel petitions for relief into the agency followed by review in the courts of appeals. Allowing this claim to proceed would "encourage[] forum shopping and encourage[] dissatisfied claimants to 'jump the gun' by going directly to the district court to develop their case" rather than the agency. *Doe*, 484 F.3d at 570; *see Nation*, 818 F. App'x at 681 ("Requiring the exhaustion of this process prior to filing suit is

consistent with that intent, protects agency authority, and promotes judicial efficiency.").

Accordingly, under § 877, this court lacks jurisdiction over plaintiffs' challenges to the Guidance and the DEA's interpretation of the CSA and the claims must be dismissed.[7]

## II. Plaintiffs' RFRA Claim Should Be Dismissed For Lack Of Standing.

### A. Plaintiffs Fail to Allege Any Genuine Threat of Imminent Prosecution

In their RFRA claim, all four Plaintiffs ask the Court to enter an injunction ordering DEA to register them as exempt from enforcement of the CSA's prohibitions on importing, manufacturing, and distributing ayahuasca. Compl. ¶ 150. Plaintiffs claim they are entitled to this relief because they "fear prosecution" for these activities. *Id.* ¶ 137.

To demonstrate Article III standing, *each* Plaintiff must show that *each* challenged provision has caused them a concrete and particularized "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). To establish an injury-in-fact to support a claim for injunctive relief, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 n.1 (9th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Instead, there must be a "sufficient likelihood that [the plaintiff] will again be wronged in a similar way." *Lyons*, 461 U.S. at 111. Where, as here, the allegedly feared future harm is prosecution, there must be a "genuine threat of imminent prosecution," and "neither the mere existence of a proscriptive statute nor a generalized threat" is sufficient. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

Prior to transfer, Judge Orrick observed that "plaintiffs have not shown [for their RFRA claim], as they must to obtain a pre-enforcement injunction, that there has been any realistic,

---

[7] Plaintiffs also cite no statute conferring subject-matter jurisdiction on this court. Plaintiffs rely on 28 U.S.C. § 1331, *see* Compl. ¶ 1, but "[w]hen Congress provides for exclusive review in a court of appeals," as in § 877, "that specific grant of jurisdiction displaces the general federal question statute, [] § 1331." *Bold All. v. FERC*, No. 17-CV-1822-RJL, 2018 WL 4681004, at *4 (D.D.C. Sept. 28, 2018). This displacement applies to CSA claims. *John Doe, Inc. v. Gonzalez*, 2006 WL 1805685, at *17-18 (surveying cases) (D.D.C. June 29, 2006). That plaintiffs bring a RFRA claim does not alter this analysis. *Adorers of the Blood of Christ ("ABC") v. FERC*, 897 F.3d 187, 190-98 (3d Cir. 2018) (RFRA claim brought under § 1331 did not displace comprehensive review scheme in the Natural Gas Act, and noting that "[n]owhere does [RFRA] specifically confer jurisdiction to the federal district courts to hear RFRA claims.").

imminent threat of prosecution or enforcement action by the federal government." ECF No. 57 at 23. The current Complaint also fails for three reasons.

**First**, no Plaintiff has articulated a "concrete plan" to violate each of the three CSA provisions in question. *See Thomas*, 220 F.3d at 1139 ("'concrete plan' . . . to violate the law" includes "when" and "where, or under what circumstances"). Mere "'some day' intentions– without any description of concrete plans" do not suffice. *Lujan*, 504 U.S. at 565. The Complaint is deficient as to each Plaintiff as follows:

- VOLC does not claim that it will import, manufacture, or distribute ayahuasca in the future. *See, e.g.*, Compl. ¶¶ 131-205 (alleging only previous ayahuasca possession).

- Villanueva does not allege any plan to import or manufacture ayahuasca. *See, e.g., id.* And although Villanueva asserts that "he needs to be free to obtain and share Ayahuasca with his congregation," *id.* ¶ 235, this allegation falls far short of a concrete plan to distribute in violation of the CSA, *compare San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (finding it insufficient for plaintiffs to allege that they "wish and intend" to violate the law), *with Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835-36 (9th Cir. 2012) (finding a "concrete plan" where plaintiffs alleged they were "violat[ing] the CSA daily" and had "no plan to stop").

- AYA alleges no plan to manufacture ayahuasca. *See, e.g.*, Compl. ¶ 57. While it asserts that it has previously attempted importation, *see id.* ¶¶ 138-41, AYA alleges no concrete plan to do so again, *see, e.g., id.* ¶ 57. Although AYA claims that it "shares" ayahuasca with alleged congregants, and seeks an order to do so, *id.* ¶¶ 46, 55, 57, it nowhere alleges "any description of concrete plans" for distribution, *Lujan*, 504 U.S. at 565, or even that it has "no plan to stop" distributing, *see Oklevueha*, 676 F.3d at 836.

- NAAVC admits that the ayahuasca it seeks to acquire is manufactured in South America, and claims it attempted to import ayahuasca once in the past. Compl. ¶¶ 66, 138. As for the future, however, Plaintiffs allege only a some-day intention that NAAVC would like to "initiat[e] a lawful system for importing and sharing" ayahuasca. *Id.* ¶ 60; *see also id.* ¶¶ 62-66. That is not enough. *See Lujan*, 504 U.S. at 564. NAAVC's assertions regarding distribution fail for the same reasons. *See* Compl. ¶¶ 60-66.

**Second**, Plaintiffs also fail to allege that Defendants "have communicated a specific warning or threat to initiate proceedings" against them. *Thomas*, 220 F.3d at 1139; *see Rossides v. Gonzales*, 210 F. App'x 711, 712 (9th Cir. 2006) (no standing where "[n]o prosecuting authorities have ever communicated a specific threat or warning to initiate proceedings against [plaintiff]"). Plaintiffs rest instead on claims of past harm. *See* Compl. ¶¶ 138-41, 159-204. But "the Supreme Court has concluded that past exposure to harm is largely irrelevant when analyzing

claims of standing for injunctive relief that are predicated upon threats of future harm." *Nelsen v. King Cty.*, 895 F.2d 1248, 1251 (9th Cir. 1990); *see Lyons*, 461 U.S. at 108.

The alleged May 19, 2020 search of Villanueva's home, Compl. ¶¶ 159-204, does not support Plaintiffs' claims of future harm *by Defendants*. Plaintiffs admit that the search was conducted by <u>state and local</u> officials. *Id.* ¶ 242. Although Villanueva and VOLC allege that they fear "future enforcement by state actors operating at the behest of the DEA," *id.* ¶ 259, Judge Orrick already found their allegations of a "federal-state conspiracy" were "baseless and speculative," ECF No. 57 at 23, *see infra* Part IV.

The Department of Homeland Security's ("DHS") alleged seizures of AYA's and NAAVC's imported ayahuasca at the border, Compl. ¶¶ 138-41, are also insufficient. The seizures alone cannot establish any genuine threat of imminent prosecution given that DHS has broad authority to inspect all packages entering the United States without any individualized suspicion, *United States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008), and AYA and NAAVC do not claim that the seizures—which began more than 11 months ago, Compl. ¶ 138—owed to any investigation aimed at them. Finally, neither AYA nor NAAVC allege any concrete plan to import ayahuasca in the future, much less that they will be prosecuted.

***Third and finally***, Plaintiffs point to no past prior federal prosecutions for ayahuasca use, further undermining their claims that they face a genuine threat of imminent prosecution. *See Thomas*, 220 F.3d at 1140. The lack of prosecution is telling given that there is a "community" using ayahuasca, including AYA, which has been distributing ayahuasca since 2015; Villanueva, who states he has "no criminal record" despite his "announced history of conducting visionary church ceremonies"; and two non-party groups identified in the Complaint, who also have not faced prosecution.[8] Compl. ¶¶ 43, 107-10, 222, 242.

Civil suits brought *by* organizations using ayahuasca, *see* Compl. ¶¶ 85-87, do not indicate a threat of enforcement. Moreover, the two-decade-old attempts by the government to seize substances containing DMT are not relevant here because they occurred before the 2006 *O*

---

[8] On the contrary, for one of those non-parties, DEA issued a final determination on petitioners' request for a religious exemption on April 16, 2021. *Soul Quest Church of Mother Earth, Inc. v. Garland, et al.*, 6:20-cv-701-WWB-DCI, (M.D. Fla. May 10, 2021), ECF No. 38-1.

*Centro* ruling. Since 2009, DEA considers religious exemptions to the CSA's ban on Schedule I substances, *see Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1214 (D. Or. 2009), yet Plaintiffs have refused to engage in that process.

### B. Any Genuine Threat of Imminent Prosecution Would Not Be Fairly Traceable to the Federal Agency Defendants

Even if each Plaintiff could establish an injury-in-fact as to each of the CSA provisions for which they demand a RFRA exception, they would still lack standing. Plaintiffs must also show that any injury is "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (cleaned up). As the Ninth Circuit and other courts have held, criminal defendants lack standing to assert a RFRA defense to prosecution where they could have applied for a permit to engage in the otherwise illegal activity, and yet failed to do so. *See, e.g.*, *Hugs*, 109 F.3d at 1378; *United States v. Winddancer*, 435 F. Supp. 2d 687, 693 (M.D. Tenn. 2006).

Similarly here, any genuine threat of imminent criminal prosecution would be the result of Plaintiffs' own refusal to seek from DEA the exemption for which they claim to qualify. *See, e.g.*, Compl. ¶ 104. Plaintiffs allege no legitimate reason for failing to seek an exemption. Second, seeking an exemption does not implicate the Fifth Amendment's self-incrimination clause. Compl. ¶ 114-20. The Guidance does seeks the name of the controlled substance the party "wishes to use" and details about petitioner's "anticipated" handling of the substance. Unsurprisingly then, Plaintiffs do not allege that any person has been subjected to criminal process on the basis of an exemption application. In any event, Plaintiffs (and AYA's founder, Scott Stanley) now freely admit to years of numerous violations of the CSA. *See, e.g.*, Compl. ¶¶ 5, 39, 43, 104, 139, 140; *see also* ECF No. 49 at 7.

## III.   Plaintiffs' RFRA Claim Should Be Dismissed For Failure To State A Claim.

Plaintiffs' RFRA claim also fails to state a claim upon which relief could be granted.

*First*, Plaintiffs do not allege that the requirement that Plaintiffs seek a religious exemption substantially burdens religious exercise, as the statute requires. *Multi-Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1145 (N.D. Cal. 2007), *aff'd*, 365 F. App'x 817 (9th Cir. 2010). While Plaintiffs claim they are "burdened by the prohibitions" in

the CSA, Compl. ¶ 133, the CSA's prohibitions function as a prophylactic measure that remains in place until an applicant is able to demonstrate entitlement to an exemption. The question is thus whether Plaintiffs' religion is substantially burdened, not by the CSA's prohibitions, but by the DEA's *regulatory exemption process*.[9] *See, e.g.*, *United States v. Tawahongva*, 456 F. Supp. 2d 1120, 1132 (D. Ariz. 2006) (RFRA plaintiff not substantially burdened "by the requirement that he acquire a permit"); *see also United States v. Friday*, 525 F.3d 938, 947-48 (10th Cir. 2008) ("We are skeptical that the bare requirement of obtaining a permit can be regarded as a 'substantial burden' under RFRA[.]").

*Second*, Plaintiffs do not sufficiently allege that the CSA itself poses any "substantial burden" on their religious practice. While Plaintiffs state that the CSA burdens their religion, Compl. ¶ 133-34, they do not claim that they (or any alleged members) have been forced to stop practicing their religion. *See* Compl. ¶¶ 134-35, 222-224. Plaintiffs fall far short of alleging that they have been "coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008).

*Third*, Plaintiffs do not allege that their religion is substantially burdened by all of the CSA provisions they seek to enjoin. *See* Compl. ¶ 150 (seeking injunction that would exempt Plaintiffs from prohibitions on manufacturing, distributing, dispensing, or importing a controlled substance); *see also id.* at 81, ¶¶ 1(e)-(f). As explained above, some Plaintiffs do not allege that they engage in the importation, manufacturing, or distribution of ayahuasca *at all*, while others only allege performing some of these activities. *See id.* ¶¶ 43-44, 132 (use and distribution by AYA); *id.* ¶¶ 60, 63 (importation and distribution by NAAVC).

## IV.   Plaintiffs' Section 1983 Claim Should Be Dismissed.

Plaintiffs' claim under § 1983 against "[D. Christopher Evans] on behalf of the DEA," *id.*

---

[9] Even if plaintiffs had alleged a prima facie case under RFRA, their claim would still fail because enforcing the CSA, including compliance with the exemption process, against them is the least restrictive means of furthering at least two compelling governmental interests: ensuring the safety of sincerely religious adherents and preventing diversion to non-adherents. *See Gonzalez v. O Centro Espírita Beneficente Uniao do Vegetal*, 546 U.S. 418, 432 (2006); *see also id.* at 438 ("We do not doubt the validity of … the general interest in promoting public health and safety by enforcing the [CSA.]"); *Multi-Denominational Ministry*, 365 F. App'x at 820 (even if members of plaintiff church have made prima facie case for using marijuana under RFRA, government has compelling interest in preventing diversion of marijuana to non-members).

at 66, must be dismissed under Rule 12(b)(6). A complaint lacks facial plausibility when it alleges facts "'merely consistent with' a defendant's liability[.]" *Iqbal*, 556 U.S. at 678; *see Hurry v. FINRA.*, No. CV-14-02490-PHX-ROS, 2015 WL 11118114, at *7 (D. Ariz. Aug. 5, 2015) (citing *Iqbal*, 556 U.S. at 678) (dismissing claim where plaintiff "alleg[ed] a factual scenario" in which defendant may be liable but it was "equally possible" that defendant was not). "In other words, pleading facts 'more likely explained by' lawful actions than by a vague overarching illegal scheme, is not sufficient." *Demaree v. Krause*, No. CV-11-00046-PHX-ROS, 2012 WL 12548135, at *7 (D. Ariz. Apr. 17, 2012) (quoting *Iqbal*, 556 U.S. at 681). Further, although a court must "accept[] as true" a complaint's *factual* allegations, *Iqbal*, 556 U.S. at 678, it need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555.

Plaintiffs' § 1983 claim asserts that DEA retaliated against Villanueva by acting under color of state law and conspiring with Arizona officials to violate his rights during a May 2020 search. Compl. ¶¶ 192-231. But that claim fails for the following reasons.

A. The Allegations that DEA Retaliated Against Plaintiffs Are Implausible.

The viability of Plaintiffs' § 1983 claim depends in part on the plausibility of Plaintiffs' allegations that "Agent Paddy [on behalf of DEA] conceived and communicated retaliatory animus towards NAAVC and Villanueva "retaliatory animus towards Villanueva," which motivated the agency to pass along a tip it had received regarding his activities to the County. *Id.* ¶ 228, ¶¶ 159-60. Plaintiffs claim DEA "conceived" this animus "when it discovered that [Villanueva] was . . . [involved with] promoting the Change.org petition, . . . sending the DEA Letter requesting rescission of the Guidance, and . . . commencing this action." *Id.* ¶ 228. In support of this assertion, Plaintiffs allege that "DEA obtained knowledge of . . . the Change.org Petition, and the plan to send the DEA Letter by infiltrating the Visionary Religion community." *Id.* at ¶ 229. But this allegation is insufficient to support Plaintiffs' claim.

No alleged facts support Plaintiffs' allegation that DEA was aware of any of the Plaintiffs' involvement in petitioning or suing DEA at the time any DEA official acted. *See Hurry*, 2015 WL 11118114, at *7. First, Judge Orrick already found that "defendants' sworn representations" (already accepted by that Court, ECF No. 57 at 19)—that the DEA had not yet received

NAAVC's letter when DEA sent the County the Villanueva tip—together with the letter itself, refute Plaintiffs' allegation that the letter seeded the alleged animus. ECF No. 57 at 18-19; ECF Nos. 41-1, 41-2, 41-3.[10] Those same sworn representations—that Paddy informed the County about the tip nearly four months *before* Plaintiffs filed this suit, ECF No. 41-1 ¶¶ 5-6— similarly refute Plaintiffs' allegation that the "retaliatory animus" arose out of the initiation of this lawsuit. Finally, these sworn representations—that prior to August 2020, Agent Paddy "had never heard of . . . [NAAVC]," ECF No. 41-1 ¶ 9—refute that the Change.org petition, the posting of which identified NAAVC, *see* ECF No. 94-2; *See* Change.org, Stop the DEA from Regulating Visionary Religions, https://www.change.org/p/stop-the-dea-from-regulat-ing-visionary-religions?redirect=false— (last visited June 15, 2021) was a possible ground for any animus. *Contra* Compl. ¶ 228; *see also id.* ¶¶ 159-60, 193, 229. Altogether, as Judge Orrick found, "[t]he basic flaw of the plaintiffs' theory remains: there is sworn evidence that the search had nothing to do with this case." *See* ECF No. 57 at 21.

Moreover, the pleaded facts are "'more likely explained by' lawful actions than by a vague overarching illegal scheme." *Demaree*, 2012 WL 12548135, at *7 (quoting *Iqbal*, 556 U.S. at 681). In support of their conclusory allegation that "retaliatory animus" motivated Paddy, Plaintiffs offer only their own supposition that "[t]here was no other reason why one call made to the DEA tip line about one person holding religious ceremonies would warrant an imme-diate investigative referral to local drug-lab law enforcement[.]" Compl. ¶ 160. But the much more likely explanation is that DEA was simply carrying out its routine CSA-enforcement duties; indeed, that is confirmed by defendants' sworn representations. ECF No. 57 at 20 (crediting testimony that "DEA forwarding tips to local law enforcement is 'not unusual'").

---

[10] The Court may consider NAAVC's letter to DEA, ECF No. 41-3, without converting this motion into a motion for summary judgment: the letter has been "incorporated by refer-ence into" the Complaint because "the plaintiff refers extensively to" it and it "forms the basis of the plaintiff's claim." *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court also may take judicial notice of "matters of public record" without converting this motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); Fed. R. Evid. 201(b)(2) (a "judicially noticed fact" is "not subject to reasonable dispute because it . . . can be accurately and readily deter-mined from sources whose accuracy cannot reasonably be questioned"). Despite multiple op-portunities to do so, including amending the complaint, Plaintiffs have not disputed the facts in Defendants' sworn declarations credited by Judge Orrick at the preliminary injunction stage.

**B.** <u>Plaintiffs Have Failed to Sufficiently Plead that the DEA Acted Under Color of State Law or That a Conspiracy Existed.</u>

"[B]y its very terms, § 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997). This is so, the Ninth Circuit has explained, because under § 1983, defendants must act "under color of state law," *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992), and federal officials "generally do not act under 'color of state law.'" *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988). Thus, to bring a claim against federal officials, a § 1983 plaintiff must show a "sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself.'" *Cabrera*, 973 F.2d at 744; *see also Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008). A "sufficiently close nexus" is lacking where "the federal defendants acted pursuant to federal laws," and the state officials "had nothing to do" with the federal government's decisions and actions. *Ibrahim*, 538 F.3d at 1256-57.

Plaintiffs fail to make this showing. Plaintiffs previously identified the allegations "form[ing] the basis for Plaintiffs' [§ 1983] claim," ECF No. 94 at 15, but none asserts that any state official had anything to do with Paddy's decision to pass along the tip to Kaskavage or Paddy's actions in doing so. Nor does the allegation Plaintiffs have cited to support the proposition that "DEA 'significantly participated' in the infringement of Plaintiffs' civil rights by instigating the investigation, setting the goals for the investigation, and aiding in the raid," satisfy the standard. *See* ECF No. 94 at 17 (citing 3d Am. Compl. ¶ 199). The cited language, repeated in the new Complaint, simply describes the HIDTA and alleges that "DEA personnel aided in the raid." Compl. ¶ 233. But federal officers' participation in a "cooperative federalism scheme" does not equate to those officers acting under color of state law for § 1983 purposes. *See Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997); *Olson v. Norman*, 830 F.2d 811, 821 (8th Cir. 1987). And even if DEA agents did participate in the search, Plaintiffs concede that DEA derives its authority from federal law, Compl. ¶ 7 & n.1, and do not allege that any DEA agent was not acting pursuant to this authority or that any state official had anything to do with any DEA agent's decisions or actions. Thus, under *Ibrahim*, Plaintiffs' allegations do not

establish the "sufficiently close nexus," and dismissal is proper. 538 F.3d at 1256-57.

Further, the Complaint does not establish any conspiracy under § 1983 because: (1) plaintiffs do not allege "an agreement or 'meeting of the minds' to violate constitutional rights," *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1548 (9th Cir. 1989) (en banc) (citation omitted); and (2) defendants' sworn representations demonstrate that there was in fact no meeting of the minds or shared objective between DEA officials and state officials, *see* ECF No. 41-1 ¶ 9 & ECF No. 41-4 ¶¶ 6-8. While § 1983 does not list conspiracy as a required element, the Third Claim centers around what Plaintiffs call a "conspiracy to violate Villanueva's civil rights." Compl. ¶ 246; *see also id.* ¶¶ 234-65. To prove a conspiracy between a state and others under § 1983, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers*, 865 F.2d at 1548 (citation omitted). Although "each participant in the conspiracy need not know the exact details of the plan, . . . each participant must at least share the common objective of the conspiracy." *Id.* at 1541.

Here, Plaintiffs do not allege facts sufficient to meet this standard. Rather, all they allege is that: (1) "Shay was prompted to initiate enforcement action against Villanueva by his HIDTA boss, [Micah] Kaskavage," a Phoenix police officer detailed to the HIDTA Arizona SW Task Force, Compl. ¶ 238; (2) "[a]ll of Shay's actions were contemplated, intended and furthered by Agent Paddy's initiating the investigation of Villanueva from a retaliatory motive," *id.* ¶ 202; and (3) "[p]ursuant to the conspiracy formed at the DEA's instigation, and using HIDTA as their meeting ground and funding source, Maricopa County and Shay initiated an investigation of Villanueva to further the purposes of the conspiracy," *id.* ¶ 239. In none of these wholly conclusory allegations do Plaintiffs allege either that DEA passed along its "suggestion or request" to conspire to deprive Villanueva of his civil rights or, more importantly, that Kaskavage or Shay and the "agents of the DEA" shared a joint understanding about—let alone discussed—an intention to deprive Villanueva of his civil rights. Although Plaintiffs allege that Paddy told Kaskavage that DEA wanted HIDTA to search Villanueva's home, "by whatever means might be required, including the fabrication of evidence," and that Shay "mak[e] inculpatory accusations against Villanueva in the [search] warrant affidavit with knowledge of their

16

falsehood, a reckless disregard for the truth, and the preconceived intention to mislead the reviewing magistrate," *id.* ¶ 195, these allegations are—in the words of Judge Orrick—"baseless and speculative," ECF No. 57 at 23. And even if these allegations were well-founded, the Complaint fails to connect the dots: it does not allege that Shay ever communicated with Paddy, or that Kaskavage relayed the objective of any conspiracy to Shay. *See* Compl. ¶ 238 (alleging only that "Shay was directed to procure a search of Villanueva's home, by whatever means necessary, including by fabricating evidence to support the warrant, if necessary").

Moreover, even if Plaintiffs' allegations supported a § 1983 conspiracy claim, defendants' sworn representations refute them, as they demonstrate that there was in fact no meeting of the minds or shared objective between DEA officials and state officials. Neither Paddy nor the supervisor of the DEA's Phoenix task force ever heard of NAAVC or its attorney or their letter until months after the May 2020 search. ECF No. 41-1 ¶ 9; ECF No. 41-4 ¶¶ 6-8. No other DEA official is alleged to have been involved in the alleged conspiracy. And even accepting as true for the purposes of this motion the allegations that Najjar was aware of the Change.org petition or "the contents of the DEA letter," Plaintiffs do not allege that he ever communicated with any state official, or himself harbored any shared retaliatory purpose. In fact, the allegations preclude finding the requisite agreement: Plaintiffs allege that DEA deliberately obscured from Agent Paddy "the purpose and scope of the conspiracy" in which he is alleged to have been the link among Najjar, the larger DEA, and state officials. Compl. ¶ 163.[11]

## CONCLUSION

For the foregoing reasons, the Court should grant this motion to dismiss.

Dated: June 15, 2021                                  Respectfully submitted,

                                                     BRIAN M. BOYNTON
                                                     Acting Assistant Attorney General

---

[11] Plaintiffs' § 1983 claim is also not redressable and should be dismissed under Rule 12(b)(1) to the extent it seeks an injunction prohibiting the Federal Agency Defendants from "[u]tilizing any evidence derived from the unconstitutional pre-search investigations and May 19, 2020 search of the Vine of Light Church and Villanueva's home and premises in any proceeding"; and (2) "compelling the return of all property seized[.]" Compl. at ¶¶ 76, 81-84. The DEA did not conduct any "pre-search investigations" related to the search, and does not have any evidence derived from or any property seized during the search. ECF No. 41-4 ¶ 7.

17

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ Lisa Newman
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2021, I electronically transmitted the foregoing Federal Agency Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint [Doc. 109] to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

/s/ Lisa Newman
LISA NEWMAN