JOHN SULLIVAN (CSB#204648) Pro Hac Vice
10857 Kling Street
North Hollywood, California 91602
Tel:818-769-7236 Fax:818-301-2175
Email:Sullivan.John84@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Church,
Clay Villanueva, and the Vine of Light Church

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Arizona Yagé Assembly, North American
Association of Visionary Churches, Clay
Villaneuva, and the Vine of Light Church,

           Plaintiffs,

      vs.

Merrick Garland, Attorney General of the
United States, *et al.*,

           Defendants.

**Case No.: 20-CV-02373-ROS**

OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**I.   STATEMENT OF THE ARGUMENT** ........................................................................ **1**

**II.  STATEMENT OF FACTS** ......................................................................................... **1**

**III. THE STANDARD ON THIS MOTION** .................................................................... **3**

**IV.  PLAINTIFFS STATE A CLAIM UNDER RFRA** ................................................. **3**

    A.   Plaintiffs Free Exercise is Substantially Burdened by the DEA and DHS's Policy of Total Prohibition on Ayahuasca Use and Importation. ...................................... 4

    B.   DEA's Guidance Increases the Burden on Plaintiffs' Free Exercise ................................. 6

**V.   PLANTIFFS HAVE STANDING TO BRING THEIR RFRA CLAIMS** ......................... **7**

    A.   Plaintiffs' RFRA Claim is Based on Ongoing Injury, and the Government's "Pre-Enforcement" Challenge Argument is a Straw Man ................................................ 8

    B.   Plaintiffs Have Standing To Bring a "Pre-enforcement" RFRA suit ................................. 9

    C.   Plaintiffs' Injuries Were Caused by Federal Defendants ................................................ 10

**VI. PLAINTIFFS' APA CLAIM IS PROPERLY BEFORE THE COURT** ......................... **11**

    A.   Plaintiffs' Facial Challenges to the Guidance are not Time Barred ................................. 11

    B.   DEA's Agency Action is Both Unconstitutional and ultra vires ...................................... 12

    C.   Plaintiffs' Challenge Identifies a Final Agency Action ................................................... 13

    D.   Seeking an Exemption From DEA Would be Futile ........................................................ 13

    E.   The Controlled Substances Act Does Not Bar Plaintiffs' Claims ..................................... 14

**VII.  PLAINTIFFS HAVE STATED A CLAIM UNDER § 1983** ......................................... **15**

    A.   The Federal Defendants Acted under the Color of State Law .......................................... 16

    B.   Plaintiffs' Allegations are Plausible ............................................................................... 16

**VIII.  DEFENDANTS EFFECTIVELY CONCEDE THAT PLAINTIFFS MAY BRING A DECLARATORY RELIEF ACT CLAIM** ................................................................. **17**

**IX.  CONCLUSION** ..................................................................................................... **17**

## I.     STATEMENT OF THE ARGUMENT

Plaintiffs come to this Court to protect their cherished right of Free Exercise of Religion, guaranteed by the First Amendment, under the generous provisions of the Religious Freedom Restoration Act ("RFRA").  Controlling precedent from the Supreme Court and the Ninth Circuit strongly favors Plaintiffs' position and compels recognition of their meritorious claims. Unfortunately, federal regulatory agencies – the Drug Enforcement Agency ("DEA") and Department of Homeland Security ("DHS") – continue to interpret their missions in a manner contrary to law and irreconcilable with religious freedom.  Plaintiffs respectfully ask this Court to reject the Government's positions in its Motion to Dismiss conclusively, placing this action on the road to the swift resolution that it merits.

## II.     STATEMENT OF FACTS

Plaintiff Arizona Yagé Assembly ("AYA") is a religious institution focused on providing its congregation with spiritual communion and healing through Ayahuasca ceremonies.  FAC ¶¶ 43-57.  Incorporated as a non-profit church in June 2015, AYA's mission is to create a caring, helpful setting from which members can surrender to Divine Love.  FAC ¶ 43.  Church members use Ayahuasca (also known as yagé), an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), as their religious sacrament.  FAC ¶¶ 43, 59.  In communion ceremonies at the AYA Visionary Church, congregants receive the transmission of wisdom and Divine Love that comes through sacramental use of Ayahuasca.  FAC ¶¶ 43, 51, 132.

Both AYA and Plaintiff Vine of Light Church are members of the North American Association of Visionary Churches ("NAAVC"), an interdenominational association of visionary churches whose members use Ayahuasca as religious sacrament.  NAAVC and its members are substantially burdened by laws prohibiting importation, distribution, and possession of Ayahuasca.  Because DMT is listed as a Schedule I controlled substance under the Controlled Substances Act (the "CSA"), and because the DEA and DHS interpret the law to enact a complete ban against the religious sacrament Ayahuasca, members are forced to choose between obedience to their religion and criminal sanction.

One example of this substantial burden occurred on April 22, 2020, when NAAVC and AYA were notified that their joint property, a container of Ayahuasca ordered for the use of NAAVC and AYA, had been labeled contraband and seized by DHS during the customs process. FAC ¶ 138.  The Federal Defendants seized similar shipments of Ayahuasca in October 2020, November 2020, and December 2020.  FAC ¶ 139-41.  Without access to the Ayahuasca seized by the Defendants, AYA does not have a sacrament to share, and AYA congregants are unable to practice their religion.  *Id.*

Another example occurred on May 19, 2020, when a joint Federal-State task force funded by the Drug Enforcement Agency ("DEA") – acting on a DEA-initiated tip – conducted an armed raid on the Vine of Light Church and arrested Plaintiff Clay Villanueva because he is a director of NAAVC.  FAC ¶¶ 208, 259.  Villanueva is a 60-year-old veteran of the United States Navy and IT professional who discovered visionary religion while in his 50s, became a Visionary Church Minister, and later founded the Vine of Light Church.  FAC ¶¶ 69 - 75.  The armed raid was itself an actionable civil rights violation because Villanueva and his wife (also in her sixties) had no weapons or criminal history when they were terrorized during the early morning raid.  FAC ¶ 208.   Villanueva's arrest and the seizure of the Vine of Light Church's sacrament put NAAVC's other directors on notice that they could be next, which would chill a reasonable person's Free Exercise.  FAC ¶¶ 145, 243, 259-260.

On November 20, 2020, DEA issued its latest "*Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act* (the "Guidance").[1]  The Guidance is a sham procedure under which no exemption has ever been issued.  FAC ¶ 312(p); ¶ 312(u).  The Guidance requires petitioners under its provisions to abstain from sacramental use of controlled substances (FAC ¶ 96), waive Fifth Amendment protection from compelled self-incrimination under oath (FAC ¶ 117), and disclose inculpatory information to prosecutors under penalty of perjury.  FAC ¶¶ 111-20.  More

---

[1] In apparent response to Executive Order 13891, *Promoting the Rule of Law Through Improved Agency Guidance Documents*, 84 Federal Register 55235 (Oct. 9, 2019), DEA revised and reissued the Guidance.  Executive Order 13891 is cited at footnote 42 of the FAC, and its impact is discussed at FAC ¶¶ 123-125.

than three years ago, DEA sent a cease-and-desist notice to Soul Quest Church "inviting" them to submit a petition under the Guidance.  After waiting nearly three years for a decision, DEA finally denied Soul Quest's petition in April 2021.  FAC ¶ 278(w).[2]

## III.    THE STANDARD ON THIS MOTION

"When analyzing a complaint under Rule 12(b)(6), the factual allegations 'are taken as true and construed in the light most favorable to the nonmoving party.'"  *George v. AZ Eagle TT Corp.*, 961 F. Supp. 2d 971, 973 (D. Ariz. 2013) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    PLAINTIFFS STATE A CLAIM UNDER RFRA

Congress enacted the Religious Freedom Restoration Act ("RFRA") to protect religious groups like Visionary Churches from the very burdens imposed by Defendants in this case.  *See* 42 U.S.C. §2000bb-1(c).  The Supreme Court has held that the Controlled Substances Act is "amenable to judicially crafted exceptions" and that RFRA "plainly contemplates that *courts* would recognize exceptions – that is how the law works."  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 434 (2006) (emphasis in original).

The facts of *O Centro* are nearly identical to the present case and its holding is dispositive.  *O Centro* also involved a visionary church ("UDV") whose members received communion by drinking "hoasca," a tea brewed from South American plants that contains DMT.[3]  After U.S. Customs inspectors seized a hoasca shipment addressed to the UDV and threatened prosecution, the UDV filed a lawsuit seeking declaratory and injunctive relief alleging, *inter alia*, that applying the CSA to its sacramental hoasca use violated RFRA.  *Id.* at 425.  Both the District Court and the Tenth Circuit found that UDV was entitled to relief.

---

[2] https://www.dropbox.com/s/pjai37i0rmfzr2p/DEA_Denial_Soul_Quest_Exemption_2021.pdf?dl=0

[3] "Hoasca," "ayahuasca" and "yage" are synonyms that refer to the tea prepared from plants native to South America that contains small amounts of DMT.  *See* Ayahuasca, Miriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/ayahuasca (last visited April 19. 2021).

Applying strict scrutiny, the Supreme Court found that, although Schedule I substances are exceptionally dangerous, "there is no indication that Congress, in classifying DMT, considered the harms posed by the particular use at issue here – the circumscribed, sacramental use of hoasca by the UDV." *Id.* The Supreme Court held that the lower courts "did not err in determining that the Government failed to demonstrate, at the preliminary injunction stage, a compelling interest in barring the UDV's sacramental use of hoasca." *Id.* at 439.

According to the Ninth Circuit, "RFRA does not allow the government to refuse an accommodation to a group which is materially indistinguishable from one already exempted." *See United States v. Christie*, 825 F.3d 1048, 1059 (9th Cir. 2016). The District of Oregon applied this basic RFRA principle in a suit brought by the Church of the Holy Light of the Queen ("CHLQ") – a church that used Daime tea (containing DMT similar to Hoasca and Ayahuasca) as religious sacrament – and held: "Guided by the unanimous decision of the United States Supreme Court in a very similar case, *Gonzales v. O Centro*, I conclude that the Religious Freedom Restoration Act requires that plaintiffs be allowed to import and drink Daime tea for their religious ceremonies, subject to reasonable restrictions. I will enter a judgment and permanent injunction." *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1211-12 (D. Or. 2009)

Plaintiffs are in the same position as the churches in *O Centro* and *CHLQ*. In light of the statutory language of RFRA, the Supreme Court's holding in *O Centro*, and the Ninth Circuit's principle that accommodations should be granted in materially indistinguishable cases, Defendants' motion to dismiss the RFRA claim should be summarily denied.

### A. **Plaintiffs Free Exercise is Substantially Burdened by the DEA and DHS's Policy of Total Prohibition on Ayahuasca Use and Importation.**

Under RFRA, a "substantial burden" is imposed when individuals are "coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008). Plaintiffs' Free Exercise is substantially burdened in the following four ways. *First*, Plaintiffs are burdened by the CSA's complete ban on Ayahuasca use and importation due to the small amount of a Schedule I controlled substance contained therein. FAC ¶¶ 132-135. Without access to Ayahuasca,

Plaintiff Visionary Churches do not have a sacrament to share and congregants are unable to practice their religion.  FAC ¶¶ 132, 256.  Plaintiffs face the classic Catch-22 dilemma that RFRA was meant to remediate: exercise of their religion under fear of civil or criminal sanction.  FAC ¶ 134; *see Oklevueha Native Am. Church of Hawaii, Inc. v. Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016) (finding "substantial burden" where prohibition forces the group to "choose between obedience to their religion and criminal sanction."); *Snoqualmie Indian Tribe v. FERC*, 545 F.3d 1207, 1213-15 (9th Cir. 2008) (explaining the nature of the forced choice captured in RFRA's substantial burden component).

*Second*, Plaintiffs are burdened by the Government's failure to provide a RFRA exemption under the CSA's implementing regulations to allow them to engage is Visionary Religious practice as Free Exercise.  The Supreme Court recently held that government regulations trigger strict scrutiny under the Free Exercise Clause "whenever they treat *any* comparable secular activity more favorably than religious exercise."  *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (emphasis in original).  Because the Government provides CSA exemptions that allow law enforcement, pharmacy employees, and physicians to carry out their professional duties, the Government is required under *Tandon* to provide the same or similar exemption to allow Visionary Churches to carry out their Free Exercise.  The Government "cannot assume the worst when people go to worship but assume the best when people go to work." *Id.* at 1294 (quoting *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020)).

*Third*, Plaintiffs are burdened by heavily armed police raids carried out by the HIDTA Task Force with DEA personnel aiding in the raids.  FAC ¶ 233.  Plaintiff Villanueva's church-residence was raided and searched by a DEA-funded task force due to a DEA-initiated tip about DMT manufacturing.  FAC ¶¶ 34, 233.  DHS's action led to the complete shut-down of one of Plaintiffs NAAVC's member churches and thus permanently interrupted Plaintiffs' Free Exercise.  Notwithstanding the Government's assertions that Visionary Churches face no "imminent threat of prosecution," the threat of more police raids has forced NAAVC member churches and congregations into the shadows and underground.  FAC ¶ 135, 223.

*Fourth*, Plaintiffs are burdened by DHS's seizure of Plaintiffs' sacramental Ayahuasca destined for sharing with congregations. FAC ¶¶ 33, 138-40. As a result of the seizures at the border, religious sacrament was confiscated and destroyed without just compensation, in violation of Plaintiff's Fifth Amendment rights under the Takings Clause. FAC ¶¶ 63, 259, 312(h); *see Horne v. Dep't of Agric.*, 576 U.S. 351 (2015). DHS's seizures actions caused pecuniary damage and substantially burdened AYA's provision of religious sacrament.

Unable to escape the plain fact that DEA and DHS have suppressed and burdened Plaintiffs' practice of their religion, the Federal Defendants try to shift the question to whether Plaintiffs are burdened by DEA's regulatory exemption process.[4] Dkt. 112 (Federal Defendants' Motion to Dismiss (hereinafter "GOV")) at 19:3-4. But that is deviation from the proper course of analysis. Where a substantial burden to religious free exercise is shown, the inquiry shifts to the question asked by the Supreme Court in *O Centro*: are the Government's actions that burden Plaintiffs' free exercise the least restrictive means of furthering the Government's interest? And the answer is an emphatic "No." *See O Centro*, 546 U.S. at 432. Plaintiffs are entitled to relief.

## B.  DEA's Guidance Increases the Burden on Plaintiffs' Free Exercise

Beyond the substantial burden imposed by the DEA's unwillingness to slacken its absolute prohibition on Plaintiffs' use of Ayahuasca, Plaintiffs' Free Exercise is substantially burdened by the DEA's purported regulatory exemption process, because the Guidance increases the substantial burden on Plaintiffs' Free Exercise by design. *First*, the DEA Guidance is a "wall" and not a "door," as evidenced by the fact that DEA has never granted an exemption. FAC ¶¶ 93-95; ¶ 312(p) and 312(u). *Second*, the DEA Guidance requires applicants to forfeit their Fifth Amendment rights and make inculpatory statements under oath that could lead to criminal prosecution. FAC ¶ 118-20. *Third*, the DEA Guidance poses a financial barrier because no careful church leader would petition the DEA without first consulting with informed legal counsel, who would advise not to do it. FAC ¶ 102-03. *Fourth*, the DEA uses the

---

[4] Notably, the Federal Defendants do not even try to defend DHS's seizure of AYA and NAAVC's religious sacrament on procedural grounds. *See* FAC ¶¶ 138-141. DHS's actions burdened Plaintiffs' free exercise by seizing their religious sacrament, and DHS does not have a regulatory exemption process to hide behind.

Guidance as an investigative tool by "inviting" targeted churches to submit "Petitions for Religious Exemption" ("PREs") that require disclosure of inculpatory information under oath, *i.e.* confessions usable for prosecutorial purposes.  FAC ¶¶ 112, 312(t).  *Fifth*, the DEA uses the Guidance is a vehicle for chilling Free Exercise with *de facto* cease and desist notices and *de facto* administrative subpoenas under the guise of invitations to submit a PRE.  FAC ¶ 106-07, 113, 158. 312(t).

The Government relies on *United States v. Tawahongva*, 456 F. Supp. 2d 1120 (D. Ariz. 2006), that is readily distinguishable because the defendant in *Tawahongva* "did not find applying for a permit objectionable . . . . or require him to endure any delay in performing rites necessary to the free exercise of his religion." *Id.* at 1132.  By contrast, Plaintiffs allege they are substantially burdened because the Guidance process compels an immediate end to communion ceremonies, a waiver of constitutional rights, and self-incrimination under oath, all to engage in a futile process that has always resulted in denial. FAC ¶¶ 93-120, 278.

An instructive case on point is *United States v. Gonzales*, 957 F. Supp. 1225 (D.N.M. 1997), in which a Native American defendant was charged with killing a bald eagle.  In *Gonzales,* the defendant did not submit an application for a permit before shooting the eagle because the application process forced him to disclose personal information about a religious ceremony.  *Id.* at 1228.  The Court found that the application process itself imposed a substantial burden on the exercise of his religion.  *Id.*  The court so found, not because the defendant had been prosecuted, but because the application regulations required him to disclose confidential information that was sacred to him.  *Id.*  Like *Gonzales*, the application process in this case demands Plaintiffs to disclose highly sensitive and self-inculpating information.  FAC ¶¶ 115, 118-20.  For these reasons, DEA's Guidance imposes its own substantial burden

## V.  PLANTIFFS HAVE STANDING TO BRING THEIR RFRA CLAIMS

All "religious persons" whose Free Exercise is substantially burdened by the Government have standing to file a RFRA lawsuit.  42 U.S.C. § 2000bb-1(c).  Plaintiffs have standing to bring this suit because their religious rights are directly targeted by the Government defendants and this injury is redressable.  *See O Centro*, 546 U.S. 439; *Church of the Holy Light of the*

*Queen*, 615 F. Supp. 2d at 1212.  Plaintiffs have standing to bring its RFRA claims "[b]ecause standing overlaps substantially with ripeness" in these circumstances.  *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1086 (9th Cir. 2003).  Where at least one plaintiff has demonstrated standing, the court may reach the merits of the claim without determining whether the remaining plaintiffs also have standing.  *See Bd. of Nat'l Res. v. Brown*, 992 F.2d 937, 942 (9th Cir. 1993).

A. **Plaintiffs' RFRA Claim is Based on Ongoing Injury, and the Government's "Pre-Enforcement" Challenge Argument is a Straw Man**

The Government's motion sets up a straw man – claiming that Plaintiffs present a "pre-enforcement challenge" – and must therefore plead the threat of imminent prosecution.  GOV at 8.  To the contrary, Plaintiffs' RFRA claim alleges recent, current, deliberate, and likely future harm and injury caused by DEA and DHS:

- The Federal Agencies enforce the Controlled Substances Act, which makes it a crime for Plaintiffs to possess their religious sacrament; *see* FAC at ¶¶ 30.

- The Vine of Light Church was forced to close down and cease all religious events because the DEA arrested its leader and seized all of its religious sacrament; *see* FAC ¶ 259

- DHS seized packages containing AYA and NAAVC's religious sacrament in April 2020, October 2020, November 2020, and December 2020.  FAC ¶ 139-41.

- Plaintiff Villanueva's home was raided and searched by a DEA-funded task force due to a DEA-initiated tip, and DEA personnel aided in the raid, *see* FAC ¶¶ 34;

- Due to the DEA's retaliatory raid, Villanueva faces the risk of criminal charges for distributing religious sacrament to his congregation; FAC ¶ 232

- Plaintiffs' ability to share Ayahuasca with its congregants is substantially burdened by the Government's prohibition on importing, manufacturing, or dispensing Ayahuasca; *see* FAC ¶ 55.

- DHS has seized Plaintiffs' sacramental Ayahuasca destined for sharing with congregations, *see* FAC at ¶¶ 33, 138-140.

- DHS continues to maintain control over several packages of religious sacrament seized from Plaintiffs and this seizure continues to injure Plaintiff Visionary Churches, *see* FAC ¶¶ 139, 144;

- Plaintiffs are forced to practice their religion in the shadows and "underground," which limits outreach and attendance, *see* FAC ¶¶ 135; 223;

- AYA congregants are forced to censor their own speech about their religious beliefs, which places a huge burden on growing the congregation.  FAC ¶¶ 53, 223.

- The Guidance imposes a financial barrier for visionary churches, *see* FAC ¶ 102;

- The Guidance demands disclosure of self-inculpating information under oath, information individuals are privileged not to divulge under coercion due to the Fifth Amendment prohibition on compelled self-incrimination, *see* FAC ¶ 118.

**B. Plaintiffs Have Standing To Bring a "Pre-enforcement" RFRA suit**

Even assuming, *arguendo*, that Plaintiffs' RFRA claim is "pre-enforcement" rather than seeking redress for an ongoing injury, Plaintiffs have sufficiently alleged injury-in-fact and can establish Article III standing in a "pre-enforcement" RFRA suit.

In *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012), the Ninth Circuit reviewed a case with similar facts and rejected the precise arguments the Government now makes to this Court. In *Oklevueha*, the Ninth Circuit observed that establishing injury-in-fact in a CSA pre-enforcement claim requires plaintiffs to allege a "genuine threat of imminent prosecution." *Id.* However, the Ninth Circuit specifically noted that "[t]he 'genuine threat' analysis *presumes that no enforcement has previously occurred*," and allegations of recent enforcement has the effect of "mitigating the relevance of a hypothetical future-enforcement." *Id.* (emphasis added). "In contrast to cases in which the courts are left to hypothesize about how the law might be applied, Plaintiffs' claims arise from an enforcement action that has already occurred." *Id.* at 838. It would be a perversion of standing jurisprudence to hold that Vine of Light Church, which was shut down following a DEA Task Force raid and the arrest of its leader, lacks standing because Church congregants are now too terrified to attend Ayahuasca ceremonies and Villanueva is too afraid to practice his religion in the open.

Applying the holding of *Oklevueha* to the facts in this case, this Court must find that Plaintiffs can establish all three prongs of the "genuine threat of prosecution" inquiry. First, as in *Oklevueha*, Plaintiffs have sufficiently alleged a "concrete plan" by establishing that a central component of their religious ceremonies is the ingestion of Ayahuasca, *see,* FAC ¶¶ 5, 39, 43, 104, 139, 140, and that their members have attended such ceremonies and will attend them in the future. *See* FAC ¶ 47.

Second, as in *Oklevueha*, Plaintiffs in this case can establish a "specific warning or threat to initiate proceedings" because the HDITA Task Force has recently taken enforcement action

against the religious group and its members.  *See* FAC ¶ 199; *Oklevueha*, 676 F.3d at 836 ("Plaintiffs need not allege a threat of future prosecution because the statute has already been enforced against them."); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (locating a "substantial" threat of future prosecution in a "history of past enforcement").

Finally, as in *Oklevueha*, Plaintiffs in this case are likely to suffer a similar fate in the future because the Government has already taken enforcement action against Plaintiffs through the seizure of their Ayahuasca by DHS and through seizure of their Ayahuasca during an DEA-instigated raid on Villanueva's home.  *See* FAC ¶ 139, 144, 233.

## C.  Plaintiffs' Injuries Were Caused by Federal Defendants

At the pleading stage, Plaintiffs need only allege that their injury is "fairly traceable" to Defendants' conduct.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011); *see also Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 885, 849 (9th Cir. 2002) (a causal chain does not fail simply because it has several "links," provided those links are "not hypothetical or tenuous" and remain plausible).  Here, Plaintiffs allege that DHS and DEA have infringed, and continue to infringe, upon their First Amendment rights.  Federal Defendant DHS has repeatedly seized AYA and NAAVC's Ayahuasca sacrament.  FAC ¶ 138-41.  DEA Agent Paddy used a false tip to launder Najjar's malicious lie that Villanueva was manufacturing and selling DMT, and then passed it along to Kaskavage as legitimate.  FAC ¶¶ 159-60.  Paddy send Kaskavage an email, thereby publishing the lie so Shay could get a warrant, initiate a search, and arrest Villanueva. *Id.*  Thus, Plaintiffs have established "'a line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'"  *Maya*, 658 F.3d at 1068.

Plaintiffs have not caused their own injury by refusing to engage in sham proceedings under the Guidance, and the Government's claim to the contrary is meritless.  GOV at 11. Plaintiffs may challenge the facial and as-applied validity of the CSA and the Guidance under RFRA even if they have not sought an exception under the Guidance.  *See Gonzales*, 957 F. Supp. 1225 (defendant had standing to challenge statute and regulations governing bald eagles under RFRA, both as applied and facially, even though he had not engaged in the application process); *United States v. Hugs*, 109 F.3d 1375, 1378-79 (9th Cir. 1997) (finding Plaintiff had

standing to assert facial challenge to statute and implementing regulations under RFRA).
Plaintiffs, likewise, have standing.

## VI.   PLAINTIFFS' APA CLAIM IS PROPERLY BEFORE THE COURT

Under the APA, judicial review is triggered by a "final agency action for which there is
no other adequate remedy in a court."  5 U.S.C. § 704.  "The APA 'creates a **strong
presumption of reviewability** that can be rebutted only by a clear showing that judicial review
would be inappropriate.'"  *Defs. of Wildlife v. Tuggle*, 607 F. Supp. 2d 1095, 1098 (D. Ariz.
2009) (emphasis added).  The Government argues that there has been no "final agency action"
because Plaintiffs did not submit a petition under DEA's Guidance.  GOV at 4.  The Government
mischaracterizes Plaintiffs' APA claim.  Plaintiffs do not seek judicial review of a particular
petition or even allege they submitted a petition under DEA's sham Guidance.  Rather, Plaintiffs
allege that the Guidance – and the policy underlying the Guidance – is illegal because it is *ultra
vires* and it cloaks DEA's policy of stripping Plaintiffs of their Free Exercise rights.  FAC ¶ 208.

### A.   Plaintiffs' Facial Challenges to the Guidance are not Time Barred

Plaintiffs' challenges are not time-barred for three reasons.  *First*, Plaintiffs' challenge to
the Guidance as unconstitutional and exceeding statutory authority is not subject to the six-year
statute of limitations.  *See Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir.
1991) ("If . . . a challenger contests the substance of an agency decision as exceeding
constitutional or statutory authority, the challenger may do so later than six years following the
decision.").

*Second*, DEA's revision and re-publication of the Guidance on November 20, 2020. reset
the statute of limitations.  Effective November 20, 2020, DEA rescinded the authority of the
Deputy Assistant Administrator of the Diversion Control Division to make a "Final
Determination" on a Petition, and placed that authority in the hands of the Assistant
Administrator.[5]  "The time period for seeking judicial review begins anew" when a later

---

[5] *Compare* DEA Guidance (February 26, 2018) *available at* https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)%20Guidance%20Regarding%20Petitions%20for%20Religious%20Exemptions.pdf (last visited July 20, 2021); *with* DEA Guidance (November 20, 2020) *available at* https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2)RFRA_Guidance_(Final)_11-20-2020.pdf (last visited July 20, 2021).

proceeding "explicitly or implicitly shows that the agency actually reconsidered the rule." *Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 141 (D.C. Cir. 1998); *see also Mendoza v. Perez*, 754 F.3d 1002, 1019-20 (D.C. Cir. 2014) (an amendment that "substantively alter[s]" the rule restarts the statute of limitations).

*Third*, DEA formally reviewed and reconsidered the Guidance pursuant to Executive Order 13891 and OMB's Implementing Memo. FAC ¶ 123. Where, as here, DEA "reconsidered the rule and decided to keep it in effect," the agency's "renewed adherence" to the rule is "substantively reviewable" even if a challenge to the agency's original adoption of the rule would be time-barred. *Pub. Citizen v. Nuclear Regul. Com.*, 901 F.2d 147, 150 (D.C. Cir. 1990).

## B. DEA's Agency Action is Both Unconstitutional and *ultra vires*

Plaintiffs challenge the Guidance "on its face" and "as applied." First, Plaintiffs challenge the Guidance as *ultra vires.* Congress did not delegate to DEA the authority to publish the Guidance or make determinations about religious free exercise or the sincerity of religious beliefs. Without notice-and-comment rulemaking and without a statutory basis, DEA vested itself with exclusive authority to decide whether Plaintiffs may freely practice their religion or must continue to practice their religion in the shadows. DEA exercises this authority in secret, without deadlines, and without explanation. FAC ¶¶ 97-98; ¶ 312(o).

Second, Plaintiffs challenge the Guidance as violative of Plaintiffs' Fifth Amendment rights against self-incrimination. To seek an exemption under the Guidance, DEA: (1) demands that Plaintiffs self-incriminate themselves in violation of their Fifth Amendment rights, (2) requires Plaintiffs to put themselves at risk of criminal perjury under 18 U.S.C. §1001, and (3) opens Plaintiffs to unlimited requests for more information. FAC ¶¶ 99-120.

Finally, Plaintiffs bring an "as applied" challenge to the Guidance based on the Government's assertion that Plaintiffs were required to submit an exemption request that contained incriminating statements. Where plaintiffs were subjected to multiple enforcement actions by federal defendants, a facial challenge and an "as applied" challenge are virtually identical. *See Gonzales*, 957 F. Supp. at 1227 (where Native American was charged with

shooting bald eagle without permit, facial and "as applied" challenge were "virtually identical."). Similar here, the Guidance is *ultra vires,* unconstitutional, and should be set aside under § 702.

### C.   Plaintiffs' Challenge Identifies a Final Agency Action

The threshold for finding an "agency action" is not high.  *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (the word "action" in "agency action" as used in the APA is meant to "cover comprehensively every manner in which an agency may exercise its power."). The Ninth Circuit has found reviewable agency actions where the agency takes some action that is at least the equivalent of one of the enumerated actions in 5 U.S.C. § 551(13).  *See Or. Nat'l Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 983 (9th Cir. 2006).

As significant and determinative as any legislative rule, the Guidance document is used by DEA to make legislative-type decisions about where prohibitions in the CSA begin and end. *Id.*  As Plaintiffs allege throughout their complaint, DEA has used the Guidance to implement DEA's *de facto* policy of refusing regulatory services by denying every single exemption application that has ever been submitted under the Guidance.  FAC ¶ 312(p).  As an agency action with the force and effect of an administrative rule, the DEA Guidance is reviewable under the APA.

The Supreme Court has long taken a "pragmatic approach" to finality."  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016); *Or. Nat'l Desert Ass'n*, 465 F.3d at 982. Here, each publication of the Guidance (in 2009, 2018 and 2020) was a final agency action because it established firm DEA policy that resulted in legal consequences for Plaintiffs.  *See Gill v. U.S. DOJ*, 913 F.3d 1179, 1185 (9th Cir. 2019) (holding that nonbinding policy guidelines related to a voluntary government program can result in legal consequences).  Specifically, DEA has used the Guidance as a pretext for complying with RFRA yet never granting an exemption under the Guidance. FAC ¶¶ 312(k)-(z).

### D.   Seeking an Exemption From DEA Would be Futile

Plaintiffs' APA claims are properly before this Court because requiring further administrative procedure would be futile.  *See El Rescate Legal Servs., Inc. v. Exec. Off. of*

*Immigration Review*, 959 F.2d 742, 747 (9th Cir. 1992) ("where the agency's position on the question at issue 'appears already set' and it is 'very likely' what the result of recourse to administrative remedies would be, such recourse would be futile and is not required.") (quoting *SAIF Corporation/Or. Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir. 1990)).  This is a well-settled Ninth Circuit principle of law that is especially applicable where, as here, there is "objective and undisputed evidence of administrative bias which would render pursuit of an administrative remedy futile." *White Mtn. Apache Tribe v. Hodel*, 840 F.2d 675, 677-78 (9th Cir. 1988); *see also Agua Caliente of Cupeño Indians v. Sweeney*, 932 F.3d 1207, 1219 (9th Cir. 2019) (same); *Fones4all Corp. v. FCC*, 550 F.3d 811, 818 (9th Cir. 2008) (same).

### E.  The Controlled Substances Act Does Not Bar Plaintiffs' Claims

Defendants argue that Plaintiffs must participate in the Government's intrusive regulatory process because jurisdiction over any DEA decision on a petition lies exclusively in a U.S. Court of Appeals.  GOV at 5.  This argument is based on two fundamentally flawed assumptions: (1) the Controlled Substances Act vests DEA with the authority to make determinations about Plaintiffs' religious sincerity; and (2) a decision about Plaintiffs' religious sincerity is a determination made "under" Section 877 of the Controlled Substances Act.  In fact, Congress did not delegate to DEA the authority to evaluate the sincerity of Plaintiffs' religion practices, and DEA cannot avoid liability under the APA by fabricating an *ultra vires* regulatory exemption process that purports to do so.[6]  Indeed, none of the Ninth Circuit cases cited by the Federal Defendants are relevant or applicable because they all involved challenges to regulations that were (unlike the Guidance being challenged in this case) promulgated pursuant to DEA's express regulatory authority, subject to APA rulemaking, and published in the Federal Register.

---

[6] To put it mildly, DEA lacks the institutional capacity, the substantive expertise and the bureaucratic temperament to evaluate claims of religious sincerity and defend religious Free Exercise.

## VII.    PLAINTIFFS HAVE STATED A CLAIM UNDER § 1983

Plaintiffs Villanueva and NAAVC assert a claim against the Federal Defendants under 42 U.S.C. § 1983 seeking only injunctive relief.  The following well pled allegations form the basis for Plaintiffs' claim:

- NAAVC posted a petition to Change.org encouraging members of the public to contact DEA and advocate for Plaintiffs' religious rights.  FAC ¶ 228.

- In a letter dated January 8, 2020, NAAVC demanded that DEA rescind the Guidance.  FAC ¶¶ 125 and 229.

- On the exact same date as the DEA letter, a DEA Agent allegedly received a tip on an unidentified "DEA tip line" from an individual who implicated Clay Villanueva in a criminal conspiracy to manufacture and distribute DMT.  FAC ¶ 159.

- DEA Agent Paddy contacted a supervisor of the Federal/State joint MCSO Arizona High Intensity Drug Trafficking Task Force ("HIDTA") and accused Villanueva of manufacturing and selling DMT.  FAC ¶ 159.  Agent Paddy communicated to the HIDTA supervisor that the DEA wished for HIDTA to conduct a search of Villanueva's home.  FAC ¶ 195.

- MCSO Detective Matthew Shay, a member of the HIDTA Task Force, investigated Villanueva.  FAC ¶ 195.  Shay's investigation discovered no evidence of DMT manufacturing because none was occurring.  FAC ¶ 201.

- On May 5, 2020, NAAVC filed the original Complaint in this case in the Northern District of California against the Federal Defendants.  Dkt. 1.

- Less than two weeks after Plaintiffs filed the complaint in this case, Shay procured a search warrant for Villanueva's church-residence.  Shay's affidavit to the Magistrate Judge contained several false stations and material admissions.  FAC ¶ 236.

- Two days later – on May 19, 2020 – the HIDTA task force conducted an armed raid, arrested Villanueva, and seized religious sacrament.  FAC ¶ 242.

- On June 16, 2020, Plaintiffs amended the operative Complaint to add a 42 U.S.C. § 1983 claim against the Federal and State defendants. Dkt. 12.

If the Court is to believe the Government's assurances in their legal brief that Plaintiffs do not face a "genuine threat of imminent prosecution," GOV at 8, DEA's initiation of the investigation was a marked departure from DEA practice.  The same can be said for Detective Shay, who typically investigates major crimes and large drug syndicates, yet put this other

important work on hold to investigate a 60-year-old Navy veteran and religious leader who uses Ayahuasca as sacrament.  This Court may draw the reasonable inference that the Federal Defendants sought to retaliate against the NAAVC and conspired with – or acted in concert with – state officials to some substantial degree to intimidate NAAVC and Villanueva and injure their First Amendment and Fourth Amendment rights.

### A.  The Federal Defendants Acted under the Color of State Law

"Although federal officials acting under federal authority are generally not considered to be state actors, they may be liable under § 1983 if they are found to have conspired with or acted in concert with state officials to some substantial degree."  *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992).  "The touchstone of this analysis is ultimately 'whether there is a sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself.'"  *Id.*

Here, DEA "significantly participated" in infringing Plaintiffs' civil rights by instigating the investigation, setting the goals for the investigation, and aiding in the raid.  FAC ¶ 233.  Therefore, Plaintiffs have sufficiently alleged a "close nexus" between the federal defendants and the state to claim liability under §1983.  *See Hampton v. Hanrahan*, 600 F.2d 600, 625 (7th Cir. 1979) (federal law enforcement officers who conspired with the Chicago Police Department in a raid on the Black Panther Party, acted under "color of state law" because the action was the "joint product of the exercise of a State power and of a non-State power" and the State and its officials played a 'significant' role in the result."); *see also Reynoso v. City & Canty. of S.F.*, No. C 10-00984 SI, 2012 U.S. Dist. LEXIS 25584 (N.D. Cal. Feb. 28, 2012) (finding plaintiffs sufficiently alleged a symbiotic relationship between policy officers and ATF agents engaging in a search of plaintiff's residence to claim liability under section 1983.").

### B.  Plaintiffs' Allegations are Plausible

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

The Government would have the Court ignore the well-pled facts, the timeline of events, and the marked departures from procedure, but this, the Court cannot do.  However, the Government's position illustrates the extent to which the DEA will condone and thus encourage the use of corrupt, lying informants in pursuit of a bureaucratic vendetta.  But as alleged in the FAC, Villanueva was never a drug dealer, the "tip" passed along from Agent Marco Paddy has all the indicia of being fabricated, and the warrant procured by Detective Shay was full of misrepresentations and omissions.  Having alleged a plausible conspiracy to intimidate Plaintiffs by violating their Free Exercise rights, Plaintiffs are entitled to develop that claim in discovery.

## VIII.  DEFENDANTS EFFECTIVELY CONCEDE THAT PLAINTIFFS MAY BRING A DECLARATORY RELIEF ACT CLAIM

Defendants argue in a footnote that Plaintiffs' claim under the Declaratory Relief Act should be dismissed.  GOV at 12 fn 8.  The lack of a serious attack on Plaintiffs' Declaratory Relief Act claim demonstrates that declaratory relief is an appropriate remedy for Defendants' current and future APA and RFRA violations.  Indeed, a decree that Plaintiffs are entitled to an exemption from future interceptions of sacraments is required because the Government's seizure and destruction of sacramental Ayahuasca amounts to targeted interference with Free Exercise.  If Defendants are not enjoined, Plaintiffs will suffer irreparable harm for which they have no remedy at law.  FAC ¶ 156.  The requested injunction will serve the public's interest in protecting Free Exercise from prior restraint and post-hoc detention, prosecution, and punishment.  Id.

## IX.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Federal Defendants' Motion to Dismiss.  Out of abundance of caution Plaintiffs seek leave to submit a Fourth Amended Complaint encompassing the new allegations.

Dated:  July 20, 2021                       JOHN SULLIVAN
                                            /s/John Sullivan
                                            JOHN SULLIVAN (127139)
                                            Attorney for Plaintiffs
                                            Arizona Yagé Assembly,
                                            North American Association of Visionary Churches, and
                                            Clay Villanueva