JOHN SULLIVAN (CSB#204648) Pro Hac Vice
10857 Kling Street
North Hollywood, California 91602
Tel:818-769-7236 Fax:818-301-2175
Email:Sullivan.John84@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Church,
Clay Villanueva, and the Vine of Light Church

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, North American Association of Visionary Churches, Clay Villaneuva, and the Vine of Light Church, | |
| Plaintiffs, | **Case No.:20-CV-02373-ROS** |
| vs. | OPPOSITION TO SHAY AND MARICOPA COUNTY'S MOTION TO DISMISS |
| Merrick Garland, Attorney General of the United States, *et al.*, | |
| Defendants. | |

## TABLE OF CONTENTS

I.   STATEMENT OF THE ARGUMENT ................................................................ 1

II.  STATEMENT OF FACTS ............................................................................... 1

III. THE STANDARD ON THIS MOTION ........................................................... 4

IV. PLAINTIFFS STATE A CLAIM AGAINST SHAY ....................................... 4

   A.   Shay Concedes that Plaintiffs' FERA Claims Should not be Dismissed ................... 4

   B.   Qualified Immunity Is Irrelevant to Whether Plaintiffs State a Claim ..................... 4

   C.   Even if Analyzed, Qualified Immunity Has no Substantive Application ................... 4

     1.   Shay Violated Villanueva's Fourth Amendment Rights By Engaging in Judicial Deception ...................................................................................................... 4

     2.   Shay Violated Villanueva's Fourteenth Amendment Rights By Fabricating Evidence .. 9

     3.   Shay Violated Plaintiffs' First Amendment Rights to Be Free of Retaliatory Animus. 10

     4.   Shay Violated Plaintiffs' First Amendment Right to Free Exercise ............................. 12

     5.   Shay Violated Plaintiffs' Fourth Amendment Rights Against Intrusive or Unjustified Detention ......................................................................................................... 13

   D.   Plaintiffs State Law Claims Against Shay Must Survive ............................................. 13

V.  PLAINTIFFS STATE A CLAIM AGAINST MARICOPA COUNTY ......................... 13

   A.   Maricopa County Is Liable Under § 1983 ................................................................... 13

   B.   Maricopa County is Directly Liable for FERA Violations .......................................... 15

   C.   Plaintiffs are Entitled to Injunctive Relief ................................................................. 15

   D.   The County is Liable for Plaintiffs' Remaining State Law Claims Because it Supervises and Exercises Control Over the Sheriff's Office and its Deputies ................. 16

   E.   Younger Abstention is not Required ............................................................................ 17

VI. CONCLUSION ............................................................................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  STATEMENT OF THE ARGUMENT

In the early morning hours of May 19, 2020, Clay Villanueva stood handcuffed in his underwear while heavily armed members of a Federal/State High Intensity Drug Trafficking Area ("HIDTA") task force searched his church residence.  Mr. Villanueva is a 60-year-old Visionary Church Minister of the Vine of Light Church who incorporates Ayahuasca sacrament into his religious practice, yet he was treated by Defendants Matthew Shay and Maricopa County like a violent drug offender.  Villanueva's arrest and the seizure of his religious sacrament was motivated by retaliatory animus that was initially conceived at the Federal level and then passed to Detective Shay at the State level.  The Drug Enforcement Agency ("DEA") illegally targeted Mr. Villanueva because he held a leadership position in the North American Association of Visionary Churches ("NAAVC"), an organization that had petitioned DEA for redress of its grievances and filed a lawsuit against DEA just two weeks before the armed raid.  Shay violated Villanueva's Fourth Amendment rights by engaging in judicial deception to obtain a search warrant and by subjecting Villanueva to an unnecessarily intrusive detention during the search.  Shay also violated Villanueva's First Amendment rights by conspiring with DEA agents to retaliate against Villanueva's protected speech.  Finally, both Shay and Maricopa County directly violated Villanueva's right to Free Exercise and his religious rights under State law.  This Court should reject Shay and Maricopa County's attempts to skirt liability and deny the Motion to Dismiss.

## II.  STATEMENT OF FACTS

Clay Villanueva is a 60-year-old religious man who makes his home in Phoenix, Arizona.  FAC ¶ 6.  Villanueva left rural Florida in 1979 to join the Navy and spent seven years serving his country as a communications technology specialist.  FAC ¶ 69.  Villanueva received regular promotions in the Navy until he was honorably discharged in 1985 as a Petty Officer First Class, equivalent to an Army Sergeant in rank.  *Id.*  After he left the Navy, Villanueva worked in the IT industry for over 25 years, eventually becoming the top IT professional at a major business furnishings manufacturer that was acquired by Target in 2007.  FAC ¶ 70.

In search of the Divine Love and compassionate awareness, Villanueva learned about Ayahuasca and Amazonian visionary religion in 2011.  FAC ¶ 71.  On several occasions between

2011 and 2015, he travelled to a healing center in Iquitos, Peru, to receive Ayahuasca communion. FAC ¶ 72-73. Villanueva discovered that during the communion state, he had an intuitive ability to play traditional musical instruments and demonstrated a comfort level with the Ayahuasca communion experience that is rarely seen among novices. FAC ¶ 73.

Villanueva's life underwent a transformation as he continued to follow his religious calling. FAC ¶ 74. Nearly six years after discovering Visionary Religion, Villanueva began to practice visionary religion and share Ayahuasca with a small circle in California, and then in Arizona as well. FAC ¶ 74. In 2017, Villanueva incorporated the Vine of Light Church as an Arizona nonprofit corporation. FAC ¶ 75. In 2019, the Vine of Light church joined the North American Association of Visionary Churches ("NAAVC") as its first member church. *Id.*

NAAVC was established to help secure the religious rights of its member churches. On September 17, 2019, NAAVC posted a petition to Change.org encouraging members of the public to contact DEA and advocate for Plaintiffs' religious rights. FAC ¶ 193; Dkt. 94-2. In a letter to the Drug Enforcement Agency dated January 8, 2020, NAAVC demanded that the Assistant Administrator for Diversion Control Division cease infringing upon religious rights and threatened litigation. FAC ¶¶ 125, 195.

The DEA's Confidential Informant Rami Najjar signed up for Plaintiff AYA's email list and on September 17, 2019, received electronic copies of the NAAVC petition and an early draft of the DEA letter. FAC ¶ 193. Najjar passed this information along to DEA, and DEA was able to use NAAVC records filed in the California Secretary of State's business entity directory to confirm Villanueva's involvement with NAAVC and visionary religion. FAC ¶ 230.

DEA Agent Marco Paddy developed animus toward NAAVC and Villanueva for their activism in promotion the online petition, and communicated that animus to Maricopa County officers. FAC ¶ 159. On the exact same date of NAAVC's letter to DEA (January 8, 2020), Agent Paddy allegedly received a tip from Rami Najjar. FAC ¶¶ 159, 164. Pleading in the alternative, Plaintiffs allege that Agent Paddy either (a) initiated the tip to give vent to the DEA's retaliatory animus against Villanueva and NAAVC, or (b) utilized the tip as a convenient vehicle for the DEA's retaliatory animus. FAC ¶ 195.

Paddy, who either planted the tip with retaliatory intent, or exploited Najjar's own confessed retaliatory intent, contacted Phoenix Police Department Sergeant Micah J. Kaskavage and repeated Najjar's false accusation that Villanueva was manufacturing DMT out of his home. FAC ¶ 159.  Paddy claimed to have received the tip from Najjar on an unidentified "DEA tip line," and called Sergeant Kaskavage because he is a supervisor on the joint Federal/State HIDTA Task Force.  FAC ¶ 159. Agent Paddy communicated to Kaskavage that the DEA wished for HIDTA (a Federally-funded task force) to investigate Villanueva and conduct a search of Villanueva's home.  FAC ¶¶ 195, 238.

On May 5, 2020, NAAVC filed the original Complaint in this case in the Northern District of California.  *See* Dkt. 1.  As a result of the filing, DEA's retaliatory animus – and by extension Maricopa County's animus – grew to encompass the intent to chill Villanueva's Free Exercise, to silence his Free Religious Expression, and to obtain tactical leverage in the pending litigation by placing an NAAVC Board member at risk of prosecution.  FAC ¶¶ 232, 243.

Two weeks after filing the Complaint in this case, the HIDTA task force conducted an armed raid of Villanueva's church-residence.  FAC ¶¶ 166. 242.  Accompanied by a large number of heavily armed deputies who announced themselves by pounding on the front door and threatening to bring it down if it were not opened immediately, Detective Matthew Shay had his deputies place Villanueva in handcuffs as he stood in his underwear.  FAC ¶ 242.  Villanueva had no weapons and – until his arrest at the hands of Defendant Shay – had no criminal record. FAC ¶ 242.

The facts of this case present three extraordinary coincidences to be explored in discovery: (1) Plaintiffs sent a letter to DEA dated January 8 threatening litigation, and Confidential Informant Rami Najjar allegedly provided a tip to Agent Paddy on the exact same date, FAC ¶¶ 125, 159, 162; (2) the instant lawsuit was filed on May 5th, and two weeks later Shay decided to act on the 4-month-old tip and submit his Search Warrant to the Magistrate, *see* Dkt. 39-3; and (3) the summons issued in this lawsuit on May 13th, and six days later on May 19th Shay initiated his illegal raid on Villanueva's church residence.  FAC ¶ 242.

## III.     THE STANDARD ON THIS MOTION

"When analyzing a complaint under Rule 12(b)(6), the factual allegations 'are taken as true and construed in the light most favorable to the nonmoving party.'" *George v. AZ Eagle TT Corp.*, 961 F. Supp. 2d 971, 973 (D. Ariz. 2013) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.     PLAINTIFFS STATE A CLAIM AGAINST SHAY

### A.   Shay Concedes that Plaintiffs' FERA Claims Should not be Dismissed

Count Four alleges a claim against Shay for violation of the Arizona Free Exercise of Religion Act ("FERA"). FAC ¶¶ 266-275. Shay does not move to dismiss Plaintiffs' FERA claims against him and is barred from making this argument for the first time in a reply. At a minimum, Plaintiffs' FERA claim and prayers for relief related to the FERA claim must move forward against Shay.

### B.   Qualified Immunity Is Irrelevant to Whether Plaintiffs State a Claim

Whether Shay has qualified immunity is not relevant to the existence of Plaintiffs' cause of action. *See Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980) ("this Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action"). Because Plaintiffs have alleged that Shay deprived them of a federal right while acting under the color of state law, *see* FAC ¶¶ 240, 312ff, Plaintiffs' complaint must survive a motion to dismiss.

### C.   Even if Analyzed, Qualified Immunity Has no Substantive Application

#### 1.   Shay Violated Villanueva's Fourth Amendment Rights By Engaging in Judicial Deception

The Fourth Amendment "is no barrier at all if it can be evaded by a policeman concocting a story that he feeds a magistrate." *Baldwin v. Placer Cnty.*, 418 F.3d 966, 970 (9th Cir. 2005). Hence, a Fourth Amendment violation occurs where the "alleged judicial deception was brought about by material false statements or material omissions," or where "'the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.'" *Liston v. City of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997) (quoting

*United States v. Stanert*, 762 F.2d 775, 881 (9th Cir. 1985)).  Such a showing is sufficient to

overcome a qualified immunity defense:

> [I]f an officer "submitted an affidavit that contained statements he knew to be
> false or would have known to be false had he not recklessly disregarded the truth
> and no accurate information sufficient to constitute probable cause attended the
> false statements, . . . he cannot be said to have acted in a reasonable manner,"
> and the shield of qualified immunity is lost."

*Chism v. Wash. State*, 661 F.3d 380, 393 (9th Cir. 2011) (quoting *Branch v. Tunnell*, 937

F.2d 1382, 1387 (9th Cir. 1991), *overruled on other grounds by Galbraith v. Cnty. of*

*Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

        To survive a motion to dismiss, NAAVC and Villanueva's § 1983 claim based on judicial

deception need only "contain nonconclusory allegations that the defendant knowingly included

false statements in the affidavit or did so with reckless disregard."  *Tunnell*, 937 F.2d at 1387.

The Ninth Circuit has explained that the standard at the motion to dismiss stage is far less

demanding than the standard at summary judgment:

> We hasten to add this standard is a low one.  It serves the limited purpose of
> enabling the district court to dismiss "insubstantial" suits prior to discovery and
> allowing the defendant to prepare an appropriate response.

*Id.* at 1387-88.

        Here, Shay is not entitled to qualified immunity because he signed a misleading,

deceptive and bad faith affidavit with that contained at least nine false or misleading statements.

*First*, in an astonishing break with investigatory protocol, Shay took no steps to investigate the

tip that was allegedly received by Agent Paddy and passed along to Kaskavage.  FAC ¶¶ 196.

Shay never spoke to Najjar, never heard a recording of Najjar, never tried to contact Najjar with

the telephone number he left with Paddy, and never spoke to anyone at the DEA about the tip

before filing the warrant affidavit.  *Id.*; *see also* Dkt. 39-1.  Shay's failure to conduct any

investigation into the source or veracity of the tip runs contrary to basic standards and practices

and Supreme Court precedent.  *See* FAC ¶ 196; *see also Illinois v. Gates*, 462 U.S. 213, 239

(1983) (requiring verification of anonymous tips).  Shay's failure to investigate the tip – which

enabled Shay to omit information about potential DEA animus and the relationship between

Villanueva and Najjar – established Shay's reckless disregard for the truth.

*Second*, Shay's affidavit misrepresented the tip as "anonymous," when in fact Kaskavage was told that Najjar was willing to help law enforcement and had a callback telephone number (with a 310 California area code) where he could be reached.  FAC ¶ 200.  Shay intentionally or negligently omitted the fact that he had contact information for Najjar and had the opportunity to question Najjar as to his credibility and basis of knowledge.  *Id.*  Shay's omission and misrepresentation are material because: (1) there are serious questions surrounding the authenticity of the tip and Agent Paddy's relationship with Najjar; (2) the tip was four months old by the time Shay signed his affidavit, and the misrepresentation regarding anonymity allowed Shay to avoid inquiry by the Magistrate regarding the freshness of the tip.

*Third*, Shay's affidavit contained the false statement that MSCO Officer Micah Kaskavage received a tip through a federal "tip line" about Clay Villanueva, when in fact the tip was received by (or planted by) DEA Agent Marco Paddy.  FAC ¶ 195.  Shay presented this "tip" as a critical piece of evidence – mentioning it in each of the first four sentences of the "Synopsis" section of his warrant request, and then again in the first two paragraphs of the "Narrative" section.  Dkt. 39-3.  Indeed, Shay's involvement in the case was predicated upon the false accusation that Villanueva was manufacturing DMT in his home.  Dkt. 39-2.  Shay's misrepresentations about the source and substance of the tip are material because the alleged tip was the <u>sole</u> and <u>exclusive</u> source of evidence supporting the false claim that Villanueva was "more than likely manufacturing and storing the DMT." Dkt. 39-3 at 16.

*Fourth*, not only did Shay misstate the true origin of the tip solicited and transmitted by DEA Agent Paddy, he also omitted the fact that DEA had been sued in Federal Court just two weeks earlier by NAAVC (an association on which Villanueva served on the Board of Directors).  FAC ¶¶ 227, 259.  This omission is material because it hid the strong possibility that DEA was motivated by retaliatory animus when DEA contacted Maricopa County and instructed the Sheriff's Office to obtain a search warrant of Villanueva's home.  *See* FAC ¶¶ 195, 238.

*Fifth*, in another break with investigatory protocol, Shay failed to enter Villanueva's name into The Narcotics and Dangerous Drugs Information System ("NADDIS") database, which would have alerted him that Villanueva was an NAAVC Director who initiated both the

Change.org petition and this lawsuit, and was therefore a represented party and prospective witness in this lawsuit which was pending before Shay submitted his warrant affidavit.  FAC ¶¶ 166, 181.  Shay's failure to investigate the target – which enabled Shay to omit critical information about the religious free exercise of the target in his affidavit – further established Shay's reckless disregard for the truth.

*Sixth*, Shay's affidavit omits the fact that his extensive investigation – including at least five surveillance visits – uncovered no evidence of DMT manufacturing.  FAC ¶ 201.  Shay concealed this negative discovery in his warrant affidavit and presented the tip regarding DMT manufacturing as if it had been corroborated rather than dis-corroborated, and used the false impression to ramp up the probable cause calculus.  *Id.*  Specifically, rather than note the complete absence of any physical evidence of DMT manufacturing, Shay insinuated that Villanueva was hiding his trash so as to avoid detection.  Dkt. 39-3 at 20 ("the [trash] can was not to the curb in the evening or early mornings prior to trash pickup each time I checked.").  This misrepresentation is material because it reinforced the false narrative that Villanueva was manufacturing DMT in his home.  Rather than identify the exculpatory evidence, Shay repeatedly referred to "Clandestine Laboratories," discussed the toxicity and danger of DMT manufacturing, and then falsely concluded that "it is probable that this manufacturing process occurs at Mr. Villanueva's home."  *Id.* at 16.

*Seventh*, Shay's affidavit contains false statements equating the blessed sacrament Ayahuasca tea with the controlled substance DMT (N, N-Dimethyltryplamine), when in fact Ayahuasca tea is not the same as the chemical DMT.  FAC ¶ 5.  This distinction is very important because Ayahuasca has been identified by the Ninth Circuit as peculiarly unlikely to be diverted into unlawful channels.  *See United States v. Christie*, 825 F.3d 1048, 1059 (9th Cir. 2016).  Shay's false statements are material because they misled the Magistrate about whether Shay had probable cause to believe Villanueva – a Minister in a Visionary Church that publicly advertises the use of Ayahuasca in religious ceremonies – was manufacturing and dealing DMT out of his home.  FAC ¶¶ 195, 246.

*Eighth*, Shay's affidavit contained misleading statements and made stylistic choices (*i.e.* quotation marks around religious terms like "spiritual" and "ceremony") meant to convey that Villanueva's religious activities were fraudulent, when in fact Shay knew that Villanueva's activities at the Vine of Light Church were sincere Free Exercise.  FAC ¶¶ 197, 253.  These misleading statements are material because it allowed Shay to concoct a story for the Magistrate that Villanueva was a drug dealer, when in fact he is not.  Tellingly, the Motion to Dismiss continues to denigrate Plaintiffs' religious practice, referring to Plaintiffs' sacred religious communion as "ayahuasca sales."  Dkt. 110 at 5.  Such statements are disrespectful and shameful and demonstrate why Plaintiffs brought this lawsuit in the first place.

*Ninth*, Shay's affidavit contained the false statement that Shay had probable cause to believe Villanueva was manufacturing DMT, when in fact Shay knew that Villanueva was not manufacturing DMT out of his home.  FAC ¶ 201.  Indeed, every single statement in the affidavit regarding the supposed manufacturing of DMT in Villanueva's home was false.  This is material because without the DMT allegations, there was insufficient cause under the Fourth Amendment for a search and seizure.

These nine allegations of specific misstatements and omissions from Shay's affidavit, individually and as part of a conspiracy to deny Villanueva's civil rights, are plausible and exceed the "low bar" set by the Ninth Circuit for allowing § 1983 claims based on judicial deception to proceed to discovery.  *See, e.g.*, *Wheeler v. Broggi*, 2020 U.S. Dist. LEXIS 78289 at *4 (W.D. Wash. May 4, 2020) (allegations of specific misstatements and omissions from a search warrant affidavit that were material to the probable cause determination were sufficient to survive a motion to dismiss); *Sigal v. Cnty. of L.A.*, 2017 U.S. Dist. LEXIS 225763, at *22 (C.D. Cal. Aug. 28, 2017) (based upon allegations of "specific omissions and misrepresentations" and deliberate misrepresentation of those facts, the plaintiff was found to have stated a cognizable judicial deception claim); *Hunt v. Davis*, No. CV-16-08280-PCT-GMS, Docket No. 31 (D. Ariz. May 15, 2017) (finding that the omissions in a search warrant affidavit identified by plaintiff plausibly suggested that plaintiff was entitled to relief under § 1983).

Defendants argue that, notwithstanding the lies and omissions in Shay's affidavit, probable cause existed because Villanueva cultivated marijuana plants at his residence. Villanueva has already denied dealing drugs out of his home by pleading that he operated a lawful, state-licensed cannabis-growing operation for medical marijuana users and medicinal hemp.  FAC ¶ 243.  Villanueva's legally protected right to cultivate marijuana under Arizona law does not make him a drug dealer or provide probable cause for a retaliatory search of his home based on false allegations of DMT manufacturing.

### 2.   Shay Violated Villanueva's Fourteenth Amendment Rights By Fabricating Evidence

The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official.  *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).  Deliberate fabrication can be established by circumstantial evidence, such as evidence that officials "continued their investigation of [a person] despite the fact that they knew or should have known that he was innocent."  *Id.* at 1076.  Here, Shay knew or should have known that the accusations by Najjar and Agent Paddy were false and Clay Villanueva was not manufacturing DMT or selling DMT out of his home.  Nevertheless, Shay continued to use Federal funds supplied through HIDTA to investigate Villanueva and to fabricate evidence about marijuana production.

Specifically, Shay's affidavit included false statements about the number of marijuana plants being grown at Villanueva's residence pursuant to Villanueva's lawful, state-licensed cannabis-growing operation for medical marijuana users and medicinal hemp.  Dkt. 39-3; FAC ¶ 243.  Shay's claim that he could estimate the number of plants growing at Villanueva's church-residence by "smell evidence" is preposterous and was intended to deceive the Magistrate.  *See United States v. Thomas*, 211 F.3d 1186, 1192 (9th Cir. 2000) (referring humorously to an officer's "incredible claimed powers of auditory recognition" and declining to find that testimony about the "distinctive sound of marijuana" can provide probable cause).  Any administrative issues related to Villanueva's lawful, state-licensed cannabis-growing operation were nothing more than a pretext for DEA and MSCO's retaliatory animus.  Shay's deliberate fabrication of evidence related to DMT Manufacturing and a marijuana overgrow caused

Villanueva to be unlawfully detained in his underwear while Federal Agents and State Officers combed through his house and effects without protective masks or gloves.

### 3. Shay Violated Plaintiffs' First Amendment Rights to Be Free of Retaliatory Animus

Once scrubbed of its misrepresentations, and with Shay's deceptive concealments revealed, the warrant Shay induced the Magistrate to issue lacks probable cause. *See* Section IV.A *supra*. Even assuming, *arguendo*, that probable cause existed, Villanueva may still bring a § 1983 claim because Shay made the arrest in retaliation for Villanueva's protected speech. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019); *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006). Specifically, the arrest was prompted by Villanueva and NAAVC exercising their First Amendment rights to petition the Government for the redress of grievances by promoting a Change.org petition, sending a demand letter to DEA, and filing the instant suit. FAC ¶¶ 228, 239, 248, 257, 260.

In *Nieves v. Bartlett*, the Supreme Court identified circumstances where a plaintiff need not plead the absence of probable cause in order to state a claim for retaliation under § 1983:

> Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, **but typically exercise their discretion not to do so**. In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech."

*See Nieves,* 139 S. Ct. at 1722 (quoting *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1953 (2018)) (emphasis added). As Justice Gorsuch explained, the point of a First Amendment retaliatory arrest claim "isn't to guard against officers who *lack* lawful authority to make an arrest. Rather, it's to guard against officers who *abuse* their authority by making an otherwise lawful arrest for an unconstitutional *reason*." *Nieves*, 139 S. Ct. at 1731 (Gorsuch, J. dissenting) (emphasis in original); *accord Skoog*, 469 F.3d at 1235; *Ford v. Yakima*, 706 F.3d 1188, 1195-96 (9th Cir. 2013); *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1136 (D. Ariz. 2013).

This case fits neatly into the exception identified in *Bartlett*. In the years since Congress passed RFRA and Arizona legalized medical cannabis, law enforcement officers – especially Federal task force members like Shay who face the herculean task of investigating major drug

cartels and stemming the tide of opiates and methamphetamine flowing through the Phoenix area, FAC ¶ 160 – have typically exercised their discretion to recognize a religious exemption for local religious leaders who ingest sacramental tea with trace amounts of DMT.  *See, e.g.*, Dkt. 86 (Federal Defendants' Motion to Dismiss) at 8 (stating that Plaintiffs face no genuine threat of prosecution and noting there has not been "a single federal criminal prosecution related to ayahuasca, which is telling given there is a 'community' of organizations of and people using ayahuasca….");  s*ee also* FAC ¶ 248 (Shay admitted to Villanueva that he did not know whether charges would be filed against him).

Plaintiffs have alleged sufficient facts and inferences to show that Shay would not have led a heavily armed HIDTA task into Villanueva's church-residence but for a retaliatory motive. *See Adlerstein v. U.S. Customs & Border Prot.*, 2020 U.S. Dist. LEXIS 181540, at *35 (D. Ariz. Sept. 30, 2020) (denying motion to dismiss based on comments by individual officers and the proximity in time between the protected conduct and retaliatory action).  NAAVC first garnered the attention of DEA on September 12, 2019, when it posted a petition to Change.org encouraging members of the public to contact DEA and advocate for Plaintiffs' religious rights. FAC ¶¶ 193, 195.  DEA Agent Marco Paddy conceived and communicated retaliatory animus toward NAAVC and Villanueva for their activism in promotion the online petition.  FAC ¶ 195.

Two weeks after the Plaintiffs filed its complaint in this case, Shay decided to act on the 4-month-old tip and seek a warrant from the Magistrate.  Dkt. 39-3.  Shay's knowledge of the retaliatory animus and participation in the scheme can be inferred – at the motion to dismiss stage – from allegations that Shay indulged in an extreme and unnecessary show of force to serve a warrant on a fifty-nine-year-old religious ma and retired Navy non-commissioned officer at his church-residence. FAC ¶ 242.  Villanueva had no weapons, no criminal record, and an announced history of conducting visionary church ceremonies.  *Id.*  The retaliatory search was intended to injure, and did injure, Villanueva's clearly established First Amendment rights of Free Exercise, Free Expression, and his Right to Petition the Government for Redress of Grievances.  *Id.*

### 4.   Shay Violated Plaintiffs' First Amendment Right to Free Exercise

The First Amendment contains two clauses that protect the freedom of religion: the Establishment Clause and the Free Exercise Clause.  *See* U.S. Const. amend. I.  In order to establish a violation of the Free Exercise Clause, a plaintiff must show that the challenged conduct resulted in an impairment of the plaintiff's free exercise of genuinely held beliefs.  *See United States v. Lee*, 455 U.S. 252, 256-57 (1982).

It is clearly established that sincere religious groups may practice their religion by ingesting Ayahuasca.  *See, e.g. O Centro Espirita Beneficente União do Vegetal¸546 U.S.* 418, 434 (2006); *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009).  Indeed, since Congress passed RFRA and the Supreme Court decided *O Centro*, Visionary Churches and their congregations have practiced their religion openly and without fear of prosecution.

At the motion to dismiss stage, the following facts from the Fourth Amended Complaint are deemed admitted: (1) During the custodial interview, Shay told Villanueva he was familiar with the *O Centro* decision, which means Shay had actual knowledge of Villanueva's clearly established right to exercise his religious beliefs, *see* FAC ¶ 247; and (2) Shay knew that Villanueva's activities at the Vine of Light Church were sincere Free Exercise.  FAC ¶ 197. Based on these well-pled facts, Shay is not entitled to qualified immunity because Shay knowingly and willfully ignored Villanueva's clearly established First Amendment rights by arresting him and seizing the Vine of Light Church's sacramental Ayahuasca.  The search of Villanueva's residential church, the seizure of his person, and the seizure of the Vine of Light Church's sacramental Ayahuasca violated Villanueva's protected right of Free Exercise of religion and Free Religious Expression.  FAC ¶ 239.

According to his affidavit, Shay visited Villanueva's Facebook page and website and observed that Villanueva publicly promoted the Vine of Light Church's Ayahuasca ceremonies. Public promotion of church activities does not constitute probable cause.  Dkt. 39-3.  Such

promotion is no different from Christian Churches that sell tickets on Ticketmaster,[1] or Jewish synagogues that advertise worship opportunities to non-members and identify the costs associated with participating in high holy day services.[2]  It would have been clear to a reasonable law enforcement officer that Villanueva's religious free expression was not evidence of Ayahuasca sales or manufacturing, and that Villanueva's promotion of religious ceremonies was not evidence of criminal activity.

### 5. Shay Violated Plaintiffs' Fourth Amendment Rights Against Intrusive or Unjustified Detention

Villanueva had a Fourth Amendment right to be free from an unreasonably intrusive or unjustified detention.  *See Bettin v. Maricopa County*, 2007 U.S. Dist. LEXIS 42979, *33-34 (D. Ariz., June 11, 2007).   Here, Shay violated Villanueva's clearly established rights by indulging in an extreme and unnecessary show of force to serve a warrant on a 60-year-old religious man and retired Navy non-commissioned officer at his church-residence.  FAC ¶¶ 203, 242.

### D. Plaintiffs State Law Claims Against Shay Must Survive

Although Plaintiffs suffered damages, Plaintiffs are no longer seeking money damages for state law claims asserted against Shay for trespass, battery, conversion, replevin, negligence, and loss of consortium.  This case is about religious freedom and not about money.  Among other things, Plaintiffs seek a declaratory judgment that Detective Shay's actions violated state law.  Such declaratory relief would clarify Plaintiffs' religious rights, settle legal relations between NAAVC and law enforcement, and protect religious rights.

## V. PLAINTIFFS STATE A CLAIM AGAINST MARICOPA COUNTY

### A. Maricopa County Is Liable Under § 1983

Municipalities are "persons" under Section 1983 and thus may be liable for causing a constitutional deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *Monell* instructs that in order to impose liability on a municipality or a subdivision of the municipality under § 1983, a plaintiff must "identify a municipal 'policy' or 'custom' that caused

---

[1] *See, e.g.,  https://www.ticketmaster.com/Joel-Osteen-tickets/artist/949337/*

[2] *See, e.g.*, "Selling Holy Day Tickets is Dilemma for Synagogues," New York Times (Sept. 14, 2013) *available at* https://www.nytimes.com/2013/09/14/us/selling-holy-day-tickets-is-dilemma-for-synagogues.html.

the plaintiff's injury." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  "[A]n act

performed pursuant to a 'custom' that has not been formally approved by an appropriate

decisionmaker may fairly subject a municipality to liability on the theory that the relevant

practice is so widespread as to have the force of law." *Id.* at 404 (citations omitted).  Even a

single decision by a municipal policymaker may be sufficient to trigger section 1983 liability

under *Monell*.  *See St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Gillette v. Delmore*, 979

F.2d 1342, 1347 (9th Cir. 1992).

   "[S]heriffs in Arizona act as final policymakers for their respective counties on law-

enforcement matters." *United States v. Cnty. of Maricopa*, 889 F.3d 648, 651 (9th Cir. 2018).

The unlawful collaboration between the MSCO, Maricopa County and the federal task forces

against people with Hispanic surnames, *e.g.*, Villanueva, has been the longstanding policy and

custom of Maricopa County.  FAC ¶ 234.  As this Court is well-aware, Arizona law enforcement

has a long history of violating the civil rights of Hispanics and other people of color who they

subjected to pretextual traffic stops, pedestrian stop-and-frisks, and mass roundups.  *See United

States v. Cnty. of Maricopa*, 151 F. Supp. 3d 998, 1004 (D. Ariz. 2015) (discussing findings of

fact issued by the Arizona District Court in *Melendres v. Maricopa Cnty.*, No. 07-cv-02513).

Conscious indifference to the civil rights of persons in Maricopa County thus became endemic

within the MCSO.  FAC ¶ 234.  In open defiance of federal court orders to promulgate and

enforce unlawful, banned policies, Sheriff Joe Arpaio ("Arpaio") trained MCSO deputies to

violate constitutional rights in defiance of federal court orders.  *Id.*  by Indeed, MCSO remains

under a federal court-ordered injunction that appointed a monitor that submits quarterly reports

on MCSO's progress in eliminating unconstitutional conduct.  FAC ¶ 235.

   The unconstitutional actions by Shay and the MSCO demonstrate that the customs and

policies of Maricopa County that were openly displayed during the Arpaio era are still very

much in place.  During his custodial interrogation of Villanueva, Shay stated he knew Villanueva

was running a church called the Vine of Light, expressed wide knowledge of the church's

website, and stated he was aware of the Supreme Court's decision in *O Centro*.  FAC ¶ 247.

Consistent with the policy of Maricopa County, Shay fabricated the story that Clay Villanueva

was a drug dealer and trampled upon his civil rights in a manner designed to chill Villanueva's

Free Exercise, Free Expression, and the Right to Petition this Court for redress of grievances. FAC ¶ 248.  The fact that Villanueva has a Hispanic surname, and the fact that Ayahuasca originates from Latin American indigenous culture, gave rise to the unconstitutional attack on Villanueva's civil rights that have become a matter of policy and custom in Maricopa County. FAC ¶ 244.

## B.  Maricopa County is Directly Liable for FERA Violations

The Arizona Legislature passed FERA "to protect Arizona citizens' right to exercise their religious beliefs free from undue governmental interference."  *State v. Hardesty*, 222 Ariz. 363, 365 ¶ 8 (2009).  Because the text and requirements of FERA and RFRA are nearly identical, Arizona courts "rely on cases interpreting RFRA as persuasive authority in construing the requirements of FERA."  *Brush & Nib Studios, LC v. City of Phoenix*, 247 Ariz. 269, 298 (2019).

Plaintiffs do not rely on a *respondeat superior* theory of liability for its FERA claim. Plaintiffs allege direct, not derivative, liability against Maricopa County for the County's own acts, policies and omissions in violation of FERA.  Specifically, Plaintiffs allege that a "complete ban on Villanueva's use of Ayahuasca is not the least restrictive means of advancing Maricopa County's interest in regulating the illegal market in DMT, or any other substance."  FAC ¶ 271. In addition, Plaintiffs expressly allege that the County was part of the conspiracy to deprive Plaintiffs of their rights under FERA.  FAC ¶ 240.

## C.  Plaintiffs are Entitled to Injunctive Relief

Shay and Maricopa County argue that Plaintiffs have failed to allege "real and immediate" injuries sufficient for injunctive relief.  This is absurd.  Plaintiffs allege that nurturing the Vine of Life Church congregation through offerings of sacramental Ayahuasca in ceremony "is the central feature of Villanueva's religious life, and in order to do so, he needs to be free to obtain and share Ayahuasca with his congregation."  FAC ¶ 269.  Without access to the Ayahuasca seized by the Federal and State government, Visionary Churches do not have a sacrament to share and congregants are unable to practice their religion.  FAC ¶¶ 55, 60, 132, 139-42, 215, 222.  Moreover, the threat of more police raids has forced NAAVC members into the shadows and underground.  FAC ¶ 135, 217.  Plaintiffs are entitled to injunctive relief

deemed necessary by the Court to protect their religious rights of Free Exercise and Free Expression.

      **D.**   <u>**The County is Liable for Plaintiffs' Remaining State Law Claims Because it Supervises and Exercises Control Over the Sheriff's Office and its Deputies**</u>

*Fridena v. Maricopa County*, 18 Ariz. App. 527, 1972 Ariz. App. LEXIS 915 (Ariz. Ct. App. 1972) is an Arizona appellate decision which held Maricopa County was not liable under the doctrine of *respondeat superior* for torts committed by the sheriff's office when serving a write of restitution. The Arizona Supreme Court has not addressed whether the *Fridena* line of cases is correct, and Judge Wake decision in this Court has expressly questioned the holding of *Fridena.  See Donahoe v. Arpaio*, 2011 U.S. Dist. LEXIS 126512 (D. Ariz. Oct. 28, 2011).

Maricopa County and its Board of Supervisors do, in fact, exercise supervision over the Maricopa County Sheriff and have the power to control the implementation and execution of MSCO's duties. "Under Arizona law, the Sheriff has final policymaking authority with respect to County law enforcement and jails, and the County can be held responsible for constitutional violations resulting from these policies." *United States v. Maricopa County*, 915 F. Supp. 2d 1073, 1084 (D. Ariz. 2012). Additional authority for this proposition can be found in the tortured reasoning of *Fridena* itself, which held that "[i]nasmuch as the Sheriff is a county officer under A.R.S. § 11-401 subsec. A, par 1. the County exercises supervision of the official conduct of the Sheriff." *Fridena*, 18 Ariz. App. at 530. Further evidence that the County exercises supervisory and control powers over the Sheriff's office includes, but is not limited to: A.R.S. § 11-253, A.R.S. § 11-251(1), A.R.S. § 11-201(A)(6), A.R.S. § 11-444(A), A.R.S. § 11-444(B)-(C), and A.R.S. § 11-251(25).

*Fridena* is not a shield giving Maricopa County immunity from torts committed by its employees and officers under its supervision and control. All acts by Shay and Maricopa County deputies were either authorized or ratified by the County because it took no disciplinary action against Shay and said deputies for the matters alleged in the Third Amended Complaint. FAC ¶¶ 285, 291, 298, 304. For this reason, the County is liable for Plaintiffs' state-law claims.

Defendants' reliance on *Fridena* fails for two reasons. First, the *Fridena* decision only makes sense if it is limited to the specific duty (serving a writ of restitution) at issue in that case.

The facts of *Fridena* did not concern anything similar to the allegations in the case at hand, *i.e.* that the MCSO and the County had a general policy of deliberate and conscious indifference to people's rights including the right to the free exercise and free expression of religion.

Second, the Arizona Court of Appeals quietly overruled *Fridena* in *Flanders v. Maricopa County*, 203 Ariz. 368 (Ariz. App. Ct. 2002), which reached the opposite result with respect to the County's liability for the acts of the sheriff's deputies.  *Id.* ("Liability is imposed, not on the grounds of *respondeat superior*, but because the agent's status cloaks him with the governmental body's authority").

### E. *Younger* Abstention is not Required

At the end of their brief, the State Defendants make a half-hearted *Younger* abstention argument.  Although not explained or discussed, it appears that the State Defendants are moving to dismiss certain of Plaintiffs' claims under Rule 12(b)(1).  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998) (treating *Younger* abstention as jurisdictional).  The Court should reject this argument for its failure to specify which of Plaintiffs claims, if any, this Court should dismiss for lack of subject matter jurisdiction.

Under the *Younger* doctrine, "abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims."  *Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 712 (9th Cir. 1995).  The State Defendants fail to even identify these factors, much less make any showing that they are satisfied in this case.  Because Shay and Maricopa are barred from raising these issues for the first time on a reply, whatever relief the State Defendants are seeking under *Younger* should be summarily denied.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Shay and Maricopa County's Motion to Dismiss.  Out of abundance of caution Plaintiffs seek leave to submit a Fifth Amended Complaint.

Dated:  July 20, 2021                    JOHN SULLIVAN
                                         /s/John Sullivan
                                         JOHN SULLIVAN (127139)
                                         Attorney for Plaintiffs
                                         Arizona Yagé Assembly,
                                         North American Association of Visionary Churches, and
                                         Clay Villanueva