JOHN SULLIVAN (CSB#204648) Pro Hac Vice
10857 Kling Street
North Hollywood, California 91602
Tel:818-769-7236 Fax:818-301-2175
Email:Sullivan.John84@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Churches,
Clay Villanueva, and Vine Of Light Church

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, North American Association of Visionary Churches, Clay Villanueva, and Vine of Light Church | |
|       Plaintiffs, | |
|       vs. | Case No.:20-CV-02373-ROS |
| Merrick B. Garland, Attorney General of the United States; D. Christopher Evans, Acting Administrator of the U.S. Drug Enforcement Administration; Alejandro N. Mayorkas, Secretary of the Dept. of Homeland Security; Troy Miller, Senior Official Performing the Duties of Commissioner of U.S. Customs and Border Protection; the United States of America; Maricopa County, Matthew Shay, and Marco Paddy | PLAINTIFFS' OPPOSITION TO DEFENDANT MARCO PADDY'S MOTION TO DISMISS |
|       Defendants. | |

i

# TABLE OF CONTENTS

I.   STATEMENT OF THE ARGUMENT ....................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 1

    A.   NAAVC Petitions The Government for Redress ................................................ 1

    B.   Agent Paddy Develops Animus Toward Plaintiffs and Uses a Confidential
        Informant to Plant a Tip ......................................................................... 2

    C.   Alternatively, Agent Paddy Develops Animus Toward Plaintiffs and Capitalizes
        on a Tip ........................................................................................ 5

    D.   Paddy Triggers the Investigation, the Plaintiffs File a Federal Lawsuit, and the
        Joint DEA/State Task Force Retaliates ........................................................ 6

III. THIS COURT ASSUMES THE TRUTH OF "WELL-PLEADED" FACTS ........................ 7

IV.  *TANZIN v. TANVIR* ALLOWS PLAINTIFFS TO OBTAIN MONEY DAMAGES
AGAINST PADDY ................................................................................................. 8

V.   PADDY SUBSTANTIALLY BURDENED PLAINTIFF'S RELIGIOUS FREEDOM .......... 8

    A.   Agent Paddy Intended to Burden Plaintiffs' Free Exercise and Free Expression .. 8

    B.   Agent Paddy's Actions Did, In Fact, Substantially Burden Plaintiffs' Free
        Exercise and Free Expression ................................................................ 9

    C.   Plaintiffs Have Demonstrated a Causal Relationship ...................................... 11

VI.  PADDY IS NOT ENTITLED TO QUALIFIED IMMUNITY ........................................ 12

    A.   Paddy is Not Entitled to Raise Qualified Immunity under § 1983 at the Motion to
        Dismiss Stage ................................................................................... 12

    B.   Paddy Personally Participated in the Violation of Villanueva's Rights ............... 12

    C.   Paddy's Conduct Violated Clearly Established Law ....................................... 14

VII. PADDY ACTED UNDER THE COLOR OF STATE LAW FOR THE PURPOSES OF
42 U.S.C. §1983 ................................................................................................ 15

VIII. CONCLUSION .................................................................................................. 17

## I.     STATEMENT OF THE ARGUMENT

Special Agent Marco Paddy had only been working for the Drug Enforcement Agency ("DEA") two years when he used the DEA tip line to speak with paid informant Rami Najjar ("Najjar") to plant a tip and initiate an armed raid on innocent citizens, due to improper retaliatory motives.  Agent Paddy conceived and communicated retaliatory animus toward North American Association of Visionary Churches ("NAAVC") and Clay Villanueva, in response to their activism in promoting visionary religion and for initiating criticism of and litigation against the DEA.  Agent Paddy knew of and channeled the anger of his superiors, who had been the first to learn of NAAVC's activism through an online petition and a letter to the DEA's top brass.

Either by planting a tip with the aid of a paid informant, or by capitalizing on a false tip that came in fortuitously over the tip line, Agent Paddy used the Phoenix-based joint Federal/State High Intensity Drug Trafficking Areas ("HIDTA") task force to chill NAAVC and Villanueva's Free Exercise and silence their Free Religious Expression.  By spreading false information and giving unlawful instruction to members of the HIDTA task force, Paddy caused Villanueva to be arrested, the Vine of Light Church to close, and NAAVC member churches, including Plaintiff Arizona Yage Assembly ("AYA"), to worry that practicing their religion could result in a criminal arrest.

Plaintiffs have plausibly alleged the who, what, where, when and why of Paddy's unconstitutional acts, and the illegal conspiracy between the Paddy and the state actors in this case.  Accepting Plaintiffs' facially plausible allegations as true, Paddy's arguments for dismissal quickly fall apart.

## II.     FACTUAL BACKGROUND

### A.  <u>NAAVC Petitions The Government for Redress</u>

NAAVC is an interdenominational association whose members are substantially burdened by laws prohibiting importation, distribution, and possession of Ayahuasca, an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act (the "CSA").  *See* FAC ¶¶ 5, 132.  On September 12, 2019, NAAVC posted an online petition at Change.org encouraging members of the public to

contact DEA and advocate for Plaintiffs' religious rights.  *See* Dkt. 109 (Fourth Amended Complaint (hereinafter "FAC")) at ¶ 193, 228; Dkt. 94-2.

On September 8, 2019, DEA paid informant Najjar signed up for Plaintiff AYA's email list, and on September 17, 2019, Najjar received links to the NAAVC Change.org petition, that included an early draft of a letter NAAVC sent in January 2020 to the Assistant Administrator for DEA's Diversion Control Division.  FAC ¶¶ 192-93.  As a result of these information gathering efforts of Najjar, DEA became aware of NAAVC's visionary religion activism.  *Id.* The identity of every member of the NAAVC's Board of Directors is a matter of public record in the California Secretary of State's business entity directory, including the name and address of Plaintiff Clay Villanueva.  FAC ¶ 230.

Following up on its Change.org petition, NAAVC exercised its First Amendment rights by sending a formal letter to the Assistant Administrator for the Diversion Control Division. FAC ¶ 125.  The letter was dated January 8, 2020, copied to top lawyers at the DEA, that critiqued the Guidance at length, and implied that litigation would likely ensue if the DEA did not review this substantial burden of the Fee Exercise of Visionary Religion.  FAC ¶¶ 125, 229.

## B. <u>Agent Paddy Develops Animus Toward Plaintiffs and Uses a Confidential Informant to Plant a Tip</u>

Both the DEA and Agent Paddy conceived retaliatory animus towards NAAVC and Villanueva for their activism in promoting the online petition calling on DEA to "Stop Regulating Visionary Religion."  FAC ¶¶ 159 and 195.  Thus, on January 8, 2018, the exact same date as the NAAVC's letter to DEA, Paddy has sworn that he received a call from Najjar on an unidentified (and apparently unrecorded) "DEA tip line," accusing Villanueva of what Agent Paddy characterized as running a DMT lab, which caused him to refer the tip to Kaskavage, the drug lab unit head at HIDTA, who referred it to Shay, to get a search warrant for Villanueva's home, manufacturing probable cause if necessary. FAC ¶ 195.

Najjar is a protected confidential informant receiving compensation and protection from DEA.  FAC ¶ 162.  Additional facts confirm solid grounds for this accusation:

- Najjar has a criminal record in Maricopa County, with an arrest record that includes charges for Assault, Theft, and Preventing or Interfering with a Telephonic Emergency. FAC at ¶167 fn. 55.

2

- Najjar first contacted the Vine of Light Church by email on December 7, 2019.  Najjar signed up on the internet to participate in a two-night Ayahuasca Ceremony using the false name "Rami Joseph."  FAC ¶174.

- Najjar signed up to participate in an Ayahuasca Ceremony scheduled for January 10-11, 2020.  Three days before the ceremony, after he had received all of the information and details about the ceremony, Najjar stated he was no longer able to attend.  FAC ¶ 174.

- Najjar filed for bankruptcy on January 4, 2021, Case No. 2:21-BK-10035-WB (C.D. Cal.) and submitted a 36-month Chapter 13 plan.  FAC ¶185.  With monetary assistance from an unknown source, Najjar was able to dismiss his bankruptcy proceedings on March 1, 2021, and move into the upscale Sherman Oaks Riviera Apartments on March 20, 2021.  FAC ¶¶ 183, 185.

- On March 1, 2021, Najjar was sued by a company called Cirrus, and an individual named Kevin Kim, for "Workplace Violence Prevention" and "Civil Harassment Prevention."  FAC ¶180 fn. 59.  *See also* Cirrus Asset Management, Inc. v. Najjar, Case No. 21STRO01002 (Super. Ct. Cal. 2021); *Kim v. Najjar*, Case No. 21STRO01003 (Super. Ct. Cal. 2021).

- On January 14, 2021, counsel for plaintiffs issued a subpoena for Najjar's deposition and production of documents, and sent a process server to Najjar's last known address where the process server made inquiries regarding Najjar.  FAC ¶ 179.  Soon after, Najjar attempted to conceal his identity by filing a petition in the Santa Monica Courthouse of the Los Angeles Superior Court seeking an official name change.  FAC ¶ 179.  *See also In the matter of Rami Joseph Najjar*, Case No. 21SMCP00015 (Super. Ct. Cal. 2021).

- Najjar has an Arizona driver's license with a listed address in Glendale, Arizona, but at all times relevant to this case was a resident of California.  As a California resident without a California Driver's License, Najjar has been illegally operating a motor vehicle in California in violation of Cal. Veh. Code § 12504(b).  FAC ¶ 167.

- Najjar has been observed driving on the streets of Los Angeles in a black Mercedes SUV (model ML350) with no front or back license plates.  FAC ¶ 184.

- Najjar has been observed being extremely cautious of his surroundings and performing counter-surveillance on the street prior to entering a certain location.  FAC ¶ 184.

- Najjar has over twenty street addresses attached to his name in public records, and has used a large number of different email addresses.  FAC ¶ 167.

- Najjar learned about NAAVC and Villanueva's visionary religion activism through Facebook groups that included posts about the Change.org petition and an outline of the contents of the letter that was eventually sent to DEA on January 8, 2020.  FAC ¶ 192.

3

Najjar's criminal record, his quick recovery out of bankruptcy, his efforts to conceal his identity from Plaintiffs, his cautiousness on the street, and his willingness to flaunt basic traffic laws in California without fear of prosecution, all lend support to the allegation that Najjar is a DEA confidential informant.  In addition, the following facts demonstrate it is plausible that Najjar contacted the Vine of Light Church at the direction of Agent Paddy for the purpose of gathering information and never planned to attend the ceremony in Arizona:

- Najjar's email to the Vine of Light Church came less than three months after NAAVC posted its online petition on Change.org openly challenging DEA.  FAC ¶ 174 fn. 58.

- In his email purporting to express interest in attending an Ayahuasca ceremony hosted by the Vine of Light Church, Najjar lied about his past experience with a shaman.  FAC ¶ 173.

- Najjar was residing in Los Angeles, but rather than try to attend one of the numerous Ayahuasca ceremonies held by churches in California, Najjar registered for a ceremony at the Vine of Light Church which was more than six hours away in Arizona.  Id.

- After weeks of cordial communications with Villanueva, Najjar abruptly became hostile and stated he would not be attending the ceremony.  FAC ¶¶ 174-76.  Najjar's communications with Villanueva ceased on the same day that Agent Paddy alleged passed the tip to Sergeant Micah Kaskavage of the Maricopa County Sheriff's Office.  FAC ¶ 175*; see also* FAC ¶ 159; Dkt. 41-1.

If the tip allegedly received by Agent Paddy was truly anonymous and not planted, it would have been an extraordinary violation of protocol for Paddy to pass along the tip to the Maricopa Sheriff's Office – and communicate the DEA's desire that Villanueva's house be searched – without any investigatory action.  FAC ¶¶ 159, 162, 195.  Paddy did not record the call from Najjar, did not vet the source of the information, did not vet the information itself, and did not enter Villanueva's name into The Narcotics and Dangerous Drugs Information System database.  FAC ¶ 159.  Such flagrant disregard for the truth violated DEA's long-standing policy prohibiting the initiation of criminal investigations based solely on anonymous tips in order to avoid become a vehicle used to cause damage between warring neighbors, lovers, business partners, and others.  FAC ¶ 196.  It is much more likely that Paddy did not investigate Najjar before communicating with MCSO because DEA had a pre-existing relationship with Najjar as a confidential informant, and therefore, indulged in a presumption of validity, as Shay also did.

4

**C.  <u>Alternatively, Agent Paddy Develops Animus Toward Plaintiffs and Capitalizes on a Tip</u>**

Plaintiffs allege in the alternative that even if Paddy did not plant the tip, he utilized it as a vehicle for DEA's retaliatory animus.  FAC ¶ 76, 195.  The following four undisputed or publicly available facts support Plaintiffs' alternative allegation that Paddy utilized Najjar's call as a vehicle for DEA retaliatory animus against NAAVC and Villanueva.

*First*, in Agent Paddy's Declaration filed in this case, he stated that he received a call from an individual with a 310 area code, and that he "forwarded the information to Phoenix Police Department Sergeant Micah J. Kascavage [sic] that same day."  Dkt. 41-1.  The word "forwarded" misleadingly suggests that he transmitted the information to Sergeant Kaskavage by email or other form of one-sided communication.  In fact, Agent Paddy first picked up the phone and spoke to Kaskavage "off-the-record," and then followed-up this phone call with an email.  Dkt. 39-2 (email from Paddy to Kaskavage: "Like always it was a pleasure speaking with you. Below is the information we spoke of.").  Paddy likely felt it was necessary to call and email was so he could provide Kaskavage with directions that he was uncomfortable providing in writing.

*Second,* DEA Agents encourage each other to be cynical about religious ceremonies perceived to be flaunting the rules that DEA agents risk their lives to enforce.  DEA's retaliatory animus, and Agent Paddy's as well, encompassed the intent to chill Villananueva's Free Exercise, to silence his Free Religious Expression, and later to obtain tactical leverage in the pending litigation by placing an NAAVC Board member at risk of prosecution.  FAC ¶ 79.

*Third*, Agent Paddy joined the DEA in 2018 as a GS-1811 Criminal Investigator.  Dkt. 41-1 at ¶ 1.  The starting salary for a GS-1811 Criminal Investigator at Grade 07 is $42,698 per year (exclusive of locality and LEAP adjustments).  According to Office of Personnel Management standards for the 1811 series, Agent Paddy could qualify for the GS-1811 position with either one year of specialized experience OR a grade point average of 2.95 or higher based on 4 years of education or in the final two years of curriculum.  FAC ¶ 163.[1]  At the time Paddy

---

[1]  *See generally* https://www.dea.gov/careers/special-agent/special-agent-quiz (last visited July 20, 2021)).

5

passed the tip to Kaskavage in January 2020, Paddy had worked at DEA for only a short time. FAC ¶ 163.  Due to his lack of experience at DEA and lack of professional experience, Agent Paddy was moved to misuse the tip allegedly called in by Najjar, and whether Najjar revealed or concealed his own malicious intent in lying about Villanueva, Paddy was pleased to exploit it for the improper purpose of teaching NAAVC and Villanueva a lesson about challenging the DEA.

*Fourth*, in 2018 when Paddy became a Special Agent, DEA had two separate "acting" DEA Administrators (Uttam Dhillon, Robert Patterson) and a rotating cast of characters at the upper levels of the Department of Justice.  FAC ¶ 164.  Given Paddy's lack of experience at the DEA, and fact that DEA was going through several periods of transition when he joined, Paddy likely lacked the proper training on: (a) how to react when a group publicly questions the authority of DEA; (b) how to treat religious groups that knowingly violate the CSA in his jurisdiction; and (c) how to handle anonymous tips about Ayahuasca ceremonies.

### D.  Paddy Triggers the Investigation, the Plaintiffs File a Federal Lawsuit, and the Joint DEA/State Task Force Retaliates

After receiving or planting the tip, Paddy triggered the investigation of Villanueva by contacting Sergeant Micah Kaskavage, the supervisor of the Federal/State joint MCSO Arizona High Intensity Drug Trafficking Task Force ("HIDTA").  FAC ¶ 159.  On May 5, 2020, Plaintiffs filed suit in the Northern District of California against officials in the Department of Justice, DEA, and Department of Homeland Security seeking to protect their religious freedom. *See* Dkt. 1.  Less than two weeks later, MCSO Detective Shay procured a search warrant to search Villanueva's church-residence.  FAC ¶ 195.  On May 19, 2020, a Federal/State task force executed an armed raid on the church-residence, arrested Villanueva, and seized his religious sacrament.  FAC ¶ 242.  As a result of this illegal and unconstitutional act, Plaintiffs amended the operative Complaint to add a 42 U.S.C. § 1983 claim against the Federal and State defendants.  Dkt. 12.

While this matter was pending in the Northern District of California, Plaintiffs filed a motion for preliminary injunction.  Dkt 22.  In opposition, DEA attached the declaration of Agent Paddy in which he claimed to have received a tip about the illegal activities of Villanueva.

**PLAINTIFFS' OPPOSITION TO MARCO PADDY'S MOTION TO DISMISS**

Dkt. 41-1.  Paddy admitted in his Declaration that he was aware <u>at the time of the alleged tip</u> that Villanueva conducted "Ayahuasca Ceremonies" and publicly advertised his religious activities on Facebook and through a website.  *Id.*  Despite Agent Paddy's actual knowledge that Villanueva's activities were protected religious activities, he nonetheless instigated the investigation of Villanueva which led to the raid by the State/Federal Task Force and an arrest of the 60-year-old Visionary Church Minister of the Vine of Light Church.  FAC ¶¶ 34, 160, 233.  Upon learning Agent Paddy's role and illegal actions, Plaintiffs added Agent Paddy as a Defendant in this case in the Third Amended Complaint.  Dkt. 77.

### III.    THIS COURT ASSUMES THE TRUTH OF "WELL-PLEADED" FACTS

To survive a motion to dismiss, a party must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Telesaurus VPC, L.L.C. v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing a dismissal for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and construed in the light most favorable to the non-moving party."  *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

Citing *Iqbal*, Paddy urges this Court to treat all of Plaintiffs' factual allegations about Paddy's improper motives and actions as "conclusory and speculative and thus, the Court need not accept them at true."  Dkt. 111 at 9.  Paddy misinterprets the applicable standard and seems to ask the Court to make determinations about whether the facts themselves are plausible and not speculative.  At the Motion to Dismiss stage, *Iqbal* does not invite the Court to review Plaintiffs' well-pleaded contentions about Paddy's misconduct and make determinations.  In fact, with regard to the factual allegations themselves, the rule in the Ninth Circuit is that Plaintiffs could plead their allegations "on information and belief" and still survive a motion to dismiss as long as the other *Iqbal-Twombly* factors are satisfied.  *See Globaltranz Enters. v. Shipper's Choice Glob. L.L.C.*, 2017 U.S. Dist. LEXIS 234215 (D. Ariz. Feb. 23, 2017).

Pursuant to *Twombly* and *Iqbal*, the correct standard is whether the plaintiff's allegations, assumed to be true, have set forth a plausible, not speculative, claim for relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Here, the factual allegations easily surpass the speculative level, pleading factual content beyond labels and conclusions.  *See id.* at 555.  Plaintiffs' claims have facial plausibility, pleading factual content that allows the Court to draw the reasonable inference that Paddy is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 677.

## IV.    *TANZIN v. TANVIR* ALLOWS PLAINTIFFS TO OBTAIN MONEY DAMAGES AGAINST PADDY

The Supreme Court recently decided a case in which respondent Muhammad Tanvir, a practicing Muslim, alleged that FBI agents placed him on the Government's No Fly List in retaliation for his refusal to act as an informant against his religious community.  *See Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).  The Supreme Court held: "RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities."  *Id.* at 493.

## V.    PADDY SUBSTANTIALLY BURDENED PLAINTIFF'S RELIGIOUS FREEDOM

Under the Religious Freedom Restoration Act ("RFRA"), a "substantial burden" is imposed when individuals are "coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions."  *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008).  The Ninth Circuit has repeatedly found that a religious group is "substantially burdened" when a prohibition forces the group to "choose between obedience to their religion and criminal sanction."  *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016).  Here, Paddy intended to substantially burden Plaintiffs' rights to Free Exercise and Free Expression, and Paddy's actions had the desired effect of chilling Plaintiffs' free exercise and pressuring them to abandon plans to hold future religious ceremonies.

### A.   Agent Paddy Intended to Burden Plaintiffs' Free Exercise and Free Expression

The DEA conceived its retaliatory animus for NAAVC when DEA's attorneys and agents learned of the Change.org petition and Letter to DEA advocating the religious rights of NAAVC

PLAINTIFFS' OPPOSITION TO MARCO PADDY'S MOTION TO DISMISS

members.  FAC ¶ 194; Dkt. 94-2.  Whether or not the tip from Rami Najjar was planted, Special Agent Paddy's intent was to use the HIDTA task force to chill Villanueva's Free Exercise and to silence his Free Religious Expression.  FAC ¶ 198.  When Paddy contacted Sergeant Kaskavage on January 8 to pass along the alleged tip, Paddy had <u>actual knowledge</u> that Villanueva's possession and use of Ayahuasca was tied to his religious practice.  Dkt. 39-2 (email from Paddy to Kaskavage stating: "Clay Villanueva conducts Ayahuasca Ceremonies at the Center for Divine Awakenings….").  By initiating a criminal investigation into Villanueva's "Ayahuasca Ceremonies," and expressing DEA's desire for Villanueva's house to be searched, Paddy intended for the HIDTA task force to investigate Villanueva and chill his Free Exercise rights. FAC ¶ 162.  In this way, Paddy's intention was to violate both the spirit and letter of RFRA. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1211-12 (D. Or. 2009).

Paddy did more than simply pass along a tip.  Among other things, Paddy: (1) accused Mr. Villanueva of illegally selling DMT and indicated the DEA's desire for HIDTA to conduct a search of Villanueva's home, FAC ¶ 195; (2) improperly documented and misstated the nature of his communications with Najjar to conceal the retaliatory motive of the investigation, *id.;* (3) failed to enter Villanueva's name into the NADDIS database, which would have alerted Kaskavage and Shay that Villanueva was a represented party and prospective witness in this pending lawsuit, FAC ¶ 196; (4) communicated to Kaskavage that the DEA wished for HIDTA to conduct a search of Villanueva's home, FAC ¶ 195; and (5) caused Sergeant Kaskavage to instruct another member of the task force – MCSO Detective Matthew Shay – to investigate Mr. Villanueva.  *Id.*  In this way, Paddy intended to cause the harm suffered by Clay Villanueva and is directly responsible for Villanueva's arrest, Villanueva's detention without probable cause, and Villanueva's ongoing fear that he will get arrested for practicing his religion.

### B.  <u>Agent Paddy's Actions Did, In Fact, Substantially Burden Plaintiffs' Free Exercise and Free Expression</u>

Agent Paddy was solely responsible for soliciting or transmitting the tip from Najjar and communicating DEA's desire that Villanueva's house be searched to other members of the joint Federal/State HIDTA task force.  FAC ¶ 195.  These actions led directly to the armed raid on

9

Villanueva's church-residence and the seizure of his Ayahuasca sacrament.  FAC ¶¶ 34, 233.
Through discovery, Plaintiffs will learn the additional instructions that Paddy provided to the
Maricopa County Sheriff's Office about the Villanueva case.  At the pleadings stage, it is
sufficient to allege – for the purposes of alleging conspiracy – the extraordinary coincidence that
just two weeks after Plaintiffs filed the instant complaint in Federal court against the DEA,
MCSO Detective Shay acted on stale four-month-old tip and engaged in judicial deception to
obtain a warrant to search against Villanueva.  FAC ¶¶ 162. 167-68.[2]

Paddy substantially burdened Plaintiffs' free exercise by passing along the tip and
communicating DEA's desire that Villanueva's house be searched.  Paddy's actions put NAAVC
and its membership on notice that the DEA will support and encourage investigations of
"Ayahuasca Ceremonies."  Dkt. 39-2 (email from Paddy to Kaskavage); FAC ¶¶ 222, 224, 260.
Paddy also substantially burdened Plaintiffs' religious exercise by pressuring them to abandon
their plans to hold future Ayahuasca Ceremonies.  *See Guam v. Guerrero*, 290 F.3d 1210, 1222
(9th Cir. 2002) (finding a substantial burden is created when enforcement of a law "results in the
choice to the individual of either abandoning his religious principle or facing criminal
prosecution."); *see also United States v. Boyll*, 774 F. Supp. 1333, 1341 (D.N.M. 1991)
(concluding that a regulation restricting peyote use would substantially burden sincerely held
religious beliefs because of the importance peyote played in the religion practiced by the
defendant.).  Plaintiffs seek declaratory relief under RFRA because Paddy's actions on the
Villanueva matter constitute an ongoing and continuing threat to the religious rights of NAAVC
members.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (locating a
"substantial" threat of future prosecution in a "history of past enforcement").

Paddy mistakenly relies on *Stevenson v. Koskey*, 877 F.2d 1435 (9th Cir. 1989), a case
decided four years <u>before</u> Congress enacted RFRA, to argue that Plaintiffs cannot establish the
causal link necessary to support their RFRA claim.  Dkt. 90 (Paddy Motion to Dismiss) at 9-10.
The *Stevenson* case is inapposite, and Paddy does not cite a single case that applies the *Stevenson*

---

[2] Plaintiffs address the judicial deception in detail in their Opposition to the Motion to Dismiss filed by
Defendants Maricopa County.  Dkt. 95.

**PLAINTIFFS' OPPOSITION TO MARCO PADDY'S MOTION TO DISMISS**

factors to a RFRA claim.  Contrary to Paddy's assertions, Federal courts that have addressed the issue have held that "[c]ommon law principles of causation, however fundamental to our legal heritage, are simply too unreliable a light to guide RFRA's substantial-burden analysis."  *Eternal Word TV Network, Inc. v. Sec'y of the U.S. HHS*, 818 F.3d 1122, 1188 (11th Cir. 2016) (vacated and remanded on other grounds).  "Reading into RFRA some sort of proximate-cause limitation would reintroduce the exact same 'attenuat[ion]' argument rejected by the Supreme Court in *Hobby Lobby* for 'dodg[ing] the question that RFRA presents.'"  *Id.* (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014)).  Indeed, as Justice Alito pointed out in *Hobby Lobby*: "***the results would be absurd if RFRA***, a law enacted to provide very broad protection for religious liberty" was interpreted using pre-RFRA caselaw in a way that narrowed and ***restricted claims to protect religious liberty***."  *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 715-16 (2014) (emphasis added).

Rather, as the Eighth Circuit has observed in conjunction with a RFRA claim, the alleged injury need only be "fairly traceable" to a defendant for causation purposes:

> An injury may be "fairly traceable" to a defendant for causation purposes even when that defendant's actions are not "the very last step in the chain of causation."  *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997)).  "While . . . it does not suffice if the injury complained of is 'th[e] result [of] the *independent* action of some third party not before the court,' that does not exclude injury produced by determinative or coercive effect upon the action of someone else."

*Wieland v. U.S. HHS*, 793 F.3d 949, 954 (8th Cir. 2015).

Here, Plaintiffs allege that Paddy conceived and communicated retaliatory animus toward NAAVC and Villanueva for their activism in promoting the online petition.  FAC ¶ 159.  Plaintiffs further allege that Paddy communicated to the Maricopa Sheriff's office the DEA's desire to search Villanueva's church-residence.  FAC ¶ 195.  Thus, Paddy set in motion a chain of events that led to the reasonably foreseeable outcome that Villanueva's church-residence would be searched and his free exercise would be substantially burdened.

### C.  Plaintiffs Have Demonstrated a Causal Relationship

The fact that Paddy himself did not procure the search warrant or take part in the raid does not somehow break the causal connection or shield Paddy from liability under RFRA.

11

Paddy triggered the investigation and gave direction to Sergeant Kaskavage, and then did nothing to prevent the logical outcome of his communications, and therefore is liable under RFRA for causing the foreseeable result of burdening Plaintiffs religious rights.

Causation in this case will ultimately be a question for the finder of fact to decide.  *See Farr v. N.C. Mach. Co.*, 186 F.3d 1165, 1171 (9th Cir. 1999) ("As the Supreme Court emphasized, '[t]he issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder, subject to limited review.'").  More importantly, however, although an independent act may break the causal chain of negligence liability, this rule does not apply to the consequences of co-conspirator acts and intentional misconduct by law enforcement.  *See Smiddy v. Varney*, 803 F.2d 1469, 1471-73 (9th Cir. 1986) (recognizing that knowing misstatements by police could . . . extend the chain of causation").

## VI.   PADDY IS NOT ENTITLED TO QUALIFIED IMMUNITY

### A.   Paddy is Not Entitled to Raise Qualified Immunity under § 1983 at the Motion to Dismiss Stage

"Nothing in the language or legislative history of § 1983, suggests that . . . a plaintiff must allege bad faith in order to state a claim for relief.  By the plain terms of § 1983, two – and only two – allegations are required in order to state a cause of action under that statute.  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980).  Here, Plaintiffs have made both of the required allegations: they have alleged that Agent Paddy's actions and inactions violated his First and Fourteenth Amendment rights, and that Agent Paddy acted under the color of Arizona law. As such, Paddy is not entitled to qualified immunity under § 1983 at the motion to dismiss stage.

### B.   Paddy Personally Participated in the Violation of Villanueva's Rights

Paddy argues that he is entitled to qualified immunity because "he did not personally participate in the alleged RFRA violations."  Dkt. 90 at 12-13.  This assertion is contradicted by the well-pleaded allegations in the complaint.  Specifically, Plaintiffs allege:

> Agent Paddy conceived and communicated retaliatory animus toward NAAVC and Villanueva for their activism in promoting an online petition calling on the DEA to "Stop Regulating Visionary Religion," and for initiating this litigation

12

against the DEA.  Agent Paddy acted with conscious indifference toward the Fourth Amendment rights of Villanueva by passing a tip to Micah Kaskavage ("Kaskavage"), a Phoenix Police Department officer detailed to the HIDTA Arizona SW Task Force, accusing Villanueva of selling DMT.  Agent Paddy averred in Docket # 41-1 that the basis for the accusation was a phone call to a DEA tip line from a person in the 310 area-code who wanted to remain nameless, but left his phone number.  Agent Paddy did not disclose the name of the caller in his email to Kaskavage, but provided the telephone number.

FAC ¶ 159.

Paddy shares responsibility for the RFRA and Section 1983 violations because he knowingly and willfully triggered an enforcement action with the intent to: (a) retaliate against NAAVC for petitioning the Government for redress of grievances, and (b) coerce Villanueva and NAAVC members into abandoning their religious practice.  FAC ¶ 195, 122.  According to the Ninth Circuit, "[t]he qualified immunity test 'does not rule out the need to inquire into the actual reasons behind an official's conduct when the official's state of mind is a necessary component of the constitutional violation he allegedly committed.'"  *Gonsalves v. Gallegos*, 1993 U.S. App. LEXIS 11805, at *4 (9th Cir. May 14, 1993) (quoting *Feliciano-Angulo v. Rivera-Cruz*, 858 F.2d 40, 45 (1st Cir. 1988)); *see also Gutierrez v. Mun. Court of Se. Judicial Dist.*, 838 F.2d 1031, 1051 (9th Cir. 1988) (qualified immunity unavailable because "where the lawfulness of a challenged act is dependent upon the actor's motive or intent, the purpose for which the act was undertaken must be analyzed") (vacated as moot by *Municipal Court of Southeast Judicial Dist. v. Gutierrez*, 490 U.S. 1016 (1989)); *Morse v. S.F. Bay Area Rapid Transit Dist., No.: 12-cv-5289 JSC*, 2014 U.S. Dist. LEXIS 17369 (N.D. Cal. Feb. 11, 2014) (qualified immunity inapplicable because whether the officer retaliated against the journalist for his protected speech was a question of disputed fact).

Paddy admits he helped create false information he sent to Kaskavage with the implication that Villanueva was running a DMT lab under cover of Ayahuasca ceremonies.  Dkt. 41-1. Qualified immunity is unavailable at this stage of the proceedings because Paddy's motive for generating and publishing misinformation is a disputed fact that forms one basis for Plaintiffs' RFRA and §1983 claims.  *See Gutierrez*, 838 F.2d at 1051 (qualified immunity

13

unavailable because when the "lawfulness of a challenged act is dependent upon the actor's motive or intent, the purpose for which the act was undertaken must be analyzed").

Agent Paddy didn't tell Kaskavage that Najjar was a confidential informant in his email. A report by the Department of Justice's Office of Inspector General (hereinafter "OIG Report") showed that this type of misconduct is rampant within DEA.  FAC ¶ 188.  Among other things, the OIG Report found problems related to DEA's oversight of confidential sources the agency categorizes as "Limited Use" informants, often referred to as "tipsters."  FAC ¶ 189.[3]  The OIG found that Special Agents commonly choose not to disclose that their information came from a confidential informant.  FAC ¶ 190.[4]  The OIG also found that DEA's practices with regard to Tipsters "call into question whether the source was truly providing information independently or acting as DEA's agent."  FAC ¶ 191.  Based on this history documented by the OIG, it is plausible that Najjar was a paid "Limited Use" confidential source and that – consistent with the misconduct identified by the OIG – Agent Paddy chose not to identify Najjar as an informant in the case file.  Plaintiffs are entitled to an opportunity to develop facts establishing the improper relationship between Paddy and Najjar, and Paddy's true, unlawful motives for publishing a lie.

## C.  Paddy's Conduct Violated Clearly Established Law

Paddy is not entitled to qualified immunity because Paddy's conduct violated clearly established law.  *First*, Paddy's conduct violated the clearly established law that sincere religious groups may practice their religion by ingesting Ayahuasca.  *See, e.g. O Centro Espirita Beneficente União do Vegetal¸ 546 U.S.* 418, 434 (2006); *Church of the Holy Light of the Queen*, 615 F. Supp. 2d 1210.  In this very case the Department of Justice has disclaimed an intent to prosecute individuals who use Ayahuasca use for their religious practice.  Dkt. 86 at 8 (stating that Plaintiffs face no genuine threat of prosecution and noting there has not been "a single federal criminal prosecution related to ayahuasca, which is telling given there is a 'community'

---

[3] According to the Report, tipsters were some of the highest paid DEA confidential sources.  FAC ¶ 189.

[4] Special Agents reported to the OIG that "they do not always mention the confidential sources' contributions because the DEA hopes to minimize exposure of the confidential source in the event that the DEA-6 must be provided for legal proceedings."  FAC ¶ 190.

of organizations of and people using ayahuasca….").  Thus, Paddy's conduct and initiation of the investigation into Villanueva is a dramatic departure from clearly established law and DEA practice for the last twelve years.

*Second*, Paddy's conduct violated Plaintiffs' clearly established right to be free from retaliatory arrest for protected speech.  *See, e.g.,* N*ieves v. Bartlett,* 139 S. Ct. 1715, 1722 (2019); *Ford v. City of Yakima*, 706 F.3d 1188, 1195-96 (9th Cir. 2013); *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006); *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1136 (D. Ariz. 2013).  Plaintiffs engaged in constitutionally protected conduct in the form of petitioning the government for redress of grievances, FAC ¶ 68, and Paddy initiated the investigation of Villanueva to deter Villanueva and NAAVC from exercising their constitutional rights.  FAC ¶ 228, 257.  Importantly, Paddy moved the investigation forward and contacted HIDTA notwithstanding the fact that DEA agents typically exercise their discretion not to investigate those engaged in Ayahuasca ceremonies.  Dkt. 49 at 12; Dkt 86 at 8.  Because Paddy violated Plaintiffs' clearly established First Amendment rights he is not entitled to qualified immunity.

*Third*, Paddy's conduct violated Plaintiffs' clearly established right to be free of investigatory tactics and fabrication of evidence which substantially burden religious exercise. *See, e.g.,* D*evereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir. 2001) (recognizing "a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government"); *Arden v. Kastell*, 553 F. App'x 697, 698 (9th Cir. 2014) (finding issue of fact existed whether detective violated plaintiff's due process rights by falsifying a police report); *Mockaitis v. Harcleroad*, 104 F.3d 1522 (9th Cir. 1997) (overturned on other grounds by City of Boerne v. Flores, 521 U.S. 507 (1997)); *In re Grand Jury Empaneling of the Special Grand Jury*, 171 F.3d 826 (3d Cir. 1999). Here, Plaintiffs have the Fourth Amendment right to be free from Paddy's unconstitutional investigatory tactics intended to chill Villanueva and NAAVC's religious free exercise.

## VII.   PADDY ACTED UNDER THE COLOR OF STATE LAW FOR THE PURPOSES OF 42 U.S.C. §1983

To determine whether a person acts under state law, courts look to the totality of the circumstances and then consider the following two factors:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by rule of conduct imposed by the State or by a person for whom the State is responsible. * * * Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

In applying these factors to joint task forces like HIDTA, courts look beyond the label of an officer's authority and consider the circumstances surrounding his or her acts to determine whether they were taken under the color of state law, federal law, or both.  *See, e.g., Couden v. Duffy,* 446 F.3d 483, 399 (3d Cir. 2006); *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976). *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 534–35 (M.D.N.C. 2008); *Adams v. Springmeyer*, No. 11-790, 2012 U.S. Dist. LEXIS 71136, at *5-6 (W.D. Pa. May 22, 2012). Courts in the Third and Fifth Circuits have held that an officer may act under color of both state and federal law.  *See Johnson v. Orr*, 780 F.2d 386, 392 (3d Cir. 1986); *NeSmith v. Fulton*, 615 F.2d 196 (5th Cir. 1980).

In this case, Agent Paddy significantly participated in the infringement of Plaintiffs' civil rights by initiating the process of investigating Villanueva to satisfy the retaliatory animus of the DEA and officials within the DEA.  FAC ¶ 160.  Paddy then communicated to Kaskavage that the DEA wished for HIDTA to conduct a search of Villanueva's home.  FAC ¶ 195.  All of the actions by the State actors in this case were contemplated, intended, and furthered by Agent Paddy's initiating the investigation of Villanueva from a retaliatory motive.  FAC ¶ 233.  Paddy may fairly be said to be a state actor in that he acted together and obtained significant aid from state officials, and because his conduct may be otherwise fairly chargeable to the State.  *See Motley v. Parks*, 432 F.3d 1072, 1076-77 (9th Cir. 2005) (analyzing action brought against law enforcement officers who participated in a combined state and federal gang task force under § 1983) (overruled on other grounds by United States v. King, 687 F.3d 1189 (9th Cir. 2012)); *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979) (federal law enforcement officers who conspired with the Chicago Police Department in a raid on the Black Panther Party, acted under

16

"color of state law" because the action was the "joint product of the exercise of a State power and of a non-State power" and the State and its officials played a 'significant' role in the result."); *see also Reynoso v. City & Cnty. of S.F.*, No. 10-00984, 2012 U.S. Dist. LEXIS 25584 (N.D. Cal. Feb. 28, 2012) (finding plaintiffs sufficiently alleged a symbiotic relationship between policy officers and ATF agents engaging in a search of plaintiff's residence to claim liability under section 1983.").

Even assuming that Paddy was at all times acting as a federal official, he is not precluded from acting under "color of state law."  The Ninth Circuit has explicitly ruled that a §1983 claim may be brought against a federal official if that official did "conspire with or participate in concert with state officials, who, under color of state law, act to deprive a person of protected rights."  *Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir. 1983).  Here, Plaintiffs have specifically alleged that Paddy engaged in a conspiracy to violate Villanueva and NAAVC's constitutional rights.  FAC ¶ 234, 237, 239, 240.  Moreover, Plaintiffs have alleged that Paddy engaged in said conspiracy with a variety of other actors who acted under color of state law – to include Sergeant Kaskavage and Deputy Shay.  As such, Plaintiffs have stated a cognizable claim against Paddy even if he is found to have been acting as a federal official.

## VIII.  CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant Paddy's Motion to Dismiss.  From an abundance of caution, Plaintiffs further request leave to file a Fifth Amended Complaint, should this Court ascertain pleading defects requiring cure.

July 20, 2021        _        /s/John Sullivan_____
                              JOHN SULLIVAN
                              CSB#204648
                              10857 Kling Street
                              North Hollywood, California 91602
                              Tel:818-769-7236 Fax:818-301-2175
                              Email:Sullivan.John84@gmail.com

                              *Pro Hac Vice* Attorney for Plaintiffs Arizona Yagé Assembly,
                              North American Association of Visionary Churches, Clay
                              Villanueva, and Vine Of Light Church

17