Jeffrey S. Leonard (No. 3809)
Jeffrey.Leonard@SacksTierney.com
Evan F. Hiller (No. 28214)
Evan.Hiller@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
*Attorneys for Defendants Maricopa County
and Matthew Shay*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>Merrick Garland, et al.,<br><br>  Defendants. | Case No. 20-cv-02373-PHX-ROS<br><br>**DEFENDANTS MARICOPA COUNTY AND MATTHEW SHAY'S REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>(Oral Argument Requested) |

Defendants Maricopa County (the "County") and Matthew Shay ("Shay") (collectively, the "County Defendants") hereby reply to Plaintiffs' Opposition (Doc. 117) to the County Defendants' Motion to Dismiss (Doc. 110) (the "Motion") the Fourth Amended Complaint (Doc. 109) (the "FAC" or the "Complaint").

For the reasons stated in the Motion and below, the FAC and this action should be dismissed as to the County Defendants.

**I.   Introduction**

As explained in the Motion, Plaintiffs' state-law damages claims against Shay are barred by Arizona's notice of claim statute, A.R.S. § 12-821.01, and have been abandoned. Plaintiffs' federal action under § 1983 cannot proceed because Shay is entitled to qualified immunity, and Plaintiffs' allegations that Shay violated clearly established federal law are all comprehensively disproven by the actual contents of the search warrant affidavit that Shay submitted.[1]  That affidavit clearly establishes that the "nine false or misleading

---
[1] Plaintiffs do not dispute that this Court can consider the affidavit, which is integral to their claims, is part of the record in this case, and is cited and relied upon by both the Motion and the Opposition.

statements" identified in the Opposition are not false, are not misleading, and are not material. Finally, Plaintiffs fail to state a plausible claim against Shay for declaratory and/or injunctive relief.

Plaintiffs seek to link Villanueva's alleged injuries to official County policy or custom by relying upon purported unlawful policies implemented by former Sheriff Arpaio, which are no longer in effect and are unrelated to the alleged injuries; accordingly, Plaintiffs' § 1983 and state-law claims against the County are futile. Plaintiffs fail to distinguish *Fridena* or argue persuasively that it is no longer good law, foreclosing any state-law claims based on County supervision or control of MCSO deputies. And Plaintiffs entirely fail to plausibly allege any link between a County policymaker, policy, or custom and the ***state law*** prohibition on DMT that allegedly infringes on Plaintiffs' religious rights.

## II.   Plaintiffs Fail to State a Claim against Shay

As noted in the Motion, and as Plaintiffs dispute only as to the Arizona Free Exercise of Religion Act ("FERA") claim, all of Plaintiffs' state-law damages claims against Shay were barred by A.R.S. § 12-821.01 and have been abandoned.

### A.   The County Defendants Moved to Dismiss the FERA Claim

Plaintiffs claim that "Shay does not move to dismiss Plaintiffs' FERA claims against him." Opp. at 6. This is simply untrue. In moving to dismiss the prior version of the complaint, the County Defendants argued that A.R.S. § 12-821.01 bars ***all*** of Plaintiffs' state-law claims against Shay. *See* Doc. 85 at 3 ("Because Plaintiffs did not strictly comply with A.R.S. § 12-821.01, Plaintiffs' state-law claims (Counts IV through IX) against Shay are barred."). Plaintiffs then abandoned their prayer for damages against Shay entirely, seeking to immunize their state-law claims from A.R.S. § 12-821.01 by seeking only injunctive and declaratory relief. *See* Doc. 95 at 16-17[2]; Doc. 100-2 at 93-94. Because FERA is a ***state*** law, Plaintiffs' claim for damages under FERA is equally barred by the

---

[2] Page citations herein are to the blue page numbers applied to documents by the Court's ECF system. For example, this particular citation is to ECF pages 16 and 17 of the Opposition to the County Defendants' Motion to Dismiss the Third Amended, which are internally numbered as pages 14 and 15.

2

failure to serve a notice of claim on Shay.³

Additionally, Plaintiffs' FERA claim against Shay necessarily fails because Shay is not a "government" or "political subdivision" to which FERA applies. *See* A.R.S. §§ 41-1493(3), (6); *Al Saud v. Lamb*, No. CV 18-04890-PHX-SPL (JFM), 2020 WL 1904619 at *6 (D. Ariz. Apr. 17, 2020).

### B. Qualified Immunity Is Relevant and Timely

Plaintiffs argue that "[w]hether Shay has qualified immunity is not relevant to the existence of Plaintiff's cause of action." Opp. at 6. However, "immunity from suit is more than a mere defense to liability" and "policy considerations favor a liberal application of immunity"; accordingly, courts can grant dismissal of a § 1983 suit for failure to state a claim based on a qualified immunity defense. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999) (internal quotation marks and citations omitted). *Accord Bettin v. Maricopa Cty.*, No. CIV 04-02980-PHX-MEA, 2007 WL 1713319, at *9 (D. Ariz. June 12, 2007).

Plaintiffs rely upon a mischaracterization of *Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980), a case which is not apposite here. In *Gomez*, the Supreme Court considered whether the ***plaintiff*** "was required to plead as part of his claim for relief that, in committing the actions alleged, [defendant] was motivated by bad faith." *Id.* at 637. The Supreme Court reversed dismissal of the claims, finding that "[s]ince qualified immunity is a defense, the burden of pleading it rests with the defendant." *Id.* at 640. Shay has properly raised the defense of qualified immunity. *See* Motion at 3-7. It is not entirely clear what Plaintiffs mean in asserting that "qualified immunity is not relevant to the existence of Plaintiff's cause of action," but it is undeniably relevant to whether Plaintiffs' claims must be dismissed and it is appropriate for this Court to consider at this stage of the case.

### C. Shay Is Entitled to Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

³ Plaintiffs' FERA claim and other state-law claims also fail to state a plausible claim for injunctive and declaratory relief. *See* Motion (Doc. 110) at 8-9; Parts II.D and III.D, *infra*.

3

3079613.v2

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The Complaint must therefore allege sufficient facts constituting a plausible claim that Shay violated clearly established federal law. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). None of the supposed violations of clearly established federal law discussed in the Opposition reach this standard.

### 1. Judicial Deception

Plaintiffs assert that the Complaint "need only contain non-conclusory allegations that the defendant knowingly included false statements in the affidavit or did so with reckless disregard." Opp. at 7 (internal quotation marks and citation omitted). More is required. Plaintiffs must also establish materiality, *i.e.*, "that without the dishonestly included or omitted information, the warrant would not have issued." *Morley v. Walker*, 175 F.3d 756, 760 (9th Cir. 1999).

The nine supposedly false or misleading statements that Plaintiffs allege do not rise to this standard. Plaintiffs' first three alleged misrepresentations all relate to the DEA tip, but the search warrant affidavit—and probable cause for the search—relied upon the information Shay discovered when *investigating* the tip, *not* on the tip itself. The fourth "omission," of Villanueva's connection to a lawsuit against the DEA, was not known to Shay; Plaintiffs did not even *attempt* to serve the lawsuit until May 21, 2020—several days *after* the search warrant was executed. *See* Proof of Service (Doc. 11). The fifth "omission"—that *Shay* failed to enter Villanueva into a database—is inconsistent with the cited portions of the Fourth Amended Complaint, which accuse *Agent Paddy* of failing to document information. *See* Opp. at 8-9 (citing FAC ¶¶ 166, 181). The sixth and ninth alleged misrepresentations—that Shay knew Villanueva was not manufacturing DMT but concealed that—are not supported by the record. Villanueva *did* hide his trash, as explained in the affidavit; there was ample evidence of Villanueva's possession and distribution of

4

ayahuasca; and ayahuasca is commonly manufactured from component plants that have been imported into the United States. Doc. 39-3 at 17. Rather than ***knowing*** the DMT had already been processed off-site,[4] Shay reasonably inferred that the manufacturing might be occurring at Villanueva's residence. The seventh "misrepresentation" equating Ayahuasca and DMT is not false at all; Ayahuasca tea contains DMT. *See Gonzales v. O Centro Espirita Benficente Uniao do Vegetal*, 546 U.S. 418, 438 ("*Hoasca* is a 'solution or mixture' containing DMT; the fact that it is made by the simple process of brewing plants in water, as opposed to some more advanced method, does not change that."). Finally, and as noted in the Motion, the "misleading" impressions about Villanueva's religious sincerity or him being a "drug dealer" are either immaterial or not misleading at all.

Two additional points require elaboration. First, Plaintiffs profoundly misunderstand *Illinois v. Gates*, 462 U.S. 213, 239 (1983). In that case, the Supreme Court upheld a search warrant based on an anonymous letter that, standing alone, would not suffice to provide probable cause. *Id.* at 227. Instead, probable cause was supplied by an independent police investigation that substantially ***corroborated*** the ***allegations*** made in the anonymous letter. *Id.* at 226-27. Thus, what *Gates* requires is not the "verification of anonymous tips" through investigation or revelation of the ***identity*** of the tipster. Rather, *Gates* requires investigation to verify the ***information*** in the tip, which is exactly what Shay did when he searched social media and secured a subpoena for Villanueva's PayPal records to confirm that the ayahuasca ceremonies were being held as alleged in the tip.

Second, Plaintiffs claim that Villanueva "operated a lawful, state-licensed cannabis-growing operation." Opp. at 11; FAC ¶ 243. This conclusory allegation does not negate the extensive evidence documented in the search warrant, all of which is consistent with Villanueva having fraudulently obtained caregiver growing privileges, cultivating marijuana in quantities far exceeding any such privileges, and selling marijuana—none of which are lawful or protected under Arizona law. *See* Doc. 39-3 at 17-34.

---

[4] Note that even knowing Villanueva was not manufacturing the ayahuasca / DMT at his home would not negate probable cause to believe Villanueva was committing the criminal offenses of ***possession*** and ***distribution*** of DMT.

3079613.v2

### 2. Fabrication of Evidence

The affidavit contains **no** statements regarding the number of marijuana plants being grown by Villanueva, much less a number based on "smell evidence," the only supposedly fabricated evidence posited in the Opposition. And Plaintiffs' allegation that Shay "knew or should have known that the accusations by Najjar and Agent Paddy were false" is refuted by the affidavit, which contains information corroborating many aspects of the tip. This half-hearted argument, citing only to ¶ 243 of the FAC (describing the "tactical goals" of the raid), does not create a plausible claim for fabrication of evidence.

### 3. Retaliatory Animus

As noted in the Motion, **Shay** is never alleged to have himself been motivated by or even aware of retaliatory animus. *See* Motion at 5-6; FAC ¶¶ 159, 160, 228, 232, 239. Moreover, given that this lawsuit was not served until **after** the raid—**four months** after the investigation began—and that Shay is alleged **not** to have been "alerted" to Villanueva's connection to NAAVC, *see* FAC ¶ 166, any retaliatory animus claim against Shay is simply not plausible.

### 4. Free Exercise

Plaintiffs' free exercise claim is based exclusively on two allegations: that Shay was familiar with the *O Centro Decision* and that he knew Villanueva's activities were sincere. Opp. at 14. As explained in the Motion, however, *O Centro* does **not** immunize Plaintiffs' activities here from enforcement of state laws illegalizing the possession, manufacture, and sale of DMT—much less Villanueva's extensive illegal marijuana-related activity.

### 5. Unreasonable Seizure

*Bettin v. Maricopa County*, on which Plaintiffs rely, notes that "Plaintiff's detention outside her residence in her nightgown, notwithstanding her request to dress, while boorish and unprofessional, did not exceed the scope of detention authorized by [*Michigan v.*] *Summers*[, 452 U.S. 692 (1981)]." 2007 WL 1713319 (D. Ariz. June 12, 2007), at *11. Temporary detention of Mr. Villanueva to prevent him from destroying evidence or interfering in a valid search is not contrary to clearly established law.

### D. Injunctive and Declaratory Relief Claims against Shay Fail

Plaintiffs do not plausibly allege an imminent threat of irreparable harm from further criminal investigatory actions by **Shay**. *See* Mot. at 8, 14-16. Similarly, a declaration against Shay individually would serve no useful purpose. *Id.* at 8-9.

## III. Plaintiffs Fail to State a Claim against the County

### A. Plaintiffs Fail to State a § 1983 Claim against Maricopa County

Plaintiffs concede that the County can be liable only if the allegedly unconstitutional acts were caused by an official County policy or custom. Opp. at 16. Plaintiffs then argue that "actions by Shay and the MCSO demonstrate that the customs and policies of Maricopa County … during the Arpaio era are still very much in place." *See* Opp. at 16 (quoting *United States v. Maricopa County*, 889 F.3d 648, 651 (9th Cir. 2018). This argument has two fatal flaws.

First, Plaintiffs fail to link their alleged injuries to a *current* policy or custom. Plaintiffs rely on the court-ordered injunction in *Melendres v. Penzone*, arguing that "[t]he most recent court-ordered report on MCSO's performance in the area of traffic stops showed that MCSO deputies continue to be tainted by unconstitutional bias that results in conducting a disproportionate number of traffic stops of people of color." FAC ¶ 235. It is not clear which "most recent" report Plaintiffs sought to reference, but the *relevant* report discussing "activities that occurred during the second quarter of 2020, April 1-June 30, 2020" is the Twenty-Fifth Report of the Special Monitor. *Melendres v. Penzone*, No. CV-07-02513-PHX-GMS, Doc. 2569 (D. Ariz. Nov. 16, 2020). In that report, the court-appointed monitor concluded that MCSO was "In Full and Effective Compliance" with the requirement to "promulgate a new, department-wide policy or policies clearly prohibiting Discriminatory Policing and racial profiling." *Id.* at 16. The monitor also found MCSO "in compliance" with requirements for bias-free traffic enforcement. *Id.* at 20-21.

Second, there is no causal connection between Villanueva's alleged injuries and even the *Arpaio-era* policies alleged. Villanueva was the subject of a search warrant for drug-related offenses; the unconstitutional policies that Plaintiffs allege in the FAC all relate to

7

racially motivated traffic stops. It is not plausible that racially discriminatory traffic stop policies—even if in place, which they were not—bore any relationship to Plaintiffs' alleged injury, much less that they directly caused that injury.

### B. *Fridena* Remains Valid Law

Plaintiffs' state law claims are barred by *Fridena v. Maricopa County*, 18 Ariz. App. 527 (1972), and its progeny, as cited on multiple occasions in this District. Plaintiffs argue that the County's "reliance on *Fridena* fails for two reasons." Opp. at 18-19. They argue, first, that "the *Fridena* decision only makes sense if it is limited to the specific duty (serving a writ of restitution) at issue in that case" and, second, that "the Arizona Court of Appeals quietly overruled *Fridena* in *Flanders v. Maricopa County,* 203 Ariz. 368 (Ct. App. 2002)…." *Id.* The first argument makes no sense and is insupportable; the second is untrue.

First, "[t]he source of the right sued upon, not the ground on which federal jurisdiction is invoked, determines whether federal or state law applies." *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 915 (9th Cir. 1980). Thus, "a federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726; *Mangold v. California Pub. Utils. Comm'n,* 67 F.3d 1470, 1478 (9th Cir.1995) ('The *Erie* principles apply equally in the context of pendent jurisdiction.')." *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 (9th Cir. 2000).

The law of the State of Arizona has been articulated by the *Fridena* court and by later cases applying *Fridena*. An intermediate state appellate court decision is a "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982), following and quoting from *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced

8

by other persuasive data that the highest court of the state would decide otherwise.").

Plaintiffs' suggestion that *Fridena* should be limited to its particular facts is not supported by its subsequent history and is not "persuasive data." The County Defendants' Motion to Dismiss identified eleven cases in this Court, decided by eleven different judges, dismissing state law claims against several counties based on allegations of acts of deputy sheriffs, none of which involved the service of a writ of restitution. *See* Mot. at 10. The County also identified in its Motion the comments of Judge Wake in *Donahoe v. Arpaio*, CV10-2756-PHX-NVW, 2011 WL 5119008 (D. Ariz. Oct. 28, 2011), questioning but not deciding the correctness of *Fridena*. Plaintiffs cite this case alone. It is inexplicable why Plaintiffs would discuss a case in which one of this District's judges questioned, without deciding, the holding of *Fridena*, but do not even mention, no less discuss, the numerous cases in this District ***applying*** *Fridena*.

Not only do Plaintiffs ignore the many cases, in Arizona state courts and in this Court, applying *Fridena*, they actually make arguments that are directly contradicted and disposed of by those cases. They argue, for example, that "[a]ll acts by Shay and Maricopa County were either authorized or ratified by the County because it took no disciplinary action against Shay and said deputies for the matters alleged in the Third [*sic*.] Amended Complaint." Plaintiffs thus argue that the County can be faulted for failing to do that which it has no power to do. The power of the County to discipline sheriff's deputies is the subject of and is discussed and expressly rejected by the court in *Hounshell v. White,* 220 Ariz. 1 (App. 2008). In *Hounshell,* Apache County, through its County Manager, disciplined a deputy sheriff by means of a thirty-day suspension without pay. The Apache County Sheriff filed a Special Action against the County Manager and the Apache County Board of Supervisors, "challenging [the] suspension and seeking a declaration that only [the Sheriff] had the authority to discipline classified employees in the Sheriff's Office." 220 Ariz. at 2. The Court of Appeals held that "the Sheriff is the sole appointing authority with respect to his or her deputies and other classified employees," that "A.R.S. § 11–356(A) – which permits only the 'appointing authority' to dismiss, suspend, or reduce in rank – by its plain

9

terms does not confer such authority upon the Board or its agent, the County Manager," and that "[b]ecause our legislature has not expressly granted a county board of supervisors the power to discipline the classified employees of other county officers, we may not – and do not – find such authority by implication." 220 Ariz. at 5.

Just as Plaintiffs ignore all cases except ones that have comments they like, they ignore case law directly contradicting points they try to make. Keeping in mind the admonition of the Ninth Circuit that a decision of the state's intermediate appellate court is "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise," Plaintiffs' argument falls far short.

Nor has *Fridena* been overruled by *Flanders v. Maricopa County,* 203 Ariz. 368 (App. 2002), either "quietly" as Plaintiffs suggest, or otherwise. In *Flanders*, the trial court had granted summary judgment in favor of the County on Plaintiff's 42 U.S.C. § 1983 federal civil rights claim, but, as to the County (and others), instructed the jury on Plaintiff's gross negligence claim. Whether a cause of action against the County for gross negligence properly existed was not raised as an issue on appeal; the court's opinion contains no discussion of the issue; and *Fridena* is not mentioned anywhere in the opinion.[5] As to the County, the issue addressed by the Court of Appeals was whether summary judgment had been properly granted on the section 1983 claim, and the Court of Appeals concluded, based on a classic *Monell* analysis, that it had not. 203 Ariz. at 377-78; *see Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986); *City of Phoenix v. Yarnell,* 184 Ariz. 310 (1995) (all cited by the court in *Flanders*).

Finally, this Court's order denying the County's motion to dismiss in *United States v. Maricopa County, Ariz.*, 915 F.Supp.2d 1073 (D. Ariz. 2012), lends no support to Plaintiffs' position. That case involved a six-count federal complaint, alleging federal civil rights violations. Analogizing to Section 1983 cases, this Court found sufficient basis to allow two of the six counts of federal claims to proceed against the County. The case does

---

[5] There is nothing in the court's opinion that sheds any light on whether the County had raised in the trial court whether a gross negligence claim could be asserted against the County.

10

not hold or suggest that the County may be held liable on Plaintiffs' state law claims, in contradiction to *Fridena*.

In summary, Plaintiffs have not shown that *Fridena* is to be disregarded.

### C. The County Is Not Directly Liable for Plaintiffs' FERA Claims

In order to establish direct liability, Plaintiffs must demonstrate that their injuries result from the actions of a County policymaker or from a County policy or custom. The "complete ban on Villanueva's use of Ayahuasca" is a matter of ***state*** criminal law. *See* A.R.S. §§ 13-3401.6(xii), 13-3407. Plaintiffs do not identify or otherwise allege an official action, policy, or custom of the ***County*** relating to the criminalization of DMT.

Nor do Plaintiffs plausibly allege that "the County was part of the conspiracy to deprive Plaintiffs of their rights under FERA." Opp. at 17. The cited paragraph of the Complaint states only that the County acted under color of state law and with deliberate indifference to Villanueva's rights "when [it] performed acts in furtherance of the conspiracy." FAC ¶ 240. However, the Complaint does not allege any ***acts*** by the County. Neither Detective Shay nor any County decisionmaker is alleged to have been aware of the DEA's purported animus towards Villanueva/NAAVC or to have agreed to join in a conspiracy against Villanueva/NAAVC. *See* Mot. at 5-6.

### D. Plaintiffs' Arguments Regarding *Younger* Abstention Are Misplaced and Demonstrate that Plaintiffs Fail to State a Claim for Injunctive Relief

Plaintiffs state that "[a]t the end of their brief, the State Defendants make a half-hearted *Younger* abstention argument." Opp. at 19. Not so. In discussing Plaintiffs' request for injunctive relief—which includes prohibitions on conducting criminal investigations and using evidence in criminal proceedings—the County Defendants quoted from *Younger v. Harris*, 401 U.S. 37, 45-46 (1971). These paragraphs from *Younger* were offered in support of two points. *See* Motion at 15-16. First, as is made clear by the language from *Younger*, "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" are ***not*** an irreparable injury justifying injunctive relief. This is not a motion for relief under *Younger*; it is simply an argument regarding the adequacy of the irreparable

11

injury pled by Plaintiffs. Second, it is clear from *Younger* that a federal court cannot enjoin state law enforcement from "conducting criminal investigations of NAAVC's Board, officers, office premises, financial activities, or those of its member visionary churches and congregations," indefinitely and universally, as Plaintiffs request. *See* FAC at 94. Under the injunction Plaintiffs seek, if a one-time attendee of an ayahuasca ceremony at the Vine of Light Church committed ***any*** criminal offense, MCSO would not be allowed to investigate that individual. The sheer absurdity of the requested injunction speaks to Plaintiffs' failure to state a plausible claim for relief.

**IV.   Conclusion**

For the foregoing reasons, Plaintiffs' claims and this action against the County Defendants should be dismissed.

Respectfully submitted this 10th day of August, 2021.

**SACKS TIERNEY, P.A.**

*/s/ Evan F. Hiller*
Jeffrey S. Leonard
Evan F. Hiller
*Attorneys for Defendants Maricopa County and Matthew Shay*

3079613.v2