BRIAN M. BOYNTON
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly; North American Association of Visionary Churches; Clay Villanueva; and the Vine of Light Church,<br><br>Plaintiffs,<br><br>v.<br><br>Merrick B. Garland, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373-ROS |

**FEDERAL AGENCY DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS
PLAINTIFFS' FOURTH AMENDED COMPLAINT [Doc. 109]**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 1

    I.    This court lacks jurisdiction over Plaintiffs' APA and RFRA claims. .............. 1

        A.    Plaintiffs' facial challenges are time-barred, and Plaintiffs cannot bring an as-applied challenge to an exemption process they refuse to utilize. 1

        B.    Section 877 vests in the court of appeals exclusive jurisdiction over Plaintiffs' APA and RFRA challenges to the Guidance. ....................... 4

    II.    Plaintiffs' APA claim should be dismissed under Rule 12(b)(6)...................... 7

    III.    Plaintiffs' RFRA claim fails under Rule 12(b)(1)............................................. 8

    IV.    Plaintiffs' RFRA claim fails under Rule 12(b)(6)............................................. 9

        A.    The Complaint has not pleaded a prima facie RFRA claim. ................. 9

        B.    *O Centro* and *CHLQ* cannot save Plaintiffs' deficient Complaint........ 11

    V.    The claim for declaratory relief should be dismissed. ................................... 11

    VI.    Plaintiffs' 1983 claim should be dismissed under Rule 12(b)(6)..................... 12

        A.    Plaintiffs have failed to sufficiently plead that DEA acted under color of state law or that a conspiracy existed............................................. 12

        B.    Discovery against Defendants is not a proper remedy for Plaintiffs' pleading failure...................................................................................... 14

CONCLUSION.................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Cases**

*All. for Safe, Efficient & Competitive Truck Transp. v. Fed. Motor Carrier Safety Admin.*,
    755 F.3d 946 (D.C. Cir. 2014) ................................................................ 2

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) ............................................................................... 5

*Cabrera v. Martin*,
    973 F.2d 735 (9th Cir. 1992) ............................................................12, 13

*Chavez v. Martinez*,
    538 U.S. 760 (2003) ............................................................................... 7

*Church of Holy Light of the Queen v. Mukasey*,
    615 F. Supp. 2d 1210 (D. Or. 2009) ..................................................... 11

*City of Rochester v. Bond*,
    603 F.2d 927 (D.C. Cir. 1979) ............................................................... 6

*Cutter v. Wilkinson*,
    544 U.S. 709 (2005) ............................................................................... 5

*Ibrahim v. Dep't of Homeland Sec.*,
    538 F.3d 1250 (9th Cir. 2008) ..........................................................12, 13

*Gonzales* v. *O Centro Espirita Beneficente Uniao do Vegetal*, ("*O Centro*"),
    546 U.S. 418 (2006) ("*O Centro*") .................................... 1, 9, 10, 11

*Haase v. Sessions*,
    835 F.2d 902 (D.C. Cir. 1987) ............................................................... 4

*Hampton v. Hanrahan,*

   600 F.2d 600 (7th Cir. 1979) ............................................................................. 13

*Hemp Indus. Ass'n v. DEA,*

   No. 20-cv-2921-JEB, 2021 WL 1734920 (D.D.C. May 3, 2021) ........................ 6

*Jackson v. Modly,*

   949 F.3d 763 (D.C. Cir. 2020) .............................................................................. 2

*John Doe, Inc. v. DEA,*

   484 F.3d 561 (D.C. Cir. 2007) .............................................................................. 6

*John Doe, Inc. v. Gonzalez,*

   No. 06-CV-966-CKK, 2006 WL 1805685 (D.D.C. June 29, 2006) ..................... 6

*Kali v. Bowen,*

   854 F.2d 329 (9th Cir. 1988) ............................................................................... 13

*Leedom v. Kyne,*

   358 U.S. 184 (1958) ............................................................................................. 8

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*

   140 S. Ct. 2367 (2020) ......................................................................................... 5

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*

   485 U.S. 439 (1988) ............................................................................................. 1

*Morse v. N. Coast Opportunities, Inc.,*

   118 F.3d 1338 (9th Cir. 1997) ............................................................................ 13

*Nat'l Sec. Counselors v. CIA,*

   931 F. Supp. 2d 77 (D.D.C. 2013) ....................................................................... 4

iii

*Nelsen v. King Cnty.*,

   895 F.2d 1248 (9th Cir. 1990) ........................................................................ 8

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,

   676 F.3d 829 (9th Cir. 2012) .....................................................................8, 9

*Olson v. Norman*,

   830 F.2d 811 (8th Cir. 1987) ...................................................................... 13

*P & V Enters. v. U.S. Army Corps of Eng'rs*,

   466 F. Supp. 2d 134 (D.D.C. 2006) ............................................................ 2

*P & V Enters. v. U.S. Army Corps of Eng'rs*,

   516 F.3d 1021 (D.C. Cir. 2008) ................................................................... 2

*Pub. Citizen v. Nuclear Regul. Comm'n*,

   901 F.2d 147 (D.C. Cir. 1990) ...............................................................2, 3

*Reniger v. Hyundai Motor Am.*,

   122 F. Supp. 3d 888 (N.D. Cal. 2015) ........................................................ 9

*Reynoso v. City and County of San Francisco*,

   Civ. No. 10-984, 2012 WL 646232 (N.D. Cal. Feb. 28, 2012)......................... 13

*Rogers v. United States*,

   340 U.S. 367 (1951)...............................................................................7, 8

*Sollberger v. Wachovia Sec., LLC*,

   No. 09-cv-766-AG, 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010) ............ 9

*Strickland v. Shalala*,

   123 F.3d 863 (6th Cir. 1997) ..................................................................... 13

*SurvJustice Inc. v. DeVos,*
    No. 18-CV-535-JSC, 2019 WL 1434141 (N.D. Cal. Mar. 29, 2019) ................................. 8

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) ...................................................................................... 10

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) ...................................................................... 8, 9

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ........................................................................................... 6

*United States v. Christie,*
    825 F.3d 1048 (9th Cir. 2016) ............................................................................ 11

*United States v. Gonzales,*
    957 F. Supp. 1225 (D.N.M. 1997) ............................................................... 3, 10

*United States v. Hugs,*
    109 F.3d 1375 (9th Cir. 1997) ....................................................................... 3, 4

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
    865 F.2d 1539 (9th Cir. 1989) ........................................................................... 13

*Whitaker v. Tesla Motors, Inc.,*
    985 F.3d 1173 (9th Cir. 2021) ........................................................................... 14

*White Mountain Apache Tribe v. Hodel,*
    840 F.2d 675 (9th Cir. 1988) ............................................................................... 4

*Willis v. Seattle,*
    943 F.3d 882 (9th Cir. 2019) ............................................................................... 7

*Wind River Mining Corp. v. United States*,

    946 F.2d 710 (9th Cir. 1991) ........................................................................2, 7

**Statutes**

21 U.S.C. § 821 .................................................................................................... 5

21 U.S.C. § 822 .................................................................................................... 5

21 U.S.C. § 877 .................................................................................................4, 6

**Rules**

Federal Rule of Civil Procedure 7(b).................................................................. 14

**Regulations**

28 C.F.R. § 0.100................................................................................................. 5

28 C.F.R. pts.  1300–1316 ................................................................................... 5

Executive Order (EO) 13891,
    https://www.govinfo.gov/content/pkg/FR-2019-10-15/pdf/2019-22623.pdf. .............. 3

1          **INTRODUCTION**

2    The Drug Enforcement Agency (DEA) is statutorily authorized to create exemptions from

3    the Controlled Substances Act's (CSA) prohibitions on the importation, manufacture, and dis-

4    tribution of controlled substances. Prior to *Gonzales* v. *O Centro Espirita Beneficente Uniao do*

5    *Vegetal*, 546 U.S. 418 (2006) ("*O Centro*"), no process existed for an individual who wished to

6    use ayahuasca for religious purposes. That is no longer the case. In the wake of *O Centro,* DEA

7    created a religious-exemption process open to anyone who wishes to import, manufacture, or

8    distribute ayahuasca for religious purposes. That process remains in place today, and is directly

9    responsive to *O Centro*'s concern that the previous regulatory regime did not allow DEA to

10   address "the harms posed by particular use at issue." *O Centro*, 546 U.S. at 432. DEA's exemp-

11   tion process now allows politically accountable branches of government to flexibly address

12   concerns about religious objections that arise when the government chooses to act.

13   But Plaintiffs refuse to seek an exemption, which would allow the government to consider

14   their Religious Freedom Restoration Act (RFRA) claim, alongside the harms posed by the

15   particular ayahuasca use at issue and corresponding safeguards. Instead of seeking an exemp-

16   tion, Plaintiffs have rushed into court without being under any threat of enforcement.  This

17   court should not at Plaintiffs' behest—contrary to well-established doctrines of ripeness, final

18   agency action, and pre-enforcement standing—rule on the legality of an exemption process

19   that Plaintiffs refuse to utilize. If allowed, Plaintiffs' strategy would create a perverse incentive

20   for future plaintiffs to invoke judicial resources, instead of engaging in the process that exists

21   for DEA to consider such claims in the first instance. The politically accountable branches of

22   government are better equipped to address such concerns, as Defendants made available

23   through the exemption process. *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 452

24   (1988). Plaintiffs' claims should be dismissed.

25          **ARGUMENT**

26   **I.  This court lacks jurisdiction over Plaintiffs' APA and RFRA claims.**

27          A.   <u>Plaintiffs' facial challenges are time-barred, and Plaintiffs cannot bring an as-
             applied challenge to an exemption process they refuse to utilize.</u>

28

Plaintiffs contend that the DEA's Guidance, which was originally issued in 2009, is on its face, "ultra vires," "unconstitutional," promulgated "[w]ithout notice and comment rulemaking," and "without a statutory basis." Opp'n to Fed. Defs.' Mot. to Dismiss (Opp'n) at 12-13, ECF No. 116. Because none of these claims depend in any way on the particular application of the Guidance to Plaintiffs, they have been time-barred since 2015. *See Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991).[1]

Plaintiffs argue that the statute of limitations "reset" when DEA republished the Guidance in November 2020, apparently invoking the "reopener" doctrine. Opp'n 11-12 (quoting *Pub. Citizen v. Nuclear Regul. Comm'n*, 901 F.2d 147, 150 (D.C. Cir. 1990)); *see* Ex. C (2020 Guidance). This doctrine creates "an exception to statutory limits on the time for seeking review of an agency decision," *P & V Enters. v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 2d 134, 144 (D.D.C. 2006), which "allows an otherwise stale challenge to proceed because 'the agency opened the issue up anew,' and then 'reexamined…and reaffirmed its [prior] decision.'" *P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir. 2008) (quoting *Pub. Citizen*, 901 F.2d at 150-51), *overruled on other grounds Jackson v. Modly*, 949 F.3d 763, 776 (D.C. Cir. 2020). But Plaintiffs' argument ignores the substantive limits set forth by *Public Citizen*: the statute of limitations may reset "where an agency's actions show that it has not merely republished an existing rule in order to propose minor changes to it, but has reconsidered the rule and decided to keep it in effect." *Pub. Citizen*, 901 F.2d at 150. To discern if the agency "has in fact reopened an issue," the court "must look to the entire context of the rulemaking," *id.*, and "[t]he [reopener] doctrine only applies . . . when the entire context demonstrates that the agency has undertaken a serious, substantive reconsideration of the existing rule." *All. for Safe, Efficient & Competitive Truck Transp. v. Fed. Motor Carrier Safety Admin.*, 755 F.3d 946, 954 (D.C. Cir. 2014)

---

[1] Plaintiffs incorrectly assert that a challenge to a policy "as unconstitutional and exceeding statutory authority is not subject to the six-year statute of limitations." Opp'n 11 (quoting *Wind River*, 946 F.2d at 715). Plaintiffs omit the key portion of the quoted sentence which precludes their challenge: "If, however, a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the *decision by filing a complaint for review of the adverse application of the decision to the particular challenger*." *Wind River*, 946 F.2d at 715 (emphasis added to portion Plaintiffs omitted).

1   (citation omitted).

2       The reopener doctrine does not apply here. DEA did not substantively reconsider the 2009

3   Guidance. *Compare* Ex. A (2009 Guidance) *with* Ex. B (2018 Guidance) and Ex. C (2020 Guid-

4   ance). In November 2020 in response to Executive Order (EO) 13891, DEA republished the

5   guidance without substantive change.[2] DEA changed the agency official designated to receive

6   a RFRA exemption petition and issue a final determination—from the Deputy Assistant Ad-

7   ministrator to the Assistant Administrator. This "minor change" does not demonstrate a re-

8   consideration of the existing rule, let alone a "serious, substantive" one. *Pub. Citizen*, 901 F.2d

9   at 150-51. Further, this procedural change has no bearing on Plaintiffs' challenge to the Guid-

10  ance. As Plaintiffs correctly conceded, DEA "never ma[de] substantive changes" to the Guid-

11  ance since issuing it in 2009. Opp'n to Fed. Defs.' Mot. to Dismiss at 14,  ECF No. 94. As

12  Plaintiffs have thus acknowledged, the entire context of the 2020 Guidance demonstrates that

13  DEA did not, after 2009, undertake a serious, substantive reconsideration of the Guidance,

14  and Plaintiffs' facial challenge to the Guidance remains time-barred.

15      Even if Plaintiffs' challenge to the Guidance were timely, Plaintiffs cannot challenge the

16  CSA and the Guidance under the APA in this court because "they have not sought an exemp-

17  tion under the Guidance." Opp'n 10 (citing *United States v. Hugs*, 109 F.3d 1375, 1378-79 (9th

18  Cir. 1997); *United States v. Gonzales*, 957 F. Supp. 1225, 1226 (D.N.M. 1997)). The very cases

19  Plaintiffs cite demonstrate that they cannot challenge an exemption process they have not

20  utilized because there is no final agency action. Fed. Agency Defs.' Mot. to Dismiss Pls.' 4th

21  Am. Compl., (Mot.) at 4, ECF No. 112. In *Gonzales* and *Hugs*, the plaintiffs had standing to

22  challenge agency action after they were *criminally charged* for a violation of a federal law and

23  implementing regulations making it "illegal to kill a bald eagle," *Gonzales*, 957 F. Supp. at 1226.

24  *See Hugs*, 109 F.3d at 1377 (plaintiff convicted for violating the Bald and Golden Eagle Pro-

25  tection Act). In *Hugs*, the Ninth Circuit rejected an argument that Plaintiffs could challenge a

26  _____

27  [2] That EO states: "Within 120 days of the date on which OMB issues an implementing mem-
    orandum under section 6 of this order, each agency shall review its guidance documents and,
    consistent with applicable law, rescind those guidance documents that it determines should no
28  longer be in effect." *See* https://www.govinfo.gov/content/pkg/FR-2019-10-15/pdf/2019-
    22623.pdf.

permit system that they did not attempt to use. 109 F.3d at 1378-79 (Plaintiffs "have never sought to use the permit system and therefore have no standing to challenge the way in which the scheme operates."). Plaintiffs have not been criminally charged under the CSA and thus have no standing to challenge that statute; and, as in *Hugs*, Plaintiffs do not have standing to challenge an exemption process in which that they have refused to participate.[3]

Plaintiffs' challenge is not saved by their unsupported assertion that "further administrative procedure would be futile," Opp'n 13-14, because they have not alleged "objective and undisputed evidence of administrative bias which would render pursuit of an administrative remedy futile." *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677-78 (9th Cir. 1988). And Plaintiffs "seek[ing] injunctive or declaratory relief specifically for the purpose of challenging an alleged [government] policy" *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 91 (D.D.C. 2013) (citing *Haase v. Sessions*, 835 F.2d 902, 910-11 (D.C. Cir. 1987)), cannot do so with a mere "nebulous assertion of the existence of a 'policy'" of government refusal of all religious exemptions. *Haase*, 835 F.2d at 910-11.

B.   Section 877 vests in the court of appeals exclusive jurisdiction over Plaintiffs' APA and RFRA challenges to the Guidance.

Even if Plaintiffs had surmounted these two threshold issues, they would still be unable to bring their claims in this court because of 21 U.S.C. § 877. Plaintiffs do not meaningfully contest that § 877 establishes a comprehensive review scheme over DEA's administration and application of the CSA, including over the Guidance Plaintiffs challenge. Instead, Plaintiffs incorrectly assert that DEA, notwithstanding its mandate to enforce the CSA, has no authority to make a religious-exemption determination. As explained below, DEA does have the authority to do so. But even if this objection were sound, Plaintiffs' APA and RFRA challenges can be heard only in the court of appeals.

The CSA authorizes the Attorney General to "promulgate rules and regulations . . . relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances and to listed chemicals." 21 U.S.C. § 821. The Attorney General has delegated this

---

[3] Accordingly, even if the Guidance document constitutes final agency action under the APA, Plaintiffs' lack standing to challenge to the Guidance. *See* Opp'n 13.

authority to DEA. *See id.* § 871(a); 28 C.F.R. § 0.100. DEA has promulgated regulations related to controlled substances in Title 21, Chapter II of the Code of Federal Regulations. 28 C.F.R. pts. 1300–1316. The CSA explicitly authorizes the Attorney General to "by regulation, waive the requirement for registration of certain manufacturers, distributors, or dispensers if he finds it consistent with the public health and safety." 21 U.S.C. § 822(d). Thus, contrary to Plaintiffs' assertion, DEA does have the delegated authority to consider individual requests for exemptions from the CSA, including exemptions based on RFRA.

Moreover, the Supreme Court has explicitly rejected the argument that an agency cannot craft and consider religious "exemptions from its own Guidelines" and the statutes an agency is tasked with carrying out. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2380, 2383 (2020) (affirming that HHS had the authority "to exempt or accommodate … religious objections" to the ACA and that "it was appropriate for [HHS] to consider RFRA"). While the Supreme Court expressed skepticism that an agency may decide whether "religious beliefs are mistaken or insubstantial," in considering requests for accommodation under RFRA, an agency may determine whether the asserted religious belief "reflects an honest conviction." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014); *see also Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (under RLUIPA, "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic"). Indeed, DEA's failure to adequately consider religious uses of ayahuasca provoked the Court's ruling in *O Centro*. DEA properly took from that decision that it must consider religious hardship in applying the CSA. Counterintuitively, Plaintiffs disagree, arguing that DEA should not—indeed, cannot—evaluate requests for religious exemptions.

Plaintiffs' cursory response fails to grapple with the language of § 877, and they cite no cases to support their atextual position. Instead, they offer a distinction unmoored from the statutory text: for a case to be channeled to a court of appeals, a case must challenge a "regulation," "subject to APA rulemaking," that is "published in the Federal Register." Opp'n 14. But the broad language of § 877 contains no such distinctions; it directs review of all "final decision[s]" by DEA into the courts of appeals. 21 U.S.C. § 877. *See, e.g., Hemp Indus. Ass'n v.*

5

*DEA*, No. 20-cv-2921-JEB, 2021 WL 1734920, at *1 (D.D.C. May 3, 2021) (challenge to DEA interim final rule must be brought in court of appeals under § 877, even though such rule was not promulgated through formal notice-and-comment rulemaking) (citing cases). Because Plaintiffs' RFRA and APA claims challenge the Guidance and DEA's interpretation of the CSA, Mot. 6-8, under § 877, these claims must be brought in a court of appeals and should be dismissed for lack of jurisdiction in this court.

Sound policy supports this result. *See City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979). Allowing plaintiffs either on some alternative theory or by artful pleading, to bring in district court what is, unavoidably in substance, a challenge covered by § 877 would "encourage[] forum shopping," *John Doe, Inc. v. DEA*, 484 F.3d 561, 570 (D.C. Cir. 2007), and lead to "duplicative" review and accompanying delays. *Id.*; *see also John Doe, Inc. v. Gonzalez*, No. 06-CV-966-CKK, 2006 WL 1805685, at *21 (D.D.C. June 29, 2006) (noting similar reasons for exclusive court of appeals review, even when there is not a "final determination"), *aff'd*, *John Doe*, 484 F.3d 561. This is no less true for a pre-enforcement challenge to the CSA. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994).

Indeed, essentially any challenge to a final decision about the CSA's application could be reframed as a challenge to the agency's authority to act in the first place, or as seeking a declaration that the activity affected by the final action is lawful. *See Hemp Indus. Ass'n*, 2021 WL 1734920, at *8-9. *Doe* is illustrative: there, the plaintiff sought to import what it contended was a Schedule III controlled substance; DEA denied an application for registration to do so on the grounds that the substance at issue was, in fact, in Schedule I. 484 F.3d at 564. The plaintiff raised APA and Due Process claims and argued that DEA was wrong to conclude that the substance at issue was not in Schedule III, and that DEA's denial of the application was therefore erroneous. *Id.* at 571. The D.C. Circuit held that such a claim could proceed only in a court of appeals. *Id.* at 568-70. The plaintiff in *Doe* could not have reframed its claim as one seeking declaratory relief that the substance was in Schedule III, and then proceeded in district court. Nor could it have done so by framing its complaint as a claim that DEA was not authorized to enforce the CSA should the plaintiff choose to import the substance anyway.

6

## II. Plaintiffs' APA claim should be dismissed under Rule 12(b)(6).

Plaintiffs' Fifth Amendment and *ultra vires* claims are likewise not viable, even if this Court could address them. *First*, Plaintiffs contend that they "were <u>required</u> to submit an exemption that contained incriminating statements," Opp'n 12-13 (emphasis in original), which they argue violates the Fifth Amendment's self-incrimination clause.[4] Plaintiffs are incorrect. By its own terms, the Guidance does not require a petitioner to identify or disclose past criminality or illegal conduct; it simply requests information about the petitioner's future plans. *See* 2009 Guidance (requesting the name of the controlled substance the party "wishes to use" and details about its "anticipated" handling of the substance); 2020 Guidance (same). Accordingly, Plaintiffs have not alleged facts to support any self-incrimination claim. Moreover, Plaintiffs cannot state a valid claim for violation of a Fifth Amendment right against self-incrimination because that right does not extend outside of criminal proceedings. *See Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (plurality opinion) ("Although our cases have permitted the Fifth Amendment's self-incrimination privilege to be asserted in noncriminal cases. . .that does not alter our conclusion that a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case.") (citations omitted). Plaintiffs do not allege they are the subject of federal criminal proceedings, and thus they have not "been compelled to be a witness" against themselves in a criminal case. *Id.*

Finally, any concern Plaintiffs have about revealing self-inculpating information rings hollow because they are currently publicly advertising ayahuasca services on their website, www.aya.guide. "Federal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details." *Rogers v. United States*, 340 U.S. 367, 373 (1951). Plaintiffs cannot use the Fifth Amendment as a shield when seeking a government benefit to avoid participating in the regulatory process in which such benefits are granted, while simultaneously marketing their ongoing ayahuasca distribution

---

[4] This argument simply re-packages Plaintiffs' facial challenge to the validity of the Guidance, under which individuals file a petition and undergo a pre-registration investigation to seek a religious exemption. *See Willis v. Seattle*, 943 F.3d 882, 886 (9th Cir. 2019) ("A facial challenge is a claim that a law or policy is unconstitutional in all of its applications."); *see also* Opp'n 12 (admitting that Plaintiffs as-applied challenge is "virtually identical" to their facial challenge). But Plaintiffs cannot bring an as-applied challenge. *See Wind River*, 946 F.2d at 715.

services to the public.

*Second*, Plaintiffs' wholly conclusory allegation that the Guidance is *ultra vires* also should be dismissed. Opp'n 12. *Ultra vires* review is available where "an agency has violated an unambiguous and mandatory legal requirement." *SurvJustice Inc. v. DeVos*, No. 18-CV-535-JSC, 2019 WL 1434141, at *10 (N.D. Cal. Mar. 29, 2019) (citing *Leedom v. Kyne*, 358 U.S. 184, 188-89 (1958)). As explained above, DEA has statutory authority to create exemptions from the CSA, and Plaintiffs' "wholly conclusory allegation ... fail[s] to plausibly allege that Defendants acted outside their legal authority" in creating the exemption process. *Id.*

## III. Plaintiffs' RFRA claim fails under Rule 12(b)(1).

Plaintiffs' RFRA claim seeks prospective relief through an order prohibiting Defendants from enforcing the CSA against them. *See* Fourth Am. Compl. (Compl.) ¶ 150, 87 ¶ 1(e)-(h), ECF No. 109. Plaintiffs claim to be entitled to this relief because they "fear prosecution." *Id.* ¶ 137. To be ripe, a complaint seeking an injunction based on "a claimed threat of prosecution" (i.e., asserting a pre-enforcement challenge) must plead a "genuine threat of imminent prosecution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). The Complaint fails to satisfy that standard, Mot. 8-11, and Plaintiffs continue to rely nearly exclusively on claims of past harm—including alleged border seizures and the County's search of Villanueva's alleged "church-residence," Opp'n 2, 8-11, 15, which are "largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1251 (9th Cir. 1990).

Plaintiffs cannot satisfy a genuine threat of enforcement. *Thomas*, 220 F.3d at 1139-40. Plaintiffs argue that an "enforcement action" was taken against them, Opp'n 9 (relying on *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012)), but Judge Orrick has already held that, "[P]laintiffs have not alleged a pre-enforcement threat by *the DEA*," ECF No. 57 at 2 (emphasis added), as they must to support a pre-enforcement claim against the Federal Agency Defendants. *See also* ECF No. 86 at 7-9; Mot. 9-10. This sort of "shotgun pleading" in which Plaintiffs "impermissibly lump[]" state and federal defendants

together is a "defect alone [that] warrants dismissal." *Sollberger v. Wachovia Sec., LLC*, No. 09-cv-766-AG, 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010).

*Oklevueha* cannot salvage this pleading defect. The relevant enforcement action in *Oklevueha* was "pursuant to the CSA," 676 F.3d at 837, while the County's search was conducted pursuant to Arizona law, not federal law, *see* ECF No. 39 at 5 (citing ECF No. 22-12 (Maricopa Cnty. search warrant)). Likewise, in *O Centro* federal inspectors "seized the intercepted shipment and threatened the UDV with prosecution." 546 U.S. at 425. Plaintiffs' subsequent amendments of their Complaint did not materially alter their claims against the Federal Agency Defendants. They point to no allegation that Defendants have communicated a specific warning or threat to initiate proceedings against them in the future, or to a single federal criminal prosecution relating to ayahuasca. *See Thomas*, 220 F.3d at 1139-40. Instead, Plaintiffs continue to obfuscate that the enforcement action to which they refer was conducted by State and local defendants alone. Opp'n 10. *See Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015) ("[W]here there are multiple defendants and multiple claims, there must exist at least one named plaintiff with Article III standing as to each defendant and each claim[.]"). Thus, Plaintiffs continue to fall short of showing "that there has been any realistic, imminent threat of prosecution or enforcement action by the federal government." Dkt. 57 at 23. Their RFRA claim must be dismissed.

**IV. Plaintiffs' RFRA claim fails under Rule 12(b)(6).**

A.  The Complaint has not pleaded a prima facie RFRA claim.

The Complaint also fails for not sufficiently pleading the three required elements of a prima facie RFRA claim. *See* Mot. 11-12. Plaintiffs point to three alleged burdens: the CSA itself, DEA's enforcement of the CSA, and DEA's religious-exemption process. As to the CSA itself, Plaintiffs cannot merely point to a statute that makes their conduct illegal without also demonstrating a genuine threat of enforcement of that statute. As to DEA's enforcement of the CSA, as discussed above, Plaintiffs are under no genuine threat of prosecution; indeed, they openly advertise their continued violations of the CSA. Nor can Plaintiffs rely on the County's search

as a substantial burden, because the Federal Agency Defendants did not carry it out. The religious-exemption process likewise does not constitute a substantial burden. For one, Plaintiffs have not utilized in that process. For another, they point to no aspect of the process that would hinder their religious practice or that would require them to act contrary to their religious beliefs. Mot. 4-5. Indeed, DEA's process was created on the heels of *O Centro* to facilitate—not hinder—sincere religious practices that might otherwise conflict with the CSA. *Gonzales* is again inapposite, Opp'n 7, because Plaintiffs have not alleged that their religious practice relies on secrecy as was alleged by the plaintiff there, 957 F. Supp. at 1228, and have not alleged any other reason that participating in the exemption process itself would burden their religious beliefs. In any event, Plaintiffs did not submit a petition, and so could not have suffered any of the non-substantial burdens they claim that process imposes. Opp'n 6-7.

The lack of an explicit "RFRA exemption under the CSA's implementing regulations," does not demonstrate that Defendants treat "comparable secular activity more favorably than religious exercise," as Plaintiffs claim. Opp'n 5 (citing *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam)). [5] More importantly, Plaintiffs' argument misses the mark because DEA *has* provided for a RFRA exemption process, and thus, cannot be said to treat secular activity more favorably than religious activity.

Finally, Plaintiffs do not dispute that each Plaintiff must, but does not, satisfy RFRA's "exercise of religion" element for each activity for which they seek a CSA exemption. Mot. 2. Even if only one plaintiff must demonstrate *standing*, all plaintiffs must satisfy the three elements of a prima facie RFRA claim, *O Centro*, 546 U.S. at 430-31 (explaining that RFRA's "focused" inquiry is applied "to the person—the particular claimant whose sincere exercise of religion is being substantially burdened"). Here, Villanueva and VOLC do not allege that their sincere religious exercise requires importing, manufacturing, or distributing ayahuasca. AYA

---

[5] It is hard to square Plaintiffs' complaint that DEA has failed to advance its exemption process through regulation with their assertion that DEA lacks authority to grant RFRA-based exemptions. In any event, Plaintiffs do not allege that, if the exemption process were set forth in the CSA's regulations, they would change course and submit a petition.

does not allege that its sincere religious exercise requires importing or manufacturing aya-huasca. And NAAVC does not allege that its sincere religious exercise requires manufacturing ayahuasca.

B. *O Centro* and *CHLQ* cannot save Plaintiffs' deficient Complaint.

Unable to plead a RFRA claim of their own, Plaintiffs instead argue they are entitled to the same injunction entered in two distinguishable cases involving differently situated plaintiffs. Mot. 3-4. But under RFRA's individualized, fact-specific inquiry, claimants "cannot simply point to other groups who have won accommodations for the sacramental use of . . . hoasca and say 'we'll have what they're having[.]'" *United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016).

In the first case, *O Centro*, on appeal from a preliminary injunction, the Supreme Court held that RFRA requires "case-by-case consideration of religious exemptions" even for "exception-ally dangerous" Schedule I substances like ayahuasca. 546 U.S. at 430-36. Unlike here, federal authorities in *O Centro* had "threatened [the plaintiffs] with prosecution," *id.* at 425, and applied the CSA without exception, *id.* at 430. After *O Centro*, DEA considers religious-based exemp-tions through the very Guidance Plaintiffs here claim violates RFRA. And in *Church of Holy Light of the Queen v. Holder* ("*CHLQ*"), which likewise pre-dated the Guidance, following a trial on the merits and a partial reversal of an overbroad injunction, DEA and CHLQ brokered an out-of-court settlement tailored to CHLQ's particular religious exercise and DEA's regulatory interests. *CHLQ v. Mukasey*, 615 F. Supp. 2d 1210, 1212, 1216-17 (D. Or. 2009). Plaintiffs do not allege that they are "in the same position" as the *O Centro* and *CHLQ* plaintiffs. *See, e.g.*, Compl. ¶¶ 91-92. Thus, neither case supports Plaintiffs' argument that RFRA requires a CSA exemption for all groups using ayahuasca. Nor does either case rescue *Plaintiffs'* particular RFRA claim from its pleading deficiencies. Plaintiffs' claim must be dismissed under Rules 12(b)(1) and 12(b)(6).

**V. The claim for declaratory relief should be dismissed.**

Defendants argued that Plaintiffs' Declaratory Judgment Act claim "should be dismissed" because that act provides a remedy, not a cause of action. Mot. 5 n.5. Plaintiffs nevertheless

assert that Defendants "effectively concede[d]" the claim, but then prove Defendants' point by describing the purported "claim" as a "remedy" for their APA and RFRA claims. Opp'n 17. This claim should be dismissed.

## VI.  Plaintiffs' 1983 claim should be dismissed under Rule 12(b)(6).

A.  <u>Plaintiffs have failed to sufficiently plead that DEA acted under color of state law or that a conspiracy existed.</u>

Defendants have demonstrated that the allegations in the Complaint fail to show a "sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself,'" *Cabrera v. Martin*, 973 F.2d 735, 744 (9th Cir. 1992), as necessary to support a § 1983 claim. Mot. 12-17. Plaintiffs fail to meaningfully rebut Defendants' argument, and their § 1983 claim must be dismissed.

First, Plaintiffs acknowledge that *Cabrera*'s "sufficiently close nexus" standard governs § 1983 claims. *See* Opp'n 16. But Plaintiffs fail to mention—let alone distinguish—*Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008), which applies the *Cabrera* standard and compels dismissal of Plaintiffs' § 1983 claim. In *Ibrahim*, when affirming dismissal of the plaintiff's § 1983 claim, the Ninth Circuit held that the required "sufficiently close nexus" is lacking where "the federal defendants acted pursuant to federal laws," and the state officials "had nothing to do" with the federal government's decisions and actions. 538 F.3d at 1256-57. But, as Defendants have explained, none of the allegations Plaintiffs identify as "form[ing] the basis for Plaintiffs' [§ 1983] claim," Opp'n 15, shows that any state official had anything to do with any federal official's actions, or that DEA "significantly participated" in the state's investigation or raid. *Compare* Opp'n 16 *with* Mot. 15 (explaining that none of the allegations identified in Opp'n 15 asserts that any state official had anything to do with Agent Paddy's decision to pass along the tip to Kaskavage or Paddy's actions in doing so); *Compare* Opp'n 16 *with* Mot. 16 (explaining that the lone allegation Plaintiffs cite to support the proposition that "DEA 'significantly participated' in infringement of Plaintiffs' civil rights by instigating the investigation, setting the goals for the investigation, and aiding in the raid," Opp'n 16 (citing Compl. ¶ 233), simply describes the HIDTA and alleges that "DEA personnel aided in the

raid," Compl. ¶ 233). *See also Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997) (federal officers' participation in a "cooperative federalism scheme" does not mean those officers act under color of state law for purposes of § 1983); *Olson v. Norman*, 830 F.2d 811, 821 (8th Cir. 1987) (similar). Further, because Plaintiffs concede in the Complaint that DEA derives its authority from *federal* law, Compl. ¶ 7 & n.1, and do not allege that any DEA agent was not acting pursuant to federal laws or that any state official had anything to do with DEA agents' decisions or actions, Plaintiffs' allegations do not establish the "sufficiently close nexus," and dismissal is proper under *Ibrahim*. 538 F.3d at 1256-57.

Other than *Cabrera*, Plaintiffs cite only two cases in support of their § 1983 claim, neither compelling a different conclusion. Although the court in *Reynoso v. City and County of San Francisco*, Civ. No. 10-984, 2012 WL 646232, at *6 (N.D. Cal. Feb. 28, 2012), found a "'symbiotic relationship' between the federal defendants and the state to claim liability under § 1983," plaintiffs there alleged that the federal officials "merely substituted themselves for the [state] agents … and took up the search and seizure initiated by the [state] authorities." Any collaboration plaintiffs here allege occurred between federal and state officials falls far short of this "symbiosis" and "substitution." And *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979), cannot undercut the subsequent 40 years of well-established binding precedent from this Circuit. *See Ibrahim*, 538 F.3d at 1257; *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997); *Cabrera*, 973 F.2d at 744; *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988).

Second, although Defendants explained why each of the allegations Plaintiffs identify as "form[ing] the basis for Plaintiffs' [§ 1983] claim," Opp'n 15, is insufficient to support a § 1983 claim, Plaintiffs offer no alternative support for that claim. *Compare allegations discussed in* Opp'n 15-16 *with allegations discussed in* Mot. 15-16.

Finally, Plaintiffs wholly fail to rebut Defendants' argument that the Complaint does not establish any conspiracy under § 1983 because: (1) Plaintiffs do not allege "an agreement or 'meeting of the minds' to violate constitutional rights," *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1548 (9th Cir. 1989) (*en banc*) (quotations and citation omitted); and (2) Defendants' sworn representations demonstrate that there was in fact no meeting of the minds

13

or shared objective between DEA officials and state officials. *See* ECF No. 86 at 15-16 (citing ECF No. 41-1 ¶ 9 & ECF No. 41-4 ¶¶ 6-8); Opp'n 15-17.

      B.    <u>Discovery against Defendants is not a proper remedy for Plaintiffs' pleading failure.</u>

     Defendants demonstrated that Plaintiffs' § 1983 claim lacks facial plausibility because the allegation that DEA "conceived" "retaliatory" animus against Plaintiffs "when it discovered that [Villanueva] was … [involved with] promoting the Change.org petition, … sending the DEA Letter requesting rescission of the Guidance, and … commencing this action," Compl. ¶ 194, is grounded in speculation and refuted by defendants' sworn representations filed in this case. Mot. 17 (citing ECF Nos. 41-1, 41-2, & 41-3, & ECF No. 57 at 18-20). Rather than offer any substantive rebuttal, Plaintiffs' response takes two tacks. First, they simply assert in their brief that their allegations "are [p]lausible." Opp'n 16-17. Second, they assert that they are "entitled" to discovery. *Id.* at 17. To the extent Plaintiffs are requesting discovery, that request fails to comply with Federal Rule of Civil Procedure 7(b). More significantly, discovery could not save Plaintiffs' deficient claim. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("Our case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rule[] … 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery."). Dismissal of Plaintiffs' § 1983 claim is the only proper outcome.

## CONCLUSION

     For the foregoing reasons, and for the reasons provided in Defendants' opening memorandum, the Court should grant Defendants' motion to dismiss.

Dated: August 10, 2021                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Acting Assistant Attorney General

                                          BRIGHAM J. BOWEN
                                          Assistant Branch Director

                                          */s/ Lisa Newman*
                                          LISA NEWMAN
                                          Trial Attorney
                                          Civil Division, Federal Programs Branch
                                          U.S. Department of Justice
                                          1100 L Street NW
                                          Washington, D.C. 20005
                                          Telephone: (202) 514-5578
                                          Fax: (202) 616-8470
                                          E-mail: lisa.n.newman@usdoj.gov
                                          *Attorneys for the Federal Agency Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2021, I electronically transmitted the foregoing Federal Agency Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

                                          */s/ Lisa Newman*
                                          LISA NEWMAN