GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

KWAN PIENSOOK
Arizona State Bar No. 030743
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Facsimile: (602) 514-7693
Email: Kwan.Piensook@usdoj.gov

*Attorney for Defendant Paddy*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yage Assembly, North American Association of Visionary Churches, Clay Villaneuva, and the Vine of Light Church,<br><br>Plaintiffs,<br><br>v.<br><br>William Barr, Attorney General of the United States; Timothy J. Shea, Acting Administrator of the U.S. Drug Enforcement Administration; Chad F. Wolf, Acting Secretary of the Dept. of Homeland Security; Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection; the United States of America; Maricopa County, Matthew Shay, and Marco Paddy,<br><br>Defendants. | Case No. 2:20-CV-02373-ROS<br><br><br>**DEFENDANT PADDY'S REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br>**(Doc. 111)** |

1   Defendant Marco Paddy submits his Reply in Support of his Motion to Dismiss

2   Plaintiffs' Fourth Amended Complaint (Doc. 111).  Defendant Paddy respectfully requests

3   the Court dismiss Plaintiffs' Fourth Amended Complaint because Plaintiffs have failed to

4   state a claim under either (1) the Religious Freedom Restoration Act ("RFRA"), or (2) 42

5   U.S.C. § 1983.  This Reply is supported by the following Memorandum of Points and

6   Authorities and the Court's entire record in this matter.

7   **MEMORANDUM OF POINTS AND AUTHORITIES**

8   **I.   Plaintiffs Fail to Establish Defendant Paddy's Retaliatory Animus**

9   **A.   Defendant Paddy Had No Knowledge of the Change.org Petition or the DEA Letter**

10   The crux of Plaintiffs' RFRA and 42 U.S.C. § 1983 claims against Defendant Paddy

11   depend on their allegation that Defendant Paddy's conduct was based on retaliatory animus

12   against Plaintiffs for their activism.  Specifically, Plaintiffs assert that Defendant Paddy

13   "conceived retaliatory animus" toward Plaintiffs for (1) their Change.org Petition "Stop

14   Regulating Visionary Religion" ("Petition"), which they launched on September 12, 2019

15   and (2) their letter to the DEA dated January 8, 2020 ("DEA Letter"), "that critiqued the

16   Guidance at length, and implied that litigation would likely ensue if the DEA did not review

17   this substantial burden of the Free Exercise of Visionary Religion."  (Doc. 118, 3:27-4:21).

18   As a threshold matter, Plaintiffs' Fourth Amended Complaint fails to present any

19   non-conclusory or non-speculative allegations establishing that Defendant Paddy had any

20   specific knowledge of the Petition or the DEA Letter on which to base his alleged

21   retaliatory animus.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding

22   that a plaintiff must plead "enough facts" to "raise a right to relief above the speculative

23   level"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that the trial court is "not

24   bound to accept as true a legal conclusion couched as a factual allegation").

25   Here, the references to Plaintiffs' Petition in the Fourth Amended Complaint do not

26   describe how Defendant Paddy, who is being sued in his individual capacity, came to have

27   knowledge of the Petition.  (*See* Doc. 109, ¶¶ 159, 193, 228, 229).  Nor does the Fourth

28   Amended Complaint explain how Defendant Paddy was made aware of the DEA Letter.

(*See* Doc. 109 at ¶¶ 125, 128, 193, 228, 229, 257).  Instead, the Fourth Amended Complaint improperly assumes Defendant Paddy's knowledge without presenting any factual basis. *Cf. Baker v. Tevault,* No. CV2001960PHXJATJZB, 2021 WL 1171492, at *8 (D. Ariz. Mar. 29, 2021) (citing *United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1221 (W.D. Wash. 2011) for the proposition that "[a] plaintiff relying on 'information and belief' must state the factual basis for the belief, but plaintiffs have failed to do so").  Furthermore, to the extent the Fourth Amended Complaint refers generally to DEA's alleged knowledge, the DEA's knowledge cannot be attributed to Defendant Paddy. *See Iqbal*, 556 U.S. at 676 (holding that in the context of constitutional claims, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Additionally, Plaintiffs' previous admissions in this case foreclose the argument that Defendant Paddy provided the tip to Officer Kaskavage based on his retaliatory animus stemming from Plaintiffs' DEA Letter.  Put differently, Plaintiffs argue that Defendant Paddy formed retaliatory animus because he knew about the DEA Letter and thereafter, conveyed a tip to improperly chill Plaintiffs' activism.  (Doc. 118, 4:20-23).  Plaintiffs' Fourth Amended Complaint states that the DEA Letter was dated January 8, 2020, the same date that Defendant Paddy provided the tip to Officer Kaskavage.  (Doc. 118, 4:20-25; Doc. 109, ¶¶ 125, 159, 195; Doc. 39-2, p. 2; Doc. 39-3, pp. 15-16) [1].  This does not support the argument that Defendant Paddy provided the tip as a reaction to the DEA letter.  In fact, in their Reply In Support of Preliminary Injunction (Doc. 52), Plaintiffs admit that while the DEA Letter was dated January 8, 2020, a copy was not emailed to the DEA until January 9, 2020.  (Doc. 52, 3:7, Doc. 52-1, p. 4; Doc. 52-5, p. 3).  Moreover, the email was not addressed to Defendant Paddy.  (Doc. 52, 3:13-4:1).  Finally, pleadings establish that the mailed copy of the letter, also not addressed to Defendant Paddy, was not delivered to

---

[1] "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

the DEA until January 10, 2020—two days after he conveyed the tip.  (Doc. 52, 3:7-12; Doc. 52-1, p. 2; Doc. 52-4, p. 2).  Thus, by Plaintiffs' own admission, Defendant Paddy could not have provided the tip to Officer Kaskavage as a result of retaliatory animus because at the time he forwarded the tip, he could not have known of the DEA Letter.

**B.  Plaintiffs' Allegation that Defendant Paddy Used a DEA Confidential Informant Fails to Establish Retaliatory Animus**

Plaintiffs argue that "Agent Paddy develop[ed] animus toward Plaintiffs and use[d] a confidential informant to plant a tip."  (Doc. 118, 4:16-17).  As a preliminary matter, Plaintiffs' claim that Defendant Paddy developed retaliatory animus and then decided to cultivate and use a DEA confidential informant to vent that retaliatory animus is unsupported by the Fourth Amended Complaint.  (*Cf.* Doc. 109, ¶¶ 161-195).  Plaintiffs' theory requires that Defendant Paddy first, develop retaliatory animus, presumedly based on his knowledge of the Petition, and second, utilize Najjer as a confidential informant to vent his retaliatory animus by planting the tip.  However, as stated above, *supra § I(A)*, Plaintiffs fail to adequately allege how Defendant Paddy became aware of the Petition that served as the basis of his alleged retaliatory animus.  Thus, Defendant Paddy could not have vented his retaliatory animus by planting a tip through a confidential informant because he had no knowledge of Plaintiffs' Petition.

Confusingly, the Fourth Amended Complaint presents a timeline wherein Najjar, working as a DEA confidential informant, was the source of the DEA's knowledge of Plaintiffs' Petition. (Doc. 109, ¶ 193).  Again, the DEA's alleged knowledge of the Petition is insufficient to establish Defendant Paddy's knowledge.  *See Iqbal*, 556 U.S. at 676.  Additionally, this theory is incompatible with Plaintiffs' allegation that Najjer was recruited by the DEA for a retaliatory purpose because it requires that Najjer was a confidential informant prior to the DEA having a basis to develop retaliatory animus based on the Petition.  (Doc. 109, ¶¶ 162, 166, 168, 187).

Accordingly, Plaintiffs fail to demonstrate that they are entitled to relief because they have not adequately pled that Defendant Paddy harbored retaliatory animus as a result of Plaintiffs' Change.org Petition or the DEA letter.  *See Talk Radio Network Ent's v.*

- 3 -

*Cumulus Media Inc.*, 271 F. Supp. 3d 1195, 1207 (D. Or. 2017) (citing *Twombly*, 550 U.S. at 557 for the proposition that "a pleading must be 'plausibly suggesting (not merely consistent with)' behavior to satisfy threshold pleading standards."); *Iqbal*, 556 U.S. at 678 ("[t]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

Plaintiffs also argue that Defendant Paddy's failure to investigate the tip before providing it to Officer Kaskavage supports the proposition that Defendant Paddy planted the tip through the improper use of a confidential informant.  (Doc. 118, 6:18-21). Notwithstanding the Fourth Amended Complaint's failure to establish Defendant Paddy's animus based on his knowledge of the Petition or DEA Letter, Defendant Paddy had no duty to investigate the tip because the DEA did not open a criminal investigation.  (*Cf.* Doc. 109, ¶¶ 195, 201-202, 238-240, 242).  To the extent there was a duty to investigate the tip, Defendant Shay and the Maricopa County Defendant satisfied that duty by conducting an extensive investigation prior to applying for a search warrant. *See Alabama v. White*, 496 U.S. 325, 329 (1990) (recognizing that an anonymous tip may be corroborated with further investigation).

As additional evidence of Defendant Paddy's alleged animus, Plaintiffs argue that he characterized the tipster as "anonymous" as opposed to disclosing him as a confidential informant as a means to improperly "indulge[] in a presumption of validity."  (Doc. 118, 6:28).  Plaintiffs are not entitled to this conclusion.  As the United States Supreme Court has recognized, anonymous sources, without corroboration, "provide[] virtually nothing from which one might conclude that [the source] is either honest or his information reliable."  *White*, 496 U.S. at 329 (1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 227 (1983)).  In contrast, a tip by a confidential informant may be considered to have more credibility if "a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality." *Gates*, 462 U.S. at 233.  Accordingly, presenting the tip to Officer Kaskavage as "anonymous" did not improperly bolster the

credibility of the tip.

**C.     Plaintiffs' Allegation that Defendant Paddy Improperly Passed on the Tip Fails to Establish Retaliatory Animus**

Plaintiffs argue in the alternative, "that even if Paddy did not plant the tip, he utilized it as a vehicle for DEA's retaliatory animus." (Doc. 118, 7:1-5). Specifically, Plaintiffs assert that the following demonstrate the "DEA['s] retaliatory animus against [Plaintiffs]: (1) Defendant Paddy improperly characterized his action as "forward[ing] the information to Phoenix Police Department" (Doc. 118, 7:6-10); (2) "DEA Agents encourage each other to be cynical about religious ceremonies" (*id.* at 7:16-17); (3) Defendant Paddy's salary and lack of experience motivated him to improperly utilize the tip (*id.* at 7:21-8:5); and (4) Defendant Paddy lacked proper training due to the DEA "[having] two separate 'acting' DEA Administrators . . . and a rotating cast of characters at the upper levels of the Department of Justice" (*id.* at 8:6-12).

As a preliminary matter, Defendant Paddy reiterates that the DEA's alleged retaliatory animus cannot be attributed to Defendant Paddy, who is being sued in his individual capacity. *See Iqbal*, 556 U.S. at 676 (holding that in the context of constitutional claims, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Further, none of the speculative and conclusory arguments presented by Plaintiffs support the proposition that Defendant Paddy had retaliatory animus and improperly provide the tip based on the retaliatory animus because they do not overcome the threshold issue that Plaintiffs' Fourth Amended Complaint fails to adequately plead that Defendant Paddy was aware of the Petition or DEA Letter, which were the alleged bases his animus.

**D.     Defendant Paddy's Reference to "Ayahuasca Ceremonies" Does Not Demonstrate Retaliatory Animus**

Finally, Plaintiffs argue that Defendant Paddy's retaliatory animus is shown because when he provided the tip, he had "actual knowledge that [Plaintiffs'] activities were protected religious activities." (Doc. 118, 8:14-9:8). Defendant Paddy's reference to "Ayahuasca Ceremonies," however, does not establish retaliatory animus.

Here, it is undisputed that at the time of the tip, Plaintiffs did not have a RFRA

1    exception to the Controlled Substances Act ban on DMT, a substance found in Ayahuasca.

2    (Doc. 109, ¶¶ 31-158).   Further, simply because other religious groups have obtained an

3    exception for Ayahuasca use, does not provide a blanket exception to Plaintiffs.  *Gonzales*

4    *v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006) (recognizing

5    that courts must engage in a "case-by-case consideration of religious exemptions to

6    generally applicable rules").

7           Plaintiffs' RFRA and § 1983 claims against Defendant Paddy are predicated on the

8    allegation that he acted based on retaliatory animus that developed from his knowledge of

9    Plaintiffs' Petition and DEA Letter.   However, because Plaintiffs' Fourth Amended

10   Complaint fails to adequately plead how Defendant Paddy became aware of either the

11   Petition or DEA Letter, Plaintiffs' claims against Defendant Paddy fail.

12   **II.    Plaintiffs Fail to State a Claim Under RFRA Because He Did Not
            Substantially Burden Plaintiffs' Exercise of Religion**

13          Plaintiffs argue that Defendant Paddy's action in providing the tip substantially

14   burdened the exercise of their religion because he provided the tip knowing of Plaintiffs'

15   religious activities and with the intent to chill their religious practice. (Doc. 118, 10:27-

16   11:12).   Essentially, Plaintiffs' argument is that because their conduct was religiously

17   motivated, Defendant Paddy violated RFRA as soon as he provided the tip to Officer

18   Kaskavage.   However, it is undisputed that at the time of the tip, Plaintiffs did not have a

19   RFRA exception to the Controlled Substances Act's ban on DMT, a substance found in

20   Ayahuasca tea.  Accordingly, at the time of the tip, Plaintiffs had not invoked RFRA against

21   the United States as either a claim or defense.  *United States v. Christie*, 825 F.3d 1048,

22   1055 (9th Cir. 2016) ("Moreover, RFRA is explicit that such right may be invoked against

23   the government as either a 'claim or defense,' *id*. § 2000bb–1(c), a sword or a shield.").

24   Further, simply because other religious groups have obtained an exception for Ayahuasca

25   use, does not provide a blanket exception to Plaintiffs.  *O Centro Espirita Beneficente*

26   *Uniao do Vegetal*, 546 U.S. at 436 (recognizing that courts must engage in a "case-by-case

27   consideration of religious exemptions to generally applicable rules").

28          Moreover, as the Ninth Circuit articulated in *United States v. Christie*, RFRA does

- 6 -

not prohibit the United States "from prosecuting a particular defendant who engages in religiously motivated but otherwise unlawful conduct." *Christie*, 825 F.3d at 1062.  In *Christie*, the criminal defendants were two ministers in the Hawaii Cannabis Ministry. *Id.* at 1052.   The defendants claimed that "consumption, possession, cultivation and distribution of Cannabis [was] essential" to their religious practice.  *Id.*   The federal government opened a criminal investigation, which led to charges under the Controlled Substances Act.  *Id.* at 1054.  The defendants ultimately entered into plea agreements.  *Id.* On appeal, the criminal defendants presented RFRA as a defense and argued that "RFRA blocks the government from prosecuting them now because it failed to alert them to its ongoing investigation."  The Ninth Circuit dismissed the argument, holding that (1) the Controlled Substances Act provided notice, (2) RFRA does not compel the government to provide notice even "in those cases where the government is aware of the possibly religious nature of the offensive conduct," and (3) RFRA does not prohibit the government "from prosecuting a particular defendant who engages in religiously motivated but otherwise unlawful conduct." *Christie*, 825 F.3d at 1062.

Plaintiffs next claim that their exercise of religion was substantially burdened because the tip directly led to the search of Plaintiff Villanueva's property (*id.* at 11:27-13:25).  However, because the causal relationship between the tip and Plaintiffs' injuries was disrupted by the intervening and independent actions of Defendant Shay, namely his investigation (Doc. 109, ¶¶ 195, 201-202, 238-240) and application for a search warrant (*id.* at ¶ 242), Defendant Paddy's conduct did not substantially burden Plaintiffs' exercise of religion.

In response, Plaintiffs argue the causation standard articulated in *Stevenson v. Koskey* does not apply to RFRA cases because it was decided four years before RFRA and that no cases cite to *Stevenson* to determine causation in a RFRA context.  (Doc. 118, 12:23-13:1).  This is incorrect.  Defendant Paddy's Motion to Dismiss specifically cited to *Wong v. United States*, 373 F.3d 952, 977 (9th Cir. 2004), which stated that the standard articulated in *Stevenson* applied to determine "whether the complaint adequately allege[d]

a causal relationship between the actions of the individual INS officials and [claimant's] detention-based injuries for RFRA purposes." Furthermore, the citations in support of Plaintiffs' causation argument are inapposite. Plaintiffs cite to *Ethernal Word TV Network, Inc. v. Sec'y of the U.S. HHS*, 818 F.3d 1122, 1199 (11th Cir. 2016), for the proposition that common law principles of causation do not apply to RFRA analysis. (Doc. 118, 13:1-12). Not only is *Ethernal Word TV Network, Inc.* a non-binding out-of-district decision, but Plaintiffs also specifically refer to the dissenting opinion. Plaintiffs also cite to *Wieland v. U.S. HHS*, 793 F.3d 949, 954 (8th Cir. 2015), for the proposition that the standard for causation in a RFRA claim is "fairly traceable." (Doc. 118, 13:13-19). However, *Wieland* applied the "fairly traceable" standard of causation in the context of determining whether the plaintiffs had Article II standing to bring suit. *Id.*; *cf. Isabel v. Reagan*, 394 F. Supp. 3d 966, 973 (D. Ariz. 2019), *aff'd on other grounds*, 987 F.3d 1220 (9th Cir. 2021) (citing *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir. 2008) for the proposition that "[t]he Ninth Circuit has held that the 'Article III causation threshold' is 'less rigorous' than proximate causation"); *id.* (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) ("[T]he test for whether a complaint shows the 'fairly traceable' element of Article III standing imposes a standard lower than proximate cause.").

### III.    Defendant Paddy is Entitled to Qualified Immunity[2]

#### A.    Defendant Paddy Did Not Personally Participate in the Alleged Violation of Plaintiffs' Rights

Plaintiffs assert that the Fourth Amended Complaint adequately establishes that

---

[2] Plaintiffs argue that it is inappropriate for the Court to decide whether Defendant Paddy is entitled to qualified immunity on a motion to dismiss. (Doc. 118, 14:14-23). However, a court may dismiss a complaint based on qualified immunity if it can determine "based on the complaint itself, that qualified immunity applies." *Williams v. Cty.*, No. 2:15-CV-01760-SU, 2016 WL 4745179, at *4 (D. Or. Sept. 12, 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)); *id.* (string citations for the proposition that qualified immunity may be decided on a Rule 12(b)(6) motion). Moreover, qualified immunity is not merely immunity from liability, but from all "burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal citation omitted)). Thus, consideration on a motion to dismiss is appropriate.

1   Defendant Paddy personally participated in the violation of Plaintiffs' RFRA and
2   constitutional rights because Defendant Paddy "knowingly and willfully triggered" the
3   investigation based on retaliatory animus.  (Doc. 118, 15:7-10).  However, once again, the
4   Fourth Amended Complaint fails to establish that Defendant Paddy acted based on any
5   retaliatory animus.  (*Supra § I(A)*).  Further, Defendant Shay's independent actions in
6   investigating Plaintiff Villanueva, applying for a search warrant, executing the search
7   warrant, and arresting Plaintiff Villanueva break any causal chain related to Defendant
8   Paddy providing the tip.  (*Supra § II*).

9          Plaintiffs argue that qualified immunity is not available at this stage because
10  Defendant Paddy's "motive" or "state of mind" is a disputed element of Plaintiffs' RFRA
11  and § 1983 claims.  (Doc. 118, 15:11-27).  However, the Court need not reach the issue of
12  Defendant Paddy's state of mind to determine whether qualified immunity applies to
13  Plaintiffs' claims.  Here, Plaintiffs' RFRA and § 1983 claims against Defendant Paddy
14  amount to a retaliatory search warrant claim.  As such, to maintain his claim, Plaintiff must
15  demonstrate a lack of probable cause to support the issuance of the search warrant.  *See*
16  *e.g. Pataky v. City of Phoenix*, No. CV-09-01483-PHX-JAT, 2009 WL 4755398, at *5 (D.
17  Ariz. Dec. 8, 2009) (recognizing that because the search warrant was supported by probable
18  cause, plaintiff failed to state a claim for First and Fourth Amendment violations); *Sterner*
19  *v. United States Drug Enf't Agency*, No. 05CV0196 JAH (POR), 2007 WL 9776396, at *10
20  (S.D. Cal. June 1, 2007) (applying *Hartman v. Moore*, 547 U.S. 250 (2006) and holding
21  that plaintiff must demonstrate a lack of probable cause to maintain his First Amendment
22  retaliation claim for the criminal investigation and execution of search warrants); *Fredin v.*
23  *Clysdale*, No. 18-CV-0510, 2018 WL 7020186, at *7 (D. Minn. Dec. 20, 2018) (drawing
24  analogy to *Hartman* to find that First Amendment retaliation claim failed as a matter of
25  law due to existence of probable cause for search warrant).

26         Plaintiffs' Response is non-responsive on this point.  Instead, Plaintiffs claim that
27  dismissal is not appropriate because they should be provided the opportunity to develop

28

the facts regarding Defendant Paddy's "unlawful motives."[3]  (Doc. 118, 16:15).  Defendant

Paddy reasserts his arguments that the search warrant was based on probable cause.  (Doc.

111, 13:15-14:27).  Further, Defendant Paddy incorporates by reference Defendant Shay's

arguments that the search warrant was issued based on probable cause.  (Doc. 110; Doc.

121).

> **B.    No Clearly Established Law Supports Plaintiff's Claim Against Defendant Paddy.**

A right is clearly established when "[t]he contours of the right [are] sufficiently clear

that a reasonable official would understand that what he is doing violates that right."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Here, Plaintiffs must provide Supreme

Court or Ninth Circuit case law that clearly establishes a RFRA right for an individual to

be free from a federal law enforcement officer passing on a tip, whether anonymous or

from a confidential informant, to a state and/or local law enforcement agency.  Plaintiffs

fail to do so.  None of the cases cited by Plaintiffs would have placed Defendant Paddy on

notice that his alleged conduct was unlawful because they do not address the factual context

of this case. (Doc. 118, 16:16-17:25).  Although there need not be a case directly on point,

"existing precedent must have placed the . . . constitutional question beyond debate."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  To be clearly established, the law must be

particularized to the facts of the case so that the unlawfulness is apparent.  *White v. Pauly*,

137 S. Ct.  at 551-52 (2017); *Devereaux v. Abbey,* 263 F.3d 1070, 1075 (9th Cir. 2001) (en

banc) ("[W]hat is required is that government officials have 'fair and clear warning' that

their conduct is unlawful.") (citation omitted).

Instead, relying on *O Centro Espirita Beneficente Uniao do Vegetal* and *Church of

the Holy Light of the Queen,* Plaintiffs argue that the law is clearly established that "sincere

religious groups may practice their religion by ingesting Ayahuasca."  (Doc. 118: 14-18.)

Plaintiffs' reliance on these cases and their argument are both inapplicable in this qualified

immunity analysis because they do not address the specific conduct that they allege

---

[3]  Defendant Paddy has already demonstrated that the Fourth Amended Complaint fails to adequately plead that he had the requisite prior knowledge of the Petition or DEA Letter on which to establish his alleged retaliatory animus.

violated their civil rights.  Similarly, Plaintiffs' arguments regarding retaliatory arrest, investigatory tactics, and fabrication of evidence are also unavailing.  It is undisputed that, Defendant Paddy did not arrest anyone, participate in any investigation, or fabricate evidence.  Since there is no clearly-established law showing that Defendant Paddy's conduct violates Plaintiffs' rights, Defendant Paddy is shielded by qualified immunity.

## IV.   Defendant Paddy Did Not Act Under Color of State Law for Purposes of 42 U.S.C. § 1983

Plaintiffs argue that Defendant Paddy acted under the color of state law because he initiated the investigation into Plaintiffs based on the DEA's retaliatory animus and "communicated to Officer Kaskavage that the DEA wished for HIDTA to conduct a search of Villanueva's home." (Doc. 118, 18:16-19).  Plaintiffs § 1983 claim against Defendant Paddy suffers from the same deficiencies as his RFRA claim, specifically that the Fourth Amended Complaint fails to adequately plead Defendant Paddy's alleged retaliatory animus and that any causal relationship between Defendant Paddy's actions and Plaintiffs alleged injuries are broken by Defendant Shay's independent actions.  Further, Plaintiffs fail to establish that Defendant Paddy and the other named defendants formed a "meeting of the minds" as to demonstrate a conspiracy.

## V.   Conclusion[4]

Based on the foregoing, Defendant Paddy respectfully requests that the Court grant his Motion to Dismiss Plaintiffs' Fourth Amended Complaint.

---

[4]  In their Response, Plaintiffs state that they are entitled to money damages on their RFRA claim based on *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020). (Doc. 118, 10:8-14).  Plaintiffs ask the Court to provide "declaratory relief under RFRA because Paddy's actions on the Villanueva matter constitute an ongoing and continuing threat to the religious rights of [Plaintiffs]." (Doc. 118, 12:19-22).  Plaintiffs' arguments are non-responsive and irrelevant to Defendant Paddy's Motion to Dismiss.  Further, Plaintiffs may not use their Response to Defendant Paddy's Rule 12(b)(6) Motion to Dismiss to obtain judgment on claims.  Fed. R. Civ. P. 12(b)(6); *Cf.* Fed. R. Civ. P. 56 ("A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.").

Respectfully submitted on 10th day of August, 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

*s/ Kwan Piensook*
KWAN PIENSOOK
Assistant U.S. Attorney
*Attorneys for Defendant Paddy*

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on August 10, 2021, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants in this case:

5

JOHN SULLIVAN (CSB#204648) *Pro Hac Vice*
10857 Kling Street

6

North Hollywood, California 91602
Tel:818-769-7236 Fax:818-301-2175

7

Email:Sullivan.John84@gmail.com

8

CHARLES H CARREON
Charles Carreon Attorney at Law

9

3241 E Blacklidge Dr.
Tucson, AZ 85716

10

*Attorneys for Plaintiffs Arizona Yagé Assembly,*
*North American Association of Visionary Churches,*

11

*Clay Villanueva, and the Vine of Light Church*

12

LISA NEWMAN
US Dept of Justice - Civil Division - Fed Programs - L St.

13

1100 L St. NW, Rm. 12304
Washington, DC 20005

14

Tel: 202-514-3183 Fax: 202-616-8470
Email: lisa.n.newman@usdoj.gov

15

*Attorney for Defendants William Barr; Uttam Dhillon*
*Acting Administrator, U.S. Drug Enforcement Administration;*

16

*Chad Wolf, Acting Secretary, Department of Homeland Security;*
*Mark Morgan, Acting Commissioner, U.S. Customs and Border Protection;*

17

*the United States of America; Jeffrey A. Rosen, Acting Attorney General;*
*Timothy J Shea, Acting Administrator, U.S. Drug Enforcement Administration*

18

19

EVAN F. HILLER
JEFFREY S. LEONARD

20

Sacks Tierney PA
4250 N Drinkwater Blvd., 4th Fl.

21

Scottsdale, AZ 85251-3647
Tel: 480-425-2652 Fax: 480-970-4610

22

Email: evan.hiller@sackstierney.com
       jeffrey.leonard@sackstierney.com

23

*Attorneys for Defendants Maricopa County, Matthew Shay*

24

DREW CURTIS ENSIGN
Office of the Attorney General - Phoenix

25

2005 N Central Ave.
Phoenix, AZ 85004-1592

26

Email: drew.ensign@azag.gov
*Attorney for State of Arizona, Mark Brnovich*

27

*s/Kwan Piensook*

28

U.S. Attorney's Office

- 13 -