JOHN SULLIVAN (CSB#204648)
17532 Miranda Street
Encino, CA 91316
Tel:818-769-7236
Email:Sullivan.John84@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Church,
Clay Villanueva, and the Vine of Light Church

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Arizona Yagé Assembly, North American
Association of Visionary Churches, Clay
Villaneuva, and the Vine of Light Church,

        Plaintiffs,

        vs.

Merrick Garland, Attorney General of the
United States, *et al.*,

        Defendants.

**Case No.:20-CV-02373-ROS**

MEMORANDUM IN SUPPORT OF
MOTION TO CONSOLIDATE

## I.    INTRODUCTION

Plaintiffs Arizona Yagé Assembly ("AYA") and North American Association of Visionary Churches ("NAAVC") are two religious nonprofit corporations whose religious exercise, and that of their member churches and congregants, is substantially burdened by laws prohibiting importation, distribution, and possession of Ayahuasca, an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act 21 U.S.C. § 801 et. seq. (the "CSA").  Plaintiffs AYA and NAAVC filed the instant lawsuit (the "RFRA case") on May 5, 2020, seeking religious exemptions from the proscriptions of general law.

Two weeks after the RFRA case was filed, on May 19, 2021, a joint Federal/State Task Force retaliated by raiding the church-residence of Clay Villanueva, a founding board member of NAAVC.  On June 16, 2020, Plaintiffs amended the operative

Complaint to add Clay Villanueva and the Vine of Light Church Plaintiffs and add a 42 U.S.C. § 1983 claim against the Federal and State defendants.

When it became clear that Plaintiffs' claims would not likely be dismissed, law enforcement at the State level initiated the first in a series of attacks on Plaintiff Clay Villanueva.  On May 3, 2021, the State of Arizona filed a civil forfeiture action in the Superior Court for Maricopa County (the "Forfeiture case").   The Forfeiture case arose solely from the illegal search of his residence in May 2020 (discussed at length in the Second, Third and Fourth Amended Complaints) and not any other action Villanueva took in the twelve months after the government's retaliatory search.  On July 23, 2021, Mr. Villanuva filed a notice of removal in the Forfeiture case.  *See Arizona v. $8,025.00 in U.S. Currency et al.*, Case No. 21-cv-01278-JAT (D. Ariz.).

The Forfeiture action seeks to dispossess Mr. Villanueva of his personal residence – the house that he purchased in 2003 for $147,000 with a loan guaranteed by the United States Department of Veterans Affairs.  According to the State's complaint, forfeiture is appropriate because Mr. Villanueva is an Arizona drug kingpin.  The complaint includes the knowingly false allegation that Villanueva was manufacturing DMT in his house, and the patently absurd allegation that the HIDTA task force seized $4 million worth of drugs during the raid.  *See* Exhibit 1 (Complaint in Forfeiture case, Docket 1-1, at ¶¶ 19, 41).  In fact, the estimated value of the Ayahuasca that Villanueva imported from Peru for religious purposes is approximately .003% of the amount alleged by the State.  *See* Exhibit 2 (Dkt. No. 15 in Forfeiture case, at page 10).

As discussed in detail below, Federal Rule of Civil Procedure 42(a) strongly encourages consolidation where, as here, there is substantial overlap of facts and law in the two Federal cases.  *First*, both cases were precipitated by the same event: the retaliatory conspiracy that culminated into the illegal search and seizure on May 19, 2020.  *Second*, both cases will require the Court to determine whether the May 19 search was made in bad faith and for retaliatory purposes.  *Third*, both cases will require testimony from the same witnesses to establish what happened before and up to May 19:

Clay Villanueva, Clay Villanueva's spouse, Matthew Shay, and the HIDTA task force members who participated in the raid.  *Fourth*, both cases concern the same personal property: the seized currency that Maricopa County claims is contraband is the same property that is being sued in the forfeiture action.  *Fifth,* both cases will require the Court to determine whether adherents to Visionary Religion such as Clay Villanueva have the legal right to freely exercise their religion by holding Ayahuasca ceremonies.

In light of this substantial overlap of facts and law, the risk of inconsistent adjudication is rife if the cases are not consolidated.  If the cases kept separate and decided by two different Federal judges – or one Federal and one State judge – the decisional results could diverge, nullifying each other and setting up a contest that in itself violates comity.  Because entry of judgment in the Forfeiture case could dispose of issues central to the prior-filed RFRA case and deprive Villanueva of his day in court, this Court should grant this motion and consolidate the matters.

## II.   RULE 42(a) PERMITS CONSOLIDATION OF PENDING CASES FOR ALL PURPOSES WHERE, AS HERE, THE CASES SHARE COMMON ISSUES OF LAW OR FACT

### A.  Rule 42(a) Strongly Favors Consolidation

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).  The threshold inquiry under Rule 42(a) is whether the "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a).  Then, Courts "balance the interest of judicial convenience against the potential for delay, confusion and prejudice that may result from such consolidation."  *Dishon v. Gorham*, No. CV-16-04069-PHX-ROS, 2018 U.S. Dist. LEXIS 152059, at *12 (D. Ariz. Sept. 5, 2018) (internal quotation omitted).

Rule 42(a) encourages entertaining the broadest possible scope of action consistent with fairness to the parties, and consolidation of claims, parties and remedies is strongly encouraged. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966); *Invs. Rsch. Co. v. U.S. Dist. Court*, 877 F.2d 777, 777 (9th Cir. 1989). Consolidation is so highly favored that a district court can consolidate related cases under Federal Rule of Civil Procedure 42(a) *sua sponte*. *See In re Adams Apple*, 829 F.2d 1484, 1487 (9th Cir. 1987).

This District Court has broad discretion to decide whether consolidation under Rule 42(a), and consent of the parties is not required to accomplish consolidation. *See generally* 9A Fed. Prac. & Proc. Civ. Sec. 2382 (3d ed. 2019); *Tully Constr. Co. v. Cannonsburg Env't Assocs.* (*In re Cannonsburg Env't Assocs.*), 72 F.3d 1260, 1262 (6th Cir. 1996) (determining that although neither party requested consolidation, authority to consolidate related matters was routinely granted to courts). Importantly, Rule 42(a) does not prevent a court from consolidating cases even where additional claims are present. *See Griffey v. Magellan Health Inc.*, No. CV-20-01350-PHX-MTL (Cons), 2020 U.S. Dist. LEXIS 187382, at *2 (D. Ariz. Oct. 8, 2020) (consolidation of two related cases where one of the cases contained additional claims).

## B. There is Substantial Factual and Legal Overlap Between the Two Federal Cases

There is substantial overlap between the above-captioned RFRA case and the Forfeiture case (*Arizona v. $8,025.00 in U.S. Currency et al.*, Case No. 21-cv-01278-JAT (D. Ariz.)). Both actions will require the presiding Court to hear the same evidence, adjudicate the same facts, and decided the same questions of law.

*First*, both cases were precipitated by the same event: the retaliatory conspiracy that culminated into the illegal search and seizure on May 19, 2020. In the RFRA case, Plaintiffs allege that the illegal search and seizure carried out by the joint Federal/State HIDTA task force on May 19 was motivated by retaliatory

animus.  As a direct result of the May 19 raid, Plaintiff brought claims under 42 U.S.C. § 1983, RFRA, trespass, battery, conversion and replevin, battery, negligence, loss of consortium and declaratory relief.  In the Forfeiture case, the State alleges that the illegal search and seizure produced evidence of racketeering offenses, drug offenses, and money laundering offenses.  As a direct result of the May 19 raid, the State brought *in personam* and *in rem* forfeiture claims against Clay Villanueva, U.S. currency seized during the raid, and the real property where the raid occurred.  In short, there is substantial overlap because the exact same events gave rise to both Federal cases.

*Second*, both cases will require the Court to determine whether the May 19 search was made in bad faith and for retaliatory purposes.  In the RFRA case, allegations that the May 19 search was made in bad faith and for retaliatory purposes is central to the 42 U.S.C. § 1983 claim and important for the remaining claims.  Similarly, in the Forfeiture case, the ownership of the real property being sued will turn on the lawfulness of the search because, if its unlawful, there is no evidence upon which to claim the forfeiture.

*Third*, both cases will require testimony from the same witnesses to establish what happened before and up to May 19: Clay Villanueva, Clay Villanueva's spouse, Matthew Shay, and the HIDTA task force members who participated in the raid.  These witnesses will be called upon to testify about the same events – specifically, the events leading up to and culminating in the illegal search and seizure on May 19.

*Fourth*, both cases concern the same personal property.  In the RFRA action, the decision by Maricopa County and Matthew Shay to seize U.S. currency during the raid led to claims by the Plaintiffs for conversion and replevin.   In the Forfeiture action, the State of Arizona is seeking to forfeit the exact same property seized by Maricopa County and Matthew Shay on the same day.

*Fifth*, both cases will require the Court to determine whether NAAVC members (including the Vine of Light Church and Clay Villanueva) have the legal right to freely exercise their religion by holding Ayahuasca ceremonies.  If the Court determines that

NAAVC members can freely exercise their religion by holding Ayahuasca ceremonies, then the Plaintiffs in the RFRA case (NAAVC, AYA, and Clay Villanueva) will succeed on their claims, and the Plaintiff in the Forfeiture case (the State of Arizona) will fail.

### C. <u>Consolidation is Necessary to Avoid the Risk of Inconsistent Adjudication</u>

The purpose of consolidation is to enhance efficiency and avoid the danger of inconsistent adjudication.  *See, e.g.,* E*EOC v. HBE Corp.,* 135 F.3d 543, 550 (8th Cir. 1998); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993).  "'The risk of inconsistent adjudications of common factual and legal issues' generally weighs in favor of consolidation."  *Williams v. Ulibarri*, No. CV-20-0068-PHX-MTL (DMF), 2021 U.S. Dist. LEXIS 71986, at *11 (D. Ariz. Apr. 13, 2021) (quoting *Williams v. Ulibarri*, No. CV-20-0068-PHX-MTL (DMF), 2006 U.S. Dist. LEXIS 21234, at *1 (D. Ariz. Apr. 13, 2021)); *see also Save Our Sonoran v. Flowers*, No. CV-05-3924-PHX-SRB, 2006 U.S. Dist. LEXIS 111160 (D. Ariz. Dec. 21, 2006) (citing *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993)).

From his first appearance as a personal litigant in this action in the First Amended Complaint (Docket # 12), Clay Villanueva has sought the Court's protection from the attacks on his life, liberty and property by Maricopa County and the Arizona Attorney General.  These attacks commenced with the unlawful raid on his home on May 19, 2021, which was carried out for retaliatory purposes to punish him for Free Exercise of Religion and the Right to Petition for Redress from Grievances.  Over a year after his filing of that First Amended Complaint, and a short time before the expiration of the old, punitive forfeiture statute, the Arizona Attorney General filed the Forfeiture case.  The same factual and legal questions will determine the outcome of both cases, and the risk of inconsistent adjudications is so high as to be virtually guaranteed, if two jurists attack the same problems from different approaches.  Inconsistent adjudications will result in

judicial confusion in pretrial, trial, post-trial, and appellate proceedings, and must be avoided to prevent the wholesale waste of judicial resources and lawyer time. Moreover, differing results could nullify each other and set up a contest that in itself violates comity. For this reason, this Court should consolidate the actions to ensure that the overlapping factual and legal issues are resolved in the first-filed action.

### D.  The Efficiencies of Consolidation Outweigh any Inconvenience

Once a party demonstrates that two or more actions "presenting a common issue of law or fact," the court may grant consolidation after "weigh[ing] the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984). The court must engage in a balancing test, looking at "whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982); *see also Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999); *EEOC v. HBE Corp.*, 135 F.3d 543, 550-551 (8th Cir. 1998); *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993).

In exercising its discretion whether to consolidate these actions, the Court should consider the following factors:

*First*, consolidation of these two cases will eliminate the need to pursue duplicative or repetitive discovery that would be inevitable in the absence of consolidation. *See Griffey*, 2020 U.S. Dist. LEXIS 187382, at *5-6 (consolidating cases because doing so would avoid duplicative discovery, motion practice, and trials).

*Second*, consolidation of these two cases will also eliminate any undue duplication or repetition of motions, case management issues, and trial. Given the substantial overlap in the issues, any motions filed in these cases will likely address substantially overlapping issues of law and fact.  Particularly with respect to whether the religious beliefs of Plaintiffs AYA and NAAVC and their congregants are sincere, litigating the contested legal issues of fact and law once rather than twice is surely in the best interest of all parties and the Court.

*Third*, consolidation will not delay discovery or any case management deadlines in either case.  Discovery has not commenced in either case, and future discovery can be conducted in the consolidated cases without delay.

*Fourth*, consolidation of these claims will be a procedural ruling only and will not affect the substantive rights of any party.  Consolidation does not eliminate any Defendants' ability to defend the RFRA suit or preclude any substantive defense; it simply combines the existing claims into a single, readily accessible, easily understood document, and permits efficient case management and resolution.

*Fifth*, the Hon. Roslyn Silver has already designated any future Habeas cases for direct assignment to her.  *See* Exhibit 3 (Dkt. 131 at page 3).  While her Honor specifically noted that future direct assignments should not be presumed, the consolidation of the Forfeiture case with this one would appear to be in line with the intention of the above-cited Order.

*Sixth*, consolidation will preserve this Court's authority to accord complete justice among all parties to this action, all of whom are currently under the jurisdiction of this Court, with respect to the disposition of what, prior to May 19, 2021, was unquestionably, Clay Villanueva's real and personal property.

## III.    CONCLUSION

For the foregoing reasons, and all such other reasons as the Court may determine *sua sponte*, the Motion to Consolidate should be granted.

Dated:  October 1, 2021          JOHN SULLIVAN
                                 /s/John Sullivan
                                 JOHN SULLIVAN (127139)
                                 Attorney for Plaintiffs
                                 Arizona Yagé Assembly,
                                 North American Association of Visionary Churches,
                                 and Clay Villanueva