# EXHIBIT B

JOHN SULLIVAN (CSB#204648) Pro Hac Vice
17532 Miranda Street
Encino, California 91316
Tel:818-769-7236 Fax:818-301-2175
Email: Sullivan.John84@gmail.com

Attorney for Clay Villanueva

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

|  |  |
|---|---|
| IN THE MATTER OF: | Case No.21-01278-PHX-JAT |
| APPROXIMATELY $8,025.00 IN U.S. CURRENCY AND OTHER PROPERTY LISTED IN APPENDIX ONE | **RESPONSE TO STATE'S MOTION TO REMAND** |
|  | Removed from: Maricopa County Superior Court Case No. CV2021-007240 |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 3

        A.      Defendant is a Military Veteran, IT Professional, and Spiritual Leader With
                No Prior Criminal Record ............................................................... 3

        B.      Defendant Became a Target of Retaliation by DEA, and then a Plaintiff in a
                Federal lawsuit under RFRA .......................................................... 4

        C.      The State filed a Forfeiture action to Harass Villanueva and Gain Leverage
                Over the RFRA case ....................................................................... 5

        D.      The State Initiated Criminal Charges Against Villanueva, Obtained a
                Warrant, and Kept it Hidden from Defendant ................................. 5

III.    Removal is Proper under 28 U.S.C. § 1443 ........................................... 8

        A.      Villanueva Asserts, as a Defense to the Forfeiture Action, that Arizona is
                Violating his Civil Rights ............................................................... 9

                1.      Arizona is Violating Defendant's equal racial civil rights guaranteed
                        by the Constitution .......................................................... 9

                2.      Arizona is Violating Defendant's civil rights guaranteed by the First
                        Amendment and RFRA .................................................... 12

        B.      The Superseded Arizona Forfeiture Statute Commands the State courts to
                Ignore Federal Rights ................................................................... 14

IV.     Conclusion ............................................................................................ 18

## I.     **INTRODUCTION**

The Arizona Attorney General has filed a sham civil asset forfeiture action in State court against Defendant Clay Villanueva ("Defendant") with retaliatory intent, under a now-repealed forfeiture statute to deprive a Latino Visionary Religion leader free exercise and due process of law.  Defendant is a 60-year-old Latino man and a Minister of the Vine of Light Church.  Villanueva is being targeted because he is Latino and because he is a national leader of the Visionary Church movement in the United States. The Attorney General has acted in bad faith to get to this point, and continues to act in bad faith to multiply litigation to inhibit this Court's ability to adjudicate the matters alleged by Villanueva in the lawsuit filed by Villanueva's interfaith corporate organization just *two weeks* prior to the search of Villanueva's home (the "RFRA Case").

Clay Villanueva is founding member of the Board of Directors of the North American Association of Visionary Churches ("NAAVC"), an organization that filed a Federal lawsuit on May 5, 2020 under 42 U.S. Code § 2000bb–1, the Religious Freedom Restoration Act ("RFRA"), naming the Drug Enforcement Administration ("DEA") as a defendant.  On behalf of its member churches, and in conjunction with Arizona Yage Assembly, representative a member church as co-plaintiff, NAAVC filed suit to protect the right to Free Exercise of Visionary Religion.  The members of AYA and other NAAVC Visionary Churches, ingest Ayahuasca tea to receive the sacrament of visionary communion.  Ayahuasca contains small amounts of Dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act (the "CSA").

Even before he approved filing the RFRA Case, Mr. Villanueva was the focus of law enforcement scrutiny through the efforts of a paid DEA informant who planted a tip with a DEA Agent.  Once the RFRA Case was filed, Villanueva became the prime target of an orchestrated and highly effective effort by Maricopa County and the Arizona

Attorney General to destroy his life. *First*, two weeks after the RFRA Case was filed, a joint Federal/State task force illegally searched his residence under the guise of a warrant that had been obtained through judicial deception. Second, more than a year after the Federal lawsuit was filed – when it became clear that the RFRA case was not going away – the State of Arizona filed the instant civil forfeiture case. Third, the State secretly obtained a warrant for Villanueva's arrest and then failed to take any action that could have put him on notice of the warrant. Then the State had him arrested in Los Angeles for being a fugitive from a warrant he knew nothing about.

Removal is proper because the civil forfeiture action is a pretext for violating Defendant Clay Villanueva's civil rights as protected under RFRA, a statute providing for equal civil rights. Villanueva is being targeted for civil forfeiture because Arizona and Maricopa County law enforcement's legal culture is steeped in *de jure* and *de facto* discrimination against Latinos that reached levels of peak defiance to Federal Court orders during the Arpaio years, and continues to this day. Villanueva has been made the victim of biased enforcement tactics, unlawful evidence gathering, criminal charges filed over a year after the warrant was executed, a failure to timely arraign, imposition of unreasonably high bail, and this forfeiture action, all because Villanueva drew attention to himself as a *bona fide* religious leader whose use of Ayahuasca as a sacramental substance is protected as religious Free Exercise, thereby garnering the retaliatory attention of the DEA. (*See* Exhibit 2, NAAVC's January 8, 2020 Letter to the DEA.)

After suffering the unlawful search of his home pursuant to a bad faith warrant on May 19, 2020, Villanueva joined the RFRA Case to seek protection from future prosecution and protect his rights to use Ayahuasca pursuant to Free Exercise exemptions available federally under RFRA and under state law pursuant to the Arizona Freedom of

Religion Act ("FERA"). Rather than wait for the Federal issues to be adjudicated, the State is attempting to steal his personal residence and upend his life.

## II.   FACTUAL BACKGROUND

### A.  Defendant is a Military Veteran, IT Professional, and Spiritual Leader With No Prior Criminal Record

Defendant Clay Lindell Villanueva is a 60-year-old Latino man who spent seven years serving his country in the Navy as a communications technology specialist, and later became a respected IT professional for over two decades. Defendant is also a Minister of Visionary Religion, the founder of the Vine of Light Church in Arizona, and a Board Member of the North American Association of Visionary Churches ("NAAVC"). Vine of Light Church members use Ayahuasca, an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), as their religious sacrament. In communion ceremonies, congregants pray to receive the transmission of wisdom and Divine Love that comes through sacramental use of Ayahuasca. (Exhibit 1, First Amended Complaint "FAC," ⁋⁋ 42 – 72.)

As a Minister of the Vine of Light Church, Defendant coordinates church activities such as administration, teaching, and ministerial sacraments. He has also provided advice and spiritual counsel to the congregants of the Vine of Light Church, many of whom have written letters attesting to the invaluable guidance and spiritual support Petitioner provides as a Visionary Church Minister. (Exh. 1, ⁋⁋ 182-183; 224-231; Exhibit 8, Letters of Support from Vine of Light Congregation.)

Defendant is a man of modest means. In 2003 he purchased a single-family home at 1134 West Glenrosa Avenue, Pheonix, Arizona (hereinafter the "Glenrosa Avenue Property"), for $147,000 with a $0 down mortgage loan guaranteed by the United States Department of Veterans Affairs. He has lived in this house continuously since 2003, and the house currently has an approximate market value of $375,000. Prior to his illegal arrest in 2020, Defendant had no criminal record.

### B. Defendant Became a Target of Retaliation by DEA, and then a Plaintiff in a Federal lawsuit under RFRA

Defendant became a target of the Drug Enforcement Agency ("DEA") in 2019 when the NAAVC began publicly advocating for the religious rights of its members to use Ayahuasca. NAAVC began pursuing an activist mission to engage the DEA on policy issues, and to that end, circulated an online petition to the DEA demanding that the agency alter its policies towards NAAVC and other Visionary Churches. NAAVC also sent a detailed, lengthy letter to the DEA in early January 2020 that requested changes in the DEA's policies toward NAAVC member churches, such as Petitioner's Vine of Light Church. (Exh. 1, FAC, ¶¶ 184-189, Dkt. # 12.)

On May 5, 2020, Defendant – in his capacity as a board member of NAAVC – authorized the filing of Federal case in the Northern District of California styled *Arizona Yage Assembly et al. v. Barr*, Case No. 3:20-cv-03098-WHO (N.D. Cal.). Less than two weeks after NAAVC filed its complaint, at the behest of a DEA agent, Maricopa County Sherrif's Office ("MCSO") retaliated against Petitioner by procuring a search warrant to search Defendant's church-residence. The search warrant was based on fabricated evidence that Defendant had an illegal drug lab and was manufacturing DMT. The warrant contained blatant falsehoods and material omissions, and was only obtained through judicial deception. (Exhibit 1, FAC ¶¶ 189; 194-200, Dkt. # 12.)

Two weeks later, on May 19, 2020, Defendant was the victim of an illegal search by a Federal/State task force that executed an armed raid on his church-residence, arrested him, and seized his religious sacrament. The pretext for the raid was a fabricated "anonymous tip" that Defendant was manufacturing DMT in a drug lab at his residence. This fabricated tip was never corroborated by any physical evidence or witness statements, and investigators never attempted to arrange a "controlled buy," which is the gold standard for drug investigations. (Exhibit 1, at *id.*).

Petitioner has never been involved in maintaining a drug lab or manufacturing of DMT, and the HIDTA task force found no evidence of such activity when they searched

his residence.  (Exh. 6, Excerpted M. Shay Dec., ⁋ 34, Dkt. 39-1.)  As a result of the illegal and unconstitutional search, Defendant joined the RFRA case as a named Plaintiff, alleging RFRA, FERA, and 42 U.S.C. § 1983 claims against the Federal and State defendants.

### C.  The State filed a Forfeiture action to Harass Villanueva and Gain Leverage Over the RFRA case

In December 2020, the RFRA case was transferred from the Northern District of California to the District of Arizona.  On March 22, 2021, Maricopa County filed a motion to dismiss seeking to get dismissed out of the RFRA case.  Plaintiffs (including Villanueva) filed an opposition memorandum on April 19, 2021.  On May 3, 3021 – a mere two weeks after it became clear that Villanueva's lawsuit against Maricopa County was not going away – the State initiated the removed civil asset forfeiture proceedings against Villanueva.  The forfeiture action contained absurd allegations derived from the search and seizure of Villanueva's residence that had occurred twelve months earlier.

The forfeiture complaint removed to this Court was knowingly, falsely verified by the Asst. Attorney General Mukai Amoo, who suborned perjury from a reliable source – Maricopa County Det. Gabriel Almanza, who has previously been found to have perjured himself by signing a false probable cause affidavit in support of a felony complaint accusing Superior Court Judge Gary Donahoe of Bribery. (Exhibit 10, ⁋⁋ 314; 325-328; 477.)  Lisa Aubuchon, who suborned Almanza's perjury, and her boss, Maricopa County Attorney Andrew P. Thomas, were disbarred.  (Exh. 10, page 232.) Almanza continues working in the place he called "Bizarro World." (Exh. 10, page 232; page 243, note 749.)

### D.  The State Initiated Criminal Charges Against Villanueva, Obtained a Warrant, and Kept it Hidden from Defendant

The Civil Forfeiture action was just one part of the coordinated attack on Clay Villanueva's civil rights.  The State has also attempted to overwhelm and harass Defendant using the criminal courts.  Specifically, in August 2021, Defendant was

framed as a "fugitive" by Maricopa County and the Arizona Attorney General, and jailed for 30 days.  (Exhibit 7, Ex Parte Application for Writ of Habeas Corpus (the "AWHC").

After the illegal search and seizure on his residence in May 2020, Defendant did what all persons at risk of criminal accusation should do – he secured counsel.  Shortly after the May 19, 2020 search of his home, Defendant retained attorney Richard Gaxiola to represent him.  Until the end of July, 2021, Mr. Gaxiola kept an eye on the Maricopa County criminal calendar for any charges against "Clay Villanueva."  After more than a year passed without any charges, Mr. Gaxiola withdrew from representation, at the end of July 2021, explaining to Villanueva that no prosecution had been filed.  (Exhibit 5, Declaration of R. Gaxiola.)

Defendant did not believe he was at risk of prosecution because attorneys for Maricopa County represented in Federal Court that Villanueva was not at risk of imminent prosecution.  Defendant had asked the Federal Court for an injunction against further State proceedings until his Federal rights had been adjudicated, and Maricopa County opposed the injunction on the grounds that Villanueva was not at risk of imminent prosecution. (Exh. 9, Excerpted, 1; 8; 15.)   On June 15, 2021, Maricopa County attorney Evan Hiller represented to this Court and Villanueva that:

- "The criminal investigation of Villanueva (and the search of his property, and the seizure of his contraband) has already occurred; *there is no plausible basis to conclude that an injunction against [Detective Matthew] Shay himself would be necessary (or, for that matter, effective) to address the highly speculative 'threat' alleged by Plaintiffs.*"  *Arizona Yage Assembly et al. v. Garland*, 20-cv-02373-ROS (D. Ariz.) at Dkt. 110 at page 8 (emphasis added).

- "First, *Plaintiffs have failed to plausibly allege that future injuries are 'real and immediate' rather than 'conjectural or hypothetical.'*"  *Id.* at Dkt. 110 at page 15 (emphasis added).

On August 23, 2021, Petitioner was arrested at Los Angeles International Airport ("LAX") for being a "fugitive" from an arrest warrant as he was trying to board a plane to Peru to participate in religious ceremonies.  (Exhibit 4, Supp. C. Carreon Dec., Dkt. # 129-4, page 3 of 39, People of California v. Villanueva, Felony Complaint BA497967.)

The arrest warrant from Maricopa County was assigned Case No. 2021-001611-001 (the "Arrest Warrant Case"), and bears a "Court Ordered Date" of June 9, 2021. (Exhibit 4, Supp. C. Carreon Dec., Dkt. # 129-4, page 18 of 39.)  The Arrest Warrant Case was intended to be kept secret from Defendant and his attorneys, in order to trap Defendant in a fiasco that would result in his lengthy incarceration without charges. Accordingly, in a completely unusual deviation from standard criminal case-filing practice, the Arrest Warrant Case was begun as a separate criminal action under a different case number from the case in which the Search Warrant was issued.  (Exhibit 7, AWHC, page 8 – 10.)

The putative warrant bears the date June 9. 2021, and per court records, the charging document was issued the same date.  (Exhibit 4, Dkt. # 129-4, page 18.) Accordingly, under Arizona Rule of Criminal Procedure 14.2(1)(b), because Petitioner was not in custody, the Petitioner was required to be arraigned "no later than thirty (30) days after the filing of an indictment, information, or complaint."  In order to deprive Petitioner of his civil rights to notice and an opportunity to respond to the charges, no arraignment of Petitioner was scheduled in the Arrest Warrant Case.  (Exhibit 4, C. Carreon Dec. ¶ 6.)  Not on June 9, 2021, or on any other date within sixty days.  On the comprehensive list of criminal defendant court hearings in Maricopa County Superior Court on June 9, 2021, the name Villanueva does not once appear.  (Exhibit 4, Dkt. (Exhibit 4, Dkt. # 129-4, page 23.)  Petitioner never failed to appear at any criminal court hearing, and never "fled" from charges that he didn't know anything about.

On August 22, 2021, Defendant attempted to travel to Peru to augment his holistic treatment regimen for cancer and to lead Ayahuasca ceremonies for the congregants of his Vine of Light Church.  (Exhibit 7, page 9 – 10.)  Defendant was detained by the Department of Homeland Security, and then completely deprived of his right under the Fourteenth Amendment to due process and an opportunity to be heard on the issue, and was charged with a Felony Complaint by the People of the State of California in Case

No. BA497967. (Exhibit 4, Docket (Exhibit 4, Docket 129-4, page 3 of 39.) Petitioner was thus "framed" as a fugitive by Maricopa County and the Arizona Attorney General.

The forfeiture action that Defendant is attempting to remove is just one part of a broader scheme to discriminate against Defendant and deprive him of his civil rights.

## III. Removal is Proper under 28 U.S.C. § 1443

A defendant who cannot enforce his civil rights in state court may remove a civil action or criminal prosecution to Federal court. *See* 28 U.S.C. § 1443. Section 1443 provides, in pertinent part

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending: (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof . . . .

28 U.S.C. § 1443(1).

A petition for removal must be granted where, as here, the Defendant can satisfy the two-part test articulated by the Supreme Court in *Georgia v. Rachel*, 384 U.S. 780, 788-92 (1966) and *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 824-28 (1966). *See Patel v. Del Taco, Inc.*, 446 F.3d 996, 998-99 (9th Cir. 2006). First, the petitioner must assert, as a defense to the prosecution, rights arising under a federal statute providing for specific civil rights stated in terms of racial equality. *Id.* (quoting *California v. Sandoval*, 434 F.2d 635, 636 (9th Cir. 1970)). Second, the petitioner must assert that the state courts will not enforce these civil rights and must cite a state statute or constitutional provision that purports to command the state courts to ignore them. *Id.* Because Defendant can satisfy the two-part test, this Court should accept removal.

**A. Villanueva Asserts, as a Defense to the Forfeiture Action, that Arizona is Violating his Civil Rights.**

1. Arizona is Violating Defendant's equal racial civil rights guaranteed by the Constitution

The Fourteenth Amendment to the United States Constitution limits the power of state governments to discriminate by explicitly prohibiting states from violating an individual's rights of due process and equal protection. In addition, the Supreme Court has identified a specific civil right not to be prosecuted solely on the basis of one's race. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962) ("[T]he decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification.")). Defendant asserts that Arizona has brought this forfeiture case against him in order to violate his civil rights.[1]

The State's prosecution of Villanueva is reminiscent of Jim Crow-era prosecutions in the Southeastern United States. The Arizona Attorney General ("AG") targeted Villanueva for being Latino. Committed to *de jure* and *de facto* discriminatory policies, the Arizona AG will not recognize that Villanueva is a Visionary Church Minister, leading a sincere congregation in the practice of visionary communion using Ayahuasca as a sacrament. Rather, the Arizona AG has alleged that Villanueva is a drug kingpin, despite his total lack of criminal history or indicia of drug dealing. Differential arrests and prosecution remain a powerful means of social control in the "José Crow" Southwestern United States.[2]

---

[1] Separately, Defendant has asserted a 42 U.S.C. § 1983 claim against Maricopa County and a Detective in the Maricopa County Sheriff's Office ("MCSO") for their role in the illegal search and seizure of his residence in May 2020. *See Arizona Yage Assembly et al. v. Garland*, 20-cv-02373-ROS (D. Ariz.).

[2] *See generally* Robert Alvarez, "Jim and Jose Crow: Conversations on the Black/Brown Dialogue," JOURNAL OF ASIAN AND AFRICAN STUDIES, Vol 51, Issue 3 (2016) *available* at https://doi.org/10.1177/0021909615612111; Richard Delgado, "The Law of the Noose: A

In the same way that Southeastern law enforcement authorities refuse to believe that Black Americans could be legitimate businessmen and must be drug dealers, the State of Arizona uses the civil asset forfeiture statute to seize and sell the land of Latinos who are suspected of "participating" in a crime. Often without any evidence of a crime, police confiscate the homes and savings of innocent Latinos rumored to have some involvement with drugs, with profits flowing to law enforcement budgets. Here, there is no evidence that Villanueva participated in an illegal drug trade. There is no controlled drug buy (the gold standard in drug investigations), no testimony from purported co-conspirators, no surveillance video footage showing illegal activity, and no witness testimony other members of the MCSO.

Nevertheless, Arizona has moved forward with an asset forfeiture suit because facts do not matter as much as pervasive racial targeting and asset acquisition. The absurdity of the allegations in the Complaint betrays the Arizona Attorney General's discriminatory motives in this case. *First*, the forfeiture Complaint alleges that "[i]nvestigators found one hundred (100) pounds of DMT ayahuasca in powder, liquid, and paste form." State investigators and prosecutors are well aware that Ayahuasca and Ayahuasca paste contains only a small amount of DMT. Nonetheless, the complaint falsely describes the substance as pure DMT and then uses that false description to estimate the value of the Ayahuasca seized at $4 million. One hundred pounds of DMT, or 45,359.24 grams, could conceivably sell, one gram at a time, for a total of $4 million. However, the value of the Ayahuasca and Ayahuasca paste seized from Mr. Villanueva is approximately .003% of the value alleged in the complaint. Thus, in the Removed

---

History of Latino Lynching HARVARD CIVIL RIGHTS-CIVIL LIBERTIES LAW REVIEW 44, 297-312 (2009); William Carrigan and Clive Webb Forgotten Dead: Mob Violence Against Mexicans in the United States (2013)

Action, Villanueva is ethnically caricatured as a Latino drug dealer with <u>four million dollars in drugs</u> in his house, including one hundred pounds of pure DMT and 3,6000 grams of "hash oil."

*Second*, the Complaint alleges that State investigators seized "approximately three thousand, six hundred (3,600) grams of hash oil. State investigators and prosecutors are well aware that the oil seized from the property was infused cooking oil used to make salves, ointments, and cookies. Nevertheless, the complaint falsely describes the substances as hash oil and then uses that false description to exaggerate the extent of Villanueva's activities. This statement can be no accident because the lead investigator on the Villanueva case – Detective Matthew Shay – promotes himself as an expert on the manufacture and purification of narcotic cannabis.[3] Rather, this statement was made as part of a deliberate effort to deceive the prejudice the Court.

*Third*, the State filed its Seizure Notice without affording due process of law – either in Federal court in the pending RFRA case or by obtaining a criminal conviction in State court. If Villanueva were Caucasian, the Arizona Attorney General likely would have allowed the Federal case to be adjudicated before attempting to seize Villanueva's home. However, because Villanueva is Latino, the Attorney General had no qualms about filing a forfeiture case in order to punish Defendant without having to afford him due process of law.

In conclusion, Defendant has met the criteria for removal under § 1443(1) because Defendant states in his notice of removal that he has asserted, as a defense to prosecution,

---

[3] At least one website explains that Detective Shay "has developed some specific expertise on marijuana production, cultivation and sales as well and the manufacture and purifying of narcotic cannabis as well as the various crimes that surround those activities. He is generally considered and consulted as a state wide expert on Marijuana Production, Illicit Narcotic cannabis labs, and the Arizona Medical Marijuana Act as it impacts law enforcement." *See* http://www.ecsforall.org/detective-matthew-shay.html

rights arising under a federal statute providing for specific civil rights stated in terms of racial equality.

2. <u>Arizona is Violating Defendant's civil rights guaranteed by the First Amendment and RFRA</u>

The civil rights removal statute authorizes removal of a case from state to federal court where a person has been "denied or cannot enforce in the courts of [a] State" a civil right of equality (the "denial" clause). 28 U.S.C. § 1443. On its face, the language of Section 1443 is not limited to racial equality. However, more than 50 years ago, the Supreme Court improvidently allowed the applicability of the "denial" clause to turn on the nature of the alleged substantive rights violation. *See Georgia v. Rachel*, 384 U.S. 780, 788-92 (1966).

It is Defendant's legal position that *Rachel* was wrongly decided and the applicability of the "denial" clause should not depend on the substance of the state alleged violation. A more appropriate construction of the "denial" clause would dictate that removal be allowed when a state defendant is asserting a right under a law providing for equal civil rights, and he can establish that he will be denied that right in the state proceeding. Here, the "denial" clause should be construed to authorize pretrial removal because Defendant's conduct is protected by a federal right of equality, and state procedures are so defective that the Defendant will be unable to adequately vindicate his applicable federal substantive rights in the state system. There is here a good faith argument for an extension of the law, and Villanueva submits that, given the manner in which the Supreme Court has become a vigilant guardian of equal civil rights for the religious community, a broader interpretation of "equal civil rights" under 28 U.S.C. § 1443(1) could well result in a timely re-evaluation of the *Rachel* decision in light of the Court's re-invigorated Free Exercise jurisprudence. *Eg., Tandon v. Newsom,* 141 S. Ct. 1294 (2021)("government regulations … trigger **strict scrutiny** under the Free Exercise

Clause, ***whenever they treat any comparable secular activity more favorably than religious exercise***).

Several United States Courts of Appeals have directly questioned the holding of *Rachel.* For example, the Fourth Circuit recently issued a decision questioning *Rachel* and the Supreme Court's limitation of the removal statute to cases involving racial inequality: "We agree with the Board that the plain text of the statute suggests a broader interpretation of 'equal civil rights.' 28 U.S.C. § 1443(1). The statute does not specify 'racial equality;' it includes 'any law providing for . . . equal civil rights.' *Id.* But it is the Supreme Court's decision, not ours, as to whether the interpretation in *Rachel* is worth revisiting. . . . To be clear, we do not endorse *Rachel's* reasoning or conclusion. But we are bound to apply it." *See Vlaming v. W. Point Sch. Bd.*, 2021 U.S. App. LEXIS 24958, __ F.4th __ (2021).

In *Rachel*, the Supreme Court purported to trace the phrase "racial equality" back to its legislative origins in the Revised Statutes of 1874, when the removal provision was separated from the substantive provisions of the Civil Rights Act of 1966. *See Rachel*, 384 U.S. at 789. However, the accuracy of the Supreme Court's interpretation of the drafters' intent to limit civil rights removal to rights protecting racial equality is suspect. According to one commentator, "[t]he racial criterion [of *Rachel*] is particularly suspect in view of the legislative history of the Civil Rights Acts of 1866 and 1870. While the principal rights provided with removal protection by these statutes are admittedly expressed in terms of racial equality, it is also true that one specifically defined right in the 1870 Act relating to the protection of aliens was not couched in terms of racial equality nor was a determination of racial discrimination requisite to its invocation." *See* Note, "Federal Jurisdiction: The Civil Rights Removal Statute Revisited," 1967 DUKE L.J. 136, 158-59. Despite the fact that there is no textual support – and little legislative

history support – for limiting the removal statute to "racial equity" cases, Federal courts since *Rachel* have allowed resort to the "denial" clause only in the instances when claims arise under racially oriented statutes.

Defendant seeks an expansion of the "denial" clause, and intends to make such an argument, if necessary, at the Ninth Circuit and the Supreme Court.  Here, the "denial" clause should be extended to his civil rights to freely exercise his religion as protected by the First Amendment Free Exercise clause and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb-1(c).

### B.  The Superseded Arizona Forfeiture Statute Commands the State courts to Ignore Federal Rights

Defendant can satisfy the second part of the removal test because the Arizona state court will not enforce his civil rights due to the superseded Arizona forfeiture statute that still applies to the Defendant in this case.

Law enforcement officers have abused civil asset forfeiture laws for decades.[4] Arizona, until recently, was one of two states that allowed seizure income to fund officer and Attorney General salaries, a lucrative system wherein police and the Attorney General's Office were heavily incentivized to seize and forfeit property.  These laws were challenged in Federal lawsuits documenting the negative incentives and abuses.  *E.g.*, *Cox v. Voyles*, Case No. 2:15-cv-013860-DJH (D.Ariz.).[5]

Arizona forfeiture laws have been applied in a racially discriminating manner for decades, as part of a broader campaign to wage a war of attrition against Latino persons

---

[4] *See, e.g.,* LEONARD W. LEVY, A LICENSE TO STEAL: THE FORFEITURE OF PROPERTY 1 (1996) ("Law enforcement agencies -- federal, state, and local – perpetrate astonishing outrages on owners of private property through forfeitures); DICK M. CARPENTER II ET AL. POLICING FOR PROFIT: THE ABUSE OF CIVIL ASSET FORFEITURE (2D EDITION 2015) (discussing the negative incentives created by forfeiture laws and abuses by law enforcement).  *See generally* Asset Forfeiture Abuse, www.aclu.org/issues/criminal-law-reform/reforming-police/asset-forfeiture-abuse.

[5] Complaint available at www.aclu.org/legal-document/cox-v-voyles-et-al-complaint.

using mass roundups, home invasions, unlawful racial profiling, random stops, and the use of deportation as a weapon to:

    a. Target Latinos who attempt to press their claims lawfully for additional unconstitutional law enforcement actions, as happened to Villanueva in this case. The more he tried to petition the DEA, the more they wanted to search his house at gunpoint.

    b. Target Latino individuals for Forfeiture Proceedings to exploit the higher likelihood that the defendant will be unable to defend his property, because they sometimes have language barriers, they almost never obtain counsel, and in virtually all cases, they prefer to abandon a just claim for return of their property in order to avoid increased police scrutiny in their lives.

    c. Target Latino neighborhoods for drug raids like the RAID, focused on seizing the real estate for Forfeiture Proceedings;

    d. Target Latino individuals in traffic stops based on racial profiling to seize vehicles, even though statistically, it is more likely that automobiles with persons of other races will contain contraband;

    e. Target Latino individuals for arrests in hopes of instigating deportations, so that they will be unable to contest Forfeiture Proceedings;

Recognizing that Arizona's forfeiture laws were being abused and likely violated Federal law, the entire Arizona legislature came together to amend Arizona's unfair and unconstitutional forfeiture laws in 2021. In February 2021, the Arizona House of Representatives passed House Bill 2810 by a vote of 57-2, with every Republican and most Democrats supporting the legislation. On May 5, 2021, Governor Doug Ducey signed HB2810 into law. Although signed into law before Arizona filed its forfeiture Complaint in this case, the law goes into effect on the date of this filing – September 27, 2021. Since today marks the last day when the Attorney General can bring a forfeiture actions without first convicting the defendant of a crime, it explains why, a year after the search of Villanueva's home, there was sudden rush to file this forfeiture action.

## IV.  **Remand Would be Futile**

A motion to remand can be denied on futility grounds "where there is absolute certainty that remand would prove futile."  *See Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991).  Here, remand would prove futile because the State of Arizona has not met basic jurisdictional requirements.   Under Arizona forfeiture laws, the State cannot commence a forfeiture proceeding in Maricopa County without filing and serving a verified complaint.  Arizona has represented to this Court that it filed a verified complaint, *see* Docket No. 11, but the State has failed to serve a copy of any such verified complaint on Defendant pursuant to Arizona Rule of Civil Procedure 4.1.  In light of the State's failure to file and serve a verified complaint, remand would prove futile and the State's motion to remand should be denied.

Even if the State eventually meets its filing and service obligations, it is absolutely certain the complaint will be dismissed because the verification of the facts in the complaint was false and fraudulent.  Assuming, *arguendo*, that Detective Gabriel Almanza signed the blank "Verification" attached to the complaint, this document cannot serve as the basis for State court jurisdiction.  Almanza's false swearing to the facts alleged in the Forfeiture Complaint provided only the appearance of a "Verified Complaint," when in truth and in fact, being falsely sworn, therefore void, this document did not create lawful jurisdiction in state court.

Among the falsehoods that Detective Gabriel Almanza verified were:

- "Investigators found one hundred (100) pounds of DMT ayahuasca in powder, liquid, and paste form."  At the time he allegedly signed the verification, Detective Gabriel Almanza State knew that Ayahuasca and Ayahuasca paste contains only a small amount of DMT.
- The value of drugs seized from Villanueva was approximately $4 million.  At the time he allegedly signed the verification, Detective Gabriel Almanza knew that real value was less than 1% of the amount he verified in the complaint.
- State investigators seized "approximately three thousand, six hundred (3,600) grams of hash oil."   At the time he allegedly signed the verification, Detective Gabriel Almanza knew that the oil seized from the property was infused cooking oil and not hash oil.

This is not the first time Detective Gabriel Almanza has sworn to a false complaint.  In 2010, Almanza signed a criminal complaint under oath that was filed by

now-disbarred Maricopa County Attorney Andrew Thomas.  Almanza verified a criminal complaint accusing a judge of bribery, when he of no crime the judge had committed.  Further investigation by an Independent Counsel revealed that the County Attorney knew the allegations in the Complaint were false at the time he ordered Almanza to verify the false allegations in a Complaint.  (Exhibit 10, Opinion and Order Imposing Sanction; ¶¶ 314; 325-328; 477.)

## V.     The Court may Exercise Supplemental Jurisdiction

This action is based on the same incident and contentions as *Arizona Yage Assembly et al. v. Garland*, 20-cv-02373-ROS (D. Ariz.); thus, this Court may exercise supplemental jurisdiction over the removed claims.  Although supplemental jurisdiction does not provide an independent basis for removal, *see Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34 (2002), this Court can exert supplemental jurisdiction over the State's forfeiture claims.  Villanueva joined the Federal lawsuit, *Arizona Yage Assembly et al. v. Barr*, Case No. 3:20-cv-03098-WHO (N.D. Cal.), as a plaintiff on June 16, 2020, asserting claims arising out of the illegal search of his residence.  The case was then transferred to the District of Arizona on December 8, 2020.  *See Arizona Yage Assembly et al. v. Garland*, 20-cv-02373-ROS (D. Ariz.).  Arizona did not initiate forfeiture proceedings – which arose out of the same subject matter as the Federal lawsuit – until May 3, 2021.  Thus, from the initiation of the lawsuit on June 16, 2020, until May 3, 2021, the forfeiture action could have been filed in Federal Court.  Indeed, once served in the RFRA Action, the State should have filed the Removed Action as a compulsory counterclaim under F.R.Civ.P. 13.  *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (an action may not be maintained where the claims asserted should have been brought as compulsory counterclaims in a prior action).  Given the overlap of facts and issues, the values of judicial economy, convenience, fairness and comity dictate that this Court should accept removal and exercise supplemental jurisdiction over the forfeiture claims.

## VI. __Conclusion__

For the foregoing reasons, Defendant respectfully requests that this Court accept removal.

Dated: September 27, 2021

/s/ John Sullivan

JOHN SULLIVAN (CSB#204648) Pro Hac Vice
17532 Miranda Street
Encino, California 91316
Tel:818-769-7236 Fax:818-301-2175
Email: Sullivan.John84@gmail.com

*Attorney for Clay Villanueva*