JOHN SULLIVAN (CSB#204648)
17532 Miranda Street
Encino, CA 91316
Tel:818-769-7236
Email:Sullivan.John84@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Church,
Clay Villanueva, and the Vine of Light Church

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Arizona Yagé Assembly, North American
Association of Visionary Churches, Clay
Villaneuva, and the Vine of Light Church,

        Plaintiffs,

vs.

Merrick Garland, Attorney General of the
United States, *et al.*,

        Defendants.

Case No.:20-CV-02373-ROS

## PLAINTIFF ARIZONA YAGE ASSEMBLY'S
## MOTION AND MEMORANDUM IN SUPPORT
## FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Arizona Yage Assembly ("AYA") moves the Court for a preliminary injunction to enjoin Defendant Merrick Garland as Attorney General for the Department of Justice ("DOJ") and Administrator Anne Milgram as the Administrator of the Drug Enforcement Agency ("DEA") from prosecuting AYA and its members for importing or ingesting sacramental Ayahuasca. AYA also moves under Rule 65 for a preliminary injunction that would enjoin Defendant Troy Miller as Acting Commissioner of the United States Customs and Border Protection ("CBP") and Defendant Alejandro Mayorkas as the Secretary of Homeland Security ("DHS") from confiscating sacramental Ayahuasca that was shipped

to AYA.  Pursuant to Local Rule 7.2(b) this motion is supported by the following Memorandum of Points and Authorities.


Dated:  November 8, 2021                    JOHN SULLIVAN
                                            /s/John Sullivan
                                            JOHN SULLIVAN (127139)
                                            Attorney for Plaintiffs
                                            Arizona Yagé Assembly,
                                            North American Association of Visionary
                                            Churches, and Clay Villanueva

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I.   INTRODUCTION ......................................................................................1

II.  FACTS ......................................................................................................1

   A.   Plaintiff AYA ...................................................................................1

   B.   Ayahuasca is Not a Drug of Abuse and the Risk of Diversion to the Illicit Markets is Extremely Low .................................................................................2

   C.   The Federal Defendants Have Substantially Burdened AYA's Religious Free Exercise ...3

   D.   AYA and NAAVC Filed Suit to Protect their Rights to Free Exercise............................4

   E.   AYA Sought a Preliminary Injunction in this Case to Prevent Prosecution and Interference While Its Rights were Being Adjudicated....................................................6

   F.   AYA Relied upon Defendants' Representations and Assurances that Plaintiffs Did Not Face the Threat of Imminent Prosecution...........................................................7

   G.   AYA Has Established a Reasonable Fear of State Court Prosecution by DEA-Funded HIDTA Task Forces .............................................................................7

III. A PRELIMINARY INJUNCTION SHOULD ISSUE AGAINST BOTH DEA AND DHS ..................................................................................................9

   A.   AYA is Entitled to an Order Preliminarily Enjoining DEA and DOJ from Prosecuting – or aiding State Prosecutions – of AYA for Use of Sacramental Ayahuasca ...................10

      1.   AYA will likely succeed on the merits of its RFRA action against DEA and DOJ ......10

      2.   AYA has Suffered Irreparable Harm and Is Likely to Continue Suffering Irreparable Harm ....................................................................................13

      3.   The Balance of the Equities Tips in AYA's Favor.......................................14

      4.   An Injunction Against DEA and DOJ is in the Public Interest.....................................14

      5.   The Injunction Should Prohibit DEA and DOJ from Providing Information or Otherwise Assisting State Prosecutions ...............................................14

   B.   AYA is Entitled to an Order Preliminarily Enjoining DHS from seizing Sacramental Ayahuasca and Providing No Opportunity for AYA to Recover its Property.................16

      1.   AYA is Likely To Prevail on Their Claims Against DHS...........................................16

      2.   AYA Will be Irreparably Harmed Because DHS Will Continue Seizing and Destroying AYA Sacrament Unless Enjoined ...................................................16

      3.   The Balance of the Equities Tips in AYA's Favor.......................................17

      4.   An Injunction against DHS Will Serve the Public Interest...........................................17

IV.  CONCLUSION............................................................................................17

# TABLE OF AUTHORITIES

21 U.S.C. § 801 ................................................................................................ 1

42 U.S.C. § 1983 .............................................................................................. 6

42 U.S.C. § 2000bb-1 ................................................................................. 4, 10

*Allentown Mack Sales & Serv. v. NLRB*,
    522 U.S. 359 (1998) ................................................................................ 17

*Burwell v. Hobby Lobby Stores*,
    573 U.S. 682 (2014) ................................................................................ 12

*Church of the Holy Light of the Queen v. Mukasey*,
    615 F. Supp. 2d 1210 (D. Or. 2009) ....................................................... 11

*Elrod v. Burns*,
    427 U.S. 347 (1976) ................................................................................ 13

*Espinoza v. Mont. Dep't of Revenue*,
    140 S. Ct. 2246 (2020) ............................................................................ 12

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ................................................................................ 12

*Leary v. United States*,
    395 U.S. 6 (1969) ........................................................................ 7, 8, 9, 15

*Navajo Nation v. U.S. Forest Serv.*,
    535 F.3d 1058 (9th Cir. 2008) ................................................................ 10

*O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*,
    389 F.3d 973 (10th Cir. 2004) (en banc).................................................. 14

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418, 425 (2006) ............................................................ 4, 5, 11, 14

*Oklevueha Native Am. Church of Haw., Inc. v. Lynch*,
    828 F.3d 1012 (9th Cir. 2016) ........................................................... 10, 11

*Sequoyah v. Tenn. Valley Auth.*,
    620 F.2d 1159 (6th Cir. 1980) .................................................................. 2

*Shank v. Corizon Inc.*,
    2020 U.S. Dist. LEXIS 173836 (D. Ariz. Sept. 2, 2020) ........................ 10

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
 709 F.3d 1281 (9th Cir. 2013) ................................................................. 9

*Tandon v. Newsom*,
 141 S. Ct. 1294 (2021) .................................................................... 12, 13

*Trinity Lutheran Church of Columbia Inc. v. Comer*,
 137 S. Ct. 2012 (2017) ........................................................................ 12

*U.S. EPA v. Env't Waste Control, Inc.*,
 917 F.2d 327 (7th Cir. 1990) ............................................................... 17

*United States v. Ballard*,
 322 U.S. 78 (1944) ........................................................................... 1, 2

*United States v. Christie*,
 825 F.3d 1048 (9th Cir. 2016) ................................................ 2-3, 3, 12, 13

*Winter v. NRDC, Inc.*,
 555 U.S. 7 (2008) ............................................................................... 9

## I.   **INTRODUCTION**

This is the second time Arizona Yagé Assembly ("AYA") has moved for a preliminary injunction.  The first motion was denied by Judge Orrick on two grounds: lack of venue and failure to establish a reasonably definite fear of prosecution.  Since Judge Orrick's ruling, proper venue has unquestionably been established and a Plaintiff has been prosecuted, amplifying the already severe burden on AYA's Free Exercise.  Accordingly, AYA seeks a preliminary injunction barring such prosecution by DOJ, DEA, and DHS.

AYA also seeks preliminary relief from DHS and CBP's policy of seizing and destroying all Ayahuasca discovered in the customs process is unlawful because the agency fails to offer AYA any opportunity to establish that it may lawfully import Ayahuasca under RFRA and controlling authorities.  Accordingly, AYA seeks a preliminary injunction barring such unlawful seizures and any prosecution for unlawful importation.

## II.   **FACTS**

### A.  **Plaintiff AYA**

AYA is a Visionary Church that is substantially burdened by laws prohibiting importation, distribution, and possession of Ayahuasca, an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act 21 U.S.C. § 801 et. seq. (the "CSA").

The Visionary Church is unquestionably a "religion" for RFRA and First Amendment Free Exercise Clause purposes.[1]  Although Visionary Churches have no written scriptures or officially promulgated doctrine, its adherents share beliefs in Divine Love and spiritual powers.  *See* Exhibit 1 (Declaration of Winfield Scott Stanley III [hereinafter "Stanley Decl."] at ¶ 12, 17).  AYA members put Visionary Church beliefs at

---

[1] Courts may not inquire into the truth or falsity of religious beliefs, *United States v. Ballard*, 322 U.S. 78 (1944), and are generally reluctant to decide a case on the ground that a given system of belief and action is not a "religion."

the center of their spiritual lives in much of the same way that members of the Catholic Fellowship put Catholic Church beliefs at the center of their spiritual lives.  Stanley Decl. at 17.

The sacramental use of Ayahuasca is firmly grounded in the history of the Visionary Church and central to the doctrine and rituals of the religion.  *See Id.* at ¶ 19. AYA members attend all-night Ayahuasca ceremonies, which are solemn events governed by elaborate customs.  *Id.* at ¶ 18.  The very activity of drinking Ayahuasca confirms the Church member's religious intent, because it is a demanding visionary experience that delivers rewards commensurate with sincerity.  *Id.*  Just as peyote lies at the "theological heart" of the Native American Church, Ayahuasca lies at the theological heart of the Visionary Church.  *See Sequoyah v. Tenn. Valley Auth.*, 620 F.2d 1159, 1164 (6th Cir. 1980) ("To forbid the use of peyote is to remove the theological heart of Peyotism.") (quoting *People v. Woody*, 61 Cal. 2d 716, 40 Cal. Rptr. 69, 394 P.2d 813 (1964)).  Indeed, taking Ayahuasca is the very cornerstone of an Ayahuasca-centered Visionary Church gathering and the use of Ayahuasca is the *sine quo non* of AYA and Visionary Churches everywhere.  *See* Stanley Decl. at ¶ 14, 27.

## B.  Ayahuasca is Not a Drug of Abuse and the Risk of Diversion to the Illicit Markets is Extremely Low

Ayahuasca is not listed as a drug of abuse in the latest DEA Resource Guide, *Drugs of Abuse*.[2]  This is because Ayahuasca is almost exclusively consumed in religious ceremonies.  Carreon Decl. at ¶ 5.  Like peyote, Ayahuasca is not a drug of abuse, and courts have recognized that it is not a "recreational drug" and tends not to be diverted into the illicit market.  *See United States v. Christie*, 825 F.3d 1048, 1060-61 (9th Cir. 2016) ("As courts have repeatedly emphasized, cannabis differs critically from peyote and

---

[2] *Drugs of Abuse,* A DEA Resource Guide / 2020 Edition. https://www.dea.gov/sites/default/files/2020-04/Drugs%20of%20Abuse%202020-Web%20Version-508%20compliant.pdf

hoasca precisely because there is a thriving market for diverted cannabis, whereas there is no comparable demand for recreational peyote and hoasca.").

Two other Visionary Churches – UDV and Santo Daime – currently have judicially-mandated CSA exemptions that allow them to import and use Ayahuasca in their religious ceremonies.  These Visionary Churches practice their religion openly and without fear of prosecution.  The exemptions granted to UDV and Santo Daime have not led to diversion into illegal markets, and AYA can be similarly compliant.

### C. The Federal Defendants Have Substantially Burdened AYA's Religious Free Exercise

DEA and DOJ's enforcement of an absolute ban against Ayahuasca has irreparably harmed AYA by forcing them to choose between either abandoning religious principle or risking criminal prosecution.  *See* Stanley Decl. at ¶ 41.  In addition, AYA has been irreparably harmed by DHS and CBP's policy of seizing and destroying all Ayahuasca at the border.  For example, on April 22, 2020, AYA was notified that its joint property, a container of Ayahuasca ordered for the use of NAAVC and AYA, had been labeled contraband and seized by DHS during the customs process.  *Id.* at ¶ 26; Fourth Amended Complaint ("FAC") at ¶ 138.  The Federal Defendants seized similar shipments of Ayahuasca in October 2020, November 2020, and December 2020.  Stanley Decl. at ¶¶ 26-28; FAC ¶ 139-41.  Without access to the Ayahuasca seized by the Defendants, AYA does not have a sacrament to share, and AYA congregants are unable to practice their religion.  Stanley Decl. at ¶ 27.

Each seizure imposes a financial loss on AYA's congregation, and interrupts Free Exercise in much the same way as Catholic Mass would be desecrated by a ban on the distribution of communion hosts.  *Id.* at ¶ 28.  The ceremony simply cannot be held.  *Id.* When AYA is unable to hold ceremonies because its Ayahuasca was seized and destroyed by DHS and/or CBP, AYA's Free Exercise is substantially burdened.  *Id.*

**D.  AYA and NAAVC Filed Suit to Protect their Rights to Free Exercise**

Congress enacted the Religious Freedom Restoration Act ("RFRA") to protect religious groups like Visionary Churches from the very burdens imposed by Defendants in this case.  *See* 42 U.S.C. §2000bb-1(c).  Plaintiff AYA filed the instant lawsuit (the "RFRA case") on May 5, 2020, proactively seeking to protect its religious freedom by requesting an exemption from the proscriptions of general law.

AYA thus follows in the footsteps of two other Visionary Churches that successfully sued the Federal Government to ensure protection their Free Exercise rights. A Visionary Church called Uniao do Vegetal ("UDV") sued CBP after the agency illegally seized sacramental "hoasca"[3] on May 21, 1999.  Affirming the decisions of the District Court and the Tenth Circuit, the Supreme Court applied RFRA strict scrutiny to the Ayahuasca prohibition and found "no indication that Congress, in classifying DMT, considered the harms posed by . . . the circumscribed, sacramental use of hoasca by the UDV."  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 425 (2006).  Thus, "the Government failed to demonstrate, at the *preliminary injunction stage*, a compelling interest in barring the UDV's sacramental use of hoasca."  *Id.* at 439 (emphasis added).

On May 20, 1999, the day before CBP seized the UDV Sacrament, the DEA searched the home of the leader of a Visionary Church of Oregon-based "Church of the Holy Light of the Queen, a congregation organized under the Brazilian "Santo Daime" church.  On March 18, 2009, the U.S. District Court for the District of Oregon held that RFRA protects the Visionary Church's use of Ayahuasca as part of their sincere religious practices.  *Church of the Holy Light of the Queen v. Mukasey*, 615 Supp.2d 1210, 1215 (D. Ore., 2006) (vacated on other grounds).  Both the UDV and Santo Daime Visionary

---

[3] "Hoasca," "ayahuasca" and "yage" are synonyms that refer to the tea prepared from plants native to South America that contains small amounts of DMT.  *See* Ayahuasca, Miriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/ayahuasca (last visited April 19. 2021).

Churches were raided by the DEA during the same two-day period, while both churches believed they were in negotiations with Janet Reno's DOJ.   *See* Exhibit 2 (Declaration of Charles Carreon [hereinafter "Carreon Decl.] at ¶ 8); Exhibit 9.  Thus, absent an injunction, the DEA has demonstrated it will act covertly to seize religious sacrament and substantially burden Visionary Churches.

Where the facts are the same, the results should be the same.  AYA uses sacramental Ayahuasca prepared from the same two plant materials that UDV and Santo Daime use to prepare their Sacramental teas.  *See* Exhibit 4 at ¶ 1.  The plants are gathered in Peru by people familiar with the needs of AYA.  *See id.* at ¶ 2.  AYA's practices are similar to the practices by UDV and Santo Daime and are similarly safe for the congregation.  *See* Stanley Decl. ¶ 20.  The UDV and Santo Daime were both granted religious exemptions, and the same should be granted to AYA.

DEA has erroneously argued that AYA must seek an exemption from DEA pursuant to the agency's purported "Guidance."[4]   *See* Dkt. 112.  However, Congress did not delegate to DEA the authority to evaluate the sincerity of AYA's religion practices, and DEA cannot escape RFRA by fabricating an *ultra vires* regulatory exemption process that purports to do so.  DEA lacks the institutional capacity, the substantive expertise, and the bureaucratic temperament to evaluate claims of religious sincerity and Free Exercise. This is precisely why RFRA did not require exhaustion of administrative remedies.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 434 (2006) (the Controlled Substances Act is "amenable to judicially crafted exceptions" and RFRA "plainly contemplates that *courts* would recognize exceptions – that is how the law works.") (emphasis in original).

AYA hired legal counsel to review the DEA's regulatory process, and ultimately decided against providing inculpatory information to an accusatorial agency that has

---

[4] The Guidance is available at www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2)RFRA_Guidance_(Final)_11-20-2020.pdf

never granted a religious exemption in the 13 years since the putative "Guidance" was first posted on DEA's website.  Stanley Decl. at ¶ 23.

### E.  AYA Sought a Preliminary Injunction in this Case to Prevent Prosecution and Interference While Its Rights were Being Adjudicated

While this case was pending in the Northern District of California, AYA and its co-Plaintiffs sought a preliminary injunction to prevent the Defendants from taking any further prosecutorial steps until his rights under the Religious Freedom Restoration Act and 42 U.S.C. § 1983 were resolved.  *See* Dkt. 22, 33.  Defendants opposed the preliminary injunction on the grounds that Villanueva did not face an "imminent threat of prosecution."  *See* Dkt. 41.  Defendants argued to Judge Orrick there was no risk Plaintiffs would be prosecuted:

- "[A]ttempts by the federal government to seize substances containing DMT occurred before the Supreme Court's ruling in O Centro, which required the DEA to abandon its previous practice of categorically not considering exemptions to the CSA's ban on Schedule I substances. (Dkt. 49, 13:16-20.)

- DEA's lack of history of past prosecution or enforcement of the CSA against ayahuasca use also indicates that Plaintiff faces no genuine threat of imminent prosecution. Plaintiffs do not point to a single federal criminal prosecution relating to ayahuasca. (Dkt. 49, 12:21-24.)

- Arizona Yagé … failed to demonstrate that it faces any genuine threat of imminent prosecution by federal authorities. (Dkt. 49, 1:1-2.)

Judge Orrick relied on the representations by the defendants to deny AYA's motion for a preliminary injunction: "[P]laintiffs have not shown, as they must to obtain a pre-enforcement injunction, that there has been any realistic, imminent threat of prosecution or enforcement action by the federal government."  *See* Dkt. 57 at 23:20-23.

The representations relating to the prospects of prosecution provided to Judge Orrick in the Northern District of California were repeated to this Court.  *See* Dkt. 112 at pp. 15, 17; Dkt 110 at pp. 2, 8. 15.  Yet, just **six days** before counsel for Defendants asked the Court to dismiss the case because no prosecution was imminent – on June 9,

2021 – a grand jury indictment was issued out of the Superior Court for Maricopa County for Plaintiff Clay Villanueva.  Thus, at the same time counsel for DOJ and Maricopa County were making these statements to this Court, employees of the Maricopa County were testifying in a grand jury proceeding against a Plaintiff in this case.[5]

### F.  AYA Relied upon Defendants' Representations and Assurances that Plaintiffs Did Not Face the Threat of Imminent Prosecution

On October 23, 2020, AYA's attorney Charles Carreon sent a letter to Kevin Hancock, then-counsel of record for the Federal Defendants.  The letter stated AYA's intent to rely on the representations and assurances that AYA did not face a threat of imminent prosecution.  *See* Exhibit 18.  Mr. Carreon's letter also clarified AYA's position that Sacramental Ayahuasca intended for use as AYA's communion Sacrament is not lawfully subject to seizure because AYA's importation of the substance is entitled to an exemption as the least restrictive means of accommodating the Government's interest in avoiding diversion of Ayahuasca into illegal markets.  *Id.*

Mr. Hancock rejected AYA's proposal that the Government had represented that AYA "runs no risk of prosecution from its activities."  *See* Exhibit 19.  Rather, Hancock asserted, AYA "'failed to demonstrate a genuine risk of prosecution sufficient to establish an imminent injury' for standing purposes."  *Id.*  In other words, according to Mr. Hancock, Judge Orrick had denied the injunction not because the Court found no risk of imminent prosecution, but rather, because AYA couldn't prove exactly how the Government might be planning to prosecute the religious group.  *Id.*

### G.  AYA Has Established a Reasonable Fear of State Court Prosecution by DEA-Funded HIDTA Task Forces

Plaintiff Clay Villanueva is a Minister of Visionary Religion, the founder of Plaintiff Vine of Light Church in Arizona, and a Board Member of Plaintiff NAAVC.

---

[5]  DEA provocation, funding, and personnel initiated the state court prosecution; accordingly the federal defendants are responsible for the constitutional injury.  *See Leary v. United States*, 395 U.S. 6 (1969).

*See* Carreon Dec at ¶ 13.  Villanueva became a target of the DEA in 2019 when the NAAVC began publicly advocating for the religious rights of its members to use Ayahuasca.  *See* Carreon Dec at ¶ 13-14.  Pursuing an activist mission to engage the DEA on policy issues, NAAVC circulated an online petition on September 17, 2019 (*see* FAC at ¶ 193), to the DEA demanding that the agency alter its policies towards NAAVC and other Visionary Churches.  *See* Carreon Decl. at ¶ 14.  NAAVC also sent a detailed, lengthy letter to the DEA in early January 2020 that requested changes in the DEA's policies. *See* Carreon Dec at ¶ 15.

On May 5, 2020, Clay Villanueva – as a board member of NAAVC – authorized the filing of a Federal case in the Northern District of California styled *Arizona Yage Assembly et al. v. Barr*, Case No. 3:20-cv-03098-WHO (N.D. Cal.).  *See* Carreon Dec at ¶ 16.  Less than two weeks after NAAVC filed its complaint, at the behest of a DEA agent, Maricopa County Sherrif's Office retaliated against Petitioner by procuring a search warrant to search Petitioner's church-residence.  *See* Carreon Decl. at ¶ 17.  The warrant contained blatant falsehoods and material omissions, and was obtained through judicial deception.  *Id.*

On May 19, 2020, Petitioner was the victim of an illegal search by a Federal HIDTA ("High Intensity Drug Trafficking Areas") Task Force that executed an armed raid on his church-residence, arrested him, and seized his religious sacrament.  *See id.* at ¶ 18. The pretext for the raid was a fabricated "anonymous tip" to DEA that Petitioner was manufacturing DMT in a drug lab at his residence.  *Id.*  This fabricated tip was never corroborated by any physical evidence or witness statements, and investigators never even attempted to arrange a "controlled buy," which is the gold standard for drug investigations.  *Id.*

On August 22, 2021, Villanueva attempted to embark on a flight out of Los Angeles for Peru after he was assured by counsel (who reasonably relied on the statements of counsel of record in this case) that he was not facing a threat of imminent

prosecution.  *See* Carreon Decl. at ¶ 19.  Despite suffering from Stage 3 lymphatic cancer, Villanueva was held in State custody for more than 30 days.  *See* Dkt. 125 (Emergency Ex Parte Application for Writ of Habeas Corpus).  Clay Villanueva's health cratered in jail, where he was twice hospitalized at the point of death and then released over the State's objection on a $150,000 property bond.  *See* Carreon Decl. at ¶ 20.  Mr. Villanueva's arrest and incarceration caused him financial hardship and he is still recovering from the emotional abuse he suffered.

AYA has been severely burdened by the heavily armed police raid and subsequent prosecution and incarceration of a co-Plaintiff in this case.  AYA members reasonably believe that DEA will investigate and/or arrest them for freely exercising their religion.  Stanley Decl. at ¶ 41.  Notwithstanding the Government's assertions that Visionary Churches face no "imminent threat of prosecution," the threat of more police raids has forced AYA and other Visionary Churches and congregations into the shadows and underground.  *Id*.

## III.   A PRELIMINARY INJUNCTION SHOULD ISSUE AGAINST BOTH DEA AND DHS

Courts apply the preliminary injunction standard set forth by the Supreme Court in *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  A plaintiff seeking a preliminary injunction must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).  "Under this 'serious questions' version of the sliding-scale test, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element

may offset a weaker showing of another."  *Shank v. Corizon Inc.*, 2020 U.S. Dist. LEXIS 173836 (D. Ariz. Sept. 2, 2020).

### A. AYA is Entitled to an Order Preliminarily Enjoining DEA and DOJ from Prosecuting – or aiding State Prosecutions – of AYA for Use of Sacramental Ayahuasca

#### 1. AYA will likely succeed on the merits of its RFRA action against DEA and DOJ

AYA has filed a RFRA claim and seeks declaratory relief preventing DEA and DOJ from enforcing the CSA in a manner that bars AYA's sacramental use of Ayahuasca.  In light of the statutory language of RFRA, the Supreme Court's holding in *O Centro*, and the Ninth Circuit's principle that accommodations should be granted in materially indistinguishable cases, AYA is very likely to succeed on the merits.

##### a. RFRA was enacted to protect religious groups like AYA from DEA's threats of criminal and regulatory sanctions

Congress enacted RFRA to protect religious groups like AYA from the very burdens imposed by Defendants in this case.  *See* 42 U.S.C. §2000bb-1(c).  RFRA allows plaintiffs to seek protection from laws and regulations that substantially burden Free Exercise by threat of criminal, civil, or regulatory sanctions.  The DEA has no statutory authority under either the CSA or RFRA to regulate Free Exercise by judging which Visionary Church is sincere and which is not.  Rather, the DEA's obligation under RFRA is to avoid placing a "substantial burden" upon religious groups.  *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008).  The Ninth Circuit has repeatedly found that a religious group is "substantially burdened" when a prohibition forces the group to "choose between obedience to their religion and criminal sanction." *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016).

AYA is burdened by DEA and DOJ's enforcement of a complete ban on Ayahuasca use and importation due to the small amount of a Schedule I controlled

substance contained therein.  *See* Carreon Decl. at ¶ 21; Stanley Decl. at ¶ 2.  Without access to Ayahuasca, AYA does not have a sacrament to share and congregants are unable to practice their religion.  Stanley Decl. at ¶ 27.  AYA thus faces the classic Catch-22 dilemma that Congress enacted RFRA to remedy: having to overcome the fear of criminal sanction to practice one's religion.  S*ee Oklevueha*, 828 F.3d at 1016 (finding "substantial burden" where prohibition forces the group to "choose between obedience to their religion and criminal sanction.").  Armed police raids pose an ever-more-common risk of fatal encounters, and have a terrorizing effect that exceeds what might be called a "chilling effect" by an order of magnitude.

AYA is also burdened by a DEA-initiated investigation that led to a heavily armed police raid carried out by Federal/State HIDTA Task Force and then prosecution by State law enforcement.  Stanley Decl. at ¶¶ 39, 41.  In light of these burdens, DEA has clearly violated RFRA and this Court should grant a preliminary injunction because AYA is likely to succeed on the merits of their RFRA claim and be granted a permanent injunction.

### b. *AYA Should be Granted an Exemption Under Controlling Supreme Court Law*

AYA is a sincere religious group, and the Supreme Court has clearly established that sincere religious groups may practice their religion by ingesting Ayahuasca.  *See O Centro*, 546 U.S. at 434.  Three years after *O Centro*, the District of Oregon entered judgment and a permanent injunction against DEA after finding that RFRA requires that Visionary Church Santo Daime be allowed to import and drink Daime tea.  *See Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009) ("Guided by the unanimous decision of the United States Supreme Court in a very similar case, Gonzales v. O Centro, I conclude that the Religious Freedom Restoration Act requires that plaintiffs be allowed to import and drink Daime tea for their religious ceremonies, subject to reasonable restrictions. I will enter a judgment and permanent injunction.").

Since Congress passed RFRA and the Supreme Court decided *O Centro*, two Visionary Churches – UDV and Santo Daime – have practiced their religion openly and without fear of prosecution.  The facts and circumstances of the UDV and Santo Daime cases are indistinguishable from the facts and circumstances of the AYA case.  "RFRA does not allow the government to refuse an accommodation to a group which is materially indistinguishable from one already exempted."  *United States v. Christie*, 825 F.3d 1048, 1059 (9th Cir. 2016).  Thus, under controlling Supreme Court precedent, AYA is likely to succeed in its RFRA claim and be granted the same exemption that was previously granted to other Visionary Churches in the United States.

### c.   DEA's Enforcement of an Absolute Bar Will Not Survive Strict Scrutiny

In the 15 years since the Supreme Court decided *O Centro*, the Supreme Court has repeatedly and consistently protected religious Free Exercise and invalidated Governmental action that does not allow for religious exemptions.  *See, e.g., Burwell v. Hobby Lobby Stores*, 573 U.S. 682 (2014) (Affordable Care Act's requirement of for-profit corporations to supply its employees with contraceptives that go against the owners' beliefs is unconstitutional under RFRA); *Holt v. Hobbs*, 574 U.S. 352 (2015) (Department of Corrections' grooming policy violated an inmate's right to religious exercise); *Trinity Lutheran Church of Columbia Inc. v. Comer*, 137 S. Ct. 2012 (2017) (exclusion of churches from an otherwise neutral and secular aid program violates Free Exercise); *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246 (2020) (state law that provides funding for education but excludes religious education options violations the Free Exercise Clause).

In *Tandon v. Newsom*, the Supreme Court held that government regulations trigger strict scrutiny under the Free Exercise Clause "whenever they treat *any* comparable secular activity more favorably than religious exercise."  141 S. Ct. 1294, 1296 (2021) (emphasis in original).  Because DHS provides exemptions from the CSA to allow the

importation of secular medicines and other controlled substances, the Government is required under *Tandon* to provide the same or similar exemption to allow Visionary Churches to import the Sacrament that is essential to their Free Exercise. The Government "cannot assume the worst when people go to worship but assume the best when people go to work." *Id.* at 1297 (quoting *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020)).

Application of strict scrutiny requires DEA to show that a total prohibition on AYA's use of Ayahuasca is the least restrictive means of advancing a compelling government interest. The Government cannot make such a showing. As discussed above, Ayahuasca is not listed as a drug of abuse in the latest DEA Resource Guide, and there is almost no risk of diversion because Ayahuasca is almost exclusively consumed in religious ceremonies. *See* Section II.B *supra.*; *see also Christie*, 825 F.3d at 1060-61.

The DEA and DHS's total prohibition on AYA's use and important of Ayahuasca is not the least restrictive means of advancing the DEA and DHS's mission to prevent Ayahuasca from being sold in the illegal market. The exemptions granted to Visionary Churches UDV and Santo Daime – exemptions with reasonable restrictions that have proven totally effective in preventing diversion into illegal markets – demonstrate that AYA can be similarly compliant.

2. AYA has Suffered Irreparable Harm and Is Likely to Continue Suffering Irreparable Harm

AYA has already suffered irreparable harm as a result of the substantial burden that DEA has placed on its Free Exercise and Free Expression rights. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Drinking sacramental Ayahuasca is the central communion ceremony of AYA where congregants receive the transmission of wisdom and Divine Love that comes through sacramental use of Ayahuasca. Without Ayahuasca, AYA does not have a religious practice to share, and

AYA congregants are unable to practice their religion.  *See* Stanley Decl. at ¶ 27.  AYA continues to suffer irreparable harm based on the clear and present danger that: (1) AYA and its members may be arrested for violations of the CSA, (2) warrants could be issued for the arrest of AYA members, and (3) warrants may be issued allowing the search of AYA properties or that of their members.  *See O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1020 (10th Cir. 2004) (en banc) (Seymour, J., concurring in relevant part for a majority of the court) ("the violation of one's right to the free exercise of religion necessarily constitutes irreparable harm.") *aff'd sub-nom O Centro*, 546 U.S. 418 (2006).

### 3.  The Balance of the Equities Tips in AYA's Favor

The DEA and other government agencies will suffer no hardship from the grant of the requested injunction.  To the extent that DEA and DOJ have an interest in preventing the diversion of Ayahuasca into the illegal market, there is virtually no risk that Ayahuasca will be abused.  On the other hand, denial of the injunction will subject AYA to a continuing injury causing irreparable harm by stifling the Free Exercise rights of AYA's ministers and congregants.

### 4.  An Injunction Against DEA and DOJ is in the Public Interest

AYA joined this action as a Plaintiff to advance the public interest in the Free Exercise of visionary religion for the benefit all people and society as a whole.  AYA exists to serve the public interest, and its services are open to all sincere persons who meet the health requirements.  Stanley Decl. ¶ 12.  The public interest favors the prophylactic prohibition of further unlawful governmental conduct that furthers First Amendment Free Exercise, Free Speech, and Free Association.

### 5.  The Injunction Should Prohibit DEA and DOJ from Providing Information or Otherwise Assisting State Prosecutions

AYA requests that DEA and DOJ be enjoined from prosecuting AYA and its members for the sacramental use of Ayahuasca, and further enjoined from initiating,

funding or participate in any enforcement actions by non-federal law enforcement agencies including HIDTA.  As discussed above, and alleged in detail in the Fourth Amended Complaint, the prosecution of Plaintiff Villanueva was initiated by a DEA Agent after receiving a fabricated "anonymous tip."  DEA then enlisted the assistance of the Federal HIDTA ("High Intensity Drug Trafficking Areas") Task Force and the Maricopa County Sherrif's Office.

Given DEA's role in initiating the investigation against Villanueva and enlisting the help of the HIDTA task force, DEA cannot now disclaim any responsibility for the defective warrant and prosecution simply because the warrant was procured by State law enforcement and the prosecution was filed by Arizona's Attorney General.  *See Leary v. United States*, 395 U.S. 6 (1969).  In *Leary*, the Supreme Court invalidated the Marihuana Tax Act ("MTA") on the grounds that it was designed by the Federal government to gather information that could later be used to prosecute individuals in State Court.  The Controlled Substances Act had not yet been enacted, and so the MTA provided a work-around by allowing tax authorities at the Department of Treasury to collect information about individuals who bought and sold marijuana, and provide that information to State prosecutors.  The Supreme Court invalidated the MTA:

> As has been noted, 26 U. S. C. § 4773 requires that copies of order forms be kept available for inspection by state and local officials, and that copies be furnished to such officials on request. The House and Senate reports both state that one objective of the Act was "the development of an adequate means of publicizing dealings in marihuana in order to tax and control the traffic effectively." ***In short, we think the conclusion inescapable that the statute was aimed at bringing to light transgressions of the marihuana laws.***

*Leary*, 395 U.S. at 27 (emphasis added).

Like the Plaintiff in *Leary,* AYA faces the substantial risk that DEA will continue to feed misinformation to State law enforcement regarding its sacramental use of Ayahuasca.  Thus, an injunction prohibiting DEA from initiating, funding or participating in any enforcement actions by non-federal law enforcement agencies (including HIDTA) is appropriate and warranted.

**B. AYA is Entitled to an Order Preliminarily Enjoining DHS from seizing Sacramental Ayahuasca and Providing No Opportunity for AYA to Recover its Property**

1. <u>AYA is Likely To Prevail on Their Claims Against DHS</u>

AYA's Complaint seeks a decree that DHS may not seize and destroy its sacramental Ayahuasca.  AYA is likely to succeed on the merits of this claim because DHS seizures of Ayahuasca are not the least restrictive means of advancing a compelling Government interest. As discussed in detail above, AYA is entitled to a preliminary injunction barring DOJ and DEA from prosecuting AYA for its religious Free Exercise. For the same reasons, AYA is entitled to a preliminary injuncting barring DHS from seizing their religious sacrament.  *See* Section III.A.1.c *supra*.

DHS' Customs Process cannot survive judicial scrutiny because it is not the least restrictive means of interdicting contraband.  DHS provides no post-seizure procedure for recovery of seized Ayahuasca Sacrament.  Carreon Decl. at ¶ 21.  Despite multiple requests by AYA to return its Sacrament, and full knowledge that AYA's Ayahuasca is entirely sacramental in character, DHS continues to seize and destroy AYA's Sacrament. DHS and DEA should conform their conduct to a single, lawful standard in compliance with RFRA.  Moreover, DHS already allows two Visionary Churches to import Ayahuasca.  *See* Section III.A.1 *supra*.

2. <u>AYA Will be Irreparably Harmed Because DHS Will Continue Seizing and Destroying AYA Sacrament Unless Enjoined</u>

DHS currently identifies Ayahuasca in the Customs process, seizes all Ayahuasca that it identifies, and then destroys all of the Ayahuasca that it seizes.  *See* Exhibits 18-19. As discussed in Section II.C. *supra*, each seizure imposes a financial loss on AYA's congregation, and interrupts Free Exercise in much the same way as Catholic Mass would be desecrated by a ban on the distribution of communion hosts.  Stanley Decl. at ¶ 28. Without access to the Ayahuasca seized by DHS, AYA does not have a sacrament to share, and AYA congregants are unable to practice their religion.  *Id. at* ¶ 28.  When

AYA is unable to hold ceremonies because its Ayahuasca was seized and destroyed by DHS and/or CBP, AYA's Free Exercise is substantially burdened.

Absent an injunction, DHS will continue to destroy AYA's sacrament. Unless or until DHS allows AYA to request the return of seized Ayahuasca as lawfully imported under a Free Exercise Exemption, DHS will continue to act contrary to law and AYA will be irreparably harmed.

### 3.   The Balance of the Equities Tips in AYA's Favor

The Court need not balance the equities where "the defendant's conduct has been willful." *U.S. EPA v. Env't Waste Control, Inc.*, 917 F.2d 327, 332 (7th Cir. 1990) (7th Cir. 1990). Here, DHS has been put on notice – through multiple sworn statements – that AYA's sole and exclusive reason for importing Ayahuasca is to engage in Free Exercise. Carreon Decl. at ¶ 22. Although there can be no lawful reason for AYA's Ayahuasca to be seized, DHS continues to seize AYA's religious sacrament and cause irreparable harm to the Free Exercise rights of AYA. DHS will suffer no hardship from being enjoined while AYA's Free Exercise rights will be denied.

### 4.   An Injunction against DHS Will Serve the Public Interest

It would contravene the public interest if DEA and DOJ were enjoined from prosecuting AYA, and yet DHS was still permitted to seize and destroy AYA's Sacramental Ayahuasca. *See Allentown Mack Sales & Serv. v. NLRB, 52*2 U.S. 359 (1998) (the evils of inconsistent application of law "spreads in both directions, preventing both consistent application of the law by subordinate agency personnel . . . and effective review of the law by courts."). It is in the public's interest for the Federal agency Defendants – DOJ, DEA and DHS – to be held to the same standard.

### IV.   **CONCLUSION**

AYA respectfully asks this Court to enter an injunction preventing DEA and DOJ for prosecuting AYA for its religious Free Exercise, and preventing DHS and CBP from seizing and destroying its religious sacrament.

Dated:  November 8. 2021        JOHN SULLIVAN
                                        /s/John Sullivan
                                        JOHN SULLIVAN (127139)
                                        Attorney for Plaintiffs
                                        Arizona Yagé Assembly,
                                        North American Association of Visionary Churches,
                                        and Clay Villanueva