Case No.:20-CV-02373-ROS
Arizona Yagé Assembly's Motion for Preliminary Injunction

# Exhibit 9

Roy S. Haber
OSB #80050
haberpc@cyber-dyne.com
Roy S. Haber P.C.,
570 East 40th Avenue
Eugene, Oregon 97403
Tel. (541) 485 6418

FILED'08 SEP 05 09:21USDC·ORN

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON

| | |
|---|---|
| THE CHURCH OF THE HOLY LIGHT OF THE QUEEN, a/k/a The Santo Daime Church, an Oregon Religious Corporation, on its own behalf and on behalf of all of its members,   JONATHAN GOLDMAN, individually and as Spiritual Leader of the "Santo Daime Church,"  JACQUELYN PRESTIDGE, MARY ROW, M.D., MIRIAM RAMSEY, ALEXANDRA BLISS YEAGER  and SCOTT FERGUSON, members of the Santo Daime Church,<br><br>                     Plaintiffs,<br><br>vs.<br><br>MICHAEL B. MUKASEY, Attorney General of the United States; KARIN J. IMMERGUT, United States Attorney, District of Oregon; HENRY M. PAULSON, Secretary of the U.S. Department  of the Treasury,<br>                     Defendants. | CIV NO. *08-3095-*  HU<br><br>COMPLAINT<br><br>TEMPORARY RESTRAINING ORDER REQUESTED<br><br><br>RELIGIOUS FREEDOM RESTORATION ACT {42 USC §§ 2000bb  . 2000bb(4)}<br><br><br>Declaratory and Preliminary and Permanent Injunctive Relief Sought |

## INTRODUCTION

1.    This is a suit brought by the CHURCH OF THE HOLY LIGHT OF THE

QUEEN (a.k.a. "The Santo Daime Church" or "CHLQ"), a Christian religion based in

Ashland, Oregon, its Spiritual Leader, Members of the Board of CHLQ, and members of

# 1389

the Church on behalf of all of its members pursuant to 42 USC §§ 2000bb-2000bb(4), the Religious Freedom Restoration Act of 1993 ("RFRA"), to redress the deprivation of rights, privileges and immunities secured to plaintiffs by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States. Specifically, plaintiffs seek a declaration that the defendants' threats to arrest and prosecute members of the Santo Daime religion who seek to bring their sacramental tea (the "Daime tea"), which contains trace amounts of a Schedule 1 chemical, into the United States to imbibe at their religious ceremonies is unconstitutional, unlawful and violates RFRA in that it burdens the central practice of the plaintiffs' religion, *i.e.* imbibing the Holy tea. Plaintiffs also seek a preliminary and then permanent injunction enjoining defendants from preventing the importation or use of tea in religious ceremonies and from threatening to arrest or prosecute Church members who seek to ingest their sacramental tea.

**JURISDICTION AND VENUE**

2. Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331 and 1343(3)-(4), because the case arises under the Constitution, laws and treaties of the United States and seeks to redress the deprivation of rights, privileges and immunities secured to plaintiff by the First, Fourth, and Fifth Amendments to the Constitution of the United States, and the Religious Freedom Restoration Act as well as to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

3. This court has authority pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 706, to grant declaratory relief and to issue preliminary and permanent injunctions.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) in that all of the defendants are agents or officers of the United States and were, at all times relevant to

2

this case, acting in their official capacities, and at least one defendant resides in the State of Oregon. Plaintiffs reside in this district and the cause of action arose in this district.

## PARTIES

PLAINTIFFS

5.      Plaintiff **THE CHURCH OF THE HOLY LIGHT**

**OF THE QUEEN** is a religious corporation formed under the laws of the State of Oregon whose principle office is located in Ashland, Oregon and is the local United States Branch of the Centro Eclético da Fluente Luz Universal Raimundo Irineu Serra, CEFLURIS (the "Santo Daime Church" of Brazil,) a fully recognized religion in Brazil. The Church is adversely affected and aggrieved by the defendants' actions as more fully described below. The Ashland Church administers to a small congregation in Bend, Oregon.

6.      Plaintiff **JONATHAN GOLDMAN** is the religious leader ("Padrinho") of CHLQ and resides in Ashland, Oregon. He brings this action in his own capacity as a member of the Santo Daime Church, on behalf of members of the Church and as a representative and agent of CEFLURIS, in the United States.

6A.      **ALEXANDRA BLISS YEAGER**, is the spiritual leader of the Céu da Divina Rosa (The church of the Divine Rose), a Santo Daime Curch located in Portland, Oregon.


7.      Plaintiff **JACQUELYN PRESTIDGE** is Chairperson and Member of the Board of Directors of CHLQ. She resides in Bend, Oregon.

8.      **SCOTT FERGUSON** is a member of CHLQ and resides in Bend, Oregon

9.     Plaintiff **MARY ROW, M.D.**. is a member of CHLQ and resides in Oregon.

10.     **MIRIAM RAMSEY** is a member of CHLQ, the salaried administrator of the Church and resides in Ashland, Oregon

DEFENDANTS

11.     Defendant **MICHAEL B. MUKASEY** is the Attorney General of the United States and the Chief Law Enforcement Officer of the United States. MR. MUKASEY resides in Washington, D.C.

12.     **KARIN J. IMMERGUT**, United States Attorney, District of Oregon and resides in Portlan, Oreogn.

13.     Defendant **HENRY M. PAULSON**, Secretary of the Treasury of the United States, is responsible for administering and enforcing the customs laws, the Controlled Substances Import and Export Act and regulations promulgated thereunder. MR. PAULSON resides in Washington, D.C.

13.(a)     At all times relevant to this litigation, all of the defendants acted in and are sued in their official capacities.

**FACTS**

14.     For hundreds and, perhaps, thousand of years, a tea called ayahuasca has been brewed by indigenous tribes in the Brazilian and Peruvian Amazon region and has been used for sacramental and healing purposes. As noted in greater detail below, the ayahuasca tea contains trace amounts of N,N-5,5-dimethyltryptamine (DMT), a chemical listed on the Controlled Substances Act (CSA), and ensuing regulations. 21 U.S.C. §§ 801 et seq.

15.     Beginning in the 1800's, Christian religious missionaroies made contact with many indigenous tribes in the Peruvian and Brazilian Amazon. These tribes then adopted Christian beliefs and practices and syncretic religions emerged. In the early twentieth century, a Brazilian rubber tapper, Mastre Raimundo Irineu Serra, had a direct revelation to found a new religion based upon the concept that Jesus Christ was the Savior and that the Ayahuasca tea was to become the central ritual and sacrament of the religion; and that the tea was to be renamed "Santo (Holy) Daime" which, in Portuguese, means "give me," interpreted to mean "give me light and give me love." The Santo Daime Church blends Christian theology with traditional indigenous religious beliefs. Church doctrine instructs that Daime tea is a sacrament and that the body of Christ is present in the tea. Church members ingest the tea during and only during church services.

16.     The taking of the Daime sacrament is necessary for the Church to conduct its services. It is believed that only by taking the tea can a Church member have a direct experience with Jesus Christ, believed by members of the Church to be the savior. The Holy Daime tea is believed to be not only a vehicle for direct communion with God, but itself embodies the Divine Spirit; thus, it is prayed to directly as the manifestation of the Holy Spirit as contained in the Hymnals of the Church. According to Church doctrine, the presence of the Daime is the presence of Christ. Without the tea, there is essentially no religion because it is an essential element of the Church ritual in which the members have placed their faith. All Church members imbibe the holy tea as a form of communion.

5

17.     The Santo Daime Church's doctrine is taught through the Hymnals received by its religious leaders over the past century. These are received during the ceremonies at which the Holy sacramental tea is taken.

18.     From the making of the Holy Daime tea to the ingestion of the tea at ceremonies, the tea is accounted for in a structured distribution and accounting program under the direction of the elders of the Church, who have been trained to maintain high security surrounding the making, storage and transport of the tea.  Each Church in the United States that receives the tea accounts for the amount received as well as the amount consumed at services.

19.     The making of the Holy Daime tea is a highly ritualized sacred practice called the "feitio."   The tea is made from cooking two plants, a vine named *Banisteriopsis Caapi,* and the leaves of *Psychotria viridis,* which grows in certain jungle areas of South America.  The preparation of the tea requires the intensive labor of many Church members and is very time consuming.  The vine and the leaves are boiled in water for many hours in a highly structured ceremony undertaken in prayer accompanied by the singing of Hymns.  It is only when the tea is brewed under these very specific conditions that it is considered to be the Holy Daime sacrament.  The Church considers the loss of any of the tea a sacrilege and takes great pains to protect it from diversion from its very limited and specific use.

20.     *Banisteriopsis caapi* is a large, rugged vine containing three chemical alkaloids, harmaline, harmine, and 1,2,3,4-tetrahydroharmine, none of which are listed in any Schedule of the Controlled Substances Act of 1970.

21.    *Psychotria viridis* is a small plant containing trace amounts of the Schedule 1 chemical N,N-5,5-dimethyltryptamine (DMT). Numerous other trees, shrubs, and plants found in the Western Hemisphere (including in the United States) also contain DMT. However, none of these plant species, including the *Psychotria viridis,,* are listed as Controlled Substances.

22.    DMT is listed as a Schedule 1 controlled substance because in some chemical forms, particularly the synthetic forms, it  may be viewed by  some as a substance with abuse potential.  One criterion for listing a chemical as a Schedule 1 Controlled Substance is that it has "a high potential for abuse."  The CSA, however, does not list the *Psychotria viridis* plant as a controlled substance because the scientific evidence establishes that the DMT contained therein is not in a form with a "high potential for abuse."

23.    In addition to not listing the *Psychotria viridis* plant as a controlled substance, and in spite of repeated requests to comment on the subject, the defendants have never communicated in any form that they consider the *Psychotria viridis* plant a controlled substance or that the plant is a substance with a "high potential for abuse."

24.    Upon information and belief, DMT is only considered a substance of "high potential for abuse" when it is taken in its synthetic form intravenously, or by inhalation.  The Holy Daime tea is a natural, organic non synthetic sacrament, that is ingested orally, and the processes that go on in the digestion of the DMT in this natural form ensure that the DMT is not and cannot become a substance with a "high potential for abuse."

7

25.    On or about May 20, 1999, the defendants intercepted a shipment of the Holy Daime tea lawfully sent from the Santo Daime Church in Brazil to plaintiff Goldman, who is authorized by the Santo Daime Church in Brazil to receive, store, account for, and administer the tea which is used solely for sacramental purposes at services in the United States.

26.    Upon information and belief, upon the instructions of defendants DEA, Treasury Department, and Department of Justice agents and employees and/or persons acting under their direction, DEA Special Agent Daniel Lakin obtained a search warrant to search the home of plaintiff Goldman.  On or about May 20, 1999, the premises were searched by defendants' agents.  Articles belonging to the plaintiffs and personal items of plaintiff Goldman and his family were confiscated by the agents.  Some, but not all, of those items have since been returned.

27.    The defendants' agents entered plaintiff Goldman's home with attack weapons, arrested plaintiff Goldman, and dragged him off to jail.  Plaintiff Goldman spent 12 hours in jail before being released on bond.

28.    The defendants seized the Holy Daime Tea from Mr. Goldman's home; and, upon information and belief, the Holy Daime tea may still be in defendants' possession.

29.    While charges have never been filed against plaintiff Goldman and there is no continuing investigation into the facts surrounding the importation of the Holy Daime tea, the former Oregon United States Attorney advised plaintiffs by letter dated October 11, 2001 that "[T]he decision to prosecute your client for his conduct remains an open question pending the decision of the United States Department of Justice regarding your

8

request for a controlled substance exemption." Eight days later, on October 19, 2001, the United States Department of Justice advised that it "believes the prohibition on the importation, distribution and possession of ayahuasca tea is the least restrictive means of furthering a compelling government interest." Defendants did not advise plaintiffs what that compelling interest was. While no further action has been taken against plaintiff Goldman, all plaintiffs and members of the Church live under the constant threat of arrest, prosecution and imprisonment for quietly practicing their religion because the government refuses to respond to their requests that it abandon threats to arrest and prosecute Santo Daime Church members designated to transport the tea from Brazil to Ashland, Oregon for services. Thus the continuing threat of further arrest and prosecution looms heavy over plaintiffs and all Church members who attempt to practice the central tenet of this religion in the United States of America.

30. Plaintiffs petitioned the State of Oregon's Board of Pharmacy, which has concurrent jurisdiction with the defendants over distribution of controlled substances and abuse of controlled substances in the State of Oregon, to permit the Church to take its Holy Sacrament at Church services held in the State of Oregon. The Oregon Pharmacy Board held a hearing on November 8, 2000, at which time it carefully considered some of the same evidence that will be placed before this Court. The Board ruled that the State of Oregon "does not consider sacramental use of the Santo Daime tea in the Church's religious ceremonies to constitute abuse of a controlled substance." The Board then held that it "neither possesses nor plans to exercise regulatory authority with regard to the religious practices of the Santo Daime Church in Oregon."

31.     Despite the ruling of the Oregon Pharmacy Board, which under principles of federalism has the primary responsibility to pass on matters of public health, the federal defendants threaten to override the findings of the Oregon Pharmacy Board by unilaterally declaring the tea unsafe and a threat to public health. The government has no evidence to support such a claim. Its attempts to avoid the Oregon findings are arbitrary and are not grounded in existing fact or jurisprudence.

32.     The continuing threat of arrest and prosecution of Church members who attempt to bring the tea in from Brazil or hold services eviscerates Oregon's favorable ruling precluding it from having any practical effect in protecting plaintiffs' freedom to practice their religion, even in Oregon. Plaintiffs are still in great fear that defendants' agents and employees will arrest them and throw them in jail for practicing their religion, even in the State of Oregon.

33.     In the late 1980's, the Brazilian Federal Narcotics Council ("CONFEN") embarked on an extensive two-jyear study of the religious practices of the Santo Daime Church, including the central practice of ingesting the tea at its ceremonies. The members of CONFEN traveled to many cities in Brazil and deep into the Amazon interior to the town of Mapia, which became the spiritual center of the Santo Daime religion, to investigate the religious practices and the community. After these extensive studies (which included participation by a wide variety of medical, social, psychological, historical, anthropological, law enforcement and drug policy experts), the Brazilian CONFEN ruled that the religious use of the Daime tea would be legally recognized and protected from government interference in Brazil.

10

Case 2:00-cv-03330-CJSA Document 137-16 Filed 09/05/12 Page 12 of 27

Attempts to Settle and Obtain a Memorandum of Understanding with DOJ

34.    On October 7, 2000, plaintiffs' counsel sent a Memorandum of Law and copies of the expert reports submitted with the instant Motion for Temporary Restraining Order to then Attorney General of the United States, Janet Reno, along with introductory letters from Congressman Peter DeFazio and a professional acquaintance of Ms. Reno (who is an expert for the plaintiffs), Mr. Allan F. Breed, urging that the matter be resolved without litigation through an Attorney General Memorandum of Understanding.

35.    Ms. Reno appointed a task force composed of a dozen federal agencies concerned with drug use and abuse to meet with plaintiffs' representatives and attempt to resolve the matter.

36.    At the request of plaintiffs' counsel, the offices of several Members of Congress conracted the Department of Justice voicing concerns over the treatment of the Santo Daime Church. On December 8, 2000, at the direction of Attorney General Reno, the Assistant Attorney General of the Criminal Division held a meeting with plaintiffs at Main Justice in Washington, D.C.  Representatives from the U.S. Attorneys Office, Office of the Drug Czar, the Civil Rights Division, the Criminal Division, the Drug Enforcement Agency, and others were present.   Padrinho Alex Polari de Alverga,[1] Executive Director of CEFLURIS Doctrinarian Board of the Santo Daime Church of Brazil, traveled from Brazil to the United States to attend this meeting, to convey the respect of the Spiritual Leader of the Santo Daime, Padrinho Alfredo Gregorio de Melo, and to be available to answer any questions that members of the Task Force might have about the Church and its practices. The DOJ provided a Portuguese interpreter to assist at

---

[1] "Padrinho" refers to an elder or leader of a Church.  The literal term is "Godfather."

the meeting. On December 11, 2000, Associate Attorney General Michael Greenberger advised that an interagency task force had been formally established to "consider the important issues that you have raised."[2]

37.    Plaintiffs advised the interagency members that the burden was on the United States to establish that it had a compelling reason to prevent the import of the sacramental tea into the United States. Though participants at that meeting were invited to present plaintiffs with any compelling government interest for prohibiting the importation of the sacred tea, none was provided.

38.    On December 8, 2000, Congressman Peter DeFazio sent a letter to DOJ, asking, again, what compelling interest the government might have in preventing the Santo Daime from practicing their religion. Justice replied on December 12, 2000 it would be "premature to provide such a response." That response was curious at best as it illustrated that the government was claiming that it had "compelling interests" but could not quite figure out what they were, even though government agents had seized the tea and arrested Plaintiff Goldman based upon these not yet formulated "compelling interests." Thus, as of that date, the defendants had not identified even one colorable "compelling government interest" to justify their continuing effort essentially to ban the Church in the United States. This establishes that the defendants were and continue to be violating RFRA by substantially burdening religious exercise without compelling justification.

---

[2] Also present at the meeting were representatives from the DEA, Narcotics and Dangerous Drugs, the Office of the Solicitor General, Office of Legal Counsel,   Office of Legislative Affairs, the Criminal Division, the Civil Division, the Civil Rights Division, Health and Human Services, the Office of National Drug Control Policy, United States Customs Service, and the Executive office of the United States Attorneys.

39.     On December 21, 2000, Deputy Associate Attorney General Greenberger sent a letter stating that the defendants hoped to advise plaintiff by mid-January 2001, whether they would voluntarily agree to the cessation of the illegal activity complained of herein. On January 10, 2001, plaintiffs' counsel met again in Washington with members of the interagency task force. That meeting proved to be fruitless in either narrowing down issues or obtaining any temporary agreements with the defendants to permit the tea to be used in religious services.

40.     Plaintiffs' counsel had suggested that the defendants agree to permit the tea to be imported temporarily under agreed upon DEA controls including an accounting system to ensure no diversion. Under a proposed Justice Department Memorandum of Understanding, submitted to the defendants, the government would study the religion more, attend and observe the services as did the Brazilian drug enforcement agencies, and undertake any studies that it might wish.

41.     After the change in administrations in January 2001, Attorney General Reno was replaced by Attorney General Ashroft. On February 2, 2001, Deputy Assistant Attorney General Stuart E. Schiffer wrote plaintiffs inviting the Santo Daime to respond to the government's Opposition Brief in *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft, 282 F.Supp2d 1236 (D. N.M., 2002), aff'd, Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal, 546 U.S. 418 (2006)*("UDV".) [3] Its brief was filed in January, 2001, stating, "We would be happy to consider any additional information that you may wish to provide in response to the position set out by the government in that filing . . ." On October 19, 2001, Assistant Attorney General McCullum advised

---

[3] Referring to *UDV v. Ashcroft* discussed at length below. The UDV is also a Brazilian religion using tea made form the same plants as the Daime tea.

plaintiffs that the Department of Justice would not voluntarily desist from continuing to threaten plaintiffs with arrest and prosecution for attempting to quietly practice their religion.

### The O Centro Espírita Beneficente União do Vegetal (UDV) Decisions

42.     Similar to the plaintiffs in this case, the O Centro Espírita Beneficente União do Vegetal (UDV)[4] is a religious organization formed under the laws of Brazil, with its headquarters in Brasilia, Brazil[5].

43.     As in this case, where the Santo Daime sacred tea is the central ritual of the religion and is seen as the religion's sacrament, central and essential to the UDV Christian religion is the sacramental, ritual use of *Hoasca,* a tea made from the same two plants native to the Amazon River basin that comprise the sacred Daime tea.  As in the case of the sacred Daime tea, the sacramental *Hoasca* tea contains a small amount of naturally-occurring dimethyltryptamine (DMT).  And as in the case of the sacred Daime tea, the UDV *Hoasca* is tea imported from Brazil, after religious leaders (*Mestres*) of the UDV prepare *Hoasca* during a religious ritual held in Brazil for that purpose.[6]

44.     As in the case of the Santo Daime sacred tea, it is a central and essential tenet of the UDV that its members receive communion by partaking of *Hoasca* as a sacrament during religious rites.  When UDV adherents receive sacramental *Hoasca,* they

---

[4] *O Centro Espírita Beneficente União do Vegetal (UDV) v. Ashcroft,* CIV. No. 00-1647 JP/RLP (D. NM, 2000).
[5] The corporate plaintiff in the UDV case is the United States Branch of the UDV, O Centro Espírita Beneficente União do Vegetal (USA), Inc.
[6] O Centro v. Clement, CV 00-1647JP RLP (D. New Mexico, First Amended Complaint) (September 21, 2007).

receive the Divine Holy Spirit. For disciples of the UDV, the spirit of the *Hoasca*—a manifestation of God—is present within the tea.

45.     On May 21, 1999, one day after plaintiff Goldman's home was searched, the sacred Daime tea was seized pursuant to a search warrant and he was arrested, the UDV-USA President's offices were then raided by federal officers who had intercepted a shipment of *Hoasca* sent by the UDV in Brazil to the UDV Church in Santa Fe, New Mexico.  The federal agents seized records and documents from the President's office.

46.     Upon information and belief, the UDV negotiated with the same task force that was formed by Attorney General Reno to negotiate with the plaintiff Santo Daime Church.

47.     On November 21, 2000, the UDV filed suit in United States District Court, District of New Mexico seeking a preliminary and permanent injunction to prevent some of the same defendants as in this case from interfering with the importation, distribution and ingestion of the *Hoasca* tea.

48.     Shortly after the filing of the UDV case, as noted above, on January 21, 2001, DOJ informed plaintiffs that anything they wanted to submit should be done so in the UDV litigation forum. The UDV plaintiffs alleged that the interference with the tea by the government violated their First Amendment Rights to freedom of religion and the Religious Freedom Restoration Act.[7]  The district court granted a preliminary injunction based upon its findings that the government failed to establish that it had a compelling interest in totally prohibiting the importation, distribution and ingestion of the holy *Hoasca* tea and preliminarily enjoined Defendants from enforcing the CSA against the

---

[7] And other allegations not pertinent to this Complaint.

UDV Plaintiffs. *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236 (D.N.M. 2002). Defendants appealed to a panel of the Court of Appeals which affirmed. *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170 (10th Cir. 2003). On rehearing en banc, the Court of Appeals again affirmed. *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004) (en banc). On February 26, 2006, the Supreme Court of the United States unanimously affirmed the granting of the preliminary injunction and remanded the case to the district court for further proceedings. *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418 (2006).

49. The Solicitor General's Merits Brief to the Supreme Court asserted that the Santo Daime and UDV religions were very similar.

Thus the government defendants argued that:

> At a minimum, an equivalent exemption will be demanded by other religious groups that use ayahuasca, like the Santo Daime Church. While the Santo Daime Church has more broadly opened its hoasca ceremonies to others, courts may consider differences in evangelistic theology to be a tenuous basis for selectivity in governmental accommodations. Courts might also be concerned that a selective accommodation would effectively give the UDV a competitive advantage over the Santo Daime church in the religious "marketplace of ideas.
> In any event, the evangelistic differences between UDV and Santo Daime may not be that great.[8]

---

[8] Solicitor's Merits Brief, 21-22. The Solicitor's use of the phrase "will be demanded" was not entirely accurate. The Solicitor's brief was written in 2005. The Santo Daime began negotiations with the defendants under Attorney General Reno's explicit direction in 2000. Indeed, at the first meeting held at Attorney General Reno's direction in Washington, the Solicitor General's office had a representative present. Thus, at the time of the writing of the Solicitor's brief, he already knew that the Santo Daime had made demands that the government cease its illegal activity of interfering with transporting the same tea into the United States.

50. With regard to the factual and legal issues in this case, the plaintiffs are similarly situated to the UDV.

51. In the UDV case, at the preliminary injunction phase of the case, the Supreme Court upheld the district court's finding that the same federal defendants as in this case failed to establish that the government had a compelling interest to prevent the importation, distribution and ingestion of the *Hoasca* tea as the sacrament of the Church at religious ceremonies.

52. The government failed to establish that the tea was dangerous to the health of the members of the UDV or to the public, or that it was likely that the tea would be diverted to illicit consumption.

53. On remand to the district court, the defendants notified the district judge, "[t]hat they did not intend to present additional evidence concerning the government's compelling interest in banning Plaintiffs' use of *Hoasca*."[9]

54. The government defendants have thus abandoned their attempt to prevent the importation, distribution and ingestion of the *Hoasca* tea. Similarly, the government has no compelling interest to prohibit the importation of the Daime tea, which, as noted above, is considered by the defendants to be similarly situated to the *Hoasca* tea in terms of the government's professed "interests." However, the defendants continue to claim that they have "compelling interests" that justify criminalizing the Daime tea.

55. Regarding issues of safety and health, the government is precluded from relitigating those issues[10] in this case, as they were fully aired in the UDV case and the

---

[9] Motion to Dismiss UDV Amended Complaint, Civ 00-1647 (D. N.M), November 1, 2007, at page 10.
[10] "Collateral estoppel."

government stated in November 2007, only a few short months ago, that it has no more evidence to support its essentially abandoned "compelling interests" defense. And there is no additional evidence that the government intends to offer regarding diversion of the tea to illicit markets.

56. The continuing threats of prosecution and threats to seize the Holy sacramental tea in the United States has had the effect of chilling plaintiffs' rights as United States citizens to practice their religion in this country without fear of reprisals by federal agents acting outside the law.

57. There are Brazilian nationals in the United States as well as citizens who hold both Brazilian and American citizenship who can practice their religion in Brazil but are subject to arrest and prosecution in the United States by the defendants and their agents if they attempt to practice their religion in this country.

58. At all times relevant to this litigation, the defendants acted in their official capacities.

59. At all times relevant to this Complaint, defendants engaged in the illegal acts complained of herein to the injury of the plaintiffs and deprived plaintiffs of their rights, privileges and immunities secured to them under the First, Fourth, Fifth, Fourteenth Amendment, the Religious Freedom Restoration Act and the laws, regulations and decisions of the State of Oregon.

60. The actions of the defendants in arresting, threatening to arrest and threatening to prosecute plaintiffs serves no compelling government interest and are not the least restrictive means to protect any colorable government interests.

61.     The actions committed by the defendants were calculated to and in fact, have punished plaintiffs for asserting their First Amendment rights and rights provided to them by Congress under RFRA.

62.     The acts complained of were taken willfully and without the defendants undertaking a review of their legal responsibilities prior to engaging in the illegal acts set forth above.

63.     Defendants continue to engage in the illegal acts set forth above after having been advised by the plaintiffs of their illegality.

64.     The actions complained of were and are geared to intimidating and thereby preventing plaintiffs from practicing their deeply held religious beliefs and engaging in the sacrament of their Church.

65.     The acts complained of were done by the defendants in excess of any authority conferred on them under the Constitution and the laws of the United States.

66.     The United States Commission on International Religious Freedom established under the International Religious Freedom Act of 1998, in its "Year 2000" Report recognized and honored Brazil's tolerance for its syncretic religions of which the Santo Daime is one of the most recognized in Brazil both by the Brazilian government and by the Brazilian Catholic Church. 22 U.S.C. §§ 6401, et seq., Public Law 105-29 (105th Con. 1988), The actions of the defendants in arresting, threatening prosecution and confiscating the Holy Daime tea is a particularly egregious violation of the principle of comity in light of this country honoring Brazil's protection of the Daime tea in, while at the same time refusing to permit its sacramental use in the United States.

67.     Plaintiffs have no adequate remedy at law and will continue to suffer irreparable injury and harm unless defendants are enjoined by this court from taking any further action against the plaintiffs.

## FIRST CLAIM FOR RELIEF

### (FIRST AMENDMENT FREE EXERCISE OF RELIGION)

68.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 67 as though more fully set forth herein.

69.     The actions of the defendants in arresting plaintiff Goldman, confiscating the Holy sacramental tea, continuing to hold the threat of prosecution over his head and the continuing threats to confiscate the Holy sacrament, and to arrest, prosecute and imprison other members of the Santo Daime Church who in the future attempt to practice the central tenet of their religion, violate plaintiffs' rights to the free exercise of their religion under the Free Exercise Clause of the First Amendment to the United States Constitution.

70.     Plaintiffs have no adequate remedy at law and will continue to suffer irreparable injury and harm unless defendants are enjoined by this court from taking any further action against the plaintiffs.

## SECOND CLAIM FOR RELIEF

### (RELIGIOUS FREEDOM RESTORATION ACT)

71.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 67 as though more fully set forth herein.

72.     The actions of the defendants in arresting plaintiff Goldman, confiscating the Holy sacramental tea and continuing to hold the threat of prosecution over his head, and the continuing threats to confiscate the Holy sacrament, and to arrest, prosecute, and imprison plaintiffs and other members of the Santo Daime Church who in the future attempt to practice the central tenet of their religion violate the Religious Freedom Restoration Act of 1993, 42 USC §§ 2000bb-2000bb(4).

### THIRD CLAIM FOR RELIEF

(FIFTH AMENDMENT DUE PROCESS)

73.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 67 as though more fully set forth herein.  Plaintiffs have a property right in the ownership, possession, and use of the Holy sacramental Daime tea.

74.     Defendants' seizure of the Holy Daime tea without prior notice and an opportunity to be heard deprived plaintiffs of their ownership, possession, and use of the tea in violation of plaintiffs' rights to both substantive and procedural due process pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution.

75.     Plaintiffs have no adequate remedy at law and will continue to suffer irreparable injury and harm unless defendants are enjoined by this court from taking any further action against the plaintiffs.

### FOURTH CLAIM FOR RELIEF

(FOURTH AMENDMENT SEARCH AND SEIZURE)

76. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 67 as though more fully set forth herein.

77. The Holy Daime tea seized by the defendants and their agents did not constitute unlawful importation or distribution of a controlled substance under the CSA. The defendants did not have probable cause to seize the tea or to seek a search warrant to search plaintiff Goldman's home on or about May 20, 2000.

78. Defendant's obtaining a search warrant, searching plaintiff Goldman's home, and seizing the Daime tea and other property from Mr. Goldman's home constituted an unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution.

### FIFTH CLAIM FOR RELIEF

#### (FIFTH AND FOURTEENTH AMENDMENT EQUAL PROTECTION OF THE LAWS)

79. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 67 as though more fully set forth herein.

80. Plaintiffs are similarly situated to UDV members in their sacramental use of the Holy Daime tea that Defendants consider a Schedule I controlled substance under the CSA, just as they have considered the Hoasca tea. Nevertheless, Defendants have accommodated the UDV and no longer seek to ban its importation, distribution, and ingestion while refusing to accommodate plaintiffs' sincere, sacramental use of the Holy Daime tea.

81. Defendants' decision to allow the members of the UDV to use Hoasca for religious purposes, while denying the same protection to plaintiffs, violates the equal

protection rights of plaintiffs guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

82. As a result of Defendants' violation of Plaintiffs' rights to equal protection, plaintiffs are entitled to appropriate injunctive and declaratory relief.

## SIXTH CLAIM FOR RELIEF

### (COMITY AND VIOLATION OF INTERNATIONAL LAW)

83. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 67 as though more fully set forth herein.

84. The defendant's actions in arresting plaintiff Goldman, confiscating the Holy sacramental tea and continuing to hold the threat of prosecution over his head and the continuing threats to confiscate the Holy sacrament, and to arrest, prosecute, and imprison other members of the Santo Daime Church who in the future attempt to practice the central tenet of their religion are in violation of the policies of the United States under the doctrine of comity, as is defendants' refusal to recognize the acts, records and judicial proceedings of foreign sovereign nations that do not directly conflict with lawful policies of the Untied States.

85. Specifically, the actions of the defendants as set forth above, fail to give comity to the findings of the Brazilian Federal Narcotics Council ("CONFEN") which specifically ruled that the Santo Daime Church may lawfully utilize the Holy Daime tea for sacramental purposes.

86. The actions of defendants violate the United Nations International Covenant on Civil and Political Rights ("ICCPR") and Article 18 of its Universal

Declaration of Human Rights which declares that "Everyone has the right to freedom of thought, conscience, and religion. This right shall include freedom to have or to adopt a religion or belief of his choice, and freedom,. . . to manifest his religion or belief in worship, observance, practice, and teaching."

87.     Plaintiffs have no adequate remedy at law.

88.     The balance of the equities weighs in favor of an injunction preventing Defendants from further interfering with plaintiffs' religious conduct.

89.     Injunctive relief is reasonably necessary to protect Plaintiffs' constitutional right to equal protection of the law.

90.     Plaintiffs will suffer irreparable harm without injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs seeks declaratory and injunctive relief against the defendants as follows:

1.     A Declaratory Judgment that the actions described in this Complaint violated plaintiffs' rights to freedom of religion under the First Amendment to the United States Constitution and a violation of the Religious Freedom Restoration Act.

2.     A Declaratory Judgment that the defendants' actions described in this Complaint, including the obtaining of a search warrant, the interception of the Holy Daime tea, the search and seizure at plaintiff Goldman's house, the arrest of plaintiff Goldman, the continuing threat of prosecution of plaintiffs, and the threats of arrest and prosecution of all Santo Daime Church members in the United States who wish to engage in taking the sacrament, the Holy Daime tea, violate 42 USC §§ 2000bb-2000bb(4) the Religious Freedom Restoration Act ("RFRA") of 1993.

3.       A Declaratory Judgment that the defendants' actions described in this Complaint in confiscating the Holy Daime tea violated plaintiffs' rights to substantive and procedural due process of law under the Due Process Clause of the Fifth Amendment to the United States Constitution.

4.       A Declaratory Judgment that the defendants' actions in confiscating the Holy Daime tea, obtaining and executing a search warrant against plaintiff Goldman as described in this Complaint, violated plaintiff Goldman's rights to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

5.       A Declaratory Judgment that the actions of defendants in threatening to arrest and prosecute Santo Daime Church members for practicing their religion violate plaintiffs' rights to the equal protection of the laws.

6.       A preliminary and permanent injunction enjoining the defendants as follows:

a.       From arresting, prosecuting, or threatening plaintiffs and members of the Santo Daime Church with arrest, prosecution and/or imprisonment for importing, distributing and ingesting the Daime tea solely at Santo Daime Church services.

b.       Ordering that within 30 days after the date of issuance of declaratory relief, the parties present the Court with a plan to effectuate the importation, distribution, and accounting for the Holy Daime tea consistent with the rights of the Church members to use the Holy tea in ceremonies.

    c.  An Order awarding plaintiffs attorney's fees, costs and expenses

pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and The Civil Rights

Attorneys Fees Award Act of 1976, 42 U.S.C. § 1988.

    d.  Such other and further relief as the Court may deem just and

proper.

Dated: August 12, 2008     Respectfully submitted,

            Roy S. Haber
            OSB 80050
            Roy S. Haber P.C.,
            570 East 40th Avenue
            Eugene, Oregon 97403
            Tel. (541) 485 6418
            Cell(541) 913 6397n
            Attorney for Plaintiffs

Of Counsel:

Gil Carrasco
Assistant Professor of Law
Willamette University College of Law
180 Church Street SE
P.O. Box 654
Salem, OR 97301