Case No.:20-CV-02373-ROS
Arizona Yagé Assembly's Motion for Preliminary Injunction

# Exhibit 19



**U.S. Department of Justice**

Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530

**Kevin P. Hancock**
Trial Attorney

Tel:      (202) 514-3183
Fax:     (202) 616-8470
Email:  Kevin.P.Hancock@usdoj.gov

November 18, 2020

**By Email**

Charles Carreon, Esq.
3241 E. Blacklidge Dr.
Tuscon, Arizona 85716
Email: chascarreon@gmail.com

Re: *Arizona Yagé Assembly, et al. v. Barr, et al.*, 3:20-cv-3098 (N.D. Cal.)

Dear Mr. Carreon:

I am writing in response to your letters dated October 23, 2020 ("Oct. 23 Letter") and November 13, 2020 ("Nov. 13 Letter"), relating to the above-captioned matter (which, since your letter, has been ordered transferred to the U.S. District Court for the District of Arizona). This letter follows my October 27, 2020 email to you and our Wednesday, November 6, 2020 phone conversation regarding the issues raised in your October 23 Letter.

Your letters claim that two international mail packages containing ayahuasca and addressed to Plaintiff Arizona Yagé Assembly ("AYA") were recently seized upon arrival in the United States in Los Angeles. As a preliminary matter, U.S. Customs and Border Protection ("CBP") is not legally obligated to confirm or provide any information regarding packages containing Schedule I controlled substances that allegedly have been inspected or seized at the border. *See* 19 C.F.R. § 162.45a. Nevertheless, as a courtesy given the ongoing litigation between the parties, I can confirm that CBP is processing one or more packages associated with the U.S. Postal Service tracking numbers provided with your letters, and that CBP's processing is not yet complete.

Assuming *arguendo* that the package(s) being processed were addressed to AYA and in fact contain ayahuasca, as you claim, your letter identifies no valid reason why CBP could not lawfully inspect and seize such package(s), and thus there is no legal basis for your demand that CBP release them.

First, CBP has broad statutory and regulatory authority to inspect all packages and mail entering the United States at its border. *See* 19 U.S.C. § 482; 19 C.F.R. §§ 145.2, 162.6. As the U.S. Supreme Court and the Ninth Circuit have explained, "customs officials may conduct searches at the international border to identify the illegal transportation of contraband or undeclared articles across the border," and "[b]ecause searches at the international border of both inbound and

outbound persons or property are conducted 'pursuant to the long-standing right of the sovereign to protect itself,' they generally require neither a warrant nor individualized suspicion." *United States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)). Because CBP has the authority to search packages at the border without individualized suspicion, it is immaterial whether you are correct or incorrect in assuming that CBP's decision to inspect this particular package was based on its contents or the identity of the package's intended recipient.

Second, and in any event, CBP may lawfully inspect and seize packages to enforce the Controlled Substances Act ("CSA"), including by preventing the illegal importation of ayahuasca containing dimethyltryptamine ("DMT"), despite your letters' incorrect claims to the contrary, *see* Oct. 23 Letter at 2; Nov. 13 Letter at 1. As you know, DMT is a Schedule I controlled substance under the CSA, and, accordingly, the importation of ayahuasca containing DMT violates federal law. *See* 21 U.S.C. § 952(a). Pursuant to the CSA, any Schedule I controlled substances seized at the border are summarily forfeited to the United States and subject to potential destruction, unless an applicable "permit for lawful importation has been issued." 19 C.F.R. § 162.45a (citing 21 U.S.C. § 881(f)).

Your letter does not claim that AYA has any such permit for the lawful importation of ayahuasca containing DMT. While your letters do make clear that AYA subjectively believes it is "entitled to an exemption" from the CSA under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(b), *see* Oct. 23 Letter at 2; Nov. 13 Letter at 1, AYA has yet to actually demonstrate such entitlement. To obtain a RFRA exemption from the CSA's prohibitions, a party must demonstrate to the U.S. Drug Enforcement Administration ("DEA") that the CSA imposes a substantial burden on its sincere exercise of religion, and that substantial burden must not be the least restrictive means of advancing a compelling government interest. *See, e.g.*, *Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1145 (N.D. Cal. 2007), *aff'd*, 365 F. App'x 817 (9th Cir. 2010).

Not only has AYA never made this showing, it has never even sought a RFRA exemption from the DEA, which has the authority under the CSA to register the legitimate importation and use of a Schedule I controlled substance, including for religious purposes. *See* 21 U.S.C. § 822; *see* Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, https://www.deadiversion.usdoj.gov/pubs/rfra_exempt_022618.pdf. AYA has conceded that it is aware of the DEA's exemption process. (*See, e.g.*, ECF No. 33-1, ¶¶ 23-32.) Defendants reiterated in their August 2020 preliminary injunction opposition that AYA must petition the DEA for an exemption. (ECF No. 49 at 13-15.) And yet AYA still has yet to seek an exemption from the DEA.

Third, nothing Defendants have said in this litigation is inconsistent with CBP exercising its wide authority to inspect packages at the border for contraband. Far from arguing that AYA "runs no risk of prosecution from its activities," as your letter misrepresents, Oct. 23 Letter at 1; *see also* Nov. 13 Letter at 1, Defendants' preliminary injunction opposition argued that AYA "ha[d] failed to demonstrate a genuine risk of prosecution sufficient to establish an imminent injury" for standing purposes. (ECF No. 49 at 11.) As that brief pointed out, "Plaintiffs d[id] not allege that federal authorities ha[d] communicated a specific warning or threat to initiate

proceedings against it or its members.  *See Rossides v. Gonzales*, 210 F. App'x 711, 712 (9th Cir. 2006) (finding no standing where "[n]o prosecuting authorities have ever communicated a specific threat or warning to initiate proceedings against [plaintiff]")."  (ECF No. 49 at 12.)  As a result, the Court concluded in its September 21, 2020 order that Plaintiffs had failed to demonstrate that their RFRA claim was constitutionally ripe.  (ECF No. 57 at 23.)  The Court's conclusion remains true today:  neither your October 23 Letter nor your November 13 Letter claims that any federal prosecuting authorities have communicated a specific threat or warning to initiate proceedings against any Plaintiff or AYA's members.

Finally, if AYA is in fact concerned that Defendants' routine enforcement of the CSA, in the absence of a RFRA exemption, is imposing a substantial burden upon its sincere religious exercise, we again invite Plaintiff to file a petition with the DEA demonstrating its entitlement to a RFRA exemption.  As you are aware, the DEA's public "Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act" can be found on its website at https://www.deadiversion.usdoj.gov/pubs/rfra_exempt_022618.pdf.

Best regards,

Kevin P. Hancock

3