BRIAN M. BOYNTON
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly; North American Association of Visionary Churches; Clay Villanueva; and the Vine of Light Church,<br><br>Plaintiffs,<br><br>v.<br><br>Merrick B. Garland, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373-PHX-ROS |

**DECLARATION OF CLAUDE M. REDD**

I, Claude M. (Martin) Redd, declare:

1. I am an employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), and have been employed by DEA since February 2005 in a series of increasingly responsible positions as a Diversion Investigator (DI), supervisory DI, and manager.

2. I currently serve as the Section Chief for the Registration and Program Support Section (DRR), Diversion Control Division, in DEA Headquarters. I have held this position since February 15, 2020. DRR is responsible for all registration

programs and activities administered by the Diversion Control Division. DRR ensures registrant databases are maintained appropriately, conducts quality control and verification of data, and provides management with reports and recommendations regarding registration activities and registrant information.

3. I previously served as a Diversion Program Manager (DPM) for DEA's Louisville Field Division from April 2018 to February 2020. Prior to the DPM position in Louisville, I served as the Chief of the Basic Diversion Training Unit at the DEA's Training Academy in Quantico, Virginia, from May 2016 to April 2018. Before the Academy, I was a Diversion Group Supervisor in the Louisville District Office from August 2010 to May 2016. Before becoming a Group Supervisor in the Louisville District Office, I was a Diversion Investigator in the Kansas City District Office from April 2005 to August 2010. I am therefore thoroughly familiar with the DEA Diversion Control program, including the registration process and the planning, conduct, and oversight of diversion investigations.

4. I submit this declaration in support of the Defendants' opposition to the motion for a preliminary injunction recently filed by Plaintiff Arizona Yagé Assembly ("AYA") in the above-captioned case. The information contained in this declaration is based on my personal knowledge and on information available to me in my official capacity.

5. DEA's mission is the enforcement of the Controlled Substances Act (CSA), as amended, 21 U.S.C. §§ *et seq.*, the regulations implementing the CSA, 21 C.F.R. Parts 1300 *et seq.*, and other narcotics laws and regulations. The mission of DEA's Diversion Control Division (DC) is to prevent, detect, and investigate the diversion of controlled pharmaceuticals and listed chemicals from legitimate sources, while ensuring an adequate and uninterrupted supply for legitimate needs, including medical, commercial, scientific, and religious use.

6. In the CSA, Congress created a closed regulatory system under which all businesses and other entities that import, export, manufacture, or distribute controlled

substances; all health care professionals licensed to dispense, administer, or prescribe controlled substances; and all pharmacies authorized to fill prescriptions for controlled substances must register with DEA. By regulating the movement of controlled substances from importation or manufacture through distribution and delivery to the ultimate user, such as a patient, the closed regulatory system provides a chain of custody which helps ensure that controlled substances are not being diverted into illicit channels, and are not provided to the public in a manner that can threaten public health and safety. The closed regulatory system is also intended to ensure an adequate and uninterrupted supply of controlled substances required to meet legitimate needs, while preventing, detecting, and investigating the diversion of controlled substances from legitimate channels.

7. When an entity or individual applies for a DEA registration, DEA Diversion Investigators (D/Is) conduct a pre-registration investigation to obtain information relevant to whether registration is consistent with the public interest. In considering whether registration to manufacture or distribute a controlled substance in Schedule I or II would be consistent with the public interest, DEA considers factors identified by Congress in 21 U.S.C. § 823, including maintenance of effective controls against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels," compliance with applicable State and local laws, past experience, an applicant's prior conviction record under federal or state laws relating to such substances, and "such other factors as may be relevant to and consistent with the public health and safety."

8. The purpose of the pre-registration investigation is to determine the fitness and suitability of the applicant to engage in the activities for which registration is requested. Applicants must hold licenses and satisfy other requirements of applicable state law, while researchers applying to handle schedule I controlled substances must submit a research protocol, which is evaluated by the Food and Drug Administration (FDA).

9. Through the pre-registration investigation, DEA also ensures through interviews and on-site visits, as appropriate, that the applicant is familiar with his or her responsibilities to prevent the diversion of controlled substances and listed chemicals, such as on-site security measures appropriate for the proposed activity, and understand applicable ongoing record-keeping and audit/inspection requirements.

10. D/Is are required to prepare pre-registration investigative reports which include information about the specific substances to be handled, the quantities involved, identification of the business proposal, and the person(s) responsible for the controlled substances and their backgrounds and credentials. The investigative report should also include a description of the security maintained by the applicant.

11. In furtherance of the CSA's closed regulatory system, any individual or concern which wishes to import or export one or more controlled substances in Schedules I and II must first apply for and obtain DEA registration. 21 U.S.C. §§ 957, 958; 21 C.F.R. § 1301.34. An applicant can apply for registration as an importer/exporter, or in another capacity, such as manufacture or research, for which importing or exporting is a coincident activity. *Id.*, § 1301.13. When an application for registration is approved, DEA issues a Certificate of Registration (Form DEA-223).

12. A DEA registrant must separately apply for an import permit for each import shipment of a controlled substance, using Form DEA-357, which is available at: https://www.deadiversion.usdoj.gov/imp_exp//357/357form.pdf. *See* 21 C.F.R. § 1312.11. DEA issues export permits using Form DEA-161. The permit must accompany the shipment into the United States. DEA also routinely transmits the import/export permit to the competent national authority of the import/export country and provides a copy to the importer/exporter through secure electronic means. *Id.* at §1312.14.

13. DEA assigns a number (also referred to as a "transaction id.") to all approved import/export permits and other transactions, date-stamps them, flags key fields, generates a file and transmits key information fields of all approved transactions

4

to the U.S. Department of Homeland Security, Bureau of Customs and Border Protection (CBP) on a daily basis. CBP imports key information from DEA into its automated commercial environment system. I understand that, when an authorized shipment nears a port of entry, the customs broker routinely clears the shipment by making appropriate entries into a customs database, identifying the appropriate harmonized tariff schedule, and memorializing the amount received, original country of origin, and other information. This makes it possible to compare the action authorized by DEA with the amounts actually shipped and to ensure that total amounts imported and manufactured do not exceed annual quotas.

14. CBP has the authority to deny release of a shipment, such as a shipment which is greater than the amount authorized on the import permit, to the importer at the port of entry; if the substance is in Schedule I, the shipment will be summarily forfeited to the United States. *Id.* at § 1312.15. If CBP denies the shipment, the importer must advise DEA that the shipment was denied and the reason for the denied release. *Id.* at § 1312.12(e).

15. I understand that, in the pending motion for preliminary injunction and supporting memorandum of law, Plaintiff AYA seeks a preliminary injunction to enjoin Attorney General Merrick Garland and DEA Administrator Anne Milgram from prosecuting AYA and its members for "importing or ingesting sacramental Ayahuasca." I understand that Plaintiff AYA also seeks a preliminary injunction preventing Alejandro Mayorkis, in his capacity as Secretary of the Department of Homeland Security (DHS), and Troy Miller, as Acting Commissioner of the DHS U.S. Bureau of Customs and Border Protection (CBP), from "confiscating sacramental Ayahuasca that was shipped to AYA" from overseas for asserted religious purposes. ECF No. 137.

16. I am aware that "ayahuasca" is an herbal tea which contains the hallucinogen dimethyltryptamine (DMT), a controlled substance listed in Schedule I of the CSA and its governing regulations. *See* 21 U.S.C. § 812(c)(Schedule I)(c)(6); 21

5

C.F.R. § 1308.11(d)(19). Placement in Schedule I means that DMT has (1) a high potential for abuse; (2) no currently accepted medical use in treatment in the U.S.; and (3) a lack of accepted safety for use under medical supervision. 21 U.S.C. § 812(b)(1). Placement in Schedule I also renders the unauthorized manufacture, distribution, or possession of DMT a criminal offense. 21 U.S.C. §§ 841(a)(1), 844(a). Accordingly, under federal law, ayahuasca tea and its main plant ingredients, which contain DMT, may not be imported, manufactured, possessed, or distributed within the United States outside the closed regulatory system created by the CSA. 21 U.S.C. §§ 841, 844, 952, 957, 960.

17. Importation, manufacture, distribution, and dispensation of DMT outside the closed regulatory system established by the CSA would facilitate diversion of DMT into illicit channels and endanger public health and safety. Experimentation with and recreational and/or self-help use of ayahuasca have grown exponentially, both in the United States around the world. In an updated assessment of the risks to public health and safety of ayahuasca prepared by the DC Drug and Chemical Evaluation Section in 2020, moreover, DEA found that clinical effects of ingestion include hallucinations, agitation, tachycardia, confusion, heightened blood pressure, and vomiting. Ingestion has been known in rare instances to cause seizures, respiratory arrest, and cardiac arrest.

18. Plaintiff Arizona Yage has not submitted a petition to DEA pursuant to DEA's Religious Freedom Restoration Act (RFRA) guidance, applied for DEA registration, or requested an exemption from otherwise applicable regulations.

19. The injunction Plaintiff seeks would effectively prevent DEA from enforcing any provision of the CSA as to the Plaintiff's importation and distribution of ayahuasca. This would subvert the closed regulatory system created by the CSA and pose significant risks of diversion of ayahuasca and, in turn, risk to the public health and safety. DEA would have no means to ascertain how much plant material or tea Plaintiff imported, how much tea it manufactured, how and where Plaintiff distributed or dispensed the tea, or whether and how Plaintiff disposed of any excess tea, much

less ensure that the Schedule I controlled substance was not distributed or dispensed by Plaintiff in a manner that could lead to unauthorized diversion of the drug or place public health and safety at risk.  It also would impede DEA's ability to determine and ensure the lawful manufacturing, importation, and distributing of ayahuasca and its plant materials by third-parties, whether working to provide or distribute it to Plaintiff or unrelated to Plaintiff.  It would also impede DEA's ability to ascertain and appropriately respond to the loss or theft of ayahuasca and its plant materials while in Plaintiff's control.  Removing Plaintiff from the closed regulatory system would make it significantly more difficult to DEA to track and monitor any ayahuasca tea or plant material that third-parties distribute or receive from Plaintiff.

20. Congress has authorized the Attorney General, who has delegated this authority to DEA, to waive certain registration requirements if consistent with public health and safety.  See 21 U.S.C. §§ 822(d), 871(b).  Under 28 C.F.R. § 1307.03, DEA has authorized limited exemptions from the requirements to obtain registration and import/export permits under two extraordinary circumstances.

a. On written request, DRI has authorized on rare occasions a foreign practitioner, such as the team physician for a professional, collegiate, or Olympic team, to temporarily enter or transit into the United States in possession of controlled substances without importer registration, permits, or declarations.  However, the practitioner cannot leave unused controlled substances in this country upon his or her departure.

b. On written request, DRI has also authorized DEA-registered practitioners to leave the United States without an exporter registration, export permit, or declaration, with controlled substances for extraordinary medical needs, such as a sanctioned medical expedition approved by the competent authority of the host country.  Once exported, such controlled substances cannot be brought back into the United States.

21. DEA has also by regulation exempted from payment of registration fees military hospitals

and health institutions, as well as individual practitioners who are required to obtain individual registration to work at such a facility. 21 C.F.R. §§ 1301.21, .23. DEA also waives the requirement to register for law enforcement and customs officials who handle or possess controlled substances as part of their official duties. *Id.,* § .24. Vessels on the high seas may also keep controlled substances for emergency medical use. *Id.* at .25. However, even those exempt from registration to *dispense* a controlled substance, such as a hospital, must apply for registration to *import* any substance in Schedule I or II (or psychotropic drugs in lower schedules). *See* 21 C.F.R. § 1312.12.

22. I understand that Plaintiff AYA cites two examples of cases in which a court found a party to have a sincere religious practice involving ayahuasca use that was substantially burdened by enforcement of certain United States laws and regulations concerning controlled substances. Following those decisions, DEA worked closely with each party on a case-by-case basis to develop a means by which that party could access the ayahuasca it claims to need *within* the closed regulatory system established by the CSA. For example, the religious group in *O Centro*, known as UDV, obtained DEA registrations as an importer, manufacturer, and distributor of *hoasca* (that group's term for ayahuasca). UDV complies with the applicable DEA regulations, with accommodations made as necessary to address case-specific issues. In particular, whenever UDV wishes to import *hoasca* or the plants used to make *hoasca*, UDV applies for and receives an import permit for each import shipment, using Form DEA-357. 21 C.F.R. § 1312.11. DEA then issues the necessary import permits to UDV using Form DEA-161, and a permit accompanies each UDV shipment into the United States. Additionally, DEA has waived the normally applicable registration fees for UDV.

I declare that the foregoing statements made by me are true and correct to the best of my information and belief.

Sworn to and subscribed this 6th day              _____
of January  2022                                              CLAUDE M. (MARTIN) REDD