BRIAN M. BOYNTON
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; North American Association of Visionary Churches; Clay Villanueva; and the Vine of Light Church, <br><br> Plaintiffs, <br><br> v. <br><br> Merrick B. Garland, Attorney General of the United States, *et al.*, <br><br> Defendants. | No. 2:20-cv-2373-ROS |

**DECLARATION OF STEPHEN M. (MARK) VIA**

I, Stephen M. (Mark) Via, declare:

1. I am employed by the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), as a Technical Information Specialist and have been employed by DEA since July 29, 1980.

2. I was initially assigned to the Office of Information Systems in DEA Headquarters, where I maintained and updated computer programs used by the DEA Office of Diversion Control (now the Diversion Control Division or DC) to carry out its Chemical Control Program. The Chemical Control Program targets precursor and essential chemicals used in the production of illegal drugs through registration, record

keeping, and other requirements applicable to importers, exporters, manufacturers, and distributors of listed chemicals. My responsibilities included the Automation of Reports and Consolidated Ordering System (ARCOS).

3. I was reassigned to DC in July 1999. Through a series of internal reorganizations, responsibility for the import and export of listed chemicals and controlled substances was combined in a single unit, a predecessor to the current Import/Export Section (DRI), in 2004. During this period, DC undertook a comprehensive overhaul and upgrade of its internal processes from personal computer-based data processing to network-based applications and databases; I participated in creating and/or upgrading applications such as the Registrant Information Consolidated System (RICS).

4. DRI administers and monitors the DEA Import/Export program for controlled substances and listed chemicals under the closed comprehensive regulatory system established by the Controlled Substances Act, the Diversion Control Program. DRI issues import and export permits, and monitors declared imports, exports, and transshipments of these regulated substances. DRI also conducts import/export reporting activities; implements programs in response to legislation and international treaties; and ensures all imports and exports of controlled substances and listed chemicals meet the requirements of the CSA.

5. Within DRI, I am responsible for monitoring changes in laws, regulations and policy and conducting system analyses to define the technical requirements needed to implement those changes as they affect the import/export process. I also test proposed software changes and applications. I am therefore familiar with both the substantive requirements governing the import and export of listed chemicals and controlled substances and their implementation through DEA applications and data bases.

6. I submit this declaration in support of the Defendants' opposition to the motion for a preliminary injunction recently filed by Plaintiff Arizona Yage´ Assembly

("AYA") in the above-captioned case. The information contained in this declaration is based on my personal knowledge and on information available to me in my official capacity.

7. Any individual or concern which wishes to import or export one or more controlled substances in Schedules I and II must first register with DEA. 21 U.S.C. §§ 957, 958; *see further* 21 C.F.R. § 1301.34. An applicant can apply for registration as an importer/exporter, or in another capacity for which importing or exporting is a coincident activity. *Id.*, § 1301.13. An individual or concern registered as a manufacturer or researcher, for example, may be authorized to import as a coincident activity. *Id.* When an application for registration is approved, DEA issues a Certificate of Registration.

8. A DEA registrant must separately apply for an import permit for each import shipment of a controlled substance, using Form DEA-357. 21 C.F.R. § 1312.11. The Form is available at https://www.deadiversion.usdoj.gov/imp_exp//357/357form.pdf. DEA issues export permits using Form DEA-161. The permit must accompany the shipment into the United States. DEA also routinely transmits the import/export permit to the competent national authority of the import/export country and provides a copy to the importer/exporter through secure electronic means. *Id.* at §1312.14.

9. DEA assigns a number (also referred to as a "transaction id.") to all approved import/export permits and other transactions, date-stamps them, flags key fields, generates a file and transmits key information fields of all approved transactions to the U.S. Department of Homeland Security, Bureau of Customs and Border Protection (CBP) on a daily basis. CBP imports key information from DEA into its automated commercial environment system. I understand that, when an authorized shipment nears a port of entry, the customs broker routinely clears the shipment by making appropriate entries into a customs database, identifying the appropriate harmonized tariff schedule, and memorializing the amount received, original country of origin, and other information, and making it possible to compare the action

authorized by DEA with the amounts actually shipped.

10. As I understand it, CBP has the authority to deny release of a shipment, such as a shipment which is greater than the amount authorized on the import permit, to the importer at the port of entry; if the substance is in Schedule I, the shipment will be summarily forfeited to the United States.  *Id.* at § 1312.15.  If CBP denies the shipment, the importer must advise DEA that the shipment was denied and the reason for the denied release.  *Id.* at § 1312.12(e).

11. DEA has issued registrations to import, manufacture, and/or distribute for religious purposes teas and plants containing the schedule I controlled substance N,N-Dimethyltryptamine (DMT).  I identified and oversaw implementation of minor changes to DEA's computerized processes needed to incorporate these religious purposes within DEA's closed regulatory system.

12. Two religious organizations, to which DEA has issued registration to manufacture and/or distribute the controlled substance, submit applications to import it using Form DEA-357.  DRI routinely processes those import permits. When DEA first did so, individual members of the organizations brought sealed canisters of the tea into the United States on their person or as luggage.  DEA personnel then informally advised CPB at each port of entry of an import shipment to ensure that CPB did not seize imported hoasca tea (which can deteriorate unless refrigerated).  More recently, the organizations have imported kilos of leaves of the constituent plants through commercial carriers.  Import permits for the two religious organizations are routinely annotated to indicate that the shipment is being imported for religious purposes and to provide the name and telephone numbers of two points of contact in DEA Headquarters.  I am one of the listed contacts.

13. The minor changes to DEA's closed regulatory system made for the two religious organization include waiver of otherwise applicable registration fees and elimination of otherwise applicable public notices of applications to manufacture or import controlled substances.

I declare under penalty of perjury that the foregoing statements made by me are true and correct to the best of my information and belief.

Sworn to this 6th day of January 2022.

_Stephen M. Via_
STEPHEN M. VIA