BRIAN M. BOYNTON
Acting Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; North American Association of Visionary Churches; Clay Villanueva; and the Vine of Light Church,<br><br>Plaintiffs,<br><br>v.<br><br>Merrick B. Garland, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373-PHX-ROS<br><br>**Declaration of Gerald Hinkle** |

I, Gerald Hinkle, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am currently employed by the Department of Homeland Security (DHS), U.S. Customs and Border Protection (CBP), Office of Field Operations (OFO), as a Chief CBP Officer (CBPO) in Trade Operations at the Los Angeles International Airport (LAX). I have held this position since March 28, 2021. Prior to this, I held the position of Supervisory CBPO

1

from July 21, 2020, until March 28, 2021.  Prior to this, I held the position of CBPO from November 3, 2013, until July 21, 2020.

2. In my current position, I oversee all CBP operations at the LAX International Mail Facility (IMF).  The IMF is responsible for the processing and inspection of all inbound and outbound international mail in order to enforce and ensure compliance with federal criminal and civil statutes, regulations, and policies, including those governing U.S. customs and trade, homeland security and anti-terrorism efforts, the protection of intellectual property rights, the interdiction of unlawfully imported or exported controlled substances, and health and safety violations.

3. Under 19 U.S.C. § 1484, the importer of record is responsible for using reasonable care to enter, classify, and determine the value of imported merchandise and to provide any other information necessary to enable CBP to properly assess duties and determine whether all applicable legal requirements have been met.  Generally, when a shipment reaches the United States, the importer of record must file required entry documentation with CBP at a port of entry.  An importer of record may authorize a licensed broker to act as its agent for the purpose of making entry.  The documentation enables CBP to determine whether merchandise can be released from CBP custody into the commerce of the United States.  Imported goods are not legally entered until after the shipment has arrived in the port of entry, delivery of merchandise has been authorized by CBP, and estimated duties have been paid.  CBP may examine and inspect the merchandise and entry documentation for accuracy, admissibility, and to determine, among other things: the value of the goods for customs purposes and their dutiable status; how the goods should be classified, whether the goods must be marked with their country of origin or require special marking or labeling and, if so, whether they have been so marked; whether the shipment contains prohibited or restricted articles; whether the goods are correctly invoiced; whether the shipment contains narcotics or other contraband; and whether the importer has procured any necessary licenses or permits.  In this way, CBP has the information it needs to assess the correct duty, seize the

goods, if appropriate, or issue a penalty to the importer. If entry information is incorrect but the merchandise appears to be inadmissible, CBP may reject the entry and return it to the filer for correction. If the merchandise appears to be inadmissible, CBP can detain the shipment for further inspection or inquiry, seize, or exclude the merchandise. If entry information is accurate and the merchandise is admissible, it may be conditionally released from CBP custody.

4. As a sovereign nation, the United States has both the inherent authority and paramount interest in protecting its territorial integrity. *See United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). Its interest in regulating the entry of unwanted persons and goods in order to protect its territorial integrity is "at its zenith" at its international borders. *Id.* at 152. Congress has granted the Executive Branch plenary authority to conduct searches and seizures at the United States' international borders in order to regulate and enforce the collection of duties and to prevent the introduction of contraband into the United States. *Id.* at 153. In addition to enabling fair, competitive, and complaint trade, CBP is charged with protecting and securing the nation's borders from the illegal movement of weapons, drugs, contraband, and people. *See* 6 U.S.C. § 211. Securing the international borders is essential to homeland security, economic prosperity, and national sovereignty. Terrorist organizations and criminals attempt to conceal their activities with the legitimate flow of trade and travel across our borders, as well as within the international mail system. CBP protects and secures the borders to prevent, detect, and interdict the unlawful importation of harmful and dangerous controlled substances and agricultural pests and diseases, which are a direct threat to the safety and well-being of the American people and the commerce of the United States. The high price of illicit controlled substances, as defined in 21 U.S.C. § 802, has created a lucrative market for Drug Trafficking Organizations (DTOs) and necessitated the need to combat the flow of narcotics in and out of the U.S. Unlawfully imported and smuggled controlled substances fuel this market and contribute to unregulated drug abuse and drug overdose deaths in the United States.

5. CBP collaborates with Homeland Security Investigations (HSI), the investigative arm of U.S. Immigration and Customs Enforcement (ICE) within the DHS, as well as with the U.S. Food and Drug Administration (FDA), the United States Postal Service (USPS), and other partnering government agencies to directly target and close vulnerabilities in the USPS and Express Consignment Carrier Facilities (ECCF) environment. These efforts focus on controlled substances, the exploitation of the dark web, criminal use of cryptocurrencies, and how criminal individuals and organizations are exploiting the international mail system to further illicit criminal activities.

6. Pursuant to 21 U.S.C. § 952, it is generally unlawful to import into the United States controlled substances listed in schedules I and II and narcotic drugs listed in schedules III, IV, and V of the Controlled Substances Act, 21 U.S.C. § 801 et seq. Pursuant to 19 C.F.R. § 162.61, "It shall be unlawful to import to or export from the United States any controlled substance or narcotic drug listed in schedules I through V of the Controlled Substances Act . . . unless there has been compliance with the provisions of said Act, the Controlled Substances Import and Export Act and the regulations of the Drug Enforcement Administration."

7. As described in detail in Chapter 4 of the CBP Seized Asset Management and Enforcement Procedures Handbook (SAMPEH), parcels containing Schedule I, II, III, IV, or V controlled substances that are encountered at IMFs or ECCFs are seized by CBP as a violation of 19 U.S.C. § 1595a(c)(1)(B) unless accompanied by a valid Drug Enforcement Administration (DEA) Form 236, "Controlled Substances Import/Export Declaration." The DEA Form 236 can be used only by a registered importer or exporter of chemicals on the DEA list who has been issued a Certificate of Registration and is permitted to import such substances. When CBP encounters a parcel containing a DEA Form 236, it verifies with the DEA that the importer is registered and the Form is valid and accurate. If no other violations are found, CBP will make a determination that the parcel containing the controlled substance is admissible to the U.S.

8. A parcel containing a controlled substance that is not accompanied by a valid DEA Form 236, and authorized by a valid DEA Certificate of Registration and importation permit, will be seized by CBP, and the controlled substance will be subject to forfeiture, pursuant to 19 U.S.C. § 1595a(c)(1)(B), 21 U.S.C. § 881(f), and 19 C.F.R. § 162.45a, for violation of 21 U.S.C. § 952. Forfeited controlled substances that are eligible for destruction and are not otherwise needed for an authorized law enforcement purpose are destroyed as mandated by the relevant regulations and the SAMEPH.

9. One of the main purposes of the CSA is to protect the safety and health of the American public while also ensuring access to certain controlled substances for legitimate and legal purposes. The CSA was designed to provide "a 'closed' system of drug distribution for legitimate handlers of such drugs" and halt "the widespread diversion of [controlled substances] out of legitimate channels into the illegal market." H.R. Rep. No. 91-1444, 1979 U.S.C.C.A.N. at 4572. As part of this closed system, the DEA establishes and maintains a system that strictly controls and monitors the flow of controlled substances in the United States. This includes importation, manufacture, distribution, and dispensing. The closed system framework requires individuals or organizations who handle controlled substances to be registered, if in the public interest, in order to reduce illicit drug trafficking and drug abuse. CBP plays a vital role in the closed regulatory system. CBP secures the international borders by examining imported merchandise and determining admissibility to the United States. With regard to controlled substances, CBP ensures that only legitimate importers who are registered with the DEA are able to import controlled substances for legitimate and legal purposes. CBP must have the ability to examine/inspect every shipment imported into the United States, and seize any such shipment imported in violation of the law, in order to ensure efficient and timely international trade, keep accurate statistics, assess and collect the proper duties on imported merchandise, and ensure that harmful and dangerous substances and products are not released into commerce without the importers having procured the requisite licenses and permits through the appropriate regulatory processes. CBP must examine the entry

documentation and the shipment itself to ensure that prohibited, restricted, or fraudulently- or inaccurately-declared merchandise is excluded from the commerce of the United States and from dispersal within the American public. The reality of terrorist and criminal organizations who use trade and travel to import contraband, weapons, and dangerous controlled substances underscores the important role CBP plays at the international borders.

10. In their motion for preliminary injunction, Plaintiff Arizona Yage Assembly (AYA) seeks an order "preventing DHS and CBP from seizing and destroying [Plaintiff's] religious sacrament." Such an order, if granted, would disrupt the mission of CBP and undermine the compelling interest in securing the nation's borders against the unregulated flow of harmful and dangerous controlled substances into the United States. The "religious sacrament" Plaintiff seeks to import for distribution and use is ayahuasca, which contains dimethyltryptamine (DMT), a schedule I controlled substance. Plaintiff's requested order, if granted, would effectively require CBP to "pre-clear" or "pre-admit" parcels that Plaintiff claims contain DMT, a schedule I controlled substance, based solely on the Plaintiff's word that the parcel contains *only* ayahuasca (and only a certain type and amount of ayahuasca), as well as Plaintiff's mere claim that such ayahuasca would be used exclusively in the exercise of a sincerely held religious belief. However, Plaintiff has not engaged in the DEA importation registration application process and, under its requested order, its parcels would not be accompanied by a valid DEA Form 236, as is required by law and necessary to effectuate the border protection objectives served by the CSA's closed regulatory system. Plaintiff's request misunderstands the laws, regulations, and procedures in place to protect the American public against the trafficking of dangerous and harmful controlled substances, as well as the procedures and logistics involved with the movement, tracking, targeting, and inspection of international mail in the custody of both the USPS and CBP.

11. An order instructing CBP to wholesale-admit Plaintiff's parcels, which allegedly include a substance containing DMT, would require CBP to ignore a multitude of statutes, regulations, and policies it is charged with enforcing by Congress and the Executive Branch.

Moreover, CBP is not authorized by statute, regulation, or policy to issue certificates of registration for any reason; Congress has vested that authority in DEA alone. CBP enforces a variety of federal laws for a multitude of federal agencies, including the FDA, Centers for Disease Control and Prevention (CDC), U.S. Consumer Product Safety Commission (CPSC), U.S. Fish and Wildlife Service (FWS), and the DEA. CBP does not have independent statutory or regulatory authority to allow the importation of controlled substances absent the requisite registration and certification by the DEA and the presence of the proper importation forms and documentation. Plaintiff's requested order, if granted, would undermine CBP's ability and duty to protect the nation's borders through enforcement of the Controlled Substance Act by requiring CBP to blindly allow the unlawful and unmonitored importation of harmful and dangerous controlled substances and to facilitate the release of such substances into the general commerce of the United States.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of January 2022.

Gerald Hinkle
Chief Customs and Border Protection Officer
Los Angeles International Airport
Office of Field Operations
U.S. Customs and Border Protection
U.S. Department of Homeland Security