JOHN SULLIVAN (CSB#204648)
17532 Miranda Street
Encino, CA 91316
Tel:818-769-7236
Email:Sullivan.John84@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly,
North American Association of Visionary Church,
Clay Villanueva, and the Vine of Light Church

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Arizona Yagé Assembly, North American
Association of Visionary Churches, Clay
Villaneuva, and the Vine of Light Church,

        Plaintiffs,

        vs.

Merrick Garland, Attorney General of the
United States, *et al.*,

        Defendants.

**Case No.:20-CV-02373-ROS**

## PLAINTIFF ARIZONA YAGE ASSEMBLY'S
## REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.  AYA IS LIKELY TO SUCEED ON THE MERITS ............................................. 1

II. AYA'S CEREMONIES ARE SINCERE RELIGIOUS FREE EXERCISE ......... 1

    A.  RFRA Protects AYA's Free Exercise.................................................. 1

    B.  Ayahuasca tea is religious sacrament and the ingestion of Ayahuasca tea is a religious practice........................................................................... 2

    C.  AYA is a Sincere Religious Person....................................................... 3

    D.  AYA's Sincerity is Unimpeached ........................................................ 7

III. AYA's FREE EXERCISE IS SUBSTANTIALLY BURDENED BY THE DEA'S PROHIBITION ON AYA's USE OF AYAHUASCA........................................... 10

IV. THE GOVERNMENT CANNOT SHOW ITS "LEAST RESTRICTIVE ALTERNATIVE" IS LESS EFFECTIVE THAN EXEMPTING AYA'S USE AND IMPORTATION OF SACRAMENTAL AYAHUASCA FROM THE CRIMINAL AND REGULATORY PROHIBITIONS OF TITLE 21................ 10

V.  THE DEA'S ASSERTION OF AUTHORITY OVER AYA'S RFRA CLAIM HAS NO STATUTORY BASIS; ACCORDINGLY, ADMINISTRATION EXHAUSTION IS NEITHER REQUIRED NOR PROPER .............................. 11

    A.  Administrative Exhaustion is Neither Required Nor Appropriate...................... 11

    B.  DEA's RFRA Guidance Petition Process is *Ultra Vires* ...................................... 12

    C.  The DEA Has Blown Hot and Cold on the Guidance – First Seeking a Stay to "Engage in Rulemaking" And Now Defending it ................................................. 13

    D.  DEA Has No Compelling Interest in Evaluating Religious Sincerity................... 14

VI. THE BALANCE OF EQUITIES TIPS SHARPLY IN FAVOR OF AYA .......... 14

VII.  CONCLUSION ......................................................................... 14

# TABLE OF AUTHORITIES

*Albertson v. Subversive Activities Control Bd.*,
   382 U.S. 70 (1965) ................................................................................. 5

*Ashcroft v. American Civil Liberties Union*,
   542 U.S. 656 (2004) ...................................................................... 10, 11

*Bowen v. Georgetown Univ. H*osp.,
   488 U.S. 204 (1988) ........................................................................... 12

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ......................................................................... 1, 3

*Church of the Holy Light of the Queen v. Mukasey*,
   615 F. Supp. 2d 1210 (D. Or. 2009) ............................................ 2, 3, 10

*Gonzalez v. O Centro Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) ............................................................. 2, 9, 11, 14

*Holt v. Hobbs*,
   574 U.S. 352 (2015) ............................................................................. 9

*Isbell v. Ryan*,
   2011 U.S. Dist. LEXIS 140469 (D. Ariz. Dec. 6, 2011) ........................... 2

*Jones v. Slade*,
   2022 U.S. App. LEXIS 1948 (9th Cir., Jan. 24, 2022) ........................... 10

*Navajo Nation v. U.S. Forest Serv.*,
   535 F.3d 1058 (9th Cir. 2008) ........................................................... 10

*O Centro Beneficente Uniao do Vegetal v. Ashcroft*,
   389 F.3d 973 (10th Cir. 2004) (en banc) (McConnell, J., concurring) (same) ........... 3

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
   676 F.3d 829 (9th Cir. 2012) ...................................................... 11, 14

*Oklevueha Native Am. Church of Haw., Inc. v. Lynch*,
   828 F.3d 1012 (9th Cir. 2016) ........................................................... 10

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................................... 10

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*,
   450 U.S. 707 (1981) ............................................................................. 1

*United States v. Ballard*,
    322 U.S. 78 (1944) ........................................................................... 1

*United States v. Christie*,
    825 F.3d 1048 (9th Cir. 2016) ................................................... 3, 7, 14

*United States v. Gonzales*,
    957 F. Supp. 1225 (D.N.M. 1997) ................................................ 10

*United States v. Hoffman*,
    436 F. Supp. 3d 1272 (D. Ariz. 2020) ...................................... 1-2, 3, 4, 8

*United States v. Johnson*,
    457 U.S. 537 (1982) ...................................................................... 14

*United States* v. Lepp,
    No. CR 04-00317 MHP, 2008 U.S. Dist. LEXIS 123895, 2008 WL 3843283 .......... 3

*United States v. Seeger*,
    380 U.S. 163 (1965) ..................................................................... 1, 3

*United States v. Ward*,
    989 F.2d 1015 (9th Cir. 1992) ....................................................... 1, 7

*United States v. Zimmerman*,
    514 F.3d 851 (9th Cir. 2007) .......................................................... 8

*Wis. v. Yoder*,
    406 U.S. 205 (1972) ....................................................................... 1

21 U.S.C. § 822 ............................................................................. 12, 13

42 U.S.C. § 2000bb-1 ..................................................................... 1, 14

## I.    AYA IS LIKELY TO SUCEED ON THE MERITS

AYA has shown a likelihood of success on the merits of its RFRA claim because (a) Ayahuasca communion is free exercise, (b) AYA's ceremonies are the sincere practice of Ayahuasca communion, and (c) the burden has shifted to the Government to show that the CSA's prohibition is not the least restrictive means of achieving its compelling state interest. The Government cannot meet its burden because the DEA's experience administering RFRA exemptions for two other Visionary Churches – the UDV and the Santo Daime – establish that administering an exemption for AYA will be equally successful in advancing its interests of protecting public health and preventing the diversion of sacramental Ayahuasca.

## II.    AYA'S CEREMONIES ARE SINCERE RELIGIOUS FREE EXERCISE

### A.  RFRA Protects AYA's Free Exercise

Under RFRA's "very broad protection for religious liberty," *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014), the Government Agency defendants (the "Government") must provide an exemption from general law to avoid substantially burdening free exercise, unless the restraint upon free exercise is the "least restrictive means" of furthering a "compelling government interest."  42 U.S.C. § 2000bb-1(b).

"[W]hat is a 'religious' belief or practice" is "a most delicate question." *Wis. v. Yoder*, 406 U.S. 205, 215 (1972).  The Court's analysis cannot "turn upon a judicial perception of the particular belief or practice in question." *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). Beliefs do not need to be "acceptable, logical, consistent, or comprehensible to others" to constitute religious beliefs. *Id.* . "[R]eligious experiences which are as real as life to some may be incomprehensible to others." *United States v. Ballard*, 322 U.S. 78, 86-87 (1944).

AYA's beliefs are protected because they are "sincerely held" and, in the claimant's "scheme of things, religious." *Ward*, 989 F.2d at 1018 (quoting *United States v. Seeger*, 380 U.S. 163, 174 (1965)); *see also United States v. Hoffman*, 436 F. Supp. 3d 1272, 1281 (D. Ariz. 2020) (finding the Ward standard is the proper standard when

evaluating RFRA claims); *Isbell v. Ryan*, No. CV 11-0391-PHX-JAT (JFM), 2011 U.S. Dist. LEXIS 140469, at *17-18 (D. Ariz. Dec. 6, 2011) (applying the Supreme Court's test in *Seeger* to RFRA claims).

> **B.   Ayahuasca tea is religious sacrament and the ingestion of Ayahuasca tea is a religious practice**

Following ancient South American religious customs and traditions, AYA members use Ayahuasca tea as a religious sacrament in visionary communion ceremonies. For AYA members, "Ayahuasca communion mediates a connection to Divine Love, that has qualities of forgiveness, renewal, healing, joy, and peace." Dkt. 140-1 at 5 (Stanley Decl. at ¶ 11).

The Government ignores more than a decade of settled jurisprudence when it suggests it would be proper to revisit "the religious nature of the substance at issue," Dkt. 144 at 11:21-22. Sixteen years ago, the Supreme Court concluded that Ayahuasca tea is a religious sacrament and ceremonial ingestion of Ayahuasca is protected free exercise. *See Gonzalez v. O Centro Beneficente Uniao do Vegetal,* 546 U.S. 418, 434 (2006) (no indication Congress considered harms posed by sacramental use of hoasca by the UDV when it classified DMT); *see also Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1211-12 (D. Or. 2009) (RFRA "requires that plaintiffs be allowed to import and drink Daime tea for their religious ceremonies, subject to reasonable restrictions.")[1] Like peyote, Ayahuasca is a religious sacrament and not a drug of abuse:

> As courts have repeatedly emphasized, cannabis differs critically from peyote and hoasca precisely because there is a thriving market for diverted cannabis, whereas there is no comparable demand for recreational peyote and hoasca.

*United States v. Christie*, 825 F.3d 1048, 1059 (9th Cir. 2016); *see also*, *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1020 (10th Cir. 2004)

---

[1] The Ayahuasca tea used by AYA is pharmacologically identical to that utilized by the UDV and Santo Daime churches that were granted protection under RFRA by the federal courts.  Dkt. 140-1 at 7 (Stanley Decl. at ¶ .18).

(en banc) (McConnell, J., concurring) (same); *United States v. Lepp*, No. CR 04-00317 MHP, 2008 U.S. Dist. LEXIS 123895, 2008 WL 3843283, at *11 (N.D. Cal. Aug. 14, 2008) (same).

*O Centro* held that drinking Ayahuasca tea as a communion sacrament is a *bona fide* religious practice.  When AYA members gather in AYA's Maloka or other ceremonial space, undertake the prescribed rituals rooted in thousands of years of tradition and ingest Ayahuasca tea, *O Centro* and its progeny make clear that this is a "religious" and not a "secular" activity for the purposes of RFRA.  *Church of the Holy Light of the Queen*, 615 F. Supp. 2d at 1211-12 (noting board of pharmacy determination that "CHLQ's religious use of Daime tea was a 'non-drug' use.").

### C. AYA is a Sincere Religious Person

RFRA protects "religious persons," and churches, as nonprofit corporations, have RFRA standing independent of their membership. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 684, 134 S. Ct. 2751, 2759 (2014) ("RFRA indisputably protects nonprofit corporations.").[2]  An individual's claim that her belief "is an essential part of a religious faith" is entitled to "great weight" in the "intensely personal area" of religious liberty.  *Seeger*, 380 U.S. at 184. Applying *Seeger*, this Court's "inquiry into sincerity is therefore 'limited to asking whether the claimant is (in essence) seeking to perpetrate a fraud on the court[.]'" *Hoffman*, 436 F. Supp. 3d at 1284 (quoting *Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014)).

The Government suggests, without evidence, that AYA is perpetrating a fraud on the Court and that AYA's religious claims are merely a ruse to cloak the "secular" use of a Schedule I drug. *See* Dkt. 144 at 11.  Ample record evidence demonstrates that AYA's religious beliefs are sincerely held.  *First*, AYA is part of the broader Visionary Religion community and has collaborated with other churches to improve its worship and ministry activities. Jonathan Goldman, the Santo Daime Padrinho of CHLQ for the last twenty-

---

[2] AYA Minister Scott Stanley speaks for the AYA congregation, and his sincerity is unassailable on the record before this Court.  *See* Dkt 140-1 at 3-14; *see also* Exhibit A (hereinafter "Stanley Supp. Decl.").

five years, has consulted with AYA before and during this litigation. *See* Exhibit B (hereinafter "Goldman Decl.) at ¶ 2.  Goldman was the first Santo Daime elder recognized by his church leadership and the Oregon District Court as a sincere practitioner of visionary communion, and is an expert in determining the qualifications and sincerity of those who engage in the ministry of Ayahuasca communion. *Id.* at ¶ 3. Mr. Goldman has attested to AYA's legitimacy as a religious organization and their positive representation within the Visionary Religion community, made averments as to Mr. Stanley's sincerity, and noted the similarities between AYA's manner of conducting ceremonies and that of the Santo Daime. *Id.* at ¶¶ 14-16, 18-23. The substantial similarity between the Santo Daime path and the AYA path make Goldman's averments regarding Mr. Stanley's sincerity relevant and probative.

   *Second*, the very nature of AYA's free exercise claim bespeaks the sincerity of AYA and its congregation. AYA's ceremonies are serious events designed to achieve spiritual healing and do not remotely resemble a secular party or festival.  *See* Stanley Supp. Decl. at ¶ 6-7.  Ceremonies are not loud or boisterous, but rather contemplative as many congregants realize deeply religious sentiments as they review incidents from their past, recognize errors, purge their guilt and recognize the need to forgive others and themselves.  *Id.*  The AYA Code of Ethics expressly forbids the use of alcohol or non-medicinal drugs in or around ceremony.  *See* Dkt. 140-1 at 32.  Unlike a secular or recreational gathering, participants in an AYA ceremony may not come and go as they please.  AYA's Ceremonial Instructions require that anyone "who joins the congregation in ceremony must make an explicit commitment to remain within the ceremonial environment until the conclusion of the ceremony.  Facilitators will assure that practitioners keep this commitment." Dkt. 140-1 at 26 (Instructions at ¶ 8).

   *Third*, the demographics and religious attitudes of AYA's congregation demonstrate sincerity.  AYA is not a congregation of kids looking for a good time, but rather a congregation of serious adults in search of Divine Love: 71% of AYA members are over 30 years old and 46% are over the age of 40. *See* Dkt 140-1 at 43. Ninety-six

percent pray or meditate, and the same percentage state that their only use of Ayahuasca has been as a religious or spiritual practice. *Id.* at 44.[3]  Ninety-eight percent consider participation in AYA ceremonies as beneficial to their spiritual growth.  *Id.*  Ninety-four percent see themselves returning to future ceremonies.  *Id.* The Government does not object to the admissibility of these survey results. Instead, the Government tries to twist the data and mislead the Court with the false statement that "only 16% people surveyed responded that using Ayahuasca was 'religious or spiritual.'" Dkt. 144 at 13:9. In fact, the data shows that 91.1% of the survey respondents believed that participating in AYA ceremonies as a "religious or spiritual practice."[4] Dkt. 140-1 at 44. There is near uniform belief among AYA's members that AYA's ceremonies are a protected religious practice.

*Fourth*, AYA is organized to facilitate the sincere beliefs of its participants and to discourage any non-sacramental use of Ayahuasca.  AYA leaders believe that one of their highest responsibilities is to protect Ayahuasca so that it is only used for sacramental purposes. *See* Stanley Supp. Decl at ¶ 17.  AYA's properly conducted ceremonies supervised by knowledgeable facilitators virtually eliminate the risk of diversion and adverse health effects.  *Id.* at ¶ 4; Goldman Decl. at ¶ 20. Indeed, since registering as a non-profit religious institution in 2015, AYA members have held hundreds of religious ceremonies despite the ever-present threat of criminal sanctions.  *See* Stanley Supp. Decl. ¶ 2.  No AYA congregant has ever experienced serious health consequences while attending a ceremony – no emergency medical care, no hospitalizations, no long-term injuries. *Id.* at ¶ 5. The primary "Tenet and Precept" of AYA is: "Know and possess the intent to receive the Sacrament for the **Proper Purpose** – to reclaim your personal power

---

[3] AYA members are understandably reticent to file declarations with this Court that DEA could use to prosecute them. Stanley Supp. Decl. at ¶ 23; Goldman Decl. at ¶ 13. AYA has standing to protect the Fifth Amendment *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70 (1965).

[4] AYA's response rate on the survey was 17.7 percent, which is well within the industry standard for email surveys.  *See generally* Manfreda, Bosnjak, Berzelak, Haas & Vehovar (2008) *Web Surveys versus other Survey Modes:  A Meta-Analysis Comparing Response Rates* INT'L J. MARKET RESEARCH *available at https://journals.sagepub.com/doi/10.1177/147078530805000107* (last visited February 7, 2022).  To arrive at their false and misleading 16% number, the Government ignored the response rate and swapped the number of people who <u>responded</u> to the survey for the number of people who <u>received</u> the survey.

and for healing through renewing your connection to Divine Love." Dkt. 140-1 at 23 (emphasis added).  Ingestion of Ayahuasca to "get high" is anathema to AYA members, and AYA's website includes the warning: "Anyone who takes ayahuasca to 'get high' is most likely in for a rude awakening – and perhaps a little enlightenment." *Available at* https://ayaguide.org/wp-content/uploads/2021/07/AYA-Frequently-Asked-Questions.pdf.

*Fifth*, the physical hardships that adherents willingly endure suggests their beliefs are sincere. Many people who participate in an AYA Ayahuasca ceremony experience nausea, followed by intense repetitive vomiting.  *See* Stanley Supp. Decl. at ¶ 10. For some, the vomiting comes early, while for others it occurs after the individual begins seeing visions.  *Id.* In AYA's ritual settings, buckets are placed close at hand for this reason. *Id.* This process is known as "purging" and is not only a physical release; it is also an energetic and spiritual release that is celebrated in Visionary Religions. *Id.* Purging is not limited to vomiting, but can also include sweating, crying, yawning, laughing or diarrhea.[5] *Id.* at ¶ 11. AYA's facilitators teach that physically purging is often part of the process of healing the spirit. *Id.* at ¶ 12.  Adherents, likewise, learn from direct experience that this is not always what they want, but certainly what they need.  *Id.* With each surrender, purge, and release, AYA members move closer to the divine.  *Id.*

The purging that occurs at Ayahuasca ceremonies helps explain why the DEA has never designated Ayahuasca as a "drug of abuse" and virtually guarantees that Ayahuasca will never be a recreational psychedelic drug like LSD, psilocybin, DMT, mescaline and others. AYA members are willing to endure purging because an Ayahuasca ceremony is a religious exercise and AYA members believe that Ayahuasca communion brings healing. *Id.* AYA members' willingness to suffer negative side effects for their beliefs is analogous to the defendant's actions in *Ward* and *Hoffman*.  In *Ward*, the Ninth Circuit found that a religious liberty claimant who declined to testify in his own defense because

---

[5] Although these side-effects are very uncomfortable, Ayahuasca is non-toxic and does not have adverse effects on physical health.  Dkt 137-14 at 2.  As the declaration of Dr. Paulo Cesar Ribeiro Barbosa demonstrates, religious Ayahuasca use is actually associated with reduced physical pain and decreased impairment of life activities due to physical infirmities.  *Id.*

he purportedly had a religious objection to taking an oath of honesty was sincere in his religious beliefs. *Ward*, 989 F.2d at 1019. The Court explained that the claimant's choice not to testify in his defense, notwithstanding his professed innocence, suggested "the sincerity of true religious conviction." Similarly, in *Hoffman*, defendants were convicted for activities that included hiking food and water into a rugged, unforgiving wilderness during Southern Arizona's extreme August heat.  The Honorable Judge Rosemary Marquez found that defendants' willingness to endure the hardship of hiking in temperatures over 100 degrees demonstrated that defendants' beliefs were sincerely held. Like the defendants in *Ward* and *Hoffman*, AYA members' willingness to endure purging demonstrates their sincere belief that ingesting Ayahuasca in a ritual context offers the promise of insight into the mysteries of Divine Love. *Id.*

*Sixth*, AYA's established record of safety shows that AYA has properly incorporated the ancient traditions and successfully engages in protective ceremonial practices, *i.e.*, medical screening, religious invocations prior to and at the close of the ceremony, graduated dispensing of the Ayahuasca sacrament, and the assistance of skilled facilitators to help the congregation and attend to personal needs and concerns during the communion ceremony. *See* Goldman Decl. at ¶ 20; Stanley Supp. Decl. at ¶ 4.

### D.  AYA's Sincerity is Unimpeached

The record is devoid of the type of evidence that has caused other courts to doubt a claimant's sincerity. For example, the Ninth Circuit expressed skepticism as to a RFRA claimant's sincerity in the case of the "Hawaii Cannabis Ministry," a profit-making enterprise whose website "prominently displayed an assurance that members" would escape "conviction of marijuana charges . . . as soon as you sign up."  *Christie*, 825 F.3d at 1051.  The Ninth Circuit similarly expressed "reservations" about the sincerity of a RFRA claimant who failed to explain why his purported religious beliefs prohibited the drawing of blood for a legally mandated DNA test any yet permitted his tattoos and intravenous drug usage.  *See United States v. Zimmerman*, 514 F.3d 851, 854 (9th Cir. 2007).  Unlike these cases, there is no reason here to doubt AYA's sincerity or suspect

that AYA is "'seeking to perpetrate a fraud on the court[.]'" *Hoffman*, 436 F. Supp. 3d at 1284 (quoting *Yellowbear*, 741 F.3d at 54).

Here, AYA employs procedures to ensure that Ayahuasca is used only for its proper purpose and is not diverted for any other use. *See* Stanley Supp. Decl. at ¶ 18. AYA's Ayahuasca is stored in a secure location and the Minister of the Assembly is provided with the precise amount of Ayahuasca necessary for each ceremony. *Id.* at ¶ 19.

The Government's primary argument as to insincerity is that AYA has not provided enough details about its basic membership requirements.  Dkt 144 at 12.  Like many Christian churches, the AYA Visionary Church welcomes all comers.  *See* Stanley Supp. Decl. at ¶ 8.  Just as Catholic priests do not require every adherent to pass a sincerity test before they can line up to take holy communion, and Jewish rabbis do not scrutinize every adherent before they are allowed to light a candle on the Sabbath, AYA does not screen out new members based on some subjective evaluation of their religious beliefs. *Id.* Nevertheless, AYA goes to great lengths to ensure that all newly preparing members understand the religious nature of the practice and prepare accordingly.  *Id.* at ¶ 9.   Specifically, AYA requires all new applicants to fill out a questionnaire, *see* Dkt. 140-1 at 33, and they are provided with detailed instructions "for the preparation, handling and sharing of the Sacrament."  Dkt. 140-1 at 25 (describing in detail the religious nature of the ceremony). AYA's goal is to educate potential new members about the ceremonial form to make sure they understand the religious nature of the exercise. *See* Stanley Supp. Decl. at ¶ 16.  So long as a member understands the religious nature of the practice, AYA does not require anything more than an open mind and a desire to engage in religious communion.  *Id.*

The Government also questions AYA's sincerity by pointing to a general rise in the illicit use of hallucinogens and Ayahuasca in particular.  Dkt 144 at 17:7-16.  This is the exact same argument that the Supreme Court rejected 15 years ago.  *See O Centro*, 546 U.S. at 426 ("With respect to diversion, the Government pointed to a general rise in the illicit use of hallucinogens, and cited interest in the illegal use of DMT and *hoasca* in

particular."). Following the same script as in *O Centro*, the Government tries to scare this Court with anecdotal evidence and pseudo-facts that will not be admitted at trial, will not be supported by expert testimony, and thus add nothing to the Government carrying its burden at trial.  To the extent the Court considers the magazine and newspaper articles cited in the Government's opposition, an important recurring theme is that individuals who attend Ayahuasca ceremonies embrace the spiritual nature of Ayahuasca and seek a religious experience.

The Government incorrectly claims AYA must show that "AYA's or its members' use of ayahuasca is categorically a sincere exercise of religion, rather than a secular activity."  Dkt 144 at 11:3-4. The word "categorically" does not appear anywhere in RFRA jurisprudence and there are no legal grounds for the Government to argue that sincerity must be satisfied by every present and future AYA member.  To the contrary, the Supreme Court has held that a religious exercise is protected even if it is "idiosyncratic" and whether or not it is shared by all members of the religion.  *See Holt v. Hobbs*, 574 U.S. 352, 362-63 (2015) ("Even if petitioner's belief were idiosyncratic, RLUIPA's guarantees are 'not limited to beliefs which are shared by all of the members of a religious sect.'") (quoting *Thomas*, 450 U.S. at 715-16).

AYA members, and the Visionary Church community in general, has been traumatized by the arrest and prosecution of NAAVC Board member Clay Villanueva. It has never been easy to convince AYA members to put their name on Court documents and admit to religious activity the DEA considers to be criminal, but the recent enforcement actions and armed raid by the HIDTA task force has made AYA members extremely reticent to submit declarations to this Court.  *See* Stanley Supp. Decl. at ¶ 23; Goldman Decl. at ¶ 13. Mr. Stanley's courage in bringing this lawsuit and risking his liberty for his congregation demonstrates the sincerity of the group.  Stanley Supp. Decl. at ¶ 24; Goldman Decl. at ¶ 19.

### III.  AYA's FREE EXERCISE IS SUBSTANTIALLY BURDENED BY THE DEA's PROHIBITION ON AYA's USE OF AYAHUASCA

AYA's free exercise is substantially burdened for the following reasons:

• The CSA creates an outright ban that prohibits AYA members from possessing their religious sacrament. *See Jones v. Slade*, 2022 U.S. App. LEXIS 1948 (9th Cir., Jan. 24, 2022) ("We have had 'little difficulty . . . concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise.'") (quoting *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 987 (9th Cir. 2008)).

• If AYA members wish to practice their religion, they must do so under threat of criminal sanctions. *See Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016) (a group is "substantially burdened" when a prohibition forces the group to "choose between obedience to their religion and criminal sanction").

• Before and during the pendency of this lawsuit, CBP engaged in enforcement actions by seizing AYA's religious sacrament at the border. *See Church of the Holy Light of the Queen*, 615 F. Supp. 2d at 1211 (defendants conceded that seizure of 40 liters of Daime caused a substantial burden).

• AYA's co-Plaintiff and NAAVC Board of Director currently faces criminal prosecution after a DEA agent passed along a false tip, and a joint Federal/State HIDTA Task Force conducted an armed raid on his house. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 174 (2014) (locating a "substantial" threat of future prosecution in a "history of past enforcement").

• DEA's *ultra vires* and Guiance petition process substantially burdens AYA's free exercise by requiring immediate cessation of sacramental ingestion of Ayahuasca to commence a sham process that has never resulted in the issuance of an exemption. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008); *United States v. Gonzales*, 957 F. Supp. 1225 (D.N.M. 1997).

### IV.  THE GOVERNMENT CANNOT SHOW ITS "LEAST RESTRICTIVE ALTERNATIVE" IS LESS EFFECTIVE THAN EXEMPTING AYA's USE AND IMPORTATION OF SACRAMENTAL AYAHUASCA FROM THE CRIMINAL AND REGULATORY PROHIBITIONS OF TITLE 21.

In *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656 (2004), the Supreme Court affirmed the grant of a preliminary injunction in a case where the Government had failed to show a likelihood of success under the compelling interest test. The Court reasoned that "as the Government bears the burden of proof on the ultimate question of

[the challenged Act's] constitutionality, respondents [the movants] must be deemed likely to prevail unless the Government has shown that respondents' proposed less restrictive alternatives are less effective than [enforcing the Act]. *Id.* at 666.  This same logic applies to preliminary injunctions under RFRA.  *See O Centro*, 546 U.S. at 429-30 ("Congress's express decision to legislate the compelling interest test indicates that RFRA challenges should be adjudicated in the same manner as constitutionally mandated applications of the test, including at the preliminary injunction stage.").  Thus, AYA is entitled to an injunction because the Government has failed to show that its "least-restrictive alternative" is less effective than exempting AYA's use and importation of sacramental Ayahuasca from the criminal and regulatory prohibitions of Title 21.

## V.   THE DEA'S ASSERTION OF AUTHORITY OVER AYA'S RFRA CLAIM HAS NO STATUTORY BASIS; ACCORDINGLY, ADMINISTRATION EXHAUSTION IS NEITHER REQUIRED NOR PROPER

The Government cannot escape three indisputable facts: (1) the CSA criminalizes AYA's religious sacrament and the Customs and Border Patrol has repeatedly seized AYA's sacrament as contraband; (2) the CSA's absolute ban on AYA's religious sacrament is not the least restrictive means of advancing a compelling governmental interest; and (3) RFRA does not require exhaustion of administrative remedies.  Thus, the Government tries to redefine the question as whether the DEA's regulatory process for seeking an exemption substantially burdens AYA's sincerely held religious beliefs.  This is a red herring to deflect the Court's attention from the established strict scrutiny analysis applied by every court that has considered the issue.

### A.  Administrative Exhaustion is Neither Required Nor Appropriate

RFRA does not require administrative exhaustion.  See Ok*levueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012) ("We decline, however, to read an exhaustion requirement into RFRA where the statute contains no such condition.").  Indeed, Judge Orrick has already rejected the Government's efforts to require exhaustion in this case, relying on the reasoning in *Oklevueha*.  Dkt. 57 at 14.

If this Court followed the Government's suggestion to require AYA to submit a Guidance-compliant petition, it would immediately increase the existing substantial burden on AYA's free exercise by requiring AYA to (1) cease all ceremonies pursuant to paragraph 7 of the Guidance; (2) expose at least one AYA member to compelled self-incrimination in a sworn disclosure to a prosecutorial agency; and (3) participate in an *ultra vires* process with no clear timeline for adjudication that has never resulted in an exemption.  *See generally* Dkt. 116 at 2, 6-7.

## B. DEA's RFRA Guidance Petition Process is *Ultra Vires*

By claiming to be the gatekeeper for determining religious sincerity and substantial burdens on Free Exercise, DEA is arrogating to itself authority that it does not have. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (an agency's authority is limited by the scope of the delegation in its organic statute).  DEA claims it is authorized to evaluate AYA's religious sincerity and adjudicate RFRA claims under 21 U.S.C. § 822(d).  *See* Dkt. 122 at 12.  However, this section of the CSA provides that "[t]he Attorney General may, by regulation, waive the requirement for registration of certain manufacturers, distributors, or dispensers if he finds it consistent with the public health and safety." 21 U.S.C. § 822(d).  The DEA points to no regulation it has promulgated under this authority. Nor does the statute authorize the DEA to evaluate religious sincerity or make determinations regarding the CSA's substantial burden on Free Exercise.

*First*, a religious group with a RFRA claim is not a "manufacturer," "distributor" or "dispenser" as those terms are defined in the CSA.  *Second*, DEA has not published any regulations in the Code of Federal Regulations or taken any action "by regulation" to waive the requirements for registration.  *Third*, 21 U.S.C. §822(d) is inconsistent with the DEA Guidance upon which it is supposedly based.  Section 822(d) grants DEA authority to "waive the requirement for **registration,**" but the DEA Guidance document states that a successful petitioner "remains bound by all applicable laws and Controlled Substances Act regulations governing **registration**…". *Compare* 21 U.S.C. § 822(d) *with* Dkt. 122-

5 (emphasis added).  *Fourth,* section 822(d) instructs DEA to grant a waiver after making findings about "public health and safety," yet this term does not appear anywhere in the Guidance document and is inconsistent with the standard to be applied under RFRA.

Untethered to any statutory authority, DEA's *ultra vires* RFRA Exemption Process has none of the hallmarks of a lawful administrative process. For example:

- DEA's process has no timelines or deadlines.  DEA can decline to act on a petition and allow it to languish for a period of years or even decades.

- DEA's process has no limits or boundaries on the type of personal or protected information it may request from a petitioner.

- DEA's process is not bound by any statutory or regulatory definition of "religious" or "sincere."  As such, DEA can make entirely subjective determinations about religious sincerity and change the way it evaluates sincerity from petitioner to petitioner.

- DEA's process does not identify the factors DEA considers when reviewing a petition.  The Government's Opposition suggests that DEA makes its decision by determining "whether and how a RFRA applicant's handling of a controlled substance may be accommodated within the CSA's closed regulatory system." Dkt. 144 at 10:15-16.  This standard is drastically different from the RFRA standard which requires an exemption when a complete ban is not the least restrictive means of advancing a compelling government interest.

## C.  The DEA Has Blown Hot and Cold on the Guidance – First Seeking a Stay to "Engage in Rulemaking" And Now Defending it

In July 2020, when this case was still pending before Judge Orrick, the Government moved for a stay of the proceedings on the grounds that DEA was enacting regulations to revise and codify its RFRA Exemption Process. Under penalty of perjury, a DEA agent named Scott A. Brinks declared that DEA was "in the process of" revising and updating its regulations through a notice-and-comment rulemaking.  *See* Dkt 19-1 at 2-3.  DOJ Attorney Kevin Hancock represented that the notice-and-comment rulemaking process was "already underway" and would "likely moot Plaintiffs' claims." *See* Dkt 19 at 9. In fact, no such rulemaking was underway and DEA never even issued a Notice of Proposed Rulemaking. DEA could not proceed with such a rulemaking because it lacks the statutory authority to implement its *ultra vires* RFRA Exemption Process.  These

strategic changes in position undermine the DEA's claim of sincerity.  The truth appears to be that, at the start of the action, seeking to purchase delay, DEA made representations it now fails to honor without explanation.  Accordingly, the DEA's current position of "blowing hot" on the Guidance should be seen for what it is – an ongoing dilatory strategem.

### D.  DEA Has No Compelling Interest in Evaluating Religious Sincerity

DEA has no compelling interest in evaluating AYA's religious sincerity or determining whether the CSA's prohibition of Ayahuasca substantially burdens AYA's sincerely held beliefs. These issues are properly decided by this Court, which has exclusive original jurisdiction over the private right of action created by Congress when enacting RFRA.  *See* 42 U.S.C. § 2000bb-1(c); *O Centro*, 546 U.S. at 434 *Oklevueha*, 676 F.3d at 835; *see also Christie*, 825 F.3d at 1051 (expressly rejecting the notion that the Government has a compelling interest in its ability to administer the CSA).

Once this Court determines that AYA will likely succeed on the merits of its RFRA claim and grants a preliminary injunction, AYA looks forward to working cooperatively with DEA to establish the parameters of AYA's religious exemption that are the least restrictive means to advance the government's interest in protecting public health and safety.

## VI.    THE BALANCE OF EQUITIES TIPS SHARPLY IN FAVOR OF AYA

The right to lawful Free Exercise is guaranteed in the Constitution and is never conditioned upon approval by any administrative or judicial authority.  AYA's circumscribed, religious use of Ayahuasca is lawful *ab initio*, even though the lawfulness may not be adjudicated until sometime in the future.  *United States v. Johnson*, 457 U.S. 537, 550 (1982).  An injunction is necessary because it would be grossly inequitable for the Government to continue to violate AYA's First Amendment rights.

## VII.    CONCLUSION

For the foregoing reasons, AYA respectfully asks this Court to grant a preliminary injunction against DEA and CBP and enter an order in the form submitted at Dkt. 137-1.

Dated:  February 8, 2022

/s/John Sullivan
JOHN SULLIVAN (127139)
Attorney for Plaintiffs
Arizona Yagé Assembly,
North American Association of Visionary Churches,
and Clay Villanueva