Case No.:20-CV-02373-ROS
Arizona Yagé Assembly's Reply in Support of
Motion for Preliminary Injunction

# EXHIBIT B

# DECLARATION OF JONATHAN GOLDMAN

Jonathan Goldman declares and states as follows:

1. I'm a citizen of the United States. I was born May 1, 1950 in Highland Park, Michigan. I graduated from the University of Michigan in 1973 with a Bachelor of General Studies degree. I began studying acupuncture in 1975, began practicing in 1976, and attained a Master's Degree in Acupuncture from the College of Traditional Chinese Acupuncture in Leamington Spa, England, in 1983. I am licensed to practice acupuncture in the States of Massachusetts and Oregon.

2. I live in Ashland, Oregon, where I have resided since July of 1990, and where I have been the spiritual leader (Padrinho), of the Church of the Holy Light of the Queen ("CHLQ") in Ashland, Oregons since 1993, when I received permission and the blessing of Padrinho Alfredo Gregorio de Melo, the spiritual father of the Santo Daime religion, to open the center. We achieved Provisional Church status in October 1996 and full status on October 6, 1997. My wife Jane Seligson, and I, were named the Padrinho and Madrinha of CHLQ, titles given to the male and female leaders of a Santo Daime church. These are Northern Brazilian honorifics, derived from traditional Portuguese social forms, meaning "respected Elder." We direct the ritual, including the timing of the serving of the Daime and the length of the ritual. Between October of 1996 and May of 1999, CHLQ conducted a full schedule of Santo Daime rituals, all of them under my supervision.

3. Based upon the foregoing qualifications, I respectfully submit that, in addition to the facts and lay opinions expressed herein, I may be qualified as an expert to opine upon four subjects: (1) the manner in which the Santo Daime ceremony is conducted, (2) the manner in which the AYA ceremony is conducted, (3) similarities and differences between the two, (4) the sincerity of Scott Stanley as a minister of a church that practices visionary communion using Ayahuasca as a communion sacrament. I believe my opinions would be helpful to the Court, and are soundly based on facts known to me and learned by reading documents prepared by AYA to describe its internal

operations, by interviewing Mr. Stanley, and based on my professional experienced as the Santo Daime Padrinho of CHLQ for the last twenty-five years. I have received no compensation from any source for this testimony, and offer it solely for the purpose of contributing to the fair determination of the issues presented by this case.

4. In addition to my experiences performing ceremonies in the Santo Daime tradition, I have considerable experience dealing with the DEA, before, during and after becoming an object of a drug enforcement investigation. In May of 1999, DEA and U.S. Customs agents intercepted the 40 liters of Daime tea (sacramentally-prepared Ayahuasca) shipped from the Santo Daime office in Rio de Janeiro, destined for the exclusive use of CHLQ. The DEA and U.S. Customs agents showed up at my house to execute a warrant and confined my children for 2 hours alone, questioning them all the while.

5. When my wife and I arrived home, I was handcuffed while the agents searched my home. I was taken to jail, where I spent 12 hours before being released without being charged with any crime. I was never officially charged, but was told by one of the Assistant U.S. Attorney for the District of Oregon that I would be prosecuted if I continued to practice my religion.

6. The statute of limitations for the arrest expired in May of 2004, and although I was never charged with a crime, because the risk of prosecution still hung over me for the practice that I was continuing to perform, in order to engage in the Free Exercise of Daime communion, on September 5, 2008, our attorney Roy Haber filed a lawsuit in the Medford Oregon Courthouse of the District of Oregon, seeking injunctive relief against the DEA under the First Amendment and the Religious Freedom Restoration Act ("RFRA").

7. In a declaration submitted to the late Judge Owen Panner, the respected judge who ultimately granted CHLQ an exemption from the Controlled Substances Act pursuant to RFRA, I explained the terrible shock I and the CHLQ congregation suffered due to my arrest and the seizure of the sacrament:

> "It is impossible to adequately describe the terrible toll it has taken on us to live under these conditions of fear since May of 1999.  I asked the court to imagine being denied by threat of arrest and prosecution the right to participate in its most cherished and fulfilling religious activity.  In these unstable and difficult times on earth, the necessity of a chosen religious practice cannot be overestimated.  The religious persecution that is being committed against us is wholly undeserved and is, I respectfully submit, simply a product of ignorance on the part of the government officials."

*CHLQ v. Mukasey*, Case No.  08-3095-PA, Docket # 55, page 28.

8. Notwithstanding the fear instilled by the DEA, I had confidence in the impartiality of the Federal Court, and thus also stated:

> "We are proud to be citizens of this county and seek to step out of the shadows and fear to take our rightful place in the sunshine of religious freedom upon which this country was founded and which is the model for all other countries on earth."

*CHLQ v. Mukasey*, Case No.  08-3095-PA, Docket # 55, page 29.

9. Ultimately, after a trial on the merits, Judge Panner ruled for CHLQ and granted the injunction attached as Exhibit 14 to AYA's Motion for Preliminary Injunction.  (Docket # 140-2 at 28-29).  Our faith in the U.S. legal system was borne out, and we entered into a new phase of relations with the DEA.  Judge Panner did not prescribe a detailed regimen for us to follow with the DEA, and left to the parties to work out by agreement.

10. We have a relaxed and effective relationship with the DEA agents who administer an inventor of CHLQ imported Daime once every six months.  We have adopted a simple, effective system of accounting for all shipments received and the amounts dispensed by the Church.

11. I see Arizona Yagé Assembly following a very similar path to the one that led me to file the CHLQ's RFRA complaint fourteen years ago.  Apparently, when it comes to dealing with Visionary Churches, things have remained much the same for the DEA; thus, AYA and Mr. Stanley are going through a sequence of events very familiar to me and the parishioners of CHLQ.

DECLARATION OF JONATHAN GOLDMAN
3

12. I have consulted with Scott Stanley prior to and during this litigation. He entered into an arduous process, one that challenges the very fabric of the church organization. He is now being challenged by the DEA to produce testimony from his congregation members, and understandably finds this both difficult and distasteful, because people do not come to Church to be investigated, and it is clear that being a member of a church like AYA could lead to being investigated, arrested and prosecuted. Accordingly, as I previously testified in my declaration filed with Judge Panner, it is very difficult to keep members in a church that has been the subject of seizures of sacraments, and as in my case, specifically warrants that efforts to continue practice may result in prosecution. My declaration to Judge Panner explained how I experienced this problem:

> "Many of our members have left the path out of the despair engendered by the denial of our right to practice our religion and by the government's refusal to even discuss the matter in good faith for over 9 years. Others, such as teachers, doctors, and lawyers have left out of fear of the repercussions of participating in something that the government has threatened to invade. And while we have much faith, and trust in God to protect us, we are also aware of the history."

*CHLQ v. Mukasey*, Case No. 08-3095-PA, Docket # 55, page 30.

13. Based on my experience, Mr. Stanley could easily lose congregation members if he made a point of asking them to stand up for their faith and thereby risk arrest and imprisonment, loss of employment, public humiliation, loss of the right to vote, and many other rights and privileges of citizenship. The threat of losing most of the freedoms that make life dear in our society appeared to deprive almost everyone of the courage to espouse their beliefs in open court. As I stated in my prior declaration:

> "I've talked with my parishioners about filing this case in and the need to name some church members as plaintiffs. Many, and perhaps most member who among the faithful, have, even after long discussions, refused to be named as plaintiffs out of absolute terror of the consequences: a businessman who owns a winery is fearful of his federal licenses, a physician fearful of losing his federal license to prescribe controlled substances, a father who fears that his children will be subject to DEA agents breaking down his door, and as in my case, being handcuffed by men with attack rifles in the presence of his children, refused to give their names. These are but a few examples."

*CHLQ v. Mukasey*, Case No. 08-3095-PA, Docket # 55, page 30-31.

14. I will address the points of similarity I see between the Santo Daime path and AYA's practice. AYA's sacrament is identical to that used by the Santo Daime. Daime is prepared from three ingredients, pure water, the Yagé vine (*Banisteropsys Caapi*) and a plant containing dimethyltryptamine in very small amounts, usually Chacruna, (*Psychotria Viridis*) and boiled together in a respectful ceremonial atmosphere for several hours to derive the tea. In the Santo Daime religion, the Daime tea is consumed as the very body of Jesus, that is declared to be "Daime" by the person overseeing the preparation at a moment when his inspiration tells him that the spirit has imbued the medicine with the spirit of Jesus.

15. The Santo Daime also conducts ceremony in a circular structure called a Maloka. Here in the United States, we have been using yurts, and CHLQ currently uses three 30-foot ceremonial yurts. Mr. Stanley also adheres to the tradition of conducting ceremonies in a circular structure, and recently erected a 50-foot yurt in the Arizona dessert to serve his congregation.

16. A reverence for nature and all of its creatures is an essential element of the Daime doctrine, traditions, and lineage;and while AYA draws on differing doctrine, traditions, and lineage from the upper Amazon, from my conversations with Mr. Stanley, I know that his approach to Ayahuasca practice is imbued with this same spirit of love and respect for nature, for God's creation. AYA's manner of conducting ceremonies also appears quite similar to that of the Daime, as spelled out in AYA's ceremonial instructions, that it involved the blessing of the land where the practice is to take place, a prayer for invocation before the ceremony commences, the measured dispensing of the Ayahuasca sacrament by the leader of the ceremony, the singing of Icaros (ceremonial hymns), all are fundamentally parallel with the Daime tradition.

17. One of the important features of the Santo Daime religion in Brazil, that was explicitly recognized by the Confen report that was issued in the 1990's, finding that the Santo Daime church was generating measurable socially beneficial results. The

Confen report noted that "members of our religion tend to become model citizens, in the sense of having more stable family lives, better health, and a greater commitment than the norm to peaceful family and societal relations."

18. Similarly, Mr. Stanley and AYA have a positive reputation in the visionary religion community, and the results of the survey of the congregation indicates that congregation members are experiencing life benefits in precisely the same way I hear them reported to me by Santo Daime members. These life benefits include leaving off addictive behaviors, adopting a positive view toward life, forgiving past injuries from others, and discovering a well of generosity and life purpose that they had not previously known before engaging in visionary communion.

19. I would like to express the opinion that Mr. Stanley's faith is sincere. One of the direct evidences of his sincerity is the fact that he has brought his lawsuit, and has stood up for all of his congregation members by putting his own testimony forward in court to obtain the benefit of free exercise for his entire congregation. I understand first-hand how arduous and fraught with risk this process can be.

20. Another factor I consider in assessing the sincerity of Mr. Stanley and the AYA church, is by their record of conducting ceremonies safely and without any negative consequences for ceremonial participants. The practice of Ayahuasca communion is safe within the Santo Daime tradition, that has an excellent track record of safety. There has been considerable publicity about the occasional negative effects of Ayahuasca taken in non-ceremonial conditions, in badly conducted or poorly supervised ceremonies. Properly conducted ceremonies eliminate such risks by screening for health risks, providing a pure ceremonial environment, controlled administration of the sacrament, and knowledgeable facilitators. Mr. Stanley and AYA appear to understand the theory and implement the practice that , and to my knowledge, their record is excellent. Mr. Stanley has confirmed for me that they have had no person suffering any long-lasting negative experience psychologically or physically as a result of their ceremonial practice with AYA.

21. Mr. Stanley's work for his congregation has been consistent over the years. I have seen the steady effort he has made to protect the AYA congregation from the various risks that can arise, including filing this lawsuit on behalf of the entire AYA congregation.

22. I have spoken with Mr. Stanley about how he became a practitioner of visionary religion, and he comes from a tradition with less apparent formality than the Santo Daime tradition, but with no less sincerity. He has studied with a jungle practitioner in Peru, where Ayahuasca practice has never been illegal, and is widely distributed throughout many indigenous communities. Like I did, Mr. Stanley felt a call to engage in this practice, a deep spiritual motivation that has powered his journey ever since.

23. Mr. Stanley is deeply committed to the path of sharing Divine Love through AYA ceremonies, and has clearly invested all of his life resources in the project of sharing the path with others. This level of dedication is exactly what it takes to operate an Ayahuasca church. While Mr. Stanley was not required to go through the same formalities of being authorized to engage in practice as I was, due to my membership in the Santo Daime church organization, I feel comfortable that he continues to practice in the scope of these uniting Amazonian traditions in a way that makes him a reliable representative of these traditions here in the United States. Accordingly, it is my sincere and considered opinion that Mr. Stanley is a sincere Ayahuasca minister, that AYA is a legitimate congregation, gathered together under his leadership, and accordingly, that AYA should receive an exemption from the prohibitions imposed by the Controlled Substances Act based on their uniting sincerity, just as was granted to CHLQ.

24. Further, affiant sayeth naught.

I hereby declare, pursuant to the provisions of 28 U.S.C. § 1746 (2), under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Ashland, Oregon on February 7, 2022

                                        s/Jonathan Goldman/s
                                        Jonathan Goldman, Declarant