1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9   Arizona Yage Assembly, et al.,                No. CV-20-02373-PHX-ROS

10              Plaintiffs,                        **ORDER**

11   v.

12   Merrick B. Garland, et al.,

13              Defendants.

14

15          Plaintiffs Clay Villanueva, Arizona Yage Assembly, North American Association

16   of Visionary Churches, and the Vine of Light Church brought this action against a variety

17   of state and federal government officials and entities seeking monetary, injunctive, and

18   declaratory relief.  (Doc. 109 at 87-94).  Plaintiffs bring claims against the United States;

19   Merrick Garland, the United States Attorney General, Anne Milgram, the Administrator

20   of the Drug Enforcement Agency ("DEA"), Alejandro Mayorkas, the Secretary of the

21   Department of Homeland Security ("DHS"), and Chris Magnus, the Commissioner for

22   U.S. Customs and Border Protection ("CBP") (collectively, "the Federal Defendants") in

23   their official capacities under the Religious Freedom Restoration Act ("RFRA"), 42

24   U.S.C. § 2000bb, *et seq.*; claims against the United States and DEA under the

25   Administrative Procedure Act ("APA"), 5 U.S.C. § 500, *et seq.*; claims against Maricopa

26   County, the DEA, Maricopa County Sheriff's Office detective Matthew Shay in his

27   personal capacity, and DEA employee Marco Paddy in his personal capacity under 42

28   U.S.C. § 1983; claims against Maricopa County and Shay under the Arizona Free

Exercise of Religion Act ("AFERA"), A.R.S. § 41-1493, *et seq*., and for several common law torts, including trespass, battery, conversion, negligence, and loss of consortium. (Doc. 109 at 43-87).  It appears Plaintiffs asks this Court to establish they have the right to import and use ayahuasca for religious purposes and to obtain tort relief for an allegedly unconstitutional search of Villanueva's residence

Plaintiffs filed this matter in the District Court for the Northern District of California on March 5, 2020, naming the same defendants, as well as the State of Arizona, the Arizona Attorney General in his official capacity, and a DEA Deputy Assistant Administrator in his personal capacity.  (Doc. 1).  Four amended complaints and several Rule 12 motions have followed.

A First Amended Complaint was filed on June 16, 2020. (Doc. 12). On July 15 and 16, the DEA Deputy Assistant Administrator and the Federal Defendants moved to stay proceedings pending the Supreme Court's resolution of *Tanzin v. Tanvir*, 141 S.Ct. 486 (2020) (which later held money damages are available under RFRA against federal officials sued in a personal capacity).  (Docs. 17, 19).  On July 21, Maricopa County and Matthew Shay moved to strike the First Amended Complaint on the ground that it was improperly filed and moved to dismiss for lack of personal jurisdiction and improper venue.  (Doc. 20).  While the motions to stay, strike, and dismiss were pending, Plaintiffs moved for a preliminary injunction.  (Doc. 22).  Shortly thereafter, the Arizona Attorney General and the State of Arizona moved to dismiss for lack of personal jurisdiction and improper filing, and because sovereign immunity precluded liability (Doc. 29), and the Federal Defendants moved to strike the First Amended Complaint based on the improper filing.  (Doc. 31).  On September 21, 2020, Judge William H. Orrick granted the Arizona Defendants' motions to dismiss and denied the motions to stay, motions to strike, and motion for preliminary injunction.  (Doc. 57).  Plaintiffs then moved to transfer venue here (Doc. 61), which was granted, and venue was transferred to the District of Arizona. (Doc. 65).

The State of Arizona and the Arizona Attorney General were voluntarily

dismissed on December 28, 2020, and a Second Amended Complaint followed on January 21, 2021. (Docs. 70, 77). On March 22, the Federal Defendants moved to dismiss for lack of subject matter jurisdiction and Maricopa County and Matthew Shay moved to dismiss for failure to state a claim. (Docs. 85, 86). Marco Paddy filed a motion to dismiss for failure to state a claim on April 6. (Doc. 90).

Plaintiffs filed a Third Amended Complaint on May 4,[1] but corrected it by filing a Fourth Amended Complaint on May 27. (Docs. 97, 98, 109). The Federal Defendants again filed a motion to dismiss for lack of subject matter jurisdiction, arguing Plaintiffs do not have standing and the claim under the APA is not ripe. (Doc. 112). Marco Paddy filed a motion to dismiss for failure to state a claim. (Doc. 111). And Maricopa County and Matthew Shay filed a motion to dismiss for failure to state a claim. (Doc. 110). On November 9, 2021, Arizona Yage Assembly moved for a preliminary injunction[2] against the Federal Defendants. (Doc. 137). The three motions to dismiss and the motion for preliminary injunction are now fully briefed.

**BACKGROUND**

### I.    The Parties

Plaintiffs Arizona Yage Assembly ("AYA") and North American Association of Visionary Churches ("NAAVC") are alleged religious non-profit groups that seek to use ayahuasca for religious purposes. (Doc. 109 at 5). Plaintiff Clay Villanueva is the founder of Vine of Light Church[3] ("VOLC") and a NAAVC "Board member." (Doc. 109 at 6). Plaintiff VOLC is a member of NAAVC. (Doc. 109 at 6).

Plaintiffs bring this action against: (1) the United States; (2) Merrick Garland, the United States Attorney General; (3) Anne Milgram, the Administrator of the Drug

---

[1] Plaintiffs incorrectly identified the May 4, 2021 complaint as a Fourth Amended Complaint in the filing. (Doc. 97).

[2] AYA filed its reply in support of the preliminary injunction 25 minutes late. (Doc. 148). A contemporaneously filed Motion to Deem Papers Timely Filed explains that the untimeliness of the reply was caused by unfamiliarity with the Next-Gen ECF system recently adopted by the District of Arizona. (Doc. 149). The Motion will be granted and AYA's reply is deemed timely filed.

[3] VOLC was also Villanueva's residence at the time the events that gave rise to this litigation occurred. *See* (Doc. 109 at 77-78).

Enforcement Agency; (4) Alejandro Mayorkas, the Secretary of Homeland Security; (5) Chris Magnus, the Commissioner for U.S. Customs and Border Protection; (6) Marco Paddy, an employee of the DEA; (7) Maricopa County; and (8) Matthew Shay, an employee of the Maricopa County Sheriff's Office ("MCSO").  (Doc. 109 at 6-7).   All defendants except Paddy and Shay are named in their official capacity.

The motion to dismiss filed by the Federal Defendants (Doc. 112) will be granted. Plaintiffs' claim against the Federal Defendants under the APA will be dismissed without leave to amend because the Court finds amendment would be futile.  Plaintiffs' claims under RFRA and § 1983 against the Federal Defendants will be dismissed with leave to amend.  Paddy's motion to dismiss (Doc. 111) will be granted and Plaintiffs' claims against Paddy will be dismissed without leave to amend.  The motion to dismiss filed by Maricopa County and Shay (Doc. 110) will be granted and the claims will be dismissed or stayed.  AYA's motion for a preliminary injunction (Doc. 137) will be denied.

## II.    Factual Allegations Relevant to the Pending Motions

Ayahuasca is a tea brewed from plants containing the hallucinogenic compound, N, N-dimethyltryptamine ("DMT").  (Doc. 112 at 2).  DMT is a Schedule I controlled substance under the Controlled Substances Act ("CSA"), 21 U.S.C. § 812(b)(1).  (Doc. 112 at 2).  Plaintiffs allegedly use and share ayahuasca in the exercise of their "visionary religion."[4]  (Doc. 109 at 26).  AYA describes "the use of Ayahuasca [a]s the *sine qu*[*a*] *non* of AYA and Visionary Churches everywhere."  (Doc. 137 at 7).

Plaintiffs allege four shipments of ayahuasca from Peru to AYA and/or NAAVC were seized by the federal government between April and December 2020.  (Doc. 109 at 14-15, 44-45).  The MCSO, allegedly at the behest of Defendant Paddy, investigated Villanueva for production, use, and distribution of DMT and marijuana. (Doc. 39-3 at 10-34) (affidavit of Matthew Shay in support of a search warrant).  It is further alleged that Paddy intentionally violated Villanueva's Fourth Amendment rights by falsely accusing

---

[4] AYA alleges its religious exercise "takes place in sacred communion by means of drinking sacramental Ayahuasca."  (Doc. 109 at 19-20).  AYA alleges, "[a]lthough Visionary Churches have no written scriptures or officially promulgated doctrine, its adherents share belief in Divine Love and spiritual powers."  (Doc. 137 at 6).

Villanueva of selling DMT pursuant to a tip Paddy passed to a Phoenix police officer.[5] (Doc. 109 at 47-48).  Plaintiffs allege Paddy "mismanage[d]" an informant as a result of DEA training, resulting in the violation of Villanueva's constitutional rights.  (Doc. 109 at 50).

On May 19, 2020, two weeks after this case was filed in the Northern District of California, the MCSO executed a warrant at Villanueva's residence, the official location of the Vine of Light Church.  (Doc. 117 at 3).  Defendant Shay, an MCSO Deputy Detective, obtained the warrant (Doc. 39-3 at 10) and allegedly performed the search.  (Doc. 117 at 3).  "The search found marijuana, 91 pounds of ayahuasca paste, 15 bottles of ayahuasca liquid, 260.5 grams of 'suspected' psilocybin mushrooms, and more than $14,025."  (Doc. 57 at 5-6).  On August 23, 2021, Villanueva was arrested at Los Angeles International Airport before departing for Peru to participate in alleged religious ceremonies.  (Doc. 125 at 2).  The Court, on September 8, 2021, denied without prejudice an Application for Writ of Habeas Corpus filed on Villanueva's behalf on the ground that the petition failed to name the proper respondent and did not provide an adequate legal basis.  (Doc. 131).

Although a DEA guidance document ("the Guidance") first promulgated in 2009 established a procedure for seeking religious exemptions from the CSA, *see* U.S. Dep't of Just., Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, Plaintiffs have not sought an exemption.  Plaintiffs allege they failed to seek an exemption because of an alleged DEA "policy of denying regulatory services to visionary churches and refusing all requested religious exemptions from the CSA" and because doing so allegedly "would waive the Fifth Amendment rights of the Founder" of AYA, Scott Stanley.  (Doc. 109 at 28, 35).  Finally, Plaintiffs claim they are not required to exhaust the administrative resources for an exemption because the DEA has not promulgated the Guidance through APA rulemaking procedures.  (Doc. 109 at 32-33).

---

[5] Law enforcement then executed a search warrant at Villanueva's residence at 1134 W. Glenrosa Avenue, Phoenix, Arizona.  (Doc. 39-3).

# ANALYSIS

## I.        Motions to Dismiss

Three motions to dismiss have been filed.  One was filed by the Federal Defendants (Doc. 112), one by Paddy (Doc. 111), and one by Maricopa County and Shay.  (Doc. 110).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" has not adequately shown the pleader is entitled to relief.  *Id.* at 679.  Although federal courts ruling on a motion to dismiss "must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

### A. The Federal Defendants' Motion to Dismiss

Plaintiffs bring a RFRA claim against all Federal Defendants, an APA claim against the United States and the DEA, and a § 1983 claim against the DEA.  (Doc. 109 at 6-7, 43, 61, 66).  The Federal Defendants collectively filed a motion to dismiss on three grounds.  First, they argue the Court does not have jurisdiction over Plaintiffs' RFRA claim because the statute of limitations has run, or Plaintiffs' APA claim because it is not ripe.  (Doc. 112 at 8).  In the alternative, Federal Defendants argue original jurisdiction lies in the courts of appeals pursuant to 21 U.S.C. § 877.  (Doc. 112 at 8). Second, they argue the RFRA claim should be dismissed for lack of standing and failure to state a claim.  (Doc. 112 at 8).  Third, they argue Plaintiffs have failed to state a claim under § 1983.  (Doc. 112 at 8).  The Federal Defendants' motion to dismiss will be granted.

### 1. Jurisdiction

Standing is a necessary requirement for federal jurisdiction. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). To "satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). A "plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted). Federal courts are required to raise issues of subject matter jurisdiction *sua sponte*. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

### a. Standing to challenge the Guidance

The Federal Defendants argue Plaintiffs' claim is time-barred by 28 U.S.C. § 2401(a) to the extent Plaintiffs make a facial challenge to the Guidance. (Doc. 112 at 10). Section 2401(a) establishes a six-year statute of limitations for "every civil action commenced against the United States," with one exception not relevant here.[6] 28 U.S.C. § 2401(a); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991). If Plaintiffs' RFRA claim against the United States accrued more than six years ago, it would be time-barred. However, there is no need to determine whether Plaintiffs' facial challenge to the Guidance is time-barred because Plaintiffs do not have standing to challenge the Guidance.

Contrary to the Federal Defendants' contention (Doc. 112 at 11), the Guidance does not impose an exhaustion requirement for suits seeking CSA exemptions under RFRA. Guidance documents not promulgated through APA rulemaking or adjudicatory procedure generally do not have the effect of law and are not controlling on courts. *See*

---

[6] Contrary to the Federal Defendants' argument (Doc. 112 at 3), § 2401(a) is non-jurisdictional. *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997). Because there does not exist subject matter jurisdiction to review a challenge to the Guidance, it is unnecessary to determine whether the limitations period has expired.

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) ("[I]nterpretive rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process.") (quotation omitted); *Indergard v. Georgia-Pacific Corp.*, 582 F.3d 1049, 1053 ("[A]gency guidance documents are not controlling upon courts.") (quotation marks and citations omitted).  Though there is a valid regulation, 21 C.F.R. § 1307.03, requiring persons seeking exemptions to file a written request with the DEA Office of Diversion Control, the Ninth Circuit held persons seeking a RFRA exemption from the DEA are not required to exhaust the administrative remedy under § 1307.03.[7]  *See Oklevueha I*, 676 F.3d at 838 ("We decline . . . to read an exhaustion requirement into RFRA where the statute contains no such condition and the Supreme Court has not imposed one.") (internal citation omitted).

However, Plaintiffs lack standing to challenge the Guidance because Plaintiffs' injury arises from application of the CSA and the designation of DMT as a Schedule I substance.  *See* 21 C.F.R. § 1308.11(d)(18).  The Guidance does not require Plaintiffs to do anything, or prevent them from doing anything, and therefore has not caused an actual or imminent injury, which is required for standing.[8]  *Cf. DaimlerChrysler*, 547 U.S. at 352 ("[A] plaintiff must demonstrate standing for each claim he seeks to press.") (citation omitted).

### b.  Plaintiffs' APA claim is not ripe

Plaintiffs bring a claim under the APA, alleging the DEA has a "[p]olicy of

---

[7] Judge Orrick of the Northern District of California noted that even a new substantive agency rule might not be able to impose a binding administrative exhaustion requirement under *Oklevueha I*.  (Doc. 57 at 14) ("[I]t is possible that regardless of any new regulations [DEA may promulgate], the plaintiffs will not have to seek an exemption from the DEA prior to seeking judicial redress.").

[8] Even if Plaintiffs had standing to bring a facial challenge to the Guidance, that challenge would plainly be without merit.  Agencies are well within their rights, under 5 U.S.C. § 553(a), to promulgate guidance documents as interpretive rules or general statements of policy without complying with APA rulemaking or adjudicatory procedures.  *See Lincoln v. Vigil*, 508 U.S. 182, 196 (1993).  The consequence of not following those procedures is that a guidance document, unlike a legislative rule, usually is not binding and does not receive *Chevron* deference. *See Indergard*, 582 F.3d at 1053; *Nat. Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) ("Legislative rules generally require notice and comment, but interpretive rules and general statements of policy do not.  Legislative rules generally receive *Chevron* deference, but interpretive rules and general statements of policy do not.") (Kavanaugh, J.) (citations omitted).

denying regulatory services to visionary churches and refusing all requested religious exemptions from the CSA until and unless compelled by a court order." (Doc. 109 at 62). The Federal Defendants argue there is no subject matter jurisdiction for this claim because there has not been final agency action, Plaintiffs' claim is not ripe, and original jurisdiction is vested in the courts of appeals. (Doc. 112 at 8).

The Court need not determine whether there has been "final agency action" sufficient to permit judicial review pursuant to 5 U.S.C. § 704 because Plaintiffs lack standing to assert a claim under the APA. The APA provides claims for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Plaintiffs claim the DEA's alleged policy of denying exemptions to visionary churches resulted in agency action that is reviewable under § 702. Plaintiffs are incorrect. Plaintiffs have not suffered any legal wrong because they have not participated in the exemption process. To raise a claim under the APA, Plaintiffs are required to petition for an exemption or a new rulemaking. *See* 5 U.S.C. §§ 702, 704, 706; *Madsen*, 976 F.2d at 1220. Then, if the DEA denied the petition or refused to respond to it, Plaintiffs could argue they were harmed because the DEA failed to comply with the APA. *See* 5 U.S.C. § 706(1), (2) (setting forth the standard of review of agency action). But Plaintiffs failed to do so.

Moreover, even if Plaintiffs had petitioned for an exemption and been rejected, arguably jurisdiction would have been vested in a United States Court of Appeals pursuant to 21 U.S.C. § 877. *See John Doe, Inc. v. Drug Enf't Admin.*, 484 F.3d 561, 568 (D.C. Cir. 2007) ("[A]lmost all cases challenging DEA decisions under the CSA have been filed directly in the courts of appeals."); *Soul Quest Church of Mother Earth, Inc. v. Garland*, No. 6:20-cv-701-WWB-DCI (M.D. Fla. Mar. 4, 2022) (dismissing a CSA ayahuasca challenge for lack of subject matter jurisdiction pursuant to § 877).

Plaintiffs' APA claim will be dismissed without leave to amend. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("[A] district court need not grant leave to amend where the amendment . . . is futile.").

1

### c. Plaintiffs have not demonstrated standing for the relief they

2

### seek on the RFRA claim

3        The Federal Defendants argue jurisdiction is lacking for three reasons: Because

4   original jurisdiction is vested in the court of appeals, Plaintiffs have failed to "articulate[]

5   a 'concrete plan' to violate" the CSA, and Plaintiffs have failed to demonstrate a risk of

6   imminent prosecution by the federal government.  (Doc. 112 at 15-18).

7        Contrary to the Federal Defendants' argument, original jurisdiction over Plaintiffs'

8   RFRA claim is not vested the United States Courts of Appeals.  Although courts have

9   held original jurisdiction for challenges to CSA scheduling decisions exists only in the

10  courts of appeals pursuant to 21 U.S.C. § 877, *see, e.g.*, *John Doe, Inc.*, 484 F.3d at 568;

11  *Nation v. Trump*, 818 F.App'x 678, 681 (9th Cir. 2020), the jurisdictional limitation has

12  not been applied in cases seeking a CSA exemption pursuant to RFRA.[9]  Section 877

13  applies only to "final decision[s] of the Attorney General."[10]  *See* 21 U.S.C. § 877;

14  *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1252 (9th Cir.

15  2022).  The Federal Defendants argue that the decision to promulgate the Guidance

16  constituted a final decision of the Attorney General.  (Doc. 112 at 13).  But it does not

17  matter whether the Guidance is a final decision that triggers § 877 because Plaintiffs do

18  not have standing to challenge the Guidance.  On the claim for which Plaintiffs may have

19  standing—the RFRA challenge seeking a CSA exemption—there has been no decision of

20  the Attorney General that could trigger § 877's jurisdictional limitation.  *Cf. id.* at 1260

21  (holding a letter sent by the DEA that "did not grant or deny any request, nor impose any

22  [9] For example, in *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S.
23  418 (2006), the Supreme Court upheld a preliminary injunction issued by a district court
    requiring the federal government to provide a Christian Spiritist sect a CSA exemption so
24  that the sect could import and use ayahuasca.  *See id.* at 437.  And in *Church of the Holy
    Light of the Queen v. Mukasey*, 615 F.Supp.2d 1210 (D. Or. 2009), a district court issued
25  a permanent injunction permitting the plaintiffs, followers of the Brazilian Santo Daime
    religion, to import and use ayahuasca.  *Id.* at 1221. Although the Ninth Circuit
26  subsequently vacated the injunction as overbroad, it did not hold the district court was
    without jurisdiction to consider the challenge pursuant to § 877.  *See Church of the Holy
27  Light of the Queen v. Holder*, 443 F.App'x 302 (9th Cir. 2011).  Like in *O Centro* or
    *Church of the Holy Light*, Plaintiffs seek a religious exemption for themselves and their
    alleged congregants, not a rescheduling of DMT.  (Doc. 109 at 44).
28  [10] Courts have held that decisions by the DEA regarding CSA scheduling are subject to §
    877.  *See John Doe, Inc.*, 484 F.3d at 568.

1   legal consequence" did not constitute a final decision of the Attorney General).  Indeed,

2   Federal Defendants acknowledge in their motion to dismiss that the DEA has made no

3   final action applying the Guidance to Plaintiffs.  (Doc. 112 at 11) ("To the extent

4   Plaintiffs challenge the Guidance as applied to them, they fail to identify any agency

5   'action,' final or otherwise.").

6          The Federal Defendants next argue Plaintiffs do not have standing to bring their

7   RFRA claim.  The Court agrees.  Plaintiffs have failed to demonstrate they have standing

8   to seek a prospective injunction or declaratory relief.  *Cf. Friends of the Earth*, 528 U.S.

9   at 185 ("[A] plaintiff must demonstrate standing separately for each form of relief

10  sought.").    Plaintiffs seek a pre-enforcement injunction preventing the Federal

11  Defendants from prosecuting them or seizing the ayahuasca they import.  (Doc. 109 at

12  92-93).  To obtain a pre-enforcement injunction, Plaintiffs must "allege a 'genuine threat

13  of imminent'" enforcement.[11]  *See Oklevueha Native Am. Church of Haw., Inc. v. Holder*

14  *(Oklevueha I)*, 676 F.3d 829, 835 (9th Cir. 2012) (citation omitted).   In determining

15  whether a plaintiff has satisfied this burden, courts "consider: (1) whether the plaintiffs

16  have articulated a 'concrete plan' to violate the law in question; (2) whether the

17  government has communicated a specific warning or threat to initiate proceedings; and

18  (3) the history of past prosecution or enforcement under the statute."  *Id.*

19         Plaintiffs do not have standing to seek prospective relief because they have failed

20  to allege a "concrete plan" to violate the CSA.  The Ninth Circuit has held a "concrete

21  plan" requires more than a "general intent to violate a statute at some unknown date in

22  the future."  *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir.

23  2000) (en banc).  Thus, in *Thomas*, the en banc court rejected a hypothetical plan to

24  violate a statute because the plan did not say "when, to whom, where, or under what

25

26  [11] Although Federal Defendants have seized Plaintiffs' ayahuasca in the past, the Court
    characterizes the injunction Plaintiffs seek as a pre-enforcement injunction because the
27  *Oklevueha I* court did so in a factually analogous situation.  *See Oklevueha I*, 676 F.3d at
    835 ("[B]ecause Plaintiffs' claims are asserted for the first time in an action for
28  prospective relief (and not in a criminal proceeding), we consider the familiar
    'preenforcement claim' ripeness analysis, while acknowledging its strained applicability
    to the unusual allegations before us.").

circumstances" the plaintiffs intended to break the law. *See id.*   Conversely, the *Oklevueha I* court found this requirement satisfied because a plaintiff admitted to violating the CSA daily and the plaintiffs said they had no plans to stop doing so. *See id.* at 836 ("Plaintiffs are currently violating and plan to continue violating the CSA by purchasing and consuming marijuana. Accordingly, Plaintiffs' allegations satisfy the concrete plan requirement.").  Plaintiffs have not alleged a concrete plan either by saying when, to whom, where, or under what circumstances they intend to violate the CSA, or by admitting they regularly violate the CSA and have no plans to stop doing so.  Rather, they say they plan to use ayahuasca only if an injunction is issued. *See* (Doc. 109 at 24). That is insufficient under *Thomas* and *Oklevueha*.  To demonstrate standing to seek a pre-enforcement injunction, Plaintiffs must articulate a concrete plan by every Plaintiffs to violate the CSA.[12]

The Court similarly lacks jurisdiction over Plaintiffs' claim for declaratory relief. The Ninth Circuit has held "a case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence casts what may well be a substantial adverse effect on the interests of petitioning parties." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1990)).  Plaintiffs' claim for declaratory relief challenges government activity that is contingent on Plaintiffs' continued use of ayahuasca, and Plaintiffs have not alleged the concrete plan to violate the CSA, which is a condition precedent to the contingent government activity.  Plaintiffs therefore do not have standing to seek declaratory relief because their injury is speculative and does not "satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *See*

---

[12] Plaintiffs' also ask the Court to order DHS to return their seized ayahuasca. (Doc. 109 at 93).  However, they admit the DEA asserted the authority to destroy the seized ayahuasca and do not allege that the ayahuasca is still in the DEA's possession. (Doc. 109 at 44).  Plaintiffs do not assert a claim for money damages against the Federal Defendants for the value of the ayahuasca, and do not identify a cause of action that could support such a claim.  Plaintiffs therefore have not stated a claim to have the ayahuasca returned to them upon which relief could be granted, or damages for the same.

1   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (citation omitted).

2          However, the Court construes the complaint liberally and because it is possible a

3   fifth amended complaint could allege facts establishing the requirements of standing

4   consistent with federal subject matter jurisdiction over the claims for relief Plaintiffs

5   bring pursuant to RFRA, Plaintiffs' RFRA claim will be dismissed with leave to amend.

6   But Arizona Yage Assembly's motion for a preliminary injunction (Doc. 137) will be

7   denied because neither the Fourth Amended Complaint nor the motion for preliminary

8   injunction allege facts giving rise to standing to seek prospective injunctive relief.

9                **2.  Plaintiffs' § 1983 claim against the Federal Defendants fails**

10         Plaintiffs assert a claim under 42 U.S.C. § 1983 against the DEA, alleging that a

11  "conspiracy" between the DEA and Maricopa County resulted in the violation of Plaintiff

12  Villanueva's civil rights.  (Doc. 109 at 68-72).

13         "To state a claim under § 1983, a plaintiff must allege the violation of a right

14  secured by the Constitution and laws of the United States, and must show that the alleged

15  deprivation was committed by a person acting under color of state law."  *West v. Atkins*,

16  487 U.S. 42, 49 (1988) (citations omitted).  Generally, "under color of state law" requires

17  that the defendant exercised a power "possessed by virtue of state law and made possible

18  only because the wrongdoer is clothed with the authority of state law."  *Id.* (quoting

19  *United States v. Classic*, 313 U.S. 299, 326 (1941)).  Although state employees act under

20  color of state law when they act in their official capacity, *see id.* at 49-50, federal

21  employees do not because their authority does not come from state law.  This does not,

22  however, mean federal employees are immune to suits under § 1983.  For example,

23  federal courts have recognized that federal officers may be sued under § 1983 when they

24  engage in a conspiracy with state officials to infringe constitutional rights.  *See Hampton*

25  *v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979) (holding federal officials may be sued

26  under § 1983 "when [they] are engaged in a conspiracy with state officials to deprive

27  constitutional rights"); *Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir. 1983); *see also*

28  ERWIN CHEMERINSKY, FEDERAL JURISDICTION 541 & n.43 (8th ed.).

1    Seeking to establish a conspiracy between the DEA and local law enforcement, the

2    operative complaint alleges that the DEA came up with a "plan of attack" to target

3    Villanueva with an unlawful search and arrest.[13]  (Doc. 109 at 75-76).  Even if Plaintiffs'

4    factual allegations are assumed true, they do not amount to federal-state involvement that

5    would expose the DEA to liability under § 1983 because the only DEA involvement

6    Plaintiffs allege is a tip, procured from an allegedly mismanaged informant, that DEA

7    employee Marco Paddy passed along to local law enforcement.[14]  (Doc. 109 at 47-48, 50-

8    60).  By itself, the allegation that Paddy knowingly passed a bad tip to Phoenix police

9    does not come close to demonstrating the existence of a conspiracy, between the MCSO

10   and the DEA, to violate Villanueva's rights.  It merely demonstrates that the DEA

11   communicates with other law enforcement agencies—a practice which is not unlawful.

12   *See Scott*, 702 F.2d at 1269 (holding contacts between federal and state officials did not

13   establish a conspiracy because the government employees neither "instigated the state

14   investigation or requested that state investigators procure information for them"); *cf.*

15   *Iqbal*, 556 U.S. at 679 (holding, "where the well-pleaded facts do not permit the court to

16   infer more than the mere possibility of misconduct, the complaint" has not adequately

17   shown the pleader is entitled to relief) (citations and quotations marks omitted).

18   Moreover, Plaintiffs fail to allege any communications whatsoever between the

19   DEA and MCSO regarding Villanueva.  Plaintiffs therefore have not only failed to

20   adequately allege a conspiracy between local law enforcement and the DEA to target

21   Villanueva; they have failed to connect the alleged conspirators.  This is inconsistent with

22   Plaintiffs' allegation that, "at Agent Paddy's instigation, Shay procured a warrant to

23   conduct a search of Villanueva's home" because Plaintiffs do not allege Shay and Paddy

24   ever communicated in any way, much less that they did so to conspire to target

25   _____

26   [13] Plaintiffs appear to believe the DEA formed "retaliatory animus" against Plaintiffs as a
     result of their pro-ayahuasca advocacy, "and to obtain tactical leverage in pending
27   litigation by placing an NAAVC Board member at risk of prosecution." (Doc. 109 at 67).
     [14] Defendants provided a declaration in support of their motion to dismiss while this case
28   was pending in the Northern District of California stating Paddy passing along the tip was
     the federal government's only involvement in the operation against Villanueva.  (Doc. 57
     at 5).

1   Villanueva.  (Doc. 109 at 59).

2          And although the operative complaint includes detailed factual allegations

3   regarding the alleged informant who was the alleged source of the information Paddy

4   gave to local law enforcement (Doc. 109 at 50-59), those allegations also do not

5   demonstrate a conspiracy between the DEA and state or local entities.   Plaintiffs'

6   allegations fail to connect the DEA's informant to local law enforcement, and certainly

7   do not demonstrate that local law enforcement knew of the falsity of the tip or conspired

8   in procuring the allegedly false information in the tip.  *Cf. Ziglar v. Abbasi*, 137 S.Ct.

9   1843, 1867 (2017) ("Conspiracy requires an agreement . . . between or among *two or*

10  *more separate* persons [or entities].") (emphasis added).

11         The motion will be granted, and Plaintiffs' claim against the DEA pursuant to §

12  1983 will be dismissed with leave to amend, because the Court finds Plaintiffs have not

13  pleaded facts sufficient to plausibly demonstrate the DEA was acting under color of state

14  law. If Plaintiffs seek to bring a fifth amended complaint, they must allege facts

15  consistent with a plausible claim that the DEA violated Plaintiffs' rights while acting

16  under color of state law.

17         **B.  Defendant Marco Paddy**

18         Plaintiffs assert claims against Marco Paddy under § 1983 and RFRA.  Damages

19  are available under these claims against government officials sued in their personal

20  capacity, if the claims survive qualified immunity. *See Tanzin v. Tanvir*, 141 S.Ct. 486,

21  492-93 & n. * (2020).  In his motion to dismiss, Paddy argues he did not substantially

22  burden Villanueva's exercise, and that he is entitled to qualified immunity.  (Doc. 111).

23         "Qualified immunity shields government officials from civil damages liability

24  unless the official violated a statutory or constitutional right that was clearly established

25  at the time of the challenged conduct."  *Taylor v. Barkes*, 575 U.S. 822, 825 (2015)

26  (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  It is "an immunity from suit

27  rather than a mere defense to liability; and like an absolute immunity, it is effectively lost

28  if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526

1   (1985) (emphasis omitted).  For a right to be clearly established, "existing precedent must

2   have placed the . . . constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S.

3   731, 741 (2011).  Or, in other words, "in light of pre-existing law the unlawfulness [of the

4   challenged conduct] must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640

5   (1987).

6              **1.  Plaintiffs' § 1983 claim against Paddy fails**

7              Plaintiffs' sole allegations against Paddy are that he mismanaged an informant and

8   passed along a tip he received from the informant to a Micah Kaskavage, Phoenix police

9   officer, that eventually led to a search of Villanueva's residence.[15]  (Doc. 109 at 47-50;

10  Doc. 118 at 12-13).   In other words, Plaintiffs do not allege that Paddy personally

11  violated any of the Plaintiffs' rights.  Under *Iqbal*, "vicarious liability is inapplicable to . .

12  . § 1983 suits, a plaintiff must plead that each Government-official defendant, through his

13  own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Even

14  assuming that some of Plaintiffs' rights were violated, Paddy is not personally liable

15  under § 1983 for his limited involvement in the investigation against Villanueva because

16  he did not violate them himself.  Moreover, because Plaintiffs have failed to demonstrate

17  the DEA acted under color of state law, they have failed to show Paddy acted under color

18  of state law.

19             In Plaintiffs' response to Paddy's motion to dismiss, Plaintiffs argue "[q]ualified

20  immunity is unavailable at this stage of the proceedings because Paddy's motive for

21  generating and publishing misinformation is a disputed fact that forms one basis for

22  Plaintiffs' RFRA and § 1983 claims."  (Doc. 118 at 13).   Plaintiffs' argument

23  misunderstands the nature of both qualified immunity and motions to dismiss.  Qualified

24

25  ---

[15] Plaintiffs allege for the first time in their response to Paddy's motion to dismiss that
26  "Paddy . . . pressur[ed] them to abandon their plans to hold future Ayahuasca
    Ceremonies."   (Doc. 118 at 10).   Plaintiffs failed to include this allegation in their
27  operative complaint.  Moreover, it is not clear from this lone sentence that Plaintiffs mean
    to allege that Paddy *personally* pressured them.  Rather, the Court infers from other
28  filings that Plaintiffs mean to say that Paddy's other alleged conduct indirectly caused
    Plaintiffs to feel pressure not to hold ayahuasca events.  *See* (Doc. 118 at 13) (claiming
    Paddy "triggered a law enforcement action with the intent to . . . coerce Villanueva and
    NAAVC members into abandoning their religious practice.").

immunity is an immunity from suit, not a defense that arises at later stages of litigation. *See Mitchell*, 472 U.S. at 526.  Plaintiffs' assertion that merely pleading a prima facie case under § 1983 is sufficient to overcome qualified immunity (Doc. 118 at 12) is wrong as a matter of law.  *Cf. Pearson v. Callahan*, 555 U.S. 223, 243-45 (2009) (holding officers sued under § 1983 for executing a warrantless search were entitled to qualified immunity).  The question at this stage is not whether Paddy's motives are subject to dispute.  The question is whether, assuming Paddy passed a tip or supervised an informant with animus toward Villanueva, Plaintiffs can recover.  The answer is no.  Plaintiffs cannot recover from Paddy under § 1983 because Plaintiffs have not alleged Paddy personally violated a clearly established right while acting under color of state law.

### 2.  Plaintiffs' RFRA claim against Paddy fails

Plaintiffs also have not alleged a sufficient factual basis to overcome qualified immunity on their RFRA claim.  The act of passing a tip to local law enforcement regarding a potential drug producer—even one who may have a religious interest in drug production—does not substantially burden religious expression, much less that it does so in a clearly established manner.  Most of the allegations supporting Plaintiffs' RFRA claim concern the manner in which Paddy supervised an alleged informant.  (Doc. 109 at 50-60).  Even assuming that Paddy mismanaged the informant in the manner Plaintiffs allege, that mismanagement does not demonstrate Paddy substantially burdened Plaintiffs' religious expression—and certainly not in a manner prohibited by clearly established law.  Indeed, Plaintiffs have not identified a single case in which liability was found in similar circumstances.

The Court finds a fifth amended complaint would be futile because Plaintiffs' allegations are inconsistent with any plausible set of facts that would tend to show Paddy personally violated Plaintiffs' rights under color of state law in a manner that violated clearly established law.  Plaintiffs' claims against Paddy will therefore be dismissed without leave to amend.

### C.  Defendant Maricopa County

Plaintiffs assert a claim against Maricopa County under § 1983,[16] AFERA, and several state torts, including trespass, battery, conversion, negligence, and loss of consortium.  (Doc. 109 at 66, 77, 79, 80, 81, 82).  Pursuant to these claims, Plaintiffs seek monetary, declaratory, and injunctive relief.

In its motion to dismiss, Maricopa County argues Plaintiffs' claim of employer liability is barred by state law, that Plaintiffs failed to establish municipal policy or custom caused their injury, and that Plaintiffs failed to state a claim for injunctive or declaratory relief.  (Doc. 110 at 9-16).

## 1. Abstention

Under the *Younger* abstention doctrine, federal courts generally refrain from enjoining state criminal proceedings as a matter of comity.  *See Younger v. Harris*, 401 U.S. 37, 44 (1971); *see also Samuels v. Mackell*, 401 U.S. 66, 72-73 (1971) (clarifying *Younger* abstention ordinarily applies to declaratory relief); *Herrera v. City of Palmdale*, 918 F.3d 1037, 1042 (9th Cir. 2019) (holding suits for money damages should be stayed pursuant *Younger* abstention until state court proceedings conclude); 28 U.S.C. § 2283. For *Younger* abstention to apply, a state prosecution need not necessarily precede the federal action.  In *Hicks v. Miranda*, the Supreme Court held, "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court, the principles of *Younger v. Harris* should apply in full force."  *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).

Villanueva is currently being prosecuted by Arizona.  (Doc. 131).  In order to resolve Villanueva's § 1983, AFERA, or state tort claims in Villanueva's favor, a finding by the Court that the MCSO engaged in unlawful and unconstitutional conduct in the investigation gave rise to Villanueva's prosecution would be necessary.  Because Villanueva filed this matter before Arizona initiated prosecution, the Court must

---

[16] Villanueva brings § 1983 claims for alleged violations of his rights under the First, Fourth, Fifth, and Fourteenth Amendments.  (Doc. 109 at 74-75).  NAAVC alleges a violation of its rights under the First Amendment.  (Doc. 109 at 75-77).

determine whether "proceedings of substance on the merits ha[d] taken place in federal court" before Arizona began to prosecute Villanueva such that *Younger* abstention would not apply.  *See Hicks*, 422 U.S. at 349.

The exact meaning of "proceedings of substance on the merits" is unclear.  The Supreme Court has held a federal court's denial of a request for a temporary restraining order does not prevent abstention.  *See Hicks*, 422 U.S. at 337.  Conversely, a federal court granting a preliminary injunction is sufficient to preclude application of *Younger* if it occurred prior to the institution of the state enforcement action, *See Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984), or if "the federal court ha[d] conducted extensive hearings on a motion for a preliminary injunction."  *Polykoff v. Collins*, 816 F.2d 1326, 1332 (9th Cir. 1987).

Villanueva filed this matter in the Northern District of California on May 5, 2020.  (Doc. 1).  On May 19, six days after the summons issued, MCSO employee Matthew Shay executed a search warrant on Villanueva's residence.  (Doc. 117 at 3).  On September 21, 2020, the Northern District of California denied Plaintiffs' request for a preliminary injunction and dismissed the Arizona and Maricopa defendants for lack of personal jurisdiction.  (Doc. 57 at 29).  The matter was transferred to the District of Arizona on December 8, 2020.  (Doc. 66).  Plaintiffs filed the Fourth Amended Complaint on May 27, 2021.  (Doc. 109).  Villanueva was arrested at Los Angeles International Airport on August 23, 2021.  (Doc. 125 at 2).  The significant gap between the filing of the complaint and the initiation of state criminal proceedings could suggest this matter was not still in the "embryonic stage," *Midkiff*, 467 U.S. at 238, at the time of the arrest.

However, all proceedings in this matter prior to the arrest concerned jurisdiction and venue.  For example, Judge Orrick based his decision denying a preliminary injunction entirely on the ground that venue was improper in the Northern District of California.  (Doc. 57 at 23-28).  This Order marks the first time a federal court has considered the merits of Plaintiffs' claims, though on motions to dismiss.  Therefore,

despite the year-and-three-month separation between the initiation of this matter and Villanueva's arrest, proceedings of substance on the merits had not occurred at the time Villanueva was apprehended.

*Younger* abstention is appropriate on Villanueva's claims against Maricopa County due to the prosecution of Villanueva pending in state court.  The Court will therefore dismiss Villanueva's claims for injunctive and declaratory relief against Maricopa County and stay Villanueva's claims for money damages.  *See Herrera*, 918 F.3d at 1042 ("[W]hen a court abstains under *Younger*, claims for injunctive and declaratory relief are typically dismissed.  However, our court has also recognized that, when a district court abstains from considering a *damages* claim under *Younger*, it must *stay*—rather than dismiss—the damages action until state proceedings conclude.").  All tort claims raised in the complaint appear to be made by Villanueva, alone.  (Doc. 109 at 77-82).  They will all be dismissed or stayed in accord with *Herrera*, as will Villanueva's § 1983 claims.

### 2.  § 1983

Although the Court must abstain from Villanueva's claims, the Court need not abstain from NAAVC's § 1983 claim, which challenges on First Amendment grounds the search of Villanueva's residence and seizure of the ayahuasca therein, because NAAVC is not being prosecuted.  *Younger* does not bar federal actions by persons or entities not subject to state prosecution.  *See Steffel v. Thompson*, 415 U.S. 452, 462 (1974); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975).

Local governments may be held liable under for § 1983 violations under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), but they "are responsible only for 'their *own* legal acts.'  They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)) (internal citations omitted).  To impose liability on local governments under § 1983, Plaintiffs must prove an "action pursuant to official municipal policy" caused their injury.  *Monell*, 436 U.S. at 691.

NAAVC argues "[c]onscious indifference to the rights of civil rights of persons in Maricopa County" is "endemic within MCSO." (Doc. 109 at 69). NAAVC claims "MCSO deputies continue to be tainted by unconstitutional bias" left over from the tenure of Joe Arpaio as Sheriff of Maricopa County. (Doc. 109 at 69-70). But NAAVC does not allege that current leadership within Maricopa County has set a policy of indifference toward civil rights. And vicarious municipal liability on the facts Plaintiffs allege long after Arpaio lost his authority within the County has not been established in the Fourth Amended Complaint.

NAAVC's claim under § 1983 will be dismissed with leave to amend because it is possible that an amended complaint could raise a claim sufficient to withstand a motion to dismiss. If NAAVC seeks to bring a fifth amended complaint, it must allege facts consistent with a plausible claim that an official municipal policy in existence at the time of the search caused their injury.

### D. Defendant Matthew Shay

Plaintiffs name MCSO Deputy Detective Matthew Shay as a defendant of their claims under § 1983, AFERA, and several torts.[17] (Doc. 109 at 66, 77, 79, 80, 81, 82). Shay was the MCSO employee who obtained the search warrant and conducted the search of Villanueva's residence that gives rise to many of the claims in this litigation. (Doc. 109 at 72). Shay argues Plaintiffs have failed to comply with state procedural prerequisites to bring a claim for money damages, that qualified immunity applies, and that Plaintiffs fail to make a claim for injunctive or declaratory relief. (Doc. 110 at 3-8).

A.R.S. § 12-821.01(A) requires persons with possible claims for money damages against Arizona public employees to serve a notice of claim within 180 days after the cause of action accrues. Plaintiffs did not serve a notice of claim against Shay. (Doc. 95 at 17; Doc. 110 at 3) The motion to dismiss filed by Maricopa County and Shay states that Plaintiffs "have now stricken all requests for damages against Shay" under state law

---

[17] The Court finds *Younger* abstention is not necessary for these claims because they can be resolved on grounds not relevant to Villanueva's pending state prosecution, and therefore would not "result in a clearly improper interference with the state proceedings." *See Samuels*, 401 U.S. at 72.

claims.  (Doc. 110 at 3).  To the extent Plaintiffs still bring a claim for money damages against Shay for violation of state law, or intend to bring one in the future regarding the allegations that give rise to this complaint, the claim is barred by A.R.S. § 12-821.01(A). Shay may also be entitled to qualified immunity.

Plaintiffs also have not alleged a sufficient factual basis to support an injunction against Shay.  To obtain an injunction, a "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as a result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  Plaintiffs' claims relate to Shay's alleged violation of Plaintiffs' rights in the past.  With Villanueva already under prosecution and VOLC already having been searched, Plaintiffs do not provide any reason to believe that Shay is likely to violate their rights in the future.  Therefore, Plaintiffs are not entitled to an injunction against Shay.

In light of these limitations on Shay's liability, Plaintiffs will not be granted leave to amend.

**CONCLUSION**

For the foregoing reasons, the motions to dismiss filed by the Federal Defendants (Doc. 112), Marco Paddy (Doc. 111), and Maricopa County and Matthew Shay (Doc. 110) will be granted.   The motion for a preliminary injunction will be denied.  (Doc. 137).

The Court abstains from Clay Villanueva's claims against Maricopa County and Matthew Shay due to Villanueva's pending prosecution.  Villanueva's claims for money damages will be stayed pursuant to *Herrera* and his claims for declaratory and injunctive relief will be dismissed without prejudice.  *See Herrera*, 918 F.3d at 1042.

Accordingly,

1    **IT IS ORDERED** Motion to Dismiss Plaintiffs' Fourth Amended Complaint

2    (Doc. 112) filed by the United States, U.S. Attorney General, Drug Enforcement

3    Administration Administrator, Secretary of Homeland Security, and Commissioner for

4    U.S. Customs and Border Protection is **GRANTED**.  Plaintiffs' claim against the United

5    States and the Drug Enforcement Administration Administrator under the Administrative

6    Procedure Act is **DISMISSED WITHOUT LEAVE TO AMEND**.  Plaintiffs' claim

7    against the Drug Enforcement Administration Administrator under 42 U.S.C. § 1983 is

8    **DISMISSED WITH LEAVE TO AMEND**.  Plaintiffs' Religious Freedom Restoration

9    Act claim against the United States, U.S. Attorney General, Drug Enforcement

10   Administration Administrator, Secretary of Homeland Security, and Commissioner for

11   U.S. Customs and Border Protection is **DISMISSED WITH LEAVE TO AMEND**.

12   **IT IS FURTHER ORDERED** Defendant Marco Paddy's Motion to Dismiss

13   Plaintiffs' Fourth Amended Complaint (Doc. 111) is **GRANTED**.  Plaintiffs' claims

14   against Paddy are **DISMISSED WITHOUT LEAVE TO AMEND**. The Clerk of Court

15   is directed to dismiss Defendant Marco Paddy from this matter.

16   **IT IS FURTHER ORDERED** Defendants Maricopa County and Matthew Shay's

17   Motion to Dismiss Fourth Amended Complaint (Doc. 110) is **GRANTED**.  Plaintiff Clay

18   Villanueva's claims for money damages against Defendant Maricopa County are

19   **STAYED**.  Plaintiff Clay Villanueva's claims for declaratory and injunctive relief against

20   Defendant Maricopa County are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff

21   National Association of American Visionary Churches' claims against Defendants

22   Maricopa County are **DISMISSED WITH LEAVE TO AMEND**.  Plaintiffs' claims

23   against Defendant Matthew Shay are **DISMISSED WITHOUT LEAVE TO AMEND**.

24   The Clerk of Court is directed to dismiss Defendant Matthew Shay from this matter.

25   …

26   …

27   …

28   …

**IT IS FURTHER ORDERED** Plaintiff Arizona Yage Assembly's Motion to Deem Papers Timely Filed (Doc. 149) is **GRANTED**. Plaintiff Arizona Yage Assembly's Motion and Memorandum in Support for Preliminary Injunction (Doc. 137) is **DENIED**.

Dated this 30th day of March, 2022.

Honorable Roslyn O. Silver
Senior United States District Judge