JOHN SULLIVAN (CSB#204648)
17532 Miranda Street
Encino, CA 91316
Tel:818-769-7236
Email:Sullivan.John84@gmail.com
Attorney for Plaintiffs Arizona Yagé Assembly
and Winfield Scott Stanley III

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>       Plaintiffs,<br><br>       vs.<br><br>Merrick Garland, Attorney General of the United States; Anne Milgram, Administrator of the U.S. Drug Enforcement Administration; Alejandro Mayorkas, Secretary of the Dept. of Homeland Security; and Chris Magnus, Commissioner of U.S. Customs and Border Protection.<br><br>       Defendants. | Case No.:20-CV-02373-PHX-ROS<br><br>FIFTH AMENDED COMPLAINT<br><br>1. RELIGIOUS FREEDOM RESTORATION ACT [42 U.S.C. § 2000bb-1(c)]<br><br>2. DECLARATORY RELIEF [28 U.S.C. § 2201 – 2202]<br><br>JURY DEMAND |

# TABLE OF CONTENTS

I.      JURISDICTION ...................................................................................... 3

II.     PARTIES .................................................................................................. 3

III.    NATURE OF THE CASE ........................................................................ 4

IV.     AYAHUASCA, AYA AND VISIONARY RELIGION ........................... 5

V.      THE AGENCY DEFENDANTS' ENFORCEMENT ACTIONS HAVE
        BURDENED AYA'S RELIGIOUS FREE EXERCISE ........................ 12

VI.     AYA HAS A CONCRETE PLAN TO CONTINUE POSSESSING AND
        IMPORTING AYAHUASCA FOR USE IN RELIGIOUS CEREMONIES ....... 20

FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS .................................. 20

SECOND CLAIM FOR DECLARATORY RELIEF AGAINST ALL DEFENDANTS 25

PRAYER FOR RELIEF ................................................................................. 30

For their complaint against defendants, plaintiffs allege:

I.   **JURISDICTION**

1.      This Court has jurisdiction over this action pursuant to 28 USC §§ 1331, because it is an action arising under the Constitution and federal statutes.

2.      This Court has authority pursuant to 28 U.S.C. §§ 2201-2202, to grant declaratory relief and to issue preliminary and permanent injunctions. The Court further has authority under 5 U.S.C. § 702 to compel agency action unlawfully withheld or unreasonably delayed, and to set aside an agency's acts or failures to act that are: contrary to constitutional right, privilege or immunity; in excess of statutory jurisdiction, authority or limitations; or, carried on without the procedure required by law.

3.      Venue is proper under 28 USC § 1391(e)(1)(c) against the defendants, all officers of agencies of the United States acting in their official capacities, because Plaintiff is an Arizona nonprofit corporation and because a substantial part of the events or omissions giving rise to the claim occurred in Arizona.

II.   **PARTIES**

4.      The defendants identified in this paragraph are "the Agency Defendants." Defendant Merrick Garland, Attorney General of the United States, is named in his capacity as Chief Law Enforcement Officer of the United States, head of the Department of Justice ("DOJ"), and the ultimate head of the Drug Enforcement Agency ("DEA"). Defendant Anne Milgram is named in her official capacity as Administrator of the DEA. Defendant Alejandro Mayorkas is named in his official capacity as the Acting Secretary of the Department of Homeland Security ("DHS").  Defendant Chris Magnus is named in his official capacity as Acting Commissioner of Customs and Border Protection ("CBP"). Each of these agencies (separately and collectively, "the Agency Defendants"), enforces the CSA's proscriptions in various aspects of their operations, exerting legal authority over all movements of controlled substances, that thus affect the Free Exercise of plaintiffs.

5.      Plaintiff Arizona Yagé Assembly ("AYA") is a church congregation organized as an Arizona nonprofit corporation alleging RFRA standing as a religious person.

6.      Plaintiff Winfield Scott Stanley III ("Stanley") is AYA's Founder and Director.

## III.    <u>NATURE OF THE CASE</u>

7.      This action is brought under 42 U.S.C. § 2000bb-1(c), the Religious Freedom Restoration Act ("RFRA") and the Declaratory Judgment Act 28 U.S.C. § 2201-2202.

8.      AYA is a religious institution and Visionary Church that seeks to provide its members with spiritual fellowship, healing practices, and communion ceremonies. During AYA's communion ceremonies, church members use Ayahuasca (also known as yagé), an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), as their religious sacrament.

9.      Drinking sacramental Ayahuasca is the central communion ceremony of AYA where congregants receive the transmission of wisdom and Divine Love that comes through sacramental use of Ayahuasca. Without Ayahuasca, AYA does not have a religious practice to share, and AYA congregants are unable to practice their religion.

10.     AYA and its members are substantially burdened by laws prohibiting importation, distribution, and possession of Ayahuasca.  Because DMT is listed as a Schedule I controlled substance under the Controlled Substances Act (the "CSA"), and because the DEA and DHS interpret the law to enact a complete ban against the religious sacrament Ayahuasca, members are forced to choose between obedience to their religion and criminal sanction.

11.     Plaintiffs' injury arises from application of the CSA and the designation of DMT as a Schedule I substance.

12.     Plaintiffs seek a declaratory judgment that AYA's use, possession, or transportation of Ayahuasca for *bona fide* traditional ceremony purposes in connection with the practice of Visionary Religion is lawful.

13.     Plaintiffs seek a declaratory judgment that DEA and DHS's interpretation of the law to enact a complete ban against AYA's possession and transportation of their religious sacrament violates RFRA.

14.     Plaintiffs seek an Order under RFRA instructing the Agency Defendants to grant AYA a religious exemption under the Controlled Substances Act ("CSA") and requiring the Agency Defendants to engage with AYA and design reasonable restrictions to prevent diversion of Ayahuasca into illegal markets.

15.     AYA is not the first Visionary Church to seek and obtain the relief that AYA now requests in this Court.  Following the Supreme Court's decision in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 425 (2006), a Visionary Church called Uniao do Vegetal ("UDV") was granted a religious exemption under the CSA and is currently allowed to import Ayahuasca and practice its religion without the fear of criminal sanction.  Similarly, following a decision by the United States District Court for the District of Oregon, *Church of the Holy Light of the Queen [CHLQ] v. Mukasey*, 615 Supp.2d 1210, 1215 (D. Ore., 2006), a Visionary Church called Santo Daime was granted a religious exemption under the CSA and is currently allowed to import Ayahuasca and practice its religion without the fear of criminal sanction.

16.     AYA has filed this suit to protect the same Free Exercise rights that were recognized and protected in *O Centro* and *CHLQ*.  AYA seeks nothing more than the same reasonable accommodations from the Agency Defendants that are currently being granted to UDV and Santo Daime.

## IV.     AYAHUASCA, AYA AND VISIONARY RELIGION

17.     AYA is a church that offers its congregation the experience of Visionary Communion in ceremonies where Mr. Stanley and trained AYA facilitators administer

Ayahuasca, a pharmacologically-active communion sacrament, in a ceremonial setting, to a congregation that comes prepared with a religious mindset.

18.   The purpose of Visionary Communion is to bring the individual members of the congregation into communication with the Divine to receive healing and instruction.  The legitimacy of Ayahuasca as a religious sacrament when ceremonially administered in a religious setting, was established as the law of the land in *O Centro*, *supra*, 546 U.S. 418 (referring to Ayahuasca by the UDV term, "Hoasca,").

19.   Mr. Stanley organized AYA as a visionary church in 2015, after first being introduced to Ayahuasca in 2009. He studies the way of Visionary Communion under the tutelage of Eladio Melendez Garcia, a Peruvian Ayahuasquero who lives along a tributary of the Amazon and teaches a traditional shamanic practice of Visionary Communion.  In Peru, Mr. Garcia is able to practice his religion without fear of prosecution.  Mr. Stanley has led several trips into the Peruvian jungle for AYA facilitators and congregation members to practice Visionary Communion in the native environment.  In Peru, Ayahuasca is not legally restricted in any way, and practice can proceed without any fear of law enforcement interference.  AYA and Mr. Stanley have operated in the United States in good faith as church and minister in reliance upon the Supreme Court's seminal decision under RFRA in *O Centro, supra,* 546 U.S. 418, that affirmed the injunction issued by the District Court of the District of New Mexico, in favor of the *Unia do Vegetal* (the "UDV") visionary church.  The UDV injunction compelled the DEA to release a fifty-gallon drum of seized Ayahuasca to the UDV, to cease all threats of criminal enforcement against the church, and to establish the first successful system of lawfully-sanctioned Ayahuasca importation for religious use.  Implicit in these holdings is that the UDV's possession of Sacramental Ayahuasca was at no time a violation of the CSA, and at all times was lawful.  The implicit holding that sacramental use of Ayahuasca is not unlawful also appears in *CHLQ v. Mukasey*, *supra,* where the late Judge Owen Panner expressly held that the plaintiffs' continued importation and use of Ayahuasca in secrecy was evidence of religious sincerity, not criminality.  It is under the

shelter of these legal opinions, and with a sincere belief in the legitimacy of the claims asserted herein, that Plaintiffs share their religion in the broad light of day, declare their actions in this litigation, and thereby open themselves to the appropriate level of inquiry necessary for the Court to rule upon the sincerity of their religious faith on the path of Visionary Communion.

20.    As the minister and lead facilitator of AYA, Mr. Stanley devotes himself full time to assisting the AYA congregation to practice Visionary Communion, training AYA facilitators, and managing and funding projects, such as the recent erection of AYA's first permanent ceremonial maloka in the District of Arizona in addition to the creation of a nature conservancy in Peru for the preservation of Amazonian rainforest. Such ministerial duties are similar to those of many religious leaders, but Mr. Stanley has additional duties that most ministers do not.

21.    AYA and Mr. Stanley are agreed that it is the church's pastoral duty to prosecute this action against the Agency Defendants to defend the Free Exercise rights of AYA members for at least three reasons: (1) to obtain unimpeded access to Sacramental Ayahuasca for the congregation, (2) to free AYA members of the risk of investigation and the threat of prosecution, and (3) to protect AYA members from exposure to the threatening, coercive interrogation tactics of investigators employed by the Agency Defendants who have targeted AYA members after identifying them as practitioners of Visionary Communion, as alleged hereinbelow.

22.    The experience of Visionary Communion through Ayahuasca is the receipt of Divine Love and wisdom by the congregation, and thus involves the deepest level of free religious expression and understanding.  Mr. Stanley teaches the AYA congregation that the essential religious teaching "comes from the vine and the leaf," because Ayahuasca offered in ceremony is not merely a physical drink, but rather, the Sacrament that opens the heart to visions illuminated by inner light, that inspires one to understand and sing healing songs, and can in fact heal the whole human being, body, spirit, and

mind.  The individual members of the congregation are then able to expand this healing to our entire world.

23.     Physically, Ayahuasca is an herbal tea made of two herbs drunk as a ceremonial sacrament in religious ceremonies that arose among Amazonian tribes in Brazil, Peru, Ecuador, and other Latin American countries.  The controlling body of scientific evidence establishes that sacramental Ayahuasca is physically safe for persons who do not consume contraindicated foods or medications prior to ceremony.  An abundance of peer reviewed studies establish regular ceremonial Ayahuasca use reduces and often entirely eliminates substance addictions to alcohol, opiates, and cocaine. This feature of the Ayahuasca religion was one of the features that persuaded the government of Brazil to reverse its scheduling of Ayahuasca as a controlled substance, and has contributed to the religion's popularity in that country.  Ayahuasca is not habit-forming or addictive, and is not listed as a drug of abuse in the DEA Resource Guide, *Drugs of Abuse*.

24.     However, Ayahuasca contains a small amount of DMT, so the DEA and DHS absolutely prohibit its importation, manufacturing, and possession imposed by the CSA and related CFRs.  While the DEA has an undoubted bias towards issuing no exemptions via administrative process, when judicial exemptions have been issued, the DEA has implemented less restrictive options twice pursuant to post-injunction negotiations, first with the UDV after the *O Centro* decision, and second with the Santo Daime, after the *CHLQ v. Mukasey* decision.  These systems have well worked for years, with the churches importing known amounts under governmental authorization, and recording amounts consumed for later comparison, to eliminate the risk of diversion into an illicit market.  Neither church has reported any difficulties, nor has the DEA. Likewise, AYA is ready, willing and able to import and dispense under a reasonable exemption regime.

25.     AYA obtains Sacramental Ayahuasca from Peru from trusted sources that harvest the yage vine and DMT-containing herbs in a respectful, traditional manner,

brewing the tea with awareness that it will be used in Visionary Communion. Those who prepare the sacramental Ayahuasca used by AYA have not industrialized the process in an effort to maximize production.  Such an attitude would be antithetical to the very reason for brewing Ayahuasca, which is to bring healing and wisdom to those who imbibe the sacred tea.  Ayahuasca is traditionally prepared in an atmosphere of sacramental respect for the spirits that animate the plants and transmit blessings to those who drink the tea.  Ayahuasca Sacrament does degrade over time, and occasionally, must be discarded, as it will have no efficacy.  In that event, practitioners of Visionary Communion dispose of the liquid in a respectful manner, by pouring it into the earth from which it came, with consciousness that the substance is not simply garbage or refuse.

26.    Describing the practices of a Brazilian church that sued the Government under RFRA in the District of Oregon, the late Judge Owen Panner wrote: "The Santo Daime church brews Daime tea in Brazil during an elaborate religious ritual. Men gather the woody B. caapi vine and pound it for hours with mallets, while women collect and clean the P. viridis leaves. The shredded vine is boiled for many hours, constantly tended. P. viridis leaves are not added until boiling is nearly complete because the DMT dissolves rapidly." *Church of the Holy Light of the Queen v. Mukasey*, 615 F.Supp.2d 1210, 1215 (2006) (vacated on other grounds).

27.    Ayahuasca, referred to as "Hoasca" in *O Centro*, was purposely created by Amazonian natives for spiritual purposes. The two herbs that are boiled together to create Ayahuasca have a joint effect on the human metabolism that neither herb alone will produce.  DMT, the controlled substance that subjects Ayahuasca to the prohibitory sanctions of the CSA, ordinarily produces no effect when consumed by mouth.  DMT as a drug of abuse is smoked to create a sudden, overpowering hallucinogenic experience that fades in minutes.  The Ayahuasca recipe, however, makes DMT orally active by brewing leaves from DMT-containing plants jointly with slices of  *Banisteropsis Caapi*, the "yagé" vine.  Yagé is rich in beta-carbolenes, chemicals that are not controlled substances and possess therapeutic qualities and sensitize the human metabolism so that a

small amount of DMT, taken in a sacramental environment with persons of positive intent, becomes activated, and along with the yagé vine, that has its own divine character, generates a spiritually uplifting experience of approximately four hours.

28.     The similarities between Ayahuasca and peyote are significant, and indicate that a like manner of relaxed regulation would be indicated under RFRA's least-restrictive means test.  Like peyote, Ayahuasca has a long history of sacramental use by native peoples, and like those who eat peyote, virtually all persons who drink Ayahuasca drink it at a religious ceremony.  Like peyote, Ayahuasca has an unpleasant taste and emetic qualities that render ingestion physically uncomfortable, and discourages recreational users.  Like peyote, Ayahuasca's emetic effects are concurrent with purging forces that obscure the sacramental communion experience.   Like peyote, Ayahuasca induces introspective states of awareness that facilitate reflection and contemplation, rather than inducing the stimulation and euphoria sought by social and recreational drug users.  Just as peyote lies at the "theological heart" of the Native American Church, Ayahuasca lies at the theological heart of the Visionary Church.  Thus, like peyote, Ayahuasca is not a drug of abuse, and the courts have recognized that it tends not to be diverted into the illicit market.  "As courts have repeatedly emphasized, cannabis differs critically from peyote and hoasca precisely because there is a thriving market for diverted cannabis, whereas there is no comparable demand for recreational peyote and hoasca." *United States v. Christie*, 825 F.3d 1048, 1060-1061 (2016), *citing O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1020 (10th Cir. 2004) (en banc) (McConnell, J., concurring).

29.     Ayahuasca is almost exclusively consumed in religious ceremonies; accordingly, visionary churches whose sacrament is Ayahuasca are using a sacrament that in itself affirms their claim of religious sincerity.  The very activity of drinking Ayahuasca confirms their religious intent, because it is a demanding visionary experience that delivers rewards commensurate with sincerity.  Further, visionary churches emphasize the importance of preparation as part of sincere intention in approaching the

use of the sacrament, since an initially casual mindset often leads to hard lessons that appear necessary to ripen the practitioner's sincerity.   Thus, the very use of Ayahuasca in a sacramental setting provides a warrant of sincerity; accordingly, the sincerity of the faith of visionary churches should be taken at face value, and in the absence of evidence that their faith is feigned, they should be able to obtain an exemption from general law for the Free Exercise purpose of dispensing Ayahuasca as the communion sacrament in visionary churches, without being subject to a searching inquiry by any administrative agency or judicial officer.

30.     The demographics and religious attitudes of AYA's congregation are indicative of the sincerity of its membership.   Seventy-one percent are over 30, and forty-six percent are over the age of 40.   Ninety-six percent pray or meditate, and the same percentage state that their only use of Ayahuasca has been as a religious or spiritual practice.   Ninety-eight percent consider participation in AYA ceremonies as beneficial to their spiritual growth.   Sixty-four percent connect with other church members between ceremonies.   Ninety-four percent see themselves returning to future ceremonies.   These statistics are drawn from a statistically significant sampling of responses to a questionnaire sent to all AYA members by AYA in 2018.

31.     AYA ceremonies are conducted by trained facilitators who apply AYA's Ceremonial Instructions, following best practices for conducting Visionary Communion ceremonies.   Ninety-eight percent of AYA members reported that ceremony facilitators capably perform their ceremonial duties, and the same percentage said they felt physically and emotionally safe throughout the ceremony.

32.     AYA ceremonies are traditionally conducted after nightfall, and continue until dawn, in a "maloka," a circular structure that, in the Amazonian jungle, is built of natural wood and palm leaf roofing.   AYA's maloka in the Arizona desert is built of more conventional materials better suited to the Sonoran desert, while preserving the tradition circular space for the ceremonial setting.

33.     The congregation prepares for the experience with set dietary restrictions the week before the ceremony.  Ceremonies begin in the evening, and all members of the congregation commit to remain for the entire ceremony.  All are provided comfortable places to sit and recline in the maloka, where their needs will be cared for by facilitators trained in helping others during the experience of Visionary Communion.

34.     After the members have gathered quietly and focused their attention, the lead facilitator performs an invocation and rings a ceremonial bell.  Then he or she offers each person a first cup of Ayahuasca.  After this first offering of Ayahuasca, at intervals, the lead facilitator may make additional offerings of Sacramental Ayahuasca, sensitively monitoring what is offered to each congregant, so that they drink only so much of the sacrament as is necessary for them to receive a meaningful experience of communion.

35.     During ceremonies, many members experience deep religious sentiments directly connected with their own life experience, reviewing incidents from their past, recognizing their errors and those of others, purging their own guilt and forgiving others their wrongs, receiving mercy and forgiveness from the divine source, and experiencing the restful peace of Divine Love.  The ceremony concludes slowly, as the visionary experience subsides over the course of the night.  Facilitators attend to the condition of each congregant, and appropriate action is taken for their physical and psychological well-being.

36.     The experience of visionary communion is profound and uniquely personal. For many AYA members, communion through Ayahuasca has proven pivotal to their spiritual growth and ethical development, helping them reconnect with their innate religious feeling, and learn how to express it in positive action.

## V.     THE AGENCY DEFENDANTS' ENFORCEMENT ACTIONS HAVE BURDENED AYA'S RELIGIOUS FREE EXERCISE

37.     Plaintiffs face the classic Catch-22 dilemma that RFRA was meant to remediate: exercise their religion or face the threat of civil or criminal sanction.

38.     Some who wish to join AYA in ceremony will not do so because of the threat of arrest.  This group includes many whose positions require licensed credentials, security background checks, and other scrutiny of their background that make the revelation of AYA ceremony attendance an embarrassment, or a potential target for law enforcement.  But it also includes people who have a strong sense of avoiding any ambiguity in their legal conduct, and simply will not enter into situations where their legal safety is not assured.

39.     Plaintiffs are burdened by the Government's failure to provide a RFRA exemption under the CSA's implementing regulations to allow for Free Exercise.

40.     The CSA has been enforced against AYA and Mr. Stanley on several occasions by the seizure of Sacramental Ayahuasca during importation.  These seizures continued despite specific request from AYA to the DOJ to cease the seizures and return all seized Sacramental Ayahuasca.

41.     On April 22, 2020, AYA was notified that its property, a container of Ayahuasca ordered for the use of AYA, had been seized by DHS during the customs process.  DHS notified AYA's designated addressee of the seizure of AYA's property by sending a notice in the empty box from which the Ayahuasca had been removed.  DHS sent the empty box to AYA's designated agent at their mailing address in the State of California, in lieu of an international parcel, stating:

<u>NOTICE</u>

NARCOTICS AND/OR OTHER CONTRABAND PROHIBITED FROM ENTRY INTO THE UNITED STATES HAVE BEEN SEIZED AND REMOVED FOR APPROPRIATE ACTION UNDER 19CFR145.59. YOU WILL BE RECEIVING CORRESPONDENCE FROM OUR FINES, PENALTIES AND FORFEITURES BRANCH IN THE NEAR FUTURE.

42.     On October 21, 2020, a shipment of Sacramental Ayahuasca from Peru, Serpost tracking number EE011369264PE, addressed to AYA and Scott Stanley, was intercepted in transit by the Department of Homeland Security in Los Angeles, and has never been received.  After this interception of AYA's Sacramental Ayahusaca, plaintiffs

notified counsel for the Agency Defendants in this action that they objected to the interception, and requested release of this property, which the Agency Defendants refused, stating that DHS had regulatory authority to seize, forfeit and destroy Sacramental Ayahuasca destined for AYA.

43.     In a letter addressed to DOJ Attorney Kevin Hancock dated October 23, 2020, an AYA representative provided U.S. Postal Service tracking numbers identifying packages of religious sacrament ordered by AYA and asked that the packages be returned to AYA.  In a reply dated November 18, 2020, DOJ attorney Kevin Hancock replied: "I can confirm that CBP is processing one or more packages associated with the U.S. Postal Service tracking numbers provided with your letters, and that CBP's processing is not yet complete.  Assuming *arguendo* that the package(s) being processed were addressed to AYA and in fact contain Ayahuasca, as you claim, your letter identifies no valid reason why CBP could not lawfully inspect and seize such package(s), and thus there is no legal basis for your demand that CBP release them."  Mr. Hancock's response noted that all Ayahuasca is subject to seizure and destruction, and there is no pre or post-deprivation hearing available to prevent all AYA imported Ayahuasca being seized and destroyed, which was the intention of DHS, as alleged hereinbelow.

44.     Mr. Hancock's promise has been honored by DHS, that has continued to seize AYA's Sacramental Ayahuasca shipments.

45.     During November, 2020, a third shipment of Sacramental Ayahuasca from Peru, Serpost tracking number EE011368873PE, addressed to AYA and Scott Stanley, was seized by DHS.

46.     On December 31, 2020, a fourth shipment of Sacramental Ayahuasca from Peru, Serpost tracking number EE011186439PE, addressed to AYA and Scott Stanley, was seized by DHS.

47.     These seizures prevent AYA from engaging in Free Exercise, and from sharing the Ayahuasca Sacrament with its congregation.  Without access to the

Ayahuasca seized by the Defendants, AYA does not have a sacrament to share, and AYA congregants are unable to practice their religion.

48.     Because the DHS seizures of AYA's Sacramental Ayahuasca are certain to continue, continued importation efforts will result only in financial loss and the disrespectful profanation of AYA's religious sacrament by DHS agents who risk no liability for their acts of destruction, and will continue to act in a disrespectful, unlawful manner by seizing and destroying Ayahuasca Sacrament that they discover in the course of performing their customs duties.  During the pendency of this litigation, DHS has intensified its surveillance of packages from Peru, from whence all AYA sacrament is shipped, and uses advanced technology to obtain instantaneous sampling of suspected liquid contraband; accordingly, successfully evading this importation obstacle is not effectively impossible.  Wherefore, AYA and Mr. Stanley have no remedy at law for the destruction of their religious property, the financial damages caused thereby, and the substantial burden on Free Exercise resulting DHS seizures, for which they have no remedy at law, and pray for injunctive relief to prevent the continuation of these injuries.

49.     Plaintiffs also seek injunctive relief for the DEA's failure to provide AYA and Mr. Stanley, and all visionary churches with an exemption under 21 CFR 1312.11, such as is granted to police officers, pharmaceutical manufacturers, and the employees of physicians, which would allow AYA and Mr. Stanely to import Sacramental Ayahuasca. Without an exemption under 21 CFR 1312.11, RFRA Plaintiffs will suffer repeated seizure of its sacrament by the DHS, administrative sanctions, and referral of the matter to the DEA for prosecution for violation of 21 U.S.C. § 952(a).  The failure to provide an exemption for visionary churches violates equal protection under the Fourteenth Amendment, and is actionable under RFRA.  For the refusal to provide such an exemption, Plaintiffs have no remedy at law, and accordingly pray for injunctive relief to compel the DEA to issue AYA and Mr. Stanley the needed exemptions to allow them to import Sacramental Ayahuasca.

50.     DHS provides no post-seizure procedure for recovery of seized Ayahuasca Sacrament.  AYA has requested that seized Ayahuasca Sacrament be released to its custody, as the Agency Defendants have full knowledge via AYA's Motion for Preliminary Injunction that AYA's Ayahuasca use is entirely sacramental in character, and DHS is a subordinate agency of the Agency Defendants whose conduct should conform to a single, lawful standard in compliance with RFRA.

51.     Each seizure imposes a financial loss on AYA's congregation, and interrupts Free Exercise in much the same way as Catholic Mass would be interrupted by a ban on the distribution of communion hosts, or the seizure of Passover wine would interrupt the Seder.  Beyond the financial loss, DHS deals a severe insult to Plaintiffs by refusing to recognize the sacred nature of their Ayahuasca Sacrament, and profaning it by seizing it without respect for its symbolic meaning to Plaintiffs, and destroying it like poisonous refuse.

52.     When AYA is unable to hold ceremonies because its Ayahuasca was seized and destroyed by DHS and/or CBP, AYA's Free Exercise is substantially burdened.

53.     AYA members cannot freely practice their religion without a clear and present danger that: (1) AYA and its members may be arrested for violations of the CSA, (2) warrants could be issued for the arrest of AYA members, and (3) warrants may be issued allowing the search of AYA properties or that of their members.

54.     Under the current regulatory scheme, Plaintiffs are forced to practice their religion in the shadows and "underground," which deters many religious persons desirous of practicing Visionary Communion from joining AYA and Mr. Stanley in ceremony, thus imposing a substantial burden on Plaintiffs' Free Exercise and Freedom of Assembly by labeling and stigmatizing their religious beliefs and practices, falsely characterizing their religious gatherings as mere occasions for the distribution of a controlled substances.

55.     AYA has been severely burdened by the heavily armed police raid and subsequent prosecution and incarceration of a Visionary Church practitioner named Clay

Villanueva.  Based on Mr. Villanueva's experience, AYA members reasonably believe that DEA will investigate and/or arrest them for freely exercising their religion.

56.     The case of Clay Villanueva, who was arrested in August 2021 at LAX on an Arizona felony warrant, has served as a lesson for AYA about how law enforcement can ruin the life of a sincere practitioner of visionary religion.

57.     The joint federal/state task force raid on Mr. Villanueva's home and his subsequent prosecution has chilled AYA's Free Exercise, and chilled the Free Exercise of Mr. Stanley in his capacity as the minister of AYA.

58.     As a result of law enforcement actions against Mr. Villanueva, the Vine of Light Church was forced to close down and cease all religious events because the DEA arrested its leader and seized all of its religious sacrament.  The closure of the Vine of Light Church highlighted the risk to AYA and its members and has chilled the Free Exercise of Mr. Stanley and AYA.

59.     Making the life of visionary church members even more difficult, in addition to seizing all the Ayahuasca it can find, DHS has begun seizing innocuous plants and substances during importation, and launching investigations of individuals based on their mistaken conflation of visionary religion with drug use.  This stigmatization of visionary religion practitioners based on their claimed online purchasing habits is injurious to AYA because it associates its Free Exercise activity with dangerous consequences and unnecessary and perilous interactions with federal law enforcement.

60.     One AYA member was subjected to custodial interrogation by a joint state-federal task force after DHS Agent Smyrnos showed up at her home with a local law enforcement phalanx of large SUVs that flooded the neighborhood, idling menacingly while Agent Smyrnos and his state law partner administered Miranda rights warnings, and interrogated her in her own living room for an hour and half.  All this was done under the observant eyes of the AYA member's young daughter, who occasionally commented on aspects of the coercive atmosphere.  During this custodial interrogation under duress, the AYA member was coerced to disclose the identity of another AYA member.  When

Agent Smyrnos and his state law partner were done interrogating, they jointly told the AYA member that it was her duty to inform on others whom "she knew were doing illegal things."  She was then specifically told that she herself could be prosecuted if she did not inform on her co-religionists.  To do this informing, Agent Smyrnos left the AYA member with his card. By his above-alleged conduct, DHS Agent Smyrnos attempted to corrupt the honesty of an AYA member with false statements about the purported unlawfulness of her conduct.  Since this interaction, the AYA member interrogated by Agent Smyrnos has ceased attending ceremonies, apparently deterred by the hair-raising interaction, that created a stir in the neighborhood, in addition to the invasion of her own life.  AYA has and asserts associational standing to seek a remedy for the constitutional injuries suffered by the said AYA member, so that other AYA members will not be similarly imperiled in their privacy and personal security.  AYA further alleges that the revelation of this individual's identity in this litigation by DHS or Agent Smyrnos or any of the Agency Defendants would impose a substantial burden upon her rights of Free Exercise, and would injure AYA and Mr. Stanley by deterring other AYA members faced with similar investigative tactics aimed at substantially burdening Free Exercise from reporting their encounters to AYA and this Court.

61.    After disrupting the first AYA member's life, Agent Smyrnos began placing calls to the AYA member he had identified in the interrogation of the first member.  He left the second AYA member a voicemail requesting a return call.

62.    AYA's counsel returned the call on behalf of the second AYA member, sent a notice of representation via email explaining the AYA member's church affiliation, and offered to answer whatever questions Agent Smyrnos might have to ask of the second AYA member.  Instead of asking questions, however, Agent Smyrnos asked AYA counsel to tell the AYA members that their importation of a particular plant was a crime under the CSA for which they could face prosecution.  Accordingly, AYA counsel's researched into the scheduling status of the plant, and provided Agent Smyrnos with all three scheduling lists to show that the plant was not a controlled substance in any class.

AYA's counsel then asked Agent Smyrnos via email on what authority he was making the erroneous assertion about risks of federal prosecution from importing this perfectly legal plant. To this email, Agent Smyrnos did not respond. Thus, Agent Smyrnos falsely threatened an AYA member with felony drug prosecution to intimidate her into acting as an informant against other AYA members. Further, since Agent Smyrnos has never admitted that he was making a false threat of prosecution, he and DHS continue to seize plants and substances that are in no way contraband, merely because they are associated with the practice of visionary religion.

63.     Due to encounters such as these, and the fear of having them, many AYA members censor their own speech about their religious beliefs and practices when speaking with some or all of their friends, family, employers, and coworkers. Sixty-nine percent of AYA members are hesitant to tell others about their positive experiences because of questions surrounding the legality of this form of Free Exercise. Fifty-three point nine percent are hesitant to tell family, close friends or associates about Ayahuasca for the same reason.

64.     Plaintiffs' ability to share Ayahuasca with AYA members is substantially burdened by the prohibitions on importing, manufacturing, or dispensing a controlled substance in § 841(a) (2), by the prohibition on importation in § 952(a) of the CSA, and by 21 CFR 1312.11.

65.     Plaintiffs' freedom of assembly is substantially burdened by the DEA's mistaken contention that their ceremonial gatherings to practice Visionary Communion are not genuine, and is merely the profane distribution of a controlled substance.

66.     Many more persons would join AYA and participate in the Visionary Communion ceremony, and will do so when AYA obtains a judicial certificate of exemption that confirms that AYA's practice of Visionary Religion is Free Exercise, and not crime.

67.     The DEA purports to provide an avenue for religious groups like AYA to apply for exemptions from the CSA.

68.     DEA has published a document called "*Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act.*" *Id.*  The Guidance imposes substantial burdens on Plaintiffs, such as requiring applicants to disclose inculpatory information and incur significant financial costs before filing a petition.  Despite imposing these substantial burdens, the Guidance is a sham.  DEA has never granted an exemption under the Guidance.

## VI.     AYA HAS A CONCRETE PLAN TO CONTINUE POSSESSING AND IMPORTING AYAHUASCA FOR USE IN RELIGIOUS CEREMONIES

69.     AYA recently completed construction on its own ceremonial maloka which is located in Arizona.  On January 14, 2022, AYA held its first ceremony at its new ceremonial maloka.

70.     AYA currently holds bi-monthly Ayahuasca ceremonies in the District of Arizona at its maloka.

71.     AYA plans to continue to hold bi-monthly meetings at its maloka in the District of Arizona for the foreseeable future.

72.     AYA plans to serve Ayahuasca to its congregation who are gathering in religious Visionary Communion in its maloka.

73.     AYA plans to continue importing sacramental Ayahuasca from Peru through common carriers for use in AYA's religious ceremonies to be held at its maloka in Arizona on a bi-monthly basis.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1(c)

74.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth herein as if set forth in full hereat.

75.     As practiced by Mr. Stanley and AYA, Visionary Communion is the central ceremony of AYA, during which members can receive the transmission of wisdom and Divine Love that comes through sacramental use of Ayahuasca.  Ayahuasca is a non-addictive substance that has been shown to have beneficial effects on those who use it in

religious ceremonies.  AYA and Mr. Stanley require Ayahuasca to perform the ceremony of Visionary Communion; otherwise, AYA members cannot practice Visionary Communion.

76.     The Plaintiffs' belief that Ayahuasca Communion gives access to direct communication with Divine Love is a legitimate doctrine that addresses central issues of human ethical and philosophical concern at the deepest level, and is thus a religious faith entitled to equal treatment before the law.

77.     Plaintiffs' belief that Ayahuasca Communion gives access to direct communication with Divine Love is sincere.  That sincerity is reflected in the loving care provided to the congregation during ceremony, that reflects the extensive preparation, training, and experience that allows AYA to conduct Visionary Communion ceremonies year after year with results most satisfactory to the congregation, as has been alleged hereinabove.

78.     Plaintiffs offer Visionary Communion only to sincere religious persons with a reverent mindset, who have been screened for contraindicated medical conditions and perform all other requirements, including from specific foods and all psychoactive substances.

79.     The setting of AYA ceremonies evokes religious sentiment in a traditional Amazonian style, during which all gather in a circular space, prayers are made to bless the place and all participants, Ayahuasca is respectfully shared by the lead facilitator, sacred tobacco (mapacho) is offered, sacred songs (icaros) are sung, and the congregation is assisted individually and as a group to see, hear, receive and understand the message of Divine Love.

80.     Plaintiffs are substantially burdened by the prohibitions on manufacturing, distributing, or dispensing a controlled substance in § 841(a)(2), and by the prohibition on importation in § 952(a) of the CSA, that impose criminal penalties for violations.

81.     The effect of the said provisions of the CSA is to coerce AYA and Mr. Stanley to act contrary to their religious beliefs by the threat of criminal sanctions.  The

potential for prosecution under the CSA places substantial pressure on AYA, its Founder, and the congregation to modify their behavior and violate their beliefs, forcing them to choose between either abandoning religious principle or risking criminal prosecution.

82.     Plaintiffs' Free Exercise is substantially burdened by the DEA and DHS application of the CSA and related enforcement statutes and regulations as an absolute bar upon the importation of Ayahuasca by AYA and Mr. Stanley, justifying its seizure and destruction without prior notice to Plaintiffs as importers of Ayahuasca for sacramental use, and without any means of pre- or post-seizure due process to prevent the seizure and destruction of Sacraments that are necessary to Visionary Religion Free Exercise.

83.     Plaintiffs' Free Exercise is substantially burdened by DHS seizure of Sacramental Ayahuasca, first because it interrupts Free Exercise in the same manner as the seizure of their Communion Host would interrupt Free Exercise of a Catholic congregation that practices the Mass, in which the receipt of Communion is transmuted into the Body of Christ.  The Ayahuasca Sacrament is likewise transformed from a simple plant substance to a communion sacrament that AYA and Mr. Stanley sincerely believe brings them into the very presence of the Divine.

84.     Plaintiffs' Free Exercise is substantially burdened by the seizure of the Ayahuasca Sacrament imported by AYA and Mr. Stanley.

85.     Plaintiffs' Free Exercise is burdened when they are placed under investigation by law enforcement because of their religious activity.

86.     By prohibiting their central act of Free Exercise, the CSA's criminal prohibitions impose a severe and substantial burden upon AYA's Free Exercise of religion, and that of its members.  AYA's commercial relationships and ability to contract freely are impaired by the shadow of illegality that falls over the church.  Members of AYA's congregation find themselves at a disadvantage when their credibility and law-abidingness is scrutinized, *i.e.*, when job-seeking, when testifying, as party to a lawsuit, when applying for a passport or visa, license, permit, or in countless other situations.

87.    RFRA Plaintiffs and their members are aggrieved by this situation, that forces them to procure, share and celebrate their communion sacrament secretly, and to risk the loss of liberty and bear an unmerited stain of criminality, in order to engage in the Free Exercise of religion protected by the First Amendment.

88.    Agency Defendants are required to utilize the least restrictive means to accomplish its legitimate interests by granting RFRA Plaintiffs appropriate exemptions from the criminal prohibitions of the CSA on importation, distribution and dispensing of Ayahuasca.  Importation of Ayahuasca requires an Importation Permit issued under 21 CFR 1312.12, a regulatory service available only to DEA registrants who have been assigned a DEA number for use in submitting applications for permits.  Each of the RFRA Plaintiffs needs to be assigned a DEA number to obtain regulatory services necessary to supply sacramental Ayahuasca to its congregation.

89.    Application of § 841(a)(2) and §952(a) of the CSA and related federal regulations to RFRA Plaintiffs is not the least restrictive means for the Agency Defendants to accomplish its interests in preventing the illicit distribution of controlled substances.

90.    RFRA Plaintiffs are entitled to a decree establishing its right to exemptions from the prohibitions on manufacturing, distributing, or dispensing a controlled substance in § 841(a)(2), and by the prohibition on importation in § 952(a) of the CSA.  RFRA Plaintiffs are further entitled to register with the DEA as exempt persons under 21 CFR 1312.11, and to receive all further administrative clearances necessary to eliminate substantial burdens on RFRA Plaintiffs' Free Exercise rights.

91.    If defendants are not enjoined, plaintiffs will suffer irreparable harm for which they have no remedy at law.  The requested injunction will serve the public interest in protecting Free Exercise from prior restraint and *post-hoc* detention, prosecution, and punishment.

92.    Plaintiffs have been damaged by the unconstitutional Policy that has presented the Guidance as a genuine path to regulatory services from the DEA, when in

truth it is merely a blind alley intended to induce visionary churches to misdirect their efforts.

93.     RFRA Plaintiffs, and their congregations and member churches, are substantially burdened by the DEA's use of the Guidance to issue *de facto* demands for disclosure of information that is protected from compelled disclosure by the Fifth Amendment privilege against self-incrimination, and by the First Amendment Establishment Clause prohibition on the Agency Defendants regulatory entanglement in a religion's internal affairs.

94.     There exists a clear and present danger: (1) that AYA and its members may be unlawfully arrested for acts of Free Exercise misconstrued by the Agency Defendants, and DEA in particular, as violations of the CSA, (2) that warrants could be issued for the arrest of Mr. Stanley and AYA members without probable cause, solely for engaging in Free Exercise that is not a crime, and the performance of which cannot give rise to probable cause to believe a crime has been committed, (3) that warrants may be issued allowing the search of Mr. Stanley's property and AYA property without probable cause, , to search for Ayahuasca Sacrament, which it is not a crime to possess for religious purposes, and (4) that AYA's sacramental Ayahuasca will be seized during the importation, manufacturing, or dispensing process, even though it is not a CSA violation for AYA to import Ayahuasca as an act of Free Exercise, and (5) that AYA members may be placed under investigation for criminal activity without reasonable suspicion, due to the refusal of the Agency Defendants to admit that AYA is engaged in Free Exercise when it imports and offers Sacramental Ayahuasca in ceremony with religious purpose.

95.     AYA and its members are aggrieved by this situation, that forces them to procure, share and celebrate their communion sacrament secretly, and to risk the loss of liberty and the personal anguish and humiliation of bearing an unmerited stain of criminality, in order to engage in the Free Exercise of religion protected by the First Amendment.

96.     The Agency Defendants have no compelling interest in prohibiting AYA from using Ayahuasca as a religious sacrament.

97.     Agency Defendants are required to utilize the least restrictive means to accomplish its legitimate interests by granting AYA an exemption from the criminal prohibitions of the CSA on importation, distribution and dispensing of Ayahuasca. Importation of Ayahuasca requires an Importation Permit issued under 21 CFR 1312.12, a regulatory service available only to DEA registrants who have been assigned a DEA number for use in submitting applications for permits.  AYA and Mr. Stanley need to be assigned DEA numbers to obtain regulatory services necessary to supply sacramental Ayahuasca to its congregation.

98.     Application of § 841(a)(2) and §952(a) of the CSA and related federal regulations to AYA is not the least restrictive means for the Agency Defendants to accomplish its interests in preventing the illicit distribution of controlled substances.

99.     AYA is entitled to a decree establishing its right to exemptions from the prohibitions on manufacturing, distributing, or dispensing a controlled substance in § 841(a)(2), and by the prohibition on importation in § 952(a) of the CSA.  AYA is further entitled to register with the DEA as an exempt person under 21 CFR 1312.11, and to receive all further administrative clearances necessary to eliminate substantial burdens on AYA's Free Exercise rights.

## SECOND CLAIM FOR DECLARATORY RELIEF AGAINST ALL DEFENDANTS

### Declaratory Relief, 28 U.S.C. §§ 2201 – 2202

100.     An actual controversy exists between the plaintiffs and the Agency Defendants.  AYA and Mr. Stanley are interested parties to this controversy, and seek a declaration of their respective rights and relations with the Agency Defendants, as further alleged herein below.

101.      Plaintiffs seek a declaration that DEA and DHS's enforcement of the CSA against AYA in a manner that chills their bona fide religious practice violates their constitutional rights to free exercise.  Plaintiffs contend that:

a.      AYA is a religious institution and Visionary Church that seeks to provide its members with spiritual fellowship, healing practices, and communion ceremonies.

b.      Mr. Stanley is a religious person within the meaning of RFRA;

c.      AYA is a religious person within the meaning of RFRA, endowed with the right of self-determination sincerely professing a doctrine of visionary religion whose central practice is communion with Divine Love through drinking sacramental Ayahuasca in sacred ceremony;

d.      Mr. Stanley is the founder of AYA, its minister and chief facilitator in the conduct of AYA religious ceremonies, that are described as "Visionary Communion;"

e.      Plaintiffs' religious sincere belief in the religious character of Visionary Communion has been established by Mr. Stanley's credible and corroborated statements that establish his sincere religious intent and the conduct of his AYA ministry consistent therewith;

f.      During AYA's Visionary Communion ceremonies, church members use Ayahuasca (also known as yagé), an herbal tea, as their religious sacrament;

g.      The CSA has been enforced against AYA and Mr. Stanley on several occasions by the seizure of Sacramental Ayahuasca during importation that continued despite specific request from AYA to the DOJ to cease the seizures and return all seized Sacramental Ayahuasca;

h.      Ayahuasca was designed for religious purposes, is not addictive, nor is it a drug of abuse;

i.      Ayahuasca is not subject to the risks of diversion applicable to other substances regulated by the CSA;

j.     Ayahuasca contains a small amount of DMT, a Schedule I controlled substance under the CSA;

k.     Plaintiffs sincerely believe that the experience of Visionary Communion is the receipt of Divine Love and wisdom by the congregation;

l.     The validity of Plaintiffs' religious belief in Visionary Communion is not subject to scrutiny by the Agency Defendants or this Court;

m.     DEA and DHS have interpreted the CSA to enact a complete ban against the religious sacrament Ayahuasca;

n.     The DEA and DHS apply that complete ban to AYA and Mr. Stanley;

o.     The DEA denies that Plaintiffs' Visionary Communion ceremonies are lawful Free Exercise, and contends their conduct violates the CSA;

p.     Plaintiffs' injury arises from application of the CSA and the designation of DMT as a Schedule I substance;

q.     The Ayahuasca seized by DHS as alleged hereinabove was the lawful property of AYA, imported as an act of Free Exercise, which was not subject to seizure;

r.     Plaintiffs have suffered pecuniary injury due to the DHS four seizures, for which there is no remedy at law, because Sacramental Ayahuasca is costly to import, no claim for damages will lie against DHS or individual DHS agents, and DHS provides no post-deprivation remedy for the seizures;

s.     DHS seizures of Sacramental Ayahuasca are a prelude to further investigation;

t.     It would be futile and an invitation to investigation and prosecution by DHS and the DEA for Plaintiffs to repeat their efforts at importing Sacramental Ayahuasca;

u.     DHS Agent Smyrnos investigated at least two AYA members for importing controlled substances, and sought to turn one of those members into a DHS informant against other AYA members;

v.     Some persons for whom professional licensure and exposure to security background checks make attendance at AYA ceremony attendance dangerous to their

employment, do not attend ceremony despite their desire to engage in this religious practice;

w.     The Agency Defendants have a compelling interest in respecting and protecting the religious freedom of all people within their jurisdiction;

x.     The Agency Defendants' current manner of application of the CSA to Plaintiffs imposes substantial burdens upon Plaintiffs' Free Exercise;

y.     To practice their religion, Plaintiffs are forced to choose between obedience to their religion and exposing themselves to the risk of criminal sanction;

z.     Plaintiffs' importation, possession and sharing of Ayahuasca in Visionary Communion is lawful *ab initio*;

aa.     Plaintiffs' importation, possession and sharing of Ayahuasca in Visionary Communion are not criminal acts, but rather, protected Free Exercise;

bb.     The disclosure of the identity of those two AYA members that were investigated by Agent Smyrnos would impose a substantial burden upon the Free Exercise of AYA and Mr. Stanley;

cc.     The destruction of AYA's Sacramental Ayahuasca injures AYA's rights of Free Exercise by: (a) knowingly profaning their sacrament by disrespectfully destroying it, and (b) forcing AYA and Mr. Stanley to remain silent while their communion sacrament is treated like poisonous refuse;

dd.     AYA's rights of religious Free Exercise, and those of Mr. Stanley, are substantially burdened by the prohibitions on manufacturing, distributing, or dispensing a controlled substance in § 841(a) (2), by the prohibition on importation in § 952(a) of the CSA, and by the Agency Defendants' application of those absolute prohibitions to the Plaintiffs;

ee.     The CSA's absolute prohibition on Mr. Stanley's and AYA's importation and offering of Ayahuasca to its congregation in ceremony is not the least restrictive means of preventing diversion of Ayahuasca to the illicit market.

ff.     The disclosure of the identity of those two AYA members that were investigated by Agent Smyrnos would impose a substantial burden upon the Free Exercise of AYA and Mr. Stanley;

gg.     DHS seizures of Plaintiffs' Sacramental Ayahuasca are substantially certain to continue in the future, if Plaintiffs continue to attempt to import it;

hh.     It would be a futile effort for Plaintiffs to continue trying to import Sacramental Ayahuasca via the postal service;

ii.     Plaintiffs are not required to perform futile acts to establish their entitlement to relief;

jj.     AYA and Mr. Stanley are entitled to exemptions from the prohibitions on manufacturing, distributing, or dispensing a controlled substance in § 841(a) (2), and by the prohibition on importation in § 952(a) of the CSA.AYA and Mr. Stanley are entitled to receive DEA Numbers as exempt religious persons under RFRA, in the same manner as all of the persons 21 CFR 1312.11;

kk.     The DEA, the Agency Defendants' administrative agency, had and has a policy of denying regulatory services to persons seeking exemption from the CSA for purposes of Free Exercise, except where compelled by court order (the "Policy");

ll.     The Policy violates the rights of Mr. Stanley and AYA to receive the equal protection of the laws, because the Policy favors secular exemptions and disfavors religious exemptions from the CSA;

mm.     Due to the DEA's adherence to the Policy, Plaintiffs cannot obtain an exemption from the prohibitions of the CSA and related CFRs;

nn.     In the absence of an injunction to prevent the Agency Defendants from seizing Plaintiffs' Sacramental Ayahuasca, Plaintiffs' Free Exercise will continue to be substantially burdened by the conduct of DHS, DEA, and the other Agency Defendants;

oo.   The fact that the DEA, DHS and DOJ have not initiated a District Court criminal prosecution of the Plaintiffs does not eliminate the danger that such a prosecution could occur;

pp.   The continued risk of prosecution substantially burdens Plaintiffs' Free Exercise;

qq.   Plaintiffs are entitled to injunctive relief and a express judicial exemption from the prohibitions of the CSA and the DEA's erroneous application of it to Plaintiffs;

rr.   The requested injunction will serve the public interest.

102.   Defendants dispute the Plaintiffs' contentions.

103.   Wherefore, there is an actual dispute between the parties that this Court is authorized to adjudicate, and to resolve by issuing a declaration stating the rights and relations of the parties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in its favor and against defendant by the issuance of a decree and an injunction providing that:

1. Plaintiffs' importation use, possession, or transportation of Ayahuasca for *bona fide* religious use in Visionary Communion is lawful *ab initio*, and not a violation of the CSA or the related CFRs.

2. The Agency Defendants' interpretation of the law as a complete ban against AYA's importation and sharing of Ayahuasca in Visionary Communion violates RFRA by substantially burdening Plaintiff's Free Exercise.

3. The Agency Defendants' application of a complete ban on the importation and use of Ayahuasca to Plaintiffs is not the least restrictive means of achieving any compelling interest that the Agency Defendants have asserted.

4. Plaintiffs have established their entitlement to an injunction under RFRA:

    a) Compelling the Agency Defendants to grant AYA a religious exemption from the absolute prohibitions on importation, sharing and using Ayahuasca;

b) Barring the Agency Defendants, most particularly DHS, DEA and DOJ, from initiating any criminal investigation or prosecution against Plaintiffs for the Free Exercise activity of Visionary Communion;

c) Barring the Agency Defendants, and in particular DHS and CBP, from seizing any of Plaintiffs' Sacramental Ayahuasca during the importation process; and,

d) Requiring the Agency Defendants to engage with AYA to establish a system for importing Sacramental Ayahuasca in amounts sufficient to supply the AYA congregation with all of the Sacramental Ayahuasca necessary to conduct ceremonies of Visionary Communion without interference of burden.

PLAINTIFFS FURTHER PRAY:

1. That plaintiffs be awarded their attorney's fees pursuant to 42 U.S.C. § 1988(b).

2. That Plaintiffs be awarded such other and further relief as the Court deems just.


Dated:  May 15, 2022          JOHN SULLIVAN
                              /s/John Sullivan
                              JOHN SULLIVAN
                              Attorney for Plaintiffs
                              Arizona Yagé Assembly and Winfield Scott Stanley III

## __JURY DEMAND__

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial.


Dated:  May 15, 2022                    JOHN SULLIVAN
                                        /s/John Sullivan
                                        JOHN SULLIVAN
                                        Attorney for Plaintiffs
                                        Arizona Yagé Assembly and Winfield Scott Stanley III