BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>      Plaintiffs,<br><br>   v.<br><br>Merrick B. Garland, Attorney General of the United States, *et al.*,<br><br>      Defendants. | No. 2:20-cv-2373-ROS |

**FEDERAL AGENCY DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIFTH AMENDED COMPLAINT [Doc. 159]**

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

BACKGROUND .................................................................................................................. 2

   I.     Regulatory Background ........................................................................................ 2

   II.    The Parties, Procedural History, and Factual Allegations ............................... 4

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ....................................................................................................................... 6

   I.     Plaintiffs' RFRA Claim Should Be Dismissed For Lack Of Standing. ...................... 6

      A.   Plaintiffs Fail to Allege Any Genuine Threat of Imminent Prosecution. ................ 6

      B.   Any Genuine Threat of Imminent Prosecution Would Not Be Fairly Traceable to the Federal Agency Defendants. ........................................................................ 10

      C.   Plaintiffs Fail to Demonstrate Associational Standing. ........................................... 10

   II.    Plaintiffs' RFRA Claim Should Be Dismissed For Failure To State A Claim. .......... 12

   III.   Plaintiffs Should Seek an Exemption from DEA in the First Instance. .................... 14

CONCLUSION ................................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................... 6

*Ass'n of Pub. Agency Customers v. Bonneville Power Admin.,*
    733 F.3d 939 (9th Cir. 2013) ...................................................................... 11

*Cetacean Cmty. v. Bush,*
    386 F.3d 1169 (9th Cir. 2004) .................................................................... 11

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ................................................................................... 6, 7

*Fallon Paiute-Shoshone Tribe v. U.S. Dep't of the Interior,*
    No. 22-15092, 2022 WL 3031583 (9th Cir. Aug. 1, 2022) ....................... 14

*Feldman v. Bomar,*
    518 F.3d 637 (9th Cir. 2008) ...................................................................... 12

*Fleming v. Charles Schwab Corp.,*
    878 F.3d 1146 (9th Cir. 2017) ...................................................................... 6

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) .......................................................................2, 11, 12

*Gonzalez v. Raich,*
    545 U.S. 1 (2005) ....................................................................................... 12

*Harris v. McRae,*
    448 U.S. 297 (1980) ................................................................................... 12

*Headwaters, Inc. v. Bureau of Land Mgmt.,*
    893 F.2d 1012 (9th Cir. 1990) .................................................................... 12

*Hunt v. Wash. State Apple Adver. Comm'n,*
    432 U.S. 333 (1977) ................................................................................... 11

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ..................................................................................... 6

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................................... 6, 10

ii

*McCarthy v. Madigan,*
   503 U.S. 140 (1992) .................................................................................... 15

*Morrison-Knudsen Co. v. CHG Int'l, Inc.,*
   811 F.2d 1209 (9th Cir. 1987) .................................................................... 15

*Multi-Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales,*
   474 F. Supp. 2d 1133 (N.D. Cal. 2007),
   *aff'd*, 365 F. App'x 817 (9th Cir. 2010) ..................................................... 12

*Navajo Nation v. U.S. Forest Serv.,*
   535 F.3d 1058 (9th Cir. 2008) ............................................................. 13, 14

*Nelsen v. King Cnty.,*
   895 F.2d 1248 (9th Cir. 1990) ...................................................................... 7

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder,*
   676 F.3d 829 (9th Cir. 2012) ................................................................ 11, 15

*Perkel v. DOJ,*
   365 F. App'x 755 (9th Cir. 2010) ............................................................... 16

*Rogers v. United States,*
   340 U.S. 367 (1951) .................................................................................... 17

*Rossides v. Gonzales,*
   210 F. App'x 711 (9th Cir. 2006) ................................................................. 8

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) .................................................................. 6, 9

*San Diego Cnty. Gun Rights Comm. v. Reno,*
   98 F.3d 1121 (9th Cir. 1996) ....................................................................... 9

*Short v. Berger,*
   No. CV-22-00444-PHX-DJH, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022),
   *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022) ................................. 11

*Thomas v. Anchorage Equal Rights Comm'n,*
   220 F.3d 1134 (9th Cir. 2000) ....................................................... 6, 8, 9, 11

*United States v. California Care Corp.,*
   709 F.2d 1241 (9th Cir. 1983) .............................................................. 15, 16

*United States v. Friday,*
   525 F.3d 938 (10th Cir. 2008) .................................................................... 14

iii

*United States v. Hugs,*
    109 F.3d 1375 (9th Cir. 1997) ................................................................................. 10

*United States v. Seljan,*
    547 F.3d 993 (9th Cir. 2008) ................................................................................... 8

*United States v. Tawahongva,*
    456 F. Supp. 2d 1120 (D. Ariz. 2006) ................................................................... 14

*United States v. Winddancer,*
    435 F. Supp. 2d 687 (M.D. Tenn. 2006) ................................................................ 10

*W. Radio Servs. Co. v. Qwest Corp.,*
    530 F.3d 1186 (9th Cir. 2008) ................................................................................ 16

*W. Watersheds Project v. Kraayenbrink,*
    632 F.3d 472 (9th Cir. 2011) .................................................................................. 11

**Statutes**

21 U.S.C. § 801 .............................................................................................................. 2

21 U.S.C. § 812(b)(1) ..................................................................................................... 2

21 U.S.C. § 822 ............................................................................................................ 12

21 U.S.C. § 823 .......................................................................................................... 2, 3

21 U.S.C. § 880 .............................................................................................................. 3

42 U.S.C. § 2000bb-1(a) .............................................................................................. 11

42 U.S.C. § 2000bb–1(b) ............................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 9

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 9

**Regulations**

21 C.F.R. § 1301.01 ........................................................................................................ 2

21 C.F.R. § 1301.11 ...................................................................................................... 12

21 C.F.R. § 1301.11(a) .................................................................................................. 13

21 C.F.R. § 1301.31 ......................................................................................................... 2

21 C.F.R. § 1301.90 ......................................................................................................... 3

21 C.F.R. § 1301.71 ......................................................................................................... 3

21 C.F.R. § 1312.11 ......................................................................................................... 4

21 C.F.R. § 1312.15 ......................................................................................................... 4

21 C.F.R. § 1316.01 ......................................................................................................... 3

**Other Authorities**

*Ceremonies*, AYA Guide: Bringing you into the Ayahuasca Ceremony,
   *available at* https://www.aya.guide/ceremonies (last visited Sept. 22, 2022) ........................ 17

U.S. Dep't. of Justice, Guidance Regarding Petitions for Religious Exemption from the Con-
   trolled Substances Act Pursuant to the Religious Freedom Restoration Act, (Feb. 26,
   2018), https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-
   5)%20Guidance%20Regarding%20Petitions%20for%20Religious%20Exemptions.pdf
   (last visited Sept. 23, 2022) ........................................................................... 3, 13

Defendants hereby move to dismiss Plaintiffs' Fifth Amended Complaint, ECF No. 159 ("Fifth Am. Compl."), or in the alternative, stay the case while Plaintiffs pursue a religious exemption from the Drug Enforcement Agency.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' Fifth Amended Complaint should be dismissed both for lack of standing and failure to state a claim. Even at their fifth attempt, Plaintiffs still have not demonstrated standing to bring their Religious Freedom Restoration Act ("RFRA") claim seeking an exemption from the Controlled Substances Act for their ayahuasca. First, they again fail to establish any imminent threat of prosecution; among other reasons, there has not been a *single federal prosecution* for ayahuasca use. Second, any genuine threat of prosecution results not from any action taken by the federal government, but rather, from Plaintiffs' own refusal to seek a religious exemption from the Drug Enforcement Agency (DEA) for their allegedly religious ayahuasca use. Third, Arizona Yagé Assembly (AYA) has not established associational standing on behalf of its members: their Fifth Amended Complaint lacks any allegations establishing the sincerity of AYA members' allegedly religious use of ayahuasca and contains only generalized allegations that its members are substantially burdened by federal drug laws.

Plaintiffs also fail to state a RFRA claim under Rule 12(b)(6). Plaintiffs claim that they are burdened because "DEA and DHS interpret the [CSA] to enact a complete ban against the religious sacrament Ayahuasca." Fifth Am. Compl. ¶ 10, 15. But that is incorrect. DEA's interpretation is *not* that entities with sincerely held religious beliefs face a "complete ban" from religious practices involving controlled substances; rather, DEA invites such entities to request religious exemptions from the Controlled Substances Act (CSA).  DEA has not "failed to provide a RFRA exemption" to AYA; Plaintiffs have failed to seek one. Plaintiffs cannot claim that they are burdened by a non-existent state of affairs, and Plaintiffs have not otherwise adequately alleged that their religious beliefs are substantially burdened by the process for seeking an exemption from the Controlled Substances Act.

Finally, Plaintiffs ask this Court to order DEA to grant a religious exemption that they consistently refuse to request from DEA itself. Accordingly, and as an alternative basis for

resolving this motion, Defendants request that the Court exercise its discretion to decline to review Plaintiffs' claims until after they have sought an exemption from DEA. Doing so would allow DEA the opportunity to evaluate in the first instance whether Plaintiffs are eligible for an exemption, including determining whether Plaintiffs' current importation and distribution procedures adequately protect against the risk of diversion of a controlled substance.

## BACKGROUND

### I.   Regulatory Background

The Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, regulates the use of psychotropic substances, including "Schedule I" controlled substances, the importation and use of which is prohibited due to the high risk of abuse and lack of accepted medical use, *id.* § 812(b)(1).[1] As relevant here, under the CSA, the DEA has authority to register an applicant to import, distribute, or manufacture a Schedule I controlled substance when doing so is consistent with the public interest. *Id.* § 823(b); 21 C.F.R. § 1301.31. The importation and use of Schedule I substances—including dimethyltryptamine (DMT) and substances containing it—are strictly controlled due to the high risk of abuse and lack of accepted medical use. 21 U.S.C. § 812(b)(1).

Through the CSA, Congress created a closed regulatory system to strictly control and monitor the flow of controlled substances in the United States. Under this system, all parties—including health care professionals, pharmacists, medical researchers, and religious adherents—wishing to handle controlled substances must register with DEA. 21 U.S.C. §§ 823, 954; 21 C.F.R. §§ 1301.01-1301.52.  The purpose of this registration system is to ensure that controlled substances are safely handled and properly safeguarded to prevent loss, theft, and diversion to illicit use. 21 U.S.C. §§ 823, 958.

DEA is statutorily authorized to create exemptions from the CSA's prohibitions on the importation, manufacture, and distribution of controlled substances. *Id.* § 823. Prior to *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal* ("*O Centro*"), 546 U.S. 418 (2006), no process

---

[1] This Court's Order dismissing Plaintiffs' Fourth Amended Complaint contains additional background detail. *See* Order at 1-5, ECF No. 153 ("Order"). Defendants refer the Court to this background and incorporate it by reference.

existed for an individual who wished to use ayahuasca for religious purposes to obtain formal permission to do so. That is no longer the case. In the wake of *O Centro,* DEA created a religious-exemption process open to anyone who wishes to obtain a registration to import, export, manufacture, dispense, distribute, use, or possess a controlled substance for religious purposes.[2] As relevant here, this process allows DEA to consider a petitioner's request that she or he be granted a registration to import, distribute, or use a controlled substance for religious purposes or to request other exemptions to the CSA and implementing regulations for religious purposes. Importantly, this process also allows DEA to weigh an individual or organization's proposed safeguards to ensure that the controlled substance will not be diverted to illegal uses and to consider the risks of harm posed by a particular substance.

That is because under the CSA, DEA may only register an applicant to handle a Schedule I substance when doing so is consistent with the public interest. 21 U.S.C. §§ 823, 958. DEA considers several factors in evaluating registration applications, including whether it can be assured that the registrant would maintain effective controls against diversion.[3] For example, the Guidance asks a petitioner to list "each specific religious practice that involves the manufacture, distribution, dispensing, importation, exportation, use or possession of a controlled substance" as well as "the amounts, conditions, and locations of its anticipated manufacture, distribution, dispensing, importation, exportation, use or possession." DEA Guidance. When a party applies for a registration, a DEA diversion investigator conducts an investigation. Decl. of Claude M. Redd ¶¶ 7-9, ECF No. 144-1 ("Redd Decl.") (discussing factors considered by DEA and purpose of investigation). DEA confirms through interviews and on-site visits that

---

[2] U.S. Dep't. of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, (Feb. 26, 2018) https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)%20Guidance%20Regarding %20Petitions%20for%20Religious%20Exemptions.pdf (last visited Sept. 23, 2022) (DEA Guidance).

[3] DEA regulations require, *inter alia*, security, storage, and theft/loss avoidance measures, 21 C.F.R. §§ 1301.71-1301.76, record-keeping and inventory regarding importation, receipt, distribution, and disposal of controlled substances, *id.* §§ 1304.21-1304.22, DEA access for inspections and audits, 21 U.S.C. § 880; 21 C.F.R. §§ 1316.01-1316.13, and employee screening procedures, 21 C.F.R. §§ 1301.90-1301.93.

the applicant is familiar with, and likely to abide by, its responsibilities to prevent diversion, such as on-site security measures, and understands record-keeping, auditing, and inspection requirements. *Id.* ¶ 9. When an application is approved, DEA issues a Certificate of Registration. Decl. of Stephen M. (Mark) Via ¶ 5, ECF No. 144-2 ("Via Decl."); Redd Decl. ¶ 11.

A DEA registrant wishing to import controlled substances must apply for an import permit each time it wishes to import controlled substances, and the approved permit must accompany the shipment into the United States. 21 C.F.R. §§ 1312.11-1312.14, 1301.34; Redd Decl. ¶ 12; Via Decl. ¶ 5. This permitting process allows Customs and Border Patrol (CBP) to track controlled substances entering the United States. Decl. of Gerald Hinkle ¶ 10, ECF No. 144-3 ("Hinkle Decl.").

CBP is charged with advancing our nation's compelling interest in protecting its borders, including by preventing the unlawful importation of scheduled substances. *Id.* ¶ 9 (discussing CBP's role in the closed regulatory system). CBP relies on DEA's importation permitting system, and the information DEA shares with CBP as part of that system, to ensure only lawfully imported controlled substances enter the country. *Id.*; Redd Decl. ¶ 13 (describing tracking information). When a DEA-authorized shipment arrives at a port of entry, CBP verifies that that the importer is registered, that the permit is valid and accurate, and that the shipment is not greater than that authorized by DEA. Hinkle Decl. ¶ 7. CBP also inputs the entry into a customs database, memorializing the amount received, country of origin, and other information. Via Decl. ¶ 9. CBP is authorized to deny release of a shipment if, for example, the shipment exceeds the import permit's limits or contains additional substances not authorized by the permit. Redd Decl. ¶ 12; Hinkle Decl. ¶ 8. If CBP intercepts a non-permitted Schedule I controlled substance, CBP will seize the shipment, and it will be forfeited. 21 C.F.R. § 1312.15; Hinkle Decl. ¶ 8.

**II. The Parties, Procedural History, and Factual Allegations**

Plaintiffs initially filed a lawsuit in 2020 asserting, among other things, "a right to import and use ayuahuasca for religious purposes." Order at 2. Two years later, this Court dismissed Plaintiffs Fourth Amended Complaint. *See* Order at 2-3. Specifically, the Court dismissed

Plaintiffs' challenge to the Guidance under the Administrative Procedure Act (APA) without leave to amend, finding that Plaintiffs lacked standing to challenge the Guidance because it "has not caused an actual or imminent injury," and because "they have not participated in the exemption process." *Id.* at 8-9. The Court also dismissed Plaintiffs' RFRA[4] claim because they "failed to demonstrate a risk of imminent prosecution by the federal government." *Id.* at 10. The Court also dismissed Plaintiffs' claim for declaratory relief. *Id.* at 12. Finally, the Court also dismissed Plaintiffs' 42 U.S.C. § 1983 claim against DEA.  *Id.* at 13-15.

On May 15, 2022, Plaintiffs AYA and Winfield Scott Stanley III, in his capacity as Founder and Director of AYA, filed a Fifth Amended Complaint, ECF No. 159, asserting claims under RFRA and the Declaratory Judgement Act ("DJA"). Fifth Am. Compl. ¶¶ 74-99 (RFRA claim); ¶¶ 100-103 (DJA claim). Plaintiff AYA alleges it is a religious institution (a "Visionary Church") which practices communion by ingesting ayahuasca, a tea brewed from plants and containing the Schedule I controlled substance DMT. *Id.* ¶ 8. Since the Court's dismissal of this case, AYA has not sought a registration from DEA for their allegedly religious ayahuasca use, although they previously considered doing so. *See* ECF Nos. 163, 169. AYA alleges, not-withstanding DEA's exemption process, that "the DEA and DHS interpret the [CSA] to enact a complete ban against the religious sacrament Ayahuasca." Fifth Am. Compl. ¶ 10. As relief, Plaintiffs seek a "decree" and "injunction" providing that: their "importation, use, possession, or transportation of Ayahuasca for *bona fide* religious use in Visionary Communion is lawful *ab initio*, and not a violation of the CSA or related CFRs"; that the federal government's alleged "interpretation of the law as a complete ban against AYA's importation and sharing of Aya-huasca in Visionary Communion violates RFRA by substantially burdening Plaintiff's Free Exercise"; and that the government's "application of a complete ban on the importation and use of Ayahuasca to Plaintiffs is not the least restrictive means of achieving any compelling interest that the Agency Defendants have asserted." *Id.*, Prayer for Relief ¶¶ 1-3.

---

[4] RFRA, 42 U.S.C. § 2000bb–1(b), provides that the federal government may not substan-tially burden a person's sincere exercise of religion, unless doing so is the least restrictive means of advancing a compelling interest.

1  **LEGAL STANDARD**

2      Under Rule 12(b)(1), the plaintiff bears the burden of establishing that subject-matter ju-

3  risdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule

4  12(b)(1) attacks can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

5  Cir. 2004). Under Rule 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim

6  upon which relief can be granted," including if the complaint fails to allege enough facts to

7  state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8  **ARGUMENT**

9  **I.  Plaintiffs' RFRA Claim Should Be Dismissed For Lack Of Standing.**

10      A.  <u>Plaintiffs Fail to Allege Any Genuine Threat of Imminent Prosecution.</u>

11      Plaintiffs ask the Court to enter an injunction ordering DEA to "grant AYA a religious

12  exemption" from enforcement of the CSA's prohibitions on importing, manufacturing, and

13  distributing ayahuasca. Fifth Am. Compl., Prayer for Relief ¶ 4.a. Plaintiffs claim they are en-

14  titled to this relief because, they allege, "[t]here exists a clear and present danger" that AYA

15  and its members "may be" subject to investigation, arrest, and other law enforcement actions

16  for their importation, possession, or use of ayahuasca. *Id.* ¶ 94.

17      To demonstrate Article III standing, a Plaintiff must show that each provision he chal-

18  lenges has caused him a concrete and particularized "injury in fact" that is "actual or imminent,

19  not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned

20  up). To establish an injury-in-fact to support a claim for injunctive relief, "[p]ast exposure to

21  illegal conduct does not in itself show a present case or controversy." *Fleming v. Charles Schwab*

22  *Corp.*, 878 F.3d 1146, 1151 n.1 (9th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95,

23  102 (1983)). Instead, there must be a "sufficient likelihood that [the plaintiff] will again be

24  wronged in a similar way." *Lyons*, 461 U.S. at 111. Where, as here, the allegedly feared future

25  harm is prosecution, there must be a "genuine threat of imminent prosecution," and "neither

26  the mere existence of a proscriptive statute nor a generalized threat" is sufficient. *Thomas v.*

27  *Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

28      Prior to transfer, Judge Orrick observed that "plaintiffs have not shown [for their RFRA

6

claim], as they must to obtain a pre-enforcement injunction, that there has been any realistic, imminent threat of prosecution or enforcement action by the federal government." Order at 23, ECF No. 57. This Court dismissed Plaintiffs' RFRA claim in the Fourth Amended Complaint, finding "Plaintiffs have failed to demonstrate they have standing to seek a prospective injunction or declaratory relief" because Plaintiffs "have failed to allege a 'concrete plan' to violate the CSA." Order at 11. Despite being given the opportunity to amend, Plaintiffs Fifth Amended Complaint again fails for three reasons.

*First*, Plaintiffs largely rely on claims of past harm. *See* Fifth Am. Compl. ¶¶ 55-61. But "the Supreme Court has concluded that past exposure to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1251 (9th Cir. 1990); *Lyons*, 461 U.S. at 108. And even if past harm could suffice, the alleged May 19, 2020 search of Villanueva's home, Fifth Am. Compl. ¶¶ 55-58, cannot support Plaintiffs' claims of future harm *by Defendants*. Although Plaintiffs describe the search as a "joint federal/state task force raid," this Court has already found that DEA Agent Marco Paddy's "passing along [of a] tip was the federal government's only involvement in the operation against Villanueva," and that, as a result, Plaintiffs' previous complaint "failed to adequately allege a conspiracy between local law enforcement and the DEA to target Villanueva." Order at 14 & n.14.[5] And the operative complaint—which, unlike the previous complaint, does not assert a 42 U.S.C. § 1983 claim—omits most of the allegations in which Plaintiffs attempted to ground a federal-state conspiracy. Accordingly, Plaintiffs' allegation that "[b]ased on Mr. Villanueva's experience, AYA members reasonable believe that DEA will investigate and/or arrest them for freely exercising their religion," Fifth Am. Compl. ¶ 55, is not credible.

---

[5] Plaintiffs' allegation that "DEA arrested [Villanueva]" is disputed by evidence Plaintiffs put into the record. *See, e.g.*, Decl. of Winfield Scott Stanley III in Supp. of Pls.' Mot. for Prelim. Inj. ¶¶ 30-32, ECF No. 140-1 (stating that Villanueva was "arrested . . . on a Maricopa County Superior Court felony warrant based on the May 19, 2020 HIDTA raid that is the subject of the Section 1983 claim alleged in three successive iterations of the complaint" in this case).

The Department of Homeland Security's (DHS) alleged seizures of AYA's imported aya-huasca at the border, Fifth Am. Compl. ¶¶ 40-46, are also insufficient. The seizures alone cannot establish any genuine threat of imminent prosecution by the Department of Justice. DHS has broad authority to inspect all packages entering the United States without any indi-vidualized suspicion, *United States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008), and AYA does not claim that the seizures—which began more than two years ago, Fifth Am. Compl. ¶ 40, and most recently occurred in December 2020, *id.* ¶ 46, more than 20 months ago and nearly six months before Plaintiffs' previous complaint—owed to any investigation aimed at them. Instead, the seizures result from Plaintiffs' refusal to obtain a registration and necessary import permits from DEA, without which importation of controlled substances is illicit and subject to seizure by DHS as a matter of course upon discovery.

**Second**, Plaintiffs fail to allege that Defendants "have communicated a specific warning or threat to initiate proceedings" against them. *Thomas*, 220 F.3d at 1139; *see Rossides v. Gonzales*, 210 F. App'x 711, 712 (9th Cir. 2006) (explaining that there is no standing where "[n]o prose-cuting authorities have ever communicated a specific threat or warning to initiate proceedings against [plaintiff]"). Rather, Plaintiffs' allegations involve communications that are, at most, "generalized threat[s]." Fifth Am. Compl. ¶ 62. *Thomas*, 220 F.3d at 1139.

Specifically, Plaintiffs allege that "DHS" has "seiz[ed] innocuous plants and substances during importation, and launch[ed] investigations of individuals based on their mistaken con-flation of visionary religion with drug use," Fifth Am. Compl. ¶ 59, and threatened prosecu-tion, *id.* ¶¶ 60, 62, and that, as a result of such activities, an "AYA member . . . has ceased attending ceremonies, apparently deterred" by the interaction with law enforcement, *id.* ¶ 60. But the attached Declaration of Special Agent Alexander Smyrnos, Homeland Security Inves-tigations, U.S. Immigration and Customs Enforcement, DHS, undermines Plaintiffs' conspir-atorial narrative. As described in the Declaration, two parcels were separately intercepted by CBP, both containing mescaline, a Schedule I controlled substance, Smyrnos Decl. ¶ 2; that Agent Smyrnos interviewed the individual because she was listed as the consignee of the mes-

caline-containing packages, *id.* ¶ 3; and that Agent Smyrnos only became aware of AYA's existence (and thus that its activities involved ayahuasca) when the individual stated that she had participated in ayahuasca ceremonies at AYA, *id.* ¶ 6.[6] As Agent Smyrnos' testimony shows, his references to "federal crime," "violat[ions of] federal law," and "legal action," *see id.* at Ex. A., do not rise to the level of "genuine threat[s] of imminent prosecution," but are, rather, references to "the mere existence of a proscriptive statute," and, at most, "generalized threat[s]" which cannot support standing for a pre-enforcement challenge. *Thomas*, 220 F.3d at 1139; *see also San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (citing cases for proposition that "a general threat of prosecution is not enough to confer standing").

Even if the Court disagreed and found plausible Plaintiffs' allegations that Agent Smyrnos "threatened an AYA member with felony drug prosecution," Fifth Am. Compl. ¶ 62, the substance at issue in Agent Smyrnos' interactions with the AYA member was *not ayahuasca*—the only controlled substance as to which Plaintiffs assert rights under RFRA—but *mescaline*. And even assuming *arguendo* that RFRA entitles Plaintiffs to use ayahuasca prospectively, such would not grant Plaintiffs immunity from federal drug prosecution—or vest them with a constitutional injury based on a fear of prosecution—for handling *other* controlled substances.

**Third and finally**, Plaintiffs point to no past prior federal prosecutions for ayahuasca use, further undermining their claims that they face a genuine threat of imminent prosecution. *See Thomas*, 220 F.3d at 1140. The lack of prosecution is telling, given that AYA has allegedly operated as a visionary church that distributes ayahuasca since 2015, Fifth Am. Compl. ¶ 19, and that Plaintiffs do not allege that any of the AYA members mentioned in the Complaint,

---

[6] Defendants offer the Smyrnos Declaration in support of its arguments for dismissal under Fed. R. Civ. P. 12(b)(1), and do not rely on it in arguing for dismissal under Fed. R. Civ. P. 12(b)(6). To resolve a "factual attack" to jurisdiction, in which, as here, the defendant "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

including Stanley, have faced prosecution, notwithstanding federal law enforcement's aware-

ness of their involvement with AYA. Fifth Am. Compl. ¶¶ 42, 45-46, 55-62.

B. <u>Any Genuine Threat of Imminent Prosecution Would Not Be Fairly Traceable to the Federal Agency Defendants.</u>

Even if each Plaintiff could establish an injury-in-fact as to each of the CSA provisions for

which they demand a RFRA exemption, they would still lack standing. Plaintiffs must also

show that any injury is "fairly traceable to the challenged action of the defendant." *Lujan*, 504

U.S. at 560 (cleaned up). As the Ninth Circuit and other courts have held, criminal defendants

lack standing to assert a RFRA defense to prosecution where they could have applied for a

permit to engage in the otherwise illegal activity, and yet failed to do so. *See, e.g.*, *United States

v. Hugs*, 109 F.3d 1375, 1378 (9th Cir. 1997); *United States v. Winddancer*, 435 F. Supp. 2d 687,

693 (M.D. Tenn. 2006).

Similarly here, any genuine threat of imminent criminal prosecution would be the result of

Plaintiffs' own refusal to seek from DEA the exemption for which they claim to qualify. *See,

e.g.*, Fifth Am. Compl. ¶¶ 90, 99. Second, seeking an exemption does not implicate the Fifth

Amendment's self-incrimination clause. *Id.* ¶ 93. Plaintiffs provide no basis for this assertion

and do not allege that any person has been subjected to criminal process on the basis of an

exemption application. In any event, Plaintiffs now freely admit to years of numerous viola-

tions of the CSA. *See, e.g.*, *id.* ¶¶ 19, 42, 45-46; *see also* Fourth Am. Compl. ¶¶ 5, 39, 43, 104,

139, 140, ECF No. 109; Defs.' Opp'n to Mot. for Prelim. Inj. 7, ECF No. 49.

C. <u>Plaintiffs Fail to Demonstrate Associational Standing.</u>

Plaintiff AYA appears to assert associational standing on behalf of its members. *See* Fifth

Am. Compl. ¶ 10 ("AYA and its members are substantially burdened by laws prohibiting im-

portation, distribution, and possession of Ayahuasca"); *id.*, Prayer for Relief 4.d. (seeking an

order to establish a system for importing ayahuasca "in amounts sufficient to supply the AYA

congregation"). An association may bring suit on its members' behalf when: "(a) its members

would otherwise have standing to sue in their own right; (b) the interests it seeks to protect

are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Because Plaintiffs do not satisfy the first or third factor, they fail to demonstrate associational standing to sue on behalf of AYA's members.

As explained *supra,* the Complaint is devoid of allegations that any AYA member, or even Plaintiff Stanley, faces the requisite "genuine threat of imminent prosecution." *Thomas*, 220 F.3d at 1139. Thus, AYA fails to establish that "at least one of [its] members has 'suffered sufficient injury to satisfy the case or controversy requirement of Article III.'" *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 949 (9th Cir. 2013) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)); *see also W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 483 (9th Cir. 2011).

Second, Plaintiffs' RFRA claim "requires the participation of individual members in the lawsuit," *Hunt*, 432 U.S. at 343, and cannot be brought in a representative capacity. RFRA requires the Court to identify the contours of "*a person's*" sincere religious belief to determine whether it is substantially burdened and, if so, to decide whether the "application of the burden *to the person*" is justified. 42 U.S.C. § 2000bb-1(a)-(b) (emphasis added); *see also O Centro*, 546 U.S. at 430-31 (explaining that RFRA contemplates "an inquiry more focused than [a] categorical approach" because it requires "application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened"); *Short v. Berger*, No. CV-22-00444-PHX-DJH, 2022 WL 1203876, at *12 (D. Ariz. Apr. 22, 2022), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022) (RFRA "analysis requires the government to consider its actions as applied 'to the person' who is affected"). The Complaint lacks any allegations establishing the sincerity of AYA members' allegedly religious exercise in ayahuasca, *contra Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 839 (9th Cir. 2012) ("[T]he members of Oklevueha would have standing to sue in their own right because, according to the complaint, they *all* use marijuana as a regular and *integral part of their religious practice*." (emphasis added)), and contains only generalized allegations that AYA's members are "substantially burdened" by federal drug laws, *see* Fifth Am. Compl. ¶ 10. "It is thus clear that

11

the participation of [AYA's] individual members . . . is essential to a proper understanding and resolution of their" RFRA claim, such that AYA lacks standing to bring such a claim on its members' behalf. *Harris v. McRae*, 448 U.S. 297, 321 (1980) (discussing need for individual member participation in closely related First Amendment free exercise context); *see also id.* ("[I]t is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion," and thus "the participation of individual members . . . is essential to a proper understanding and resolution of their free exercise claims.").[7]

## II.   Plaintiffs' RFRA Claim Should Be Dismissed For Failure To State A Claim.

Plaintiffs' RFRA claim also fails to state a claim upon which relief could be granted.  RFRA requires a threshold showing that "application of the Controlled Substances Act would (1) substantially burden (2) a sincere (3) religious exercise." *O Centro*, 546 U.S. at 428. Notwithstanding yet another opportunity to amend its complaint, AYA still misses the mark, falling short of that threshold showing. AYA fails once again to demonstrate how DEA's registration process substantially burdens its allegedly sincere exercise of religion, as RFRA requires. *See Multi-Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1145 (N.D. Cal. 2007), *aff'd*, 365 F. App'x 817 (9th Cir. 2010).

To start, AYA frames its complaint with a mischaracterization of the alleged burden it faces. AYA claims that they are burdened "because the DEA and DHS interpret the [CSA] to enact a complete ban against the religious sacrament Ayahuasca." Fifth Am. Compl. ¶ 10. That is incorrect. In general, the CSA and its implementing regulations create a closed regulatory system under which dangerous substances are strictly controlled. *See infra* at 2-4; *see also Gonzalez v. Raich*, 545 U.S. 1, 13-14 (2005). At the heart of that system is DEA's registration process. *See infra* 2-4; *see also, e.g.*, 21 U.S.C. §§ 822; 21 C.F.R. §§ 1301.11-1301.37.  Religious claimants may petition DEA for a registration and receive exemptions from specific provisions of the

---

[7] Because Plaintiffs lack standing to assert their RFRA claim, as this Court previously concluded, they also lack standing to assert a claim for declaratory relief.  Order at 12-13 (citing *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1990)).

CSA and its implementing regulations. *See* DEA Guidance. For *any* group, Congress's general prohibition on the unregistered handling of controlled substances—including Schedule I substances—remains in place until an applicant requests, and later receives, that exemption. *See* 21 C.F.R. § 1301.11(a) ("Every person who manufactures, distributes, dispenses, imports, or exports any controlled substance . . . shall obtain a registration unless exempted by law or pursuant to §§ 1301.22 through 1301.26."). Plaintiffs summarily and generally claim they are burdened by the CSA's prohibitions, *see* Fifth Am. Compl. ¶ 10, but they do not assert that that any member has been forced to stop practicing their religion as a result. At most, AYA asserts that one member "ceased attending ceremonies" as she was "apparently deterred" by an interview with Agent Smyrnos. *Id.* ¶ 60. But this speculative allegation, even if true, is not sufficient: any fear resulting from an interview concerning illicit parcels of mescaline, Smyrnos Decl. ¶ 3, is not reasonably related to DEA's treatment of ayahuasca. In any event, no AYA member, including the one described in the complaint, has come forward as a Plaintiff.

The relevant question in this case, then, is whether a petitioning DEA for a RFRA exemption from the CSA through the registration process imposes a substantial burden. *See* Fifth Am. Compl. ¶ 68 ("The Guidance imposes substantial burdens on Plaintiffs . . . ."); *id.* ¶ 93 ("RFRA Plaintiffs . . . are substantially burdened by the DEA's use of the Guidance . . . ."). To survive a motion to dismiss, AYA must adequately plead that it would be "coerced to act contrary to [its] religious beliefs" in petitioning for a RFRA exemption. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008) (en banc). With its latest complaint, AYA has once again failed to make that showing.

Fundamentally, AYA does not allege how DEA's exemption process substantially burdens its sincere beliefs, particularly because AYA will need to demonstrate sincerity regardless of whether this matter proceeds by submitting a petition to DEA or through litigation. AYA states only that "RFRA Plaintiffs . . . are substantially burdened" because it demands "disclosure of information that is protected from compelled disclosure by the Fifth Amendment privilege against self-incrimination, and by the First Amendment Establishment Clause prohibition on the Agency Defendants regulatory entanglement in a religion's internal affairs." Fifth

Am. Compl. ¶ 93. Neither assertion regarding the disclosure of information—including the potential for inculpatory information being disclosed to DEA and the potential for "regulatory entanglement" between AYA and DEA—shows how or why the exemption process impugns on *religious exercise. See, e.g., United States v. Tawahongva*, 456 F. Supp. 2d 1120, 1132 (D. Ariz. 2006) (finding that RFRA plaintiff not substantially burdened "by the requirement that he acquire a permit"); *United States v. Friday*, 525 F.3d 938, 947-48 (10th Cir. 2008) ("We are skeptical that the bare requirement of obtaining a permit can be regarded as a 'substantial burden' under RFRA[.]"). The exemption process, after all, does not threaten civil or criminal sanctions or otherwise force AYA to act contrary to its religious beliefs. And, in any event, that standard is not an easy one to satisfy. *See, e.g., Fallon Paiute-Shoshone Tribe v. U.S. Dep't of the Interior*, No. 22-15092, 2022 WL 3031583, at *4 (9th Cir. Aug. 1, 2022) ("Even [the] 'spiritual desecration' of a sacred area does not constitute force or coercion needed to show a substantial burden under this standard." (alterations omitted)). Here, AYA fails to plead how the exemption process bears on its sincere beliefs—much less how the exemption process "coerce[s] [it] to act contrary to [its] religious beliefs." *Navajo Nation*, 535 F.3d at 1069-70.

AYA briefly alleges more specific burdens—but all of them stem from the fact that it has not sought a DEA registration. Take, for example, AYA's allegation that it is "unable to hold ceremonies because its Ayahuasca was seized and destroyed by DHS and/or CBP." *See* Fifth Am. Compl. ¶ 52; *see also id.* ¶¶ 55, 64-65. To start, the record belies that contention: AYA has admitted that it has held ayahuasca ceremonies for years and continues to do so. But in any event, CBP acts pursuant to the closed regulatory system under which no controlled substances may be imported by *any* party without an import permit. AYA has not sought such a permit, and thus, AYA has not been denied such a permit. If AYA obtained a registration through the RFRA exemption process, it could obtain import permits.

## III.   Plaintiffs Should Seek an Exemption from DEA in the First Instance.

As an alternative basis for resolving the instant motion, the Court should exercise its discretion to decline to review AYA's claims at this juncture. Plaintiffs ask the Court to order DEA to grant a religious exemption that Plaintiffs have thus far not requested from DEA

itself. Plaintiffs maintain that they are "burdened by the Government's *failure* to provide a RFRA exemption under the CSA's implementing regulations to allow for Free Exercise." *Id.* ¶ 39 (emphasis added). But DEA has not "fail[ed] to provide a RFRA exemption"; Plaintiffs have failed to seek one. As a matter of sensible governance and judicial economy, DEA should be afforded the opportunity in the first instance to evaluate Plaintiffs' eligibility for such an exemption, including determining whether Plaintiffs' current importation and distribution procedures adequately protect against the risk of diversion of a controlled substance. And Plaintiffs themselves seek an injunction under RFRA "[r]equiring the Agency Defendants to engage with AYA to establish a system for importing Sacramental Ayahuasca." *Id.*, Prayer for Relief, 4.d. Dismissing the instant complaint without prejudice—or staying the case until Plaintiffs complete the administrative process—strikes the proper balance between "the agency's interest in applying its expertise, correcting its own errors, making a proper record, and maintaining an efficient, independent administrative system" and Plaintiffs' interest "in finding adequate redress." *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987).

The Court should therefore exercise its discretion not to hear Plaintiffs' claims because they have yet to request an exemption from DEA. Courts have discretion to decline to exercise review on administrative exhaustion grounds even when the governing statutes and regulations do not make exhaustion mandatory. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Even though the Court is not *required* to dismiss in light of Plaintiffs' failure to exhaust their available administrative remedies, *see* Order at 7–8 (citing *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012)), an order deferring further litigation until the administrative process has run its course is warranted, *see United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (outlining factors justifying a court's discretionary power to require administrative exhaustion).

Such an order is proper for at least three reasons. First, DEA has the "agency expertise" in diversion prevention "to generate a proper record and reach a proper decision" regarding possible accommodations that would both ensure that sincere religious exercise is not substantially burdened and that controlled substances are not diverted to improper, secular uses.

*See id.*; *see also W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1201 (9th Cir. 2008) ("The agency is thus much better situated than the district court to 'mak[e] a proper record' and determine the facts" at issue.). The traditional tools of civil discovery—which are comparatively burdensome and inflexible—are a poor substitute for DEA's pre-investigation process. To provide DEA with the material it needs to make an informed decision about Plaintiffs' eligibility for a religious exemption, and to generate a complete record for possible judicial review in the court of appeals, DEA should be afforded the opportunity to create an administrative record in the first instance. Second, allowing an entity that is seeking a RFRA exemption from DEA to skip the straightforward step of requesting one from DEA "would encourage the deliberate bypass of the administrative scheme" that DEA has established to grant eligible entities such exemptions. *See California Care Corp.*, 709 F.2d at 1248. Third, requesting an exemption from DEA may "preclude the need for judicial review," preserving the resources of the parties and the Court. *See id.* Either DEA will grant Plaintiffs' exemption request, obviating the need for any further judicial review, or DEA will deny the request and Plaintiffs will be entitled to seek review of that denial before the court of appeals on a fully developed record. *See, e.g., Perkel v. DOJ*, 365 F. App'x 755, 755-56 (9th Cir. 2010). Both scenarios conserve judicial resources.

As the Court is aware, Defendants proposed resolving this matter without further litigation, Joint Mot. for Partial Interim Stay ¶ 4, ECF No. 163, and sought to come to agreement on a framework that would "permit further investigation into . . . AYA's request for a religious exemption," similar to the process that DEA utilizes when other entities seek RFRA exemptions, Joint Statement ¶ 2, ECF No. 169.

Plaintiffs have thus far declined to request an exemption from DEA in part because they believe DEA "demands [the] disclosure of information that is protected from compelled disclosure by the Fifth Amendment privilege against self-incrimination." Fifth Am. Compl. ¶ 93. Plaintiffs' passing reference to the Fifth Amendment is insufficient to decline to even begin the exemption request process. Plaintiffs do not explain how providing responses to DEA's questions would constitute "compelled" testimony. U.S. Const., amend. V. Nor do Plaintiffs

identify any line of inquiry to which the privilege against self-incrimination would be validly invoked. In any event, Plaintiffs themselves allege that they have already "share[d]" the details of "their religion in the broad light of day," Fifth Am. Compl. ¶ 19, including describing past conduct that violates the CSA absent a RFRA exemption, *see id.* ¶¶ 69-73 (describing importation and distribution practices). As with its descriptions of past conduct, AYA is also open about its future intentions. *See id.* ¶¶ 69-73 (alleging that AYA "plans to continue to hold bimonthly meetings at its maloka in the District of Arizona for the foreseeable future," "plans to continue to serve Ayahuasca to its congregation," and "plans to continue importing sacramental Ayahuasca from Peru"). Indeed, AYA's website advertises the dates and pricing of ceremonies involving ayahuasca (as well as kambo, which Plaintiffs do not mention in their Complaint) in October and November 2022. *See Ceremonies*, AYA Guide: Bringing you into the Ayahuasca Ceremony, *available at* https://www.aya.guide/ceremonies (last visited Sept. 22, 2022) (stating that the October 21-23 ceremonies cost $795). Should the Court deny Defendants' instant motion, AYA would be required in the course of civil discovery to provide further details of its importation and distribution practices in order to secure the RFRA exemption they seek as a remedy from this Court. *See Rogers v. United States*, 340 U.S. 367, 373 (1951) ("[F]ederal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details.").

Therefore, as an alternative grounds for resolving the instant motion, the Court should dismiss Plaintiffs' complaint without prejudice in light of Plaintiffs' failure to request from DEA the exemption they seek here. As an alternative remedy, the Court should stay this litigation while Plaintiffs initiate the administrative exemption process.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion to dismiss or, in the alternative, stay the case while AYA pursues a religious exemption from DEA.

Dated: September 23, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Lisa Newman*
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2022, I electronically transmitted the foregoing Federal Agency Defendants' Motion to Dismiss Plaintiffs' Fifth Amended Complaint [Doc. 159] to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

*/s/ Lisa Newman*
LISA NEWMAN