JOHN SULLIVAN (CSB#204648)
17532 Miranda Street
Encino, CA 91316
Tel:818-769-7236
Email:Sullivan.John84@gmail.com

CHARLES CARREON (CSB#127139)
Admitted *Pro Hac Vice*
305 Cuprite St.,
P.O. Box 284
Tyrone, NM 80065
928-975-2191
Email: chascarreon@gmail.com

Attorney for Plaintiffs Arizona Yagé Assembly
and Winfield Scott Stanley

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Arizona Yagé Assembly, Winfield Scott
Stanley, in his capacity as Founder and
Director of Arizona Yagé Assembly,

        Plaintiffs,

   vs.

Merrick Garland, Attorney General of the
United States, *et al.*,

        Defendants.

Case No.:20-CV-02373-ROS

**PLAINTIFFS ARIZONA YAGE ASSEMBLY AND
WINFIELD SCOTT STANLEY'S OPPOSITION TO THE
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**I.  PLAINTIFFS HAVE CLEARLY ESTABLISHED A PRIMA FACIE RFRA CLAIM** .................................................................................................... 1

   A.  Plaintiffs' use of Ayahuasca is an Exercise of Religion ......................... 1

   B.  Plaintiffs' Free Exercise is Substantially Burdened by the CSA's Total Prohibition on Ayahuasca Use and Importation ........................................ 3

**II. PLAINTIFFS HAVE STANDING TO MAKE A PRE-ENFORCEMENT CHALLENGE** ....................................................................................................... 5

   A.  Plaintiffs Have Sufficiently Alleged a "Concrete Plan." ....................... 6

   B.  Plaintiffs Have Established a Specific Warning or Threat to Initiate Enforcement Proceedings ....................................................................................... 6

   C.  Plaintiffs have established a history of past prosecution or enforcement under the statute ........................................................................................................ 8

**III.  DEA HAS NO AUTHORITY OVER AYA'S RFRA CLAIM; ACCORDINGLY, THE GUIDANCE IS IRRELEVANT TO WHETHER PLAINTIFFS STATED A CLAIM UNDER RFRA** .................................................. 9

   A.  RFRA Does not Require Plaintiffs to Participate in DEA's *Ultra Vires* Petition Process That Has No Clear Timelines and Has Never Resulted in an Exemption 10

   B.  The DEA May Not Prevail on This Motion by Arguing that the Guidance is the Least Restrictive Means Required by RFRA ........................................ 12

   C.  The Guidance Imposes its Own Substantial Burden ............................. 12

**IV. THE SMYRNOS DECLARATION RAISES NO JURISDICTIONAL ISSUES RESOLVABLE ON THIS MOTION** .............................................................. 13

   A.  Under *Safe Air,* the Federal Defendants' Rule 12(b)(1) Motion Must Be Denied, Because the Asserted Jurisdictional and Substantive Issues Are Intertwined ....... 13

   B.  Plaintiffs' Rebuttal Declarations Controvert the Smyrnos Declaration and Establish Both Jurisdictional Predicates and Factual Disputes Going to the Merits, Not Resolvable on this Motion .............................................................. 14

**V.  THE FEDERAL DEFENDANTS' ASSOCIATIONAL STANDARD ARGUMENTS HAVE BEEN WAIVED AND LACK MERIT** ........................... 15

   A.  AYA Members Would Have Standing to Sue in their Own Right ......... 15

   B.  Relief Does not Require the Participation of Individual Members ........ 16

**VI. THE COURT SHOULD REJECT THE DEFENDANTS' RECYCLED EXHAUSTION ARGUMENT** .............................................................................. 17

**VII.  CONCLUSION** ..................................................................................... 17

1
2

# TABLE OF AUTHORITIES

3
4

*Apache Stronghold v. United States*,
    38 F.4th 742 (9th Cir. 2022) ................................................................. 3, 4

5
6

*Ariz. Yage Assembly v. Garland*,
    No. CV-20-02373-PHX-ROS, 2022 U.S. Dist. LEXIS 58625 (D. Ariz. Mar. 30, 2022)
    .................................................................................................................. 5

7
8

*Bowen v. Georgetown Univ. H*osp.,
    488 U.S. 204 (1988) .......................................................................... 10

9
10

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) ................................................................. 1, 16, 17

11
12

*Cantwell v. Connecticut*,
    310 US 296 (1940) ............................................................................ 11

13

*Church of the Holy Light of the Queen v. Mukasey*,
    615 F. Supp. 2d 1210, 1219 (D. Or. 2009) ................................... 2, 3

14
15

*Coronel v. Paul*,
    316 F. Supp. 2d 868 (D. Ariz. 2004) ............................................... 3

16
17

*Doe v. Cong. of the U.S.*,
    891 F.3d 577 (6th Cir. 2018) ......................................................... 12

18
19

*Emp. Div.v.* Smith,
    494 U.S. 872 (1990) .......................................................................... 1

20

*Freedman v. Maryland*,
    380 U.S. 51 (1965) .......................................................................... 11

21
22

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ................................................................. 1, 2, 16

23
24

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ........................................................................... 1

25
26

*Horne v. Dep't of Agric.*,
    576 U.S. 351 (2015) ........................................................................... 4

27

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ......................................................................... 15

28

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................ 15

*Navajo Nation v. U.S. Forest Serv.,*
    535 F.3d 1058 (9th Cir. 2008) (en banc) .................................................. 1

*Oklevueha Native Am. Church of Haw., Inc. v. Holder,*
    676 F.3d 829 (9th Cir. 2012) ................................................ 6, 7, 8, 9, 17

*Oklevueha Native Am. Church of Haw., Inc. v. Lynch,*
    828 F.3d 1012 (9th Cir. 2016) .................................................................. 3

*Pa. Psychiatric Soc'y v. Green Spring Health Servs.,*
    Inc., 280 F.3d 278 (3d Cir. 2002) .......................................................... 16

*S. Fork Band v. U.S. DOI,*
    643 F. Supp. 2d 1192 (D. Nev. 2009) .................................................... 16

*Safe Air For Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ................................................................ 13

*Savage v. Glendale Union High Sch. Dist. No. 205,*
    343 F.3d 1036 (9th Cir. 2003) ................................................................ 14

*Snoqualmie Indian Tribe v. FERC,*
    545 F.3d 1207 (9th Cir. 2008) ............................................................ 3, 4

*Stronghold v. United States,*
    519 F. Supp. 3d 591 (D. Ariz. 2021) ..................................................... 15

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) .................................................................................. 7

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) ............................................................................. 1

*Tanzin v. Tanvir,*
    141 S. Ct. 486 (2020) ...................................................................... 1, 14-15

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
    137 S. Ct. 2012 (2017) ............................................................................. 1

*United Food & Commer. Workers Union Local 751 v. Brown Grp.,*
    517 U.S. 544 (1996) ................................................................................ 16

*United States v. Ballard,*
    322 U.S. 78 (1944) .................................................................................... 2

*United States v. Christie,*
    825 F.3d 1048 (9th Cir. 2016) ..................................................... 2

*United States v. Gonzalez,*
    957 F. Supp. 1225 (D.N.M. 1997) ................................. 12-13, 13

*United States v. Tawahongva,*
    456 F. Supp. 2d 1120 (D. Ariz. 2006) ...................................... 12

*Warth v. Seldin,*
    442 U.S. 490 (1975) ................................................................ 16

21 U.S.C. § 823 ....................................................................... 10

21 U.S.C.§ 822 ........................................................................ 10

42 U.S.C. § 2000bb-1 ........................................................ 1, 10

## I.   PLAINTIFFS HAVE CLEARLY ESTABLISHED A PRIMA FACIE RFRA CLAIM

Congress enacted the 42 U.S.C. §2000bb-1(c), the Religious Freedom Restoration Act ("RFRA") to legislatively overrule *Emp. Div. v. Smith*, 494 U.S. 872 (1990) (holding First Amendment did not exempt religious use of peyote from prohibitory laws of general application).   In a dispositive ruling directly on point with this case, the Supreme Court held that the Controlled Substances Act ("CSA") is "amenable to judicially crafted exceptions" under RFRA, and that "*courts* would recognize exceptions," because "that is how the law works."   *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 434 (2006) (emphasis in original).[1]   Since *O Centro*, the Supreme Court has applied RFRA rigorously to protect religious rights.[2]   Consistent with *O Centro* and its progeny, the Ninth Circuit has ruled that a *prima facie* RFRA claim is established by satisfying two elements:

> First, the activities the plaintiff claims are burdened by the government action must be an 'exercise of religion.' Second, the government action must 'substantially burden' the plaintiff's exercise of religion.

*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1068 (9th Cir. 2008) (en banc) (quoting 42 U.S.C. § 2000bb-1(a)).

### A.   Plaintiffs' use of Ayahuasca is an Exercise of Religion

Ayahuasca is almost exclusively consumed in religious ceremonies.   (Dkt. 159, Plaintiffs' Fifth Amended Complaint [hereinafter FAC] ¶ 29.)   Like peyote, courts have

---

[1] In *O Centro*,Supreme Court held the sacramental use of Ayahuasca to be an exercise of religion by a church (the "UDV") whose members sued under RFRA after their "hoasca," another name for what AYA calls Ayahuasca, was seized in Customs.  The Supreme Court held that the lower courts "did not err in determining that the Government failed to demonstrate, at the preliminary injunction stage, a compelling interest in barring the UDV's sacramental use of hoasca." *Id.* at 439.

[2] *See, e.g.,* T*andon v. Newsom,* 141 S. Ct. 1294, 1296 (2021); *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 137 S. Ct. 2012 (2017); *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020); *Holt v. Hobbs*, 574 U.S. 352 (2015); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *see generally* Lee Epstein and Eric Posner, *The Roberts Court and the Transformation of Constitutional Protections for Religion: A Statistical Portrait*, THE SUPREME COURT REVIEW (2022).

recognized that Ayahuasca is not a "recreational drug" and tends not to be diverted into the illicit market. *See United States v. Christie*, 825 F.3d 1048, 1060-61 (9th Cir. 2016) ("there is a thriving market for diverted cannabis, whereas there is no comparable demand for recreational peyote and hoasca."). Ayahuasca is not listed as a drug of abuse in the latest DEA Resource Guide, *Drugs of Abuse*.[3]

AYA is unquestionably a "religion within the meaning of RFRA and the First Amendment."[4] Its adherents share beliefs in Divine Love and spiritual powers. (FAC ¶¶ 75-76). Trained AYA facilitators, including AYA founder and Director Winfield Scott Stanley III ("Mr. Stanley"), administer Ayahuasca, a pharmacologically-active communion sacrament, in a ceremonial setting, to a congregation that comes prepared with a religious mindset. (FAC ¶¶ 17, 19, 20, 31, 33, 35). Taking Ayahuasca is the cornerstone of a Visionary Church gathering and the use of Ayahuasca is the *sine qua non* of AYA and many Visionary Churches.[5]

The Supreme Court has expressly recognized the religious use of Ayahuasca. *See O Centro*, 546 U.S. at 439. The late Judge Owen Panner of the District of Oregon – in a suit brought by another Visionary Church called the Church of the Holy Light of the Queen ("CHLQ") – similarly recognized Ayahuasca as religious sacrament:

> Guided by the unanimous decision of the United States Supreme Court in a very similar case, *Gonzales v. O Centro*, I conclude that the Religious Freedom Restoration Act requires that Plaintiffs be allowed to import and

---

[3] *Drugs of Abuse,* A DEA Resource Guide / 2020 Edition.
https://www.dea.gov/sites/default/files/2020-04/Drugs%20of%20Abuse%202020-Web%20Version-508%20compliant.pdf

[4] Courts may not inquire into the truth or falsity of religious beliefs, *United States v. Ballard*, 322 U.S. 78 (1944), and are generally reluctant to decide a case on the ground that a given system of belief and action is not a "religion."

[5] *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1219 (D. Or. 2009) ("the ceremonial use of Daime tea is 'the *sine qua non* of [Plaintiffs'] faith. It is the sole means by which [Plaintiffs] are able to experience their religion; without [which Plaintiffs] cannot practice their faith.") (paraphrasing *People v. Woody*, 61 Cal. 2d 716, 725, 40 Cal. Rptr. 69, 394 P.2d 813, 820 (1964) [alterations in original].

drink Daime tea for their religious ceremonies, subject to reasonable restrictions. I will enter a judgment and permanent injunction.

*Church of the Holy Light of the Queen ("CHLQ") v. Mukasey*, 615 F. Supp. 2d 1210, 1211-12 (D. Or. 2009).  The Plaintiffs in this case are in the same position as the Plaintiffs in *O Centro* and *CHLQ*, and at this stage, have properly pleaded their right to obtain a RFRA exemption.

### B.  Plaintiffs' Free Exercise is Substantially Burdened by the CSA's Total Prohibition on Ayahuasca Use and Importation.

Under RFRA, religious persons are substantially burdened in their Free Exercise when they are "'coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions.'"  *Apache Stronghold v. United States*, 38 F.4th 742, 754 (9th Cir. 2022) (quoting *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008)); *see also Coronel v. Paul*, 316 F. Supp. 2d 868, 880 (D. Ariz. 2004) ("state action substantially burdens the exercise of religion within the meaning of the RLUIPA when it prevents a religious adherent from engaging in conduct both important to the adherent and motivated by sincere religious belief.").  Plaintiffs' Free Exercise is substantially burdened in at least the following four ways.

*First*, Plaintiffs are burdened by the CSA's complete ban on Ayahuasca use and importation.  (FAC ¶¶ 82-87).  Without access to Ayahuasca, Plaintiff Visionary Churches do not have a sacrament to share and congregants are unable to practice their religion. (FAC ¶¶ 9, 64).  Plaintiffs are caught in the Catch-22 that Congress enacted RFRA to remedy – exercising their religion while grappling with the fear of criminal sanction and seizure of religious property.  (FAC ¶ 37-38); *see Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016) (finding "substantial burden" where prohibition forces the religious group to "choose between obedience to their religion and criminal sanction."); *see also Snoqualmie Indian Tribe v. FERC*, 545 F.3d 1207, 1213-15 (9th Cir. 2008) (explaining the nature of the forced choice captured in RFRA's substantial burden component).

Many who would join AYA in ceremony are deterred by the fear of prosecution. Mr. Stanley recently received an email from a person who cancelled his attendance at an AYA ceremony because "I cannot trust your container because of the US governments stance on the medicine . . . I will not feel safe during the journeywork if I believe there is a chance it could be raided by the police." *See* Exhibit 1 (Stanley Decl. ¶ 3). DEA, DHS, and DOJ's enforcement of an absolute ban against Ayahuasca irreparably harms AYA members by forcing them to either abandon religious principle or risk criminal prosecution, and harms AYA and Mr. Stanley by deterring membership and participation in church ceremonies. *Id.* Accordingly, the Federal Defendants' enforcement of the CSA substantially burdens Plaintiffs' free exercise. *See Apache Stronghold*, 38 F.4th at 742.

*Second*, Plaintiffs are burdened by DHS's seizure of Plaintiffs' sacramental Ayahuasca on numerous occasions, including on April 2020, October 2020, November 2020, and December 2020. (FAC ¶¶ 41-46). Seizures of sacrament interrupt Free Exercise in the same way Catholic Mass would be interrupted by a ban on the distribution of communion hosts. (FAC ¶¶ 51, 83). AYA is substantially burdened by laws prohibiting importation, distribution, and possession of Ayahuasca. (FAC ¶¶ 48, 54, 60, 86, 101.bb). The confiscation and destruction of property without just compensation violates Plaintiffs' Fifth Amendment rights under the Takings Clause, causing pecuniary damage. (FAC ¶ 101(r)); *Horne v. Dep't of Agric.*, 576 U.S. 351 (2015).

*Third*, Plaintiffs are burdened by DHS enforcement actions directed at turning AYA members into informants against AYA. *See* Exhibit 2 (Carreon Decl. ¶¶ 6 – 18.) Agent Smyrnos' email to AYA's counsel Charles Carreon (the "Smyrnos Email."), which was sent after he learned that one of his investigative targets was an AYA member, directs Mr. Carreon to tell two AYA members to cease their importation of perfectly legal *Echinopsis Pachanoi* under pain of prosecution. (Dkt. 175-1 at 6-8). Agent Smyrnos had already attempted to coerce once AYA member into becoming a DHS informant, and was working on turning another member, when Mr. Carreon interceded on behalf of the two AYA members. *See* Exhibit 2 (Carreon Decl. ¶ 18). The Smyrnos Email imposes a substantial

burden on AYA by threatening prosecution for lawful acts.   After AYA's counsel challenged the contention in the Smyrnos Email that *Echinopsis Pachanoi* is a Schedule I controlled substance, Agent Smyrnos fell silent, tacitly admitting that he had only equated dried cactus dust with Mescaline as an investigative ruse to target people who made purchases of Visionary Religious practice aids from South America.   That such people turned out to be AYA members is hardly surprising, since Agent Smyrnos targeted them through their habits of purchasing items useful in Visionary Religion, and sought to turn Plaintiffs' religious group into a nexus for recruiting informants.

*Fourth*, Plaintiffs are burdened by the threat of heavily armed police raids carried out by a joint Federal-State HIDTA Task Force with DEA personnel aiding in the raids. (FAC ¶¶ 55, 57).

## II.   PLAINTIFFS HAVE STANDING TO MAKE A PRE-ENFORCEMENT CHALLENGE

During briefing on an earlier Motion to Dismiss, AYA argued that its RFRA claim was not a "pre-enforcement claim" because AYA alleged recent, current, deliberate, and likely future harm and injury caused by DEA and DHS. (Dkt. 116 at 10).[6]   This Court explained it would rely on *Oklevueha* to characterize AYA's claim as "pre-enforcement" despite the fact that the Defendants had recently undertaken an enforcement action by seizing AYA's Ayahuasca.  *See Ariz. Yage Assembly v. Garland*, No. CV-20-02373-PHX-ROS, 2022 U.S. Dist. LEXIS 58625, at \*17 n.11 (D. Ariz. Mar. 30, 2022) ("Although Defendants have seized Plaintiffs' ayahuasca in the past, the Court characterizes the injunction Plaintiffs seek as a pre-enforcement injunction because the *Oklevueha I* court did so in a factually analogous situation.").

The Ninth Circuit in *Oklevueha* identified the three prongs of a "pre-enforcement" standing analysis: "(1) whether the plaintiffs have articulated a 'concrete plan' to violate the law in question; (2) whether the government has communicated a specific warning or

---

[6] Plaintiffs expressly incorporate that argument again here for the purposes of a potential appeal.

threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the statute." *See Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 836 (9th Cir. 2012) (*citing Thomas Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)).

Applying the holding of *Oklevueha* to the facts in this case, this Court must find that Plaintiffs can establish all three prongs and have standing to pursue this RFRA claim. AYA has stated concrete plans to continue importing sacramental Ayahuasca from Peru for use in AYA's religious ceremonies to be held at its maloka in Arizona on a bi-monthly basis. (FAC ¶ 73). Defendants have recently used its enforcement authority under the CSA to seize and confiscate AYA's religious sacrament at the border, and have warned that they will continue to enforce the CSA to seize and confiscate AYA's religious sacrament. (FAC ¶¶ 42-43). These facts create standing under *Oklevueha*'s pre-enforcement analysis by demonstrating there is a genuine threat of prosecution, a definite and concrete dispute, and a justiciable case or controversy.

### A. Plaintiffs Have Sufficiently Alleged a "Concrete Plan."

As in *Oklevueha*, Plaintiffs have sufficiently alleged a "concrete plan" by establishing that a central component of their religious ceremonies is the ingestion of Ayahuasca (FAC ¶¶ 5, 39, 43, 104, 139, 140), and that their members have attended such ceremonies and will attend them in the future. (FAC ¶ 71). More specifically, Plaintiffs allege that AYA holds bi-monthly Ayahuasca ceremonies in the District of Arizona at its maloka, and plans to import sacramental Ayahuasca from Peru and serve Ayahuasca to its congregation who are gathering in religious Visionary Communion in its maloka. (FAC ¶¶ 70-73).

### B. Plaintiffs Have Established a Specific Warning or Threat to Initiate Enforcement Proceedings

As in *Oklevueha*, Plaintiffs in this case can establish a "specific warning or threat to initiate proceedings" because the Defendants have recently taken enforcement action against the religious group and its members. (FAC ¶ 41-46, 55. 57). It is unnecessary to

undertake a hypothetical future-enforcement analysis because the Defendants seized AYA's shipments of Ayahuasca in April 2020, October 2020, November 2020, and December 2020.  *See Oklevueha*, 676 F.3d at 835 ("the FedEx seizure was an enforcement of the CSA against Plaintiffs, mitigating the relevance of a hypothetical future-enforcement. . . . Plaintiffs need not allege a threat of future prosecution because the statute has already been enforced against them."); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (locating a "substantial" threat of future prosecution in a "history of past enforcement").

Defendants specifically warned AYA that DHS will continue to seize and destroy sacrament without any pre or post-seizure remedies.  (FAC ¶ 43-44).  In November 2020, AUSA Kevin Hancock sent AYA's attorney written warning that all future imports of Ayahuasca by AYA would be seized and destroyed.  *Id.*  According to the "Hancock Letter," seized Ayahuasca will be "summarily forfeited to the United States and subject to potential destruction."  (Dkt. 137-20).  The Hancock Letter is a specific and direct threat to undertake enforcement proceedings that clearly meets the Ninth Circuit's standard set in *Oklevueha.*

Defendants seem to argue that the Government's seizure of AYA's religious sacrament at the border does not constitute an enforcement action and cannot create standing.  (Dkt. 175 at 14).  Such an argument is not supported by any legal citations, runs contrary to Ninth Circuit dispositive caselaw, and amounts to nothing more than wishful thinking.  The Ninth Circuit's holding in *Oklevueha* is directly on point:

> ***When the Government seized Plaintiffs' marijuana pursuant to the CSA, a definite and concrete dispute regarding the lawfulness of that seizure came into existence***.  *See Ry Mail Ass'n,* 326 U.S. at 93 (stating that a justiciable case or controversy must present a definite and concrete dispute).  This case is unique in that unlike most enforcements of criminal statutes, the seizure did not result in a criminal proceeding that could have afforded Plaintiffs the opportunity to assert their constitutional and statutory challenges to the enforcement of the CSA against them.  ***But it does not follow that because***

*this enforcement and seizure of property did not provide Plaintiffs a process in which to raise their claims, those claims are not now ripe.*

*Oklevueha*, 676 F.3d at 836 (emphasis added).   Thus, the Ninth Circuit has expressly rejected the argument that Defendants make to this Court.

It is notable that Defendants make no affirmative statements or representations regarding active investigations or prosecutions of AYA.   Defendants do not say "DEA agents are not currently monitoring the activities of AYA or Winfield Scott Stanley," or "there are no active criminal investigations of AYA or its members."   Defendants try to create the impression that AYA faces no threat of prosecution, but their words do not match their actions in this case.   *See* Exhibit 1 (Stanley Decl. ¶¶ 4-7).   When Plaintiffs sat down to explore settlement, negotiations did not proceed beyond the "guardrails" phase because DEA declined to provide assurances that Plaintiffs would be able to continue with ceremonies and protect the AYA congregation and Mr. Stanley from the waiver of Fifth Amendment rights.   *See* Exhibit 2 (Carreon Decl. ¶¶ 19-24).   The DEA's *status quo* posture of unremitting hostility to any Visionary Church has not abated.   The so-called "Guidance" procedure casts a shadow of prosecution over the Plaintiffs and will continue to do so until they obtain the relief sought herein.

### C.  Plaintiffs have established a history of past prosecution or enforcement under the statute

Defendants seized AYA's shipments of Ayahuasca in April 2020, October 2020, November 2020, and December 2020.   (FAC at ¶¶ 40-46).   As in *Oklevueha*, this Court "need not rely on enforcement of the statute against other groups in determining whether Plaintiffs are likely to suffer a similar fate in the future, because the CSA has already been enforced against Plaintiffs through the seizure of their [Ayahuasca]."   *Oklevueha*, 676 F.3d at 837.   "This is not the kind of 'abstract disagreement' that the ripeness doctrine prevents courts from adjudicating.   Plaintiffs' 'stake in the legal issues is concrete rather than

abstract.'" *Id.* (quoting *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009).

Moreover, AYA has standing by virtue of the heavily armed police raid and subsequent prosecution and incarceration of a Visionary Church practitioner named Clay Villanueva. (FAC at ¶¶ 55-58). The case of Mr. Villanueva, who was arrested in August 2021 at LAX on an Arizona felony warrant, has served as a lesson for AYA about how law enforcement can ruin the life of a sincere practitioner of visionary religion. AYA also has standing from DHS's recent threats to arrest a congregation member. (FAC at ¶¶ 55-58). One AYA member was subjected to custodial interrogation by a joint state-federal task force after DHS Agent Smyrnos showed up at her home with a local law enforcement phalanx of large SUVs that flooded the neighborhood, idling menacingly while Agent Smyrnos and his state law partner administered Miranda rights warnings, and interrogated her in her own living room for an hour and half. (FAC at ¶¶ 60-62).

AYA and Stanley have an open and obvious legal dispute over the lawfulness of AYA's Free Exercise importation of Ayahuasca. Neither RFRA nor the Ninth Circuit caselaw requires that an AYA member be arrested – and suffer all of the physical and reputational harms that go along with incarceration and an arrest record that can never be erased – in order to bring an RFRA claim. Under the ordinary rules of Article III standing as applied in the RFRA context, AYA has clearly established standing. Following *Oklevueha*, this Court must find that a "non-speculative case and controversy exists regarding Plaintiffs' entitlement to possess and consume [Ayahuasca] for religious reasons." *Oklevueha*, 676 F.3d at 837.

### III.  DEA HAS NO AUTHORITY OVER AYA'S RFRA CLAIM; ACCORDINGLY, THE GUIDANCE IS IRRELEVANT TO WHETHER PLAINTIFFS STATED A CLAIM UNDER RFRA

Defendants cannot escape three indisputable facts alleged in the FAC: (1) the CSA criminalizes AYA's religious sacrament; (2) the Customs and Border Patrol has repeatedly seized AYA's sacrament as contraband; and (3) the CSA's absolute ban on AYA's

religious sacrament is not the least restrictive means of advancing a compelling governmental interest.  In light of these facts, there is no doubt that Plaintiffs' have properly alleged a RFRA claim.

In an effort to escape these facts, Defendants try to redefine the question as whether the DEA's regulatory process for seeking an exemption substantially burdens AYA's sincerely held religious beliefs.  This is a red herring.  Plaintiffs clearly meet the statutory requirements of a RFRA claim as codified into law at 42 U.S.C. §2000bb-1(c), *see* Section I *supra*, and this Court should reject Defendants' suggestion to engraft requirements onto RFRA that will only further burden the religious persons the statute was enacted to protect.

### A. RFRA Does not Require Plaintiffs to Participate in DEA's *Ultra Vires* Petition Process That Has No Clear Timelines and Has Never Resulted in an Exemption

An agency's authority is limited by the scope of the delegation in its organic statute. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  By arrogating to itself the status of gatekeeper for religious Visionary Church Free Exercise, DEA exceeds its lawful authority and substantially burdens Plaintiffs.  Congress did not delegate to DEA the authority to make determinations about religious free exercise or the sincerity of religious beliefs.  RFRA grants that authority only to the District Courts that have sole original jurisdiction of Plaintiffs' claims under the statute.

The Court should likewise reject the argument that DEA is authorized to evaluate AYA's religious sincerity and adjudicate RFRA claims under 21 U.S.C. § 823.  (Dkt. 175 at 12).[7]  Section 823 of the CSA allows registration of "manufacturers," "distributors," and "practitioners," but Plaintiffs are none of those.  Further, Section 823 requires findings

---

[7] The Defendants previously claimed that a different section of the Controlled Substances Act – 21 U.S.C.§ 822(d) –provided DEA with the authority to evaluate AYA's religious exemption claim.  (Dkt. 122 at 12).  AYA demonstrated why such a claim was spurious in a previous filing. Doc. 148 at 12.  Defendants now claim a different section – 21 U.S.C. § 823 – supposedly provides them statutory authority.  This new argument is similarly spurious.

about "public health and safety," a term entirely absent from the Guidance and inconsistent with the RFRA substantial burden test.

Untethered from statutory authority, DEA's *ultra vires* RFRA Exemption Process substantially burdens Free Exercise by requiring immediate cessation of Free Exercise contemporaneous with the submission of a Petition for Exemption ("PRE").  *See* RFRA Guidance Document ("No petitioner may engage in any activity prohibited under the Controlled Substances Act or its regulations unless the petition has been granted…."). [8]  As a prior restraint on Free Exercise, the creation of such an *ultra vires* procedure without Congressional authorization is clearly unconstitutional.  *See Cantwell v. Connecticut*, 310 US 296 (1940) (finding religious and charity licensing board unconstitutional).

Further, the Guidance exhibits none of the features of a lawful administrative process for regulating First Amendment freedom of expression. [9]  *See Freedman v. Maryland*, 380 U.S. 51, 58 (1965).  By contrast, the Guidance process: (1) places no timelines for processing a petition, which means an exemption request submitted under the Guidance can languish for years; (2) places no limits on the type of information the DEA may request from a petitioner; (3) is not bound by any clear definition of what is "religious" or how one proves "religious sincerity"; and (4) does not expressly adopt the standard set forth in RFRA which requires an exemption when a complete ban is not the least restrictive means of advancing a compelling government interest.  Thus, under the Guidance, DEA makes arbitrary determinations about religious sincerity in an *ad hoc*, opaque proceeding without clear standards or defined timelines.  Accordingly, the Guidance presents only a sham process that the DEA deploys to obstruct the practice of Visionary Religion, thus imposing, additional, unique substantial burdens on Free Exercise.

---

[8] https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2)RFRA_Guidance_(Final)_11-20-2020.pdf

[9] Plaintiffs allege that their religious ceremonies involve Religious Free Expression, that is in itself a form of Free Exercise, entitled to First Amendment and RFRA protections.  (FAC ¶ 22).

**B.  The DEA May Not Prevail on This Motion by Arguing that the Guidance is the Least Restrictive Means Required by RFRA**

The DEA's contention that the Guidance offers Plaintiffs the least restrictive means required by RFRA presents a question of material fact not properly decided at the motion to dismiss stage.[10]

**C.  The Guidance Imposes its Own Substantial Burden**

Assuming, *arguendo*, the relevance of the Guidance to this motion, Plaintiffs allege that it substantially burdens on Plaintiffs' Free Exercise.  (FAC ¶ 68).  *First*, the Guidance is not a path to regulatory services, but rather a blind alley that has never resulting in the grant of a RFRA exemption.  *Id.  Second*, the DEA Guidance requires applicants to forfeit their Fifth Amendment rights and make inculpatory statements under oath that could lead to criminal prosecution.  *Id.  Third*, the DEA Guidance poses a financial barrier because no church would submit a Guidance-complaint petition to DEA without a costly consultation with informed legal counsel, who will inevitably advise not submitting to such a disadvantageous, *ultra vires* procedure.  *Id.  Fourth*, the DEA Guidance is a vehicle for chilling Free Exercise with *de facto* cease and desist notices and *de facto* administrative subpoenas under the guise of invitations to submit a Petition for Religious Exemption under the Guidance.  (FAC ¶ 93).  *Fifth*, the Guidance demands violate the Establishment Clause by injecting the DEA in to the regulation of religion.  (FAC ¶ 93).

The Defendants cite to inapposite precedent in *United States v. Tawahongva*, 456 F. Supp. 2d 1120 (D. Ariz. 2006).  The *Tawahongva* defendant was denied relief because he did not testify he believed the permit objectionable nor did it require him to endure any delay in performing rites necessary to the free exercise of his religion.  *Id.* at 1132.  Relevant authority, congruent with the facts of this case, is found in *United States v.*

---

[10] The Sixth Circuit's opinion in *Doe v. Cong. of the U.S.*, 891 F.3d 577, 585-86 (6th Cir. 2018), helps explain the error in the Defendants' reasoning: "This argument appears to conflate Article III injury-in-fact with RFRA's substantial burden element.  Whether Plaintiffs have alleged an injury-in-fact sufficient for Article III standing is distinct from the analysis of whether they have alleged a substantial burden on their religious exercise under RFRA."

*Gonzalez*, 957 F. Supp. 1225 (D.N.M. 1997).  In *Gonzalez*, a Native American defendant charged with killing a bald eagle was held exempt from applying for a permit before shooting the eagle, because the application process forced him to disclose very personal information about a religious ceremony, which the District Court held to impose a substantial burden on the exercise of religion.  957 F. Supp. at 1228.  As in *Gonzales*, submitting a PRE under the Guidance would compel Plaintiffs to disclose highly sensitive information about the use of Ayahuasca that the DEA considers inculpatory.  Thus, like the application process in *Gonzales*, the Guidance imposes its own substantial burden on the free exercise of religion.

## IV.  THE SMYRNOS DECLARATION RAISES NO JURISDICTIONAL ISSUES RESOLVABLE ON THIS MOTION

### A.  Under *Safe Air,* the Federal Defendants' Rule 12(b)(1) Motion Must Be Denied, Because the Asserted Jurisdictional and Substantive Issues Are Intertwined

The Federal Defendants offer the Smyrnos Declaration, that they claim defeats jurisdiction and supports dismissal under Rule 12(b)(1).  (Dkt. 175 at 15 fn. 6).  However, the Defendants have mischaracterized the holding of *Safe Air For Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) in an effort to make this factual submission relevant, because this is exactly the type of case where Article III jurisdictional issues cannot be decided on the affidavits.  In *Safe Air*, the Ninth Circuit ruled that "***a jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action***."  373 F.3d at 1039 (emphasis added, internal citations omitted).  Here, the jurisdictional question is dependent on the resolution of factual issues going to merits, *i.e.,* the extent to which Defendants' enforcement of the Controlled Substances Act burdens Plaintiffs' religious Free Exercise.  Thus, "the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."  *Id.* at 1039 fn. 3.

**B. Plaintiffs' Rebuttal Declarations Controvert the Smyrnos Declaration and Establish Both Jurisdictional Predicates and Factual Disputes Going to the Merits, Not Resolvable on this Motion**

If the Court is inclined to consider the Smyrnos Declaration, the caselaw is clear that "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, ***the party opposing the motion must furnish affidavits*** or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (emphasis added).

The Smyrnos Declaration is thoroughly rebutted by the facts set forth in the declaration of counsel who had the email exchange with Agent Smyrnos while serving as AYA's General Counsel.  *See* Exhibit 2 (Carreon Decl. at ¶ 1-2).  Agent Smyrnos' claim that he was investigating 3-kilo "Mescaline" shipments to AYA members is absurd and based on falsely equating *Echinopsis Pachanoi* (a cactus dust that is legally sold online by hundreds of vendors) with Mescaline (a Schedule I controlled substance).  *Id.* at ¶¶ 6 -15. Whereas 3 kilos of Mescaline have a street value that could reach $300,000, an equal weight of *Echinopsis Pachanoi* has a retail value of $700.  *Id.* at ¶¶ 14 – 15.

DHS has previously pursued this strategy of misidentifying dried cactus dust as Mescaline, seizing it during importation in Customs, and encouraging local officials to obtain a search warrant for "Mescaline" based on this willful misidentification.  *See id.* at ¶ 17.  In its effort to infiltrate AYA, DHS and Agent Smyrnos used the misidentification of dried cactus dust as Mescaline to gain access to the home of an AYA member under false pretenses, and subject her to custodial interrogation.  Agent Smyrnos attempted to coerce the AYA member to spy on and inform about her co-religionists at AYA.  He coerced her to disclose the identity of another AYA member, threatened to arrest her if she failed to report "unlawful conduct" by her co-religionists, and left his card for her to call. *See id.* at ¶ 18.  Agent Smyrnos then called the second AYA member and attempt to turn that person into a DHS informant.  *Id.*  Agent Smyrnos' conduct replicates the misconduct of the FBI agents who were found open to a RFRA damages claim in *Tanzin*, 141 S. Ct.

486 (Islamic men threatened with prosecution and being placed on no fly list to coerce them into spying and informing on their co-religionists).  These issues are inextricably intertwined with the merits, and cannot be decided on Rule 12 motion.  Finally, viewed in the light of truth, Agent Smyrnos' averments do not undermine Article III standing.

## V.  THE FEDERAL DEFENDANTS' ASSOCIATIONAL STANDARD ARGUMENTS HAVE BEEN WAIVED AND LACK MERIT

The Federal Defendants did not raise their "associational standing" argument in any of their three prior Motions to Dismiss.  Accordingly, this jurisdictional defense is waived pursuant to Fed. R. Civ. P. 12(h)(1)(A).  Nevertheless, AYA and Stanley meet the requirements for associational standing under *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

### A.  AYA Members Would Have Standing to Sue in their Own Right

"[A]n organization may have standing to sue on behalf of its members—but only if 'its members would otherwise have standing to sue in their own right.'"  *Stronghold v. United States*, 519 F. Supp. 3d 591, 599 (D. Ariz. 2021), *quoting Hunt*, 432 U.S. at 343. Here, the Fifth Amended Complaint alleges that DEA and CBP's previous and continued enforcement of the CSA's ban on Ayahuasca substantially burdens the free exercise of religion by Winfield Scott Stanley and the members of AYA.  (FAC ¶ 87).  These allegations are sufficient to allege injury to AYA members at this stage of the litigation. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Ayahuasca is a central component of the church's religion, that DHS has repeatedly confiscated their religious sacrament as contraband, and in response to the demand of AYA's counsel to cease the seizure and destruction of AYA's sacrament, the DOJ has promised that Defendants will confiscate and destroy their sacrament in the future. (FAC ¶¶ 41-43).  The FAC thus alleges cognizable injury to all AYA members in the form of a substantial burden on their central Free Exercise rights.  Further, Plaintiffs allege that Defendants have not implemented the least restrictive alternative to enforcing the CSA against AYA.  (FAC ¶ 101.ee).  Thus, Plaintiffs have alleged a redressable injury to their members' religious practice caused by Defendants' actions.  Through these allegations,

Plaintiffs have demonstrated that their members would have standing in their own right; accordingly, AYA has associational standing to present their claims.

### B. Relief Does not Require the Participation of Individual Members

Individual participation is not necessary where, as here, an association seeks prospective or declaratory relief rather than money damages. *See United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 556 (1996); *see also Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002) (industry group had associational standing to seek injunctive relief for "systemic policy violations that will make extensive individual participation unnecessary"); *Warth v. Seldin*, 442 U.S. 490, 498 (1975) (where association seeks injunction, it can "reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured."). Because Plaintiffs seek only declaratory and injunctive relief, individualized determinations of harm will be unnecessary.[11]

The Court may comfortably reject the argument that RFRA requires individual church members to participate in the litigation to demonstrate how the government action burdens their individual beliefs. (Dkt. 175 at 17). A religious corporation has standing as a "religious person" under RFRA. *See Burwell*, 573 U.S. at 708 ("We have entertained RFRA and free-exercise claims brought by nonprofit corporations…."). No Federal Court has ever adopted the view espoused by Defendants in this case, and the number of RFRA cases pursued in a representational capacity are too numerous to list here. *See, e.g., O Centro*, 546 U.S. 418. Applying settled RFRA law to this question,[12] the answer is clear –

---

[11] "Unlike the first two associational standing requirements, the third requirement under *Hunt* is prudential, rather than constitutional in nature. *See United Food*, 517 U.S. at 547. Thus …the individual participation requirement focuses on "matters of administrative convenience and efficiency." *Id.* at 557.

[12] *Harris v. McRae*, urged as precedent by the Defendants, predates RFRA by 13 years and has never been read to prohibit associational standing in a RFRA case. *See, e.g.,* S. *Fork Band v. U.S. DOI,* 643 F. Supp. 2d 1192, 1205 (D. Nev. 2009) ("The court does not read the decision in *McRae* as a per se rule mandating individual participation in every free exercise case.").

AYA has associational standing to represent the members of its congregation.  As the Supreme Court has stated:

> the purpose of extending rights to corporations is to protect the rights of people associated with the corporation, including shareholders, officers, and employees. ***Protecting the free-exercise rights of closely held corporations thus protects the religious liberty of the humans who own and control them***.

*Burwell*, 573 U.S. at 683-84 (emphasis added).

## VI.   THE COURT SHOULD REJECT THE DEFENDANTS' RECYCLED EXHAUSTION ARGUMENT

Federal Defendants have repeated their administrative exhaustion argument to the point of exhaustion.  Each time this argument is rejected, they repackage it and try again. In rejecting the Defendants' first request for a stay in this case, the Northern District of California ruled that "[t]he Ninth Circuit has 'decline[d] . . . to read an exhaustion requirement into RFRA where the statute contains no such condition . . . and the Supreme Court has not imposed one." (Dkt. 57 at 14) (quoting *Oklevueha*, 676 F.3d at 838).  In rejecting the Defendants' argument that AYA should be "required to follow CSA's petition process," this Court held that "[c]ontrary to the Federal Defendants' contention (Dkt. 112 at 11), the Guidance does not impose an exhaustion requirement for suits seeking CSA exemptions under RFRA."  Doc. 153 at 7.

For the third time Defendants ask the Court to decline to review AYA's RFRA claim and require AYA to seek an exemption from DEA in the first instance.  Under the law of the case, the Court must reject this argument.  AYA's RFRA claim is ripe and it should not be required to engage in DEA's illegitimate, extra-legal and *ultra vires* administrative process.

## VII.   CONCLUSION

Plaintiffs respectfully ask this Court to deny the Federal Defendants' motion to dismiss and schedule a Rule 26 conference.

Dated:  October 17, 2022

/s/*Charles Carreon*
CHARLES CARREON
Attorney for Plaintiffs
Arizona Yagé Assembly and
Winfield Scott Stanley III