BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Branch Director
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br><br>v.<br><br>Merrick B. Garland, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373-ROS |

**FEDERAL AGENCY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT [Doc. 159]**

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 1

I.    Plaintiffs' RFRA Claim Should Be Dismissed For Lack Of Standing. .......................... 1

      A.    Plaintiffs Fail to Allege Any Genuine Threat of Imminent Prosecution. .......... 1

            1.    AYA has not demonstrated a specific warning or threat to initiate
                  proceedings against AYA related to their ayahuasca consumption. ........ 2

            2.    AYA has not demonstrated a history of past prosecution or
                  enforcement. ........................................................................................ 3

            3.    Defendants properly rely on the Smyrnos Declaration, which
                  demonstrates that AYA has not shown pre-enforcement standing. ...... 5

      B.    Plaintiffs Fail to Demonstrate Associational Standing. ....................................... 7

II.   Plaintiffs' Opposition Confirms That They Have Failed to State a RFRA Claim. ........ 8

      A.    The CSA Does Not Impose a Total Ban or Substantial Burden on Plaintiffs.. 9

      B.    The Guidance Does Not Impose a Substantial Burden. ................................... 10

In 2020, when considering Plaintiffs' First Amended Complaint, Judge Orrick found that "plaintiffs have not shown [for their RFRA claim], as they must to obtain a pre-enforcement injunction, that there has been any realistic, imminent threat of prosecution or enforcement action by the federal government." Dkt. 57 at 23. A year and a half later, in considering Plaintiffs' Fourth Amended Complaint, this Court also concluded that "Plaintiffs failed to demonstrate they have standing to seek a prospective injunction or declaratory relief." Dkt. 153 at 11. Now, after two years and four more complaints, Plaintiffs still have not demonstrated standing for the broad prospective relief they seek: an order directing DEA to "grant AYA a religious exemption" from enforcement of the Controlled Substances Act's prohibitions on importing, distributing, and possessing ayahuasca. Fifth Am. Compl., Prayer for Relief ¶ 4.a. That is because Plaintiffs have not shown a genuine, imminent threat of prosecution: they have not pointed to a single federal prosecution for ayahuasca, and federal law enforcement has not threatened prosecution for Plaintiffs' alleged religious ayahuasca use.

Plaintiffs' opposition does not move the needle. Their interactions with government counsel do not constitute a specific warning or threat to initiate proceedings. And though Plaintiffs improperly try to introduce new allegations that post-date their Complaint and create a factual dispute where none exists, they still cannot show a genuine threat of prosecution or enforcement. Thus, they fail to demonstrate individual or associational standing and on that basis their claims should be dismissed. Plaintiffs also fail to state a claim under Rule 12(b)(6). Although Arizona Yagé Assembly (AYA) claims its case is like *O Centro* and *CHLQ*, the cases differ factually and legally. AYA has not adequately alleged that DEA's now-extant exemption process imposes a substantial burden, and unlike *O Centro* and *CHLQ*, AYA seeks to proceed on behalf of its members without including as plaintiffs any members who could attest to their individual religious beliefs and the particular burdens sustained. Plaintiffs' Fifth Amended Complaint should be dismissed.

## ARGUMENT

### I.  Plaintiffs' RFRA Claim Should Be Dismissed For Lack Of Standing.

#### A.  Plaintiffs Fail to Allege Any Genuine Threat of Imminent Prosecution.

1

**1.   AYA has not demonstrated a specific warning or threat to initiate proceedings against AYA related to their ayahuasca consumption.**

Plaintiffs contend that they face a genuine threat of prosecution because of an alleged "specific and direct threat to undertake enforcement proceedings." Dkt. 177 at 7 (Opp'n). AYA attempts to bolster its pre-enforcement standing with statements made by a former DOJ counsel earlier in this litigation and by DEA during settlement discussions. Neither one represents "a specific warning or threat to initiate proceedings." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 836 (9th Cir. 2012).

The "Hancock letter," *see* Dkt. 137-20 (Hancock letter); *see also* Opp'n at 7 (mischaracterizing Hancock letter), was a former DOJ counsel's response to correspondence from AYA's counsel regarding the status of—and making a legal demand for—two international mail packages containing ayahuasca that AYA's counsel alleged were wrongfully seized. Dkt. 137-20 at 1. The DOJ counsel, "as a courtesy," provided a status update as to the packages in question, and a statement of the law, citing the relevant statutory and regulatory provision: "Pursuant to the CSA, any Schedule I controlled substances seized at the border are summarily forfeited to the United States and subject to potential destruction, unless an applicable 'permit for lawful importation has been issued.'" *Id.* at 2 (quoting 19 C.F.R. § 162.45a). But a statement of generally applicable law is not a "specific warning or threat to initiate proceedings" directed at AYA. *Oklevueha*, 676 F.3d at 836; *see Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2012) (stating that "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution" is sufficient). Importantly, the letter went on to explain that AYA could have, but had not yet, sought a RFRA exemption to lawfully import and distribute ayahuasca. Dkt. 137-20 at 2. Rather than a specific threat to prosecute, the letter was an invitation to take the steps necessary to secure lawful permission to import, distribute, and use ayahuasca. Two years later, AYA continues to refuse that invitation, asking the Court to require what AYA has not sought from DEA directly.

AYA's reference to settlement talks are similarly misguided. AYA contends that, while Defendants have argued that AYA failed to identify a threat of prosecution, "their words do

2

not match their actions in this case." *See* Opp'n at 8 (citing Stanley and Carreon declarations). But during the referenced discussions, DEA made no statement approaching a threat of imminent prosecution. AYA admits as much, explaining that during settlement discussions DEA merely "restate[d]" the "*status quo*." Carreon Decl. ¶ 22; *see also* Opp'n at 8 (referring to "DEA's *status quo* posture"). Indeed, all that DEA said was that it was not willing to "grant authority or immunity to use controlled substances in violation of federal law" until it determined that AYA was eligible for a RFRA exemption, Carreon Decl. ¶ 22, and that any settlement discussions would not relieve DEA of its duty to "fulfill[] its statutory duties," including assisting and cooperating "with any law enforcement agency that initiates" an investigation involving "any unlawful conduct discovered in the course of" those discussions. *Id.*

DEA's position, consistent with the CSA's closed regulatory scheme, is simply that AYA must first establish its entitlement to a RFRA-based exemption before DEA can grant AYA authority to handle controlled substances—and the accompanying legal assurances that come with registration. AYA may believe instead that exemptions to the CSA should be awarded immediately upon request—without regard to the sincerity of the requestor's beliefs or the adequacy of its diversion control measures—while their exemption request is evaluated. But that disagreement has no bearing on the question before the Court: whether, by restating generally applicable law and declining to grant immunity *before* exemption eligibility can be determined, DEA has communicated to AYA a threat of imminent prosecution. It has not. AYA therefore lacks standing for their pre-enforcement challenge.

**2.   AYA has not demonstrated a history of past prosecution or enforcement.**

Nor has there been a "history of past prosecution or enforcement [against AYA] under the challenged statute." *Thomas*, 220 F.3d at 1139. As Defendants noted, Dkt. 175 at 9-10 (Mot.), Plaintiffs identify no federal ayahuasca prosecution, so they cannot establish a reasonable fear of prosecution against anyone, much less imminent prosecution of AYA. *Thomas*, 220 F.3d at 1139. Plaintiffs instead lean on allegations that DHS "seiz[ed] and confiscat[ed] AYA's religious sacrament at the border." Opp'n at 6. Citing *Oklevueha*, 676 F.3d at 836, AYA argues that "it is unnecessary to undertake a hypothetical future-enforcement analysis" because

"the Defendants have recently taken enforcement action against" AYA. Opp'n at 6-7. Pointing to DHS's alleged border seizures of AYA's ayahuasca nearly two years ago, they contend that "the Defendants have recently taken enforcement action against" AYA. *Id.*

However, these alleged seizures were carried out by *CBP* exercising its broad authority to inspect all packages entering the United States without any individualized suspicion, not DEA. *United States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008). And that alleged injury is the result of AYA's refusal to obtain a registration and import permits, without which importation of controlled substances is illicit and subject to seizure by DHS as a matter of course. Dkt. 175 at 8.[1] That crucial factual difference distinguishes this case from the enforcement action in *Oklevueha*.

In *Oklevueha*, the Plaintiffs sued DEA following DEA's seizure of a parcel of cannabis cultivated and shipped domestically. *Oklevueha Native Am. Church of Hawai'i, Inc. v. Holder*, 719 F. Supp. 2d 1217, 1219 (D. Haw. 2010). The Ninth Circuit concluded that "Plaintiffs need not allege a threat of future prosecution because [21 U.S.C. § 841, the statute generally barring handling of controlled substances] has already been enforced against them" by DEA. *Oklevueha*, 676 F.3d at 836. More specifically, when DEA "seized Plaintiffs' marijuana pursuant to the CSA, a definite and concrete dispute regarding the lawfulness of that seizure came into existence." *Id.* In other words, DEA had already undertaken an enforcement action against the *Oklevueha* plaintiff premised on that individual's attempt to possess a controlled substance. Thus, the court said that it "need not rely on enforcement of the statute against other groups in determining whether Plaintiffs are likely to suffer a similar fate in the future, because the CSA has already been enforced against Plaintiffs through the seizure of their marijuana." *Id.*

By contrast, the only provision that allegedly has been enforced against AYA is the requirement that an import permit accompany any controlled substances entering the U.S. In that regard, Plaintiffs' assertion that *Oklevueha* "expressly rejected the argument that Defendants make," is incorrect. Opp'n at 7. CBP's alleged border seizures cannot form the basis for a broad pre-enforcement injunction against DEA and the CSA *in toto* because DEA has not

---

[1] Accordingly, even if the Court finds these seizures demonstrate a genuine threat of prosecution or enforcement, such is the result of Plaintiffs' own actions and not traceable to CBP. Dkt. 175 at 10. AYA did not dispute this argument.

"enforced" these provisions against Plaintiffs. Nor can AYA claim that these alleged seizures demonstrate that Defendants are investigating or targeting their ayahuasca use; rather, border seizures of controlled substances lacking the necessary import permit (which AYA has never sought to obtain) occur as a matter of course. This case thus resembles *Thomas*, where a genuine threat of prosecution was lacking, in part, because in considering whether there was "a history of enforcement," the court observed that "in the twenty-five years that these [ ] laws have been on the books, the record does not indicate even a single criminal prosecution." *Thomas*, 220 F.3d at 1141. There, as here, "any threat of enforcement or prosecution … though theoretically possible—is not reasonable or imminent," *id.*, and Plaintiffs lack standing.

**3. Defendants properly rely on the Smyrnos Declaration, which demonstrates that AYA has not shown pre-enforcement standing.**

In their opening brief, Defendants cited *Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004), for the general proposition that where, in a motion under Rule 12(b)(1), a defendant brings a factual attack to jurisdiction, the court may consider evidence beyond the complaint. In *Safe Air*, the district court erred in dismissing the complaint under 12(b)(1) on the basis of a factual challenge because "the jurisdictional issue and substantive issues in this case are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." 373 F.3d at 1039. In attempting to distinguish *Safe Air*, Plaintiffs fail to note that the jurisdictional and substantive issues are "intertwined" only where "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id.* Thus, in *Safe Air*, the "citizen suit" provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B), provided "'the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief,'" 373 F.3d at 1039. But here, while RFRA may provide the cause of action, it explicitly does not establish when a party has standing to bring its claims, *see* 42 U.S.C. 2000bb-1 (providing that for RFRA, standing "shall be governed by the general rules of standing under article III of the Constitution"). Because the Smyrnos Declaration goes to that jurisdictional question only, the issues here are not "intertwined," and the Court may properly consider it under Rule 12(b)(1).

In any event, the specific holding of *Safe Air* on which Plaintiffs rely only applies where jurisdictional facts are "genuinely disputed." *Safe Air*, 373 F.3d at 1039. But Plaintiffs' affidavits fail to create a "genuine dispute" as to whether Defendants "communicated a specific warning or threat to initiate proceedings" against them with respect to their ayahuasca use. *Thomas*, 220 F.3d at 1139; *see Rossides v. Gonzales*, 210 F. App'x 711, 712 (9th Cir. 2006); *see* Dkt. 175 at 8-9.

Plaintiffs allege their members have been threatened with prosecution for their involvement in visionary religion. FAC ¶¶ 59-62. In their opposition, Plaintiffs rely on these allegations to argue they have "established a history of past prosecution or enforcement under the statute." Opp'n at 8, 9 (citing FAC ¶¶ 60-62). The Smyrnos Declaration presents sworn testimony demonstrating that the actions undertaken by federal officials were wholly unrelated to ayahuasca, the only substance as to which Plaintiffs assert a RFRA claim, and were undertaken with no awareness of the existence of AYA. Smyrnos Decl. ¶ 2 (stating that investigatory referral concerned mescaline); *id.* ¶ 6 (attesting Smyrnos only became aware of AYA when the consignee of the intercepted package mentioned it); *id.* ¶ 8 (stating that neither AYA member was threatened with prosecution and the investigation was closed in July 2021).

Plaintiffs offer "the declaration of counsel," Dkt. 177-2, to "rebut[]" the Smyrnos Declaration. But the Carreon Declaration does no such thing. First, as to the facts of Agent Smyrnos's interaction with the consignee of the mescaline package, *see* Carreon Decl. ¶¶ 3, 18, Carreon lacks personal knowledge to offer this testimony, since he was not present at the time. Carreon's third-party description of the interaction thus cannot create a "genuine dispute" as to Agent Smyrnos's testimony. Second, the bulk of his declaration consists of purportedly scientific information regarding mescaline and various plants. *Id.* ¶¶ 5-7, 12-18. Even if it were proper to rebut a factual attack on jurisdiction with expert testimony, the Court should decline to consider it here, for Carreon has neither asked to be nor been certified by this Court as an expert. Further, his testimony regarding mescaline is irrelevant. The gravamen of the Smyrnos Declaration is that the investigatory referral to which Agent Smyrnos responded was not targeted at ayahuasca or AYA in any respect, did not include any threats of prosecution, and is now closed. Smyrnos Decl. ¶¶ 2-6. Finally, the Carreon Declaration is rife with speculation.

*See, e.g.*, Carreon Decl. ¶¶ 3, 11, 18. This is not the first time Plaintiffs have sought to dispute sworn representations with "speculative allegations" offered via "the declaration of their attorney." *See* Dkt. 57 at 18-20. At that time, Judge Orrick found that "those speculative allegations are overcome by sworn representations." *Id.* This court should similarly find the testimony Plaintiffs offer is insufficient to rebut this jurisdictional challenge.

**B. Plaintiffs Fail to Demonstrate Associational Standing.**

Defendants demonstrated that Plaintiffs failed to show associational standing for failure to satisfy the first and third *Hunt* factors. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (for associational standing one must demonstrate that the association's "members would otherwise have standing to sue in their own right" and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"). Plaintiffs fail to meaningfully rebut Defendants' argument, and their claims on behalf of their members must be dismissed.[2] As to the first *Hunt* factor, Plaintiffs' failure to demonstrate a credible threat of imminent prosecution for any individual plaintiff's standing, *see supra* at 2-5, equally dooms any finding of associational standing: the Complaint lacks plausible allegations of such a threat as to give anyone "standing to sue in their own right." *Hunt*, 432 U.S. at 343.

As to the third *Hunt* prong, although Plaintiffs rely on several cases for the proposition that "[i]ndividual participation is not necessary" where the association seeks only declaratory relief, none of the cited cases involves a RFRA claim. Opp'n at 16. To begin, it is Plaintiffs' burden to demonstrate that the challenged government policy imposes a substantial burden on their religious exercise. *See Oklevueha*, 828 F.3d at 1015. Moreover, Plaintiffs' response fails

---

[2] Plaintiffs' suggestion that Defendants "waived" this defense by not raising it in a prior motion to dismiss is wrong. First, Defendants may file new responses to amended complaints as a matter of course. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012). Second, Rule 12(b)(1) and (b)(6) defenses are not waivable. The first two prongs of associational standing are constitutional and "cannot be waived by any party." *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009). While the Supreme Court has characterized the third prong of associational standing as "prudential," *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996), Defendants' argument is that Plaintiffs failed to establish this element of their RFRA claim, a defense which is also not waivable before trial, *see* Fed. R. Civ. P. 12(h)(2); *see also* Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1361 (3d ed.) (noting that "defenses under Rules 12(b)(1) [and] 12(b)(6) . . . are exempted by Rule 12(g) from the consolidation requirement and are protected against waiver by Rules 12(h)(2) and 12(h)(3)").

to grapple with *O Centro's* instruction that RFRA contemplates "an inquiry more focused than [a] categorical approach" because it requires "application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006). And Plaintiffs cite no case in which a court found associational standing for a purported church to assert a RFRA claim on behalf of all of its members, without the participation of individual members. Opp'n at 16 (asserting, *ipse dixit*, that "the number of RFRA cases pursued in a representational capacity are too numerous to list here").[3]

Finally, *Hobby Lobby v. Burwell*, 573 U.S. 682 (2014), does not aid Plaintiffs. The plaintiffs asserting RFRA claims there were two for-profit closely held corporations, each of which was wholly owned and controlled by members of a family that espoused the same religious beliefs. 573 U.S. at 700-03 (describing religious beliefs of the two family member owners). The Supreme Court's holding that a closely held corporation wholly controlled by persons who all espouse the same religious beliefs can assert a RFRA claim on the corporation's behalf has no bearing on whether a purported church with an unknown number of members, none of whom (aside from the leader) has personally attested to any particular religious belief, can demonstrate associational standing to bring a RFRA claim on behalf of its membership.

## II. Plaintiffs' Opposition Confirms That They Have Failed to State a RFRA Claim.

As the outset, even assuming, but not conceding, for the purposes of this motion that AYA is a "religious institution and Visionary Church," FAC ¶ 8, AYA has failed to establish that its members hold the same religious beliefs about ayahuasca and that all practitioners use ayahuasca with a religious mindset. In an effort to deflect from that deficiency, Plaintiffs assert generally that "[t]he Supreme Court has expressly recognized the religious use of Ayahuasca."

---

[3] In *O Centro*, eleven members and four member officers were plaintiffs, filing affidavits regarding their individual religious beliefs. *See O Centro v. Ashcroft*, 282 F. Supp. 2d 1236, 1255 (D.N.M. 2002); *see also CHLQ v. Mukasey*, 615 F. Supp. 2d 1210, 1212 (D. Or. 2009) (two member officers and four members "appear[ing] to represent a reasonable cross-section of church members" participated as plaintiffs and provided testimony). Moreover, in *O Centro*, the government conceded for the preliminary injunction motion that the plaintiffs had made a prima facie case under RFRA, 282 F. Supp. 2d at 1253, so that case provides no relevant holding as to the requirement of individual participation for RFRA claims.

Opp'n 2. But AYA "cannot simply point to other groups who have won accommodations for the sacramental use of … hoasca and say 'we'll have what they're having.'" *United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016). And their reliance on *O Centro* and *CHLQ* is misguided: both cases pre-date the Guidance and involve differently situated plaintiffs. Opp'n at 2-3. Importantly, in each case, church members joined *as plaintiffs* in the suit, filing affidavits attesting to their individual religious beliefs and exercise. *See supra* n.3. Finally, although at the time of *O Centro*, DEA applied the CSA without exception for religious use, *id.* at 430, since 2009 DEA has considered religious exemptions through the very Guidance process Plaintiffs decline to use. Plaintiffs' bare contention that they are "in the same position" as the *O Centro* and *CHLQ* plaintiffs does not demonstrate that AYA is entitled to relief under RFRA.

**A.  The CSA Does Not Impose a Total Ban or Substantial Burden on Plaintiffs.**

Plaintiffs principally argue that DEA's general enforcement of the CSA imposes a substantial burden, Opp'n at 3, without responding to Defendants' contrary arguments, Dkt. 175 at 12-13. Plaintiffs instead parrot the same mischaracterization from their Complaint: that they are burdened "because the DEA and DHS interpret the [CSA] to enact a complete ban against the religious sacrament Ayahuasca." FAC ¶ 10; Opp'n at 3. Not so. The CSA and its regulations mandate that DEA establish a closed system for manufacturing, distributing, dispensing, importing, exporting, and conducting research of controlled substances. Through the Guidance, religious claimants can petition for a registration to handle substances within that system. Dkt. 175 at 2-4. For *any* group, religious, academic, or otherwise, Congress's general prohibition on the unregistered handling of controlled substances remains in place until an applicant receives a registration. There is no "absolute ban" for religious claimants.

Moreover, Plaintiffs have no response for their failure to allege that any member has been forced to stop practicing his religion as a result of the CSA, as one must to establish a substantial burden under RFRA. Dkt. 175 at 13. Instead, they improperly offer a factual allegation post-dating their Complaint of "a person who cancelled his attendance at an AYA ceremony" because "there is a chance it could be raided by the police." Opp'n at 4. This speculative allegation cannot demonstrate a substantial burden or show a reasonable fear of prosecution.

*See EPIC v. Pacific Lumber Co.,* 469 F.Supp.2d 803, 816 (N.D. Cal. 2007) (facts from member who joined post-filing not to be considered). Even if true, the allegation is silent as to whether the person is an AYA member with a sincere religious belief in ayahuasca consumption that is substantially burdened by the requirement that AYA seek a DEA registration, rather than a curious outsider.

### B. The Guidance Does Not Impose a Substantial Burden.

Nor does the Guidance process constitute a substantial burden. A substantial burden must impugn on *religious exercise*. AYA must sufficiently plead it would be "coerced to act contrary to [its] religious beliefs" by seeking a RFRA exemption. *Navajo Nation v. U.S. Forest Serv.,* 535 F.3d 1058, 1069-70 (9th Cir. 2008) (en banc). To that end, courts have held that seeking a permit generally does not constitute a substantial burden on religious exercise. *See* Dkt. 175 at 13-14 (citing cases).[4] Indeed, both cases Plaintiffs cite firmly support Defendants' position. Opp'n at 12-13. In *United States v. Tawahongva,* 456 F. Supp. 2d 1120 (D. Ariz. 2006), the court found that a permit requirement was not a substantial burden because it did not burden the plaintiff's religious beliefs. And in *United States v. Gonzalez,* 957 F. Supp. 1225 (D.N.M. 1997), the court found there was a substantial burden where plaintiff alleged the information disclosure *itself* would violate his religious beliefs. But Plaintiffs here make no argument that disclosing information through the Guidance process would be a violation of any religious belief.

While Plaintiffs offer a number of reasons why the Guidance itself might constitute a substantial burden, they actually conflate the idea of burdening *religious exercise* with the idea of a process being *generally* burdensome. Opp'n at 12 (offering up as potential burdens, *inter alia,* speculation about potential inculpatory statements and costly legal services). None of their grievances constitute "coer[cion] to act contrary to [AYA's] religious beliefs." *Navajo Nation,* 535 F.3d at 1069-70. Moreover, as this Court previously recognized, "[t]he Guidance does not require Plaintiffs to do anything, or prevent them from doing anything," and for the same reason, cannot be said to impose a substantial burden under RFRA. Dkt. 153 at 8.

---

[4] Plaintiffs do not acknowledge, much less distinguish, any of the substantial burden cases cited in Defendants' motion, except for *United States v. Tawahongva,* which is discussed herein.

1    Plaintiffs' other attempts to plead a substantial burden fare no better. **First**, the seizure of

2    a Schedule I controlled substance is not itself proof of a substantial burden, Opp'n 4, because

3    AYA has continued to host ayahuasca ceremonies regularly in the nearly two years since that

4    seizure. **Second**, sworn testimony belies Plaintiffs' speculative assertions about "DHS en-

5    forcement actions," Opp'n at 4-5, demonstrating that any "enforcement actions" were unre-

6    lated to AYA or Plaintiffs' ayahuasca use, and resulted in no threat of prosecution prior to

7    closure of the investigations. **Last**, Plaintiffs resurrect their allegation that they are "burdened

8    by the threat of heavily armed police raids by a Federal-State HIDTA Task Force." Opp'n at

9    5. But this Court already rejected these allegations in ruling on Defendants' motion to dismiss

10   the Fourth Amended Complaint, *see* Dkt. 153 at 14, and similarly should not credit them here.[5]

11   Ultimately, Plaintiffs' position is an extreme one: that RFRA does not permit Congress to

12   enact a general requirement if it might touch on an alleged religious activity, even where a

13   specific religious-use exemption process exists within an agency. This cannot be the case, and

14   indeed, such a position is inconsistent with precedent. *See Little Sisters of the Poor Saints Peter &*

15   *Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2380, 2383 (2020); Dkt. 122 at 5.

16   Finally, AYA mistakenly asserts that Defendants ask the Court to "require AYA to seek an

17   exemption from DEA in the first instance." Opp'n at 17. But Defendants were clear in their

18   motion: "Even though the Court is not *required* to dismiss in light of Plaintiffs' failure to ex-

19   haust their available administrative remedies, an order deferring further litigation until the ad-

20   ministrative process has run its course is warranted." Dkt 175 at 15. That remains true. *Id.*

21

22

23   [5] Plaintiffs' assertion that the Guidance constitutes an *ultra vires* action by DEA is unsupported
     and incorrect. Opp'n at 10-11. Such a claim is a "Hail Mary pass." *Fed. Express Corp. v. United*

24   *States Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022). Defendants previously rebutted this
     argument, Dkt. 121 at 4-5, both as a matter of statutory authority and controlling caselaw. In

25   any event, this Court dismissed Plaintiffs' challenge without leave to amend because AYA "has
     not participated in the exemption process." Dkt. 153 at 9. Plaintiffs then dropped their *ultra*

26   *vires* claim in this Complaint and may not resurrect it in their opposition brief. *Sechrest v. Ignacio*,
     549 F.3d 789, 804 (9th Cir. 2008) ("[A]mendment of a complaint or petition constitutes waiver
     of any omitted arguments or claims from previous versions of the complaint or petition."); *see*

27   *also* Dkt. 77 ¶ 94 ("The DEA has no statutory authority under either the CSA or RFRA to
     regulate Free Exercise. . . ."); Dkt. 94 at 12-13. Similarly, Plaintiffs improperly assert in their

28   opposition brief other unpleaded claims. *See, e.g.*, Opp'n at 4 (referencing a takings claim).

11

Dated: October 31, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Lisa Newman*
LISA NEWMAN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Fax: (202) 616-8470
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for the Federal Agency Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2022, I electronically transmitted the foregoing Federal Agency Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Fifth Amended Complaint [Doc. 159] to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

*/s/ Lisa Newman*
LISA NEWMAN