BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

LISA NEWMAN
BONNIE DEVANY
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Email: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Circle
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>             Plaintiffs,<br><br>    v.<br><br>Merrick Garland, Attorney General of the United States, *et al.*,<br><br>             Defendants. | No. 2:20-cv-2373-ROS<br><br>**JOINT STATEMENT ON DISPUTE OVER PLAINTIFFS' RESPONSES TO DEFENDANTS' FIRST SETS OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** |

Table of Contents

**Issue 1: Information about AYA leadership, those who facilitate ceremonies or make decisions about participants, and the training of such individuals (Rog Nos. 2, 3, 5, 16; RFP Nos. 21, 22).** ................................................................................................... 7

    A.   Interrogatory No. 2: ................................................................................................... 8

    B.   Interrogatory No. 3: ................................................................................................. 10

    C.   Interrogatory No. 5: ................................................................................................. 12

    D.   Interrogatory No. 16: ............................................................................................... 14

    E.   RFP No. 21: ............................................................................................................. 16

    F.   RFP No. 22: ............................................................................................................. 18

**Issue 2: Information about AYA's ayahuasca ceremonies and the safety protocols for ceremony participants (Rog Nos. 3-5, 7-9, 14, 17; RFPs Nos. 3, 11-17, 23).** ................. 20

    A.   Interrogatory No. 3: ................................................................................................. 21

    B.   Interrogatory No. 4: ................................................................................................. 22

    C.   Interrogatory No. 5: ................................................................................................. 24

    D.   Interrogatory No. 7: ................................................................................................. 26

    E.   Interrogatory No. 8: ................................................................................................. 28

    F.   Interrogatory No. 9: ................................................................................................. 30

    G.   Interrogatory No. 14: ............................................................................................... 32

    H.   Interrogatory No. 17: ............................................................................................... 34

    I.   RFP No. 3: ............................................................................................................... 37

    J.   RFP No. 11: ............................................................................................................. 39

    K.   RFP No. 12: ............................................................................................................. 41

    L.   RFP No. 13: ............................................................................................................. 43

    M.   RFP No. 14: ............................................................................................................. 45

    N.   RFP No. 15: ............................................................................................................. 46

    O.   RFP No. 16: ............................................................................................................. 47

    P.   RFP No. 17: ............................................................................................................. 48

    Q.   RFP No. 23: ............................................................................................................. 50

**Issue 3: Information regarding ayahuasca ceremonies generally, including how the controlled substance is sourced, handled, accessed, and stored (Rog Nos. 10-12; RFP Nos. 18, 20).** ..................................................................................................................... 51

    A.   Interrogatory No. 10: ............................................................................................... 53

    B.   Interrogatory No. 11: ............................................................................................... 55

C.  Interrogatory No. 12: ..................................................................................57

D.  RFP No. 18: ........................................................................................................59

E.  RFP No. 20: ........................................................................................................61

**Issue 4: Information regarding the sincerity of AYA's beliefs and practices, and those who wrote edited, or advised on core documents (Rog Nos. 18, 21, 23; RFP Nos. 4-8, 10). .................................................................................................................................. 63**

A.  Interrogatory No. 18: ........................................................................................64

B.  Interrogatory No. 21: ........................................................................................66

C.  Interrogatory No. 23: ........................................................................................68

D.  RFP No. 4: ..........................................................................................................70

E.  RFP No. 5: ..........................................................................................................71

F.  RFP No. 6: ..........................................................................................................73

G.  RFP No. 7: ..........................................................................................................74

H.  RFP No. 8: ..........................................................................................................76

I.  RFP No. 10: ........................................................................................................78

**Issue 5:  Plaintiffs' Objections ........................................................................... 79**

A.  Confidentiality promises made to third parties ...................................80

B.  Medical Records...........................................................................................81

C.  First Amendment Religion Clauses.........................................................83

D.  Priest-penitent privilege .............................................................................85

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Introduction**

The parties respectfully provide the following statement regarding their dispute over the sufficiency of Plaintiffs' responses to Defendants' First Set of Requests for Production (Exs. A and B) and Defendants' First Set of Interrogatories (Exs. C and D).  Following several conferrals and a deficiency letter from Defendants (Ex. E), Plaintiffs provided a supplemental response to certain Interrogatories (Ex. D) and a supplemental response to certain Requests for Production upon leave of court (Ex. B).[1]  However, the parties remain at an impasse about Plaintiffs providing the information Defendants seek, and their respective positions are explained below.  While the recitations below are lengthy, the parties have endeavored to distill and categorize the areas of dispute for ease of review by the Court.  Defendants initially proposed only submitting four categories of disputes in four paragraphs.  As detailed below, Plaintiffs object to including arguments regarding multiple interrogatories and RFPs as a single issue.  The following statement attempts to merge these approaches by separating the statement into five categories, and then presenting the discrete issues within those categories on a request-by-request basis.  The five categories are: (1) AYA leadership, structure, & facilitators; (2) AYA's safety protocols; (3) AYA's ayahuasca ceremonies & handling; (4) information regarding the sincerity of AYA's beliefs & practices; and (5) Plaintiffs' objections.  For ease of reference, the parties have included the text of the disputed ROG or RFP and Plaintiffs' written response to that request.

**<u>Defendants' General Position Statement</u>**:

Plaintiffs' responses fall substantially short of their discovery obligations and deny Defendants information needed to fairly contest Plaintiffs' "prima facie case under RFRA," and to establish Defendants' "affirmative defense." *Gonzales v. O Centro*, 546 U.S. 418, 428 (2006).  In

---

[1] Defendants served the First Set of Requests for Production on September 1, 2023 (Ex. F).  Defendants also served the First Set of Interrogatories on September 1, 2023 (Ex. G).

the 5 months since discovery has been served, Defendants still know very little about AYA, the safety of its practices, those who lead or attend its ceremonies, and how it imports, handles, stores, or transports ayahuasca. To date, Plaintiffs have produced only an excel spreadsheet of 2018 survey responses, a screenshot of one email that was included as an exhibit to its PI, which appears to be altered, and have otherwise refused to search for or produce communications in response to Defendants' requests.  Moreover, apart from 39 pages describing AYA's ceremonies, Plaintiffs have largely re-produced documents already included in the docket in this case. AYA allegedly brought this action to bring its religious practice "out of the shadows," but refuses to produce any of its documents, leaders or attendants, practices, or communications.  Defendants are entitled to discovery to support their defense and to test Plaintiffs' representations.  *Oklevueha v. Holder*, 2013 WL 3243371, at *5 (D. Haw. 2013) (Defendants are entitled to information to test the "genuineness of Plaintiffs' religious beliefs and whether the [CSA] is a substantial burden on those beliefs").  Moreover, for the first time in this joint statement, Plaintiffs raise a Fourth Amendment objection that has been waived and otherwise has no bearing in civil discovery—particularly where Defendants seek records as part of the normal course of discovery (not as part of a search and seizure under the Fourth Amendment) in a civil lawsuit initiated by Plaintiffs.  *See Lease v. Fishel*, 2009 WL 922486, at *5 (M.D. Pa. Apr. 3, 2009) ("Fourth Amendment is not implicated in [] case" involving civil discovery and overruling that objection); *In re Application of O'keeffe*, 2016 WL 2771697, at *5 (D. Nev. Apr. 4, 2016) (A party may not invoke privacy "to prevent discovery regarding matters that a party places in controversy.").

**Plaintiffs' General Position Statement**:

Defendants seek to conjure fear of Ayahuasca by quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) for the observation that DMT is "exceptionally dangerous."  However, Defendants truncate the quote to elide the Court's nuanced observation that "***there is no indication that Congress, in classifying DMT, considered the harms posed by the [religious] use at issue***."  *O Centro Espirita Beneficente*

*Uniao do Vegetal*, 546 U.S. 418, 423, 126 S. Ct. 1211, 1216 (2006)(emphasis added, internal cites omitted).  Defendants are here to aid the Court to ascertain whether Plaintiffs' Ayahuasca use is religious and important to them.  *See*, *Coronel v. Paul*, 316 F. Supp. 2d 868, 878 (D. Ariz. 2004)(religious motivation test adopted).  An inquisitorial process is neither necessary nor appropriate, especially as Defendants essentially admit lacking any grounds to criminally investigate Plaintiffs.  Plaintiffs' custody of emails and private communications with AYA members and other AYA correspondents does not provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers protected by Fourth Amendment warrant requirement.  Defendants' inquiries and demands are also constrained by the First Amendment.  *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir. 1979).

**Issue 1: Information about AYA leadership, those who facilitate ceremonies or make decisions about participants, and the training of such individuals (Rog Nos. 2, 3, 5, 16; RFP Nos. 21, 22).**

**Defendants' Position:**

These requests seek basic but crucial information about AYA's leadership, including ceremony facilitators and decision makers and their training. *See Oklevueha*, 2013 WL 3243371, at *5 ("information concerning the membership and leadership" is "calculated to lead to discovery of admissible evidence concerning the genuineness of Plaintiffs' religious beliefs and whether the [CSA] is a substantial burden on those beliefs").  This information is relevant to Defendants' affirmative defense under RFRA: if AYA establishes its prima facie case, Defendants must make an individualized showing that application of the CSA and its implementing regulations *to AYA* is the least restrictive means of furthering a compelling government interest.  42 U.S.C. § 2000bb-1(b).  Discovery about AYA's structure and practices is relevant to this inquiry.  Information about *who* leads ceremonies, trains individuals, and handles controlled substances is essential to evaluating whether AYA's practices pose health or safety risks to participants or diversion risks (and thus health or safety risks to the broader public), and whether facilitators can be trusted to administer a controlled substance and implement security measures required of DEA registrants handling controlled substances.

**A.  Interrogatory No. 2:**

2.     Identify each and every person who has served in, have been asked to serve in, or has requested to serve in, a leadership role or position of authority in one of your ceremonies or in your organization, including any individual who has served as, has been asked to serve, or has requested to serve as, your "Minister of the Assembly," "lead facilitator," a facilitator other than "lead facilitator," a member of your Board of Directors, or as an advisor to your organization.  For each person identified, indicate which role or roles the person served in, was requested to serve in, or requested to serve in, and when the person served in, was requested to serve in, or requested to serve in, that role or, if the person never served, why not.

Plaintiffs' Response: Over the life of AYA, Stanley has served as "Minister of the Assembly" and "lead facilitator" at virtually all ceremonies, except for occasional exceptions when Stanley was in Peru. Since the establishment of the AYA Maloka in January 2022, Stanley has been the lead facilitator for 97% of AYA ceremonies. Stanley is the sole member of the AYA Board of Directors. AYA will provide an anonymized organization chart with descriptions of the type of work performed by AYA staff.

**Defendants' Position**:

AYA's interrogatory response is incomplete.  AYA does not identify: who other than Stanley serves as the lead facilitator; the 3-8 other facilitators present at ceremonies, *see* ROG 16 response; who has served in leadership roles or positions of authority and details about those roles; who requested to serve in leadership roles, but did not, and why; and AYA's advisors. AYA's disclosure of 7 additional names with no other information does not sufficiently respond to the request and is insufficient under Rule 26 because it does not "identify the subjects of that information." The information is crucial to understanding who is and has been in AYA leadership, who holds positions of authority over individuals under the influence of a controlled substance, and who handles AYA's controlled substances. In addition to identifying potential witnesses, this information is essential to DEA's case, such as whether facilitators can be trusted to administer a Schedule I controlled substance, implement meaningful security measures required of DEA registrants handling controlled substances, and how/whether AYA

determines whether someone is or is not fit to serve in leadership. *Oklevueha*, 2013 WL 3243371, at \*5. Limitations on depositions Defendants may take is not a basis for withholding.

**Plaintiffs' Position**:

AYA has disclosed eight names of witnesses able to testify in support of AYA's RFRA case. The Court should find this disclosure sufficient to satisfy the proportionate needs of the Defendants, as ten is the maximum number of depositions the Defendants are entitled to take under F.R.Civ.P. 30(a)(2)(A)(i).

**B. Interrogatory No. 3:**

3.      Identify and describe each and every instance in which you provided training to any individual identified in response to Interrogatory No. 2.  For each instance identified, indicate who led the training, who received the training, when the training occurred, the content of or topics covered during the training, and any materials used during the training.

Plaintiffs' Response: Each person who has served as lead facilitator at an AYA ceremony has been personally approved to perform that service to the congregation by Stanley. Since the establishment of the AYA Maloka in January 2022, Stanley has been the lead facilitator for 97% of AYA ceremonies.

**Defendants' Position**:

Plaintiffs' response is entirely unresponsive to the request.  This request does not ask who approved facilitators or facilitated ceremonies but rather seeks information about the *training* of those in positions of leadership/authority.  "Schedule I substances such as DMT are exceptionally dangerous."  *O Centro*, 546 U.S. at 432.  Should Plaintiffs establish a prima facie case, Defendants must make an individualized showing that enforcing the CSA against Plaintiffs is the least restrictive means of furthering Defendants' compelling interest.  *Id.*  Understanding AYA's training procedures is essential to evaluating whether the practices for which AYA seeks an exemption pose health/safety risks to participants or diversion risks (and thus concomitant health/safety risks to the broader public).  Plaintiffs improperly attempt to supplement their verified response by indicating, for the first time in this joint statement, that individuals leading or facilitating ceremonies do not receive training, thereby underscoring the incompleteness and insufficiency of Plaintiffs' verified response.  If Plaintiffs wish to supplement their responses, they must do so with proper certification.

**Plaintiffs' Position**:

"Training" in ceremonial practice is not generally an activity separate from ceremony itself, and those who wish to increase their role in the ceremonial activity are not selected according to any specific procedure, or put through any particular training.  That said, AYA is currently working towards developing a curriculum for use with those who aspire to perform a facilitator

role, and to enhance the way that ceremony is provided to the community.  This project has not yet generated any working documents; however, as the project progresses, AYA will supplement its responses.  Plaintiffs are not attempting to improperly supplement a response, but simply explaining the grounds for the response that was provided.

## C. Interrogatory No. 5:

5.     Identify each and every instance in which a person was not "approved to participate" in one of your ceremonies, either "by the Minister of the Assembly" or by someone else within your organization.[6]  For each instance identified, please identify the person who made the decision, the reason or reasons for the decision, how that decision was communicated to the person not approved to participate, and whether the person not approved to participate was ever permitted to participate in one of your ceremonies on any other occasion.

Plaintiffs' Response: AYA has a list of people who will not be allowed to participate in ceremonies in the future. People can be put on the list for a variety of reasons. Stanley always makes the final determination for whether someone will be put on the list. When someone is put on the list, they are told personally, orally, and sometimes they have been told in writing. Aside from this list, there are no records from which to compile the information requested.

**Defendants' Position**:

Plaintiffs' response is incomplete, answering only part of the request.  Plaintiffs' statement that "people can be put on the list for a variety of reasons" does not reveal, as the request asks, the reason for why someone was not approved to participate, who made that decision, and how it was communicated.  This information is relevant to how AYA's screening process is operationalized and communicated.  This would include, but is not limited to, a denial of participation based on AYA's intake form and medical questionnaire or because a person did not comply with AYA's ceremonial guidelines.  If this information is conveyed in writing (whether by email or another form of written communication), Defendants have requested and are entitled to production of such information.  Because a protective order is now in place, Plaintiffs must provide this information in an unredacted, non-anonymized form.  This request does not seek a "confession" between a spiritual advisor and parishioner and thus the priest-penitent privilege does not apply.  *See* Issue 5.D, *infra*. It is insufficient that Plaintiffs' refusal to provide a complete response is based on supposition below (not in a verified response) that the reason for being placed on a list is "likely" because of something an individual said or did.

**Plaintiffs' Position**:

Seeking list of people who have been banned from AYA ceremony, and the reasons why, masks an improper effort by the Defendants to judge the religious beliefs of the Plaintiffs. Plaintiffs have offered to provide anonymized information responsive to this Interrogatory, and the Court should require no more.  An inquiry into the identity of third-parties to this litigation "not approved to participate to participate in ceremony" is irrelevant to determining any matter in support of Plaintiffs' claims or Defendants' defenses.  Such information may be protected from disclosure by the priest-penitent privilege (ARS § 12-2233), that applies where ""The clergy member receiving the confidential communication [is] enjoined by the practices or rules of the clergy member's religion to receive the confidential communication and to provide spiritual counsel." *Waters v. O'Connor*, 209 Ariz. 380, 385, 103 P.3d 292, 297 (Ct. App. 2004).  When Mr. Stanley tells someone not to come back to ceremony, that is likely because of something that individual said or did, and thus, the privilege has likely application.

**D. Interrogatory No. 16:**

16.    Identify each and every one of the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback."[16]  For each individual identified, describe the "knowledge and feedback" sought or shared.

Plaintiffs' Response: Plaintiffs state that we are continually in a process of call and response with our members in and out of ceremony. We share significant peer support within the anonymity of our church membership. We would consider it a betrayal of trust to see the release of these names and the tenor of these conversations to public agencies. One of our teachers in Peru is Eladio Melendez Garcia, whose statement of support has already been entered into the record. Jonathan Goldman, director for the Asland, Oregon branch of the Santo Daime has been a great benefit to our efforts in sharing his wisdom and support. His declaration has, likewise, been entered into the record. Our community for peer support is significant, including the 38 churches now enrolled as members in the North American Association of Visionary Churches (NAAVC). Although some member churches in the NAAVC may be small, with congregations under 100, other churches are far larger with congregations larger than 1,000. We draw spiritual support within our religious community. We are seeking to learn from and protect our religious community, our teachers, and our peers. Federal investigations of identified members of our community at their homes, though the mails, online, or through this legal action, would squelch our practices of speech and religious practice no less than positioning Federal investigators or squad cars outside of a Catholic church, no matter how well intended, to ask about that day's confessions. That said, how members of our congregation represent their religious practices within their own families, professions, schools, secular and orthodox communities is already clearly inhibited, as identified in the surveying of our membership already entered into the record of this case.

**Defendants' Position:**

Plaintiffs' response is insufficient, and Plaintiffs may not rely on anonymity to avoid answering this question.  It is implausible that Plaintiffs rely only on Eladio Menendez and Jonathan Goldman as the source of peer support, and inconsistent with Stanley's declaration in which he stated that Plaintiffs also consulted with "community lions such as" Jeffrey Bronfman and Jonathan Goldman. Dkt. No. 33-1 at 8.  The words "peer support" is a term used by Plaintiffs, and they are responsible for explaining what that term means and providing responsive documents.  Defendants are not seeking to invoke "federal investigations of identified members," in disclosing this information.  Plaintiffs filed this lawsuit, and Defendants are entitled to discovery about its practices.  This request seeks documents relevant to identifying

14

potential witnesses and evaluating the safety and sincerity of Plaintiffs' practices.  To date, Plaintiffs have not produced any redacted documents responsive to this request, and in any event, such redactions are inappropriate as Plaintiffs can only protect personally identifiable information by designating it as confidential under the Protective Order.

**Plaintiffs' Position**:

Plaintiffs responsively have disclosed: (1) the names of Mr. Stanley's teacher, Eladio Menendez Garcia, and Jonathan Goldman, Mestre of the Santo Daime that received a RFRA judgment in favor of his church and exoneration from criminal allegations due to his Ayahuasca use; and, (2) AYA's membership in the North American Association of Visionary Churches and its member churches.  It is unclear what further disclosures Defendants reasonably expect, or how they would be relevant to any defense the Defendants have alleged in their Answer.  That Defendants find these facts "implausible," and project the existence of other inspirators for the Plaintiffs does not create discoverable information.  Further information is not available.

1

**E. RFP No. 21:**

2          21.     Produce any and all documents that identify, describe, refer to, or contain

3    communications to or from any and all individuals from whom you seek guidance or

4    consultation, whether or not within your organization, including, but not limited to, the

5    "honored educators" and "peers" from which you seek, and with whom you share,

6    "knowledge and feedback," as well as and any association of psychedelic churches.[18]

7          Plaintiffs' Response: Responsive documents exist, and have been produced previously.

8    Additional responsive documents will be produced, with redactions of personally-identifying
     information. Some responsive documents are communications with experts that will be

9    produced during the expert disclosure and discovery phase of this litigation.

10   **Defendants' Position**:

11   Apart from a single screenshot of an altered email, Plaintiffs have not produced a single

12   communication in response to this request, despite stating that the "sharing of knowledge and

13   feedback among peers is crucial," Dkt. No. 33-5 at 3, and acknowledging AYA's membership

14   the NAAVC, Ex. D at 36.  This request seeks documents relevant to identifying potential

15   witnesses and evaluating the safety and sincerity of Plaintiffs' practices and has nothing to do

16   with determining the "sanctity" of communications.  Defendants have a compelling interest

17   in "reducing the incidence of illicit, recreational" use of ayahuasca, including by preventing its

18   diversion to "people whose use is disconnected from any sincere religious practice." *United*

19   *States v. Christie*, 825 F.3d 1048, 1057 (9th Cir. 2016).  *Hobby Lobby* has no bearing on this

20   question: both the genuineness of the Plaintiffs' beliefs and the nature and character of those

21   beliefs is at issue.  Plaintiffs' response does not indicate that they intend to withhold any

22   documents, only that they intend to produce redacted documents (which they have not done).

23   Regardless, such redactions are inappropriate as Plaintiffs can only protect PII by designating

24   it as confidential under the Protective Order.

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Position**:

Plaintiffs have provided responsive documents and offered to provide additional documents with redactions of personally identifying information.  Such redactions will not result in any loss of relevant information, and will protect the confidentiality of what are religious communications with co-religionists.  The Defendants are not theologians, qualified to judge the sanctity of Plaintiffs' communications, and appear to be straying into "unsavory inquiries that violated the rights of individual believers and undermined the traditional prohibition against a judicial resolution of theological disputes," of which this Court wrote disapprovingly in *Coronel v. Paul*, 316 F. Supp. 2d 868, 878 (D. Ariz. 2004).  Yes, the Plaintiffs must satisfy the "religious motivation test" to prevail on its RFRA claim, but the Defendants have no license to scrutinize the rationality of AYA's beliefs.  *See, Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 765, 134 S. Ct. 2751, 2801 (2014)(exemption from duty to provide insurance for contraception granted to plaintiffs who believed certain contraceptives cause abortions).

17

**F. RFP No. 22:**

22.    Produce any and all documents that identify, describe, refer to, or contain materials used in the training of individuals who hold a leadership role or position of authority within your organization.

Plaintiffs' Response:  Responsive documents exist, and have been produced previously. Additional responsive documents will be produced, with redactions of personally-identifying information.

**Defendants' Position**:

Plaintiffs misconceived this request, which seeks documents that "identify, describe, refer to, or contain materials" that AYA uses in training referenced individuals.  "Schedule I substances such as DMT are exceptionally dangerous."  *O Centro*, 546 U.S. at 432.  Defendants must make an individualized showing that enforcing the CSA against Plaintiffs is the least restrictive means of furthering Defendants' compelling interest.  *Id.*  Documents related to the training of individuals in positions of authority is relevant to the government's compelling interest, such as whether the practices for which AYA seeks an exemption pose health or safety risks to participants or diversion risks (and thus concomitant health / safety risks to the broader public).  Such documents may demonstrate whether AYA trains its facilitators on what to do in a medical emergency or provides training to ensure medical, psychological, and sexual safety of participants; or whether a person not under the influence is present in case of a medical emergency.  The request is also relevant to determine whether AYA facilitators can be trusted to administer a Schedule I controlled substance.  Without seeing these newsletters, Defendants do not know such information is relevant to training or the complete source of such materials.

**Plaintiffs' Position**:

This RFP is disproportionate if the "any and all documents that identify, describe, refer to, or contain" description is applied literally; however, Plaintiffs have responded with all currently-available "materials used in the training of individuals who hold a leadership role," and have produce relevant documents.  Currently, Plaintiffs are preparing production of the largest

source of relevant material – over a hundred pages of the AYA Newsletter for two years of publication.  From this Newsletter document irrelevant information such as first names of some members who are mentioned in the Newsletters can be redacted without diminishing the relevance of the entire document.  The relevant point of the Defendants' would be to learn what training AYA offers, not the identities of the persons who receive it.

**Issue 2: Information about AYA's ayahuasca ceremonies and the safety protocols for ceremony participants (Rog Nos. 3-5, 7-9, 14, 17; RFPs Nos. 3, 11-17, 23).**

**Defendants' Position:**

These requests seek highly relevant information about the existence and sufficiency of AYA's protocols to screen participants and ensure their safety during ceremonies.  Defendants, for example, ask about how AYA determines whether someone may participate in a ceremony; the amount of ayahuasca served at ceremonies; medical or psychological assistance offered during ceremonies; the setting of ceremonies; and other safety measures to ensure the medical, psychological, and sexual safety of participants. Defendants also seek general information about participants, including how often individuals participate, and whether persons have been denied participation and on what basis. AYA seeks a religious exemption to handle and dispense a Schedule I controlled substance with known risks, and yet refuses to provide the kind of information that would has to be disclosed by any DEA registrant handling controlled substances.  Because Defendants must scrutinize "the asserted harm of granting specific exemptions to particular religious claimants," *O Centro*, 546 U.S. at 431, this information is relevant to determine whether AYA's practices pose dangers to participants' health or safety or a risk of diversion, as well as whether AYA's activities are sincere and religious.

**Plaintiffs' Position**:

Plaintiffs will present their argument specifically to each discovery demand and response.

**A.  Interrogatory No. 3:**

3.       Identify and describe each and every instance in which you provided training to any individual identified in response to Interrogatory No. 2.  For each instance identified, indicate who led the training, who received the training, when the training occurred, the content of or topics covered during the training, and any materials used during the training.

Plaintiffs' Response: Each person who has served as lead facilitator at an AYA ceremony has been personally approved to perform that service to the congregation by Stanley. Since the establishment of the AYA Maloka in January 2022, Stanley has been the lead facilitator for 97% of AYA ceremonies.

**Defendants' Position**:

Plaintiffs do not identify a single instance in which Plaintiffs provided training; nor do Plaintiffs deny having ever provided training.  They also do not provide the requested information about such trainings, if they exist.  Accordingly, Plaintiffs' response is insufficient. Defendants must make an individualized showing that enforcing the CSA against Plaintiffs is justified as the least restrictive means of furthering Defendants' compelling interest. Accordingly, information *specifically* about AYA's practices is relevant.  Understanding AYA's leadership training is essential to critical aspects of Defendant's case, including whether AYA's ceremonies pose health, safety, or diversion risks and whether facilitators can be trusted to administer a Schedule I controlled substance.

 **Plaintiffs' Position**:

Plaintiffs have previously addressed Interrogatory No. 3 above, and incorporate that argument here by reference.

**B.  Interrogatory No. 4:**

4.      Identify each and every person who has attended or participated in, or who has requested to attend or participate in, one of your ceremonies.  For each person identified, indicate when the person attended or participated, or requested to attend or participate; whether the person was permitted to attend or participate and any explanation as to why or why not the person was permitted to attend or participate; and how many times the person has attended or participated in one of your ceremonies.

Plaintiffs' Response: n/a

**Defendants' Position**:

Plaintiffs refused to respond to this request in its entirety.  Information regarding who and how many people consume or request to consume ayahuasca—and if they are denied, why— is essential to critical aspects of Defendants' case, including whether AYA's ceremonies pose health, safety, or diversion risks, and whether AYA limits administrating ayahuasca to sincere believers.  This request is also relevant to determine whether individuals can join AYA under false pretenses to obtain access to ayahuasca, for example, if a large portion of participants only partake in one ceremony.  *Christie*, 825 F.3d at 1057  (considering whether "distribution methods create[] a realistic probability that [the substance] intended for members" would be "distributed instead to outsiders who were merely feigning membership ... and adherence to [the group's] religious tenets").  Moreover, a party may not invoke privacy "to prevent discovery regarding matters that a party places in controversy."  *In re Application of O'keeffe*, 2016 WL 2771697, at *5 (D. Nev. Apr. 4, 2016); *see also Lease*, 2009 WL 922486, at *5, *infra* at 5.  Finally, this request is not overly burdensome.  Should AYA prevail on the very relief it seeks, AYA must comply with detailed recordkeeping requirements.  *See, e.g.*, 21 C.F.R. § 1304.

**Plaintiffs' Position**:

This interrogatory is disproportionate to the needs of the case, and compelling a response will not produce information relevant to the action.  Defendants seek information derivable

only from personal emails of AYA correspondents as to which they have a reasonable expectation of privacy, protected from compelled disclosure to Defendants except upon a showing of probable cause.  Plaintiffs have no authority to consent to digest the emails of their correspondents to determine "when the person attended … requested to attend or … was permitted to attend .. and any explanation as to why or why not the person was permitted to attend or participate." Further, it would require a skilled archivist hundreds of hours to compile the information, at a financial cost that Plaintiffs have not yet quantified, but request leave to do, should the Court somehow think this amount of labor warranted. Of course Plaintiffs, once protected by a judicial decree under RFRA, would be willing to disclose the limited information necessary to obtain a DEA registration number; however, that would not extend to disclosing all of AYA members and other correspondents.  The disclosures required by the DEA would be satisfied by disclosing five AYA members.

**C. Interrogatory No. 5:**

5.    Identify each and every instance in which a person was not "approved to participate" in one of your ceremonies, either "by the Minister of the Assembly" or by someone else within your organization.[6]  For each instance identified, please identify the person who made the decision, the reason or reasons for the decision, how that decision was communicated to the person not approved to participate, and whether the person not approved to participate was ever permitted to participate in one of your ceremonies on any other occasion.

Plaintiffs' Response: Plaintiffs propose to provide a selection of anonymized documents showing one or more instances of the sort sought by this interrogatory, with personal and location identifiers of non-parties redacted.

AYA has a list of people who will not be allowed to participate in ceremonies in the future. People can be put on the list for a variety of reasons. Stanley always makes the final determination for whether someone will be put on the list. When someone is put on the list, they are told personally, orally, and sometimes they have been told in writing. Aside from this list, there are no records from which to compile the information requested.

**Defendants' Position**:

Plaintiffs fail to identify a single instance in response to this request.  Instead, Plaintiffs offer to provide anonymized documents of cherry-picked instances, which is insufficient—now that a protective order is in place.  Defendants request a list of *all* persons denied participation and information regarding that decision to determine how AYA's policy works in practice, not in Plaintiffs' hand-selected instances.  Information about who and why AYA denied participation is highly relevant to determine whether AYA properly screens and excludes participants to protect the health and safety of ceremony participants, and adequately avoids diversion risks.  Such a determination is necessary to the individualized RFRA inquiry.  *See Oklevueha*, 2013 WL 3243371, at * 6 (finding requests "concerning the membership" of a religious organization were "reasonably calculated to lead to discovery of admissible evidence concerning the genuineness of Plaintiffs' religious beliefs and whether the [CSA] is a substantial burden on those beliefs").  Plaintiffs say this request is overly burdensome, yet they already possess "a list of people who will not be allowed to participate in ceremonies in the future," but simply

refuse to disclose it.

**Plaintiffs' Position**:

Plaintiffs answered the request to "identify the person who made the decision" not to allow someone to participate in an AYA ceremony as Plaintiff Stanley, who "decided all cases where a person was declined an opportunity to participate in an AYA ceremony."  In response to the disproportionate demand to comb through documents and elicit a multiplicity of information regarding each occasion when someone was declined a place in an AYA ceremony (why they were declined, how they were told, and whether the person was ever allowed to attend), Plaintiffs offered, pursuant to F.R.Civ.P. 33(d) "to provide a selection of anonymized documents showing one or more instances of the sort sought by this interrogatory, with personal and location identifiers of non-parties redacted."

**D. Interrogatory No. 7:**

7.    Identify each and every instance in which a ceremony participant's request to receive "an additional serving" was denied, including the date, time, and location of the ceremony, why the participant was not permitted to receive an additional serving, whether any assistance (medical or otherwise) was administered to the person, and whether the person was ever permitted to participate in one of your ceremonies on any other occasion.[8]

Plaintiffs' Response: Plaintiffs state that Ayahuasca is not a drug, any more than a human being is no more than a cascade of chemical reactions regulatable in total by either drug or governmental interactions. That said, dosage levels are measured and varied to individuals based on factors of weight, sensitivity profiles identified in intake questionnaires, and response to the initial dose of medicine. Once the sacrament is consumed, a significant degree of the practitioner's journey relies on their intention and willingness to accept the teachings found within their ceremonial experience. For the uninitiated, these experiences might be most easily described as states of struggle and surrender. Struggle, in the context of ceremony, might be described as the individual forcefully trying to direct their experience in an arresting and judgmental fashion. Surrender might be described as a nonjudgmental state of acceptance. In opening talks to ceremony prior to drinking, it's commonly stated that "We are all students of struggle and surrender, joy and sorrow, love and forgiveness." These inner states are just as regulatory to the experience as the actual dosage levels themselves. These inner states also attune to ceremonial music and the ceremonial setting. Dosage levels must be considered in this context. Dosage levels, specifically, are regulated by the lead facilitator to assure that each practitioner can get the most out of their experience. Additionally, purging of La Medicina is also a self-regulating factor in the experience of the participant. These six factors (dose level, intentions, inner-states of acceptance or struggle, purging, music, and setting) all work in tandem for the regulating of the practitioner's experience. It is the prayer, both prior and following the ingesting of the sine-qua-non host, that is an essential element for connecting with Divine Will in any church, regardless of governmental categorizations. We might also add that the unresolved legal case now before the court also effects dosage levels. There are people who will not participate in our church services until this case is resolved favorably.

**Defendants' Position**:

Plaintiffs' response to this interrogatory is insufficient as Plaintiffs do not identify a single instance where an additional serving was denied, nor do Plaintiffs assert this has never occurred. Plaintiffs below attempt to supplement their response regarding Stanley's role during the ceremony, further demonstrating that Plaintiffs' verified response is incomplete and insufficient. "Schedule I substances such as DMT are exceptionally dangerous." *O Centro*,

26

546 U.S. at 432. Should Plaintiffs establish a prima facie case, Defendants must make an individualized showing that enforcing the CSA against Plaintiffs is justified as the least restrictive means of furthering Defendants' compelling interest. *Id.* Information about whether and why additional servings were denied to participants (and whether such a denial was precipitated by a request for assistance) is relevant to determining whether AYA's individual practices pose dangers to participants' health or safety.

**Plaintiffs' Position**:

This interrogatory seeks to learn matters that are not recorded, and thus lie outside of AYA's institutional knowledge, or Plaintiff Stanley's direct recollection: "[E]very [time] a ceremony participant's request to receive 'an additional serving' was denied, including the date, time, and location of the ceremony," whether the person got sick, needed medical attention, came back for another ceremony, etcetera. Plaintiff Stanley isn't taking notes when he administers a ceremony. Rather, he is attending to six factors at work among the congregation -- dose level, intentions, inner-states of acceptance or struggle, purging, music, and setting. As he says, all "work in tandem for the regulating of the practitioner's experience." Accordingly, "dose level" is only one of several factors that determine whether a ceremonial participant wants or receives "an additional serving," and it may very well be that what the congregation needs is another song, a change of music, some cleansing puffs of incense or mapacho (native tobacco), and then, when the right set is established, another drink of Ayahuasca. This is the art of ceremony. The Defendants' desire to turn it into a medical procedure doesn't create discoverable facts.

**E. Interrogatory No. 8:**

8.    Identify each and every possible response to the document filed in this case as Dkt. No. 33-6 that, if provided by a prospective ceremony participant, would result in you determining that the prospective participant was not eligible to participate in one of your ceremonies.

<u>Plaintiffs' Response</u>: Without waiver of the said objections, Plaintiffs state that Defendants should refer to our medical intake questionnaire. Non-participation in ceremony for medical reasons includes, drug contraindications such as SSRI's and hypertensives, and physical issues, including but not limited to to heart, lung, kidney, digestive, arterial, and liver function. Each intake form is reviewed on a case-by-case basis.

A "yes" answer to any of the questions on the current version of the referenced document (previously produced) would prompt further inquiry before deciding whether to decline the application.

**Defendants' Position**:

Plaintiffs provide contradictory responses in their interrogatory response (above) and their position below.  In their interrogatory response, Plaintiffs indicate that a "yes" answer would result in further inquiry, while below, Plaintiffs indicate a person who provided a "yes" answer would be denied participation.  In their interrogatory response, Plaintiffs do not identify a single response that would result in denying participation.  Nor does Plaintiffs assert there is *no* response that would result in a denial, despite asserting so in litigation.  *See* Dkt. 33 at 3. Plaintiffs' response is both inaccurate with previous representations and insufficient. "Schedule I substances such as DMT are exceptionally dangerous." *O Centro*, 546 U.S. at 432. Information about all medical reasons that would result in AYA's denial of participation is highly relevant to determine whether AYA properly screens and excludes participants to protect their health and safety.  Moreover, Plaintiff previously stated that if certain conditions are disclosed "*further inquiries are made* of the prospective practitioners," which implies that this is not a "hypothetical scenario." *See* Dkt. 33 at 3.  If AYA has never denied participation or made the referenced inquiries, it must say so.

**Plaintiffs' Position**:

This interrogatory seeking "what [disclosure], if provided by a prospective ceremony participant, ***would result in you determining*** that the prospective participant was not eligible," seeks an answer to a hypothetical question, not discovery of existing facts.  Nonetheless, pursuant to Rule 33(d), Plaintiffs directed the Defendants to Plaintiffs' medical questionnaire, from which all relevant information on this topic may be derived, and noted that persons would be denied for "drug contraindications such as SSRI's and hypertensives, and physical issues, including but not limited to heart, lung, kidney, digestive, arterial, and liver function."  Plaintiffs have no additional information to provide, and speculation about circumstances that haven't arisen, but might result in a denial of permission to attend ceremony, are speculative matters irrelevant to any claim or defense.

**F.  Interrogatory No. 9:**

9.     For each of the statements regarding proper preparation in the document filed in this case as Dkt. No. 33-7, identify the medical or other trained professionals involved in drafting this document and the medical or other basis for including each of the statements in this document.

Plaintiffs' Response: Plaintiffs state that their written protocols derive from ancient unwritten practices passed through the indigenous media of song, art, and dance, and not from scientific studies. Scientific and medical protocols have been incorporated as useful and beneficial, including dietary and medication restrictions for consumption of MAO inhibiting beta carbolenes present in Ayahuasca. Medical professionals regularly attend our ceremonies. Plaintiffs' practices square with the published medical studies and expert medical testimony entered into the record. The manner in which the written protocols were generated would not be probative of any matter in dispute.

Plaintiffs do not intend to offer evidence that the referenced document was drafted by medical professionals.

**Defendants' Position**:

Once again, Plaintiffs improperly attempt to supplement their interrogatory responses below, further demonstrating that their responses are incomplete and insufficient.  In their response to this request, Plaintiffs neither confirm or deny whether any medical or trained professionals were involved in drafting the referenced document.  Plaintiffs' also respond that "scientific and medical protocols have been incorporated" but do not *identify* which protocols or expert studies they are referring to.  Plaintiffs' response is thus incomplete and insufficient.  Dkt No. 33-7 provides "important preparatory materials below that you'll absolutely need to participate in the best possible fashion."  Information concerning the medical consultation and basis for the guidance provided to ceremony participants is relevant to determining whether AYA's practices pose dangers to participants' health or safety.  It is also relevant to identifying potential witnesses.

**Plaintiffs' Position**:

This interrogatory seeks the identity of "medical or other trained professionals" involved in drafting a document (Dkt. No. 33-7).  This is a lot like asking a restaurant which doctor

drafted their Covid policy, or which doctor told them to wear masks in the kitchen. Plaintiffs haven't contended that the document was drafted by medical personnel. Rather, Plaintiffs explained: "Plaintiffs … written protocols derive from ancient unwritten practices passed through the indigenous media of song, art, and dance, and not from scientific studies. Scientific and medical protocols have been incorporated as useful and beneficial, including dietary and medication restrictions for consumption of MAO inhibiting beta carbolenes present in Ayahuasca. Medical professionals regularly attend our ceremonies. Plaintiffs' practices square with the published medical studies and expert medical testimony entered into the record." Plaintiffs have informed Defendants of all there is to know about this simple topic, and there is no dispute to adjudicate.

**G. Interrogatory No. 14:**

14.     Identify each and every instance in which aid, support, or assistance,[12] whether physical, medical, psychological, or otherwise, was offered, administered, or provided to any person prior to, during, or after a ceremony. For each instance identified, please identify the date, time, and location of the ceremony, the type of assistance provided, the reason that assistance was provided, whether the person receiving assistance was permitted to continue the ceremony, and whether the person to whom assistance was provided was ever permitted to participate in one of your ceremonies on any other occasion.

Plaintiffs' Response: Plaintiffs' entire ceremonial process involves rendering physical and psychological aid, support, and assistance. Visionary communion presents some congregants with challenging circumstances; however, the particulars of any individual non-party's ceremonial experience are not relevant to determining the claims and defenses alleged herein. Further, this interrogatory seeks non-party medical records, and any individual whose records would thereby be disclosed would have standing to object to disclosure. Given the burdens and minimal probative value of this information, it is not discoverable.

**Defendants' Position**:

Plaintiffs improperly supplement their response to this interrogatory via their response to a later interrogatory that asks about assistance or care *after* a ceremony.  Not only is this improper, but in *no* interrogatory response do Plaintiffs identify the "date, time, and location" of any such instance, they do not indicate whether that completely responds to "physical, medical, psychological" or other types of aid, and they do not provide an answer about assistance provided *prior to* or *during* a ceremony.  Plaintiffs response is incomplete and insufficient.  "Schedule I substances such as DMT are exceptionally dangerous."  *O Centro*, 546 U.S. at 432.  Information about the aid, support, and assistance AYA has provided in the past is highly relevant to determine whether AYA's individual practices pose dangers to participants' health or safety.  It is also relevant to identifying potential witnesses.  Even if state privilege law did apply, *see Lewis*, 517 F.2d at 237 (noting that while "a federal court may consider state privilege law" in a federal question case, federal common law, not state law, governs)*,* AYA may not assert the privacy of medical records privilege because it is not "a

health care provider" under the statute, A.R.S. § 12-2291(5).

**Plaintiffs' Position**:

This interrogatory is redundant of Defendants' Set 2, Interrogatory number 3, that asks in relevant part: "Identify each and every instance in which a facilitator determined that a participant requested or required "assistance or transportation after the ceremony," or "additional care" after the ceremony." Plaintiffs responded in full: "On one occasion in Spring 2023, an individual with a pre-existing health condition suffered a flare-up, and she was transported by paramedics to a local hospital, where she recovered from the flare-up. Specific medical information about her condition would of course be confidential." Accordingly, Defendants' Set 1, Interrogatory no. 14 has been responded to as well, and there is no issue to adjudicate.

**H. Interrogatory No. 17:**

17.    Describe the set and setting of your ayahuasca ceremonies, including but not limited to the location, the number and title of any facilitators, the number and title of any healthcare professionals, the number of participants, the physical and psychological environment, and mental preparation of the participants.

Plaintiffs' Response: Plaintiffs state that weekend ceremonies are conducted at our ceremonial Maloka west of the city of Tucson, Arizona two to three times each month. A maloka is the name for a ceremonial round-house in South America. Our Maloka is 50 feet in diameter positioned with views from the altar looking westward toward Boboquivari Peak. The door to the East faces the rising sun over the Sierrita Mountains on the winter solstice. The entryway faces the North Star. Members of our congregation, including master carpenters, engineers, and licensed contractors drove in from around the country from as far as Alaska to build our Maloka. Ceremonies range in size from 12 to 40 congregants held over alternate weekends over Friday, Saturday, and Sunday nights. The facilitator crew ranges from 3-8 people depending on the total participants for the night. Facilitators are First-Aid/CPR trained. Practitioners follow a set of prescribed guidelines as set in the AYA Preparation Guidelines. The guidelines include: the setting of intent for each practitioner, dietary restrictions for both food and media, and meditation. Particularly those with active addiction issues, we ask any participants be at least 5-days clean of substance use prior to ceremony. Regardless of addiction, we encourage a spirit of honesty for all participants. For drug users that fail to meet the guidelines, we'll issue them a credit for a later ceremony date. Each participant fills out both a medical questionnaire, and a personal questionnaire focused on their personal history, intentions, and reasons for attending. Each participant, new or returning, is greeted at the entrance and checked off against the list of people attending services for the night. Prior to ceremony, the facilitator staff members make the rounds to talk with people at their mats. The lead facilitator conducts an orientation talk for those new to the circle, including people who are new to La Medicina and those who are visiting with us from other circles for the first time. That talk gives people background on our troupe. That background includes our troupes training and experiences working with Ayahuasca and the attendant master plants of the Amazon. It also includes, a step-by-step review of what they can expect for the night. They're informed that prior to drinking we pass a pipe around the circle. The pipe is packed with Mapacho, a strong form of Peruvian tobacco. Practitioners are encouraged to take a few puffs without inhaling to blow the smoke over their hands, arms, and then using their palms to move the smoke over their chest and head. This is a traditional Amazonian entre into the hollowed inner space of the ceremonial field, as part of what's recognized in Amazonian traditions for ritual protections in keeping with the intentions of the ceremony. After this, we pass around a small mason jar of tobacco tea. Practitioners do not drink it, but rather, they aspirate half a spoonful up each nostril with a spoon. The tobacco tea clears the sinuses to make it easy to breath. The suggestion in the orientation talk is that the use of the tobacco tea makes an excellent reminder to return to the breath to treat the evening's ceremony with the reverence of a meditation by returning regularly to the breath. After the

tea, people are called to the altar, beginning with the first-timers. An hour after everyone has drunk La Medicina, we ring a singing bowl. At that point, everyone is free to come up to the altar to drink La Medicina at any point until the ceremony is completed with a closing blessing after morning's first light. Over the course of the night the facilitator staff come around with palo santo incense, and water blessed at the altar for people to drink. Icaros, the songs of the Amazon, are sung over the course of the night, including centuries-old songs in Quechua, but also other songs inspired by La Medicina written in Spanish, English, Quechua or a blending of the three languages. These songs are intended for the healing, cleansing, and blessing of the congregation. Each with its own specific intent. Aside from more sacrament, anyone with questions during ceremony is encouraged to call over one of the facilitator staff to their mat or to come up to the altar to address their unique situations with prayers and blessings. These often involve the use of mapacho smoke or what is commonly called tobaccoito. But it might also include hapé, a Peruvian powder blown up the nose composed of finely powdered wood-ash and mapacho. Cleanses at the altar may also include essences of flowers or master plants or agua de florida. The orientation talk also includes discussion of navigating La Medicina. Participants are told that the navigational center of the ceremonial experience in many ways is found in the feeling of surrender. Very often when people surrender in the social order they abdicate personal power. Inside of the ceremony experience when people allow themselves to experience surrender, they often reclaim personal power. It's explained to new attendees that it's nearly impossible to define surrender in this context, because it changes with each ceremony. But if surrender means anything, it simply means to allow yourself to feel. The talk goes on to describe how the moods inside of the ceremonial experience can be varied. They can feel strange, unsettling, weird, anxiety producing, scary, laugh-out-loud funny, tearful, joyful, or tranquil, etc. In reference to navigating through surrender people are told, "But whatever you're feeling, that's where the healing is taking place, especially if you feel like you don't what to feel that way, you want to feel some other way. If you're trying to push some mood away, there's your little flag to tell you that's your healing that you're feeling in that moment. If you can simply allow yourself to feel it, as best you can, that mood will let go of its hooks and on the other side is another layer of inner silence and Divine Love and you can abide in that place as long as like." The new-person orientation talk includes a question and answer period followed by a break before beginning the opening talk and the start of ceremony itself.

In the opening talk, prior to calling practitioners up to the altar, each facilitator introduces themselves and gives a brief talk on a range of topics that often include: love, forgiveness, surrender, gratitude, and God. A line of biblical scripture is recounted, gratitude is extended to the Spirit, and a short poem is read.

**Defendants' Position**:

Plaintiffs do not respond to this interrogatory in its entirety as they do not provide the number and title of healthcare professionals or the title of the "3-8" facilitators present at ceremonies. "Schedule I substances such as DMT are exceptionally dangerous." *O Centro*, 546 U.S. at 432.

35

Should Plaintiffs establish a prima facie case, Defendants must make an individualized showing that "its interest in combating diversion is compelling on the facts of this case." *Christie*, 825 F.3d at 1057.  Information about whether healthcare professionals are present at AYA's ceremonies is relevant to determining whether AYA's individual practices pose dangers to participants' health or safety.  It is also relevant to identifying potential witnesses.  As the *O Centro* quote illuminates, by seeking information *specific to AYA's practices*, Defendants are not invoking a "categorical answer" about the dangerousness of DMT, but rather are seeking individualized information to evaluate the risks of AYA's use of controlled substances.  *See Oklevueha*, 2013 WL 3243371, at *5.  Defendants cannot assess whether AYA poses a risk of diversion—much less present the issue to the Court—without this information.

**Plaintiffs' Position**:

Defendants attempt to conjure a fear of Ayahuasca by quoting O Centro, but the full reference illuminates the proper, measured, non-scaremongering approach to the issues in this case urged by the Supreme Court:  "Although Schedule I substances such as DMT are exceptionally dangerous, ***there is no indication that Congress, in classifying DMT, considered the harms posed by the particular use at issue***. That question *was* litigated below. Before the District Court found that the Government had not carried its burden of showing a compelling interest in preventing such harm, the court noted that it could not ignore the congressional classification and findings. But Congress' determination that DMT should be listed under Schedule I simply does not provide a categorical answer that relieves the Government of the obligation to shoulder its RFRA burden.

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 423, 126 S. Ct. 1211, 1216 (2006)(emphasis added, internal cites omitted).

## I.    RFP No. 3:

3.    Produce any and all communications regarding ayahuasca use with any person identified in your Initial Disclosures.

Plaintiffs' Response: Responsive documents have been produced (see link in footnote 1). Some responsive documents are withheld on the grounds objected above. Plaintiffs may produce additional documents pursuant to an appropriate confidentiality stipulation.

**Defendants' Position**:

Plaintiffs have not produced a single communication despite stating that they email participants prior to ceremonies, AYA0019, that participants may email them with any questions, AYA0021, and that they have a "pretty active [Facebook] group," AYA0018. The only communication Plaintiffs produced is a single redacted screenshot of an email from a participant requesting a "refund." AYA1055. Plaintiffs assert below that they have "responded proportionately" to this request, but have not articulated how they determined what is a proportional response—nor is Defendants' request limited to what Plaintiffs determine is proportional. Communications regarding ayahuasca are relevant in determining Plaintiffs' sincerity and in evaluating diversion concerns and health and safety risks to ceremony participants. Moreover, Plaintiffs' list of witnesses is inadequate under Rule 26, *see supra* at 8, and this request is not limited to communications between those individuals *and Plaintiffs* (Stanley and AYA), but rather, those individuals' communications about ayahuasca, which would include communications with participants.

**Plaintiffs' Position**:

Plaintiff has responded proportionately to Defendants' request for "all communications regarding ayahuasca use with any person identified in your Initial Disclosures." Plaintiffs' Rule 26 disclosures identified as prospective witnesses Plaintiff Stanley and "[s]elect AYA facilitators and congregation members whose identifying information may be disclosed pursuant to protective order." Plaintiff has now supplemented that list by disclosing another

seven (7) witnesses.  Plaintiffs will further supplement this response by searching for communications between them and Plaintiffs and providing copies thereof.

**J.   RFP No. 11:**

11.   Produce any and all documents that contain communications with any and all individuals who have facilitated, participated in, requested to participate in, or attended one or more of your ceremonies.   This request includes, but is not limited to, any and all communications sent to or from prospective or actual ceremony participants, including copies of the questionnaire filed in this case as Dkt. No. 33-6 in any state of completion as well as any communications with prospective or actual participants regarding ceremony logistics (time, place, etc.), ceremony eligibility (questions from prospective participants about eligibility, explanations from you about eligibility to participate, etc.), and other ceremony- or ayahuasca-related inquiries.

Plaintiffs' Response: Responsive documents exist, and will not be produced, based on the objections asserted above.

**Defendants' Position**:

Plaintiffs refuse to produce a single responsive document to this request.   Communications with ceremony participants, requesters, and facilitators are relevant in determining Plaintiffs' sincerity and in evaluating diversion concerns and health and safety risks to ceremony participants.   The privileges Plaintiffs assert are not applicable: Plaintiffs may not invoke the religion clauses as a privilege to withhold such information, *Cason v. Federated Life Ins.*, 510 F. App'x 663, 665 (9th Cir. 2013), and even if state privilege law did apply, *but see Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975) (noting that while "a federal court may consider state privilege law" in a federal question case, federal common law, not state law, governs)*,* the privacy of medical records is inapplicable as it applies only to medical records maintained by a "a health care provider," which does not include AYA, *see* A.R.S. § 12-2291(5); and Plaintiffs do not identify any "confession[s]" covered under the priest-penitent privilege, *see id.* § 13-4062(3), and may not assert the privilege as a "blanket exclusion," *see Fabricant*, 2008 WL 11504222, at *4.   Finally, Plaintiffs' Fourth Amendment objection, raised for the first time

here, has no bearing in civil discovery.  *See Lease*, 2009 WL 922486, at *5; *see also supra* at 5.

**<u>Plaintiffs' Position</u>**:

This RFP request requesting "communications with any and all individuals who have facilitated, participated in, requested to participate in, or attended one or more of your ceremonies … (further expansive requirements)" is disproportionate to the needs of the case, seeks irrelevant information, and imposes cognizable burdens under Rule 26(b)(1) by seeking the identities of AYA members and other third parties to this litigation.  Plaintiffs' custody of emails and private communications with AYA members and other AYA correspondents does not provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers protected by Fourth Amendment warrant requirement. Defendants' inquiries and demands are also constrained by the First Amendment.  *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir. 1979).  Some responsive communications are also covered by the Priest-Penitent Privilege, and may not be disclosed by Plaintiffs. **(ARS § 12-2233.)**  Communications that disclose the inner workings of AYA are also not subject to disclosure via compulsory process.  *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir. 1979).

**K.  RFP No. 12:**

12.    Produce any and all documents regarding or relating to your ceremonies, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present.  This request includes, but is not limited to, any and all documents regarding or relating to the location, time, set and setting, duration, frequency, format, cost, payment, advertising, and attendance of your ceremonies, as well as post-ceremonial integration.

Plaintiffs' Response: Responsive documents exist, and will not be produced, based on the objections asserted above.

**Defendants' Position**:

Plaintiffs contradict themselves in their RFP response and their asserted position below.  In their RFP response, Plaintiffs state that they will not produce any relevant documents, yet below, Plaintiffs assert they have already produced responsive documents.  Plaintiffs may not amend their RFP responses in this document.  Schedule I substances such as DMT are "exceptionally dangerous." *O Centro*, 546 U.S. at 432.  Should Plaintiffs succeed in establishing a prima facie case, Defendants would need to make an individualized showing that enforcing the CSA against Plaintiffs is justified as the least restrictive means of furthering Defendants' compelling interest.  *Id.*  The information sought in this request is both proportional and critical to Defendants' ability to evaluate diversion, safety, and health risks of AYA's ceremonies. Nor have Plaintiffs responded "abundantly."  Plaintiffs have produced only an excel spreadsheet and PDF of 2018 survey responses, a screenshot of one email included as an exhibit to its PI, which appears to be altered, and have otherwise refused to produce documents.  Apart from about 40 pages describing AYA's ceremonies, Plaintiffs have largely re-produced documents already included in the docket in this case.

**Plaintiffs' Position**:

Plaintiffs have responded abundantly to this response, producing all of the documents used to arrange and present ceremonies, images of its ceremonial Maloka, recordings of the sacred

songs that are sung in ceremony, and copies of its Tenets and Precepts, Ceremonial Instructions and Code of Ethics.  Because it has produced many responsive documents, Plaintiffs intended to decline to produce disproportionate, irrelevant material;  thus, Plaintiffs should have responded that "***additional*** responsive documents exist, and will not be produced, based on the objections asserted above."  The Supreme Court did not observe that DMT "is exceptionally dangerous" as a justification for treating churches that use Ayahuasca as suspected drug dealers, because in scheduling DMT, Congress took no account of the potential religious uses of DMT-containing Ayahuasca.  *O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 423, 126 S. Ct. 1211, 1216 (2006).  Accordingly, Defendants have no license to proceed with unrestrained inquisitorial zeal, and must show that their discovery demands are proportional to the matters at issue, and productive of relevant material.  The Defendants have not done so with respect to this request.

**L.  RFP No. 13:**

13.    Produce any and all documents regarding or relating to each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies.

Plaintiffs' Response: The requests is so extremely disproportional in its request for documents, *i.e.*, "regarding or relating to each and every instance in which you have received anything of value," without limitation, that identifying which documents are requested would be nearly impossible. Without waiver of these objections, responsive documents exist, and will not be produced, based on the objections asserted above.

**Defendants' Position**:

Plaintiffs refuse to provide any responsive documents to this request.  Information relating to the payment, donations, etc. in exchange to participate in Plaintiffs' ceremonies is relevant in determining Plaintiffs' sincerity.  This information would also help shed light on the true purpose of AYA by showing whether the funding and budget of AYA are consistent with a religious organization as opposed to a commercial enterprise that engages in the purchase and sale of ayahuasca for profit.  *See Oklevueha*, 2013 WL 3243371, at *5 (information about "financial records" is "relevant" to "genuineness of beliefs" and the "scope of the injunction").  And Plaintiffs may not assert the Establishment Clause as a privilege to shield itself from discovery in a civil suit brought by a religious entity.  *See Byzantine Cath. Eparchy of Phoenix v. Burri L. PA*, No. CV-20-00779-PHX-ROS, 2022 WL 3597106, at *3 (D. Ariz. June 17, 2022) (Noting the "the religion clauses do not offer an immunity against civil discovery.").  Finally, Plaintiffs' Fourth Amendment objection has no bearing in civil discovery.  *See Lease*, 2009 WL 922486, at *5; *see supra* at 5.

**Plaintiffs' Position**:

Defendants' request seeks "each [time] you have received anything of value, including payment, donations, or in-kind contributions." For government agencies to use compulsory process to discover the finances of churches violates the Establishment Clause.  *See Surinach*

*v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir. 1979) and its progeny, cited *supra*. Defendants argue *Byzantine Cath. Eparchy of Phoenix v. Burri L. PA*, No. CV-20-00779-PHX-ROS (2022) means a church that files a civil suit relinquishes its First Amendment rights, but in that case, a church tried to assert a First Amendment defense against a private law firm. When churches sell books for religious purposes, that is not mere commerce in words, and cannot be taxed as if it were. *Follett v. Town of McCormick*, 321 US 573, 576 (1944). Likewise, ceremonies require funding, but the amount bears upon no issue in dispute. Plaintiffs' custody of emails and private communications with AYA members and other AYA correspondents does not provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers protected by Fourth Amendment warrant requirement.

**M. RFP No. 14:**

14.     Produce any and all documents regarding or relating to ethical and safety protocols and procedures you use in connection with your ayahuasca ceremonies, including, but not limited to, protocols and procedures used to screen participants, advise participants regarding required and recommended pre-ceremony preparations, aid participants during and after ceremonies, train individuals serving as facilitators, respond to medical emergencies or psychological care needs, prevent or respond to misconduct, and otherwise ensure the safety of those participating in your ceremonies.

Plaintiffs' Response: Plaintiffs have produced all responsive documents, to the extent of their ability to identify them, given the overbroad formulation of this request.

**Defendants' Position**:

Plaintiffs' response is insufficient.  Plaintiffs state that the request is "overbroad," but do not state the construction they applied in answering this request and must do so according to the unobjected-to RFP Instruction No. 7, so that Defendants can determine whether AYA adequately responded to this request.  Moreover, it is not clear what Plaintiffs mean by "to the extent of their ability to find them," and whether and what search Plaintiffs undertook to identify responsive documents.

**Plaintiffs' Position**:

Plaintiffs have fully complied with this request seeking "all documents regarding or relating to ethical and safety protocols and procedures you use in connection with your ayahuasca ceremonies (screening, pre-ceremonial advice, aid during and after ceremony, training for facilitators, responding to medical emergencies, etc.)" and responded by stating: "Plaintiffs have produced all responsive documents, to the extent of their ability to identify them, given the overbroad formulation of this request."  No documents known to be responsive have been withheld pursuant to the overbreadth objection.  There is no dispute for the Court to adjudicate.

**N. RFP No. 15:**

15.    Produce any and all documents provided to, shown to, or shared with participants prior to, during, and after your ceremonies, including any guidance provided to participants prior to, during, and after any ceremony.

Plaintiffs' Response: Interpreting this request as non-redundant of other requests, Plaintiffs have produced all responsive documents, to the extent of their ability to identify them, given the overbroad formulation of this request.

**Defendants' Position**:

Plaintiffs do not state the limiting construction applied to this request and must do so according to the unobjected-to RFP Instruction No. 7, so that Defendants can determine whether AYA adequately responded to this request.

**Plaintiffs' Position**:

Plaintiffs have fully complied with this request seeking "all documents provided to, shown to, or shared with participants prior to, during, and after your ceremonies," responding that "Plaintiffs have produced all responsive documents, to the extent of their ability to identify them, given the overbroad formulation of this request."  There is no dispute for the Court to adjudicate.

**O. RFP No. 16:**

16.     Produce any and all documents regarding or relating to any instance in which aid, support, or assistance, whether medical, psychological, or otherwise, was offered, administered, or provided to any person prior to, during, or after a ceremony, including any instance in which any person was not permitted to continue with a ceremony.

Plaintiffs' Response: Responsive documents exist, and a reasonably proportionate sample of such, with personally identifying information redacted, will be produced to the Dropbox folder linked at footnote 1.

**Defendants' Position**:

Plaintiffs acknowledge that responsive documents exist but have not produced a single responsive document to this request.  Plaintiffs offered to provide "a reasonable proportionate sample" of documents.  Not only have Plaintiffs not done so, but doing so does not adequately respond to Defendants' request.   Defendants request a list of documents regarding aid, support, or assistance offered to a ceremony participant to understand how AYA's safety-protocols work in practice, not in Plaintiffs' hand-selected instances.  "Schedule I substances such as DMT are exceptionally dangerous."  *O Centro*, 546 U.S. at 432.  Should Plaintiffs succeed in establishing a prima facie case, Defendants would need to make an individualized showing that enforcing the CSA against Plaintiffs is justified as the least restrictive means of furthering Defendants' compelling interest.  *Id.*  Information about the aid, support, and assistance AYA has provided is highly relevant to determine whether AYA's individual practices pose dangers to participants' health or safety.

**Plaintiffs' Position**:

Plaintiffs responded that "Responsive documents exist, and a reasonably proportionate sample of such, with personally identifying information redacted, will be produced to the Dropbox folder linked at footnote 1."  Plaintiffs have not yet prepared that document sampling, but will do so, and send a hyperlink to the document(s) when uploaded.

**P.  RFP No. 17:**

17.     Produce any and all documents regarding or relating to any instance in which misconduct of any kind (including, but not limited to, sexual misconduct, battery, assault, fraud, use of controlled substances other than ayahuasca, "misuse[] [of] the Sacrament,"[12] "a breach of ethics,"[13] or any instances in which any person "conducted themselves improperly during [a] ceremony[14]) occurred or was alleged to have occurred prior to, during, or after a ceremony.

Plaintiffs' Response: Documents responsive to the request for "improper conduct" exist in the form of a list of individuals who are disqualified from AYA membership; however, it should be noted that some individuals may be excluded from future ceremonies for engaging conduct that is simply inconsistent with the AYA ceremonial process, and need not be unlawful or offensive. An anonymized copy of the list will be produced to the Dropbox folder linked at footnote 1.

**Defendants' Position**:

Plaintiffs identify one responsive document to this request that Plaintiffs have still not produced.   Information regarding misconduct is relevant to determine whether AYA's individual practices pose dangers to participants' health or safety and to the sincerity inquiry. Nor is it sufficient to produce this information in an anonymized form now that the protective order is in place.   The names of any persons on this list is highly relevant to identifying potential witnesses and assessing whether AYA's practices pose a danger to participants health or safety.   Moreover, it seems unlikely that there is only a single responsive document to this request, as there are likely to be exchanges in writing relating to these instances.   Finally, Plaintiffs, for the first time, raise a Fourth Amendment objection that has no bearing in civil discovery—particularly where Defendants seek records as part of the normal course of discovery (not as part of a search and seizure under the Fourth Amendment) in a civil lawsuit initiated by Plaintiffs.  *See Lease*, 2009 WL 922486, at *5 ("Fourth Amendment is not implicated in [] case" involving civil discovery and overruling that objection); *see also supra* at 5.

48

**<u>Plaintiffs' Position</u>**:

Plaintiffs responded to this RFP, seeking records of incidents of criminal or ethical misconduct by a ceremonial attendee, by identifying one responsive document: "a list of individuals who are disqualified from membership in AYA," with the caveat that "some individuals may be excluded from future ceremonies for … conduct that is simply inconsistent with the AYA ceremonial process, and need not be unlawful or offensive." Plaintiff will produce an anonymized copy of this document, which will not reduce the quantum of relevant information produced, because the names of the persons are not relevant to any claim or defense at issue in this case. Plaintiffs' custody of emails and private communications with AYA members and other AYA correspondents does not provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers protected by Fourth Amendment warrant requirement.

**Q. RFP No. 23:**

23.     Produce any and all documents that identify, describe, refer to, or contain materials used in the training of ceremony participants.

Plaintiffs' Response: Responsive documents exist, and have been produced previously. No additional documents exist to produce.

**<u>Defendants' Position</u>**:

Plaintiffs' response indicates that Plaintiffs have misconstrued this request.  RFP No. 23 is not redundant of RFP No. 15.  RFP No. 15 seeks documents that are shown prior to, during, or after ceremonies; RFP No. 23 relates to materials used in the training of ceremony participants. If no such documents exists, Plaintiffs' response must clarify as much.  If they do exist, they must be produced.

**<u>Plaintiffs' Position</u>**:

This request, seeking "all documents that identify, describe, refer to, or contain materials used in the training of ceremony participants," is redundant of RFP 15; accordingly, Plaintiffs' response is "No additional documents exist to produce."  There is no dispute to adjudicate.

**Issue 3: Information regarding ayahuasca ceremonies generally, including how the controlled substance is sourced, handled, accessed, and stored (Rog Nos. 10-12; RFP Nos. 18, 20).**

**Defendants' Position:**

These requests seek information about how AYA sources, secures, stores, handles, and prepares ayahuasca from importation to ultimate distribution to participants.  These requests also seek basic information about the dates, number, locations of, and participants and leaders present at ceremonies.  This information is relevant to Defendants' "compelling interest in preventing drugs set aside for sacramental use from being diverted to non-religious, recreational users." *Christie*, 825 F.3d at 1057.  And it is relevant to concretely understanding the risk of diversion posed by AYA's handling of ayahuasca, including by identifying security measures and locations at which AYA handles, transports, and stores ayahuasca, and those who have authorized access.  It is also essential to determining the scope of AYA's activities, the type(s) of DEA registration(s) that AYA would require, the locations requiring DEA registration, and the nature and extent of possible regulatory oversight that would be necessary to ensure AYA's compliance with the CSA and its regulations, should AYA receive a DEA registration.  Additionally, information about the source of, and the persons who handle and brew AYA's ayahuasca is relevant to assessing safety or health risks posed by AYA's activities.

**Plaintiffs' Position**:

The manner in which AYA obtains is Ayahuasca is not relevant to the matters before the Court in this action, which is concerned with: (1) determining whether Plaintiffs have a religious motivation in requesting an exemption under RFRA from the Controlled Substances Act ("CSA") to import and distribute Ayahuasca to AYA's congregation; (2) determining whether the Defendants' application of the CSA to the Plaintiffs substantially burdens the Plaintiffs' free exercise practice of offering Ayahuasca ceremonies; and, (3) determining whether the DEA and other Defendants are offering the Plaintiffs the least restrictive means of applying the Controlled Substances Act that is appropriate for AYA and Plaintiff Stanley.  Being required to tell the DEA how AYA obtains its Ayahuasca would

turn this proceeding into an opportunity for the DEA to burden AYA's free exercise by identifying and intercepting the Ayahuasca it needs to engage in free exercise.  While the Santo Daime and UDV have been required to disclose their sources, storage locations, courier identities, and security provisions to the DEA, they did so only after receiving injunctive relief from DEA enforcement activity.  AYA requests to do the same.

### A. Interrogatory No. 10:

10.     Identify the date and location of each and every instance in which you held a ceremony, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present.  For each and every instance identified, indicate every substance consumed by any person or offered for consumption, who was present at the ceremony, who was responsible for handling any substances consumed by any person or offered for consumption, and who served in a leadership role and/or position of authority at the ceremony (*e.g.*, Minister of the Assembly, "lead facilitator," other facilitator).

Plaintiffs' Response:  Plaintiffs state that plaintiff Stanley's declarations in support of AYA's motions for preliminary injunction have provided sufficient information concerning this topic that any additional information would be duplicative, redundant and unnecessarily burdensome, particularly given that there is no factual dispute over the matter. Efforts to elicit information regarding relations with non-parties are merely harassing. To require a response would impose a very large burden on Plaintiffs due to a number of causes, and would generate no corresponding benefit to the fact-finding process.

During the time period before the establishment of the AYA Maloka in Pima County, Arizona, AYA offered ceremonies approximately every two weeks in various locations in Arizona and in other states. Since the establishment of the Maloka, AYA offers ceremonies every two weeks. Stanley and other facilitators use Amazonia tobacco, known as mapacho. Other Amazonian herbs are used as part of an Amazonia "dieta" -- see welcoming documents for ceremonial preparation commenting on use of pau de arco tea in conjunction with a cleansing pre-ceremony diet, etc.

### Defendants' Position:

Plaintiffs' interrogatory response is wholly insufficient and does not provide information for even a single ceremony.  All DEA registrants must keep detailed records, *see, e.g.*, 21 C.F.R. § 1304, which Plaintiffs either do not maintain or refuse to disclose.  Plaintiffs acknowledge that ceremonies are held "in other states," but do not identify any of these locations. Information regarding where ceremonies are held and where the controlled substance is transported from and to such ceremonies, along with other relevant contextual information regarding AYA's provision of controlled substances is highly relevant in determining diversion risks.  "Schedule I substances such as DMT are exceptionally dangerous."  *O Centro*, 546 U.S. at 432.  Should Plaintiffs establish a prima facie case, Defendants must make an individualized

showing that "its interest in combating diversion is compelling on the facts of this case." *Christie*, 825 F.3d at 1057.  Information sought in this request is relevant to the individualized inquiry required under RFRA of evaluating the risks of AYA's use of controlled substances. *See Oklevueha*, 2013 WL 3243371, at *5.  Defendants cannot even assess whether AYA poses a risk of diversion—much less present the issue to the Court—without this information.

**Plaintiffs' Position**:

This interrogatory seeks the "location of each and every instance in which you held a ceremony, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present."  The location of a church or religious corporation is one thing that never seems to be discussed in RFRA cases.  Nevertheless, Plaintiffs have explained in their response to Interrogatory 17 where ceremonies are conducted and Ayahuasca is served:  "Our Maloka is 50 feet in diameter positioned with views from the altar looking westward toward Boboquivari Peak.  The door to the East faces the rising sun over the Sierrita Mountains on the winter solstice.  The entryway faces the North Star."  This "siting" of the ceremonial location with attention to the local landmarks and cardinal directions is a significant religious fact, indicative of the religious motivation behind its construction and ceremonial use.  Plaintiff has also directed Defendants to documents already produced, recording AYA's out of state activities before the Maloka was built and become the primary location for AYA ceremonies.

**B. Interrogatory No. 11:**

11.   Identify each and every instance in which you have stored, prepared,[9] secured, distributed, dispensed, obtained, imported, exported, destroyed/disposed of, transported,[10] transferred to another person, or otherwise handled ayahuasca.  For each instance identified, indicate when the activity occurred, any and all persons involved in the activity, including any senders and/or recipients, and any steps you required the person or persons to take to be granted permission to perform the activity (including, but not limited to, training, background check, use of key or code).

Plaintiffs' Response: Plaintiffs state that plaintiff Stanley's declarations in support of AYA's motions for preliminary injunction have provided sufficient information concerning this topic that any additional information would be duplicative, redundant and unnecessarily burdensome, particularly given that there is no factual dispute over the matter. Efforts to elicit information regarding relations with non-parties are merely harassing. To require a response would impose a very large burden on Plaintiffs due to a number of causes, and would generate no corresponding benefit to the fact-finding process.

Plaintiffs adhere to a protocol of sourcing Ayahuasca from ethical providers in Peru. AYA's ceremonial Ayahuasca is acquired by Stanley, stored on premises under his exclusive control, and utilized exclusively in AYA ceremonies conducted at the Pima County Maloka or another officially declared AYA ceremonial location.

**Defendants' Position**:

Despite the individualized inquiry of RFRA, Plaintiffs again refuse to provide sufficient information regarding the sourcing, storage, and handling of their ayahuasca.  "Schedule I substances such as DMT are exceptionally dangerous."  *O Centro*, 546 U.S. at 432. Their position below focuses narrowly on their prima facie case of alleged religious intent, presumes without any factual support that diversion is "unlikely," and ignores that Defendants must make an individualized showing that "its interest in combating diversion is compelling on the facts of this case."  *Christie*, 825 F.3d at 1057.  Information about the sourcing, storage, transportation, and security of Plaintiffs' ayahuasca is essential to Defendants' ability to evaluate the potential diversion and safety risks posed by AYA's practices and thus to assert and ultimately prove a compelling interest.  Defendants cannot assess whether AYA poses a risk of diversion—much less present the issue to the Court—without this information.

Finally, Plaintiffs cannot seek injunctive relief in the form of a DEA registration, Fifth Am. Compl. ¶¶ 88, 97, and simultaneously refuse to turn over records (to the extent they exist) that would be required should such relief be granted, *see, e.g.*, 21 C.F.R. § 1304.

**Plaintiffs' Position**: This interrogatory seeks to compel disclosure of detailed inventory of what the Defendants allege to be criminal activity.  This type of information would not be relevant to the issue of religious intent, because the question is not whether, where, or from whom AYA and Stanley obtain Ayahuasca, but whether they do so from a religious motive. That Ayahuasca dispensing records are required for those with DEA registration does not compel a church to keep records before receiving a RFRA exemption, nor does it indicate diversion risk, because it's their belief that Ayahuasca is holy that makes diversion unlikely. "*Plaintiffs' secrecy does not show a lack of sincerity. Instead, it shows that plaintiffs remained committed to practicing their religion despite the threat of criminal prosecution and loss of professional status. *** Because plaintiffs believe that Daime tea is a sacrament, use of Daime tea outside of the church violates church doctrine*." *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1219 (D. Or. 2009)(emphasis added).

**C.  Interrogatory No. 12:**

12.    Identify any and all security measures you have adopted relating to your handling of ayahuasca, including those referred to in the document titled "Ceremonial Instructions."[11]   For any physical devices identified, indicate the make, model, and serial number of any device; the persons who have access to the device; and the days and times when access to the device is available.  For any other security measures identified, please describe in reasonable detail the measure, including when the measure was first implemented, and how the measure adequately ensures the safe handling of ayahuasca.

<u>Plaintiffs' Response</u>: Plaintiffs state that the sole person having custody of AYA ceremonial Ayahuasca prior to or after ceremony is plaintiff Stanley, and he secures it in the same manner as he cares for all other important possessions – either locked in a vehicle, locked in a temporary storage facility, or inside premises under his control. Plaintiffs' sacrament is kept in a secure location, travels with the lead facilitator, is never sold, is used only in a ceremonial context, and leaves the ceremonial site at the close of each ceremony to return to its secure location with the lead facilitator. No sacrament has ever been stolen or has been left in the position to be stolen with the exception of sacrament seized by US Customs.

**Defendants' Position**:

Plaintiffs' partial response to this request is insufficient.  For example, Plaintiffs do not identify when any security measures were implemented or the devices Plaintiffs use to "lock" their ayahuasca.  Nor do they reasonably describe how their purported measures ensure safe handling of ayahuasca.  Put differently, Plaintiffs cannot invoke the word "secure" to satisfy the specific nature of this request without providing any details.  "Schedule I substances such as DMT are exceptionally dangerous."  *O Centro*, 546 U.S. at 432. Defendants are entitled to make an individualized showing that "its interest in combating diversion is compelling on the facts of this case."  *Christie*, 825 F.3d at 1057.  Specific information regarding the storage and security of Plaintiffs' ayahuasca is essential to evaluating diversion and safety risks posed by AYA's practices.  Defendants cannot even assess whether AYA poses a risk of diversion— much less present the issue to the Court—without this information.

**Plaintiffs' Position**:

Plaintiff fully responded to information about Plaintiffs' security measures for handling

57

Ayahuasca: "Without waiver of objections, Plaintiffs state that the sole person having custody of AYA ceremonial Ayahuasca prior to or after ceremony is plaintiff Stanley, and he secures it in the same manner as he cares for all  other important possessions – either locked in a vehicle, locked in a temporary storage facility, or inside premises under his control.  Plaintiffs' sacrament is kept in a secure location, travels with the lead facilitator, is never sold, is used only in a ceremonial context, and leaves the ceremonial site at the close of each ceremony to return to its secure location with the lead facilitator.  No sacrament has ever been stolen or has been left in the position to be stolen with the exception of sacrament seized by US Customs."  The interrogatory has been answered.

**D. RFP No. 18:**

18.     Produce any and all documents regarding or relating to the storage, preparation, security, distribution, dispensing, obtaining, importing, exporting, destroying/disposing, or otherwise handling of ayahuasca, including, but not limited to, security measures you have adopted relating to your handling of ayahuasca, including those referred to in the document titled "Ceremonial Instructions"[15]; measurements of ayahuasca, including before and after transportation[16]; and measurements taken after ceremonies when you "account[] for" any unconsumed portions.[17]

Plaintiffs' Response: No responsive documents exist.

**Defendants' Position**:

Plaintiffs assert that "no responsive documents exist," yet the request itself identifies Plaintiffs' "Ceremonial Instructions," Dkt. 33-4, a responsive document that discusses the "dispensing" and "serving" size of ayahuasca at AYA's ceremonies.  Based on that document alone, it is highly improbable that no other responsive documents—whether in the form of emails, text messages, Facebook messages, or invoices, etc.—exist.  Nor have Plaintiffs given any indication as to whether they even attempted to search for potentially responsive documents in response to this request.  More broadly, Plaintiffs have an obligation to conduct a reasonable search of all communications that may be responsive Defendants' discovery requests, and Defendants remain concerned that Plaintiffs have not satisfied their discovery obligations here—particularly when they have separately asserted that responsive documents exist as it relates to a similar and somewhat overlapping request, RFP No. 20, below. This is concerning given the relief Plaintiffs seek—a DEA registration, Fifth Am. Compl. ¶¶ 88, 97, as all DEA registrants must keep detailed records of this sort, 21 C.F.R. § 1304 (detailing the "[i]nventory and other records and reports required" to be kept and maintained by "[e]very registrant").

**Plaintiffs' Position**:

This request seeks "all documents regarding or relating to the storage, preparation, security, distribution, dispensing, obtaining, importing, exporting, destroying/disposing, or otherwise

handling of ayahuasca, including, but not limited to, security measures, (etc.)," to which Plaintiffs responded, "No responsive documents exist."  The RFP has received an adequate response.

1

2       **E.  RFP No. 20:**

3           20.    Produce any and all communications to or from any and all individuals who

4   have been involved in the storage, preparation, security, distribution, dispensing, obtaining,

5   importing, exporting, destroying/disposing, transporting, transferring to another person, or

6   otherwise handling of ayahuasca.

7           Plaintiffs' Response: Responsive documents exist, and will be withheld based upon the
    stated objections.

8

9   **Defendants' Position**:

10  Plaintiffs refuse to produce a single responsive communication—whether in the form of

11  emails, text messages, Facebook messages, etc.—despite conceding that such communications

12  exist.  Instead, Plaintiffs raise, for the first time, a Fourth Amendment objection that has been

13  waived and otherwise has no bearing in civil discovery—particularly where Defendants seek

14  records as part of the normal course of discovery (not as part of a search and seizure under

15  the Fourth Amendment) in a civil lawsuit initiated by Plaintiffs.  *See Lease*, 2009 WL 922486,

16  at *5; *see also supra* at 5.  Similarly, for the reasons set forth below, *see infra* Issue 5.C, the First

17  Amendment "do[es] not offer an immunity against civil discovery," *Byzantine*, 2022 WL

18  3597106, at *3.   Finally, Plaintiffs cannot plausibly contend that Defendants' discovery

19  request—in the context of a lawsuit brought by Plaintiffs—creates a substantial burden under

20  RFRA, because communications relating to Plaintiffs' storage, preparation, security,

21  distribution, etc. of ayahuasca are essential to evaluating diversion and safety risks posed by

22  AYA's practices and thus critical to Defendants' ability to establish their compelling interest

23  in combatting diversion as applied to the facts in this case.  *See Christie*, 825 F.3d at 1057.

24  **Plaintiffs' Position**:

25  **To this request for** "all communications to or from any and all individuals who have

26  been involved in the storage, preparation, security, distribution, dispensing, obtaining,

27  importing, exporting, destroying/disposing, transporting, transferring to another person,

28

61

1    or otherwise handling of ayahuasca," Plaintiffs respond that their custody of emails and

2    private communications with AYA members and other AYA correspondents does not

3    provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers

4    protected by Fourth Amendment warrant requirement.  Defendants' inquiries and demands

5    are also constrained by the First Amendment.  *Surinach v. Pesquera De Busquets*, 604 F.2d 73,

6    78 (1st Cir. 1979).  Further, it is the not the purpose of the RFRA action to provide a

7    vehicle for the Defendants to impose substantial burdens on Plaintiffs by seeking to

8    compel their disclosure of the identities of congregants and non-parties.  Finally, knowing

9    the identities of the persons who have aided AYA in its religious mission will not aid the

10   Defendant to establish any fact in issue in this matter.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Issue 4: Information regarding the sincerity of AYA's beliefs and practices, and those who wrote edited, or advised on core documents (Rog Nos. 18, 21, 23; RFP Nos. 4-8, 10).**

**Defendants' Position:**

Defendants seek information about the sincerity of Plaintiffs' religious beliefs and practices and about their core documents.  Under RFRA, Plaintiffs must show that their religious beliefs are "sincerely held," and not a sham or pretense. *United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir. 2007).  A "Court '*can, and must*, ensure that a plaintiff's beliefs are religious, as opposed to being 'essentially political, sociological, or philosophical.'" *Caspersen v. W. Union, LLC*, 2023 WL 6602123, at *5 (D. Colo. Oct. 10, 2023) (citation omitted).  Defendants have a compelling interest in "reducing the incidence of illicit, recreational" use of ayahuasca, including by preventing its diversion to "people whose use is disconnected from any sincere religious practice." *Christie*, 825 F.3d at 1057. Both the genuineness of the Plaintiffs' beliefs and the nature and character of those beliefs is at issue.  Defendants seek relevant information about AYA's payment structure, the responses to the questionnaire AYA relies on in establishing the sincerity of its participants, the attendee roster, communications between AYA and participants, and other information about participants.  *See Oklevueha*, 2013 WL 3243371, at *5.

**Plaintiffs' Position:**

**A. Interrogatory No. 18:**

18.    Identify each and every person who wrote, edited, reviewed, commented on, or otherwise received a draft of the documents attached to your original motion for a preliminary injunction in this case, Dkt. No. 33: "AYA Tenets and Precepts"[17]; "Ceremonial Instructions"[18]; "Code of Ethics"[19]; the questionnaire filed in this case as DKT. No. 33-6; and the confirmation letter filed in this case as Dkt. No. 33-7.

Plaintiffs' Response: Plaintiffs state, As Director of AYA, Scott Stanley is the author of AYA Tenets and Precepts, and our Code of Ethics. That said, their formation was a collaborative affair born out shared experience within our community. As the author of both AYA's Tenets and Precepts, and our Code of Ethics, I'm formulating this response myself. I consider these guiding principles for myself. My opinion, is that they're well received and practiced from the heart within our community, but mainly because these two documents were formulated out of a shared experience. Everyone played a role. I wrote them down. As to instructions offered to practitioners in preparation for ceremony, they remain a work in progress with many of the hands of the congregation involved, all of whom, in this respect, wish to remain anonymous. I am the lead editor for that document.

**Defendants' Position**:

Plaintiffs' response is incomplete and answers only part of the interrogatory. Plaintiffs' state that Stanley authored and is the "lead editor" for only two of the five documents asked about, but does identify the others who "edited, reviewed, commented on, or received" these documents nor addresses the other documents discussed (the questionnaire, ceremonial instructions, and confirmation letter). Plaintiffs relied on these documents in seeking emergency relief on their still-live RFRA claim, Dkt. 33: "AYA Tenets and Precepts", 33-3; "Ceremonial Instructions," 33-4; "Code of Ethics," 33-5; a ceremony participant questionnaire and "summary," 33-6 and 33-8, and the ceremony participant confirmation letter, 33-7. Defendants seek to understand the origin, motivation, and any changes to the documents Plaintiffs continue to rely on to establish their prima facie case, including the sincerity of their religious beliefs. This information is relevant to probing the sincerity of AYA's religious beliefs and identifying potential witnesses, generally, and specifically which individuals, beyond Stanley were involved in creating these documents. *See Oklevueha*, 2013 WL 3243371, at *5.

**Plaintiffs' Position**:

Plaintiff Stanley responded to this interrogatory, asking to know who everyone who helped write AYA Tents and Precepts, Ceremonial Instructions, Code of Ethics, and the questionnaire, as follows: "Scott Stanley is the author of AYA Tenets and Precepts, and our Code of Ethics.  That said, their formation was a collaborative affair born out shared experience within our community. ***  I am the lead editor for that document."  This is sufficient.  Defendants say they "seek to understand the origin, motivation, and any changes to the documents Plaintiffs continue to rely on to establish sincerity," but they expand their role here beyond reason.  Defendants have no inherent authority to scrutinize AYA doctrines for evidence of insincerity that is entirely lacking in this case, unlike the situation in *Coronel v. Paul, supra*.  "Given that Pasqua Yaqui and native Hawaiian religions differ at least in some respects from Dianic paganism,  it is not unreasonable for the Defendants to question Coronel's motives." *Coronel v. Paul*, 316 F. Supp. 2d 868, 881-82 (D. Ariz. 2004).

**B. Interrogatory No. 21:**

21.    For each document used at your ceremonies or trainings, or that you otherwise intend to rely upon to demonstrate the existence of what you allege are your "sincerely held religious beliefs and practices," identify each and every person who wrote, edited, reviewed, commented on, or otherwise received drafts of the document.

Plaintiffs' Response: Stanley wrote all of the documents that he and AYA will present as evidence of sincerely held religious beliefs and practices.

**Defendants' Position**:

AYA's response is incomplete and answers only part of the interrogatory about who "wrote" the referenced documents.   AYA does not identify the others who "edited, reviewed, commented on, or otherwise received," these documents.   It is also not responsive to the portion of the interrogatory asking about "the documents used at your ceremony or trainings," regardless of whether Plaintiffs intend to rely on such documents.   Defendants seek to understand the origin, motivation, and any changes to the documents Plaintiffs will rely on to establish sincerity.  This information is also relevant to probing the sincerity of AYA's religious beliefs and identifying potential witnesses generally, and specifically who were involved in creating, editing, and reviewing these core documents.  It is Defendants prerogative to choose which witnesses the defense will seek to depose and question about AYA's practices.  And understanding who—beyond Stanley—is involved in AYA, is highly relevant to this case.

**Plaintiffs' Position**:

Plaintiffs adequately answered this interrogatory seeking the author of all documents "used at your ceremonies or trainings, or that you otherwise intend to rely upon to demonstrate the existence of what you allege are your "sincerely held religious beliefs and practices," with the response, "Stanley wrote all of the documents that he and AYA will present as evidence of sincerely held religious beliefs and practices."  This should be sufficient to prepare the Defendants to respond to these contentions by addressing questions to Plaintiff Stanley in deposition and at trial.  Their efforts to identify people whose names were never recorded,

66

and whose contributions were not formally noted, will not produce relevant evidence.

## C.  Interrogatory No. 23:

23.     Identify each and every organization or association of which AYA or one of the named Plaintiffs is a member, or have requested to be a member.  For each organization or association identified, indicate when AYA or one of the named Plaintiffs first requested to become a member, how long AYA or one of the named Plaintiffs has been a member, whether AYA or one of the named Plaintiffs pays dues or anything else of value to the organization or association, and any individuals at the organization or association with whom AYA or one of the named Plaintiffs communicates or has communicated.

Plaintiffs' Response: AYA has been a member of the North American Association of Visionary Churches since it was formed in June of 2019, and pays yearly organizational dues of $200.

**Defendants' Position**:

AYA's response is incomplete and answers only part of the interrogatory.  It does not provide a response to (1) each and every organization of which a named Plaintiff Stanley is a member, or has requested to be a member, and information about that membership; (2) any organizations that Plaintiffs requested to be in but did not ultimately join or were not permitted to join; (3) any individuals at identified organizations with whom AYA or Stanley communicates or has communicated.  The information sought by this interrogatory is relevant to whether Plaintiffs' beliefs are genuine and religious in nature, whether other affiliations bear on the risk of diversion presented by AYA's use and distribution of ayahuasca, and also in identifying potential witnesses.  To that end, this information is key to Defendants' potential third-party discovery efforts, which Plaintiffs have stymied.  This lack of responsiveness would prevent Defendants from being able to obtain answers before the substantial completion of written discovery deadline.

**Plaintiffs' Position**:

Attempting to grind additional information from this interrogatory will shed no light on "whether Plaintiffs' beliefs are genuine and religious in nature," and Defendants do not attempt to explain how it will.   In response to this interrogatory, that seeks the name of

"every organization or association of which AYA or one of the named Plaintiffs is a member," when Plaintiff(s) joined, and what dues were paid, plaintiff disclosed that "AYA has been a member of the North American Association of Visionary Churches since it was formed in June of 2019, and pays yearly organizational dues of $200."  The interrogatory has been answered.

**D. RFP No. 4:**

> 4.   Produce any and all documents that you have written, revised, used at your ceremonies, or otherwise intend to rely upon to demonstrate the existence of what you allege is your "sincere" "religious . . . belief[s]."[6]

<u>Plaintiffs' Response</u>: Plaintiffs produced responsive documents that are accessible for download via shared Dropbox folder. (See link in footnote 1.) Plaintiffs have supplemented that production at [link].

<u>**Defendants' Position**</u>:

Plaintiffs have not produced any documents in a "revised" format, only final-form documents. Plaintiffs also do not indicate whether they have or intend to produce documents "used" at ceremonies.

<u>**Plaintiffs' Position**</u>:

Plaintiffs have produced many documents they intend to rely upon to demonstrate sincere religious belief, and will produce more in a timely fashion, supplementing production if and when new documents are discovered.  There is no dispute over this RFP.

**E. RFP No. 5:**

5.      Produce any and all documents that relate to the process by which you ensure that you "offer Visionary communion only to sincere religious persons with a reverent mindset."[7]

Plaintiffs' Response: Reasonably construed, the interrogatory seeks information found in responsive documents that have been produced (see link in footnote 1). Plaintiffs have supplemented that production at [link].

**Defendants' Position**:

Plaintiffs do not state how they "reasonably construed" this interrogatory and must do so according to the unobjected-to RFP Instruction No. 7, so that Defendants can determine whether their response is adequate.  This request seeks documents relating to how and whether AYA screens applicants to ensure that only "sincere religious persons with a reverent mindset" may participate in ceremonies, or conversely, whether individuals can join AYA under false or insincere pretenses to obtain access to ayahuasca.  This information is relevant to "the genuineness of Plaintiffs' religious beliefs," *see Oklevueha*, 2013 WL 3243371, at *5, and the government's compelling interest in "reducing the incidence of illicit, recreational" use of ayahuasca, by preventing its diversion to "people whose use is disconnected from any sincere religious practice," *Christie*, 825 F.3d at 1057.  A "Court '*can, and must*, ensure that a plaintiff's beliefs are religious, as opposed to being 'essentially political, sociological, or philosophical.'" *Caspersen*, 2023 WL 6602123, at *5.  Plaintiffs improper attempt to supplement their response below by stating that Stanley makes decisions and that Plaintiffs have not withheld responsive documents further demonstrates that Plaintiffs' response is incomplete and insufficient.

**Plaintiffs' Position**:

Plaintiffs are unsure of what is meant by "the process by which you ensure that you 'offer Visionary communion only to sincere religious persons.'"  The courts have found "judging religious sincerity" to be a difficult if not impossible task, and the role of Plaintiffs is to facilitate the relationship with the Divine, not to gatekeep it.  That said, AYA adheres to best practices for the administration of ceremonial Ayahuasca, which require considering the

physical and mental disposition of applicants and making occasional judgments as to who may not attend an AYA ceremony.  Plaintiff Stanley makes those decisions based on his traditional understanding of the way of Ayahuasca ceremony, and to the extent responsive documents exist regarding that activity, they have already been produced.  Plaintiffs have not withheld any responsive documents known to them based on any objection.  There is no dispute with respect to this RFP.

**F.  RFP No. 6:**

6.      Produce any and all documents, whether in draft or final form, regarding, relating to, or referred to in the documents attached to your original motion for a preliminary injunction in this case, Dkt. No. 33: "AYA Tenets and Precepts"[8]; "Ceremonial Instructions"[9]; "Code of Ethics"[10]; the questionnaire filed in this case as Dkt. No. 33-6; and the confirmation letter filed in this case as Dkt. No. 33-7.

Plaintiffs' Response: Plaintiffs decline to produce responsive documents based on the stated objections.

**Defendants' Position**:

AYA's response indicates that it declined to produce documents, but AYA states below it *has* provided responsive documents—presumably the final forms of the documents referenced above—further demonstrating that Plaintiffs' response is incomplete and insufficient.  This request also seeks drafts and all documents "relating to or referred to" in the referenced documents.  AYA has not provided any drafts, and it does not appear, for example, that AYA has provided all documents referred to in the Ceremonial Instructions.  Defendants seek to understand the origin, motivation, and changes to these documents by requesting drafts and documents relating to or referring to core documents Plaintiffs use to establish sincerity.  This information is relevant to probing the sincerity of AYA's religious beliefs, practices, and core documents.

**Plaintiffs' Position**:

Plaintiffs have provided a proportional response to this RFP, providing the responsive documents identified as AYA Tenets and Precepts, Ceremonial Instructions, and the Code of Ethics.  There is no dispute over this RFP.

**G. RFP No. 7:**

7.     Produce any and all documents that contain communications with any and all individuals who are members of AYA relating to membership in AYA, your ceremonies, and your tenets and beliefs.

Plaintiffs' Response: Responsive documents have been produced (see link in footnote 1). Some responsive documents are withheld on the grounds objected above. Plaintiffs may produce additional documents pursuant to an appropriate confidentiality stipulation.

**Defendants' Position**:

This request seeks documents that bear on core questions, including communications with members about the specific topics of membership, ceremonies, and AYA's professed tenants and beliefs. These documents are relevant to "the genuineness of Plaintiffs' religious beliefs," *see Oklevueha*, 2013 WL 3243371, at *5, and the government's compelling interest in "reducing the incidence of illicit, recreational" use of ayahuasca, by preventing its diversion to "people whose use is disconnected from any sincere religious practice," *Christie*, 825 F.3d at 1057. These communications are relevant to understanding how AYA's screening of individuals works in practice, and whether members are being substantially burdened. And Plaintiffs asserted in litigation that if certain medical conditions are disclosed to AYA, "further inquiries are made." Dkt. 33 at 4. Plaintiffs concede that such communications exist and contain relevant information but have not produced them. Plaintiffs have it backwards: Defendants do not have a burden to "articulate[]" an occurrence of AYA's diversion; rather, Defendants seek such documents to determine whether such risk exists. Finally, Plaintiffs' constitutional objections have no bearing in civil discovery. *See also supra* at 5, *infra* Issue 5.

**Plaintiffs' Position**:

This interrogatory, without time limits, seeks "all documents" including "emails, text messages or facebook messages" with "any and all individuals who are members of AYA" about everything AYA does. Accordingly, it is grossly disproportionate to the needs of the case, and not directed to discovery of admissible evidence. Although being able to read all

of AYA's correspondence could conceivably produce some relevant information, the burden would be disproportionate to the resulting benefit, especially given that Defendants have articulated not one occasion when Plaintiffs have encouraged or engaged in "illicit, recreational" use of Ayahuasca or diversion into illegal markets.  Plaintiffs' custody of emails and private communications with AYA members and other AYA correspondents does not provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers protected by Fourth Amendment warrant requirement.  AYA further asserts its First Amendment Entanglement Clause objection to compelled disclosure of a religious group's internal activities and finances. *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir.1979).

**H. RFP No. 8:**

8.    Produce any and all copies of the "AYA attendee roster."[11]

Plaintiffs' Response: A responsive document exists, and Plaintiffs decline to produce the same, based on the above objections.

**Defendants' Position**:

Information concerning the "membership" of AYA is "reasonably calculated to lead to discovery of admissible evidence concerning the genuineness of Plaintiffs' religious beliefs." *Oklevueha*, 2013 WL 3243371, at *5. This information is relevant to probing whether members activities are genuine or whether individuals are joining AYA under false pretenses to obtain access to a controlled substance. The attendee roster could show, among other things, how frequently participants attend ceremonies, including whether individuals attend only once, which could be indicative of individuals recreationally using ayahuasca that is "disconnected from any sincere religious practice." *Christie*, 825 F.3d at 1057; *see also Oklevueha*, 719 F. Supp. 2d at 1225 (noting that RFRA likely would not permit distributing marijuana to "anyone who, without more, simply claims a religious need"). This roster is also relevant for identifying potential witnesses. AYA's objections and invocation of inapplicable constitutional objections are inapplicable and have no bearing on civil discovery, *see infra* Issue 5. This request is not overbroad because Plaintiffs admit that there is a "single" list. An "attendee roster" that is kept by AYA is not a "communication" protected by the priest-penitent privilege.

**Plaintiffs' Position**:

This RFP, demanding the "AYA attendee roster" is properly subject to objection as irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, violative of the privacy rights of non-litigants, invading the priest-penitent privilege, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233). Plaintiffs' custody of emails and private communications with AYA members and other AYA correspondents does not provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers

protected by Fourth Amendment warrant requirement.  Defendants' inquiries and demands are also constrained by the First Amendment.    Finally, the demand imposes a severe burden on the relationship of AYA and Plaintiff Stanley with the AYA congregation, attempting to convert their religious participation into an avenue of negative scrutiny of the sort that this litigation is intended to remedy.  Accordingly, although a responsive document exists, Plaintiffs decline to produce the same, based on the above objections.

**I. RFP No. 10:**

10.     Produce and all drafts of the survey that was delivered via email and the email in which delivered the survey to the AYA roster to generate the "Summary – AYA June 2018 Survey of Congregants" document filed in this case as Dkt. No. 33-8.

Plaintiffs' Response: Drafts of the survey do not exist. The email, with the email addresses of recipients redacted, will be produced in the Dropbox folder for which the link is provided at footnote 1.

**Defendants' Position**:

Plaintiffs have not yet produced the email that delivered the survey to the AYA roster, referenced in Dkt. No. 33-8.  Moreover, it is not sufficient for Plaintiffs to produce this with the emails of recipients redacted now that there is a protective order in place, Dkt. 215.  Plaintiffs have directly relied upon the answers provided by individuals who responded to that survey as evidence of the sincerity of its members' religious beliefs.  *See* Dkt. 33 at 16 (citing to survey and stating that "almost all, 91.1% approach Ayahuasca communion as a religious experience").  Information concerning the "membership" of AYA is "reasonably calculated to lead to discovery of admissible evidence concerning the genuineness of Plaintiffs' religious beliefs." *Oklevueha*, 2013 WL 3243371, at *5.  Defendants are entitled to know who the survey was sent to in order to identify potential witnesses as well as the text of the email to members soliciting survey responses.  If such a document exists, Plaintiffs should be ordered to search for and provide it by a date certain.

**Plaintiffs' Position**:

Plaintiffs have searched for drafts of the survey, and none exist.  Plaintiffs have not yet located the email; however, it should be possible to do so, and Plaintiffs will produce it immediately upon discovery.

78

**Issue 5:  Plaintiffs' Objections**

**Defendants' Position**:

In response to Defendants' discovery requests, Plaintiffs must provide all "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  In attempt to avoid these obligations, Plaintiffs assert a series of series of unrecognized or inapplicable privileges in their discovery objections.  As the Supreme Court has made clear, "[e]videntiary privileges in litigation are not favored."  *Herbert v. Lando*, 441 U.S. 153, 175 (1979).  And the "existing limited privileges against disclosure . . . 'are not lightly created nor expansively construed.'"  *Id.* (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).  Here, Plaintiffs largely invoke state-law privileges.  However, under Fed. R. Evid. 501, a state-law privilege is only applicable "regarding a claim or defense for which state law supplies the rule of decision."  Because "federal law" provides the sole substantive basis for Plaintiffs' RFRA claim, "federal privilege law is to be applied." *Crowe v. Cnty. of San Diego*, 242 F. Supp. 2d 740, 747 (S.D. Cal. 2003).

**Plaintiffs' Position**:

Not provided

**A. Confidentiality promises made to third parties**

<u>Defendants' Position</u>:

Plaintiffs cannot withhold information on the basis that disclosing such information "encroach[es] on the promises of confidentiality AYA has made to third parties." Plaintiffs identify no legal or even factual basis for this objection in their responses and on that basis alone it should not be sustained. "[O]nly privilege, not confidentiality, is a valid objection under Fed. R. Civ. P. 26(b)." *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 283 (C.D. Cal. 1996). "[A]nd a general interest in protecting confidentiality does not equate to privilege," and it is well established that "[c]onfidentiality agreements do not bar discovery." *In re Application of O'keeffe*, 2016 WL 2771697, at *4 (collecting cases). Moreover, whatever interests Plaintiffs have in keeping responsive information private can be maintained by disclosing this information pursuant to the protective order. *See* Dkt. No. 215; *see also Na'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 681 (C.D. Cal. 2009) (noting nonprivileged "highly confidential" information can be protected under a protective order). Plaintiffs' Fourth Amendment objection, which is waived as they raise it for the first time in this joint statement, has no bearing in civil discovery. *See Lease*, 2009 WL 922486, at *5.

<u>Plaintiffs' Position</u>:

Plaintiffs' custody of emails and private communications with AYA members and other AYA correspondents does not provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers protected by Fourth Amendment warrant requirement. Defendants' inquiries and demands are also constrained by the First Amendment.

### B. Medical Records

**Defendants' Position**:

Plaintiffs cannot withhold information on the basis that disclosing such information would violate the "protect[ion] by privacy statutes governing disclosure of medical records." Plaintiffs claim the basis for this privilege is Arizona Law, A.R.S. § 12-2291. As stated above, a state law privilege is not applicable where federal law provides the substantive basis for this case. *See* Fed. R. Evid. 501. Regardless, this statute applies only to specific medical records maintained by a "a health care provider," which under the statute, would not include Plaintiffs. *See id.* § 12-2291(5) (defining healthcare provider as a licensed medical professional who maintains medical records, a health care institution, ambulance service, or a health care plan). Moreover, a medical record is defined as a record "maintained for purposes of patient diagnosis or treatment." *See id.* § 12-2291(6). Neither Plaintiffs are licensed health care providers who may invoke this privilege. To the contrary, Plaintiffs explicitly disclaim such in AYA's Code of Ethics, which states: "We do not make medical claims … We engage in a religious practice, not a medical practice." *See* Dkt. 33-5 at 2. Plaintiffs' Fourth Amendment objection is waived and has no bearing in civil discovery. *See Lease*, 2009 WL 922486, at *5.

**Plaintiffs' Position**:

Plaintiffs do not claim to be medical providers; however, they are in possession of documents that can properly be considered the private medical papers of third parties. Plaintiffs' custody of private medical papers does not provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers protected by Fourth Amendment warrant requirement. Accordingly, while the medical records statute per se may not be applicable, it does provide AYA correspondents with a reasonable expectation of privacy as to those documents.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.  First Amendment Religion Clauses

**Defendants' Position**:

Plaintiffs object to many of Defendants' discovery requests as "violating Plaintiffs' rights of Free Exercise" and "violating AYA's right under the Establishment Clause to be free of government process probing internal church activities."  There is no such privilege under the Federal Rules.  Plaintiffs state they wish to "share their religion in the broad light of day," Dkt. 159 ¶ 19.  But they may not bring a civil suit seeking an exemption from the government to distribute a controlled substance and refuse to fully partake in civil discovery by invoking the First Amendment religion clauses as a shield.  While the "First Amendment's Free Exercise Clause and Establishment Clause offer religious organizations wide latitude to structure and govern their organizations in accordance with their own sincerely held beliefs, . . . the religion clauses do not offer an immunity against civil discovery."  *Byzantine*, 2022 WL 3597106, at *3. Defendants are entitled to information to test the "genuineness of Plaintiffs' religious beliefs and whether the Controlled Substance Act is a substantial burden on those beliefs," *Oklevueha*, 2013 WL 3243371, at *5, and Plaintiffs may not invoke the religion clauses as a privilege to withhold such information, *Cason v. Federated Life Ins.*, 510 F. App'x 663, 665 (9th Cir. 2013).

**Plaintiffs' Position**:

For government agencies to use compulsory process to discover the finances of churches violates the Establishment Clause.  *See Surinach v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir. 1979) and its progeny, cited *supra*.  Defendants argue *Byzantine Cath. Eparchy of Phoenix v. Burri L. PA*, No. CV-20-00779-PHX-ROS (2022) means a church that files a civil suit relinquishes its First Amendment rights, but in *Byzantine Catholic*, a church tried to assert a First Amendment defense against a private law firm without citing any authority, which is not the case here.  *Cason v. Federated Life Ins. Co.,* 510 F. App'x 663 (9th Cir. 2013) is also

inapposite, because there, "the subpoena had a secular purpose, did not advance or inhibit religion, and did not foster excessive government entanglement with religion."  Id. at 665. In this case, the Defendants have no secular purpose, and transparently seeks to probe church doctrine for evidence of insincerity; the Defendants seek to inhibit Plaintiffs' practice of religion; and, the DEA claims it must obtain a vast scope of irrelevant information for a regulatory purpose, that inevitably implicates the risks of entanglement.  *See Surinach, supra.*

### D. Priest-penitent privilege

**Defendants' Position**:

Plaintiffs object to Defendants' discovery requests on the basis of the "priest-penitent privilege" under Arizona law. A state law privilege is not applicable where federal law provides the substantive basis for this case. *See* Fed. R. Evid. 501. The Federal Rules of Evidence do not recognize this privilege, and "Congress refused to expressly include a priest-penitent privilege in the Federal Rules of Evidence." *United States v. Fabricant*, 2008 WL 11504222, at *4 (C.D. Cal. Aug. 20, 2008). Where courts have recognized this privilege, it is largely limited to protecting communications "in which a person privately confessed his or her sins to a priest, in order to receive some form of church sanctioned discipline or absolution." *In re Grand Jury Investigation,* 918 F.2d at 386; *see also Wells*, 446 F.2d 2 at 4 (the privilege "appears to be restricted to confidential confession or other confidential communications of a penitent seeking spiritual rehabilitation"). Plaintiffs do not identify any such "confession[s]" covered under the priest-penitent privilege and may not assert the privilege as a "blanket exclusion" *Fabricant*, 2008 WL 11504222, at *4. Whether Stanley may claim a privilege will turn on this Court's determination of whether: AYA is religious, Stanley is a minister, and the information is akin to a confession.

**Plaintiffs' Position**:

"A determination of whether the clergy-penitent privilege applies involves a three-step inquiry: (1) Is the person who received the confession a 'clergyman or priest?' (2) Was the confession made while the clergyman or priest was acting in his professional capacity? (3) Was the confession made in the course of discipline enjoined by the church to which the clergyman or priest belongs? If the answer to all three inquiries is affirmative, then the clergy-penitent privilege under § 13-4062(3) applies, unless the privilege is waived." *State v. Archibeque*, 223 Ariz. 231, 234, 221 P.3d 1045, 1048 (Ct. App. 2009). Plaintiffs submit as foundational facts: Plaintiff Stanley that he is the founder of AYA, and serves as the lead facilitator, offering ceremony in the District of Arizona approximately 250 times since April

22, 2020; during ceremonies it is not uncommon for participants to be seized with regret for past actions, and desire to disclose such matters directly to him.  As in other religions, the disclosure of faults leads to relief from guilt and acceptance of Divine love and healing. Matters so disclosed are subject to a privilege that Plaintiff Stanley must protect.

Dated: February 12, 2024              Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      Principal Deputy Assistant Attorney
                                      General

                                      BRIGHAM J. BOWEN
                                      Assistant Branch Director

                                      /s/ Lisa Newman
                                      Lisa Newman (TX 24107878)
                                      Bonnie E. Devany
                                      Trial Attorneys
                                      Civil Division, Federal Programs Branch
                                      U.S. Department of Justice
                                      1100 L Street NW
                                      Washington, D.C. 20005
                                      Telephone: (202) 514-5578
                                      E-mail: lisa.n.newman@usdoj.gov

                                      Attorneys for Defendants

                                      CHARLES CARREON (CSB #127139)
                                      7 N. Ridge Crest Circle
                                      Silver City, New Mexico 88061
                                      Tel: 928-975-2191
                                      Email: chascarreon@gmail.com

                                      Attorney for Plaintiffs

1

**<u>Certification.</u>**

2

       Counsel for Defendants and Plaintiffs hereby certify that they have attempted to

3

resolve the instant dispute through personal consultation and sincere effort in accordance with

4

Rule 7.2(j) and the Rule 16 Scheduling Order.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28