# EXHIBIT C

CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

JOHN SULLIVAN (CSB#204648) Pro Hac Vice
17532 Miranda Street
Encino, California 91316-1249
Tel:818-769-7236 Fax:818-301-2175
Email:Sullivan.John84@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly and
Winfield Scott Stanley III

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ArizonaYagé Assembly,  and Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly, , | Case No.:20-CV-02373-ROS |
| Plaintiffs, | PLAINTIFF'S RESPONSES TO FIRST SET OF  INTERROGATORIES FROM DEFENDANTS |
| vs. | F.R.Civ.P. 36 |
| Merrick Garland Attorney General of the United States; et al. | |
| Defendants. | |

PROPOUNDING             All Defendants

PARTIES:

RESPONDING PARTY:    Plaintiffs Arizona Yagé Assembly and Winfield Scott

Stanley III

SET NUMBER:             ONE

## INTERROGATORIES, OBJECTIONS & RESPONSES

1. Identify each and every person who has knowledge or information concerning the allegations made in Plaintiffs' Fifth Amended Complaint. For each person identified, describe in detail the substance of the person's knowledge and describe the person's relationship to you, if any.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

2. Identify each and every person who has served in, have been asked to serve in, or has requested to serve in, a leadership role or position of authority in one of your ceremonies or in your organization, including any individual who has served as, has been asked to serve, or has requested to serve as, your "Minister of the Assembly," "lead facilitator," a facilitator other than "lead facilitator," a member of your Board of Directors, or as an advisor to your organization. For each person identified, indicate which role or roles the person served in, was requested to serve in, or requested to serve in, and when the person served in, was requested to serve in, or requested to serve in, that role or, if the person never served, why not.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  seeking to impair the implicit guarantee of confidentiality that AYA provides to each congregation member, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs'

rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

3. Identify and describe each and every instance in which you provided training to any individual identified in response to Interrogatory No. 2. For each instance identified, indicate who led the training, who received the training, when the training occurred, the content of or topics covered during the training, and any materials used during the training. Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise,  violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

4. Identify each and every person who has attended or participated in, or who has requested to attend or participate in, one of your ceremonies. For each person identified, indicate when the person attended or participated, or requested to attend or participate; whether the person was permitted to attend or participate and any explanation as to why or why not the person was permitted to attend or participate; and how many times the person has attended or participated in one of your ceremonies.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege

(ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

5. Identify each and every instance in which a person was not "approved to participate" in one of your ceremonies, either "by the Minister of the Assembly" or by someone else within your organization.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs propose to provide a selection of anonymized documents showing one or more instances of the sort sought by this interrogatory, with personal and location identifiers of non-parties redacted.

6 For each instance identified, please identify the person who made the decision, the reason or reasons for the decision, how that decision was communicated to the person not approved to participate, and whether the person not approved to participate was ever permitted to participate in one of your ceremonies on any other occasion.  Response:  To the best of Stanley's knowledge, he decided all cases where a person was declined an opportunity to participate in an AYA ceremony.

6. Identify each and every instance in which a person did not "remain within the ceremonial environment until the conclusion of the ceremony." Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications. Response: Without waiver of the said objections, Plaintiffs state that The ceremonial environment includes the eight acres of grounds surrounding our Maloka in the hills west of Tucson (add photos of the Maloka into evidence). Ceremonial participants are encouraged to step outside the Maloka, as they may be moved, but then return to the ceremonial circle without too much time away. Our permanent location is descriptive of the locations common to our ceremony locations which have included retreat centers in the mountains surrounding Tucson, Arizona, multi-acre estates in the desert of Joshua Tree, California, compounds in the woods of Oregon, a two-hundred acre hunting preserve and lodge in Kansas, a ceremonial site on a land preserve in the Louisiana Bayu, a 100 acre Qi Gong center off the Colorado River in Utah, Yurts in the deep woods of Colorado, and an Island in Maine. These locations and environments are typical of our chosen ceremonial sites. Car keys and cell phones are collected with the written approval of each member of the congregation in advance of attending ceremony. AYA's facilitators encourage those who have left the circle for an extended time to return to the circle. Not only do participants not have the means to leave the grounds, but there is effectively nowhere to go if they did. No one, for instance, is left to wander some suburban neighborhood in the middle of ceremony. Our objective is to keep a caring and watchful eye on our congregation during ceremony. Our objective

is to establish the setting for participants to feel free to explore the divine order of their inner and outer world without social interference.  In rare instances, some participants may need to leave in the early morning within the final hour prior to the close of ceremony to catch a flight.  Accommodations for leaving the grounds prior to the close of ceremony are pre-arranged.

7. For each instance identified, please identify the date, time, and location of the ceremony, why the person did not remain until the conclusion, any steps taken by your facilitators to "assure that [ceremony participants]" kept their commitment "to remain within the ceremonial environment until the conclusion of the ceremony, "whether any assistance (medical or otherwise) was administered to the person, and whether the person was ever permitted to participate in one of your ceremonies on any other occasion. Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: There are no such incidents to report.

8. Identify each and every instance in which a ceremony participant's request to receive "an additional serving" was denied, including the date, time, and location of the ceremony, why the participant was not permitted to receive an additional serving, whether any assistance (medical or otherwise) was administered to the person, and whether the person was ever permitted to participate in one of your ceremonies on any

other occasion.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that Ayahuasca is not a drug, any more than a human being is no more than a cascade of chemical reactions regulatable in total by either drug or governmental interactions.  That said, dosage levels are measured and varied to individuals based on factors of weight, sensitivity profiles identified in intake questionnaires, and response to the initial dose of medicine.  Once the sacrament is consumed, a significant degree of the practitioner's journey relies on their intention and willingness to accept the teachings found within their ceremonial experience. For the uninitiated, these experiences might be most easily described as states of struggle and surrender. Struggle, in the context of ceremony, might be described as the individual forcefully trying to direct their experience in an arresting and judgmental fashion. Surrender might best be described as a nonjudgmental state of acceptance.  In opening talks to ceremony prior to drinking, it's commonly stated that "We are all students of struggle and surrender, joy and sorrow, love and forgiveness."  These inner states are just as regulatory to the experience as the actual dosage levels themselves. These inner states also attune to ceremonial music and the ceremonial setting.  Dosage levels must be considered in this context.  Dosage levels, specifically, are regulated by the lead facilitator to assure that each practitioner can get the most out of their experience. Additionally, purging of  La Medicina is also a self-regulating factor in the experience of the participant.  These six factors (dose level, intentions, inner-states of acceptance or

struggle, purging, music, and setting) all work in tandem for the regulating of the practitioner's experience.  It is the prayer, both prior and following the ingesting of the sine-qua-non host, that is an essential element for connecting with Divine Will in any church, regardless of governmental categorizations.   We might also add that the unresolved legal case now before the court also effects dosage levels.  There are people who will not participate in our church services until this case is resolved favorably.

8. Identify each and every possible response to the document filed in this case as Dkt. No. 33-6 that, if provided by a prospective ceremony participant, would result in you determining that the prospective participant was not eligible to participate in one of your ceremonies.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that Defendants should refer to our medical intake questionnaire. Non-participation in ceremony for medical reasons includes, drug contraindications such as SSRI's and hypertensives, and physical issues, including but not limited to to heart, lung, kidney, digestive, arterial, and liver function.  Each intake form is reviewed on a case-by-case basis.

9. For each of the statements regarding proper preparation in the document filed in this case as Dkt. No. 33-7, identify the medical or other trained professionals involved in drafting this document and the medical or other basis for including each of the statements

in this document.   Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that their written protocols derive from ancient unwritten practices passed through the indigenous media of song, art, and dance, and not from scientific studies.  Scientific and medical protocols have been incorporated as useful and beneficial, including dietary and medication restrictions for consumption of MAO inhibiting beta carbolenes present in Ayahuasca.  Medical professionals regularly attend our ceremonies.  Plaintiffs' practices square with the published medical studies and expert medical testimony entered into the record.  The manner in which the written protocols were generated would not be probative of any matter in dispute.

10. Identify the date and location of each and every instance in which you held a ceremony, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. For each and every instance identified, indicate every substance consumed by any person or offered for consumption, who was present at the ceremony, who was responsible for handling any substances consumed by any person or offered for consumption, and who served in a leadership role and/or position of authority at the ceremony (e.g., Minister of the Assembly, "lead facilitator," other facilitator).  Objections: seeks cumulative evidence and therefore irrelevant to the determination of any claim or defense, irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third

parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response:  Response: Without waiver of the said objections, Plaintiffs state that plaintiff Stanley's declarations in support of AYA's motions for preliminary injunction have provided sufficient information concerning this topic that any additional information would be duplicative, redundant and unnecessarily burdensome, particularly given that there is no factual dispute over the matter.  Efforts to elicit information regarding relations with non-parties are merely harassing.  To require a response would impose a very large burden on Plaintiffs due to a number of causes, and would generate no corresponding benefit to the fact-finding process.

11. Identify each and every instance in which you have stored, prepared, secured, distributed, dispensed, obtained, imported, exported, destroyed/disposed of, transported, transferred to another person, or otherwise handled ayahuasca. For each instance identified, indicate when the activity occurred, any and all persons involved in the activity, including any senders and/or recipients, and any steps you required the person or persons to take to be granted permission to perform the activity (including, but not limited to, training, background check, use of key or code).  Objections: seeks cumulative evidence and therefore irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth

Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that plaintiff Stanley's declarations in support of AYA's motions for preliminary injunction have provided sufficient information concerning this topic that any additional information would be duplicative, redundant and unnecessarily burdensome, particularly given that there is no factual dispute over the matter.  Efforts to elicit information regarding relations with non-parties are merely harassing.  To require a response would impose a very large burden on Plaintiffs due to a number of causes, and would generate no corresponding benefit to the fact-finding process.

12. Identify any and all security measures you have adopted relating to your handling of ayahuasca, including those referred to in the document titled "Ceremonial Instructions." For any physical devices identified, indicate the make, model, and serial number of any device; the persons who have access to the device; and the days and times when access to the device is available. For any other security measures identified, please describe in reasonable detail the measure, including when the measure was first implemented, and how the measure adequately ensures the safe handling of ayahuasca.

Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation.  Response: Without waiver of objections, Plaintiffs state that the sole person having custody of AYA ceremonial Ayahuasca prior to or after ceremony is plaintiff Stanley, and he secures it in the same manner as he cares for all  other important possessions – either locked in a vehicle, locked in a temporary

storage facility, or inside premises under his control.  Plaintiffs' sacrament is kept in a secure location, travels with the lead facilitator, is never sold, is used only in a ceremonial context, and leaves the ceremonial site at the close of each ceremony to return to its secure location with the lead facilitator.  No sacrament has ever been stolen or has been left in the position to be stolen with the exception of sacrament seized by US Customs.

13. Identify each and every instance in which an individual not authorized to access ayahuasca in your possession has gained, or attempted to gain, access. For each instance identified, indicate if unauthorized access occurred, when unauthorized access or attempted unauthorized access occurred, who gained or attempted to gain unauthorized access, whether any security measures were circumvented in gaining or attempting to gain such access, whether any remedial steps were taken in response, and whether, since the measure was implemented, any unauthorized access occurred or was attempted. Response:  This has never occurred.

14. Identify each and every instance in which aid, support, or assistance, whether physical, medical, psychological, or otherwise, was offered, administered, or provided to any person prior to, during, or after a ceremony. For each instance identified, please identify the date, time, and location of the ceremony, the type of assistance provided, the reason that assistance was provided, whether the person receiving assistance was permitted to continue the ceremony, and whether the person to whom assistance was provided was ever permitted to participate in one of your ceremonies on any other occasion.  Objections: seeks cumulative evidence and therefore irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise,

1   violating AYA's right under the Establishment Clause to be free of government process
2   probing internal church activities, violating the Fifth Amendment rights of AYA's
3   congregation, and invading privileged attorney-client and attorney work-product
4   protected communications.  Response:  Plaintiffs' entire ceremonial process involves
5   rendering physical and psychological aid, support, and assistance.  Visionary communion
6   presents some congregants with challenging circumstances; however, the particulars of
7   any individual non-party's ceremonial experience are not relevant to determining the
8   claims and defenses alleged herein.  Further, this interrogatory seeks non-party medical
9   records, and any individual whose records would thereby be disclosed would have
10  standing to object to disclosure.  Given the burdens and minimal probative value of this
11  information, it is not discoverable. Customs

12

13  15. Identify each and every instance in which misconduct of any kind (including, but not
14  limited to, sexual misconduct, battery, assault, fraud, use of controlled substances other
15  than ayahuasca, "misuse[] [of] the Sacrament," "a breach of ethics," or any instances in
16  which any person "conducted themselves improperly during [a] ceremony occurred or
17  was alleged to have occurred prior to, during, or after a ceremony. For each instance
18  identified, indicate when and where the misconduct occurred or was alleged to have
19  occurred, who alleged the misconduct, who was alleged to have been involved in the
20  misconduct, whether the misconduct or alleged misconduct was reported to your Board
21  of Directors, to law enforcement, or to another entity, whether the misconduct resulted in
22  any disciplinary action (including by the Minister of the Assembly), and, if so, the type of
23  any disciplinary action (including "exclusion from future ceremonial activity") taken.
24  Objections: irrelevant to the determination of any claim or defense, overbroad and
25  disproportionate to the needs of the case, invading the privacy rights of non-litigants,
26  encroaching on promises of confidentiality AYA has made to third parties,  invading the
27  priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical
28  records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating

Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that there have been no incidents of this sort.  Practitioners are guided prior to ceremony not to touch other participants, since touching other participants can draw them out of their inner journey.  Because ceremonies are conducted in a single open room, all positions of the room are visible to the ceremonial staff.   Our statement of ethics, entered into the record, clearly defines ceremonial roles and rules of healthy conduct.  Our statement of ethics expresses guiding principles to ensuring safe passage for participants through the ceremonial process.  Our observant staff also assist and guide practitioners to stay within the guidelines to maintain an undisturbed and what we refer to as a *noble silence* within the ceremonial space.

16. Identify each and every one of the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback." For each individual identified, describe the "knowledge and feedback" sought or shared.

Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that we are continually in a process of call and response with our members in and out of ceremony.  We share significant peer support within the

anonymity of our church membership.  We would consider it a betrayal of trust to see the release of these names and the tenor of these conversations to public agencies.  One of our teachers in Peru is Eladio Melendez Garcia, whose statement of support has already been entered into the record. Jonathan Goldman, director for the Asland, Oregon branch of the Santo Daime has been a great benefit to our efforts in sharing his wisdom and support.  His declaration has, likewise, been entered into the record.  Our community for peer support is significant, including the 38 churches now enrolled as members in the North American Association of Visionary Churches (NAAVC).  Although some member churches in the NAAVC may be small, with congregations under 100, other churches are far larger with congregations larger than 1,000.  We draw spiritual support within our religious community. We are seeking to learn from and protect our religious community, our teachers, and our peers.  Federal investigations of identified members of our community at their homes, though the mails, online, or through this legal action, would squelch our practices of speech and religious practice no less than positioning Federal investigators or squad cars outside of a Catholic church, no matter how well intended, to ask about that day's confessions.  That said, how members of our congregation represent their religious practices within their own families, professions, schools, secular and orthodox communities is already clearly inhibited, as identified in the surveying of our membership already entered into the record of this case.


17. Describe the set and setting of your ayahuasca ceremonies, including but not limited to the location, the number and title of any facilitators, the number and title of any healthcare professionals, the number of participants, the physical and psychological environment, and mental preparation of the participants.

Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical

records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that weekend ceremonies are conducted at our ceremonial Maloka west of the city of Tucson, Arizona two to three times each month.  A maloka is the name for a ceremonial round-house in South America.  Our Maloka is 50 feet in diameter positioned with views from the altar looking westward toward Boboquivari Peak.  The door to the East faces the rising sun over the Sierrita Mountains on the winter solstice.  The entryway faces the North Star.  Members of our congregation, including master carpenters, engineers, and licensed contractors drove in from around the country from as far as Alaska to build our Maloka.  Ceremonies range in size from 12 to 40 congregants held over alternate weekends over Friday, Saturday, and Sunday nights. The facilitator crew ranges from 3-8 people depending on the total participants for the night.  Facilitators are First-Aid/CPR trained.  Practitioners follow a set of prescribed guidelines as set in the AYA Preparation Guidelines.  The guidelines include: the setting of intent for each practitioner, dietary restrictions for both food and media, and meditation. Particularly those with active addiction issues, we ask any participants be at least 5-days clean of substance use prior to ceremony.  Regardless of addiction, we encourage a spirit of honesty for all participants.  For drug users that fail to meet the guidelines, we'll issue them a credit for a later ceremony date.  Each participant fills out both a medical questionnaire, and a personal questionnaire focused on their personal history, intentions, and reasons for attending.  Each participant, new or returning, is greeted at the entrance and checked off against the list of people attending services for the night.  Prior to ceremony, the facilitator staff members make the rounds to talk with people at their mats. The lead facilitator conducts an orientation talk for those new to the circle, including people who are new to La Medicina and those who are visiting with us from other circles

for the first time.  That talk gives people background on our troupe.  That background includes our troupes training and experiences working with Ayahuasca and the attendant master plants of the Amazon.  It also includes, a step-by-step review of what they can expect for the night. They're informed that prior to drinking we pass a pipe around the circle.  The pipe is packed with Mapacho, a strong form of Peruvian tobacco.  Practitioners are encouraged to take a few puffs without inhaling to blow the smoke over their hands, arms, and then using their palms to move the smoke over their chest and head.  This is a traditional Amazonian entre into the hollowed inner space of the ceremonial field, as part of what's recognized in Amazonian traditions for ritual protections in keeping with the intentions of the ceremony.  After this, we pass around a small mason jar of tobacco tea.  Practitioners do not drink it, but rather, they aspirate half a spoonful up each nostril with a spoon.  The tobacco tea clears the sinuses to make it easy to breath.  The suggestion in the orientation talk is that the use of the tobacco tea makes an excellent reminder to return to the breath to treat the evening's ceremony with the reverence of a meditation by returning regularly to the breath.   After the tea, people are called to the altar, beginning with the first-timers.  An hour after everyone has drunk La Medicina, we ring a singing bowl.  At that point, everyone is free to come up to the altar to drink La Medicina at any point until the ceremony is completed with a closing blessing after morning's first light.  Over the course of the night the facilitator staff come around with palo santo incense, and water blessed at the altar for people to drink.  Icaros, the songs of the Amazon, are sung over the course of the night, including centuries-old songs in Quechua, but also other songs inspired by La Medicina written in Spanish, English, Quechua or a blending of the three languages. These songs are intended for the healing, cleansing, and blessing of the congregation.  Each with its own specific intent.  Aside from more sacrament, anyone with questions during ceremony is encouraged to call over one of the facilitator staff to their mat or to come up to the altar to address their unique situations with prayers and blessings.  These often involve the use of mapacho smoke or what is commonly called tobaccoito.  But it might also include hapé, a Peruvian

powder blown up the nose composed of finely powdered wood-ash and mapacho. Cleanses at the altar may also include essences of flowers or master plants or agua de florida.  The orientation talk also includes discussion of navigating La Medicina. Participants are told that the navigational center of the ceremonial experience in many ways is found in the feeling of surrender.  Very often when people surrender in the social order they  abdicate personal power.  Inside of the ceremony experience when people allow themselves to experience surrender, they often reclaim personal power.  It's explained to new attendees that it's nearly impossible to define surrender in this context, because it changes with each ceremony.  But if surrender means anything, it simply means to allow yourself to feel.  The talk goes on to describe how the moods inside of the ceremonial experience can be varied.  They can feel strange, unsettling, weird, anxiety producing, scary, laugh-out-loud funny, tearful, joyful, or tranquil, etc.  In reference to navigating through surrender people are told, "But whatever you're feeling, that's where the healing is taking place, especially if you feel like you don't what to feel that way, you want to feel some other way.  If you're trying to push some mood away, there's your little flag to tell you that's your healing that you're feeling in that moment.  If you can simply allow yourself to feel it, as best you can, that mood will let go of its hooks and on the other side is another layer of inner silence and Divine Love and you can abide in that place as long as like."  The new-person orientation talk includes a question and answer period followed by a break before beginning the opening talk and the start of ceremony itself.

In the opening talk, prior to calling practitioners up to the altar, each facilitator introduces themselves and gives a brief talk on a range of topics that often include: love, forgiveness, surrender, gratitude, and God.  A line of biblical scripture is recounted, gratitude is extended to the Spirit, and a short poem is read.

18. Identify each and every person who wrote, edited, reviewed, commented on, or otherwise received a draft of the documents attached to your original motion for a

preliminary injunction in this case, Dkt. No. 33: "AYA Tenets and Precepts"17;

"Ceremonial Instructions"18; "Code of Ethics"19; the questionnaire filed in this case as

DKT. No. 33-6; and the confirmation letter filed in this case as Dkt. No. 33-7.

Objections: irrelevant to the determination of any claim or defense, overbroad and

disproportionate to the needs of the case, invading the privacy rights of non-litigants,

encroaching on promises of confidentiality AYA has made to third parties,  invading the

priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical

records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating

Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause

to be free of government process probing internal church activities, violating the Fifth

Amendment rights of AYA's congregation, and invading privileged attorney-client and

attorney work-product protected communications.  Response: Without waiver of the said

objections, Plaintiffs state, As Director of AYA, Scott Stanley is the author of AYA

Tenets and Precepts, and our Code of Ethics.  That said, their formation was a

collaborative affair born out shared experience within our community.  As the author of

both AYA's Tenets and Precepts, and our Code of Ethics, I'm formulating this response

myself.  I consider these guiding principles for myself.  My opinion, is that they're well

received and practiced from the heart within our community, but mainly because these

two documents were formulated out of a shared experience.  Everyone played a role.  I

wrote them down.  As to instructions offered to practitioners in preparation for ceremony,

they remain a work in progress with many of the hands of the congregation involved, all

of whom, in this respect, wish to remain anonymous.  I am the lead editor for that

document.

19. Describe how your religious tradition relates to, borrows from, interacts with, or is

otherwise connected to other religious traditions, including Christianity. Objections:

irrelevant to the determination of any claim or defense, overbroad and disproportionate to

the needs of the case, invading the privacy rights of non-litigants, encroaching on

promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that this type of doctrinal inquiry has no relevance to the Plaintiffs' claims or the defendants' defenses, and cannot produce relevant information.

20. Identify each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies. For each instance identified, please provide the amount received, the date received, and the purpose of payment, donation, or other contribution.

Objections: First observing that the right to collect funds for religious activity is, in itself, free exercise protected under the First Amendment, it is also not relevant to Plaintiffs' claims nor defendants' defenses whether payment is made for religious ceremonies, the amount that is paid, who makes the payment, or when the payment was made. Accordingly, the interrogatory is irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

21. For each document used at your ceremonies or trainings, or that you otherwise intend to rely upon to demonstrate the existence of what you allege are your "sincerely held religious beliefs and practices," identify each and every person who wrote, edited, reviewed, commented on, or otherwise received drafts of the document.  Response: Stanley wrote all of the documents that he and AYA will present as evidence of sincerely held religious beliefs and practices.

22. Describe the process by which you ensure that you "offer Visionary Communion only to sincere religious persons with a reverent mindset," including how you determine who are "sincerely religious persons" and whether they have a "reverent mindset."  Response: Our process is simple in this regard, we take people at their word, and we meditate and pray for guidance.

23. Identify each and every organization or association of which AYA or one of the named Plaintiffs is a member, or have requested to be a member. For each organization or association identified, indicate when AYA or one of the named Plaintiffs first requested to become a member, how long AYA or one of the named Plaintiffs has been a member, whether AYA or one of the named Plaintiffs pays dues or anything else of value to the organization or association, and any individuals at the organization or association with whom AYA or one of the named Plaintiffs communicates or has communicated. Objections:  irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation,

and invading privileged attorney-client and attorney work-product protected communications.  Invades the Fifth Amendment and First Amendment rights of other members of the North American Association of Visionary Churches ("NAAVC"), and the First Amendment rights of NAAVC.

Response:  AYA has been a member of the North American Association of Visionary Churches since it was formed in  June of 2019, and pays yearly organizational dues of $200.

Dated: October 17, 2023                    CHARLES CARREON
                                            /s/Charles Carreon
                                            CHARLES CARREON (127139)
                                            Attorney for Plaintiffs
                                            Arizona Yagé Assembly,
                                            Winfield Scott Stanley III

## VERIFICATION

The matters and facts set forth in the above and foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

_____
Winfield Scott Stanley III