# EXHIBIT D

CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

JOHN SULLIVAN (CSB#204648) Pro Hac Vice
17532 Miranda Street
Encino, California 91316-1249
Tel:818-769-7236 Fax:818-301-2175
Email:Sullivan.John84@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly and
Winfield Scott Stanley III

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ArizonaYagé Assembly, and Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly, , <br><br> Plaintiffs, <br><br> vs. <br><br> Merrick Garland Attorney General of the United States; et al. <br><br> _____ Defendants. _____ | Case No.:20-CV-02373-ROS <br><br> PLAINTIFF'S SUPPLEMENTAL RESPONSES TO FIRST SET OF INTERROGATORIES FROM DEFENDANTS <br><br> F.R.Civ.P. 36 |

PROPOUNDING          All Defendants

PARTIES:

RESPONDING PARTY:    Plaintiffs Arizona Yagé Assembly and Winfield Scott

                                         Stanley III

SET NUMBER:          ONE

## PREFATORY STATEMENT

These supplemental responses to interrogatories fully incorporate, verbatim and unchanged, the text of the originally-served responses.  All supplemental information appears under headings clearly indicating their supplemental nature.

## INTERROGATORIES, OBJECTIONS & RESPONSES

1. Identify each and every person who has knowledge or information concerning the allegations made in Plaintiffs' Fifth Amended Complaint. For each person identified, describe in detail the substance of the person's knowledge and describe the person's relationship to you, if any.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

**Supplemental Discussion of factual applicability of objections:**

Disproportionality, relevance and burden outweighing expense: The RFRA claim was created by Congress to provide a vehicle for religious persons like plaintiffs to seek relief from substantial burdens imposed by Defendants,  not as a vehicle for Defendants to bore into the privacy of non-party congregation members, imposing additional substantial burdens on the plaintiffs' free exercise and disincentivizing the congregation from engaging in religious ceremony with AYA by seeking to expose their involvement with AYA to scrutiny by law enforcement and prosecutorial agencies.

In *Coronel v. Paul*, 316 F. Supp. 2d 868, 878 (D. Ariz. 2004), the Court adopted the "religious motivation test" for the first step of RFRA analysis, in which the court

determines whether the plaintiff qualifies as a religious person under RFRA.  The religious motivation test is not a probing search of a plaintiff's practices and beliefs, and turns on "only whether a practice was important to the claimant and motivated by sincere religious belief," thus avoiding "unsavory inquiries [that] violated the rights of individual believers and undermined the traditional prohibition against judicial resolution of theological disputes."  *Coronel v. Paul*, 316 F. Supp. 2d 868, 878, quoting *Restoring Rights to Rites: The Religious Motivation Test and the Religious Freedom Restoration Act*, 95 Mich. L. Rev. 1472, 1512 (March, 1997).

AYA and Stanley thus can prove their RFRA claim by showing that religious intent motivates their use of Ayahuasca.  "'As with all such issues of motive,' the trier of fact must determine whether the circumstantial evidence suffices to demonstrate the element." Though 'evidence concerning the conventional practice of a particular religion is not determinative, it does not follow that such evidence is irrelevant to a contested issue of sincerity.' Id. 'Other evidence which may bear on the issue of sincerity includes the testimony of plaintiff, plaintiff's conduct, a demonstrated willingness to forego privileges by virtue of religious commandment, the consistency of plaintiff's adherence, and other evidence reasonably having a tendency to prove or disprove the issue.'" *Coronel v. Paul*, 316 F. Supp. 2d 868, 879 n.11 (D. Ariz. 2004), *quoting Rouser v. White*, 944 F. Supp. 1447, 1455 n.14 (E.D. Cal. 1996).

There are two plaintiffs in this case: (1) AYA, a nonprofit corporation that fits the Hobby Lobby factors for a "corporate religious person" within the meaning of RFRA, and (2) Stanley, a human "religious person" within the same statutory scheme.  Thus, except for Stanley, all witnesses to matters alleged in the FAC are non-parties, and it would be a burdensome imposition of investigative labor on to plaintiffs' legal team to identify "each and every person" having knowledge of the allegations of a complaint that contains 102 paragraphs and over 9,000 words.  This type of legal investigative project would consume an estimated 20 – 100 hours of attorney time, and would be of little use. Most of the unnumbered flood of persons knowing of matters alleged in the FAC, if

questioned as to facts within their knowledge, would provide irrelevant information, because (a) many allegations require only minimal proof, and certainly not evidence from "each and every person" having knowledge, (b) many people would have some fragmentary bit of knowledge that would not add to the Court's understanding of the issues, (c) many people would provide cumulative information.  Thus, the effort to identify this vast crowd of persons would provide little benefit for the litigation.  Some of the members of this unnumbered group would be AYA members who have made statements during AYA ceremonies, or regarding their AYA ceremonies, within an environment where confidentiality was assured, be that in ceremony proper, or in after-ceremony exchanges in the AYA Private Facebook Group.

Plaintiffs invoke the priest-penitent privilege with respect to disclosures made in ceremony to Stanley or another AYA facilitator.

People who attended AYA ceremonies disclosed their identities to plaintiffs in the context of express and implied confidentiality made necessary by the Defendants' continued application of policies that criminalize the free exercise use of Ayahuasca. *See, Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1219 (D. Or. 2009)[1]  AYA has a duty to protect the privacy expectations arising from those commitments. Seeking to compel AYA to abrogate such commitments would be an additional burden upon free exercise, undermining the right to assemble with like-minded religious persons.

Plaintiffs invoke an express and implied promise that AYA limits access to the AYA Private Facebook Group to members of the congregation and those who are seriously contemplating engaging in ceremony with AYA.

The objection on grounds of medical privacy is made because all applications to register for ceremony involve medical disclosures that the disclosing parties are assured

---

[1] "[D]efendants challenge plaintiffs' sincerity, citing plaintiffs' decision to conduct ceremonies in secret until the Supreme Court ruling in favor of the UDV plaintiffs. ***Plaintiffs' secrecy does not show a lack of sincerity. Instead, it shows that plaintiffs remained committed to practicing their religion despite the threat of criminal prosecution and loss of professional status*.**"  615 F.Supp. 2d at 1219 (emphasis added).

will be used only for AYA's internal purposes, and not shared outside of AYA.  AYA must assert privacy protection on behalf of persons who have made medical disclosures subject to exclusive use by AYA.

AYA invokes the Fifth Amendment rights of its congregation members based on *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 86 S. Ct. 194 (1965)(upholding Fifth Amendment immunity of members of Communist Party to maintain anonymity despite unlawful refusal to register as members of Communist Party).  The similarity of this case to *Albertson v. SACB* is clear: Like the party members who had refused to register with SACB, members of the AYA congregation would be exposed to the risk of criminal investigation and prosecution by the Defendants and other law enforcement agencies.

All of the above objectionable features of the interrogatory impose burdens upon plaintiffs that would not produce any substantial quanta of evidence relevant to proof of plaintiffs' claims or Defendants' defenses.  These burdens are not only monetary or measured in attorney time. As the Commentators to Rule 26(b)(1) observed, when considering whether a discovery demand is burdensome, the Court ought to look beyond mere pecuniary disadvantages and take into account of all types of "non-dollar-amount" burdens that will result from a burdensome demand.  "It also is important to repeat the caution that the monetary stakes are only one factor, to be balanced against other factors. The 1983 Committee Note recognized 'the significance of the substantive issues, as measured in philosophic, social, or institutional terms. Thus the rule recognizes that many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved.'"  (Notes to Rule 26(b)(1) of Advisory Committee on 2015 Amendments.)

**Without waiver of the said objections, plaintiffs supplementally respond:**

Stanley has knowledge of matters within the scope of this non-exhaustive list:

the facts alleging actions performed by AYA and himself in the FAC, including the organization of AYA and its religious free exercise activities in the District of Arizona;

the *Hobby Lobby* factors establishing corporate religious personhood under RFRA;

how AYA ceremonies administer Ayahuasca, an herbal tea containing a small amount of the controlled substance DMT;

the authorship and meaning of the AYA Tenets and Precepts, the Ceremonial Instructions, and the Code of Ethics of AYA;

the proper conduct the Ayahuasca ceremonies that AYA offers as free exercise;

the seizures of AYA's Ayahuasca by DHS and CBP;

the various forms of substantial burden suffered by AYA due to the acts of the Defendants and their application of the CSA as an absolute prohibition on the importation and use of Ayahuasca as a communion sacrament;

that Stanley, individually, is a religious person within the meaning of RFRA;

that the policies of the Defendants and the absolute ban imposed by the CSA impose substantial burdens upon AYA's religious free exercise, and his own;

that the Defendants have likely engaged in investigative activity directed towards AYA and himself;

that DEA, CBP, and DHS ignore their duties under former AG Sessions' Memorandum on Religious Freedom to provide an exemption process for religious applicants;

that CBP denied receiving the request for exemption that was sent to AUSA Kevin Hancock, requesting no further interference with Ayahuasca importation by AYA and Stanley;

that Agent Brinks submitted a sworn declaration that the DEA was updating the Guidance in an effort to obtain a stay of this litigation;

that plaintiffs' continued inquiries into the "plan to update the Guidance" indicate that the DEA has not updated the Guidance, has no plans to do so, because Brinks merely signed his declaration for purposes of inducing delay;

that the DEA does not provide equal access to regulatory services for visionary churches like AYA as it does to those who seek regulatory services for secular purpose;

that the acts of Defendants in responding to this litigation have imposed additional substantial burdens on the free exercise of AYA and Stanley; and,

that plaintiffs are entitled to the relief requested in this action.

In addition to Stanley, there are congregation members of AYA and facilitators who have been sharing the AYA path of ceremony with AYA and Stanley who have knowledge of some of the matters alleged in the FAC that would corroborate Stanley's description of the group and its activities.  At present, AYA asserts the Fifth Amendment rights of these persons to remain anonymous in this litigation, because AYA believes and contends that such persons can only be properly made witnesses in this action by their consent.  AYA is working to seek consent to some type of disclosure under an appropriate, bulletproof protective order that would allow some of these persons to reveal their identities.  However, AYA has no known means of compelling such disclosures, and is legally obliged to maintain confidentiality at this time.  Accordingly, on the authority of *Albertsons, supra*, the Fifth Amendment has been invoked.


2. Identify each and every person who has served in, have been asked to serve in, or has requested to serve in, a leadership role or position of authority in one of your ceremonies or in your organization, including any individual who has served as, has been asked to serve, or has requested to serve as, your "Minister of the Assembly," "lead facilitator," a facilitator other than "lead facilitator," a member of your Board of Directors, or as an advisor to your organization. For each person identified, indicate which role or roles the person served in, was requested to serve in, or requested to serve in, and when the person served in, was requested to serve in, or requested to serve in, that role or, if the person

never served, why not.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  seeking to impair the implicit guarantee of confidentiality that AYA provides to each congregation member, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

**Supplemental Discussion of factual applicability of objections:**

This interrogatory seeks information not relevant to any claim or defense herein. The disclosures sought, if required to be made, would impose a disproportionate burden on responding party while bringing little in the way of relevant, *i.e.,* discoverable, information.  *See*, *supra* on intangible burdens resulting from overdiscovery, Comments to Rule 26(b)(1) at Response to Interrogatory 1, incorporated here by reference.    The interrogatory also misconceives the organizational structure of AYA.  While Stanley exercises operational authority, AYA is not structured to operate through hierarchical "leadership".  Group planning sessions resulting in shared responsibility among peers might better describe the collaborative dynamic that animates AYA.  Assuming that leaders might be identified, plaintiffs will not be submitting their identities in support of their RFRA claims or their Declaratory Relief claims.  AYA and Stanley can establish their entitlement to relief as RFRA religious persons without the testimony of AYA leaders.  Responding party knows of no use to which the Defendants might put this information in support of any defense asserted in the Answer to the FAC.  Accordingly, the identities of AYA leaders are not relevant to any claim to be presented by AYA.

AYA invokes the Fifth Amendment rights of its "leadership" members based on *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 86 S. Ct. 194

(1965)(upholding Fifth Amendment immunity of members of Communist Party to maintain anonymity despite unlawful refusal to register as members of Communist Party).  The similarity of this case to *Albertson v. SACB* is clear: Like the party members who had refused to register with SACB, AYA "leadership" would be exposed to the risk of criminal investigation and prosecution by the Defendants and other law enforcement agencies.

"AYA leaders'" disclosed their identities to plaintiffs in the context of express and implied confidentiality made necessary by the Defendants' continued application of policies that criminalize the free exercise use of Ayahuasca.  *See, Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1219 (D. Or. 2009).

Plaintiffs invoke the priest-penitent privilege with respect to disclosures made in ceremony to Stanley or another AYA facilitator.

Plaintiffs invoke an express and implied promise that AYA limits access to the AYA Private Facebook Group to members of the congregation and those who are seriously contemplating engaging in ceremony with AYA.

The objection on grounds of medical privacy is made because all applications to register for ceremony involve medical disclosures that the disclosing parties are assured will be used only for AYA's internal purposes, and not shared outside of AYA.  AYA must assert privacy protection on behalf of persons who have made medical disclosures subject to exclusive use by AYA.

**Without waiver of the said objections, plaintiffs supplementally respond:**

Over the life of AYA, Stanley has served as "Minister of the Assembly" and "lead facilitator" at virtually all ceremonies, except for occasional exceptions when Stanley was in Peru.  Since the establishment of the AYA Maloka in January 2022, Stanley has been the lead facilitator for 97% of AYA ceremonies.  Stanley is the sole member of the AYA Board of Directors.  AYA will provide an anonymized organization chart with descriptions of the type of work performed by AYA staff.

3. Identify and describe each and every instance in which you provided training to any individual identified in response to Interrogatory No. 2. For each instance identified, indicate who led the training, who received the training, when the training occurred, the content of or topics covered during the training, and any materials used during the training. Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise,  violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

**Supplemental Discussion of factual applicability of objections:**

This interrogatory seeks information not relevant to any claim or defense herein. Plaintiffs do not intend to submit the requested information as evidence in support of their claims, and plaintiffs cannot discern to what use Defendants would put the information to advance their own claims in defense, as determinable from the Answer to the FAC.  The disclosures sought, if required to be made, would impose a severe burden on responding party by discouraging persons from engaging with AYA for fear of having their identity and activities become the subject of compelled disclosure.  Such disclosures would bring little in the way of relevant, *i.e.,* discoverable, information.  *See*, *supra* on intangible burdens resulting from overdiscovery, Comments to Rule 26(b)(1) at Response to Interrogatory 1, incorporated here by reference.  All other objections stated in Response to Interrogatory 2 are incorporated here by reference.

AYA invokes the Fifth Amendment rights of its "leadership" members based on *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 86 S. Ct. 194 (1965)(upholding Fifth Amendment immunity of members of Communist Party to

maintain anonymity despite unlawful refusal to register as members of Communist Party).  The power to compel disclosure of information regarding when and where "leadership" were "trained" by AYA provides an investigative opening for law enforcement and prosecutors that would vitiate Fifth Amendment immunity, and is therefore not permitted to the Defendants.  The similarity of this case to *Albertson v. SACB* is clear: Like the party members who had refused to register with SACB, disclosure of training information about AYA "leadership" would expose individuals to the risk of criminal investigation and prosecution by the Defendants and other law enforcement agencies.

"AYA leaders'" disclosed their identities to plaintiffs in the context of express and implied confidentiality made necessary by the Defendants' continued application of policies that criminalize the free exercise use of Ayahuasca.  *See, Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1219 (D. Or. 2009).

**Without waiver of the said objections, plaintiffs supplementally respond:**

Each person who has served as lead facilitator at an AYA ceremony has been personally approved to perform that service to the congregation by Stanley.  Since the establishment of the AYA Maloka in January 2022, Stanley has been the lead facilitator for 97% of AYA ceremonies.


4. Identify each and every person who has attended or participated in, or who has requested to attend or participate in, one of your ceremonies. For each person identified, indicate when the person attended or participated, or requested to attend or participate; whether the person was permitted to attend or participate and any explanation as to why or why not the person was permitted to attend or participate; and how many times the person has attended or participated in one of your ceremonies.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege

(ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

**Supplemental Discussion of factual applicability of objections:**

This interrogatory seeks information not relevant to any claim or defense herein. Plaintiffs do not intend to submit the requested information as evidence in support of their claims, and plaintiffs cannot discern to what use Defendants would put the information to advance their own claims in defense, as determinable from the Answer to the FAC.  The identity of the church's congregants is irrelevant to any matters at issue herein, and the frequency or infrequency of attendance at ceremony of any individual congregation member, or of the congregation in the aggregate, is irrelevant to the status of AYA as a religious person within the meaning of RFRA.  There is no case authority establishing that the Defendants can compel a RFRA plaintiff church to identify its membership, because adjudication of a RFRA claim does not turn on scrutiny of church member conduct.  The disclosures sought, if required to be made, would impose a severe burden on responding party by discouraging existing and potential future congregants from associating with AYA for fear that their identity would be the subject of a compelled disclosure and expose them to risk of prosecution for violation of the CSA.

AYA invokes the Fifth Amendment rights of the members of its congregation based on *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 86 S. Ct. 194 (1965)(upholding Fifth Amendment immunity of members of Communist Party to maintain anonymity despite unlawful refusal to register as members of Communist Party).  The power to compel disclosure of information regarding when and where "leadership" were "trained" by AYA provides an investigative opening for law enforcement and prosecutors that would vitiate Fifth Amendment immunity, and is therefore not permitted to the Defendants.  The similarity of this case to *Albertson v.*

*SACB* is clear: Like the party members who had refused to register with SACB, disclosure of training information about AYA "leadership" would expose individuals to the risk of criminal investigation and prosecution by the Defendants and other law enforcement agencies.

AYA congregation members disclosed their identities to plaintiffs in the context of express and implied confidentiality made necessary by the Defendants' continued application of policies that criminalize the free exercise use of Ayahuasca. *See, Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1219 (D. Or. 2009).

Plaintiffs are obliged to assert the confidentiality understanding that exists between plaintiffs and the AYA congregation members, and their Fifth Amendment immunity from compelled self-incrimination, in response to this interrogatory.

5. Identify each and every instance in which a person was not "approved to participate" in one of your ceremonies, either "by the Minister of the Assembly" or by someone else within your organization.  For each instance identified, please identify the person who made the decision, the reason or reasons for the decision, how that decision was communicated to the person not approved to participate, and whether the person not approved to participate was ever permitted to participate in one of your ceremonies on any other occasion.  Response:  To the best of Stanley's knowledge, he decided all cases where a person was declined an opportunity to participate in an AYA ceremony.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and

attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs propose to provide a selection of anonymized documents showing one or more instances of the sort sought by this interrogatory, with personal and location identifiers of non-parties redacted.

**Supplemental Discussion of factual applicability of objections:**

Plaintiffs invoke the priest-penitent privilege with respect to disclosures made in ceremony to Stanley or another AYA facilitator that bore upon a decision to put someone on the list of persons who will not be permitted to attend future ceremonies.

People who applied to attend AYA ceremonies disclosed their identities to plaintiffs in the context of express and implied confidentiality made necessary by the Defendants' continued application of policies that criminalize the free exercise use of Ayahuasca. *See, Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1219 (D. Or. 2009).

AYA has a duty to protect the privacy expectations arising from those commitments. Seeking to compel AYA to abrogate such commitments would be an additional burden upon free exercise, undermining the right to communicate and assemble in ceremony with like-minded religious persons.

The objection on grounds of medical privacy is made because all applications to register for ceremony involve medical disclosures that the disclosing parties are assured will be used only for AYA's internal purposes, and not shared outside of AYA.  AYA must assert privacy protection on behalf of persons who have made medical disclosures subject to exclusive use by AYA.  Medical disclosures may be relevant to the decision to place a person on a list of persons not permitted to attend AYA ceremonies.

AYA invokes the Fifth Amendment rights of its congregation members based on *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 86 S. Ct. 194 (1965)(upholding Fifth Amendment immunity of members of Communist Party to maintain anonymity despite unlawful refusal to register as members of Communist Party).

All of the above objectionable features of the interrogatory impose burdens upon plaintiffs that would not produce any substantial quanta of evidence relevant to proof of plaintiffs' claims or Defendants' defenses.  *See, supra*, Notes to Rule 26(b)(1) of Advisory Committee on 2015 Amendments.

**Without waiver of the said objections, plaintiffs supplementally respond:** AYA has a list of people who will not be allowed to participate in ceremonies in the future.  People can be put on the list for a variety of reasons.  Stanley always makes the final determination for whether someone will be put on the list.  When someone is put on the list, they are told personally, orally, and sometimes they have been told in writing. Aside from this list, there are no records from which to compile the information requested.

6. Identify each and every instance in which a person did not "remain within the ceremonial environment until the conclusion of the ceremony."  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that the ceremonial environment includes the eight acres of grounds surrounding our Maloka in the hills west of Tucson.Ceremonial participants are encouraged to step outside the Maloka, as they may be moved, but then return to the ceremonial circle without too much time away. Our permanent location is descriptive of the locations common to our ceremony locations which have included retreat centers in the mountains

surrounding Tucson, Arizona, multi-acre estates in the desert of Joshua Tree, California, compounds in the woods of Oregon, a two-hundred acre hunting preserve and lodge in Kansas, a ceremonial site on a land preserve in the Louisiana Bayu, a 100 acre Qi Gong center off the Colorado River in Utah, Yurts in the deep woods of Colorado, and an Island in Maine. These locations and environments are typical of our chosen ceremonial sites. Car keys and cell phones are collected with the written approval of each member of the congregation in advance of attending ceremony. AYA's facilitators encourage those who have left the circle for an extended time to return to the circle. Not only do participants not have the means to leave the grounds, but there is effectively nowhere to go if they did. No one, for instance, is left to wander some suburban neighborhood in the middle of ceremony. Our objective is to keep a caring and watchful eye on our congregation during ceremony. Our objective is to establish the setting for participants to feel free to explore the divine order of their inner and outer world without social interference. In rare instances, some participants may need to leave in the early morning within the final hour prior to the close of ceremony to catch a flight. Accommodations for leaving the grounds prior to the close of ceremony are pre-arranged.

7. For each instance identified, please identify the date, time, and location of the ceremony, why the person did not remain until the conclusion, any steps taken by your facilitators to "assure that [ceremony participants]" kept their commitment "to remain within the ceremonial environment until the conclusion of the ceremony, "whether any assistance (medical or otherwise) was administered to the person, and whether the person was ever permitted to participate in one of your ceremonies on any other occasion. Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating

Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: There are no such incidents to report.

8. Identify each and every instance in which a ceremony participant's request to receive "an additional serving" was denied, including the date, time, and location of the ceremony, why the participant was not permitted to receive an additional serving, whether any assistance (medical or otherwise) was administered to the person, and whether the person was ever permitted to participate in one of your ceremonies on any other occasion.  Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that Ayahuasca is not a drug, any more than a human being is no more than a cascade of chemical reactions regulatable in total by either drug or governmental interactions.  That said, dosage levels are measured and varied to individuals based on factors of weight, sensitivity profiles identified in intake questionnaires, and response to the initial dose of medicine.  Once the sacrament is consumed, a significant degree of the practitioner's journey relies on their intention and willingness to accept the teachings found within their ceremonial experience. For the uninitiated, these experiences might be most easily described as states of struggle and

surrender. Struggle, in the context of ceremony, might be described as the individual forcefully trying to direct their experience in an arresting and judgmental fashion. Surrender might best be described as a nonjudgmental state of acceptance. In opening talks to ceremony prior to drinking, it's commonly stated that "We are all students of struggle and surrender, joy and sorrow, love and forgiveness." These inner states are just as regulatory to the experience as the actual dosage levels themselves. These inner states also attune to ceremonial music and the ceremonial setting. Dosage levels must be considered in this context. Dosage levels, specifically, are regulated by the lead facilitator to assure that each practitioner can get the most out of their experience. Additionally, purging of La Medicina is also a self-regulating factor in the experience of the participant. These six factors (dose level, intentions, inner-states of acceptance or struggle, purging, music, and setting) all work in tandem for the regulating of the practitioner's experience. It is the prayer, both prior and following the ingesting of the sine-qua-non host, that is an essential element for connecting with Divine Will in any church, regardless of governmental categorizations. We might also add that the unresolved legal case now before the court also effects dosage levels. There are people who will not participate in our church services until this case is resolved favorably.

8. Identify each and every possible response to the document filed in this case as Dkt. No. 33-6 that, if provided by a prospective ceremony participant, would result in you determining that the prospective participant was not eligible to participate in one of your ceremonies. Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth

Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that Defendants should refer to our medical intake questionnaire. Non-participation in ceremony for medical reasons includes, drug contraindications such as SSRI's and hypertensives, and physical issues, including but not limited to to heart, lung, kidney, digestive, arterial, and liver function.  Each intake form is reviewed on a case-by-case basis.

**Supplemental response:**  A "yes" answer to any of the questions on the current version of the referenced document (previously produced) would prompt further inquiry before deciding whether to decline the application.

9. For each of the statements regarding proper preparation in the document filed in this case as Dkt. No. 33-7, identify the medical or other trained professionals involved in drafting this document and the medical or other basis for including each of the statements in this document.   Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that their written protocols derive from ancient unwritten practices passed through the indigenous media of song, art, and dance, and not from scientific studies.  Scientific and medical protocols have been incorporated as useful and beneficial, including dietary and medication restrictions for consumption of MAO inhibiting beta carbolenes present in Ayahuasca.  Medical professionals regularly attend

our ceremonies.  Plaintiffs' practices square with the published medical studies and expert medical testimony entered into the record.  The manner in which the written protocols were generated would not be probative of any matter in dispute.

**Supplemental response:**  Plaintiffs do not intend to offer evidence that the referenced document was drafted by medical professionals.


10. Identify the date and location of each and every instance in which you held a ceremony, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. For each and every instance identified, indicate every substance consumed by any person or offered for consumption, who was present at the ceremony, who was responsible for handling any substances consumed by any person or offered for consumption, and who served in a leadership role and/or position of authority at the ceremony (e.g., Minister of the Assembly, "lead facilitator," other facilitator).  Objections: seeks cumulative evidence and therefore irrelevant to the determination of any claim or defense, irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response:  Response: Without waiver of the said objections, Plaintiffs state that plaintiff Stanley's declarations in support of AYA's motions for preliminary injunction have provided sufficient information concerning this topic that any additional information would be duplicative, redundant and unnecessarily burdensome, particularly given that there is no factual dispute over the matter.  Efforts to elicit information regarding relations with non-parties are merely harassing.  To require a

response would impose a very large burden on Plaintiffs due to a number of causes, and would generate no corresponding benefit to the fact-finding process.

**Supplemental response:**  During the time period before the establishment of the AYA Maloka in Pima County, Arizona, AYA offered ceremonies approximately every two weeks in various locations in Arizona and in other states.  Since the establishment of the Maloka, AYA offers ceremonies every two weeks.  Stanley and other facilitators use Amazonia tobacco, known as mapacho.  Other Amazonian herbs are used as part of an Amazonia "dieta"  -- see welcoming documents for ceremonial preparation commenting on use of pau de arco tea in conjunction with a cleansing pre-ceremony diet, etc.


11. Identify each and every instance in which you have stored, prepared, secured, distributed, dispensed, obtained, imported, exported, destroyed/disposed of, transported, transferred to another person, or otherwise handled ayahuasca. For each instance identified, indicate when the activity occurred, any and all persons involved in the activity, including any senders and/or recipients, and any steps you required the person or persons to take to be granted permission to perform the activity (including, but not limited to, training, background check, use of key or code).  Objections: seeks cumulative evidence and therefore irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that plaintiff Stanley's declarations in support of AYA's motions for preliminary injunction have provided sufficient information concerning this

topic that any additional information would be duplicative, redundant and unnecessarily burdensome, particularly given that there is no factual dispute over the matter.  Efforts to elicit information regarding relations with non-parties are merely harassing.  To require a response would impose a very large burden on Plaintiffs due to a number of causes, and would generate no corresponding benefit to the fact-finding process.

**Supplemental Discussion of factual applicability of objections:**

This interrogatory seeks information not relevant to any claim or defense herein. Plaintiffs do not intend to submit the requested information as evidence in support of their claims, and plaintiffs cannot discern to what use Defendants would put the information to advance their own claims in defense, as determinable from the Answer to the FAC.  The manner in which a church sources, stores, secures and accounts for Ayahuasca has not been determinative of any issue in dispute in any RFRA case. The number of occasions when Stanley has handled Ayahuasca, the manner in which he has stored it, and the security measures used to protect the Ayahuasca from theft are all irrelevant to plaintiffs' claims and Defendants' defenses in this action.

Questions inquiring into the sources of plaintiffs' Ayahuasca violate the First Amendment, opening the door to regulatory overreach in violation of the Establishment Clause, as well as encroaching upon free exercise. *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 75-76 (1st Cir. 1979).[2]

Ceremonial secrecy is compatible with status as a religious person under RFRA, and provides proof that plaintiffs are engaged in free exercise despite the risk of prosecution.  *See, Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1219 (D. Or. 2009).

---

[2] "In the sensitive area of First Amendment religious freedoms, the burden is upon the state to show that implementation of a regulatory scheme will not ultimately infringe upon and entangle it in the affairs of a religion to an extent which the Constitution will not countenance. In cases of this nature, a court will often be called upon to act in a predictive posture; it may not step aside and await a course of events which promises to raise serious constitutional problems." *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 75-76 (1st Cir. 1979).

AYA invokes the Fifth Amendment rights of its congregation members whose identities are sought by this interrogatory based on *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 86 S. Ct. 194 (1965)(upholding Fifth Amendment immunity of members of Communist Party to maintain anonymity despite unlawful refusal to register as members of Communist Party).

All of the above objectionable features of the interrogatory impose burdens upon plaintiffs that would not produce any substantial quanta of evidence relevant to proof of plaintiffs' claims or Defendants' defenses.  *See, supra*, Notes to Rule 26(b)(1) of Advisory Committee on 2015 Amendments.

**Without waiver of the said objections, plaintiffs supplementally respond:**

Plaintiffs adhere to a protocol of sourcing Ayahuasca from ethical providers in Peru.  AYA's ceremonial Ayahuasca is acquired by Stanley, stored on premises under his exclusive control, and utilized exclusively in AYA ceremonies conducted at the Pima County Maloka or another officially declared AYA ceremonial location.

12. Identify any and all security measures you have adopted relating to your handling of ayahuasca, including those referred to in the document titled "Ceremonial Instructions." For any physical devices identified, indicate the make, model, and serial number of any device; the persons who have access to the device; and the days and times when access to the device is available. For any other security measures identified, please describe in reasonable detail the measure, including when the measure was first implemented, and how the measure adequately ensures the safe handling of ayahuasca.

Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating

Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation.  Response: Without waiver of objections, Plaintiffs state that the sole person having custody of AYA ceremonial Ayahuasca prior to or after ceremony is plaintiff Stanley, and he secures it in the same manner as he cares for all  other important possessions – either locked in a vehicle, locked in a temporary storage facility, or inside premises under his control.  Plaintiffs' sacrament is kept in a secure location, travels with the lead facilitator, is never sold, is used only in a ceremonial context, and leaves the ceremonial site at the close of each ceremony to return to its secure location with the lead facilitator.  No sacrament has ever been stolen or has been left in the position to be stolen with the exception of sacrament seized by US Customs.

13. Identify each and every instance in which an individual not authorized to access ayahuasca in your possession has gained, or attempted to gain, access. For each instance identified, indicate if unauthorized access occurred, when unauthorized access or attempted unauthorized access occurred, who gained or attempted to gain unauthorized access, whether any security measures were circumvented in gaining or attempting to gain such access, whether any remedial steps were taken in response, and whether, since the measure was implemented, any unauthorized access occurred or was attempted. Response:  This has never occurred.

14. Identify each and every instance in which aid, support, or assistance, whether physical, medical, psychological, or otherwise, was offered, administered, or provided to any person prior to, during, or after a ceremony. For each instance identified, please identify the date, time, and location of the ceremony, the type of assistance provided, the reason that assistance was provided, whether the person receiving assistance was permitted to continue the ceremony, and whether the person to whom assistance was provided was ever permitted to participate in one of your ceremonies on any other

occasion.  Objections: seeks cumulative evidence and therefore irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response:  Plaintiffs' entire ceremonial process involves rendering physical and psychological aid, support, and assistance.  Visionary communion presents some congregants with challenging circumstances; however, the particulars of any individual non-party's ceremonial experience are not relevant to determining the claims and defenses alleged herein.  Further, this interrogatory seeks non-party medical records, and any individual whose records would thereby be disclosed would have standing to object to disclosure.  Given the burdens and minimal probative value of this information, it is not discoverable.

15. Identify each and every instance in which misconduct of any kind (including, but not limited to, sexual misconduct, battery, assault, fraud, use of controlled substances other than ayahuasca, "misuse[] [of] the Sacrament," "a breach of ethics," or any instances in which any person "conducted themselves improperly during [a] ceremony occurred or was alleged to have occurred prior to, during, after a ceremony. For each instance identified, indicate when and where the misconduct occurred or was alleged to have occurred, who alleged the misconduct, who was alleged to have been involved in the misconduct, whether the misconduct or alleged misconduct was reported to your Board of Directors, to law enforcement, or to another entity, whether the misconduct resulted in

any disciplinary action (including by the Minister of the Assembly), and, if so, the type of any disciplinary action (including "exclusion from future ceremonial activity") taken. Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that there have been no incidents of this sort.  Practitioners are guided prior to ceremony not to touch other participants, since touching other participants can draw them out of their inner journey.  Because ceremonies are conducted in a single open room, all positions of the room are visible to the ceremonial staff.   Our statement of ethics, entered into the record, clearly defines ceremonial roles and rules of healthy conduct.  Our statement of ethics expresses guiding principles to ensuring safe passage for participants through the ceremonial process.  Our observant staff also assist and guide practitioners to stay within the guidelines to maintain an undisturbed and what we refer to as a *noble silence* within the ceremonial space.

16. Identify each and every one of the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback." For each individual identified, describe the "knowledge and feedback" sought or shared.

Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical

records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that we are continually in a process of call and response with our members in and out of ceremony.  We share significant peer support within the anonymity of our church membership.  We would consider it a betrayal of trust to see the release of these names and the tenor of these conversations to public agencies.  One of our teachers in Peru is Eladio Melendez Garcia, whose statement of support has already been entered into the record. Jonathan Goldman, director for the Asland, Oregon branch of the Santo Daime has been a great benefit to our efforts in sharing his wisdom and support.  His declaration has, likewise, been entered into the record.  Our community for peer support is significant, including the 38 churches now enrolled as members in the North American Association of Visionary Churches (NAAVC).  Although some member churches in the NAAVC may be small, with congregations under 100, other churches are far larger with congregations larger than 1,000.  We draw spiritual support within our religious community. We are seeking to learn from and protect our religious community, our teachers, and our peers.  Federal investigations of identified members of our community at their homes, though the mails, online, or through this legal action, would squelch our practices of speech and religious practice no less than positioning Federal investigators or squad cars outside of a Catholic church, no matter how well intended, to ask about that day's confessions.  That said, how members of our congregation represent their religious practices within their own families, professions, schools, secular and orthodox communities is already clearly inhibited, as identified in the surveying of our membership already entered into the record of this case.

17. Describe the set and setting of your ayahuasca ceremonies, including but not limited to the location, the number and title of any facilitators, the number and title of any healthcare professionals, the number of participants, the physical and psychological environment, and mental preparation of the participants.

Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that weekend ceremonies are conducted at our ceremonial Maloka west of the city of Tucson, Arizona two to three times each month.  A maloka is the name for a ceremonial round-house in South America.  Our Maloka is 50 feet in diameter positioned with views from the altar looking westward toward Boboquivari Peak.  The door to the East faces the rising sun over the Sierrita Mountains on the winter solstice.  The entryway faces the North Star.  Members of our congregation, including master carpenters, engineers, and licensed contractors drove in from around the country from as far as Alaska to build our Maloka.  Ceremonies range in size from 12 to 40 congregants held over alternate weekends over Friday, Saturday, and Sunday nights. The facilitator crew ranges from 3-8 people depending on the total participants for the night. Facilitators are First-Aid/CPR trained.  Practitioners follow a set of prescribed guidelines as set in the AYA Preparation Guidelines.  The guidelines include: the setting of intent for each practitioner, dietary restrictions for both food and media, and meditation. Particularly those with active addiction issues, we ask any participants be at least 5-days clean of substance use prior to ceremony.  Regardless of addiction, we encourage a spirit

of honesty for all participants.  For drug users that fail to meet the guidelines, we'll issue them a credit for a later ceremony date.  Each participant fills out both a medical questionnaire, and a personal questionnaire focused on their personal history, intentions, and reasons for attending.  Each participant, new or returning, is greeted at the entrance and checked off against the list of people attending services for the night.  Prior to ceremony, the facilitator staff members make the rounds to talk with people at their mats. The lead facilitator conducts an orientation talk for those new to the circle, including people who are new to La Medicina and those who are visiting with us from other circles for the first time.  That talk gives people background on our troupe.  That background includes our troupes training and experiences working with Ayahuasca and the attendant master plants of the Amazon.  It also includes, a step-by-step review of what they can expect for the night. They're informed that prior to drinking we pass a pipe around the circle.  The pipe is packed with Mapacho, a strong form of Peruvian tobacco. Practitioners are encouraged to take a few puffs without inhaling to blow the smoke over their hands, arms, and then using their palms to move the smoke over their chest and head.  This is a traditional Amazonian entre into the hollowed inner space of the ceremonial field, as part of what's recognized in Amazonian traditions for ritual protections in keeping with the intentions of the ceremony.  After this, we pass around a small mason jar of tobacco tea.  Practitioners do not drink it, but rather, they aspirate half a spoonful up each nostril with a spoon.  The tobacco tea clears the sinuses to make it easy to breath.  The suggestion in the orientation talk is that the use of the tobacco tea makes an excellent reminder to return to the breath to treat the evening's ceremony with the reverence of a meditation by returning regularly to the breath.   After the tea, people are called to the altar, beginning with the first-timers.  An hour after everyone has drunk La Medicina, we ring a singing bowl.  At that point, everyone is free to come up to the altar to drink La Medicina at any point until the ceremony is completed with a closing blessing after morning's first light.  Over the course of the night the facilitator staff come around with palo santo incense, and water blessed at the altar for people to drink.  Icaros,

the songs of the Amazon, are sung over the course of the night, including centuries-old songs in Quechua, but also other songs inspired by La Medicina written in Spanish, English, Quechua or a blending of the three languages. These songs are intended for the healing, cleansing, and blessing of the congregation.  Each with its own specific intent. Aside from more sacrament, anyone with questions during ceremony is encouraged to call over one of the facilitator staff to their mat or to come up to the altar to address their unique situations with prayers and blessings.  These often involve the use of mapacho smoke or what is commonly called tobaccoito.  But it might also include hapé, a Peruvian powder blown up the nose composed of finely powdered wood-ash and mapacho. Cleanses at the altar may also include essences of flowers or master plants or agua de florida.  The orientation talk also includes discussion of navigating La Medicina. Participants are told that the navigational center of the ceremonial experience in many ways is found in the feeling of surrender.  Very often when people surrender in the social order they  abdicate personal power.  Inside of the ceremony experience when people allow themselves to experience surrender, they often reclaim personal power.  It's explained to new attendees that it's nearly impossible to define surrender in this context, because it changes with each ceremony.  But if surrender means anything, it simply means to allow yourself to feel.  The talk goes on to describe how the moods inside of the ceremonial experience can be varied.  They can feel strange, unsettling, weird, anxiety producing, scary, laugh-out-loud funny, tearful, joyful, or tranquil, etc.  In reference to navigating through surrender people are told, "But whatever you're feeling, that's where the healing is taking place, especially if you feel like you don't what to feel that way, you want to feel some other way.  If you're trying to push some mood away, there's your little flag to tell you that's your healing that you're feeling in that moment.  If you can simply allow yourself to feel it, as best you can, that mood will let go of its hooks and on the other side is another layer of inner silence and Divine Love and you can abide in that place as long as like."  The new-person orientation talk includes a question and answer

period followed by a break before beginning the opening talk and the start of ceremony itself.

In the opening talk, prior to calling practitioners up to the altar, each facilitator introduces themselves and gives a brief talk on a range of topics that often include: love, forgiveness, surrender, gratitude, and God.  A line of biblical scripture is recounted, gratitude is extended to the Spirit, and a short poem is read.

18. Identify each and every person who wrote, edited, reviewed, commented on, or otherwise received a draft of the documents attached to your original motion for a preliminary injunction in this case, Dkt. No. 33: "AYA Tenets and Precepts"17; "Ceremonial Instructions"18; "Code of Ethics"19; the questionnaire filed in this case as DKT. No. 33-6; and the confirmation letter filed in this case as Dkt. No. 33-7.

Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state, As Director of AYA, Scott Stanley is the author of AYA Tenets and Precepts, and our Code of Ethics.  That said, their formation was a collaborative affair born out shared experience within our community.  As the author of both AYA's Tenets and Precepts, and our Code of Ethics, I'm formulating this response myself.  I consider these guiding principles for myself.  My opinion, is that they're well received and practiced from the heart within our community, but mainly because these two documents were formulated out of a shared experience.  Everyone played a role.  I

wrote them down.  As to instructions offered to practitioners in preparation for ceremony, they remain a work in progress with many of the hands of the congregation involved, all of whom, in this respect, wish to remain anonymous.  I am the lead editor for that document.

19. Describe how your religious tradition relates to, borrows from, interacts with, or is otherwise connected to other religious traditions, including Christianity. Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Response: Without waiver of the said objections, Plaintiffs state that this type of doctrinal inquiry has no relevance to the Plaintiffs' claims or the defendants' defenses, and cannot produce relevant information.

**Supplemental discussion of the legal basis of the objection:**

Examining the doctrinal structures of a church asserting a RFRA claim is an inappropriate avenue of inquiry for the defense.  The Hon. Roslyn O. Silver quoted the Supreme Court before adopting the "religious motivation test" for RFRA analysis, noting that one of the virtues of the religious motivation test is that is eschews examining the dogmas and doctrines of various religions.  "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion . . . ." *Coronel v. Paul*, 316 F. Supp. 2d 868, 878 (D. Ariz. 2004)(emphasis added), *quoting W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642, 63 S. Ct. 1178, 1187 (1943). The Court also quoted another

high court decision that cautions: "*religious texts provide an improper basis for contesting the views of a claimant, given that [they are often] susceptible to different interpretations*." *Coronel v. Paul,* 316 F.Supp. 2d 868, 878 (2004), *quoting Thomas v. Review Bd.*, 450 U.S. 707, 714 and 716 (1981) ("It is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. *Courts are not arbiters of scriptural interpretation*.").

20. Identify each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies. For each instance identified, please provide the amount received, the date received, and the purpose of payment, donation, or other contribution.

Objections: First observing that the right to collect funds for religious activity is, in itself, free exercise protected under the First Amendment, it is also not relevant to Plaintiffs' claims nor defendants' defenses whether payment is made for religious ceremonies, the amount that is paid, who makes the payment, or when the payment was made. Accordingly, the interrogatory is irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292),  violating Plaintiffs' rights of Free Exercise, violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

21. For each document used at your ceremonies or trainings, or that you otherwise intend to rely upon to demonstrate the existence of what you allege are your "sincerely held religious beliefs and practices," identify each and every person who wrote, edited, reviewed, commented on, or otherwise received drafts of the document.  Response: Stanley wrote all of the documents that he and AYA will present as evidence of sincerely held religious beliefs and practices.

22. Describe the process by which you ensure that you "offer Visionary Communion only to sincere religious persons with a reverent mindset," including how you determine who are "sincerely religious persons" and whether they have a "reverent mindset."  Response: Our process is simple in this regard, we take people at their word, and we meditate and pray for guidance.

23. Identify each and every organization or association of which AYA or one of the named Plaintiffs is a member, or have requested to be a member. For each organization or association identified, indicate when AYA or one of the named Plaintiffs first requested to become a member, how long AYA or one of the named Plaintiffs has been a member, whether AYA or one of the named Plaintiffs pays dues or anything else of value to the organization or association, and any individuals at the organization or association with whom AYA or one of the named Plaintiffs communicates or has communicated.  Objections:  irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties,  violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.  Invades the Fifth Amendment and First Amendment rights of other

members of the North American Association of Visionary Churches ("NAAVC"), and the First Amendment rights of NAAVC.

Response:  AYA has been a member of the North American Association of Visionary Churches since it was formed in  June of 2019, and pays yearly organizational dues of $200.

Dated: November 14, 2023                    CHARLES CARREON
                                            /s/Charles Carreon
                                            CHARLES CARREON (127139)
                                            Attorney for Plaintiffs
                                            Arizona Yagé Assembly,
                                            Winfield Scott Stanley III

## VERIFICATION

The matters and facts set forth in the above and foregoing Supplemental Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

_____
Winfield Scott Stanley III