# EXHIBIT E



**U.S. Department of Justice**
Civil Division
Federal Programs Branch

Lisa Newman             Tel.: (202) 514-5578
Bonnie Devany            lisa.n.newman@usdoj.gov
Trial Attorneys             bonnie.e.devany@usdoj.gov

October 26, 2023

**By E-Mail**
Charles Carreon
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
928-975-2191
chascarreon@gmail.com

      Re:      <u>Discovery Issues in *Arizona Yage Assembly, et al. v. Garland*, No. 2:20-CV-2373 (D. Ariz.)</u>

Dear Charles:

      I write to raise a number of issues regarding fact discovery; I am hopeful we can resolve these amicably.

      First, I write regarding Plaintiffs' Responses to First Set of Interrogatories from Defendants and Plaintiffs' Responses to First Set of Requests for Production from Defendants, which you transmitted via e-mail on October 18, 2023. Your responses are deeply inadequate and we ask that you revise them so that we can avoid filing a motion to compel. Plaintiffs entirely failed to respond to Requests Nos. 8 through 25 for Production, without any objections, explanation, or acknowledgement of these requests, thereby waiving any ability to object to these requests in the future. For those requests and interrogatories that Plaintiffs did respond to, they included boilerplate objections that lack specificity, such that we cannot meaningfully confer or understand the bases for your objections. I lay out the deficiencies in those responses in detail below. *See infra* Parts I-II. We would appreciate your cooperation in resolving the outstanding discovery issues without the need for court intervention. Please provide revised responses to Defendants' discovery requests within **10 days**.

      Second, I also write to address other outstanding issues regarding entry of a protective order and clawback agreement and extending the deadline for substantial completion of fact discovery. *See infra* Parts III-IV.

      Last, please advise us of your availability for a meet-and-confer call about these issues during the week of November 6, 2023, after we expect to have received your revised responses.

      **I.**      **<u>Plaintiffs' Responses to Defendants' First Set of Interrogatories</u>**

      Plaintiffs' responses to Defendants' Interrogatories are plainly deficient. Plaintiffs failed to respond to five interrogatories; many interrogatories include only a partial response; and the asserted objections are entirely boilerplate, lack specificity, and include no explanation as to why any objection is applicable to each interrogatory.

**A. <u>Unspecific and boilerplate objections</u>**: Under Federal Rule of Civil Procedure 33(b)(4), "[t]he grounds for objecting to an interrogatory must be stated with specificity." *See Razo v. AT&T Mobility Servs., LLC*, No. 1:20-CV-172-HBK, 2021 WL 5989753, at *7 (E.D. Cal. Dec. 17, 2021). To begin, Plaintiffs included the following boiler plate objections in 20 of the 23 interrogatory responses:

> Objections: irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case, invading the privacy rights of non-litigants, encroaching on promises of confidentiality AYA has made to third parties, invading the priest-penitent privilege (ARS § 12-2233), invading the confidentiality of medical records (ARS § 12-2292), violating Plaintiffs' rights of Free Exercise, violating AYA's right under the Establishment Clause to be free of government process probing internal church activities, violating the Fifth Amendment rights of AYA's congregation, and invading privileged attorney-client and attorney work-product protected communications.

Plaintiffs' Responses to Defendants' First Set of Interrogatories (hereinafter "Interrogatory Responses") at 2-15, 19–21. These copy/pasted boilerplate objections lack specificity and fail to particularize the basis for the objection in response to each specific interrogatory, as is required under the Federal Rules. *See* FED. R. CIV. P. 33(b)(4); *Razo*, 2021 WL 5989753, at *7. Because of this copy/paste approach, it is not clear which objections actually apply, how the objections relate to the interrogatory, and do not allow Defendants to evaluate the basis for the objection.

<u>If you intend to object to an interrogatory in your revised responses, please provide sufficient objections in which you state only those objections pertinent to a particular request and explain the objection's application to that request.</u>

**B. <u>Anonymized documents</u>**

In nearly all of your responses, you assert that you cannot answer the interrogatory due to privacy concerns. *See, e.g.*, Response to Interrogatory No. 5. Failing to provide any response on privacy grounds is inadequate. As you acknowledge in response to Interrogatory No. 5, these concerns can largely be ameliorated by anonymizing personal identifying information while otherwise answering the interrogatory. Without waiving our ability to seek further information about any particular individual should that become necessary, Defendants request that you anonymize (redact or use "John Doe 1") any information to which you object, and provide all other responsive information. Additionally, as we've discussed previously, privacy concerns could potentially be addressed with the entry of a Protective Order, as discussed below in Part IV.

**C. <u>Plaintiffs' failure to respond to certain interrogatories (Interrogatory Nos. 1, 2, 3, 4, 20)</u>**

Plaintiffs provided no response to Interrogatory Nos. 1, 2, 3, 4, 20, and did not explain their failure to respond. Defendants' Interrogatory Instruction No. 8 states that "No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory. If an interrogatory cannot be answered fully, please answer it to the extent possible and explain why you cannot answer more fully. If you answer an interrogatory subject to an objection, indicate whether information or documents have been withheld on the basis of the objection." You

did not object to this instruction, and therefore waived any such objection. Please explain why you cannot answer these requests more fully, and whether information or documents were withheld. If you are not responding to these requests because you are standing on your objections, your response should say so and state with specificity how any objection applies.

### D. Issues pertaining to individual responses:[1]

Additionally, Defendants raise the following specific issues pertaining to individual interrogatory responses, which Defendants present categorically.

1. *Information regarding AYA leadership and those who facilitate ceremonies, and those who wrote, edited, or advised on core documents* relied upon by AYA in support of its motion for a preliminary injunction is highly relevant to AYA's claim and the Government's defenses.

*Interrogatories Nos. 2 & 3*: Interrogatories Nos. 2 and 3 seek information about AYA's leadership, including those who have served in a leadership position, those who have served as facilitators during AYA's ceremonies, and the training provided to those leading AYA's ceremonies. That information is highly relevant to both AYA's claims and the government's potential defenses. The government also requires this information in order to identify potential witnesses. Yet, Plaintiffs objected on relevance grounds and asserted that responding would "invad[e] the priest-penitent privilege," "invad[e] the confidentiality of medical records," "violate Plaintiffs' rights of Free Exercise," "violate AYA's right under the Establishment Clause to be free of government process probing internal church activities," "violat[e] the Fifth Amendment rights of AYA's congregation, and invade[e] privileged attorney-client and attorney work-product protected communications." Responses at 2-3. Plaintiffs do not say how that could be, and it is not clear how information about AYA's leadership and training of leadership, for example, relates to one's medical records, the asserted Fifth Amendment rights of AYA's congregation, or attorney-client privilege.

*Interrogatory No. 5*: Plaintiffs provided only a partial response to Defendants Interrogatory No. 5, which states:

> Identify each and every instance in which a person was not "approved to participate" in one of your ceremonies, either "by the Minister of the Assembly" or by someone else within your organization. For each instance identified, please identify the person who made the decision, the reason or reasons for the decision, how that decision was communicated to the person not approved to participate, and whether the person not approved to participate was ever permitted to participate in one of your ceremonies on any other occasion.

---

[1] The numbering of Plaintiffs' responses does not correspond to the numbering in Defendants' Interrogatories. Plaintiffs' response separated Interrogatory No. 5 into numbers 5 and 6 in their response. Plaintiffs' response also separated Interrogatory No. 6 into 6 (a second number 6) and 7. Plaintiffs' response to Defendants Interrogatory No. 7 is listed as number 8. Plaintiffs' response to Defendants Interrogatory No. 8 is also listed as a second 8. Because Plaintiffs do not assert any objection for separating these responses, Plaintiffs have waived their ability to do so, and Defendants will construe Plaintiffs' responses as they correspond to Defendants' interrogatory numbering.

Please provide a complete response to this request.

*Interrogatory No. 18*: Plaintiffs' response states that "everyone played a role" in formulating the documents identified in this interrogatory. Please identify who "everyone is," and if these individuals are leaders, please identify them as such. Additionally, Plaintiffs' response does not fully respond to who prepared the medical questionnaire. Knowing the medical professionals involved in formulating guidelines for screening participants for ceremonies is relevant and probative to a number of issues in this case and is necessary for Defendants to identify potential witnesses.

*Interrogatory No. 21*: Plaintiffs' response states that "Stanley wrote all of the documents that he and AYA will present as evidence of sincerely held religious beliefs and practices." But this does not identify "each and every person who wrote, edited, reviewed, commented on, or otherwise received drafts of the document." Please provide a complete list.

2. *Information regarding safety of participants* (*e.g.*, Interrogatories Nos. 3 (training for persons in leadership), 4–6, 8–9 (details of participation, including any explanations provided to individuals not permitted to participate and details of the decision to preclude participation and how preparation guidelines were formulated), 7 (amount of ayahuasca served to participants), 14 (medical assistance offered during ceremonies), is highly relevant to the framework the Court will apply in assessing whether AYA may be entitled to handle ayahuasca under RFRA. AYA's responses to the safety-related inquiries are inadequate.

*Interrogatories Nos. 3 & 4*: Plaintiffs provides no response. The failure to respond is inadequate; please supplement with a response.

*Interrogatory No. 5*: Plaintiffs state that they will "provide a selection of anonymized documents showing one or more instances of the sort sought by the interrogatory, with personal and location identifiers of non-parties redacted." Response at 4. While Defendants appreciate AYA's commitment to producing relevant materials in response to this interrogatory, providing a "selection" of such documents is insufficient. Defendants have requested "each and every" instance in which a person was not "approved to participate" in one of your ceremonies; please provide a complete list.

*Interrogatory No. 6*: Plaintiffs state that Stanley "decided all cases where a person was declined to participate in an AYA ceremony." That response does not address "the reason or reasons for the decision, how that decision was communicated to the person not approved to participate, and whether the person not approved to participate was ever permitted to participate in one of your ceremonies on any other occasion." Please provide a written response that addresses these aspects of any decision not to allow a person to participate.

*Interrogatory No. 8 (first)*: This Interrogatory was meant to ask a straightforward question that remains unanswered by Plaintiffs response: has anyone ever been denied "an additional serving" of ayahuasca and, if so, when and why? If Plaintiffs cannot answer that question for any reason (*e.g.*, because Plaintiffs lack adequate records to do so), please say so.

*Interrogatory No. 8 (second)*: Plaintiffs' response directs Defendants "to [y]our medical intake questionnaire." But this interrogatory asks how the questionnaire is used and specifically which

responses to that questionnaire would be disqualifying.  Plaintiffs provided examples of potentially disqualifying responses, but the interrogatory requests a complete list.  Plaintiffs also note that each form is reviewed "on a case-by-case basis," without explaining who performs that review and how that review is performed (*i.e.*, whether a medical doctor reviews these forms and makes a determination).

*Interrogatory No. 9*: Plaintiffs' response states that "[m]edical professionals regularly attend our ceremonies."  That does not answer the interrogatory, which asks Plaintiffs to identify "the medical . . . professionals *involved in drafting*" the medical questionnaire that is the subject of the prior interrogatory.  Knowing the medical professionals involved in formulating guidelines and screening participants for ceremonies is relevant and probative to a number of issues in this case and is necessary for Defendants to identify potential witnesses.

*Interrogatory No. 14*: Interrogatory No. 14 specifically asks about medical assistance offered or provided during a ceremony, but Plaintiffs' response only refers to "physical and psychological aid."  There is a difference between these types of aids, and we are also asking if medical assistance has ever been administered, and, if so, the reasons for the provision of such assistance.  Contrary to Plaintiffs' assertion that "non-party's ceremonial experience are not relevant," aid rendered to individual participants (or not) is highly relevant to a determination about the safety of AYA participants.  Moreover, although Plaintiffs object that "this interrogatory seeks non-party medical records," the interrogatory is not asking Plaintiffs to produce "medical records."  If Plaintiffs intend to assert this objection, please explain the legal basis for AYA's assertion of such an objection and why such an objection could not be ameliorated by a protective order.

3. *Information regarding the location of services, locations that ayahuasca is handled and stored, the source of ayahuasca, and information regarding authorized access to ayahuasca.* (Nos. 10, 11, 12, 13).  This information is relevant to evaluating the risk of diversion, the scope of AYA's activities, and the extent of possible regulatory oversight that would be required to confirm AYA's compliance with the CSA and its regulations were AYA to receive an exemption from the CSA.

*Interrogatory No. 10*: Plaintiffs state that the request—which asks you to identify the date and location of each ceremony that you have held—"seeks cumulative evidence and is therefore irrelevant."  If that is true, please identify the alternative source of information (*e.g.*, document by Bates number) that lists each and every ceremony that Plaintiffs have held in which ayahuasca was present, including the date and location of such ceremonies.  If it is not, please provide a response.

*Interrogatory No. 11*: Plaintiffs state that the request—which asks Plaintiffs to identify each and every instance in which Plaintiffs have handled ayahuasca, the persons involved in its handling, and the steps and safety protocols in place to handle ayahuasca—has been sufficiently answered by Stanley's declarations and "any additional information would be duplicative, redundant and unnecessarily burdensome" because "there is no factual dispute over the matter."  Please identify where in Stanley's declaration he provides the information for each and every instance that AYA has handled ayahuasca.  Defendants do not agree that there is no factual dispute regarding this information.  This information is relevant and probative to a number of issues in this case, including the safety of procedures employed by AYA in handling ayahuasca, the sourcing of ayahuasca, individuals involved in handling ayahuasca, and training provided to these individuals.  This information is also necessary for Defendants to identify potential witnesses.

*Interrogatory No. 12*: Plaintiffs state that "the sole person having custody of AYA ceremonial Ayahuasca" is "Stanley, and he secures it in the same manner as he cares for all other important possessions" including "in a locked vehicle, a storage facility, or inside premises under this control." However, you do not state, for example, whether other persons have access to these locations. Plaintiffs also state that ayahuasca travels with the "lead facilitator" without identifying who those facilitators may be. If Stanley is the lead facilitator in all circumstances, and the only person with access to the places in which ayahuasca is stored, please say so. If others have access to the places where the ayahuasca is stored, please identify who those individuals are and the circumstances of their access. Moreover, Plaintiffs did not provide a response identifying information about physical devices used to store ayahuasca, including who has access, the days and times when access is available, when AYA's security measures were implemented, and how the measures adequately ensure the safe handling of the ayahuasca.

*Interrogatory No. 20*: Interrogatory No. 20 asks a straightforward question: whether Plaintiffs charge or receive anything of value for the services provided during the ceremony, which Plaintiffs did not answer. Plaintiffs object on the basis that it is a violation of the First Amendment to reveal whether their organization charges for its services. We disagree. But in any event, if Plaintiffs intend to rely on that objection, please provide the legal basis for this objection.

*Interrogatory No. 23:* This interrogatory asks whether you requested to be a member of any organization. If NAAVC is the only organization you have requested to be a member of, please say so. Additionally, this interrogatory asks you to identify "any individuals at the organization or association with whom AYA or one of the named Plaintiffs communicates or has communicated." Please provide a response to this question.

### II.     **Plaintiffs' Responses to Defendants' First Request for Production**

#### A.  **Plaintiffs' failure to respond or otherwise object to Requests Nos. 8-25**

Plaintiffs inexplicably include no response to Defendants' Requests for Production Nos. 8 through 25 nor any objections to these requests, despite having received an extension to respond, for a total of 46 days.[2] Indeed, Plaintiffs' Response ends with Request No. 7. "By failing to timely object to the request for production of documents," Plaintiffs have "waived any objections to the request for production of documents." *Bledsoe v. Martinez*, No. 2:18-CV-2710-JAM-KJN-P, 2021 WL 2188131, at *2 (E.D. Cal. May 28, 2021); *see Oxford St. Properties LLC v. Robbins*, 2011 WL 13214031, at *3 (C.D. Cal. Nov. 30, 2011) (affirming magistrate judge's holding that party waived objections by failing to timely respond to request for production of documents); *see also* FED. R. CIV. P. 37(d)(3) (sanctions may be imposed for failure to serve answers to interrogatories or to respond to request for production of documents). Because you have waived your ability to object to these requests by failing to respond, please "respond to the request for the production of documents, without objection." *Id.*

---

[2] Defendants served their first set of discovery requests on September 1, 2023. The parties agreed to a two-week extension on September 28, 2023, making the deadline October 16, 2023. Defendants then agreed to an additional one-day extension on October 16, 2023. Defendants received Plaintiffs' responses at 1:58 AM EST on October 18, 2023.

**B. <u>Unspecific and boilerplate objections to Requests Nos. 3, 5, 6, and 7:</u>**

"[B]oilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  Under Rule 34(b), objections must be stated "with specificity . . . including the reasons."  *See L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 397 n.2 (C.D. Cal. 2022) ("[A] party may not simply object, without further explanation, that a request is 'vague and ambiguous' or 'unduly burdensome'—the objection must explain *why* the request is vague and ambiguous or *why* it is unduly burdensome, preferably with a supporting declaration from a custodian of records or other qualified person describing the burden that would be involved if production were required as requested.").  The Advisory Committee notes to the 2015 Amendments to Rule 34 explain that "the producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection."  Plaintiffs' responses to Requests Nos. 3, 5, 6, 7 do not state with specificity the reason for the objections that would allow the parties to facilitate an informed discussion of the objections.

Plaintiffs' unexplained objections are unacceptable and do not allow Defendants to evaluate the basis for the objection.  <u>If you intend to object to Request Nos. 3, 5, 6, and 7, please provide sufficient objections in which you state with specificity how each objection is related to the request and explain the legal and factual basis for each objection</u>.  In particular, please explain the legal and factual basis for the following objections, with regards to each request:

- Irrelevant to the determination of any claim or defense
- Overbroad and disproportionate to the needs of the case
- Violative of the privacy rights of non-litigants
- Encroaching on promises of confidentiality AYA has made to third parties
- Invading the priest-penitent privilege (ARS § 12-2233)
- Invading the confidentiality of medical records (ARS § 12-2292)
- Violating Plaintiffs' rights of Free Exercise
- Violating AYA's right under the Establishment Clause to be free of government process probing internal church activities
- Violating the Fifth Amendment rights of AYA's congregation
- Seeking privileged attorney-client and attorney work-product protected communications

**C. <u>Unspecific objections based on privilege to Requests No. 3, 5, 6:</u>**

Plaintiffs' responses to Requests No. 3, 5, 6, 7 invoke attorney-client privilege and attorney work-product protected information, but do not provide the basis of such privilege.  As stated in Instruction No. 5, to which Plaintiffs did not object, "If you assert a claim of privilege in objecting to any document request, or to any part thereof, please describe the basis of such privilege."  Please describe the basis for invoking such privilege in each of your responses.  Moreover, please note that if you continue to invoke the Fifth Amendment privilege against self-incrimination in response to Defendants' discovery requests, in civil litigation the Court may draw an adverse inference from such assertions.  *See, e.g.*, *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008).

D. <u>**Issues pertaining to individual responses**</u>:

*Request for Production No. 5*: Plaintiffs state that "reasonably construed, the interrogatory seeks information found in responsive documents that have been produced." As stated in Instruction No. 7, to which you did not object, "[i]f, in responding to these document requests, you encounter what you deem to be an ambiguity when construing any document request, instruction, or definition, please set forth the matter deemed ambiguous and the construction used in responding." Please set forth the construction that you used in responding to this request.

*Request for Production No. 3*: In your response, you state that "some responsive documents are withheld on the grounds objected above," Response No. 3, and that "Plaintiffs may produce additional documents pursuant to an appropriate confidentiality stipulation." Please specify the legal basis under which responsive documents have been withheld.

*Request for Production No. 6*: In Plaintiffs' response to this request, "Plaintiffs decline to produce responsive documents based on the stated objections." Response No. 6. As stated in Instruction No. 8, to which you did not object, "Federal Rule of Civil Procedure 34(b)(2)(C) provides: 'An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.'" Please clarify whether Plaintiffs are withholding documents on the basis of your objections.

### III.   <u>Extending the Substantial Completion of Discovery Deadline</u>

In your August 17, 2023 e-mail, you proposed stipulating to an extension of the discovery deadline concurrent with any extensions each side agreed to. Under the Court's Rule 16 Case Management Order, the substantial completion of fact discovery deadline is set for November 16, 2023. The close of fact discovery is set for April 4, 2024. Depositions may not commence until December 1, 2023. Given the pace of propounded discovery and the outstanding issues with Plaintiffs' responses, including the failure to respond to the majority of Defendants' request for production and withholding of documents because we have not agreed upon a protective order, we do not believe it is realistic to meet a substantial completion deadline of November 16, 2023. We propose extending the substantial completion of discovery deadline by two months. Please let us know if you would be amenable to such an extension.

### IV.   <u>Protective Order and Clawback Agreement</u>

Defendants circulated a draft protective order and a draft clawback agreement for your review on July 13, 2023. In your August 16, 2023 e-mail, you requested that we table the protective order because you were not requesting production of any documents. As we conveyed at the time, moving for a protective order is standard practice in discovery, and, as we stated in our August 17, 2023 e-mail, we will need a protective order in place before we can make productions of certain privileged or sensitive documents. Although we received general bullet points from you on July 20, 2023, we have not received any requested redlines of either the Protective Order or the Clawback Agreement. Additionally, Plaintiffs' Responses to First Set of Requests for Production from Defendants to Request Nos. 1, 3, 6, 7, state that "Plaintiffs may produce additional documents pursuant to the confidentiality stipulation that the parties are currently negotiating."

During our meet and confers you asked for examples of information that would be covered by the protective order. Since you have now transmitted a First Request for Production, we provide a few examples of documents that you have requested that would require a protective order before we can make any productions, in the hopes that we can reach an agreement on the protective order and not have to move for an opposed protective order.

For example, to the extent that responsive and relevant documents exist, the following requests ostensibly could include the production of law-enforcement-sensitive material:

- DEA REQUEST NO. 17: Please produce all DOCUMENTS, POLICIES and REPORTS reflecting any COMMUNICATIONS between and among DEA, CBP, DHS, and State LEOs regarding AYA and/or STANLEY, including PROFILES and PROFILING.

- CBP REQUEST NO. 12: Please produce all POLICIES pursuant to which the COMMUNICATIONS and DOCUMENTS between and among the above-listed government PERSONNEL regarding AYA, STANLEY and/or the contents of USPS parcels EE011186439PE and EE011369264PE were exchanged.

- CBP REQUEST NO. 13: Please produce the most recent, unredacted CBP Seized Asset Management and Enforcement Procedures Handbook.

Additionally, the entry of a Privacy Act protective order is standard for civil cases against the government where third-party privacy may be implicated. Such information exists throughout government document repositories and includes employee-identifying information, as well as information relating to individuals outside of the government. Entry of the protective order facilitates the exchange of information quickly, without requiring that government officials make Privacy Act deliberations for the release of each document in litigation. For example, DEA RFP No. 18 requests "all DOCUMENTS, including POLICIES, REPORTS, and COMMUNICATIONS regarding" "the importation and distribution of AYAHUASCA by AYAHUASCA CHURCHES." Responsive, non-privileged documents produced could ostensibly include third-party information that would be protected under the Privacy Act.

Finally, we as we previously noted, the draft protective order and clawback agreement that we circulated on July 13, 2023 are the same as those entered by the Court in *Church of the Eagle and the Condor et al. v. Garland et al.*, 22-cv-1004 (D. Ariz.).

<u>Please provide redlines of the protective order and clawback agreements within 7 days</u>. If we do not receive your edits by then, we will move for an entry of the protective order and clawback agreements that we circulated on July 13, 2023.

\*   \*   \*

As stated above, we would like to meet and confer with you regarding these issues. Please provide your best availability for a call during the week of November 6. I hope we can work cooperatively to resolve these issues and move the case forward.


- 10 -

Sincerely,

 /s/ Lisa Newman
Lisa Newman
Bonnie Devany