CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

JOHN SULLIVAN (CSB#204648) Pro Hac Vice
17532 Miranda Street
Encino, California 91316-1249
Tel: 818-769-7236 Fax: 818-301-2175
Email:Sullivan.John84@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly and
Winfield Scott Stanley III

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| ArizonaYagé Assembly, and Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>            Plaintiffs,<br><br>     vs.<br><br>Merrick Garland Attorney General of the United States; et al.<br><br>            Defendants. | Case No.:20-CV-02373-ROS<br><br>*EX PARTE* MOTION FOR STAY OF DISCOVERY ORDER  (DKT. # 220) AND FURTHER DISCOVERY ADJUDICATIONS PENDING APPEAL |

      Plaintiffs Arizona Yagé Assembly and Winfield Scott Stanley III ("Plaintiffs"), hereby move the Court for a stay of (1) the Court's order entered February 22, 2024, Dkt. # 220 (herein the "Disclosure Order"), (2) any further adjudications pursuant to the Court's Discovery Rule that forbids the filing of motions pursuant to the provisions of F.R.Civ.P. Rules 26, 30, 33, 34, and 36, and (3) any adjudications pursuant to F.R.Civ.P. 37.

      The grounds for the motion are that the Disclosure Order infringes the First Amendment rights of the Plaintiffs, that the Court's Discovery Rule exceeds the Court's

proper authority under Rule 83 by eliminating procedures set forth by the drafter of the Federal Rules and violates Plaintiffs' rights of due process, and that any further adjudications pursuant to Rule 37 would be without lawful cause because premised upon presumed violations of the Disclosure Order and the Court's Discovery Rule, both of which orders are themselves unlawful. Further grounds for granting the motion are set forth in the Memorandum of Points and Authorities and the Declaration of Winfield Scott Stanley III, filed herewith. This motion is submitted *ex parte* due to the shortness of the time between now and the compliance date of the Disclosure Order (Dkt. # 220); however, Plaintiffs did give notice of the intent to file this motion on Monday, 6, 2024, with a detailed explanation of the grounds therefor, and requested the Defendants to stipulate to the requested stay.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     The Disclosure Order Violates Plaintiffs' First Amendment Rights by Requiring Disclosure of the Identities of 5,239 People, Their Religious Correspondence, and Thousands of Pieces of Reputationally Damaging Information**

"It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958)(citations omitted).

The Disclosure Order (Dkt. # 220) compels Plaintiffs to disclose the "identities of no less than 5,239 people … tens of thousands of emails discussing religious matters … thousands of pieces of reputationally damaging information … records of private, personal activity, and records of donations and ceremonial contributions made with the understanding that donors and contributors would remain secret." (Stanley Dec. ¶ 3.)

In *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2377 (2021), the Supreme Court overturned a Ninth Circuit decision upholding a California law that -- the high Court concluded -- infringed the First Amendment by requiring the disclosure of

nonprofit donors on State-mandated forms. The Ninth Circuit had failed to "narrowly tailor" the demand for information to accord with the government's asserted interests.

> "The Ninth Circuit did not impose a narrow tailoring requirement to the relationship between the Attorney General's demand for Schedule Bs and the identified governmental interest. That was error under the Court's precedents. And properly applied, the narrow tailoring requirement is not satisfied by California's disclosure regime. In fact, *a dramatic mismatch exists between the interest the Attorney General seeks to promote and the disclosure regime that he has implemented*."
>
> Ams. for Prosperity Found. v. Bonta, 141 S. Ct. 2373, 2378 (2021)(emphasis added).

The Supreme Court's position on the danger of government authorities compelling the disclosure of member lists was clearly enunciated in *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958). While quashing a subpoena from Alabama to the NAACP for its membership list, the justices compared "compelled disclosure of membership in an organization engaged in advocacy of particular beliefs" to be "of the same order" as the Third Reich's policy of requiring "adherents of particular religious faiths or political parties wear identifying arm-bands." *NAACP v. Alabama*, 375 U.S. at 462.

The Declaration of Winfield Scott Stanley III in support of this motion establishes that Plaintiffs would suffer immediate and irreparable reputational harm as soon as AYA's members, donors and correspondents learned that Plaintiffs had made such disclosures. (Stanley Dec. ¶¶ 2 - 4.)

**B.    The Court Did Not Recognize the Existence of First Amendment Privilege**

The District Court did not consider any prejudice resulting from the invasion of Plaintiffs' First Amendment Privilege, because it mistakenly concluded no such privilege was available. (Order 220, 10:16-17, quoted *supra*.)

C. **Plaintiffs Established a Prima Facie Case of First Amendment Infringement**

Plaintiffs articulated their First Amendment right to be free of the associational injuries that would be caused by compelling the disclosure of member, donor, and correspondent lists, as well as their private email exchanges and detailed information regarding ceremonial attendance, alleging privacy violations and First Amendment infringements and undue burdens would flow from compelling compliance with these demands.  As noted in the Joint Statement (Dkt. # 219): "The demand imposes a severe burden on the relationship of AYA and Plaintiff Stanley with the AYA congregation, attempting to convert their religious participation into an avenue of negative scrutiny of the sort that this litigation is intended to remedy."

D. **The Court Should Have Applied the *Perry* "Two-Part" Framework for Determining Claims of First Amendment Privilege**

Plaintiffs raised their claim of First Amendment Privilege and burden in the Joint Statement the parties submitted in compliance with the Court's Discovery Rule.  The Court, however, concluded the First Amendment had nothing to do with civil discovery.  In this, the Court clearly erred.  The procedure to follow when First Amendment privilege claims are raised in response to civil discovery demands was drawn in hornbook fashion from *Perry, supra*, in an opinion from the Northern District of California:

> First, the party asserting the privilege must make a "prima facie showing" of "arguable first amendment infringement," demonstrating that enforcement of the discovery requests will result in: (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or "chilling" of members' associational rights. *Id.* at 1160-61. If that showing is made, at the second step the "evidentiary burden" shifts and the party seeking the information must show that the information sought is "rationally related to a compelling governmental interest" and that there are no other less restrictive means of securing that information. *Id.* (internal quotations omitted).
>
> At the second step, the "analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude

it. The question is therefore whether the party seeking the discovery 'has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.'"
*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO, 2015 U.S. Dist. LEXIS 192788, at *6-7 (N.D. Cal. Nov. 20, 2015), *quoting Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010), *quoting NAACP v. Ala. ex rel. Patterson,* 357 U.S. 449, 463, 78 S. Ct. 1163, 1172 (1958).

E. **Plaintiffs Have a Right to Appeal the Disclosure Order Under the Collateral Order Doctrine or, Alternatively, Via Petition for Writ of Mandamus**

Collateral orders are a "narrow class of decisions that do not terminate the litigation, but are sufficiently important and collateral to the merits that they should nonetheless be treated as final." *Will v. Hallock*, 546 U.S. 345, 347 (2006) (quotation marks omitted). To be immediately appealable, a collateral decision "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1154 (9th Cir. 2010), *quoting Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978).

In the Fifth Circuit, a disclosure order that compelled Texas Catholic Conference of Bishops to disclose "emails or attachments [that] relate to the burial, cremation, or disposition of fetal or embryonic tissue" was found to be a collateral order and reversed as a First Amendment violation. *See, Whole Woman's Health v. Smith*, No. A-16-CV-1300-DAE, 2018 U.S. Dist. LEXIS 99275, at *4 (W.D. Tex. June 13, 2018). The appeals court easily found jurisdiction: "The standards of the collateral order doctrine are met here. There is no dispute that the district court's discovery order was conclusive on TCCB, such that failure to comply with it may result in sanctions against TCCB or its witness. Further, the order resolves important and very novel issues separate from the merits of the litigation over the Texas statute concerning the disposal of fetal tissue remains. Finally, the plaintiffs do not have an answer to the argument that the

consequence of forced discovery here is "effectively unreviewable" on appeal from the final judgment." *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018).

The Ninth Circuit has considered applying the collateral order rule in cases of First Amendment infringement by otherwise unreviewable discovery orders. Distinguishing *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 130 S. Ct. 599 (2009) (denying appellate review of order compelling disclosure of attorney-client privileged information) on several grounds, the Ninth Circuit noted the presence of "not insubstantial … distinctions between the First Amendment privilege and the attorney-client privilege -- a constitutional basis, a heightened public interest, rarity of invocation and a long recognized chilling effect…." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010). Nevertheless, the *Perry* opinion took the safest jurisdictional course, and chose "to rely on mandamus to hear this exceptionally important case..." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010). Thus, Plaintiffs will move the appellate court alternatively to construe their appeal as a petition for writ of mandamus.

**F.    The Court's Bar on Discovery Motions Eliminates Rights Granted by the Drafters of the Federal Rules of Civil Procedure, and Thus Cannot Stand**

Meaning no disrespect to the Court, Plaintiffs must nevertheless note that it exceeded its authority under Rule 83 by eliminating a right granted by the drafters of the Federal Rules of Civil Procedure. *Valenzuela-Gomez v. United States District Court*, 915 F.2d 1276 (9th Cir. 1990)(writ issued to prevent video-arraignment of federal defendant pursuant to General Order that violated Rules of Criminal Procedure 10 and 43, requiring in-person appearance). The Court's standing Discovery Order essentially bars all discovery motions, and thereby, the opportunity to submit affidavits and extended legal arguments. Where a local or chambers rule eliminates rights expressly provided by the Federal Rules, as *Valenzuela-Gomez, supra*, a writ should issue to remedy the injury.

Plaintiff Stanley's declaration establishes that the inability to file affidavits severely prejudiced Plaintiffs: "As explained in Plaintiffs' motion in support of the

request for stay, because of the Court's Discovery Rule[1] forbidding the filing of motions, I was unable to file a declaration to explain to the Court how Plaintiffs would be prejudiced if compelled to disclose, as we are now required by the Disclosure Order (Dkt. # 220)"

Because affidavits could not be filed, Plaintiffs could not inform the Court that issuing an order containing the provisions of the Disclosure Order would require Plaintiffs to disclose the "identities of no less than 5,239 people … tens of thousands of emails discussing religious matters … thousands of pieces of reputationally damaging information … records of private, personal activity, and records of donations and ceremonial contributions made with the understanding that donors and contributors would remain secret." (Stanley Dec. ¶ 3.) The legitimacy of a First Amendment infringement claim premised upon these facts cannot be questioned. Additionally, it is clear that the Court's Discovery Rule was the primary cause of the inadequate factual record and slender briefing of the issues, resulting in its failure to apply the *Perry* balancing test, which resulted in the issuance of the Disclosure Order (Dkt. # 220). Accordingly, further adjudications pursuant to the Court's Discovery Rule should be stayed to avoid additional decisions premised thereon, and the resulting serial appeals.

**G.   Plaintiffs Are Likely to Succeed on the Merits of Their Claim**

Plaintiffs are likely to succeed in the Ninth Circuit on the merits of their First Amendment privilege claim. For a certainty, they have raised "serious legal questions" sufficient to warrant a stay in light of the irreparable harm and equities weighing "sharply in [our] favor," as demonstrated below. *Golden Gate Rest. Ass'n v. San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008).

**H.   Irreparable Harm is Certain in the Absence of a Stay**

---

[1] https://www.azd.uscourts.gov/sites/azd/files/judge-orders/ROS_Discovery_Dispute_Instructions_On_Line.pdf

In the Ninth Circuit, that a stay applicant has "raised serious First Amendment questions *compels* a finding that there exists the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [the stay applicant's] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (quotation marks omitted; emphasis added); *accord Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002). Thus, "[t]o establish irreparable injury in the First Amendment context" a stay applicant "need only demonstrate the existence of a colorable First Amendment claim." *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003) (quotation marks and alterations omitted).

Forcing a litigant to disclose privileged materials necessarily inflicts irreparable harm because once the materials have been disclosed, it is impossible to "undisclose" them. *In re Napster*, 479 F.3d at 1088; *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1989); *United States v. Amlani*, 169 F.3d 1189, 1193 n.4 (9th Cir. 1999); *Philip Morris*, 314 F.3d at 621- 22. The infringement of "First Amendment freedoms . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *accord Brown v. Cal. DOT*, 321 F.3d 1217, 1226 (9th Cir. 2003).

Finally, Plaintiff Stanley is under a claim of conscience here that runs contrary to the commands of the Disclosure Order (Dkt. # 220) that would require him to breach the bond of trust with his congregation. (Stanley Dec. ¶¶ 2 -4 and ¶ 8.)  The issuance of the Discovery Order has already put the AYA congregation into a crisis.  (Stanley Dec. ¶ 6.) Compliance with the Disclosure Order would visit immediate, irreparable injury to the associational rights of AYA and Stanley.  (Stanley Dec. ¶ 4.)

I.      **The Four Factors Warranting a Stay Are Satisfied**

Four factors inform whether a federal court should issue a stay pending appeal: (1) the appellants' likelihood of success on the merits; (2) the possibility of irreparable harm absent a stay; (3) the possibility of substantial injury to other parties if a stay is issued;

and (4) the public interest. *See Golden Gate Rest. Ass'n v. San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008)(citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

When applying these four factors, the Ninth Circuit employs a "sliding scale" approach: the more sharply the equities weigh in favor of a stay, the less demanding of a showing of likely success on the merits is required. *See Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007), *vacated on other grounds by* 508 F.3d 885 (9th Cir. 2007); *Golden Gate*, 512 F.3d at 1116. *See id*.

A consideration of the factors and analysis identified by the Ninth Circuit demonstrates that Plaintiffs are entitled to a stay. Thus, "[t]o establish irreparable injury in the First Amendment context" a stay applicant "need only demonstrate the existence of a colorable First Amendment claim." *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003) (quotation marks and alterations omitted). In this case, irreparable injury has already begun, with the AYA staff in a crisis concerning the discovery demands, and the looming certainty of massive reputational and associational injury to AYA and Stanley in the event they were compelled to make the disclosures commanded by the Disclosure Order (Dkt. # 220).

**J. OTHER PARTIES WILL NOT BE SUBSTANTIALLY INJURED BY A STAY**

The Ninth Circuit has given tailored guidance for balancing harms in the First Amendment context: where a litigant "raise[s] serious First Amendment questions," it "compels a finding that . . . the balance of hardships tips sharply in [that litigant's] favor." *Cmty. House, Inc.*, 490 F.3d at 1059 (quotation marks omitted; emphasis added); *Sammartano*, 303 F.3d at 973. That principle fully applies here. And even if the Ninth Circuit were to find that the discovery at issue was not privileged, the most Defendants could claim is a delay in the proceedings below. But "[a] mere assertion of delay does not constitute substantial harm." *Philip Morris Inc.*, 314 F.3d at 622. This Court should thus conclude that the balance of hardships tips sharply in favor of issuing a stay pending appeal.

### K. The Public Interest Weighs in Favor of a Stay

"Courts . . . have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano*, 303 F.3d at 974 (listing cases). More particularly, courts have repeatedly acknowledged that the public interest suffers when core First Amendment rights of political expression are jeopardized and political participation is chilled. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 71 (1976) (noting that "the public interest . . . suffers" from chilled political participation); *Sammartano*, 303 F.3d at 974 ("[T]he public interest is better served by . . . protecting the core First Amendment right of political expression.").

Denying this stay and forcing immediate disclosure of AYA's members, donors, and correspondents, and the production of their private emails, personal disclosures, and medical information will chill the First Amendment associational rights of thousands of religious people who have been members, donors or correspondents of Plaintiffs.

### L. CONCLUSION

For the foregoing reasons, the Court should grant this motion for a stay.

Dated: March 6, 2024

                                                           CHARLES CARREON
/s/Charles Carreon
CHARLES CARREON (127139)
Attorney for Plaintiffs
Arizona Yagé Assembly,
Winfield Scott Stanley III