CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Circle
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

JOHN SULLIVAN (CSB#204648)
17532 Miranda Street
Encino, CA 91316
Tel:818-769-7236
Email:Sullivan.John84@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly
and Winfield Scott Stanley III

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br>Merrick Garland Attorney General of the United States; et al.<br><br>　　　　　Defendants. | Case No.:20-CV-02373-PHX-ROS<br><br>DECLARATION OF WINFIELD SCOTT STANLEY III IN SUPPORT OF PLAINTIFFS' MOTION FOR STAY PENDING APPEAL |

### DECLARATION OF WINFIELD SCOTT STANLEY III

Winfield Scott Stanley III, hereby declares and affirms:

　　　1.　　I am the founder of plaintiff Arizona Yage Assembly ("AYA"), and a plaintiff in my own right in this litigation. I make this declaration in support of AYA's Motion for Stay Pending Appeal, jointly referring to AYA and myself as "Plaintiffs."

2. As explained in Plaintiffs' motion in support of the request for stay, because of the Court's Discovery Rule[1] forbidding the filing of motions, I was unable to file a declaration to explain to the Court how Plaintiffs would be prejudiced if compelled to disclose, as we are now required by the Disclosure Order (Dkt. # 220):

    a. the identities of AYA's members, donors, and correspondents;

    b. their emails and other correspondence with Plaintiffs;

    c. which ceremonies they attended;

    d. how often they attended; and,

    e. whether they donated to AYA, and in what amount.

3. Producing all of this information, with no time period limitation, would compel Plaintiffs to disclose:

    a. The identities of no less than 5,239 people who communicated with Plaintiffs for religious reasons, *i.e.*, to attend ceremony, request and receive advice, and other private matters;[2]

    b. Tens of thousands of emails discussing religious matters;

    c. Thousands of pieces of reputationally damaging information;

    d. Records of private, personal activity; and

    e. Records of donations and ceremonial contributions made with the understanding that donors and contributors would remain secret.

4. If Plaintiffs were to disclose such information and documents, we would be breaching the trust and confidence our congregation has placed in us. As a result of that breach, irreparable injuries would occur immediately, including:

    a. Severe reputational damage to AYA and myself;

    b. Injury to the mood and tenor of reverential practice;

    c. Membership withdrawal;

---

[1] https://www.azd.uscourts.gov/sites/azd/files/judge-orders/ROS_Discovery_Dispute_Instructions_On_Line.pdf

[2] There are 5,239 email recipients in AYA's current email address list.

  d. Discouragement of new members from joining or participating in ceremony;

  e. Injury to the congregational mindset, undermining the ability to communicate freely with AYA staff, both in and out of ceremony;

  f. Injury to the congregational mindset for communicating with other members;

  g. Discontinuance of donations; and,

  h. Decline in attendance at ceremonies.

5. If I had been permitted to file a declaration in opposition to the Defendants' request for the Disclosure Order, I would have explained why these injuries are certain to occur from compliance with the Disclosure Order.

6. Due to the pending discovery demands attached hereto as Exhibits 1, 2, and 3, and my efforts to respond to the deep disclosures they demand, I have been managing a crisis within our church staff, as a result of them feeling threatened by the impending release of their names to Federal authorities. While I am seeking to obtain the cooperation of church staff to make disclosure of their identities and roles, I am not guaranteed of a unanimous decision in my efforts to bring my facilitator staff on board with releasing their individual names. Their aim in their religious practice is to practice in peace, privacy, and safety for themselves and others. It's hard for me to convey in words the depth of their private and personal conflicts in seeing their right to freely practice threatened in the interest of obtaining the judicial exemption sought by way of this action.

7. Plaintiffs were also disadvantaged by the Court's elimination of the discovery motion system because the Defendants were not required to make any assertions under oath, or with any degree of specificity at all, concerning the compelling governmental purpose justifying their requests to disclose the identities of, *inter alia*, AYA's members, donors, correspondents, their email addresses and correspondence with Plaintiffs, their ceremonial attendance, whether they donated to AYA, and in what amounts. Nor were the Defendants required to meet the heightened relevance standards for discovery that

must apply when First Amendment religious or political groups establish a *prima facie* case of First Amendment infringement, as discussed in the motion filed herewith. Finally, Plaintiffs are currently disadvantaged by the Court's Discovery Rule, as Defendants continue to press for more Constitutionally-protected information in current discussions with Plaintiffs' counsel, on constricted time schedules, with no opportunity for submitting extended argument and facts supported by affidavit.

8.     I do not mean any disrespect to this Court, and wish to proceed in the litigation, under rules that are in accordance with those the higher courts have decreed should apply when a church's records are demanded in civil discovery.  How can I, in good conscience, comply with those requirements of the Disclosure Order (Dkt. # 220) that would require me to betray my religious commitment to the AYA congregation and reveal private intra-church communications in an effort to avoid punishment by the Court?  Finally, Plaintiffs can not participate in a civil discovery procedure that deprives them of rights provided under the Federal Rules of Procedure to protect the fairness of discovery adjudications, and that have previously resulted in an order requiring what, as explained above, would be extremely injurious disclosures. (Dkt. # 220).

9.     Accordingly, while we seek the opinion of the appellate court, I respectfully request the Court to stay enforcement of the Disclosure Order (Dkt. # 220), and to refrain from adjudicating any discovery disputes under the Court's Discovery Rule that forbids the filing of motions supported and opposed by legal memoranda and sworn declarations in accordance with the applicable Federal Rules of Civil Procedure Rules 26 - 37.

   I declare and affirm, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct, and that this declaration was signed on March 6, 2024 at Tucson, Arizona.

Winfield Scott Stanley III