BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

LISA NEWMAN
BONNIE E. DEVANY
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Email: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br><br>v.<br><br>Merrick Garland, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373-ROS<br><br>**DEFENDANTS' STATEMENT ON DISPUTE OVER PLAINTIFFS' RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES** |

Defendants respectfully provide the following statement regarding a dispute over the sufficiency of Plaintiffs' responses to Defendants' Second Set of Interrogatories. As detailed in the certificate of conference below, Plaintiffs did not provide their positions for this statement within the Court-ordered timeline of five days and have not provided their position as of this filing. Thus, this statement is submitted only by Defendants, and Plaintiffs' positions remain blank.

**Defendants' General Position Statement:**

Defendants propounded the discovery requests at issue here—their Second Set of Interrogatories on December 20, 2023. *See* Ex. A. Plaintiffs responded to those requests on February 6, 2024, *see* Ex. B., after receiving an extension from this Court. *See* Order, Dkt. No. 216 (Jan. 30, 2024). That exchange of discovery thus predated the Court's Order resolving the Joint Statement on Plaintiffs' responses to Defendants' First Set of Interrogatories and Requests for Production. Order, Dkt. No. 220 (Feb. 22, 2024). As Defendants argued in that previous Joint Statement, Dkt. No. 219, the discovery Defendants seek in these disputed requests is similarly critical to the issues in this case. Plaintiffs have the initial burden to establish a prima facie case under RFRA. 42 U.S.C. § 2000bb-1(b). Defendants must then make an individualized showing that the application of the CSA and its implementing regulations to Plaintiffs' organization is the least restrictive means of furthering a compelling government interest. *Id.* As with their first set of responses, many of Plaintiffs' responses are deficient and deny Defendants information needed to fairly contest this case, as explained below.

**Plaintiffs' Position:**

**I.   DEFICIENT INTERROGATORY RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORY RESPONSES**

    **A.   Date Limitation to Interrogatory Responses**

<u>Plaintiffs' "Prefatory Statement"</u>:  Plaintiffs' responses take as the relevant time period that commencing April 22, 2020, when Defendants gave Plaintiffs notice of the seizure of Ayahuasca destined for AYA's receipt and sacramental use.

**Defendants' Position:**

Plaintiffs limited their Interrogatory responses to "the relevant time period" of April 22, 2020. That is inappropriate, and Plaintiffs offer no convincing rationale for this limitation. Plaintiffs' Responses to the first set of interrogatories did not include this limitation, and the Court did not impose a time limitation.  *See* Dkt. 220.  Nor did Defendants' responses to Plaintiffs interrogatories include any date limitations.  AYA has existed for less than ten years. Because Defendants must scrutinize AYA's specific practices, how AYA's practices have operated historically, changed over time, and presently operate is highly relevant to scrutinizing the harm of granting an exemption to AYA and determining whether AYA's practices pose health, safety, or diversion risks.  For example, Plaintiffs disclose that a participant was hospitalized on "one occasion in Spring 2023."  It is important to know whether other hospitalizations have occurred, and whether such incidents have been excluded based on the date limitation.  Plaintiffs should be ordered to provide supplemental interrogatory responses to the extent that there is additional information to provide before April 22, 2020, given that AYA has operated for less than 10 years.

**Plaintiffs' Position:**

## B.   **Interrogatory 2i:**

Rog 2(i): [Describe] [e]ach and every person involved in making membership determinations.

Plaintiffs' Response: As noted above, AYA does not gatekeep access to ceremony; rather, it makes ceremony accessible to sincere applicants. The determination of who is in and who is out of the AYA congregation is not the duty of anyone, except on that rare occasion when a decision must be made to exclude someone from attendance, and in that case, the final authority is always Plaintiff Stanley.

**Defendants' Position:**

Plaintiffs have not answered the interrogatory in full. They describe Plaintiff Stanley as "the final authority" but have not identified who else is *involved* in that decision-making process even if it is on "rare occasion . . . to exclude someone from attendance." This information is critical to identifying potential witnesses regarding the safety and sincerity of Plaintiffs' membership practices and screening and, for example, whether "individuals are joining Plaintiffs' organization under false pretenses." Dkt. 220 at 19. The Court has already concluded that similar information is relevant. *See, e.g.*, Dkt. No. 220, at 19 ("This information is relevant . . . for identifying potential witnesses and evaluating the safety and sincerity of Plaintiffs' practices" as well as whether "Plaintiffs practice pose a diversion risk").

**Plaintiffs' Position:**

4

### C. Interrogatory 3

Rog 3: Identify each and every instance in which a facilitator determined that a participant requested or required "assistance or transportation after the ceremony," or "additional care" after the ceremony. (Referencing AYA Ceremonial Instructions, Dkt. No. 33-4 at 4.) For each instance identified, please identify the person who made the decision, the reason or reasons for that decision, any training that person had to make such a determination, and any policies or criteria in place to aid in making such a determination.

Plaintiffs' Response: On one occasion in Spring 2023, an individual with a pre-existing health condition suffered a flare-up, and she was transported by paramedics to a local hospital, where she recovered from the flare-up. Specific medical information about her condition would of course be confidential.

**Defendants' Position:**

Plaintiffs' response is insufficient because, in the one instance identified, they have not disclosed "the person who made the decision, the reason or reasons for that decision, any training that person had to make such a determination, and any policies or criteria in place to aid in making such a determination." This information is, on its face, essential to identifying potential witnesses and evaluating "potential health or safety risks posed by Plaintiffs' practices," including assistance, transportation, and additional care that has been provided after ayahuasca ceremonies and any training and policies in place to guide the provision of such assistance. Dkt. 220 at 7.[1] The Court has already deemed this information relevant, and overruled the confidentiality objection. *See id.* at 8-9 ("Plaintiffs shall … identify[] all instances of aid or assistance provided before, during, or after a ceremony."); *id.* at 2-3, 8-9. Plaintiffs' response also suggests that "on one occasion" an individual had a "flare up" that required transportation, but Plaintiffs do not indicate that this was the only instance responsive to this question, particularly because Plaintiffs arbitrarily limited their response to begin at April 2020. The group's *entire* history is relevant to this inquiry.

**Plaintiffs' Position:**

---

[1] Defendants have sent an additional interrogatory relating to this specific health incident in their third set of interrogatories.

5

**D.   Interrogatory 4**

Rog 4: Please describe all information and identify all documents that AYA conveys to potential and actual participants of ayahuasca ceremonies about the "risks and hazards connected with" an ayahuasca ceremony and "physical and physiological infirmity [that] would place [an individual] at risk to participate in any way with the ceremony activities." (footnote omitted).

Plaintiffs' Response: This interrogatory seeks a compilation of information available from plaintiff's documents produced as AYA0001 – AYA 0039. Rule 33(d)(1).

**Defendants' Position:**

Plaintiffs have not "describe[d] all information" nor "identif[ied] all documents" that AYA conveys to participants about ceremony risks. To start, Plaintiffs' response contains no prose description at all and attempts to "identify all documents" simply by pointing to 39 pages of documents it has produced. However, AYA document productions have been woefully insufficient, as previously shown. *See* Dkt. No. 219. For example, "[t]o date, Plaintiffs have produced only an excel spreadsheet of 2018 survey responses, a screenshot of one email that was included as an exhibit to its PI, which appears to be altered, and have otherwise refused to search for or produce communications in response to Defendants' requests." *Id.* at 5. The information sought here is consistent with, and indeed encompassed by, the Court's prior Order. *See, e.g.*, Dkt. No. 220, at 6, 9-13, 15-20. This interrogatory, and the related documents encompassed within that Plaintiffs are already under order to produce, calls for information that is relevant, indeed essential, for evaluating Plaintiffs' safety practices.

**Plaintiffs' Position:**

6

### E. Interrogatory 6

Rog 6: Describe your plans for importing, manufacturing, storing, transporting, and distributing ayahuasca, including: a. The importers and recipients of the shipments; b. Where the ayahuasca will be shipped to; c. The quantity and form of imported ayahuasca; d. Where and who will manufacture the ayahuasca; e. Where and how the ayahuasca will be transported once it has been received in the United States (including all in and out-of-state locations to which AYA will transport such ayahuasca); f. The amount of ayahuasca that will be consumed at each ceremony; g. All physical locations for which you will be seeking a DEA registration, and; h. Procedures for recordkeeping.

**Plaintiffs' Response:** Plaintiffs' Short Term Plans: Plaintiffs will import Ayahuasca manufactured in Peru by secret means, and store it in a secret location in the District of Arizona under the sole control of Plaintiff Stanley, who shall be responsible for the storage, transportation and distribution of Ayahuasca exclusively in AYA ceremonies. "Plaintiffs' secrecy does not show a lack of sincerity. Instead, it shows that plaintiffs remained committed to practicing their religion despite the threat of criminal prosecution and loss of professional status." Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d 210, 1219 (D. Or. 2009). Plaintiffs' Long Term Plans: Plaintiffs plan to get a DEA number(s) and disclose all of their importation information in detail on the required DEA forms.

a. The importers and recipients of the shipments[:] Scott Stanley.
b. Where the ayahuasca will be shipped to[:] A secret location in the District of Arizona.
c. The quantity and form of imported ayahuasca[:] The quantity is undetermined, but AYA will try to get enough to continue ceremonies every two weeks. If ceremonial Ayahuasca is unavailable, members of the congregation will gather to pray for the restoration of their access to their sacrament. The form of Ayahuasca will be the standard two-ingredient combination of Banisteropsis Caapi and either Diplopterys Cabrerana or Psychotria Viridis.
d. Where and who will manufacture the ayahuasca[:] Artisanal harvesters and manufacturers situated in Iquitos, Peru.
e. Where and how the ayahuasca will be transported once it has been received in the United States (including all in and out-of-state locations to which AYA will transport such ayahuasca)[:] Plaintiffs have no plans to transport Ayahuasca anywhere except to the Arizona Maloka, or to one of the announced locations where ceremonies are held out of state.
f. The amount of ayahuasca that will be consumed at each ceremony[:] Per capita consumption averages 1.0 – 1.5 ounces per ceremony.
g. All physical locations for which you will be seeking a DEA registration[:] Unknown at present.
h. Procedures for recordkeeping. Like the Oregon Santo Daime, AYA protects its sacrament from diversion, using it exclusively for AYA ceremony, and has not maintained written records; however, AYA is ready, willing and able to adopt and utilize the recordkeeping system that the Santo Daime have developed to track their DEA-regulated importations of Ayahuasca. "The government has not presented

7

evidence that there is a significant market for Daime tea. The government also has not presented evidence that plaintiffs have allowed the diversion of a single drop of Daime tea. This is an issue best addressed through reasonable guidelines for storing and inventorying plaintiffs' supply of Daime tea." Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d 1210, 1220 (D. Or. 2009).

**Defendants' Position:**

Plaintiffs refuse to disclose crucial details about their plans to import, manufacture, store, transport, and distribute ayahuasca. Specifically, Plaintiffs have not disclosed: 6(a) the name of the importer (Scott Stanley is presumably the recipient), 6(b) the importation location (it's a "secret"), 6(c) the names of the manufacturers, 6(d) the quantity or form (i.e. liquid, paste, powder) of imported ayahuasca, 6(e) transportation details to "the Arizona Maloka" or to out-of-state ceremonies, 6(g) the DEA registration location—the precise remedy at issue, or 6(h) any record keeping practice in which their assertion that they do not claim any written records strains credulity. "[I]nformation about sourcing, storage, transportation, and security of ayahuasca is relevant to potential diversion and safety risks posed by Plaintiffs' practices," and in minimizing the risk of diversion during the importation practices. *See* Dkt. 220 at 10-14. Plaintiffs claim that it is Defendants' obligation to present evidence of diversionary practices, an argument which this Court has already rejected. *Id.* at 19 ("Plaintiffs wrongly argue Defendants must articulate an occasion when Plaintiffs have encouraged illicit, recreational use of ayahuasca or diversion …").

### F. <u>Interrogatory 7</u>

<u>Rog 7</u>: Please identify the person or persons who do not consume ayahuasca (or are otherwise not under the influence of a controlled or mind-altering substance) immediately prior to or during the ayahuasca ceremony such that they can attend to any medical emergency or other issues that arise during or immediately after the ceremony. For any such persons, identify their respective roles and their medical training or expertise.

<u>Plaintiffs' Response</u>: Plaintiff Stanley is present during 97% of all ceremonies, and his ability to respond to ordinary situations is not diminished by taking the sacrament in ceremony. Facilitators who conduct ceremony for AYA must possess a similar level of clarity in order to conduct the ceremony properly. The performance of ordinary activities, such as using telecommunications devices, communicating with authorities, and dealing with challenging circumstances, is not impeded for the adept ceremonial practitioner.

**Defendants' Position:**

Plaintiffs' response is insufficient. To start, Plaintiffs do not identify who is present that does not consume ayahuasca, as the Interrogatory plainly calls for. If there are no such individuals present, Plaintiffs should say so. If there are such individuals present, Plaintiffs must identify them and state their role and medical training or expertise. Moreover, while stating that Stanley is present for 97% of ceremonies, they have not disclosed who is present during the remaining 3% of ceremonies. This information is critical to identifying potential witnesses and evaluating Plaintiffs' safety practices: it is essential to know who is present that can respond in medical emergencies or other situations, and what their training is. The Court has already ordered that related information be produced. *See, e.g.*, Dkt. No. 220, 13 (Rog 10, ordering a "full and complete response" to Rog 10, which sought "the date and location of every ceremony Plaintiffs have held, what substances were involved, who was present, and who handles substances or served in a leadership role during each ceremony" as this information "is relevant to potential diversion risks posed by Plaintiffs' practices"), 19 (RFP 8, ordering production of the "AYA attendee roster").

**Plaintiffs' Position:**

### G.    Interrogatory 10

Rog 10: Please explain how "Kambo ceremony[ies]" and "the Divine Kambo Sacrament" relate to AYA's sincere religious beliefs.

Plaintiffs' Response: Plaintiffs object that Interrogatory # 10 seeks information irrelevant to any matter at issue in this litigation and is not proportionate to the needs of the case. Plaintiffs will stand on the said objections.

**Defendants' Position:**

Plaintiffs have refused to answer this interrogatory about the Kambo ceremonies it offers, claiming it is irrelevant and not proportionate to this case. But information relating to this topic is highly relevant: AYA itself holds out to the public as hosting two different kinds of ceremonies as part of their religious offerings to congregants: ayahuasca ceremonies and "kambo ceremonies."[2] *See* Arizona Yage Assembly: Ceremonies, https://www.aya.guide/ceremonies (last visited Feb. 27, 2024). One of the two elements that Plaintiffs must prove as part of its prima facie RFRA case—and Defendants in turn are entitled to understand and evaluate—is its sincere religious beliefs. If AYA is a religious organization, and it offers two ceremonies as part of its practice, then Defendants seek to understand what, if any, religious links exist between the two ceremonies. How kambo fits into AYA's religious beliefs is relevant to this inquiry.

**Plaintiffs' Position:**

---

[2] For context, and as based on recent media reports, kambo ceremonies appear to involve ingesting the toxic secretions of a specific kind of frog. *See, e.g.*, Adrienne Santos-Longhurst, *What's the Deal with Kambo and Frog Medicine?*, HEALTHLINE (Jan. 9, 2020), https://www.healthline.com/health/kambo; Ashley Harrell, *Why Californians Are Poisoning Themselves with Frog Toxins*, SFGate (Aug. 8, 2023) https://www.sfgate.com/bayarea/article/californians-poisoning-frog-toxins-kambo-ceremony-18282817.php; Joe Hinchcliffe, *New Witnesses Offer Fresh Information into 'Kambo' Death at Northern NSW Spiritual Retreat*, GUARDIAN (Feb. 19, 2024), https://www.theguardian.com/australia-news/2024/feb/20/jarrad-antonovich-ayahuasca-kambo-death-nsw-retreat-kyogle-new-witnesses-inquest-paused.

10

### H.     **Interrogatory 11**

Rog 11: Please identify any and all instances of AYA hosting Kambo ceremonies. For each instance of a Kambo ceremony, please identify:
  a. The date and location of each and every instance in which you held a ceremony;
  b. How kambo was brewed, distributed, consumed, destroyed/disposed of, or otherwise present;
  c. How AYA acquired kambo, including any potential supplier or importer;
  d. Any other substance consumed by any person or offered for consumption, including whether ayahuasca was taken in conjunction with kambo;
  e. Who was present at the ceremony;
  f. Who was responsible for handling any substances consumed by any person or offered for consumption; and
  g. Who served in a leadership role and/or position of authority at the ceremony (e.g., Minister of the Assembly, "lead facilitator," other facilitator).

Plaintiffs' Response:
(a-d) Objections: Irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case. Plaintiffs will stand on the said objections.

(e-g) Objections: Irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case. Requires a compilation of information that can be provided only by revealing the contents of papers as to which AYA's correspondents have a reasonable expectation of privacy, that are protected from disclosure by the warrant requirement of the Fourth Amendment, and that Plaintiffs have no authority to consent to disclose. Invades the First Amendment free speech rights of AYA's correspondents, encroaching on promises of confidentiality AYA has made to AYA's correspondents. Invades the confidentiality of medical records (ARS § 12-2292). Violates AYA's right under the Establishment Clause to be free of government process probing internal church activities. Colo. Christian Univ. v. Weaver, 534 F.3d 1245, 1264 (10th Cir. 2008)(state regulatory scheme demanding disclosure of church's expenditures unconstitutional), quoting Surinach v. Pesquera De Busquets, 604 F.2d 73, 78 (1st Cir. 1979). Plaintiffs will stand on the said objections.

**Defendants' Position:**

Plaintiffs have refused to answer this interrogatory about the Kambo ceremonies it offers, claiming it is irrelevant and not proportionate to this case. But information relating to this topic is highly relevant: AYA itself holds out to the public as hosting two different kinds of ceremonies as part of their religious offerings to congregants: ayahuasca ceremonies and

11

"kambo ceremonies."[3] *See* Arizona Yage Assembly: Ceremonies, https://www.aya.guide/ceremonies (last visited Feb. 27, 2024). One of the two elements that Plaintiffs must prove as part of its prima facie RFRA case—and Defendants in turn are entitled to understand and evaluate—is its sincere religious beliefs. If AYA is a religious organization, and it offers two ceremonies as part of its practice, then Defendants seek to understand what, if any, religious links exist between the two ceremonies. How kambo fits into AYA's religious beliefs is relevant to this inquiry.

**Plaintiffs' Position:**

---

[3] For context, and as based on recent media reports, kambo ceremonies appear to involve ingesting the toxic secretions of a specific kind of frog. *See, e.g.*, Adrienne Santos-Longhurst, *What's the Deal with Kambo and Frog Medicine?*, HEALTHLINE (Jan. 9, 2020), https://www.healthline.com/health/kambo; Ashley Harrell, *Why Californians Are Poisoning Themselves with Frog Toxins*, SFGate (Aug. 8, 2023) https://www.sfgate.com/bayarea/article/californians-poisoning-frog-toxins-kambo-ceremony-18282817.php; Joe Hinchcliffe, *New Witnesses Offer Fresh Information into 'Kambo' Death at Northern NSW Spiritual Retreat*, GUARDIAN (Feb. 19, 2024), https://www.theguardian.com/australia-news/2024/feb/20/jarrad-antonovich-ayahuasca-kambo-death-nsw-retreat-kyogle-new-witnesses-inquest-paused.

### I. Interrogatory 12

Rog 12: describe AYA's corporate structure including each and every state in which AYA is incorporated, its corporate status, any officers, and any other related entities. Please identify any and all incorporation documents and state corporate filings.

Plaintiffs' Response: AYA was incorporated in: Arizona (Entity ID # 20126067)[;] California (Registry # 4231879)[;] Oregon (Registry # 1298470-91)[.] The remainder of the interrogatory seeks a compilation of publicly available information; accordingly, Plaintiffs respectfully direct the Defendants pursuant to Rule 33(d)(1) to the Arizona Corporation Commission website, the California Secretary of State website, and the Oregon Secretary of State website, where all documents from which the information may be compiled are available to the public.

**Defendants' Position:**

Plaintiffs refuse to describe AYA's corporate structure, status, officers, or related entities, and it also does not identify its corporate filings. Plaintiffs' sole objection is to invoke Federal Rule of Civil Procedure 33(d)(1), which states that "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and "if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:  (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Here, the burden of ascertaining the answer is plainly greater on Defendants than it is on Plaintiffs, who should have information about their own corporate status.  Even if that were not the case, the rule itself requires the answering party to specify the responsive records, which Plaintiffs have not attempted to do here.

**Plaintiffs' Position:**

**J.     Interrogatory 13**

Rog 13: Identify all churches, congregations, religions, denominations, religious organizations, sects, or spiritual organizations with which Mr. Stanley is or has been affiliated or involved in any way (including but not limited to employment, direction, management, advising, consulting, volunteering, membership, or participation in activities). Parent organizations, subsidiary organizations, and branches of a single organization are to be considered separate organizations for purposes of this interrogatory. For each group that you identify: a. Identify the group and describe the nature of Mr. Stanley's involvement, including providing the title(s) of any positions that he has held and describing the duties of each position.  b. Identify the time periods of Mr. Stanley's affiliation or involvement with the group.  c. State Mr. Stanley's beginning and ending (or current) salaries or compensation, if he received a salary or compensation.

Plaintiffs' Response: Plaintiffs object to this question as not proportional, and directed at obtaining information that would be of no evidentiary value to the Court in deciding any matter in dispute based upon the allegations of the Fifth Amended Complaint and the defendants' Answer (the "Pleadings"). Aside from Mr. Stanley's being the Founder of AYA, Plaintiffs have no further information to provide.

For each group that you identify: a. Identify the group and describe the nature of Mr. Stanley's involvement, including providing the title(s) of any positions that he has held and describing the duties of each position. Mr. Stanley is the Founder and Sole Director of the AYA Board. He has authority over all of the activities of AYA.

b. Identify the time periods of Mr. Stanley's affiliation or involvement with the group. Mr. Stanley formed AYA as an Arizona corporation on June 15, 2015, and has been the Founder and Director since that date. Plaintiffs object to providing any further response to this question because it is directed at obtaining information that would be of no evidentiary value to the Court in deciding any matter in dispute based upon the allegations of the Pleadings.

c. State Mr. Stanley's beginning and ending (or current) salaries or compensation, if he received a salary or compensation.

Plaintiffs object on the grounds that the Defendants seek information protected from disclosure by the First Amendment. "[I]n the sensitive area of First Amendment religious freedoms, the burden is upon the state to show that implementation of a regulatory scheme will not ultimately infringe upon and entangle it in the affairs of a religion to an extent which the Constitution will not countenance." Bangor Baptist Church v. Me., Dep't of Educ. & Cultural Servs., 549 F. Supp. 1208, 1221 (D. Me. 1982). Colo. Christian Univ. v. Weaver, 534 F.3d 1245, 1264 (10th Cir. 2008)(state regulatory scheme demanding disclosure of church's expenditures unconstitutional), quoting Surinach v. Pesquera De Busquets, 604 F.2d 73, 78 (1st Cir. 1979). Plaintiffs further that this question because it is directed at obtaining information that would be of no evidentiary value to the Court in deciding any matter in dispute based upon the allegations of the Pleadings.

Without waiver of the above objections, Plaintiffs respond that Plaintiff Stanley does

not receive a set salary from AYA.

**Defendants' Position:**

Plaintiffs' response to this interrogatory is unresponsive and insufficient. Plaintiff does not deny that Stanley has no other affiliations. Rather, he states that "Aside from Mr. Stanley's being the Founder of AYA, Plaintiffs have no further information to provide." That is unresponsive. If Stanley has no other affiliations, then he should deny that he has them and do so in clear terms. Otherwise, he must disclose them. The Court has already ordered Plaintiffs to provide similar information. *See, e.g.*, Dkt. No. 220, at 17 (Rog 23 ordering Plaintiffs to provide information relating to the "identity of every organization of which any of the Plaintiffs is a member" as "information [that] is relevant to whether these ayahuasca-related beliefs are genuine and religious in nature.") In addition, as to 13(c) above, specifically, "without waiver of [their] objections, Plaintiffs respond that Plaintiff Stanley does not receive a set salary from AYA." In so answering, Plaintiffs ignore the interrogatory, which called for Plaintiffs to "State Mr. Stanley's beginning and ending (or current) salaries or compensation, if he received a compensation." Plaintiffs should disclose whether there is any compensation (as opposed to a salary), or a salary that is not "set."

**Plaintiffs' Position:**

15

Dated: March 8, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*Lisa Newman*
Lisa Newman
Bonnie E. Devany
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

**Certification.**

Counsel for Defendants hereby certify that they have attempted to resolve the instant dispute through personal consultation and sincere effort in accordance with Rule 7.2(j) and the Rule 16 Scheduling Order. Defendants circulated a draft of the joint statement on March 1, 2024, at 11:48 AM E.T. That same day, Plaintiffs suggested the parties confer about the statement on Monday, March 4. During this conferral, however, Plaintiffs did not confer about the statement, and instead notified Defendants that they would be appealing the Court's Discovery Order, Dkt. No. 220, and filing a stay. On Tuesday, March 5, Defendants emailed Plaintiffs and asked whether they intended to respond to this Joint Statement. Defendants followed up again by email on Wednesday, March 6. Plaintiffs responded on Wednesday, March 6, stating that "Plaintiffs will perform their obligations and / or seek timely leave of Court to be excused from the same. I apologize that I am unable to respond further at this time, as the emergency being precipitated by the Court's Disclosure Order (Dkt. # 220) is requiring me to focus entirely on working with the clients and drafting papers related to the Appeal/Petition for Writ of Mandamus." Under the Court's order, "[r]esponses and positions for joint statements of discovery disputes shall be provided within five days of receipt of the joint statement." Dkt. No. 218. As of this filing, Plaintiffs have not provided their positions to this joint statement and did not provide their position within the 5-day period set by the Court. Thus, Defendants file this statement without Plaintiffs' positions included.