FILED _____ LODGED

RECEIVED _____ COPY

MAR 1 1 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

CASE NO. _____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

**IN RE ARIZONA YAGE ASSEMBLY AND
WINFIELD SCOTT STANLEY III,**

*Petitioner-Plaintiffs.*

_____

From the United States District Court

District of Arizona

Case No. 20-CV-02373-PHX-ROS

_____

**PETITION FOR WRIT OF MANDAMUS**

CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Circle
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

Counsel for Petitioners
Arizona Yagé Assembly and Winfield Scott Stanley III,

**Table of Contents**

CORPORATE DISCLOSURE STATEMENT.....................................................6

STATEMENT OF RELATED CASES................................................................7

STANDARD FOR MANDAMUS........................................................................8

RELIEF SOUGHT.............................................................................................9

FACTS..............................................................................................................10

    THE FEBRUARY 22, 2024 DISCLOSURE ORDER PRESENTS AN IMMEDIATE
    THREAT OF IRREPARABLE HARM TO THE FIRST AMENDMENT RIGHTS OF
    PETITIONERS ..................................................................................................10

    THE ORIGINS OF AYAHUASCA RELIGION AND A SHORT HISTORY OF AYA......15

    THE DISCOVERY DISPUTE THAT GAVE RISE TO THE DISCLOSURE ORDER......18

THE FIRST-AMENDMENT INFRINGING DISCOVERY DEMANDS:
ENUMERATED HERE AND RECITED IN FULL...........................................19

THE ROAD NOT TAKEN: THE CONSTITUTIONAL BALANCING TEST
UNDER *PERRY v. SCHWARZENNEGER*..........................................................23

THE DISTRICT COURT ISSUED AN IMPROVIDENT ORDER
PURSUANT TO A LONGSTANDING PRACTICE OF REFUSING TO
ADJUDICATE DISCOVERY MOTIONS, DEPRIVING LITIGANTS OF
RIGHTS PROVIDED TO ALL LITIGANTS UNDER THE FEDERAL
RULES ..............................................................................................................24

ARGUMENT....................................................................................................27

I. MANDAMUS IS NECESSARY TO PROTECT AYA AND ITS MINISTER SCOTT
STANLEY FROM IMMEDIATE IRREPARABLE HARM FROM SANCTIONS DIRECTED
AT INDUCING HIS DISCLOSURE OF THE IDENTITIES AND EMAILS OF AYA'S 5,239
CORRESPONDENTS...............................................................................................27

    A.  Petitioners Have No Other Means to Seek Review ...................................28

    B.  Petitioners Will be Irreparably Injured in a Way Not Correctable on
    Appeal...............................................................................................................29

    C.  The District Court Order is Clearly Erroneous.......................................30

    D.  The District Court's Order Manifests a Persistent Disregard of the
    Federal Rules....................................................................................................31

**E.  The District Court's Order Raises New and Important Problems or Issues of First Impression**.................................................................. 32

  **1.  This Court Must Apply the *Perry* Rule to RFRA Actions**.................... 32

  **2.  An Opinion Here Will Guide Counsel and the District Judges in Two Ayahuasca Church Lawsuits Now Pending in the Ninth Circuit, Where the Same Problems Will Require Guidance for Resolution** ........................ 33

  **3.  The Impending Compelled Exposure of the Emails of 5,239 of AYA's Correspondents Makes this an Appropriate Case for Urgent Action** ....... 35

**II.** ....................................... AN EMERGENCY STAY IS RESPECTFULLY REQUESTED .................................................................................................................. 35

**III.** ................................................................................................. CONCLUSION .................................................................................................................. 36

  **EXHIBIT LIST**.................................................................................... 37

## Table of Authorities

*Ariz. Yage Assembly v. Garland,*
595 F. Supp. 3d 869 (D. Ariz. 2022) ............................................................ 34, 35

*Ariz. Yage Assembly v. Garland, No. CV-20-02373-PHX-ROS,*
2023 U.S. Dist. LEXIS 78226 (D. Ariz. May 4, 2023) ..................................... 34

*AYA v. Barr I, Ariz. Yage Assembly v. Barr, No. 3:20-cv-03098-WHO,*
2020 U.S. Dist. LEXIS 172836 (N.D. Cal. Sep. 21, 2020) ............................... 34

*Bauman v. U.S. Dist. Ct.,*
557 F.2d 650 (9th Cir. 1977) ......................................................................... 9, 28

*Christensen v. U.S. Dist. Ct.,*
844 F.2d 694 (9th Cir. 1988) ............................................................................... 9

*Church of the Celestial Heart v. Garland, No. 1:23-cv-00545-SAB,*
2024 U.S. Dist. LEXIS 4606 ............................................................................... 34

*Church of the Celestial Heart v. Garland, No. 1:23-cv-00545-SAB,*
2024 U.S. Dist. LEXIS 4606 (E.D. Cal. Jan. 9, 2024) ...................................... 34

*Considering Mohawk Indus. v. Carpenter,*
558 U.S. 100, 130 S. Ct. 599 (2009) ................................................................. 30

*Dishon v. Gorham, No. CV-16-04069-PHX-ROS,*
2018 U.S. Dist. LEXIS 180502 (D. Ariz. Oct. 19, 2018) .......................... 26, 32

*Dispute Rule in Steigleman v. Symetra Life Ins. Co., No. CV-19-08060-PCT-ROS,*
23 U.S. Dist. LEXIS 10264 (D. Ariz. Jan. 20, and 2023) ........................... 25-26

*in Church of the Holy Light of the Queen v. Mukasey*
Church of the Holy Light of the Queen v. Mukasey, 615 F.Supp.2d 1210
(Oregon, 2009) ................................................................................................. 17

*NAACP v. Ala. ex rel. Patterson,*
357 U.S. 449, 78 S. Ct. 1163 (1958) ........................................................... 14, 31

*NAACP v. Alabama,*
375 U.S. ............................................................................................................. 31

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress, No. 15-cv-03522-WHO,*
2015 U.S. Dist. LEXIS 192788 (N.D. Cal. Nov. 20, 2015) ........................ 24-25

*Perry v. Schwarzenegger,*
591 F.3d 1147 (9th Cir. 2010) .............. 6, 9, 10, 14, 15-16, 28, 29, 30, 33, 35, 37

*Perry v. Schwarzenneger,*
519 F.3d 1147 (9th Cir. 2010) ........................................................................ 12

*Perry, supra* ...................................................................................... 24, 30

*Recently in Ams. for Prosperity Found. v. Bonta,*
141 S. Ct. 2373 (2021) ...................................................................... 31

*Steigleman v. Symetra Life Ins. Co., No. CV-19-08060-PCT-ROS,*
23 U.S. Dist. LEXIS 10264 (D. Ariz. Jan. 20, and 2023) .................................. 32

*Surinach v. Pesquera De Busquets,* 604 F.2d 73 (1st Cir. 1979) ........................... 26

*Northern District of California in Nat'l Abortion Fed'n v. Ctr. for Med. Progress,*
No. 15-cv-03522-WHO, 2015 U.S. Dist. LEXIS 192788 (N.D. Cal. Nov. 20, 2015)
.................................................................................................................... 32

*Valenzuela-Gomez v. United States District Court,* 915 F.2d 1276 (9th Cir. 1990)
.................................................................................................................... 13, 33

*Valenzuela-Gomez, supra* ................................................................. 14, 33

*Gonzales v. O Centro Beneficente Uniao do Vegetal,* 546 U.S. 418 (2006) .......... 17

28 U.S.C. § 1651 ...................................................................................... 6, 30

28 U.S.C. § 2201-2202 ........................................................................... 19

42 U.S.C. § 2000bb-1 ............................................................................. 19

Rule 21-3 ..................................................................................................... 7

Rule 26 ....................................................................................................... 26

Rule 83 ....................................................................................................... 32

Rules 26 – 37 .............................................................................................. 28

F.R.Civ.P. Rule 37 ..................................................................................... 12

F.R.Civ.P. Rule 83 ..................................................................................... 13

Fed. R. App. P. 21 ...................................................................................... 6

Federal Rule of Appellate Procedure 26.1 ................................................. 7

Federal Rules of Civil Procedure 26, 30, 33, 34 .......................... 6, 10, 37

## PETITION FOR WRIT OF MANDAMUS

Pursuant to 28 U.S.C. § 1651 and Fed. R. App. P. 21, the above-captioned

Petitioners hereby petition for a writ of mandamus directed to the United States

District Court for the District of Arizona, Silver, R., granting the following relief:

1. Vacating those provisions of a discovery order (the "Disclosure Order"; Exhibit

1; Dkt. # 220) entered in *Arizona Yage Assembly v. Garland*, Case No. 2:20-cv-

02373-ROS-PHX (the "District Court action") that compel Petitioners, Arizona

Yage Assembly ("AYA") and its minister, Winfield Scott Stanley III to disclose

the identities of 5,239 members, donors and other email correspondents, to produce

tens of thousands of church emails with members and donors, to produce records

of ceremonial attendance, donations, and internal deliberations;

2. Instructing the District Court to apply the "exacting scrutiny" and "heightened

relevance" standard required by *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161

(9th Cir. 2010) to future claims of First Amendment privilege; and,

3. Directing the District Court to allow all parties in the District Court action to

file discovery motions as permitted by Federal Rules of Civil Procedure 26, 30, 33,

34, and 36.

Petitioners further request:

4. An Emergency Stay of the Disclosure Order (Exhibit 1; Dkt. # 220) as it applies

to the compelled disclosure and production of First Amendment privileged

information and documents requested in the eight (8) Interrogatories and seven (7)

Requests for Production that are listed in paragraph 27 of the herein petition.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 21-3 and Federal Rule of Appellate Procedure 26.1,
Petitioner Arizona Yage Assembly, discloses that no corporation holds any stock
in Arizona Yage Assembly.


Dated: March 8, 2024                        CHARLES CARREON
                                            /s/Charles Carreon
                                            CHARLES CARREON (127139)
                                            Attorney for Petitioners
                                            Arizona Yagé Assembly,
                                            Winfield Scott Stanley III

6

## STATEMENT OF RELATED CASES

A direct appeal has been taken from the Disclosure Order, but counsel has not yet received the assigned appellate case number 24-1385.  The Notice of Appeal was filed as Docket # 221, Exhibit 10 hereto.

## STANDARD FOR MANDAMUS

"The writ of mandamus is a drastic and extraordinary remedy reserved for really extraordinary causes." [Citations.] "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." [Citations'] In considering whether to grant a writ of mandamus, we are guided by the five factors identified in *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650 (9th Cir. 1977):

> (1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief;
>
> (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal;
>
> (3) whether the district court's order is clearly erroneous as a matter of law;
>
> (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and
>
> (5) whether the district court's order raises new and important problems or issues of first impression."

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) (citing Bauman, 557 F.2d at 654-55). "All factors are not relevant in every case and the factors may point in different directions in any one case." *Christensen v. U.S. Dist. Ct.*, 844 F.2d 694, 697 (9th Cir. 1988).

## RELIEF SOUGHT

Petitioners request a writ:

1. Vacating the "Disclosure Order" entered in District Court action that compels Petitioners to disclose the identities of 5,239 members, donors and other email correspondents, to produce tens of thousands of church emails with members and donors, to produce records of ceremonial attendance, donations, and internal deliberations;

2. Instructing the District Court to apply the "exacting scrutiny" and "heightened relevance" standard required by *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010) to future claims of First Amendment privilege; and,

3. Directing the District Court to allow all parties in the District Court action to file discovery motions as permitted by Federal Rules of Civil Procedure 26, 30, 33, 34, and 36.

Petitioners further request:

4. An Emergency Stay of the Disclosure Order (Exhibit 1; Dkt. # 220) as it applies to the compelled disclosure and production of First Amendment privileged information and documents requested in the eight (8) Interrogatories and seven (7) Requests for Production that are listed in paragraph 27 of the herein petition.

## FACTS

### THE FEBRUARY 22, 2024 DISCLOSURE ORDER PRESENTS AN IMMEDIATE THREAT OF IRREPARABLE HARM TO THE FIRST AMENDMENT RIGHTS OF PETITIONERS

1.      This petition requests the Court to vacate the Disclosure Order issued by the District Court on February 22, 2024. (Dkt. # 220; Exhibit 1)  The Disclosure Order directs Petitioners Arizona Yage Assembly and its minister, Winfield Scott Stanley III ("AYA" and "Stanley;" jointly "Petitioners") to provide complete responses, *inter alia*, to seven (7) interrogatories and seven (7) requests for production ("RFPs"), which are enumerated and recited in full at paragraph 27 hereinbelow. (Dkt. # 220, Exhibit 1.)

2.      Complying with the Disclosure Order would require Petitioner to disclose the "*identities of no less than 5,239 people ... tens of thousands of emails discussing religious matters* ... thousands of pieces of reputationally damaging information ... records of private, personal activity, and records of donations and ceremonial contributions made with the understanding that donors and contributors would remain secret." (Exhibit 2, Stanley Dec. ¶ 3, emphasis added.)  The persons whose identities and other information are subject to compelled disclosure are referred to herein as "Petitioners' Correspondents."  The compliance date for the Disclosure Order is March 8, 2024. (Exhibit 1, Dkt. # 220; 20:19-21.)

3.      Petitioner Stanley explained the harm that would flow from enforcement of the Disclosure Order:

"If [Petitioners] were to disclose such information and documents, we would be breaching the trust and confidence our congregation has placed in us.  As a result of that breach, irreparable injuries would occur immediately, including:

a.  Severe reputational damage to AYA and myself;

10

b. Injury to the mood and tenor of reverential practice;

c. Membership withdrawal;

d. Discouragement of new members from joining or participating in ceremony;

e. Injury to the congregational mindset, undermining the ability to communicate freely with AYA staff, both in and out of ceremony;

f. Injury to the congregational mindset for communicating with other members;

g. Discontinuance of donations; and,

h. Decline in attendance at ceremonies."

(Exhibit 2; Stanley Dec. ¶ 4; Dkt. # 222-5.)

4.       These are precisely the types of irreparable injuries to a religious or political organization that warrant issuance of a protective order via writ of mandamus. *Perry v. Schwarzenneger*, 519 F.3d 1147 (9th Cir. 2010)(issuing writ directing district court to enter protective order barring disclosure of political party internal communications in response to discovery demand from adverse party in civil action).

5.       The Disclosure Order (Dkt. # 220) was entered against Petitioners without a motion under F.R.Civ.P. Rule 37(3)(B), that requires a party "seeking discovery [to] move for an order compelling an answer, designation, production, or inspection." The source of authority for the procedure the District Court applied was its own rule, entitled "Discovery Disputes," (Exhibit 3, the "Dispute Rule"), that provides "If unable to resolve a discovery dispute, *do not file a motion unless directed by the Court*." Instead, the parties are to "file and e-mail to chambers … *a joint statement of the dispute … not to exceed 14 lines per issue for each party* unless an enlargement has been approved by the Court." (Emphasis added.) The District Court authority to issue discovery orders derives from the Federal Rules, and to be the product of a proper exercise of discretion, an order must be rendered

11

by way of a procedure authorized by the Federal Rules. No federal rule authorizes the 14-line per issue procedure the District Judge used to issue the Disclosure Order; accordingly, issuance of the Disclosure Order was an abuse of discretion that deprived Petitioners of an opportunity to be heard, in violation of the Fourteenth Amendment due process clause.

6.      The District Court exceeded its authority under F.R.Civ.P. Rule 83 to issue chambers rules when it outright eliminated rights granted by the drafters of the Federal Rules of Civil Procedure. *Valenzuela-Gomez v. United States District Court*, 915 F.2d 1276 (9th Cir. 1990)(writ issued to prevent video-arraignment of federal defendant pursuant to General Order that violated Rules of Criminal Procedure 10 and 43, requiring in-person appearance). The Court's Dispute Rule bars all discovery motions, restricting argument concerning each interrogatory or document request to 14 lines – around 188 words, as the word count for an average half-page of legal writing in 13-point type.

7.      The Dispute Rule left Petitioners to allocate their fourteen lines per issue to either facts or law, and they generally chose to emphasize the law. Thus, the District Court's Dispute Rule imposed draconian restrictions on argument, and effectively blocked all factual presentation. The District Court's Dispute Rule eliminates the right to file motions, a right expressly provided by the Federal Rules, and eliminates the right to a reasoned decision that is the product of an adequate factual record, an adequate record of legal argument, and sufficient deliberation. The Dispute Rule allowed the District Court to proceed with excessive speed and insufficient deliberation, and the result has been a calamitous decision. A writ should issue to remedy an injury that arises from the institutionalization of a procedure that deprives litigants of the rights accorded them by the drafters of the Federal Rules. *See, Valenzuela-Gomez, supra.*

8.      The District Court entirely misunderstood the applicable law, and thus committed clear error. In the Ninth Circuit, district courts must apply "exacting

scrutiny" to interrogatories and RFPs that have "the practical effect of discouraging the exercise of constitutionally protected political rights ... have a chilling effect on, and therefore, infringe, the exercise of fundamental rights." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010).

9.     The risk of associational injury from the disclosure of member and donor lists is well known and easily apparent from the surface of the dispute.  And the District Court was quite familiar with the nature of AYA's activities, as reflected in the order denying the Defendants' motion to dismiss the Fifth Amended Complaint.  (Exhibit 5; Dkt. # 183.)  Therefore, the District Court knew it was adjudicating a matter involving a church that uses Ayahuasca, and that Petitioners' association with AYA's Correspondents would be damaged if AYA disclosed their identities, emails, donations, and ceremonial attendance data to the DEA, DHS and CBP.  The chilling effect on freedom of association is obvious.  As the Supreme Court stated in a historic free-association decision: "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958).

10.     Despite the clear indications that Petitioners' invocation of First Amendment Privilege was legitimate, the District Court ruled without explanatory discussion that "the First Amendment Free Exercise and Establishment Clauses do not establish any privilege applicable to the civil discovery sought by Defendants." (Order 220, 3:3-4.)

11.     The District Court's Dispute Rule also aborted factual presentation. There was simply no room on the page for Petitioners to articulate objections, precedent, and facts. Thus, the Court blocked its own access to facts establishing that irreparable harm to Petitioners' First Amendment rights is certain to result from enforcement of the Disclosure Order.

12.     After entry of the Disclosure Order, in his declaration in support of Petitioners' motion to stay pending appeal, Stanley explained the harm that would flow from enforcement of the Disclosure Order:

"If [Petitioners] were to disclose such information and documents, we would be breaching the trust and confidence our congregation has placed in us.  As a result of that breach, irreparable injuries would occur immediately, including:

    i.  Severe reputational damage to AYA and myself;

    j.  Injury to the mood and tenor of reverential practice;

    k.  Membership withdrawal;

    l.  Discouragement of new members from joining or participating in ceremony;

    m. Injury to the congregational mindset, undermining the ability to communicate freely with AYA staff, both in and out of ceremony;

    n.  Injury to the congregational mindset for communicating with other members;

    o.  Discontinuance of donations; and,

    p.  Decline in attendance at ceremonies."

(Exhibit 2; Stanley Dec. ¶ 4; Dkt. # 222-5.)

**13.**     As further discussed hereinbelow, these entirely foreseeable harms to AYA and Stanley are precisely the types of irreparable injuries to religious or political organizations that warrant issuing a writ of mandamus directing the District Court to enter a protective order. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010) (writ issued directing district court to grant a protective order barring the disclosure of proponents' internal campaign communications relating to campaign strategy and advertising).

### THE ORIGINS OF AYAHUASCA RELIGION AND A SHORT HISTORY OF AYA

14. Ayahuasca is an herbal tea created by boiling and steeping two plants that grow in the Amazonian jungles. It is pharmacologically active, and contains a small amount Dimethyltryptamine, a Schedule I controlled substance. The religious use of Ayahuasca has been extensively studied, and the declaration of Petitioner's expert witness Dr. Paulo Barbosa, Adjunct Professor at the University of Ilheus, Brazil, sets forth a summary of the peer reviewed science regarding religious use of Ayahuasca. Dr. Barbosa states, in essence:

      a. Ayahuasca does not adversely affect the physical health of religious Ayahuasca users. (Exhibit 6; Barbosa Opinion Letter, page 05.)

      b. Ayahuasca in the religious context does not serve as a drug of abuse or stimulate abuse of other drugs. (Exhibit 6; Barbosa Opinion Letter, page 05.)

      c. Ayahuasca does not adversely affect the mental health of ceremonial Ayahuasca users. (Exhibit 6; Barbosa Opinion Letter, page 08.)

      d. Ayahuasca does not have adverse effects on cognitive function. (Exhibit 6; Barbosa Opinion Letter, page 09.)

      e. Ayahuasca and dimethyltryptamine have substantially different effects. Dimethyltryptamine is not active orally, but when injected has effects for about half an hour; whereas, Ayahuasca is drunk as a tea, has slow, progressive effects, and produces a 4-6 hour experience. (Exhibit 6; Barbosa Opinion Letter, page 05.)

15. Ayahuasca religion arose in the Amazonian regions now called Peru, Brazil, Colombia, Bolivia, Ecuador, and other South American countries where indigenous people have maintained traditions of visionary worship and medicinal practice since long before the conquest by European colonizers in the sixteenth and seventeenth centuries. Radiocarbon dating of "a documented case of a ritual bundle containing both harmine and dimethyltryptamine, the two primary

ingredients of ayahuasca" estimates the bundle to be 1,000 years old.[1]  The bundle was found at a level of 3,900 meters in the Lipez Altiplano of southwestern Bolivia in an area showing evidence of human occupations for the last 4,000 years.

16. There are no laws forbidding the use of Ayahuasca in Peru, where Stanley began drinking in ceremony with Eladio Melendez Garcia, following his introduction to Ayahuasca ceremonies in 2009.  After many trips to the jungle to sit in ceremony, Stanley felt religiously inspired to share Ayahuasca in ceremony with his American peers, and began holding ceremonies in the United States.

17. Interest in Ayahuasca religion in the United States has grown continuously since the publication of a unanimous 2006 Supreme Court decision in the seminal RFRA case of *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), holding a Brazilian church's sacramental use of Ayahuasca to be an act of First Amendment free exercise, and holding that visionary churches can file RFRA claims to enjoin the DEA from prosecuting their members and seizing their Ayahuasca sacrament.  The decision of the Oregon District Court in *Church of the Holy Light of the Queen v. Mukasey*, 615 F.Supp.2d 1210 (Oregon, 2009), recognizing the rights of a second church to receive a RFRA exemption from the Controlled Substances Act for the use of ceremonial Ayahuasca, further stimulated interest in Ayahuasca religion in the United States.

18. Ayahuasca is considered a controlled substance because it contains a small amount of dimethyltryptamine, but these are two very different psychoactive substances, and of the two, ayahuasca is far more amenable to conscious control. As Petitioners' expert Dr. Barbosa has opined: "Ayahuasca is essentially an herbal tea that often induces nausea and vomiting due to its organoleptic and serotonergic characteristics. Other physical effects include mild rises in blood pressure and heart rate. The psychoactive effects begin slowly after a 45-minute period of onset,

---

[1] Chemical evidence for the use of multiple psychotropic plants in a 1,000-year-old ritual bundle from South America; https://www.pnas.org/doi/10.1073/pnas.1902174116

and end within approximately six hours. ***Ayahuasca consumed in a religious context is not being used as a drug of abuse, nor does the religious use of ayahuasca lead to the abuse of other drugs; instead, religious ayahuasca users generally abandon abuse of alcohol after they become members of an ayahuasca church***. These data are backed up by pre-clinical evidence indicating that ayahuasca blocks many abuse-related behavioral effects of drugs of abuse." (Exhibit 6; Barbosa Opinion Letter, page 10, emphasis added.)

19. AYA's congregation was organized as an Arizona nonprofit corporation with Stanley as Director in 2015, and has held ceremonies every two weeks since January 14, 2022 in its ceremonial "Maloka," a circular temple in the desert on the outskirts of Tucson, Arizona. Ceremonies are based around the sharing of Ayahuasca in a sober atmosphere where Stanley and other AYA facilitators lead the congregation in the practice of visionary communion.

20. A lead facilitator administers the ceremony, that begins with cleansing the ceremonial space, prayer and the invocations of positive intentions, and leads into a supervised administration of small amounts of Ayahuasca tea. The "medicina," is it is traditionally known, facilitates an experience of Divine communion in which the deepest concerns in a person's life are explored, and seen in new perspectives.

21. As a matter of doctrinal belief, AYA believes that each person who sits in ceremony becomes a member of the church by the operation of the spirit. Living this belief as a congregation, AYA has grown to have a large number of members.

22. AYA's data system for managing attendance at AYA ceremonies relies on website submissions, telephone, and email communications. Thus, the names of AYA members, their email addresses, phone numbers and text messages, emails exchanged with AYA, and confidential medical and personal information, is in the custody of AYA. Additionally, there are AYA donors and other persons with whom AYA has correspondence, including scientists conducting studies of AYA

members. Compliance with the Disclosure Order means disclosing all of their identities and all of their correspondence.

### THE DISCOVERY DISPUTE THAT GAVE RISE TO THE DISCLOSURE ORDER

23.     Petitioners began the litigation portion of this journey on May 5, 2020, when AYA filed the original Complaint for injunctive relief under 42 U.S.C. § 2000bb-1(c), the Religious Freedom Restoration Act ("RFRA") and the Declaratory Judgment Act 28 U.S.C. § 2201-2202. However, it was not until May 4, 2023 that the Court adjudicated the last motion to dismiss filed by the defendant federal agencies – DOJ, DHS, DEA, and CBP – finding that Petitioners had pled a viable claim for relief under RFRA. (Order, Dkt. # 183; Exhibit 5.)

24.     The District Court found Petitioners had pled a viable claim for relief under RFRA, seeking "a declaration and injunction providing that their 'importation, use, possession, or transportation of Ayahuasca for bona fide religious use in Visionary Communion is lawful *ab initio*, and not a violation of the [Controlled Substances Act]....'" (Dkt. # 183, Exhibit 4, 3:7-9.) The District Court found standing to sue based upon DHS seizures of AYA's Ayahuasca in Customs, and AYA's "plans to continue to hold bi-monthly meetings … for the foreseeable future." (Dkt. # 183, Exhibit 4, 6:6-17 and 5:10-12.)

25.     On January 16, 2024, this Court issued its Amended Scheduling Order (Dkt. # 207), setting a March 8, 2024 deadline for substantial completion of fact discovery, a June 27, 2024 deadline for close of fact discovery, a November 14, 2024 deadline for close of expert discovery, and a January 17, 2024 deadline for filing dispositive motions.

26.     On September 1, 2023, Defendants propounded  a first set of interrogatories and a first set of RFPs (the "Defendants' Demands"), attached hereto as Exhibits 7 and 8, respectively.

## THE FIRST-AMENDMENT INFRINGING DISCOVERY DEMANDS: ENUMERATED HERE AND RECITED IN FULL

27.     The discovery demands quoted below infringed the First Amendment associational rights of Petitioners, by demanding exposure of the identities and personal religious communications with Petitioners' Correspondents, infringing and chilling Petitioner's First Amendment free exercise, free religious speech, and freedom of association:

- a. Interrogatory No. 4: Identify each and every person who has attended or participated in, or who has requested to attend or participate in, one of your ceremonies. For each person identified, indicate when the person attended or participated, or requested to attend or participate; whether the person was permitted to attend or participate and any explanation as to why or why not the person was permitted to attend or participate; and how many times the person has attended or participated in one of your ceremonies.

- b. Interrogatory No. 10: Identify the date and location of each and every instance in which you held a ceremony, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. For each and every instance identified, indicate every substance consumed by any person or offered for consumption, who was present at the ceremony, who was responsible for handling any substances consumed by any person or offered for consumption, and who served in a leadership role and/or position of authority at the ceremony (e.g., Minister of the Assembly, "lead facilitator," other facilitator).

- c. Interrogatory No. 11: Identify each and every instance in which you have stored, prepared, stored, distributed, dispensed, obtained, imported, exported, destroyed/disposed of, transported, transferred to

19

another person, or otherwise handled ayahuasca. For each instance identified, indicate when the activity occurred, any and all persons involved in the activity, including any senders and/or recipients, and any steps you required the person or persons to take to be granted permission to perform the activity (including, but not limited to, training, background check, use of key or code).

d. Interrogatory No. 16:  Identify each and every one of the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback."16 For each individual identified, describe the "knowledge and feedback" sought or shared.

e. Interrogatory No. 18:  Identify each and every person who wrote, edited, reviewed, commented on, or otherwise received a draft of the documents attached to your original motion for a preliminary injunction in this case, Dkt. No. 33: "AYA Tenets and Precepts"17; "Ceremonial Instructions"18; "Code of Ethics"19; the questionnaire filed in this case as DKT. No. 33-6; and the confirmation letter filed in this case as Dkt. No. 33-7.

f. Interrogatory No. 20:  Identify each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies. For each instance identified, please provide the amount received, the date received, and the purpose of payment, donation, or other contribution.

g. Interrogatory 21:  For each document used at your ceremonies or trainings, or that you otherwise intend to rely upon to demonstrate the existence of what you allege are your "sincerely held religious beliefs and practices," identify each and every person who wrote, edited,

20

reviewed, commented on, or otherwise received drafts of the document.

h. Interrogatory 23: Identify each and every organization or association of which AYA or one of the named Plaintiffs is a member, or have requested to be a member. For each organization or association identified, indicate when AYA or one of the named Plaintiffs first requested to become a member, how long AYA or one of the named Plaintiffs has been a member, whether AYA or one of the named Plaintiffs pays dues or anything else of value to the organization or association, and any individuals at the organization or association with whom AYA or one of the named Plaintiffs communicates or has communicated.

i. RFP 7: Produce any and all documents that contain communications with any and all individuals who are members of AYA relating to membership in AYA, your ceremonies, and your tenets and beliefs.

j. RFP 8: Produce any and all copies of the "AYA attendee roster."

k. RFP 11:       Produce any and all documents that contain communications with any and all individuals who have facilitated, participated in, requested to participate in, or attended one or more of your ceremonies. This request includes, but is not limited to, any and all communications sent to or from prospective or actual ceremony participants, including copies of the questionnaire filed in this case as Dkt. No. 33-6 in any state of completion as well as any communications with prospective or actual participants regarding ceremony logistics (time, place, etc.), ceremony eligibility (questions from prospective participants about eligibility, explanations from you about eligibility to participate, etc.), and other ceremony- or ayahuasca-related inquiries.

21

l.  RFP 12: Produce any and all documents regarding or relating to your ceremonies, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. This request includes, but is not limited to, any and all documents regarding or relating to the location, time, set and setting, duration, frequency, format, cost, payment, advertising, and attendance of your ceremonies, as well as post-ceremonial integration.

m. RFP 13: Produce any and all documents regarding or relating to each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies.

n.  RFP 20: Produce any and all communications to or from any and all individuals who have been involved in the storage, preparation, security, distribution, dispensing, obtaining, importing, exporting, destroying/disposing, transporting, transferring to another person, or otherwise handling of ayahuasca.

o.  RFP 21: Produce any and all documents that identify, describe, refer to, or contain communications to or from any and all individuals from whom you seek guidance or consultation, whether or not within your organization, including, but not limited to, the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback," as well as and any association of psychedelic churches.

28.    Petitioners timely served responses to the Defendants' Demands with objections on associational, privacy, priest-penitent privilege, and First Amendment privilege objections. Defendants requested supplemental responses, and Petitioners provided supplemental responses. However, Defendants continued

to press for materials that are subject to Constitutional privilege, and initiated the joint statement procedure that is the only means for adjudicating discovery disputes under the District Court's Dispute Rule (Exhibit 3.)

## THE ROAD NOT TAKEN: THE CONSTITUTIONAL BALANCING TEST UNDER *PERRY v. SCHWARZENNEGER*

29.  In the Disclosure Order, the District Court claimed that the Protective Order entered nullified any claim of prejudice that Petitioners might raise. (Exhibit 1; Dkt. # 220, 2:17-18; 5:11-13; 6:13; 7:3.)

30.  Plaintiffs raised their claim of First Amendment Privilege and burden in the Joint Statement the parties submitted in compliance with the Court's Discovery Rule. The Court, however, concluded the First Amendment had nothing to do with civil discovery. In this, the Court clearly erred. The procedure to follow when First Amendment privilege claims are raised in response to civil discovery demands was drawn in hornbook fashion from *Perry, supra*, in an opinion from the Northern District of California:

> *First, the party asserting the privilege must make a "prima facie showing" of "arguable first amendment infringement," demonstrating that enforcement of the discovery requests will result in: (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or "chilling" of members' associational rights.* \*\*\*
>
> *At the second step, the "analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need …[t]he question is therefore whether the party seeking the discovery 'has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.'"*
> Nat'l Abortion Fed'n v. Ctr. for Med. Progress, No. 15-cv-03522-WHO, 2015 U.S. Dist. LEXIS 192788, at \*6-7 (N.D. Cal. Nov. 20, 2015) (emphasis added), *quoting Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010), *quoting NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 463, 78 S. Ct. 1163, 1172 (1958).

33. In support of this "exacting scrutiny" standard, the *Perry* opinion cited, in footnote 4, four Supreme Court cases protecting membership lists in political parties from compelled disclosure to government agencies:

> *NAACP*, 357 U.S. at 461-64 (prohibiting the compelled disclosure of the NAACP membership lists); *Bates v. City of Little Rock*, 361 U.S. 516, 525-27, 80 S. Ct. 412, 4 L. Ed. 2d 480 (1960) (same); *DeGregory v. Attorney Gen*., 383 U.S. 825, 828-30, 86 S. Ct. 1148, 16 L. Ed. 2d 292 (1966) (prohibiting the state from compelling defendant to discuss his association with the Communist Party); *Buckley v. Valeo*, 424 U.S. at 63-74 (recognizing the burden but upholding the compelled disclosure of campaign contributor information under the "exacting scrutiny" standard).
> *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 n.4 (9th Cir. 2010)

31. However, applying the Dispute Rule, the District Court screened itself off from accurate First Amendment doctrine and eliminated factual inquiries from its discovery adjudication practice. Accordingly, it failed to subject the Defendants' Demands to "exacting scrutiny," performed no inquiry into the how those demands "impact First Amendment associational rights," and issued an improvident Disclosure Order that grossly burdens Petitioners' fundamental rights of free association and invades the First Amendment Privilege for church communications and internal deliberations.

## THE DISTRICT COURT ISSUED AN IMPROVIDENT ORDER PURSUANT TO A LONGSTANDING PRACTICE OF REFUSING TO ADJUDICATE DISCOVERY MOTIONS, DEPRIVING LITIGANTS OF RIGHTS PROVIDED TO ALL LITIGANTS UNDER THE FEDERAL RULES

32. The District Court has previously expressed its displeasure with parties that attempted to circumvent the Dispute Rule in *Steigleman v. Symetra Life Ins. Co.*, No. CV-19-08060-PCT-ROS, 2023 U.S. Dist. LEXIS 10264 (D. Ariz. Jan. 20, and 2023) (motion for protective order "was procedurally improper and could be denied on that basis alone") and *Dishon v. Gorham*, No. CV-16-04069-PHX-ROS, 2018 U.S. Dist. LEXIS 180502 (D. Ariz. Oct. 19, 2018) (because "the

Court has given Defendants an opportunity to clarify and explain in a joint statement, [and] Defendants failed to do so, all of Defendants' objections to interrogatories have been waived. Defendants are ordered to respond substantively to each interrogatory "separately and fully in writing under oath.").

33.      Having researched the District Court's history in administering the Dispute Rule, and wishing to accord with the judge's predilections in the expectation of receiving a fair adjudication despite the constrained dimensions for argument, Petitioners were scrupulous about adhering to the Dispute Rule. Alas, the slender briefing allowed by the Dispute Rule turned grievously to Petitioners' disadvantage.

34.      Because a straightforward motion for protective order under Rule 26 was not available, in order to avoid duplicative joint statements on the same issue, Petitioners cooperated with Defendants to file a single Joint Statement that addressed a total of forty of Defendants' Demands on February 12, 2024. (Exhibit 9; Dkt. # 219.)

35.      In their opening 14-line statement, Petitioners stated: "Plaintiffs' custody of emails and private communications with AYA members and other AYA correspondents does not provide Plaintiffs with authority to consent to Defendants' search of correspondents' papers protected by Fourth Amendment warrant requirement. Defendants' inquiries and demands are also constrained by the First Amendment." *Surinach v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir. 1979)." Throughout the joint statement, Petitioners repeatedly voice objection based on privacy and the burden upon the church's association with its congregation, donors, and all of Petitioners' Correspondents.

36. Notwithstanding Petitioners' clear assertion of First Amendment Privilege, the Disclosure Order (Dkt. # 220) orders Petitioners to answer all of the interrogatories and produce documents responsive to all of the RFPs in Defendants' Demands by March 8, 2024, on pain of issue and monetary sanctions.

Producing the information and documents required by the Disclosure Order will, in summary, require disclosing and producing:

       a. *The identities and email addresses of 5,239 people who communicated with Petitioners for religious reasons, i.e., to attend ceremony, request and receive advice, and other private matters;* [2]

       b. *Tens of thousands of emails discussing religious matters;*

       c. *Thousands of pieces of reputationally damaging information;*

       d. *Records of private, personal activity; and*

       e. *Records of donations and ceremonial contributions made with the understanding that donors and contributors would remain secret.*

       (Exhibit 2; Stanley Dec. ¶ 3.)

    37.    Petitioner Stanley shared the plight that the Defendants' Demands and the Disclosure Order have visited upon his church:

"Due to the pending discovery demands … and my efforts to respond to the deep disclosures they demand, I have been managing a crisis within our church staff, as a result of them feeling threatened by the impending release of their names to Federal authorities. \*\*\* How can I, in good conscience, comply with those requirements of the Disclosure Order (Dkt. # 220) that would require me to betray my religious commitment to the AYA congregation and reveal private intra-church communications in an effort to avoid punishment by the Court?"

(Exhibit 2, Stanley Dec. ¶¶ 6 and 8; Dkt. # 222.)

38. This is precisely the type of harm that cannot be effectively remedied by review after judgment on appeal.  Accordingly, the *Perry* court recognized the importance of unambiguously opening the path to mandamus for such important cases, to avoid First Amendment associational harms that cannot be remedied.

---

[2] There are 5,239 email recipients in AYA's current email address list.

Petitioners respectfully submit that result for this petition should be the same as that in *Perry*: "Proponents have made a prima facie showing of [First Amendment] infringement. Plaintiffs have not shown the requisite need for the information sought. The district court shall enter a protective order consistent with this opinion." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1165 (9th Cir. 2010).

39.Finally, future discovery disputes in the District Court must not adjudicated by application of the Dispute Rule, that in a case like this one, filled with Constitutional nuances, serves as a Procrustean bed that truncates discussion of facts and law, and in this case, the First Amendment rights of Petitioners. Accordingly, Petitioners request that this Court direct the District Court to allow the parties to file all motions provided for under the Federal Rules of Civil Procedure pertaining to discovery, *i.e.*, Rules 26 – 37, inclusive.

## ARGUMENT

## I. MANDAMUS IS NECESSARY TO PROTECT AYA AND ITS MINISTER SCOTT STANLEY FROM IMMEDIATE IRREPARABLE HARM FROM SANCTIONS DIRECTED AT INDUCING HIS DISCLOSURE OF THE IDENTITIES AND EMAILS OF AYA'S 5,239 CORRESPONDENTS

Petitioners have made a solid showing on all of the five guidelines for establishing writ jurisdiction forth in *Bauman v. United States Dist. Court*, 557 F.2d 650 (9th Cir. 1977), including an unarguable showing of clear error to satisfy the essential third factor:

"(1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues

27

of first impression. \*\*\* 'Not every factor need be present at once.' (Citation.) 'However, the absence of the third factor, clear error, is dispositive.'"

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010).

The District Court clearly erred when it ruled, with no explanatory discussion, that "the First Amendment Free Exercise and Establishment Clauses do not establish any privilege applicable to the civil discovery sought by Defendants." (Order 220, 3:3-4.)  This is a clearly erroneous statement of the law.  "[W]e are asked to address an important issue of first impression -- *the scope of the First Amendment privilege* against compelled disclosure of internal campaign communications *Perry v. Schwarzenegger*, 591 F.3d 1147, 1157 (9th Cir. 2010) (emphasis added).  Because the District Court did not acknowledge the existence of a First Amendment Privilege, it entered the Disclosure Order (Exhibit 1; Dkt. # 220).  Accordingly, the rulings in the Disclosure Order compelling the disclosure and production of information and documents cannot stand, and the District Court must be directed, as in *Perry*, to vacate those portions of the Disclosure Order compelling responses to the interrogatories and RFPs recited in full at ¶ 27 hereinabove.

### A.    Petitioners Have No Other Means to Seek Review

Discovery orders are not directly reviewable except under the collateral order doctrine. [3]  Accordingly, this Court has "exercised mandamus jurisdiction to

---

[3] In *Perry, supra*, this Court considered applying the collateral order rule in cases of First Amendment infringement due to civil discovery disclosure orders.  Considering *Mohawk Indus.*

review discovery orders raising particularly important questions of first impression, especially when called upon to define the scope of an important privilege." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1157 (9th Cir. 2010). Because cases like this one -- where First Amendment injury is certain to result from enforcement of civil disclosure orders -- are so important, the *Perry* opinion explained that it was grounding its decision on the safest jurisdictional foundation available – jurisdiction of petitions for mandamus under 28 U.S.C. § 1651(a). *Perry v. Schwarzenegger*, 591 F.3d 1147, 1154-1156 (9th Cir. 2010).

## B.     Petitioners Will be Irreparably Injured in a Way Not Correctable on Appeal

In his declaration in support of the Petitioners' Motion for Stay Pending Appeal, Petitioner Stanley explained for the District Court the types of irreparable injuries that he and AYA would suffer if compelled to comply with the Disclosure Order:

> "If Plaintiffs were to disclose such information and documents, we would be breaching the trust and confidence our congregation has placed in us. As a result of that breach, irreparable injuries would occur immediately, including:
>
> a. Severe reputational damage to AYA and myself;
> b. Injury to the mood and tenor of reverential practice;
> c. Membership withdrawal;
> d. Discouragement of new members from joining or participating in ceremony;

---

*v. Carpenter*, 558 U.S. 100, 130 S. Ct. 599 (2009) (denying appellate review of order compelling disclosure of attorney-client privileged information), the Court noted the presence of "not insubstantial … distinctions between the First Amendment privilege and the attorney-client privilege -- a constitutional basis, a heightened public interest, rarity of invocation and a long recognized chilling effect…." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010). Nevertheless, the *Perry* opinion took the safest jurisdictional course, and chose "to rely on mandamus to hear this exceptionally important case..." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010).

     e.  Injury to the congregational mindset, undermining the ability to
          communicate freely with AYA staff, both in and out of ceremony;

     f.  Injury to the congregational mindset for communicating with other
          members;

   g.  Discontinuance of donations; and,

   h.  Decline in attendance at ceremonies."

      (Exhibit 2; Stanley Dec. ¶ 4.)

These are the type of associational injuries that the Supreme Court cited in *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958). While quashing a subpoena from Alabama to the NAACP for its membership list, the justices compared "compelled disclosure of membership in an organization engaged in advocacy of particular beliefs" to be "of the same order" as the Third Reich's policy of requiring "adherents of particular religious faiths or political parties wear identifying arm-bands." *NAACP v. Alabama*, 375 U.S. at 462. Recently in *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2378 (2021), the Supreme Court struck down a California statute requiring the disclosure of nonprofit donor names to the Attorney General, holding it facially unconstitutional. *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. at 2378. Accordingly, there can be no doubt that the Disclosure Order goes beyond the limits of what the law allows.

### C.    The District Court Order is Clearly Erroneous

Despite the clear indications that Petitioners' invocation of First Amendment Privilege was legitimate, the District Court ruled without explanatory discussion that "the First Amendment Free Exercise and Establishment Clauses do not establish any privilege applicable to the civil discovery sought by Defendants." (Order 220, 3:3-4.) The holding in *Perry* is premised on the applicability of First Amendment Privilege to civil discovery, and the District Court here should have

applied the two part test to resolve the discovery dispute, as did the Northern District of California in *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO, 2015 U.S. Dist. LEXIS 192788, at *6-7 (N.D. Cal. Nov. 20, 2015), *quoting Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010), *quoting NAACP v. Ala. ex rel. Patterson,* 357 U.S. 449, 463, 78 S. Ct. 1163, 1172 (1958). The failure to do so was clear error.

**D.     The District Court's Order Manifests a Persistent Disregard of the Federal Rules**

The District Court exceeded its authority under Rule 83 by eliminating a right granted by the drafters of the Federal Rules of Civil Procedure. The disregard of the Federal Rules has been more than persistent – it has been institutionalized by the adoption of the Dispute Rule (Exhibit 3), which has been enforced in subsequent rulings. *See, Steigleman v. Symetra Life Ins. Co.*, No. CV-19-08060-PCT-ROS, 2023 U.S. Dist. LEXIS 10264 (D. Ariz. Jan. 20, and 2023) (motion for protective order "was procedurally improper and could be denied on that basis alone") and *Dishon v. Gorham*, No. CV-16-04069-PHX-ROS, 2018 U.S. Dist. LEXIS 180502 (D. Ariz. Oct. 19, 2018) (because "the Court has given Defendants an opportunity to clarify and explain in a joint statement, [and] Defendants failed to do so, all of Defendants' objections to interrogatories have been waived. Defendants are ordered to respond substantively to each interrogatory "separately and fully in writing under oath.").

Plaintiff Stanley's declaration establishes that because he was "unable to file a declaration to explain to the Court how Plaintiffs would be prejudiced if compelled to disclose, as we are now required by the Disclosure Order," Petitioners were unable to effectively demonstrate the scope of the First Amendment infringement threatened by the impending Disclosure Order.

The remedy for persistent disregard of Federal Rules is a writ of mandamus. *Valenzuela-Gomez v. United States District Court*, 915 F.2d 1276 (9th Cir. 1990)(writ issued to prevent video-arraignment of federal defendant pursuant to General Order that violated Rules of Criminal Procedure 10 and 43, requiring in-person appearance). The Court's standing Discovery Order essentially bars all discovery motions, and thereby, the opportunity to submit affidavits and extended legal arguments. Where a local or chambers rule eliminates rights expressly provided by the Federal Rules, as *Valenzuela-Gomez, supra*, a writ should issue to remedy the injury.

## E.     The District Court's Order Raises New and Important Problems or Issues of First Impression

*Perry* was a case of first impression, as is this one. "Here, too, we are asked to address an important issue of first impression -- the scope of the First Amendment privilege against compelled disclosure of internal campaign communications. Considering the *Bauman* factors, we conclude that this is an extraordinary case in which mandamus review is warranted." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1157 (9th Cir. 2010)

### 1.     This Court Must Apply the *Perry* Rule to RFRA Actions

This is a true case of first impression in the Ninth Circuit, that gives this Court an opportunity to apply a rule in the religious context as it was applied in the political context by *Perry v. Schwarzenneger*, 591 F.3d 1147, 1161 (9th Cir. 2010). This will guide counsel and the district courts to handle discovery in RFRA cases brought by Ayahuasca churches, where First Amendment Infringing discovery may again be sought the DOJ, DEA, DHS and CBP. Clearly *Perry* is controlling, because the First Amendment rights of churches and religious persons receive the same level of protection against infringing discovery as is accorded to the First Amendment rights of political actors. Accordingly, this is an appropriate case of

first impression for which the answer appears clear and unambiguous. The District Court clearly erred by denying the existence of a First Amendment Privilege, and then subjecting the Petitioners to the draconian Disclosure Order. (Exhibit 1; Dkt. # 220.)

### 2. An Opinion Here Will Guide Counsel and the District Judges in Two Ayahuasca Church Lawsuits Now Pending in the Ninth Circuit, Where the Same Problems Will Require Guidance for Resolution

There are two other RFRA lawsuits pending in the Ninth Circuit filed by Ayahuasca churches alleging claims against the DEA and other federal agencies. Counsel for the other two Ayahuasca churches and the Department of Justice attorneys are watching developments in this case closely, and the plaintiffs appear to be citing to rulings in this case as authoritative. There are numerous citations to decisions in this litigation in the opinion denying the government agencies' motion to dismiss in *Church of the Celestial Heart v. Garland*, No. 1:23-cv-00545-SAB, 2024 U.S. Dist. LEXIS 4606 (E.D. Cal. Jan. 9, 2024).[4]  Similarly, in *Church of the Eagle and the Condor v. Garland*, No. CV-22-01004-PHX-SRB, the district court cited *Arizona Yage Assembly v. Garland*, 595 F. Supp. 3d 869 twice to resolve standing issues where the Department of Justice recycled defense arguments that the District Court in this action had already rejected.

The Disclosure Order (Exhibit 1, Dkt. # 220) will, therefore, stand as a model of some sort. By issuing a writ granting Petitioners a protective order

---

[4]The opinion in *Church of the Celestial Heart v. Garland*, No. 1:23-cv-00545-SAB, 2024 U.S. Dist. LEXIS 4606 cites four decisions rendered in the AYA litigation to resolve multiple crucial issues: *AYA v. Garland I*, i.e., *Ariz. Yage Assembly v. Garland*, 595 F. Supp. 3d 869 (D. Ariz. 2022) (D. Ariz. May 4, 2023) ; *AYA v. Garland II*, i.e., *Ariz. Yage Assembly v. Garland, No. CV-20-02373-PHX-ROS, 2023 U.S. Dist. LEXIS 78226 (D. Ariz. May 4, 2023)*; *AYA v. Barr I*, *Ariz. Yage Assembly v. Barr*, No. 3:20-cv-03098-WHO, 2020 U.S. Dist. LEXIS 172836 (N.D. Cal. Sep. 21, 2020); and, *AYA v. Barr II*, *Ariz. Yage Assembly v. Barr*, No. 3:20-cv-03098-WHO, 2020 U.S. Dist. LEXIS 209271 (N.D. Cal. Nov. 6, 2020).

barring enforcement of the Disclosure Order, this Court will send a clear message that when churches raise colorable First Amendment Privilege challenges to government discovery in civil litigation, the district courts must apply the law and procedure prescribed in *Perry v. Schwarzenneger*, 591 F.3d 1147, 1161 (9th Cir. 2010).  Denial of the writ requested here would have the destructive effect of encouraging the Department of Justice to propound First Amendment-infringing discovery to the plaintiffs in in *Church of the Celestial Heart* and *Church of the Eagle and Condor.*

　　Petitioners have suffered much burden and expense due to these draconian DOJ discovery tactics, as set forth in detail in the Stanley Declaration.  (Exhibit 2, generally; Dkt. # 222.)  Having presented an issue for this Court's resolution that will certainly bedevil future courts and litigants, Petitioners respectfully submit that it will be in the public interest, saving other church leaders like Stanley from being put to a painful ethical decision – to keep faith with one's congregation, donors, and correspondents, or to bow to the will of the District Court, threatening issue and monetary sanctions for noncompliance?  No one should be put to this choice in a nation where religious freedom is so widely promised, but that is where the Petitioners find themselves, due to the crushing demands of the Disclosure Order.  (Exhibit 1; Dkt. # 220.)  Accordingly, the Court is respected to take up this matter and provide an authoritative ruling to provide counsel for churches and AUSAs with the type of guidance they need to resolve discovery disputes without litigation, and to provide district judges with a clear statement of the law in this field where, as noted above, an increase in RFRA litigation by Ayahuasca churches seems to be underway.

3. **The Impending Compelled Exposure of the Emails of 5,239 of AYA's Correspondents Makes this an Appropriate Case for Urgent Action**

As noted previously, in this case AYA has 5,239 email correspondents.  Not every other church will have a burden this large, or the means to fund the filing of a petition for writ of mandamus, but their First Amendment Privileges are equally as important to defend.  The extreme gravity of the harm posed by the Disclosure Order (Exhibit 1, Dkt. # 220), and the capacity of the Petitioners to present this petition makes it a most appropriate one for this Court to take up, and the Petitioners accordingly request the same.

## II.   AN EMERGENCY STAY IS RESPECTFULLY REQUESTED

The Petitioners have acted as swiftly as possible to take action in the appellate court to protect their First Amendment rights from infringement by seeking mandamus review from the Disclosure Order (Exhibit 1; Dkt. # 220).

Plaintiffs have also submitted a Motion for Stay to the District Court (Exhibit 13; Dkt. # 222) that has been effectively denied by the District Court, that set a briefing schedule with Petitioners' reply brief due March 22, 2024, while leaving the entire Disclosure Order in place.  (Exhibit 16; Order, Dkt. # 224.)

While it was only possible to present this petition on March 8, 2024, the very day when the Disclosure Order requires the production of information and documents protected by the First Amendment Privilege, the issues presented by Petitioners will not be over on March 9th, and indeed, will only become more pressing as the time passes.

Accordingly, Petitioners respectfully request this Court to issue an immediate stay of the Disclosure Order (Exhibit 1; Dkt. # 220) as it pertains to the eight (8) interrogatories and seven (7) RFPs that are enumerated in ¶ 27 hereinabove as subsections 1 -15.

**III.  CONCLUSION**

Petitioners have established their entitlement to a writ:

1. Vacating the "Disclosure Order" entered in District Court action that compels Petitioners to disclose the identities of 5,239 members, donors and other email correspondents, to produce tens of thousands of church emails with members and donors, to produce records of ceremonial attendance, donations, and internal deliberations;

2. Instructing the District Court to apply the "exacting scrutiny" and "heightened relevance" standard required by *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010) to future claims of First Amendment privilege; and,

3. Directing the District Court to allow all parties in the District Court action to file discovery motions as permitted by Federal Rules of Civil Procedure 26, 30, 33, 34, and 36.

Petitioners are further entitled to:

4. An Emergency Stay of the Disclosure Order (Exhibit 1; Dkt. # 220) as it applies to the compelled disclosure and production of First Amendment privileged information and documents requested in the eight (8) Interrogatories and seven (7) Requests for Production that are listed in paragraph 27 of the herein petition.

Dated: March 8, 2024                              CHARLES CARREON
                                                  /s/Charles Carreon
                                                  CHARLES CARREON (127139)
                                                  Attorney for Petitioners
                                                  Arizona Yagé Assembly and
                                                  Winfield Scott Stanley III