## EXHIBIT 10

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*
Name(s) of party/parties:

Plaintiff-Appellant Arizona Yagé Assembly and
Plaintiff-Appellant Winfield Scott Stanley III

Name(s) of counsel (if any):

Charles Carreon

Address: 7 N. Ridge Crest Cir.,  Silver City, New Mexico 88061

Telephone number(s): 928-975-2191

Email(s): chascarreon@gmail.com

Is counsel registered for Electronic Filing in the 9th Circuit?   ● Yes   ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*
Name(s) of party/parties:

Merrick Garland, U.S. Attorney General; Anne Milgram, Administrator, U.S.
Drug Enforcement Administration; Alejandro Mayorkas, Secretary, Dept. of
Homeland Security; and Chris Magnus, Comm'r U.S. Customs and Border Prot'n

Name(s) of counsel (if any):

AUSA Lisa Newman
AUSA Bonnie Devany
USDOJ, Civil Division, Federal Programs Branch

Address: 1100 L Street NW, Washington, D.C. 20005

Telephone number(s): 202-514-5578

Email(s): lisa.n.newman@usdoj.gov, bonnie.e.devany@usdoj.gov

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                    *1*                    *New 12/01/2018*

EXHIBIT 11

# CHARLES CARREON

LAW FOR THE DIGITAL AGE

March 4, 2024

Lisa Newman
Bonnie Devany
United States Department of Justice
Federal Programs Branch, Civil Division

**Re: *AYA v. Garland, Case #3:20-cv-03098-WHO***

Counsel:

Thank you for taking time today to discuss these matters. I provide the citations and legal argument I presented during our conference below for your consideration.

**The District Court Committed Clear Error by Failing to Recognize a First Amendment Privilege**

As we discussed, Plaintiffs will be filing a Notice of Appeal from Order 220. *Perry v. Schwarzenegger, 590 F.3rd 1147 (9th Cir. 2010)* established that it was clear error for court to state categorically that First Amendment privilege does not have any application in an analogous situation. "The third factor, clear error, is also met. As discussed below, *we are firmly convinced that the district court erred by limiting the First Amendment privilege* to "the identities of rank-and-file volunteers and similarly situated individuals" and affording no greater protection to Proponents' internal communications than the generous relevance standard of Federal Rule of Civil Procedure 26. *Perry v. Schwarzenegger, 591 F.3d 1147, 1158 (9th Cir. 2010)* (emphasis added). The error is even clearer here, where the Court stated: "The First Amendment Free Exercise and Establishment Clauses do not establish any privilege applicable to the civil discovery sought by Defendants." (Order 220, 10:16-17.)

**The *Perry* Balancing Test**

In this circuit, a claim of First Amendment privilege is subject to a two-part framework. The party asserting the privilege "must demonstrate . . . a 'prima facie showing of arguable first amendment infringement. This prima facie showing requires appellants to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights. *If appellants can make the necessary prima facie showing, the evidentiary burden will then shift to the government . . . [to] demonstrate that the information sought through the [discovery] is rationally related to a compelling governmental interest . . . [and] the 'least restrictive means' of obtaining the desired information." Id., Perry v. Schwarzenegger, 591 F.3d 1147, 1160-61 (9th Cir. 2010).* (Internal citations omitted). Had this balancing test been applied to Plaintiffs' claims of First Amendment infringement, Order 220 would not have issued in its current form, and would have relieved Plaintiffs from the burdens on freedom of association that are the natural consequence of the Order's enforcement against Plaintiffs.

**Plaintiffs Established a Prima Facie Case of First Amendment Infringement**

Within the limits allowed by the Joint Statement procedure, Plaintiffs articulated their First Amendment right to be free of the injuries.  As noted in the Joint Statement (Dkt. # 219): "The demand imposes a severe burden on the relationship of AYA and Plaintiff Stanley with the AYA congregation, attempting to convert their religious participation into an avenue of negative scrutiny of the sort that this litigation is intended to remedy."  Further, the District Court did not even consider any prejudice resulting from the invasion of Plaintiffs' First Amendment Privilege, because it found there was no such privilege available.  (Order 220, 10:16-17, quoted *supra*.)  *Perry* reveals the Court's conclusion to be clearly erroneous.

**The Discovery Procedure Did Not Allow Plaintiffs to Make of More Complete Record of Burden and Resulted in a Rushed Adjudication on Insufficient Factual Basis and Legal Argument**

The Court has exceeded its authority under Rule 83 by eliminating a right granted by the drafters of the F.R.Civ.P.  The Court's standing Discovery Order specifically "disappears" all motions, and thereby, the opportunity to submit affidavits, and forcing legal arguments into a Procrustean Bed where vital Constitutional rights can be truncated with inadequate analysis.  Where application of a Local Rule results in a rule that contravenes the Federal Rules, and deprives a party of Constitutional Rights, a writ may issue to remedy the injury.  *Valenzuela-Gomez v. United States District Court*, 915 F.2d 1276 (9th Cir. 1990).

**The Protective Order does Not Protect From the Harm to Freedom of Association and other Harms That Disclosure Would Cause**

The Protective Order (Dkt. # 217) does not remedy the associational harm that the Supreme Court has suggested is open and obvious:  "We have also noted that "[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action."  *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021), *quoting NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958)(citations omitted).

The High Court's citation to *NAACP v. Alabama* was significant.  Consider this quote from that civil rights case, actually likening the Third Reich's policy of requiring persons of Jewish descent to "wear identifying armbands" to "compelled disclosure of membership" in an advocacy organization:

> "This Court has recognized the vital relationship between freedom to associate and privacy in one's associations. When referring to the varied forms of governmental action which might interfere with freedom of assembly, it said in *American Communications Assn. v. Douds, supra, at 402: "A requirement that adherents of particular religious faiths or political parties wear identifying arm-bands, for example, is obviously of this nature." Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is of the same order.* Inviolability of privacy in group association may in many circumstances be

indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs. *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958) (emphasis added).

In *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2377 (2021), the high court overturned a provision of California law requiring the disclosure of donors to nonprofits on First Amendment freedom of association grounds. The error was a failure to "narrowly tailor" the demand for information to accord with the government's asserted interests.

> "The Ninth Circuit did not impose a narrow tailoring requirement to the relationship between the Attorney General's demand for Schedule Bs and the identified governmental interest. That was error under the Court's precedents. And properly applied, the narrow tailoring requirement is not satisfied by California's disclosure regime. In fact, a dramatic mismatch exists between the interest the Attorney General seeks to promote and the disclosure regime that he has implemented." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2378 (2021).

That type of "mismatch between the interest [the DOJ] asserts" and "the disclosure regime that [it] has implemented," exists in the present case. No account has been taken of the injury to First Amendment rights of freedom of association Plaintiffs will suffer immediately due to compelled exposure of their member lists, donors, and correspondence.

**A Stay of all Discovery Proceedings is Appropriate**

Plaintiffs will be filing their Notice of Appeal shortly, to be followed by a motion for stay that will be filed on Wednesday. Given the complex nature of the issues, and the difficulty we may have in parsing the application of Order 220, it would seem worthwhile to allow the appellate process to take priority, and stay all discovery proceedings involving plaintiffs based on Order 220 and the Court's Discovery Order that precludes the parties from filing discovery motions.

Thank you for your attention to these matters.

Very truly yours,

Charles Carreon

cc:     AYA
        S. Stanley

## EXHIBIT 13

CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

JOHN SULLIVAN (CSB#204648) Pro Hac Vice
17532 Miranda Street
Encino, California 91316-1249
Tel: 818-769-7236 Fax: 818-301-2175
Email:Sullivan.John84@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly and
Winfield Scott Stanley III

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ArizonaYagé Assembly, and Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>      Plaintiffs,<br><br>   vs.<br><br>Merrick Garland Attorney General of the United States; et al.<br><br>      Defendants. | Case No.:20-CV-02373-ROS<br><br>*EX PARTE* MOTION FOR STAY OF DISCOVERY ORDER  (DKT. # 220) AND FURTHER DISCOVERY ADJUDICATIONS PENDING APPEAL |

Plaintiffs Arizona Yagé Assembly and Winfield Scott Stanley III ("Plaintiffs"),

hereby move the Court for a stay of (1) the Court's order entered February 22, 2024, Dkt.

# 220 (herein the "Disclosure Order"), (2) any further adjudications pursuant to the

Court's Discovery Rule that forbids the filing of motions pursuant to the provisions of

F.R.Civ.P. Rules 26, 30, 33, 34, and 36, and (3) any adjudications pursuant to F.R.Civ.P.

37.

The grounds for the motion are that the Disclosure Order infringes the First

Amendment rights of the Plaintiffs, that the Court's Discovery Rule exceeds the Court's

## EXHIBIT 13

proper authority under Rule 83 by eliminating procedures set forth by the drafter of the Federal Rules and violates Plaintiffs' rights of due process, and that any further adjudications pursuant to Rule 37 would be without lawful cause because premised upon presumed violations of the Disclosure Order and the Court's Discovery Rule, both of which orders are themselves unlawful.  Further grounds for granting the motion are set forth in the Memorandum of Points and Authorities and the Declaration of Winfield Scott Stanley III, filed herewith.  This motion is submitted *ex parte* due to the shortness of the time between now and the compliance date of the Disclosure Order (Dkt. # 220); however, Plaintiffs did give notice of the intent to file this motion on Monday, 6, 2024, with a detailed explanation of the grounds therefor, and requested the Defendants to stipulate to the requested stay.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.      The Disclosure Order Violates Plaintiffs' First Amendment Rights by Requiring Disclosure of the Identities of 5,239 People, Their Religious Correspondence, and Thousands of Pieces of Reputationally Damaging Information**

"It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958)(citations omitted).

The Disclosure Order (Dkt. # 220) compels Plaintiffs to disclose the "identities of no less than 5,239 people … tens of thousands of emails discussing religious matters … thousands of pieces of reputationally damaging information … records of private, personal activity, and records of donations and ceremonial contributions made with the understanding that donors and contributors would remain secret."  (Stanley Dec. ¶ 3.)

In *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2377 (2021), the Supreme Court overturned a Ninth Circuit decision upholding a California law that -- the high Court concluded -- infringed the First Amendment by requiring the disclosure of

## EXHIBIT 13

nonprofit donors on State-mandated forms.  The Ninth Circuit had failed to "narrowly tailor" the demand for information to accord with the government's asserted interests.

> "The Ninth Circuit did not impose a narrow tailoring requirement to the relationship between the Attorney General's demand for Schedule Bs and the identified governmental interest. That was error under the Court's precedents. And properly applied, the narrow tailoring requirement is not satisfied by California's disclosure regime. In fact, *a dramatic mismatch exists between the interest the Attorney General seeks to promote and the disclosure regime that he has implemented.*"

*Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2378 (2021)(emphasis added).

The Supreme Court's position on the danger of government authorities compelling the disclosure of member lists was clearly enunciated in *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958).  While quashing a subpoena from Alabama to the NAACP for its membership list, the justices compared "compelled disclosure of membership in an organization engaged in advocacy of particular beliefs" to be "of the same order" as the Third Reich's policy of requiring "adherents of particular religious faiths or political parties wear identifying arm-bands."  *NAACP v. Alabama*, 375 U.S. at 462.

The Declaration of Winfield Scott Stanley III in support of this motion establishes that  Plaintiffs would suffer immediate and irreparable reputational harm as soon as AYA's members, donors and correspondents learned that Plaintiffs had made such disclosures.  (Stanley Dec. ¶¶ 2 - 4.)

**B.     The Court Did Not Recognize the Existence of First Amendment Privilege**

The District Court did not consider any prejudice resulting from the invasion of Plaintiffs' First Amendment Privilege, because it mistakenly concluded no such privilege was available.  (Order 220, 10:16-17, quoted *supra*.)

EXHIBIT 13

**C.      Plaintiffs Established a Prima Facie Case of First Amendment Infringement**

Plaintiffs articulated their First Amendment right to be free of the associational injuries that would be caused by compelling the disclosure of member, donor, and correspondent lists, as well as their private email exchanges and detailed information regarding ceremonial attendance, alleging privacy violations and First Amendment infringements and undue burdens would flow from compelling compliance with these demands.  As noted in the Joint Statement (Dkt. # 219): "The demand imposes a severe burden on the relationship of AYA and Plaintiff Stanley with the AYA congregation, attempting to convert their religious participation into an avenue of negative scrutiny of the sort that this litigation is intended to remedy."

**D.      The Court Should Have Applied the *Perry* "Two-Part" Framework for Determining Claims of First Amendment Privilege**

Plaintiffs raised their claim of First Amendment Privilege and burden in the Joint Statement the parties submitted in compliance with the Court's Discovery Rule.  The Court, however, concluded the First Amendment had nothing to do with civil discovery.  In this, the Court clearly erred.  The procedure to follow when First Amendment privilege claims are raised in response to civil discovery demands was drawn in hornbook fashion from *Perry, supra*, in an opinion from the Northern District of California:

> First, the party asserting the privilege must make a "prima facie showing" of "arguable first amendment infringement," demonstrating that enforcement of the discovery requests will result in: (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or "chilling" of members' associational rights. *Id.* at 1160-61. If that showing is made, at the second step the "evidentiary burden" shifts and the party seeking the information must show that the information sought is "rationally related to a compelling governmental interest" and that there are no other less restrictive means of securing that information. *Id.* (internal quotations omitted).

> At the second step, the "analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude

EXHIBIT 13

it. The question is therefore whether the party seeking the discovery 'has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.'"
*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO, 2015 U.S. Dist. LEXIS 192788, at *6-7 (N.D. Cal. Nov. 20, 2015), *quoting Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010), *quoting NAACP v. Ala. ex rel. Patterson,* 357 U.S. 449, 463, 78 S. Ct. 1163, 1172 (1958).

**E.      Plaintiffs Have a Right to Appeal the Disclosure Order Under the Collateral Order Doctrine or, Alternatively, Via Petition for Writ of Mandamus**

Collateral orders are a "narrow class of decisions that do not terminate the litigation, but are sufficiently important and collateral to the merits that they should nonetheless be treated as final." *Will v. Hallock*, 546 U.S. 345, 347 (2006) (quotation marks omitted).  To be immediately appealable, a collateral decision "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1154 (9th Cir. 2010), *quoting Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978).

In the Fifth Circuit, a disclosure order that compelled Texas Catholic Conference of Bishops to disclose "emails or attachments [that] relate to the burial, cremation, or disposition of fetal or embryonic tissue" was found to be a collateral order and reversed as a First Amendment violation.  *See, Whole Woman's Health v. Smith*, No. A-16-CV-1300-DAE, 2018 U.S. Dist. LEXIS 99275, at *4 (W.D. Tex. June 13, 2018).  The appeals court easily found jurisdiction: "The standards of the collateral order doctrine are met here. There is no dispute that the district court's discovery order was conclusive on TCCB, such that failure to comply with it may result in sanctions against TCCB or its witness. Further, the order resolves important and very novel issues separate from the merits of the litigation over the Texas statute concerning the disposal of fetal tissue remains. Finally, the plaintiffs do not have an answer to the argument that the

EXHIBIT 13

consequence of forced discovery here is "effectively unreviewable" on appeal from the final judgment." *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018).

The Ninth Circuit has considered applying the collateral order rule in cases of First Amendment infringement by otherwise unreviewable discovery orders. Distinguishing *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 130 S. Ct. 599 (2009) (denying appellate review of order compelling disclosure of attorney-client privileged information) on several grounds, the Ninth Circuit noted the presence of "not insubstantial ... distinctions between the First Amendment privilege and the attorney-client privilege -- a constitutional basis, a heightened public interest, rarity of invocation and a long recognized chilling effect...." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010). Nevertheless, the *Perry* opinion took the safest jurisdictional course, and chose "to rely on mandamus to hear this exceptionally important case..." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010). Thus, Plaintiffs will move the appellate court alternatively to construe their appeal as a petition for writ of mandamus.

**F.      The Court's Bar on Discovery Motions Eliminates Rights Granted by the Drafters of the Federal Rules of Civil Procedure, and Thus Cannot Stand**

Meaning no disrespect to the Court, Plaintiffs must nevertheless note that it exceeded its authority under Rule 83 by eliminating a right granted by the drafters of the Federal Rules of Civil Procedure. *Valenzuela-Gomez v. United States District Court*, 915 F.2d 1276 (9th Cir. 1990)(writ issued to prevent video-arraignment of federal defendant pursuant to General Order that violated Rules of Criminal Procedure 10 and 43, requiring in-person appearance). The Court's standing Discovery Order essentially bars all discovery motions, and thereby, the opportunity to submit affidavits and extended legal arguments. Where a local or chambers rule eliminates rights expressly provided by the Federal Rules, as *Valenzuela-Gomez, supra*, a writ should issue to remedy the injury.

Plaintiff Stanley's declaration establishes that the inability to file affidavits severely prejudiced Plaintiffs: "As explained in Plaintiffs' motion in support of the

## EXHIBIT 13

request for stay, because of the Court's Discovery Rule[1] forbidding the filing of motions, I was unable to file a declaration to explain to the Court how Plaintiffs would be prejudiced if compelled to disclose, as we are now required by the Disclosure Order (Dkt. # 220)"

Because affidavits could not be filed, Plaintiffs could not inform the Court that issuing an order containing the provisions of the Disclosure Order would require Plaintiffs to disclose the "identities of no less than 5,239 people ... tens of thousands of emails discussing religious matters ... thousands of pieces of reputationally damaging information ... records of private, personal activity, and records of donations and ceremonial contributions made with the understanding that donors and contributors would remain secret." (Stanley Dec. ¶ 3.) The legitimacy of a First Amendment infringement claim premised upon these facts cannot be questioned. Additionally, it is clear that the Court's Discovery Rule was the primary cause of the inadequate factual record and slender briefing of the issues, resulting in its failure to apply the *Perry* balancing test, which resulted in the issuance of the Disclosure Order (Dkt. # 220). Accordingly, further adjudications pursuant to the Court's Discovery Rule should be stayed to avoid additional decisions premised thereon, and the resulting serial appeals.

**G.     Plaintiffs Are Likely to Succeed on the Merits of Their Claim**

Plaintiffs are likely to succeed in the Ninth Circuit on the merits of their First Amendment privilege claim. For a certainty, they have raised "serious legal questions" sufficient to warrant a stay in light of the irreparable harm and equities weighing "sharply in [our] favor," as demonstrated below. *Golden Gate Rest. Ass'n v. San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008).

**H.     Irreparable Harm is Certain in the Absence of a Stay**

---

[1] https://www.azd.uscourts.gov/sites/azd/files/judge-orders/ROS_Discovery_Dispute_Instructions_On_Line.pdf

## EXHIBIT 13

In the Ninth Circuit, that a stay applicant has "raised serious First Amendment questions *compels* a finding that there exists the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [the stay applicant's] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (quotation marks omitted; emphasis added); *accord Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002). Thus, "[t]o establish irreparable injury in the First Amendment context" a stay applicant "need only demonstrate the existence of a colorable First Amendment claim." *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003) (quotation marks and alterations omitted).

Forcing a litigant to disclose privileged materials necessarily inflicts irreparable harm because once the materials have been disclosed, it is impossible to "undisclose" them. *In re Napster*, 479 F.3d at 1088; *Admiral Ins. Co. v. United States Dist. Court,* 881 F.2d 1486, 1491 (9th Cir. 1989); *United States v. Amlani*, 169 F.3d 1189, 1193 n.4 (9th Cir. 1999); *Philip Morris*, 314 F.3d at 621- 22. The infringement of "First Amendment freedoms . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *accord Brown v. Cal. DOT*, 321 F.3d 1217, 1226 (9th Cir. 2003).

Finally, Plaintiff Stanley is under a claim of conscience here that runs contrary to the commands of the Disclosure Order (Dkt. # 220) that would require him to breach the bond of trust with his congregation.  (Stanley Dec. ¶¶ 2 -4 and ¶ 8.)  The issuance of the Discovery Order has already put the AYA congregation into a crisis.  (Stanley Dec. ¶ 6.) Compliance with the Disclosure Order would visit immediate, irreparable injury to the associational rights of AYA and Stanley.  (Stanley Dec. ¶ 4.)

## I.    The Four Factors Warranting a Stay Are Satisfied

Four factors inform whether a federal court should issue a stay pending appeal: (1) the appellants' likelihood of success on the merits; (2) the possibility of irreparable harm absent a stay; (3) the possibility of substantial injury to other parties if a stay is issued;

EXHIBIT 13

and (4) the public interest. *See Golden Gate Rest. Ass'n v. San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008)(citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

When applying these four factors, the Ninth Circuit employs a "sliding scale" approach: the more sharply the equities weigh in favor of a stay, the less demanding of a showing of likely success on the merits is required. *See Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007), *vacated on other grounds by* 508 F.3d 885 (9th Cir. 2007); *Golden Gate*, 512 F.3d at 1116. *See id*.

A consideration of the factors and analysis identified by the Ninth Circuit demonstrates that Plaintiffs are entitled to a stay. Thus, "[t]o establish irreparable injury in the First Amendment context" a stay applicant "need only demonstrate the existence of a colorable First Amendment claim." *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003) (quotation marks and alterations omitted). In this case, irreparable injury has already begun, with the AYA staff in a crisis concerning the discovery demands, and the looming certainty of massive reputational and associational injury to AYA and Stanley in the event they were compelled to make the disclosures commanded by the Disclosure Order (Dkt. # 220).

## J. OTHER PARTIES WILL NOT BE SUBSTANTIALLY INJURED BY A STAY

The Ninth Circuit has given tailored guidance for balancing harms in the First Amendment context: where a litigant "raise[s] serious First Amendment questions," it "compels a finding that . . . the balance of hardships tips sharply in [that litigant's] favor." *Cmty. House, Inc.*, 490 F.3d at 1059 (quotation marks omitted; emphasis added); *Sammartano*, 303 F.3d at 973. That principle fully applies here. And even if the Ninth Circuit were to find that the discovery at issue was not privileged, the most Defendants could claim is a delay in the proceedings below. But "[a] mere assertion of delay does not constitute substantial harm." *Philip Morris Inc.*, 314 F.3d at 622. This Court should thus conclude that the balance of hardships tips sharply in favor of issuing a stay pending appeal.

EXHIBIT 13

**K.    The Public Interest Weighs in Favor of a Stay**

"Courts . . . have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano*, 303 F.3d at 974 (listing cases). More particularly, courts have repeatedly acknowledged that the public interest suffers when core First Amendment rights of political expression are jeopardized and political participation is chilled. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 71 (1976) (noting that "the public interest . . . suffers" from chilled political participation); *Sammartano*, 303 F.3d at 974 ("[T]he public interest is better served by . . . protecting the core First Amendment right of political expression.").

Denying this stay and forcing immediate disclosure of AYA's members, donors, and correspondents, and the production of their private emails, personal disclosures, and medical information will chill the First Amendment associational rights of thousands of religious people who have been members, donors or correspondents of Plaintiffs.

**L.    CONCLUSION**

For the foregoing reasons, the Court should grant this motion for a stay.

Dated: March 6, 2024

CHARLES CARREON
/s/Charles Carreon
CHARLES CARREON (127139)
Attorney for Plaintiffs
Arizona Yagé Assembly,
Winfield Scott Stanley III

EXHIBIT 14

 Gmail                                  **Charles Carreon <chascarreon@gmail.com>**

---

## AYA v. Garland / Correspondence

---

**Newman, Lisa N. (CIV) <Lisa.N.Newman@usdoj.gov>**                    Tue, Mar 5, 2024 at 2:46 PM
To: "Charles Carreon, Esq." <chascarreon@gmail.com>, "Devany, Bonnie E. (CIV)" <Bonnie.E.Devany@usdoj.gov>

Charles,

Thank you for providing these citations in writing.  Just so that I'm clear, does AYA intend to:

1. Respond to Defendants Joint Statement on Plaintiffs' Deficiencies re: the Second Set of Discovery Requests, circulated on March 1 and due on March 6?
2. Supplement their Rule 26 disclosures to include the subjects of information for the newly added witnesses by March 15?
3. Comply with the Court's order to "provide full and complete responses and productions to Defendants' requests" by March 8?
4. Otherwise comply with the Court's substantial completion of written fact discovery deadline by March 8?
5. Respond to Defendants Third Set of Interrogatories, due on March 21?

If you could kindly provide me with responses to these questions by no later than 10 a.m. ET tomorrow, we would appreciate it.

All the best,

Lisa

---

**From:** Charles Carreon, Esq. <chascarreon@gmail.com>

[Quoted text hidden]

[Quoted text hidden]

## EXHIBIT 15

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yage Assembly, et al., | No. CV-20-02373-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Merrick Garland, et al., | |
| Defendants. | |

Plaintiffs have filed an Ex Parte Motion to Stay (Doc. 222) seeking to stay the Court's February 22, 2024 Discovery Order (Doc. 220) and any further discovery adjudications pending their appeal of the Discovery Order (*See* Doc. 221). Defendants filed a notice (Doc. 223) stating they intend to oppose Plaintiff's motion.

The Court will not grant a stay but will order expedited briefing on Plaintiff's motion. Defendants must file their opposition by **March 17, 2024**. Plaintiffs will then have until **March 22, 2024** to file a reply. All the Court's orders, including the February 22, 2024 Discovery Order (Doc. 220) remain in effect and the deadlines stand.

Accordingly,

. . .

. . .

. . .

. . .

. . .

EXHIBIT 15

1    **IT IS ORDERED** Defendants shall file a response to Plaintiff's motion (Doc. 222)

2  no later than **March 17, 2024**.  Plaintiff shall then have until **March 22, 2024** to file a

3  reply.

4    Dated this 7th day of March, 2024.

5

6

7                                          Honorable Roslyn O. Silver
8                                          Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 16

1

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

3

4 | Arizona Yagé Assembly; Winfield Scott
5 | Stanley III, in his capacity as Founder and
| Director of Arizona Yagé Assembly,

No. 20-cv-2373-ROS

6
Plaintiffs,

**STIPULATED PROTECTIVE ORDER
REGARDING CONFIDENTIAL
INFORMATION**

7

v.

8

9 | Merrick B. Garland, Attorney General of
| the United States, *et al.*,

10
Defendants.

11

12       With the agreement of the parties, the Court has determined that there is good cause

13 to issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) to govern the

14 disclosure, use, and handling by the parties and their respective agents, successors, personal

15 representatives, and assignees of certain information and items produced and received in

16 discovery in the above-captioned action.

17     **IT IS ORDERED** the Parties' Joint Motion for Protective Order (Doc. 215) is

18 **GRANTED**. The Court orders as follows:

19       1.    Plaintiffs and Defendants in the above-captioned action are permitted to

20 produce non-privileged information contained in law enforcement records and

21 communications or produced at a deposition or hearing that is law enforcement sensitive

22 and for official use only or that is otherwise prohibited from disclosure by the Privacy Act,

23 5 U.S.C. § 552a, *et seq.* (hereinafter referred to as "Protected Information"). The following

24 terms govern with respect to all such documents and information exchanged or disclosed

25 by the parties in this action, whether before or after the entry of this Protective Order

26 ("Order").

27       2.    **Good Cause Statement**. Defendants believe this action is likely to involve

28 the production of non-privileged information contained in law enforcement records and

EXHIBIT 16

1    communications or produced at a deposition or hearing.  This non-privileged information

2    is likely law enforcement sensitive and for official use only, in that it may regard such

3    things as law enforcement activities and operations, internal policies, processes and

4    procedures, and training materials, all of which may be protected from disclosure under the

5    Freedom of Information Act, 5 U.S.C. § 552(b)(7), or protected from disclosure under other

6    federal law, or which is generally unavailable to the public because its disclosure could

7    adversely impact such things as a person's privacy or welfare or the conduct of programs

8    or operations essential to the national interest, but which a court may order to be produced.

9    Some of this non-privileged information may also be information prohibited from

10    disclosure by the Privacy Act, 5 U.S.C. § 552a, *et seq.* (the "Privacy Act"), as it may be

11    personal information located in a Federal government "record" contained within a "system

12    of records" and therefore require the consent of that individual prior to disclosure unless

13    made "pursuant to the order of a court of competent jurisdiction."  *Id.* § 552a(b)(11).

14    Accordingly, to expedite the flow of information, to facilitate the prompt resolution of

15    disputes over confidentiality of discovery materials, to adequately protect information

16    Plaintiff and Defendants are entitled to keep confidential, to ensure that the Plaintiff and

17    Defendants are permitted reasonable necessary uses of such material in preparation for

18    trial, to address their handling at the end of the litigation, and serve the ends of justice, a

19    protective order for such information is justified in this matter.

20        3.    **Definitions**.

21            a.    "Named Party" shall mean any party to this action, including all of

22                its officers, directors, employees, consultants, retained experts, and

23                outside counsel of record (and their support staffs).

24            b.    "Non-Party" shall mean any natural person, partnership, corporation,

25                association, or other legal entity not named as a Party to this action.

26            c.    "Designating Party" shall mean the person, Party, or Non-Party who

27                designates information or documents as "Protected Information."

28

## EXHIBIT 16

d.  "Producing Party" shall mean the person, Party, or Non-Party producing discovery in this action.

e.  "Receiving Party" shall mean any party who receives or is shown discovery in this action.

f.  "Document" shall mean all items listed in Fed. R. Civ. P. 34(a)(1)(A) and (B).

4.  **Protected Information**.  The categories of Protected Information include:

a.  Information, documents or tangible things protected by the Privacy Act, 5 U.S.C. § 552a, *et seq*., without obtaining the prior written consent of the individuals to whom such records or information pertain.

b.  Personally Identifying Information (PII), which is information that permits the identity of an individual to be directly or indirectly inferred, or otherwise confidential information regarding any plaintiff, defendant, employee or former employee of any defendant, or Non-Party, including but not limited to date of birth, social security number, email addresses, phone numbers, mailing addresses, or compensation information, that would be protected or restricted from disclosure by statute, regulation, internal agency policy or guidance, but disclosure of which may be authorized by an order of this Court.

c.  Non-public information that is designated or treated as (i) Law Enforcement Sensitive (LES), as well as (ii) information that is protected or restricted from disclosure under the terms of any other statute or regulation, but which the Court may order be produced.

d.  All other protected documents, information, or tangible things not identified above that the parties agree in writing or the Court orders qualify for protection under Federal Rule of Civil Procedure 26(c).

3

# EXHIBIT 16

5. **Designations.** It shall be the duty of the party producing the Protected Information ("Producing Party") to give notice of information it believes in good faith is covered by this Order. A Party may designate information that it obtained from a Non-Party pursuant to this Order, if it believes in good faith that it qualifies as Protected Information under this Order. Protected Information shall be designated as such by stamping the phrase "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," or a similar marking, on each page of any document or record containing Protected Information prior to the production of such document or record. For Protected Information whose medium makes such marking impracticable, such as native electronic files, a Producing Party shall mark any CD-ROM or other storage medium, and/or any accompanying paper or email cover letter with "Confidential – Subject to Protective Order," or a similar marking. Categories of documents may be marked generally if the identification of individual documents is impracticable.

6. **Attorneys' Eyes Only.** If a producing party intends to designate something as "Attorneys' Eyes Only," the parties will confer about that designation and if there is a disagreement, will resolve it pursuant to the Court's procedures on a discovery disagreement.

7. **Designations – Testimony.** For any deposition or examination testimony, when the deponent, their counsel, or any Party notes that a question, answer, or line of questioning is likely to involve information subject to this Order or likely to result in the disclosure of Protected Information, that person should so state on the record or by the conclusion of the deposition should state on the record that they believe certain questions, answers, or lines of questioning are Protected Information. Any Party shall have twenty-one (21) days after receipt of the transcript to designate the deposition transcript, or portions thereof, as Protected Information by providing written notice to all counsel of record. During that twenty-one (21) day period, any questions, answers, or lines of questioning believed to be Protected Information as so stated on the record shall be treated

4

## EXHIBIT 16

1   as Protected Information until that twenty-one (21) day period elapses.  At the end of the

2   twenty-one (21) days, only those portions of the transcript so designated as Protected

3   Information by a Party through written notice to all counsel of record shall be considered

4   Protected Information. Also at the end of the twenty-one (21) day period, the non-

5   designating Party may challenge the designation of any such question, answer, or line of

6   questioning pursuant to the procedures set forth Paragraph 16.  Upon being informed that

7   certain portions of a transcript are designated as Protected Information, each Party must

8   have each copy in their custody, possession or control immediately marked with the

9   appropriate designation at the appropriate pages.

10        **8.**    **Access to Protected Information.**  Except as provided in this Order, all

11   Protected Information produced or exchanged subject to this Order shall be used solely for

12   the purposes of this action and for no other purpose whatsoever, and shall not be published

13   to the general public in any form, or otherwise disclosed, disseminated, or transmitted to

14   any person, entity, or organization, except in accordance with the terms of this Order.

15        9.    Notwithstanding Paragraph 6 of this Order, Documents designated

16   "Confidential - Subject to Protective Order" or a similar marking may be disclosed to

17   the following:

18           a.    The Court and its official personnel;

19           b.    Counsel of record for the parties;

20           c.    Associates and staff of the counsel of record for the parties, including

21                       agency counsel, paralegals, office clerks, and other support staff

22                       whose assistance is required by the counsel working on the case;

23           d.    Employees of the Federal Government with a need to have access to

24                       such documents in connection with this litigation, including

25                       supervisory officials of one of the Defendants or the Department of

26                       Justice, provided however that this Order shall not prevent any federal

27                       employee from having access to records to which such employee

28

5

# EXHIBIT 16

1   would normally have access in the regular course of his or her

2   employment;

3   e.   Outside experts, witnesses, consultants, or others retained in

4   connection with this action and their staff, to the extent such

5   disclosure is necessary for preparation for trial, at trial, or at other

6   proceedings in this case;

7   f.   Trial witnesses and deponents in discovery, court reporting personnel,

8   translators, and videographers during depositions;

9   g.   Outside litigation support personnel retained by counsel of record to

10   assist in the preparation and/or litigation of the action, including

11   contract attorneys, outside copying service vendors, or electronic

12   document management vendors; and

13   h.   Other persons by written agreement of counsel of record for the

14   parties or further order of the Court.

15   10.   All persons, including the Parties and their respective counsel, to whom

16   Protected Information is disclosed, are hereby prohibited from disclosing information

17   designated as Protected Information to any unauthorized person, except as provided in this

18   Order.

19   11.   Prior to disclosing any document designated as Protected Information to any

20   person listed in Paragraphs 9(d), (e), (f), (g), and (h), counsel shall provide such person with a copy

21   of this Order and obtain from such person the completed acknowledgment attached as

22   Attachment A stating that he or she has read this Order and agrees to be bound by its

23   provisions and subject to this Court's jurisdiction. All such acknowledgments shall be

24   retained by counsel for each respective party and shall be subject to *in camera* review by the

25   Court if good cause is demonstrated by the opposing party.

26   12.   **Copies, Summarizations, Extracts Protected.** Protected Information

27   designated under this Order may include, without limitation: (a) all copies, extracts, and

28

6

EXHIBIT 16

1    complete or partial summaries prepared from such documents, things, or information so
2    designated; (b) portions of deposition transcripts and exhibits to deposition transcripts that
3    contain, summarize, or reflect the content of any such documents, things, or information;
4    and (c) portions of briefs, memoranda, or any other writings filed with the Court and
5    exhibits thereto that contain, summarize, or reflect the content of any such documents,
6    things, or information, provided that any publicly filed document containing Protected
7    Information as defined above and in this paragraph meets the applicable standard required
8    to limit its public disclosure.  A Party may make a request to the Producing Party that
9    certain material contained in the materials specified in subsections (a)-(c) not be treated as
10   Protected Information, or be redacted. Before any material described in subsections (a)-(c)
11   is shared with anyone not authorized by this Protective Order to receive Protected
12   Information or filed on the public docket, the Receiving Party must first notify the
13   Producing Party of what Protected Information may be implicated in the materials it intends
14   to share or file, and the Parties shall meet and confer in good faith within seven (7) days of
15   any such request or notice.  If, after the meet and confer process, the Parties are not in
16   agreement as to whether the material in question is Protected Information, the Receiving
17   Party may initiate the joint statement process to present the issue for resolution to the Court.

18        13.    **Briefs or Filings Containing Protected Information.**  If the Receiving
19   Party seeks to file anything on the public docket containing or disclosing Protected
20   Information, it must either (1) seek and obtain Court approval to file the Protected
21   Information under seal; or (2) meet and confer with the Producing Party at least seven (7)
22   business days before filing regarding whether the Parties can agree that some or all of the
23   Protected Information can be filed on the public docket.  If the Receiving Party files
24   Protected Information under seal, then the Receiving Party must meet and confer with the
25   Producing Party within seven (7) business days after the sealed filing to attempt to agree
26   on proposed redactions for a public version of the sealed filing. If the parties cannot agree
27   on a public filing with some or all of the Protected Information redacted, the Receiving
28

7

EXHIBIT 16

1    Party may move the Court for a ruling on the dispute pursuant to the procedures in

2    Paragraph 16.

3         14.    **Court Hearings And Other Pre-Trial Proceedings.**  Before a Party seeks

4    to use Protected Information in open court in pre-trial proceedings, the Party intending to

5    use Protected Information shall provide reasonable notice of the potential disclosure of

6    Protected Information to the Court and the opposing party, so that the opposing Party or

7    any Non-Party may apply to the Court for appropriate protection in advance of its use in

8    open court, such as a request to clear the courtroom of persons not entitled to receive

9    Protected Information pursuant to Paragraph 7 or to close the proceedings.  The Parties

10   may agree in writing to exempt categories of Protected Information and/or particular

11   documents or information from the restrictions of this Order.  If the parties so agree in

12   writing, such exempted information may be disseminated without restriction and used in

13   this proceeding on the public record, pursuant to 5 U.S.C. § 552a(b)(11).

14        15.    **Testimony At Pretrial Court Hearings And Other Proceedings.**  All

15   testimony elicited during hearings and other proceedings that counsel for a Party or Non-

16   Party indicated on the record may be subject to the protections of this Order shall be

17   deemed Protected Information until the expiration of ten (10)days after delivery of a copy

18   of the transcript of the testimony by the court reporter to counsel who requested a copy of

19   the transcript.  Within the ten (10) day period following such mailing of the transcript, any

20   Party may move to designate all or any portion of the testimony as Protected Information.

21   Upon being informed that certain portions of a transcript are designated as Protected

22   Information, each Party must have each copy in their custody, possession, or control

23   immediately marked with the appropriate designation at the appropriate pages.

24        16.    **Challenge To Designations.**  At any time prior to the filing of trial Exhibit

25   lists , a Party may object to the designation of a document or information as Protected

26   Information by giving written notice via email to all counsel for the other Party and the

27   grounds for the objection.  The objecting Party shall request to meet and confer with the

28

## EXHIBIT 16

other Party prior to submitting the dispute to the Court for a ruling. If the dispute is not resolved consensually between the parties within seven (7) business days of receipt of such a notice of objections, the objecting party may move the Court for a ruling on the objection, in accordance with the Court's Case Management Order, ECF No. 34, at 3. The documents or information at issue must be treated as Protected Information until the Court has ruled on the objection or the matter has been otherwise resolved.

17. **Inadvertent Disclosure Of Protected Material.** The failure by a Producing Party to designate specific documents or information as Protected Information shall not, by itself, be deemed a waiver in whole or in part of a claim of confidentiality as to such documents or information. Upon written notice to the Receiving Party of such failure to designate, or of incorrect designation, the Receiving Party shall cooperate to retrieve disseminated copies, and restore the confidentiality of the inadvertently disclosed information beyond those persons authorized to review such information pursuant to Paragraph 8, and shall thereafter take reasonable steps to ensure that the Protected Information is treated in accordance with the designation. No person or Party shall incur any liability under this Order with respect to disclosure that occurred prior to the receipt of written notice of the mistaken designation.

18. **Disclosure To Unauthorized Persons.** If information subject to this Order is disclosed to any unauthorized person either through inadvertence, mistake, or otherwise without authorization by the Producing Party, or other than in the manner authorized by this Order, the person responsible for the disclosure shall immediately (a) inform the Producing Party of all pertinent facts relating to such disclosure, including without limitation, the name, address, and telephone number of the recipient and his or her employer; (b) use his or her best efforts to retrieve the disclosed information and all copies thereof; (c) advise the recipient of the improperly disclosed information, in writing, of the terms of this Order; (d) make his or her best efforts to require the recipient to execute an agreement to be bound by the terms of this Order in the form of the declaration attached to

## EXHIBIT 16

1    this Order as Exhibit A; and (e) take all other reasonable steps to prevent further disclosure

2    by or to the unauthorized person who received the Protected Information.

3         19.    **Good Faith Designations.**  Each Party agrees that designation of Protected

4    Information and responses to requests to permit further disclosure of Protected Information

5    shall be made in good faith and not: (a) to impose burden or delay on an opposing Party,

6    or (b) for tactical or other advantage in litigation.  Further, each Party agrees to make best

7    efforts to avoid as much as possible inclusion of Protected Information in briefs and other

8    captioned documents filed in court, in order to minimize sealing and designating such

9    documents as Protected Information.

10        20.    **Use Of Information Subject To Order.**  The Receiving Party's use of any

11   information or documents obtained from the Producing Party designated as Protected

12   Information pursuant to this Order shall be restricted to use in this litigation (subject to the

13   applicable rules of evidence and subject to the confidentiality of such materials being

14   maintained) and shall not be used by anyone subject to the terms of this agreement, for any

15   purpose outside of this litigation or any other proceeding between the Parties, except as

16   otherwise provided in this Order.

17        21.    **Meet And Confer.**  Prior to filing any motion or application before the Court

18   to enforce this Order, the moving party shall notify the other Parties in writing and meet

19   and confer in good faith in an attempt to resolve their dispute in accordance with the Court's

20   Case Management Order, ECF No. 34, at 3.  If the non-moving Party fails to meet and

21   confer within seven (7) business days of receiving notice under this Paragraph of the

22   moving Party's intent to file a motion or application to enforce this Order, the moving Party

23   may file the motion or application without such a conference.

24        22.    **Other Actions.**  If any Party or Non-Party who has received Protected

25   Information is (a) subpoenaed in another action, (b) served with a demand in another action

26   to which it is a Party, or (c) served with any legal process by one not a party to this action,

27   seeking information or material which was produced or designated as Protected

28

10

EXHIBIT 16

1    Information by any Party, that Party or Non-Party shall give prompt actual written notice

2    by e-mail within ten (10) business days of receipt of such subpoena, demand, or legal

3    process, to counsel for those who created the Protected Information prior to compliance

4    with the subpoena so as to allow those creators to seek protection from the relevant court(s).

5        23.   **Duration And Return**. Even after final disposition of this action, the

6    confidentiality obligations imposed by this Order shall remain in effect until a Designating

7    Party agrees otherwise in writing or a court order otherwise directs. This does not apply to

8    any Protected Information introduced as an exhibit for trial. For records the Parties intend

9    to disclose at trial, the obligations under this Order are inapplicable, and the Parties agree

10   to negotiate the terms of any renewed Protective Order for trial exhibits prior to the

11   commencement of trial. For Protected Information not disclosed at trial, the Parties and

12   any other person(s) or entity subject to the terms of this Order agree that the Court shall

13   retain jurisdiction over it and them for the purpose of enforcing this Order.   Final

14   termination of the litigation, including exhaustion of appellate remedies, shall not terminate

15   the limitations on use and disclosure imposed by this Order.

16       24.   Unless otherwise instructed by the Court, within sixty (60) days after final

17   conclusion of all aspects of this litigation, including any appeals, any party or person who

18   received Protected Information not disclosed at trial shall certify to the opposing parties

19   that those documents containing such Protected Information and that were not made public

20   at trial (i) have been returned to counsel of record for the Producing Party, or (ii) have been

21   destroyed. However, counsel of record for the Parties shall be entitled to retain all litigation

22   documents filed with the Court, including exhibits filed under seal, copies of depositions,

23   hearings, trial transcripts, and attorney work product containing Protected Information.

24   Such litigation documents and memoranda shall be used only for the purpose of preserving

25   files on this action, and shall not, without the written permission of the Designating Party

26   or an order of this Court, be disclosed to anyone other than those to whom such information

27   was actually disclosed, in accordance with this Order, during the course of this litigation.

28

EXHIBIT 16

25.     **Amendment Or Termination.**  This Order is without prejudice to the right of any Party to apply at any time for additional protection, or to amend, modify, or rescind the restrictions of this Order.  The Party must provide written notice to counsel of record for all parties in this action specifying the portion(s) of this Order it seeks to amend, modify, or rescind and any additional provisions it may seek to add to the Order at least seven (7) business days in advance of filing any such motion.  The parties expressly reserve the right to seek modification, amendment, or rescission of this Order by mutual agreement in writing.

26.     **Enforcement.**  All persons to whom Protected Information is disclosed shall be subject to the jurisdiction of this Court, for the purpose of enforcing this Order.  This Order shall continue in full force and effect, and shall be binding upon the parties and all persons to whom Protected Material has been disclosed, both during and after the pendency of this case.  Restrictions on the use of Protected Information disclosed and designated by Plaintiffs or Defendants shall be judicially enforceable  to prevent any forbidden use.

27.     **Limitations**.  Nothing in this Order shall be deemed to restrict in any manner the use by any Party of its own documents or materials.  Nothing in this Order should be construed as prohibiting a Non-Party from seeking additional protections of records or information that it owns or controls.

28.     **All Objections, Redactions, Withholdings, Rights Preserved.**  This Order is intended to provide a mechanism for handling the disclosure or production of Protected Information to which there is no objection other than confidentiality.   The protection afforded by this Order shall in no way affect a Party's right to withhold, redact documents or seek to designate information as:  (a) privileged under the Attorney-Client or other privilege, (b) protected by the Attorney Work Product Doctrine, (c) protected by the Law Enforcement Privilege, Deliberative Process Privilege, or other similar privilege; or (d) otherwise exempted from discovery under Rule 26 of the Federal Rules of Civil Procedure or under any law.  Additionally, this Order shall not prejudice the right of a Party

EXHIBIT 16

1    to:  (a) seek additional protective treatment for any information it considers to be very

2    highly sensitive, or otherwise exempt from disclosure, such that the protections in this

3    Order would be insufficient, (b) object to the designation of any document or information

4    as Protected Information, or (c) seek any modification of or relief from any provision of

5    this Order, either generally or as to any particular Protected Information, by properly

6    noticed motion with notice to all Parties and their respective counsel.

7          29.    This Order does not constitute any ruling on the question of whether any

8    particular document or category of information is subject to the Privacy Act or is otherwise

9    properly discoverable, and does not constitute any ruling on any potential objection to the

10   discoverability, relevance, or admissibility of any document or information.

11         30.    Nothing in this Order waives Defendants' right to use, disclose, or

12   disseminate the Protected Information in accordance with the Privacy Act or other statutes,

13   regulations, or policies.

14         31.    Nothing in this Order shall be construed as a waiver of any defense, right,

15   objection, or claim by any party, including any objection to the production of documents

16   and any claim of privilege or other protection from disclosure, and this Order shall not be

17   precedent for adopting any procedure with respect to the disclosure of any such other

18   information.

19         32.    Nothing in this Order shall require production of information that is

20   prohibited from disclosure (even with the entry of this Order) by other applicable

21   privileges, statutes, regulations, or authorities.

22         33.    Pursuant to 5 U.S.C. § 552a(b)(11), Defendants are authorized to disclose to

23   Plaintiff's counsel, the Court, and those persons defined in Paragraph 9 of this Order,

24   records or information containing Privacy Act-protected material, without redacting such

25   material, without obtaining prior written consent of the individuals whose names,

26   addresses, and other identifying information may be present in such documents. Such

27   disclosure is subject to the conditions set forth in this Order. So long as counsel for

28

13

# EXHIBIT 16

1  Defendants exercise reasonable efforts to prevent the disclosure of information protected

2  from disclosure by the Privacy Act, 5 U.S.C. § 552a, other than as permitted under the

3  terms of this Order, disclosures under this Order, including inadvertent disclosures of such

4  information, shall not be construed as a violation of the Privacy Act.

5        34.    No deadlines set forth herein shall conflict with either the U.S. District Court

6  for the District of Arizona Local Rules or any order by the Court. In the instance of a

7  conflict, the deadlines set forth by the Local Rules or any order by the Court shall be the

8  deadlines herein.

9        Dated this 31st day of January, 2024.

Honorable Roslyn O. Silver
Senior United States District Judge

14

# EXHIBIT 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Arizona Yagé Assembly; Winfield Scott
Stanley III, in his capacity as Founder and
Director of Arizona Yagé Assembly,

           Plaintiffs,

    v.

Merrick B. Garland, Attorney General of
the United States, *et al.*,

           Defendants.

No. 20-cv-2373-ROS

**CONFIDENTIALITY UNDERTAKING**

I hereby certify that: (i) I have read the Protective Order (the "Order") that has been entered by the Court in the above-captioned matter, and I understand its terms; (ii) I understand that Confidential Information subject to the terms of the Order is being provided to me pursuant to the terms of the Order; (iii) I agree to be fully bound by the provisions of the Order, including its provisions restricting disclosure of Confidential Information under the Order and limiting the use of such material; (iv) I hereby submit to the jurisdiction of the United States District Court for the District of Arizona for purposes of enforcement of the Order; and (v) I understand that violation of the Order may be punishable by contempt of Court and may be subject to such further relief as the Court may order.

Dated: _____    Signature: _____

                                      Printed Name: _____