CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Circle
Tel: 928-975-2191
Email: chascarreon@gmail.com

Attorney for Proposed Intervenor Plaintiff
Taylor Cox, personally and as
Class Representative

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly, | No. 2:20-cv-2373-ROS |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE** |
| v. | |
| Merrick B. Garland, Attorney General of the United States, *et al.*, | |
| Defendants. | |

Table of Contents

Table of Authorities ................................................................................................. 3

FACTUAL BACKGROUND ...................................................................................... 6

    A.    Intervenors Seek to Intervene in the Plaintiffs' RFRA Lawsuit  Seeking to Obtain a Judicial Exemption from the Controlled Substances Act to Engage in Free Exercise Use of Ayahuasca ................................................................................................... 6

    B.    Ayahuasca Religion ....................................................................................... 7

        a.    Ayahuasca Religion Derives from Ancient Amazonian Cultures .................... 7

        b.    Scientific Evidence on the Safety of Drinking Ceremonial Ayahuasca ........... 7

    C.    AYA Practices Ayahuasca Religion in the District of Arizona ........................... 8

    D.    The Federal Defendants Are Seeking Discovery that is Intended to Harm Intervenor Plaintiffs' First Amendment Rights of  Free Association and Free Exercise 9

STANDARD OF REVIEW ....................................................................................... 13

ARGUMENT ........................................................................................................... 14

I.    Federal Rule of Civil Procedure 24(a)(2) Grants Intervenors the Right to Intervene in this Action ........................................................................................................... 14

    A.    Intervenor's Motion to Intervene is timely ......................................................... 14

    B.    Intervenors have a protective interest and would suffer practical impairment of that interest ................................................................................................................. 16

    II.    Alternatively, the Court Should Permit Intervenors to Intervene Pursuant to Federal Rule of Civil Procedure 24(b) ................................................................................ 18

III.    CONCLUSION ................................................................................................... 19

# Table of Authorities

**Cases**

*Albertson v. Subversive Activities Control Bd.*,
382 U.S. 70, 86 S. Ct. 194 (1965) ................................................................. 19

*Arizonians for Fair Elections v. Hobbs*,
335 F.R.D. 261 (D. Ariz. 2020) ........................................................... 15, 20

*Cal ex rel. Lockyear v. United States*,
450 F.3d 436 (9th Cir. 2006) ..................................................................... 17

*Citizens for Balanced Use v. Mon. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ..................................................................... 17

*Construction Trades v. Spellman*,
684 F.2d 627 (9th Cir. 1982) ..................................................................... 18

*Idaho v. Freeman*,
625 F.2d 886 (9th Cir. 1980) ..................................................................... 18

*in Church of the Holy Light of the Queen v. Mukasey*
Church of the Holy Light of the Queen v. Mukasey, 615 F.Supp.2d 1210 (Oregon,
2009) ...................................................................................................... 7

*Katz v. United States*,
389 U.S. 347 (1967) ................................................................................. 18

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ............................................................... 16, 17

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ................................................................... 16

*Smith*,
830 F.3d ................................................................................................ 16

*Smith*,
830 F.3d at 864 ....................................................................................... 19

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ............................................................... 16, 17

*Vegetal*,
546 U.S. 418 (2006) .................................................................................. 7

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ............................................................... 17, 18

**The Constitution and Statutes**

Fifth Amendment to the U.S. Constitution ....................................... 18

21 U.S.C. § 801 ............................................................................... 8

**Federal Rules**

F.R.Civ.P. 26 .................................................................................. 6

Federal Rule of Civil Procedure 24 ........................................ 7, 14, 15, 19, 20

Rule 24 ...................................................................................... 18, 20

4

## MEMORANDUM OF POINTS AND AUTHORITIES

This Motion is brought on behalf of Taylor Cox for himself and as the class representative of  a class of 5,239 members, donors and email correspondents of the Arizona Yagé Assembly   ("Intervenor Plaintiffs") and Winfield Scott Stanley III. Intervenor Plaintiffs seek leave to intervene in this action to bring the attached Complaint in Intervention.

The Complaint in Intervention is submitted because the Department of Justice, the Drug Enforcement Administration, the Department of Homeland Security and Customs and Border Protection ("Defendants") have propounded eight (8) interrogatories and seven (7) requests for production of documents, and obtained an order (the "Discovery Order," Dkt. # 220) compelling Arizona Yagé Assembly and Winfield Scott Stanley III (jointly "Plaintiffs") to answer the interrogatories in full and produce unredacted documents that will reveal Intervenor Plaintiffs' names, tens of thousands of personal emails with AYA about religious matters, records of donations and ceremonial contributions, records of medical conditions, travel activity, and many other personal matters.

This trove of personal information about Intervenor Plaintiffs is all contained in digital documents that are the personal papers of Intervenor Plaintiffs, the vast majority of which are personal emails that are kept under user name and password security, and enjoy protection from search and seizure by federal agencies until and unless the Defendants satisfy the requirements of the warrant requirement of the Fourth Amendment, which they have not done here.

The Complaint in Intervention alleges a claim for Declaratory Judgment encompassing all Constitutional violations alleged, and a claim under RFRA for using the discovery process to impose a substantial burden on the religious free exercise of all Intervenor Plaintiffs.

As interim relief, Intervenor Plaintiffs intend to Move for a Protective Order under F.R.Civ.P. 26 to prevent the disclosure of Intervenor Plaintiffs' identities, emails, records of donations and ceremonial contributions, records of medical conditions, travel activity,

and other personal matters (the "Private Data"), and pending the decision on the Motion for a Protective Order, Intervenor Plaintiffs intend to seek an interim stay on the Discovery Order (Dkt. # 220).

Accordingly, for the reasons set forth herein, Intervenors respectfully request to be granted leave to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, by permission pursuant to Federal Rule of Civil Procedure 24(b)(1).

## FACTUAL BACKGROUND

**A. Intervenors Seek to Intervene in the Plaintiffs' RFRA Lawsuit  Seeking to Obtain a Judicial Exemption from the Controlled Substances Act to Engage in Free Exercise Use of Ayahuasca**

Proposed Intervenor Plaintiffs are the entire class of persons who correspond (primarily via email) with Plaintiffs.  The vast majority of Intervenor Plaintiffs are members of AYA, and the remainder are persons corresponding with AYA or Mr. Stanley in his capacity as the church founder and director.

Ayahuasca religion in the United States has grown continuously since the publication of a unanimous 2006 Supreme Court decision in the seminal RFRA case of *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), holding a Brazilian church's sacramental use of Ayahuasca to be an act of First Amendment free exercise, and holding that visionary churches can file RFRA claims to enjoin the Defendants from prosecuting their members and seizing their Ayahuasca sacrament.  The decision of the Oregon District Court in *Church of the Holy Light of the Queen v. Mukasey*, 615 F.Supp.2d 1210 (Oregon, 2009), recognizing the rights of a second church to receive a RFRA exemption from the Controlled Substances Act for the use of ceremonial Ayahuasca, further stimulated interest in Ayahuasca religion in the United States.

Plaintiffs filed the original lawsuit alleging that AYA and Mr. Stanley are substantially burdened by laws prohibiting importation, distribution, and possession of

6

Ayahuasca, an herbal tea that contains a small amount of Dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act 21 U.S.C. § 801 et. seq. (the "CSA").

On May 15, 2022, AYA and Winfield Scott Stanley III ("Stanley") filed a Fifth Amended Complaint against the Agency Defendants in the above-captioned case. AYA and Stanley filed the Fifth Amended Complaint on behalf of AYA's members – the proposed Intervenor Plaintiffs – seeking to secure the religious rights of AYA to freely practice Ayahuasca religion.

On May 4, 2023, this Court issued an order denying the Agency Defendants' Motion to Dismiss. On January 22, 2024, this Court ruled that "Plaintiff AYA may not assert the Fifth Amendment on behalf of its members in responding to Defendants' discovery requests." (Exhibit 5; Order, Dkt. # 210.)

**B. Ayahuasca Religion**

  **a. Ayahuasca Religion Derives from Ancient Amazonian Cultures**

Ayahuasca religion arose in the Amazonian regions now called Peru, Brazil, Colombia, Bolivia, Ecuador, and other South American countries where indigenous people have maintained traditions of visionary worship and medicinal practice since long before the conquest by European colonizers in the sixteenth and seventeenth centuries.[1]

  **b. Scientific Evidence on the Safety of Drinking Ceremonial Ayahuasca**

Ayahuasca is an herbal tea created by boiling and steeping two plants that grow in the Amazonian jungles. It is pharmacologically active, and contains a small amount of Dimethyltryptamine, a Schedule I controlled substance. The religious use of Ayahuasca has been extensively studied, and the declaration of Plaintiffs' expert witness Dr. Paulo Barbosa, Adjunct Professor at the University of Ilheus, Brazil, sets forth a summary of the

---

[1] Radiocarbon dating of "a documented case of a ritual bundle containing both harmine and dimethyltryptamine, the two primary ingredients of ayahuasca" estimates the bundle to be 1,000 years old. The bundle was found at a level of 3,900 meters in the Lipez Altiplano of southwestern Bolivia in an area showing evidence of human occupations for the last 4,000 years. Chemical evidence for the use of multiple psychotropic plants in a 1,000-year-old ritual bundle from South America; https://www.pnas.org/doi/10.1073/pnas.1902174116

peer reviewed science regarding religious use of Ayahuasca.  (Dkt. # 33-11.)

In his closing summary, Dr. Barbosa states:  "Ayahuasca consumed in a religious context is not being used as a drug of abuse, nor does the religious use of ayahuasca lead to the abuse of other drugs; instead, religious ayahuasca users generally abandon abuse of alcohol after they become members of an ayahuasca church. These data are backed up by pre-clinical evidence indicating that ayahuasca blocks many abuse-related behavioral effects of drugs of abuse."  (Dkt. # 33-11; Barbosa Opinion Letter, page 10.)

**C. AYA Practices Ayahuasca Religion in the District of Arizona**

AYA organized as an Arizona nonprofit corporation with Stanley as Director in 2015, and has held ceremonies every two weeks since January 14, 2022 in its ceremonial "Maloka," a circular temple in the desert on the outskirts of Tucson, Arizona. Ceremonies are based around the sharing of Ayahuasca in a sober atmosphere where Stanley and other AYA facilitators lead the congregation in the practice of visionary communion.  A lead facilitator administers the ceremony, that begins with cleansing the ceremonial space, prayer and the invocations of positive intentions, and leads into a supervised administration of small amounts of Ayahuasca tea.  The "medicina," as it is traditionally known, facilitates an experience of Divine communion in which the deepest concerns in a person's life are explored, and seen in new perspectives.

As a matter of doctrinal belief, AYA believes that each person who sits in ceremony becomes a member of the church by the operation of the spirit.  Living this belief as a congregation, AYA has grown to have a large number of members.

AYA's data system for managing attendance at AYA ceremonies relies on website submissions, telephone, and email communications.  Thus, the names of AYA members, their email addresses, phone numbers and text messages, emails exchanged with AYA, and confidential medical and personal information, is in the custody of AYA. Additionally, there are AYA donors and other persons with whom AYA has correspondence, including scientists conducting studies of AYA members.

**D. The Federal Defendants Are Seeking Discovery that is Intended to Harm Intervenor Plaintiffs' First Amendment Rights of Free Association and Free Exercise**

On September 1, 2009, Defendant Drug Enforcement Agency ("Defendants") served discovery requests on AYA and Stanley styled "First Set of Interrogatories to Plaintiffs," attached as Exhibit 2 to the Proposed Complaint in Intervention. In these discovery requests and others, Defendants demanded that AYA provide the names and addresses of every person who has participated in an activity. In other words, the Federal law enforcement agency vested with authority to prosecute narcotics violations has demanded the names of individuals who participated in a religious ceremony that Defendants deem illegal.

Also on September 1, 2023, Defendants served discovery requests styled "Defendants' First Set of Requests for Production." Defendants' First Set of Requests for Production are attached as Exhibit 3 to the Proposed Complaint. In these discovery requests and others, Defendants demanded:

    a. Interrogatory No. 4: Identify each and every person who has attended or participated in, or who has requested to attend or participate in, one of your ceremonies. For each person identified, indicate when the person attended or participated, or requested to attend or participate; whether the person was permitted to attend or participate and any explanation as to why or why not the person was permitted to attend or participate; and how many times the person has attended or participated in one of your ceremonies.

    b. Interrogatory No. 10: Identify the date and location of each and every instance in which you held a ceremony, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. For each and every instance identified, indicate every substance consumed by any person or offered for consumption, who was present at the ceremony, who was responsible for handling any substances consumed

by any person or offered for consumption, and who served in a leadership role and/or position of authority at the ceremony (*e.g.*, Minister of the Assembly, "lead facilitator," other facilitator).

   c.  Interrogatory No. 11:  Identify each and every instance in which you have stored, prepared, stored, distributed, dispensed, obtained, imported, exported, destroyed/disposed of, transported, transferred to another person, or otherwise handled ayahuasca. For each instance identified, indicate when the activity occurred, any and all persons involved in the activity, including any senders and/or recipients, and any steps you required the person or persons to take to be granted permission to perform the activity (including, but not limited to, training, background check, use of key or code).

   d.  Interrogatory No. 16:  Identify each and every one of the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback."16 For each individual identified, describe the "knowledge and feedback" sought or shared.

   e.  Interrogatory No. 18:  Identify each and every person who wrote, edited, reviewed, commented on, or otherwise received a draft of the documents attached to your original motion for a preliminary injunction in this case, Dkt. No. 33: "AYA Tenets and Precepts"17; "Ceremonial Instructions"18; "Code of Ethics"19; the questionnaire filed in this case as DKT. No. 33-6; and the confirmation letter filed in this case as Dkt. No. 33-7.

   f.  Interrogatory No. 20:  Identify each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies. For each instance identified, please provide the amount received, the date received, and the purpose of payment, donation, or other contribution.

g.  Interrogatory 21:  For each document used at your ceremonies or trainings, or that you otherwise intend to rely upon to demonstrate the existence of what you allege are your "sincerely held religious beliefs and practices," identify each and every person who wrote, edited, reviewed, commented on, or otherwise received drafts of the document.

h.  Interrogatory 23:  Identify each and every organization or association of which AYA or one of the named Plaintiffs is a member, or have requested to be a member. For each organization or association identified, indicate when AYA or one of the named Plaintiffs first requested to become a member, how long AYA or one of the named Plaintiffs has been a member, whether AYA or one of the named Plaintiffs pays dues or anything else of value to the organization or association, and any individuals at the organization or association with whom AYA or one of the named Plaintiffs communicates or has communicated.

i.  RFP 7:  Produce any and all documents that contain communications with any and all individuals who are members of AYA relating to membership in AYA, your ceremonies, and your tenets and beliefs.

j.  RFP 8:  Produce any and all copies of the "AYA attendee roster."

k.  RFP 11:       Produce any and all documents that contain communications with any and all individuals who have facilitated, participated in, requested to participate in, or attended one or more of your ceremonies. This request includes, but is not limited to, any and all communications sent to or from prospective or actual ceremony participants, including copies of the questionnaire filed in this case as Dkt. No. 33-6 in any state of completion as well as any communications with prospective or actual participants regarding ceremony logistics (time, place, etc.), ceremony eligibility (questions from prospective participants about eligibility, explanations from

11

you about eligibility to participate, etc.), and other ceremony- or ayahuasca-related inquiries.

l.   RFP 12:  Produce any and all documents regarding or relating to your ceremonies, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. This request includes, but is not limited to, any and all documents regarding or relating to the location, time, set and setting, duration, frequency, format, cost, payment, advertising, and attendance of your ceremonies, as well as post-ceremonial integration.

m.   RFP 13:  Produce any and all documents regarding or relating to each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies.

n.   RFP 20:  Produce any and all communications to or from any and all individuals who have been involved in the storage, preparation, security, distribution, dispensing, obtaining, importing, exporting, destroying/disposing, transporting, transferring to another person, or otherwise handling of ayahuasca.

o.   RFP 21:  Produce any and all documents that identify, describe, refer to, or contain communications to or from any and all individuals from whom you seek guidance or consultation, whether or not within your organization, including, but not limited to, the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback," as well as and any association of psychedelic churches.

On December 20, 2024, Defendants served a Second Set of Interrogatories, attached as Exhibit 4 to the Proposed Complaint, of which several of the demands again specifically seek to expose the names of members, donors and correspondents to government view without justifiable cause or legal grounds.

Not only do the Defendants seek to compel the identity of Intervenor Plaintiffs, they also seek to end-run the Fourth Amendment's warrant requirement, and obtain potentially incriminating information by using the civil discovery process as a government search designed to gather information about activity the Defendants currently characterize as illegal.

The names and addresses of AYA's congregants are irrelevant to the claims asserted under RFRA by AYA and Stanley on behalf of AYA's congregation.  Indeed, Defendants do not have a legitimate litigation purpose for demanding the names and addresses of all AYA congregants.  Defendants have turned the discovery process into a weapon by demanding that AYA produce its membership list to enforcement agencies. Even if Defendants' course of conduct here were not malicious (which Intervenor Plaintiffs do not concede), the effect of these requests is to force AYA to choose between obedience to their religion and court sanction.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who … claims ***an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest***, unless existing parties adequately represent that interest."  (Emphasis added.)  Thus, a movant is entitled to intervene as a matter of right when the movant demonstrates the following four elements: (1) the intervenor's motion is timely; (2) the intervenor has "a significantly protectable interest relating to ... the subject of the action," (3) the intervenor is "so situated that the disposition of the action may as a practical matter impair or impede the intervenor's ability to protect that interest"; and (4) the intervenor's interest is "inadequately represented by the parties to the action." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)) (internal quotations and alteration omitted). Although a proposed intervenor bears the burden of establishing these four elements, "the

1   requirements for intervention are to be broadly interpreted in favor of intervention."
2   *Id.*(quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

3        Alternatively, even if the Court is not persuaded that the Intervenor Plaintiffs are
4   entitled to intervene as a matter of right, permissive intervention is allowed where the
5   movant "has a claim or defense that shares with the main action a common question of law
6   or fact." Fed. R. Civ. P. 24(b)(1)(B). "[A] court may grant permissive intervention where
7   the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the
8   motion is timely; and (3) the applicant's claim or defense, and the main action, have a
9   question of law or a question of fact in common." *Arizonians for Fair Elections v. Hobbs,*
10  335 F.R.D. 261 (D. Ariz. 2020) (quoting *United States v. City of Los Angeles*, 288 F.3d
11  391, 403 (9th Cir. 2002) (citation omitted). "The district court is given broad discretion to
12  make this determination." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

## ARGUMENT

14       Intervenors satisfy the criteria to intervene as a matter of right pursuant to Federal
15  Rule of Civil Procedure 24(a)(2), and certainly those for permissive intervention. One way
16  or the other, the Court should not remain blind to the interests of the very congregants
17  whose rights are being asserted by AYA. The court should grant the motion to intervene
18  and permit the congregants to assert their rights, which are being substantially impaired by
19  the Federal Defendants' unnecessary and vindictive manner of conducting discovery in this
20  case.

### I.   Federal Rule of Civil Procedure 24(a)(2) Grants Intervenors the Right to Intervene in this Action

23       There are four elements to intervention as of right under Federal Rule of Civil
24  Procedure 24(a)(2): timeliness, protectable interest, practical impairment, and inadequate
25  representation. Intervenors satisfy each of these elements.

26      **A. Intervenor's Motion to Intervene is timely**

27       "Timeliness is determined by the totality of the circumstances facing would-be
28  intervenors," taking into account the stage of the proceedings, the prejudice to other parties,

and the reason for and length of the delay before seeking intervention." *Smith*, 830 F.3d at 854.  "Timeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).

In this case, the stage of these proceedings is at a critical inflection point where Intervenor Plaintiffs have an urgent need to be heard.  Although these proceedings commenced in the Northern District of California in May 2020, the parties only recently started the discovery process in June 2023 when the Court issued its first discovery scheduling order.

"The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties."  *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999); *accord, Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).  In September 2023, Defendants sought discovery that threatened to impinge upon the statutory and Constitutional rights of Plaintiffs and Intervenor Plaintiffs, and this Court held on January 22, 2024, that AYA was not able to assert the Fifth Amendment rights of its members. (Order, Dkt. # 210; Exhibit 5 to Proposed Complaint in Intervention.)  In its February 22, 2024 Discovery Order (Dkt. # 220), the Court found against Plaintiffs' claims of First Amendment Privilege, and also held that the Fourth Amendment rights of Intervenor Plaintiffs provided no basis for Plaintiffs to not provide discovery of matters, notwithstanding Plaintiffs' assertion that the matters inquired into could only be known and disclosed by going through the private electronic papers of the Intervenor Plaintiffs as to which they have a reasonable expectation of privacy.

Promptly upon the entry of the Discovery Order (Dkt. # 220), Intervenor Plaintiffs are seeking intervention to protect the very rights the Court has ruled cannot be adequately represented by AYA and Stanley.  Intervenor Plaintiffs have thus acted promptly to address new issues implicating Plaintiff Intervenor's First Amendment privileges, Fourth Amendment property and privacy interests, and Fifth Amendment rights to be free of compelled self-incrimination.  Intervenor Plaintiffs are the only

15

persons capable of defending themselves against the Constitutional injuries that the disclosure sought by Defendants' Demands will cause to the Congregation.

Further, no party will be prejudiced by Intervenor Plaintiffs' participation in this case. The only prejudice that is relevant to this inquiry "is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented . . . ." *Smith*, 830 F.3d at 857. Intervenors could not have anticipated that the Federal Defendants would seek to weaponize the discovery process. Once it became clear that the Federal Defendants would not withdraw their demand for the names of all of AYA's members, Intervenors organized themselves and promptly sought to join this litigation.

Intervenor Plaintiffs have not delayed in seeking the right to intervene. At this juncture, Intervenor Plaintiffs' religious rights have been – and continue to be – under attack from the Defendants. Accordingly, Intervenor Plaintiffs' motion is timely.

## B. Intervenors have a protective interest and would suffer practical impairment of that interest

A proposed intervenor has a protective interest sufficient for intervention if "the interest is protectable under some law" and "there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011) (internal quotations omitted). Put simply, "a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Cal ex rel. Lockyear v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Thus, the question of ***whether proposed intervenors have a protectable interest is intertwined with the third element*** of the mandatory intervention analysis: ***whether the proposed intervenors would suffer a practical impairment of its interests***.

"The 'interest' test is not a bright-line rule." *Alisal Water Corp.*, 370 F.3d at 919. It is a fact-bound inquiry and "no specific legal or equitable interest need be established." *Citizens for Balanced Use v. Mon. Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011). In fact,

1   Rule 24(a)(2) does not require a specific legal or equitable interest . . . .the 'interest' test is

2   primarily a practical guide to disposing of lawsuits by involving as many apparently

3   concerned persons as is compatible with efficiency and due process." *Wilderness Soc.*, 630

4   F.3d at 1179 (citation and quotation marks omitted).

5       As explained in the advisory committee notes to Rule 24(a)(2), "if an [applicant]

6   would be substantially affected in a practical sense by the determination made in an action,

7   [the applicant] should, as a general rule, be entitled to intervene. . . ." This has entitled

8   entities with less substantial interests than those of the Intervenor Plaintiffs to intervene as

9   a matter of right. *See, Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980)(National

10  Organization for Women had the right to intervene in a suit challenging procedures for

11  ratification of the proposed Equal Rights Amendment to the Constitution of the United

12  States); *Construction Trades v. Spellman*, 684 F.2d 627, 629, 630 (9th Cir. 1982), cert.

13  denied, 461 U.S. 913 (1983)(public interest not protected by the statute entitled to intervene

14  as a matter of right in an action challenging the legality of a measure it had supported).

15      *First*, Defendants' civil discovery in the case at bar specifically targets Intervenor

16  Plaintiffs because of their religious activity.  Defendants want to expose Intervenor

17  Plaintiffs in order to impose substantial burdens and deter people from associating with

18  AYA and engaging in Free Exercise.

19      *Second*, Intervenor Plaintiffs have a Fourth Amendment privacy interest in

20  protecting their electronic and paper communications with AYA.  In the landmark case of

21  *Katz v. United States*, 389 U.S. 347 (1967), the Supreme Court established a "reasonable

22  expectation of privacy," in which communications were protected regardless of location

23  from unreasonable search and seizures.  Here, Defendants are using the civil discovery

24  process as a governmental warrantless search.

25      *Third*, Intervenor Plaintiffs have a protectable right under the Fifth Amendment to

26  the U.S. Constitution which provides in relevant part that no person "shall be compelled in

27  any criminal case to be a witness against himself."  Defendants are infringing upon

28  Intervenor Plaintiffs' Fifth Amendment rights by demanding production of AYA's

1   membership list – as well as documents that could be used to re-create AYA's membership

2   list – because the act of production itself can be used as incriminating evidence.  Albertsons

3   v. Subversive Activities Control Board,

4        *Fourth*, Intervenor Plaintiffs did not stipulate to the Protective Order (Dkt. # 217)

5   entered in the case, and it does not protect Intervenor Plaintiffs' rights.  Thus, it provides

6   no predicate for waiving those rights.  This is true of all the Constitutional rights injured

7   by the Discovery Order (Dkt. # 220), and particularly true of the Fifth Amendment rights.

8   "'[N]o [immunity] statute which leaves the party or witness subject to prosecution after he

9   answers the criminating question put to him, can have the effect of supplanting the privilege

10   . . . ,' and … such a statute is valid only if it supplies 'a complete protection from all the

11   perils against  which the constitutional prohibition was designed to guard . . .' by affording

12   'absolute immunity against future prosecution for the offence to which the question

13   relates.'"  *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 80, 86 S. Ct. 194,

14   199 (1965).

15        **C.  Intervenors' interests are not adequately represented by the parties**

16        On January 22, 2024, the Court ruled that AYA and Mr. Stanley cannot represent

17   the Fifth Amendment claims of Intervenor Plaintiffs. (Order, Dkt. # 210, 2:11-12.)

18   Intervenor Plaintiffs are therefore entitled to intervene in this action as a matter of right

19   because their interests are not adequately represented.  This final element requires only a

20   minimal showing that the existing parties' representation may be inadequate.  *Smith*, 830

21   F.3d at 864 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10

22   (1972)).  Since the Court has ruled that Plaintiffs may not assert the constitutional rights of

23   Intervenor Plaintiffs, they appear to assert those rights directly.

24   **II.   Alternatively, the Court Should Permit Intervenors to Intervene Pursuant**

25   **to Federal Rule of Civil Procedure 24(b)**

26        In the event that the Court does not grant Intervenors' Motion to Intervene in this

27   action pursuant to Federal Rule of Civil Procedure 24(a)(2), it should nonetheless permit

28   Intervenors to intervene pursuant to Rule 24(b).  In the case of permissive intervention, a

movant *need only demonstrate jurisdiction, timeliness, and that they have claims or defenses that share a common question of law or fact* with the main action. *Arizonians for Fair Elections*, 335 F.R.D. at 263.

Here, this Court has jurisdiction over Intervenor Plaintiffs' RFRA and Constitutional claims, and this motion is timely for the reasons discussed in Argument section I.A., above.  Further, Intervenor Plaintiffs' claim against the Federal Defendants as set forth in the accompanying Complaint plainly shares common questions of law and fact with AYA's claims against the Defendants – namely, whether the Federal Defendants have substantially burdened their Free Exercise and Constitutional rights.  Intervenor Plaintiffs' claims are based on the reality that AYA is a Visionary Church and its congregants engage in the Free Exercise by participating in Ayahuasca tea ceremonies.  These rights are highly valued by AYA's congregants, are based in statutory and constitutional rights, and are at the heart of these proceedings.

As such, even if Intervenors did not qualify for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) – which they do – the Court should permit them to intervene pursuant to Rule 24(b).

## III.    CONCLUSION

For the reasons discussed above, the Court should grant this motion and allow Intervenors to intervene in this action and order the Clerk of Court to enter the attached Complaint in Intervention against Defendants into the docket and issue the appropriate summons to be served on the Defendants.

Dated:  March 12, 2024              CHARLES CARREON

                                   /s/ Charles Carreon_____
                                   CHARLES CARREON (CSB #127139)
                                   Attorney for Proposed Intervenor Plaintiff
                                   Taylor Cox, personally and as
                                   Class Representative