CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Circle
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com
Attorney for Proposed Intervenor Plaintiff
Taylor Cox, personally and as
Class Representative

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br><br>and<br><br>Taylor Cox, on behalf of himself and others similarly situated,<br><br>Intervenor Plaintiffs,<br><br>v.<br><br>Merrick B. Garland, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373-ROS<br><br>**INTERVENORS CLASS ACTION COMPLAINT IN INTERVENTION**<br><br>**1. DECLARATORY JUDGMENT**<br><br>**2. RELIGIOUS FREEDOM RESTORATION ACT** |

1. Plaintiff Taylor Cox, on behalf of himself and other similarly situated, as intervenors (collectively, "Intervenor Plaintiffs"), brings this Complaint in Intervention for Declaratory Relief under 28 U.S.C. § 2201-2202 on his own behalf and as representative for the class of congregants of the Arizona Yage Assembly ("AYA"), seeking a declaration that the Defendants' discovery requests violate Free Exercise and Constitutional rights. Plaintiffs further seek injunctive relief under 42 U.S.C. § 2000bb-1(c), the Religious Freedom Restoration Act ("RFRA"), to relieve Intervenor Plaintiffs from the substantial burdens on the free exercise of their religion alleged herein.

.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 USC §§ 1331, because it is an action arising under the Constitution and federal statutes.

3. This Court has authority pursuant to 28 U.S.C. §§ 2201-2202, to grant declaratory relief and to issue preliminary and permanent injunctions.

4. Venue is proper under 28 USC § 1391(e)(1)(c) against the defendants, all officers of agencies of the United States acting in their official capacities, because Plaintiff is a member of the AYA Visionary Church which is headquartered in Arizona, and because a substantial part of the events or omissions giving rise to the claim occurred in Arizona.

## THE PARTIES

5. Plaintiff Taylor Cox is an adult resident of Oklahoma. Plaintiff Cox is, among other things, a former U.S. Marine and a member of AYA.

6. Intervenor Plaintiffs are the 5,239 members, donors and email correspondents of AYA and Stanley whose rights are injured by the discovery proceedings in this case. Intervenor Plaintiffs are similarly situated to Plaintiff Cox.

7. The defendants identified in this paragraph are "the Defendants." Defendant Merrick Garland, Attorney General of the United States, is named in his capacity as Chief Law Enforcement Officer of the United States, head of the Department of Justice ("DOJ"), and the ultimate head of the Drug Enforcement Agency ("DEA"). Defendant Anne Milgram is named in her official capacity as Administrator of the DEA. Defendant Alejandro Mayorkas is named in his official capacity as the Secretary of the Department of Homeland Security ("DHS"). Defendant Troy Miller is named in his official capacity as Acting Commissioner of Customs and Border Protection ("CBP"). Each of these agencies (separately and collectively, "the Defendants"), enforces the proscriptions of the Controlled Substances Act ("CSA") in various aspects of their

operations, exerting legal authority over all movements of controlled substances, that thus affect the Free Exercise of plaintiffs.

**CLASS ALLEGATIONS**

8.   This action is brought as a putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

9.   As alleged in greater detail *infra* at the section entitled "Discovery and Discovery Abuse," Defendants propounded the discovery demands attached as Exhibits 2 and 3.  A number of Defendants' Demands seek to end-run the Fourth Amendment rights of Intervenor Plaintiffs, a putative class of over 5,239 persons who have exchanged emails and other digital correspondence with Plaintiffs AYA and Stanley.

10.  Intervenor Plaintiffs have a reasonable expectation of privacy in the Private Emails and the Private Data.  In addition to revealing a wide array of potentially embarrassing personal information, Intervenor Plaintiffs' Private Emails disclosed Private Data to Plaintiffs to further their interest in visionary religion; wherefore, those exchanges are First Amendment-protected communications of religious free expression that should be protected from harassing disclosure that serves no legitimate discovery purpose in the RFRA action now pending between Plaintiffs and Defendants.

11.  Defendants are government agencies that are required to seek a warrant, based on sworn affidavits establishing probable cause, to obtain the Private Emails and Private Data.

12.  Defendants' threat of judicial action to enforce the Intrusive Demands poses the risk of immediate and irreparable harm to their Fourth Amendment rights by the compelled disclosure of their Private Emails without the showing of probable cause before an impartial magistrate and the issuance of a warrant.  Due to the extremely overbroad nature of Defendants' Demands, they are in the nature of general warrants, prohibited by the Fourth Amendment.

13. The proposed class is so numerous that joinder of each individual congregation to this action would be impractical.

14. The questions of law and/or fact brought before the Court in this action are common to Plaintiff Cox and all members of the proposed class, and Plaintiff Cox's claims are typical of the claims of the class.

15. Intervenor Plaintiffs therefore request the Court to find and declare that the Defendants' demands for the following information violate Intervenor Plaintiffs' Fourth Amendment rights, and may not be enforced:

   a. Intervenor Plaintiffs' Private Emails;
   b. Intervenor Plaintiffs' Private Data;
   c. Intervenor Plaintiffs' medical disclosures;
   d. Intervenor Plaintiffs' record of attendance or non-attendance at AYA ceremonies; or,
   e. Any other of Intervenor Plaintiffs' digital or physical "papers and effects" in the custody of AYA as to which Intervenor Plaintiffs have a reasonable expectation of privacy under the Fourth Amendment.

16. Intervenor Plaintiffs further request the Court to enjoin the Defendants from issuing any future discovery demands in this action that would demand disclosure of:

   a. Intervenor Plaintiffs' Private Emails;
   b. Intervenor Plaintiffs' Private Data;
   c. Intervenor Plaintiffs' medical disclosures;
   d. Intervenor Plaintiffs' record of attendance or non-attendance at AYA ceremonies; or,
   e. Any other of Intervenor Plaintiffs' digital or physical "papers and effects" in the custody of AYA as to which Intervenor Plaintiffs have a reasonable expectation of privacy under the Fourth Amendment.

17. Plaintiff Cox and the proposed class's claims involve the common question of law and/or fact as to whether the Government can use the civil discovery process to

4

intimidate, harass and target AYA's congregation.  The related constitutional rights of the Plaintiff Cox and the proposed class are also common questions of law and/or fact in this matter.

18.     Adequate representation cannot be provided by Plaintiffs.  (*See*, Exhibit 5; Order, Dkt. # 210.)  Plaintiff Cox will adequately protect and represent the interests of all members of the proposed class and will vigorously pursue a judgment for the benefit of all members of the proposed class.

19.     Defendants have acted in a manner that applies generally to the entire proposed class, such that appropriate injunctive and/or declaratory relief is necessary regarding the class as a whole.

20.     Specifically, the Defendants' actions in discovery threaten all AYA congregants (i.e. Plaintiff Cox and all other members of the proposed class) equally and in the same manner in that Defendants are attempting to interfere or block all AYA congregants from freely exercising their religion.

21.     Additionally, and/or in the alternative, the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the instant controversy.

## FACTUAL BACKGROUND

22.     Ayahuasca is an herbal tea brewed by boiling and steeping two plants that grow in the Amazonian jungles.  It is pharmacologically active, and contains a small amount of Dimethyltryptamine, a Schedule I controlled substance.  The religious use of Ayahuasca has been extensively studied, and the declaration of Petitioner's expert witness Dr. Paulo Barbosa, Adjunct Professor at the University of Ilheus, Brazil, sets forth a summary of the peer reviewed science regarding religious use of Ayahuasca.  Dr. Barbosa states, in essence:  "Ayahuasca consumed in a religious context is not being used as a drug of abuse, nor does the religious use of ayahuasca lead to the abuse of other drugs; instead, religious ayahuasca users generally abandon abuse of alcohol after they

become members of an ayahuasca church. These data are backed up by pre-clinical evidence indicating that ayahuasca blocks many abuse-related behavioral effects of drugs of abuse." (Dkt. # 33-11; Barbosa Opinion Letter, page 10.)

23.   Ayahuasca religion arose in the Amazonian regions now called Peru, Brazil, Colombia, Bolivia, Ecuador, and other South American countries where indigenous people have maintained traditions of visionary worship and medicinal practice since long before the conquest by European colonizers in the sixteenth and seventeenth centuries.[1]

24.   Ayahuasca is central to the religion practiced by AYA. Winfield Scott Stanley III ("Stanley") is AYA's Founder and Director. On May 15, 2022, AYA and Stanley filed a Fifth Amended Complaint against the Defendants in the above-captioned case. On May 4, 2023, this Court issued an order denying the Defendants' Motion to Dismiss.

25.   On June 23, 2023, this Court issued a Scheduling Order regarding discovery and other matters.

26.   On January 22, 2024, this Court ruled that "Plaintiff AYA may not assert the Fifth Amendment on behalf of its members in responding to Defendants' discovery requests." (Exhibit 5; Order, Dkt. # 210.)

**DISCOVERY AND DISCOVERY ABUSE**

27.   The Defendants propounded the following demands seeking information protected by the First Amendment privilege and the Fourth Amendment warrant requirement, quoted verbatim from Exhibits 2 and 3 (the "Intrusive Demands"):

---

[1] Radiocarbon dating of "a documented case of a ritual bundle containing both harmine and dimethyltryptamine, the two primary ingredients of ayahuasca" estimates the bundle to be 1,000 years old. The bundle was found at a level of 3,900 meters in the Lipez Altiplano of southwestern Bolivia in an area showing evidence of human occupations for the last 4,000 years. Chemical evidence for the use of multiple psychotropic plants in a 1,000-year-old ritual bundle from South America; https://www.pnas.org/doi/10.1073/pnas.1902174116

a. Interrogatory No. 4: Identify each and every person who has attended or participated in, or who has requested to attend or participate in, one of your ceremonies. For each person identified, indicate when the person attended or participated, or requested to attend or participate; whether the person was permitted to attend or participate and any explanation as to why or why not the person was permitted to attend or participate; and how many times the person has attended or participated in one of your ceremonies.

b. Interrogatory No. 10: Identify the date and location of each and every instance in which you held a ceremony, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. For each and every instance identified, indicate every substance consumed by any person or offered for consumption, who was present at the ceremony, who was responsible for handling any substances consumed by any person or offered for consumption, and who served in a leadership role and/or position of authority at the ceremony (e.g., Minister of the Assembly, "lead facilitator," other facilitator).

c. Interrogatory No. 11: Identify each and every instance in which you have stored, prepared, stored, distributed, dispensed, obtained, imported, exported, destroyed/disposed of, transported, transferred to another person, or otherwise handled ayahuasca. For each instance identified, indicate when the activity occurred, any and all persons involved in the activity, including any senders and/or recipients, and any steps you required the person or persons to take to be granted permission to perform the activity (including, but not limited to, training, background check, use of key or code).

d. Interrogatory No. 16: Identify each and every one of the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback."16 For each individual identified, describe the "knowledge and feedback" sought or shared.

e. Interrogatory No. 18: Identify each and every person who wrote, edited, reviewed, commented on, or otherwise received a draft of the documents attached to your original motion for a preliminary injunction in this case, Dkt. No. 33: "AYA Tenets and Precepts"17; "Ceremonial Instructions"18; "Code of Ethics"19; the questionnaire filed in this case as DKT. No. 33-6; and the confirmation letter filed in this case as Dkt. No. 33-7.

f. Interrogatory No. 20: Identify each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies. For each instance identified, please provide the amount received, the date received, and the purpose of payment, donation, or other contribution.

g. Interrogatory 21: For each document used at your ceremonies or trainings, or that you otherwise intend to rely upon to demonstrate the existence of what you allege are your "sincerely held religious beliefs and practices," identify each and every person who wrote, edited, reviewed, commented on, or otherwise received drafts of the document.

h. Interrogatory 23: Identify each and every organization or association of which AYA or one of the named Plaintiffs is a member, or have requested to be a member. For each organization or association identified, indicate when AYA or one of the named Plaintiffs first requested to become a member, how long AYA or one of the named Plaintiffs has been a member, whether AYA or one of the named Plaintiffs pays dues or anything else of value to the organization or association, and any individuals at the organization or association with whom AYA or one of the named Plaintiffs communicates or has communicated.

i. RFP 7: Produce any and all documents that contain communications with any and all individuals who are members of AYA relating to membership in AYA, your ceremonies, and your tenets and beliefs.

j.      RFP 8: Produce any and all copies of the "AYA attendee roster."

k.      RFP 11: Produce any and all documents that contain communications with any and all individuals who have facilitated, participated in, requested to participate in, or attended one or more of your ceremonies. This request includes, but is not limited to, any and all communications sent to or from prospective or actual ceremony participants, including copies of the questionnaire filed in this case as Dkt. No. 33-6 in any state of completion as well as any communications with prospective or actual participants regarding ceremony logistics (time, place, etc.), ceremony eligibility (questions from prospective participants about eligibility, explanations from you about eligibility to participate, etc.), and other ceremony- or ayahuasca-related inquiries.

l.      RFP 12: Produce any and all documents regarding or relating to your ceremonies, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. This request includes, but is not limited to, any and all documents regarding or relating to the location, time, set and setting, duration, frequency, format, cost, payment, advertising, and attendance of your ceremonies, as well as post-ceremonial integration.

m.      RFP 13: Produce any and all documents regarding or relating to each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies.

n.      RFP 20: Produce any and all communications to or from any and all individuals who have been involved in the storage, preparation, security, distribution, dispensing, obtaining, importing, exporting, destroying/disposing, transporting, transferring to another person, or otherwise handling of ayahuasca.

o.      RFP 21: Produce any and all documents that identify, describe, refer to, or contain communications to or from any and all individuals from whom you seek guidance or consultation, whether or not within your organization, including, but

not limited to, the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback," as well as and any association of psychedelic churches.

28. Defendants obtained an order from this Court, the "Discovery Order," (Exhibit 1; Dkt. # 220), enforcing the Intrusive Demands upon the Plaintiffs as an order of Court, compelling the disclosure of the Private Emails themselves, as well as the names, contact, medical and financial information shared by the Intervenor Plaintiffs ("Private Data").

29. On December 20, 2024, Defendants served a Second Set of Interrogatories, attached as Exhibit 4 to the Proposed Complaint. Some of these additional demands seek to enforce further disclosures of membership information.

   a. No. 3 seeks the identity of any person who "required assistance or transportation after the ceremony," disclosure of their private medical information, the identity of "the person who decided they needed transportation or assistance."

   b. No. 5 seeks "all individuals … in place during an ayahuasca ceremony to ensure … safety of participants during and after the ceremony."

   c. No. 8 seeks the identity "of any AYA members who have been arrested or charged by federal law enforcement authorities for ayahuasca importation, use, manufacture, or distribution."

   d. No. 9 seeks the identity of "any and all specific instances of 'congregants' relaying to Stanley that 'they understand [they] live under [an] open threat by law enforcement."

   e. No. 11(e) seeks the identity of everyone "who was present at the ceremony, subsection (f) asks "who was responsible for handling any substances consumed by any person or offered for consumption," and subsection (g) seeks to know "who served in a leadership role at the ceremony."

   f. No. 13 specifically invades the associational rights of all Intervenor Plaintiffs who are associated with other churches, because it demands the

COMPLAINT IN INTERVENTION
10

identity of "all churches, congregations, religions, denominations, religious organizations, sects, or spiritual organizations with which Mr. Stanley is or has been affiliated," and donor information in the form of "Mr. Stanley's beginning and ending (or current) salaries or compensation."

30. To achieve the end of seeking to disclose the identities and private lives of Intervenor Plaintiffs, Defendants filed "Defendants' Statement on Dispute Over Plaintiffs' Responses to Defendants' Second Set of Interrogatories" (Dkt. # 225).

31. Defendants' Intrusive Requests and the above quoted interrogatories from the Defendants' Second Set of Interrogatories seek information that, knowing of its imminent disclosure to the DEA, DHS, and CBP would intimidate a reasonable person, and has the effect of intimidating, harassing and substantially burdening the free exercise rights of Intervenor Plaintiffs, by knowing there is an imminent danger that their Personal Emails, Private Data, ceremonial attendance records, and donation records will be disclosed to Defendants. Such disclosures to Defendants would be irreparably destructive to the religious relationship between AYA and Intervenor Plaintiffs, i.e., the freedom of association guaranteed by the First Amendment. This is particularly so because the Defendants contend that AYA's Ayahuasca ceremonies violate the CSA, and that Intervenor Plaintiffs' participation in ceremony is an unlawful activity conducted under a pretense of religiosity. To allow the Defendants to extract compromising information of this sort regarding 5,239 Intervenor Plaintiffs under the guise of gathering information to defend against Plaintiffs' RFRA claim is an extreme overreach that has caused and continues to cause irreparable harm to Intervenor Plaintiffs.

32. Defendants have exploited the discovery process by unreasonably demanding irrelevant information that is protected by the warrant requirement of the Fourth Amendment, and constitutes Fifth Amendment protected communications with AYA. Defendants' interrogatories evince an unjustifiable and unacceptably pugnacious disregard for underlying issues in this case and general purposes for which discovery exists.

33. The DEA's course of conduct here evinces religious animus towards Intervenor Plaintiffs; further, even were it not malicious, the effect of the Intrusive Requests is to force AYA and Stanley to choose between their commitments to the AYA congregation and potential court sanction.

## COUNT I

### Declaratory Relief Against all Defendants Under 28 U.S.C. § 2201-2202

34. Intervenor Plaintiffs incorporate by reference all allegations herein as if set forth in full hereat.

### First Amendment Violations

35. The First Amendment of the United States provides: "*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*"

36. Intervenor Plaintiffs have the right to free association with any religious group with which they desire to associate. Intervenor Plaintiffs have associated themselves with AYA and Stanley for religious reasons. Intervenor Plaintiffs have communicated with Plaintiffs, in particular, to arrange to attend ceremonies at the AYA Maloka in the desert outside of Tucson, Arizona, to discuss matters related to ceremonies and religious practice, to disclose medical information, to discuss scientific and policy issues related to visionary religion, and to discuss personal matters. The right to enter into such communications freely is unlawfully chilled by the Discovery Demands and the Discovery Order (Dkt. # 220), that together compel the disclosure of the identities of Intervenor Plaintiffs, their Private Emails, and their Private Data.

### Fourth Amendment Violations

37. The U.S. Constitution's Fourth Amendment provides: "*The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,*

*supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

38. The Fourth Amendment protects the Intervenor Plaintiffs' personal "papers and effects" from unreasonable searches and seizures. These papers and effects include the Private Emails and Private Data that are targeted by Defendants' Demands.

39. The service of discovery by Defendants – who are law enforcement agencies of the United States government – constitutes governmental action for the purposes of the Fourth Amendment.

40. Defendants in this case are using civil discovery as a governmental search. The discovery documents served by Defendants in this case amounts to a search within the meaning of the Fourth Amendment.

41. All Intervenor Plaintiffs were correspondents with AYA for purposes related to AYA's free exercise of religion.

42. Defendants' discovery demands are directed at digital communications stored in a single location -- AYA's email system.

43. Defendants have violated Plaintiffs Intervenors' Fourth Amendment rights to freedom from search and denied them the right to "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," absent probable cause.

44. Defendants lack probable cause to search the digital and paper correspondence of Intervenor Plaintiffs.

45. Defendants have not obtained a warrant to search the papers and effects of Intervenor Plaintiffs.

46. Defendants' efforts to compel Plaintiffs AYA and Stanley to disclose Intervenor Plaintiffs' Private Emails and Private Data by propounding discovery in an action where they lack representation wholly deprives Intervenor Plaintiffs of a meaningful and adequate means of vindicating their rights. Congress did not intend to preclude review of the determination of the Defendants to propound discovery in a civil action in an effort to obtain Intervenor Plaintiffs' Private Emails and Private Data without complying with the

warrant requirement of the Fourth Amendment. Accordingly, the actions of Defendants are reviewable by this Court under the doctrine of non-statutory review.[2]

47. Defendants' actions as alleged hereinabove lacked substantial justification.

48. Intervenor Plaintiffs hereby incorporate the foregoing allegations of this Complaint as if set forth fully herein.

### Fifth Amendment Violations

49. The Fifth Amendment to the U.S. Constitution provides in relevant part that "*no person shall be … compelled in any criminal case to be a witness against himself.*"

50. The compelled production of AYA's membership list – as well as documents that could be used to re-create AYA's membership list – implicates the Fifth Amendment because the act of production itself can be used as incriminating evidence.

51. The Fifth Amendment provides Intervenor Plaintiffs with protection against the forced production of AYA's membership list.

52. The protection provided by the Fifth Amendment is a personal privilege and may be asserted only by Intervenor Plaintiffs.

53. Intervenor Plaintiffs are filing this complaint in intervention to lodge objection as to the production of their personal information.

54. Defendants have violated the Fifth Amendment to the U.S. Constitution by and attempting to enforce the Intrusive Requests.

55. Defendants' unlawful request for AYA's membership list presents Intervenor Plaintiffs with a risk of irreparable injury.

56. Defendants' actions as alleged hereinabove lacked substantial justification.

57. Wherefore, Intervenor Plaintiffs are entitled to a protective order under F.R.Civ.P. 26 and an injunction under F.R.Civ.P. 65 to prevent the Defendants from obtaining

---

[2] "The doctrine finds its origins in *Leedom v. Kyne*, 358 U.S. 184, 79 S. Ct. 180, 3 L. Ed. 2d 210 (1958), which … held that a federal district court had jurisdiction to review [an NLRB] certification, despite the absence of express authorization of judicial review of such determinations." *Cal. Sportfishing Prot. All. v. United States Bureau of Reclamation*, No. 1:15-cv-00912 LJO BAM, 2015 U.S. Dist. LEXIS 142630, at *31 (E.D. Cal. Oct. 20, 2015)

disclosure of the identities of Intervenor Plaintiffs, their Private Emails and their Private Data, and any other information protected from disclosure by the Constitution, the rules of privilege, the Federal Rules of Civil Procedure, and all other sources of law.

## COUNT II

### (Violation of RFRA)

58. Intervenor Plaintiffs hereby incorporate the foregoing allegations of this Complaint as if set forth fully herein.

59. This Count is brought under 42 U.S.C. § 2000bb-1(c), the Religious Freedom Restoration Act ("RFRA").

60. Under RFRA, the federal government may not "substantially burden" Plaintiffs' sincere exercise of religion unless that burden is both "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000bb-1(a), (b).

61. The right to communicate with one's source of religious inspiration and authority, and the right to communicate with one's religious peers, are aspects of religious free exercise protected by RFRA.

62. Defendants' service of the Intrusive Demands to obtain disclosure of the identities of Intervenor Plaintiffs, and to compel disclosure of the Private Emails and Email Data of Intervenor Plaintiffs was a retaliatory act against Intervenor Plaintiffs intended to damage their relationship with AYA and Stanley, in violation of their rights of freedom of association and free exercise under the First Amendment.

63. The service and enforcement of the Intrusive Demands were actions that would chill the reasonable person in the exercise of their rights of religious association under the First Amendment. Actual disclosure of the Private Emails, Email Data, and other private information of Intervenor Plaintiffs will cause immediate and irreparable injury to the relationship between and among all of the Intervenor Plaintiffs, AYA, and Stanley, sundering a wholesome religious fellowship that came to Court with a wholesome

purpose, and have been met with a callous campaign to unmask Intervenor Plaintiffs in their absence from the litigation.

64. Serving discovery designed to uncover AYA's membership list has forced AYA to choose between incriminating its congregants or complying with the Defendants' unreasonable discovery demands.

65. Defendants were motivated to take retaliatory action against Intervenor Plaintiffs by animus towards Plaintiffs for exercising their rights to petition the government, through the original lawsuit, for redress of grievances.

66. The purpose of Defendants' actions have been and are directed at threatening AYA and Stanley with damning consequences in this action in order to induce them to set aside their effort to obtain the relief sought by the operative complaint in the main action.

67. Defendants actions, if not enjoined, will continue to cause injury to Intervenor Plaintiffs by going beyond threats to actually obtaining the disclosure of Intervenor Plaintiffs' Private Emails, Email Data, and other private information that should not, in law and justice, be permitted to occur.

## PRAYER FOR RELIEF

68. WHEREFORE, Intervenor Plaintiffs therefore request the Court to find and declare that the Defendants' demands for the following information violate Intervenor Plaintiffs' Fourth Amendment rights, and may not be enforced:
    a. Intervenor Plaintiffs' Private Emails;
    b. Intervenor Plaintiffs' Private Data;
    c. Intervenor Plaintiffs' medical disclosures;
    d. Intervenor Plaintiffs' record of attendance or non-attendance at AYA ceremonies; or,
    e. Any other of Intervenor Plaintiffs' digital or physical "papers and effects" in the custody of AYA as to which Intervenor Plaintiffs have a reasonable expectation of privacy under the Fourth Amendment.

69. Intervenor Plaintiffs further request the Court to enjoin the Defendants from issuing any future discovery demands in this action that would demand disclosure of:
    a. Intervenor Plaintiffs' Private Emails;
    b. Intervenor Plaintiffs' Private Data;
    c. Intervenor Plaintiffs' medical disclosures;
    d. Intervenor Plaintiffs' record of attendance or non-attendance at AYA ceremonies; or,
    e. Any other of Intervenor Plaintiffs' digital or physical "papers and effects" in the custody of AYA as to which Intervenor Plaintiffs have a reasonable expectation of privacy under the Fourth Amendment.
70. Award plaintiff's costs, expenses, and reasonable attorney's fees pursuant to 28 U.S.C. §2412(d)(1)(A), because the acts of Defendants were taken without substantial justification.

Dated:  March 12, 2024

                                CHARLES CARREON

                                /s/ Charles Carreon
                                CHARLES CARREON (CSB #127139)
                                Attorney for Proposed Intervenor Plaintiff
                                Taylor Cox, personally and as
                                Class Representative

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial.

Dated:  March 12, 2024

          CHARLES CARREON

          /s/ Charles Carreon
          CHARLES CARREON (CSB #127139)
          Attorney for Proposed Intervenor Plaintiff
          Taylor Cox, personally and as
          Class Representative

# EXHIBIT LIST

| EXHIBIT | Document Title | Docket # |
|---|---|---|
| 1 | Order (the "Disclosure Order") | 220 |
| 2 | Defendants' First Set of Interrogatories | 222-2 |
| 3 | Defendants' First Set of Requests for Production | 222-3 |
| 4 | Defendants' Second Set of Interrogatories | n/a |
| 5 | Order re Fifth Amendment standing | 210 |