CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

JOHN SULLIVAN (CSB#204648)
17532 Miranda Street
Encino, California 91316-1249
Tel:818-769-7236 Fax:818-301-2175
Email:Sullivan.John84@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly and
Winfield Scott Stanley III

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ArizonaYagé Assembly, and Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly, , <br><br> Plaintiffs, <br><br> vs. <br><br> Merrick Garland Attorney General of the United States; et al. <br><br> Defendants. | Case No.:20-CV-02373-ROS <br><br> MOTION FOR STAY PENDING PLAINTIFFS' INTENDED PETITION FOR WRIT OF CERTIORARI |

# Contents

**Table of Authorities** .................................................................................................. 3
**PROCEDURAL HISTORY** ....................................................................................... 5
**THE ADJUDICATIVE STANDARD** ........................................................................ 6
**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................ 7
   A.  The Disclosure Order Violates Plaintiffs' First Amendment Rights .................. 7
   B.  The Court Did Not Recognize the Existence of First Amendment Privilege ..... 9
   C.  Plaintiffs Established a *Prima Facie* Case of First Amendment Infringement . 9
   D.  The Disclosure Order Was Not the Product of Exacting Scrutiny ..................... 9
   E.  Plaintiffs Have Raised Serious Legal Questions on the Merits ........................ 13
   F.  Irreparable Harm is Certain in the Absence of a Stay ....................................... 14
   G.   The Four Factors Warranting a Stay Are Satisfied ......................................... 15
   H.   Defendants Will Suffer No Injury Due to a Stay ............................................ 16
   J.  Conclusion ........................................................................................................ 16

**Table of Authorities**

**Cases**

2008 U.S. Dist. LEXIS 106163 (D. Ariz. Dec. 31, 2008) .................................................. 8

*Admiral Ins. Co. v. United States Dist. Court*,
    881 F.2d 1486 (9th Cir. 1989) ............................................................................... 15

*Americans for Prosperity Foundation v. Bonta*,
    141 S. Ct. 2373 (2021) ........................................................................................ 8, 9

*Ams. for Prosperity Found. v. Bonta*,
    594 U.S. 595, 141 S. Ct. 2373 (2021) ..................................................................... 13

*Brown v. Cal. DOT*,
    321 F.3d 1217 (9th Cir. 2003) .......................................................................... 15, 17

*Bryant v. Ford Motor Co.*,
    886 F.2d 1526 (9th Cir. 1989) ................................................................................ 7

*Buckley v. Valeo*,
    424 U.S. 1 (1976) .................................................................................................. 17

*Byzantine Cath. Eparchy of Phoenix v. Burri L. PA*, No. CV-20-00779-PHX-ROS,
    2022 WL 3597106 (D. Ariz. June 17, 2022) ..................................................... 10, 11

*Byzantine, Byzantine Catholic Eparchy of Phx. v. Burri Law PA*, No. CV-
    20-00779-PHX-ROS, 2021 U.S. Dist. LEXIS 45276 (D. Ariz. Mar. 10, 2021) ........ 10

*Campbell v. Wood*,
    20 F.3d 1050 (9th Cir. 1994) ................................................................................... 7

*Cmty. House, Inc. v. City of Boise*,
    490 F.3d 1041 (9th Cir. 2007) .......................................................................... 15, 17

*Ellis v. U.S. Dist. Ct.*,
    360 F.3d 1022 (9th Cir. 2004) ............................................................................. 6, 7

*Elrod v. Burns*,
    427 U.S. 347 (1976) .............................................................................................. 15

*Golden Gate Rest. Ass'n v. San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) .......................................................................... 14, 16

*Mi Familia Vota v. Fontes*,
    344 F.R.D. 496 (D. Ariz. 2023) .............................................................................. 12

*NAACP v. Ala. ex rel. Patterson*,
    357 U.S. 449, 78 S. Ct. 1163 (1958) ............................................................. 8, 9, 12

*NAACP v. Alabama*,
    375 U.S. .............................................................................................................. 9

*In re Napster*,
    479 F.3d ........................................................................................................... 15

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO,
    2015 U.S. Dist. LEXIS 192788 (N.D. Cal. Nov. 20, 2015) ........................... 11, 12

*Natural Res. Def. Council, Inc. v. Winter*,
    502 F.3d 859 (9th Cir. 2007) ............................................................................ 16

*Parra v. Bashas', Inc.*, No. CV 02-0591 PHX RCB,
    2009 U.S. Dist. LEXIS 33832 (D. Ariz. Apr. 15, 2009) ......................................... 8

*Payne v. Ryan*, No. CV-20-00459-TUC-JAS,
    2022 U.S. Dist. LEXIS 183454 (D.Ariz. Oct. 6, 2022) .......................................... 7

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ..................................................................... 12, 16

*Philip Morris*,
    314 F.3d at 621- ......................................................................................... 15, 17

*Prison Legal News v. Shinn*, No. CV-15-02245-PHX-ROS,
    2020 U.S. Dist. LEXIS 11821 (D. Ariz. Jan. 23, 2020) ..................................... 8, 15

*Sammartano v. First Judicial Dist. Court*,
    303 F.3d 959 (9th Cir. 2002) ....................................................................... 15, 17

*Sherrill v. Holder*, No. CV-12-00489-TUC-CKJ,
    2014 U.S. Dist. LEXIS 185794 (D. Ariz. Feb. 13, 2014) .................................. 7, 15

*Trump v. United States Dist. Court*
    (In re United States), 875 F.3d 1177 (9th Cir. 2017) (en banc) ............................. 7

*United States v. Amlani*,
    169 F.3d 1189 (9th Cir. 1999) ........................................................................... 15

*United States v. Warfield*, No. CV-20-08204-PCT-DWL,
    2023 U.S. Dist. LEXIS 224413 (D. Ariz. Dec. 18, 2023) ....................................... 7

**Rules**
R. 41-1 ...................................................................................................................... 7
Rule 26 ............................................................................................................... 12, 13

Plaintiffs Arizona Yagé Assembly and Winfield Scott Stanley III ("Plaintiffs") move the Court for a stay of all proceedings pending the resolution of Plaintiffs intended petition to the United States Supreme Court for writ of certiorari in *In Re: Arizona Yage Assembly,* Case No. 24-01405 to review this Court's order entered February 22, 2024, Dkt. # 220 (herein the "Disclosure Order").

## **PROCEDURAL HISTORY**

On March 19, 2024, this Court stayed this case "in its entirety until the Ninth Circuit issues a dispositive order in the appellate action *In Re: Arizona Yage Assembly*, Case No. 24-01405." Dkt. 240. On April 24, 2024, the Ninth Circuit denied Plaintiffs' petition for a writ of mandamus. Dkt. 243. Plaintiffs then filed a motion for reconsideration, and reconsideration *en banc*, which the Ninth Circuit denied on August 13, 2024. *In Re: Arizona Yage Assembly*, Ninth Circuit Case No. 24-01405, Dkt. 21. Plaintiffs then filed a motion to stay the mandate on August 19, 2024, pending filing of a petition for writ of certiorari to the Supreme Court. *Id.*, Dkt. 22. Defendants opposed. Dkt. 23. On September 13, 2024, the Ninth Circuit issued an order denying the motion to stay the mandate as moot (Dkt. 244), on the grounds stated in *Ellis v. U.S. Dist. Ct., 360 F.3d 1022, 1023 (9th Cir. 2004)*("Respondent …is not without a remedy; it has always maintained the right to seek a stay of the proceedings in the district court, and it may do so now to pursue a petition for a writ of certiorari with the Supreme Court.").

Accordingly, Plaintiffs respectfully submit this Motion to Stay the proceedings pending the Supreme Court's disposition of their petition for writ of certiorari.

***Alternatively***, pursuant to the principles followed in *Parra v. Bashas'*, cited *infra*, Plaintiffs respectfully request this Court to conduct the requested status conference following the Supreme Court's disposition of the pending petition for certiorari, and that Plaintiffs receive an appropriate extension of time to respond to the motion for status conference.

## THE ADJUDICATIVE STANDARD

Although a stay request pending the resolution of a certiorari petition should not be granted as a matter of course, the movant is not required to establish the existence of exceptional circumstances. See, e.g., 9th Cir. R. 41-1 ("[A] motion for stay of mandate pursuant to FRAP 41(d), pending petition to the Supreme Court for certiorari, will not be granted as a matter of course, but will be denied if the Court determines that the petition for certiorari would be frivolous or filed merely for delay."); *Campbell v. Wood*, 20 F.3d 1050, 1051 (9th Cir. 1994) (emphasizing that "ordinarily a party need not demonstrate that exceptional circumstances justify a stay of the mandate" while a certiorari petition is pending); *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528-29 (9th Cir. 1989) ("Ordinarily, then, a party seeking a stay of the mandate following this court's judgment need not demonstrate that exceptional circumstances justify a stay. The situation changes markedly, however, once the Supreme Court has denied the petition for a writ of certiorari."). *United States v. Warfield*, No. CV-20-08204-PCT-DWL, 2023 U.S. Dist. LEXIS 224413, at *4-5 (D. Ariz. Dec. 18, 2023).

The district court does not lose jurisdiction over a case when a litigant files an interlocutory petition for an extraordinary writ. *Ellis v. United States Dist. Court (In re Ellis)*, 360 F.3d 1022, 1023 (9th Cir. 2004). Thus the District Court has jurisdiction now. *Trump v. United States Dist. Court (In re United States),* 875 F.3d 1177, 1178 (9th Cir. 2017) (citing *see Ellis v. U.S. Dist. Court*, 360 F.3d 1022, 1023 (9th Cir. 2004) (*en banc*)**).**

This Court has broad discretionary power to grant a stay of the proceedings in its own court if it finds that a stay is appropriate while a petition for extraordinary relief is pending. *Payne v. Ryan*, No. CV-20-00459-TUC-JAS, 2022 U.S. Dist. LEXIS 183454, at *1 (D.Ariz. Oct. 6, 2022); *Sherrill v. Holder*, No. CV-12-00489-TUC-CKJ, 2014 U.S. Dist. LEXIS 185794, at *2 (D. Ariz. Feb. 13, 2014).

In deciding a motion for stay pending appeal, a District Court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding;

and (4) where the public interest lies. *Prison Legal News v. Shinn*, No. CV-15-02245-PHX-ROS, 2020 U.S. Dist. LEXIS 11821, at *8 (D. Ariz. Jan. 23, 2020)**.**

The first two factors are "the most critical," and Plaintiffs bear the burden of showing that the circumstances justify an exercise of judicial discretion. *Id*.

***Plaintiffs prevail on the first factor***, because they are presenting "*a substantial case for relief on the merits*," and "need not demonstrate that it is more likely than not that they will win on the merits." *Id*. ***Plaintiffs prevail on the second factor***, because the Stanely Declaration establishes "*a probability of irreparable injury* if the stay is not granted." *Id*. "In analyzing whether there is a probability of irreparable injury, [the Court must] focus on the individualized nature of irreparable harm and not whether it is 'categorically irreparable.'" *Id*. When the government opposes the grant of a stay pending appeal, ***the third and fourth factors – injury to the opposing party and the public interest -- merge***. *Id* at 9.

Finally, if the District Court denies a motion for stay pending filing of a petition for certiorari, and grants the opposing party's request to set a status conference, it may balance that decision by exercising its wise discretion to hold the status conference after the disposition of the petition for writ of certiorari. *Parra v. Bashas', Inc.*, No. CIV-02-0591-PHX-RCB, 2008 U.S. Dist. LEXIS 106163, at *4 (D. Ariz. Dec. 31, 2008); *Parra v. Bashas', Inc.*, No. CV 02-0591 PHX RCB, 2009 U.S. Dist. LEXIS 33832, at *4 (D. Ariz. Apr. 15, 2009).

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     The Disclosure Order Violates Plaintiffs' First Amendment Rights**

"[C]ompelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958)(citations omitted).

In *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2377 (2021), the Supreme Court overturned a Ninth Circuit decision upholding a California law that --  the

high Court concluded -- infringed the First Amendment by requiring the disclosure of nonprofit donors on State-mandated forms. The Ninth Circuit had failed to "narrowly tailor" the demand for information to accord with the government's asserted interests.

> "The Ninth Circuit did not impose a narrow tailoring requirement to the relationship between the Attorney General's demand for Schedule Bs and the identified governmental interest. That was error under the Court's precedents. And properly applied, the narrow tailoring requirement is not satisfied by California's disclosure regime. In fact, ***a dramatic mismatch exists between the interest the Attorney General seeks to promote and the disclosure regime that he has implemented***."
>
> <u>Ams. for Prosperity Found. v. Bonta</u>, 141 S. Ct. 2373, 2378 (2021)(emphasis added).

The Supreme Court's position on the danger of government authorities compelling the disclosure of troublesome organization was clearly enunciated in *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462, 78 S. Ct. 1163, 1171-72 (1958). While quashing a subpoena from Alabama to the NAACP for its membership list, the justices compared "compelled disclosure of membership in an organization engaged in advocacy of particular beliefs" to be "of the same order" as the Third Reich's policy of requiring "adherents of particular religious faiths or political parties wear identifying arm-bands." *NAACP v. Alabama*, 375 U.S. at 462.

The Declaration of Winfield Scott Stanley III in support of this motion establishes the extreme and irreparable harm that AYA and he, as AYA's minister, would suffer from being compelled to disclose the members, donors, and correspondents of AYA. First, complying with the Disclosure Order would require Plaintiffs to reveal the identities of over 5,239 individuals, produce all emails and other communications exchanged between the Plaintiffs and those individuals, provide a complete accounting of all donations they made to AYA, and reveal details about their medical history, all of which was disclosed to AYA subject to express and implied promises to keep such information confidential. (Dkt.

# 230.1; Stanley Dec. ¶¶ 3, 4.)  Plaintiffs would suffer immediate and irreparable reputational harm as soon as AYA's members, donors and correspondents learned that Plaintiffs had made such disclosures.  (Dkt. # 230.1; Stanley Dec. ¶¶ 4, 6, 7, 8.)

**B.     The Court Did Not Recognize the Existence of First Amendment Privilege**

The District Court did not consider any prejudice resulting from the invasion of Plaintiffs' First Amendment Privilege, because it mistakenly concluded no such privilege was available.  (Order 220, 10:16-17, quoted *supra*.)

**C.     Plaintiffs Established a *Prima Facie* Case of First Amendment Infringement**

Within the limits allowed by the Joint Statement procedure, Plaintiffs articulated their First Amendment right to be free of the associational injuries that would be caused by the compelled disclosure. As noted in the Joint Statement (Dkt. # 219): "The demand imposes a severe burden on the relationship of AYA and Plaintiff Stanley with the AYA congregation, attempting to convert their religious participation into an avenue of negative scrutiny of the sort that this litigation is intended to remedy."

**D.     The Disclosure Order Was Not the Product of Exacting Scrutiny**

Plaintiffs raised their claim of First Amendment Privilege and burden in the Joint Statement with sufficient clarity that this Court rejected the contention, citing *Byzantine Cath. Eparchy of Phoenix v. Burri L. PA*, No. CV-20-00779-PHX-ROS, 2022 WL 3597106, at *3 (D. Ariz. June 17, 2022).  (Jt. Stmt., Dkt. # 219; Disclosure Order, Dkt. # 220.)

However, the groundless First Amendment claims raised in the *Byzantine* case – where the church sued its lawyer for legal malpractice -- are readily distinguishable from the contentions of Plaintiffs herein. In *Byzantine*, *Byzantine Catholic Eparchy of Phx. v. Burri Law PA*, No. CV-20-00779-PHX-ROS, 2021 U.S. Dist. LEXIS 45276, at *2 (D. Ariz. Mar. 10, 2021).  The church "argued it was not required to produce the two disputed documents in discovery because '[t]hey are constitutionally protected from scrutiny as an

issue of internal church governance'" but "did not provide any other basis from which to conclude that the Eparchy was immune from its discovery obligations in a case it initiated because of the First Amendment." *Byzantine Cath. Eparchy of Phoenix,* No. CV-20-00779-PHX-ROS, 2022 WL 3597106, at *8 (D. Ariz. June 17, 2022). By contrast, Plaintiffs raised their claim of First Amendment Privilege based on the associational standing of its congregation and donors.

When First Amendment privilege claims are raised in response to civil discovery demands, District Courts of the Ninth Circuit follow a two-step analysis:

> First, the party asserting the privilege must make a "prima facie showing" of "arguable first amendment infringement," demonstrating that enforcement of the discovery requests will result in: (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or "chilling" of members' associational rights. *Id.* at 1160-61. If that showing is made, at the second step the "evidentiary burden" shifts and the party seeking the information must show that the information sought is "rationally related to a compelling governmental interest" and that there are no other less restrictive means of securing that information. *Id.* (internal quotations omitted).
> At the second step, the "analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it. The question is therefore whether the party seeking the discovery 'has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.'"
> *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO, 2015 U.S. Dist. LEXIS 192788, at *6-7 (N.D. Cal. Nov. 20, 2015), *quoting Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010), *quoting NAACP v. Ala. ex rel. Patterson,* 357 U.S. 449, 463, 78 S. Ct. 1163, 1172 (1958).

"To conduct that evaluation, it is necessary to identify the kinds of information and documents that the First Amendment privilege might (and might not) cover. Under Ninth Circuit law, '[t]he party asserting the privilege must demonstrate a *prima facie* showing of arguable first amendment infringement…***The existence of a prima facie case turns … on***

*whether disclosure of the information will have a deterrent effect on the exercise of protected activities*.' *Id.* at 1162." *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 512-13 (D. Ariz. 2023)(emphasis added).  The Stanley Declaration carries this burden of showing associational harm to the Plaintiffs and the AYA congregation, whose First Amendment interests Plaintiffs have standing to represent in this action.

Under *NAACP*, the Disclosure Order is unconstitutional because it imposes obligations, under threat of legal penalty, compliance with which would have the practical effect "of discouraging" the exercise of Plaintiff's constitutionally protected associational rights.  That this Court did not intend for the Disclosure Order to have such effects does not redeem it.[1] And like the *NAACP*, Plaintiffs have urged the rights *solely of its ordinary rank-and-file members and have not objected to divulging the identities of its members who are employed by or hold official positions* within the church. ***In an effort to satisfy reasonable discovery requests, Plaintiffs have produced the identities of at least eight witnesses to Defendants.*** Whatever interest Defendants have in obtaining the names of AYA's ordinary members has not been shown and this lack of evidence is not a sufficient demonstration to overcome Plaintiff's constitutional objections to the Disclosure Order.

Under *Perry*, the Court held that even when compelled disclosure satisfies the Rule 26 standard of being reasonably calculated to lead to the discovery of admissible evidence regarding an organization's internal communications, it fails to give sufficient weight to the First Amendment interests at stake. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1164 (9th Cir. 2010). As established above, given Plaintiff's *prima facie* showing of infringement, the more demanding relevancy standard of exacting scrutiny must be applied in this case.

---

[1] "In the domain of these indispensable liberties, whether of speech, press, or association, the decisions of this Court recognize that abridgment of such rights, even though unintended, may inevitably follow from varied forms of governmental action." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 461, 78 S. Ct. 1163, 1171 (1958).

Regardless of whether the compelled information is relevant under the Rule 26 standard (seemingly applied in the Disclosure Order) and bearing in mind other sources of obtaining such information – **such as conducting depositions of the eight witnesses already produced in discovery** – Defendants have not adequately demonstrated a governmental interest sufficient to justify the deterrent effect on the free exercise and substantial intrusion upon Plaintiff's First Amendment rights.

Under *Ams. for Prosperity Found.*, the Court held that the exacting scrutiny standard requires that compelled disclosure must be "narrowly tailored to the government's asserted interest."[2] It is not in dispute that Defendants have an important interest in preventing wrongdoing and activities that cause serious social harms. However, given the amount and sensitivity of the information intended to be harvested by the government in this matter, the narrow tailoring requirement of exacting scrutiny was clearly not applied in the Disclosure Order. In *Ams. for Prosperity Found.*, the Court held that the government is not free to enforce any disclosure to further its interest; the government must demonstrate its need for universal production in light of any less intrusive alternatives. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 613, 141 S. Ct. 2373, 2386 (2021). Similarly, the compelled disclosure requirement in this case "creates an unnecessary risk of chilling" in violation of the First Amendment, indiscriminately sweeping up the information of every rank-and-file church member and donor. These are individuals who have many personal reasons to remain anonymous in their religious activities prior to the government granting a RFRA exemption, and exposure of their identity and private worship activity to the Defendants would cause the numerous associational harms averred in the Stanley Declaration. (Dkt. # 230-1, ¶¶ 2-5.)

---

[2] *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 608, 141 S. Ct. 2373, 2383 (2021)

It should not be ignored that Plaintiffs proffer the specifically stated declaration of expert, Dr. Barbosa who attested that in the religious context, ayahuasca is not being used as a drug of abuse, does not lead to the abuse of other drugs and that religious ayahuasca users generally abandon the use of alcohol after they become members of an ayahuasca church. (Petition for Writ of Mandamus, Dkt. # 230, Ex. 6; Barbosa Opinion Letter, page 5 & 10). Yet, without producing any supporting evidence that reflects the seriousness of the actual burden on Plaintiff's First Amendment rights, Defendants rely on conclusory arguments that the information sought in the overly broad discovery demands is relevant to "evaluating the safety and sincerity of Plaintiff's practices," "for identifying potential witnesses," and "to the potential health or safety risks posed by Plaintiffs' practices." *See generally,* (Ex.1; Disclosure Order) (Ex. 9; Joint Stipulation).

### E. Plaintiffs Have Raised Serious Legal Questions on the Merits

Plaintiffs are presenting a facially meritorious First Amendment privilege claim. For a certainty, they have raised "serious legal questions" sufficient to warrant a stay in light of the irreparable harm and equities weighing "sharply in [our] favor," as demonstrated below. *Golden Gate Rest. Ass'n v. San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008).

In *Prison Legal News*, the publisher brought claims against the government alleging civil rights violations of the First and Fourteenth Amendments and an injunction was ordered. The defendants filed a motion to stay pending the appeal of an "intra-District of Arizona split on the facial constitutionality of ADC's publication regulations." Here, the Court granted in part the defendant's motion, finding that the "[d]efendants have 'shown, at minimum, the presence of serious questions on the merits' of the facial challenge."

**F.      Irreparable Harm is Certain in the Absence of a Stay**

Forcing a litigant to disclose privileged materials necessarily inflicts irreparable harm because once the materials have been disclosed, it is impossible to "undisclose" them. *In re Napster*, 479 F.3d at 1088; *Admiral Ins. Co. v. United States Dist. Court,* 881 F.2d 1486, 1491 (9th Cir. 1989); *United States v. Amlani*, 169 F.3d 1189, 1193 n.4 (9th Cir. 1999); *Philip Morris*, 314 F.3d at 621- 22. The infringement of "First Amendment freedoms . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *accord Brown v. Cal. DOT*, 321 F.3d 1217, 1226 (9th Cir. 2003). Not surprisingly, then, the Ninth Circuit has repeatedly found that the "fact that the [stay applicant has] raised serious First Amendment questions *compels* a finding that there exists the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [the stay applicant's] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (quotation marks omitted; emphasis added); *accord Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002). Thus, "[t]o establish irreparable injury in the First Amendment context" a stay applicant "need only demonstrate the existence of a colorable First Amendment claim." *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003) (quotation marks and alterations omitted).

"In analyzing whether there is a probability of irreparable injury, [the Court must] focus on the individualized nature of irreparable harm and not whether it is 'categorically irreparable.'" *Prison Legal News v. Shinn*, No. CV-15-02245-PHX-ROS, 2020 U.S. Dist. LEXIS 11821, at *8 (D. Ariz. Jan. 23, 2020).

A petition for extraordinary relief will not be granted unless the petitioner can demonstrate that the district court committed clear error and that petitioner will be irreparably harmed if the petition is not granted. *Sherrill v. Holder*, No. CV-12-00489-TUC-CKJ, 2014 U.S. Dist. LEXIS 185794, at *2 (D. Ariz. Feb. 13, 2014). Irreparable harm is a harm that cannot be corrected in a subsequent appeal from the final judgment below. *Id.*

In *Prison Legal News*, the court found that the defendants met the second factor by asserting that enjoining the State of Arizona to the lawsuit would cause irreparable harm; thus, the District Court granted its motion to stay. In *Sherrill*, the Court denied a *pro se* litigant's Motion to Stay finding that she had not shown she would suffer irreparable harm if her petition for certiorari is not granted; however, the Court did grant the plaintiff an extension of time to provide responses to the defendant's discovery requests.

Under *Perry*, even when the evidence presented is lacking in particularity, it is consistent with the self-evident conclusion that important First Amendment interests are implicated by Defendant's discovery request. The Plaintiff's declaration creates a reasonable inference that disclosure would have the practical effects of discouraging religious association and inhibiting internal church communications that are essential to effective association and expression. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1163 (9th Cir. 2010).

### G. The Four Factors Warranting a Stay Are Satisfied

Four factors inform whether a federal court should issue a stay pending appeal: (1) the appellants' likelihood of success on the merits; (2) the possibility of irreparable harm absent a stay; (3) the possibility of substantial injury to other parties if a stay is issued; and (4) the public interest. *See Golden Gate Rest. Ass'n v. San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008)(citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

***When applying these four factors***, the Ninth Circuit employs a "sliding scale" approach: ***the more sharply the equities weigh in favor of a stay, the less demanding of a showing of likely success on the merits is required***. *See Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007), *vacated on other grounds by* 508 F.3d 885 (9th Cir. 2007); *Golden Gate*, 512 F.3d at 1116. *See id*.

A consideration of the factors and analysis identified by the Ninth Circuit demonstrates that Plaintiffs are entitled to a stay. Thus, ***"[t]o establish irreparable injury***

*in the First Amendment context" a stay applicant "need only demonstrate the existence of a colorable First Amendment claim."* Brown v. Cal. Dep't of Transp., 321 F.3d 1217, 1225 (9th Cir. 2003) (quotation marks and alterations omitted).

### H. Defendants Will Suffer No Injury Due to a Stay

The Ninth Circuit has given tailored guidance for balancing harms in the First Amendment context: where a litigant "raise[s] serious First Amendment questions," it "compels a finding that . . . the balance of hardships tips sharply in [that litigant's] favor." *Cmty. House, Inc.*, 490 F.3d at 1059 (quotation marks omitted; emphasis added); *Sammartano*, 303 F.3d at 973. That principle fully applies here. The most Defendants can assert in the way of hardship is a delay in the proceedings. But "[a] mere assertion of delay does not constitute substantial harm." *Philip Morris Inc.*, 314 F.3d at 622. Thus, Plaintiff respectfully submit that the balance of hardships tips sharply in their favor, and warrants issuance of a stay pending appeal.

### I. The Public Interest Weighs in Favor of a Stay

"Courts . . . have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano*, 303 F.3d at 974 (listing cases). Issuance of the requested stay is necessary to protect the religious freedom and associational privacy of AYA's members and donors, because exposure of their private emails, religious activities, and medical information to the Defendants would chill First Amendment associational rights. *Buckley v. Valeo*, 424 U.S. 1, 71 (1976) ("the public interest . . . suffers" from chilled participation); *Sammartano*, 303 F.3d at 974 ("[T]he public interest is better served by . . . protecting the … First Amendment").

### J. Conclusion

Plaintiffs have raised serious legal questions on the merits, and face a likelihood of irreparable harm in the absence of a stay, while Defendants will suffer no injury but un-cognizable delay if a stay is granted. The public interest weighs in favor of preserving

the *status quo*, in which AYA, Stanley, and AYA church members and donors retain the associational privacy they possessed when they began this litigation and are not at risk of having their religious lives exposed to the Defendants. The facts and argument presented by Plaintiffs establish that the balance of the hardships tips sharply in their favor. Accordingly, the Court is respectfully requested to exercise its wise discretion to grant their motion for a stay.

Dated: September 23, 2024

CHARLES CARREON
/s/Charles Carreon
CHARLES CARREON (127139)
Attorney for Plaintiffs
Arizona Yagé Assembly,
Winfield Scott Stanley III