BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

LISA NEWMAN
BONNIE DEVANY
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br><br>v.<br><br>Merrick Garland, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373-ROS |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR STAY [Doc. 246]**

**MEMORANDUM OF POINTS AND AUTHORITIES**

After full briefing and consideration of the same arguments Plaintiffs present in their present stay motion, the Ninth Circuit denied Plaintiffs' petition for a writ of mandamus in a short order, concluding that "Petitioners have not demonstrated a clear and indisputable right to the extraordinary remedy of mandamus." Dkt. 243 at 1. Plaintiffs sought panel rehearing and rehearing *en banc*, and the Ninth Circuit denied that request without calling for a response. *In Re: Arizona Yage Assembly*, No. 24-01405, Dkt. 21. The Ninth Circuit has thus considered—and twice rejected—the same arguments Plaintiffs now rely on to request a stay pending the disposition of a petition for a writ of certiorari that they intend to file in the Supreme Court.

Plaintiffs motion should be denied. *First*, Plaintiffs have not demonstrated a reasonable probability, much less a strong likelihood, that the Supreme Court will grant certiorari to review the Ninth Circuit's plainly correct order denying mandamus. Plaintiffs sought an extraordinary writ to avoid complying with a routine discovery order based on arguments that they failed to present to this Court and that are without merit on their own terms. Under these circumstances, Plaintiffs have little prospect of obtaining certiorari review, let alone winning a reversal, of the Ninth Circuit's order. After multiple rounds of briefing and more than six months of considering this issue, Plaintiffs still have not adequately explained in their latest motion how their claim of associational privilege meets the requirements of Rule 26 or the framework set forth in *Perry v. Schwarzenegger*, 590 F.3d 1147 (9th Cir. 2010). *Second*, Plaintiffs also fail to demonstrate irreparable harm absent a stay. Plaintiff Stanley's declaration is insufficient to establish irreparable harm on behalf of himself or thousands of unidentified AYA members. The declaration is conclusory, unsubstantiated, and doesn't acknowledge the mitigating effects of the protective order.

*Finally*, the balance of the equities weighs decidedly against another stay of this case. As the Court has already observed, Plaintiffs have showed "little interest in litigating this case in a timely manner," Dkt. 216 at 1, and the Court concluded months ago that Plaintiffs "have not taken their discovery obligations seriously," Dkt. 220 at 1. This Court twice warned that

it would "impose sanctions" "for any further obstruction or failure to meet discovery obligations." Dkt. 220 at 20; Dkt. 234 at 2. Plaintiffs' latest motion—after months of delay and no apparent attempts to comply with their discovery obligations when the stay was lifted—is par for the course. It seeks a stay of this case in its entirety, despite asserting in the mandamus petition that that the associational privilege is applicable to only 14 of the 35 requests in this Court's Discovery Order, meaning that there is no basis to continue to ignore 60 percent of the unanswered requests covered by the Order. Plaintiffs' latest gambit therefore seeks to preclude the production of all responsive documents and communications to Defendants' requests—regardless of whether a First Amendment privilege actually applies—and avoid complying with all other outstanding discovery obligations not encompassed by this Court's Discovery Order. Plaintiffs' intransigence throughout discovery is strikingly unacceptable. With that background now at the forefront, Plaintiffs' motion appears to renew, yet again, Plaintiffs' persistent litigation strategy to "delay or disrupt discovery," Dkt. 220 at 20, avoid complying with their discovery obligations and this Court's clear orders, and to eschew "litigating this case in a timely manner." Dkt. 216 at 1.

This Court should deny Plaintiffs' motion for a stay pending disposition of a petition for certiorari review.

## LEGAL STANDARD

A request for a stay pending appeal is committed to the exercise of judicial discretion. *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). The party requesting a stay pending appeal "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). "A stay is not a matter of right" but is instead "an intrusion into the ordinary processes of administration and judicial review" and is "not to be issued 'reflexively,' but rather based on the circumstances of the particular case." *Sierra Club v. Trump*, 929 F.3d 670, 687-88 (9th Cir. 2019) (quoting *Nken*, 556 U.S. at 427, 433) (alterations omitted).

As the party seeking to stay this litigation, Plaintiffs must show: (1) a strong showing of likelihood of success on the merits of a petition for certiorari appealing the Ninth Circuit's denial of a writ of mandamus, (2) that Plaintiffs will be irreparably injured absent a stay, (3) that the balance of hardships favors staying this case, and (4) that staying this case is in the public interest. *Nken*, 556 U.S. at 426. Of these, "[t]he first two factors are the most critical," and the Court need not reach the remaining two if the first two aren't met. *Id.* at 434.

## ARGUMENT

### I. Plaintiffs have not shown any likelihood of success.

After full briefing and consideration of the same arguments Plaintiffs present in their present stay motion, the Ninth Circuit denied Plaintiffs' petition for a writ of mandamus because "Petitioners have not demonstrated a clear and indisputable right to the extraordinary remedy of mandamus." Dkt. 243 at 1. Plaintiffs sought panel rehearing and rehearing *en banc*, and the Ninth Circuit denied that request without calling for a response. *See In Re: Arizona Yage Assembly,* No. 24-1405, Dkt. 21.[1] The Ninth Circuit has thus considered—and twice rejected—the same arguments Plaintiffs now rely on to request a stay pending the disposition of a petition for a writ of certiorari that they intend to file in the Supreme Court.

Plaintiffs have not demonstrated a reasonable probability, much less a strong likelihood, that the Supreme Court will grant certiorari to review the Ninth Circuit's plainly correct order denying mandamus. Petitions for certiorari are "granted only for compelling reasons" and only as a matter of judicial discretion. Sup. Ct. R. 10. Plaintiffs have made no such showing: they sought an extraordinary writ of a discovery order based on arguments that they failed to present to this Court (despite having ample opportunity to do so) and that are without merit on their own terms. Under these circumstances, Plaintiffs have little prospect of obtaining certiorari review, let alone winning a reversal, of the Ninth Circuit's order.

**1.** To begin, Plaintiffs' motion incorrectly frames the issue for Supreme Court review

---

[1] The Ninth Circuit also denied as moot Plaintiffs' motion to stay the Ninth Circuit's mandate. *In Re: Arizona Yage Assembly,* No. 24-1405, Dkt. 25.

as whether this Court's discovery order "violates Plaintiffs' first amendment rights" and whether "Plaintiffs have presented a facially meritorious First Amendment privilege." Dkt. 246 at 13. But the decision over which Plaintiffs are seeking certiorari is the Ninth Circuit's denial of the petition for a writ of mandamus.

Petitions for certiorari are "granted only for compelling reasons" and only as a matter of judicial discretion. Sup. Ct. R. 10. An interlocutory posture "alone furnishe[s] sufficient ground for the denial" of the petition. *Hamilton-Brown Shoe Co.* v. *Wolf Bros. & Co.*, 240 U.S. 251, 258 (1916).[2] Plaintiffs do not come close to demonstrating a "strong likelihood" that the Supreme Court would grant review and reverse the Ninth Circuit's denial of mandamus relief. Mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes," and a writ cannot issue unless this Court's order is "clearly erroneous as a matter of law." *United States v. Guerrero*, 693 F.3d 990, 999 (9th Cir. 2012) (quoting *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)). As the Ninth Circuit correctly determined, Plaintiffs plainly did not make that showing because they had "not demonstrated a clear and indisputable right" to mandamus relief from an interlocutory discovery order. Dkt. 243 at 1. Plaintiffs' motion does not explain why this Court's Discovery Order was "clearly erroneous" or why the Ninth Circuit incorrectly determined that Plaintiffs did not show a clear and indisputable right to mandamus relief; indeed, the only mention of the Ninth Circuit's order is in the background section. *Compare* Dkt. 222 at 2-10, *with* Dkt. 246 at 7-16. Regardless, under the exacting standard reserved for the Supreme Court's review of a mandamus petition, Plaintiffs have not demonstrated even a reasonable probability, much less a strong likelihood, that the Supreme Court either will grant certiorari or grant any relief.

Plaintiffs' primary argument in both their mandamus petition and this motion is that

---

[2] Typically, to merit a stay of a mandate of a court of appeals, Plaintiffs would need to demonstrate "(1) a reasonable probability that four Justices would vote to grant certiorari; (2) a significant possibility that the Court would reverse the judgment below; and (3) a likelihood of irreparable harm, assuming the correctness of the applicant's position, if the judgment is not stayed." *Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1319 (1994) (Rehnquist, J.); *see also id.* at 1320-22 (refusing to stay case to consider claim that an "overly broad" subpoena violated the Fourth and Fifth Amendment).

complying with this Court's Discovery Order would violate their associational rights. Dkt. 256 at 7-13.[3] But Plaintiffs did not make this argument until after this Court issued its order, despite having ample opportunity to do so. Plaintiffs cannot claim clear error in this Court's failure to sustain objections that Plaintiffs never made. *See, e.g.*, *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."); Fed. R. Civ. P. 26(b)(5)(A). As this Court stated in responding to the mandamus petition, "at no time before Plaintiffs filed the petition for a writ of mandamus was such an argument made." Dkt. 242 at 1; *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149-50 (9th Cir. 2005) (denying mandamus petition where district court had held that untimely privilege objections were waived); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 891 (9th Cir. 2000) (district court did not abuse its discretion in denying reconsideration where plaintiffs had "failed" to make argument previously despite having "numerous opportunities" to do so). This Court did not err—much less clearly err—in not ruling on an objection Plaintiffs never made, and the Ninth Circuit was correct to refuse to issue a writ of mandamus. Under these circumstances, Plaintiffs have little prospect of obtaining certiorari review, let alone winning a reversal, of the Ninth Circuit's order, and Plaintiffs provide no persuasive explanation to the contrary. That failure alone warrants denial of Plaintiffs' stay motion.

**2.** Plaintiffs' assertion of an associational privilege would fail on its own terms, even if it had been timely presented to this Court. Plaintiffs place primary reliance on the framework set out in *Perry v. Schwarzenegger*, 590 F.3d 1147 (9th Cir. 2010), under which the party asserting an associational privilege must demonstrate that enforcing the discovery requests will result in harassment or will otherwise chill the associational rights of an organization's members. *Id.* at 1160. If a party can make that showing, the burden shifts to the government to show that the

[3] In their mandamus appeal, Plaintiffs separately argued that this Court erred by requiring the parties to present their discovery disputes in a joint statement rather than through motions practice. Defendants do not address that argument here because Plaintiffs do not invoke it as a basis for their petition for writ of certiorari.

information sought relates to a compelling governmental interest and is the least restrictive means of obtaining the information. *Id.* at 1161.

Plaintiffs wholly fail to demonstrate that enforcing the discovery requests will result in harassment or chill the associational rights of its members. As an initial matter, Plaintiffs appealed and continue to seek a stay of the Discovery Order in its *entirety*, despite asserting in their mandamus petition that the associational privilege is applicable to only 14 of the 35 requests in dispute.[4] Dkt. 230 at 20. More problematically, their request for a stay implicates more than just the Discovery Order; it is a request to avoid complying with all of their outstanding discovery obligations not encompassed by this Court's order. *See* Dkt. 245 (detailing outstanding discovery obligations). Plaintiffs' latest request for a stay thus attempts to preclude the production of *all* responsive documents and communications to Defendants' requests—regardless of whether a First Amendment privilege actually applies—which is yet another "effort by Plaintiffs to resist discovery obligations." Dkt. 242 at 2-3. Indeed, this request for a wholesale stay of the case gives the impression that Plaintiffs are not interested in continuing to litigate this case at all, much less "in a timely manner." Dkt. 216 at 1.

After multiple rounds of briefing and more than six months of considering this issue, Plaintiffs *still* have not attempted in their latest stay motion to explain how their overbroad claim of privilege meets the requirements of Federal Rule of Civil Procedure 26. That Rule provides that a party asserting a privilege "must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). "A party asserting a privilege must 'expressly' make its claim at the time the response is due … Neither the Federal Rules of Civil Procedure nor the Local Civil Rules permit any party to make its assertions of privilege a moving target." *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 166 (S.D.N.Y.

[4] One of the discovery requests that Plaintiffs claim infringes on their First Amendment right, Interrogatory 20, Mandamus Pet. ¶ 20, was not challenged by Plaintiffs in the Joint Statement, Dkt. 219, nor was it addressed by the Court's Discovery Order, Dkt. 220. There are 35 disputed discovery requests raised in Dkt. 219.

2014). And "[i]t is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark*, 959 F.2d at 1473 (corporation's objection that Chinese state secrecy law prevented it from complying with discovery request had been waived).

Plaintiffs assert an associational privilege over communications that would "reveal the identities of over 5,239 individuals" and "all emails and other communications exchanged between Plaintiffs and those individuals," including "donations," and "medical history." Dkt. 246 at 8. There are many more categories of discovery at issue in the Discovery Order than just those articulated "communications," not least including 21 of 35 discovery requests not alleged in their mandamus petition to implicate an associational privilege, and the interrogatories, which by their nature do not request documents or communications. But Plaintiff has not, in the hundreds of pages of briefing on this issue, attempted to explain how an associational privilege could possibly cover every outstanding discovery request, or how such a privilege would cover every communication simply because they derive from members or non-member "correspondents." Dkt. 246 at 8.

Plaintiffs' failure to assert their privilege objection with the requisite timeliness and specificity required by Rule 26 is consistent with their acknowledgement that after more than a year of discovery they have not undertaken the basic tasks essential to a proper assertion of privilege. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring that a party asserting a privilege describe the nature of the documents with enough specificity that other parties can assess the claim of privilege). Instead, as Plaintiffs admitted to this Court, as of March, they had not started to *collect*, let alone review, potentially responsive documents. *See* Dkt. 227 at 3 (stating, on March 8, that "[t]he information demanded by the Discovery Order needs to be accessed with the collaboration of AYA members, and despite earnest efforts, the church has not yet been able to reach an actionable consensus on this matter"). In *Perry,* by contrast, the proponents of Proposition 8 objected to producing a specific subset of 60 documents—a sample of which the proponents actually provided to the district court for *in camera* review. 591 F.3d at 1153-

54. And even then, the Ninth Circuit observed that "some form of a privilege log" would be "required" on the part of a party asserting the privilege. *Id.* at 1153 n.1. Plaintiffs still have not provided a privilege log or asserted their objections with any specificity, much less the specificity that Rule 26 requires or that would permit Defendants and this Court to assess the validity of Plaintiffs' assertions. *Cf. Parshall v. Menard, Inc.*, 2016 WL 7188125 at * 2 (E.D. Mo. 2016) ("[P]laintiff's failure to timely produce a privilege log in support of his untimely objections supports the Court's finding that plaintiff has waived any objections to discovery, including assertions of privilege.").

Even under *Perry*, Plaintiffs do not meet the "exacting standard" they urge this Court to apply. Plaintiffs' conclusory declaration filed with their initial stay motion in this Court, Dkt. 222, and with their mandamus petition, does no more than speculate as to the effect of the Discovery Order on third parties at the highest level of generality. That declaration states, in a conclusory fashion, that complying with the discovery requests would "immediately" cause, *inter alia*, "[m]embership withdrawal" and "[d]iscouragement of new members from joining or participating in ceremony." Dkt. 222-1 at 2-3. A rote recitation of the criteria set out in *Perry* without further elaboration is not the type of objective evidence that could support *a prima facie* showing of a First Amendment violation. *See Ward v. Thompson*, No. 22-16473, 2022 WL 14955000, at *2 (9th Cir. Oct. 22, 2022) (affirming district court's conclusion that plaintiff's "vague" and "speculative" assertions of chilling did not satisfy the first step of the *Perry* framework). For example, Plaintiffs allege that Defendants' requests call for the production of thousands of emails "discussing religious matters." Dkt. 222-1 at 2, ¶ 3. But Plaintiffs offer no explanation of what qualifies as "religious matters," or why such information is deserving of First Amendment protection in the context of civil discovery in a case *they brought invoking religious exercise as a basis for relief*. *Cf. Byzantine Cath. Eparchy of Phx. v. Burri L. PA*, No. CV-20-779-PHX-ROS, 2022 WL 3597106, at *3 (D. Ariz. June 17, 2022) (explaining that documents "discuss[ing] church governance" are not subject to any First Amendment "discovery privilege or immunity"). Likewise, Plaintiffs claim that Defendants' requests will elicit the

disclosure of "medical history," Dkt. 246 at 8, "reputationally damaging information," or "[r]ecords of private, personal activity." Dkt. 222-1 at 2, ¶ 3. But those conclusory statements are wholly unmoored from any purported religious exercise, and Plaintiffs still make no efforts to establish any connection between the purported disclosures and the alleged associational infringement. *See Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 85 (D. Ariz. 2022) (rejecting a claim for a First Amendment privilege when the request included communications with non-members and the movant "ma[de] no effort to explain why such communications could be considered privileged from disclosure under the First Amendment"). In *Perry*, by contrast, the proponents of Proposition 8 presented declarations from several individuals attesting to the impact of disclosure on the declarants' own conduct. 591 F.3d at 1163. Here, Plaintiffs offer one speculative declaration about the potential behavior of more than 5,000 individuals, many of whom likely have not retained ties to or membership in AYA. Asserting the First Amendment as "[a] blanket assertion, like the one made here, is insufficient." *Mi Familia*, 343 F.R.D. at 83. Here, Plaintiffs have failed to present "objective and articulable facts, which go beyond broad allegations or subjective fears." *Id.* (quoting *Brock,* 860 F.2d at 350 n.1)). Plaintiffs only offer conclusory statements, which "alone, do not establish a *prima facie* showing of First Amendment infringement." *Id.*

This, ultimately, is the core irony of Plaintiffs' motion. The purported aim of this motion is to protect (limited) information they claim is protected by privilege. Setting their now-galling untimeliness aside, protecting that information would be *vindicated* by lifting the stay, not by continuing it. The Court has already suggested a willingness to adjudicate associational privilege questions, Dkt. 242 at 2, but instead of taking up the Court's invitation, Plaintiffs instead have sought, over and again, to delay the case in its entirety. If the interest truly was protecting potentially privileged information, then Plaintiffs should agree to lift the stay and actually litigate the questions they repeatedly invoke. Instead, they delay and obfuscate.

Finally, the declaration fails to acknowledge the already-in-place protective order or address its mitigation of the asserted chilling effect. Unlike the litigants in *Perry*, the parties

here agreed upon the terms of a protective order that this Court subsequently approved. Dkt. 217. That protective order allows the parties to "seek additional protective treatment for any information it considers to be very highly sensitive, or otherwise exempt from disclosure," *id.* ¶ 28, and ensures that any designated documents and information exchanged in discovery "shall be used solely for the purposes of this action and for no other purpose whatsoever, and shall not be published to the general public in any form, or otherwise disclosed, disseminated, or transmitted to any person, entity, or organization, except in accordance with the terms of this Order," *id.* ¶ 8. In *Perry*, by contrast, there was no protective order in place. And although *Perry* noted that "[t]he mere assurance that private information will be narrowly rather than broadly disseminated . . . is not dispositive," it recognized that a "protective order limiting the dissemination of disclosed associational information may mitigate the chilling effect." 591 F.3d at 1160 n.6. Thus, even if Plaintiffs had demonstrated that an associational privilege applies, the parties' agreed-upon protective order mitigates the very harms they assert.

Second, even if Plaintiffs had shown that compliance with the Discovery Order would result in chilling of their associational rights, the information sought is rationally related to a compelling interest and is the least restrictive means of obtaining the desired information. As this Court already concluded "[t]he discovery Defendants seek in these disputed requests is critical to this inquiry." Dkt. 220 at 1.

Plaintiffs seek an exemption permitting them to import, distribute, and use a Schedule I controlled substance. The government has a compelling interest in enforcing the Controlled Substances Act and ensuring that exemptions from the Act's prohibitions and requirements are granted only where warranted. *See, e.g.*, *United States v. Christie*, 825 F.3d 1048, 1057 (9th Cir. 2016) (compelling interest in reducing the incidence of illicit drug use and preventing the diversion of drugs set aside for sacramental use from being diverted to recreational users). The government is entitled to test, for example, whether Plaintiffs can establish that their religious beliefs are "sincerely held," *United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir.

2007), and to "scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants," *Gonzales v. O Centro*, 546 U.S. 418, 431 (2006). The government's discovery requests seek information about AYA's leadership and training, AYA's ayahuasca ceremonies and safety protocols, and the sincerity of AYA's beliefs and practices. This will in turn help evaluate, for example, whether AYA's ceremony facilitators can be trusted to administer a Schedule I controlled substance to others and whether petitioners' practices pose health and safety risks to AYA's members or to the general public. The government's requests are therefore central to its ability to defend itself in this litigation and to uphold the interests promoted by the Controlled Substances Act.

In short, unlike in *Perry*, where the relevance of the information was "attenuated," 591 F.3d at 1165, here, the information sought goes to core issues in the case—issues that Plaintiffs themselves have put in dispute by bringing this litigation. Moreover, unlike in *Perry*, where the moving party could "obtain much of the information they [sought] from other sources, without intruding protected activities," for example, via "expert testimony," there is no other source through which Defendants can obtain highly relevant discovery regarding AYA's practices or the sincerity of its members. *Id.* at 1164. Plaintiffs are the sole source of that information, and they cannot refuse to comply with discovery of highly relevant information when they initiated this lawsuit, putting the sincerity of their religious beliefs at issue in the first instance.

Plaintiffs seem to suggest that they need not comply with any of the written discovery requests or produce any more documents because Defendants could "obtain this information" from "conducting depositions of the eight witnesses already produced in discovery." Dkt. 246 at 12. This is wholly unsupported and unpersuasive. For one, Plaintiffs do not have the authority to designate which of its members the government may dispose. That is the government's decision to make. *See, e.g.*, Fed. R. Civ. P. 30 ("A party may, by oral questions, depose any person."). For another, Plaintiffs have not bothered to explain how such deposi-

tions would be an appropriate replacement for the many outstanding written discovery requests. Nor do Plaintiffs point to any legal authority that allows Plaintiffs to decline to respond to written discovery requests by offering a deposition in the alternative. Depositions of Plaintiff Stanley and AYA facilitators that Plaintiffs chose to proffer is not a sufficient substitute for written discovery "because the two forms of discovery are not equivalent." *Al Otro Lado, Inc. v. Wolf*, No. 3:17-CV-02366-BAS-KSC, 2020 WL 4336064, at *4 (S.D. Cal. July 27, 2020); *see also Colony Ins. Co. v. Sanchez*, No. 2:18-CV-1950-JCM-NJK, 2019 WL 3241160, at *3 (D. Nev. July 18, 2019) (written discovery and depositions cannot "be easily substituted for one another"). Moreover, the government is not in a position to adequately prepare for depositions without the responsive answers and documents to their written discovery requests. Finally, the notion of using depositions instead of written discovery and documents is especially problematic here, given that the documents produced would reflect the contemporaneous activities of Plaintiffs over time, which is important given how much time has passed due to Plaintiffs' delays. In light of the fleeting nature of memory, the value of deposition testimony to elucidate these events is already inherently compromised.

**3.** Finally, Plaintiffs' motion necessarily asks this Court to depart from the Ninth Circuit, which has already answered the question Plaintiffs now present in the negative. In denying mandamus relief, the Ninth Circuit weighed the same arguments and equitable factors on which Plaintiffs' motion relies. It would "flaunt basic principles of vertical stare decisis," *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 1, 8 (D.D.C. 2021), for this Court to reach a different conclusion about the likelihood of success under the same factors, based on the same arguments, that the Ninth Circuit already considered and rejected, *cf. id.* at 10 ("[T]his Court lacks the 'power or authority' to reach the opposite conclusion of [a higher court] on the same issues, in the same emergency posture, and in the same case." (quoting *Briggs v. Pa. R.R.*, 334 U.S. 304, 306 (1948)); *Volkswagenwerk A. G. v. Falzon*, 461 U.S. 1303 (1983) (O'Connor, J.).

**II. Plaintiffs have not demonstrated irreparable harm.**

Plaintiffs also failed to demonstrate irreparable harm absent a stay. As explained above, *supra* at 8-9, Plaintiff Stanley's declaration is insufficient to establish irreparable harm on behalf of himself or thousands of unidentified AYA members for the same reasons that Plaintiffs' declaration is insufficient to establish harm under *Perry*. In short, Plaintiffs' conclusory assertion that disclosure of membership information, even subject to the protective order, "would have the practical effects of discouraging religious association and inhibiting internal church communications," is unsubstantiated and wholly insufficient to support another stay of this case. Dkt. 246 at 15.[5] Additionally, Plaintiffs' delay in seeking relief from discovery requests served in September 2023, "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).

**III. The balance of equities weighs decidedly against a stay.**

Plaintiffs' request should be denied because the balance of the equities and the public interest weigh strongly against another stay. Where, as here, the government is a party, the balance of the equities and the public interest merge. *Nken*, 556 U.S. at 434.

Plaintiffs' latest request for an extended stay pending the disposition of a not-yet-filed petition for certiorari must be put in the larger context of this case, and in the weeks and months leading up to their petition for writ of mandamus. With that background in mind, Defendants are hard pressed to believe that this latest motion to stay this case is anything more than a continuation of Plaintiffs' persistent litigation strategy to "delay or disrupt discovery," Dkt. 220 at 20, avoid complying with their discovery obligations and this Court's clear orders, and eschew "litigating this case in a timely manner." Dkt. 216 at 1.

---

[5] Plaintiffs also assert that "a stay applicant 'need only demonstrate the existence of a colorable First Amendment claim,'" to show irreparable harm. Dkt. 246 at 16 (quoting *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003)). As discussed above, Plaintiffs' vague, speculative, and overbroad assertions of an associational privilege are both insufficient to demonstrate the existence of a colorable First Amendment claim and ultimately meritless.

The parties have been engaged in discovery since July 20, 2023. The discovery requests over which Plaintiffs' sought mandamus relief were served *more than a year ago*, on September 1, 2023. After numerous extensions of the discovery schedule, the parties were required to substantially complete fact discovery by March 8, 2024. Defendants satisfied these obligations, and over the course of the written discovery period, Defendants completed six document productions totaling more than 20,000 pages, propounded multiple rounds of written fact discovery, responded to Plaintiffs' discovery requests, and raised disputes through the Court's joint statement process. This stands in stark contrast to the discovery Plaintiffs provided. To date, Defendants have received fewer than 50 pages of documents and multiple interrogatories remain either totally unanswered or insufficiently unanswered. *See* Dkt. 245 at 2-3 (detailing outstanding discovery). Nor have Plaintiffs rectified this by producing any documents or otherwise complying with outstanding discovery requests since this Court lifted the stay. Dkt. 247.

Defendants will not belabor the procedural mischief and delays—the repeated motions to extend, to intervene, to stay, and petition for mandamus relief—that plagued this case in the weeks leading up to the entry of this Court's Discovery Order and Plaintiffs' petition for a writ of mandamus. In its Discovery Order, the Court found that Plaintiffs: (1) "have not taken their discovery obligations seriously," (2) "have failed to adequately respond to nearly 40 of Defendants' discovery requests," and (3) have "provided incomplete, insufficient, or unresponsive answers to many of the requests and in some instances have refused to respond at all." Dkt. 220 at 1-2. The Court further concluded that "Plaintiffs' responses and productions are totally insufficient and Plaintiffs' refusal to sufficiently respond to Defendants' discovery requests based on inapplicable privileges and objections is wrong and in some cases ridiculous." *Id.* at 2. Accordingly, the Court ordered Plaintiffs to "provide full and complete responses and productions to Defendants' requests," and given the numerous inconsistencies among Plaintiffs' verified and non-verified responses, ordered that "[w]here Plaintiffs claim they have already produced documents or that no responsive documents exist, Plaintiffs must

verify their answers under penalty of perjury." *Id.* Plaintiffs were ordered to comply with these discovery obligations by the March 8, 2024 substantial completion deadline.

But after this Court rendered its Discovery Order, it became apparent that Plaintiffs had no intention of timely complying with any part of the Court's order. Plaintiffs subsequently stated that they were "attempt[ing] to comply with as much of the Discovery Order as can be accomplished" and that "[AYA] has not yet been able to reach an actionable consensus on this matter," Dkt. No. 227, at 3, indicating that Plaintiffs had not started to collect, let alone review and produce, potentially responsive documents as of March 8, 2024, the date by which written fact discovery was supposed to be substantially completed. Plaintiffs instead elected to seek mandamus relief of the Court's Discovery Order in its entirety—refusing to comply with any aspect of it, despite asserting in their mandamus petition that a First Amendment privilege is applicable to only 14 of the 35 requests in dispute in that Order, which means that Plaintiffs do not even assert the privilege over 60 percent of the requests. Dkt. 230 at 20. Separately, an individual member of AYA—represented by the same counsel representing AYA—moved to intervene seeking the same relief as AYA: requesting a "stay" of the Discovery Order to prevent AYA "answer[ing] the interrogatories in full and produc[ing] unredacted documents." Dkt. 232 at 5; *see also* Dkt. 242 at 2 n.3 ("Counsel for Plaintiffs … filed a motion to intervene (Doc. 232) on behalf of the very members and congregants whose First Amendment association rights Plaintiffs now seek to assert.").

Plaintiffs' intransigence throughout discovery is strikingly unacceptable and has provided Plaintiffs with a substantial and extended advantage in discovery. The balance of equities weighs strongly against further extending the stay to allow Plaintiffs to pursue relief from the Supreme Court that they are exceedingly unlikely to obtain. Plaintiffs have had the advantage of sitting on a trove of Defendants' discovery materials, able to review and mine those materials, during the six-month stay in which they unsuccessfully pursued mandamus relief. This includes the added benefit of being able to prepare for depositions, researching and retaining expert witnesses, and preparing expert reports—all with Defendants' documents in

hand and without any of the time constraints imposed by a discovery schedule. By contrast, Defendants have been unable to prepare or continue with fact discovery during the stay because they have no comparable discovery from Plaintiffs. As noted above, Defendants have received fewer than 50 pages of documents. The Court should not reward Plaintiffs' continued intransigence with an additional (and likely protracted) stay, which would only increase the parties' lack of parity in discovery.

Plaintiffs' alternative request for relief underscores that their penchant for refusing to litigate this case is unchanged, despite repeated warnings by this Court about the consequences of "Plaintiffs' attempt to delay and obstruct the discovery process in this case they initiated," including "sanctions." Dkt. 234 at 2-3; Dkt. 220 at 20. Upon lifting of the stay, Defendants requested that this Court conduct a status conference given the number of outstanding discovery issues pending upon expiration of the stay. Dkt. 245. Plaintiffs ask that "this Court conduct the requested status conference following the Supreme Court's disposition of the pending petition for certiorari," Dkt. 246 at 5, which is not only a functional stay, but a further months-long, open-ended delay in resolving the many outstanding discovery requests (and thereby resolving Plaintiffs' failure to comply with such requests).

More broadly, a stay here would not be in the public interest. At the heart of this case is AYA's importation, manufacture, and distribution of a Schedule I controlled substance to thousands of individuals, and whether Plaintiffs' use of such a controlled substance (even for a purported religious use) runs afoul of Defendants' compelling interest in ensuring public safety pursuant to the Controlled Substances Act. Congress, through the CSA, "has long recognized the danger involved in the manufacture, distribution, and use of certain psychotropic substances for nonscientific and nonmedical purposes, and has provided strong and effective legislation to control illicit trafficking and to regulate legitimate uses of psychotropic substances in this country." 21 U.S.C. § 801a. And it has authorized the Attorney General to issue, in his discretion, a registration for the importation, manufacture, or distribution of a controlled substance if doing so would be consistent with the public interest. *Id.* § 823. AYA

continues to host ayahuasca ceremonies regularly, and there is no suggestion they would cease hosting them during the pendency of a stay. *See, e.g.*, Arizona Yagé Assembly: Ceremonies, https://www.aya.guide/ceremonies (last visited Sept. 27, 2024) (offering ceremonies for September, October, and November). And the fact that AYA has steadfastly refused to disclose highly relevant information that would illuminate the safety practices surrounding their ceremonies is concerning and raises serious questions as to whether AYA has any—much less adequate—safety controls in place. *See, e.g.*, Safe Ceremonies, D.S. review of AYA ceremony, (last visited Sept. 27, 2024), https://safeceremonies.com/listings/arizona-yage-assembly/ (describing that the individual "had a very traumatizing experience attending a ceremony" with AYA and that "everyone is in the medicine, including the facilitators" leading them to wonder "[w]ho then is to help in the case of an emergency"). Allowing Plaintiffs to continue to refuse to provide this information while they continue to hold ayahuasca ceremonies is decidedly against the public interest.

Accordingly, the equities and public interest in this case weigh decidedly in favor of denying Plaintiffs' stay request.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion to stay.

Dated: September 30, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*<u>/s/ Lisa Newman</u>*
Lisa Newman
Bonnie E. Devany
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005

Telephone: (202) 514-5578
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

*/s/ Lisa Newman*
Lisa Newman