# EXHIBIT A

# CHARLES CARREON

LAW FOR THE DIGITAL AGE

July 19, 2023

Via email to:
Lisa.N.Newman@usdoj.gov
Bonnie.E.Devany@usdoj.gov

Lisa Newman, DOJ Civil
Bonnie Devany, DOJ Civil

***Re: AYA v. Garland / Plaintiffs' Comments on Draft Protective Order***

Counsel:

Thank you for sending the draft Protective Order you shared last week. This letter presents our contribution to the process of formulating a stipulated order for submission to Judge Silver.

*First*, plaintiffs will decline to enter into an attorney's eyes only ("AEO") provision unless and until a factual basis for requesting such a restriction is provided by the defendants. "The 'default' should be a single 'confidential' classification that allows the free exchange of documents between attorneys and their client."[1] In addition to the widely-recognized risk of costly litigation resulting from strategic over-designation,[2] AEO clauses obstruct attorney-client communication and hinder compliance with California RPC 3-500 (attorney's broad duty to keep client informed). Use of AEO clauses "raises fundamental concerns regarding the impairment of the attorney's ability to effectively communicate with the client and the client's ability to meaningfully and adequately participate in the representation."[3]

A North Carolina decision on the subject of AEO designations held that they "should only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures."[4] AEO designations by one party "pose a significant handicap" on the other: "It is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client."[5]

In over thirty years in federal civil practice, I only remember agreeing to AEO clauses in very few cases where some party was not considered controllable by counsel. No such circumstance exists here. To the contrary, plaintiffs and the AYA congregation are all represented by Mr. Stanley, whose probity is unquestioned, and whose reliability as a keeper of necessary secrets is not reasonably to be doubted. The equities also weigh strongly against adopting an AEO provision, as the only parties likely to be

---

[1] "Attorney's Eyes Only"—You Can't be Serious, July 22, 2020 https://robsonlaw.com/2020/07/attorneys-eyes-only-you-cant-be-serious/
[2] *Callsome Sols. Inc. v. Google, Inc.*, 2018 NY Slip Op 32716(U) (Sup. Ct.)
[3] (Ethical Implications of "Attorney's Eyes Only", DRI Professionalism Perspectives, Vol. 11, Issue 2 (Sept. 12, 2008), quoted by James Delphey in Ethical Issues Raised By "Attorney's Eyes Only" Discovery, San Diego Bar Association.
[4] *Maxwell Foods, LLC v. Smithfield Foods, Inc.*, 2021 NCBC LEXIS 101, *3, 2021 NCBC Order 24, 5.
[5] *Maxwell Foods, LLC v. Smithfield Foods, Inc.*, 2021 NCBC LEXIS 101, *2, 2021 NCBC Order 24, 4, quoting *Arvco Container Corp. v. Weyerhaeuser Co.*, 2009 U.S. Dist. LEXIS 9264, at *15-16 (W.D. Mich. Feb. 9, 2009).

handicapped by an AEO procedure are Plaintiffs, and no reason appears to restrict their access to evidence.

*Second*, although the draft would allow disclosure of Law Enforcement Sensitive ("LES") information, it does not rule out the possibility that defendants will still decline to produce some LES information. Plaintiffs would like a clear commitment from the defendants to produce relevant documents under an appropriately-phrased protective order.

*Third*, plaintiffs are interested to understand how the Privacy Act provisions are intended to operate. Why are these provisions necessary, whose privacy rights are being altered by court order, and what sort of information do the defendants expect to release? Would the provisions be used to allow interagency sharing of information that would otherwise be proscribed under the Privacy Act?

*Fourth*, plaintiffs request an affirmative commitment from the defendants to restrict circulation of plaintiff-designated CI to the DOJ litigation team and refrain from using plaintiff-designated CI for investigative or enforcement purposes.

*Fifth*, as to dispute-resolution procedures. Rather than assigning an objecting party the duty of filing a motion within a short time period (for which the proposed seven days seems insufficient), we should conform our dispute-resolution procedure to Judge Silver's standing order, that forbids filing discovery motions and prescribes the sole way to present discovery disputes to the Court. (See attached.)

As I mentioned in my email earlier this evening, I find it most useful to apply confidentiality orders instrumentally, to allow disclosure of sensitive materials that have known potential for misuse. The impending exchange of discovery and responses will help us to concretize our respective concerns. We can then adopt an agreement that addresses those concerns and assures us that we will each get the discovery we need to prepare our cases.

Thank you for your consideration of these issues.

Very truly yours,

Charles Carreon

cc: S.Stanley

## DISCOVERY DISPUTES

Pursuant to Local Rule 7.2(j) and the Court's Rule 16 Scheduling Order, counsel and any pro se parties must personally meet and confer and make all reasonable efforts to resolve a discovery dispute prior to contacting the Court. GENERALLY, NO MOTIONS CONCERNING THE DISPUTE ARE PERMITTED TO BE FILED.

1. If unable to resolve a discovery dispute, do not file a motion unless directed by the Court.

2. Each party is required to provide the Court with written certification that there has been compliance with Rule 7.2(j) and the Rule 16 Scheduling Order.

3. File and e-mail to chambers (Silver_Chambers@azd.uscourts.gov) a joint statement of the dispute. This joint statement is not to exceed 14 lines per issue for each party unless an enlargement has been approved by the Court.

4. The filed/faxed document will be reviewed, and either an order will issue or a hearing will be set with the parties receiving notice via the Court's electronic filing system.