BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

LISA NEWMAN
BONNIE E. DEVANY
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Email: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br><br>v.<br><br>Merrick Garland, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373-ROS |

**DEFENDANTS' OPPOSITION TO AMENDED MOTION TO INTERVENE**
**[Doc. 251]**

**MEMORANDUM OF POINTS AND AUTHORITIES**

More than four years after this case was filed, and for the second time, AYA member Taylor Cox seeks to intervene on behalf of himself and 5,239 members, donors, and email correspondents of AYA. *See* Am. Mot. for Leave to Intervene, Dkt. 251-1. The Court should deny this unnecessary and belated request, for several reasons.

*First*, the motion for intervention is brought on behalf of "all AYA congregants," who are already represented by Plaintiff membership organization AYA (and the same counsel) in this case, and accordingly cannot now "intervene" under Rule 24. As this Court noted in responding to the petition for a writ of mandamus, "Counsel for Plaintiffs" "filed a motion to intervene on behalf of the very members and congregants whose First Amendment association rights Plaintiffs now seek to assert." Dkt. 243 at 2. Intervention is available only to non-party movants, not existing parties, like AYA members who are already represented by the organization of which they are a part.

*Second*, Intervenors do not make the showing necessary to support either mandatory or permissive intervention. As this Court already stated "[t]here is no explanation why intervention was necessary or would be helpful to their First Amendment association right." Dkt. 243. Intervenors' four-year delay in moving for intervention is fatal to their request, prejudicial to Defendants, and inadequately explained. Intervenors attempt to justify this extreme delay by claiming that their interest newly arose from this Court's January order resolving disputes about the protective order and the March Discovery Order. But that doesn't hold water. The record of this case amply demonstrates that the interests Intervenors seek to vindicate are far from new and Intervenors' request to participate is manifestly untimely, in addition to being unjustified on the merits. This lawsuit has, from inception, explicitly sought relief on behalf of AYA members. In any event, the interests Intervenors now belatedly seek to advance are meritless. Nor can Intervenors rebut the strong presumption that AYA—represented by the same counsel representing Intervenors—cannot adequately protect their asserted interests. AYA has repeatedly stated that it is representing and seeking relief for its members. Indeed,

Plaintiffs already seek a "stay" of this Court's Discovery Order to prevent Defendants from receiving relevant information that this Court ordered Plaintiffs to provide.

## ARGUMENT

### I.   Intervenors' amended motion is improper.

After Defendants requested an extension of time to respond to a motion to intervene pending before the stay in this case was entered, on September 25, the Court ordered that Defendants' opposition brief by filed by October 4 and Intervenors' reply by October 11. Dkt. 247.  Defendants timely filed their opposition.  Instead of filing a substantive reply by the Court-ordered deadline, Intervenors notified the Court that the prior intervention motion "has been rendered moot by the Proposed Intervenor Plaintiffs' submission of a First Amended Complaint Amended."  Dkt. 252 at 1.  Intervenors did not seek leave to file an amended motion to intervene, and at no point did Intervenors notify Defendants (or the Court) that they intended to do so, much less confer about an amended motion.  Instead, Intervenors waited until Defendants had expended time and effort to file an opposition to the original motion to intervene and simply requested in their reply "that the Court deem the original motion and all proceedings therein moot."  Dkt. 252 at 2.  Intervenors cite to Rule 15 as the basis for the amended motion, but they have no basis to "amend as of right" under Rule 15 as would a Plaintiff, when they have not been granted intervenor status.  Intervenors made no effort to reply to any substantive arguments concerning their original motion to intervene.

The purported basis for filing an amended intervenor complaint is to add an APA claim "for judicial review of administrative action" by Defendants.  *See* 252-2 ¶¶ 46-78 (adding APA claim).  To state it plainly, Intervenors are alleging that a routine civil discovery request in a lawsuit commenced by Plaintiffs violates the Administrative Procedure Act.  That claim is frivolous.  To make matters worse, the claimed basis for an amended motion to intervene is the Supreme Court's decision in *Loper Bright*—a decision that came out four months ago and which is not cited in either the amended motion or complaint.  Intervenors state that this decision "was of course heralded throughout the legal community as a holding that greatly

reduces every administrative agency's ability to define its mission through its own pronouncements, or to add to its Congressional remit areas of activity that are in fact not within the scope of the jurisdiction granted to Congress." Dkt. 252 at 2. However "heralded," *Loper Bright* has nothing to do with this case, in which Plaintiffs seek a religious exemption under RFRA and has no bearing on the conduct of routine civil discovery. And it certainly provides no basis to "moot" the previous motion to intervene, when Intervenors did not seek leave to do so, and when the APA claim that forms the basis for the amendment wholly lacks merit.

Intervenors' improper procedural maneuver is the latest of many attempts to obstruct discovery by disregarding Court-ordered deadlines, act unilaterally and without conferring, and shows no regard for the time expended by Defendants and this Court in responding to another frivolous motion. It demonstrates that Intervenors, like Plaintiffs, similarly do not take this litigation or the Court's deadlines and orders seriously. This Court should, at a minimum, deny Intervenors' unilateral request to moot its prior motion and deny both the original and subsequent motions to intervene, without further briefing. *See* Dtk. 220 at 20; Dkt 234 at 2 (expressly warning Plaintiffs against "any further obstruction or failure to meet discovery obligations").

**II.     Intervenors Meet None Of The Criteria For Intervention As Of Right.**

Intervenors contend that they are entitled to intervene as of right under Rule 24(a). A proposed intervenor bears the burden of demonstrating that he has satisfied the requirements for intervention. *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). An applicant for intervention must show that: (1) the motion is timely; (2) the applicant has a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicants interest must be inadequately represented by the parties to the action. *United States v. Aerojet General Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010). "[I]t is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met." *Cooper v. Newsom*, 13 F.4th 857, 865

(9th Cir. 2021) (citation omitted).  "Failure to satisfy any one of the requirements is fatal to the application" for intervention.  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).  Here, Intervenors have not demonstrated that they meet any of the requirements.[1]

### A. Intervenors' Delay is Fatal to Their Request, Prejudicial to Defendants, and Inadequately Explained.

Intervenors' motion is not timely.  "In determining whether a motion for intervention is timely, [courts] consider three factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *League of United Latin Am. Citizens v. Wilson* ("*LULAC*"), 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *Orange Cnty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986)).  In weighing these factors "any substantial lapse of time weighs heavily against intervention." *Id.* (quoting *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996)).  The date by which delay is measured is "from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties."  *Washington*, 86 F.3d at 1503.  "Timeliness is 'the threshold requirement' for intervention as of right."  *LULAC*, 131 F.3d at 1302. And if the Court finds that "the motion to intervene was not timely" it need not consider the remaining elements.  *Id.*

Here, Intervenor's motion, filed more than four years into this litigation (and subsequent to a prior motion to intervene), is untimely.  Most notably, the parties negotiated, and this Court issued, a Rule 16 Scheduling Order under which Plaintiffs agreed to amend or join additional parties no later than July 1, 2023.  Dkt. 195 at 193.  Plaintiffs opted not to do so.  Moreover, a substantial number of significant "litigation milestones" have transpired in this case, including multiple rounds of dispositive motions briefing and requests for preliminary injunctive relief, and substantial completion of fact discovery.  *Lindblom v. Santander Consumer USA, Inc*, 2018 WL 3219381, at *4 (E.D. Cal. June 29, 2018), *aff'd sub nom.*, 771 F. App'x 454

---

[1] Defendants incorporate by reference the argument made in its opposition to the original motion to intervene that already-represented members are not proper intervenors under Rule 24. *See* Dkt. 249 at 2-4.

4

(9th Cir. 2019). The unique procedural history and the current posture of the case weigh strongly against a finding of timeliness.

### a. The stage of the proceedings favors denial.

"Although the mere lapse of time, without more, is not necessarily a bar to intervention," *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004), "any substantial lapse of time weighs heavily against intervention," particularly where "the district court has substantively—engaged the issues in th[e] case." *LULAC*, 131 F.3d at 1302-03. Intervention is disfavored when, for example, a would-be intervenor seeks to "reopen [years] of litigation." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 856 (9th Cir. 2016). Here, the "stage of the proceedings" factor weighs "heavily against allowing intervention" because this Court has "substantively—and substantially—engaged the issues in this case." *LULAC*, 131 F.3d at 1303. More than four years have passed in this case, and numerous litigation milestones have come and gone. *See id.* (intervention motion filed 27 months after start of litigation "fights an uphill" in effort to intervene). During the preceding 50 months, the parties have engaged in a substantial amount of motions practice and discovery, and this Court has been substantively and substantially engaged in these issues.

Plaintiffs filed their first Complaint seeking relief on behalf of AYA and its members on May 5, 2020, Dkt. 1, and ultimately filed their operative (Fifth Amended) Complaint in May 2022, Dkt. 159, which similarly seeks relief on behalf of its members. The parties negotiated, and this Court rendered, a Rule 16 Scheduling Order, under which Plaintiffs were required to amend or join additional parties no later than July 1, 2023. Dkt. 195. Before and since that deadline, the parties have engaged in a significant amount of dispositive motions practice, including a motion to transfer, Dkt. 62; motions to dismiss each successive complaint, Dkt. 20, 29, 85, 112, 175; three motions for preliminary injunctive relief, Dkt. 22, 33, 137; an application for a writ of habeas corpus, Dkt. 125; a motion to consolidate this case with a state court case, Dkt. 132; and a motion for entry of final judgment, Dkt. 157. This Court has

similarly expended a significant amount of time deciding these issues, rendering multiple opinions on motions to dismiss the Complaint, including an opinion dismissing this case without prejudice, Dkt. 153, and opinions denying Defendants' motion to dismiss, Dkt. 183, an application for a writ of habeas corpus, Dkt. 131, the motion to consolidate, Dkt. 136, and the entry of final judgment, Dkt. 168. The parties were in engaged in settlement discussions for three months. Dkts. 163, 173. Two appeals have been taken, including Plaintiffs' most recent unsuccessful request for mandamus relief. Dkts. 171, 230.

Additionally, the parties are over a year into the discovery process, and the date for substantial completion of written fact discovery expired March 8, 2024. Dkt. 207. Defendants met this deadline and propounded three rounds of written fact discovery in advance of this deadline, responded to Plaintiffs' discovery requests, produced 20,000 pages of documents, and have engaged expert witnesses. Defendants also expended a significant amount of time negotiating the scope of discovery requests, attempting to confer on discovery disputes, opposing Plaintiffs' repeated delays in the discovery process, and ultimately litigating the inadequacy of Plaintiffs' responses, including four joint statements, totaling more than 150 pages. *See* Dkt. 202 at (joint statement on protective order); Dkt. 212 (dispute over joint statement process); Dkt. 213 (detailing breakdown in conferral process and extending discovery deadlines); Dkt. 219 (87-page joint statement on deficiencies in first set of discovery requests); Dkt. 225 (51-page joint statement on deficiencies in second set of discovery requests); Dkt. 228 (opposition to extension of time to comply with Court's discovery order). Each of these disputes required substantial and substantive consideration from this Court, including this Court's most recent 20-page opinion on the dispute over the first set of discovery requests. Dkts. 205, 218, 220, 234.

The Ninth Circuit, when considering whether a party is entitled to intervene at a similarly belated stage of the proceedings, reasonably concluded that the timing "weigh[ed] heavily against" allowing intervention. *LULAC*, 131 F.3d at 1303. Much like in this case, in *LULAC*, the Ninth Circuit agreed that "the district court and the original parties had covered a lot of

6

legal ground together" in a case that involved multiple complaints, a temporary restraining order, a preliminary junction, the denial of a motion to dismiss, and discovery that had proceeded for nine months. *Id.*

Numerous courts have similarly concluded that the advanced stage of the proceedings favored denying intervention. *See U.S. Sec. & Exch. Comm'n v. Beasley*, 2024 WL 1133587, at *1 (9th Cir. Mar. 15, 2024) (affirming denial of intervention where party waited four months and "the stage of proceedings had progressed substantially"); *U.S. Equal Emp. Opportunity Comm'n v. Bay Club Fairbanks Ranch, LLC*, 2021 WL 1056590, at *6 (S.D. Cal. Mar. 19, 2021) (parties had "vigorously litigated the matter," for more than two years including motions to dismiss, and "expended significant resources" resolving discovery disputes); *Hernandez v. Pennsylvania Tool Sales & Serv., Inc.*, 2020 WL 7181067, at *2 (S.D. Cal. Dec. 7, 2020) (three-year old case involving "extensive discovery" including "initial disclosures, supplemental disclosures and written discovery"); *Lindblom*, 2018 WL 3219381, at *4 (numerous "litigation milestones" had passed including motions to dismiss, a motion for judgment on the pleadings, mediation, and where "the parties conducted discovery for a full year"). The Intervenors make no argument to the contrary. Indeed, neither of their motions includes any discussion of the stage-of-the proceedings inquiry.

### b. Defendants would be prejudiced.

Prejudice to existing parties is "the most important consideration in deciding whether a motion for intervention is untimely." *Smith*, 830 F.3d at 857. The Court considers the prejudice "from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Id.*

Defendants would suffer substantial prejudice if intervention were granted at this late date. Cox's motion to intervene on behalf of a class of more than 5,000 individuals would "require a 'do-over' of almost the entire litigation," and would wholly "derail this case from

its current track to trial." *Lindblom*, 2018 WL 3219381, at *4.[2] Defendants would be forced to expend significant resources to relitigate threshold issues. Not only would it wholly disrupt already-delayed litigation, but it would also expand the scope of this case significantly. It would, for example, require briefing and this Court's resolution of the adequacy of Intervenors' Complaint for class-wide relief when the members are already represented in this litigation, including potentially a motion to dismiss the Complaint because Intervenor members cannot state a claim that an organization's compliance with this Court's Discovery Order would violate RFRA and would violate members' First, Fourth, and Fifth Amendment rights. *See infra* at I.C. Defendants would have to litigate the permissibility of Intervenors' requests for injunctive relief and interim requests to "stay" this case and seek an additional protective order. Finally, Defendants would also be required to litigate class certification.

Additionally, Defendants would be prejudiced by the injection of class-wide relief four years into this lawsuit and the inefficiency of restarting what would become an even more burdensome discovery process of a purported class of over 5,000 individuals. *See LULAC*, 131 F.3d at 1304 (prejudice where intervenor would be "filing motions and conducting discovery"); *Washington*, 86 F.3d at 1504 (no abuse of discretion in finding prejudice where "intervention would complicate the issues and prolong litigation"). While Defendants have complied with their discovery obligations, Plaintiffs have not. And, as the motion to intervene shows, Plaintiffs do not intend to produce documents or comply with the Court's Discovery Order. To put it plainly, Plaintiffs have now been sitting on a trove of Defendants' discovery materials for more than six months, able to review and mine those materials, while Defendants

---

[2] Intervenors state in other filings that the 5,239 number refers to "email recipients in AYA's current email address list," with whom AYA has communicated with "for religious reasons., *i.e.*, to attend ceremony, request and receive advice, and other private matters." Dkt. 222-2 ¶ 3(a) & n.2. Thus, is it not entirely clear whether the class of 5,239 Intervenors are all AYA members. For the purposes of opposing this motion, Defendants construed the class of Intervenors to be those the motion expressly represented were Intervenors—those who are "members" of AYA, not non-AYA members, donors, or correspondents. But as discussed *infra* Section I.C, if the class includes non-member donors or correspondents with AYA, these individuals' interests are adequately protected by the protective order, and in any event, these individuals have not demonstrated that they may intervene as of right.

8

have received almost no documents from Plaintiffs or otherwise received revised responses to Defendants' interrogatories.  Granting intervention would only further perpetuate the inequity of the one-sided nature of discovery thus far in this case.

Were the Court to grant Intervenors' motion, the Court would have to issue a new scheduling order, reopen discovery, and Defendants would have to spend significant additional resources to conduct discovery for a class purporting to represent more than 5,000 members and litigate disputes inevitably arising out of such discovery.  Not only would this restart an already burdensome discovery process and be highly prejudicial to Defendants, but Intervenors are attempting to relitigate settled issues that consumed both time and resources to resolve through the joint statement process.  It would be highly prejudicial to Defendants to allow Intervenors to relitigate issues already (unsuccessfully) raised repeatedly by their counsel in the joint statement process.  *See Center for Investigative Reporting v. U.S. Dep't of Labor*, No. 4:19-cv-01843, 2020 WL 554001, at *2 (N.D. Cal. Feb. 4, 2020) ("The Court is inclined to deny the motion insofar as it seeks intervention to relitigate or reconsider matters decided."); *EEOC v. Georgia-Pacific Corrugated LLC*, No. 07-cv-3944, 2008 WL 11388687, at *7 (N.D. Cal. Apr. 9, 2008) ("'Prejudice' in the context of a motion to intervene may exist where intervention would raise new issues, re-open decided issues, unnecessarily prolong litigation, threaten settlement, or delay remedies.").  Intervenors have requested the entry of a new protective order—despite the fact that one already exists—which the parties and *Intervenors' own counsel* negotiated over the course of 5 months, Dkt. 205 at 7 (detailing extended conferral), and which was ultimately resolved by this Court in Defendants' favor when the parties reached an impasse.  Dkt. 210.  And although Intervenors are now unhappy with the content of that protective order, they are represented by the *same counsel* who negotiated the operative protective order on behalf of Plaintiffs.  It is both highly inequitable and unusual that Intervenors now seek to relitigate the same issues through the same counsel.  Intervenors should not be allowed to misuse the intervention process to essentially receive a do-over of this Court's decisions. *Beasley*, 2024 WL 1133587, at *1 (finding prejudice where Intervenor could have moved sooner

9

to allow court to consider "objections" and legal "theory" before "expend[ing] substantial time and resources").

### c. Intervenors have not adequately explained their reason for delay.

An Intervenor must "adequately explain" the "reason for its delay." *LULAC*, 131 F.3d at 1304. "Even a lengthy delay, however, 'is not as damaging as a failure to adequately explain the reason for the delay.'" *Lee v. Pep Boys-Manny Moe & Jack of California*, No. 12-CV-05064-JSC, 2016 WL 324015, at *7 (N.D. Cal. Jan. 27, 2016). The date by which delay is measured is "from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties." *Washington*, 86 F.3d at 1503. Here, Intervenors face an uphill battle, as they have both a lengthy delay and fail to adequately explain that delay. *See LULAC*, 131 F.3d at 1302-03; (intervention motion filed 27 months after start of litigation "fights an uphill battle" in effort to intervene).

Intervenors' argument about delay is a single, conclusory sentence stating that they "have not delayed" in seeking the right to intervene because their "religious rights have been–and continue to be—under attack from the Defendants." Dkt. 251-1 at 16. That of course, is not an explanation of delay but rather a statement about the perceived need to intervene. Stating that their religious rights "have been" under attack implies that Intervenors are simply seeing to vindicate the same "religious rights" that have been asserted since the First Complaint filed in May 2020.

The argument is also baseless. Defendants are not "attacking" the religious rights of participants in AYA activities. Rather, they are conducting ordinary discovery into matters directly relevant to claims *AYA brought on behalf of its members*, claiming they have a right under RFRA to be exempted from the Controlled Substances Act. Nothing about any interests Intervenors have vis-à-vis *this litigation* has changed since the Court issued orders on the protective order and discovery. From its inception, this lawsuit has explicitly been premised on seeking relief on behalf of AYA members. Thus, intervenors should have known from the

outset that their "religious rights," Dkt. 251-1 at 16, would be at issue in, and affected by, the outcome of this litigation.

The record amply disproves any claim that these issues are somehow "new." AYA's First Complaint filed on May 5, 2020, stated that AYA "asserts the Fifth Amendment rights of its members on their behalf," and alleged that "Fifth Amendment rights" of "individual congregants" were "at risk." Dkt. 1 at 32 ¶ 111; *see also* Third Amended Complaint, Dkt. 77 at 39 ¶ 119 (identical assertion); Fifth Amended Complaint, Dkt. 159 at 29 (discussing the harm of "disclosure of the identity" of "two AYA members"). Intervenors likewise should have been informed as of August 2021 (when Defendants were litigating a motion to dismiss the Fourth Amended Complaint) that Defendants disputed that Plaintiffs could "state a valid claim for a violation of a Fifth Amendment right against self-incrimination." Dkt. 122. Intervenors cannot feign surprise at a position that Defendants have repeatedly advanced for the last 3 years. Thus, the record fundamentally belies Intervenors' claim that they "could not have anticipated that Federal Defendants would seek to weaponize the discovery process," and that "once it became clear that Federal Defendants would not withdraw their demand for the names of all of AYA's members" they moved to "join" this litigation. *Id.* at 16. Again, seeking relevant information is not "weaponizing" the discovery process. In any event, Intervenors should have been aware from the inception of this litigation of the interests they have been seeking to vindicate and only now seek to reassert through their belated attempt to "intervene."

Even if this Court believes that May 2020 is not the starting point for measuring delay, AYA was aware far earlier than January 2024 that Defendants intended to seek information about those who attend AYA ceremonies. Defendants circulated a draft protective order in July 2023, which in part was designed precisely to protect the privacy of both parties and non-parties alike. *See* Dkt. 205 at 7. Counsel for AYA (and now for the proposed Intervenors), circulated a letter on July 19, 2023, raising concerns about congregant information being used for investigative or enforcement purposes. *See* Dkt. 249-2. The disputed discovery requests

11

were served on September 1, 2023, and Plaintiffs objected on October 17, 2023, that Defendants discovery requests violated the First and "Fifth Amendment rights of AYA's congregation." *See, e.g.*, Dkt. 213-5 at 8. Against that backdrop, it strains credulity to assert that these were interests that "newly" arose when this Court issued its order on the protective order in January 2024. Nor do Intervenors adequately explain why they waited 8 months after discovery requests were served and *after* the substantial completion of written fact discovery deadline had passed to move to intervene.

### B. Intervenors have not articulated a protectable interest.

To intervene as of right, a party "must establish" that it has an interest that "is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). While Intervenors cite constitutional protections, they fail to articulate with any specificity a single legally protectable interest at stake. All four "interests" Intervenors advance are meritless, and Intervenors do not bother to address this Court's order already holding that these objections are meritless. Dkts. 210, 220.

*First*, Intervenors' assertions that "Defendants want to expose Intervenor Plaintiffs in order to impose substantial burdens and deter people from associating with AYA and engaging in Free Exercise," Dkt. 251-1 at 17, is entirely frivolous and unsupported. As articulated many times, Defendants can and do accommodate sincere adherents' religious use of ayahuasca. Plaintiffs elected to initiate this lawsuit seeking a government benefit for a purported religious exercise. It is not credible to assert that when the government engages in the usual civil discovery process to elicit information directly relevant and necessary to proving that claim at summary judgment or at trial, that Intervenors may then distort what is an obvious effect of civil litigation as targeting their religious exercise.

*Second*, Intervenors do not have any protectable Fourth Amendment interests in this civil suit. Despite this Court's conclusion that this objection is "frivolous," and "has no bearing on this case," Dkt. 220 at 3, Intervenors again assert it here without bothering to address

this Court's rationale. Defendants are not "using the civil discovery process as a governmental warrantless search." Dkt. 251-1 at 17. Plaintiffs brought this civil action, not Defendants. Not only do Interveners fail to articulate what this alleged "search" is, but "[i]t strains common sense and constitutional analysis to conclude that the fourth amendment was meant to protect against unreasonable discovery demands made by a private litigant in the course of civil litigation." *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 102 (S.D.N.Y. 1979).

*Third*, Intervenors' Fifth Amendment objections are meritless because Defendants have not asked Intervenors to provide their "own compelled testimonial communications." *United States v. Doe*, 465 U.S. 605, 611 (1984). Because it is "well established that 'the official records and documents' of an organization 'cannot be the subject of the personal privilege against self-incrimination,'" Dkt. 210 at 2 (quoting *United States v. White*, 322 U.S. 694, 699 (1944)), Intervenor *members* cannot assert a Fifth Amendment privilege over *AYA*'s documents in *AYA*'s custody.

*Fourth*, that Intervenors did not stipulate to the Protective Order does not give rise to a legally cognizable interest, and Intervenors provide no basis for such an assertion. Regardless, the Protective Order was entered into by AYA on behalf of AYA members through the same counsel now representing Intervenors.

*Fifth*, the intervention motion purports to be brought on behalf of AYA members. But the scope of the putative class of intervenors is both inconsistent and unclear. *Cf.* n.2, *supra.* Setting the already-represented members to one side, to the extent that third-party non-member donors or email-correspondents are seeking to intervene in this case, Intervenors have not established that these individuals have a legally protectable interest sufficient to allow them to intervene as of right. Non-member email correspondents or donors neither appear to assert, nor could they validly bring, RFRA claims arising from a sincere religious exercise burdened by the strictures of the Controlled Substances Act. If AYA is actually asserting that any person who sends an email to AYA is considered a "member" of AYA, that further undermines their assertion of a sincere religious exercise. *See* Dkt. 248 at 8-11. Intervenors make no allegations

13

that these non-members are seeking to vindicate a sincere religious belief in consuming ayahuasca, as would be necessary to state a RFRA claim. Finally, as to third parties whose interests may be implicated by the underlying dispute, their rights can be protected through the use of the Protective Order which exists in part to protect the privacy rights of individuals not before the court. Dkt. 248 at 9-10 (discussing protective order).

**C. Intervenors failed to rebut the presumption of adequate representation.**

AYA members are also fully and adequately represented by the plaintiff organization to which they belong. "In evaluating adequacy of representation, we examine three factors: '(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.'" *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003). "The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'" *Id.* "Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (quoting *Perry*, 587 F.3d at 951). Such presumption can be rebutted only by "a compelling showing to the contrary." *Id.*

Intervenors have not even attempted to meet their burden in overcoming the strong presumption of adequacy. Here, both the Intervenors' objective (and the relief sought) is the same as Plaintiffs—to stay the Discovery Order and prevent Defendants from receiving relevant information that this Court ordered Plaintiffs to provide.

Moreover, Intervenors' claim that AYA cannot adequately represent their interests is belied by the characterizations AYA has repeatedly made throughout litigation, including as recently as Plaintiffs' last filing, that AYA is representing and seeking relief on behalf of its members. *See, e.g.*, Pls. Opp. to Defs. Mot. to Dismiss at 17, Dkt. No. 177 ("AYA has associational standing to represent the members of its congregation."); *id.* at 16 ("Individual participation is not necessary where, as here, an association seeks prospective or declaratory relief

14

. . . ."); Pls. Mot. for Stay at 10, Dkt. No. 246 ("Plaintiffs raised their claim of First Amendment Privilege based on the associational standing of its congregation and donors."). Based on the record before the Court, Plaintiffs have "demonstrated they are capable and willing to make all of [the member's] arguments." *Arakaki*, 324 F.3d at 1087; *see also Burwell*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 683-84 (2014) ("[T]he purpose of extending rights to [organizations] is to protect the rights of the people associated with the [organization.]"). Intervenors do not argue that Plaintiffs are not willing to make arguments on their behalf. Indeed, Plaintiffs have asserted the exact arguments Intervenors now seek to raise. Dkt. 219 at 6 (asserting First and Fourth Amendment rights of members); Dkt. 205 at 4 (Fifth Amendment right). Plaintiffs have gone so far as to say it is their "pastoral duty" to "defend the Free Exercise rights of AYA members." *See, e.g.*, Fifth Am. Compl. at ¶ 21, Dkt. No. 159. Where, like here, Intervenors are the "exact [members that Plaintiff] is seeking to protect in this action," Intervenors cannot overcome the presumption of adequacy. *Cf. United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002).

Moreover, the Ninth Circuit has indicated that a potential intervenor fails to show that its interests are inadequately represented where, as is the case here, the same counsel represents both the potential intervenor and an existing party. *See In re Weingarten*, 492 F. App'x 754, 756 (9th Cir.2012) (unpublished) ("[T]he [intervenors] are represented by the same counsel as [an existing party], indicating that he is 'capable and willing to make' the same arguments that the [intervenors] would make if they were permitted to intervene." (quoting *City of Los Angeles*, 288 F.3d at 398)). Other courts have similarly found that adequate representation can be presumed where the same counsel represents both the intervenor and an existing party. *See, e.g.*, *Union Cent. Life Ins. Co. v. Hamilton Steel Prod. Inc.*, 374 F.2d 820, 823 (7th Cir. 1967) ("Inadequate representation can hardly be claimed where the same attorneys represent the Union's class representatives and the proposed intervenor."); *Guetzko v. KeyBank Nat'l Ass'n*, No. 08-cv-2067, 2009 WL 482130, at *4 (N.D. Iowa Feb. 25, 2009) ("Inadequate representation can hardly be claimed as the same attorney represents both the original plaintiffs and the proposed intervenors." (quoting *Carroll v. Am. Fed'n of Musicians*, 33 F.R.D. 353, 353 (S.D.N.Y 1963))).

Intervenors' sole argument that it is not adequately represented is that the Court determined "Plaintiff AYA may not assert the Fifth Amendment on behalf of its members in responding to Defendants' discovery requests." Dkt. 210 at 2; Dkt. 251-1 at 18. But intervention wouldn't change that. The Fifth Amendment "does not independently proscribe the compelled production of every sort of incriminating evidence." *Fisher v. United States*, 425 U.S. 391, 408 (1976). Instead, the privilege "protects a person only against being incriminated by his own compelled testimonial communications." *Doe*, 465 U.S. at 611; *see also Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (plurality opinion) ("Although our cases have permitted the Fifth Amendment's self-incrimination privilege to be asserted in noncriminal cases. . .that does not alter our conclusion that a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."). Defendants have not requested or subpoenaed information from any AYA congregants or Intervenors; they have requested only information *from AYA* and in AYA's records. *See* Dkt. No. 219. As this Court has already recognized, *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70 (1965), is inapplicable in a civil lawsuit brought by an organization. Dkt. 210. It is well established that "the official records and documents" of an organization "cannot be the subject of the personal privilege against self-incrimination." Dkt. 210 at 2 (quoting *White*, 322 U.S. at 699). Because Intervenors could not assert a Fifth Amendment Privilege over AYA's documents any more than AYA could, *cf. Doe*, 465 U.S. at 610-12, Intervenors fail to overcome the presumption of adequate representation.

**II.   The Motion to Intervene Should be Denied Because AYA Members Do Not Qualify for Permissive Intervention.**

Intervenors move in the alternative for permissive intervention under Rule 24(b). To intervene under this rule, intervenors must make three showings: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Cooper*, 13 F.4th at 868. "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id.* "In exercising its discretion, the district court must consider

16

whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.*

Intervenors' arguments are derivative of their quest for intervention as of right and are equally unpersuasive. Permissive intervention can be only granted where an application is timely, Fed. R. Civ. P. 24(b)(1)(B), and "courts analyze timeliness more stringently" for permissive intervention. *Roman Cath. Bishop of Monterrey v. Cota*, No. 15-cv-8065-JFW, 2016 WL 320741, at *6 (C.D. Cal. Jan. 8, 2016); As demonstrated *supra* Section I.B, Intervenors failed to show that their application is timely. *See Washington*, 86 F.3d at 1507 ("A finding of untimeliness defeats a motion for permissive intervention."). Because Intervenors have failed to demonstrate that their application is timely under the more lenient standard for mandatory intervention, *id.*, their request for permissive intervention is likewise untimely. For similar reasons, Intervenors have not shown that the existing parties to this lawsuit will not be prejudiced by intervention at this stage. *See supra* Section I.B.b.

Even if Intervenors were able to meet the requirements of Rule 24(b), the Court should nonetheless exercise its discretion to deny permissive intervention here. "Increasing the number of parties to a suit can make the suit unwieldy," *Solid Waste Agency of Northern Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996), particularly here, where there are already numerous unorthodox filings from Plaintiffs. The Ninth Circuit, for example, previously concluded that a court did not abuse its discretion when it "decided that 13 additional plaintiffs would unnecessarily delay and complicate the case." *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978); *see also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987) ("Particularly in a complex case such as this, a district judge's decision on how best to balance the rights of the parties against the need to keep the litigation from becoming unmanageable is entitled to great deference."). The proposed intervention would do nothing to assist the Court in reaching a decision on the legal issue presented in this action, where the Intervenors' interests are already represented.

| | | |
|---|---|---|
| 1 | Dated: October 24, 2024 | Respectfully submitted, |
| 2 | | BRIAN M. BOYNTON |
| 3 | | Principal Deputy Assistant Attorney General |
| 4 | | BRIGHAM J. BOWEN |
| 5 | | Assistant Branch Director |
| 6 | | */s/ Lisa Newman* |
| | | LISA NEWMAN |
| 7 | | BONNIE DEVANY |
| | | Trial Attorneys |
| 8 | | Civil Division, Federal Programs Branch |
| | | U.S. Department of Justice |
| 9 | | 1100 L Street NW |
| | | Washington, D.C. 20005 |
| 10 | | Telephone: (202) 514-5578 |
| | | E-mail: lisa.n.newman@usdoj.gov |
| 11 | | |
| | | *Attorneys for Defendants* |

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

/s/ Lisa Newman
LISA NEWMAN