CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

MELISSA DEAN (FLSB#1031982)
111 N. Orange Ave, Ste. 800
Orlando, FL 32801
Tel: 772-919-2748
Email:melissadeanesq@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly, and
Winfield Scott Stanley III
*Pro Hac Vice*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, Winfield Scott Stanley III, | Case No.:20-CV-02373-ROS |
| Plaintiffs, | Notice of Deposition of Defendant Drug Enforcement Administration Pursuant to F.R.Civ.P. 30(b)(6) |
| vs. | Request for Production of Documents Pursuant to F.R.Civ.P. 34 |
| Merrick Garland, Attorney General of the United States.et al. | |
| Defendants. | |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE THAT, at 9:00 a.m. on January 14, 2025, at Greenberg & Lieberman, 1775 Eye St NW, Suite 1150, Washington, DC 20006, Plaintiffs Arizona Yagé Assembly and Winfield Scott Stanley III will take the deposition of Defendant the Drug Enforcement Administration (the "DEA") via videoconferencing regarding the claims and defenses, and including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

Pursuant to F. R. Civ. P. 30(b)(6), the DEA shall designate one or more officer(s), directors(s), managing agent(s), or other person(s) who is willing and able to: (1) testify to all DEA institutional knowledge concerning enumerated matters, (2) produce and identify all the documents produced in response to Plaintiff's attached Rule 34 document request, (3) articulate the grounds for not producing requested documents, and (4) produce the written policies and decisions claimed to justify any non-production.

### *Definitions*

Terms are not mutually exclusive. Ordinary and common meanings shall apply, except as defined below. Objection to a definition shall not be grounds for a refusal to respond to a discovery request incorporating that definition.

| Term | Meaning |
|---|---|
| ASSOCIATION ASSOCIATE | Any group of individuals who voluntarily come together or interact for a shared purpose or interest, whether formal or informal, and includes all individuals who support, communicate with, or engage with the group in any manner. ASSOCIATION encompasses any collective effort to exercise rights or pursue a common goal, and ASSOCIATE refers to any individual who aligns themselves with, participates in, or supports the activities, beliefs, or purposes of the association. In particular to this matter, ASSOCIATION and ASSOCIATE includes individuals involved in religious, political, social, cultural, or other types of expressive activities protected by the First Amendment and Religious Freedom Restoration Act (RFRA). *See generally* U.S. Const. Amend. 1; 42 U.S.C §2000bb-1. |
| ASSOCIATIONAL HARM | Associational harm results when governmental conduct chills the First Amendment right of free association, deterring persons from associating from fear of negative legal consequences. Occurs when governmental action chills the First Amendment right of free association, by directly or indirectly deterring, discouraging or preventing individuals from associating freely due to a legitimate fear of legal and/or societal consequences or governmental retaliation. |
| ATTENDANCE RECORDS | The dates, times and places where AYA MEMBERS have attended ceremony, individually and as a congregation. Any documents, logs, lists, or other records that track or document the presence of AYA MEMBERS at events, meetings, gatherings, services, or other activities organized by or associated with AYA. This includes both physical and digital records, sign-in sheets, registration forms, and any other means by which attendance is recorded. |
| AYA | Arizona Yage Assembly and its Directors and Board |

| | |
|---|---|
| AYA CORRESPONDENTS | PERSONS or business entities who have received or sent CORRESPONDENCE from / to PLAINTIFFS. PERSONS or entities with whom AYA has communicated, exchanged information, or corresponded, either in writing, electronically, or verbally, or through any other medium. This includes both direct and indirect communication, whether formal or informal, and encompasses all parties involved in discussions or exchanges with AYA, regardless of the nature of the communication. |
| AYA DONORS | PERSONS or business entities who have made donations to AYA or communicated with PLAINTIFFS about donating. PERSONS or entities who have contributed or pledged any form of support, whether monetary, material, or in-kind, to AYA. This includes past, present, and potential donors, as well as PERSONS or entities who have made anonymous or non-anonymous contributions. |
| AYA MEMBERS | PERSONS who have joined with other AYA MEMBERS in ceremony. PERSONS who have formally or informally associated with, joined, or participated in any capacity with AYA, whether through financial contributions, regular attendance, participation in meetings or events, or any other form of association. This includes both active and inactive members, as well as those who have expressed an interest in the activities or purposes of the AYA. |
| CHILLING EFFECT | For purposes of this deposition notice, "chilling effect" refers to any government action, inaction, communication, policy, enforcement practice, or threat (explicit or implied) that deters, suppresses, or inhibits the free exercise of sincerely held religious beliefs or practices by the PLAINTIFFS, AYA MEMBERS and AYA DONORS. This includes, but is not limited to, creating an environment of fear, uncertainty, legal ambiguity, or perceived risk of penalties or enforcement actions, even in the absence of direct or immediate punitive measures.<br><br>This definition specifically encompasses subjective and indirect impacts on the PLAINTIFFS', AYA MEMBERS', AYA CORRESPONDANTS' and AYA DONORS' willingness or ability to conduct religious ceremonies, use sacramental AYAHUASCA, or otherwise engage in sincerely held religious practices. |
| COMMUNICATIONS | All transmission or exchange of relevant information, whether oral, written, or electronic, including, but not limited to, spoken words, written documents, emails, text messages, audio or video recordings, social media posts, tweets, blog posts, notes, gestures, and any other form of relevant exchange, whether formal or informal, irrespective of the medium or format used. This includes all communications, regardless of whether they are directly recorded or transmitted electronically, and encompasses any other type of transmission or sharing of relevant information. |

| COMPELLED DISCLOSURE(S) | The mandatory release, provision, or revelation of information by an individual or entity, regardless of the format or medium, as required by law, regulation, or government action. This includes disclosures that are not voluntarily made, but instead are required by governmental authority, court order, or other legal mandate, which force the disclosure of sensitive, personal, or private information, even when such disclosure may infringe upon First Amendment rights, including the rights to free speech, ASSOCIATION, and religious exercise. |
|---|---|
| COMPELLING GOVERNMENTAL INTEREST | A significant, overriding interest held by the government that justifies any action or restriction that may otherwise infringe upon individual rights, including interests related to public safety, national security, law enforcement, health, and welfare. A compelling governmental interest must be substantial, and any action taken in pursuit of such an interest that may otherwise infringe upon individual rights must be NARROWLY TAILORED to achieve that goal without unnecessarily infringing upon individual rights and in particular to this matter, causing FIRST AMENDMENT INJURY, ASSOCIATIONAL HARM, or CHILLING EFFECT. |
| CORRESPONDENCE | Emails and other written communications, in any medium. |
| DEA | The Drug Enforcement Administration |
| DISPUTED INTERROGATORIES | For the purposes of applying the EXACTING SCRUTINY standard in the case at issue, a specific reference to Interrogatories No. 4, 10, 11, 16, 18, 20, 21 and 23 included within the written discovery requests YOU propounded upon PLAINTIFFS on September 1, 2023. |
| DISPUTED REQUESTS FOR PRODUCTION | For the purposes of applying EXACTING SCRUTINY in the case at issue, a specific reference to Requests for Production No. 7, 8, 11, 12, 13, 20 and 21 included within the written discovery requests YOU propounded upon PLAINTIFFS on September 1, 2023. |
| DOCUMENTS | All recorded COMMUNICATIONS, including ESI, including that which are recorded in writing, electronically, or any other medium. |
| DONATION(S) | For the purposes of applying the EXACTING SCRUTINY standard in the case at issue, a specific reference to an anonymous or non-anonymous contribution, pledge, or any form of support, made by AYA DONORS to AYA, whether monetary, material, or in-kind. |
| ESI | Electronically Stored Information electronically stored information as defined by F.R.Civ.P. 26(a)(1) and 34(a). |
| EXACTING SCRUTINY | Requires the government to demonstrate a substantial relationship between the challenged law and a sufficiently important governmental interest, the strength of that governmental interest must reflect the seriousness of the actual burden on First Amendment rights, and the disclosure requirements must be NARROWLY TAILORED to address that interest without imposing unnecessary harm to First Amendment rights. *Ams. for Prosperity v. Meyer*, No. CV-23-00470-PHX-ROS, 2024 U.S. Dist. LEXIS 49047, at *16 (D. Ariz. Mar. 20, |

| | |
|---|---|
| | 2024); *Smith v. Helzer*, 95 F.4th 1207, 1228 (9th Cir. 2024), quoting *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2384 (2021).<br><br>(A substantial relation is necessary but not sufficient to ensure that the government adequately considers the potential for First Amendment harms before requiring that organizations reveal sensitive information about their members and supporters.); see also, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 n.4 (9th Cir. 2010), citing *NAACP v. Alabama*, 357 U.S. at 461-64 (prohibiting the compelled disclosure of the NAACP membership lists) (further citations omitted).<br><br>"[I]t is immaterial" to the level of scrutiny "whether the beliefs sought to be advanced by ASSOCIATION pertain to political, economic, religious or cultural matters." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021). |
| FIRST AMENDMENT INJURY | Infringement of a RELIGIOUS PERSON's rights of free expression, free association, free exercise of religion, or freedom from governmental with church governance. The infringement of an individual's rights under the First Amendment, including the right to free expression, free association, and the free exercise of religion, particularly in relation to government interference in religious governance or individual expression. |
| IDENTIFY | To IDENTIFY a PERSON means to provide sufficient demographic information to distinguish and locate the individual human being, such as their name, contact information, and/or other relevant identifying details.<br><br>To IDENTIFY a DOCUMENT, POLICY, or REPORT means to provide sufficient information to distinguish the document, such as the date, title, author(s), author's job title, and relevant content, without the requirement to identify intended recipients unless they are directly relevant to the content of the document and/or to the facts and circumstances giving rise to the claims and/or defenses in the case at issue. |
| NARROWLY TAILORED | For the purposes of applying the EXACTING SCRUTINY standard in the case at issue, a reasonable assessment of the burdens imposed by compelled disclosure should begin with an understanding of the extent to which the burdens are unnecessary, and that requires narrow tailoring. *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021).<br><br>EXACTING SCRUTINY requires that COMPELLED DISCLOSURES should be limited to only the information necessary to achieve the COMPELLING GOVERNMENTAL INTEREST. The disclosure regime must not unnecessarily burden First Amendment |

| | |
|---|---|
| | rights and should avoid infringing on individual freedoms such as association, expression, or religion, causing FIRST AMENDMENT INJURY, ASSOCIATIONAL HARM and/or a CHILLING EFFECT. *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2384 (2021). |
| PERSON(S) | A human being (singular and plural). |
| PLAINTIFFS | AYA and STANLEY |
| RELIGIOUS PERSON(S) | Any individual or entity whose beliefs, practices, or activities are based on sincerely held religious convictions, as protected by the **Religious Freedom Restoration Act (RFRA)** and the **First Amendment** to the United States Constitution. This includes individuals, religious organizations, associations, and other groups that engage in religious exercise, worship, or expression, whether or not those beliefs are affiliated with an established religion, denomination, or tradition. Protection under RFRA and the First Amendment extends to those whose beliefs are central to their identity and guide their religious practices. *See generally* U.S. Const. Amend. 1; 42 U.S.C §2000bb-1. |
| RFP(S) | Abbreviation for written discovery, specifically Requests for Production (singular or plural) under. *See* FED.R.CIV.P. 34. |
| ROGG(S) | Abbreviation for written discovery, specifically Interrogatory (singular or plural). *See* FED.R.CIV.P. 33. |
| STANLEY | Winfield Scott Stanley III |
| SEARCH TERMS | For purposes of this deposition notice and any related ESI discovery, "search terms" refer to specific words, phrases, combinations of words, or Boolean expressions designed to identify, locate, and retrieve electronically stored information (ESI) that is relevant to the claims, defenses, or subject matter of this litigation. Search terms include variations of words, synonyms, acronyms, abbreviations, misspellings, and contextually related terms, and are to be applied across all custodians, repositories, file types, and communication platforms (including but not limited to emails, messaging applications, and documents) that may reasonably contain relevant information. |
| TEMPORAL SCOPE | For purposes of this deposition notice and any related ESI discovery, "temporal scope" refers to the date and time ranges relevant to the claims, defenses, or subject matter of this litigation. This includes all timestamps associated with electronically stored information (ESI), including but not limited to creation, modification, transmission, receipt, access, and other system-generated date and time metadata. |
| YOU or YOUR | The Drug Enforcement Administration, including all agents, employees, and administrators, and/or contractors in of the agency that have knowledge or information reasonably available, or upon reasonable belief of the agency, should have knowledge or information |

| | reasonably available relevant to the facts and circumstances giving rise to the claims and/or defenses in the case at issue. |
|---|---|

| DISPUTED INTERROGATORIES | |
|---|---|
| **ROGG No. 4** | Identify each and every person who has attended or participated in, or who has requested to attend or participate in, one of your ceremonies. For each person identified, indicate when the person attended or participated, or requested to attend or participate; whether the person was permitted to attend or participate and any explanation as to why or why not the person was permitted to attend or participate; and how many times the person has attended or participated in one of your ceremonies. |
| **ROGG No. 10** | Identify the date and location of each and every instance in which you held a ceremony, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. For each and every instance identified, indicate every substance consumed by any person or offered for consumption, who was present at the ceremony, who was responsible for handling any substances consumed by any person or offered for consumption, and who served in a leadership role and/or position of authority at the ceremony (*e.g.*, Minister of the Assembly, "lead facilitator," other facilitator). |
| **ROGG No. 11** | Identify each and every instance in which you have stored, prepared, stored, distributed, dispensed, obtained, imported, exported, destroyed/disposed of, transported, transferred to another person, or otherwise handled ayahuasca. For each instance identified, indicate when the activity occurred, any and all persons involved in the activity, including any senders and/or recipients, and any steps you required the person or persons to take to be granted permission to perform the activity (including, but not limited to, training, background check, use of key or code). |
| **ROGG No. 16** | Identify each and every one of the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback."16 For each individual identified, describe the "knowledge and feedback" sought or shared. |
| **ROGG No. 18** | Identify each and every person who wrote, edited, reviewed, commented on, or otherwise received a draft of the documents attached to your original motion for a preliminary injunction in this case, Dkt. No. 33: "AYA Tenets and Precepts"17; "Ceremonial Instructions"18; "Code of Ethics"19; the questionnaire filed in this case as DKT. No. 33-6; and the confirmation letter filed in this case as Dkt. No. 33-7. |
| **ROGG No. 20** | Identify each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies. For each instance identified, please provide the amount received, the date received, and the purpose of payment, donation, or other contribution. |

| | |
|---|---|
| **ROGG No. 21** | For each document used at your ceremonies or trainings, or that you otherwise intend to rely upon to demonstrate the existence of what you allege are your "sincerely held religious beliefs and practices," identify each and every person who wrote, edited, reviewed, commented on, or otherwise received drafts of the document. |
| **ROGG No. 23** | Identify each and every organization or association of which AYA or one of the named Plaintiffs is a member, or have requested to be a member. For each organization or association identified, indicate when AYA or one of the named Plaintiffs first requested to become a member, how long AYA or one of the named Plaintiffs has been a member, whether AYA or one of the named Plaintiffs pays dues or anything else of value to the organization or association, and any individuals at the organization or association with whom AYA or one of the named Plaintiffs communicates or has communicated. |

| | |
|---|---|
| **DISPUTED REQUESTS FOR PRODUCTION** | |
| **RFP No. 7** | Produce any and all documents that contain communications with any and all individuals who are members of AYA relating to membership in AYA, your ceremonies, and your tenets and beliefs. |
| **RFP No. 8** | Produce any and all copies of the "AYA attendee roster." |
| **RFP No. 11** | Produce any and all documents that contain communications with any and all individuals who have facilitated, participated in, requested to participate in, or attended one or more of your ceremonies. This request includes, but is not limited to, any and all communications sent to or from prospective or actual ceremony participants, including copies of the questionnaire filed in this case as Dkt. No. 33-6 in any state of completion as well as any communications with prospective or actual participants regarding ceremony logistics (time, place, etc.), ceremony eligibility (questions from prospective participants about eligibility, explanations from you about eligibility to participate, etc.), and other ceremony- or ayahuasca-related inquiries. |
| **RFP No. 12** | Produce any and all documents regarding or relating to your ceremonies, including those in which ayahuasca is brewed, distributed, consumed, destroyed/disposed of, or otherwise present. This request includes, but is not limited to, any and all documents regarding or relating to the location, time, set and setting, duration, frequency, format, cost, payment, advertising, and attendance of your ceremonies, as well as post-ceremonial integration. |
| **RFP No. 13** | Produce any and all documents regarding or relating to each and every instance in which you have received anything of value, including payment, donations, or in-kind contributions, from ceremony participants or those requesting to participate in one of your ceremonies. |

| | |
|---|---|
| **RFP No. 20** | Produce any and all communications to or from any and all individuals who have been involved in the storage, preparation, security, distribution, dispensing, obtaining, importing, exporting, destroying/disposing, transporting, transferring to another person, or otherwise handling of ayahuasca. |
| **RFP No. 21** | Produce any and all documents that identify, describe, refer to, or contain communications to or from any and all individuals from whom you seek guidance or consultation, whether or not within your organization, including, but not limited to, the "honored educators" and "peers" from which you seek, and with whom you share, "knowledge and feedback," as well as and any association of psychedelic churches. |

## MATTERS FOR EXAMINATION

1. Whether YOU dispute that PLAINTIFFS have First Amendments rights to:

   a. free exercise of religion

   b. free association

   c. free expression

   d. freedom from governmental interference in AYA internal affairs

2. Which FACTS support YOUR position regarding the matters stated in Item 1, *supra*, and IDENTIFY:

   a. which PERSONS know those FACTS;

   b. Which DOCUMENTS, either produced or not produced in discovery, contain evidence of such FACTS.

3. With respect to the DISPUTED INTERROGATORIES, each of the following matters:

   a. Which COMPELLING GOVERNMENTAL INTERESTS would be served by requiring the PLAINTIFFS to respond to YOUR inquiries:

   b. Why YOU need the information YOU seek to obtain from the DISPUTED INTERROGATORIES;

   c. Whether YOU contend that compelled disclosure of the information YOU demanded will not directly or indirectly cause PLAINTIFFS to suffer FIRST AMENDMENT INJURY, ASSOCIATIONAL HARM and/or a CHILLING EFFECT, including but not limited to diminished:

   i. Membership and Participation of AYA MEMBERS in PLAINTIFFS' religious ceremonies and social activities;

   ii. DONATIONS of AYA DONORS to PLAINTIFFS.

 d. Whether YOU contend that YOUR interest in obtaining a complete answer to YOUR requests is sufficient to justify the CHILLING EFFECT that compelled disclosure will have on First Amendment free exercise, free association, and free expression by AYA MEMBERS, AYA DONORS and AYA CORRESPONDENTS;

 e. Whether YOU contend that YOUR requests are NARROWLY TAILORED to achieve the identified GOVERNMENTAL INTERESTS;

 f. Whether YOU contend that YOUR requests reflect the seriousness of the actual burden on First Amendment rights;

 g. Whether YOU contend that YOUR requests pass EXACTING SCRUTINY.

4. With respect to the DISPUTED REQUESTS FOR PRODUCTION, each of the following matters:

 a. Which COMPELLING GOVERNMENTAL INTERESTS would be served by requiring the PLAINTIFFS to produce all the DOCUMENTS demanded;

 b. To defend this action, why YOU need the DOCUMENTS YOU seek to obtain from compelling PLAINTIFFS to respond to YOUR demands;

 c. Whether YOU contend that compelled disclosure of the information YOU demanded will not directly or indirectly cause PLAINTIFFS to suffer FIRST AMENDMENT INJURY, ASSOCIATIONAL HARM and/or a CHILLING EFFECT, including but not limited to diminished:

   i. Membership and Participation of AYA MEMBERS in PLAINTIFFS' religious ceremonies and social activities;

   ii. DONATIONS of AYA DONORS to PLAINTIFFS.

 d. Whether YOU contend that YOUR interest in obtaining all responsive DOCUMENTS is sufficient to justify the CHILLING EFFECT that the

compelled disclosure will have on First Amendment free exercise, free association, and free expression by AYA MEMBERS, AYA DONORS and AYA CORRESPONDENTS;

    e.  Whether YOU contend that YOUR requests are NARROWLY TAILORED to achieve the identified GOVERNMENTAL INTERESTS;

    f.  Whether YOU contend that YOUR requests reflect the seriousness of the actual burden on First Amendment rights;

    g.  Whether YOU contend that YOUR requests pass EXACTING SCRUTINY.

5. Which GOVERNMENTAL INTERESTS would be served by compelling the PLAINTIFFS to disclose and/or produce information establishing the IDENTITIES of all:

    a.  AYA MEMBERS;

    b.  AYA CORRESPONDENTS;

    c.  AYA DONORS.

    d.  Each PERSON(S) present when AYAHUASCA is received or dispensed.

6. To defend this action, how YOU would use the IDENTITIES of all:

    a.  AYA MEMBERS;

    b.  AYA CORRESPONDENTS;

    c.  AYA DONORS;

    d.  Each PERSON(S) present when AYAHUASCA is received or dispensed.

7. To defend this action, what do YOU contend is the relevance of the IDENTITIES of all:

    a.  AYA MEMBERS;

    b.  AYA CORRESPONDENTS;

    c.  AYA DONORS;

    d.  Each PERSON(S) present when AYAHUASCA is received or dispensed.

8. To prevent inadvertent disclosures, whether publicly or internally, throughout the duration of this litigation and upon the resolution of this action, what assurances are YOU are prepared to implement to maintain confidentiality of the IDENTITIES of all:
   a. AYA MEMBERS;
   b. AYA CORRESPONDENTS;
   c. AYA DONORS;
   d. Each PERSON(S) present when AYAHUASCA is received or dispensed.

9. Which GOVERNMENTAL INTERESTS would be served by compelling the PLAINTIFFS to disclose and/or produce information establishing the:
   a. ATTENDANCE RECORDS of all AYA MEMBERS;
   b. DONATION histories of AYA DONORS, including but not limited to the amount, type, and frequency of all DONATIONS to AYA;
   c. Email addresses of all AYA CORRESPONDENTS;
   d. COMMUNICATIONS, including but not limited to the content of Emails, exchanged between PLAINTIFFS and all AYA CORRESPONDENTS;
   e. ESI not limited by TEMPORAL SCOPE or SEARCH TERMS expressly agreed upon by the parties or ordered by this Court;
   f. Every occasion when PLAINTIFFS received or dispensed AYAHUASCA;
   g. When AYAHUASCA is received or dispensed, the location where each such event occurred.

10. To defend this action, how YOU would use the compelled disclosure and/or production from PLAINTIFFS of the:
    a. ATTENDANCE RECORDS of AYA MEMBERS;
    b. DONATION histories of AYA DONORS, including but not limited to the amount, type, and frequency of all DONATIONS to AYA;
    c. Email addresses of all AYA CORRESPONDENTS;
    d. COMMUNICATIONS, including but not limited to the content of Emails, exchanged between PLAINTIFFS and all AYA CORRESPONDENTS;

    e. ESI not limited by TEMPORAL SCOPE or SEARCH TERMS expressly agreed upon by the parties or ordered by this Court;

    f. Every occasion when PLAINTIFFS received or dispensed AYAHUASCA;

    g. When AYAHUASCA is received or dispensed, the location where each such event occurred.

11. To defend this action, what do YOU contend is the relevance of all:

    a. ATTENDANCE RECORDS of AYA MEMBERS;

    b. DONATION histories of AYA DONORS, including but not limited to the amount, type, and frequency of all DONATIONS to AYA;

    c. Email addresses of all AYA CORRESPONDENTS;

    d. COMMUNICATIONS, including but not limited to the content of Emails, exchanged between PLAINTIFFS and all AYA CORRESPONDENTS;

    e. ESI not limited by TEMPORAL SCOPE or SEARCH TERMS expressly agreed upon by the parties or ordered by this Court;

    f. Every occasion when PLAINTIFFS received or dispensed AYAHUASCA;

    g. When AYAHUASCA is received or dispensed, the location where each such event occurred.

12. To prevent inadvertent disclosures, whether publicly or internally, throughout the duration of this litigation and upon the resolution of this action, what assurances are YOU are prepared to implement to maintain confidentiality of the:

    a. ATTENDANCE RECORDS of AYA MEMBERS;

    b. DONATION histories of AYA DONORS, including but not limited to the amount, type, and frequency of all DONATIONS to AYA;

    c. Email addresses of all AYA CORRESPONDENTS;

    d. COMMUNICATIONS, including but not limited to the content of Emails, exchanged between PLAINTIFFS and all AYA CORRESPONDENTS;

    e. ESI not limited by TEMPORAL SCOPE or SEARCH TERMS expressly agreed upon by the parties or ordered by this Court;

f.  Every occasion when PLAINTIFFS received or dispensed AYAHUASCA;

g.  When AYAHUASCA is received or dispensed, the location where each such event occurred.

13. With respect to YOUR production of DOCUMENTS, how does each document produced support YOUR contentions in this action, for each of the following disclosures:

    a.  PROD01, Bates Range: Defs.00000001-00000171

    b.  PROD02, Bates Range: Defs.00000172- Defs.00001472

    c.  PROD03, Bates Range: Defs.00001473- Defs.00002249

    d.  PROD04, Bates Range: Defs.00002250- Defs.00002350

    e.  PROD05, Bates Range: Defs.00002351- Defs.00003770

    f.  PROD06, VOL001, Bates Range: Defs.00003771- Defs.00015775

    g.  PROD06, VOL002, Bates Range: Defs.00015776 - Defs.00020151

    h.  PROD07, Bates Range: Defs.00020152 - Defs.00020898

14. With respect to YOUR production of DOCUMENTS, articulate why each redaction was made and articulate the privilege for each production marked as such within the following disclosures:

    a.  PROD01, Bates Range: Defs.00000001-00000171

    b.  PROD02, Bates Range: Defs.00000172- Defs.00001472

    c.  PROD03, Bates Range: Defs.00001473- Defs.00002249

    d.  PROD04, Bates Range: Defs.00002250- Defs.00002350

    e.  PROD05, Bates Range: Defs.00002351- Defs.00003770

    f.  PROD06, VOL001, Bates Range: Defs.00003771- Defs.00015775

    g.  PROD06, VOL002, Bates Range: Defs.00015776 - Defs.00020151

    h.  PROD07, Bates Range: Defs.00020152 - Defs.00020898

15. If YOU Contend that YOU must judge AYA's religious sincerity in order to defend this RFRA lawsuit, please state what analytical test YOU would apply to render such a judgment.

16. What YOUR answers are to the questions set forth in Plaintiffs' First Set of Interrogatories, attached hereto as Exhibit 1.

### DOCUMENTS REQUESTED

The witness(es) are requested, pursuant to F.R.Civ.P. 34, to produce:

1. The DOCUMENTS YOU reviewed to prepare YOUR testimony.

2. The DOCUMENTS YOU will require for reference to provide complete answers to questions falling within the scope of the above-described matters.

3. A privilege log of the privileges asserted to justify the redactions referenced in testimonial category number 14 hereinabove, items a – h, inclusive.

Dated: December 19, 2024

 

_____
MELISSA DEAN (1031982)
CHARLES CARREON (127139)
Attorneys for Plaintiffs
Arizona Yagé Assembly,
Winfield Scott Stanley III

# EXHIBIT 1

1   BRIAN M. BOYNTON
    Principal Deputy Assistant Attorney General
2   BRIGHAM J. BOWEN
    Assistant Branch Director
3   LISA NEWMAN
    Trial Attorney
4   BONNIE E. DEVANY (TX 24131173)
    Trial Attorney
5   Civil Division, Federal Programs Branch
    U.S. Department of Justice
6   1100 L Street NW
    Washington, D.C. 20005
7   Telephone: (202) 616-8101
    E-mail: bonnie.e.devany@usdoj.gov
8
    *Attorneys for Defendants*
9

10              **IN THE UNITED STATES DISTRICT COURT**

11                **FOR THE DISTRICT OF ARIZONA**

12

13                                                    No. 2:20-cv-2373-ROS

14  Arizona Yagé Assembly; Winfield Scott
    Stanley III, in his capacity as Founder and
15  Director of Arizona Yagé Assembly,          **DEFENDANT'S OBJECTIONS AND
                                                RESPONSES TO PLAINTIFF AYA'S
16              Plaintiffs,                      REVISED FIRST SET OF
                                                INTERROGATORIES**
17       v.

18  Merrick B. Garland, Attorney General of the
    United States, *et al.*,
19              Defendants.

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of Civil Procedure, Defendant[1] by and through undersigned counsel, submits Defendant's Objections and Responses to Plaintiff AYA's[2] First Set of Requests for Admissions to Drug Enforcement Administration.

Defendant's responses are provided in accordance with Rule 26(b)(1), which permits the discovery of any non-privileged information that is both relevant to any party's claim or defense and proportional to the needs of the case.  The inadvertent disclosure by Defendant of information protected by any privilege or protection shall not constitute a waiver of the applicable privilege or protection as to any information or documents disclosed.  Defendant reserves the right to supplement or amend Defendant's objections and responses should additional or different information be discovered or become available.

### PRELIMINARY STATEMENT

Defendant provides these objections and responses in the time available since service of the requests.[3]  These objections and responses are based upon information now known to Defendant and that Defendant believes to be pertinent in objecting and responding to the requests.  In the future, Defendant may discover or acquire additional information bearing on

---

[1] Plaintiffs named Anne Milgram, Administrator of the United States Drug Enforcement Administration ("DEA"), in her official capacity, as Defendant in this action.  Accordingly, the objections and responses herein are made on behalf of DEA.

[2] Defendant refers to Plaintiff AYA as "Plaintiff" in the remainder of the responses for ease of reference.

[3] The parties agreed in an email on September 28, 2023, to a two-week extension to respond to Plaintiffs' revised interrogatories and requests for production.

2

**EXHIBIT 1**

the requests, and Defendant's objections and responses thereto.  Without in any way obligating Defendant to do so, Defendant reserves the right to make subsequent revisions or amendments to Defendant's objections or these responses based upon information, evidence, documents, facts, or other things that hereafter may be discovered, or the relevance of which may hereafter be discovered.

Further, any response by Defendant to a particular request is not intended, and shall not be construed, as an admission of the existence of any fact, assertion, or other matters expressed or implied in the request. Defendant's objection to, or failure to object to, any particular request is not, and shall not be construed as, an admission that responsive information exists.

Defendant incorporates this Preliminary Statement into each objection and response below as if set forth in its entirety.

**EXHIBIT 1**

## **GENERAL OBJECTIONS**

The general objections set forth below apply to each and every discovery request discussed below.   In asserting Defendant's objections to a specific discovery request, Defendant may assert an objection that is the same as or substantially similar to one or more of these objections.  Defendant may do so because the language of the discovery request itself may signal particular and specific concerns that the discovery request at issue may be objectionable based on the grounds stated.  The fact that Defendant's objections to Plaintiffs' individual requests may specifically reference some of the objections described immediately below, but not others from the same list, does not indicate that Defendant has waived any of these objections as to any of Plaintiffs' requests.

1.      Defendant objects to Plaintiffs' First Set of Revised Interrogatories to the extent that the requests conflict with or purport to expand upon Defendant's obligations under the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Arizona.

2.      Defendant objects to Plaintiffs' First Set of Revised Interrogatories to the extent that the requests seek the disclosure of privileged information or information subject to any statutory or regulatory restriction upon disclosure.

3.      Defendant objects to Plaintiffs' First Set of Revised Interrogatories to the extent that the requests are overly broad or attempt to impose obligations that are unduly burdensome, expensive, or oppressive.

4.      Defendant objects to Plaintiffs' First Set of Revised Interrogatories to the extent that the requests are ambiguous.

4

**EXHIBIT 1**

5.      Defendant objects to any request to the extent it seeks information not relevant to the subject matter involved in the pending action and is not reasonably calculated to lead to the discovery of admissible evidence on the ground that such a request exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

6.      Defendant objects to any request to the extent that it seeks (a) attorney work product; (b) communications protected by the attorney-client privilege; (c) information protected by the deliberative-process privilege or law enforcement privilege; (d) material the disclosure of which would violate legitimate privacy interests and expectations of persons not party to this litigation; or (e) any other applicable privilege or protections.

7.      Defendant does not waive, and hereby expressly reserve their rights to assert any and all objections to the admissibility of such responses into evidence at the trial of this action, or in any other proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, and privilege.  Further, Defendant makes the responses herein without in any manner implying or admitting that the discovery requests are relevant or material to the subject matter of this action. Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute a waiver of any privilege or other ground for objections to discovery with respect to that document or any other document, or its subject matter, or the information contained therein during any proceeding in this litigation or otherwise. *See, e.g.*, FED. R. CIV. P. 26(b)(5)(B).

**EXHIBIT 1**

## OBJECTIONS TO DEFINITIONS

| Term | Definition | Objection |
|---|---|---|
| AYA | Arizona Yage Assembly and its Directors and Board | |
| FREE EXERCISE | The free exercise of religion protected by the First Amendment of the United States Constitution | |
| SUBSTANTIAL BURDEN(S) or to SUBSTANTIALLY BURDEN | A substantial burden on FREE EXERCISE exists when an individual is required to choose between following his or her religious beliefs and receiving a governmental benefit or when an individual must act contrary to his or her religious beliefs to avoid facing legal penalties. Accordingly, Federal laws, regulations, and policies that compel such a choice SUBSTANTIALLY BURDEN religious persons. | Defendant objects to this definition on the grounds that the term "religious persons" is undefined, vague, and ambiguous.<br><br>Defendant further objects to this definition as vague and ambiguous to the extent that this definition purports to define a substantial burden under The Religious Freedom Restoration Act, 42 USC § 2000bb-1, as opposed to the substantial burden under the First Amendment. Defendant will construe references to substantial burden(s) or substantially burden to refer only to the term as it used in § 2000bb-1.<br><br>To the extent this definition is limited to the First Amendment, Defendant objects to the use of this defined term as irrelevant and beyond the scope of the issues raised in Plaintiffs' Fifth Amended Complaint, as Plaintiffs do not bring a First Amendment challenge in their Fifth Amended Complaint. *See generally* Fifth Am. Compl., Dkt. No. 159. |
| DEA | Drug Enforcement Administration | |
| "YOU" or "YOUR" | Drug Enforcement Administration, | Defendant objects to this definition on the ground that it is overbroad and not |

6

# EXHIBIT 1

| | | |
|---|---|---|
| | including all agents and administrators in the agency. | proportional to the needs of this case because it presumably includes, among other individuals, all of Defendant's nearly 10,000 employees regardless of their position and regardless of their involvement in the events giving rise to the claims or defenses in this case. *See* U.S. DRUG ENFORCEMENT ADMIN., *DEA Leadership* (Feb. 17, 2021), https://www.dea.gov/about/dealeadership. |
| | | Defendant further objects to this definition on the basis that the terms "agents" and "administrators" are undefined, vague, and ambiguous. |
| | | Defendant also objects to this definition to the extent it includes agency counsel, if that inclusion would cause a request for admission to request that Defendant disclose the analysis, deliberations, conclusions, or other actions or thinking of any such attorney that would be protected by attorney-client privilege or the attorney work product doctrine. |
| | | Defendant will instead construe "YOU" or "YOUR" to mean the agency and agency employees that the agency reasonably believes may have non-privileged knowledge or information relevant to the request. |
| Personnel | YOUR employees, agents, and contractors | Defendant objects to this definition as overbroad and not proportional to the needs of the case because it includes all employees, agents, and contractors regardless of their position and regardless of their involvement in the events giving rise to the claims or defenses in this case. |

# EXHIBIT 1

| | | Defendant further objects to this definition to the extent it includes agency counsel, if that inclusion would cause a request for admission to request that Defendant disclose the analysis, deliberations, conclusions, or other actions or thinking of any such attorney that would be protected by attorney-client privilege or the attorney work product doctrine.<br><br>Defendant will construe "personnel" to mean agency employees, agents, and contractors that the agency reasonably believes may have non-privileged knowledge or information relevant to the request. |
|---|---|---|
| RFRA | The Religious Freedom Restoration Act, 42 USC § 2000bb-1 | |
| CORPORATE RELIGIOUS PERSON | A nonprofit or privately-held corporation that is run according to religious beliefs, pursues religious purposes through its activities, and engages in FREE EXERCISE. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707 – 720 (2014). | Defendant objects to this request to the extent is contradicted by Plaintiffs' definition to "person," below.<br><br>Defendant objects to this request to the extent it implicates the First Amendment as irrelevant as Plaintiffs do not bring a First Amendment claim in their Fifth Amended Complaint. *See generally* Fifth Am. Compl., Dkt. No. 159. |
| CSA | The Controlled Substances Act | Defendant will construe this term to mean the Controlled Substance Act, 21 U.S.C. § 812 *et seq*. |
| ENFORCEMENT ACTIVITY | Enforcement activity includes gathering intelligence by | Defendant objects to this term on the grounds that the terms "gathering intelligence," "monitoring electronic communications," "conducting |

8

**EXHIBIT 1**

| | monitoring electronic communications, conducting surveillance, and gathering information from informants and other sources; Analyzing patterns and characteristics of people and organizations suspected of controlled substance trafficking; Identifying key players in suspected networks of controlled substance trafficking, including importers, distributors and consumers; Targeting suspected persons and organizations for enforcement activity. | surveillance," "gathering information," "informants," "other sources," "analyzing patterns and characteristics," "suspected of controlled substance trafficking," "key players," "suspected networks of controlled substance trafficking," "importers," "distributers," "consumers," and "targeting" are undefined, vague, and ambiguous.

Defendant further objects to this definition as vague and ambiguous in that it uses the term "enforcement activity" to define "enforcement activity," which does not give Defendants sufficient clarity to reasonably respond to this request.

Defendant also objects to this request as overly broad and disproportionate to the needs of this case as it is inclusive presumably of lawful importation and distribution of controlled substances as well as unlawful.  Accordingly, it is not clear what is being enforced.

Defendant also objects to this definition as overly broad and vague in that the definition is not limited to any actor, and presumably means any person or organization ever to engage in any of the list of activities.

Defendant objects to this definition to the extent it implicates information protected by the law-enforcement privilege, attorney-client privilege, or any other applicable privilege.

Defendant objects to this definition to the extent enforcement activity is meant to include investigative activities, as any such activity (including the mere fact of |

9

**EXHIBIT 1**

| | | whether such activity did or did not take place), would be protected by the law-enforcement privilege.  Moreover, because non-overt investigative activity does not substantially burden sincere religious practice, it is not relevant to the RFRA inquiry.  Accordingly, Defendant will exclude investigative activities from the definition of the term "enforcement activities." |
|---|---|---|
| RFRA EXEMPTION | Any exemption granted to a RELIGIOUS PERSON by a United States District Court judge from the proscriptions of general law pursuant to the provisions of RFRA. | Defendant objects to this definition on the grounds that the terms "religious person" is undefined, vague, and ambiguous and according to Plaintiffs definition below, would only apply to human persons.  Defendant further objects to this definition as vague, ambiguous, and inaccurate as DEA also has the authority to grant a religious exemption.  Defendant also objects to this definition as over broad and disproportional to the needs of this case as it is not limited to the controlled substances at issue in this case. |
| AYAHUASCA | The communion sacrament used by the UDV, the Santo DAIME, and AYA, a binary tea made from *BanisteropsisCaapi* and *Psychotria Viridis* or *Diplopterys cabrerana* | Defendant objects to this definition as vague and ambiguous.  Defendant also objects to this definition to the extent that it suggests that the ayahuasca used by AYA is identical to that used by other entities.  The chemical composition, contents, and proportions of ayahuasca can vary, and Defendant has no basis to presume that the ayahuasca used by UDV, DAIME, and AYA are necessarily analogous such that the term should be treated as referring to the same substance across the three groups. |

# EXHIBIT 1

| | | |
|---|---|---|
| | | Instead, Defendant will construe the term to refer to the broader, generic definition that is generally accepted and refers to a variety of versions of the tea, used in a variety of traditions.<br><br>Accordingly, Defendant will construe the word "ayahuasca" to be typically understood as a tea made from brewing a mixture of plants that contains the known psychoactive substance N,N-dimethyltryptamine ("DMT"), and β-carboline alkaloids such as harmine, harmaline, or tetrahydroharmine. |
| PERSON | A human being | |
| IDENTIFY | To IDENTIFY a PERSON means to determine their name and/or sufficient demographic information to locate them.<br><br>To IDENTIFY a DOCUMENT, POLICY or REPORT means to identify the date written or record, the title, the author(s), their job title(s), and recipients of the DOCUMENTS. | Defendant objects to this definition to the extent it requires providing information such as "date written or record," "the author(s)," and "recipients of the DOCUMENTS," where such information would be irrelevant and/or unduly burdensome to identify.<br><br>In light of these objections, Defendant will construe the term "identify" in accordance with its ordinary meaning for the purpose of these requests and will provide sufficient information to reasonably identify each individual or document. |
| COMMUNICATIONS | All transmissions of meaningful information, whether made directly or through any medium of communication, including spoken words, gestures, drawings, audio or video recordings, | Defendant objects to this definition on the grounds that the term "meaningful information" is undefined, vague, and ambiguous.<br><br>Defendant further objects to this definition to the extent it imposes obligations on Defendant beyond those imposed by the Federal Rules of Civil Procedure, which limit discoveries to |

11

# EXHIBIT 1

| | | |
|---|---|---|
| | tweets, social media posts, text messages, blog posts. | that which is recorded in writing or electronically. *See* FED. R. CIV. P. 34(a)(1)(A).<br><br>Defendant also objects to this definition to the extent it implicates the law enforcement privilege, attorney-client privilege, or any other applicable privilege. |
| ESI | Electronically Stored Information electronically stored information as defined by F.R.Civ.P. 26(a)(1) and 34(a). | |
| DOCUMENTS | All recorded COMMUNICATIONS, including ESI. | Defendant will construe "recorded" to mean that which is recorded in writing or electronically. |
| POLICIES | Rules, policies, practices, procedural methods, manuals, and educational materials used by DEA and state law enforcement agencies, to educate LEOs. | Defendant objects to this definition to the extent it implicates State LEOs as admissions relating to State LEOs are irrelevant and beyond the scope of the issues raised in Plaintiffs' Fifth Amended Complaint. Not only has the Court dismissed all state defendants from this case, *see generally* Dkt. No. 70; Dkt. No. 153, the Court also dismissed Plaintiffs' § 1983 claims alleging a conspiracy between federal and state and local law enforcement because Plaintiffs "failed to adequately allege a conspiracy," Dkt. No. 153 at 14.  Plaintiffs did not reallege these § 1983 claims in their Fifth Amended Complaint.<br><br>Defendant will construe this term to refer to *Defendant's* rules and policies only.<br><br>Defendant also objects to this definition to the extent it implicates the law |

12

**EXHIBIT 1**

| | | |
|---|---|---|
| | | enforcement privilege, attorney-client privilege, or any other applicable privilege. |
| REPORTS | All DOCUMENTS, including ESI, in which LEOs or other personnel record facts, tips, events, places, persons, witness statements, forensic analysis, investigative hypotheses, warrant applications, search plans, proposed charges against targets for prosecution, and other matters while enforcing the CSA for DEA, HIDTA, Maricopa County, the State of Arizona and/or the City of Phoenix. | Defendant objects to this request as vague and ambiguous because it fails to identify a principal for the "PERSONNEL," despite the provided definition of "PERSONNEL" being dependent on the existence of a principle. Without identifying the principle, Defendant is not reasonably able to identify the personnel being referred to. On its face, this definition refers to any employee, agent, or contractor, of any principle, which is overly broad and grossly disproportionate to the needs of this case.

Defendant will instead construe "personnel" in this definition to mean employees of Defendant the Defendant reasonably believes may have relevant knowledge or information to the request.

Defendant also objects to this request on the grounds that the terms "tips," "events," "investigative hypotheses," "search plans," "proposed charges against targets," "other matters," and "while enforcing the CSA" are undefined, vague, and ambiguous.

Defendant objects to this definition as overbroad and overly burdensome in that it appears to refer to any document that any personnel of any principle ever recorded "while enforcing the CSA."

Defendant also objects to this definition to the extent it implicates the law enforcement privilege, attorney-client |

13

**EXHIBIT 1**

| | | |
|---|---|---|
| | | privilege, or any other applicable privilege, and to the extent it seeks information covered under the Privacy Act.<br><br>Defendant will interpret the term "HIDTA" to mean "High Intensity Drug Trafficking Areas." Defendant objects to this definition as overly broad and burdensome to the extent it implicates HIDTA, which although Plaintiffs mention in their First Amended Complaint, *see* Dkt. No. 11 ¶190, Plaintiffs make no reference to in their Fifth Amended Complaint.<br><br>Defendant further objects to this definition to the extent it implicates State LEOs as admissions relating to State LEOs are irrelevant and beyond the scope of the issues raised in Plaintiffs' Fifth Amended Complaint. Not only has the Court dismissed all state defendants from this case, *see generally* Dkt. No. 70; Dkt. No. 153, the Court also dismissed Plaintiffs' § 1983 claims alleging a conspiracy between federal and state and local law enforcement because Plaintiffs "failed to adequately allege a conspiracy," Dkt. No. 153 at 14. Plaintiffs did not reallege these § 1983 claims in their Fifth Amended Complaint. |
| META LABS | Meta Labs, Inc., the operator of Facebook and Instagram. | Defendant objects to this definition on the grounds that "Meta Labs, Inc." is not the operator of Facebook or Instagram.<br><br>Defendant will instead construe this definition to mean "Meta Platforms, Inc.," to whom Plaintiffs served a Third-Party Subpoena to on September 18, 2023. |

14

# EXHIBIT 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

If you contend that AYA is not a CORPORATE RELIGIOUS PERSON within the meaning of RFRA, please state all facts upon which you base your contention, IDENTIFY all DOCUMENTS including ESI, POLICIES and REPORTS, that contain evidence in support of YOUR contention, and IDENTIFY all PERSONNEL and other PERSONS with knowledge of facts having a tendency to prove or disprove YOUR contention.

**OBJECTION:**  Defendant objects to this request for the following reasons:

*First*, Defendant incorporates by reference herein Defendant's objections to the terms "corporate religious person," "identify," "documents," "policies," "reports," "your," "personnel," and "persons," as defined by Plaintiffs, detailed above in Defendant's Objections to Definitions.  Defendant also objects to the term "disprove YOUR contention" as undefined, vague, and ambiguous.

*Second*, Defendant objects to this interrogatory to the extent responding would require Defendant to make legal judgments or draw legal conclusions, rather than provide facts. Defendant responds that discovery remains ongoing, Defendants have received very few responsive answers and documents from Plaintiffs, and thus it is premature for Defendants to answer a contention interrogatory at this stage.

*Third*, Defendant objects to this request on the basis that Plaintiffs—and not Defendant—have relevant access to the information and knowledge to respond to this

16

EXHIBIT 1

request. *See* FED. R. CIV. P. 24(b)(1) (considering "the parties' relative access to relevant information"). Plaintiffs have turned over very little information about their use of ayahuasca, and Defendant does not have sufficient information to answer this contention interrogatory. *See, e.g.*, Pls.' Response to Defs.' Interrogatory No. 2 (refusing to identify persons in leadership roles or position of authority); Pls.' Response to Defs.' Request for Production No. 5 (refusing to provide *any* documents "whether in draft or final form, regarding, relating to, or referred to in . . . 'AYA Tenets and Precepts[,]' 'Ceremonial Instructions[,]' [or] 'Code of Ethics'"); Pls.' Response to Defs.' Request for Production No. 5 (refusing to provide *any* documents "that contain communications . . . sent to or from prospective or actual ceremony participants).

  *Fourth*, Defendant objects to this request to the extent it seeks documents or records protected by the law enforcement privilege, attorney-client privilege, deliberative process privilege, or any other appliable privilege.

  *Fifth*, Defendant objects to this request on the grounds that "corporate religious person," is not a term included in RFRA. *See* 42 U.S.C. §§ 2000bb, *et seq.*

**RESPONSE:** Subject to and given the foregoing objections, Defendant stands on the forementioned objections.

**EXHIBIT 1**

**INTERROGATORY NO. 2:**

If you contend AYA has used AYAHUASCA for purposes other than FREE EXERCISE, please state all facts upon which you base your contention, IDENTIFY all DOCUMENTS including ESI, POLICIES and REPORTS, that contain evidence in support of YOUR contention, and IDENTIFY all PERSONNEL and other PERSONS with knowledge of facts having a tendency to prove or disprove YOUR contention.

**OBJECTION:** Defendant objects to this request for the following reasons:

*First*, Defendant incorporates by reference herein Defendant's objections to the terms "ayahuasca," "free exercise" "identify," "documents," "policies," "reports," "your," "personnel," and "persons," as defined by Plaintiffs, detailed above in Defendant's Objections to Definitions. Defendant also objects to the terms "disprove YOUR contention" and "purposes" as undefined, vague, and ambiguous.

*Second*, Defendant objects to this interrogatory as irrelevant to the issues raised in Plaintiffs' Fifth Amended Complaint to the extent it implicates the Free Exercise Clause of the First Amendment, which is not a cause of action in Plaintiffs' Fifth Amended Complaint. *See generally* Fifth Am. Compl., Dkt. No. 159.

*Third*, Defendant objects to this interrogatory to the extent responding would require Defendant to make legal judgments or draw legal conclusions, rather than provide facts. Defendant responds that discovery remains ongoing, Defendants have received very few responsive answers and documents from Plaintiffs, and thus it is premature for Defendants to answer a contention interrogatory at this stage.

*Fourth*, Defendant objects to this request on the basis that Plaintiffs—and not Defendant—have relevant access to the information and knowledge to respond to this request. *See* FED. R. CIV. P. 24(b)(1) (considering "the parties' relative access to relevant information"). Plaintiffs have turned over very little information about their use of ayahuasca,

18

**EXHIBIT 1**

and Defendant does not have sufficient information to answer this contention interrogatory. *See, e.g.*, Pls.' Response to Defs.' Request for Production No. 12 (refusing to produce *any* documents "regarding or relating to your ceremonies"); Pls.' Response to Defs.' Request for Production No. 5 (refusing to provide *any* documents "that contain communications . . . sent to or from prospective or actual ceremony participants).

     *Fifth*, Defendant objects to this request to the extent it seeks documents or records protected by the law enforcement privilege, attorney-client privilege, deliberative process privilege, or any other appliable privilege.

**RESPONSE:**  Subject to and given the foregoing objections, Defendant will respond to this interrogatory by the close of fact discovery.

**EXHIBIT 1**

**INTERROGATORY NO. 3:**

If you contend that AYA's use of AYAHUASCA in AYA ceremonies has exposed any PERSON to physical or psychological harm, please state all facts upon which you base your contention, IDENTIFY all DOCUMENTS including ESI, POLICIES and REPORTS, that contain evidence in support of YOUR contention, and IDENTIFY all PERSONNEL and other PERSONS with knowledge of facts having a tendency to prove or disprove YOUR contention.

**OBJECTION:**  Defendant objects to this request for the following reasons:

*First*, Defendant incorporates by reference herein Defendant's objections to the terms "ayahuasca," "person" "identify," "documents," "policies," "reports," "your," "personnel," and "persons," as defined by Plaintiffs, detailed above in Defendant's Objections to Definitions.  Defendant further objects to the terms "AYA's use," "AYA ceremonies," "exposed," and "physical or psychological harm" as undefined, vague, and ambiguous.

*Second*, Defendant objects to this interrogatory to the extent responding would require Defendant to make legal judgments or draw legal conclusions, rather than provide facts. Discovery remains ongoing, Defendants have received very few responsive answers and documents from Plaintiffs.  In particular, Plaintiffs have largely resisted responding to Defendants discovery requests seeking information about the physical and psychological effects of ayahuasca on AYA participants. *See* Pls.' Response to Defs.' Interrogatory No. 14 (asserting that such information "is not discoverable"); Pls.' Response to Defs.' Request for Production No. 12 (refusing to produce *any* documents "regarding or relating to your

20

**EXHIBIT 1**

ceremonies"). Thus, it is premature for Defendants to answer a contention interrogatory at this stage.

*Third*, Defendant objects to this request on the basis that Plaintiffs—and not Defendant—have relevant access to the information and knowledge to respond to this request, in particular, whether any AYA participants have suffered physical or psychological harm from their intake of ayahuasca. *See* FED. R. CIV. P. 24(b)(1) (considering "the parties' relative access to relevant information").

*Fourth*, Defendant objects to this request to the extent it seeks documents or records protected by the law enforcement privilege, attorney-client privilege, deliberative process privilege, or any other appliable privilege.

**RESPONSE**: Subject to and given the foregoing objections, Defendant will respond to this interrogatory by the close of fact discovery.

**EXHIBIT 1**

**INTERROGATORY NO. 4:**

If you contend that YOUR application of the CSA to AYA does not SUBSTANTIALLY BURDEN AYA's FREE EXERCISE, please state all facts upon which you base your contention, IDENTIFY all DOCUMENTS including ESI, POLICIES and REPORTS, that contain evidence in support of YOUR contention, and IDENTIFY all PERSONNEL and other PERSONS with knowledge of facts having a tendency to prove or disprove YOUR contention.

**OBJECTION:**  Defendant objects to this request for the following reasons:

*First*, Defendant incorporates by reference herein Defendant's objections to the terms "your," "CSA," "substantially burden," "free exercise," "identify," "documents," "policies," "reports," "your," "personnel," and "persons," as defined by Plaintiffs, detailed above in Defendant's Objections to Definitions.  Defendant also objects to the term "application of the CSA" as undefined, vague, and ambiguous.

*Second*, Defendant objects to this interrogatory to the extent it implicates the Free Exercise Clause of the First Amendment, which is not a cause of action in Plaintiffs' Fifth Amended Complaint.  *See generally* Fifth Am. Compl., Dkt. No. 159.

*Third*, Defendant objects to this interrogatory to the extent responding would require Defendant to make legal judgments or draw legal conclusions, rather than provide facts. Discovery remains ongoing, Defendants have received very few responsive answers and documents from Plaintiffs.  *See, e.g.*, Pls.' Response to Defs.' Interrogatory No. 2 (refusing to identify persons in leadership roles or position of authority); Pls.' Response to Defs.'

22

**EXHIBIT 1**

Interrogatory No. 4 (refusing to identify persons who have attended or participated in one of Plaintiffs' ceremonies). Thus, it is premature for Defendants to answer a contention interrogatory at this stage.

*Fourth*, Defendant objects to this request to the extent it seeks documents or records protected by the law enforcement privilege, attorney-client privilege, deliberative process privilege, or any other appliable privilege.

**RESPONSE:** Subject to and given the foregoing objections, Defendant does not contend that DEA has "applied" the CSA to AYA. DEA has not evaluated any request from AYA for a DEA registration on the basis of religion; for this reason, there has been no substantial burden on AYA. Because DEA does not contend that it has applied the CSA to AYA, it does not identify any documents, personnel, or persons in response to this interrogatory. To the extent this interrogatory is a reference to the fact that under the CSA, registration is required to import, distribute, and/or consume Schedule I controlled substances such as dimethyltryptamine, and that DEA makes available a process by which AYA could seek a registration on religious grounds, Defendant contends that the requirement to obtain a registration, and the means available to do so, do not substantially burden religious practice. Nor do they burden AYA's "free exercise," however that term may be defined. Defendant provides this response based on the facts available to it at this time. Defendant reserves the right to supplement or amend Defendant's objections and responses should additional or different information be discovered or become available.

# EXHIBIT 1

**INTERROGATORY NO. 5:**

If you contend that AYA is not exposed to the risk of ENFORCEMENT ACTIVITY under the CSA, please state all facts upon which you base your contention, IDENTIFY all DOCUMENTS including ESI, POLICIES and REPORTS, that contain evidence in support of YOUR contention, and IDENTIFY all PERSONNEL and other PERSONS with knowledge of facts having a tendency to prove or disprove YOUR contention.

**OBJECTION:**

*First*, Defendant incorporates by reference herein Defendant's objections to the terms "enforcement activity," "CSA," "identify," "documents," "policies," "reports," "your," "personnel," and "persons," as defined by Plaintiffs, detailed above in Defendant's Objections to Definitions. Defendant also objects to this interrogatory on the ground that the terms "exposed" and "risk" are vague and ambiguous.

*Second*, Defendant objects to this interrogatory to the extent responding would require Defendant to make legal judgments or draw legal conclusions, rather than provide facts. Discovery remains ongoing, Defendants have received very few responsive answers and documents from Plaintiffs.  Thus, it is premature for Defendants to answer a contention interrogatory at this stage.

*Third*, Defendant objects to this request to the extent it seeks documents or records protected by the law enforcement privilege, attorney-client privilege, deliberative process privilege, or any other appliable privilege.

24

**EXHIBIT 1**

**RESPONSE:**  Subject to and given the foregoing objections, Defendant will respond to this interrogatory by the close of fact discovery.

الاستار

**EXHIBIT 1**

**INTERROGATORY NO. 6:**

If you contend that AYA cannot carry its burden under RFRA of proving that it is SUBSTANTIALLY BURDENED by YOUR application of the CSA to AYA, please state all facts upon which you base your contention, IDENTIFY all DOCUMENTS including ESI, POLICIES and REPORTS, that contain evidence in support of YOUR contention, and IDENTIFY all PERSONNEL and other PERSONS with knowledge of facts having a tendency to prove or disprove YOUR contention.

**OBJECTION:**  Defendant objects to this request for the following reasons:

*First*, Defendant incorporates by reference herein Defendant's objections to the terms "substantially burdened," "your," "CSA," "identify," "documents," "policies," "reports," "your," "personnel," and "persons," as defined by Plaintiffs, detailed above in Defendant's Objections to Definitions. Defendant also objects to this interrogatory on the ground that the term "cannot carry its burden under RFRA" is vague and ambiguous.

*Second*, Defendant objects to this interrogatory to the extent responding would require Defendant to make legal judgments or draw legal conclusions, rather than provide facts. Discovery remains ongoing, Defendants have received very few responsive answers and documents from Plaintiffs.  Pls.' Response to Defs.' Interrogatory No. 2 (refusing to identify persons in leadership roles or position of authority); Pls.' Response to Defs.' Interrogatory No. 4 (refusing to identify persons who have attended or participated in one of Plaintiffs' ceremonies).  Thus, it is premature for Defendants to answer a contention interrogatory at this stage.

26

**EXHIBIT 1**

*Third*, Defendant objects to this request to the extent it seeks documents or records protected by the law enforcement privilege, attorney-client privilege, deliberative process privilege, or any other appliable privilege.

*Fourth*, Defendant objects to this request and incorporates its response to Interrogatory No. 4 here: that DEA does not contend that DEA has applied the CSA to AYA.

**RESPONSE:**  Subject to and given the foregoing objections, Defendant will respond to this interrogatory by the close of fact discovery.

**EXHIBIT 1**

**INTERROGATORY NO. 7:**

If you contend that YOUR existing POLICIES provide AYA with the least restrictive means of access to AYAHUASCA for purposes of FREE EXERCISE, please state all facts upon which you base your contention, IDENTIFY all DOCUMENTS including ESI, POLICIES and REPORTS, that contain evidence in support of YOUR contention, and IDENTIFY all PERSONNEL and other PERSONS with knowledge of facts having a tendency to prove or disprove YOUR contention.

**OBJECTION:**  Defendant objects to this request for the following reasons:

*First*, Defendant incorporates by reference herein Defendant's objections to the terms "your," "policies," "ayahuasca," "free exercise," "identify," "documents," "reports," "personnel," and "persons," as defined by Plaintiffs, detailed above in Defendant's Objections to Definitions.  Defendant also objects to this interrogatory on the ground that the phrase "least restrictive means of access to ayahuasca" is vague and ambiguous.

*Second*, Defendant objects to this interrogatory to the extent it implicates the Free Exercise Clause of the First Amendment, which is not a cause of action in Plaintiffs' Fifth Amended Complaint.  *See generally* Fifth Am. Compl., Dkt. No. 159.

*Third*, Defendant objects to this interrogatory to the extent responding would require Defendant to make legal judgments or draw legal conclusions, rather than provide facts.  Discovery remains ongoing, Defendants have received very few responsive answers and documents from Plaintiffs.  Thus, it is premature for Defendants to answer a contention interrogatory at this stage.

**EXHIBIT 1**

*Fourth*, Defendant objects to this request to the extent it seeks documents or records protected by the law enforcement privilege, attorney-client privilege, deliberative process privilege, or any other appliable privilege.

**RESPONSE**:  Subject to and given the foregoing objections, Defendant will respond to this interrogatory by the close of fact discovery.

EXHIBIT 1

**INTERROGATORY NO. 8:**

Please IDENTITY[4] all DOCUMENTS including COMMUNICATIONS, ESI, POLICIES and REPORTS that in any way refer to YOUR acquisition of data from META LABS regarding AYA and/or AYA Facebook website users, however such data was acquired, including contractual data purchases from META LABS or third-party data brokers, issuance of subpoenas or search warrants, and social engineering or hacking techniques deployed by YOUR PERSONNEL or third parties.

**OBJECTION:** Defendant objects to this request for the following reasons:

*First*, Defendant incorporates by reference herein Defendant's objections to the terms "identify," "documents," "communications," "policies," "reports," "your," "META LABS," and "personnel," as defined by Plaintiffs, detailed above in Defendant's Objections to Definitions. Defendant will interpret "META LABS" to mean "Meta Platforms, Inc."

*Second*, Defendant objects to this interrogatory on the ground that the terms "acquisition of data," "regarding AYA," "contractual data purchases" and "third-party data brokers," "social engineering," "hacking techniques," "deployed," and "third parties," are vague and ambiguous. Moreover, it is unclear what the phrase "social engineering or hacking techniques deployed by YOUR PERSONNEL or third parties" is referring to.

*Third*, Defendant objects to this request on the basis that Plaintiffs—and not Defendant—have relevant access to the information and knowledge to respond to this

---

[4] Typographical error in original. Defendant will construe "identity" to mean "identify," as defined by Plaintiffs.

# EXHIBIT 1

request, as Defendant does not know the identities of AYA members.  *See* FED. R. CIV. P. 24(b)(1) (considering "the parties' relative access to relevant information").

*Fourth*, Defendant objects to this claim as irrelevant to the claims raised in Plaintiffs' Fifth Amended Complaint.  Plaintiffs' Fifth Amended Complaint makes no mention of Facebook, Meta, or data, nor does Defendant understand how Facebook user data is relevant to the issues raised in Plaintiffs' Fifth Amended Complaint.

*Fifth*, Defendant objects to this request to the extent it seeks documents or records protected by the law enforcement privilege, attorney-client privilege, deliberative process privilege, or any other appliable privilege.

**RESPONSE:**  Subject to and given the foregoing objections, Defendant responds that it is unaware of any responsive documents.  Defendant reserves the right to supplement or amend Defendant's objections and responses should additional or different information be discovered or become available.

# EXHIBIT 1

**INTERROGATORY NO. 9:**

Please describe each occasion when YOU contend that AYA used AYAHUASCA for purposes that did not qualify as FREE EXERCISE, describing AYA's conduct and the date, time and place when AYA engaged in such conduct.

**OBJECTION:**  Defendant objects to this request for the following reasons:

*First*, Defendant incorporates by reference herein Defendant's objections to the terms "you," "ayahuasca," "free exercise," as defined by Plaintiffs, detailed above in Defendant's Objections to Definitions.  Defendant also objects to this interrogatory on the grounds that the terms "occasion when you contend," "purposes that did not qualify as free exercise," and "conduct" are undefined, vague, and ambiguous.

*Second*, Defendant objects to this interrogatory to the extent it implicates the Free Exercise Clause of the First Amendment, which is not a cause of action in Plaintiffs' Fifth Amended Complaint.  *See generally* Fifth Am. Compl., Dkt. No. 159.

*Third*, Defendant objects to this interrogatory to the extent responding would require Defendant to make legal judgments or draw legal conclusions, rather than provide facts. Discovery remains ongoing, Defendants have received very few responsive answers and documents from Plaintiffs.  In particular, Plaintiffs refused to respond to Defendants discovery requests seeking information about AYA's use of ayahuasca.  *Compare* Defendants' Interrogatory No. 10 (asking Plaintiff to identify, *inter alia*, "the date and location of ayahuasca ceremonies"); *with* Plaintiffs' Response No. 10 (refusing to provide an answer to this question and stating that "Stanley's declarations in support of AYA's motion for preliminary injunction

**EXHIBIT 1**

have provided sufficient information regarding this topic"); *see also, e.g.*, Pls.' Response to Defs.' Request for Production No. 12 (refusing to produce *any* documents "regarding or relating to your ceremonies").  Thus, it is premature for Defendant to answer a contention interrogatory at this stage.

*Fourth*, Defendant objects to this request on the basis that Plaintiffs—and not Defendant—have relevant access to the information and knowledge to respond to this request. *See* FED. R. CIV. P. 24(b)(1) (considering "the parties' relative access to relevant information").

*Fifth*, Defendant objects to this request to the extent it seeks documents or records protected by the law enforcement privilege, attorney-client privilege, deliberative process privilege, or any other appliable privilege.


**RESPONSE:**  Subject to and notwithstanding the forementioned objections, Defendant will respond to this interrogatory by the close of fact discovery.

# EXHIBIT 1

1    As to the responses: See attached verification.

2    As to the objections:

3

4        Dated:  November 6, 2023

5                                                BRIAN M. BOYNTON
6                                                Principal Deputy Assistant Attorney General

7                                                BRIGHAM J. BOWEN
8                                                Assistant Branch Director

9                                                LISA NEWMAN
10                                               Trial Attorney

11                                                /s/ Bonnie E. Devany
                                                 BONNIE E. DEVANY
12                                               Trial Attorney
                                                 Civil Division, Federal Programs Branch
13                                               U.S. Department of Justice
                                                 1100 L Street NW
14                                               Washington, DC 20005
                                                 (202) 616-8101
15
                                                 bonnie.e.devany@usdoj.gov
16

17                                               Counsel for Defendants

18

19

20

21

22

23

24

25

26

27

28

34

# EXHIBIT 1

## **VERIFICATION**

I, Ghensy Antoine, verify on behalf of DEA under penalty of perjury that the substance of the foregoing responses to Interrogatory Nos. 4 and 8 are true and correct to the best of my knowledge, information, and belief.

Dated: _November 6, 2023_

_____
Ghensy Antoine
Staff Coordinator, Regulatory Section
Office of Diversion Control Regulatory
Drug Enforcement Administration

35

**EXHIBIT 1**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 6, 2023, I caused a copy of the foregoing to be served via e-mail on counsel of record for Plaintiffs.

*/s/ Bonnie E. Devany*
Bonnie E. Devany
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice

36

1  CHARLES CARREON (CSB #127139)
2  7 N. Ridge Crest Drive
   Silver City, New Mexico 88061
3  Tel: 928-975-2191
4  Email: chascarreon@gmail.com

5  MELISSA DEAN (FLSB#1031982)
6  111 N. Orange Ave, Ste. 800
   Orlando, FL 32801
7  Tel: 772-919-2748
8  Email: melissadeanesq@gmail.com

9  Attorneys for Plaintiffs Arizona Yagé Assembly, and
   Winfield Scott Stanley III
10 *Pro Hac Vice*

11

12             **IN THE UNITED STATES DISTRICT COURT**
13                    **DISTRICT OF ARIZONA**

14
   ┌─────────────────────────────────────┬──────────────────────────────────
15 │ Arizona Yagé Assembly; Winfield Scott │ No. 2:20-cv-2373-ROS
   │ Stanley III, in his capacity as Founder and │
16 │ Director of Arizona Yagé Assembly,    │ **PROOF OF SERVICE OF NOTICE**
   │                                       │ **OF DEPOSITION OF DEFENDANT**
17 │           Plaintiffs,                 │ **DRUG ENFORCEMENT**
   │                                       │ **ADMINISTRATION PURSUANT TO**
18 │      v.                               │ **F.R.CIV.P. 30(B)(6)**
19 │ Merrick B. Garland, Attorney General of the │ **REQUEST FOR PRODUCTION OF**
   │ United States, *et al.*,               │ **DOCUMENTS PURSUANT TO**
20 │                                       │ **F.R.CIV.P. 34 ON DECEMBER 19,**
21 │                                       │ **2024**
   │           Defendants.                 │
22 └─────────────────────────────────────┴──────────────────────────────────

23                         PROOF OF SERVICE
24
25 I, the undersigned, declare that I am, and was at the time of service of the papers herein
   referred to, over the age of 18 years and not a party to the within action or proceeding. My
26 business address is 111 North Orange Ave, Ste. 800, Orlando, FL 32801, which is in the
   county in which the within-mentioned mailing occurred.
27
28 On December 19, 2024, I served the following documents(s) on counsel for defendants by
   Attaching a PDF copy of the said document(s) to an email jointly addressed to:

Lisa.N.Newman@usdoj.gov for Lisa Newman
and
Bonnie.E.Devany@usdoj.gov for Bonnie Devany
U.S. Department Of Justice-Civil
Division-Fed Programs-L St
1100 L Street, NW Room 12304
Washington D.C. 20005
Attorney for the U.S. Agency Defendants

The parties and counsel have previously agreed in writing that service via email shall be used in this litigation, and shall serve as effectively as service by U.S. Postal Service.

I declare and affirm, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct, and that this declaration was signed on the date set forth below at Orlando, Florida 32801.

Dated: December 19, 2024                    MELISSA DEAN

_____
MELISSA DEAN (1031982)
CHARLES CARREON (127139)
Attorneys for Plaintiffs
Arizona Yagé Assembly, and
Winfield Scott Stanley III

2