# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

**Corrected** Notice of Appeal from a Judgment or Order of a United States District Court

U.S. District Court case number: 20-CV-02373-PHX-ROS

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: 05/05/2020

Date of judgment or order you are appealing: 12/04/2024

Docket entry number of judgment or order you are appealing: 258

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*
☉ Yes   ○ No   ○ IFP was granted by U.S. District Court

**List all Appellants** *(List each party filing the appeal. Do not use "et al." or other abbreviations.)*

Plaintiff-Appellant Taylor Cox, on his own behalf and on behalf of the Class of Proposed Intervenor Plaintiffs

Is this a cross-appeal? ○ Yes   ☉ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case? ☉ Yes   ○ No

If yes, what is the prior appeal case number? 22-16287, 24-1385, and 24-1405

Your mailing address (if pro se):

City:   State:   Zip Code:

Prisoner Inmate or A Number (if applicable):

Signature: /s/Charles Carreon   Date: Dec 30, 2024

*Complete and file with the attached representation statement in the U.S. District Court*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

Form 1   Rev. 06/09/2022

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

| |
|---|
| Intervenor Plaintiff-Appellant Taylor Cox |

Name(s) of counsel (if any):

| |
|---|
| Charles Carreon |

Address: 7 N. Ridge Crest Cir., Silver City, New Mexico 88061

Telephone number(s): 928-975-2191

Email(s): chascarreon@gmail.com

Is counsel registered for Electronic Filing in the 9th Circuit?    ● Yes    ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

| |
|---|
| Merrick Garland, U.S. Attorney General; Anne Milgram, Administrator, U.S. Drug Enforcement Administration; Alejandro Mayorkas, Secretary, Dept. of Homeland Security; and Chris Magnus, Comm'r U.S. Customs and Border Prot'n |

Name(s) of counsel (if any):

| |
|---|
| AUSA Lisa Newman<br>AUSA Bonnie Devany<br>USDOJ, Civil Division, Federal Programs Branch |

Address: 1100 L Street NW, Washington, D.C. 20005

Telephone number(s): 202-514-5578

Email(s): lisa.n.newman@usdoj.gov, bonnie.e.devany@usdoj.gov

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                                1                                         *New 12/01/2018*

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yage Assembly, et al., | No. CV-20-02373-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| William Barr, et al., | |
| Defendants. | |

Before the Court is Plaintiffs' Motion for Stay Pending Plaintiffs' Petition for Writ of Certiorari (Doc. 246) and Proposed Intervenors' Motion to Intervene (Doc. 232). For the reasons set forth below, both motions, along with Proposed Intervenors' unauthorized Amended Motion (Doc. 251), are denied.

**I.    BACKGROUND**

Plaintiffs Arizona Yage Assembly ("AYA") and Winfield Scott Stanley III filed this action seeking, among other things, a declaration stating that (1) AYA's use, possession, or transportation of Ayahuasca in connection with their practice of "Visionary Religion" is lawful and (2) the U.S. Drug Enforcement Agency's ("DEA") and the Department of Homeland Security's ("DHS") enforcement of the Controlled Substances Act ("CSA") against AYA violates their rights under the Religious Freedom Restoration Act ("RFRA"). (Doc. 159 at 12-13).

Discovery disputes have plagued this case throughout its 4.5-year pendency. (*See* Doc. 219, "Joint Statement"; Doc. 220, "Discovery Order"). On February 12, 2024, the

1 parties submitted a joint statement on disputes regarding Plaintiffs' responses to
2 Defendants' first sets of interrogatories and requests for production of documents. (Joint
3 Statement). The information requested by Defendants over the span of 35 requests pertains
4 to (1) AYA leadership, structure, and facilitators; (2) AYA's safety protocols; (3) AYA's
5 ayahuasca ceremonies and handling; and (4) information regarding the sincerity of AYA's
6 beliefs and practices. (Joint Statement at 4). Plaintiffs objected to the discovery requests
7 on four bases: (1) confidentiality promises made to third parties; (2) medical records; (3)
8 the First Amendment Religion Clauses; and (4) the priest-penitent privilege. (Joint
9 Statement at 79–85). On February 22, 2024, the Court rejected Plaintiffs' objections and
10 ordered them to provide full and complete responses to Defendants' discovery requests by
11 March 8, 2024. (Discovery Order at 20). Plaintiffs appealed the Court's Discovery Order.
12 (Doc. 221).

13 Relevant to the pending motions and the various appellate proceedings ensuing after
14 the Discovery Order was issued is Plaintiffs' First Amendment privilege objection. In the
15 Joint Statement, Plaintiffs asserted "Defendants' inquiries and demands are also
16 constrained by the First Amendment." (Joint Statement at 6, 40, 62, 77, 80) (citing *Surinach*
17 *v. Pesquera De Busquets*, 604 F.2d 73, 78 (1st Cir. 1979)). At issue in *Surinach* was an
18 investigatory subpoena seeking information on a church's financial practices where there
19 was a possibility the church's financial decision-making would be "supplanted by
20 governmental control." *Surinach*, 604 F.2d at 78. In the section of the Joint Statement
21 specifically addressing the application of the First Amendment Religion Clauses, Plaintiffs
22 cited only to *Surinach* asserting "government agencies" using "compulsory process to
23 discover the finances of churches violates the Establishment Clause." (Doc. 219 at 83–84).
24 At no point in the Joint Statement or in their responses to Defendants' discovery requests
25 did Plaintiffs raise the issue of associational privilege as required by Fed. R. Civ. P.
26 26(b)(5)(A). As such, the Court did not consider the issue of associational privilege in this
27 decision.
28 Nevertheless, on March 11, 2024, Plaintiffs sought appellate review of the

1   Discovery Order as it relates to 14 of Defendants' 35 discovery requests in a petition for
2   writ of mandamus. (Doc. 230). The petition was based solely on an associational privilege
3   argument, that is, the Court failed to apply caselaw and standards the parties never raised,
4   in the form of the "exacting scrutiny" and "heightened relevance" standards set forth in
5   *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010). (Doc. 230 at 5). Further,
6   in response to the Discovery Order, Taylor Cox (a member of AYA) on behalf of himself
7   and a class of 5,239 other AYA members, donors, and email correspondents ("Proposed
8   Intervenors"), filed on March 12, 2024 a Motion to Intervene as plaintiffs in this case.
9   (Doc. 232). The Court stayed this case until the disposition of Plaintiffs' appeal without
10  ruling on the Motion to Intervene. (Doc. 232).

11  On September 13, 2024, the Ninth Circuit issued a dispositive order denying
12  Plaintiffs' mandamus action closing their petition on September 13, 2024. (Doc. 243). The
13  Court subsequently lifted the stay. (Doc. 247). On September 23, 2024, Plaintiffs filed a
14  Motion for Stay pending their intended petition for writ of certiorari (Doc. 246), which was
15  filed in the Supreme Court on November 8, 2024 (Doc. 256). The Court ordered
16  Defendants to respond to the Motion to Stay and the Motion to Intervene, (Doc. 249), which
17  they did (Docs. 248, 249).[1]

18  The Court will first analyze Plaintiffs' Motion for Stay and then turn to Proposed
19  Intervenors' Motion to Intervene. Finally, the Court will provide next steps to progress
20  this case forward.

21  **II.   MOTION FOR STAY**

22  Plaintiffs move for a stay of all proceedings before this Court "pending the
23  resolution of Plaintiffs intended petition to the United States Supreme Court for writ of

---

[1] Instead of a substantive reply to the Motion to Intervene, however, Plaintiffs argue Defendants' response, along with the original Motion, have been rendered moot by Proposed Intervenors' filing of an Amended Motion to Intervene consisting of an amended complaint. (Doc. 252). Both the reply (Doc. 252) and the Amended Motion (Doc. 251) were filed on the same day. The Court did not authorize the filing of an amended motion. Nor would it, because Proposed Intervenors are not entitled to "amendment as of right" under Fed. R. Civ. P. 15, as they claim, because they have not been granted intervenor status. Plaintiffs are incapable or unwilling to follow the procedural rules of this Court. Consequently, in its decision, the Court will not consider Proposed Intervenors unauthorized Amended Motion to Intervene.

certiorari in *In Re: Arizona Yage Assembly*, Case No. 24-01405 to review this Court's order entered February 22, 2024." (Doc. 246 at 5). Alternatively, Plaintiffs request the Court to conduct Defendants' requested status conference "following the Supreme Court's disposition of the pending motion for certiorari." (*Id.*). For the reasons set forth below, Plaintiffs motion for stay is denied, and the litigation will proceed. Plaintiffs continued unwarranted attempts to delay discovery and the progression of this case will not be tolerated.

### A. Legal Standard

A request for a stay pending appeal is committed to the exercise of judicial discretion. *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). The party requesting a stay pending appeal "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). "A stay is not a matter of right" but is instead "an intrusion into the ordinary processes of administration and judicial review" and is "not to be issued 'reflexively,' but rather based on the circumstances of the particular case." *Sierra Club v. Trump*, 929 F.3d 670, 687-88 (9th Cir. 2019) (quoting *Nken*, 556 U.S. at 427, 433) (alterations omitted).

As the party seeking to stay this litigation, Plaintiffs must show: (1) a strong showing of likelihood of success on the merits of a petition for certiorari appealing the Ninth Circuit's denial of a writ of mandamus, (2) that Plaintiffs will be irreparably injured absent a stay, (3) that the balance of hardships favors staying this case, and (4) that staying this case is in the public interest. *Nken*, 556 U.S. at 426. Of these, "[t]he first two factors are the most critical." *Id.* at 434. And where the government is a party to the case, the third and fourth factors merge. *Id.*

### B. Analysis

#### 1. Likelihood of Success on the Merits

Plaintiffs seek certiorari review of the Ninth Circuit's denial of the petition for a writ of mandamus. Plaintiffs in this Motion present exactly the same arguments the Ninth Circuit considered when denying Plaintiffs' petition for a writ of mandamus. But the Ninth

1 Circuit held "Petitioners have not demonstrated a clear and indisputable right to the
2 extraordinary remedy of mandamus," based on the five factors in *Bauman v. U.S. Dist.*
3 *Court*, 557 F.2d 650 (9th Cir. 1977). (*In Re: Arizona Yage Assembly*, No. 24-1405,
4 Doc. 15). Despite this decision, Plaintiffs sought panel rehearing and rehearing en banc,
5 and the Ninth Circuit denied that request without calling for a response. (*In Re: Arizona*
6 *Yage Assembly*, No. 24-1405, Doc. 21). The Ninth Circuit has thus freely considered—
7 and twice firmly rejected—the same arguments Plaintiffs now rely on to request a stay
8 pending the disposition of a petition for a writ of certiorari in the Supreme Court.

Petitions for certiorari are "granted only for compelling reasons" and only as a matter of judicial discretion. Sup. Ct. R. 10. An interlocutory posture "alone furnishe[s] sufficient ground for the denial" of the petition. *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 258 (1916). Typically, to merit a stay of a mandate of a court of appeals, Plaintiffs would need to demonstrate "(1) a reasonable probability that four Justices would vote to grant certiorari; (2) a significant possibility that the Court would reverse the judgment below; and (3) a likelihood of irreparable harm, assuming the correctness of the applicant's position, if the judgment is not stayed." *Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1319 (1994) (Rehnquist, J.); *see also id.* at 1320-22 (refusing to stay case to consider claim that an "overly broad" subpoena violated the Fourth and Fifth Amendment).

Plaintiffs are far from demonstrating a "strong likelihood" that the Supreme Court would grant review and reverse the Ninth Circuit's denial of mandamus relief. Mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes," and a writ cannot issue unless this Court's order is "clearly erroneous as a matter of law." *United States v. Guerrero*, 693 F.3d 990, 999 (9th Cir. 2012) (quoting *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)). Plaintiffs cannot claim clear error in the Court's failure to sustain objections that Plaintiffs never made. *See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any

objection."); Fed. R. Civ. P. 26(b)(5)(A); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149-50 (9th Cir. 2005) (denying mandamus petition where district court had held that untimely privilege objections were waived); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 891 (9th Cir. 2000) (district court did not abuse its discretion in denying reconsideration where plaintiffs had "failed" to make argument previously despite having "numerous opportunities" to do so). Thus, Plaintiffs have not demonstrated a strong likelihood that the Court erred—much less clearly erred—in not ruling on an objection Plaintiffs never made.

**2. Irreparable Injury Absent Stay**

Plaintiffs contend "[f]orcing a litigant to disclose privileged materials necessarily inflicts irreparable harm because once the materials have been disclosed, it is impossible to 'undisclose' them." (Mot. at 14). Plaintiffs also assert that "a stay applicant 'need only demonstrate the existence of a colorable First Amendment claim,'" to show irreparable harm. Doc. 246 at 16 (quoting *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003)). However, the Ninth Circuit's summary denial of Plaintiffs' writ of mandamus suggests that procedural issues preclude consideration of Plaintiffs' substantive First Amendment claim on appeal or here at this stage. The merits of Plaintiffs' First Amendment privilege claim can only be addressed after proper objection to Defendants' discovery requests and after a discovery dispute based on those specific objections arises. Further, Plaintiffs' delay in seeking relief from discovery requests served in September 2023, "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

*3. Balance of Equities*

Where, as here, the government is a party, the balance of the equities and the public interest merge. *Nken*, 556 U.S. at 434. Because the issues raised by Plaintiffs are resolvable at the trial level, the balance of equities favor denying the Motion for Stay which would again delay this case.

/ / /

- 6 -

### III. MOTION TO INTERVENE

After filing the writ of mandamus in the Ninth Circuit, Plaintiffs' Counsel filed a motion to intervene (Doc. 232) on behalf of Proposed Intervenors—Taylor Cox and a class of 5,239 AYA members, donors, and email correspondents whose First Amendment association rights Plaintiffs seek to assert. Proposed Intervenors seek intervention as a matter of right under Fed. R. Civ. P 24(a)(2), or alternatively, by permission under Fed. R. Civ. P 24(b)(1). (Doc. 232 at 6). Because (1) Proposed Intervenors have not shown they are inadequately represented by Plaintiffs and (2) the Court deems permissive intervention to be inappropriate, Proposed Intervenors' motion is denied.

#### A. Intervention of Right

##### 1. Legal Standard

An applicant for intervention of right pursuant to Fed. R. Civ. P 24(a)(2) must satisfy a four-part test: (1) the motion for intervention is timely; (2) the applicant has a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicants interest must be inadequately represented by the parties to the action. *United States v. Aerojet General Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010). "[I]t is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met." *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021) (citation omitted). "Failure to satisfy any one of the requirements is fatal to the application, and [courts] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

##### 2. Analysis

Proposed Intervenors fail to satisfy the requirements of intervention of right. Most notably, Proposed Intervenors do not demonstrate their interests are inadequately represented by the Plaintiffs in this case.

In determining whether the existing parties adequately represent an applicant's

interest, courts consider: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002). "The prospective intervenor bears the burden of demonstrating that existing parties do not adequately represent its interests." *Id.* Courts need not conclusively determine that representation is inadequate—rather, this requirement is satisfied "if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). However, "[w]here the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies," which can be rebutted only by "a compelling showing to the contrary." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (quoting *Perry*, 587 F.3d at 951).

Proposed Intervenors have failed to make even a minimal showing that their interests are not adequately represented by Plaintiffs. *See Trbovich*, 404 U.S. at 538 n.10. Proposed Intervenors' sole argument that they are not adequately represented is that, in a previous Order, the Court determined "Plaintiff AYA may not assert the Fifth Amendment on behalf of its members in responding to Defendants' discovery requests." (Doc. 210 at 2). However, this does not mean that individual members of AYA could assert a Fifth Amendment privilege to shield Plaintiffs from Defendants' discovery requests. Indeed, the Order stated, "Defendants' discovery requests do not seek incriminating admissions or documents from any individual members of Plaintiffs' organization, but instead seek organizational records and communications held by the organization itself …. It is well established that 'the official records and documents' of an organization 'cannot be the subject of the personal privilege against self-incrimination.'" (Doc. 210 at 1-2) (quoting *United States v. White*, 322 U.S. 694, 699 (1944)). The Fifth Amendment "does not independently proscribe the compelled production of every sort of incriminating evidence." *Fisher v. United States*, 425 U.S. 391, 408 (1976). Instead, the privilege

"protects a person only against being incriminated by his own compelled testimonial communications." *United States v. Doe*, 465 U.S. 605, 611 (1984).

Further, both Plaintiffs and Proposed Intervenors share the same objective: to prevent Defendants from receiving relevant information in discovery.[2] Proposed Intervenors have failed to show any other objective in their motion and lodged complaint. Intervention is not appropriate when Plaintiffs have "demonstrated they are capable and willing to make all of [the members'] arguments." *Arakaki v. Cayetano*, 324 F.3d 1078, 1087 (9th Cir. 2003). Plaintiffs have numerously demonstrated their capability and willingness to make arguments on behalf of their members by claiming "associational standing to represent the members of its congregation." (Doc. 177 at 17). This is bolstered by the fact that the same counsel represents both Plaintiffs and Proposed Intervenors. *See In re Weingarten*, 492 F. App'x 754, 756 (9th Cir. 2012) ("[T]he [intervenors] are represented by the same counsel as [an existing party], indicating that [existing party] is 'capable and willing to make' the same arguments that the [intervenors] would make if they were permitted to intervene." (quoting *City of Los Angeles*, 288 F.3d at 398)).

Proposed Intervenors have failed to satisfy an important element in the intervention of right test. Because "[f]ailure to satisfy any one of the requirements is fatal to the application," *Perry*, 587 F.3d at 950, the Court will not consider the remaining elements.

### B. Permissive Intervention

#### 1. Legal Standard

An applicant for permissive intervention pursuant to Fed. R. Civ. P. 24(b) must show: (1) it shares a common question of law or fact with the main action; (2) the motion for intervention is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Cooper*, 13 F.4th at 868. "Even if an applicant satisfies those

---

[2] In their Motion to Intervene, Proposed Intervenors state, "[t]he Complaint in Intervention is submitted because [Defendants] have propounded eight (8) interrogatories and seven (7) requests for production of documents, and obtained an order (the "Discovery Order," Dkt. # 220) compelling [Plaintiffs] to answer the interrogatories in full and produce unredacted documents that will reveal Intervenor Plaintiffs' names, tens of thousands of personal emails with AYA about religious matters, records of donations and ceremonial contributions, records of medical conditions, travel activity, and many other personal matters." (Doc. 232-1 at 5).

threshold requirements, the district court has discretion to deny permissive intervention." *Id.* "In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.*

### 2. Analysis

The Court finds the intervention of a purported class of 5,239 AYA members is unnecessary for the reasons discussed above and would serve only to further delay the litigation, thereby prejudicing Defendants. The Court will not repeat or belabor the significant, preexisting delays associated with discovery disputes in this case, much less the inevitable delays that would arise out of intervention. *See Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978) (holding that district court did not abuse its discretion when it "decided that 13 additional plaintiffs would unnecessarily delay and complicate the case"). Not only would intervention be wasteful and burdensome, but it would also run counter to the objectives of AYA at-large by subjecting individual members to the disclosure of information that Plaintiffs and Proposed Intervenors so vehemently oppose.

### IV. NEXT STEPS

Defendants requested a status conference regarding pending discovery disputes after the Ninth Circuit's denial of the writ of mandamus. (Doc. 245). The Court views a status conference to be wasteful and unproductive at this time. The parties are required by the Federal Rules of Civil Procedure, the Local Rules, and numerous orders of this Court to collaborate in good faith to resolve valid disputes. As Defendants gleaned from the Court's answer to the petition for writ of mandamus (Doc. 248 at 9), the Court would have long ago adjudicated the issue of associational privilege if it had been properly presented to the Court (Doc. 242 at 2). But Plaintiffs chose not to timely raise associational privilege. It is obvious that Plaintiffs decided to obfuscate the litigation by embarking on a lengthy appellate journey rather than raising the issues with the Court. Thus far, those efforts have not proven fruitful.

The Court is wary to allow Plaintiffs to assert associational privilege objections nine months after the discovery responses deadline. *See Richmark Corp. v. Timber Falling*

*Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."). However, due to the important constitutional rights at stake, the Court will undertake the privilege issue. To that end, Plaintiffs shall provide Defendants with a categorical privilege log (asserting associational privilege only) no later than January 3, 2025. The log, though categorical for efficiency purposes, "must still describe the documents with sufficient detail so that the other party and court can assess the claim of privilege." *Franco-Gonzalez v. Holder*, No. CV 10-2211-DMG DTBX, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013) ("Privilege logs should contain the following information: (1) The general nature of the document, (2) the identity and position of its author, (3) the date it was written, (4) identity and position of recipients, (5) location of the document, and (6) reason document was withheld."). *Franco-Gonzalez v. Holder*, No. CV 10-2211-DMG DTBX, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013); *see* 8 FED. PRAC. & PROC. CIV. § 2016.1 (3d ed.) (citing cases where broad categorical descriptions were uninformative or misleading). Failure to oblige shall constitute a waiver of the privilege or any objection to discovery, and Plaintiffs will be ordered to fully comply with the Discovery Order at risk of serious sanctions. Further, the parties shall meet and confer and prepare a Proposed Amended Rule 16 Scheduling Order to be filed with the Court no later than January 3, 2025.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1  Accordingly,

2  **IT IS ORDERED** Plaintiffs' Motion for Stay (Doc. 246) is **DENIED**.

3  **IS IT FURTHER ORDERED** Proposed Intervenors' Motion to Intervene (Doc. 232) is **DENIED**. The Amended Motion to Intervene (Doc. 251) is also **DENIED**.

4  **IT IS FURTHER ORDERED** the parties shall meet and confer and prepare a Proposed Amended Rule 16 Scheduling Order to be filed with the Court no later than **January 3, 2025**.

5  **IT IS FURTHER ORDERED** Plaintiffs shall provide Defendants with a categorical privilege log (asserting associational privilege only) no later than **January 3, 2025**.

Dated this 4th day of December, 2024.

Honorable Roslyn O. Silver
Senior United States District Judge