BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

JULIE STRAUS HARRIS
Assistant Branch Director

LISA NEWMAN (TX 24107878)
BONNIE DEVANY (TX 24131173)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Email: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Circle
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

MELISSA DEAN (FLB #1031982)
111 North Orange Ave., Ste. 800
Orlando, Florida 32801
Tel: 772-919-2748
Email: melissadeanesq@gmail.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly, | No. 2:20-cv-2373-ROS |
| Plaintiffs, | **JOINT STATEMENT ON DISPUTES REGARDING PROPOSED PROVISIONS OF RULE 16 SCHEDULING ORDER** |
| v. | |
| Merrick Garland, Attorney General of the United States, *et al.*, | |
| Defendants. | |

The parties submit the following statement with respect to their disputes regarding the parties' proposed provisions of the Proposed Amended Rule 16 Scheduling Order, which this Court ordered to be filed no later than January 3, 2025.  Dkt. 258.  Defendants' proposed Amended Rule 16 Scheduling Order ("Defs.' Proposed Order") is attached as Exhibit A. Plaintiffs' proposed Amended Rule 16 Scheduling Order ("Pls.' Proposed Order") is attached as Exhibit B.

**Defendants' General Position Statement**

Defendants request that the Court enter Defendants' Proposed Order, which largely mirrors the previous two scheduling orders that the parties agreed upon, and which this Court entered, Dkt. 195, Dkt. 207, while accommodating Plaintiffs' requests for additional time for certain deadlines. *See* Ex. A, Sections C-E.  Pursuant to Defendants' proposal: *first*, the Court would set a deadline for Plaintiffs to respond to all outstanding written discovery, Dkt. 261; *second*, the Court would resolve any deficiencies with Plaintiffs' overdue discovery responses and Plaintiffs' privilege log;[1] and *third,* the parties would proceed to depositions of fact witnesses. The parties now agree on much of the Rule 16 order. But Plaintiffs' positions make clear that they wish to extend written fact discovery past the substantial completion deadline, to allow them to propound additional written discovery, which they describe as "additional and necessary non-expert discovery," Ex. B, Section I, and which they submit is allowed by the Court's Order in Dkt. 258. Defendants disagree with several of Plaintiffs specific proposals, as detailed below. *See* Ex. B.

**Plaintiffs' General Position Statement**

The Court gave the Plaintiffs an opportunity to present their claims of associational privacy by performing a considerable litigation task over the year-end holiday.  Plaintiffs responded by employing an attorney to work full time to meet the Court's requirements, and undersigned

_____

[1] A joint statement is forthcoming on the significant deficiencies in Plaintiffs' privilege log.

Plaintiffs' counsel has worked diligently, with literally no time for recreation and little for rest, to meet the Court's requirements.  Likewise, Plaintiff Stanley dedicated substantial portions of time to downloading knowledge to counsel so that the categorical privilege log could be created. The privilege log is supported by the declaration of Stanley, that is designated confidential because it provides a detailed description of every category of electronic document in AYA's digital file cabinet, comprising 17 categories of privileged documents encompassing over 114,821 emails, and many thousands of social media communications.  AYA has downloaded all of those files, and is now "ingesting" this data into licensed eDiscovery software.  The Government has bitten off quite a bit for Plaintiffs to chew, and Plaintiffs are doing the job.  Plaintiffs only ask time to prepare and present their case, and submit their Rule 16 Proposed Order for that purpose only, and not for purposes of delay.

**Issue 1: Whether fact discovery has expired in this litigation**

**Defendants' Position Statement**:

The parties agree (1) that the previous scheduling order provided 3 months between the substantial completion (March 8) and close of fact discovery (June 27), and (2) that the close of fact discovery date must be reset. The parties disagree as to what discovery is allowed now and what disputes may be raised prior to the new close of fact discovery. Plaintiffs have not met the substantial completion deadline, Dkt. 261, but contend that the Court's order, Dkt. 258, allows them to issue "additional and necessary non-expert discovery" through the close of fact discovery, in essence eviscerating the substantial completion deadline. *See* Ex. B, Section I. Plaintiffs' proposal prejudices Defendants who diligently worked to substantially complete written fact discovery in the court-ordered deadlines. We ask that the Court (1) set a date for Plaintiffs to comply with outstanding discovery requests, and (2) clarify that Plaintiffs may not issue additional written fact discovery prior to the proposed completion of fact discovery deadline in the amended scheduling order. *Firetrace*, cited belatedly below, is irrelevant because none of Plaintiffs' contention interrogatories pertain to Defendants' affirmative defenses. Plaintiffs' time to object to alleged deficiencies in Defendants' discovery responses has expired.

**Plaintiffs' Position Statement**

The parties agree that the fact discovery deadline must be extended. As motions pending filing will establish, Defendants provided deficient discovery responses, requiring adequate time allocation in scheduling to correct.  Since Defendants acknowledge no deficiencies in their responses, those deficiencies will be litigated by motion.  Order Dkt. 258 directs Plaintiffs to raise associational privacy objections in a categorical privilege log, as they have done.  "[D]ue to the important constitutional rights at stake," (Dkt. 258, 11:3) the Court will apply exacting scrutiny to the Defendants' discovery demands, and direct the parties to complete discovery. *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 320 (C.D. Cal. 2004). "[D]uty to supplement is a continuing duty, and no additional interrogatories … are required." *See, Cable & Comput. Tech. v. Lockheed Saunders*, 175 F.R.D. 646, 651 (C.D. Cal. 1997)(duty to amend a prior response if party learns response is incomplete or incorrect); *see also*, *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022). Defendants, having asserted affirmative defenses, must disclose their Rule 11 basis in law and known facts in responding to contention interrogatories, regardless of discovery progress. *Firetrace USA, LLC v. Jesclard,* No. CV-07-2001-PHX-ROS, 2009 U.S. Dist. LEXIS 2972, at *6 (D. Ariz. Jan. 9, 2009).

**Issue 2: Definition of Substantial Completion of Written Fact Discovery (Section A in Defendants' Proposed Order).**

**Defendants' position**

Plaintiffs' positions and conferrals between the parties have indicated that Plaintiffs intend to propound additional written discovery on core RFRA matters through November 14, 2025, because the Order, as stated below, "substantially altered the playing field." Defendants disagree that the Order, Dkt. 258, absolves Plaintiffs' failure to propound written fact discovery to substantiate their case prior to substantial completion; nor does it give Plaintiffs a green light to issue new written discovery on core RFRA issues under the guise of associational privilege. Most written discovery requests should have been served and responded to, and joint statements on deficiencies in those requests should have been submitted, prior to substantial completion to allow the Court sufficient time to adjudicate such disputes before depositions. *See, e.g.*, Dkt. 213 at 6-7. While the parties did not previously define "substantial completion," no reasonable definition of that term would exclude written discovery requests about the elements of the RFRA inquiry. Moreover, Defendants timely complied with their obligations to substantially complete written discovery in all areas needed to "fairly contest Plaintiffs' RFRA claims." Dkt. 213 at 6. Defendants propose a definition of substantial completion in Section A.

**Plaintiffs' position**

The Court has substantially altered the playing field of this litigation with Order Dkt. 258, reawakening an issue that appeared dead – associational privacy.  The Court's recognition that Plaintiffs should have the opportunity to raise their privilege claims despite its assessment that the time for doing so had passed, because of the seriousness of the Constitutional claims. Defendants appear unwilling to accept the significance of the Court's decision in Dkt. 258, that opened a way around a discovery impasse presented by Discovery Order Dkt. 220.  Finally, both parties need to discover each other's cases.  As Plaintiffs' motions will show, Defendants deficiencies in discovery responses require supplemental responses, and their resistance to providing them will require time to overcome.  *Cambridge Elecs. Corp. v. MGA Elecs., Inc*., 227 F.R.D. 313, 320 (C.D. Cal. 2004). "[D]uty to supplement is a continuing duty, and no additional

interrogatories … are required." *Cable & Comput. Tech. v. Lockheed Saunders*, 175 F.R.D. 646, 651 (C.D. Cal. 1997); *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022). Defendants, having asserted affirmative defenses, must disclose their Rule 11 basis in law and known facts in responding to contention interrogatories, regardless of discovery progress. *Firetrace USA, LLC v. Jesclard,* No. CV-07-2001-PHX-ROS, 2009 U.S. Dist. LEXIS 2972, at *6 (D. Ariz. Jan. 9, 2009).

**Issue 3: Compliance with FRCP 34(b)(2)(E)(i) (Section B in Plaintiffs' Proposed Order)**

**Defendants' position**

Plaintiffs propose a date for Defendants to provide information on Defendants' document productions to "understand their context." Defendants have complied with Fed. R. Civ. P. 34(b)(2)(E)(i). Defendants previously proposed producing responsive documents in standard TIFF format, which maintains the metadata allowing the receiving party to ascertain the sort of information Plaintiffs now seek. Plaintiffs' counsel insisted that Defendants produce documents in PDF format, which strips such data. *See* Ex. C. The parties stipulated to such format for Defendants' productions, and Defendants complied. Under Rule 34, the parties may—and here, did—"otherwise stipulate[]"; accordingly, Defendants have complied with the Rule. Plaintiffs cannot now demand information contrary to their stipulation and accuse Defendants of undertaking a "document dump." Section C should be excluded. This section highlights the inequity plaguing discovery, prejudicing Defendants. Plaintiffs have had more than a year to review Defendants' productions to prepare for the next phase litigation. Plaintiffs demand information they previously eschewed while delaying and denying Defendants access to the documents and information needed to contest Plaintiffs' RFRA claim. *See* Dkt. 213 at 6.

**Plaintiffs' position**

Plaintiffs did not stipulate to receive a mass of unidentified documents or relieve the Defendants of their duties under Rule 34(b)(2)(E). Defendants may be compelled to categorize and label unidentified documents produced in a "document dump." *Spinoza v. Ryan*, No. CV-17-3983-PHX-ROS (JFM), 2020 U.S. Dist. LEXIS 12581, at *5 (D. Ariz. Jan. 24, 2020). Litigants "are not at liberty … to dump massive amounts of documents, which apparently have no logical order to them, on their adversaries and demand that they try to find what they are looking for." *Flynn v. Love*, No. 3:19-CV-00239-MMD-CLB, 2021 U.S. Dist. LEXIS 201064, at *8 (D. Nev. Oct. 19, 2021). The drafters of the Rules had this problem in mind when subsection (b)(2)(E) was added. "This provision in Rule 34 arose out of "a concern that litigants were deliberately mixing critical documents with masses of other documents to hide their existence or obscure their significance."

*Rutherford v. Paloverde Health Care Dist.*, No. ED CV13-1247-JAK (SPx), 2014 U.S. Dist. LEXIS 197183, at *8 (C.D. Cal. Apr. 25, 2014).  Demanding parties should move to compel, not shift the cost of categorizing documents to their clients.  *Black v. Akins (In re Akins)*, 640 B.R. 721, 736 (Bankr. E.D. Cal. 2022). Plaintiffs will so move under F.R.Civ.P. 37(a)(3)(B).

**Issue #4: Dispute over Joint Statement Process (Sections Plaintiffs' Proposed Order O-Q)**

**Defendants' position**

Plaintiffs' proposal in Sections O-Q as to the form and timing of joint statements, and the filing of motions to compel, contravenes this Court's orders, which stated that "responses and positions to joint statements of discovery disputes shall be provided within five days of receipt of the joint statement," and that "no motions are to be filed." Dkt. 218 at 1. The Court reiterated its position that "the Court's method and means of resolving discovery disputes remains applicable, and no motions are to be filed without the Court's approval." Dkt. 234 at 2. Plaintiffs admitted they did not cite *Perry* because they had not yet discovered it, not because of the 14-line format. With diligence, Plaintiffs could have cited *Perry*; instead, they relied on inapplicable cases and frivolous objections. Dkt. 242 at 2.  Also, unilateral statements would be unnecessary if Plaintiffs timely responded to Defendants' position statements: Plaintiffs did not provide their positions for this statement (or their draft Amended Order) until 11:37 PM on January 12—9 days after Defendants filed their statements and draft, and on the eve of the January 13 deadline. Plaintiffs offer no compelling reason to relitigate these issues, and *Arutyunyan*, cited below, did not expound upon or require a form of discovery statements. Sections O-Q should be excluded.

**Plaintiffs' position**

In the Mandamus proceeding, Defendants argued that Plaintiffs' accession to the joint statement practice waived the argument that the joint statement rule prejudiced Plaintiffs.  The Court faulted Plaintiffs for failing to cite key associational privacy rulings in its answer to the Petition for Mandamus.  Plaintiffs faulted the limited format, that discouraged deep research and deprived Plaintiffs, Defendants, and the Court, of the most accurate analysis of the issues. Defendants have still not accepted the implications of associational privacy, that must be confronted directly with evidence.  To avoid traveling the same road twice and finding no relief in either path, Plaintiffs must, perforce, stand on their rights to conduct motions under Rule 37.  Although joint statement discovery procedures may pass appellate muster, it would appear they do so only where they provide an opportunity for the parties to submit "declarations and exhibits

in support of the moving party's position," and an exchange period of seven days.  See, *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1142 (9th Cir. 2024).

**Issue 5: Associational privacy hearing (Section D in Plaintiffs' Proposed Order)**

**Defendants' position**

Plaintiffs propose resolving the associational privacy dispute in an "evidentiary hearing" on March 13, 2025. Defendants submit that it is unnecessary (and at best premature) to establish how the Court shall resolve this dispute. This is particularly so because, as Defendants will detail in a forthcoming Joint Statement, Plaintiffs did not provide a privilege log that complies with Dkt. 258. Instead, Plaintiffs provided Defendants with a 19-page log asserting a blanket privilege over more than 100,000 documents and communications, most of which Plaintiffs admit they have not reviewed.  Because Plaintiffs failed to comply with Order No. 258, Plaintiffs' have waived the privilege, Dkt. 258 at 11, and an evidentiary hearing is unnecessary. Moreover, without a sufficiently detailed privilege log, Defendants are not able to ascertain the scope of the dispute. *See Franco-Gonzalez v. Holder*, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013). Had Plaintiffs provided a sufficiently detailed privilege log, the parties could have conferred about the dispute and the appropriate manner for its resolution, and then proposed additional steps to the Court as necessary. Defendants request that Section D be excluded.

**Plaintiffs' position**

On January 3, 2025, Plaintiffs timely served their categorical privilege log identifying 17 categories of privileged documents encompassing over 114,821 emails, many thousands of social media communications, donations, and internal church documents involving personal health disclosures and/or spiritual beliefs. Defendants' carping about its content is groundless.  The privilege log carries Plaintiffs' burden to allege that disclosure of the categorized documents will cause associational harm; wherefore, the burden is now on Defendants to state their governmental interest in the information its seeks, and how its inquiries are narrowly tailored. *Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049, 1053 (C.D. Cal. 2016) teaches that the proper application of exacting scrutiny is based on evidence, and should be done by taking testimony. The District Judge conducted a bench trial, testing the State of California's claimed governmental interest and its claim that the demand for donor names was narrowly tailored.

Likewise, this Court should conduct an evidentiary hearing (presumably relying on depositions rather than live testimony) to establish why Defendants need a vast trove of personal information, such as it has never sought in any similar prior case, to defend against Plaintiffs' claims.

**Issue 6: Dispute over Outstanding Written Discovery (Sections E-I in Plaintiffs' Proposed Order)**

**Defendants' position**

Defendants completed document production and responded to all non-contention discovery requests and are not in "arrears"; Plaintiffs' responses are largely incomplete and/or deficient. Dkt. 245. Plaintiffs' sections E-I propose an additional 4-5 months beyond the already-expired substantial completion deadline to respond to requests propounded 11 to 15 months ago, and an additional "15 day" grace period beyond that extended deadline. The parties twice agreed to extend the substantial completion deadline, Dkt. 202; Dkt. 206. Defendants opposed further extensions, Dkt. 213; Dkt. 228, and Court stated, "no further extensions will be granted absent ordinary circumstances." Dkt. 234 at 2. Plaintiffs offers no responsive or persuasive justification for additional time. Although Plaintiffs now complain of (but do not explain) "dysfunctional pressure and undue expense," this does not address whether in the 10 months after the requests were served, the 6-month appeal, or the 4 months since the stay was lifted, the original (and still-retained) counsel performed any work to attempt to complete Plaintiffs' responses to avoid said "pressure" and "expense." Sections E-I, as well as the statements that "the Parties will respond to the outstanding requests … within 15 days," should be excluded.

**Plaintiffs' position**

The purpose of the proposed Order is to set up an adjudicative process that will be fair to both parties and lead to truthful fact-finding and accurate rulings.  The Plaintiffs' categorical privilege log identifies 17 categories of privileged documents encompassing over 114,821 emails, many thousands of social media communications, etc., and how the Court rules on associational privacy will thus have a determinative effect on all further proceedings.  The categorical privilege log is supported by a new declaration of Plaintiff Stanley, 19 pages and 92 paragraphs long, that he avers "set forth, with complete transparency, the entire constellation of documents that are generated in the course of operating AYA as a church offering Ayahuasca ceremonies, and to provide granularity to the categorical privilege of which this declaration is a necessary

14

part."  The document is so disclosive that it is designated Confidential Pursuant to Confidentiality Order Dkt. 217.  Although they deny it, pending motins will show that Defendants also are quite in arrears on their interrogatory responses and their categorization of documents produced in response to discovery.  Plaintiffs request enough time for all parties to acquit their duties of discovery without imposing dysfunctional pressure and undue expense.

**Issue 7: Dispute over Scope of ESI Search Terms (Section H in Plaintiffs' Proposed Order)**

**Defendants' position**

Plaintiffs propose that the parties "determine with specificity the scope of ESI Search Terms and Temporal Scope for all outstanding and future non-expert discovery requests by February 8, 2025." Section H. Defendants already determined search terms, proposed temporal periods, completed searches, and completed their productions, producing more than 20,000 pages. Because the Court has already ruled on the relevancy and burden objections Plaintiffs attempt to raise again below, Dkt. 220, this section should be excluded. That Plaintiffs do not yet have ESI *search terms* for requests served on September 1, 2023, confirms that "Plaintiffs' have not even 'started to collect, let alone review and produce, potentially responsive documents.'" Dkt. 234 at 2. As will be detailed in the forthcoming joint statement on Plaintiffs' privilege log, in the declaration accompanying Plaintiffs' log, Stanley admits that Plaintiffs have not reviewed the vast majority of documents for this case. Defendants request that the Court order Plaintiffs to detail their compliance with their discovery obligations, including the preservation of, collection of, and search for relevant and responsive documents since filing this case and since Defendants' requests were served. Section H should be excluded.

**Plaintiffs' position**

In developing ESI protocol in cases involving First Amendment associational privacy, the propounding party must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than under Federal Rule of Civil Procedure 26(b)(1)." *Democratic Nat'l Comm. v. Reagan*, No. CV-16-01065-PHX-DLR, 2017 U.S. Dist. LEXIS 227894, at *8-9 (D. Ariz. Sep. 7, 2017). Requests for ESI which do not include search terms or other parameters, are suggestive of being overly broad and unduly burdensome; however, the parties should be directed to meet and confer in an effort to reach agreement on a mutually-acceptable search protocol, including search terms, custodians and methodology. *Doe v. Heritage Acad., Inc.*, No. CV-16-03001-PHX-SPL, 2017 U.S. Dist. LEXIS 233970, at *41 (D.

16

Ariz. June 8, 2017); *EEOC v. Scottsdale Healthcare Hosps.*, No. CV-20-01894-PHX-MTL, 2022 U.S. Dist. LEXIS 151288, at *3 (D. Ariz. Aug. 23, 2022); *SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, No. CV-21-01076-PHX-JAT, 2023 U.S. Dist. LEXIS 47718 (D. Ariz. Mar. 21, 2023); *True Freight Logistics LLC v. Glob. Tranz Enters.*, No. CV-18-01472-PHX-JGZ, 2019 U.S. Dist. LEXIS 149262 (D. Ariz. Aug. 30, 2019).

Dated: January 13, 2025                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

JULIE STRAUS HARRIS
Assistant Branch Director

*/s/ Lisa Newman*
Lisa Newman
Bonnie E. Devany
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

*/s/ Melissa E. Dean*
MELISSA DEAN (FLB #1031982)
111 North Orange Ave., Ste. 800
Orlando, Florida 32801
Tel: 772-919-2748
Email: melissadeanesq@gmail.com

CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Circle
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

*Attorney for Plaintiffs*

**<u>Certification.</u>**

Counsel for Defendants and Plaintiffs hereby certify that they have attempted to resolve the instant dispute through personal consultation and sincere effort in accordance with Rule 7.2(j) and the Rule 16 Scheduling Order. Previous conferrals on this joint statement are detailed in Dkt. 267 at 13-14. On January 1, 2025, at 8:31 PM ET, Plaintiffs circulated a draft joint statement to resolve this dispute. Defendants circulated a revised version of that statement on January 3, 2025, at 1:00 AM ET. Plaintiffs' and Defendants' counsel made a sincere effort to coordinate the scheduling of a meet-and-confer to resolve these disputes and complete the process of preparing a joint proposed scheduling order as directed by Order Dkt. 269 which occurred at 1:30 PM on Friday, January 10, 2025. On January 12, 2025 at 11:37 PM ET, Plaintiffs circulated a revised version of Plaintiffs' draft scheduling order and a revised version of Defendants' revised statement. Defendants returned a copy of the revised Joint Statement at approximately 8:00 PM ET. Plaintiffs returned final revisions to Defendants' counsel at 9:00 PM ET.