CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

MELISSA DEAN (FLSB#1031982)
111 N. Orange Ave, Ste. 800
Orlando, FL 32801
Tel: 772-919-2748
Email:melissadeanesq@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly and
Winfield Scott Stanley III
*Pro hac vice*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, and Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly, | Case No.:20-CV-02373-ROS |
| | MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS FROM DEFENDANT DRUG ENFORCEMENT ADMINISTRATION; |
| Plaintiffs, | |
| vs. | ORAL ARGUMENT REQUESTED |
| Merrick Garland Attorney General of the United States; et al. | |
| Defendants. | |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE THAT Plaintiffs hereby move the Court pursuant to F.R.Civ.P. 37(a)(3)(B) for an order compelling the Drug Enforcement Administration ("DEA") to appear and testify as to matters specified and produce documents requested in the Notice of Deposition of Defendant Drug Enforcement Administration Pursuant to F.R.Civ.P. 30(b)(6) and Request for Production of Documents (Dkt. # 260 and Exhibit 1).

The grounds for the motion are that the Notice was served on December 19, 2024 via email pursuant to an agreement to serve all process between parties via email, to take the

deposition of the Agency in Washington D.C. on January 14, 2025, because the DEA has provided Plaintiffs with evasive and incomplete discovery responses while the DEA's own discovery demands infringe Plaintiffs' associational privacy, as established in their categorical privilege log; wherefore, the Court will apply exacting scrutiny to Defendants' discovery demands, and the Notice seeks relevant, proportional testimony and documents from a DEA-chosen witness to establish the DEA's asserted governmental interests and how the DEA's discovery demands are narrowly tailored to serve that interest.

The motion is based on this notice, the memorandum of points and authorities, the declaration of Melissa Dean, the Proposed Order, all files and records in the action, and such further evidence and argument as the Court may consider at the hearing thereon. Plaintiffs request leave to present oral argument at the hearing.

Dated: January 14, 2025

_____
MELISSA DEAN (1031982)
CHARLES CARREON (127139)
Attorneys for Plaintiffs
Arizona Yagé Assembly,
Winfield Scott Stanley III

## Contents

1.        Summary of Argument...................................................................... 7

2.        Procedural Facts................................................................................ 7

3.        Relief Requested: An Order Compelling the DEA to Designate a Qualified Person or Persons to Testify at Deposition and Produce Requested Documents  9

4.        Associational Privacy..................................................................... 11

5.        The Drug Enforcement Administration's Attack on Associational Privacy        12

6.        Applying the Evidentiary Lessons of *AFP v. Harris* ............................ 15

7.        Plaintiffs Should be Allowed to Discover the Foundational Facts the DEA Will Offer to Carry its Burden of Showing Government Interest and Narrow Tailoring of its Discovery Demands in the Face of Exacting Scrutiny.................... 17

8.        Previous Attempts to Obtain Information from the DEA through Interrogatories and Document Discovery ...................................................... 18

9.        Risks of the Government Storing Private Data...................................... 19

10.       The DEA Should Produce the Requested Documents.......................... 21

11.       Conclusion......................................................................................... 21

**Table of Authorities**

**Cases**

*Ams. for Prosperity Found. v. Harris,*
    182 F. Supp. 3d 1049 (C.D. Cal. 2016) ........................................ 12, 13, 14, 15

Ams. For Prosperity Found. v. Harris, supra ................................... 14

*Beard v. Cty. of Stanislaus, No. 1:21-cv-00841-ADA-SAB,*
    2022 U.S. Dist. LEXIS 191687 (E.D. Cal. Oct. 20, 2022) ........................... 9, 10

*Black v. Akins*
    (In re Akins), 640 B.R. 721 (Bankr. E.D. Cal. 2022) ......................... 9

*Cazorla v. Koch Foods of Miss., L.L.C.,*
    838 F.3d 540 (5th Cir. 2016) ....................................... 11

*Chula Vista,*
    782 F.3d ......................................................... 15

*Guillen v. B.J.C.R., LLC,*
    341 F.R.D. 61 (D. Nev. 2022) ................................... 11, 12

*Hernandez v. Lord, No. 3:19-cv-00151-RRB,*
    2021 U.S. Dist. LEXIS 208981 (D. Alaska Oct. 29, 2021) ................... 9

*Kandypens Inc. v. Puff Corp., No. CV 20-0358-GW-KS,*
    2020 U.S. Dist. LEXIS 246877 (C.D. Cal. Dec. 7, 2020) ................... 16

*Liberty Asset Mgmt. Corp. v. Bridgestream Mgmt., LLC*
    (In re Liberty Asset Mgmt. Corp.), 2017 Bankr. LEXIS 1391 ................... 16

*Louisiana v. NAACP,*
    366 U.S. 293, 81 S. Ct. 1333, 6 L. Ed. 2d 301 (1961) ................... 15

*Phelps v. Alameida,*
    2011 U.S. Dist. LEXIS 6799 ................................... 16

*United States v. Salgado-Martinez,*
    480 F. Supp. 3d 1032 (N.D. Cal. 2020) ................... 11, 12

**Statutes**

8 U.S.C. § 1101 ................................... 11

**Rules**

F.R.Civ.P. 30 ................................... 1, 8

F.R.Civ.P. 37 ................................... 1, 9

Rule 16 ................................... 7

Rule 26 ................................................................................................................ 16

Rule 30 ................................................................................................... 7, 8, 9, 17

Rule 34 ................................................................................................... 7, 8, 9, 15

Rule 37 ................................................................................................ 8, 9, 16, 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. Summary of Argument

Pursuant to Rule 37(a)(2), Plaintiffs Arizona Yagé Assembly ("AYA") and Winfield Scott Stanley III ("Plaintiffs") move this Court to compel the Drug Enforcement Administration ("DEA") to testify in a deposition under Federal Rule of Civil Procedure 30(b)(6). The DEA has provided Plaintiffs with only evasive and incomplete discovery responses. Dkt. 260 at 16-51. The DEA's own discovery demands infringe Plaintiffs' associational privacy. The Court applies Exacting Scrutiny to Defendants' demands. On December 19, 2024, relying on prior agreement, Plaintiffs served a Rule 30(b)(6) Notice via email, seeking relevant, proportional testimony to establish the DEA's asserted governmental interests and the narrow tailoring of inquiry to justify compelled disclosure of thousands of AYA member and donor identities, emails, medical records, ceremonial attendance and donation records. Plaintiffs require information about the DEA's claimed governmental interest and why it claims its discovery demands are narrowly tailored. However, the DEA's refusal to produce critical evidence has frustrated written discovery efforts. Defendants have declined to provide responses to interrogatories or categorization of documents disclosing their theory of the case. Pursuant to F.R.Civ.P. 37(a)(3)(B), Plaintiffs move to compel the DEA to designate a witness or witnesses to testify per the Notice and produce all requested documents.

### 2. Procedural Facts

On December 7, 2024, Plaintiffs retained discovery counsel to manage all legal tasks required by Order Dkt. 258, including meeting with Defendants' counsel to prepare a privilege log, and preparing the proposed Amended Rule 16 Scheduling Order. Dean Decl. ¶1. Preparing the Rule 16 Scheduling Order of course meant including time to obtain adequate discovery responses from the DEA, DHS, and CBP. Dean Decl. ¶4.  After reviewing the Defendants' Responses to Document Requests propounded by Plaintiffs (Exhibits 2, 3, and 4), Plaintiffs discovery counsel identified numerous deficiencies and requested specific compliance with Rule 34 on December 19, 2024. Dean Decl. ¶¶5-7, 10.  Deficiencies in the

Defendants' document responses had previously been raised by Plaintiffs' counsel, as discussed infra. Dkt. 213-11; Dkt. 213-16. The DEA has not designated a witness and has filed objection to the Notice. Dkt. 265. Plaintiffs have made efforts to resolve the matter by meeting and conferring. Dean Decl. ¶¶9, 12, 15.

On December 19, 2024, Plaintiffs timely and properly served the Notice in accordance with Rule 30(b)(6). Dean Decl. ¶20. The written notice was sent via email to Counsel of Record for all parties involved in the litigation, directed the deposition of the DEA, and outlined with reasonable particularity the matters for examination. *Id*. The email also offered Defendants' Counsel the opportunity to discuss alternative dates for the deposition, stating, "We are open to discussing alternative dates that accommodate all parties. Please let us know if a different date is preferable... We welcome further discussion regarding the scheduling of the deposition." *Id*. Despite this offer, Defendants have not proposed alternative dates or responded to Plaintiffs' December 31, 2024, proposal to hold the deposition in abeyance to resolve the discovery dispute. *Id*.

On December 23, 2024, Defendants asserted that the letter Plaintiffs' discovery counsel sent on December 19, 2024, was the first time Plaintiffs had raised issue with deficiencies in responses to non-expert discovery and intended to dispute that any objections to Defendants' responses could be raised at this time. Dean Decl. ¶11. This is not supported by the record. Dkt. 213-11; Dkt. 213-16.

In truth and in fact, Plaintiffs had attempted to begin a meet and confer on the DEA's Responses to RFPs and circulated a draft joint statement of dispute on December 20, 2023. Dkt. 213-11. Defendants responded on December 21, 2023, informing Plaintiffs that the DEA: [1] "stood on its objections" to non-expert discovery; [2] "[did] not intend to search for or produce documents responsive to Plaintiffs RFP Nos. 1, 18 subparts (c )-(g), 19-23, to ROG No. 1"; and [3] intended to delay response to Plaintiffs' "contention ROGS by the close of fact discovery." *Id*. Defendants additionally asserted that Plaintiffs' draft joint statement raising such issues was not presented in the appropriate form and failed to provide a responsive statement. *Id*.

Later that day, Plaintiffs' counsel responded stating, "Plaintiffs are eager to continue our work together, and look forward to receiving the government's edits to the draft joint statements I submitted to you yesterday" and "reiterate[d] their request for each defendant to specify as required by Rule 34 (b)(C) whether in fact any documents are being withheld pursuant to objection in response to each RFP to which objection has been made." *Id*.

On December 22, 2023, Defendants informed Plaintiffs of its refusal to engage in the discovery dispute procedure on issues raised by Plaintiffs stating, "the government cannot provide a written response to your joint statement because you have not provided your position on any of the RFPs or ROGs." *Id*. On January 15, 2023, Plaintiffs' counsel attempted again to schedule a meet-and-confer with Defense counsel in order to equally address the issues raised by Plaintiffs' with Defendants' deficiencies and file both parties' joint statements of dispute contemporaneously. Dkt. 211-16.

Plaintiffs have renewed efforts to raise issue with the deficiencies of Defendant's responses. Between December 20, 2024 – January 3, 2025, Defendants unilaterally filed three joint statements of dispute, each raising separate issues and requiring a response from Plaintiffs in order for the opportunity to be heard and considered by this Court. *See* Dkt. 261, 265, and 267; Dean Decl. ¶17. The pattern of abusing this Court's Discovery Rule procedure is consistent with prior instances from one year ago. See Dkt. 213-11; Dkt. 213-16. Rather than cooperating in the discovery process to equally address Plaintiff's issues, Defendants are yet again, unilaterally exploiting the joint statement procedure and using procedural gamesmanship to overwhelm and harass Plaintiffs.

3. **Relief Requested: An Order Compelling the DEA to Designate a Qualified Person or Persons to Testify at Deposition and Produce Requested Documents**

"The discovery Rules and remedies are in place to ensure proper and efficient information sharing between parties. If one side fails to comply with discovery requests, the court can step in so long as there was good faith effort to obtain a response from the opposition, the attempted 'meet and confer.' The court's powers to compel a party to comply

with discovery requests are for situations like the present case. If a party fails to comply with the Federal Rules, a court can compel them to produce relevant and organized documents to make document review easier for the propounding party and allow for more affective advocacy." *Black v. Akins (In re Akins)*, 640 B.R. 721, 736 (Bankr. E.D. Cal. 2022).[1]

From December 16, 2024 to January 10, 2025, Plaintiffs attempted in good faith to confer with Defendants in an effort to obtain the discovery and then requested identification of the documents already produced by the DEA. Dean Decl. ¶¶9-10, 13, 15. After diligently reviewing over 4,500 pages of Defendants' document productions to assess the status of discovery in this litigation, and in order to avoid billing countless more hours, Plaintiffs' discovery counsel determined it necessary and appropriate to request Defendants' to specifically comply with Rule 34(b)(2)(E)(i) and produce a document index identifying each document that is responsive to Plaintiffs requests. Dean Decl. ¶¶7, 9, 10, 12, 15, 23, 25. Defendants refused to provide further specification to Plaintiffs, asserting that they have met their discovery obligations and that any objections to Defendants responses were untimely. Dean Decl. ¶11, 14.  Defendants have refused to meet and confer concerning this dispute. Dean Decl. ¶22.  The DEA has provided only non-responses to the contention interrogatories served on November 6, 2023. *See* Dkt. 260, Exhibit 1, page 16-52.)  Even where answers to interrogatories are provided, "[p]arties are entitled to test assertions in questioning witnesses during depositions, and it is fundamental that parties may simultaneously utilize any or all of the discovery mechanisms authorized by the rules." *Campbell v. Facebook Inc.*, 310 F.R.D. 439, 449 (N.D. Cal. 2015)(granting motion to compel 30(b)(6) deposition of Facebook).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosures or discovery. Fed. R. Civ. P. 37(a)(1). Under Rule 37, "[a] party seeking discovery

---

[1] "Motions to compel are not designed to be costly. If anything, filing a motion to compel in the case of a 'document dump' is the most economically efficient option. An attorney can quickly file the motion and the court can order a party to comply with Rule 34 and produce untimely documents in an organized manner." *Black*, 640 B.R. 721, 736 (Bankr. E.D. Cal. 2022). "A motion to compel could therefore save an attorney from billing countless hours." *Id.*

may move for an order compelling [a] designation… where … a corporation or other entity fails to make a designation under Rule 30(b)(6) …." Fed. R. Civ. P. 37(a)(3)(B).  *Beard v. Cty. of Stanislaus*, No. 1:21-cv-00841-ADA-SAB, 2022 U.S. Dist. LEXIS 191687, at \*18-19 (E.D. Cal. Oct. 20, 2022).

The deposition of the DEA is necessary to discover the governmental interests justifying the DEA's discovery demands, which facially violate the associational privacy rights of the Plaintiffs in their Religious Freedom Restoration Act ("RFRA") case.  Federal Rules of Civil Procedure Rule 37(a)(2) allows a party to move for an order compelling disclosure or discovery if a deponent fails to answer a question or if a corporation fails to make a designation under Rule 30(b)(6).  *Hernandez v. Lord*, No. 3:19-cv-00151-RRB, 2021 U.S. Dist. LEXIS 208981, at \*7 (D. Alaska Oct. 29, 2021).

The party opposing the discovery bears the burden of resisting disclosure.  *Beard v. Cty. of Stanislaus*, No. 1:21-cv-00841-ADA-SAB, 2022 U.S. Dist. LEXIS 191687, at \*18-19 (E.D. Cal. Oct. 20, 2022), *citing Bryant v. Armstrong*, 285 F.R.D. 596, 600 (S.D. Cal. 2012).

## 4. Associational Privacy

In this case, all attention has been brought to bear upon the Plaintiffs' claims that the discovery demands that assumed the form of a Discovery Order (Dkt. # 220) infringe associational privacy rights of Plaintiffs and the AYA congregation.  The Notice is an effort to turn that attention into usable information to conduct the exacting scrutiny review that must be performed now that Plaintiffs have been allowed to raise these objections for the first time in their categorical privilege log.  (Order, Dkt. # 258.)

The First Amendment protects the right to associate for activities such as speech, assembly, and the exercise of religion  This protection extends to the discovery context, where courts have recognized a qualified associational privilege. Exacting scrutiny must be applied to discovery demands that infringe associational privacy, as Plaintiffs have set forth in detail under oath in their Categorical Privilege Log.  To show that its discovery demands meet exacting scrutiny, DEA and other Defendant Agencies must provide facts to carry the burden of showing a governmental interest warranting propounding of discovery that injures

associational privacy.  The Defendant Agencies must also provide evidence showing how comprehensive member and donor information has been used in the past by the DEA to further the government interests that animate the current discovery demands.

## 5. The Drug Enforcement Administration's Attack on Associational Privacy

The DEA has positioned itself as an aggressive, opaque opponent to the efforts of AYA to obtain relief from the substantial burden to its free exercise presented by the DEA's application of the total ban on Ayahuasca use to the church, its minister, and its congregation.  Rather than disclose the DEA's theory of defense, which must be focused on AYA's use of Ayahuasca, and not general policies about "preventing diversion" and "testing sincerity," the DEA has focused on exploiting AYA's vulnerability to an attack on its relationship with its congregation and donors.

As the privilege log the Court ordered Plaintiffs to provide reveals, the volume of documents responsive to the Defendants' demands is enormous: 17 categories of privileged documents encompassing over 114,821 emails, many thousands of social media communications. The categorical privilege log is supported by a new declaration of Plaintiff Stanley, 19 pages and 92 paragraphs long, that he avers "set forth, with complete transparency, the entire constellation of documents that are generated in the course of operating AYA as a church offering Ayahuasca ceremonies, and to provide granularity to the categorical privilege of which this declaration is a necessary part."  The document is so disclosive that it is designated Confidential Pursuant to Confidentiality Order Dkt. 217.

Seeking to impose the maximum associational injury on AYA and its congregation through disproportionate discovery that in no way passes exacting scrutiny, the DEA persists in pressing an associational assault on AYA that puts it in a class with historical villains such as the Attorney General of Alabama, who imposed the $100,000 fine on the NAACP for refusing to disclose its membership in response to a subpoena, and thereby prevented the organization from operating in the state for nearly a decade.  *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 78 S. Ct. 1163 (1958).  Great damage is done to the cause of justice and fair

application of the laws by *in terrorem*[2] tactics designed to coerce litigants to withdraw claims lest they be personally damaged by dangerous disclosures of private matters. Refusing the request of a convenience store operator charged with sexual harassment seeking to compel disclosure of the plaintiff's U-Visa application documents,[3] the District Judge in *United States v. Salgado-Martinez,* 480 F. Supp. 3d 1032, 1045 (N.D. Cal. 2020) observed that "[b]y revealing their immigration status, any plaintiffs found to be undocumented might face criminal prosecution and deportation." *Id*. at 1064. "As a result, most undocumented workers are reluctant to report abusive or discriminatory employment practices." *Id*. at 1065 (citations omitted). The court concluded that if it allowed such inquiries in every case like this, "countless acts of illegal and reprehensible conduct would go unreported." *Id*.

> The chilling effect of allowing this discovery also extends to documented workers. *Id*. "Documented workers may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends; similarly new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding." *Id*. As a result, these individuals may decide not to pursue their civil rights claims. *Id*.
>
> The court found this chilling effect "constitutes a substantial burden, both on the plaintiffs themselves and on the public interest in enforcing" the anti-discrimination laws. *Id*. at 1066.
>
> *Guillen v. B.J.C.R., LLC, 341 F.R.D. 61, 67 (D. Nev. 2022), quoting Rivera v. NIBCO, Inc., 364 F.3d 1057 (9th Cir. 2004).*

While the DEA is heavily invested in its attack on AYA's associational privacy, it has never been required to articulate a government interest that might pass exacting scrutiny.

---

[2] "Under *Rivera* and *Cazorla*, requiring **disclosure of these documents would surely have an intimidating or in terrorem effect on individuals outside this litigation**, and would discourage them from raising these claims in the future." *Guillen v. B.J.C.R., LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022)(emphasis added), citing *Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004) and *Cazorla v. Koch Foods of Miss., L.L.C.,* 838 F.3d 540 (5th Cir. 2016).

[3] To obtain a U-visa, a noncitizen must: (1) have suffered substantial physical or mental abuse because he or she was a victim of certain crimes; (2) possess information concerning that crime; (3) have been, currently be, or be likely to be helpful in the investigation or prosecution of that crime; (4) have certification from law enforcement certifying his or her helpfulness in the investigation or prosecution of the crime; and (5) have been the victim of a crime that violated the laws of or occurred in the United States. See 8 U.S.C. § 1101(a)(15)(U)(i). *United States v. Salgado-Martinez,* 480 F. Supp. 3d 1032, 1045 (N.D. Cal. 2020).

The Notice seeks to identify the government's interest in pursuing its scorched-earth inquiry into the identities, communications, medical records, ceremonial activities and donations of the AYA congregation, and how its clearly disproportionate inquiries that implicate over 114,821 emails, many thousands of social media communications, and thorough review of 30+ GB of electronically stored data.

The Court has indicated it will apply exacting scrutiny to the Plaintiffs' claims of associational privacy. A template for analysis is available for the Court to apply. Although reversed by the Ninth Circuit, the Supreme Court ultimately held that District Judge Real in the Central District of California had correctly defined and applied exacting scrutiny in *Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049, 1053 (C.D. Cal. 2016):

> Exacting scrutiny "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." This encompasses a balancing test. In order for a government action to survive exacting scrutiny, "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights."
>
> *Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049, 1053 (C.D. Cal. 2016)

That case presented with the following facts. California nonprofits were required by law to file a complete copy of their federal tax return, including Schedule "B," that lists all donors of over $5,000 to the organization; however, Americans for Prosperity ("AFP") had omitted Schedule "B" from its filing since 2021, and not until 2013 did the California Attorney General notify AFP that its 2011 filing was incomplete. *Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d at 1049. AFP then filed suit in the Central District, alleging that the statute was unconstitutional on its face and as applied. AFP won its motion for preliminary injunction on grounds of facial invalidity, but the Ninth Circuit reversed and the case was ultimately tried on the as applied challenge only. *Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d at 1053. Judge Real ruled for AFP and permanently enjoined California from enforcing the statute against AFP, finding as follows:

> AFP's irreparable First Amendment injuries cannot adequately be compensated by damages or any other remedy available at law. Unlike a monetary injury, violations of the First Amendment "cannot be adequately remedied through damages." .

> The balance of hardships also favors granting an injunction. Once AFP's donor information is disclosed, it cannot be clawed back. Thus, if the Attorney General is allowed to compel AFP to disclose its Schedule B, the ensuing intimidation and harassment of AFP's donors, and resulting chilling effect on First Amendment rights, cannot be undone.

*Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049, 1058-59 (C.D. Cal. 2016), *quoting, Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).

California appealed, and the Ninth Circuit reversed. After its petition for rehearing was denied, AFP sought certiorari and ultimately prevailed, as the Supreme Court provided a ringing endorsement of Judge Real's analysis.

> When it comes to "a person's beliefs and associations," "[b]road and sweeping state inquiries into these protected areas . . . discourage citizens from exercising rights protected by the Constitution."

*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 610, 141 S. Ct. 2373, 2384 (2021)

## 6. Applying the Evidentiary Lessons of *AFP v. Harris*

Accordingly, after suffering two reversals before the Ninth Circuit, the California Central District Court's application of exacting scrutiny in *AFP v. Harris*, 182 F. Supp. 3d 1049 received the imprimatur of the Highest Court, and may be relied upon to identify factors relevant to the exacting scrutiny analysis. The main lesson to be learned from *AFP v. Harris* is that the proper application of exacting scrutiny is based on evidence, and should be done by taking testimony. Just as Judge Real conducted a bench trial, examining the State of California's nonprofit regulatory employees to determine the governmental interest that the State was asserting in response to AFP's invocation of exacting scrutiny, this Court should allow Plaintiffs to depose the DEA's chosen witness(es) to establish why it is the DEA is seeking this vast trove of personal information that so plainly injures the associational privacy rights of AYA and its congregation. The factual determinations that Judge Real made are instructive.

*First*, the District Court found that California never objected to AFP's failure to file Schedule B's for ten years. This itself was evidence that Schedule B's didn't serve an important government interest. The District Court concluded that the "only logical

explanation for why AFP's 'lack of compliance' went unnoticed for over a decade is that the Attorney General does not use the Schedule B in its day-to-day business [as admitted] by David Eller, the Registrar for the Registry of Charitable Trusts in the Department of Justice." *Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049, 1053 (C.D. Cal. 2016).

"Trial testimony confirmed that auditors and attorneys seldom use Schedule B when auditing or investigating charities [and] of the approximately 540 investigations conducted over the past ten years in the Charitable Trusts Section, only five instances involved the use of a Schedule B [and] even in instances where a Schedule B was relied on, the relevant information it contained could have been obtained from other sources." Ams. for Prosperity Found. v. Harris, 182 F. Supp. 3d 1049, 1054 (C.D. Cal. 2016)

From the above quotes from the trial judgment, we derive that the simple question "How are you going to use this information?" must be asked of the DEA in this case. If agents of the California Department of Justice were questioned to establish how the demand for Schedule "B" served a government interest and complied with exacting scrutiny, then the DEA can be asked why it needs the names of approximately 8,000 people, 114,821 of their emails and social media messaging, their medical records, psychological disclosures, ceremonial attendance records, and donations to the AYA church to defend against Plaintiffs' simple claim that the imposition of a complete ban on their use of Ayahuasca is a substantial burden on their free exercise.

Such disclosures were not required of either of the two churches that obtained exemptions through litigation, the UDV church that prevailed in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 126 S. Ct. 1211 (2006), or the Santo Daime church that prevailed in *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009). Accordingly, like the California Attorney General's sudden discovery of the "need" to read the Schedule Bs that AFP hadn't filed for ten years in *Ams. For Prosperity Found. v. Harris*, *supra*, the DEA has suddenly discovered it needs to know the name of every visionary church member or donor, every document they ever saw or sent to their church, every donation they made, and every ceremony they attended, in order to

defend a RFRA case seeking a CSA exemption.  Clearly, this Court must inquire into the rationale for demanding a complete X-ray of the entire AYA organization.

*Second*, the District Court found that when applying exacting scrutiny to disclosure orders, the issue of "narrowly tailoring" is judged using a "least restrictive means" test.  The only exception to this rule is the electoral context, where "disclosure requirements are inherently the least restrictive means…."[4]  Accordingly, for its discovery demands to pass exacting scrutiny, the DEA must establish that responding to the demands who have the minimal negative impact on the Plaintiffs' rights of First Amendment associational privacy necessary to advance an important government interest.  The deposition is necessary to obtain this information, as the DEA has refused to provide it through other means.

**7.    Plaintiffs Should be Allowed to Discover the Foundational Facts the DEA Will Offer to Carry its Burden of Showing Government Interest and Narrow Tailoring of its Discovery Demands in the Face of Exacting Scrutiny**

Rule 26(b) sets the boundaries for discovery, requiring that it be relevant, proportional, and nonprivileged.  The requested deposition is both relevant and proportional to the needs of the case, and Plaintiffs seek no privileged information, neither attorney client communications nor attorney work product. Plaintiffs are entitled to know the facts necessary to invoke exacting scrutiny of the DEA's discovery demands – which governmental interests justify these demands, and how it is that the demands, that sweep in a vast array of information and documents, are in fact narrowly tailored to achieve those governmental interests. The proportionality requirement under Rule 26(b) considers the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, and whether the burden or expense of the proposed discovery outweighs its

---

[4] Because disclosure requirements are inherently the least restrictive means of achieving the state's aims in the electoral context, the Ninth Circuit has held that in cases challenging mandatory disclosures in the electoral context "exacting scrutiny is not a least-restrictive-means test." *Chula Vista*, 782 F.3d at 541. That holding is properly limited to the electoral context. In the context of associational rights, however, "even though the governmental purpose [may] be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Louisiana v. NAACP*, 366 U.S. 293, 296, 81 S. Ct. 1333, 6 L. Ed. 2d 301 (1961).  *Ams. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049, 1054 (C.D. Cal. 2016)

likely benefit. *Kandypens Inc. v. Puff Corp.*, No. CV 20-0358-GW-KS, 2020 U.S. Dist. LEXIS 246877, at *2 (C.D. Cal. Dec. 7, 2020).

Despite the DEA's overwhelming evasive and incomplete answers, productions, and responses to Plaintiffs non-expert discovery requests, Defendants assert that any objection to written discovery is untimely raised. Dean Decl. ¶5-7, 9, 11. The information sought in the Notice is relevant, proportional, and designed to determine which asserted governmental interests the DEA believes can withstand Exacting Scrutiny in justifying the potential infringement on Plaintiffs' associational privacy. These concerns are related to the ongoing First Amendment associational privacy dispute that remains unresolved. Dean Decl. ¶17.

## 8. Previous Attempts to Obtain Information from the DEA through Interrogatories and Document Discovery

The Plaintiffs have previously attempted to obtain the necessary information through interrogatories and document discovery. "The [DEA] who asserted affirmative defenses in their Answer, must have contemplated a Rule 11 basis in law or fact when they asserted these defenses and should be required to reveal this Rule 11 basis, as well as other presently-known facts on the matter, when responding to Plaintiffs' contention interrogatory, regardless of how much discovery has transpired." *Firetrace USA, LLC v. Jesclard*, No. CV-07-2001-PHX-ROS, 2009 U.S. Dist. LEXIS 2972, at *6 (D. Ariz. Jan. 9, 2009).

The DEA has refused to provide responses to basic contention interrogatories or to identify produced documents with any specificity. Additionally, the DEA has refused to engage equally in the joint statement procedure to address Plaintiffs' issues with its discovery responses. *See* Dkt. 213-11; Dkt. 213-16; Dean Decl. ¶25. This refusal has left the Plaintiffs with no other means to obtain the information required to challenge the DEA's discovery demands effectively. The DEA's refusal to appear for the deposition and provide the requested information necessitates this motion to compel. Under Rule 37(a)(2), the court has the authority to compel a party to comply with a discovery request when they have failed to do so. *Phelps v. Alameida*, 2011 U.S. Dist. LEXIS 6799; *Liberty Asset Mgmt. Corp. v. Bridgestream Mgmt., LLC (In re Liberty Asset Mgmt. Corp.)*, 2017 Bankr. LEXIS 1391. The

Plaintiffs have demonstrated that the deposition is the only reasonably practical means available for obtaining the information, as other methods have been unsuccessful.

### 9. Risks of the Government Storing Private Data

As should part of the folly in which it is currently engaged in this case, the DEA claims that it receive, as a belated Christmas gift, the entire bolus of digital data accumulated by plaintiffs during the time period within which plaintiff Stanley has been practicing Ayahuasca religion. This vast trove of data, unlimited by time currently estimated at approximately 30 GB, would contain the medical records of approximately 8,000 people, reveal their deepest spiritual yearnings, their religious practices, and in some cases their confessions and recollections of severe traumatic events. The DEA has no credible purpose for this huge acquisition of data.

It is now well understood that accumulating large troves of data in government hands can effectively lead to the transfer of that data to the hands of international criminals whose sole purposes are the extraction of money through ransom and blackmail operations. The federal government has been the target of many of these data breaches.[5]

Even our social security records are apparently not safe, and our medical records are constantly being stolen through digital attacks. Accordingly, the DEA thinks it wise to accumulate another large trove of data concerning visionary religion adherence, data that they have no need for, have no plan to use, and which will simply become an attractive target for a creative criminal.  Since DEA handlers have repeatedly been manipulated by their "Confidential Informants," basically turning the Agency into the agent of criminals who have gained the Agency's trust, no presumption of data-security should be accorded the DEA and the other defendants, just as the Supreme Court accorded none to the California Attorney General.

---

[5] Sanger, David E.; Perlroth, Nicole; Schmitt, Eric (December 15, 2020). "Scope of Russian Hack Becomes Clear: Multiple U.S. Agencies Were Hit",
https://web.archive.org/web/20201218062201/https://www.nytimes.com/2020/12/14/us/politics/russia-hack-nsa-homeland-security-pentagon.html

In *AFP v. Harris*, supra, the California Central District Court found that the risks of disclosure by the California Attorney General were a substantial concern adding to the justification for enjoining the Attorney General's collection of the "Schedule B" donor information.  While the Ninth Circuit minimized the problem,[6] the Supreme Court took issue with that approach:

> Here the State's assurances of confidentiality are not worth much. The dissent acknowledges that the Foundation and Law Center "have unquestionably provided evidence that their donors face a reasonable probability of threats, harassment, and reprisals if their affiliations are made public," but it concludes that the petitioners have no cause for concern because the Attorney General "has implemented security measures to ensure that Schedule B information remains confidential." *Post*, at 15 (opinion of Sotomayor, J.). The District Court—whose findings, again, we review only for clear error—disagreed. After two full bench trials, the court found that the Attorney General's promise of confidentiality "rings hollow," and that "[d]onors and potential donors would be reasonably justified in a fear of disclosure."

> *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 n.*, 141 S. Ct. 2373, 2388 (2021), quoting  *Thomas More Law Center* v. *Harris*, 2016 U.S. Dist. LEXIS 158851, 2016 WL 6781090, *5 (CD Cal., Nov. 16, 2016).

Whatever protections for the confidentiality of data that the DEA may proffer regarding the protection of the information it seeks to harvest, it is clear that Plaintiffs are entitled to know what those protections are, and whether they are truly secure.  Of course, as Plaintiffs have repeatedly argued in previous submissions, the mere fact that the information sought by the DEA would be shared with the DEA, DHS and CBP would be the "kiss of death" for AYA, destroying the church by undermining the atmosphere of confidentiality that is currently necessary to the practice of AYA's religion.

---

[6] "The plaintiffs' allegations that technical failures or cybersecurity breaches are likely to lead to inadvertent public disclosure of their Schedule B forms are too speculative to support issuance of an injunction."  *Ams. For Prosperity Found. v. Harris*, 809 F.3d 536, 541 (9th Cir. 2015).

**10. The DEA Should Produce the Requested Documents**

Plaintiffs attached a Rule 34 document request to the Notice.  Defendants have never specifically objected to that aspect of the Notice.  Accordingly, the Court is respectfully requested to direct the DEA to produce all requested documents at the deposition.

**11. Conclusion**

For the foregoing reasons, the Plaintiffs respectfully request that the court grant their motion to compel the DEA to testify in a deposition under Rule 30(b)(6) pursuant to Rule 37(a)(2), and produce responsive documents pursuant to Rule 34.

Dated: January 14, 2025                          MELISSA DEAN

                                                          _____

                                                          MELISSA DEAN (FLB #103182)
                                                          Attorney for Plaintiffs
                                                          Arizona Yagé Assembly,
                                                          Winfield Scott Stanley III
                                                          *Pro hac vice*