1  BRETT A. SHUMATE
   Acting Assistant Attorney General
2
   JULIE STRAUS HARRIS
3  Assistant Branch Director

4  LISA NEWMAN (TX 24107878)
   BONNIE E. DEVANY (TX 24131173)
5  Trial Attorneys
   U.S. Department of Justice
6  Civil Division, Federal Programs Branch
   1100 L Street NW
7  Washington, D.C. 20005
   Telephone: (202) 514-5578
8  Email: lisa.n.newman@usdoj.gov

9
   *Attorneys for Defendants*
10

11
                **IN THE UNITED STATES DISTRICT COURT**
12                 **FOR THE DISTRICT OF ARIZONA**

13

14  Arizona Yagé Assembly; Winfield Scott
    Stanley III, in his capacity as Founder and
15  Director of Arizona Yagé Assembly,                    No. 2:20-cv-2373-ROS

16                        Plaintiffs,
                                                          **OPPOSITION TO PLAINTIFFS'**
17          v.                                            **MOTION FOR EXTENSION**
                                                                  **[DKT. 276]**
18  James McHenry, Acting Attorney General of
    the United States, *et al.*,
19
20                        Defendants.

21

22

23

24

25

26

27

28

## OPPOSITION TO PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO RESPOND TO PRIVILEGE LOG JOINT STATEMENT

Undersigned counsel is not in the practice of refusing a reasonable request for an extension where such a request is explained, warranted, and occasional. Plaintiffs' latest request for an extension satisfies none of those criteria, and it is the third request for an extension since this Court ordered Plaintiffs to produce a privilege log. *See* Dkt. 268 (request for extension on Rule 16 order and 30(b)(6) deposition joint statement); Dkt. 276 (extension to confer on joint statement on Privilege Log).

Plaintiffs request a 14-day extension, until January 31, 2025, to respond to Defendants' draft statement on Plaintiffs' privilege log, because they claim "additional time is necessary for counsel to fulfill their meet-and confer obligations and ensure that any jointly filed statement of dispute reflects a genuine, good faith effort by the parties to resolve and narrow disputes collaboratively." Dkt. 276 at 1-2. Plaintiffs have been in receipt of Defendants' detailed concerns about deficiencies in Plaintiffs' privilege log since January 10 and insist that they need a total of 21 days to meet and confer. As explained below, although Plaintiffs suggest in their motion that issues in the draft statement could be narrowed through further conferrals, Plaintiffs have not—despite repeated requests by Defendants that they do so—identified *any* issues that they believe could be narrowed, and their motion provides none. In that regard, Plaintiffs have not explained their need for an extension, exhibited diligence in attempting to confer within the five-day deadline and therefore have not demonstrated good cause for this extension.

Defendants cannot litigate this case in a timely matter with recalcitrant Plaintiffs who have—throughout the entirety of the discovery process—consistently disregarded the Court's deadlines and sought eleventh-hour and day-of extensions from Defendants and then from the Court. Although Plaintiffs have now hired an additional counsel, *see* Decl. of Melissa Dean ¶ 2, Dkt. 276-1 ("Dean Decl."), little has changed since Defendants opposed Plaintiffs' requested extensions in March 2024 on the basis that Plaintiffs had "substantially delayed the discovery process through repeated extensions for their responses and significant delays in conferring about discovery disputes," Dkt. 213 at 2; *see* Dkt. 234; Dkt. 238. Moreover, it is

2

1   still true now, as this Court observed then, that "Plaintiffs' filing of the present motion just
2   hours before the responses were due and prior delay throughout the discovery process
3   suggests Plaintiffs do not take the Court's deadlines seriously and have little interest in litigating
4   this case in a timely manner." Dkt. 216 at 1.[1]  Despite these warning, Plaintiffs are undeterred.
5       Although Plaintiffs paint this dispute as a failure to confer, that does not fairly describe
6   the parties' interactions since this Court's order requiring Plaintiffs to produce a privilege log,
7   Dkt. 258.  Defendants detail the parties' conferrals below to provide necessary background
8   and demonstrate that it is, in fact, Plaintiffs who continue to abuse the conferral process
9   through consistent delays and outright refusals to provide timely responses to deficiencies
10  Defendants raise.  Plaintiffs' abuses, in turn, prevent Defendants from presenting the Court
11  with disputes in a timely fashion, consistent with the procedures ordered by this Court.  This
12  Court should deny Plaintiffs' motion for an extension.

## **BACKGROUND**

### 1.  Conferral on the privilege log

15      On December 4, 2024, this Court ordered Plaintiffs to provide Defendants with a
16  "categorical privilege log (asserting associational privilege only) no later than January 3, 2025."
17  Dkt. 258 at 11 ("Order").  The Court's Order provided specific requirements for the privilege
18  log, so that the documents would be described "with sufficient detail so that [Defendants] and
19  [the] court can assess the claim of privilege." *Id.* (quoting *Franco-Gonzalez v. Holder*, No. CV
20  10-2211-DMG DTBX, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013)).  After the Court
21  issued its Order, and before the Court's January 3 deadline, the parties conferred via email
22  numerous times and conferred on the phone on December 20, 2024, December 31, 2024, and
23  January 3, 2025. *See* Dkt. 267 at 13-14.  It became clear from these conversations that Plaintiffs
24  would not be able to produce a privilege log compliant with the Order because, as Plaintiffs
25  represented during that time period, they did not yet have an e-discovery software and they
26  did not have any way to access email records to assess the records' responsiveness or determine

---

[1] It is also still true, as it was in March 2024, that Defendants have not received complete
responses to Defendants' discovery requests served in September 2023. *See* Dkts. 245, 261.

if there were any applicable privileges.  *See* Dean Decl. ¶ 7 ("I was still working to understand the functionality of Plaintiff's e-discovery software[.]"); *see also* Dkt. 267 at 13.

While the Order only directed Plaintiffs to provide a privilege log, Defendants also agreed to provide their privilege log to Plaintiffs on January 3.  On January 3, 2025, Defendants sent Plaintiffs their complete privilege log, which totaled 277 pages and explained each privilege asserted over each of the documents that were either produced with redactions or were withheld completely.  Defendants' privilege log included twelve columns for each individual document: (1) beginning bates number, (2) ending bates number; (3) custodian; (4) file name; (5) email subject (if applicable); (6) email sender (if applicable); (7) email recipient (if applicable); (8) email CC'd (if applicable); (9) date; (10) whether the document was redacted or withheld; (11) the asserted privilege; and (12) a description of the factual basis for asserting the privilege.

By contrast, on January 3, 2025, Plaintiffs provided Defendants with a privilege log that on its face was plainly deficient and did not comply with the Order.  Plaintiffs' privilege log totaled 19 pages and asserted a blanket associational privilege over at least 100,000 documents (with the total number of documents over which they are asserting a privilege unknown).  For example, in one entry in Plaintiffs' log, Plaintiffs asserted associational privilege over more than 85,000 emails, and provided none of the information required by the Order.  While Defendants will further detail the deficiencies of Plaintiffs' privilege log in their forthcoming Joint Statement, critically, Plaintiffs' privilege log does not (and indeed, cannot) provide sufficient information about the underlying documents because Plaintiffs' counsel has not yet reviewed the documents or searched the documents for responsiveness, and therefore, is not in a position to evaluate or make an informed privilege assertion over any of the 100,000 documents over which Plaintiffs nonetheless asserted associational privilege.[2]  The events following the exchange of privilege logs are as follows:

---

[2] For example, many categories in Plaintiffs' log do not include the dates, the number of responsive documents, or the identity and position of the recipients.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- On January 10, Defendants sent Plaintiffs an 8-page letter outlining the deficiencies in Plaintiffs' privilege log. Ex. A at 13.

- On January 12, Defendants sent Plaintiffs an email with a draft joint statement on the deficiencies of Plaintiffs' privilege log. *Id.* at 12. That email requested that, in accordance with Dkt. 218, Plaintiffs provide their responsive statements by close of business on January 17, 2025. *Id.* The email also included an invitation to confer and proposed dates and times to do so. *Id.* On January 12, the parties scheduled a conferral, which the parties then rescheduled to accommodate Plaintiffs' counsels' work travel. *Id.* at 11-12.

- On January 13, Plaintiffs' counsel noted that she had "not had a chance to review the deficiency letter or joint statement with my client yet." Ex. A at 10. Defendants expressed their expectation that counsel would do so by the time of the conferral so it would be productive. *Id.*

- On January 14, the parties conferred for nearly an hour by phone. During this call, Plaintiffs' counsel expressed that she had not reviewed the deficiencies or joint statement with her client and did not have authorization to convey their positions despite having been in receipt of Defendants' deficiencies letter for 4 days and draft joint statement for 2 days. *See* Dean Decl. ¶¶ 6-7. Plaintiffs' counsel requested additional time to respond to the joint statement but was not able to provide an estimate of how much time was required until she attended a Thursday meeting with an ESI vendor during which she would receiving training on the software needed to review the documents included in Plaintiffs' log. *See id.*; Ex. A at 9. Plaintiffs' counsel further indicated that their privilege log was a "first draft," and that Plaintiffs would not be able to provide a more complete draft until Plaintiffs were able to access and review their records in their newly acquired e-discovery software. *See* Ex. A at 9. Plaintiffs' counsel also expressed that she understood Defendants' positions, did not have any further questions, and did not have any suggestions for narrowing the disputes outlined in Defendants' statement. *See* Ex. A at 8-9. Defendants reiterated that they were "happy to meet again to discuss further," should

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs have any follow-up questions or concerns. *See id.* Defendants heard nothing more from Plaintiffs about the privilege log deficiencies until January 16.

- On January 14, Plaintiffs filed two prohibited motions to compel, and a third motion to allow the parties to file discovery motions, totaling over 400 pages. Dkts. 272, 273, 274.

- On January 16, Plaintiffs' counsel emailed Defendants' counsel, stating that "Plaintiffs' position is that Defendants have not been properly meeting and conferring on the privilege log." Ex. A at 9. Plaintiffs' counsel also requested that Defendants stipulate to an additional 14-days to confer further prior to Defendants filing with the Court a Joint Statement on the deficiencies of Plaintiffs' privilege log. *Id.* at 9-10.

- Defendants responded that same day (January 16), stating that they were "admittedly surprised to hear this," given the parties' conferral earlier that week and Defendants' offer to confer further. *Id.* at 8-9. Defendants' counsel also offered, once again, to confer, stating she was available "anytime today or tomorrow." *Id.* at 9. As to Plaintiffs' request for a stipulation to delay filing a joint statement, Defendants counsel noted that such a stipulation would be "unnecessary," because the Court never ordered the parties to file a joint statement within a particular time, but instead only set forth a requirement that a response be provided within 5 days. *Id.* at 3-4.

- Throughout the week of January 13, Defendants' counsel relayed multiple times that they were "happy to consider [any] narrowing proposals" should Plaintiffs make them "and, if appropriate, confer further about the issues, prior to filing the joint statement." *Id.* at 3, 5; *see also id.* at 8. Plaintiffs never provided any narrowing proposals. Defendants also noted that they "consider the issue of Plaintiffs' privilege log being insufficient on its face relatively straight forward—not only because the Court provided very clear and specific instructions in Dkt. No. 258 at 11, which Plaintiffs did not comply with, but also considering that Plaintiffs have not yet reviewed their own records." *Id.* at 7.

- The night of January 16, the parties' counsel conferred by phone for nearly half an hour. *See* Ex. A at 7. During that conferral, Plaintiffs indicated that they had not had time to

research the issues presented in the draft joint statement. *Id.* at 7; *see also* Dean Decl. ¶ 7. Defendants' counsel reiterated on the phone, and then again in email, that Plaintiffs' lack of time for such research "is in no way the result of Defendants' unwillingness to confer," and asked if Plaintiffs were actually seeking an extension of time to prepare their responses to the joint statement, as opposed to their stated reason of seeking additional time to confer. Plaintiffs denied that they were seeking the extension to prepare their responses. Ex. A at 4, 7-8.

- While Plaintiffs' counsel stated in emails and in their extension motion that they desire more time to confer on potentially narrowing the disputed issues presented in the joint statement, Plaintiffs have not offered any such proposals to date. To the contrary, it was clear to Defendants from their conferrals that the parties would be at a fundamental impasse because Plaintiffs asserted an associational privilege over more than 100,000 documents that they admitted they had not reviewed. Ex. A at 5 ("We will not … agree to further delay putting this issue before the Court without first seeing Plaintiffs' positions or proposals to narrow the issues, particularly given that from our numerous conversations and the below email exchange, the parties positions on the sufficiency of the privilege log seem to be at an impasse."). Given that Plaintiffs have not begun the process of reviewing the bulk of their documents (as they are still becoming familiar with newly acquired document-review software), *see* Dean Decl. ¶ 7, Defendants relayed during multiple conferrals that Plaintiffs would not be able to complete review of the more than 100,000 documents on any reasonable timeframe and therefore would be unable to provide Defendants with a privilege log compliant with the Court's order by any reasonable (extended) deadline.

- Throughout the week, Defendants' counsel inquired as to whether Plaintiffs would provide their Joint Statement positions within the five-day period mandated by Dkt. No. 218. *E.g.*, Ex. A at 3 ("Can you please let us know if you plan to circulate Plaintiffs' statement today?"); *id.* at 8 ("Can you please let me know by 12:00 pm tomorrow if Plaintiffs plan to

provide their position by COB tomorrow?"); *id.* at 9 ("Can also you please confirm whether Plaintiffs intend to provide their positions on the joint statement by COB tomorrow?").

- Up and until the night Plaintiff's positions were due (January 17), Plaintiffs neither confirmed nor denied whether they would provide their responses in accordance with Dkt. 218. *See generally* Ex. A. Plaintiffs consistently denied that they were seeking an extension to provide their positions, stating as late as January 17 at 3:49 PM ET, "Plaintiffs have not requested that Defendants stipulate to an extension for providing our responses to Defendants' statement of dispute." *Id.* at 4.

- By phone on January 17 at 4:54 PM ET, Plaintiffs' counsel requested that Defendants refrain from filing the joint statement on Friday if Plaintiffs provided their responses to Defendants that night. *See* Ex. B at 2. Defendants agreed to Plaintiffs' request. *Id.*

- On January 17 at 6:51 PM ET, Plaintiffs' counsel emailed Defendants' counsel stating that Plaintiffs would not be providing their responses as required by Dkt. 218, informing Defendants, for the first time, that "[m]y client is not available until Tuesday" to discuss the joint statement. Ex. A at 2.

As of this filing—which is 9 days after receiving the statement and 11 days after receiving the deficiency letter—Plaintiffs have not provided their positions to Defendants' statement.

### 2. Other conferrals since the Court's Order No. 258

Plaintiffs have—throughout the entirety of the discovery process—consistently disregarded the Court's deadlines and sought eleventh-hour or same-day extensions from Defendants and the Court. Plaintiffs have a history of repeatedly and substantially delaying providing responses to deficiency letters and joint statements on the basis that "attempts to solicit Plaintiffs' position were not sufficient." Dkt. 212 at 3; *see* Dkt. 213 (detailing previous delays). It was these very sorts of delays in conferral by Plaintiffs that prompted the Court to require and later reaffirm "that responses and positions for joint statements of discovery disputes shall be provided within five days of receipt of the joint statement." Dkts. 218, 234.

1    Although in December 2024, Plaintiffs hired an additional counsel for discovery tasks,

2    Dean Decl. ¶ 2, little has changed.  Since the stay was lifted, Dkt. 247, and Plaintiffs were

3    ordered to provide a privilege log, Dkt. 258, Plaintiffs have refused to provide written

4    responses to joint statements within the Court's deadline and have largely refused to provide

5    Defendants with oral representations about their positions, citing a lack of authority from their

6    client to do so or a lack of time to consider and research the issues.  This same pattern occurred

7    both during (1) the conferral on the Rule 16 Order and (2) the conferral on Defendants'

8    **Conferral on Rule 16 Order.**

9    • After the Court ordered the parties to file an Amended Proposed Rule 16 Scheduling

10    Order by January 3, Defendants circulated a proposed Rule 16 order on December 9, well

11    in advance of the Court's deadline, indicating their hope that the parties confer and resolve

12    any disagreements by December 20, two business weeks later and before Defendants'

13    counsel would be on long-scheduled vacation for the holidays.  Dkt. 267 at 13.

14    • On December 19 (the eve of Defendants' requested date on which they would file a

15    proposal with the Court), Plaintiffs stated that they would not be able to provide a

16    counterproposal.  *Id.*

17    • Plaintiffs in fact only provided a counterproposal on December 31, and only provided a

18    joint statement regarding the disputed issues on the evening of January 1.  *Id.*

19    • Defendants responded with a revised proposal and joint statement on January 3 at 1:00

20    AM ET.  *Id.* at 14.

21    • On January 3, at 6:20 PM ET (the day the parties' joint proposed order was due), Plaintiffs

22    informed Defendants that because Plaintiffs were still working on completing their

23    privilege log, they would not be able to provide their positions on the Amended Proposed

24    Rule 16 Order and related joint statement by the Court's January 3 deadline and that they

25    intended to seek an extension.  *Id.*

26    • The Court extended the time to January 13 to submit the Amended Proposed Rule 16

27    Order.  Dkts. 268, 269. After the Court granted the extension, Plaintiffs and Defendants

28    agreed to confer on January 10; however, Plaintiffs did not provide their positions prior to

1      that conferral, which meant that Defendants could not consider and be prepared to

2      respond to Plaintiffs' positions during that conferral, which occurred on the last business

3      day prior to the extended deadline to file a new Amended Proposed Rule 16 Order. *See*

4      Dkt. 271 at 19.

5   •   Further, Plaintiffs did not return a revised Amended Proposed Rule 16 Order or their

6      positions on the related joint statement until January 12 at 11:37 PM. *Id.*  When they did

7      finally provide Defendants with those documents, Plaintiffs had significantly revised their

8      proposed order from the version Plaintiffs provided on December 31 and January 1—with

9      no indication in any of the parties' previous conferrals that they would do so—leaving

10     Defendants with one business day to assess Plaintiffs' new proposal and positions, and

11     timely file a joint statement late on the evening of January 13, which Defendants did indeed

12     accomplish. *See id.*

13     **Conferral on Rule 30(b)(6).**

14  •   A similar pattern unfolded with respect to Plaintiffs' "Notice of Deposition of Defendant

15     [DEA] Pursuant to F.R.Civ.P 30(b)(6)," Dkt. 260, which Plaintiffs improperly served via

16     email on December 19, 2024, Dkt. 265 at 5.

17  •   Defendants objected to the notice by email on December 23, requesting that Plaintiffs

18     withdraw the notice to allow the parties to confer. *Id.*  Plaintiffs did not respond.

19  •   On December 30, Defendants' counsel sent a follow-up email, asking whether Plaintiffs

20     would withdraw the notice and requesting a response no later than December 31, stating

21     that otherwise Defendants would need to file a Joint Statement by Thursday, January 2,

22     2025, on this issue given the 14-day deadline imposed by the Federal Rules for objecting

23     to a subpoena. *Id.*  Once again, Plaintiffs refused to provide a response within Defendants'

24     requested timeline, and did not provide a response until January 1 at 8:30 PM ET, the

25     evening before Defendants stated that they would have to seek relief with the Court. *Id.*

26     Plaintiffs' delay in responding to Defendants' objections and requests to confer did not

27     provide the parties sufficient time to confer regarding a joint statement regarding

28     Defendants' requests that Plaintiffs withdraw their notice.

1

**ARGUMENT**

2          Plaintiffs' extension request lacks good cause and is not made in good faith. Plaintiffs

3    request a 14-day extension, until January 31, 2025, because, they assert, "additional time is

4    necessary for counsel to fulfill their meet-and confer obligations and ensure that any jointly

5    filed statement of dispute reflects a genuine, good faith effort by the parties to resolve and

6    narrow disputes collaboratively." Dkt. 276 at 1-2. Beyond citing the number of joint

7    statements Defendants have circulated, Plaintiffs offer no justification for the additional 14

8    days they request. Most significantly, although they claim to require additional time to confer

9    regarding the deficiencies Defendants have raised with Plaintiffs' privilege log, Plaintiffs

10   identify no issues on which they seek to confer or as to which they believe the dispute could

11   be narrowed or resolved with additional conferral. As such, Plaintiffs have not demonstrated

12   good cause for the extension they seek. Plaintiffs also have not exhibited good faith—in this

13   or prior disputes—with respect to timely providing Defendants with their positions so that

14   the parties could meaningfully confer to "resolve and narrow disputes collaboratively." Dkt.

15   276 at 1-2. This Court should deny Plaintiffs' requested extension.

16          *First*, although Plaintiffs suggest in their motion that the issues in Defendants' draft

17   statement could be narrowed through further conferrals, they have not—despite repeated

18   requests by Defendants—identified *any* issues that they believed could be narrowed or

19   resolved, *see generally* Ex. A, and their motion cites none. Plaintiffs have been in receipt of

20   Defendants' positions on the privilege log deficiencies since Defendants sent their deficiency

21   letter 11 days ago and sent their joint statement 9 days ago, and have had ample time to, at the

22   very least, identify at even a high level of generality issues that they believe would be

23   appropriate for resolution or narrowing on which the parties could confer. And although

24   Plaintiffs seek to shift the blame to Defendants by framing the present dispute as a failure to

25   engage in "collaborative discussions aimed at narrowing the disputes," Defendants have

26   conferred with Plaintiffs multiple times and Plaintiffs did not over the course of a week—and

27   still do not in their motion—provide any such topic for discussion or provide a rationale as to

28   why a 14-day extension is warranted. *See, e.g.*, Ex A at 5 (stating that if Plaintiffs sent us their

1    responses and proposed narrowing, Defendants would be "happy to consider those narrowing

2    proposals and, if appropriate, confer further about the issues, prior to filing the joint

3    statement").

4         *Second*, Plaintiffs do not explain why they were unable to comply with the Court's 5-day

5    deadline, nor why 14 additional days are warranted.  Instead, Plaintiffs simply assert that

6    "Defendants have circulated four joint statements," and that "counsel has worked diligently

7    to prepare thorough and timely responses."  Dkt. 276 at 1.[3]

8         Moreover, Plaintiffs' justification as to why they could not provide timely responses or

9    an alternate timeline with respect to *this* joint statement has shifted throughout the week.  As

10   detailed above, when the parties conferred on January 14, Plaintiffs would not provide, and

11   indeed, did not know, the amount of additional time they would need to provide a more

12   complete privilege log, in part, because counsel is "still working to understand the functionality

13   of Plaintiffs' newly secured e-discovery software."  Dkt. 276 at 4.  On January 16, Plaintiffs

14   conveyed they lacked the time to research the issues included within Defendants' joint

15   statement, an assertion that rings hollow in light of Plaintiffs' filing of three unauthorized

16   motions regarding discovery during the same week, Dkts. 273, 273, 274, rather than

17   responding to the joint statement despite a Court-ordered deadline to do.[4]  On the evening of

18   January 17, the day Plaintiffs' responses to the joint statement were due, Plaintiffs' counsel

19   relayed for the first time that her clients would not be available to meet with her to discuss the

20   joint statement until January 21 and that they would, therefore, be unable to provide their

21   positions, Ex. B at 2, despite assurances that they were not seeking an extension of time to

22   provide their responses, Ex. A at 4; Ex. B at 2.  Moreover, Plaintiffs' counsel provided no

23   ---

      [3] At the outset, Defendants note that Plaintiffs' have sought extensions on three out of the

24   four joint statements, each time on the eve or day of the deadline.

25   [4] This is particularly at odds with Plaintiffs' motion this week requesting that the parties be
     allowed to file discovery motions, which require far more time and research than the Court's
26   streamlined joint statement process.  Dkt. 274.  Defendants appreciate that the Court's joint-
     statement process is designed to be a more efficient process for resolving discovery disputes,
27   requiring far less time than drafting and resolving a motion (while still allowing the parties to
     file briefing should they seek leave to do so, and should the Court believe such briefing
28   necessary).

1    explanation for why her clients were not available to meet with her to discuss their positions

2    until 9 days—nearly twice the amount of time allowed by Dkt. 218—after Defendants first

3    circulated their draft joint statement.[5]

4            Nor have Plaintiffs demonstrated that they acted diligently to meet the deadline to

5    provide their responses, or to orally provide their positions to allow the parties to confer to

6    narrow or resolve issues, and the sparse rationale provided by Plaintiffs in their motion does

7    not satisfy the good cause standard. *See, e.g.*, *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-

8    ROS, 2018 WL 11352127, at *4 (D. Ariz. Jan. 11, 2018) ("Parties demonstrate good cause by

9    acting diligently to meet the original deadlines set forth by the court.").

10           *Third*, any extension would be futile.  While Plaintiffs' counsel stated in their emails and

11   in their motion that they require more time to confer on potentially narrowing the disputed

12   issues, Dkt. 276, Plaintiffs have offered no narrowing proposals to date, nor any reason why

13   conferral would not be futile.  The parties appear to be at an impasse stemming from Plaintiffs'

14   assertion of associational and other privileges over more than 100,000 documents they admit

15   they have not reviewed.  *See* Ex. A at 5 ("[F]rom our numerous conversations and the below

16   email exchange, the parties positions on the sufficiency of the privilege log seem to be at an

17   impasse.").  As Defendants have already raised with this Court, Dkt. 267 at 10, Plaintiffs

18   admitted that as of January 3, 2025, they had not: (1) started to collect, let alone review, most

19   potentially responsive documents in this case; nor (2) obtained or learned how to use e-

20   discovery software necessary to review and process documents—16 months after Defendants'

21   discovery requests were issued, 9 months after the substantial completion deadline, and 4 years

22   after Plaintiffs filed this case.  In this regard, it is entirely clear that Defendants' earlier fears

23   that Plaintiffs were not in a position to substantially complete discovery by the Court's deadline

24   were accurate.  *See also* Dkt. 234 at 2 ("Plaintiffs' have not even 'started to collect, let alone

25   review and produce, potentially responsive documents.").  That is remarkable and gross

26

27   ───────────────

28   [5] Plaintiffs' counsel made this statement despite that on January 12 she stated: "Both the deficiency letter and the joint statement are received and I will review with my client prior to our meeting."  Ex. A at 12.

1    violation of Plaintiffs' discovery obligations.  *See DR Distributors, LLC v. 21 Century Smoking,*

2    *Inc.*, 513 F. Supp. 3d 839, 942 (N.D. Ill. 2021).

3         Given that Plaintiffs have not begun the process of reviewing the bulk of their

4    documents, and are only just now familiarizing themselves with the document-review software

5    they recently obtained, as Defendants reasonably relayed during multiple conferrals, it is their

6    position that Plaintiffs are not able to complete review of the relevant documents on any

7    reasonable timeframe, a task that is a necessary precursor to providing Defendants with a

8    compliant privilege log.  Defendants are familiar with the time required to diligently respond

9    to discovery requests—it took Defendants more than five months to search for responsive

10   documents, review documents for responsiveness, redact information for privilege, produce

11   more than 20,000 responsive documents, and provide a privilege log explaining the basis of

12   information withheld.  Because the facial deficiencies in Plaintiffs' privilege log could not be

13   remedied in a 14-day time frame, much less a four-month time frame, Defendants submit that

14   additional time to confer would be futile.  *See* Ex. A at 7 ("Defendants consider the issue of

15   Plaintiffs' privilege log being insufficient on its face relatively straight forward—not only

16   because the Court provided very clear and specific instructions in Dkt. No. 258 at 11, which

17   Plaintiffs did not comply with, but also considering that Plaintiffs have not yet reviewed their

18   own records.").

19        *Fourth*, Plaintiffs' request itself is an act of gamesmanship, and a blatant attempt to shift

20   the blame for the parties' inability to meaningfully confer from Plaintiffs themselves to

21   Defendants.  As the history of conferrals since the Court's Dkt. 258 Order demonstrate, *see*

22   BACKGROUND, *supra*, Plaintiffs have engaged in a persistent pattern of outright refusal to

23   provide timely responses either in writing or orally during the conferral process, regardless of

24   the amount of time in which they have been in receipt of Defendants' positions or the number

25   of issues in a draft statement: they have thus far taken between 9 days (30(b)(6) notice) and 5

26   weeks (Proposed Rule 16 order) to respond.  When Defendants have attempted to obtain

27   Plaintiffs' positions outside the joint statement process with ample time to confer prior to a

28   Court deadline, Plaintiffs have likewise refused to provide positions to allow the parties to

1    confer.  Instead, each time, on the eve or night of a given deadline, Plaintiffs have either (1)

2    informed Defendants that they will not be providing a position and will be seeking an

3    extension, (2) or advised Defendants of their position, allowing no opportunity for a conferral

4    with the benefit of Plaintiffs' written positions in advance of the Court's deadline.  Plaintiffs

5    should not be rewarded for engaging in a persistent pattern of seeking an extension on the eve

6    or evening of this Court's deadline, as illustrated below:

7
8    • Plaintiffs notified Defendants on January 3 at 6:20 PM that they would not provide their
       positions for the joint statement on the Proposed Amended Rule 16 Order, but would
9      seek an extension, when the Proposed Amended Rule 16 Order was due January 3;

10   • Even with a 10-day extension, Plaintiffs only provided their positions to Defendants on
       January 12 at 11:57 PM, when the Proposed Amended Rule 16 Order was due January 13;
11

12   • Plaintiffs did not inform Defendants that they would not withdraw their 30(b)(6)
       deposition notice until January 1 at 8:30 PM, when Plaintiffs were aware that Defendants'
13     deadline to file objections to a deposition subpoena was January 2; and

14   • Plaintiffs did not inform Defendants that they would not provide their positions for the
       joint statement on the privilege log until January 17 at 6:51 PM, the evening Plaintiffs'
15     responses were due.

16

17        Plaintiffs' consistent delay or outright refusal to provide Defendants with their

18   positions is an obvious impediment to the parties' ability to engage in meaningful conferrals.

19   Moreover, Plaintiffs demonstrated during both the Rule 16 Order conferrals and the 30(b)(6)

20   conferrals that they will not provide a timely response unless and until the Court orders them

21   to do so—Defendants made at least six unsuccessful attempts to elicit Plaintiffs' positions on

22   those disputes.  To date, the Court's requirement that Plaintiffs provide responses to a joint

23   statement within five days is the only mechanism that has allowed Defendants to receive

24   Plaintiffs' responses in a timely fashion, and even then, with limited success and, most recently,

25   three consecutive requests for extensions of time—on the Rule 16 statement, the 30(b)(6)

26   statement, and now the privilege log statement.  Plaintiffs' gamesmanship should not be

27   rewarded.  Dkt. 218 ("Litigation is not a game . . . . Any attorney who subverts opposing

28   counsel's ability to obtain timely discovery will be subject to sanctions.").

*     *     *

Defendants are not opposed to conferring, narrowing issues, or agreeing to reasonable requests for extensions of time.  But it is not reasonable for Plaintiffs to request an extension on nearly every discovery deadline, while at the same time spending their time filing frivolous motions and noticing an unauthorized deposition.  Nor is it reasonable for Plaintiffs to consistently wait until the eve or evening of a deadline to convey that they will not be providing responses or will be seeking an extension of time to do so. *See* Dkt. 216 at 1 ("Plaintiffs' filing of the present motion just hours before the responses were due and prior delay throughout the discovery process suggests Plaintiffs do not take the Court's deadlines seriously and have little interest in litigating this case in a timely manner."); Dkt. 218 ("Any attorney who subverts opposing counsel's ability to obtain timely discovery will be subject to sanctions.").

Plaintiffs simply have not demonstrated—either in conferrals leading up to the stay in March 2024, or in conferrals since this Court ordered Plaintiffs to produce a privilege log— that they are capable of meaningfully engaging in the conferral process they now invoke as a justification for seeking 14 additional days.  Defendants are hard-pressed not to view Plaintiffs' continued obstruction and delay in the discovery process as anything other than an effort to buy additional time to make up for their failure to do the significant amount of work necessary to comply with their discovery obligations between when the discovery period commenced and the substantial completion deadline lapsed, including the very basic tasks of obtaining and understanding how to use e-discovery software.  In so delaying, Plaintiffs seek to avoid the Court's review and resolution of Plaintiffs' long-running discovery deficiencies.

The Court is presently considering the parties' Proposed Amended Rule 16 Order setting forth deadlines for Plaintiffs' completion of written discovery and further proceedings after such completion. Dkt. 271. Defendants remain concerned that Plaintiffs' persistent delays in providing responses will again prevent the parties from being able to present future disputes to the Court, with sufficient time for the Court to consider and resolve such disputes before the parties begin deposition fact discovery.  This proved to be true in the weeks leading up to the March 8 substantial completion deadline, and Plaintiffs' behavior remains

1    unchanged.  The parties proposed that deposition fact discovery begin in two months on

2    March 28, 2025.  Unfortunately, Plaintiffs still have many outstanding responses to

3    Defendants' discovery requests, with no assurance as to when Plaintiffs will provide those

4    requests. Plaintiffs' substantial completion of written fact discovery is necessary before the

5    parties can proceed to depositions.  And if Plaintiffs' past responses are indicative of their

6    future responses, Defendants expect they will require follow-up.  Plaintiffs' current

7    timelines—taking from three to five weeks to even provide Plaintiffs' responses to joint

8    statements, with additional time required for the parties to engage in conferrals, will quickly

9    deprive Defendants of the ability to timely present issues to the Court and will likewise limit

10   the time the Court would have to consider and rule on the issues.  Moreover, given that

11   Defendants substantially completed discovery in March 2024, additional extensions of time

12   will singularly prejudice Defendants' ability to obtain Plaintiffs' positions about substantive

13   discovery disputes without having to seek a further extension of the scheduling order.

14   *Finally*, it bears emphasis that Plaintiffs chose to initiate this lawsuit against Defendants.

15   If the demands of discovery in this case are proving to be too taxing or time intensive,

16   Plaintiffs may dismiss this lawsuit or hire additional counsel beyond the second attorney

17   retained last month.  Defendants cannot litigate this case or resolve discovery disputes in a

18   timely manner if Plaintiffs request an extension on every discovery deadline; refuse to prove

19   timely or substantive responses to issues Defendants raise in the discovery process, despite

20   court ordered deadlines to do so; and/or demand additional time to "confer" on every dispute

21   that arises out of discovery without providing the information necessary for such a conferral

22   to be meaningful.  Simply put, a wholesale refusal to comply with deadlines and meet long-

23   overdue discovery obligations is not an adequate means of proceeding with discovery.

## **CONCLUSION**

25   Without having provided any issues which Plaintiffs believe are deserving of further

26   conferral, and without providing any reason as to why they need an additional 14 days to

27   confer about unidentified issues, Defendants submit that Plaintiffs have not satisfied good

28   cause for an extension.  Defendants respectfully request that the Court deny the motion.

Dated: January 21, 2025

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

*/s/ Lisa Newman*
LISA NEWMAN (TX 24107878)
BONNIE E. DEVANY (TX 24131173)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*