BRETT A. SHUMATE
Acting Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

LISA NEWMAN (TX 24107878)
BONNIE DEVANY (TX 24131173)
CODY T. KNAPP (NY 5715438)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Email: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>        Plaintiffs,<br><br>    v.<br><br>James R. McHenry III, Acting Attorney General of the United States, *et al.*,<br><br>        Defendants. | No. 2:20-cv-2373-ROS<br><br>**DEFENDANTS' STATEMENT ON PLAINTIFFS' PRIVILEGE LOG DEFICIENCIES** |

Defendants respectfully provide the following statement with respect to the deficiencies in Plaintiffs' privilege log and accompanying declaration, which are attached hereto as Exhibits A and B. Defendants' deficiency letter regarding the privilege log is attached hereto as Exhibit C.

As detailed in Defendants' Opposition to Plaintiffs' Motion for Extension, Dkt. 277, and further detailed in the conferral certification below, Plaintiffs have refused to engage in the Court's joint statement process with respect to Plaintiffs' privilege log. Defendants initially

provided Plaintiffs with a deficiency letter regarding Plaintiffs' privilege log on Friday, January 10 and circulated a draft joint statement regarding the same on Sunday, January 12.  Under the Court's Order Dkt. 218, Plaintiffs' positions were due to Defendants on Friday, January 17. Plaintiffs never provided their positions and instead filed a motion for a two-week extension late on the night their positions were due, Dkt. 276, asserting that Plaintiffs needed an additional 14 days "to complete the process of meeting and conferring with opposing counsel," *id.* at 1.  As Defendants outlined extensively in their opposition to Plaintiffs' extension motion, Defendants consistently have been willing, ready, and able to meaningfully confer (and have attempted, numerous times, to do so); Plaintiffs, on the other hand, have refused to meaningfully participate in the conferral process.  Despite the passage of the 14-day extension period Plaintiffs requested in their motion, Dkt. 276, and despite multiple requests from Defendants, Plaintiffs have still failed to provide Defendants with their position, either in writing or orally during the parties' conferral phone call.  Plaintiffs have also not offered any narrowing proposals to the statement.  Because Plaintiffs have refused to provide their positions in the more than 3 weeks that have passed since Defendants initiated the joint statement process regarding Plaintiffs' privilege log, and also have given Defendants no indication of when they will provide their positions or so-called narrowing proposals that could lead to any further meaningful conferral, Defendants are filing this statement with Plaintiffs' positions left blank.  Defendants will also note that this is the third time *in a month* that Defendants have had to file a statement unilaterally due to Plaintiffs' inability or refusal to participate in the Court's joint statement process.  *See* Dkts. 265, 267.

**Defendants' General Position Statement**

In its December 4, 2024 Order ("Order") directing Plaintiffs to provide Defendants with a privilege log by January 3, 2025, the Court detailed its expectations with respect to that log, including that it "assert[] associational privilege only" and that it "'describe the documents with sufficient detail so that the other party and court can assess the claim of privilege.'" Dkt.

258 at 11 (quoting *Franco-Gonzalez v. Holder*, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013)). Plaintiffs' privilege log, *see* Ex. A, and accompany declaration, *see* Ex. B, are inadequate by this or any applicable standard because it does not describe the documents with sufficient detail to allow the assessment of the privilege, *see* Fed. R. Civ. P. 26(b)(5)(A)(ii), and it plainly does not comply with the Court's Order*, see* Dkt. 258 at 11.  As the Court cautioned in the Order, "failure to oblige shall constitute a waiver of the privilege or any objection to the discovery, and Plaintiffs will be ordered to fully comply with the Discovery Order at serious risk of sanction." *Id.*  Because Plaintiffs' privilege log does not comply with the Order, Defendants respectfully request that the Court find the associational privilege waived and order Plaintiffs to fully comply with Dkt. 220 and their discovery obligations.

**Plaintiffs' General Position Statement**:

**Issue 1: Plaintiffs' failure to collect and review most potentially responsive documents in this case is as gross violation of Plaintiffs' discovery obligations.**

**Defendants' Position**:

Plaintiffs admitted that they had not started to collect, let alone review, most potentially responsive documents in this case as of January 3, 2025—16 months after Defendants' discovery requests were issued, 9 months after the substantial completion deadline, and 4 years after Plaintiffs filed this case. Ex. C at 2 (detailing counsel's admissions, including that counsel did not know the number of responsive documents that existed). Plaintiffs were required to substantially complete fact discovery by March 2024, but as of January 3, 2025, admittedly had not acquired the necessary "eDiscovery technology" to allow them to "review, organize and catalog" the "vast number of documents falling within the Scope of the Court's Order because" those documents "are too voluminous to review." Ex. B at ¶ 2. It is now clear that Defendants' earlier fears that Plaintiffs were not in a position to substantially complete discovery was accurate. Dkt. 234 at 2 ("Plaintiffs' have not even 'started to collect, let alone review and produce, potentially responsive documents."). Plaintiffs' failure to collect and review potentially responsive documents is a gross violation of their discovery obligations. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 942 (N.D. Ill. 2021).

**Plaintiffs' Position**:

**<u>Issue 2: Plaintiffs have no basis to assert associational privilege over at least 115,000 documents, which they have admitted they have not reviewed.</u>**

**<u>Defendants' Position</u>**:

Plaintiffs have no basis to assert associational privilege over at least 115,000 documents that they admit they have not reviewed, *see* Ex. B at ¶ 2, and accordingly they have not satisfied their burden to assert the privilege. As a court in this district held in a closely analogous case, it is "not a permissible approach" when producing a privilege log to fail to "review" 61,298 documents "that were potentially responsive to [] discovery requests … let alone conduct any sort of individualized analysis as to whether those documents might be covered by" the associational privilege. *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 523 (D. Ariz. 2023). The court noted that "political parties and other associations" "are not entitled to assert a blanket privilege by virtue of their status as associations." *Id.* at 515. Further, the court explained, the plaintiff's failure to review and sufficiently detail the documents "ignores the nuanced manner in which the First Amendment privilege operates." *Id.* Thus, that court found, whether the privilege log was "invalid" was "not even a close call," and the plaintiff's "failure . . . means [the plaintiff] has not met its burden under the first step of the *Perry* framework." *Id.* Plaintiffs' privilege log, Ex. A, should similarly be held invalid under the reasoning of *Mi Familia*.

**<u>Plaintiffs' Position</u>**:

**Issue 3: Plaintiffs' privilege log does not comply with the Court's order Dkt. 258.**

**Defendants' Position**:

Plaintiffs' log identifies 17 categories of documents.  The first 3 categories assert a privilege over approximately 115,000 email communications from email accounts of Stanley, AYA, and ██████████.  Ex. A.  Asserting in a privilege log a blanket privilege over 115,000 emails in three entries created over a 20-year period does not, by any reasonable measure, "describe *the* document" over which the privilege is asserted, as the Court directed and precedent requires. *See* Ex. A, Cat. #1-3.  Nor do the entries for any of these three categories describe, for example, "the date [the emails were] written[,]" or the "identity and position of recipients," as the Court required.  Dkt. 258. The remaining 14 categories in Plaintiffs' log include even less detail; none indicate the number of documents within each category, *see* Ex. A, Cat. #4-17, and eight lack date ranges, *see id.*, Cat. #4-11. Categories #7-11 do not identify the author(s), date(s), or recipient(s) of any of the documents.  *Id.*, Cat. #7-11.  While the Court's allowed Plaintiffs to assert the privilege "categorically," Plaintiffs' exceedingly broad categories fail to meet the standard articulated by the Court. *Mi Familia*, 344 F.R.D. at 515 ("assertions of privilege must be" "asserted on a document-by-document basis.").

**Plaintiffs' Position**:

**Issue 4: The privilege log does not include sufficient detail to allow the government or the Court to assess Plaintiffs' privilege claims under Step 1 of *Perry*.**

**Defendants' Position**:

Plaintiffs' privilege log does not "describe the documents with sufficient detail" so that Defendants "and the Court can assess the claim of privilege." Dkt. 258 at 11. Plaintiffs must "demonstrate" that "the discovery requests" would chill AYA's members' associational rights. 591 F.3d at 1160. Courts "will not presume that a protected associational relationship exists between a party and every other person or entity with whom they share common beliefs" because "such an expansive view" of the "privilege would swallow the discovery process altogether." *Mi Familia*, 344 F.R.D. at 514. Plaintiffs' log differs significantly from that in *Perry*, where the party identified 60 documents for the Court's review. 591 F.3d at 1154–55. While Plaintiffs may be able to "make arguments to why it should be allowed to withhold certain documents" that implicate information protected from disclosure, the blanket assertion of privilege over *all* emails and documents prevents Defendants and the Court from ascertaining whether the withheld documents are protected. *See Mi Familia*, 344 F.R.D. at 516 (failure to provide sufficient "information about the contents and nature of each withheld document" prevents "nuanced" *Perry* inquiry). More detail is necessary to assess Plaintiffs' privilege claim.

**Plaintiffs' Position**:

**Issue 5: The privilege log does not include sufficient detail to allow the government or the Court to assess Plaintiffs' privilege claims under Step 2 of *Perry*.**

**Defendants' Position**:

Step 2 of the *Perry* inquiry requires enough detail to allow Defendants to try to establish and the Court to determine whether Defendants can "demonstrate a sufficient need for the discovery to counterbalance [any First Amendment] infringement." *Mi Familia*, 344 F.R.D. at 515. This Court already determined that Defendants' requests are critical its RFRA defense. Dkt. 220. For example, within Stanley's emails, different interests may be at stake among communications: (1) between Stanley and an AYA member about religious matters; (2) between Stanley and a prospective member about possible attendance; (3) about an incident ███████████████████████████████████████████████████████████

███████████████████████████████████████████ and (4) between Stanley and AYA facilitators about safety procedures or ceremony logistics. Without more detail, neither Defendants nor the Court can determine whether the withheld documents are protected under *Perry,* or whether disclosure would have a deterrent effect on the exercise of rights the First Amendment is intended to protect.  Plaintiffs' "boilerplate" assertions "make[] it impossible to complete the second step" of *Perry*.  *Mi Familia*, 344 F.R.D. at 515.

**Plaintiffs' Position**:

---

███████████████████████████████████████████████████████████████████

**Issue 6: Even if the associational privilege applies to Plaintiffs, it would not apply to _all_ of Plaintiffs' documents and communications.**

**Defendants' Position**:

The associational privilege is not an absolute bar against any disclosure. *Perry*, 591 F.3d at 1165 n.13. The potential disclosures in this case differ in a dispositive way from *NAACP v. Alabama,* which AYA invokes for each category. 357 U.S. 449, 454 (1958). Alabama sued the NAACP, seeking disclosure of information under a state law requiring all corporations to provide names and addresses of its members. *Id.* at 451-52. NAACP "produced substantially all the data called for by the production order except its membership lists," *id.* at 454, including producing "the identity of its members who are employed by or hold official positions with it," and various other business records, *id.* at 464. In affirming NAACP's invocation of the privilege, the Court contrasted NAACP's extensive disclosures with an earlier case in which an organization made no disclosures. *Id.* at 465-66. Here, Plaintiffs object to disclosure of all communications and documents not yet produced. Plaintiffs sued to establish that their beliefs and practice are substantially burdened, invoking RFRA, an inquiry that depends on having information about Plaintiffs' religious activities. Plaintiffs' may not hide behind the shield of associational privilege to withhold all of its communications and documents, as it now does.

**Plaintiffs' Position**:

**Issue 7: Plaintiffs may not assert privileges they have waived under the guise of an associational privilege.**

**Defendants' Position**:

The Court ruled that Plaintiffs must produce a privilege log "asserting associational privilege only." Dkt. 258 at 11. Yet in its log, Plaintiffs assert additional privileges and objections. *See* Ex. A. For example, Plaintiffs assert that: (1) certain documents in nearly all categories (except #6) are "pre-decisional and deliberative," a privilege that does not apply to non-governmental entities; (2) Defendants' requests are "overbroad" and "impose and undue burden and cost" under Rule 26(b)(1), *see id.*, All Categories (except #5); and (3) some documents are "an expression of religious freedom" in addition to an expression of "association and speech," *see, e.g.*, *id.*, Category #6. To the extent that Plaintiffs' log invokes these additional privileges, such is not permitted under Dkt. 258, for the Court determined that Plaintiffs have already waived their ability to so invoke such other privileges. *See* Dkt. 258 at 10-11(quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.")).

**Plaintiffs' Position**:

1

2

**Issue 8: Plaintiffs may not assert a privilege over documents they previously agreed to produce.**

3

**Defendants' Position**:

4

5

6

7

8

9

10

11

12

13

14

15

16

17

The privilege log is further deficient because Defendants have no way to know whether and how many documents within each category (1) are even responsive to Defendants' RFPs, and (2) are responsive to RFPs to which Plaintiffs have not objected on associational privilege grounds, and as to which Plaintiffs did not seek appellate review of Dkt. 220. *See* Dkt. 230 at 23 (only challenging RFP Nos. 7, 8, 11, 12, 13, 20, 21). Specifically, Plaintiffs did not appeal the Court's order as to RFP Nos. 3-6, 10, 14-18, and 23, and even Plaintiffs' overly generalized log descriptions suggest that many of the documents over which Plaintiffs now invoke the associational privilege would be responsive to those RFPs. *Contrast, e.g.*, Ex. A, Cat. #1-3 (asserting a privilege over all email communications), *with* Dkt. 219 at 38 (Plaintiffs' response to RFP 3: "Plaintiff will supplement its response by searching for communications between them and Plaintiffs and providing copies thereof."); *and* Ex A, Cat. #8 *and* Ex. C ¶ 71 (asserting associational privilege over "No Fly List"), *with* Dkt. 219 at 49 (agreeing to produce anonymized "list of individuals who are disqualified from membership in AYA").

18

19

**Plaintiffs' Position**:

20

21

22

23

24

25

26

27

28

11

**Issue 9: Method of resolving deficiencies in Plaintiffs' privilege log**

**Defendants' Position**:

Despite Plaintiffs' waiver of associational privilege, the Court allowed them one further opportunity to assert the privilege in a log, providing specific instructions for the log. Dkt. 258 at 11. Plaintiffs bear the burden of producing a privilege log which complies with the Court's order and substantiates its privilege assertions under Step 1 of *Perry*. By the log, Plaintiffs have not carried their burden. Although in this statement, Defendants identify some of the log's significant deficiencies, Defendants have not detailed all of the objections they would raise in a motion, should one be necessary. Defendants submit, however, that further briefing, depositions, or an evidentiary hearing on this topic are unnecessary given Plaintiffs' clear failure to satisfy its *prima facie* burden of demonstrating that disclosure of the logged documents would have a chilling effect, nor of describing the documents with enough detail to allow Defendants and the Court to assess the claim of privilege under the *Perry* inquiry. As the Court has warned, "failure to oblige shall constitute a waiver of the privilege or any objection to discovery." Dkt. 258 at 11. Further, given Plaintiffs' admission that they have not reviewed most documents, they will not be able to produce a compliant log in a reasonable time.

**Plaintiffs' Position**:

Dated: February 1, 2025

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

*/s/ Lisa Newman*
Lisa Newman (TX 24107878)
Bonnie E. Devany (TX 24131173)
Cody T. Knapp (NY 5715438)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

**Certification.**

Counsel for Defendants hereby certify that they have attempted to resolve the instant dispute through personal consultation and sincere effort in accordance with Rule 7.2(j) and the Rule 16 Scheduling Order. Many of the conferral efforts made by Defendants are outlined in Defendants' Opposition to Plaintiff's Motion for an Extension, Dkt. 277 at 3–8, which includes pin cites to Defendants' accompanying exhibits. In short, Defendants sent Plaintiffs an 8-page letter on Friday, January 10 detailing the deficiencies in Plaintiff's privilege log. *See* Ex. A. Defendants then sent Plaintiffs a draft joint statement on Sunday, January 12, asking for Plaintiffs' responses by Friday, January 17, as required by the Court's Order, Dkt. 218. The parties conferred on the phone for nearly an hour on January 14, during which time Plaintiffs' counsel expressed that she had not reviewed the deficiencies or joint statement with her client and did not have authorization to convey their positions.

On multiple occasions during the week of January 13, Defendants' counsel relayed their willingness to consider any narrowing proposals should Plaintiffs make them and, if appropriate, confer further about the issues, prior to filing the joint statement. On January 16, the parties' counsel conferred on the phone for nearly half an hour, during which Plaintiffs indicated that, despite filing over 400 pages of prohibited discovery motions that week, Plaintiffs had still not had time to research and review the issues presented in the draft joint statement. On January 17, the parties conferred again on the phone, at which time Plaintiffs denied that they were seeking an extension to provide their position on the joint statement, but instead wanted more time for the parties to confer.

On January 17 at 6:51 PM, Plaintiffs' counsel emailed Defendants indicating, for the first time, that Plaintiffs would not be providing their statements in accordance with the Court's Order, Dkt. 218. Plaintiffs filed a motion for an extension, Dkt. 276, which Defendants opposed, Dkt. 277 in large part because the issues presented in this joint statement—namely the facial deficiencies of Plaintiffs' privilege log—are straight-forward, and the parties have been at an impasse.

The parties conferred again by phone on Monday, January 27. During that conferral, Plaintiffs' counsel stated that she did not yet have Plaintiffs' position on the draft joint

statement.  Defendants' counsel asked on the phone, and then by email, for Plaintiffs to please confirm when Plaintiffs would be providing their positions.  Plaintiffs' counsel never responded to that question. Now, after the extended time period Plaintiffs requested has run, Plaintiffs still have failed to provide Defendants with their positions (or offer any narrowing proposals) on the privilege log deficiencies Defendants have raised.