CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

MELISSA DEAN (FLSB#1031982)
111 N. Orange Ave, Ste. 800
Orlando, FL 32801
Tel: 772-919-2748
Email:melissadeanesq@gmail.com

Attorneys for Plaintiffs
Arizona Yagé Assembly and
Winfield Scott Stanley III
*Pro hac vice*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly,  and Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br><br>vs.<br><br>Pamela Jo Bondi, Attorney General of the United States; et al.<br><br>Defendants. | Case No.:20-CV-02373-ROS<br><br>PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY A PROTECTIVE SHOULD NOT ISSUE PURSUANT F.R.Civ.P. 26(b)(2)(iii), AND SETTING EVIDENTIARY HEARING FOR APPLICATION OF EXACTING SCRUTINY TO DEFENDANTS' DISCOVERY DEMANDS, AND MOTION FOR PROTECTIVE ORDER |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE THAT Arizona Yagé Assembly, and Winfield Scott Stanley III ("Plaintiffs") hereby move the Court for an Order to Show Cause why the Court ought not to issue a protective order pursuant to F.R.Civ.P. 26(b)(2)(iii) to: (1) prevent Defendants from enforcing discovery demands that infringe the associational privacy privileges of Plaintiffs and their members, donors, and prospective donors, and therefore exceed the scope of Rule 26(b)(1), that disallows discovery of privileged matter; (2) regulating, pursuant to Rule 26(b)(2), the time and manner for Plaintiffs to produce Electronically Stored Information ("ESI") that is currently

not reasonably accessible due to undue burden or cost arising from Defendants' refusal to enter into the necessary ESI Agreement while improperly demanding production of Plaintiffs' entire corpus of institutional ESI; and (3) preventing the Defendants from enforcing discovery demands that requires the production of disproportionate or irrelevant volumes of ESI, given the matters at stake in this action, giving due weight to the positive social character of Plaintiffs' religious activities, and administering discovery even-handedly to prevent a war of attrition that disfavors Plaintiffs.

The grounds for the motion are as set forth in this notice of motion, the attached memorandum of points and authorities, the declarations of Winfield Scott Stanley III, Tara Lyn Carreon, Charles Carreon, Melissa Dean, Taylor Cox, Rodney Ziebol and Huy Huhn, the Confidential Privilege Log filed under seal by Defendants as Dkt. #285-1, including the Confidential Stanley Declaration in support of the Privilege Log submitted by Defendants as Dkt. #285-2, the files and records of the action, and such evidence and argument as the Court shall consider at the time of the hearing.

Moving parties request the Court to issue an Order providing as follows:

1. Directing Defendants to Show Cause, on a date convenient to this Court's docket not less than ninety days hence, for this Court to hear evidence and make findings on all elements relevant to the application of exacting scrutiny to Plaintiffs' claims of associational privacy and to determine all other issues raised in the herein motion for protective order in the manner prayed by Plaintiffs in their Proposed Protective Order;

2. Finding that:

    a. Defendants have not disclosed the nature and compelling character of the governmental interest claimed to warrant production of the total volume of Plaintiffs' institutional ESI, or how such facially disproportionate demands could be deemed narrowly tailored;

    b. Plaintiffs are entitled to conduct discovery requested by way of their previously-filed motion to compel the Drug Enforcement Administration

("DEA") to designate a witness pursuant to Rule 30(b)(6) to testify in Washington D.C. as to specified matters;

c.  Ordering the DEA to designate a witness or witnesses to testify for seven hours at a time and place agreeable to the parties, and that, pending the resolution of the matters raised by Plaintiffs' motion, no other discovery shall be conducted by the parties, nor shall and discovery enforcement joint statements or motions be filed.

Dated: March 5, 2025                         MELISSA DEAN

_____

MELISSA DEAN (FLB #103182)
Attorney for Plaintiffs
Arizona Yagé Assembly,
Winfield Scott Stanley III
*Pro hac vice*

# Table of Contents

Table of Authorities...................................................................................................................5

I.          Summary of Argument...............................................................................................7

II.         Procedural Facts.........................................................................................................7

III.        RULE 26 EMPOWERS THE COURT TO GRANT A PROTECTIVE ORDER AND
CONTROL THE SCOPE OF DISCOVERY .............................................................................9

    A.    The Court May Issue a Protective Order Under F.R.Civ.P. 26(b)(C)(iii) to Prevent Discovery
Violative of First Amendment Privilege.................................................................................9

    B.    The Court May Issue A Protective Order on the Grounds that Electronically Stored
Information ("ESI") is Not Reasonably Accessible Because of Undue Burden or Cost........10

    C.    The Court Must Issue a Protective Order to Prevent Discovery of Information and
Documents Outside the Scope Permitted by Rule 26(b)(1) ....................................................12

IV.        DEFENDANTS' DISCOVERY DEMANDS FAIL EXACTING SCRUTINY.................12

    A.    Plaintiffs Have shown that disclosure would cause irreparable harm to aya's organizational
fabric ......................................................................................................................................14

    B.    Defendants must justify their sweeping disclosure demands with evidence of a compelling
government interest................................................................................................................14

    C.    Defendants Have Stonewalled Discovery, Concealing their government interest.................15

    D.    The Defendants' Disclosure Demands Cannot be Deemed Narrowly Tailored, as They
Encompass all of AYA's Records .........................................................................................17

V.         DISCLOSURE TO DEFENDANTS HARMS ASSOCIATIONAL PRIVACY, A
PROTECTIVE ORDER ALLOWING DEFENDANTS ACCESS DOES NOT NULLIFY PLAINTIFFS'
ASSOCIATIONAL PRIVACY PRIVILEGE..........................................................................17

    D.    The Government Has Failed to Address Risks of Storing Sensitive Religious Data and
Personal Information or provide proof of the security of AYA member data .......................18

VI.        DEFENDANTS' UNLIMITED ESI DEMANDS IMPOSE AN UNDUE BURDEN .....19

    A.    The Stanley Declaration Establishes Undue Burden .........................................................21

    B.    The Dean Declaration Establishes Excessive Costs .........................................................21

    C.    The Defendants' Poorly Demonstrated Need for the Information Vitiates their Claims of
Relevance.................................................................................................................................21

    D.    The Balance of the Equities Compels Issuance of A protective Order...............................22

VII.       AN EVIDENTIARY HEARING IS NECESSARY TO APPLY EXACTING SCRUTINY
AND EVALUATE THE GOVERNMENT'S CLAIMED INTEREST ......................................23

VIII.      A PROTECTIVE ORDER MUST ISSUE TO PREVENT DISPROPORTIONATE
DISCOVERY   23

IX.        CONCLUSION......................................................................................................24

**Table of Authorities**

**Cases**

*Americans for Prosperity v. Harris*,
    182 F. Supp. 3d 1049 (C.D. Cal. 2016) ........................................... 25

*Ams. for Prosperity Found. v. Bonta*,
    594 U.S. 595*, 141 S. Ct. 2373 (2021) ................................... 20-21, 21

*Ams. For Prosperity Found. v. Harris*,
    809 F.3d 536 (9th Cir. 2015) ........................................................ 20

*Bates v. City of Little Rock*,
    361 U.S. 516 (1960) ...................................................................... 20

*Begay v. United States, No. CIV 15-0358 JB/SCY*,
    2018 U.S. Dist. LEXIS 10520 (D.N.M. Jan. 23, 2018) .................... 14

*Briggs v. Adel*,
    2020 U.S. Dist. LEXIS 124514 (D. Ariz. July 14, 2020) .................. 23

*Briggs v. Adel, No. CV-18-02684-PHX-EJM*,
    2020 U.S. Dist. LEXIS 124514 (D. Ariz. July 14, 2020) .................. 23

*Briggs*,
    2020 U.S. Dist. LEXIS 124514 (D. Ariz. 2020) .............................. 24

*Briggs*,
    2020 U.S. Dist. LEXIS 124514 (D. Ariz. July 14, 2020) .................. 24

*Christ Covenant*,
    2008 U.S. Dist. LEXIS 49483 ....................................................... 20

*Coronel v. Paul*,
    316 F. Supp. 2d 868 (D. Ariz. 2004) ............................................. 19

*Doe v. Heritage Acad., Inc., No. CV-16-03001-PHX-SPL*,
    2017 U.S. Dist. LEXIS 233970 (D. Ariz. June 8, 2017) .................. 22

*Firetrace USA, LLC v. Jesclard, No. CV-07-2001-PHX-ROS*,
    2009 U.S. Dist. LEXIS 2972 (D. Ariz. Jan. 9, 2009) ...................... 18

*In re Ford Motor Co.*,
    345 F.3d 1315 (11th Cir. 2003) ..................................................... 23

*Kinnee v. Tei Biosciences Inc., No. 22-cv-604-JLS-DDL*,
    2024 U.S. Dist. LEXIS 212427 (S.D. Cal. Nov. 21, 2024) ........... 22-23

*LeGrand v. Abbott Labs., No.*
    22-cv-05815-TSH, 2024 U.S. Dist. LEXIS 184790 (N.D. Cal. Oct. 9, 2024) ................................. 16

*LeGrand v. Abbott*,
    2024 U.S. Dist. LEXIS 184790 ................................................. 16, 17

*Lighthouse Res., Inc. v. Inslee, No. 3:18-CV-05005-RJB,*
    2018 U.S. Dist. LEXIS 127064 (W.D. Wash. July 30, 2018) ................................ 11

*Mi Familia Vota v. Fontes,*
    344 F.R.D. 496 (D. Ariz. 2023) ................................................................................. 15

*NAACP v. Alabama,*
    357 U.S. 449 (1958) ..................................................................................... 11, 19, 20

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress, No. 15-cv-03522-WHO,*
    2015 U.S. Dist. LEXIS 192788 (N.D. Cal. Nov. 20, 2015) ...................................... 15

*Perry,*
    591 F.3d 1147 at ...................................................................................................... 20

*Roberts v. Clark Cty. Sch. Dist.,*
    312 F.R.D. 594 (D. Nev. 2016) ................................................................................ 12

*SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp., No. CV-21-01076-PHX-JAT,*
    2023 U.S. Dist. LEXIS 47718 (D. Ariz. Mar. 21, 2023) .......................................... 22

*Treppel v. Biovail Corp.,*
    233 F.R.D. 363 (S.D.N.Y. 2006) ............................................................................. 22

*Under Perry v. Schwarzenegger,*
    591 F.3d 1126 (9th Cir. 2009) ................................................................................. 11

*Whiting v. Hogan,*
    2013 U.S. Dist. LEXIS 35381 (D. Ariz. Mar. 14, 2013) ......................................... 24

*Wright v. S. Ariz. Child.'s Advocacy Ctr., No. CV-21-00257-TUC-JGZ,*
    2023 U.S. Dist. LEXIS 90238 (D. Ariz. May 23, 2023) ........................................... 26

**Rules**

F.R.Civ.P. 26 .................................................................................. 1, 11, 13, 22, 23

Rule 11 ...................................................................................................................... 18

RULE 26 ................................................................................................................... 11

Rule 26 .................................................................... 1, 11, 12, 13, 14, 15, 22, 23, 25, 26

Rule 30 ............................................................................................................... 3, 26

## MEMORANDUM OF POINTS AND AUTHORITIES
### I.    SUMMARY OF ARGUMENT

Plaintiffs—Arizona Yagé Assembly and its minister Winfield Scott Stanley III—seek relief under the Religious Freedom Restoration Act ("RFRA") to protect sacramental use of Ayahuasca from enforcement under the Controlled Substances Act. This request, originally a matter of religious freedom, has developed into a dispute over broad-ranging discovery that strikes at the heart of First Amendment protections, including associational rights. Defendants, representing multiple large federal agencies, have demanded extensive and invasive production of electronically stored information. Their requests extend to nearly every digital record within AYA's possession—communications, membership lists, donor details, and anything else they perceive as relevant, regardless of actual necessity or narrower alternatives. Such demands not only create overwhelming burdens but also threaten the private, sacred nature of AYA's religious association. Disclosing personal or institutional data about sincere religious adherents to law enforcement fosters an immediate chilling effect.

We respectfully request that this Court issue a protective order for three principal reasons: (1) Defendants' demands fail strict or exacting scrutiny, as they infringe protected First Amendment interests without a showing that the government has a compelling interest pursued through narrowly tailored means; and (3) the requests are disproportionate to the needs of this case, given the statutory and constitutional issues at stake; (2) the demands impose an undue burden and cost on Plaintiffs, who have limited legal and financial resources to manage large-scale ESI production.

### II.    PROCEDURAL FACTS

Plaintiffs consistently objected, from their first formal responses to written discovery, that such inquiries infringed their First Amendment rights. They explained that forcing them to reveal private or sensitive details about membership, internal communications, and organizational strategy would chill associates' free exercise of religion and freedom of association. The Court issued an order on February 22, 2024, compelling Plaintiffs to provide full responses by March 8, 2024. Plaintiffs immediately sought appellate review. Recognizing the constitutional weight of these First Amendment issues, the Court stayed the entire matter

on March 20, 2024, pending the Ninth Circuit's review. On September 13, 2024, the Ninth Circuit denied Plaintiffs' mandamus request; soon thereafter, on September 25, 2024, this Court lifted the stay. Plaintiffs then filed a Motion to Stay, expressing the intention to pursue a petition for writ of certiorari to the U.S. Supreme Court. That petition was filed on November 8, 2024. In December 2024, the Court noted that these associational privacy matters deserved direct judicial scrutiny, rather than further procedural delays. The Court ordered Plaintiffs to produce a categorical privilege log by January 3, 2025, with supporting declarations to substantiate the claim that the withheld material deserved First Amendment protection. Plaintiffs complied. However, Defendants insisted the log was incomplete or deficient. The parties attempted to resolve these disputes through a meet-and-confer process, but disagreements persisted. In January and February 2025, Defendants threatened to file motions to compel on the privilege issues. Plaintiffs responded by seeking additional time to address the alleged deficiencies.

These disputes have centered on whether Plaintiffs must identify, in detail, each withheld document, even if doing so would itself reveal sensitive information about religious beliefs, donors, or internal governance. Plaintiffs argue that such forced disclosure is precisely the harm they are trying to avoid, because it would deter membership and hamper their organization. Throughout this period, Defendants have maintained that they require "full" discovery of AYA's internal communications and membership data to assess sincerity, organizational structure, safety, and other topics purportedly relevant to Plaintiffs' RFRA claim. Plaintiffs contend that Defendants' demands go well beyond any legitimate need and effectively punish them for asserting a religious exemption.

Given these developments, Plaintiffs present this Motion for Protective Order. Because the scope of Defendants' demands threatens irreparable harm to First Amendment freedoms, Plaintiffs seek an evidentiary hearing at which Defendants must demonstrate a compelling interest and narrow tailoring, consistent with exacting scrutiny standards. Plaintiffs stand ready to produce relevant information in a more circumscribed fashion that respects both legitimate government interests and fundamental constitutional rights.

### III.    RULE 26 EMPOWERS THE COURT TO GRANT A PROTECTIVE ORDER AND CONTROL THE SCOPE OF DISCOVERY

Rule 26 establishes clear limits on discovery to prevent undue burden, expense, and constitutional infringements. Under Rule 26(b)(1), discovery is confined to nonprivileged, relevant, and proportional matters. Courts have broad discretion under Rule 26(c) to issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Lighthouse Res., Inc. v. Inslee*, No. 3:18-CV-05005-RJB, 2018 U.S. Dist. LEXIS 127064, at *7-8 (W.D. Wash. July 30, 2018) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). The party seeking protection bears the burden of demonstrating specific prejudice or harm if relief is not granted. *Id.* (citing *Phillips v. GMC*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)).

### A.    THE COURT MAY ISSUE A PROTECTIVE ORDER UNDER F.R.CIV.P. 26(B)(C)(III) TO PREVENT DISCOVERY VIOLATIVE OF FIRST AMENDMENT PRIVILEGE

Courts in this Circuit treat the First Amendment associational privilege as a critical safeguard against overreaching discovery. Under Ninth Circuit standards, litigants asserting this privilege must first show a "prima facie" case that disclosure will cause a chilling effect or harm to members' freedom of association. Once they make that showing, the burden shifts to the requesting party to justify the intrusion by establishing a compelling governmental interest and the need for such disclosure as narrowly tailored to achieve that interest.

In *Lighthouse Res., Inc.*, the court reiterated the principle that the party seeking a protective order must demonstrate specific harm. Plaintiffs here have done so: they have explained how revealing member and donor identities, plus private communications about theology and religious ceremonies, would inhibit religious exercise. Donors and members, having seen the government already seize sacramental shipments, understandably fear further investigation, harassment, or even criminal prosecution. Under *Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2009), and *NAACP v. Alabama*, 357 U.S. 449 (1958), forcing an organization to reveal donor and membership data can inflict irreparable harm upon freedom of association.

### B. THE COURT MAY ISSUE A PROTECTIVE ORDER ON THE GROUNDS THAT ELECTRONICALLY STORED INFORMATION ("ESI") IS NOT REASONABLY ACCESSIBLE BECAUSE OF UNDUE BURDEN OR COST

Under Rule 26(b)(2)(B), a party that establishes that requested ESI is not reasonably accessible for expense or burden, the Court may issue a protective order under Rule 26(b)(2)(C), and impose reasonable limitations on the discovery. Defendants' overbroad ESI requests impose significant financial and logistical burdens on Plaintiffs. See Melissa Dean Declaration ("Dean Decl.") ¶¶ 4-7. Human-powered document review is labor intensive and time consuming. A paralegal required 18 months to summarize just 60,000 pages, working five hours a day, five days a week. See Tara Carreon Declaration ("T. Carreon Decl.") ¶ 6. Without modern software or ESI protocol, reviewing the vast volume of ESI demanded is inherently labor-intensive, costly and detail oriented. Dean Decl. ¶¶ 4, 6–7; see also Stanley Decl. ¶¶ 12–15. Plaintiffs have only two attorneys and no legal support staff. Dean Decl. ¶ 5; Stanley Decl. ¶¶ 7–9, 12–15. Accordingly, a protective order to regulate the time and expense of ESI discovery is warranted.

#### 1. A Protective Order is Necessary to Prevent Discovery from Becoming a Tool of Financial Coercion

Defendants' discovery demands encompass over 100,000 pages—enough, if printed on bond paper, to form a 36-foot stack, towering as high as a three-story building. Stanley Decl. ¶ 9. Forcing Plaintiffs to bear the monthly costs of ESI software and attorney time for an unmanageable review is precisely the financial coercion Rule 26 seeks to prevent. Stanley Decl. ¶ 8, 11–17; Dean Decl. ¶ 4–6. Under Rule 26(b)(1)(iii), courts are to ensure that discovery is proportional, fair, and not oppressive, particularly when one party lacks the resources to withstand extensive and burdensome discovery demands. The Advisory Committee's 1983 amendments to Rule 26 urged the courts to evaluate financial disparities between parties and prevent discovery from becoming a "war of attrition" or a coercive tactic designed to force an opponent into submission. Courts have broad discretion to prevent abusive litigation strategies. *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 602 (D. Nev. 2016).

Well-resourced parties like the federal government can leverage discovery to exhaust financially weaker opponents, a tactic Defendants appear to have explicitly embraced, stating to the Court: *"If the demands of discovery in this case are proving to be too taxing or time-intensive, Plaintiffs may dismiss this lawsuit or hire additional counsel beyond the second attorney retained last month."* Dkt. 277, at 17, Ex. 7. The Court should intervene by issuing a protective order, ensuring that discovery remains fair, proportional, and consistent with the drafter's intent.

### 2. The Court Should Consider Public Policy Considerations of this RFRA Action, Including Social Benefit Generated by Plaintiffs that Could be Disrupted by a Disproportionate ESI Production

When evaluating relief under Rule 26(b)(1)(iii), the drafters further emphasized that courts must consider not only economic limitations, but also the philosophic, social, and institutional significance of the substantive issues at stake. Fed. R. Civ. P. 26 Advisory Committee's Note (1983 Amendment). The discovery rules acknowledge that certain cases—particularly those involving free speech, association and religious freedom—carry consequences far beyond their monetary value. Fed. R. Civ. P. 26 Advisory Committee's Note (2015 Amendment).

Many people turn to AYA and Mr. Stanley for spiritual guidance, emotional healing, and community support. Ex. 2-1 ¶ 1–23; Ex. 2-2 ¶ 1–23; Ex. 3 ¶ 1–12; Ex. 4 ¶ 1–13; Goldman Decl. ¶ 16–19, 21. Disrupting these sacred practices would have severe social consequences, depriving individuals of a faith community and a religious framework that has brought them solace, healing, and meaning. Ex. 2-1 ¶ 24–29; Ex. 2-2 ¶ 24–31; Ex. 3 ¶ 13–20; Ex. 4 ¶ 14–21. A burdensome and invasive discovery process threatens to dismantle not only Plaintiffs' ability to practice their religion freely but also the ability of their congregation to seek spiritual communion without fear of government persecution, surveillance and arrest. Ex. 2-1 ¶ 25–29; Ex. 2–2 ¶ 25–31; Ex. 3 ¶ 12–15, 19–20; Ex. 4 ¶ 17–21; Goldman Decl. ¶11–13. Defendants' sweeping discovery must be cabined to provide justice in this case and guidance for future RFRA cases involving visionary churches. As discovery disputes in this context implicate the

First, Fourth, and Fifth Amendments, clear judicial oversight is essential. Ex. 2-1 ¶ 25–29; Ex. 2-2 ¶ 25–31; Ex. 3 ¶ 12–15, 19–20; Ex. 4 ¶ 17–21; Goldman Decl. ¶ 4–7, 11–13.

### 3. The Court Should Apply the Standards in An Even-Handed Manner that Will Prevent Use of Discovery to Wage a War of Attrition or as a Device to Coerce a Party

Defendants desire unrestricted access to Plaintiffs' entire document pool, but a district court is not required to permit requesting parties to engage in a "fishing expedition" in the hope of supporting their claim. *Begay v. United States*, No. CIV 15-0358 JB/SCY, 2018 U.S. Dist. LEXIS 10520, at *12 (D.N.M. Jan. 23, 2018).

### C. THE COURT MUST ISSUE A PROTECTIVE ORDER TO PREVENT DISCOVERY OF INFORMATION AND DOCUMENTS OUTSIDE THE SCOPE PERMITTED BY RULE 26(B)(1)

Rule 26(b)(1) explicitly limits discovery to matters that are nonprivileged, relevant, and proportional to the needs of the case. When a party seeks discovery that exceeds these limitations, Rule 26(c)(3) mandates that the Court must intervene—either on motion or *sua sponte*—to limit or restrict such discovery. Here, Defendants' overbroad and intrusive discovery requests violate these fundamental principles. As demonstrated above, their demands: [1] target constitutionally protected First Amendment activities, creating a chilling effect on religious freedom[1] [2] [2] impose disproportionate financial and logistical burdens on a financially weaker litigant[3] and [3] are designed to coerce Plaintiffs into abandoning their claims rather than seeking genuinely relevant information.[4] The cumulative effect of these tactics places this discovery squarely outside the scope of Rule 26(b)(1). Under Rule 26(c)(3), the Court must act to prevent discovery abuses that extend beyond legally permissible boundaries.

## IV.   DEFENDANTS' DISCOVERY DEMANDS FAIL EXACTING SCRUTINY

---

[1] **"…people do not come to Church to be investigated, and it is clear that being a member of a church like AYA could lead to being investigated, arrested and prosecuted... it is very difficult to keep members in a church that has been the subject of seizures of sacraments…"** Goldman Decl. ¶11–13.
[2] Stanley Decl. ¶ 20; C. Carreon Decl. ¶ 5; Ex. 2-1 ¶ 23; Ex. 2-2 ¶ 23; Ex. 3 ¶ 24; Ex. 4 ¶ 25
[3] Stanley Decl. ¶ 8–9, 14; C. Carreon Decl. ¶ 6–7; T. Carreon Decl. ¶ 1, 4, 6; Dean Decl. ¶ 6, 8–9.
[4] Stanley Decl. ¶ 7–8, 12; C. Carreon Decl. ¶ 13–14; Dean Decl. ¶ 6, 8–9.

Courts in the Ninth Circuit follow a two-step analysis in civil discovery disputes implicating the First Amendment. The party asserting the privilege must establish a prima facie case that compliance would result in chilling effects on association, deterring members from participation, or causing other identifiable harm to protected religious activity. *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO, 2015 U.S. Dist. LEXIS 192788, at *6-7 (N.D. Cal. Nov. 20, 2015), quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010), quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 463, 78 S. Ct. 1163, 1172 (1958). If that showing is made, the burden shifts to Defendants to demonstrate that the requested information is (1) rationally related to a compelling governmental interest and (2) the least restrictive means to achieve that interest. *Id.*

Under *Perry,* courts must ensure that discovery impacting associational privacy is only permitted after a careful, rigorous assessment of the need for such discovery. "To conduct that evaluation, it is necessary to identify the kinds of information and documents that the First Amendment privilege might (and might not) cover …***The existence of a prima facie case turns … on whether disclosure of the information will have a deterrent effect on the exercise of protected activities.***" *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 512-13 (D. Ariz. 2023)(emphasis added).

Defendants' twelve requests for production and twelve interrogatories (set forth verbatim in Ex. 10-1, Ex. 3) fail the Perry test, RFRA strict scrutiny, and Rule 26's limitations on permissible discovery. Ex. 10-2; Ex. 10-4. Plaintiffs' Privilege Log (filed under seal) establishes Plaintiffs' associational privacy claims. Dkt. 285-1, Ex. 1. Complying with these demands—which lack time limits or redactions to protect associational privacy as required by Order Dkt. 220—would effectively require Plaintiffs to produce their entire corpus of emails. Ex. 1. Such mass collection constitutes ESI discovery that can only be meaningfully reviewed through search technology using a hosted review platform like DISCO, which Plaintiffs license for $750 per month. Ex. 6-1; Dean Decl. ¶ 5–6. While the platform was not in place when

Plaintiffs' Privilege Log was produced to Defendants (Ex. 6-4), it is now critical for processing and reviewing ESI in this case (Ex. 6-3).

### A. PLAINTIFFS HAVE SHOWN THAT DISCLOSURE WOULD CAUSE IRREPARABLE HARM TO AYA'S ORGANIZATIONAL FABRIC

A declaration stating, "that producing these communications will chill associational rights [is] sufficient to establish this prima facie case because *it is common sense that forcing [the responding party] to produce these materials will chill the willingness of members of these industry groups to have candid communications with each other [even though] commercial speech is entitled to less protection than ... religious ... speech....*" *LeGrand v. Abbott Labs.*, No. 22-cv-05815-TSH, 2024 U.S. Dist. LEXIS 184790, at *3 (N.D. Cal. Oct. 9, 2024), citing *In re Anonymous Online Speakers*, 661 F.ed 1168, 1177 (9th Cir. 2011). The Declaration of Mr. Stanley, filed under seal in support of the Privilege Log (Dkt. 285-2), the Supplemental Stanley Declaration filed with this motion, and the declarations of Taylor Cox (Ex. 2-1 ¶ 28), Huy Hunh (Ex. 3 ¶ 20), Rodney Ziebol (Ex. 4 ¶ 21), Mr. Garcia (Dkt. 53-6) and Mr. Goldman (148-2) each establish that Defendants' discovery demands threaten the very existence of AYA as a religious organization.

### B. DEFENDANTS MUST JUSTIFY THEIR SWEEPING DISCLOSURE DEMANDS WITH EVIDENCE OF A COMPELLING GOVERNMENT INTEREST

Once a prima facie First Amendment infringement is established, the burden shifts to Defendants to justify their discovery demands. *LeGrand v. Abbott*, 2024 U.S. Dist. LEXIS 184790, at *3. Defendants have failed to show that their requests are necessary or narrowly tailored. In response to *O Centro*, the DEA issued their RFRA Guidelines requiring petitioners to demonstrate application of the CSA imposes a substantial burden on religious exercise. 2009 RFRA Guidelines, Dkt. 122-2. This DEA "exemption process" focuses on the nature of the religion and specifics of controlled substance use—not the mass collection of religious participant data or private religious communications. 2020 RFRA Guidelines, Dkt. 122-4.

Defendants' own admissions confirm they exercised enforcement authority over Plaintiffs' religious sacrament, seizing and destroying Ayahuasca on October 14, 2020, without assessing religious sincerity. Defendants' Answer, ¶ 40, Dkt. 189. Now, Defendants claim they

need further discovery to evaluate sincerity, safety, or legality—yet they previously enforced the law without making those determinations. If sincerity or compliance were truly at issue, Defendants would have conducted that evaluation before destroying the sacrament when Plaintiffs objected to the seizure and sought its return. Dkt. 189 ¶ 42–43. Their demand for extensive discovery is not about assessing Plaintiffs' religious exercise before enforcement but rather about retroactively justifying their prior actions.

In May 2024, a GAO report ("GAO-24-106630") was published confirming that the DEA lacks any defined standard for assessing religious sincerity and has never granted a single RFRA petition in eight years.[5] See GAO-24-106630 at 38-39. The DEA accepted each of the four recommendations to reform the "exemption process," including that the DEA establish timelines for processing exemption petitions. Id. at 45. Despite this, Defendants insist Plaintiffs must apply for an exemption before asserting their rights—while admitting the DEA has never granted one. Dkt. 189 ¶¶ 67–68. Defendants further admit to seizing and destroying Plaintiffs' Ayahuasca (Dkt. 189 ¶¶ 40, 42) but deny that the CSA has been enforced against them—an admission that directly contradicts their actions.

If the DEA has never granted an exemption, Defendants cannot credibly claim that their discovery demands are justified by an interest in evaluating sincerity. If no functioning RFRA exemption process exists, Defendants' discovery demands serve no legitimate purpose and fail both exacting and strict scrutiny. Their discovery requests are nothing more than an attempt to retroactively rationalize their enforcement actions, rather than a legitimate legal inquiry. If the DEA itself lacks a standard for determining religious sincerity, Defendants cannot demand privileged religious materials on that very issue.

### C. DEFENDANTS HAVE STONEWALLED DISCOVERY, CONCEALING THEIR GOVERNMENT INTEREST

---

[5] Drug Control: DEA Should Improve Its Religious Exemptions Petition Process for Psilocybin (Mushrooms) and Other Controlled Substances | U.S. GAO

A party asserting affirmative defenses must have a Rule 11 basis in law or fact. *Firetrace USA, LLC v. Jesclard*, No. CV-07-2001-PHX-ROS, 2009 U.S. Dist. LEXIS 2972, at *6 (D. Ariz. Jan. 9, 2009). Defendants refuse to disclose their criteria for assessing religious sincerity under RFRA, mirroring GAO-24-106630, which confirms the DEA's lack of clear standards. Despite never granting a religious exemption (Dkt. 189 ¶¶ 67–68), the DEA imposes invasive demands on Plaintiffs while withholding its own positions (Dean Decl. ¶¶ 7, 9), reflecting its broader failure to establish a legitimate framework for religious exemption requests.

Defendants previously assured this Court that the DEA was revising its 2009 RFRA guidance, prompting a stay in reliance on that representation. (Brinks Decl., ¶¶ 9–10, Dkt. 19). Yet, the GAO report contradicts this claim, confirming the DEA has made no meaningful reforms in revising its standards. (Compare RFRA Guidelines, Dkt. 122-2, 122-3, 122-4, which reflect only minor revisions.) Although GAO-24-106630 was published shortly after the Discovery Order (Dkt. 220), Defendants steadfastly refuse to narrow their discovery requests despite the report exposing the true nature of the DEA's "RFRA Guidelines." The DEA is not just stuck in bureaucratic inertia—it has brazenly failed to uphold commitments made to this Court in active litigation without so much as a "by your leave." Defendants conceal their legal standard for sincerity while demanding unfettered access to Plaintiffs' internal religious records. Even after the GAO report exposed the flaws in their exemption process, Defendants continue stonewalling while aggressively pursuing discovery against Plaintiffs. The DEA has yet to produce a single document explaining its process (Exs. 11, 13), has provided evasive and incomplete discovery responses (Dkt. 260, Ex. 12-1; Dkt. 273-3, Ex. 12-2; Exs. 14-1, 14-2, 14-3), refused to respond to motions or participate in joint statement negotiations regarding any issues raised by Plaintiffs regarding the associational privacy claim (Exs. 13-3, 13-4; Ex. 14-9), and has refused to designate a deponent. (Ex. 13-3; Dkt. 265; Dkt. 270). Defendants shield their own decision-making behind a wall of silence while imposing intrusive and disproportionate discovery demands on Plaintiffs. Their refusal to define their own legal standard makes their insistence on the mass collection of privileged religious communications pretextual, baseless, and unjustifiable under exacting scrutiny. Defendants cannot articulate a

standard for assessing sincerity, nor can they identify a "governmental interest." Accordingly, their demands fail

### D. The Defendants' Disclosure Demands Cannot be Deemed Narrowly Tailored, as They Encompass all of AYA's Records

RFRA applies to all religious followers when the government infringes on their religious exercise. *Coronel v. Paul*, 316 F. Supp. 2d 868, 879 (D. Ariz. 2004). A substantial burden occurs when the government prevents adherents from engaging in conduct central to their beliefs. *Id.* at 78. Yet, Defendants seek a staggering volume of ESI with no clear relevance to any legal claim or defense.

Defendants seized and destroyed Plaintiffs' sacrament without assessing religious sincerity (Dkt. 189 ¶¶ 40–43), proving that sincerity was never a genuine concern—only a post hoc justification. Now, they demand invasive discovery into private religious communications, member identities, medical records, confessions, and sacred practices (Dkt. 219), amounting to an unprecedented government intrusion into religious doctrine and membership. Such demands violate core First Amendment protections under Perry and NAACP, and the Supreme Court has never sanctioned such sweeping interference. Defendants also contradict themselves: While admitting to seizing Plaintiffs' sacrament (Dkt. 189 ¶¶ 40, 42), they deny burdening religious exercise, arguing Plaintiffs' continued worship negates harm (Dkt. 189 ¶¶ 52, 92). But constitutional violations are not excused simply because their victims endure them. Defendants' discovery demands are not narrowly tailored, lack a compelling interest, and expose their enforcement actions as assumption-driven rather than legally or factually justified—revealing their discovery requests as a pretext for harassment, not legitimate inquiry.

## V. DISCLOSURE TO DEFENDANTS HARMS ASSOCIATIONAL PRIVACY, A PROTECTIVE ORDER ALLOWING DEFENDANTS ACCESS DOES NOT NULLIFY PLAINTIFFS' ASSOCIATIONAL PRIVACY PRIVILEGE

The Supreme Court has long recognized the vital relationship between freedom of association and privacy in one's associations. *NAACP v. Alabama*, 357 U.S. 449, 460, 462 (1958). Forced disclosure alone—regardless of whether information is further disseminated—

can inflict irreparable harm by chilling participation and deterring association. *Id.*; *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960).

Here, merely disclosing Plaintiffs' confidential religious records—even under a protective order—would immediately harm Plaintiffs' religious practice by deterring members from participation. Defendants' own admissions reinforce this concern: they have seized and destroyed Plaintiffs' sacrament, investigated members, and warned counsel about religious use of plant medicines—yet deny burdening religious exercise. Dkt. 189 ¶ 92. These contradictions expose their discovery demands as pretextual harassment rather than legitimate inquiry. Exs. 2-1 ¶¶ 25–31; 2-2 ¶¶ 25–31; Ex. 3 ¶¶ 12–22; Ex. 4 ¶¶ 12–23; Goldman Decl. ¶¶ 11–13.

Courts have repeatedly held that compelled disclosure of an association's membership lists deters participation and chills advocacy. *NAACP*, 357 U.S. at 462-63; *Bates*, 361 U.S. at 523. Even without particularized evidence, it is self-evident that broad disclosure requests infringe on First Amendment rights. *Perry*, 591 F.3d 1147 at 1163. The burden to establish harm is light—it need only show "some probability" that disclosure will chill free exercise. *Id.*; *Christ Covenant*, 2008 U.S. Dist. LEXIS 49483, at 17. The declarations of Mr. Stanley and AYA members confirm that disclosure would discourage religious association and inhibit internal church communications essential to effective religious expression. Exs. 2-1 ¶¶ 25–29; 2-2 ¶¶ 25–31; Ex. 3 ¶¶ 12–15, 19–20; Ex. 4 ¶¶ 17–21. Despite well-established precedent, Defendants refuse to justify their sweeping discovery demands, and a protective order must issue.

### D. THE GOVERNMENT HAS FAILED TO ADDRESS RISKS OF STORING SENSITIVE RELIGIOUS DATA AND PERSONAL INFORMATION OR PROVIDE PROOF OF THE SECURITY OF AYA MEMBER DATA

The federal government has repeatedly been the target of data breaches, raising significant concerns about the security of sensitive religious information. In *AFP v. Harris*, the Ninth Circuit dismissed fears of cybersecurity failures as too speculative to justify blocking donor disclosure. *Ams. For Prosperity Found. v. Harris*, 809 F.3d 536, 541 (9th Cir. 2015). However, the Supreme Court rejected that reasoning, finding that even the risk of exposure creates a chilling effect and that the government's assurances of confidentiality "ring hollow." *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595, 616 n.*, 141 S. Ct. 2373, 2388 (2021) (quoting

*Thomas More Law Center v. Harris*, 2016 U.S. Dist. LEXIS 158851, 2016 WL 6781090, *5 (CD Cal., Nov. 16, 2016)).

Here, the DEA offers no concrete protections for the sensitive religious information it seeks. Plaintiffs are entitled to know how their data will be secured and whether those protections are adequate. Given that this information would be shared with the DEA, DHS, and CBP, the risk of exposure alone is enough to undermine the trust and confidentiality essential to AYA's religious practice. As Plaintiffs have consistently argued, such disclosure would destroy AYA's ability to function, making the government's discovery demands not only excessive but potentially catastrophic to Plaintiffs' religious community.

Before acquiring a trove of personal information revealing the identities, visionary religious activities, donations, and ceremonial attendance of thousands of AYA members and donors, the federal government—that has been the target of data breaches[6]—must explain how it will keep that data safe.[7] The Defendants cannot do so, because the Department of Justice has backed the new administration's claim that "DOGE" is entitled to read all data in the possession of any government agency.[8] Plaintiffs are entitled to learn in discovery how Defendants would keep DOGE from accessing data collected by Defendants. The Court must probe DEA's promises to keep AYA member and donor data safe, and the DOJ's representations, by requiring proof of security at an evidentiary hearing.

## VI.    DEFENDANTS' UNLIMITED ESI DEMANDS IMPOSE AN UNDUE BURDEN

---

[6] Sanger, David E.; Perlroth, Nicole; Schmitt, Eric (December 15, 2020). "Scope of Russian Hack Becomes Clear: Multiple U.S. Agencies Were Hit", https://web.archive.org/web/20201218062201/https://www.nytimes.com/2020/12/14/us/politics/russia-hack-nsa-homeland-security-pentagon.html

[7] *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 n.*, 141 S. Ct. 2373, 2388 (2021), quoting *Thomas More Law Center v. Harris*, 2016 U.S. Dist. LEXIS 158851, 2016 WL 6781090, *5 (CD Cal., Nov. 16, 2016)(reversing Ninth Circuit finding that donors and potential donors unreasonably feared disclosure).

[8] Declaration of Adam Ramada describing DOGE access to Dept. of Education / IRS records at https://storage.courtlistener.com/recap/gov.uscourts.mdd.576070/gov.uscourts.mdd.576070.27.5_1.pdf; "DOGE Gains Access to Confidential Records on Housing Discrimination, Medical Details—Even Domestic Violence" https://www.propublica.org/article/doge-elon-musk-hud-housing-discrimination-privacy-domestic-violence; "DOJ agrees to proposed order to limit DOGE's access to Treasury data" https://abcnews.go.com/US/judge-weigh-block-doge-accessing-treasury-department-records/story?id=118498817

The 2015 amendment to Rule 26(b)(1) reinforced the principle that discovery must be proportional to the needs of the case, particularly given the explosion of electronically stored information (ESI). Fed. R. Civ. P. 26(b) advisory committee's note (2015). Courts emphasize that cooperation in ESI discovery is essential to prevent unnecessary disputes. *Doe v. Heritage Acad., Inc.*, No. CV-16-03001-PHX-SPL, 2017 U.S. Dist. LEXIS 233970, at \*40-41 (D. Ariz. June 8, 2017). Courts recognize that e-discovery imposes significant burdens, requiring parties to consider cost-effective methods to minimize undue expense. *Begay*, U.S. Dist. LEXIS 10520, at \*25 (D.N.M. Jan. 23, 2018). Unilateral searches and delayed objections create inefficiencies and escalate litigation. *SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, No. CV-21-01076-PHX-JAT, 2023 U.S. Dist. LEXIS 47718, at \*3-5 (D. Ariz. Mar. 21, 2023). Courts stress that parties must confer on ESI search parameters, including terms and custodians, to streamline discovery. *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006).

Defendants' broad, unfocused demands impose severe financial and logistical burdens on Plaintiffs, who are already paying $750 per month for a hosted review platform and have had to retain additional legal support for document review. Stanley Decl. ¶¶ 9, 13–15; Dean Decl. ¶ 6; C. Carreon Decl. ¶ 7. These costs continue to mount, yet Defendants have failed to designate search terms, limit their requests by time or scope, or propose a reasonable ESI protocol – despite Plaintiffs proposing Sedona Conference standards and model ESI protocols from other Ninth Circuit courts. Stanley Decl. ¶¶ 10–18; Dean Decl. ¶¶ 4–9; C. Carreon Decl. ¶¶ 2–5, 10–13; Ex. 8-4; Exs. 14-5; 14-6; 14-7; Ex. 9. This lack of cooperation has exponentially increased the burden on Plaintiffs, forcing them to conduct a massive, unfocused review process at significant cost. Courts do not grant discovery requests simply because a party has greater financial resources, nor do they deny them solely due to financial hardship. *Begay*, U.S. Dist. LEXIS 10520, at \*25 (D.N.M. Jan. 23, 2018). However, where a party's demands are disproportionate, the Court must intervene to ensure fairness and prevent abusive discovery tactics.

As the Court noted in *Kinnee*, "Defendants' failure to provide compliant initial disclosures creates an impediment to the parties' ability to engage in a meaningful discussion and, ideally, agreement regarding ESI." *Kinnee v. Tei Biosciences Inc.*, No. 22-cv-604-JLS-DDL,

2024 U.S. Dist. LEXIS 212427, at *5-6 (S.D. Cal. Nov. 21, 2024). Similarly, Defendants have refused to respond to contention interrogatories or update their Rule 26(a) disclosures, further obstructing the development of a functional ESI protocol. Ex. 14. If Defendants had a legitimate need for this information, they would have engaged in good faith negotiations rather than imposing excessive and unreasonable discovery costs. Their refusal to do so demonstrates that their true intent is to drive up litigation costs, not obtain relevant evidence.

### A. THE STANLEY DECLARATION ESTABLISHES UNDUE BURDEN

Courts assess both financial and resource limitations when determining whether a discovery request is unduly burdensome. Fed. R. Civ. P. 26 advisory committee's note (2015). That an entity maintains electronic files does not eliminate the burden of disclosure. Briggs v. Adel, No. CV-18-02684-PHX-EJM, 2020 U.S. Dist. LEXIS 124514, at 36 (D. Ariz. July 14, 2020). Like the nonprofit in *Briggs*, Plaintiffs are a small religious nonprofit with limited resources and a litigation team of only two attorneys. Stanley Decl. ¶¶ 9, 14–15; Dean Decl. ¶¶ 5–6. While mass document review is expected in corporate mass tort cases, imposing such costs on a religious freedom case is unprecedented and an unreasonable burden. T. Carreon Decl. ¶¶ 3–6.

### B. THE DEAN DECLARATION ESTABLISHES EXCESSIVE COSTS

E-discovery is not automatically reasonable or accessible, as production of relevant ESI can be extremely costly and burdensome. Fed. R. Civ. P. 26(b)(2)(C); *Briggs v. Adel*, 2020 U.S. Dist. LEXIS 124514, at *37 (D. Ariz. July 14, 2020). Courts consider not just financial burden, but also whether requests cause annoyance, embarrassment, or oppression. Fed. R. Civ. P. 26(c)(1); *Briggs*, at *35-36. Defendants' overbroad and unrestricted demands forced Plaintiffs to incur the cost of an additional attorney to review and redact documents despite having limited financial means and resources. Dean Decl. ¶¶ 5–6. Even with an ESI protocol, Defendants have failed to limit their requests by time or scope, making compliance unreasonably expensive and burdensome. Dean Decl. ¶¶ 3–5.

### C. THE DEFENDANTS' POORLY DEMONSTRATED NEED FOR THE INFORMATION VITIATES THEIR CLAIMS OF RELEVANCE

Courts reject sweeping, unrestricted discovery demands without appropriate limitations. *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003). Defendants' failure to

meet and confer in good faith on associational privacy concerns or provide supplemental responses to written discovery underscores their lack of legitimate interest in obtaining relevant evidence. They demand broad, intrusive ESI production while refusing to engage in basic discovery obligations—a clear abuse of process. Dean Decl. ¶¶ 8–9. Good faith is required in discovery. Parties must engage honestly, address objections meaningfully, and avoid using discovery as a weapon. *Whiting v. Hogan*, 2013 U.S. Dist. LEXIS 35381, at 2 (D. Ariz. Mar. 14, 2013); *Briggs*, 2020 U.S. Dist. LEXIS 124514, at *12-13 (D. Ariz. 2020).

Yet, Defendants stonewall meet-and-confer efforts, ignore their duty to confer on associational privacy, and refuse to provide supplemental responses—while aggressively pursuing burdensome discovery against Plaintiffs. Defendants simultaneously argue that Plaintiffs lack standing while demanding broad, costly ESI production, revealing contradictions in their position. Dkt. 189 ¶ 25; C. Carreon Decl. ¶¶ 2–6.

If Defendants had any legitimate need for the requested information, they would have engaged in a meaningful dialogue to resolve disputes. Instead, their refusal to cooperate, combined with the disproportionate nature of their demands suggests an intent to harass rather than obtain relevant evidence, further warranting a protective order.

### D. THE BALANCE OF THE EQUITIES COMPELS ISSUANCE OF A PROTECTIVE ORDER

Courts weigh whether discovery is necessary and proportionate to resolving issues. *Briggs,* 2020 U.S. Dist. LEXIS 124514, at *30-31 (D. Ariz. July 14, 2020). Plaintiffs have already provided Defendants with extensive discovery, including: eighteen (18) sworn declarations; Core church operational documents; nine (9) individuals for deposition, with 4 submitting detailed declarations; and Substantial responses to 69 interrogatories. Dean Decl. ¶ 2; Ex. 15–17). Yet, Defendants continue refusing to confer in good faith and maintain that they have no obligation to address associational privacy concerns. Dean Decl. ¶¶ 8-9. Given this one-sided approach, a protective order is necessary to prevent further abuse of the discovery process.

## VII. AN EVIDENTIARY HEARING IS NECESSARY TO APPLY EXACTING SCRUTINY AND EVALUATE THE GOVERNMENT'S CLAIMED INTEREST

In *NAACP*, *Perry, Mi Familia,* and *Americans for Prosperity v. Harris*, the government provided witness testimony at a hearing to justify its claimed interest. Here, Defendants refuse to designate a deponent and have provided evasive, incomplete discovery responses—avoiding accountability while demanding intrusive discovery from Plaintiffs. Defendants assert failure to exhaust administrative remedies as an affirmative defense, yet admit that no entity has ever been granted an exemption under the DEA's RFRA Guidelines. Dkt. 189 ¶ 25. The GAO-24-106630 report confirms that Defendants cannot articulate how they assess religious sincerity. Judge Real conducted an entire bench trial with live witnesses to determine the associational privacy claims, taking testimony from political donors to establish injury from exposure, and employees of California Department of Justice to explain the governmental interest involved. *Americans for Prosperity v. Harris,* 182 F. Supp. 3d 1049 (C.D. Cal. 2016). Plaintiffs are entitled to no less solemn a determination of their associational privacy claims; thus, this Court should issue the proposed order submitted by Plaintiffs (Dkt. 282-1) requiring Defendants to designate a witness to testify concerning the matters set forth in the notice of deposition (Dkt. 260). Further, the Court must issue the Order to Show cause prayed for herein, because the Defendants have declared their intention to boycott this motion, and remain silent unless ordered to do otherwise.

## VIII. A PROTECTIVE ORDER MUST ISSUE TO PREVENT DISPROPORTIONATE DISCOVERY

Under Rule 26(c), the Court must issue a protective order—either *sua sponte* or on motion—when discovery exceed the permissible scope of Rule (B)(1).

Defendants claim that Plaintiffs lack standing, failed to state a claim, and did not exhaust administrative remedies—yet they demand sweeping discovery into Plaintiffs' religious practices, membership, and communications. Dkt. 189 ¶ 25. If these claims were truly procedurally defective, Defendants would not need such intrusive discovery. Courts require parties to explain how requested information is relevant and ensure discovery is proportional

to the case's needs. *Wright v. S. Ariz. Child.'s Advocacy Ctr.*, No. CV-21-00257-TUC-JGZ, 2023 U.S. Dist. LEXIS 90238, at *5-6 (D. Ariz. May 23, 2023). Defendants' contradictory positions—asserting Plaintiffs' case is legally insufficient while demanding expansive discovery—confirm their discovery requests are abusive, not proportional. Rule 26(b)(1) requires limiting discovery to avoid harassment and undue burden.

Defendants' disproportionate, contradictory, and unjustified demands warrant judicial intervention. A protective order is necessary to prevent further discovery abuse, protect Plaintiffs' associational privacy, and ensure fairness in the litigation process.

## IX.    CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the court order the Defendants to respond to the motion for protective order by issuing the Order to Show Cause, ordering the DEA to designate a witness to testify pursuant to Rule 30(b)(6), holding the requested evidentiary hearing, and granting a protective order in the form submitted herewith.

Dated: March 5, 2025                     MELISSA DEAN

_____

MELISSA DEAN (FLB #103182)
Attorney for Plaintiffs
Arizona Yagé Assembly,
Winfield Scott Stanley III
*Pro hac vice*