YAAKOV M. ROTH
Acting Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

LISA NEWMAN (TX 24107878)
BONNIE DEVANY (TX 24131173)
CODY T. KNAPP (NY 5715438)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
Email: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly, <br><br> Plaintiffs, <br> v. <br><br> James R. McHenry III, Acting Attorney General of the United States, *et al.*, <br><br> Defendants. | No. 2:20-cv-2373-ROS <br><br> **JOINT STATEMENT ON DISPUTES REGARDING PLAINTIFFS' PRIVILEGE LOG** |

The parties respectfully provide the following joint statement with respect to the deficiencies in Plaintiffs' privilege log, Dkt. 285-1, and accompanying declaration, Dkt 285-2, Defendants' deficiency letter regarding the privilege log is attached at Dkt. 285-3.

### Defendants' General Position Statement

In its December 4, 2024 Order ("Order") directing Plaintiffs to provide Defendants with a privilege log by January 3, 2025, the Court detailed its expectations with respect to that log, including that it "assert[] associational privilege only" and that it "'describe the documents with

sufficient detail so that the other party and court can assess the claim of privilege.'" Dkt. 258 at 11 (quoting *Franco-Gonzalez v. Holder*, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013)). Plaintiffs' privilege log, Dkt. 285-1, and accompanying declaration, Dkt 285-2, are inadequate by this or any applicable standard because it does not describe the documents with sufficient detail to allow the assessment of the privilege, *see* Fed. R. Civ. P. 26(b)(5)(A)(ii), and it plainly does not comply with the Court's Order*, see* Dkt. 258 at 11. As the Court cautioned in the Order, "failure to oblige shall constitute a waiver of the privilege or any objection to the discovery, and Plaintiffs will be ordered to fully comply with the Discovery Order at serious risk of sanction." *Id.* Because Plaintiffs' privilege log does not comply with the Order, Defendants respectfully request that the Court find the associational privilege waived and order Plaintiffs to fully comply with Dkt. 220 and their outstanding discovery obligations.[1]

**Plaintiffs' General Position Statement**:

Plaintiffs' privilege log (Ex. A) and supporting declaration (Ex. B) sufficiently comply with Order Dkt. 258 by asserting associational privilege with necessary context—citing religious freedom and speech to demonstrate the chilling effect of disclosure, as established in *NAACP* and under the *Perry* test. Under Fed. R. Civ. P. 26(b)(5)(A)(ii), a document-by-document log is not required to preserve associational privilege. In *Franco-Gonzalez*,[2] *In re IMPERIAL*,[3] and *Thrasher*[4] a modified approach is acceptable when detailed logging of withheld documents is unduly burdensome and a categorical log includes an aggregate listing of the numbers, time periods, and an affidavit asserting confidentiality. Given the vast volume of documents, a comprehensive log would sweep in irrelevant material and impose unreasonable costs.

---

[1] Plaintiffs' references in Issues 1 and 3 to two declarations that are not being filed with this Statement, and that Defendants had not seen until the evening of March 5, are improper and an attempt to circumvent the 14-line limit for each position statement. Defendants respectfully request that they not be considered part of this Joint Statement.

[2] *Franco-Gonzalez v. Holder*, No. CV 10-2211-DMG (DTBx), 2013 U.S. Dist. LEXIS 186499, at *25-26 (C.D. Cal. May 3, 2013).

[3] *In re IMPERIAL Corp. OF Am. v. SHIELDS*, 174 F.R.D. 475, 479 (S.D. Cal. 1997).

[4] *SEC v. Thrasher*, 92 Civ. 6987 (JFK), 1996 U.S. Dist. LEXIS 3327, at *4-5 (S.D.N.Y. Mar. 19, 1996)

Moreover, Plaintiffs' "beyond the scope" objections to overbroad RFPs are proper, safeguarding sensitive internal deliberations central to their religious activities. Defendants' attempt to force unfettered production disregards these protections and undermines constitutional rights. Plaintiffs respectfully request the Court to adopt a narrowly tailored discovery approach, preserving both procedural fairness and fundamental freedoms.

**ISSUE 1**

**Defendants' Position**:

Plaintiffs admitted that they had not started to collect, let alone review, most potentially responsive documents in this case as of January 3, 2025—16 months after Defendants' discovery requests were issued, 9 months after the substantial completion deadline, and 4 years after Plaintiffs filed this case. Dkt. 285-3 at 2 (detailing counsel's admissions, including that counsel did not know the number of responsive documents that existed). Plaintiffs were required to substantially complete fact discovery by March 2024, but as of January 3, 2025, admittedly had not acquired the necessary "eDiscovery technology" to allow them to "review, organize and catalog" the "vast number of documents falling within the Scope of the Court's Order because" those documents "are too voluminous to review." Dkt 285-2 ¶ 2. It is now clear that Defendants' earlier fears that Plaintiffs were not in a position to substantially complete discovery was accurate. Dkt. 234 at 2 ("Plaintiffs' have not even 'started to collect, let alone review and produce, potentially responsive documents."). Plaintiffs' failure to collect and review potentially responsive documents is a gross violation of their discovery obligations. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 942 (N.D. Ill. 2021).

**Plaintiffs' Position**:

Plaintiff Stanley created and/or received and reviewed virtually all of the documents accounted for in the Privilege Log, and provided accurate responses to Defendants' RFPs. Supp. Stanley Decl. ¶ 7, Dkt. 288-1 When Plaintiffs' counsel articulated these documents are "too voluminous to review," Ms. Dean meant they can't be individually reviewed like a stack of documents sitting on her desk. Reviewing and doing rough summaries of a mere 60,000 pages of documents took a paralegal 18 months, working five hours a day, five days a week. T. Carreon Decl. ¶ 6, Dkt. 288-3 Using the DISCO platform, Plaintiffs can review their document database of at least 115,000 documents, and examine them in the aggregate, using search terms to find relevant

types of documents. eDiscovery requires an ESI agreement to negotiate search terms and specifically disclose claims and defenses, so the other requesting party can formulate search terms; thus, each party searches their own data and produces it in load-ready native file format with all metadata intact.  Supp. Stanley Dec. ¶ 11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUE 2**

**Defendants' Position**:

Plaintiffs cannot assert associational privilege over at least 115,000 documents they admit they have not reviewed. *See* Dkt 285-2 ¶ 2. Whether Stanley was a custodian on virtually all of the documents, *supra* 4, is irrelevant to the sufficiency of the privilege log because Stanley did not review more than 100,000 documents to determine whether they were privileged. It is "not a permissible approach" when producing a privilege log to fail to "review" 61,298 documents "that were potentially responsive to [] discovery requests … let alone conduct any sort of individualized analysis as to whether those documents might be covered by" the associational privilege. *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 523 (D. Ariz. 2023). The court noted that "political parties and other associations" "are not entitled to assert a blanket privilege by virtue of their status as associations." *Id.* at 515. The plaintiff's failure to review and sufficiently detail the documents "ignores the nuanced manner in which the First Amendment privilege operates." *Id.* Whether the privilege log was "invalid" was "not even a close call," and the plaintiff's "failure . . . means [the plaintiff] has not met its burden under the first step of the *Perry* framework." *Id.* Plaintiffs' privilege log should similarly be held invalid.

**Plaintiffs' Position**:

In *Mi Familia Vota v. Fontes*, 344 F.R.D. 496 (D. Ariz. 2023) the Republican Party of Arizona ("RPA") refused to respond to a subpoena, failed to support an associational privacy claim with evidence, was twice ordered to provide a standard (not a categorical) privilege log, and was finally compelled to produce all responsive documents, twenty two months after service of the subpoena.[5] By contrast, Plaintiffs timely produced a categorical privilege log conforming to the format prescribed by *In re Imperial Corp. of Am. v. Shields*, 174 F.R.D. 475, 478-9 (S.D. Cal. 1997), providing: (1) an aggregate listing of the withheld documents, (2) an identification of the time

---

[5] See further analysis at Issue 10, *infra*.

6

periods encompassed by the withheld documents, and (3) an affidavit setting forth the elements of the privilege invoked, in this case, associational privacy. Supp. Stanley Dec. ¶ 19; Stanley Dec. ¶¶ 22, 30, 42-43, 46, 49-50, 52, 54, 56, 78, Dkt. 285-2. Should there be any deficiencies, Plaintiffs seek and should be permitted to provide additional specificity and averments.

**ISSUE 3**

**Defendants' Position**:

Plaintiffs' log identifies 17 categories of documents.  The first 3 categories assert a privilege over approximately 115,000 email communications from email accounts of Stanley, AYA, and Justin Taylor. Dkt 285-1. Asserting in a privilege log a blanket privilege over 115,000 emails in three entries created over a 20-year period does not, by any reasonable measure, "describe *the* document" over which the privilege is asserted, as the Court directed and precedent requires. *See* Dkt 285-1, Cat. #1-3.  Nor do the entries for any of these three categories describe, for example, "the date [the emails were] written[,]" or the "identity and position of recipients," as the Court required.  Dkt. 258. The remaining 14 categories in Plaintiffs' log include even less detail; none indicate the number of documents within each category, *see* Dkt 285-1, Cat. #4-17, and eight lack date ranges, *see id.*, Cat. #4-11. Categories #7-11 do not identify the author(s), date(s), or recipient(s) of any of the documents.  *Id.*, Cat. #7-11.  While the Court's allowed Plaintiffs to assert the privilege "categorically," Plaintiffs' exceedingly broad categories fail to meet the standard articulated by the Court. *Mi Familia*, 344 F.R.D. at 515 ("assertions of privilege must be" "asserted on a document-by-document basis.").


**Plaintiffs' Position**:

F.R.Civ.P. 26(b)(5) requires Plaintiffs to "notify other parties if it is withholding materials … because it is asserting a claim of privilege."  "The Advisory Committee observed that '[d]etails concerning time, persons, general subject matter etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.'" Thus, the Committee offered a path between logging individual documents and blanket assertions of

1  privilege."[6]  By following the *In re Imperial, supra*, guidelines for producing a categorical privilege

2  log, Plaintiffs followed the middle way directed by the Court.  As for the Defendants' complaint

3  that the Privilege Log covers a twenty-year period of documents, this is because the Defendants'

4  RFPs, and the Court's Discovery Order (Dkt. # 220) allow for no time limitation; however, as

5  it appears Defendants are now ready to narrow the applicable time period, this is a meaningful

6  step towards narrowing the demands. Dean Decl. ¶ 5, Dkt. 288-4.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[6] Asserting and Challenging Privilege Claims in Modern Litigation: The Facciola-Redgrave Framework, pg. 28, 2009 Fed. Cts. L. Rev. 19.

1

**ISSUE 4**

2

**Defendants' Position**:

3

4

Plaintiffs' privilege log does not "describe the documents with sufficient detail" so that

5

Defendants "and the Court can assess the claim of privilege." Dkt. 258 at 11. Plaintiffs must

6

"demonstrate" that "the discovery requests" would chill AYA's members' associational rights.

7

591 F.3d at 1160. Courts "will not presume that a protected associational relationship exists

8

between a party and every other person or entity with whom they share common beliefs"

9

because "such an expansive view" of the "privilege would swallow the discovery process

10

altogether." *Mi Familia*, 344 F.R.D. at 514.  Plaintiffs' log differs significantly from that in *Perry*,

11

where the party identified 60 documents for the Court's review. 591 F.3d at 1154–55. While

12

Plaintiffs may be able to make arguments to why it should be allowed to withhold certain

13

documents that implicate information protected from disclosure, the blanket assertion of

14

privilege over *all* emails and documents prevents Defendants and the Court from ascertaining

15

whether the withheld documents are protected. *See Mi Familia*, 344 F.R.D. at 516 (failure to

16

provide sufficient "information about the contents and nature of each withheld document"

17

prevents "nuanced" *Perry* inquiry). More detail is necessary to assess Plaintiffs' privilege claim.

18

19

**Plaintiffs' Position**:

20

Rule 26(b)(5) allows for categorical privilege logs because individual document logs "may be

21

unduly burdensome when voluminous documents are claimed to be privileged… particularly if

22

the items can be *described by categories*."[7]  Plaintiffs categorized all of the demanded documents in

23

seventeen categories.  Order # 285 likely issued at least in part because Plaintiffs made some

24

showing of high document volume, and the Court believed a "categorical scheme" would be

25

26

_____

27

[7]  Asserting and Challenging Privilege Claims in Modern Litigation: The Facciola-Redgrave
Framework, 2009 Fed. Cts. L. Rev. 19, 27, citing, in note 37, *SEC v. Thrasher*, 92 Civ. 6987 (JFK), 1996

28

U.S. Dist. LEXIS 3327, at *4-5 (S.D.N.Y. Mar. 19, 1996) and *In re Imperial Corp of Am. v. Shields*, 174
F.R.D. 475, 479 (S.D. Cal. 1997).

sufficient to evaluate the privilege.  *See*, *Narayan v. EGL, Inc.,* No. C05-04181 RMW (HRL), 2006 U.S. Dist. LEXIS 81125, at \*6 (N.D. Cal. Oct. 24, 2006)(requiring standard individual document privilege log because producing party failed to show large document volume or to describe their categorical scheme.)   AYA asserts privilege over unredacted time-bracketed emails that uniformly contain communications that reveal AYA rank and file member names, the names of prospective members, donors, disclosure of which causes associational injury. Supp. Stanley Decl. ¶ 19; Stanley Decl. ¶¶ 22, 30, 42-43, 46, 49-50, 52, 54, 56, 78, Dkt. 285-2 Narrowing demands with search terms would be standard practice in ESI matters.  Supp. Stanley Decl. ¶ 11.d.

1

## ISSUE 5

2

**Defendants' Position**:

3

Step 2 of the *Perry* inquiry requires enough detail to allow Defendants to try to establish and the

4

Court to determine whether Defendants can "demonstrate a sufficient need for the discovery

5

to counterbalance [any First Amendment] infringement." *Mi Familia*, 344 F.R.D. at 515. This

6

Court already determined that Defendants' requests are critical its RFRA defense. Dkt. 220. For

7

example, within Stanley's emails, different interests may be at stake among communications: (1)

8

between Stanley and an AYA member about religious matters; (2) between Stanley and a

9

prospective member about possible attendance; (3) about an incident of sexual harassment or

10

other safety incidents, *see* Dkt. 285-2 ¶ 72; and (4) between Stanley and AYA facilitators about

11

safety procedures or ceremony logistics. Without more detail, neither Defendants nor the Court

12

can determine whether the withheld documents are protected under *Perry,* or whether disclosure

13

would have a deterrent effect on the exercise of rights the First Amendment is intended to

14

protect. Plaintiffs' "boilerplate" assertions "make[] it impossible to complete the second step"

15

of *Perry. Mi Familia*, 344 F.R.D. at 515.

16

17

18

**Plaintiffs' Position**

19

"The existence of a prima facie case turns not on the type of information sought, but on whether

20

disclosure of the information will have a deterrent effect on the exercise of protected activities."

21

*Aldapa v. Fowler Packing Co.*, No. 1:15-cv-00420-DAD-SAB, 2016 U.S. Dist. LEXIS 78791, at

22

*10 (E.D. Cal. June 16, 2016), quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir.

23

2010). Plaintiffs' Privilege Log satisfies the requirements of Rule 26(b)(5)(ii), and makes "the

24

necessary prima facie showing, [so] the evidentiary burden will then shift to the [Defendants to]

25

demonstrate that the information sought through [discovery] is rationally related to a compelling

26

. . . interest [and] the least restrictive means of obtaining the desired information. . . .The

27

question is . *. . whether the party seeking the discovery has demonstrated an interest in*

28

**obtaining the disclosures it seeks which is sufficient to justify the deterrent effect on the free exercise of [the] constitutionally protected right of association**." *Aldapa,* at *id.*, quoting *Perry, supra* (emphasis added). Defendants must carry their own burden of showing a compelling governmental interest and narrow tailoring.

**ISSUE 6**

**Defendants' Position**:

The associational privilege is not an absolute bar against any disclosure. *Perry*, 591 F.3d at 1165 n.13. The potential disclosures in this case differ in a dispositive way from *NAACP v. Alabama,* which AYA invokes for each category. 357 U.S. 449, 454 (1958). Alabama sued the NAACP, seeking disclosure of information under a state law requiring all corporations to provide names and addresses of its members. *Id.* at 451-52. NAACP "produced substantially all the data called for by the production order except its membership lists," *id.* at 454, including producing "the identity of its members who are employed by or hold official positions with it," and various other business records, *id.* at 464. In affirming NAACP's invocation of the privilege, the Court contrasted NAACP's extensive disclosures with an earlier case in which an organization made no disclosures. *Id.* at 465-66. Here, Plaintiffs object to disclosure of all communications and documents not yet produced. Plaintiffs sued to establish that their beliefs and practice are substantially burdened, invoking RFRA, an inquiry that depends on having information about Plaintiffs' religious activities. Plaintiffs' may not hide behind the shield of associational privilege to withhold all of its communications and documents, as it now does.

**Plaintiffs' Position**:

Defendants repeatedly assert the canard that Plaintiffs "hide" behind associational privilege. Just as in *NAACP v. Alabama*, it is insufficient to argue that the chilling effect of compulsory disclosure arises merely because Plaintiffs brought a RFRA lawsuit.[8] The relevant question is whether Defendants have shown a substantial justification sufficient to override the deterrent effect on constitutionally protected rights. While Defendants are correct that this case differs dispositively from *NAACP*, they miss the point—the vast scope of digital communications at

---

[8] Compare, *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958).

14

issue here was unimaginable in the late 1950s.[9] Defendants' attempt to analogize the present dispute to the Ku Klux Klan's refusal to furnish the government with *any* information as to its local activities is an obscene mischaracterization.[10] Plaintiffs have provided a privilege log, 90 pages of declarations, responses to 78 interrogatories, religious documents not subject to privilege, along with declarations from four members attesting to the chilling effect of disclosure. By now, Defendants should have articulated a good-faith defense theory. Yet, they hide behind Order Dkt. No. 220 to demand disclosures while concealing the government's "justification" for its disproportionately, overbroad requests.

---

[9] See *Ex parte NAACP*, 265 Ala. 349, 355 (1956) (requesting "all lists, documents, books, and papers" identifying members, officers, agents, servants, and employees along with their addresses and dues paid—an invasive demand, but one that pales in comparison to the breadth of digital disclosures sought here making the potential chilling effect exponentially greater).

[10] See *N.Y. ex rel. Bryant v. Zimmerman*, 278 U.S. 63 (1928), cited in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 465-66 (1958). The Supreme Court in *NAACP* explicitly rejected reliance on *Bryant* to justify compelled disclosure, emphasizing the "markedly different considerations" at play. *Bryant* involved the Ku Klux Klan, whose activities included unlawful intimidation and violence—facts that were judicially noticed and presumed known to the state legislature. Moreover, unlike Plaintiffs here, the organization in *Bryant* flatly refused to provide any information to the state, rendering any comparison both inapposite and inflammatory.

1

**ISSUE 7**

2

**Defendants' Position**:

3

The Court ruled that Plaintiffs must produce a privilege log "asserting associational privilege

4

only." Dkt. 258 at 11. Yet in its log, Plaintiffs assert additional privileges and objections. *See*

5

Ex. A. For example, Plaintiffs assert that: (1) certain documents in nearly all categories (except

6

#6) are "pre-decisional and deliberative," a privilege that does not apply to non-governmental

7

entities; (2) Defendants' requests are "overbroad" and "impose and undue burden and cost"

8

under Rule 26(b)(1), *see id.*, All Categories (except #5); and (3) some documents are "an

9

expression of religious freedom" in addition to an expression of "association and speech," *see,*

10

*e.g.*, *id.*, Category #6. To the extent that Plaintiffs' log invokes these additional privileges under

11

the guise of an associational privilege, such is not permitted under Dkt. 258, for the Court

12

determined that Plaintiffs have already waived their ability to so invoke such other privileges.

13

*See* Dkt. 258 at 10-11(quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473

14

(9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the

15

time required constitutes a waiver of any objection.")).

16

17

18

**Plaintiffs' Position**:

19

Order 258 permits Plaintiffs to assert associational privilege with necessary context—including

20

references to religious freedom and speech—to illustrate the chilling effect of disclosure on

21

protected activities, consistent with *NAACP v. Alabama*. Plaintiffs complied by demonstrating

22

their associational privilege's scope to satisfy the *Perry* test. Moreover, Plaintiffs reference

23

internal deliberations to illustrate sensitive religious communications—not invoke a "pre-

24

decisional and deliberative" privilege reserved for governmental entities—the very discourse

25

*NAACP* and *Perry* protect. Defendants mischaracterize these explanations as separate

26

privileges to mask Plaintiffs' valid objections to overbroad RFPs under Rule 26(b)(1) and

27

erroneously claim that Order 258 waived these objections even though proportionality and

28

burden objections are not waived merely by the passage of time. This tactic is as transparent

as it is legally unsound—a thinly veiled attempt to force unfettered access to AYA's

associational communications, calculated to intimidate and silence religious expression while undermining constitutional freedoms.

**ISSUE 8**

**Defendants' Position**:

The privilege log is further deficient because Defendants have no way to know whether and how many documents within each category (1) are even responsive to Defendants' RFPs, and (2) are responsive to RFPs to which Plaintiffs have not objected on associational privilege grounds, and as to which Plaintiffs did not seek appellate review of Dkt. 220.  *See* Dkt. 230 at 23 (only challenging RFP Nos. 7, 8, 11, 12, 13, 20, 21).  Specifically, Plaintiffs did not appeal the Court's order as to RFP Nos. 3-6, 10, 14-18, and 23, and even Plaintiffs' overly generalized log descriptions suggest that many of the documents over which Plaintiffs now invoke the associational privilege would be responsive to those RFPs.  *Contrast, e.g.*, Dkt 285-1, Cat. #1-3 (asserting a privilege over all email communications), *with* Dkt. 219 at 38 (Plaintiffs' response to RFP 3: "Plaintiff will supplement its response by searching for communications between them and Plaintiffs and providing copies thereof."); *and* Dkt 285-1, Cat. #8 *and* Ex. C ¶ 71 (asserting associational privilege over "No Fly List"), *with* Dkt. 219 at 49 (agreeing to produce anonymized "list of individuals who are disqualified from membership in AYA"). Plaintiffs may not assert a privilege over documents they previously agreed to produce.


**Plaintiffs' Position**:

Defendants mischaracterize the scope of Plaintiffs' obligations. Order 258 imposes no requirement to produce documents responsive to RFPs not challenged on associational privilege grounds, nor does it mandate an individual breakdown of every document spanning 20 years. The reality is that Order 220 demands non-redacted production without time limitations, implicating the entirety of Plaintiffs' records. Plaintiffs have addressed this voluminous corpus in good faith, consistent with *Mi Familia Vota*, which did not require categorical logging of this magnitude. Order 258 constrains the scope of Order 220, and Plaintiffs are diligently trying to comply with both, despite Defendants' overbroad and disproportionate demands. Defendants'

reliance on pre-Order 220 "agreements" is misplaced. The material terms of these agreements were fundamentally altered by Order 220, which mandates full production of non-redacted and non-anonymized documents. Plaintiffs' privilege assertions align with the new requirements of Order 258. Further, Defendants' attempt to revive objections related to non-appealed RFPs is disingenuous. Plaintiffs are willing to produce redacted copies once Defendants provide narrowed ESI search terms. However, it is not Plaintiffs' responsibility to convert Defendants' overly broad RFPs into reasonable, proportional productions. The burden lies with Defendants to refine their demands to a manageable scope.

### ISSUE 9

**Defendants' Position**:

Despite Plaintiffs' waiver of associational privilege, the Court allowed them one further opportunity to assert the privilege in a log, providing specific instructions for the log. Dkt. 258 at 11. Plaintiffs bear the burden of producing a privilege log which complies with the Court's order and substantiates its privilege assertions under Step 1 of *Perry*. By the log, Plaintiffs have not carried their burden. Although in this statement, Defendants identify some of the log's significant deficiencies, Defendants have not detailed all of the objections they would raise in a motion, should one be necessary. Defendants submit, however, that further briefing, depositions, or an evidentiary hearing on this topic are unnecessary given Plaintiffs' clear failure to satisfy its *prima facie* burden of demonstrating that disclosure of the logged documents would have a chilling effect, nor of describing the documents with enough detail to allow Defendants and the Court to assess the claim of privilege under the *Perry* inquiry. As the Court has warned, "failure to oblige shall constitute a waiver of the privilege or any objection to discovery." Dkt. 258 at 11. Further, given Plaintiffs' admission that they have not reviewed most documents, they will not be able to produce a compliant log in a reasonable time.


**Plaintiffs' Position**:

Plaintiffs never waived their associational privacy rights or those of the class of AYA members, donors, and prospective members, whose motion to intervene was denied because the Court held Plaintiffs can defend the constitutional rights of those members and donors.  Dkt. No. 258. Thus, the associational privacy rights of thousands are at stake in this dispute.  It would not comport with the purpose of Order Dkt. No. 258 to find that Plaintiffs "waived" the rights of the class of 5,239 persons represented by Taylor Cox in the intervention, after the Court *first*, asked itself whether to "allow Plaintiffs to assert associational privilege objections nine months after the … deadline," *then* concluded that "due to the important constitutional rights at stake, the Court will undertake the privilege issue," (Dkt. No. 258), *then* gave Plaintiffs thirty (30) days

to produce a categorical privilege log, and Plaintiffs *then timely produced the Privilege Log*.  No case law supports imposing a harsh sanction on a party who has facially complied with a discovery order.  *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 508 (D. Ariz. 2023), that rings with respect for even poorly asserted associational privacy claims, and tolerates 22 months of discovery abuse, is certainly not authority for such a punitive decision.

**ISSUE 10**

**Defendants' Position**:  By including this "issue," Plaintiffs merely attempt to circumvent the 14-line limit for their position statement as to, e.g., Issue 2.  *See supra* 6–7.  Defendants rest on their submissions above.

**Plaintiffs' Position**:

Unlike Plaintiffs, the court in *Mi Familia Vota* ordered the RPA to provide a standard privilege log (not a categorical one), and the privilege was waived only after the RPA defied two orders to provide the log. RPA claimed burden despite having $214,571.00 in cash and being an extensively litigious entity. Further, unlike the Defendants, the demanding party in *Mi Familia Vota* liberally accommodated RPA – narrowing demands, accepting their search terms, offering AI tools, and engaging in extensive meet-and-confer, while RPA consistently resisted compliance. In October 2022, the court considered RPA's burden claims, and ordered creation of a privilege log.  "On August 31, 2023, after RPA remained in violation of two prior orders compelling production of a privilege log, the court held 'if the privilege logs are found to be inadequate, that will result in a waiver.'"  *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 508 (D. Ariz. 2023).  On November 8, 2023, the court rejected RPA's attempt at a privilege log, twenty-two months in the making. *Id.* at 531. Although good law, this case is as far from analogous to the instant one as we are likely to find.

1

## **ISSUE 11**

2  **Defendants' Position**:  By including this "issue," Plaintiffs merely attempt to circumvent the

3  14-line limit for their position statement as to, e.g., Issues 3 and 4.  *See supra* 8–11.  Defendants

4  rest on their submissions above.

5  **Plaintiffs' Position**:

6  "It is a widely held myth that to protect privileged documents or communications from

7  discovery, a lawyer must prepare a privilege log that lists the author, recipient, and the nature or

8  title of each document for which a claim of privilege is made.  Preparation of a document-by-

9  document log can be very expensive [and] the detailed information that typically appears in a

10 standard privilege log often seriously invades the province of [privilege] protections."[11]  "A

11 category privilege log may be appropriate when more detail [than a mere declaration] is required

12 to demonstrate that particular types of documents are privileged. … [A] category privilege log

13 is also specifically referred to in the Advisory Committee Notes to the 1993 Amendment to

14 Rule 26, which state that it can be sufficient to describe privileged documents 'by categories.'"[12]

15 Plaintiffs' Privilege Log provides the required: (1) aggregate listing of withheld documents, (2)

16 identification of time periods encompassed by withheld documents, and (3) an affidavit setting

17 forth associational injury resulting from disclosure. See, *In re Imperial Corp. of Am. v. Shields*, 174

18 F.R.D. 475, 478-9 (S.D. Cal. 1997).

19

20

21

22

23

24

25

26 ———————————

27 [11] *Logging Rights*, 29 Los Angeles Lawyer 31, 31 (March, 2006)

28 [12] *Logging Rights*, 29 Los Angeles Lawyer 31, 34 (March, 2006)

23

**ISSUE 12**

**Defendants' Position**:  By including this "issue," Plaintiffs merely attempt to circumvent the 14-line limit for their position statement as to, e.g., Issue 5.  *See supra* 12–13.  Defendants rest on their submissions above.

**Plaintiffs' Position**:

A declaration stating, "that producing these communications will chill associational rights [is] sufficient to establish this prima facie case because ***it is common sense that forcing [the responding party] to produce these materials will chill the willingness of members of these industry groups to have candid communications with each other [even though] commercial speech is entitled to less protection than … religious … speech….*" *LeGrand v. Abbott Labs.*, No. 22-cv-05815-TSH, 2024 U.S. Dist. LEXIS 184790, at *3 (N.D. Cal. Oct. 9, 2024), citing *In re Anonymous Online Speakers*, 661 F.ed 1168, 1177 (9th Cir. 2011).  Stanley's Declaration filed under seal in support of the Privilege Log, the Supplemental Stanley Declaration, and the declarations of Rodney Ziebol (Dkt. No. 250-4), Huy Hunh (Dkt. No. 250-3), and Taylor Cox (Dkt. Nos. 250-2 and 255-1). all establish that, "***having -made a prima facie showing of infringement, the evidentiary burden shifts to the [Defendants] to demonstrate a sufficient need for the discovery to counterbalance that infringement***" of First Amendment rights." *LeGrand v. Abbott*, supra, 2024 U.S. Dist. LEXIS 184790, at *3 (emphasis added).  The Court should grant Plaintiffs' discovery motions, compel the DEA to designate a designee under Rule 30(b)(6), and apply exacting scrutiny at an evidentiary hearing.

1

**ISSUE 13**

2   **Defendants' Position**:  By including this "issue," Plaintiffs merely attempt to circumvent the

3   14-line limit for their position statement as to, e.g., Issues 6 and 7.  *See supra* 14–17.  Defendants

4   rest on their submissions above.

5   **Plaintiffs' Position**:

6

7   Defendants repeatedly press Plaintiffs to "produce documents responsive to document

    demands to which Plaintiffs did not object," seeking to force disclosure of AYA's sensitive

8   communications while bypassing the constitutional protections at stake. Their insistence on

9   production before the Court's application of exacting scrutiny contradicts the very purpose of

10  Order #258, undermining the judicial process. Although Plaintiffs' disclosure duties are clearly

11  held in abeyance pending resolution of associational privacy infringement claims, the scope of

12  producible material remains uncertain until exacting scrutiny is applied. Defendants' strategy

13  seeks to pressure Plaintiffs into abandoning valid constitutional objections, exploiting

14  procedural technicalities rather than confronting substantive First Amendment issues

15  presented. If allowed, the federal governments' overreach would set a dangerous precedent,

16  chilling lawful association and religious expression. The Court should reject Defendants'

17  demands for unrestricted disclosure, reinforcing the necessity of judicial scrutiny to safeguard

18  the constitutional rights of religious minorities.

19

20

21

22

23

24

25

26

27

28

**ISSUE 14**

**Defendants' Position**:  By including this "issue," Plaintiffs merely attempt to circumvent the 14-line limit for their position statement as to, e.g., Issue 7.  *See supra* 16–17.  Defendants rest on their submissions above.

**Plaintiffs' Position**:

F.R.Civ.P. 26(b)(2), titled "Limitations on Frequency and Extent" confines the scope of discovery to relevant, proportional matters, and Rule 26(b)(2)(C)(iii), titled "When Required" directs "On motion or on its own, the court ***must limit the frequency or extent of discovery otherwise allowed … if the proposed discovery is outside the scope permitted by Rule 26(b)(1).***" (Emphasis added.). "nonprivileged matter … relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action … the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Since the Court may act on its own motion, and must act on scope violations, it's clear the Rule's drafters never intended to silence opposing counsel's duty to raise "beyond the scope" objections on the record—whether in privilege logs, protective motions, or joint statements—to ensure discovery remains relevant and proportional. The Court's power to curb overreaching discovery is essential to prevent fishing expeditions.

Dated: March 6, 2025                          Respectfully submitted,

                                              YAAKOV M. ROTH
                                              Acting Assistant Attorney General

                                              JULIE STRAUS HARRIS
                                              Assistant Branch Director

                                              */s/ Lisa Newman*
                                              Lisa Newman (TX 24107878)
                                              Bonnie E. Devany (TX 24131173)
                                              Cody T. Knapp (NY 5715438)
                                              Trial Attorneys
                                              Civil Division, Federal Programs Branch
                                              U.S. Department of Justice

1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5578
E-mail: lisa.n.newman@usdoj.gov

*Attorneys for Defendants*

*/s/ Melissa Dean*
MELISSA DEAN (FLB #1031982)
111 North Orange Ave., Ste. 800
Orlando, Florida 32801
Tel: 772-919-2748
Email: melissadeanesq@gmail.com

CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Circle
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

*Attorney for Plaintiffs*

**Certification.**[13]

Counsel hereby certify that they have attempted to resolve the instant dispute through personal consultation and sincere effort in accordance with Rule 7.2(j) and the Rule 16 Scheduling Order. Conferral efforts are outlined in Dkts. 277 and 285. Defendants sent Plaintiffs a draft joint statement on January 12. On January 17, Plaintiffs sought an extension, until January 31, to respond to the draft Joint Statement. Dkt. 276. On January 24, 2025, Plaintiff emailed Defendant requesting a meet and confer regarding the need for a protective order. On January 27, 2025, the parties participated in a meet and confer, but were unable to narrow or resolve any outstanding discovery issues. On February 14, 2025, Plaintiffs provided their positions for the Joint Statement for the first time, raising additional four additional issues to this joint statement (Issues 10-14). At that time, Plaintiffs noted that supplemental declarations cited in Plaintiffs' positions were still in draft form and currently unsigned. On February 19, 2025, Plaintiff sent a meet and confer letter to Defendant in an ongoing good faith effort to resolve outstanding discovery disputes. The letter requested supplemental responses to contention interrogatories, an ESI protocol agreement, and Defendant's position on these issues by February 28, 2025. On February 21, 2025 (four business days later), Defendants' counsel provided the revised Joint Statement to Plaintiffs, incorporating minor edits. On February 24, Plaintiffs' counsel indicated that she would return Plaintiffs' further edits and supplemental declarations by February 25, 2025, but did not do so. On February 25, 2025, Plaintiffs' counsel informed Defendants' counsel that she was awaiting final input from their client and co-counsel before sending the appended declarations with any adjustments to this joint statement. When Defendants followed up with Plaintiffs via email on February 27, 2025, Plaintiffs called Defendants to advise that Plaintiffs' Motion for Protective Order was nearly finalized for filing and inquired whether Defendants were open to further negotiation or resolution of any disputed issues through continued meet and confer discussions—

---

[13] On March 5, Defendants requested that the extensive discussion of conferrals regarding other discovery disputes be removed from the certification and limited to conferrals about the privilege log. Plaintiffs indicated that they would not be able to respond to Defendants' proposed edits in a timely manner, so Defendants agreed to submit Plaintiffs' certification in the interests of finalizing this filing.

including this joint statement.  During this conversation, Defendants informed Plaintiffs that they were preparing a response to Plaintiff's February 19, 2025 letter.  Plaintiffs followed up with Defendants on February 28, 2025, informing Defendants that Plaintiffs remain open to further discussions aimed at narrowing the issues in this joint statement prior to finalizing and filing it. Defendants followed up with Plaintiffs via email on February 27, February 28, March 3, and March 4, requesting that Plaintiffs finalize their materials so that the Joint Statement could be filed with the Court. On March 3, 2025, Defendant informed Plaintiff that it preferred to obtain guidance from the Court on how to proceed and opposed Plaintiff's Motion for Protective Order, because Plaintiffs' motion violates this Court's rules regarding discovery disputes, and is an improper vehicle for the relief Plaintiffs purport to seek. In addition, Plaintiffs' motion simply repackages and rehashes, yet again, the various disputes presented in the parties' numerous filings since this Court's December 4, 2024 Order. See, e.g., ECF Nos. 271, 285. Unless the Court orders otherwise, Defendants do not intend to file any further statement in opposition to Plaintiffs' latest improper motion. On March 5, 2025, during a phone call, counsel for the parties discussed Plaintiffs' planned revisions to the Joint Statement, particularly regarding citations to the referenced declarations. Plaintiffs initially intended to return their revisions after the declarations were filed; however, when it became clear that the declarations would not be filed before the discussed revision deadline, Plaintiffs instead submitted redlines limited to the declaration citations, which included a handful of docket and declaration references and an extensive certification section. Counsel for the parties have met and conferred to discuss the issues in this joint statement, but the parties were unable to reach a resolution.