YAAKOV M. ROTH
Acting Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

CODY T. KNAPP (NY 5715438)
LISA NEWMAN (TX 24107878)
BONNIE DEVANY (TX 24131173)
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-1318
Email: cody.t.knapp@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ARIZONA YAGÉ ASSEMBLY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PAMELA BONDI, Attorney General of the United States, *et al.*, <br><br> Defendants. | No. CV-20-02373-PHX-DJH <br><br> **DEFENDANTS' MOTION FOR A STATUS CONFERENCE** |

Defendants hereby move for the Court to hold a status conference with counsel for the parties in this long-running case. Defendants further request that any resulting status conference be scheduled before April 21, 2025.

As outlined below, this case, filed in 2020, is currently at a standstill because of Plaintiffs' persistent use of dilatory tactics and repeated failure to comply with court orders. For more than a year now, the litigation has been at an impasse, with numerous outstanding discovery disputes precluding virtually any progress towards the completion of discovery, much less towards a final resolution of this case.

But the case has now reached an inflection point. Following a series of recusals, *see* Dkts. 294, 295, & 296, this case was recently reassigned to the Honorable Diane J. Humetewa. Additionally, the line attorneys who have collectively represented Defendants in this case for the past four years will be departing the United States Department of Justice over the coming weeks. As a result, wholly new counsel will soon be assigned to represent Defendants in this litigation.

Given these substantial developments, Defendants submit that a status conference is appropriate at this juncture. Most importantly, a status conference would provide an opportunity to orient the Court to the parties' outstanding discovery disputes and respective positions. And if the status conference were held in the coming weeks, it would ensure that the Court has an opportunity to hear from defense counsel familiar with the history of this case and the pending discovery disputes—thereby mitigating any potential prejudice to Defendants' ability to properly defend this case in the near term as their counsel undergo a complete transition in personnel.

At bottom, the parties' outstanding discovery disputes must be adjudicated in order for this case to be litigated properly and, eventually, resolved. Defendants submit that a status conference would aid the Court in reaching an appropriate resolution of those disputes. Should the Court agree, Defendants request that the status conference be held before April 21, 2025, prior to the departure of Defendants' current counsel in this matter.

**BACKGROUND**

**I.     Pre-Discovery Proceedings**

Plaintiffs initially filed this lawsuit in the U.S. District Court for the Northern District of California on May 5, 2020. *See* Complaint, Dkt. 1. Plaintiffs asserted, among other things, that the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*, affords them a right to import and use ayahuasca for religious purposes, notwithstanding certain restrictions imposed by the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq. See, e.g.*, Dkt. 1, ¶ 137. After what Judge Orrick of the Northern District of California described as a "short but involved history," including an amended complaint and several motions to dismiss and for preliminary injunctions, the case was transferred to this Court. *Ariz. Yage Assembly v. Barr*, No. 3:20-CV-03098-WHO, 2020 WL 6544468, at *1 (N.D. Cal. Nov. 6, 2020) (granting Plaintiffs' motion to transfer venue); *see also Ariz. Yage Assembly v. Barr*, No. 3:20-CV-03098-WHO, 2020 WL 5629833, at *4 (N.D. Cal. Sept. 21, 2020) (earlier decision that, among other things, denied Plaintiffs' motions for preliminary injunction due to lack of venue).

Once the case was transferred to this Court, it was initially assigned to Judge Liburdi. *See* Notice re Transfer, Dkt. 67 (Dec. 8, 2020). A third amended complaint and several motions to dismiss followed. *See, e.g.*, Third Am. Compl., Dkt. 77 (Jan. 21, 2021); Federal Defs.' Mot. to Dismiss Third Am. Compl., Dkt. 86 (Mar. 22, 2021). The case was then "directly reassigned" to Judge Silver. Minute Order, Dkt. 93 (April 16, 2021). Plaintiffs subsequently filed a fourth amended complaint, and another round of motion-to-dismiss and preliminary-injunction briefing ensued. *See* Fourth Am. Compl., Dkt. 109 (May 27, 2021); Federal Defs.' Mot. to Dismiss Fourth Am. Compl., Dkt. 112 (June 15, 2021); Plaintiffs' Second Mot. for a Preliminary Injunction, Dkt. 137 (Nov. 9, 2021). These motions were resolved on March 30, 2022, when, as relevant here, Judge Silver dismissed Plaintiffs' fourth amended complaint with leave to amend as to their claim under RFRA. *See Ariz. Yage Assembly v. Garland*, 595 F. Supp. 3d 869, 890 (D. Ariz. 2022).

Plaintiffs filed their *fifth* amended complaint on May 15, 2022. *See* Fifth Am. Compl., Dkt. 159. Defendants again moved to dismiss. *See* Federal Defs.' Mot. to Dismiss Fifth Am.

Compl., Dkt. 175 (Sept. 23, 2022). But on May 4, 2023, Judge Silver denied the motion to dismiss and allowed the case to proceed to discovery, *see Ariz. Yage Assembly v. Garland*, 671 F. Supp. 3d 1013, 1022 (D. Ariz. 2023).

## II. Discovery

Discovery opened in July 2023. *See, e.g.*, First Rule 16 Case Management Plan, Dkt. 195, at 1 (June 23, 2023) (written fact discovery commenced on July 20, 2023); *see also* Notice of Service of Discovery, Dkt. 199 (parties exchanged initial disclosures on July 6, 2023). Per the Court's initial scheduling order, written fact discovery was to be substantially completed by November 16, 2023. *See* First Rule 16 Case Management Plan, Dkt. 195, at 1.

But from the start, the discovery process in this case was plagued by Plaintiffs' now-familiar hallmarks: delay and outright neglect in responding to Defendants' discovery requests; disregard for all manner of internal and external deadlines; abuse of the meet-and-confer and joint-statement process to obstruct the progress of this case; and defiance of court rules and various orders relating to discovery. For the benefit of the Court, Defendants briefly highlight some illustrative examples of Plaintiffs' misconduct in discovery below.

### A. Plaintiffs Stalled the Entry of a Protective Order Regarding Confidential Information.

To appreciate Plaintiffs' tendency towards delay, the Court need look no further than Plaintiffs' hindrance of the Court's entry of a routine protective order in this matter. Defendants initially sent Plaintiffs a draft protective order (and a draft clawback agreement) on July 13, 2023, one week before written discovery was set to begin. *See* Joint Statement of Dispute Over Protective Order Provisions, Dkt. 205 (Dec. 4, 2023). The draft protective order Defendants proposed was virtually identical to one previously entered in a very similar case, *Church of the Eagle and the Condor v. Garland*, No. 22-cv-1004 (D. Ariz.). *See* Defendants' First Deficiency Letter, Dkt. 213-6, at 9 (Oct. 26, 2023) (discussing this similarity). Defendants worked persistently to obtain Plaintiffs' position regarding the proposed protective order, sending follow-up emails about the issue on July 17, July 20, October 26, October 30, November 6, November 16, November 17, and November 20, and raising the protective order

3

during meet-and-confer calls on July 24, August 11, November 7, and November 21. *See* Dkt. 205, at 7; *see also* Joint Statement of Dispute Over Proper Form of Discovery Joint Statements to Resolve Discovery Disputes, Dkt. 212, at 3. Nevertheless, Plaintiffs did not return edits on the draft protective order until November 22, 2023—four months after it was first circulated.

After this substantial and unreasonable delay, Defendants accepted many of Plaintiffs' edits, and Plaintiffs' unresolved objections were raised to the Court via a joint statement—a discovery dispute procedure required by Judge Silver. *See* Dkt. 205; *see also* Scheduling Order, Dkt. 195, at 3 (discussing the Discovery Dispute Instructions maintained by Judge Silver); Judge Silver's Discovery Dispute Instructions, https://perma.cc/J6B4-S24B. As the parties' joint statement on the protective order reflects, Plaintiffs' two objections to the draft protective order concerned (1) Plaintiffs' desire to restrict Defendants' counsel from sharing any information Plaintiffs deemed to be "protected information" with certain of Defendants' employees, and (2) whether Plaintiffs could assert the Fifth Amendment on behalf of their members. *See generally* Dkt. 205. Plaintiffs' objections were based on a blanket assertion that certain communications sought by Defendants' first written discovery requests—which could contain potentially incriminating information related to membership in Plaintiffs' organization and participation in Plaintiffs' ceremonies—were protected from disclosure under the Fifth Amendment. *See* Dkt. 205, at 4 ("Confirmation that a person participated in an AYA ceremony is testimonial evidence protected from compelled self-disclosure under the Fifth Amendment."); *id.* at 5 (invoking "the Fifth Amendment to prevent compelled disclosure of testimonial evidence linking AYA members with AYA").

Ultimately, the Court roundly rejected Plaintiffs' objections. *See* Order, Dkt. 210, at 3 (Jan. 22, 2024) ("The Court finds the protective order shall not restrict Defendants' access and use of discovered information as sought by Plaintiffs in this dispute."). It then entered a protective order consistent with Defendants' proposed draft on January 31, 2024—more than six months after both the date Defendants first proposed a substantially similar draft to Plaintiffs (July 13, 2023) and the date written fact discovery commenced (July 20, 2023). *See*

4

Stipulated Protective Order Regarding Confidential Information, Dkt. 217 (Jan. 31, 2024).[1]

     B.    <u>Plaintiffs Provided Late and Incomplete Responses to Defendants' Initial Discovery Requests.</u>

At the same time that Plaintiffs delayed the entry of a draft protective order, they also failed to provide timely and meaningful responses to Defendants' first written discovery requests. Defendants served those requests—one set each of interrogatories and requests for production—nineteen months ago, on September 1, 2023.[2] *See* Decl. of Lisa Newman, Dkt. 213-1, ¶ 4. Out of the gate, and consistent with their pattern of delay, Plaintiffs sought and obtained *three* extensions of their deadline to initially respond to those requests, twice from Defendants and once from the Court. *See id.* ¶¶ 5, 7; Pls.' Motion for Extension of Time, Dkt. 200 (Oct. 27, 2023).

After obtaining these repeated extensions of their deadline to respond to Defendants'

---

[1] Once the protective order was in place, Defendants proceeded with producing documents that included information protected under the protective order. *See* Ex. A, Summary of Parties' Discovery Requests & Responses and Pending Discovery Disputes, at 4 (reflecting Defendants' production of 20,898 pages across six different productions). In contrast, as discussed in greater detail below, Plaintiffs have made just one document production since the protective order was entered, involving only 89 pages. *See id.* at 2 (reflecting Plaintiffs' production of 89 pages on February 9, 2024). Plaintiffs' only other production, made on October 27, 2023, included just 1,096 pages, the majority of which are material already available in the public record of this case. *See id.*

[2] Defendants' first written discovery requests sought information concerning (1) AYA leadership, structure, & facilitators, including the training of facilitators and decision makers and their training; (2) AYA's safety protocols, including protocols to screen participants for health concerns and ensure their safety during ceremonies; (3) AYA's ayahuasca ceremonies & handling, including how AYA sources, secures, stores, handles, and prepares ayahuasca from importation to ultimate distribution to participants, as well as basic information about the dates, number, locations of, and participants and leaders present at ceremonies; and (4) information regarding the sincerity of AYA's beliefs & practices. Those requests, then, sought information directly relevant to the elements of Plaintiffs' claim that RFRA entitles them to import, distribute, and use a Schedule I controlled substance: On the one hand, such information would allow Defendants' to scrutinize the sincerity of Plaintiffs' alleged religious exercise, and, on the other hand, it would allow Defendants to build their own potential defense of showing that any burden is in furtherance of a compelling government interest in ensuring public safety and is the least restrictive means of furthering that interest. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006).

first written discovery requests, Plaintiffs eventually provided responses that were, as the Court later explained, "totally insufficient," "wrong," and "in some cases ridiculous." *Ariz. Yagé Assembly v. Barr*, 2024 WL 1011677, at *1 (D. Ariz. Feb. 22, 2024) (also available at Dkt. 220). Among other issues, Plaintiffs' responses were woefully incomplete: Whether due to oversight or a flat-out refusal to respond, five interrogatories went wholly unanswered, many other interrogatories were answered only partially, and Plaintiffs failed to provide any response to 18 out of 25 of Defendants' requests for production—more than 70 percent of the total number of Defendants' requests. *See* Newman Decl., Dkt. 213-1, ¶ 9. Defendants promptly outlined these and other problems in a detailed deficiency letter. *See* Defs.' First Deficiency Letter, Dkt. 213-6 (Oct. 26, 2023). Notably, Defendants' deficiency letter explained that, to the extent Plaintiffs' refusal to respond was grounded in privacy concerns, those concerns would "largely be ameliorated by anonymizing personal identifying information" or "with the entry of a Protective Order" like that proposed by Defendants more than three months earlier. *Id.* at 2; ; *see also id.* at 9 (noting the use of a similar protective order in *Church of the Eagle and the Condor*); *see supra* at 4–6 (discussing Plaintiffs' obstruction of the prompt entry of a protective order in this case). Plaintiffs did not substantively reply to Defendants' deficiency letter—effectively ignoring Defendants' attempts to confer meaningfully about the scope of the disputed requests—and Plaintiffs' later supplements to their discovery responses did not cure the vast majority of the issues Defendants raised in that letter. *See* Newman Decl., Dkt. 213-1, ¶¶ 9–10; *see also* Defs.' First Deficiency Letter, Dkt. 213-6.

      C.    <u>Plaintiffs Abused the Court's Joint Statement Process and Delayed the Timely Adjudication of Discovery Disputes.</u>

Having given incomplete and otherwise inadequate responses to Defendants' first set of written discovery requests, Plaintiffs next used the joint statement procedure required by Judge Silver in a manner that obstructed Defendants' efforts to promptly raise to the Court their concerns with Plaintiffs' deficient discovery responses.

Among other things, Judge Silver's standing order requires counsel for the parties to "personally meet and confer" before submitting any discovery dispute to the Court. *See* Judge

Silver's Discovery Dispute Instructions, https://perma.cc/J6B4-S24B. In the event a dispute cannot be resolved between counsel, the order directs parties to submit "a joint statement of the dispute" that is "not to exceed 14 lines per issue for each party unless an enlargement has been approved by the Court." *Id.* The order also declares that "generally, no motions concerning the dispute are permitted to be filed." *Id.*

Throughout discovery in this case, Defendants have worked to comply with Judge Silver's instructions by submitting discovery disputes via this joint statement process—but doing so quickly became a challenge, including with respect to the dispute over Plaintiffs' responses to Defendants' first set of written discovery requests. Following several unsuccessful meet-and-conferrals, Defendants recognized that the parties were at an impasse regarding the deficiencies identified in Plaintiffs' initial discovery responses. Accordingly, Defendants sought to raise the parties' dispute to the Court's attention in a timely fashion. To that end, Defendants circulated a draft joint statement to Plaintiffs on December 21, 2023. *See* Newman Decl., Dkt. 213-1, ¶ 14. For their part, Plaintiffs did not provide a full position regarding Defendants' draft joint statement until January 16, 2024.[3] *See id.* ¶ 24. And Plaintiffs only did so moments before a 40-minute meet-and-confer call on which Plaintiffs' counsel yelled, interrupted, and talked over Defendants' counsel in a manner that Defendants' counsel found to be "shocking and upsetting." *Id.* ¶ 25.

These difficulties in submitting the parties' dispute over Plaintiffs' initial discovery responses, coupled with the unreasonably drawn-out negotiations over the draft protective order, *see supra* at 4–6, left Defendants gravely concerned about the adequacy of the joint statement process for resolving discovery disputes. Given their growing concerns, Defendants prepared and ultimately filed with the Court a joint statement regarding the joint-statement process, in which they requested that the Court authorize the parties to file formal motions regarding future discovery disputes. *See* Joint Statement of Dispute Over Proper Form of

---

[3] Of note, the then-operative deadline for the substantial completion of written fact discovery was January 16, 2024. *See* Order, Dkt. 203 (Nov. 14, 2023). The day before, on January 15, 2024, Plaintiffs provided a partial position as to 1 out of the 4 issues Defendants had included in the draft joint statement. *See* Newman Decl., Dkt. 213-1, ¶ 23.

7

Discovery Joint Statements to Resolve Discovery Disputes, Dkt. 212. In support of their request, Defendants noted that they had experienced "lengthy delays in receiving Plaintiffs' position to be input into the joint statements drafted by Defendants," and "unproductive and hostile conferrals with Plaintiffs' counsel." *Id.* at 2. Defendants also raised that Plaintiffs' approach to written discovery disputes threatened to make future joint statements unwieldy; whereas Defendants had drafted a 4-page joint statement identifying the issues for a motion to compel amended responses to their initial discovery requests, Plaintiffs were insisting that the parties' joint statement separately address each party's position on each of Defendants' 45 requests, in 14-line segments, such that the final joint statement would approach 100 pages in length. *See id.* at 5. Plaintiffs opposed Defendants' request to file discovery motions, asserting that "no changes are needed," *id.* at 3, and that the joint statement process was "functional," *id.*, and "workable," *id.* at 5.

In its discretion, the Court denied Defendants' request to authorize discovery motions. *See* Order, Dkt. 218 (Jan. 31, 2024) ("The Court's method and means of resolving discovery issues is applicable. No motions are to be filed."). In doing so, the Court ordered the parties to provide responses and positions regarding all future joint statements of discovery disputes "within five days of receipt of the joint statement." *Id.* And the Court emphasized that the "[c]lose of discovery is set for March 8, 2024," and that "[n]o further continuances will be granted absent extraordinary circumstances." *Id.*[4]

In light of the Court's ruling, Defendants continued to work with Plaintiffs to prepare a joint statement regarding Plaintiffs' deficient discovery responses. Ultimately, the parties filed an 87-page joint statement on February 12, 2024. *See* Joint Statement on Dispute Over Plaintiffs' Responses To Defendants' First Sets of Interrogatories and Requests for Production of Documents, Dkt. 219. As a result of Plaintiffs' repeated delays, including in preparing joint

---

[4] Given the parties' ongoing disputes, the Court had previously extended (for a second time) the deadline for substantial completion of written discovery to March 8, 2024. *See* Amended Scheduling Order, Dkt. 207, at 1 (Jan. 16, 2024). Under that operative schedule, all fact discovery—including depositions of all witnesses—was to conclude by June 27, 2024. *See id.* at 2.

8

statements, the deficiencies with Plaintiffs' initial written discovery responses were not ripe for the Court's consideration until more than five months after the relevant discovery requests were served, and with less than one month until the scheduled close of substantial completion of written fact discovery.

> D. <u>Plaintiffs Have Shirked the Requirements Set by the Court's Rules and Discovery Orders.</u>

Even when Defendants have successfully managed to present a discovery dispute to the Court and obtained the Court's favorable ruling, as often as not, Plaintiffs fail to comply with the Court's rulings to amend their discovery responses or alter their conduct. Indeed, in the face of a clear Court order, Plaintiffs' have continued to defy the Court's decision regarding the deficiencies Defendants identified in Plaintiffs' initial discovery responses. *See Ariz. Yagé Assembly v. Barr*, 2024 WL 1011677, at *1 (also available at Dkt. 220).

On February 22, 2024, less than two weeks after the parties filed their 87-page discovery dispute joint statement, Dkt. 219, the Court agreed with Defendants and found Plaintiffs' positions uncompelling. The Court was unsparing in its criticism of Plaintiffs, finding that they (1) "have not taken their discovery obligations seriously," (2) "have failed to adequately respond to nearly 40 of Defendants' discovery requests," and (3) have "provided incomplete, insufficient, or unresponsive answers to many of the requests and in some instances have refused to respond at all." *Id.* at *1. The Court further concluded that "Plaintiffs' responses and productions are totally insufficient and Plaintiffs' refusal to sufficiently respond to Defendants' discovery requests based on inapplicable privileges and objections is wrong and in some cases ridiculous." *Id.* Accordingly, the Court ordered Plaintiffs to "provide full and complete responses and productions to Defendants' requests," and given the numerous inconsistencies among Plaintiffs' verified and non-verified responses, ordered that "[w]here Plaintiffs claim they have already produced documents or that no responsive documents exist, Plaintiffs must verify their answers under penalty of perjury." *Id.* Plaintiffs were ordered to comply with these discovery obligations by the March 8, 2024, substantial completion deadline. *See id.*

9

Rather than comply with the Court's order, Plaintiffs again chose an obstructionist path, filing motion after motion looking for new angles and escape hatches that never came.

- On March 4, 2024—four days before the deadline for substantial completion of written discovery—Plaintiffs filed a notice of interlocutory appeal of the Court's February 22, 2024, discovery order. *See* Dkt. 221.

- On March 6, 2024, two days before the substantial completion deadline, Plaintiffs filed an *ex parte* motion to stay (1) the February 22, 2024, discovery order, (2) the Court's joint statement procedure that prohibits the parties from filing discovery motions without being directed to so by the court, and (3) any impositions of sanctions under Rule 37 for failure to make disclosures or to cooperate in discovery. *See* Dkt. 222 at 1. Plaintiffs argued that the Court "clearly erred" in issuing the Discovery Order, and that they had the right to appeal the order "under the collateral order doctrine or, alternatively, via a petition for writ of mandamus." *Id.* at 5.

- At 8:48 pm on March 8, 2024—the evening of the deadline for the substantial completion of written discovery—Plaintiffs filed a motion for extension of time "to attempt to comply with as much of the discovery order as can be accomplished." Dkt. 227.

- On March 11, 2024, Plaintiffs filed a motion for leave to file a brief and declaration in opposition to issues presented in Defendants' statement of dispute concerning Plaintiffs' responses to Defendants' second set of interrogatories. *See* Dkt. 229.

- Also on March 11, 2024, Plaintiffs filed a petition for writ of mandamus with the Ninth Circuit. *See* Dkt. 230.

- And on March 12, Plaintiffs' counsel filed a motion to intervene on behalf of Taylor Cox, who sought to intervene as the "class representative of a class of 5,239 members, donors, and email correspondents" of Plaintiffs, despite the fact that Plaintiffs have maintained all along that they represent that very class. Dkt. 232-1.

Even as they kept busy filing motion after motion, Plaintiffs made no meaningful progress towards complying with the Court's February 22, 2024, discovery order. In fact, one of Plaintiffs' motions suggested that, as of the deadline for substantial completion of written discovery, Plaintiffs had not yet started to collect, let alone review and produce, potentially

responsive documents. *See* Dkt. 227, at 3 ("The information demanded by the Discovery Order needs to be accessed with the collaboration of AYA members, and despite earnest efforts, the church has not yet been able to reach an actionable consensus on this matter."); *see* Dkt. 228, at 4 (Defendants noting the implication of Plaintiffs' statement); Dkt. 234, at 2 (court order noting Defendants' concern about this point). That suggestion has since been confirmed: Plaintiffs had not even obtained e-Discovery software by the close of substantial completion of fact discovery, which would have made it virtually impossible for them to comply with their document discovery obligations. *See* Dkt. 276-1 at 4 (noting on January 17, 2025 that "the undersigned counsel is working to understand the functionality of Plaintiffs' newly secured e-discovery software").

Given the Ninth Circuit proceedings instigated by Plaintiffs' mandamus petition, the parties stipulated to a stay of further proceedings in this court because Defendants would not be able to proceed without discovery from Plaintiffs. *See* Dkt. 238; *see also* Dkt. 240 (court order entering a stay). On April 29, 2024, the Ninth Circuit denied Plaintiffs' petition. Dkt. 243. Plaintiffs filed motions for reconsideration and reconsideration *en banc*, which the Ninth Circuit denied on August 13, 2024. *See In Re: Ariz. Yage Assembly*, Case No. 24-01405, Dkt. 21. Plaintiffs then filed a motion to stay the mandate. *See id.*, Dkt. 22. On September 13, 2024, the Ninth Circuit issued an order denying the motion to stay the mandate as moot, stating that "[t]his court does not issue a mandate after resolving a petition for a writ of mandamus" and further stated that "[t]his petition remains closed." Dkt. 244-1, at 1.

In light of the Ninth Circuit's dispositive order, the Court lifted the stay in this matter on September 25, 2024. *See* Dkt. 247. Again, rather than complying with the Court's earlier discovery order, Plaintiffs sought to reinstate the stay while they (unsuccessfully) sought a writ of certiorari from the Supreme Court. Dkt. 246; *see also Ariz. Yage Assembly v. U.S. Dist. Ct. for the Dist. of Ariz.*, No. 24-534, --- S. Ct. ----, 2025 WL 76483 (Jan. 13, 2025). Meanwhile briefing proceeded on the collateral motion to intervene, and later on an improper amended motion to intervene. *See* Dkt. 232, 249, 250, 251, 252, & 255.

E.   Plaintiffs Continue to Neglect Their Discovery Obligations.

In a December 4, 2024 order, the Court endeavored to put this case back on track. *See* Dkt. 258. First, the Court denied Plaintiffs' motion to reinstate the stay. *Id.* at 4 ("Plaintiffs continued unwarranted attempts to delay discovery and the progression of this case will not be tolerated."). Second, the Court denied the collateral motion to intervene. *Id.* at 12. In ruling on the intervention motion and the improper "amended" motion to intervene, the Court again noted that "Plaintiffs are incapable or unwilling to follow the procedural rules of this Court." Dkt. 258. Finally, the Court ordered that, no later than January 3, 2025, the parties were to file a proposed Amended Rule 16 Scheduling Order with the Court, and Plaintiffs were to provide a categorical privilege log, asserting only the associational privilege that the Court observed Plaintiffs raised for the first time on appeal. *See id.*, at 10 ("It is obvious that Plaintiffs decided to obfuscate the litigation by embarking on a lengthy appellate journey rather than raising the issues with the Court."). In doing so, the Court noted that it was "wary to allow Plaintiffs to assert associational privilege objections nine months after the discovery responses deadline," but gave Plaintiffs one final chance to assert the privilege in a categorical privilege log. *Id.* The Court provided Plaintiffs with specific instructions as to what should be included in the log and warned that "failure to oblige shall constitute a waiver of the privilege or any objection to discovery, and Plaintiffs will be fully ordered to comply with the Discovery Order at risk of serious sanctions." *Id.* at 11.

Since the Court entered its order on December 4, 2024, Plaintiffs' misconduct in discovery has continued unabated, despite having retained additional counsel to assist with discovery. Plaintiffs were not prepared to submit a proposed amended scheduling order by January 3, 2025, forcing Defendants to file their proposed schedule unilaterally while Plaintiffs sought additional time via an *ex parte* motion. *See* Dkt. 267 at 13–14 (detailing Defendants' attempts to confer with Plaintiffs); Dkt. 268 (Plaintiffs' Ex Parte Motion for Extension of Time). And with respect to their categorical privilege assertion, Plaintiffs provided Defendants with a barebones, 19-page privilege log that came nowhere close to complying with the Court's requirements for the privilege log and, for example, attempted to assert an associational

privilege over more than 115,000 emails that Plaintiffs admitted they had not yet even reviewed. *See* Dkt. 291 at 6–9. Even as they have continued to flaunt their obligations under the Court's February 22, 2024, and December 4, 2024, orders, Plaintiffs have again begun filing a flurry of prohibited discovery motions and have repeatedly refused to respond to Defendants' joint statements within the Court-ordered 5-day deadline for a response. *See, e.g.*, Dkt. 290 (noting that Plaintiffs "filed six prohibited . . . motions" while they "delayed – for nearly 7 weeks – providing and finalizing their position statements for inclusion in the Joint Statement Defendants first circulated to Plaintiffs on January 12, 2025," failed to "produced a single additional page of responsive discovery materials," and failed to "provide[] any response to Defendants' outstanding interrogatories"). They have also refused to meaningfully confer and sought repeated extensions from the Court on the evening filings are due. *See* Dkt. 285 at 1-2 (detailing delays since lifting of the stay).

\*   \*   \*

The result of Plaintiffs' approach, as briefly surveyed above, is that discovery in this case has been entirely asymmetrical. Defendants have dutifully responded to Plaintiffs' discovery requests, answering interrogatories and producing 20,898 pages of documents. Meanwhile, written discovery has hardly even begun for Plaintiffs, even at this late date. Plaintiffs have produced a mere 1,184 pages of documents (many of which are already on the public docket) since discovery started nearly two years ago. To date, Plaintiffs have produced not a single communication or email and continue to refuse to do so by asserting a blanket associational privilege over all such communications. Plaintiffs have yet to provide *any* responses to Defendants' Third Set of Interrogatories, served over a year ago. And Plaintiffs' recent privilege log and subsequent filings demonstrate that they have *yet* to review the over 115,000 pages of documents that they seek to withhold under an associational privilege that, accounting for the requirements set by this Court's prior orders, they have already waived. *See* Dkt. 258 ("Failure to oblige shall constitute a waiver of the privilege or any objection to discovery, and Plaintiffs will be ordered to fully comply with the Discovery Order at risk of serious sanctions."). And Plaintiffs have substantially benefitted from their delays—they have

now been in possession of Defendants' responses and 20,000 of pages documents for more than a year. That continued asymmetry is a prejudice to Defendants that cannot easily be cured.

Meanwhile, discovery has dragged on in a most painful fashion. Plaintiffs have continued to "delay or disrupt discovery" and to preclude Defendants and the Court from receiving information "critical to the [RFRA] inquiry" about "Plaintiffs' organization, the safety of its practices, those who lead or attend its ceremonies, and how it imports, handles, stores, or transports ayahuasca." Dkt. 220 at 1-2. The Court's scheduling orders have repeatedly been revised, become stale, and been revised again. All the while, Defendants and the Court have been forced to expend tremendous energy and resources to obtain even minimal progress in this case. To put this last point in proper perspective, it is worth noting that despite the passage of more than *thirteen months* since Plaintiffs were first ordered to amend their *initial* discovery responses on February 22, 2024,[5] and notwithstanding the filing of 77 entries on the Court's docket since then, Plaintiffs have not produced a single additional document in discovery, updated their written responses, verified their answers, or otherwise complied with the substance of the Court's discovery orders, or responded *at all* to Defendants' Third Set of Interrogatories propounded in February 2024. Defendants stand ready to litigate this case and have expended significant time and resources fulfilling their discovery obligations. Plaintiffs, who initiated this lawsuit, should be required to do the same, or be construed to have abandoned their claims.

---

[5] Defendants have since raised additional issues with Plaintiffs' responses to Defendants' Second Set of Interrogatories. *See* Dkt. 225. The Court has not yet ruled on Defendants' statement of those issues.

**CURRENTLY PENDING ISSUES**

As surveyed above, numerous motions and disputes are pending on the Court's docket. The chart below reflects Defendants' attempt to catalogue the pending matters.

| Motion or Joint Statement of Disputes | Date Filed | Status |
|---|---|---|
| Joint Statement of Dispute over Plaintiffs' Responses to Defendants' Second Set of Interrogatories, Dkt. 225. | March 8, 2024 | Open |
| Joint Statement of Dispute Over Plaintiffs' Outstanding Discovery Obligations, Dkt. 261. | December 20, 2024 | Open |
| Defendants' Statement on Defendants' Objection to Plaintiffs' 30(b)(6) Deposition Notice of DEA, Dkt. 265 | January 2, 2025 | Open |
| Joint Statement of Disputes Regarding Rule 16 Scheduling Order, Dkt. 271. | January 13, 2025 | Open |
| Plaintiffs' Motion to Compel Deposition and Production of Documents, Dkt. 272. | January 14, 2025 | Open |
| Plaintiffs' Motion to Compel Defendants to Organize and Label Their Document Production, Dkt. 273. | January 14, 2025 | Open |
| Plaintiffs' Motion For Order Amending the Court's Discovery Dispute Rule to Allow the Filing of Discovery Motions, Dkt. 274. | January 14, 2025 | Open |
| Plaintiffs' Motion for Extension of Time for The Parties to Fulfill Meet-And-Confer Obligations, Dkt. 276. | January 17, 2025 | Moot |
| Defendants' Motion for Leave to File Under Seal, Dkt. 279. | February 1, 2025 | Moot |
| Plaintiffs' Motion for Protective Order and Motion for Order to Show Cause, Dkt. 288. | March 5, 2025 | Open |
| Joint Statement of Dispute Regarding Plaintiffs' Privilege Log, Dkt. 291. | March 6, 2025 | Open |

In addition, for the Court's reference, Defendants also are attaching, as Exhibit A, a chart summarizing the current status of each party's written discovery requests. At a high level, Exhibit A reflects that, on December 10, 2024, Defendants produced their final 63

15

documents, completing document production in accordance with the Court's orders and the Federal Rules by producing more than 20,000 pages of documents in discovery. *See* Ex. A, at 4. By contrast, Plaintiffs, have not, since the stay was lifted in September 2024, produced a single additional document or any responses to Defendants' outstanding discovery requests. *See id.* at 2. Plaintiffs still owe responses to numerous discovery requests, and they have not provided Defendants with an estimated date for completing their responses.

## THE NEED FOR A STATUS CONFERENCE

Given the extraordinary and difficult history of this case detailed briefly above, the recent recusals of Judge Silver, Judge Lanham, and Judge Logan, the imminent departure of Defendants' counsel from the United States Department of Justice, and the numerous disputes pending before the Court, Defendants respectfully submit a status conference is warranted at this time.

Defendants believe that a status conference would be helpful to set the stage for this case to be litigated to a conclusion. The currently operative Case Management Plan has again been overcome by Plaintiffs' intransigence. And as summarized above, there are no fewer than nine open motions and other disputes pending on the Court's docket. Defendants note this Court's general rule that dismissal may be imposed as a consequence for a party's noncompliance with court orders. *See* Judge Humetewa's Preliminary Order in Civil Cases, https://perma.cc/XG2Y-4XR5, at 4 ("The parties are specifically admonished that failure to prosecute, to comply with court orders, or to comply with the local and federal rules may result in dismissal of all or part of this case, default, imposition of sanctions, or summary disposition of matters pending before the Court."). In addition, Judge Silver repeatedly warned Plaintiffs that failure to comply with her discovery orders, and continued delays by Plaintiffs' counsel would result in sanctions.[6] Defendants respectfully submit that that

---

[6] *See* Dkt. 218 at 1 ("Any attorney who subverts opposing counsel's ability to obtain timely discovery will be subject to sanctions."); Dkt. 220 at 20 ("This dispute is another of Plaintiffs' attempts to delay or disrupt discovery. *Plaintiffs are on notice* that the Court will impose sanctions—including liability for excessive costs and fees, prohibiting Plaintiffs from

16

standard is met here, and the Court may wish to hear from Plaintiffs why their conduct to date does not warrant dismissal of this case.

At minimum, Defendants expect that a status conference with the Court, following the transfer of this matter to Judge Humatewa, will provide an opportunity to clarify the Court's expectations regarding the parties' outstanding and potential future disputes. As noted above, Plaintiffs' recent motions were filed in defiance of Judge Silver's requirement that discovery disputes be presented through a joint statement process. Other disputes, namely those raised by Defendants, were submitted to the Court pursuant to Judge Silver's joint statement requirements. If this case is to continue, clarifying the Court's expectations and the status of the parties' outstanding disputes is necessary to get the case moving again.[7] As it stands, Defendants cannot move forward with this case without discovery from Plaintiffs.

In the alternative, Defendants ask that the Court enter an order (1) requiring Plaintiffs to complete their written discovery responses no later than 30 days after the Court resolves their pending claim of associational privilege, (2) requiring Plaintiffs to file a certification with the Court once they have completed their written discovery responses and document productions, and (3) directing the parties to file proposed schedules for all remaining case deadlines no later than 14 days after Plaintiffs file such certification with the Court.

## CONCLUSION

For these reasons, Defendants request that the Court hold a status conference in this case before April 21, 2025.

---

supporting or opposing designated claims or defenses, and dismissal of the action—for any further obstruction or failure to meet discovery obligations."); Dkt. *See* Dkt. 234 ("Plaintiffs are again cautioned that further obstruction or failure to meet discovery obligations will result in sanctions—including liability for excessive costs and fees, prohibiting Plaintiffs from supporting or opposing designated claims or defenses, and dismissal of the action.").

[7] As detailed above, the joint statement process for has proven difficult in this case because of Plaintiffs' abusive litigation conduct. A status conference would provide the Court with an opportunity to establish more effective procedures to ensure Plaintiffs' behavior is addressed in a timely and enforceable way.

17

Dated: April 7, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Cody T. Knapp*
CODY T. KNAPP
LISA NEWMAN
BONNIE E. DEVANY
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-1318
E-mail: cody.t.knapp@usdoj.gov

*Attorneys for Defendant*