YAAKOV M. ROTH
Acting Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney (D.C. Bar No. 1021577)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly *et al.*,<br><br>                Plaintiffs,<br>   v.<br><br>Pamela Bondi, Attorney General of the United States, *et al.*,<br><br>                Defendants. | No. CV-20-02373-PHX-DJH<br><br>**SUPPLEMENTATION OF DEFENDANTS' SECOND SET OF INTERROGATORIES (DKT. 309)** |

On December 20, 2023, Defendants served their Second Set of Interrogatories on Plaintiffs. Dkt. 255, at 21 (Ex. A). Plaintiffs provided their responses on February 6, 2024. Dkt. 255, at 35 (Ex. B). On March 8, 2024, Defendants provided a Joint Statement to the district court regarding Plaintiffs' deficient responses, wherein Plaintiffs did not provide a position as required by the district court's Joint Statement procedure. Dkt. 225, at 2. The case was stayed shortly thereafter.

At the April 17, 2025 hearing,[1] the district court, on consideration of that pending Joint Statement, directed each side to supplement certain interrogatories, responses, objections, and positions by May 16, 2025. Dkt. 309, at 2-3. Pursuant to those instructions, Defendants provide their supplementation below.

---

[1] At that hearing, the Court also instructed that Defendants provide a list of custodians to Plaintiffs. *See* Dkt. 319, at 2. On May 16, 2025, Defendants provided that list to Plaintiffs' counsel via e-mail.

* * *

**DEFENDANTS' INTERROGATORY 6**

**Defendants' Interrogatory (Dkt. 225, at 7):**

Rog 6: Describe your plans for importing, manufacturing, storing, transporting, and distributing ayahuasca, including:

a. The importers and recipients of the shipments;

b. Where the ayahuasca will be shipped to;

c. The quantity and form of imported ayahuasca;

d. Where and who will manufacture the ayahuasca;

e. Where and how the ayahuasca will be transported once it has been received in the United States (including all in and out-of-state locations to which AYA will transport such ayahuasca);

f. The amount of ayahuasca that will be consumed at each ceremony;

g. All physical locations for which you will be seeking a DEA registration, and;

h. Procedures for recordkeeping.

**Plaintiffs' Response & Objection (Dkt. 225, at 7):**

Plaintiffs' Response: Plaintiffs' Short Term Plans: Plaintiffs will import Ayahuasca manufactured in Peru by secret means, and store it in a secret location in the District of Arizona under the sole control of Plaintiff Stanley, who shall be responsible for the storage, transportation and distribution of Ayahuasca exclusively in AYA ceremonies. "Plaintiffs' secrecy does not show a lack of sincerity. Instead, it shows that plaintiffs remained committed to practicing their religion despite the threat of criminal prosecution and loss of professional status." *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 210, 1219 (D. Or. 2009). Plaintiffs' Long Term Plans: Plaintiffs plan to get a DEA number(s) and disclose all of their importation information in detail on the required DEA forms.

a. The importers and recipients of the shipments[:] Scott Stanley.

b. Where the ayahuasca will be shipped to[:] A secret location in the District of Arizona.

c. The quantity and form of imported ayahuasca[:] The quantity is undetermined, but AYA will try to get enough to continue ceremonies every two weeks. If ceremonial Ayahuasca is unavailable, members of the congregation will gather to pray for the

restoration of their access to their sacrament. The form of Ayahuasca will be the standard two-ingredient combination of Banisteropsis Caapi and either Diplopterys Cabrerana or Psychotria Viridis.

    d. <u>Where and who will manufacture the ayahuasca</u>[:] Artisanal harvesters and manufacturers situated in Iquitos, Peru.

    e. <u>Where and how the ayahuasca will be transported once it has been received in the United States (including all in and out-of-state locations to which AYA will transport such ayahuasca)</u>[:] Plaintiffs have no plans to transport Ayahuasca anywhere except to the Arizona Maloka, or to one of the announced locations where ceremonies are held out of state.

    f. <u>The amount of ayahuasca that will be consumed at each ceremony</u>[:] Per capita consumption averages 1.0 – 1.5 ounces per ceremony.

    g. <u>All physical locations for which you will be seeking a DEA registration</u>[:] Unknown at present.

    h. <u>Procedures for recordkeeping</u>[:] Like the Oregon Santo Daime, AYA protects its sacrament from diversion, using it exclusively for AYA ceremony, and has not maintained written records; however, AYA is ready, willing and able to adopt and utilize the recordkeeping system that the Santo Daime have developed to track their DEA-regulated importations of Ayahuasca. "The government has not presented evidence that there is a significant market for Daime tea. The government also has not presented evidence that plaintiffs have allowed the diversion of a single drop of Daime tea. This is an issue best addressed through reasonable guidelines for storing and inventorying plaintiffs' supply of Daime tea." *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1220 (D. Or. 2009).

**Defendants' Position (Dkt. 225, at 8):**

Plaintiffs refuse to disclose crucial details about their plans to import, manufacture, store, transport, and distribute ayahuasca. Specifically, Plaintiffs have not disclosed: 6(a) the name of the importer (Scott Stanley is presumably the recipient), 6(b) the importation location (it's a "secret"), 6(c) the names of the manufacturers, 6(d) the quantity or form (i.e. liquid, paste, powder) of imported ayahuasca, 6(e) transportation details to "the Arizona Maloka" or to out-of-state ceremonies, 6(g) the DEA registration location—the precise remedy at issue, or 6(h)

any record keeping practice in which their assertion that they do not claim any written records strains credulity. "[I]nformation about sourcing, storage, transportation, and security of ayahuasca is relevant to potential diversion and safety risks posed by Plaintiffs' practices," and in minimizing the risk of diversion during the importation practices. See Dkt. 220 at 10-14. Plaintiffs claim that it is Defendants' obligation to present evidence of diversionary practices, an argument which this Court has already rejected. *Id.* at 19 ("Plaintiffs wrongly argue Defendants must articulate an occasion when Plaintiffs have encouraged illicit, recreational use of ayahuasca or diversion …").

**Plaintiffs' Position (Dkt. 225, at 8):**

None provided.

**Court Ruling (Dkt. 309, at 3):**

"Interrogatory #6 –Defendants' objections to Plaintiffs' responses are too vague. Defendants must identify which of Plaintiffs' answers are nonresponsive and state the relevance of the questions which Plaintiffs are nonresponsive to."

**Defendants' Supplemental Position:**

Defendants specify that the following answers from Plaintiffs are nonresponsive: 6(a), 6(b), 6(c), 6(d), 6(e), and 6(g).

- 6(a)
  - *Non-responsive nature*: Rog 6(a) called for Plaintiffs to provide the name of the "importers and recipients of the shipments." Plaintiffs answered Scott Stanley, i.e., the Plaintiff in this case for both items. Plaintiffs should specify whether there are any other parties involved in the importing process, and identify them as such.
  - *Relevance*: For any DEA registration, DEA must know the identity of the importer/exporter and recipient. Any individual that can be potentially registered must be vetted in advance as these are the individuals who are authorized to import the controlled substance. If other individuals involved with AYA plan on doing so, it is essential for DEA to know their identit(ies) so that those person(s) may be registered if it is appropriate to do so.

Identifying and vetting those involved in importing, exporting, and handling controlled substances is key to DEA's divergence efforts. In addition, this is relevant to CBP's ability to ensure that approved registrants can import lawfully at the relevant port of entry. Last, and more generally, this information is critical to identifying potential witnesses for this case.

- 6(b)
  - *Non-responsive nature*: Rog 6(b) asked for the location "where the ayahuasca will be shipped to," but Plaintiffs did not provide a location but rather stated "a secret location in the District of Arizona." Plaintiffs should provide a specific address.
  - *Relevance*: For any potential DEA registration, DEA must know the location of the registration, including where the ayahuasca is being shipped to. Any location that may be potentially registered must be subject to pre-registration inspection in advance as well as regular audits to ensure public safety and DEA's efforts to prevent diversion. It is essential for DEA to know the location of where Plaintiffs purport to register given that they seek a registration in this case. In addition, as a matter of safety, it is important for law enforcement to know the authorized location(s) of any potential registered site in the event of any medical emergency, report of theft, etc.
- 6(c)
  - *Non-responsive nature*: Rog 6(c) called for plaintiffs to provide "the quantity and form of imported ayahuasca." Both of Plaintiffs' responses are unresponsive. On quantity, Plaintiffs did not provide a specific amount and instead stated that "the quantity is undetermined, but AYA will try to get enough to continue ceremonies every two weeks." On form, Plaintiffs stated: "the standard two-ingredient combination of Banisteropsis Caapi and either Diplopterys Cabrerana or Psychotria Viridis." But the interrogatory did not ask Plaintiffs to identify the ingredients in their ayahuasca; rather, it asked about the *form* of the imported ayahuasca. Plaintiffs' answer did not explain whether those ingredients would be imported in the form of paste, liquid, or powder.
  - *Relevance*: The quantity and volume of ayahuasca is important for assessing the amount of the controlled substance (DMT) that is being imported. For

5

example, if Plaintiffs' importation volume does not align with the number of ceremonies that Plaintiffs intend to hold for a particular year, that might suggest some other illicit purpose relating to the volume of the controlled substance being imported. The form of the imported ayahuasca likewise matters as it relates to the logistics of any importation but also in assessing the amount of DMT actually being imported. In other words, the form of the importation would likely have an indication of the concentration of the DMT that is being imported as part of the ayahuasca.

- 6(d)
  - *Non-responsive nature*: When posed with the question of "where and who will manufacture the ayahuasca" in Rog 6(d), Plaintiffs did not provide a name but instead answered generally as follows: "[a]rtisanal harvesters and manufacturers situated in Iquitos, Peru." Plaintiffs should provide a specific name. In addition, this is inconsistent with their answer that they are importing the ingredients themselves that would later be brewed, i.e., manufactured, for the ceremony.
  - *Relevance*: Understanding the facts relating to who manufactures the ayahuasca that is in fact prepared for public consumption at an ayahuasca ceremony and where that manufacturing takes place is plainly relevant as to whether there are any safety or divergence risks. For example, DEA would likely have divergence and safety concerns if the ayahuasca was manufactured in a public space, or in a space where non-registered individuals may obtain unauthorized access. Likewise, the vetting of those involved in manufacturing ayahuasca that contains controlled substances and is being distributed to the public is relevant to assessing any diversion or safety risks. For example, it would be relevant to know if such persons have a criminal history relating to controlled substances. Last, and more generally, this information is critical to identifying potential witnesses for this case.
- 6(e)
  - *Non-responsive nature*: Defendants' Rog 6(e) called for Plaintiffs to provide "where and how the ayahuasca will be transported once it has been received in the United States (including all in and out-of-state locations to which AYA

6

will transport such ayahuasca)." But Plaintiffs seem to misread or misunderstand the interrogatory. They answer that "they have no plans to transport Ayahuasca anywhere except to the Arizona Maloka, or to one of the announced locations where ceremonies are held out of state." But they provide no information regarding plans for how to physically and logistically transport the controlled substance from the location it is received to the ceremony site.

- *Relevance*: For any potential DEA registration, DEA must know the transportation plan for moving the controlled substance between the shipment location and the ceremony location, and any stops in between. Transportation plans for any DEA registration are essential to ensure public safety and DEA's efforts to prevent diversion. For example, such information is relevant to understanding what steps are being taken to minimize potential diversion risks, including theft during transportation, whether the controlled substance is being transported securely, etc. In addition, as a matter of safety, it is important for law enforcement to know the authorized transporter of any controlled substance in the event of any medical emergency, report of theft, etc.

- 6(g)
  - *Non-responsive nature*: Defendants' Rog 6(g) called for Plaintiffs to provide "[a]ll physical locations for which you will be seeking a DEA registration." Plaintiffs in turn responded "[u]nknown at present." They should provide a specific address.
  - *Relevance*: It is essential for DEA to know the specific registration location that Plaintiffs themselves seek in this case. Any location that can be potentially registered must be subject to pre-registration inspection in advance as well as regular audits. In addition, as a matter of safety, it is important for law enforcement to know the authorized location in the event of any medical emergency, report of theft, etc.

7

**DEFENDANTS' INTERROGATORIES 10 & 11**

**Defendants' Interrogatory 10 (Dkt. 225, at 10):**

Please explain how "Kambo ceremony[ies]" and "the Divine Kambo Sacrament" relate to AYA's sincere religious beliefs.

**Plaintiffs' Response & Objection to Rog 10 (Dkt. 225, at 10):**

Plaintiffs' Response: Plaintiffs object that Interrogatory # 10 seeks information irrelevant to any matter at issue in this litigation and is not proportionate to the needs of the case. Plaintiffs will stand on the said objections.

**Defendants' Position re Rog 10 (Dkt. 225, at 10):**

Plaintiffs have refused to answer this interrogatory about the Kambo ceremonies it offers, claiming it is irrelevant and not proportionate to this case. But information relating to this topic is highly relevant: AYA itself holds out to the public as hosting two different kinds of ceremonies as part of their religious offerings to congregants: ayahuasca ceremonies and "kambo ceremonies." See Arizona Yage Assembly: Ceremonies, https://www.aya.guide/ceremonies (last visited Feb. 27, 2024). One of the two elements that Plaintiffs must prove as part of its prima facie RFRA case—and Defendants in turn are entitled to understand and evaluate—is its sincere religious beliefs. If AYA is a religious organization, and it offers two ceremonies as part of its practice, then Defendants seek to understand what, if any, religious links exist between the two ceremonies. How kambo fits into AYA's religious beliefs is relevant to this inquiry.

**Plaintiffs' Position re Rog 10 (Dkt. 225, at 10):**

None provided.

**Defendants' Interrogatory 11 (Dkt. 225, at 11):**

Please identify any and all instances of AYA hosting Kambo ceremonies. For each instance of a Kambo ceremony, please identify:

a. The date and location of each and every instance in which you held a ceremony;

b. How kambo was brewed, distributed, consumed, destroyed/disposed of, or otherwise present;

8

c. How AYA acquired kambo, including any potential supplier or importer;

d. Any other substance consumed by any person or offered for consumption, including whether ayahuasca was taken in conjunction with kambo;

e. Who was present at the ceremony;

f. Who was responsible for handling any substances consumed by any person or offered for consumption; and

g. Who served in a leadership role and/or position of authority at the ceremony (e.g., Minister of the Assembly, "lead facilitator," other facilitator).

**Plaintiffs' Response & Objection to Rog 11 (Dkt. 225, at 11):**

(a-d) Objections: Irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case. Plaintiffs will stand on the said objections. (e-g) Objections: Irrelevant to the determination of any claim or defense, overbroad and disproportionate to the needs of the case. Requires a compilation of information that can be provided only by revealing the contents of papers as to which AYA's correspondents have a reasonable expectation of privacy, that are protected from disclosure by the warrant requirement of the Fourth Amendment, and that Plaintiffs have no authority to consent to disclose. Invades the First Amendment free speech rights of AYA's correspondents, encroaching on promises of confidentiality AYA has made to AYA's correspondents. Invades the confidentiality of medical records (ARS § 12-2292). Violates AYA's right under the Establishment Clause to be free of government process probing internal church activities. Colo. Christian Univ. v. Weaver, 534 F.3d 1245, 1264 (10th Cir. 2008)(state regulatory scheme demanding disclosure of church's expenditures unconstitutional), quoting Surinach v. Pesquera De Busquets, 604 F.2d 73, 78 (1st Cir. 1979). Plaintiffs will stand on the said objections.

**Defendants' Position re Rog 11 (Dkt. 225, at 11-12):**

Plaintiffs have refused to answer this interrogatory about the Kambo ceremonies it offers, claiming it is irrelevant and not proportionate to this case. But information relating to this topic is highly relevant: AYA itself holds out to the public as hosting two different kinds of ceremonies as part of their religious offerings to congregants: ayahuasca ceremonies and "kambo ceremonies." See Arizona Yage Assembly: Ceremonies,

9

https://www.aya.guide/ceremonies (last visited Feb. 27, 2024). One of the two elements that Plaintiffs must prove as part of its prima facie RFRA case—and Defendants in turn are entitled to understand and evaluate—is its sincere religious beliefs. If AYA is a religious organization, and it offers two ceremonies as part of its practice, then Defendants seek to understand what, if any, religious links exist between the two ceremonies. How kambo fits into AYA's religious beliefs is relevant to this inquiry.

**Plaintiffs' Position re Rog 11 (Dkt. 225, at 11):**

None provided.

**Court Ruling (Dkt. 309, at 3):**

"Interrogatories ## 10 & 11 – Plaintiffs objections are sustained. Defendants may separately inform the Court and Plaintiffs about the relevance of "Kambo" ceremonies so the Court can assess whether responses are necessary."

**Defendants' Supplemental Relevance Explanation:**

AYA offers to the public as hosting two different kinds of ceremonies as part of their religious offerings to congregants: ayahuasca ceremonies and "kambo ceremonies." *See* Arizona Yage Assembly: Ceremonies, https://www.aya.guide/ceremonies (last visited May 16, 2025) (offering both ayahuasca and kambo ceremonies to the public). Kambo appears to involve ingesting the toxic secretions of a specific kind of frog. *See, e.g.*, Adrienne Santos-Longhurst, What's the Deal with Kambo and Frog Medicine?, HEALTHLINE (Jan. 9, 2020), https://www.healthline.com/health/kambo; Ashley Harrell, Why Californians Are Poisoning Themselves with Frog Toxins, SFGate (Aug. 8, 2023) https://www.sfgate.com/bayarea/article/californians-poisoning-frog-toxins-kambo-ceremony-18282817.php;. If Plaintiffs are no longer engaging in Kambo ceremonies, they should state as much. If they are, then they should explain what the religious link is between ayahuasca ceremonies and Kambo ceremonies. One of the two elements that Plaintiffs must prove as part of its prima facie RFRA case is their sincere religious beliefs. If there are multiple kinds of ceremonies occurring at AYA retreats, then that is essential to this inquiry, and Defendants are entitled to learn more about that in preparing their defense to the RFRA case.

In addition, Defendants are concerned from a safety and divergence perspective not only

about ayahuasca being used in Plaintiffs' ceremonies, but also other substances that pose a danger to public health and safety. According to its own website, AYA has access and offers kambo to the public. In a recent case of another purported ayahuasca church, Soul Quest, a participant in the ayahuasca ceremony also ingested kambo, which ultimately resulted in his death. Indeed, his estate recently prevailed in a wrongful death claim. Mattha Busby, *Wrongful Death Verdict Puts Hard Questions to Psychedelic Community,* FILTER (June 5, 2024) https://filtermag.org/brandon-begley-soul-quest-wrongful-death/. This is in addition to other deaths. *See, e.g.*, Joe Hinchcliffe, New Witnesses Offer Fresh Information into 'Kambo' Death at Northern NSW Spiritual Retreat, GUARDIAN (Feb. 19, 2024), https://www.theguardian.com/australia-news/2024/feb/20/jarradantonovich-yahuasca-kambo-death-nsw-retreat-kyogle-new-witnesses-inquest-paused.

**DEFENDANTS' INTERROGATORY 13**

**Defendants' Interrogatory 13 (Dkt. 225, at 14):**

Rog 13: Identify all churches, congregations, religions, denominations, religious organizations, sects, or spiritual organizations with which Mr. Stanley is or has been affiliated or involved in any way (including but not limited to employment, direction, management, advising, consulting, volunteering, membership, or participation in activities). Parent organizations, subsidiary organizations, and branches of a single organization are to be considered separate organizations for purposes of this interrogatory. For each group that you identify:

   a. Identify the group and describe the nature of Mr. Stanley's involvement, including providing the title(s) of any positions that he has held and describing the duties of each position.

   b. Identify the time periods of Mr. Stanley's affiliation or involvement with the group.

   c. State Mr. Stanley's beginning and ending (or current) salaries or compensation, if he received a salary or compensation.

**Plaintiffs' Responses & Objections (Dkt. 225, at 14-15):**

Plaintiffs object to this question as not proportional, and directed at obtaining information that would be of no evidentiary value to the Court in deciding any matter in dispute based upon the allegations of the Fifth Amended Complaint and the defendants' Answer (the "Pleadings"). Aside from Mr. Stanley's being the Founder of AYA, Plaintiffs have no further information to provide. For each group that you identify:

a. <u>Identify the group and describe the nature of Mr. Stanley's involvement, including providing the title(s) of any positions that he has held and describing the duties of each position</u>[:] Mr. Stanley is the Founder and Sole Director of the AYA Board. He has authority over all of the activities of AYA.

b. <u>Identify the time periods of Mr. Stanley's affiliation or involvement with the group</u>[:] Mr. Stanley formed AYA as an Arizona corporation on June 15, 2015, and has been the Founder and Director since that date. Plaintiffs object to providing any further response to this question because it is directed at obtaining information that would be of no evidentiary value to the Court in deciding any matter in dispute based upon the allegations of the Pleadings.

c. <u>State Mr. Stanley's beginning and ending (or current) salaries or compensation, if he received a salary or compensation</u>[:] Plaintiffs object on the grounds that the Defendants seek

information protected from disclosure by the First Amendment. "[I]n the sensitive area of First Amendment religious freedoms, the burden is upon the state to show that implementation of a regulatory scheme will not ultimately infringe upon and entangle it in the affairs of a religion to an extent which the Constitution will not countenance." Bangor Baptist Church v. Me., Dep't of Educ. & Cultural Servs., 549 F. Supp. 1208, 1221 (D. Me. 1982). Colo. Christian Univ. v. Weaver, 534 F.3d 1245, 1264 (10th Cir. 2008)(state regulatory scheme demanding disclosure of church's expenditures unconstitutional), quoting Surinach v. Pesquera De Busquets, 604 F.2d 73, 78 (1st Cir. 1979). Plaintiffs further that this question because it is directed at obtaining information that would be of no evidentiary value to the Court in deciding any matter in dispute based upon the allegations of the Pleadings. Without waiver of the above objections, Plaintiffs respond that Plaintiff Stanley does not receive a set salary from AYA.

**Defendants' Position (Dkt. 225, at 15):**

Plaintiffs' response to this interrogatory is unresponsive and insufficient. Plaintiff does not deny that Stanley has no other affiliations. Rather, he states that "Aside from Mr. Stanley's being the Founder of AYA, Plaintiffs have no further information to provide." That is unresponsive. If Stanley has no other affiliations, then he should deny that he has them and do so in clear terms. Otherwise, he must disclose them. The Court has already ordered Plaintiffs to provide similar information. See, e.g., Dkt. No. 220, at 17 (Rog 23 ordering Plaintiffs to provide information relating to the "identity of every organization of which any of the Plaintiffs is a member" as "information [that] is relevant to whether these ayahuasca related beliefs are genuine and religious in nature.") In addition, as to 13(c) above, specifically, "without waiver of [their] objections, Plaintiffs respond that Plaintiff Stanley does not receive a set salary from AYA." In so answering, Plaintiffs ignore the interrogatory, which called for Plaintiffs to "State Mr. Stanley's beginning and ending (or current) salaries or compensation, if he received a compensation." Plaintiffs should disclose whether there is any compensation (as opposed to a salary), or a salary that is not "set."

**Plaintiffs' Position (Dkt. 225, at 15):**

None provided.

13

**Court Ruling (Dkt. 309, at 3):**

"Interrogatory #13 – The Court finds this interrogatory overbroad. Defendants must narrow their question or withdraw it."

**Revised Interrogatory 13:**

Other than AYA, please explain whether Mr. Stanley has been affiliated or involved with any other purported churches, congregations, religions, denominations, religious organizations, sects, or spiritual organizations. For each group that you identify:

    a. Describe the nature of Mr. Stanley's involvement, including providing the title(s) of any positions that he has held and describing the duties of each position.

    b. Identify the time periods of Mr. Stanley's affiliation or involvement with the group.

Dated:  May 16, 2025                  Respectfully submitted,

                                                YAAKOV M. ROTH
                                                Acting Assistant Attorney General

                                                ANDREW I. WARDEN
                                                Assistant Branch Director

                                                */s/  Giselle Barcia*
                                                GISELLE BARCIA
                                                Trial Attorney (D.C. Bar No. 1021577)
                                                Civil Division, Federal Programs Branch
                                                United States Department of Justice
                                                1100 L Street, NW
                                                Washington, DC 20005
                                                Telephone: (202) 305-1865
                                                Fax: (202) 514-8640
                                                E-mail: giselle.barcia@usdoj.gov

                                                *Counsel for Defendants*