CHARLES CARREON (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Tel: 928-975-2191
Email: chascarreon@gmail.com

MELISSA DEAN (FLSB#1031982)
111 N. Orange Ave, Ste. 800
Orlando, FL 32801
Tel: 772-919-2748
Email:melissadeanesq@gmail.com

Attorneys for Plaintiffs Arizona Yagé Assembly and
Winfield Scott Stanley III
*Pro hac vice*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly, and Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly, , <br><br> Plaintiffs, <br><br> vs. <br><br> Merrick Garland Attorney General of the United States; et al. <br><br> Defendants. | Case No.:20-CV-02373-ROS <br><br> PLAINTIFFS' MOTION FOR EXTENSION OF TIME FOR THE PARTIES TO FULFILL MEET-AND-CONFER OBLIGATIONS AND CLARIFICATION OF JOINT STATEMENT PROCEDURE |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE

that Plaintiffs hereby move pursuant to F.R.Civ.P. 6(b) for an extension of time to complete the

process of meeting and conferring with opposing counsel and for clarification of the joint statement

procedure. Counsel for the parties met and conferred on June 3, 2025. On Monday evening, June 23,

2025, Defendants circulated a draft joint statement which Plaintiffs received the next morning. On

June 25, 2025, a material discrepancy was discovered in the Protective Order (Dkt. 217) that the parties

extensively negotiated and agreed to exclude. Plaintiffs' counsel needs adequate time to prepare

thorough and substantive responses to the nine (9) issues and fourteen (14) sub issues raised in

Defendants' draft. Additional time is necessary for counsel to fulfill their meet-and-confer obligations

and ensure that any jointly filed statement of dispute reflects a genuine, good-faith effort by the parties

to resolve and narrow disputes collaboratively before seeking this Honorable Court's intervention.



Dated: June 26, 2025

_____

MELISSA DEAN (1031982)
CHARLES CARREON (127139)
Attorneys for Plaintiffs
Arizona Yagé Assembly,
Winfield Scott Stanley III

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.   Relief Requested: An Extension to Fulfill Meet-and-Confer Obligations Prior to Filing Statements of Dispute**

Plaintiffs respectfully request an extension of the current deadline to allow the parties to complete their meet-and-confer obligations in good faith prior to filing a joint statement of discovery dispute.

Since January 14, 2025, undersigned counsel has consistently emphasized that—despite Defendants' concerns about Plaintiffs' categorical privilege log—even with the benefit of eDiscovery software, further refinement of the privilege log is not feasible without first establishing a workable ESI protocol and negotiating narrowed search terms to address the scope and proportionality of Defendants' broad "any and all" demands.

On April 29, 2025, this Court issued its discovery dispute procedures, requiring the parties to "meet and confer (in person or by telephone) and **make sincere efforts to resolve the matter**, as required by LRCiv 7.2(j) and Fed. R. Civ. P. 37(a)(1)." (Order Dkt. 316 at 2) (emphasis added).

On May 23, 2025, the Court further ordered the parties to meet and confer by June 13, 2025, regarding any disputes concerning Plaintiffs' revised categorical privilege log, and to file a joint statement by June 27, 2025, addressing any remaining issues. (Order Dkt. 323).

The parties held their first—and only—meet and confer on this subject on June 3, 2025, at 2:30 PM. At the conclusion of that call, Plaintiffs were advised that Defendants would initiate the joint statement process shortly.

However, it was not until Monday, June 23, 2025, at 10:48 PM—twenty days later and just four days before the filing deadline—that Defendants circulated a draft joint statement raising nine (9) issues with fourteen (14) sub-issues concerning Plaintiffs' May 16 privilege log. Defendants requested that Plaintiffs' provide substantive responses by the end of the day on Thursday, June 26, 2025.

On June 24, 2025, the day after receiving Defendants' draft, Plaintiffs' counsel left a voicemail and followed up via email at 4:27 PM to request that Defendants stipulate to a two-week extension of the current deadline. The purpose of the requested extension was to allow both parties to properly

meet and confer, resolve or narrow the outstanding disputes, and finalize a joint statement in accordance with both the letter and spirit of the Court's directive in Order Dkt. 323.

In that correspondence, Plaintiffs' counsel noted that under Order Dkt. 218, the receiving party is permitted five business days to respond to a circulated dispute statement. Moreover, pursuant to Fed. R. Civ. P. 6(a)(1)(A), Plaintiffs' earliest response deadline would be Monday, June 30, 2025. Defendants' timeline, however, effectively compressed Plaintiffs' response window to three business days, with the joint statement still due Friday, June 27, 2025.

Plaintiffs also advised that their client, Mr. Stanley, is currently traveling internationally with virtually no connectivity, and cannot be consulted until at least June 29, 2025. Because his input is necessary to finalize Plaintiffs' positions—particularly on central issues raised in Defendants' draft—Plaintiffs cannot ethically present those positions to the Court without authority or prior consultation. Upon initial review of Defendants' draft, Plaintiffs anticipate raising new issues for discussion that merit inclusion in the joint statement if unresolved. Plaintiffs also recognized that Defendants would likely require adequate time to respond and confer on these new points.

Counsel further explained that, before drafting any substantive responses, it would be necessary to thoroughly research and review the relevant materials, consult with Mr. Stanley, and engage in a meaningful conferral with Defendants' counsel. To facilitate this, Plaintiffs proposed that the parties stipulate to a reasonable extension to fulfill their meet-and-confer obligations and narrow—if not resolve—the scope of the issues to be presented to the Court. Plaintiffs offered to draft and circulate a stipulation to that effect.

As part of these ongoing efforts to comply with Dkt. 323, Plaintiffs also provided Defendants with an updated individualized privilege log, extracted directly from DISCO and limited to documents already produced on June 6, 2025. Plaintiffs' counsel reiterated that as fluency with the software and refinement of workflows continues, the privilege log will likewise continue to improve in clarity and consistency—just as Plaintiffs have consistently represented throughout this process.

On Wednesday, June 25, 2025, at 10:19 AM, Defendants responded via email, objecting to Plaintiffs proposed two-week extension and declining to recognize the five-business-day response window permitted by Dkt. 218. Defendants offered only a short, two-part extension limited to

allowing counsel time to consult with the client, but not to accommodate the full scope of the conferral and drafting process. That same day, Plaintiffs' counsel left an additional voicemail.

Later that evening, at 7:07 PM, Defendants returned the undersigned's earlier voicemail. During the call, Plaintiffs' counsel reiterated that, in addition to the client's total unavailability to authorize any final positions before the current Friday deadline, she is attending the Florida Bar Annual Convention this week, further constraining her ability to prepare substantive responses to the circulated draft.

Although the discussion remained collegial, Defendants expressed no willingness to further meet and confer after receiving Plaintiffs' forthcoming positions, asserting instead that the parties had already fully satisfied their meet-and-confer obligations during the June 3, 2025 call. Defendants also took the position that the existing Protective Order (Dkt. 217) "cures" any risk of associational harm, citing the inclusion of an Attorneys' Eyes Only (AEO) designation as sufficient protection. Plaintiffs' counsel responded that she would confer with both Lead Counsel and her client on the AEO issue on this point, but would need adequate time to do so before taking any position.

Following the call, the undersigned conferred with Lead Counsel, Attorney Charles Carreon, regarding Defendants' position on the Protective Order. During that discussion, it became immediately apparent that Plaintiffs' Lead Counsel was unaware that the AEO provision had been included in the final stipulated PO. He expressed the clear understanding that the parties had intentionally excluded that provision after extended negotiation and agreement.

Given that multiple changes in representation and judicial assignment have occurred since the original PO negotiations, the undersigned promptly reviewed the procedural record. That review revealed evidence suggesting that the parties had in fact reached agreement to omit the AEO provision, and that its inclusion in the final proposed PO may have been inadvertent. Upon review of the docket, the following timeline reflects the procedural history of the Protective Order and the Attorneys' Eyes Only ("AEO") provision:

- **Dkt. 205 - Joint Statement Dispute on PO Provisions + Dkt. 205-1 - Redlined PO**
  - July 13, 2023 - Defendants circulated the initial draft PO to Plaintiffs.
  - July 19, 2023 - Plaintiffs objected to the Attorneys' Eyes Only provision.

- o November 29, 2023 - "Defendants agreed to remove an attorneys' eyes only provision in the PO because it would prejudice AYA."
- o July 24, 2023–November 30, 2023 - At least five PO meet and confers occurred.
- o December 4, 2023 - Joint Statement was filed on two separate issues.
- **Dkt. 210 - Order on Joint Statement on PO Provisions**
  - o January 20, 2024 – Order resolving only the two remaining disputed PO issues.
- **Dkt. 215 - Stipulated Proposed PO**
  - o January 27, 2024 - Defendants filed the "stipulated" proposed PO, with AEO language included.
- **Dkt. 217 – The Protective Order -** January 31, 2024
- **Dkt. 220 - The Discovery Order -** February 22, 2024

This timeline indicates that although the parties spent months negotiating the exclusion of the AEO provision—and had reached agreement on that point—it was nevertheless included in the final stipulated Protective Order without clear explanation. The undersigned has no access to any written communications clarifying how or why this provision reappeared.

On Wednesday, June 25, 2025, at 11:20 PM, the undersigned promptly brought this issue to Defendants' attention via email, stating:

"If Defendants have any insight or additional records to clarify how this provision made it into the final version, it would be helpful for me to discuss that with my client when he returns. At present, I don't have access to any communications between the parties about how the AEO language ended up in the final stipulation after prior agreement to exclude it. Given the time and energy the parties invested in resolving that specific issue, it's reasonable to suspect that its reappearance may have been an oversight and perhaps the wrong copy was filed….

In the interest of moving this case forward efficiently, I believe we should each look into this on our end and then confer once I've had the opportunity to review the matter in detail with Mr. Stanley and my co-counsel. Since the current dispute is centered on Dkt. 220, if the parties intended to exclude the AEO I'm sure that fact would materially affect Plaintiffs' position in the finalized joint statement."

On Thursday morning, June 26, 2025, Defendants responded via email:

"Thanks for flagging this issue. I have been relying on the PO that was entered, and not the procedural history underlying the PO. But I'm happy to look into this issue further."

Plaintiffs appreciate Defendants' willingness to revisit the matter and believe that further investigation and conferral on this point is essential to resolving the privilege-related disputes currently at issue in the joint statement process. Plaintiffs provided a draft of this motion to Defendants on Thursday, June 26, 2025, at 4:25 PM.

## 2. This Rule 6(b) Motion is Properly Filed *Ex Parte* Prior to the Expiration of the Time for Plaintiffs

This motion is timely and properly brought under Federal Rule of Civil Procedure 6(b)(1)(A), which permits the Court to extend time:

"for good cause…with or without motion or notice if the court acts, or **if a request is made, before the original time** or its extension expires." (Emphasis added.)

## 3. Defendants Intend to Unilaterally File a Statement of Dispute Without Adequate Conferral

Defendants have indicated their intent to unilaterally file a statement of dispute if Plaintiffs do not provide responses by June 27, 2025, or the Court does not grant the relief requested.

This approach is inconsistent with the purpose and structure of the joint statement procedure as articulated by the Ninth Circuit and district courts. As explained in *Om Recs., LLC v. OM Development, SAS*, the purpose of the joint-letter process is for the parties to "see each other's positions and arguments, respond to them, re-respond to the responses, etc., and thereby (1) try to find areas of compromise and (2) narrow, sharpen, and focus the issues they cannot resolve before they present those issues to the court." *Om Recs.*, No. 23-cv-04506-JSW (RMI), 2024 U.S. Dist. LEXIS 160866, at *21 (N.D. Cal. Sept. 6, 2024).

Similarly, in *Mi Familia Vota v. Fontes*, 344 F.R.D. 496 (D. Ariz. 2023), the Court emphasized the value of prolonged, iterative engagement over privilege logs, ESI protocol, and search parameters. There, the parties conferred over those matters for more than **nine months**, with the sufficiency of the RPA's privilege log negotiated from February 2022 through August 2023. The Court evaluated

the totality of those efforts before ruling, even as RPA resisted narrowing and refused to utilize technological tools to reduce burden.

In contrast, Plaintiffs in this case were given just **five days** from the Court's approval of initial search terms complete their review and submit the May 16 categorical privilege log. While Plaintiffs maintain that the May 16 categorical log is sufficiently compliant sufficient under FRCP 26(b)(5), unlike the RPA in *Mi Familia*, Plaintiffs are continuing to refine the presentation of privilege assertions, have financially invested in eDiscovery tools, devoted substantial hours to review, and offered to confer with Defendants on scope limitations and relevance. Despite Plaintiffs' resource limitations—especially in comparison to the RPA in *Mi Familia*—Plaintiffs continue to devote substantial time to complying with their discovery obligations and refining their assertions under FRCP 26(b)(5).

However, Defendants circulated their draft joint statement on June 23, 2025, raising 23 issues and requiring full responses within three business days—despite:

- Plaintiffs' client, Mr. Stanley, being unavailable until July 1;

- Counsel attending the Florida Bar Annual Convention;

- No prior written specificity being provided before June 24.

Defendants assert that no additional meet-and-confer is required and that the issues are "beyond the conferral stage." Plaintiffs respectfully disagree. Clearly, Ninth Circuit precedent confirms that the joint statement process is intended to promote real, iterative negotiation—not surprise filings or compressed unilateral deadlines to respond. Since Defendants first circulated the draft statement of dispute, Plaintiffs have consistently maintained that, given the significant constitutional rights at stake, it is essential for any joint statement submitted to this Honorable Court to reflect that the parties have thoughtfully narrowed the issues. Additionally, any issues presented to the Court should demonstrate that counsel for both parties have made a genuine, sincere and collaborative effort to resolve as many issues as possible.

Now that Plaintiffs have Defendants' positions in writing, Plaintiffs are reviewing in good faith and intend to respond constructively, but that process cannot be condensed into 3 business days. Additionally, the AEO provision now at the center of dispute was expressly negotiated out of the PO,

and while its inclusion may have been inadvertent—it is an issue that materially affects Plaintiffs' ability to finalize their joint statement positions on the scope of associational privacy before tomorrow's deadline.

Defendants dispute the categorical privilege log that Plaintiffs produced pursuant to this Court's Order (Dkt. 318) on May 16, 2025, and assert that the current Protective Order (Dkt. 217) is sufficient to protect Plaintiffs' associational privacy interests. Given the significant constitutional issues at stake, Plaintiffs assert that the short deadline imposed by Defendants does not provide sufficient time to draft substantive responses or for the sincere effort necessary to resolve and or narrow these nuanced issues. This timeline is inadequate for Plaintiffs' counsel to thoroughly assess the validity of the challenges, consult with their client, formulate a legally sound position, present an argument, and obtain authority to engage in meaningful meet-and-confer discussions before finalizing a position.

Furthermore, the undersigned counsel is consistently working to improve fluency with the privilege log functionality of Plaintiffs' e-discovery software and is training law clerk on individualized document review.

Since first raising ESI issues with Defendants' prior counsel on December 16, 2024, Plaintiffs have repeatedly emphasized the lack of a formal ESI protocol and workable search terms. It was not until on May 8, 2025, that Defendants' new counsel advised Plaintiffs of the Civil Division's standard ESI protocol template that is used for e-discovery and provided a draft "consistent with Civil Division standards, and has been vetted by e-discovery experts."

The Court approved the parties' ESI framework on May 14, 2025 (Dkt. 319). Plaintiffs produced their revised categorical privilege log just two days later—on May 16, 2025—in compliance with Dkt. 318, under severe time constraints that did not allow for the meaningful incorporation of those essential frameworks as previously detailed to this Court (Dkt. 321).

Since producing the now disputed May 16 log, the undersigned has diligently refined the log in good faith while ensuring Plaintiffs' compliance with ongoing discovery obligations and balancing the burden of production with the constitutional protections recognized by *NAACP v. Alabama*, 357 U.S. 449 (1958), *Ams. for Prosperity v. Bonta*, 594 U.S. 595*, 141 S. Ct. 2373 (2021), *Perry v. Schwarzenegger*,

591 F.3d 1126 (9th Cir. 2009), *Mi Familia Vota v. Fontes*, 344 F.R.D. 496 (D. Ariz. 2023) and relevant discovery standards under Rule 26.

Despite this diligence, Defendants remain unwilling to engage in further, asserting that the privilege log issue is "beyond the conferral stage," their position is unchanged from objections raised months ago, and that the inclusion of the AEO provision in Dkt. 217 moots any privilege concerns.

Plaintiffs are not yet authorized to provide final positions on the issues in Defendants' circulated draft. Consultation with Mr. Stanley is scheduled for July 1, 2025. Given the apparent discrepancy in the procedural history of the Protective Order, and the discovery implications tied to that oversight, Plaintiffs cannot finalize their position until the issue is investigated and addressed collaboratively or by motion pursuant to Rule 60.

On June 26, 2025, counsel for the parties communicated throughout the day in good faith but were unable to reach an agreeable compromise on an appropriate stipulation. Because Defendants have declined to stipulate to the requested two-week extension, have indicated their opposition to this motion and have expressed their intent to proceed with a unilateral filing of the joint statement, Plaintiffs now respectfully submit this motion for the Court's consideration.

**4.  Conclusion**

For all the reasons stated above, Plaintiffs respectfully request that the Court issue an Order:

1.  Clarifying the scope and sincerity of effort required for the parties to satisfy the Court's meet-and-confer obligations under Order Dkt. 316;

2.  Prohibiting unilateral filings of joint statements of dispute;

3.  Granting a two-week extension of the current joint statement deadline;

4.  Requiring both parties to investigate the inclusion of the AEO provision in the current Protective Order (Dkt. 217);

5.  Directing the parties to confer over the AEO provision's impact on ongoing discovery disputes before finalizing their joint statement positions; and

6.   Granting an additional two-week extension, if necessary, to finalize any remaining issues in the joint statement following resolution of the AEO dispute.

Plaintiffs submit that good cause exists under Rule 6(b) for the requested relief and respectfully request that the Court grant the relief requested in the proposed Order submitted herewith.

Dated: June 26, 2025                                   MELISSA DEAN

_____
MELISSA DEAN (FLB #103182)
Attorney for Plaintiffs
Arizona Yagé Assembly,
Winfield Scott Stanley III
*Pro hac vice*