1   BRETT A. SHUMATE
    Assistant Attorney General
2
    ANDREW I. WARDEN
3   Assistant Branch Director

4   GISELLE BARCIA
5   Trial Attorney (D.C. Bar No. 1021577)
    Civil Division, Federal Programs Branch
6   United States Department of Justice
    1100 L Street, NW
7   Washington, DC 20005
    Telephone: (202) 305-1865
8   Fax: (202) 514-8640
    E-mail: giselle.barcia@usdoj.gov
9
10  *Counsel for Defendants*

11                  IN THE UNITED STATES DISTRICT COURT
12                     FOR THE DISTRICT OF ARIZONA

13
14  Arizona Yagé Assembly; Winfield Scott
    Stanley III, in his capacity as Founder and        No. 2:20-cv-2373
15  Director of Arizona Yagé Assembly,
16                                                      DEFENDANTS' OPPOSITION TO
                       Plaintiffs,                      PLAINTIFFS' EX PARTE
17           v.                                         MOTION FOR
                                                        EXTENSION OF TIME
18  James R. McHenry III, Acting Attorney
19  General of the United States, *et al.*,

20                     Defendants.
21

22      As has become unfortunately routine in this long-running matter, Plaintiffs have made another

23  eleventh-hour *ex parte* request that the Court extend their time to fulfill a discovery obligation—

24  likely to once again avoid another adverse ruling. Dkt. 326. This time, it's the Joint Statement

25  regarding Plaintiffs' May 16 Privilege Log. Dkt. 323. Plaintiffs have been on notice about this

26  deadline since May 23, 2025, Dkt. 323 (setting a June 27 filling deadline (*i.e.*, today) for disputes

27  concerning Plaintiffs' amended privilege log), and have known about the deficiencies to be

28

submitted to the Court at least since June 3 (when the parties conferred) and even as early as February (when the parties submitted their positions on this same issue), Dkts. 285, 291.

Defendants would have preferred to reach a compromise agreement with Plaintiffs, but even a cursory look at the procedural history—plagued by Plaintiffs' iterative delay tactics—makes clear why opposition is necessary. *See, e.g.*, Dkt. 213, 1-3 (explaining the circumstances in which Defendants began opposing Plaintiffs' serial extension requests in Jan. 2024); *see also, e.g.*, Dkt. 216, at 1 (Court noting that "Plaintiffs do not take the Court's deadlines seriously and have little interest in litigating this case in a timely matter"); Dkt. 220, at 20 (Court finding that "[t]his dispute is another of Plaintiffs' attempts to delay or disrupt discovery. Plaintiffs are on notice that the Court will impose sanctions . . . for any further obstruction or failure to meet discovery obligations"). *See generally* Dkt. 297, at 2 (summarizing how the case reached "a standstill because of Plaintiffs' persistent use of dilatory tactics and repeated failures to comply with court orders"). In an attempt to put aside that history, Defendants communicated to Plaintiffs that they would not oppose a shorter extension and offered to consent, first, to a four-day extension, and, then, to a six-day one (offers of compromise that Plaintiffs neglected to detail in their motion). Plaintiffs, however, refused to accept either offer, filing the instant motion instead. Dkt. 326.

For these reasons, the Court should deny Plaintiffs' request for a two-week extension, with the possibility of "an additional two-week extension, if necessary." *Id.* at 11. If, however, this Court is inclined to grant any additional time, Defendants respectfully request that the Court order Plaintiffs to provide their portion of the Joint Statement to Defendnants no later than July 2, 2025, at 5 p.m. EST, so that the parties may file the Joint Statement no later than July 3, 2025, at midnight EST.[1]

## I.      Background

The Joint Statement that the parties are scheduled to file with the Court today addresses Plaintiffs' belated, insufficient assertions of associational privilege. As the district court explained in December 2024, "the Court would have long ago adjudicated the issue of

---

[1] Defendants remain prepared to file the Joint Statement with or without Plaintiffs' contributions by the Court deadline of today, June 27, 2025, but will await a Court ruling on Plaintiffs' motion and any further guidance from the Court.

1    associational privilege if it had been properly presented to the Court." Dkt. 258, at 10. Indeed,

2    when Defendants served their underlying requests for production ("RFPs") in 2023, Plaintiffs

3    never objected on that basis. The Court recognized that "[i]t [was] obvious that Plaintiffs

4    decided to obfuscate the litigation by embarking on a lengthy appellate journey rather than

5    raising the issues with the Court." *Id.* Despite expressing that it was "wary to allow Plaintiffs

6    to assert associational privilege objections nine months after the discovery responses deadline,"

7    the Court nevertheless, agreed to "undertake the privilege issue." *Id.* at 10-11. It directed

8    Plaintiffs to provide Defendants with a privilege log by January 3, 2025, detailed its expectations,

9    and issued a warning: "failure to oblige shall constitute a waiver of the privilege or any objection

10   to the discovery, and Plaintiffs will be ordered to fully comply with the Discovery Order at

11   serious risk of sanction." *Id.* at 11. Plaintiffs then filed a privilege log. Dkt. 285. On February

12   11, 2025, Defendants filed a Joint Statement arguing that Plaintiffs privilege log was inadequate.

13   In that Joint Statement, Plaintiffs did not provide a position after extension requests, lack of

14   responses to conferrals, and other intransigence. Dkt. 285, at 2.[2] Plaintiffs' position was

15   belatedly incorporated into the Joint Statement on March 6, 2025. Dkt. 291.

16       At the hearing the following month, the Court found Plaintiffs' privilege log

17   insufficient, explaining that "[t]he Court does not presume that a protected associational

18   relationship will exist between a party and every person that is communicated with." Tr. 39:17-

19   40:3. The Court concluded that Plaintiffs "ha[d] not met the threshold of a prima facie case

20   because the categories . . . [were] not sufficiently specific enough to make a finding that the

---

[2] As described in that filing: "Despite the passage of the 14-day extension period Plaintiffs requested in their motion, Dkt. 276, and despite multiple requests from Defendants, Plaintiffs have still failed to provide Defendants with their position, either in writing or orally during the parties' conferral phone call. Plaintiffs have also not offered any narrowing proposals to the statement. Because Plaintiffs have refused to provide their positions in the more than 3 weeks that have passed since Defendants initiated the joint statement process regarding Plaintiffs' privilege log, and also have given Defendants no indication of when they will provide their positions or so-called narrowing proposals that could lead to any further meaningful conferral, Defendants are filing this statement with Plaintiffs' positions left blank. Defendants will also note that this is the third time in a month that Defendants have had to file a statement unilaterally due to Plaintiffs' inability or refusal to participate in the Court's joint statement process." Dkts. 265, 267.

3

privilege applies." *Id.* at 44:15-24. The Court, however, gave Plaintiffs "one more opportunity to (1) produce those documents in the identified sources of data that are not covered by the First Amendment privilege, and (2) to produce a revised privilege log that sufficiently describes the nature of any withheld documents." Dkt. 309, at 4; *see* Dkt. 318. The Court put Plaintiffs "on notice that failure to adequately describe privilege documents in [the revised] log is likely to result in Plaintiffs' waiver of the privilege." Dkt. 309, at 4 (emphasis omitted).

The Court set a deadline of May 16, 2025, to "submit" the privilege log. Dkt. 318, at 2. The Court again cautioned that "[f]ailure to submit a complete and adequate privilege log by May 16, 2025, will result in WAIVER of any privileges not adequately described." *Id.* Plaintiffs provided their revised privilege log to Defendants on May 17, 2025. After Defendants notified Plaintiffs that they should have submitted the log to the Court per Dkt. 318, Plaintiffs filed an unusual "certificate of substantial compliance," Dkt. 321 (which, among other things, misrepresented the reasons for their delayed (and incomplete) submission). And so on May 23, 2025, this Court set a June 13, 2025, conferral deadline, and a June 27, 2025, filing deadline for the Joint Statement on Plaintiffs' May 16 amended privilege log, affording ten pages to each side. Dkt. 323.

Ten days ahead of the Court deadline, on June 3, 2025, the parties participated in a meet and confer call. Defendants walked through the issues in their forthcoming portion of the Joint Statement, which largely reflected their positions submitted in the February Joint Statement filing. They flagged their specific concerns throughout the log, including, for example, inappropriately "nested" troves of e-mails within broader categories in the log. Defendants explained to Plaintiffs they believed their position on the log continued to lack merit. Plaintiffs disagreed. The parties remained at the same impasse on these disputes that were at issue during the February filing.

Defendants circulated their portion of the Joint Statement on June 23, 2025, and asked Plaintiffs to insert their portions of the Joint Statement for insertion no later than June 26, so that the parties could prepare the document for filing on the Court deadline of June 27. The

next day, Plaintiffs requested that Defendants stipulate to a two-week extension for several reasons: (1) that Defendants had circulated it four days before filing rather than five, as had been Judge Silver's practice; (2) their client was unavailable until June 29, and (3) per "continuing obligations to meet and confer" on this issue, they were attaching a new privilege log. Defendants responded that while they could not agree to a two-week request to the Court, they would agree to a shorter one so that Plaintiffs could confer with their client. Plaintiffs declined. On June 25, 2025, defense counsel conferred with plaintiffs' counsel at 7:05 p.m. for approximately a half an hour, again advising them that requesting an additional two weeks was not reasonable and was not justified. Defense counsel also advised that writing in a court filing that the parties had not adequately conferred on this privilege log issue was a gross misrepresentation, and that defense counsel would not agree to signing any such stipulation.

The next day, on June 26, 2025, Plaintiffs presented Defendants with a new excuse to justify their extension request: they saw that the Protective Order, Dkt. 217, included an Attorneys Eyes Only provision, something Plaintiffs had apparently never noticed even though the parties filed the Protective Order *in January 2024*. Plaintiffs pointed to negotiating history that suggests that provision may have been inadvertently included. While Defendants represented they would look into the issue, they made clear that there was an operative Protective Order in place that Defendants had been relying on. Defendants subsequently followed up with a compromise on a six-day extension until July 3. Plaintiffs declined, this time claiming that investigating the negotiating history underpinning the inclusion of the Protective Order's Attorneys Eyes Only provision is what would require additional time. Forty-two minutes later—before Defendants could respond to the e-mail and explain why that had no real bearing on the Joint Statement at issue—Plaintiffs filed their extension motion. Dkt. 326. Therein, Plaintiffs requested, not only a two-week extension of the current Joint Statement deadline, *id.* at 10, but also "an additional two-week extension, if necessary, to finalize any remaining issues in the joint statement following resolution of the AEO dispute." *Id.* at 11. Defendants oppose both requests.

1

2      **II.     Plaintiffs Have Not Established Good Cause for This Extension.**

3              Plaintiffs have not established good cause for seeking a two- or four-week extension

4      to provide their portion of the Joint Statement.  Plaintiffs have not demonstrated that they acted

5      diligently to meet the current deadline, and the rationale provided by Plaintiffs does not satisfy

6      the good cause standard.  *See, e.g.*, *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2018

7      WL 11352127, at *4 (D. Ariz. Jan. 11, 2018) (explaining that a party "demonstrate[s] good cause

8      by acting diligently to meet the original deadlines set forth by the court").  The Joint Statement

9      at issue is due to the Court today, June 27.  Not only did Plaintiffs file this eleventh-hour request

10     without acknowledging Defendants' offer of stipulating until July 3, but Plaintiffs also have not

11     provided any compelling reason to merit further extension.  Those reasons are addressed herein:

12             1.      *Meet-and-confer obligations.*  Plaintiffs improperly suggest throughout their filing

13     that the parties have not "fulfilled meet-and-confer obligations."  Dkt. 326, at 1, 3-4, 7-8.  This

14     is either an affirmative misrepresentation or a misunderstanding of the normal course of

15     litigation.  Typically, a phone conference, as long as both parties state their respective positions,

16     is sufficient to fulfill a requirement to meet and confer.  If the parties are at an impasse, then the

17     issue is ripe for Court decision.  That is certainly the case here, where the parties' respective

18     positions have not changed since December 2024.  Moreover, on June 3—ten days before the

19     Court's conferral deadline—the parties had an extensive conversation where they reiterated their

20     respective long-standing positions and once again reached an impasse.  Plaintiffs did not reach

21     out to Defendants before the Court's June 13 conferral deadline to suggest there were any new

22     issues that needed discussion, that they had misunderstood Defendants' position, or that

23     Plaintiffs had changed their position in light of the parties' early June 3 conferral.  To that end,

24     Defendants circulated their portion of the Joint Statement, which simply reduced to writing

25     (again) what the parties had already discussed.  And even after all this, upon hearing Plaintiffs'

26     complaints, Defendants reiterated that they were "always happy to talk" and did so: engaging

27

28

with Plaintiffs' counsel for an unscheduled lengthy evening phone call on June 25. Contrary to Plaintiffs' representations, the parties have more than fulfilled their meet-and-confer obligations.

2. *Time to review Defendants' portion of the Joint Statement*. Plaintiffs complain that four days did not suffice to review and respond to Defendants' written portion of the Joint Statement. Plaintiffs point to Judge Silver's dispute resolution order, which required five days for a response. Dkt. 218. When this Court issued the operative order for discovery disputes and joint statement procedures, it was silent on the specific point of how much time was required between circulating a draft joint statement and receiving a position. Dkt. 316 ¶ 3. Any purported discrepancy over joint statement procedures, however, is moot: Defendants conveyed to Plaintiffs they would be willing to consent to a short extension, going beyond the additional day Judge Silver would have required, so that Plaintiffs' counsel would be able to confer with their client once he had returned from his travels. *See supra* Section I; *infra* Section II.5. Plaintiffs rejected the offer.

3. *Belated questions about the Protective Order*. Plaintiffs' excuse related to the Protective Order is a red herring. Plaintiffs represent that they "believe that further investigation and conferral on [the Protective Order's negotiation history] is essential to resolving the privilege-related disputes currently at issue in the joint statement process," but do not explain why that is the case. Dkt. 326, at 7. To start, the parties have had a Protective Order on file since January 2024, and Plaintiffs have raised no issues with it. Defendants, in conferrals and Joint Statements have suggested that Plaintiffs make use of the Protective Order to protect third-party names consistent with Order 220, which governs this issue. Dkt. 220, at 12 ("Further, the information provided pursuant to this request must be unredacted and non-anonymized since a protective order is in place."). Plaintiffs, for the first time on June 25, seemed to realize there was a reference to a higher order of protection in the Protective Order than they recalled. Dkt. 217. Regardless of the history that led to its ultimate inclusion, the Protective Order offers *more protection* to the producing party. To that end, Plaintiffs' belated questions about the Protective Order should not provide a reason for further delay.

4.    *Personal commitments.*  Plaintiffs' counsel cites that "she is attending the Florida Bar Annual Convention this week" as "constraining her ability to prepare substantive responses to the circulated draft."  Dkt. 326, at 5.  While Defendants are sympathetic to personal commitments, attending a week-long professional conference does not satisfy good cause for an eleventh-hour extension request the day before the Court's deadline for the parties' Joint Statement.  Indeed, Plaintiffs' counsel has had advance notice of this Court-ordered deadline for more than a month, and could have adjusted commitments (or budgeted time) in advance.

5.    *Client availability.*  Plaintiffs' counsel represented to Defendants that their client Mr. Stanley was traveling and would be unavailable until Monday, June 29.[3]  Although Plaintiffs have been on notice about the deadline for this filing for more than a month, Defendants recognize the need to discuss litigation decisions with a client.  To that end, Defendants provided multiple offers of compromise deadlines that would accommodate Mr. Stanley's travel schedule.  Plaintiffs, however, rejected these offers.  Given that Mr. Stanley is available again beginning on Monday, June 29, Plaintiffs cannot cite this reason as a justification to gain the two- or four-week extension they request.

## III.    Defendants Will Be Prejudiced By Additional Extensions on This Issue.

Defendants have already been prejudiced—and will be further prejudiced—if Plaintiffs continue to receive further extensions on their obligations.

First, Defendants have already been prejudiced by the long delay in resolving this issue.  As the Court already recognized in December, *Plaintiffs had long waived this entire issue, and Defendants should have had these documents, with names included, in March 2024*.  *See* Dkts. 220; 224.  Plaintiffs were granted an exception to raise the objection nine months late.  The months continued to pass, and the issue was finally ripe for decision in April.  And while the Court ruled that the privilege log was insufficient, Plaintiffs again were given one last additional opportunity

---

[3] Plaintiffs state in their motion that Mr. Stanley would be unavailable until July 1, *see* Dkt. 326, at 8, but Plaintiffs stated in e-mail and over the phone that Mr. Stanley would be available beginning Monday, June 29.  In any event, Defendants' proposed compromise of a six-day extension would have accommodated this conflicting account of Mr. Stanley's availability.

to improve their log.  Another two months pass by.  Now, on the eve of presenting this issue to the Court, Plaintiffs again ask for another opportunity to improve their own position while Defendants continue to wait for information they should have received March 2024. Defendants have already suffered significant prejudice waiting until the parties had reached this juncture.

Second, more extensions only create additional opportunities for Plaintiffs to create new issues that they claim necessitate further delay.  Take, for example, Plaintiffs' reference to how they are "continuing to refine the presentation of privilege assertions," Dkt. 326, at 8, and specifically that "[s]ince producing the new disputed May 16 log, [Plaintiffs have] diligently refined the log in good faith," *id.* at 9.  These statements betray Plaintiffs' attitude toward deadlines.  The Court made clear that the revised privilege log that was due on May 16, so that the parties could prepare the Joint Statement and litigate the associational privilege based on that log.  Dkt. 323.  The operative log for purposes of the Joint Statement is the May 16 one, and Plaintiffs should not be permitted to continue revising their log and creating new cycles of disputes with every new version.  With these potential delays, Defendants will continue to be prejudiced by being forced to waste additional time and resources managing Plaintiffs, without actually resolving the issue at hand here.

## IV.    Miscellaneous Issues Plaintiffs Raise Regarding Joint Statement Procedures.

Plaintiffs also raise a number of miscellaneous complaints regarding dispute resolution and Joint Statement procedures beyond the Order already issued on dispute resolution.  To the extent this Court is inclined to rule on any of these requests now, Defendants propose:

- <u>Plaintiffs</u>: "1. Clarifying the scope and sincerity of effort required for the parties to satisfy the Court's meet-and-confer obligations under Order Dkt. 316." Dkt. 326, at 10.
  - <u>Defendants</u>: Defendants always confer in good faith.  As in the ordinary course of litigation, Defendants believe strongly that one meet and confer call is sufficient to satisfy a conferral obligation if the parties have fully explained their positions and have reached an impasse.  Defendants are always happy to confer again if either party has changed positions since the impasse was reached, or if further clarification is warranted.  But the parties should not waste additional

time and resources discussing the same issues if there has not been any change in position.

- o <u>Defendants</u>: Defendants note that exchanging Joint Statement positions is an additional form of conferral that reduces the parties' position into writing. Akin to Judge Silver's prior order, Dkt. 218, Defendants request that the Court clarify that responses to joint statement positions must be provided to the party initiating the positions within a specific number days of receipt—likely four or five days would typically be sufficient.

- <u>Plaintiffs</u>: "2. Prohibiting unilateral filings of joint statements of dispute." Dkt. 326, at 10.

  - o <u>Defendants</u>: Defendants believe strongly that if a party does not respond to a Joint Statement within the afforded time limit, whether it be a specific number of days from receipt of position, as Judge Silver had set, Dkt. 316 ¶ 3, or an impending Court deadline, as this Court set, Dkt. 323, then the party raising the dispute may file it unilaterally. This is the only way to guarantee responses from Plaintiffs. Indeed, prohibiting the possibility of such filings would create risk of potential waiver of critical issues.

- <u>Plaintiffs' Request 3</u>, Dkt. 326, at 10, discussed *supra* Section II.

- <u>Plaintiffs</u>: "4. Requiring both parties to investigate the inclusion of the AEO provision in the current Protective Order (Dkt. 217)." Dkt. 326, at 10

  - o <u>Defendants</u>: While Defendants are willing to look into this issue or any other pertaining to the procedural history of this case, the specific request from Plaintiffs here is unclear. Defendants are not inclined to relitigate a Protective Order that has been in place since January 2024, only because Plaintiffs looked at it now.

- <u>Plaintiffs' Requests 5 and 6</u>, Dkt. 326, at 10-11, discussed *supra* Section II.

10

## V.    Conclusion

For the reasons stated above, the Court should deny Plaintiffs' request for additional time to provide their portions of the Joint Statement regarding the privilege log.  If the Court is inclined to grant additional time, they should order Plaintiffs to provide their portion of the Joint Statement to Defendants by July 2, 2025, 5 p.m. EST, so that the parties may file the Joint Statement by July 3, 2025, midnight EST.


Dated:  June 27, 2025                       Respectfully submitted,


                                            BRETT A. SHUMATE
                                            Assistant Attorney General

                                            ANDREW I. WARDEN
                                            Assistant Branch Director

                                            */s/ Giselle Barcia*
                                            GISELLE BARCIA
                                            Trial Attorney (D.C. Bar No. 1021577)
                                            Civil Division, Federal Programs Branch
                                            United States Department of Justice
                                            1100 L Street, NW
                                            Washington, DC 20005
                                            Telephone: (202) 305-1865
                                            Fax: (202) 514-8640
                                            E-mail: giselle.barcia@usdoj.gov

                                            *Counsel for Defendants*