BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney (D.C. Bar No. 1021577)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>               Plaintiffs,<br>     v.<br><br>James R. McHenry III, Acting Attorney General of the United States, *et al.*,<br><br>               Defendants. | No. 2:20-cv-2373-ROS<br><br>**JOINT STATEMENT ON DISPUTES REGARDING PLAINTIFFS' AMENDED PRIVILEGE LOG** |

Pursuant to this Court' Order, Dkt. 323, Defendants provide the following Joint Statement with respect to the deficiencies in Plaintiffs' amended privilege log (Ex. A). *See* Dkts. 316; 323; 328. Defendants hereby provide their general position statement and individual issue positions. Because Plaintiffs failed to provide their portion of the Joint Statement to Defendants by 9 a.m. Arizona time on July 14, 2025, (and have still not done so as of the time of this filing) Defendants, per this Court's Order, Dkt. 328, file this Joint Statement with Plaintiffs' positions left blank.

**Defendants' General Position Statement**

In its December 4, 2024 Order ("Order") directing Plaintiffs to provide Defendants with a privilege log by January 3, 2025, the Court detailed its expectations, including that the log (1) "assert[] associational privilege only," and (2) "'describe the documents with sufficient detail so that the other party and court can assess the claim of privilege.'" Dkt. 258, at 11. The Court cautioned that "failure to oblige shall constitute a waiver of the privilege or any objection to the discovery, and Plaintiffs will be ordered to fully comply with the Discovery Order at serious risk of sanction." *Id.* Plaintiffs then filed a privilege log and declaration, Dkt 285, which Defendants argued were inadequate by this or any applicable standard because the log (1) did not describe the documents with sufficient detail to allow the assessment of the privilege, *see* Fed. R. Civ. P. 26(b)(5)(A)(ii), and (2) plainly did not comply with the Court's Order*, see* Dkt. 258, at 11.

At the April 17, 2015 hearing, the Court found Plaintiffs' privilege log insufficient because it was "only sorted into sources of data and general categories of documents" without making a "prima facie case of a privilege." Tr. 39:3-11. The Court further explained:

> [Y]ou can't make a blanket assertion that all Gmail accounts are covered because I'm certain that on a certain day there's an exchange of e-mail about something else with Mr. Stanley that has to do with, oh, let's say payment of a registration license or something. This is just an example. How is that privileged? . . . There has to be something more. The Court does not presume that a protected associational relationship will exist between a party and every person that is communicated with.

*Id.* at 39:17-40:3. The Court concluded that Plaintiffs "ha[d] not met the threshold of a prima facie case because the categories . . . [were] not sufficiently specific enough to make a finding that the privilege applies." *Id.* at 44:15-24. The Court, however, gave Plaintiffs "one more opportunity to (1) produce those documents in the identified sources of data that are not covered by the First Amendment privilege, and (2) to produce a revised privilege log that sufficiently describes the nature of any withheld documents." Dkt. 309, at 4; *see* Dkt. 318. The Court put Plaintiffs "**on notice that failure to adequately describe privilege documents in [the revised] log is likely to result in Plaintiffs' waiver of the privilege**." Dkt. 309, at 4.

Plaintiffs' revised privilege log still runs afoul of those directives. *First*, there has been

no "bona fide review" of documents, and so Plaintiffs fail to accurately describe and categorize documents on the log, which includes batches of unreviewed communications. *Second*, the log fails to establish any prima facie argument for associational privilege, as it does not explain how the *substance* of any of these documents connects to the asserted privilege. For every category, Plaintiffs provide the same conclusory argument: any revelation of any member's name triggers privilege over each document. Not so. In fact, Plaintiffs' log makes clear—consistent with their admissions during the parties' June 3 meet and confer—that the *sole basis* for their belated privilege assertion has nothing to do with the content of any document and is rooted in disclosing member names of third parties. But the proper vehicle for raising any third-party privacy concerns is not an assertion of privilege. Instead, Plaintiffs may seek protection of such information though the parties' stipulated protective order. Indeed, the district court already concluded as such, finding that "[s]ince there is a protective order in place, the information provided pursuant to this request must be unredacted and non-anonymized." Dkt. 220, at 12; *see id.* at 2, 5-6, 16, 19-20. That decision on third-party member names is now law of the case. *See Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 766 (9th Cir. 2001) ("Under the law-of-the-case doctrine, a court will not reexamine an issue previously decided by the same or higher court in the same case."). And Plaintiffs fail to articulate, even after that ruling, why using the confidentiality designations in the Protective Order provide insufficient protection.

Because Plaintiffs' revised privilege log falls short of the Court's directives—including that the log "**NOT** rely on broad categorical descriptions that fail to allow Defendants and the Court to evaluate the appropriateness of each privilege claim," Dkt. 318, at 2—Defendants request that the Court waive the privilege and order Plaintiffs to produce previously withheld and redacted documents, *id.* ("Failure to submit a complete and adequate privilege log by **May 16, 2025**, will result in **WAIVER** of any privileges not adequately described, and Plaintiffs will be required to produce all such documents for which privileges have been waived within **fourteen days** thereafter."). If the Court finds that the privilege has been sufficiently described, Defendants submit the privilege does not apply and request that the documents be turned over.

1  **ISSUE 1 (Defs.' Position): Log Was Untimely, and Later "Certificate" Was Improper.**

2  Plaintiffs were ordered to "submit" a privilege log by May 16, 2025, Dkt. 318, but transmitted

3  it to Defendants on May 17, at 2:50 A.M.  Defendants notified Plaintiffs that the log should

4  have been "submitted," i.e., filed with the Court.  Plaintiffs did not object, but instead, on May

5  20, filed an inappropriate "certificate of substantial compliance," which inaccurately implied that

6  Plaintiffs did not submit the log to the Court on May 16 because the parties were conferring

7  over whether it should be filed under seal.  Dkt. 321.  That suggestion is false: Plaintiffs first

8  raised filing the log under seal minutes before the May 20 filing, i.e., four days after the deadline.

9  **ISSUE 2 (Defs.' Position): No Basis for Log To Be Filed Under Seal.**

10  Plaintiffs have no basis for filing the privilege log under seal, either as related to the initial May

11  16 filing deadline (for which Plaintiffs did not comply), or as an exhibit to this Joint Statement.

12  A party cannot give itself authority to file under seal—it must seek leave of Court.  Dkt. 217, at

13  7.  Plaintiffs have not provided ny reasonable basis for filing the log under seal.

14  **ISSUE 3 (Defs.' Position): Log Does Not Reflect Comprehensive Document Review.**

15  The log does not reflect the "bona fide review" this Court required.  Tr. 40:5-9; Dkt. 318, at 2.

16  Plaintiffs admitted they had not started to collect, let alone review, potentially responsive

17  documents in this case as of January 2025—16 months after receiving Defendants' RFPs, 9

18  months after the substantial completion deadline, and 4 years after filing this case.  Dkt. 285-3,

19  at 2.  Even as of January 2025, Plaintiffs admitted they had not yet acquired the necessary

20  "eDiscovery technology" to "review, organize and catalog" documents.   Dkt. 285-2 ¶ 2.

21  Consequently, in the April hearing, the Court pointedly told Plaintiffs, "how is it that you can

22  make this assertion of privilege without reviewing your own documents?  You have to do a bona

23  fide review."  Tr. 40:14-16.  Nearly two months later, during the parties' June 3 conferral,

24  Plaintiffs confirmed that they still need months to complete their review.  Plaintiffs' failure to

25  conduct a "bona fide review" before creating the log should constitute waiver of any privilege.

26  *Id.*; *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 942 (N.D. Ill. 2021).

27

28

**ISSUE 4 (Defs.' Position): Log Likely Includes Documents Plaintiffs Had Agreed To Produce.**

Plaintiffs may not assert a privilege over documents they previously agreed to produce.  Because Plaintiffs do not describe the withheld documents with any requisite specificity, Defendants have no way of knowing whether and how many documents within each category are (1) responsive to Defendants' RFPs, and (2) responsive to RFPs to which Plaintiffs have not objected on associational privilege grounds.  *See* Dkt. 230, at 23 (only challenging RFPs 7, 8, 11, 12, 13, 20, 21).  Plaintiffs did not appeal the Court's order, Dkt. 220, as to RFPs 3-6, 10, 14-18, and 23.  Yet Plaintiffs' overly generalized log descriptions suggest that many of the documents over which Plaintiffs now categorically invoke the associational privilege would be responsive to those non-appealed RFPs.  *Compare, e.g.*, Category ("Cat.") # 1, 3, 4, 7, 13 (asserting privilege over all e-mail communications), *with* Dkt. 219, at 38 ("Plaintiff will supplement its response [to RFP 3] by searching for communications between them and Plaintiffs and providing copies thereof.").  Plaintiffs waived privilege over documents that they have already agreed to produce.

**ISSUE 5 (Defs.' Position): Nesting Communications in Broader Categories.**

Plaintiffs' broad categories, and nested sub-categories, are improper, as they include thousands of e-mails, none of which seem to have been reviewed or described on an individualized basis. *See, e.g.*, Cat. # 1, 3, 4, 7, 13.  For example, Category 3 health disclosure forms," "includes email correspondence between prospective attendees and AYA facilitators or administrators discussing health-related matters in preparation for ceremony."  Category 13 likewise withholds 13,579 e-mails, all of which allegedly "contain sensitive religious and medical disclosures."  For these and similar withholdings, Plaintiffs assert privilege based on the same, cursory justification: revealing names "would chill participation."  But this conclusory justification for thousands of communications over a 20-year period betrays the notion that Plaintiffs have conducted any "bona fide review."  Tr. 40:14-16.  Plaintiffs' use of overly broad categories—and categorizing communications without requisite review—fails to meet the Court's standard.  *Mi Familia*, 344 F.R.D. at 515 ("privilege must be" "asserted on a document-by-document basis").

**ISSUE 6 (Defs.' Position): Insufficient Detail To Assess Privilege Claim.**

1  Plaintiffs do not "describe the documents with sufficient detail" so that Defendants "and the

2  Court can assess the claim of privilege." Dkt. 258 at 11. Plaintiffs must "demonstrate" that

3  disclosure would chill AYA's members' associational rights. *Perry*, 591 F.3d at 1160. Courts

4  "will not presume that a protected associational relationship exists between a party and every

5  other person or entity with whom they share common beliefs" because "such an expansive

6  view" of the "privilege would swallow the discovery process altogether." *Mi Familia*, 344 F.R.D.

7  at 514. Yet Plaintiffs appear to assert a blanket privilege over *all* e-mails/documents based solely

8  on the potential disclosure of member names, preventing Defendants and the Court from

9  assessing the substance of any privilege claim. *See, e.g.*, Cat. #13 "Participation Discussion

10  Emails"; *see also Mi Familia*, 344 F.R.D. at 516 (insufficient "information about the contents and

11  nature of each withheld document" prevents "nuanced" *Perry* inquiry). *Cf. Perry*, 591 F.3d at

12  1154-55 (identifying 60 documents for court's review of asserted privilege).

13

14  **ISSUE 7 (Defs.' Position): Insufficient Detail To Assess Balancing Discovery Needs.**

15  Plaintiffs have not adequately identified documents for which privilege is being asserted under

16  step 1 of the *Perry* inquiry. They have also failed step 2 of the *Perry* inquiry, as the log does not

17  provide enough detail to allow Defendants to "demonstrate a sufficient need for the discovery

18  to counterbalance [any First Amendment] infringement." *Mi Familia*, 344 F.R.D. at 515. To be

19  sure, this Court already held that the information being withheld is critical to Defendants'

20  defenses. Dkt. 220. And yet Plaintiffs appear to be withholding many of Plaintiffs' unreviewed

21  e-mails that are likely to implicate relevant topics, e.g., possible ceremony attendance by

22  prospective members, incidents of sexual harassment or other safety incidents, safety

23  procedures or ceremony logistics, etc. Plaintiffs' log, however, does not provide the type of

24  detail that would allow Defendants or the Court to determine whether the withheld

25  communications are protected under *Perry,* or whether disclosure would have a deterrent effect

26  on the exercise of First Amendment rights. Plaintiffs' "boilerplate" assertions "make[] it

27  impossible to complete the second step" of *Perry. Mi Familia*, 344 F.R.D. at 515.

28

**ISSUE 8 (Defs.' Position): Associational Privilege Not an Absolute Bar.**

The associational privilege is not an absolute bar against any disclosure. *Perry*, 591 F.3d at 1165 n.13. Critically, the disclosures here differ from those in *NAACP v. Alabama,* which Plaintiffs invoke throughout the log. 357 U.S. 449, 454 (1958). In *NAACP*, Alabama sued the NAACP, seeking disclosure of information under a state law requiring all corporations to provide names and addresses of its members. *Id.* at 451-52. NAACP "produced substantially all the data called for by the production order except its membership lists," *id.* at 454, including producing "the identity of its members who are employed by or hold official positions with it," and other business records, *id.* at 464. In affirming the invocation of the privilege, the Court contrasted NAACP's extensive disclosures with an earlier case, where an organization made no disclosures. *Id.* at 465-66. Here too, Plaintiffs object to the disclosure of *all* communications and documents not yet produced. Plaintiffs' conduct comes nowhere close to that of *NAACP*; nor can they hide behind the shield of associational privilege to withhold *all* communications and documents, when they brought suit based on purported religious activities in the first instance.

**ISSUE 9 (Defs.' Position): Plaintiffs Have Not Made a Prima Facie Privilege Justification.**

Plaintiffs bear the burden of producing a privilege log that complies with the Court's directives and substantiates their privilege assertions under Step 1 of *Perry*. Plaintiffs have not carried their burden. They provide the same identity-based justification throughout the log, one that inherently "presumes that a protected associational relationship will exist between a party and every person that is communicated with"—precisely what the Court already found insufficient. Tr. 39:17-40:3. Indeed, Plaintiffs confirmed to Defendants (in a June 3 meet-and-confer) that their assertion of privilege is based solely on the inclusion of third-party member names, i.e., that their withholdings are not based on the documents' contents. Accordingly, Plaintiffs' insufficiently detailed log improperly conflates associational privilege with routine privacy concerns. Below, Defendants—though not detailing every single objection they would raise in a motion or hearing should the Court request one—briefly address Plaintiffs' largely overlapping and insufficient justifications in each category:

1  • *ISSUE 9(a) (Defs.' Position): Cat. # 1 "Initial Interest E-mails" Not Justified*

2  Although Plaintiffs describe these records as "substantively uniform in content and purpose,"

3  the log itself seems to imply that such communications implicate a variety of topics, from

4  potential members/participants, tracking lists concerning prospective members, surveys, and

5  confirmation e-mails. Citing *NAACP v. Alabama*, *supra* Issue 8, Plaintiffs' justification is entirely

6  based on the premise that "[c]ompelled disclosure of the identities and contact information of

7  ceremonial attendees listed in the Initial Interest emails would chill participation and cause AYA

8  members and donors to disaffiliate from AYA, cease attendance at ceremonies, cease

9  volunteering, and cease donating to AYA." This conclusory and speculative statement has no

10  basis: Plaintiffs generalize that disclosure of any *one* of 10,000+ documents—even e-mails from

11  *potential* members—would chill participation. This position strains credulity.

12  • *ISSUE 9(b) (Defs.' Position): Cat. # 2 "Payments for Ceremony" Not Justified*

13  Under this category, Plaintiffs withhold PayPal receipts, Eventbrite receipts, Karma Crew

14  discounts, Venmo receipts, and AYA issue refunds. It is not clear here whether "donors" are

15  the same as paying "members," and Plaintiffs' own justification may turn on that. This financial

16  information is important discovery for assessing whether AYA is a commercial enterprise.

17

18  • *ISSUE 9(c) (Defs.' Position): Cat. # 3 "Health Disclosure Forms" Not Justified*

19  Plaintiffs withhold not only "health disclosure forms" but also "e-mail correspondence between

20  prospective attendees and AYA facilitators or administrators discussing health-related matters

21  in preparation for ceremony, including clarification of medical histories, medication use, and

22  screening determinations." This is inappropriate and insufficiently detailed. Plaintiffs'

23  justification—that disclosure would "chill participation and cause AYA members and donors to

24  disaffiliate from AYA"—is conclusory. To the extent Plaintiffs suggest a privacy concern

25  surrounding health information, the PO would address those. AYA's health-related screening

26  determinations—and health risk discussions—are critical to assessing AYA's safety practices.

27  • *ISSUE 9(d) (Defs.' Position): Cat. # 4 "AYA Questionnaires" Not Justified*

28  Plaintiffs provide the same justification here as Category #3. *See supra* Issue 9(c).

- *ISSUE 9(e) (Defs.' Position): Cat. # 5 "Attendee Lists" Not Justified*

Plaintiffs provide the same justification here as Category #1.  *See supra* Issue 9(a); *see also* Issue 8.

- *ISSUE 9(f) (Defs.' Position): Cat. # 6 "Flagged List" Not Justified*

Plaintiffs withhold "records of internal communication and compiled lists reflecting individuals whose medical disclosures during the screening process raised health or safety concerns requiring further assessment before ceremonial participation.  These documents include notations from AYA administrators and Plaintiff Stanley regarding flagged conditions, medical conflicts, or other issues identified in health forms or questionnaires."  This is improper.  *First*, this information seemingly overlaps with a category of documents Plaintiffs had already agreed to disclose.  *Supra* Issue 4.  *Second*, again inaptly citing *NAACP v. Alabama*, *supra* Issue 8, Plaintiffs conflate "sensitive medical and personal information" with *privilege* and do not explain how disclosure under a Protective Order would actually "chill participation."  Plaintiffs cannot shield information that is plainly relevant and critical to evaluating their safety practices.  Dkt. 220.

- *ISSUE 9(g) (Defs.' Position): Cat. # 7 "Facilitator Files" Not Justified*

Plaintiffs provide a vague document description here: "facilitator files."  Those files seem to contain "internal email packets distributed to AYA facilitators prior to each ceremony," which include as attachments documents from other categories, i.e., attendee lists, profile sheets, and flagged lists. Again, inaptly citing *NAACP v. Alabama*, *supra* Issue 8, Plaintiffs make the same conclusory assertion regarding chilling participation as they do for the underlying categories of these attachments, *supra* Issues 9(c-f) (attendee lists, profile sheets, and flagged lists). Notably, the log makes no independent argument about facilitator e-mails themselves—only attachments.

- *ISSUE 9(h) (Defs.' Position): Cat. # 8 "Approved Facilitators and Admin Staff List" Not Justified*

This category includes a single "spreadsheet listing current and former AYA facilitators and administrative staff, including individuals authorized to support or lead ceremonies and those involved in AYA's organizational operations."  Plaintiffs do not claim privilege for current facilitators, but rather for "former facilitator[s]."  Plaintiffs do not explain why they contend the privilege applies to former but not current facilitators; they also do not explain the hypothetical

causal connection between disclosure of former facilitators and potential loss of donations. This information—particularly as it relates to former facilitators and staff who held leadership roles, were employed by AYA, and may have handled and distributed the controlled substance during ceremonies—is critical to Defendants' defenses and to identifying potential witnesses.

- ***ISSUE 9(i) (Defs.' Position): Cat. # 9 "Ceremony Logistics" Not Justified***

Plaintiffs are withholding a variety of different kinds of documents, some of which are not apparently clear: "carpooling lists," "driving directions," "karma crew," "lodging arrangements," "packing lists," and "Peru Retreat." Plaintiffs do not explain what a "karma crew" is, nor what the "Peru retreat" documents consist of. Beyond the identity-based objection, Plaintiffs do not, indeed cannot, justify the contents of these sorts of mundane documents—even a packing list— as privileged. Plaintiffs also argue that "driving directions are subject to associational privacy privilege because releasing that information to the Defendants would lead members and donors to fear government enforcement activity." Plaintiffs have *affirmatively* brought this RFRA case seeking recognition; all organizations with exemptions from the CSA have disclosed operating addresses to the government as part of the pre-registration inspection and evaluation process. In any event, this is the sort of information that could be protected, through a Protective Order, as that would limit the information to "employees of the Federal Government with a need to have access to such documents in connection with this litigation." Dkt. 217, at 5.

- ***ISSUE 9(j) (Defs.' Position): Cat. # 10 "Incident Report" Not Justified***

Plaintiffs are withholding a summary of a "report made by a member concerning an incident at the hotel where both individuals were staying. The report includes allegations of unsolicited and inappropriate sexual advances by the accused member toward the reporting party." Plaintiffs do not even attempt to make a privilege-based argument but instead assert a privacy-based one: "The complaint described in the incident report is a rank-and-file AYA member, and thus his identity is protected from disclosure by associational privacy." They have not explained how such disclosure would burden their associational rights; and in any event, privacy concerns regarding sensitive subjects are addressed by the Protective Order.

- *ISSUE 9(k) (Defs.' Position): Cat. # 11 "Newsletter Submissions" Not Justified*

Plaintiffs are withholding submissions "from members to be considered for the church newsletter." Plaintiffs assert the same identity-based reason for a claim of associational privacy. They do not explain why connecting member names to newsletter submissions would "reduc[e] participation in ceremonies, donations, volunteer efforts, and the sharing of free exercise."

- *ISSUE 9(l) (Defs.' Position): Cat. # 12 "Post-Ceremony Feedback Surveys" Not Justified*

Plaintiffs are withholding members' post-ceremony feedback. They provide the same conclusory identity-based justification without explaining *why* disclosure would "reduce participation in ceremonies, donations, volunteer efforts, and the sharing of free exercise."

- *ISSUE 9(m) (Defs.' Position): Cat. # 13 "Participation Discussion Emails" Not Justified*

Plaintiffs withhold 13,579 e-mails "containing sensitive religious and medical disclosures." It is not clear whether members are e-mail authors or simply mentioned, or whether there are e-mails solely among the facilitators, unrelated to member issues. Regardless, Plaintiffs provide the same insufficient justification here as Categories #1 and #3. *See supra* Issues 8, 9(a), 9(c).

**ISSUE 10 (Defs.' Position): Plaintiffs Do Not Explain Why Protective Order Insufficient.**

The Protective Order—not Plaintiffs' long-waived and substantively unsupported privilege assertion—is the appropriate litigation tool for balancing Plaintiffs' third-party privacy concerns and Defendants' discovery needs. Plaintiffs' log makes clear—and Plaintiffs admitted during the parties' June 3 meet and confer—that the *sole basis* for their belated privilege assertion has nothing to do with the content of any document and is rooted in disclosing member names. If this is Plaintiffs' concern, then they could simply protect the documents from broader disclosure using the PO. Indeed, the court already ruled on the issue of member names issue and *that decision* is law of the case. Dkt. 220. Specifically, the Court ruled that "[s]ince there is a protective order in place, the information provided pursuant to this request must be unredacted and non-anonymized." Dkt. 220, at 12; *id.* at 2, 5-6, 16, 19-20. Plaintiffs fail to articulate why protecting these documents through designations in the PO provides insufficient protection.

1   **Plaintiffs' Positions**:

1

2      Dated:  July 14, 2025                    Respectfully submitted,

3

4                                              BRETT A. SHUMATE
                                               Assistant Attorney General
5

6                                              ANDREW I. WARDEN
                                               Assistant Branch Director
7

8                                              */s/    Giselle Barcia*
                                               GISELLE BARCIA
9                                              Trial Attorney (D.C. Bar No. 1021577)
                                               Civil Division, Federal Programs Branch
10                                             United States Department of Justice
                                               1100 L Street, NW
11                                             Washington, DC 20005
                                               Telephone: (202) 305-1865
12                                             Fax: (202) 514-8640
                                               E-mail: giselle.barcia@usdoj.gov
13

14                                             *Counsel for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         13