BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney (D.C. Bar No. 1021577)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br>v.<br><br>James R. McHenry III, Acting Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EXTENSION OF TIME** |

With their latest filing, Plaintiffs, remarkably, make not only *another* extension request, but the *second* with respect to this specific issue: the Joint Statement regarding their May 16 Privilege Log. Dkt. 330. This Joint Statement was originally due to the Court on June 27, 2025—a deadline Plaintiffs had been on notice about since May 23, 2025. Dkt. 323. (And as to the substantive issues, Plaintiffs had been on notice since at least since June 3 (when the parties conferred) and even as early as February (when the parties submitted their positions on

this same issue). Dkts. 285, 291.) Plaintiffs already filed an *ex parte* motion to extend the June 27 deadline, Dkt. 326, which Defendants opposed, Dkt. 327. Although the Court denied the motion, Dkt. 328, Plaintiffs gained an additional two weeks to prepare their position for the Joint Statement while the motion was pending. When the Court set the new extended deadline for the Joint Statement, Defendants forwarded the Court's Order to Plaintiffs' counsel immediately after it was docketed on Thursday, July 10, 2025, to ensure they were on notice that they should provide their positions to Defendants by Monday, July 14, 2025, 9 a.m. (Arizona time). Neither Mr. Carreon nor Ms. Dean responded.

Come Monday, Plaintiffs' counsel blew through that deadline to provide Defendants with their portion of the Joint Statement. Defendants e-mailed Plaintiffs' counsel to alert them that they had missed the deadline and that Defendants would file the Joint Statement without Plaintiffs' positions, as the Court indicated would be appropriate. Dkt. 328, at 3 ("If Plaintiffs fail to provide their portion of the Joint Statement to Defendants by [the Court's deadline], Defendants may file the Joint Statement unilaterally with Plaintiffs' positions left blank."); Dkt. 329, at 1 ("Because Plaintiffs failed to provide their portion of the Joint Statement to Defendants by [the Court's deadline] (and have still not done so as of the time of this filing), Defendants, per this Court's Order, Dkt. 328, file this Joint Statement with Plaintiffs' positions left blank."). Later that evening, and without any prior conferral, Plaintiffs filed the instant "motion for extension of time to file opposition to Dkt. 329," principally on the basis that lead counsel was "unaware that no plan was in place for meeting the court's July 14 deadline." Dkt. 330, at 2.

Defendants have explained that, due to Plaintiffs long-running iterative delay tactics in discovery, Defendants began exposing these serial eleventh-hour extension requests. *See* Dkt. 327, at 2 (summarizing Plaintiffs' delay tactics). This latest attempt is more egregious as the deadline expired. Plaintiffs obviously still "do not take the Court's deadlines seriously and have little interest in litigating this case in a timely matter." Dkt. 216, at 1. In February 2024, after "another of Plaintiffs' attempts to delay or disrupt discovery," the Court put Plaintiffs "on notice that [it] will impose sanctions . . . for any further obstruction or failure to meet discovery obligations." Dkt. 220, at 20. Nearly a year-and-a half later, Plaintiffs show no signs of stopping.

Enough is enough. Defendants respectfully request that the Court put an end to this behavior by denying this motion and finding Plaintiffs' associational privilege assertion waived.

**I.  Background**

The underlying Joint Statement at issue addresses Plaintiffs' belated, insufficient assertions of associational privilege. Dkt. 329. As the district court explained in December 2024, "the Court would have long ago adjudicated the issue of associational privilege if it had been properly presented to the Court." Dkt. 258, at 10. Indeed, when Defendants served the relevant requests for production ("RFPs") in 2023, Plaintiffs never objected on that basis. The Court recognized that "[i]t [was] obvious that Plaintiffs decided to obfuscate the litigation by embarking on a lengthy appellate journey rather than raising the issues with the Court." *Id.* Despite expressing that it was "wary to allow Plaintiffs to assert associational privilege objections nine months after the discovery responses deadline," the Court nevertheless, agreed to "undertake the privilege issue." *Id.* at 10-11. It directed Plaintiffs to provide Defendants with a privilege log by January 3, 2025, detailed its expectations, and issued a warning: "failure to oblige shall constitute a waiver of the privilege or any objection to the discovery, and Plaintiffs will be ordered to fully comply with the Discovery Order at serious risk of sanction." *Id.* at 11. Plaintiffs then filed a privilege log. Dkt. 285. On February 11, 2025, Defendants filed a Joint Statement arguing that Plaintiffs privilege log was inadequate. In that Joint Statement, Plaintiffs did not provide a position after extension requests, lack of responses to conferrals, and other intransigence. Dkt. 285, at 2.[1] Plaintiffs' position was belatedly incorporated into the Joint Statement on March 6, 2025. Dkt. 291.

---

[1] As described in that filing: "Despite the passage of the 14-day extension period Plaintiffs requested in their motion, Dkt. 276, and despite multiple requests from Defendants, Plaintiffs have still failed to provide Defendants with their position, either in writing or orally during the parties' conferral phone call. Plaintiffs have also not offered any narrowing proposals to the statement. Because Plaintiffs have refused to provide their positions in the more than 3 weeks that have passed since Defendants initiated the joint statement process regarding Plaintiffs' privilege log, and also have given Defendants no indication of when they will provide their positions or so-called narrowing proposals that could lead to any further meaningful conferral, Defendants are filing this statement with Plaintiffs' positions left blank. Defendants will also note that this is the third time in a month that Defendants have had to file a statement unilaterally due to Plaintiffs' inability or refusal to participate in the Court's joint statement process." Dkts. 265, 267.

3

At the hearing the following month, the Court found Plaintiffs' privilege log insufficient, explaining that "[t]he Court does not presume that a protected associational relationship will exist between a party and every person that is communicated with." Tr. 39:17-40:3. The Court concluded that Plaintiffs "ha[d] not met the threshold of a prima facie case because the categories . . . [were] not sufficiently specific enough to make a finding that the privilege applies." *Id.* at 44:15-24. The Court, however, gave Plaintiffs "one more opportunity to (1) produce those documents in the identified sources of data that are not covered by the First Amendment privilege, and (2) to produce a revised privilege log that sufficiently describes the nature of any withheld documents." Dkt. 309, at 4; *see* Dkt. 318. The Court put Plaintiffs "on notice that failure to adequately describe privilege documents in [the revised] log is likely to result in Plaintiffs' waiver of the privilege." Dkt. 309, at 4 (emphasis omitted).

The Court set a deadline of May 16, 2025, to "submit" the privilege log. Dkt. 318, at 2. The Court again cautioned that "[f]ailure to submit a complete and adequate privilege log by May 16, 2025, will result in WAIVER of any privileges not adequately described." *Id.* Plaintiffs provided their revised privilege log to Defendants on May 17, 2025. After Defendants notified Plaintiffs that they should have submitted the log to the Court per Dkt. 318, Plaintiffs filed an unusual "certificate of substantial compliance," Dkt. 321 (which, among other things, misrepresented the reasons for their delayed (and incomplete) submission). And so on May 23, 2025, this Court set a June 13, 2025, conferral deadline, and a June 27, 2025, filing deadline for the Joint Statement regarding Plaintiffs' May 16 amended privilege log, affording ten pages to each side. Dkt. 323.

Ten days ahead of the Court deadline, on June 3, 2025, the parties participated in a meet and confer call. Defendants walked through the issues in their forthcoming portion of the Joint Statement, which largely reflected their positions submitted in the February Joint Statement filing. They flagged their specific concerns throughout the log, including, for example, inappropriately "nested" troves of e-mails within broader categories in the log. Defendants explained to Plaintiffs they believed their position on the log continued to lack merit. Plaintiffs

4

disagreed. The parties remained at the same impasse on these disputes that were at issue during the February filing.

Defendants circulated their portion of the Joint Statement on June 23, 2025, and asked Plaintiffs to insert their portions of the Joint Statement for insertion no later than June 26, so that the parties could prepare the document for filing on the Court deadline of June 27. The next day, Plaintiffs requested that Defendants stipulate to a two-week extension for several reasons: (1) that Defendants had circulated it four days before filing rather than five, as had been Judge Silver's practice; (2) their client was unavailable until June 29, and (3) per "continuing obligations to meet and confer" on this issue, they were attaching a new privilege log. Defendants responded that while they could not agree to a two-week request to the Court, they would agree to a shorter one so that Plaintiffs could confer with their client. Plaintiffs declined. On June 25, 2025, defense counsel conferred with Plaintiffs' counsel at 7:05 P.M. for approximately half an hour, again advising them that requesting an additional two weeks was not reasonable and was not justified. Defense counsel also advised that writing in a court filing that the parties had not adequately conferred on this privilege log issue was a gross misrepresentation, and that defense counsel would not agree to signing any such stipulation.

The next day, on June 26, 2025, Plaintiffs presented Defendants with a new excuse to justify their extension request: they saw that the Protective Order, Dkt. 217, included an Attorneys' Eyes Only provision, something Plaintiffs had apparently never noticed even though the parties filed the Protective Order *in January 2024*. Plaintiffs pointed to negotiating history that suggests that provision may have been inadvertently included. While Defendants represented they would look into the issue, they made clear that there was an operative Protective Order in place that Defendants had been relying on. Defendants subsequently followed up with a compromise on a six-day extension until July 3. Plaintiffs declined, this time claiming that investigating the negotiating history underpinning the inclusion of the Protective Order's Attorneys' Eyes Only provision is what would require additional time. Forty-two minutes later—before Defendants could respond to the e-mail and explain why that had no real bearing on the Joint Statement at issue—Plaintiffs filed their extension motion. Dkt. 326.

1  Therein, Plaintiffs requested, not only a two-week extension of the current Joint Statement
2  deadline, *id.* at 10, but also "an additional two-week extension, if necessary, to finalize any
3  remaining issues in the joint statement following resolution of the AEO dispute." *Id.* at 11.
4  Defendants opposed both requests. Dkt. 327.

5  Two weeks later, on July 10, 2025, the Court denied that motion. Dkt. 328. The Court
6  found that none of Plaintiffs' explanations established good cause for the extension. *Id.* at 2-3.
7  Nevertheless, "pursuant to its inherent authority to control the docket, the Court . . . direct[ed]
8  the parties to file the Joint Statement by 11:59 P.M. on Monday, July 14, 2025." *Id.* at 3.
9  Critically, the Court also ordered Plaintiffs "to provide their portion of the Joint Statement to
10 Defendants by **9:00 A.M. Arizona time on July 14, 2025**." *Id.* The Court moreover made
11 clear that "[i]f Plaintiffs fail to provide their portion of the Joint Statement to Defendants by
12 9:00 A.M. Arizona time on July 14, 2025), Defendants may file the Joint Statement unilaterally
13 with Plaintiffs' positions left blank." *Id.* Immediately after the Court's July 10 Order was
14 docketed, Defendants forwarded the Order to both Plaintiffs' counsel to ensure they were on
15 notice that they should provide their positions to Defendants by Monday, July 14, 2025, 9 A.M.
16 (Arizona time). Neither Mr. Carreon nor Ms. Dean responded.

17 When Monday, July 14, arrived, Plaintiffs' counsel blew through that 9 A.M. deadline
18 to contribute to the parties' Joint Statement. Defendants e-mailed Plaintiffs' counsel to alert
19 them that they had missed the Court's deadline and that Defendants would be filing the Joint
20 Statement without Plaintiffs' positions, as the Court indicated would be appropriate. Dkt. 329,
21 at 1. Defendants subsequently filed the Joint Statement with Plaintiffs' positions left blank,
22 noting as much at the beginning of the Joint Statement. *Id.* Plaintiffs' counsel did not respond
23 to the e-mail alerting them to the missed deadline and did not otherwise seek to contact defense
24 counsel. Later that evening, and without any prior conferral with Defendants, Plaintiffs filed
25 the instant "motion for extension of time to file opposition to Dkt. 329." Dkt. 330. Defendants
26 oppose the request herein.

6

**II.      Plaintiffs Have Not Established Good Cause for This Extension.**

Plaintiffs have not established good cause for receiving an extension to file an "opposition to Dkt. 329"—or, put differently, additional time to provide their portions of the Joint Statement filed at Dkt. 329 per the Court deadline. Plaintiffs have not demonstrated that they acted diligently to meet the current deadline, and the rationale provided by Plaintiffs does not satisfy the good cause standard. *See, e.g.*, *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2018 WL 11352127, at *4 (D. Ariz. Jan. 11, 2018) (explaining that a party "demonstrate[s] good cause by acting diligently to meet the original deadlines set forth by the court"). The Joint Statement at issue was originally due to the Court on June 27. Not only did Plaintiffs file an eleventh-hour request to extend that June 27 deadline—without acknowledging Defendants' prior offers of stipulating to extend until July 3—but Plaintiffs blew through the Court's *even longer deadline of July 14*. They have also have not provided any compelling reason to merit further extension. Those reasons are addressed herein:

1.      *"[L]ead counsel[] was unaware that no plan was in place for meeting the Court's July 14 deadline."* Remarkably, Plaintiffs' principal excuse for missing the deadline is "a miscommunication between senior and junior counsel," i.e., between Mr. Carreon and Ms. Dean. Dkt. 330, at 4. In a stunning admission, Mr. Carreon writes in a court filing that he as "lead counsel[,] was unaware that no plan was in place for meeting the court's July 14 deadline." *Id.* at 2. Plaintiffs' counsel use of passive voice in that sentence speaks volumes: it ignores the obvious proposition that *it is Mr. Carreon's responsibility as lead counsel* to ensure there "a plan was in place" for meeting Court deadlines. Dkt. 330, at 2. Plaintiffs' motion contends that "[t]he Ninth Circuit recognizes that miscommunications between senior and junior counsel may constitute excusable neglect" but does not cite a case that supports that position. Instead, Plaintiffs cite *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009), and *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1996), neither of which absolves Plaintiffs' conduct here. First, *Lemoge* considers an appeal where the district court identified the incorrect standard and misapplied a standard—the case does not at all discuss whether senior-junior counsel miscommunications satisfy the standard. 587 F.3d at, 1192 (finding that district court did not

7

cite all four factors under the excusable neglect framework). Second, *Briones* is similarly inapt because the Ninth Circuit set the standard for excusable neglect and remanded to the district court for reconsideration of whether a *pro se* plaintiff's negligent conduct was at least excusable. 116 F.3d at 382. Beyond its articulation of a legal standard, that case is inapplicable—particularly in this context where Plaintiffs are not *pro se* and are represented by two lawyers. Plaintiffs have cited no case to support their contention that being "unaware there was no plan in place to meet the court's [] deadline" constitutes "excusable neglect." Dkt. 330, at 2-4.

      2.    *Other commitments.* Plaintiffs' counsel cite two different commitments as an excuse for not providing Plaintiffs' positions by the deadline—neither of which actually relates to the missed deadline on July 14. First, Mr. Carreon, references that he was "out of the office on July 11th for a vehicle repair." Dkt. 330, at 2. The statement, of course, begs the question of what Mr. Carreon was doing for the time beyond that July 11 vehicle repair—no further explanation is offered. Obviously, spending part of a day on a car repair errand does not excuse missing a court deadline. Second, Ms. Dean was working on a document production and "preparing" for a "prestigious professional conference" beginning on July 14. Likewise, it is unclear how a professional conference *beginning* on July 14 would hinder preparations for meeting a court deadline *in advance* of July 14. In any event, this Court already rejected the excuse of attending a professional conference as good cause for an extension the first time around. *See* Dkt. 328, at 2 ("[C]ounsel's attendance at a professional conference . . . does not justify an extension when Plaintiffs have had notice of the June 27, 2025 deadline for more than a month."). While Defendants are sympathetic to personal commitments, neither of these excuses satisfies good cause for an extension for meeting a Court's deadline—after that deadline was already extended from June 27, 2025.

**III.  Defendants Will Be Prejudiced By Additional Extensions on This Issue.**

      Defendants have already been prejudiced—and will be further prejudiced—if Plaintiffs continue to receive further extensions on their obligations.

      First, Defendants have already been prejudiced by the long delay in resolving this issue. As the Court already recognized in December, *Plaintiffs had long waived this entire issue, and*

8

*Defendants should have had these documents, with names included, in March 2024*. *See* Dkts. 220; 224. Plaintiffs were granted an exception to raise the objection nine months late. The months continued to pass, and the issue was finally ripe for decision in April. And while the Court ruled that the privilege log was insufficient, Plaintiffs again were given one last additional opportunity to improve their log. Another two months passed by. On the eve of presenting this issue to the Court, Plaintiffs again ask for another opportunity to improve their own position. And after gaining an additional two weeks while the court considered their interim motion, Plaintiffs ask for even more time once again. Meanwhile Defendants continue to wait for information they should have received in March 2024. Defendants have already suffered significant prejudice waiting until the parties had reached this juncture.

Second, more extensions only create additional opportunities for Plaintiffs to create new issues with respect to the privilege log. Take, for example, Plaintiffs' earlier reference to how they are "continuing to refine the presentation of privilege assertions," Dkt. 326, at 8, and specifically that "[s]ince producing the new disputed May 16 log, [Plaintiffs have] diligently refined the log in good faith," *id.* at 9. First, these statements betray Plaintiffs' attitude toward deadlines. Second, Plaintiffs, in the delay in resolving these extension requests have provided Defendants with two revised privilege logs. But the Court made clear that the revised privilege log that was due on May 16, so that the parties could prepare the Joint Statement and litigate the associational privilege based on that log. Dkt. 323. The operative log for purposes of the Joint Statement is the May 16 one, and Plaintiffs should not be permitted to continue revising their log and creating new cycles of disputes with every new version. With these delays, Defendants will continue to be prejudiced by being forced to waste additional time and resources managing Plaintiffs, without actually resolving the issue at hand here.

**IV.     Conclusion**

For the reasons stated above, the Court should deny Plaintiffs' request for an extension, find that their privilege assertions have been waived, and order Plaintiffs to produce the documents logged in the May 16 amended privilege log to Defendants within seven (7) days.

| | |
|---|---|
| Dated: July 15, 2025 | Respectfully submitted, |
| | |
| | BRETT A. SHUMATE |
| | Assistant Attorney General |
| | |
| | ANDREW I. WARDEN |
| | Assistant Branch Director |
| | |
| | */s/ Giselle Barcia* |
| | GISELLE BARCIA |
| | Trial Attorney (D.C. Bar No. 1021577) |
| | Civil Division, Federal Programs Branch |
| | United States Department of Justice |
| | 1100 L Street, NW |
| | Washington, DC 20005 |
| | Telephone: (202) 305-1865 |
| | Fax: (202) 514-8640 |
| | E-mail: giselle.barcia@usdoj.gov |
| | |
| | *Counsel for Defendants* |