BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney (D.C. Bar No. 1021577)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br><br>v.<br><br>Pamela Bondi, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 2:20-cv-2373<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS FOR STAY, VACATUR, AND DISABILITY ACCOMMODATION**<br>**(Dkts. 332, 335, 336)** |

This Court recently found that Plaintiffs had waived any claim of associational privilege over member names and ordered the production of unredacted documents. Dkt. 334, at 3. In the ensuing two weeks, Plaintiffs have filed no fewer than four motions, three of which are currently before the Court. Those motions vary in substance but, at bottom, all seek the same relief: a reprieve from the Court's Order to avoid producing unredacted documents containing member names. But these Hail Mary motions all lack merit. Defendants respectfully request that the Court deny all three motions so the parties can move on with litigating the case.

## I. BACKGROUND

More than five years ago. Plaintiffs filed this RFRA lawsuit. Dkt. 1. Two years ago, the Court denied Defendants' motion to dismiss Plaintiffs' Fifth Amended Complaint, Dkt. 183, and a tumultuous discovery process surrounding Plaintiffs' RFRA claim began. Currently, Plaintiffs' numerous motions immediately stem from the fallout concerning a recent Joint Statement—one the Court has already ruled on—relating to Plaintiffs' belated, insufficient assertions of associational privilege. But the root of this problem stems further back, from Plaintiffs' consistent obstructionist tactics since discovery began in 2023.

### A. June 2023 - Mar. 2024: Discovery Was Plagued With Needless Disputes.

From the beginning, fact discovery in this case was plagued with needless disputes, well outside the norm of civil litigation. Initial disputes stemming from Plaintiffs' obstinance created a ripple effect that trickled down to the discovery disputes underpinning the instant motions. Some disputes worth highlighting include: (1) repeated revisions of the case management plans; (2) delayed entry of a protective order; (3) breakdown of the joint statement discovery process; and (4) Plaintiffs' pattern of missed internal deadlines and eleventh-hour extension quests. This history has been summarized in detail in prior filings. *See, e.g.*, Dkt. 297.

As relevant here, Defendants served Plaintiffs with Requests for Production that sought documents that included communications with AYA members. Although Plaintiffs lodged a number of objections, at no point during this stage of the litigation did they raise an associational privilege objection. The dispute eventually reached the Court, Dkt. 219, and the Court found that Plaintiffs: (1) "have not taken their discovery obligations seriously," (2) "have

failed to adequately respond to nearly 40 of Defendants' discovery requests," and (3) have "provided incomplete, insufficient, or unresponsive answers to many of the requests and in some instances have refused to respond at all." Dkt. 220, at 1-2. The Court further concluded that "Plaintiffs' responses and productions are totally insufficient and Plaintiffs' refusal to sufficiently respond to Defendants' discovery requests based on inapplicable privileges and objections is wrong and in some cases ridiculous." *Id.* at 2. Accordingly, the Court ordered Plaintiffs to "provide full and complete responses and productions to Defendants' requests," and given the numerous inconsistencies among Plaintiffs' verified and non-verified responses, ordered that "[w]here Plaintiffs claim they have already produced documents or that no responsive documents exist, Plaintiffs must verify their answers under penalty of perjury." *Id.* Plaintiffs were ordered to comply with these discovery obligations by the March 2024 substantial completion deadline. Rather than comply with discovery obligations, Plaintiffs sought mandamus relief from the Ninth Circuit from Order 220. Dkt. 230.

At this point, an individual named Taylor Cox—represented by Plaintiffs' counsel— moved to intervene in the district court on behalf of a putative class of AYA members, donors, and e-mail correspondents of AYA and Stanley. Dkt. 232. Cox's proposed complaint argued that the government's discovery requests for certain information violated RFRA, as well as his and the putative class members' First, Fourth, and Fifth Amendment rights. *Id.* Cox asked the Court to declare that the discovery requests violated his and the putative class members' Fourth Amendment rights and to enjoin Defendants "from issuing any future discovery demands in this action that would demand disclosure of" the information requested. *Id.* at 4. After this motion to intervene was filed, the district court stayed the proceedings. Dkt. 235, 240.

**B.  Sept. 2024 - Apr. 2025: The Court Denies Motion To Intervene and Provides Plaintiffs with Multiple Additional Opportunities To Comply.**

The Ninth Court denied the mandamus petition, and denied Plaintiffs' petition for rehearing and rehearing en banc. Dkt. 244. The Supreme Court also denied Plaintiffs' petition for certiorari. *Arizona Yagé Assembly v. U.S. Dist. Court for the Dist. of Ariz.*, 145 S. Ct. 1058 (2025). As the district court would later recognize, "[i]t [was] obvious that Plaintiffs decided to obfuscate

2

the litigation by embarking on a lengthy appellate journey." Dkt. 258, at 10.

When the district court lifted its stay in September 2024, Dkt. 247, Defendants filed their opposition to the motion to intervene, Dkt. 249. The Court denied Taylor Cox's motion to intervene. Dkt. 258, at 7-12. The Court found that the proposed intervenors had not shown that they were inadequately represented by Plaintiffs. Indeed, the Court found that the "Proposed Intervenors ha[d] failed to make even a minimal showing that their interests are not adequately represented by Plaintiffs." *Id.* at 8. To the contrary, the Court concluded "both Plaintiffs and Proposed Intervenors share[d] the same objective: to prevent Defendants from receiving relevant information in discovery." *Id.* at 9. The Court also deemed permissive intervention to be inappropriate. *Id.* at 9-10. It concluded that "[n]ot only would intervention be wasteful and burdensome, but it would also run counter to the objectives of AYA at-large by subjecting individual members to the disclosure of information that Plaintiffs and Proposed Intervenors so vehemently oppose." *Id.* at 10. It also concluded that the intervention "would serve only to further delay the litigation, thereby prejudicing Defendants." *Id.*

In that same order, the Court also outlined next steps in discovery, turning to the question of the Plaintiffs' outstanding discovery requests and their belated associational privilege claim. "The Court would have long ago adjudicated the issue of associational privilege if it had been properly presented to the Court." *Id.* Despite expressing that it was "wary to allow Plaintiffs to assert associational privilege objections nine months after the discovery responses deadline," the Court nevertheless, agreed to "undertake the privilege issue." *Id.* at 10-11. It directed Plaintiffs to provide Defendants with a privilege log by January 3, 2025, detailed its expectations, and issued a warning: "[f]ailure to oblige shall constitute a waiver of the privilege or any objection to discovery, and Plaintiffs will be ordered to fully comply with the Discovery Order at risk of serious sanctions." *Id.* at 11. Plaintiffs then filed a privilege log. Dkt. 285. On February 11, 2025, Defendants filed a Joint Statement arguing that Plaintiffs privilege log was inadequate. In that Joint Statement, Plaintiffs did not provide a position after extension requests, lack of responses to conferrals, and other intransigence. Dkt. 285, at 2. Plaintiffs' position was belatedly incorporated into the Joint Statement on March 6, 2025. Dkt. 291.

3

At the hearing the following month, the Court found Plaintiffs' privilege log insufficient, explaining that "[t]he Court does not presume that a protected associational relationship will exist between a party and every person that is communicated with." Tr. 39:17-40:3. The Court concluded that Plaintiffs "ha[d] not met the threshold of a prima facie case." *Id.* at 44:15-24. The Court, however, gave Plaintiffs "one more opportunity to (1) produce those documents in the identified sources of data that are not covered by the First Amendment privilege, and (2) to produce a revised privilege log that sufficiently describes the nature of any withheld documents." Dkt. 309, at 4; *see* Dkt. 318. The Court put Plaintiffs "on notice that failure to adequately describe privilege documents in [the revised] log is likely to result in Plaintiffs' waiver of the privilege." Dkt. 309, at 4 (emphasis omitted). The Court set a deadline of May 16, 2025, to "submit" the privilege log. Dkt. 318, at 2. The Court again cautioned that "[f]ailure to submit a complete and adequate privilege log by May 16, 2025, will result in WAIVER of any privileges not adequately described." *Id.*

### C.  May 2025 - Present: Disputes Concerning Plaintiffs' Compliance with Court Procedures, Waiver of Associational Privilege, and the Instant Motions.

Plaintiffs provided their revised privilege log to Defendants on May 17, 2025. After Defendants notified Plaintiffs that they should have submitted the log to the Court per Dkt. 318, Plaintiffs filed an unusual "certificate of substantial compliance," Dkt. 321 (which, among other things, misrepresented the reasons for their delayed (and incomplete) submission). And so the Court set deadlines for the parties to confer and file a Joint Statement regarding Plaintiffs' May 16 amended privilege log, at long last teeing up the associational privilege issue. Dkt. 323.

Ten days ahead of the Court deadline, on June 3, 2025, the parties participated in a meet and confer call, during which Defendants walked through the issues in their forthcoming portion of the Joint Statement, and the parties were clearly at an impasse. Dkts. 327, 331 (summarizing conferral). When Defendants circulated their portion of the Joint Statement on June 23, Plaintiffs requested that Defendants stipulate to a two-week extension. Defendants responded that while they could not agree to a two-week request, they would agree to a shorter one. Plaintiffs declined multiple offers and filed a motion for extension instead, Dkt. 326, which

1  Defendants opposed, Dkt. 327.  Two weeks later, the Court denied that motion.  Dkt. 328.  The
2  Court found that none of Plaintiffs' explanations established good cause for the extension.  *Id.*
3  at 2-3.  Nevertheless, "pursuant to its inherent authority to control the docket, the Court . . .
4  direct[ed] the parties to file the Joint Statement by 11:59 P.M. on Monday, July 14, 2025."  *Id.* at
5  3.  Critically, the Court also ordered Plaintiffs "to provide their portion of the Joint Statement
6  to Defendants by **9:00 A.M. Arizona time on July 14, 2025**."  *Id.*  The Court moreover made
7  clear that "[i]f Plaintiffs fail to provide their portion of the Joint Statement to Defendants by
8  9:00 A.M. Arizona time on July 14, 2025, Defendants may file the Joint Statement unilaterally
9  with Plaintiffs' positions left blank."  *Id.*  Immediately after the Court's July 10 Order was
10  docketed, Defendants forwarded the Order to both Plaintiffs' counsel to ensure they were on
11  notice that they should provide their positions to Defendants by Monday, July 14, 2025, 9 A.M.
12  (Arizona time).  Neither Mr. Carreon nor Ms. Dean responded.

13  When Monday, July 14, arrived, Plaintiffs' counsel blew through that 9 A.M. deadline
14  to contribute to the parties' Joint Statement.  Defendants e-mailed Plaintiffs' counsel to alert
15  them that they had missed the Court's deadline and that Defendants would be filing the Joint
16  Statement without Plaintiffs' positions, as the Court indicated would be appropriate.  Dkt. 329,
17  at 1.  Defendants subsequently filed the Joint Statement with Plaintiffs' positions left blank,
18  noting as much at the beginning of the Joint Statement.  *Id.*  Plaintiffs' counsel did not respond
19  to the e-mail alerting them to the missed deadline and did not otherwise seek to contact defense
20  counsel.  Later that evening, and without any prior conferral with Defendants, Plaintiffs filed a
21  "motion for extension of time to file opposition to Dkt. 329."  Dkt. 330.  Defendants opposed
22  that request.  The Court denied that request, ruling that "Plaintiffs ha[d] not met their burden
23  of showing that excusable neglect justifie[d] reopening the July 14, 2025 deadline."  Dkt. 333, at
24  3.  To that end, the Court went on to rule on the Joint Statement as Defendants had filed it.
25  Dkt. 334. Significantly, in that Order, the Court found that Plaintiffs had waived any claim of
26  privilege over the documents identified in their May 2025 privilege log and ordered production
27  of the documents without redaction.  *Id.* at 3.

28  Those adverse rulings spurred a flurry of motions from Plaintiffs, all filed without

5

conferral, that are now before the Court. By July 16, Plaintiffs had filed a "motion for disability accommodation of attorney." Dkt. 332. Therein, Plaintiffs requested that the Court "recognize counsel Charles Carreon's current incapacity to perform his duties as trial counsel due to documented occupational burnout, and grant a temporary stay of proceedings for a two-month period as a reasonable accommodation under the ADA." Dkt. 332, at 3. *See infra* Section III. A few days later, Plaintiffs filed "a motion for vacatur of order Dkt. 334, deeming joint statement complete with Plaintiffs' opposition timely filed 7 days after deadline [F,R,Civ.P.60(b)], and permitting overlength briefing." Dkt. 335. *See infra* Section II. Two days after that, Plaintiffs filed a motion for a stay pending appeal. Dkt. 336. *See infra* Section I. These three motions were topped off with two notices: a "notice of unavailability," in which Mr. Carreon declared he would be "unavailable to attend any proceedings herein from July 30, 2025 – August 12, 2025" due to a family medical commitment, Dkt. 337, at 1; and, filed just minutes ago, a "notice of filing motion for stay in the Ninth Circuit," in which Plaintiffs alerted the Court that the putative intervenors, represented by Mr. Carreon, asked the Ninth Circuit to stay this action, Dkt. 338.

## II.   **PLAINTIFFS' MOTION FOR STAY.**

Plaintiffs' move *ex parte* to stay "enforcement of the Waiver and Disclosure Order (Dkt. 334) entered on July 17, 2025," Dkt. 336, at 3, pending resolution of *AYA v. Bondi*, Case No. 25-41 (9th Cir.). That appeal stems from Plaintiffs' claim that "[e]nforcement of this order would irreparably violate the privacy and associational rights of the Intervenor Class and moot the very appeal currently pending in the Ninth Circuit (No. 25-41)." *Id.* This Court should decline to grant a stay on this basis. The party requesting a stay pending appeal "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). "A stay is not a matter of right" but is instead "an intrusion into the ordinary processes of administration and judicial review" and is "not to be issued 'reflexively,' but rather based on the circumstances of the particular case." *Sierra Club v. Trump*, 929 F.3d 670, 687-88 (9th Cir. 2019). As the party seeking the stay, Plaintiffs must show: (1) a likelihood of success on the merits, (2) Plaintiffs will be irreparably injured absent a stay, (3) the balance of hardships favors staying Plaintiffs' discovery obligations, and (4) staying Plaintiffs'

6

discovery obligations is in the public interest. *Nken*, 556 U.S. at 426.  Of these, "[t]he first two factors are the most critical." *Id.* at 434.  Here, Plaintiffs fail to meet any of these factors.

*First*, Plaintiffs do not show a likelihood of success on the merits of the appeal—they merely provide a conclusory description of the appeal and fail to explain why intervenors will succeed in reversing the decision below. Dkt. 336, at 4.  By contrast, the Ninth Circuit is likely to find, as this Court correctly held, that putative intervenors have not shown that they are entitled to intervention as of right.  To intervene as of right, the putative intervenor must show that (1) his intervention motion is timely; (2) he has a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest; and (4) his interest is inadequately represented by the parties to the litigation. *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010).  "Failure to satisfy any one of the requirements is fatal to the application" for intervention. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). The Ninth Circuit is highly likely to find that the putative intervenors' interest is adequately represented by Plaintiffs.  A presumption of adequacy applies where the putative intervenor "and an existing party have the same ultimate objective." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).  Here, putative intervenors and Plaintiffs have the same objective, which is to prevent enforcement of the challenged discovery order and to avoid disclosure to the government of relevant records in Plaintiffs' custody.  In this case, the putative intervenors cannot rebut the presumption of adequacy where, as here, Plaintiffs purport to represent putative intervenors' interests—and indeed, are represented by the same counsel who have now twice made the same arguments in both cases.  Put differently, putative intervenors' objections have not prevailed (and are unlikely to prevail on appeal) not because Plaintiffs are in any way inadequate representatives, but because those objections lack merit—regardless of who presents them.  On adequacy alone, Plaintiffs are unlikely to succeed on the merits.[1]

---

[1] Plaintiffs do not discuss any of the factors, but the putative intervenors are unlikely to succeed on any of them, including timeliness, given that they did not move to intervene in the case until four years after the case had started, after the substantial completion of fact discovery deadline.

7

*Second*, Plaintiffs have not shown that they will be irreparably injured absent a stay. Plaintiffs argue that they will suffer "irreparable violation of privacy and associational rights" because "[T]he Waiver and Disclosure Order requires immediate production of documents reflecting confidential communications between AYA, Stanley, their members, donors, and correspondents—including Cox Appellants and the members of the Intervenor Class." Dkt. 336, at 4-5. But they do not discuss why the absence of a stay specifically would cause any irreparable harm. That is because whether the Court grants a stay pending the resolution of the intervenor appeal does not bear on enforcement of the order. As discussed above, putative intervenors and Plaintiffs have the same objective, which is to prevent enforcement of the challenged discovery order and to avoid disclosure to the government of relevant records in Plaintiffs' custody. The Court has already decided this issue—regardless of the unlikely scenario that the Ninth Circuit orders intervention. There is already a Protective Order in place that protects the disclosure regardless of whether the intervenors are in the case or not. Plaintiffs separately argue that "[i]f the Court enforces Dkt. 334 and the subject documents are produced, any appellate ruling recognizing associational or privacy rights will be rendered toothless." Dkt. 336, at 5. But here too, Plaintiffs seem to misunderstand that the information should be disclosed regardless of the Ninth Circuit's ruling. That is, even in the unlikely event that the Ninth Circuit allows putative intervenors to become parties in this case, their participation would not alter the Court's ruling regarding *Plaintiffs'* failure to assert associational privilege. Dkt. 334.

*Finally,* Plaintiffs' request should be denied because the balance of the equities and the public interest weigh against a stay. Where, as here, the United States is a party, the balance of the equities and the public interest merge. *See Nken*, 556 U.S. at 434. Continued delay of this matter (potentially for months) would harm Defendants' interest in bringing this long-running, resource-intensive case to conclusion. Plaintiffs' request for a stay—along with their *in seriatim* motions—are nothing more than a continuation of their litigation strategy to "delay or disrupt discovery." Dkt. 220, at 2. Plaintiffs' eleventh-hour request for a stay would provide them with a substantial and uncurable advantage in discovery. Put more concretely, Plaintiffs will have the decided advantage of a much-needed reprieve during the now *twice* protracted appellate-review

8

process—despite that Defendants completed their document productions nearly 18 months ago. This includes the added benefit of preparing for depositions, researching and retaining expert witnesses, and preparing expert reports. By contrast, Defendants will still lack the information that the Court first ruled was relevant to their defense in February 2024. Dkt. 220. The Court should not reward Plaintiffs' continued intransigence with a second stay.

More broadly, a stay here would not be in the public interest because, at the heart of this case is AYA's importation, manufacture, and distribution of a Schedule I controlled substance, and whether Plaintiffs' use of such a controlled substance (even for a purported religious use) runs afoul of Defendants' compelling interest in ensuring public safety pursuant to the Controlled Substances Act. Here, Congress, "recognized the danger involved in the manufacture, distribution, and use of certain psychotropic substances for nonscientific and nonmedical purposes." 21 U.S.C. § 801a. And it has authorized the Attorney General to issue, a registration for the importation, manufacture, or distribution of a controlled substance if doing so would be consistent with the public interest. 21 U.S.C. § 823. Here, AYA continues to host ayahuasca ceremonies, and there is no suggestion it would cease hosting them during a potential stay. *See,* Arizona Yagé Assembly: Ceremonies, https://www.aya.guide/ceremonies (last visited July. 30, 2025) (offering ceremonies throughout 2025). Indeed, that AYA has refused to disclose highly relevant information that would illuminate their safety practices for such ongoing ceremonies raises serious questions as to whether AYA has adequate safety controls in place. Allowing Plaintiffs to refuse to provide this information is decidedly against the public interest.

### III.    **PLAINTIFFS' MOTION FOR VACATUR.**

Plaintiffs separately filed a "motion for vacatur of order Dkt. 334 deeming Joint Statement complete with Plaintiffs' opposition timely filed seven days after deadline [F,R,Civ.P. 60(b)], and permitting over-length briefing."[2] Dkt. 335. As an initial matter, "[i]t is widely understood that Rule 60 does not apply to interlocutory orders," as here. *Est. of Risher v. City of Los Angeles*, 2023 WL 5506005, at *3 (C.D. Cal. July 10, 2023). Regardless, this motion—

---

[2] Plaintiffs also seek leave to file an over-length 17-page Joint Statement. Dkt. 335, at 5-6. If the Court permits Plaintiffs' filing, Defendants request that each side be allowed the same length.

effectively a motion for reconsideration of the Court's two rulings, Dkts. 333, 334—lacks merit. "The Court has discretion to reconsider and vacate a prior order. Motions for reconsideration are disfavored, however, and are not the place for parties to make new arguments not raised in their original briefs. Nor is reconsideration to be used to ask the Court to rethink what it has already thought." *Honeywell Int'l, Inc. v. W. Support Grp.*, 2013 WL 2369919, at *1 (D. Ariz. May 29, 2013) (citations omitted); *see* L.R. Civ. 7.2(g)(1) ("No motion for reconsideration may repeat any oral or written argument made by the movant . . . that resulted in the Order.").

Here, Plaintiffs largely advance the same arguments this Court already rejected, namely, excusable neglect for failing to meet the July 14 deadline. *Compare* Dkt. 335, at 3-4, *with* Dks. 327, 331. Plaintiffs also briefly, and inaptly, invoke "procedural default," claiming that "[a] seven-day delay, promptly remedied, is precisely the kind of misstep for which courts disfavor waiver." Dkt. 335, at 5. Regardless, the issue here is not a seven-day delay; the delay is at least 17 days (if not 18 months, Dkts. 220-40). The operative Joint Statement deadline was June 27, 2025. Rather than respond on the merits, Plaintiffs filed yet another eleventh-hour request for an extension of time on June 26, which the Court, on July 10, denied while also setting a new July 14 deadline and affording Plaintiffs an additional 17 days. Dkt. 328, at 3. Plaintiffs "effectively received the two-week extension they originally requested," plus three days, Dkt. 333, at 3, and even then failed to meet their requested longer deadline. They cannot now file on July 21—almost a month after the original deadline. Remarkably, against this morass of self-inflicted procedural delays, Plaintiffs claim to minimize the amount of "judicial inefficiency" and prejudice to Defendants, while at the same time suggesting they should be given the opportunity to correct the "one-sided statement of facts and law." Dkt. 335, at 5. But such bald assertions ignore that Defendants and this Court have expended significant resources responding to and deciding *in seriatim* meritless motions, respectively, and that Plaintiffs have been given every opportunity to provide their position. Their repeated flouting of this Court's orders and disregard for rules applicable to all other litigants should not be permitted. The procedural history speaks for itself, and Defendants remain, since March 2024, prejudiced by Plaintiffs' continued obstructionist conduct.

10

**IV.     PLAINTIFFS' MOTION FOR DISABILITY ACCOMMODATION.**

Plaintiffs filed a "motion for disability accommodation of attorney," requesting that the "Court recognize counsel Charles Carreon's current incapacity to perform his duties as trial counsel due to documented occupational burnout, and to grant a temporary stay of proceedings for a two-month period as a reasonable accommodation under the ADA." Dkt. 332. While Defendants are sensitive to Mr. Carreon's representations regarding his mental health, the motion provides no basis to grant the relief he seeks: a blanket two-month stay.

This Court should not grant the reqsuted two-month stay.  Assuming arguendo, that Mr. Carreon is suffering from "occupational burnout," the motion offers no case that categorizes burnout as a disability under the ADA—the motion simply asks the Court to deem it so. Likewise, the motion cites no case that connects a stay of legal proceedings as a reasonable accommodation under the ADA.  Instead, Mr. Carreon argues the stay would be appropriate because "[n]o other counsel is available." Dkt. 332, at 5.  Not so.  Melissa Dean has served as co-counsel for Plaintiffs since last summer.  The motion states that "she is but a trainee in the field of civil procedure, and not capable of taking the case forward to complete discovery and conduct trial." *Id.*  But Ms. Dean, a 2021 law school graduate and barred attorney, is certainly no less capable than Mr. Carreon of handling straightforward discovery matters for several months.  In any event, there is no trial scheduled in the next two months—instead there are existing document production obligations, which, as Plaintiffs have previously recognized, Ms. Dean herself has been leading. Dkt. 330 (explaining that Ms. Dean "prepared the privilege log . . . led all prior meet-and-confer communications on the subject, [and] was simultaneously completing a significant document production . . . and preparing to attend a prestigious professional conference at Harvard").  To that end, the motion provides no basis for a stay.  But if this Court is inclined to grant some relief here, it should allow Mr. Carreon to temporarily withdraw from the case while Ms. Dean continues to represent Plaintiffs in discovery.

**V.     CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court deny Plaintiffs' motions for stay, vacatur, and disability accommodation.

Dated: July 30, 2025					Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Giselle Barcia*
GISELLE BARCIA
Trial Attorney (D.C. Bar No. 1021577)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

12