CHARLES CARREON
Lead Counsel (CSB #127139)
7 N. Ridge Crest Drive
Silver City, New Mexico 88061
Telephone: 928-975-2191
E-mail: chascarreon@gmail.com

MELISSA DEAN
Attorney (FLSB #1031982)
111 N. Orange Ave, Ste. 800
Orlando, FL 32801
Telephone: 772-919-2748
E-mail: melissadeanesq@gmail.com

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yagé Assembly; Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br><br>vs.<br><br>Pamela Bondi, Attorney General of the United States; et al.<br><br>Defendants. | No.:20-CV-02373-DJH<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS FOR STAY, VACATUR, AND DISABILITY ACCOMODATION**<br>**(Dkts. 332, 335, 336, 339)** |

## INTRODUCTION & GOVERNING STANDARD

This lawsuit is controlled first and last by the Religious Freedom Restoration Act ("RFRA")—not by ordinary discovery rules or lessor standards of scrutiny. Under RFRA, once a plaintiff shows a "substantial burden," the Government—defined to include "any branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a State or subdivision of a State," 42 U.S.C. § 2000bb-2(1)— bears the burden of proving a compelling interest furthered by the least restrictive means.

For more than a year the Federal Government has aggressively sought non-anonymized, unredacted electronic discovery ("ESI") that sweeps up every member and donor name, pastoral e-mail, screening questionnaire, and ceremony roster ever generated by Plaintiffs—all under the guise of "routine document demands." Defendants framing of the procedural history obscures what is really at stake: This Court is among the first federal tribunals to confront RFRA questions so unprecedented that precedent offers almost no guidance. The gravity of its decision will set a nationwide benchmark for all entheogenic faith-communities and will either safeguard or dismantle the religious liberty of thousands of minority adherents across the United States.

The Court's July 17, 2025, Waiver & Disclosure Order (Dkt. 334; "WDO") rests not on a merits ruling but on a finding of procedural default. Because that default resulted from excusable neglect—documented occupational burnout of lead counsel and calendaring error—the Order is subject to relief under Rule 60(b)(1) and (6).

## I. STAY PENDING APPEAL: RFRA CONTROLS

A "Hail Mary" is a well-known prayer recited during the Catholic Sacrament of Penance. As the Ninth Circuit has warned that compelled disclosure of penitential secrets to the government "would operate as a serious deterrent to participation in the sacrament and an odious detriment accompanying participation." *Mockaitis v. Harcleroad*, 104 F.3d 1522, 1530 (9th Cir. 1997) overruled on other grounds by *City of Boerne v. Flores*, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997)(holding RFRA applied pre-*Boerne*; still persuasive under federal RFRA post-*Gonzales)*.

Because sacramental confession is an "integral part of Catholicism," the Ninth Circuit enjoined government officials from recording details of a jailhouse confession, even though the recordings might have advanced a criminal investigation, because such state action would "substantially burden" religious exercise. *Id.* at 1530. The same constitutional principles govern here. Before an individual my participate in an AYA ayahuasca ceremonies, Plaintiffs require a confidential screening of spiritual readiness—exactly the kind of sacred communication that *Mockaitis* protects. Compelling unredacted member lists, screening forms, and pastoral e-mails to support the government's "potential affirmative defense" chills participation just as surely as recording a confession would.

By branding Plaintiffs' requests "Hail Mary" motions—a majority-faith metaphor—Defendants trivialize AYA's sacrament and seek to sidestep RFRA's demanding strict-scrutiny burden. Defendants then recast this dispute as ordinary, leaning on procedural-default and Rule 26 relevance rulings (Dkts. 220, 258, 334) to avoid RFRA's strict-scrutiny merits inquiry. RFRA, however, "displaces" ordinary discovery rules whenever government action substantially burdens religious exercise. Until Defendants demonstrate a compelling interest served by the least-restrictive means, enforcement of the disclosure orders must be stayed.

Under *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011), a stay turns on four flexible factors and is proper when: (1) the movant is likely to succeed or presents serious questions; (2) irreparable harm is probable; (3) the balance of equities tips in the movant's favor; and (4) the public interest favors relief. RFRA's heightened standard infuses each factor and tilts decisively in Plaintiffs' favor.

**A. Likelihood of Success and Serious Constitutional Questions**

Under RFRA, the Government may only substantially burden religious exercise if **it demonstrates** that the burden furthers a compelling governmental interest and is the least restrictive means. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006); 42 U.S.C. §§ 2000bb-1(b), 2000bb-2(3). "Demonstrates" means the Government bears both the burden of production and the burden of persuasion.

3

Here, the harm to AYA from being denied the right to freely exercise its religion, which under anyone's measure carries significant weight and is actually occurring, must be measured against the potential risks of diversion of ayahuasca to non-religious uses and harm to the health of church members consuming the ayahuasca. *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1009 (10th Cir. 2004).

To assert affirmative defenses, the Government must have a Rule 11 basis in fact or law. *Firetrace USA, LLC v. Jesclard*, No. CV-07-2001-PHX-ROS, 2009 U.S. Dist. LEXIS 2972, at *6 (D. Ariz. Jan. 9, 2009). Those defenses must also survive RFRA's strict scrutiny—**the most demanding test in constitutional law**. *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). Yet while demanding invasive discovery, Defendants refuse to disclose their own religious sincerity criteria.[1]

Stated differently, the Government admits that, although it bears the burden of demonstrating a compelling interest as its "potential affirmative defense" at trial,[2] but insists AYA bear the burden to disprove that interest by producing private spiritual communications and identifying "any and all" members. *O Centro*, 546 U.S. 418 at 429.

**B. Irreparable Harm is a Substantial Burden Under RFRA**

"The infringement of First Amendment freedoms . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); see also *Brown v. Cal. DOT*, 321 F.3d 1217, 1226 (9th Cir. 2003). Raising serious First Amendment questions "compels a finding that there exists the potential for irreparable injury." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007).

Disclosure that would render appellate review futile constitutes irreparable harm. *UMG Recording, Inc. v. Bertelsmann AG* (*In re Napster Copyright Litig.*), 479 F.3d 1078, 1088 (9th

---

[1] Notably, Defendants have steadfastly refused to narrow their discovery requests despite the U.S. GAO-24-106630 report being published shortly after Dkt. 220 was entered which exposes the DEA's lack of clear criteria for assessing religious sincerity. See, [Drug Control: DEA Should Improve Its Religious Exemptions Petition Process for Psilocybin (Mushrooms) and Other Controlled Substances | U.S. GAO](#)

[2] "The government sought this information to test plaintiffs' ability to show that their asserted religious beliefs are sincere **as well as to support the government's potential affirmative defense** that applying the Controlled Substances Act's prohibition on ayahuasca to petitioners is the least restrictive means." Brief for Appellees at 8, *Arizona Yagé Assembly v. Bondi*, No. 25-41 (9th Cir. filed May 27, 2025), ECF No. 24-1 (emphasis added).

4

Cir. 2007); see also *United States v. Philip Morris, Inc.*, 314 F.3d 612, 621–22 (D.C. Cir. 2003); *Admiral Ins. Co. v. U.S. Dist. Court,* 881 F.2d 1486, 1491 (9th Cir. 1989).

The evidentiary priest-penitent privilege—long recognized in American law and affirmed in Supreme Court dicta—is essential to free religious exercise, particularly where Fourth Amendment values are implicated. *Mockaitis*, at 1532.[3] In *Mockaitis v. Harcleroad*, the Ninth Circuit found a Catholic priest reasonably relied on this tradition, confirming a legitimate expectation of privacy. *Id.* at 1532–33.

That same expectation applies to sacred spaces. In *Fazaga v. FBI*, 965 F.3d 1015, 1037 (9th Cir. 2020),[4] the court recognized that "where the materials sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude.'" See also *Mockaitis*, 104 F.3d at 1533.

The discovery orders (Dkts. 220, 258, 334) compel disclosure of confidential member identities, screening forms, and pastoral communications—precisely the kind of RFRA violation condemned in *Mockaitis v. Harcleroad*. Yet, Defendants make no attempt to carry their burden.

**C. Balance of Equities v. War of Attrition**

In the most general interpretation, the Disclosure Order (Dkt. 220) applies the Rule 26 relevancy standard—**not strict or exacting scrutiny**[5]—to the Defendants' discovery demands, while the Waiver Orders (Dkts. 258, 334) severely penalize Plaintiffs for an

---

[3] All fifty states have enacted statutes "granting some form of testimonial privilege to clergy-communicant communications. Neither scholars nor courts question the legitimacy of the privilege, and attorneys rarely litigate the issue." *Mockaitis v. Harcleroad*, 104 F.3d 1522, 1532 (9th Cir. 1997)

[4] Overruled on other grounds, (not relevant in the case at bar), specifically the Ninth Circuit's reasoning that §1806(f) "displaced the state secret privilege. See, *FBI v. Fazaga*, 595 U.S. 344 (2022).

[5] In the Ninth Circuit, the Exacting Scrutiny standard is triggered when demonstration that enforcement of discovery requests will result in arguable First Amendment infringement. To conduct that evaluation, it is necessary for the district courts to identify the kinds of information and documents that the First Amendment privilege might (and might not) cover. See, *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO, 2015 U.S. Dist. LEXIS 192788, at *6-7 (N.D. Cal. Nov. 20, 2015), *quoting Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010), *quoting NAACP v. Ala. ex rel. Patterson,* 357 U.S. 449, 463, 78 S. Ct. 1163, 1172 (1958).

insufficient privilege log. Though Rule 26 is facially neutral and generally applicable, even it requires that ESI demands be both relevant and proportional to the case.

Rule 26(b)(1) limits discovery to nonprivileged, relevant, and proportional information. Courts may restrict burdensome discovery under Rule 26(c). *Lighthouse Res., Inc. v. Inslee*, No. 3:18-CV-05005-RJB, 2018 U.S. Dist. LEXIS 127064, at *7-8 (W.D. Wash. July 30, 2018) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Rule 26 considers resource imbalances and authorizes limits to prevent litigation from becoming a coercive "war of attrition." *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 602 (D. Nev. 2016); Fed. R. Civ. P. 26(b)(1)(iii).

When the government demands discovery in a RFRA case, such burdens become constitutional injuries. The federal government, with unlimited resources, has exploited this imbalance. As Defendants told this Court: "*If the demands of discovery in this case are proving to be too taxing or time-intensive, Plaintiffs may dismiss this lawsuit or hire additional counsel beyond the second attorney retained last month.*" (Dkt. 277 at 17, Ex. 7).[6]

In this context, RFRA demands more. The Court must ask: [1] do the discovery demands of Defendants' and the penalties imposed by Orders (Dkts. 220, 258, 334) substantially burden Plaintiffs' religious exercise and, [2] is it the least restrictive means of furthering the Government's compelling interest?[7]

**D. Public Interest**

"The public interest is served when administrative agencies comply with their legal obligations." *Nken v. Holder*, 556 U.S. 418, 436 (2009).

---

[6] Nor have putative intervenors explained how requiring plaintiffs to comply with a discovery order in litigation that they initiated (**and could dismiss at any time**) could constitute an unreasonable search or seizure under the Fourth Amendment. Brief for Appellees at 15, *Arizona Yagé Assembly v. Bondi*, No. 25-41 (9th Cir. filed May 27, 2025), ECF No. 24-1. (emphasis added).

[7] The Federal Rules restrict discovery: (i) the requested material must be "relevant to any party's claim or defense," in that it "appears reasonably calculated to lead to the discovery of admissible evidence"; (ii) the requested material cannot be privileged; and **(iii) producing the requested material cannot be overly burdensome**. F.R.C.P. 26(b)(1), (b)(2)(C)(iii).

6

Defendants claim a stay gives Plaintiffs a "substantial and uncurable advantage." Yet they also state they've substantially completed discovery—producing more than 20,000 pages, much of which consists of duplicative court filings, public research articles, and apparently unrelated material to any claims or "potential affirmative defense." [Dean Decl. _].

"Defendants should not need discovery or cross-examination to establish a compelling state interest" and '[d]iscovery is not intended to be a fishing expedition." *Jensen v. Utah Cty.*, No. 2:24-cv-00887-JNP-CMR, 2025 U.S. Dist. LEXIS 3748, at *12 n.6 (D. Utah Jan. 7, 2025) (citing *Alsaadi v. Saulsbury Indus. Inc.*, No. 2:23-cv-291, 2024 U.S. Dist. LEXIS 68597, 2024 WL 1617639, at *3 (D.N.M. Apr. 15, 2024)). RFRA requires the Government to offer at least some evidence of harm or misuse stemming from AYA's religious practices before compelling discovery to support "potential affirmative defenses."

As in *Jensen*, the Government may present evidence and witnesses at depositions or hearings—but has largely declined to do so. As the federal government has stated in various previous filings, "it has substantially complied with its discovery obligations." If that is actually true, Defendants' should not be permitted to continue concealing whether or not they have an affirmative defense or produce evidence of their compelling government interest. Under RFRA, allowing Defendants to refuse to produce this information while compelling disclosure from Plaintiffs is decidedly against the public interest.

Defendants argue their demands won't chill association because they're **"rationally related to a compelling interest and are the least restrictive means of obtaining the desired information."**[8] Their contention misses the mark entirely. *Perry* confirms that rigorous constitutional assessment is within the Court's purview—not the Department of Justice—to determine whether compelled disclosure chills or substantially burdens First Amendment activities. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010).

If the Court finds no substantial RFRA burden, it still must apply *Perry's* exacting scrutiny test. Plaintiffs must show disclosure chills participation or harms protected religious

---

[8] Brief for Appellees at 16, *Arizona Yagé Assembly v. Bondi*, No. 25-41 (9th Cir. filed May 27, 2025), ECF No. 24-1 (quoting Response in Opposition to Petition for Writ of Mandamus at 13-19, *In re Arizona Yage Assembly*, No. 24-1405 (9th Cir. Mar. 29, 2024) (emphasis added).

7

activity. *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO, 2015 U.S. Dist. LEXIS 192788, at *6-7 (N.D. Cal. Nov. 20, 2015) (quoting *Perry* and *NAAVC v. Alabama*). The burden shifts to Defendants to demonstrate the requests are narrowly tailored to a substantial interest and are the least restrictive means. *Id.*; *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 512-13 (D. Ariz. 2023).

The breadth of Defendants' discovery, compounded by their repeated insistence that Plaintiffs have *waived* associational privilege before an ESI protocol is even operational imposes an undue burden both logistically and constitutionally. Plaintiffs must comb through thousands of documents spanning a decade. But satisfying Defendants' requests—particularly those targeting identities of AYA's affiliates—burdens Plaintiffs' free exercise by chilling religious association. *Jensen v. Utah Cty.*, No. 2:24-cv-00887-JNP-CMR, 2025 U.S. Dist. LEXIS 3748, at *10-11 (D. Utah Jan. 7, 2025); (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-61 (1958)).

In *Jensen*, the court recognized criminal exposure deterred testimony and imposed a protective order limiting material use to that case. *Id.* at 12 n.5. The court mitigated that constitutional burden by requiring a protective order that strictly limited use of produced material to that civil action—a safeguard that the government itself endorsed. *Id.* at 9 n.4.

No comparable protection or "least restrictive means" exists here. This Court (Dkt. 215) and the operative order (Dkt. 217) expressly allow the United States to use discovery for criminal enforcement purposes. Thus, unlike the limitation adopted by the *Jensen* court, nothing bars federal prosecutors from mining AYA's member data and spiritual records for investigations or indictments.

That permission alone defeats Defendants' claim that the protective order prevents First Amendment harm. But even a litigation-only restriction would be insufficient; **the injury is compelled disclosure itself**. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) (emphasis added); see also *AFP Found. v. Bonta*, 141 S. Ct. 2373, 2388 (2021). And this Court has already ruled that "Plaintiff AYA cannot assert the Fifth Amendment privilege on behalf of its members." (Dkt. 215 at 3). The result is commonsense: compelled disclosure exposes Plaintiffs and Intervenors to prosecution, surveillance, and stigma magnifying the

chill on religious association that *NAACP v. Alabama* and violates settled constitutional principles. Once disclosed, member identities cannot be clawed back—causing harm that is immediate, irreparable, and beyond the reach of appellate review.

**II. RULE 60(b) VACATUR OF DKT. 334 IS APPROPRIATE**

RFRA protects all religious adherents from government-imposed burdens on their religious exercise. *Coronel v. Paul*, 316 F. Supp. 2d 868, 879 (D. Ariz. 2004). Nearly a decade ago, the Supreme Court emphasized that even at the preliminary injunction stage, "Congress's express decision to legislate the compelling interest test indicates that RFRA challenges should be adjudicated in the same manner as constitutionally mandated applications of the test." *O Centro,* 546 U.S. 418 at 430. That same logic extends to this case.

Unlike *NAACP*, *Perry*, *Mi Familia*, and *Bonta*, where the government supported its asserted interests with sworn evidence, Defendants here have refused to designate a deponent or produce discovery that justifies their claimed interest. Plaintiffs respectfully move to vacate Order Dkt. 324, reconsider the related discovery rulings under *Jensen* and RFRA, and either enter or allow briefing on a litigation-only protective order that complies with RFRA's least-restrictive-means requirement.

In light of the fact that Defendants have never been permitted to engage in such a sweeping fishing expedition in RFRA cases involving entheogenic churches is illuminating to say the least. *Jensen v. Utah*—decided after Orders Dkts. 217, 220, and 258—directly addressed the same constitutional clash between compelled disclosure of religious membership and RFRA/First Amendment protections. In *Jensen*, the court required a litigation-only protective order and barred use of disclosure in criminal proceedings. Here, by contrast, Dkt. 217 expressly allows DOJ to use member data for criminal-enforcement purposes, and Orders 220, 258, and 324 compel that disclosure without applying RFRA scrutiny. Once a less-restrictive approach is shown to work, RFRA demands the Government adopt it or justify its rejection.

As in *Presbyterian Church v. United States*, 752 F. Supp. 1505, 1510 (D. Ariz. 1990), the Government may not coerce disclosure of protected religious communications to test

sincerity in a RFRA case. The First Amendment prohibits unbridled government intrusion when the purpose or effect is to chill protected activity. *Id.* at 1515–16.

Similarly, in *Fazaga v. FBI*, the Ninth Circuit found a reasonable expectation of privacy in mosque conversations. *Fazaga*, 965 F.3d at 1037. The same expectation applies here. Intervenors share sacred communication with each other and their minister electronically and within the AYA Maloka—often their only safe context for disclosing spiritual beliefs. [9][10]

As in *Mockaitis*, Intervenors have formed a sacred and trusting space within AYA—revealing trauma, disclosing health information, and finding spiritual refuge together. Compelled disclosure of their PII would violate that trust and cause extreme, irreparable harm to the congregation.[11] The government seeks to exploit this trust, just as it did in *Mockaitis* and *Fazaga*—cases which contradict the contention in Order Dkt. 220 that no federal common law priest-penitent privilege exists.

Enforcing the Disclosure Order (Dkt. 220) or WDO (Dkt. 334) would chill worship, deter participation, and potentially dismantle the congregation—easily satisfying RFRA's "substantial burden" standard.[12] Even if CSA enforcement is compelling, Defendants cannot credibly claim that seizing every Intervenor's PII is the least-restrictive means to prove it. Plaintiff Scott Stanley and nine Intervenors have already volunteered to provide this Court with testimony.[13]

Blanket compelled disclosure is not narrowly tailored and violates both RFRA and Rule 26(b)(1). It is a sweeping fishing expedition in search of "potential affirmative defenses."

This Court need not allow Defendants' "fishing expedition." *Begay v. United States*, No. CIV 15-0358 JB/SCY, 2018 U.S. Dist. LEXIS 10520, at *12 (D.N.M. Jan. 23, 2018). Consistent with *Whole Woman's Health v. Smith*, 896 F.3d 362, 376 (5th Cir. 2018) (quashing a

---

[9] Cox Dec. ¶¶13, 16–18, 20, 22; Huynh Dec. ¶¶12–14, 17–18; Ziebol Dec. ¶¶8, 11–12, 18.

[10] Cox Dec. ¶4; Ziebol Dec. ¶¶4, 14–16; Huynh Dec. ¶¶3, 15.

[11] Cox Dec. ¶¶25, 28–29; Ziebol Dec. ¶¶17, 20–22; Huynh Dec. ¶¶12, 16, 19–21.

[12] Cox ¶¶ 25, 28–29; Ziebol ¶¶ 17, 20–22; Huynh ¶¶ 12, 14–16, 19–21.

[13] Cox Dec., ¶ 31; Ziebol Dec., ¶ 23; Huynh Dec., ¶ 22.

religious communications subpoena), Plaintiffs ask the Court to [1] recognize the novel, far-reaching constitutional implications of compelled disclosure, [2] apply RFRA's strict-scrutiny and, [3] narrowly enforce proportional-discovery limits under Rules 26(b)(2)(C) and 26(c)(1), construing those limits "in light of the principle of constitutional avoidance."

**III. PLAINTIFFS' MOTION FOR DISABILITY ACCOMMODATION**

Title II of the ADA imposes an "affirmative obligation to accommodate persons with disabilities in the administration of justice." *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004). A court must provide reasonable modifications that (1) do not fundamentally alter the nature of the proceedings and (2) are requested by an otherwise-eligible participant. *Id.* at 531–32; 28 C.F.R. § 35.130(b)(7); *Goldblatt v. Geiger*, 2012 DNH 867 F. Supp. 2d 201, 208–09 (D.N.H. 2012).

**A. Attorney Carreon is utilizing the resources available to him through the California Bar and seeking treatment for ongoing occupational burnout.**

Lead counsel Charles Carreon has submitted medical documentation establishing *occupational burnout* that substantially limits his ability to perform litigation functions. See Carreon Decl. ¶ 4. On July 29, 2025, he utilized the California Lawyer Assistance Program ("LAP") and had a Career-counseling call with LAP advisor Gene Brincko. Additionally, Attorney Carreon has an appointment scheduled for a medical evaluation with Dr. David Lehberger at 2:00 p.m. on Friday August 8, 2025, for a treatment plan. Lead Counsel is therefore actively mitigating his condition and seeking professional support, satisfying the ADA's requirement that a requester engage in reasonable self-help. Under *Tennessee v. Lane*, Plaintiffs request for a two-month stay of discovery deadlines is a classic "reasonable modification."

**IV. CONCLUSION & RELIEF REQUESTED**

Plaintiffs respectfully request that the Court:

1. Stay enforcement of Orders Dkts. 220, 258, and 334 pending the Ninth Circuit's resolution of the appeal;
2. Vacate Order Dkt. 334 (and, by extension, the privilege-waiver rulings in Dkts. 258 & 220);

3. Either:
   a. Adjudicate the merits of Plaintiffs' motion for a tailored protective order (Dkt. 288) under strict scrutiny; or
   b. Grant leave (per Dkt. 316) for focused briefing on a litigation-only protective order modeled on *Jensen*;
4. Stay any production of member PII unless and until the Government satisfies RFRA's strict scrutiny and the Court determines disclosure is the least restrictive means of advancing a compelling interest
5. Grant an ADA accommodation for lead counsel's medical condition by briefly extending discovery deadlines.

Dated: August 6, 2025                              MELISSA DEAN

                                                   _____
                                                   MELISSA DEAN (FLB #103182)
                                                   Attorney for Plaintiffs
                                                   Arizona Yagé Assembly,
                                                   Winfield Scott Stanley III
                                                   *Pro hac vice*