MELISSA DEAN (FLSB #1031982)
111 N. Orange Ave, Ste. 800
Orlando, FL 32801
Tel: 772-919-2748
Email: melissadeanesq@gmail.com

Counsel for Plaintiffs
*Pro Hac Vice*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Yagé Assembly, Winfield Scott Stanley III, in his capacity as Founder and Director of Arizona Yagé Assembly,<br><br>Plaintiffs,<br><br>v.<br><br>Pamela Bondi, Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 20-CV-02373-DJH<br><br>**PLAINTIFFS' RULE 72(a) OBJECTION TO MAGISTRATE JUDGE'S ORDERS**<br>**(Dkts. 334, 347, 348, 349)** |

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 72(a), Plaintiffs respectfully object to the Magistrate Judge's July 17, 2025 Order (Dkt. 334, the "Waiver and Disclosure Order" or "WDO") and the August 18, 2025 Orders denying reconsideration and a stay (Dkts. 347, 348, 349, the "August 18 Orders"). Collectively, these rulings compel the non-anonymized production of sacred communications containing the personal identities of AYA's members, donors, and religious correspondents—effectively extinguishing Plaintiffs' associational privilege claims by deeming them categorically waived. The Orders rely on earlier discovery rulings (Dkts. 217, 220) as "law of the case" and miscast a live constitutional dispute as a mere procedural discovery sanction. Dkt. 334 at 3.

This blanket waiver approach is clearly erroneous and contrary to law. The Religious Freedom Restoration Act ("RFRA") requires strict scrutiny before any branch of the government may burden religious exercise, and the Ninth Circuit in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), held that compelled disclosure that chills associational rights must satisfy exacting scrutiny. Protective orders cannot cure the harm where compelled disclosure itself is the constitutional injury. Here, the Magistrate Judge ensured irreparable constitutional harm to Plaintiffs and mooted appellate review of the Intervenors' claims without requiring the Government to carry its burden under RFRA or *Perry*, and without addressing Plaintiffs' proposed less-restrictive alternatives.

If the Court deems objections to the July 17 Order untimely, Plaintiffs move for an extension under Rule 6(b)(1)(B) based on excusable neglect. Alternatively, because these are interlocutory discovery orders, Plaintiffs move under Rule 54(b) for to prevent irreparable constitutional harm. Plaintiffs further request a short administrative stay of any compelled production pending resolution of this motion and the Intervenor appeal.

**PROCEDURAL POSTURE AND BACKGROUND**

In denying the Government's motion to dismiss Plaintiffs' Fifth Amended Complaint on May 4, 2023, this Court held that Plaintiffs have Article III standing and adequately alleged a substantial burden on the free exercise of religion under RFRA (Order Dkt. 183, the "RFRA Order"). The Court found that Plaintiffs alleged a concrete plan (bi-monthly ceremonies and

1

future importation of sacramental ayahuasca) and that the Government's seizures constituted past and prospective enforcement of the Controlled Substances Act; the RFRA Order also recognized associational standing on behalf of Plaintiff AYA's members. Dkt. 183 at 5–10.

Despite the Article III and RFRA backdrop, the WDO (Dkt. 334) deemed associational privilege completely waived over perceived privilege log defects and compelled "without redaction" disclosure of member PII and pastoral communications—without considering Plaintiffs' positions (Dkt. 335-4), applying RFRA strict scrutiny or *Perry's* exacting-scrutiny test. Plaintiffs sought vacatur, reconsideration and a stay; the August 18 Orders denied each request, relying on procedural defect, the interlocutory nature of discovery orders, and the protective order rather than confronting the constitutional standards necessarily applied in this RFRA case.

## STANDARD OF REVIEW

Upon timely objection, the district judge may modify or set aside any part of the order that is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); see also, *Yeager v. Arizona*, No. CV-22-00574-PHX-DWL (ESW), 2023 U.S. Dist. LEXIS 185952, at *10-11 (D. Ariz. Oct. 17, 2023); *Anderson v. King*, No. CV-21-01282-PHX-DJH (JFM), 2024 U.S. Dist. LEXIS 94163, at *4 (D. Ariz. May 28, 2024).[1]

A ruling is "clearly erroneous" when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). Factual findings are reviewed for clear error; legal conclusions are reviewed de novo under the "contrary to law" standard. *Anderson*, at *4; see also *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 458 (D. Ariz. 2012). A decision is contrary to law if it applies the wrong legal standard or fails to consider an element of the applicable standard. *Anderson*, at *4-5. Legal misapplications—such as failing to apply RFRA strict scrutiny, *Perry's* exacting scrutiny or even the Rule 26 proportionality principles—are contrary to law.

## ARGUMENT

---

[1] If a party does not appeal a magistrate judge ruling through this procedure, issues may be deemed waived for purposes of any later appeal from final judgment. See Fed. R. Civ. P. 72(a).

2

## I. Failure to Apply RFRA Strict Scrutiny

RFRA provides that the Government shall not substantially burden a person's religious exercise unless it demonstrates the burden furthers a compelling interest and is the least restrictive means. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006); 42 U.S.C. §§ 2000bb-1(b), 2000bb-2(3). The statute places both the burden of production and the burden of persuasion squarely on the Government. *Id.* at 428–29. RFRA demands a plaintiff-specific showing: the government must "satisfy the least-restrictive-means standard to the person," and courts must consider obvious alternatives before burdening religious exercise. *O Centro*, 546 U.S. at 430.

On May 4, 2023, the Court's Order (Dkt. 183, the "RFRA Order") already recognized Plaintiffs organizational and associational standing, finding that AYA plausibly alleged a concrete plan to "continue to hold bi-monthly [ayahuasca] ceremonies" and a substantial RFRA burden due from the Government's past and continuing enforcement actions. Dkt. 183 at 5-8. The Court rejected Defendants' contention that AYA members must individually participate, holding that "there is no need for the kind of individualized inquiry Defendants suggest." *Id.*

That binding determination underscores the constitutional harm of compelled disclosure now. If individual member participation is not required to establish standing, then forcing disclosure of their identities through discovery accomplishes nothing but chilling protected religious association. It undermines the very purpose of associational standing recognized in Dkt. 183 and imposes the precise constitutional injury condemned in *NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958), and *Perry*, 591 F.3d 1147, 1160 (9th Cir. 2010). Defendants' shifting positions—first insisting members must appear, now more than two years later insisting Intervenors should not—only highlight the "gotcha" nature of their arguments and the need for strict adherence to the constitutional RFRA standards already articulated by Congress and this Court.

Any discovery compelling disclosure of AYA members' PII or religious communications must therefore be scrutinized under RFRA's strict standard. The Waiver & Disclosure Order (Dkt. 334), however, failed to engage with RFRA's controlling framework

3

and instead treated the discovery dispute as a routine, declaring waiver of religious associational privilege and compelling across-the-board disclosure of member identities and sacred communications without redaction.

### a. Government's Acceptance of Narrow Alternatives in a Nearly Identical RFRA Case Undermines Its Refusal Here

The Government's refusal to consider redacted or narrowed disclosures in this case contradicts its own conduct in *Church of the Celestial Heart v. Garland*, a nearly identical RFRA case filed *after* AYA. There, the Government **accepted redacted materials** and permitted ongoing ceremonies prior granting final exemption—demonstrating that less restrictive means are both feasible and already in use.[2]

The court cited this very case to support its finding that plaintiffs had alleged a concrete religious plan sufficient to trigger RFRA protections. See *Church of the Celestial Heart v. Garland*, 2024 U.S. Dist. LEXIS 4606, at 26 (E.D. Cal. Jan. 9, 2024) ("…AYA 'currently holds bimonthly Ayahuasca ceremonies' and… 'plans to continue… for the foreseeable future,' sufficient… to allege a concrete plan…").

The contrast is stark: *Celestial Heart* was filed later, cited AYA's pleadings, and has already resolved favorably with the Government demonstrating flexibility on redactions and accepting phased disclosure. *Church of the Celestial Heart v. Bondi*, 2025 LX 180871 (E.D. Cal. June 10, 2025). Here, AYA members face far greater risk of prosecution and associational chilling due to the threat of the Court's compelled disclosure and as Defendants now reject the least restricted means they accepted in *Celestial Heart*.

This inconsistency underscores that narrower means are not only available but have already been implemented—confirming why RFRA and *Perry* demand strict scrutiny and least-restrictive-means tailoring before authorizing unredacted disclosure.

---

[2] *Celestial Heart* involved an ayahuasca church whose "padrinho" shared emails to members **(with names redacted)**, batch numbers, and over 16,000 pages of internal documents to DEA over time. See Church of the Celestial Heart Wins Legal Protection for Ayahuasca Use, *Chacruna Institute* (Apr. 24, 2024), https://chacruna.net/church-of-the-celestial-heart-wins-legal-protection-for-ayahuasca-use/.

Plaintiffs have consistently urged the Court to apply RFRA and *Perry* and adopt protective alternatives to discovery burdens here. See Dkts. 288; 341. Plaintiffs produced thousands of documents with targeted redactions, contemporaneously supplemented their log, and offered anonymization and staged disclosure—the least restrictive means consistent with Defendants' treatment of similarly situated entheogenic churches, *Church of Celestial Heart* and *Singularism*[3] (Dkt. 335). Yet neither the WDO (Dkt. 334) nor the August 18 Orders required the Government to carry its burden or explain why less-restrictive alternatives are inadequate to justify its compelling interests. That omission is contrary to law. See *O Centro*, 546 U.S. at 430–32.

## II. Failure to Apply *Perry's* Exacting Scrutiny

When compelled disclosure implicates First Amendment associational rights, courts must apply the exacting-scrutiny framework set out in *Perry*, 591 F.3d 1147, 1160–62. That test proceeds in two steps: [1] the resisting party must show that disclosure would result in a reasonable probability of chilling associational activity; and [2] if that showing is made, the burden shifts to the requesting party to demonstrate that the information is highly relevant, necessary, and unavailable through less burdensome means. The Supreme Court and Ninth Circuit have made clear that compelled disclosure of membership or internal communications triggers this heightened protection. *NAACP*, 357 U.S. 449, 462–63 (1958); *Perry*, 591 F.3d at 1159–62.

### a. Prima Facie Showing of Associational Harm Shifts Burden of Proof to the Government

Couts recognize that a sworn declaration alone stating, "that producing these communications will chill associational rights" suffices to establish a prima facie showing of First Amendment associational chill, because **"it is common sense"** that forcing the

---

[3] In *Jensen v. Utah Cty.*, the court flatly rejected government demands for blanket disclosure of religious membership data, finding the requests constitutionally impermissible. Disclosure of member identities, the court held, would irreparably harm associational rights and chill religious participation—especially where the government already possessed relevant evidence through prior seizures. Sweeping demands without narrow tailoring or necessity were deemed grossly overbroad. *Jensen v. Utah Cty.*, No. 2:24-cv-00887-JNP-CMR, 2025 U.S. Dist. LEXIS 3748, at *8 (D. Utah Jan. 7, 2025).

5

responding party to produce these materials will discourage members' candid participation in these groups—this is true even in the context of commercial speech, which receives less protection than religious speech. *LeGrand v. Abbott Labs.*, 2024 U.S. Dist. LEXIS 184790, at *3 (N.D. Cal. Oct. 9, 2024)(emphasis added)(citing *In re Anonymous Online Speakers*, 661 F.d 1168, 1177 (9th Cir. 2011)).

Plaintiffs respectfully urge the Court to review each attestation of Plaintiff Stanley and consider the full record of the asserted associational chill (Dkts. 22-2; 33-1; 52-2; 53-2; 137-2; 148-1; 177-1; 200-2; 222-1; 227-1; 250-1; and 285-2).

> "Due to the pending discovery demands…my efforts to respond to the deep disclosures they demand, I have been managing a crisis within our church staff, as a result of them feeling threatened by the impending release of their names to Federal authorities. While I am seeking to obtain the cooperation of church staff to make disclosure of their identities and roles…Their aim in their religious practice is to practice in peace, privacy, and safety for themselves and others. It's hard for me to convey in words the depth of their private and personal conflicts in seeing their right to freely practice threatened in the interest of obtaining the judicial exemption sought by way of this action.
>
> I do not mean any disrespect to this Court, and wish to proceed in the litigation…How can I, in good conscience, comply with those requirements of the Disclosure Order (Dkt. # 220) that would require me to betray my religious commitment to the AYA congregation and reveal private intra-church communications in an effort to avoid punishment by the Court?" Dkt. 222-1, Decl. of Stanley ¶ 6, 8.

Plaintiffs submitted attestations from Johnathan Goldman, the Santo Daime Padrinho of the Church of the Holy Light of the Queen ("CHLQ") which supports AYA's assertion of associational chill (Dkt. 148-2 at ¶ 7–8, 11–13, 21).[4] Intervenor-Plaintiffs have also submitted attestations of associational chill (Dkts. 250-2, Ex. 2-1; 250-3, Ex. 3; 250-4, Ex. 4; 255-1, Ex. 2-2).

---

[4] Jonathan Goldman, spiritual leader ("padrinho") of CHLQ, studied the Santo Daime religion for over 21 years, including extensive travel to Brazil for religious instruction. In *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210, 1212–19 (D. Or. 2009), the court rejected the government's argument that CHLQ's secrecy undermined sincerity, holding instead that continued secret practice in the face of legal risk supported a finding of sincere belief.

This unrebutted record establishes a prima facie showing of associational harm under *Perry* and shifts the burden to Defendants to demonstrate a compelling need and narrow tailoring. 268 F.R.D. at 350. Yet the challenged Orders disregarded this evidence, treated the protective order (Dkt. 217) as eliminating harm despite Stanley's sworn testimony to the contrary, and imposed waiver without RFRA strict scrutiny. This failure is both clearly erroneous and contrary to law.

### b. The Government Has Never Been Required to Meet Its Burden

In *Perry*, the court emphasized that once a prima facie showing of First Amendment burden is made, the party seeking disclosure must satisfy a heightened relevance standard. 268 F.R.D. at 349–50. There, the proponents described the sought documents as "highly relevant," but offered only generalized assertions and reliance on prior orders. They did not demonstrate a specific, compelling need or show why publicly available information was insufficient. The court held that such conclusory claims failed to meet the heightened standard necessary to override associational privilege.

Here, the Government's bare assertion of "relevance" cannot meet the heightened burden of showing that the information is unavailable from other sources or is essential to a compelling need (see *generally*, Dkt. 219).

> "…Defendants were not required to make any assertions under oath, or with any degree of specificity at all, concerning the compelling governmental purpose justifying their requests to disclose the identities of, inter alia, AYA's members, donors, correspondents, their email addresses and correspondence with Plaintiffs, their ceremonial attendance, whether they donated to AYA, and in what amounts. Nor were the Defendants required to meet the heightened relevance standards for discovery that must apply when First Amendment religious or political groups establish a prima facie case of First Amendment infringement, as discussed in the motion filed herewith…" Dkt. 222-1, Decl. of Stanley ¶ 7.

The WDO and August 18 Orders made no inquiry into the Governments' compelling interest or less burdensome alternatives, despite Plaintiffs proposing them. *Perry*, 591 F.3d at 1161–62 (less intrusive means of obtaining the information). That is a misapplication of law.

### c. Protective Orders Are Not Enough

The Ninth Circuit has made clear that protective orders do not eliminate the injury, because "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Perry*, 591 F.3d at 1160. The Supreme Court confirmed the same principle in *Ams. for Prosperity Foundation v. Bonta*, explaining that "disclosure requirements can chill association" and that the harm arises from compelled disclosure, not subsequent dissemination. 141 S. CT. 2373, 2383 (2001). Plaintiff Stanley underscored this reality, attesting that:

> "I have read the government's contention that my Declaration 'fails to acknowledge the already-in-place protective order or address its mitigation of the asserted chilling effect.'…The Protective Order does not provide mitigation or protection to Plaintiffs or from the threat of actual arrest and imprisonment that my congregation members and I are exposed to, now and in the future, for standing up for our faith and initiating this lawsuit to protect our free exercise of religion and association." Dkt. 250-1, Decl. of Stanley at ¶ 5-6.

The Magistrate Judge's reliance on the Disclosure Order (Dkt. 220) as "law of the case" and the conclusion that the Protective Order (Dkt. 217) eliminates irreparable harm conflicts with both *Perry* and *Bonta* (Dkt. 349 at 3). Protective orders may limit dissemination, but they cannot cure the chilling effect or negate the irreparable associational injury inherent in compelled disclosure to the Federal Government. *Perry,* 591 F.3d at 1160 n.6 (citing *Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991).

### d. Narrow Tailoring Required

In Plaintiffs' reply brief (Dkt. 341), Plaintiffs urged the Court to adopt narrowly tailored relief from the WDO—such as narrowing Defendants discovery requests or a litigation-only protective order modeled as in *Jensen v. Utah County*, No. 2:17-cv-00702, 2021 WL 4168215, at *8 (D. Utah Sept. 14, 2021). Instead, the Magistrate Judge reaffirmed categorical waiver and compelled non-anonymized production, with the August 18 Orders doubling down—without applying the *Perry* framework or assessing narrow tailoring. This approach is contrary to law. *Bonta*, 141 S. Ct. 2373, 2383–84 (2021)(rejecting categorical disclosure mandates that chill First Amendment association).

*Perry* illustrates what narrow tailoring requires. There, the court reduced burden through multiple safeguards and less restrictive alternatives: limiting searches to agreed terms,

8

restricting access to a central server, excusing document-level privilege logging, and excluding "core groups" communications. *Perry*, 268. FR.D. at 349, 353–56. These measures ensured discovery focused only on documents most likely to be relevant, while eliminating unnecessary burdens and protecting associational rights.

Here, the Magistrate Judge refused to consider any narrowing and instead imposed categorical waiver. That error is compounded by the denial of a stay, which guarantees that compelled disclosure will moot appellate review—a bell that cannot be unrung. Thus, the failure to apply RFRA, *Perry*, and *NAACP's* controlling standards of scrutiny render these Orders contrary to law and clearly erroneous. See *Bonta*, 141 S. Ct. at 2383–85.

### III. The Blanket Waiver Soley Based on Sufficiency of Plaintiffs' Privilege Log is Clearly Erroneous and Disproportionate

In *Perry*, the court acknowledged that while the Ninth Circuit had noted "some form of a privilege log is required" to preserve First Amendment privilege, no rule prevents a court from modifying or even waiving the log requirement to reduce an undue burden. 268 F.R.D. at 353. The magistrate judge in *Perry* concluded that because the associational privilege turned on the identities of communicators, the privilege could be tested without a formal log, and therefore excusing strict compliance was not clearly erroneous. *Id.*

As Mr. Stanley attested, Plaintiffs made repeated objections to the overbreadth, relevance, and disproportionality of Defendants' discovery demands, but the full burden only became apparent once the Court ordered creation of a comprehensive privilege log (Dkt. 258). Decl. of Stanley, Dkt. 288-2 at ¶ 7. Here, Plaintiffs undertook that task in good faith, hiring counsel and technical consultants to build an eDiscovery production platform, only to discover "astronomical volume" and deeply invasive disclosure obligations. Decl. of Stanley, Dkt. 288-2 at ¶ 9.

Even assuming deficiencies in Plaintiffs' log, the sanction imposed—blanket waiver and immediate, unredacted disclosure of sacred communications and member identities—is constitutionally disproportionate when formal logs are not required to test privilege in this context. *Perry*, 268 F.R.D. at 352–53. *Perry* makes clear that associational privilege can survive

9

even "informal" or incomplete logging where chilling effects are shown. *Perry*, 591 F.3d 1147, 1164.

The Orders fail to acknowledge or apply the heightened protections required when First Amendment rights are at stake. Rule 26 proportionality forbids turning discovery into a coercive war of attrition, especially in constitutional litigation. Plaintiffs' reply (Dkt. 341) explained those limits; yet the Magistrate Judge imposed the most intrusive sanction without engaging narrower, less-restrictive alternatives—despite Plaintiffs' explicit proposals, including log sampling, exemplars, in camera review, pseudonymization, and litigation-only use protective order restrictions—consistent with *Perry* and *Jensen v. Utah*.

That omission alone is contrary to law. Courts routinely reject blanket waiver where less-intrusive means exist, particularly when the compelled disclosures implicate First Amendment associational rights. *Perry*, 591 F.3d at 1161–62 (requiring least restrictive means); *Bonta*, 141 S. Ct. 2373, 2383–85; *Bates v. City of Little Rock*, 361 U.S. 516, 523–27 (1960).

Here, the Magistrate Judge adopted the most severe remedy without requiring the Government to meet *Perry*'s burden or RFRA's strict scrutiny, effectively converting perceived logging defects into a de facto merits ruling that strips Plaintiffs of core associational protections. That is both clearly erroneous and contrary to binding law.

### a. Erroneous "No Bona Fide Review" Finding

The Magistrate Judge's finding that Plaintiffs failed to conduct a "bona fide review" is clearly erroneous and rests on a misapplication of both constitutional and procedural law. Under *Burlington N. & Santa Fe Ry.*, 408 F.3d 1142, 1149 (9th Cir. 2005), courts must apply a holistic reasonableness standard to privilege assertions, considering factors such as ESI volume, time constraints, and the sensitivity of the materials at issue—especially where First Amendment rights are implicated. The Ninth Circuit disfavors blanket waiver when a party has acted diligently under resource constraints and made reasonable, constitutionally grounded efforts to comply with complex discovery. That describes Plaintiffs' conduct here.

The Magistrate Judge's attempt to distinguish *NAACP v. Alabama* is also misplaced. *NAACP* squarely holds that compelled disclosure of member identities—even in the context of litigation—triggers exacting scrutiny. 357 U.S. 449 at 462–63. The Orders misstate that

precedent and instead treat the pace of Plaintiffs' review—by an under-resourced team—as sufficient grounds to extinguish First Amendment protections. That approach improperly transforms a protected associational interest into a procedural penalty.

Delay alone cannot justify forfeiture of constitutional rights, especially when it results from circumstances beyond the party's control and unaccompanied by bad faith. *Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004) (en banc) (excusable neglect is an equitable determination that considers prejudice, reason for delay, and good faith). Courts routinely find excusable neglect under such conditions and disfavor harsh sanctions that result in constitutional forfeiture.

The record here reflects extensive good-faith efforts under extraordinary time constraints (Dkt. 321). Plaintiffs used DISCO to conduct document-level review, applying privilege tags, categorizing by folder, and preparing justifications rooted in associational privilege and supported by Plaintiff Stanley's sworn declaration (Dkt. 285-2). Counsel devoted over 175 hours since April 16 toward compliance with the Court's Order (Dkt. 309)—despite receiving ESI protocol approval just 48 hours before the Magistrate Judge's May 16 deadline. See Dkt. 335-5 (itemized billing). Plaintiffs nonetheless produced thousands of documents, applied targeted PII redactions, and continually supplemented their log. See Dkt. 335, Exs A–G (redacted productions and discovery compliance efforts).

The record also documents circumstances outside of Plaintiffs' control involving lead counsel's significant medical and caregiving constraints and formal request for a scheduling accommodation grounded in the ADA. See Dkts. 300-3 at ¶¶ 13–14; 332-1; 337. The Protective Order itself expressly contemplates categorical logs where line-by-line entries are impracticable (Dkt. 217 ¶ 5).

Given this record, the finding that Plaintiffs failed to undertake a "bona fide review" is unsupported and ignores evidence of resource disparity between the parties, the documented health and capacity limitations, and the targeted efforts Plaintiffs made to protect associational rights while complying with discovery obligations. The Court's acceptance of Defendants assertion to justify blanket waiver—without any inquiry into the

availability of narrower remedies to eliminate unnecessary burdens—is clearly erroneous under both constitutional and procedural standards.

### IV. The August 18 Orders Compound Legal Error and Misapply Magistrate Authority in a Constitutional Context

A magistrate judge's authority to issue binding orders is limited to non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); LRCiv 72.1; *McDonald v. City of Phx.*, No. CV-23-01275-PHX-DWL (DMF), 2024 U.S. Dist. LEXIS 44323, at *5 (D. Ariz. Jan. 31, 2024). Whether an order is dispositive depends on its practical effect on a party's claim or defense. *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004). Where here, the denial of reconsideration and a stay effectively forecloses relief on a constitutional claim and irrevocably moots appellate review, it is dispositive. *S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013).

The August 18 Orders denied Plaintiffs' requests by summarily invoking Rule 60(b) and LRCiv 7.2(g), applying RFRA's strict scrutiny or *Perry*'s exacting-scrutiny burden-shifting—despite Plaintiffs' specific arguments and authorities. Dkts. 335-4; 341. As the Ninth Circuit explained in *Perry*, compelled disclosure of member identities constitutes irreparable harm; denial of a stay without constitutional analysis invites mootness. *Perry*, 591 F.3d at 1165–66. This Court previously recognized Plaintiffs live RFRA controversy. Dkt. 183 at 5–10. The Orders disregard that framing and improperly reduce RFRA claims routine discovery disputes. Once standing and a substantial burden are found, subsequent discovery decisions remain consistent with the correct constitutional standard—RFRA's strict scrutiny and *Perry's* exacting scrutiny—not override them through procedural default or waiver. To do otherwise is clearly erroneous and contrary to law.

#### a. Rule 6(b)(1)(B) Excusable-Neglect and Rule 54(b) Authority

If the Court deems Plaintiffs' objections to the July 17 Order untimely, Plaintiffs respectfully request an extension under Rule 6(b)(1)(B). Courts consider four excusable neglect factors. *Pincay*, 389 F.3d 853, 855–60; *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–25 (9th Cir. 2000) (excusable neglect—reversal where denial ignored minimal prejudice and good-faith reasons). All four factors favor Plaintiffs: [1] The delay was minimal; [2] Defendants were not prejudiced (production was not compelled, no trial date set); [3] It

stemmed from documented medical hardship and an ADA request (Dkts. 332-1, 332-3, 337); and [4] Plaintiffs' acted in good faith and promptly sought reconsideration.

The July 17 and August 18 Orders imposed the harshest possible sanction—blanket, non-anonymized production of sacred religious communications—based solely on deadline-related issues. Courts disfavor waiver of constitutional rights in such contexts, especially where less-restrictive alternatives are available. *Perry*, 591 F.3d at 1164. Blanket waiver of RFRA and First Amendment protections in this context is unconstitutional and disproportionate under Rule 26. Even if timeliness were at issue, Rule 54(b) gives this Court full authority to revise interlocutory discovery orders at any time to prevent manifest injustice and irreparable harm. Given the constitutional stakes and irreversible harm, Plaintiffs respectfully request the Court deem setting aside the Orders under Rule 54(b) and this Rule 72(a) objection both appropriate and necessary here.

### b. Ignoring ADA Hardship Undermines Fairness and Due Process

Lead counsel timely notified the Court of serious occupational burnout and caregiver obligations, and requested an ADA accommodation prior to the deadline. Dkts. 332-1, 332-3, 337. The Court denied that request as "inapplicable," adjusted deadlines without regard to those limitations, and imposed irreversible constitutional consequences against Plaintiffs. By ignoring the parties' well-documented resource disparity and punishing Plaintiffs for delay outside their control, the result is legally unsound, factually unjust and contrary to basic fairness. Such disregard contradicts the equitable purpose of Rule 6(b) and the broader due-process values underlying RFRA and First Amendment precedent. Where delay is short, prejudice is minimal, and the requesting party acts in good faith under health constraints, excusable neglect is established. *Pincay*, 389 F.3d at 855–60; *Bateman*, 231 F.3d 1220, 1223–25. The Court should vacate or revise the Orders under Rule 54(b) and Rule 6(b)(1)(B) to avoid manifest injustice.

### V. Public Interest Factors Misapplied to Deny a Stay Is Contrary to RFRA
#### a. Misapplication of Standing and Public Interest Factors

The denial-of-stay order improperly relies on facts that established Plaintiffs' Article III standing—specifically, that AYA "continues to host ayahuasca ceremonies"—as a reason

to tip the public interest and balance of hardships in favor of the Government (Dkt. 349 at 3). Here, the same protected activity that gives rise to jurisdiction under RFRA—hosting ayahuasca ceremonies—was cited as a reason to weigh the equities against Plaintiffs. That conflates justiciability with merits and violates RFRA's controlling standard of strict scrutiny. RFRA requires the Government to justify any burden on religious exercise through a particularized showing of a compelling interest and least restrictive means—not by reference to generalized concerns that ongoing religious activities "involves the use of Schedule I controlled substances." *O Centro*, 546 U.S. at 430–32. Treating Plaintiffs' religious activity as an aggravating factor in the public-interest calculus to deny a stay effectively punishes Plaintiffs for continuing to exercise their faith and is contrary to law.

### b. Misuse of "Schedule I" Rhetoric Reflects a Reversion to Pre-RFRA Standards

The denial-of-stay order characterizes this litigation as involving "the use of Schedule I controlled substances"—without acknowledging the controlling framework under RFRA—as a reason to favor the Government in the public-interest and hardship analysis. Dkt. 349 at 6. That framing is contrary to law and overlooks the correct standard of scrutiny.

RFRA was enacted precisely to override *Employment Div. v. Smith*, 494 U.S. 872 (1990), and to prevent the automatic application of facially neutral laws—such as the CSA—to burden sincere religious use of controlled substances without individualized strict scrutiny. As the Supreme Court made clear in *O Centro*, Schedule I status alone is insufficient to defeat a RFRA claim. The Government must demonstrate concrete evidence specific to Plaintiffs of a compelling interest advanced through the least restrictive means with evidence. 546 U.S. at 430.

Here, the Magistrate Judge relied on the mere fact that Plaintiffs "continue to host ayahuasca ceremonies" as a reason to deny a stay and disfavor Plaintiffs under the public-interest factors. The use of "Schedule I" rhetoric in this context amounts to a backdoor reversion to *Smith*, in direct conflict with RFRA's statutory purpose and *O Centro*'s binding instruction. Moreover, it bears emphasis that ayahuasca itself is not enumerated in the Controlled Substances Act ("CSA"); the Government asserts its derivative control based on its DMT content. *O Centro*, 546 U.S. at 425–26. The denial-of-stay order does not grapple

14

with that distinction and fails to conduct the constitutionally mandated inquiry into whether the Government's asserted interests are actually implicated by AYA's specific religious use.

This kind of generalized reliance on statutory classification to override religious liberty is precisely what RFRA forbids. The stay denial should therefore be set aside and re-evaluated under the proper, individualized strict scrutiny standard.

### c. Uncritical Adoption of Defendants' "Purported Religious Activities" Language is Improper, Unsupported By Evidence, Weaponizes Plausible RFRA Allegations and Implies That Plaintiff AYA is a Fraudulent Church

LRCiv 83.5 imposes a duty on all courtroom participants to avoid comment or behavior that can reasonably be interpreted as manifesting prejudice or bias toward others, including on the basis of religion.[5] While the Supreme Court has repeatedly acknowledged that "[t]he determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task," it has repeatedly cautioned that resolution of such questions is not to be based upon judicial perception of the particular belief or practice. *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981). Religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Id.*

Despite this, the WDO Order (Dkt. 334) adopts Defendants' adversarial phrasing that Plaintiffs "brought suit based on **purported religious activities.**" *Id.* at 3 (emphasis added). That phrasing undermines this Court's earlier finding on justiciability in its RFRA Order (Dkt. 183 at 5–10) and risks casting judicial doubt on the legitimacy of Plaintiffs' faith, despite no evidentiary hearing or revisitation of sincerity at this stage of litigation. The Court has already held that Plaintiffs plausibly alleged they "continue to hold bi-monthly [ayahuasca] meetings . . . for the foreseeable future" and that these ceremonies form a concrete religious plan burdened by the Government's enforcement actions. *Id.*

---

[5] *See* LRCiv 83.5 ("Litigation… must be free from prejudice and bias in any form.… The duty to be respectful of others includes the responsibility to avoid comment or behavior that can reasonably be interpreted as manifesting prejudice or bias toward another on the basis of… religion…").

Importantly, the word "purported" is a legal term of art that adversely implies falsity or invalidity and is not neutral.[6] As the Eastern District of California recently recognized, the term "purported" denotes facial invalidity in the controlled-substances context. *United States v. Howen*, 2022 U.S. Dist. LEXIS 236721, at *28 (E.D. Cal. Aug. 8, 2022) ("Plaintiff's allegations involve 'purported prescriptions,' i.e., invalid ones..."). Similarly here, words matter: describing Plaintiffs' religious conduct as "purported" implies falsity or insincerity, despite this Court's prior finding that Plaintiffs had met the pleading standard for sincerity and burden under RFRA. Dkt. 183 at 5–10.

Stated differently, the implied finding that Plaintiff AYA is a fraudulent church is ungrounded in fact and perversely weaponizes the plausible allegation that was necessary in order to plead a viable RFRA claim. Such language, adopted uncritically from Defendants' briefing (Dkt. 329 at 7) is contrary to law and not only jeopardizes the appearance of impartiality but directly conflicts with the Court's prior RFRA findings. Judicial findings of religious sincerity should not be implicitly determined, nor should the Court appear to cast doubt on religious beliefs already found to be plausibly sincere absent an evidentiary hearing.

Plaintiffs respectfully request that the District Judge disapprove this phrasing, clarify that sincerity is not at issue in this stage of discovery nor resolved adversely absent further evidence, and reaffirm that the constitutional protections of RFRA throughout this litigation.

## VI.     Mootness of Appeal and Necessity of Administrative Stay

By denying Plaintiffs' request for stay, the Magistrate Judge ensured that compelled production of member-identifying information and sacred communications would occur before this Court or the Ninth Circuit could conduct meaningful review. That outcome risks mooting Plaintiffs' constitutional claims and frustrates appellate oversight. Further, the public-interest and irreparable-harm factors must account for the First Amendment/RFRA chill on religious activities and the risk of mooting appellate review from compelled disclosure. *Nken v. Holder*, 556 U.S. 418, 426–27 (2009) (stay factors; emphasize irreparable harm and public interest in correct legal standards). In *Perry,* the Ninth Circuit held that

---

[6] See *Black's Law Dictionary* (11th ed.) ("purported" means *alleged or professed, often with implication of falsity or doubt*).

16

mandamus jurisdiction was appropriate to prevent precisely this scenario: once compelled disclosure occurs, the "harm cannot be undone," and appellate review is effectively mooted. *Perry*, 591 F.3d 1147, 1155–58.

To preserve the status quo and protect the Court's ability to adjudicate this objection, Plaintiffs respectfully request a short administrative stay of any compelled production of AYA members' PII and religious communications until this Rule 72(a) motion is resolved. Such a pause is modest and necessary: the irreparable constitutional harm arises from the act of disclosure itself, which cannot be reversed once executed. Once disclosure occurs, "the harm cannot be undone." *Perry*, 591 F.3d at 1157–58. A brief administrative stay is warranted under *Nken*, 556 U.S. 418, 426–27, to preserve review and prevent irreparable constitutional injury.

Here, compelled production would irreversibly disclose protected religious communications and identities of AYA church members—individuals who have a well-founded fear of prosecution and harassment. The loss of confidentiality would itself constitute irreparable harm to Plaintiffs congregation and would eviscerate the possibility of meaningful appellate review, contravening *Perry* and undermining RFRA's protections.

Plaintiffs further request that the stay extend to any enforcement of the July 17 and August 18 Orders compelling disclosure of member-identifying information or religious religious content—whether through privilege log waiver or otherwise—until this Court has resolved the present objection and properly applied the correct strict scrutiny standard to assess the least-restrictive means in RFRA discovery.

### a. Plaintiffs' Proposed Least-Restrictive Means Alternatives

If the Court ultimately finds that some degree of member-identifying disclosure is warranted, it must first require the Government to satisfy its burden under RFRA and *Perry* by demonstrating: (1) a specific, compelling governmental interest, and (2) that disclosure of each narrow category of information sought is necessary to advance that interest through the least restrictive means available. *See* 42 U.S.C. § 2000bb-1(b); *Perry*, 591 F.3d 1147, 1160–62; *O Centro*, 546 U.S. 418, 430–32 (2006). To that end, the Court should favor the following less-restrictive and constitutionally protective alternatives: [1] Litigation-Only Use Restrictions; [2] Anonymization or Use of Pseudonyms; [3] Sampling and In Camera Review; [4]

Sequenced Discovery. These alternatives are grounded in case law and consistent with practices adopted in analogous First Amendment litigation. *Perry*, 591 F.3d at 1160–61; *Jensen v. Utah County*, 2022 U.S. Dist. LEXIS 236011, at *11–13 (D. Utah Dec. 28, 2022). These measures would safeguard the constitutional rights at stake without denying the Government's access to genuinely necessary information.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully that the Court:

1. Sustain this Rule 72(a) objection;
2. Vacate the August 18 Orders (Dkts. 374, 348, 349) and the July 17 Order (Dkt. 334);
3. Direct the Magistrate Judge to apply RFRA's strict scrutiny standard and *Perry's* exacting-scrutiny burden-shifting framework before ordering any member-identifying or religious communication disclosure; and
4. Enter a short administrative stay of any compelled production of member PII and religious communications pending resolution of Plaintiffs' objection and the pending Intervenor appeal.

Dated: September 2, 2025                    MELISSA E. DEAN

MELISSA E. DEAN (1031982)
Attorney for Plaintiffs
Arizona Yagé Assembly, and
Winfield Scott Stanley III