**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Yage Assembly, et al., | No. CV-20-02373-PHX-DJH (ASB) |
| Plaintiffs, | **ORDER** |
| v. | |
| William Barr, et al., | |
| Defendants. | |

On September 25, 2025, Plaintiffs Arizona Yage Assembly ("AYA") and Winfield Scott Stanley III (collectively, "Plaintiffs") filed a Rule 72(a) Objection ("Objection") to four of United States Magistrate Judge Willett's Orders (Doc. 360) (objecting to Orders at docket entries 334, 347, 348, and 349). Defendants the Department of Justice, Drug Enforcement Administration, Department of Homeland Security, and Customer and Border Protection (collectively, "Defendants") filed a Response (Doc. 366). Plaintiffs sought to file a reply brief, but this request was recently denied by the Court. (*See* Doc. 376). Consequently, Plaintiffs' Objection is now before the Court.

## I.    Background

Plaintiff AYA is a religious organization, for which Plaintiff Stanley is a minister. Their central sacrament is the ceremonial consumption of ayahuasca, which is an entheogenic tea that contains a small amount of the substance Dimethyltryptamine

("DMT"). Plaintiffs have brought this action under the Religious Freedom Restoration Act ("RFRA"), alleging generally that, by not granting Plaintiffs an exemption for their religious use of ayahuasca, Defendants' enforcement of the Controlled Substances Act unlawfully burdens Plaintiffs' free exercise rights.

The current dispute in these lengthy proceedings stems from Plaintiffs' privilege log. On February 22, 2024, the Court ordered Plaintiffs to provide full and complete responses to discovery requests served by Defendants. (*See* Doc. 220). The requested discovery regarded AYA's subjects, such as the safety of its practices, ceremony attendance, and how it imports, transports, or stores ayahuasca. (Doc. 219). However, before the Court-ordered deadline to produce the relevant information, Plaintiffs filed an interlocutory appeal with the Ninth Circuit, claiming for the first time that providing the requested disclosures would violate their First Amendment associational rights. (Doc. 221). After the Ninth Circuit denied mandamus relief, the Court, in a December 4, 2024 Order, noted that Plaintiffs had not raised a claim of associational privilege before the Court or in their responses to Defendants' requests. (Doc. 258 at 2). Despite the untimely assertion of the privilege, the Court allowed Plaintiffs to provide a privilege log to Defendants by January 3, 2025. (*Id.* at 10–11).

On February 11, 2025, Defendants filed a Statement about the deficiencies with Plaintiffs' privilege log, claiming that it failed to describe documents with sufficient detail. (Doc. 285). Following an April 16, 2025, hearing, the Court agreed that Plaintiffs' privilege log was insufficient but gave Plaintiffs "one more opportunity" to produce relevant, non-privileged documents and provide a revised privilege log that adequately described the nature of the withheld documents by May 16, 2025. (Doc. 309 at 4). In this same Order, this case was referred to United States Magistrate Judge Eileen S. Willett (the "MJ") for further pretrial proceedings. (*Id.* at 5).

In late April 2025, the MJ informed the parties that deadlines would be strictly adhered to, including the May 16, 2025, deadline for a revised privilege log. (Doc. 315). On May 14, 2025, the MJ ordered as follows:

Plaintiffs **SHALL** submit a revised privilege log no later than **May 16, 2025** that fully complies with this Court's prior Orders and Federal Rule of Civil Procedure 26(b)(5).

The revised privilege log must include, at minimum:

> a. Category identification information (e.g., document type, general time frame, typical authors and recipients, and general subject matter) sufficient to assess the claim of privilege;

> b. Specific identification of the privilege or protection being claimed;

> c. A detailed explanation of how each category of documents satisfies the elements of the privilege being asserted;

> d. For categories of documents over which associational privacy privilege is claimed, a specific explanation of how disclosure would burden Plaintiffs' associational rights.

The privilege log shall **NOT** rely on broad categorical descriptions that fail to allow Defendants and the Court to evaluate the appropriateness of each privilege claim.

Failure to submit a complete and adequate privilege log by **May 16, 2025**, will result in **WAIVER** of any privileges not adequately described, and Plaintiffs will be required to produce all such documents for which privileges have been waived within fourteen days thereafter.

(Doc. 318 at 2) (internal citation omitted).

Even still, on May 23, 2025, the MJ ordered the parties to meet and confer and file a joint statement addressing any remaining disputes as to the privilege log by June 27, 2025. (Doc. 323). The day before this deadline was set to expire, Plaintiffs sought a two-week extension of the deadline. (*See* Doc. 326). The MJ denied Plaintiffs' request on July 10, 2025, and ordered that

> [T]he parties shall file their Joint Statement regarding Plaintiffs' May 16, 2025 privilege log no later than **11:59 P.M. Arizona time on Monday, July 14, 2025**. If Plaintiffs fail to provide their portion of the Joint Statement to Defendants by **9:00 A.M. Arizona time on July 14, 2025**, Defendants may file the Joint Statement unilaterally with Plaintiffs' positions left blank.

(Doc. 328 at 3). Plaintiffs failed to provide their portion of the Joint Statement as ordered, so Defendants filed the Joint Statement with only their position on July 14, 2025. (*See*

Doc. 329). On July 17, 2025, based on a review of the Joint Statement and the log, the MJ concluded that the privilege log failed to comply with Court Orders as Plaintiffs had "grouped thousands of documents into categories with identical, conclusory justifications." (Doc. 334 at 2). Therefore, the MJ ruled that Plaintiffs waived any claim of privilege over the documents identified in their May 2025 privilege log. (*Id.* at 3). Plaintiffs now object to this determination.

Additionally, on August 18, 2025, the MJ issued three separate orders denying Plaintiffs' attorney's request for accommodations (Doc. 347), Plaintiffs' Motion for Vacatur of the July 17, 2025 Order (Doc. 348), and Plaintiffs' request to stay proceedings pending an appeal, respectively (Doc. 349). Plaintiffs also seek review of these Orders.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 72(a), a party may serve and file objections to a magistrate judge's nondispositive order within 14 days after service of such an order. *See* Fed. R. Civ. P. 72(a). When reconsideration of a magistrate judge's order is sought under Rule 72, the district court may not substitute its judgment for that of the deciding court. *Osuna v. Guerrero*, 2026 WL 962594, *1 (E.D. Cal. 2026) (citation omitted). Instead, the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

The "clearly erroneous" standard "applies to the magistrate judge's factual determinations and discretionary decisions." *Avalos v. Foster Poultry Farms*, 798 F. Supp. 2d 1156, 1160 (E.D. Cal. 2011). Review under this standard is highly deferential and only allows a magistrate judge's ruling to be overturned if the district court firmly believes that a mistake was made. *Id.*; *see also Comput. Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999). Meanwhile, the "contrary to law" standard "permits independent review of purely legal determinations by a magistrate judge." *Comput. Econ.*, 50 F. Supp. 2d at 983. "An order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Calderon v. Experian Info. Sols., Inc.*,

290 F.R.D. 508, 511 (D. Idaho 2013).

## III. Discussion

The Court will first address the parties' arguments relating to the MJ's July 17, 2025 Order before turning to the August 18, 2025 Orders.

### A. July 17, 2025 Order (Doc. 334)

In ruling on a Joint Statement filed by Defendants, the MJ concluded and ordered that "Plaintiffs have waived any claim of privilege over the documents identified in their May 2025 privilege log." (Doc. 334 at 3). The MJ reached this decision after determining that, despite clear direction, Plaintiffs' revised privilege log ran afoul of Court Orders and that Plaintiffs failed to conduct a bona fide review of their documents.[1] Plaintiffs argue that the MJ's "blanket waiver approach is clearly erroneous and contrary to law." (Doc. 360 at 2). Defendants, however, maintain that the waiver "was the foreseeable result of Plaintiffs' failure to timely assert the privilege, persistent noncompliance with multiple court orders requiring an adequate privilege log, and continued refusal to conduct a bona fide review of the documents withheld." (Doc. 366 at 11–12). Before reaching the substance of these arguments, the timeliness of Plaintiffs' objection must be addressed.

There is no question that Plaintiffs' objection to the July 17 Order was not timely filed in accordance with Rule 72(a). The MJ's Order was rendered and served through the filing system on July 17, 2025 (*see* Doc. 334), which means that objections were due by July 31, 2025. *See* Fed. R. Civ. P 72(a). Over a month later, Plaintiffs filed a Motion for Leave Permitting Over-Length Briefing (Doc. 352) on September 2, 2025, and, in this Motion, Plaintiffs requested the Court consider the brief as filed. (*Id.* at 2). Defendants now argue that Plaintiffs' untimely challenge should not be condoned. (Doc. 366 at 9–11). At the same time, Plaintiffs ask for an extension due to excusable neglect under Rule 6(b)(1). (Doc. 360 at 3). Alternatively, Plaintiff seeks relief under Rule 54(b). (*Id.*)

---

[1] "As Defendants recount, Plaintiffs admitted they had not started to collect, let alone review, potentially responsive documents in this case as of January 2025—16 months after receiving Defendants' RFPs, 9 months after the substantial completion deadline, and 4 years after filing this case. The Court finds compelling Defendants' point that Plaintiffs confirmed that they still need months to complete their review during the June 3, 2025 meet-and-confer." (Doc. 334 at 2) (internal citations and quotations omitted).

### 1.      Excusable Neglect

Federal Rule of Civil Procedure 6(b)(1) provides that "the court may, for good cause, extend the time…on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). "Excusable neglect 'encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence,' and includes 'omissions caused by carelessness[.]' " *Lemoge v. U.S.*, 587 F.3d 1188, 1192 (9th Cir. 2009) (internal citations omitted).  Whether neglect is excusable is an equitable determination that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partn.*, 507 U.S. 380, 395 (1993)).

Plaintiffs' discussion of excusable neglect is quite cursory and contains no supporting authority.  Plaintiffs state "[a]ll four factors favor Plaintiffs: [1] The delay was minimal; [2] Defendants were not prejudiced (production was not compelled, no trial date set); [3] It stemmed from documented medical hardship and an ADA request (Dkts. 332-1, 332-3, 337); and [4] Plaintiffs acted in good faith and promptly sought reconsideration." (Doc. 360 at 13–14).  This explanation is insufficient to establish excusable neglect, especially given the history of this case.

As to the first factor, while Plaintiffs summarily claim that Defendants were not prejudiced, Defendants claim that they experienced substantial prejudice.  (Doc. 366 at 10). Defendants argue that Plaintiffs have long delayed producing written discovery, they substantially completed their written discovery over twenty months prior, and the continued delay impairs their ability to go to trial.  (*Id.*)  Indeed, Defendants point to February 22, 2024 Order by the Court requiring Plaintiffs to produce the same discovery still at issue here.  (Doc. 220).  In the Order resolving the parties' discovery dispute the Court noted that the dispute was "another of Plaintiffs' attempts to delay or disrupt discovery." (*Id.* at 20).  The fact that Defendants were still seeking these productions and

responses throughout 2025 indicates that they have experienced prejudice based on the continual delay. *Hubbard v. Sheffield*, 2014 WL 1309175, at \*14 (D. Mont. 2014) ("Although there are inherent delays in the normal course of litigation, a party's 'unreasonable' delay and noncompliance can cause prejudice to the opposing party.") (discussing Rule 37 sanctions). Delay that now includes this untimely objection.

Second, Plaintiffs' objection was filed over a month after the Rule 72(a) deadline expired. Plaintiffs claim that their delay was minimal with no supporting authority and without further explanation. (*See* Doc. 360 at 13). To be sure, courts have found excusable neglect for far longer delays and have declined to find excusable neglect for far shorter delays. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4446294, at \*5 (N.D. Cal. 2014) ("[T]he Ninth Circuit has reversed a finding of excusable neglect where a party missed the applicable deadline by just two days."); *Lemoge*, 587 F.3d at 1197–98 (excusing a seven month delay). However, when viewed in the context of these proceedings, over a month's delay to bring an objection that would further delay the production of discovery that has been at issue for years is not minimal. The delay has had the effect of pushing back any resolution of this case.

Third and crucially, the claimed reason for the delay weighs against a finding of excusable neglect. Plaintiffs claim that the delay came from "documented medical hardship and an ADA request[.]" The Court acknowledges that Plaintiffs' prior counsel claimed to be experiencing "occupational burnout." (*See*, *e.g.*, Doc. 332 at 3). Nonetheless, the record wholly undercuts the reason proffered to explain Plaintiffs' delay. After the at-issue Order was served on July 17, 2025, Plaintiffs filed two motions within the relevant time period to object. (*See* Docs. 335, 336). In fact, one of the Motions was a "Motion for Vacatur of Order Dkt. 334," which is the same Order at issue here and wherein Plaintiffs again argue excusable neglect for untimely filing. (*See* Doc. 335). Attempting to vacate the pertinent Order by Motion to the MJ instead of bringing an objection to the Court was a decision that Plaintiffs made in litigating this case, not an instance of excusable neglect. *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 973-

74 (9th Cir. 2007) (affirming a districts court's finding of no excusable neglect where the plaintiff's delay bringing a motion was a deliberate choice); *Level 3 Commc'ns, Inc. v. Lidco Imperial Valley, Inc.*, 2012 WL 4848929, at *8 (S.D. Cal. 2012) (concluding that a "deliberate decision" is not excusable neglect).  And, again, the Motion for Vacatur directly contradicts the reason Plaintiffs now give for their untimely filing.

Fourth, Plaintiffs say that they acted in good faith and promptly sought reconsideration.  As just discussed, Plaintiff's decision to move for reconsideration or vacatur is at odds with a finding of excusable neglect.  Turning back to the fourth factor, although Plaintiffs have been repeatedly warned about their discovery delays in these proceedings, the Court has not identified any direct evidence of bad faith in the present untimely filing.  Yet, this factor does not overcome the foregoing considerations.

The *Pioneer* factors are also not an exhaustive list, and "all relevant circumstances" should be considered.  *Pioneer*, 507 U.S. at 395.  To this end, the Court does not view this filing in a vacuum.  The Court mentioned Plaintiffs' delays above, but, to be clear, a review of the record reveals that Plaintiffs have repeatedly failed to meet deadlines or delayed discovery.  Examples of such issues can be found, amongst other places, at the following docket entries:

- Plaintiffs' Motion for Extension of Time to Respond to Defendants' Second Set of Interrogatories and First Set of Requests for Admissions (Doc. 208) (ex parte request for extension to respond to discovery the day before the operative deadline);

- Order (Doc. 220) (the Court recognized that, based on the current discovery dispute and three prior ones, Plaintiffs have not taken discovery obligations seriously);

- Plaintiffs' Motion for Extension of Time to Comply with the Court's Discovery Order (Doc. 227) (requesting an extension on the day of the deadline to provide the ordered responses);

- Joint Statement on Dispute Over Plaintiffs' Outstanding Discovery

Obligations (Doc. 261) (Defendants noted that Plaintiffs' discovery that should have been produced upon the lifting of the stay on September 25, 2024 had not been by December 20, 2024);

- Plaintiffs' Ex Parte Motion for Extension of Time to Complete Process of Preparing Proposed Rule 16 Scheduling Order (Doc. 268) (requesting an extension the day of the deadline);

- Plaintiffs' Ex Parte Motion for Extension of Time for the Parties to Fulfill Meet-And-Confer Obligations (Doc. 276) (requesting a further extension to produce a privilege log);

- Joint Statement on Disputes Regarding Plaintiffs' Privilege Log (Docs. 291) (Defendants identified insufficiencies with Plaintiffs' privilege log);

- Plaintiffs' Notices of Unavailability of Counsel (Docs. 292–93) (informing that two of Plaintiffs' attorneys would be unavailable for weeks);

- Plaintiffs' Ex Parte Motion for Extension of Time to Comply with Order Dkt. # 299 and Request for Continuance of Status Conference (Doc. 300) (requesting an extension the day before the deadline to respond expired);

- Plaintiffs' Motion for Extension of Time for the Parties to Fulfill Meet-And-Confer Obligations and Clarification of Joint Statement Procedure (Doc. 326) (ex parte request for further extension regarding the privilege log);

- Plaintiffs' Motion for Extension of Time to File Opposition to Dkt. 329 (Doc. 330) (request to file untimely opposition to Defendants' Joint Statement).

In the Court's view, this history undermines Plaintiffs' claim of excusable neglect. *See Strategic Execs. Agency, LLC v. Avalere Health, LLC*, 2020 WL 4354228, at *5 (C.D. Cal. 2020) ("[C]ourts have long held that an attorney's failure to attend to his client's case with due diligence rarely amounts to excusable neglect.").

In sum, Plaintiffs have not established that their late filing was the result of excusable neglect. Therefore, Plaintiffs' objection to the MJ's July 17 Order is untimely, and "[a] party may not assign as error a defect in the order not timely objected to." Fed.

R. Civ. P. 72(a). That said, the Court has reviewed the MJ's Order (Doc. 334) and finds no error in the reasoning or ruling.

### 2.    Rule 54(b)

Plaintiffs also contend that, regardless of excusable neglect or lack thereof, "Rule 54(b) gives this Court full authority to revise interlocutory discovery orders at any time to prevent manifest injustice and irreparable harm." (Doc. 360 at 14). Plaintiffs position is not buttressed by any supporting case law nor any discussion of Rule 54(b)'s language (*see id.*), and, in response, Defendants state that Rule 54(b) is inapplicable here as the July 17 Order discovery ruling, not an adjudication of any claim. (Doc. 366 at 11).

While the Court is not convinced that Rule 54(b) acts as a vehicle to sidestep the requirements of Rule 72(a), it also does not agree with Defendants that Rule 54(b) is categorically unavailable for nondispositive discovery rulings. Notwithstanding either of these considerations, Plaintiffs' objection is not properly before the Court as a Rule 54(b) Motion. "[T]he District of Arizona adopted Local Rule 7.2(g) to implement and supplement [Rule 54(b)]. Thus, a litigant seeking relief under Rule 54(b) must comply with Local Rule 7.2(g)'s requirements[.]" *Parker v. Arizona*, 2019 WL 2579404, *2 (D. Ariz. 2019). Under Local Rule 7.2(g), a motion for reconsideration must be filed no later than fourteen days after the date of the order it challenges, unless the party shows good cause. Plaintiffs do not acknowledge this fourteen-day time limit nor do they make any meaningful effort to establish good cause. (*See* Doc. 360 at 14). "Plaintiff[s] point[] to no recent changes to the case law or statute or newly discovered evidence that would justify [their over a month's] long delay in bringing forth this Motion." *Evans v. Critter Control Operations Inc.*, 2025 WL 3207428, *1 (D. Ariz. 2025). Therefore, the Court will not consider Plaintiffs' objection to the July 17 Order under Rule 54(b).

### B.    August 18, 2025 Orders (Docs. 347–49)

Although Plaintiffs primarily focus on the MJ's July 17, 2025 Order, they have also objected to three other Orders issued on August 18, 2025—the Order denying accommodations under the Americans with Disabilities Act ("ADA"), the Order denying

Plaintiffs' Motion for Vacatur, and the Order denying Plaintiffs' Motion to Stay. (*See* Docs. 347–9). Plaintiffs lump these three Orders together and label them the "August 18 Orders." (Doc. 360 at 2). However, while Plaintiffs discuss the Order denying their requested stay, they only briefly reference the rulings in the other two Orders without making it clear what their specific objections and the grounds supporting them are to the Order denying Plaintiffs' Motion for Disability Accommodation of Attorney (Doc. 347) and the Order denying Plaintiffs' "Motion for Vacatur of Order Dkt. 334, Deeming Joint Statement Complete with Plaintiffs' Opposition Timely Filed Seven Days After Deadline [F,R,Civ.P. 60(b)], and Permitting Over-Length Briefing" (Doc. 348). This is reason enough to deny any of Plaintiffs' intended objections to these Orders. Even still, the Court perceives no error in either Order.

Citing multiple cases, the MJ denied the disability accommodation because the ADA does not apply to federal courts. (*See* Doc. 347 at 2). And, indeed, it does not. *U.S. v. Wishart*, 146 Fed. App'x. 171, 173 (9th Cir. 2005) (unpublished) ("By definition, the ADA does not apply to the federal government."). Moreover, the MJ noted that the attorney's co-counsel on this case had managed discovery matters and briefing and therefore fairly concluded that Plaintiffs' Motion did not present adequate reason for staying the entire case. (Doc. 347 at 2). In a subsequent Order, the MJ denied Plaintiffs' Motion to vacate the July 17 discovery Order, which Plaintiffs filed under Fed. R. Civ. P. 60(b). The MJ decided that, because the Order was not a final appealable order, Rule 60(b)(1) did not apply. The Court agrees. *See*, *e.g.*, *Kaseberg v. Conaco*, LLC, 2017 WL 1020455, at *4 (S.D. Cal. 2017) ("Plaintiff seeks reconsideration of a discovery order, which is not a 'final' order."). As Plaintiffs only sought relief under Rule 60(b), the MJ had no further obligation to consider the merits of their Motion. *See DeVaughn v. McDonell*, 2017 WL 11634811, at *1 (C.D. Cal. 2017) ("The [order] is not a final, appealable order and, thus, Rule 60(b) provides no basis for reconsidering the [order].").

Turning to the Order on Plaintiffs' Motion for Stay Pending Resolution of Related Appeal, Plaintiffs argue that the Order "improperly relies on facts that established

- 11 -

Plaintiffs' Article III standing–specifically, that AYA 'continues to host ayahuasca ceremonies'–as a reason to tip the public interest and balance of hardships in favor of the Government." (Doc. 360 at 14–15). They further claim that "[t]reating Plaintiffs' religious activity as an aggravating factor in the public-interest calculus to deny a stay effectively punishes Plaintiffs for continuing to exercise their faith and is contrary law." (*Id.* at 15). Plaintiffs provide no such law to support this contention, and the Court will not accept the premise that the MJ erred by weighing all the relevant considerations the parties submitted. Additionally, Plaintiffs, in this argument, attempt to make the strict scrutiny standard, governing the outcome of their RFRA claim, applicable to every part of these proceedings. However, a motion to stay is not considered under a strict scrutiny standard regardless of whether a RFRA claim is involved.

Plaintiffs also object to the MJ's use of the phrase "Schedule I." (*Id.* at 15–16). First, after the MJ stated that this case "involves Schedule I controlled substances," the MJ noted that Plaintiffs "[did] not dispute Defendants' assertion" that it does, so it is hard to see why Plaintiffs are now asserting the use of "Schedule I" in the Order was an error. (Doc. 349 at 3). Nor can it be understood how the use of "Schedule I" amounts to "rhetoric" as Plaintiffs so claim, much less how the use constitutes any clear error or is otherwise contrary to law. [2]

Lastly, Plaintiffs contend that "[b]y denying Plaintiffs' request for stay [during the interlocutory appeal], the Magistrate Judge ensured that compelled production of member-identifying information and sacred communications would occur before this Court or the Ninth Circuit could conduct meaningful review. That outcome risks mooting Plaintiffs' constitutional claims and frustrates appellate oversight." (Doc. 360 at 17). The Court disagrees. First, the Order on which Plaintiffs sought interlocutory review was a denial of a Motion to Intervene. In assessing whether the ruling should be stayed pending the appeal the MJ correctly assessed that Plaintiffs did not show a likelihood of success in reversing

---

[2] The Court recognizes that Plaintiffs contend that Defendants' listing of ayahuasca as a Schedule I controlled substance under the Controlled Substances Act violates their free exercise rights. (*See* Doc. 159 at ¶¶ 10–11). However, this dispute does not change any conclusion here.

the denial.  (Doc. 349 at 2–3).  Indeed, the Ninth Circuit affirmed the Court's Order denying intervention, rendering Plaintiffs' alleged harm moot.  (*See* Doc. 375-1); *Pulliam v. Lozano*, 2011 WL 4344137, at \*1 (E.D. Cal. 2011) ("Given that dismissal, neither the appeal nor the issues raised therein can be said to have had any effect on discovery.").  Moreover, the MJ also accurately reasoned that "even if the Ninth Circuit reversed the Court's ruling on the Motion to Intervene, that reversal would not affect the Court's finding that Plaintiffs waived any claim of privilege."  (Doc. 349 at 3).

Overall, Plaintiffs have not produced any legally cognizable argument that the MJ erred in denying their Motion for Stay nor their Motions for Accommodations and Vacatur.  The MJ's reasonings and conclusions, in all three August 18 Orders, were sound.

Plaintiffs' issues in this case have largely been problems of their own making– failing to initially raise associational privilege, failing to comply with Court orders, and failing to timely file objections.  It so follows that the results of these actions, like the waiver of a privilege, are likewise self-inflicted.  No further delays in this action will be tolerated, and deadlines shall be strictly enforced.  Any further conduct by Plaintiffs that can be reasonably construed as delay tactics will result in sanctions.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Rule 72(a) Objection to Magistrate Judge's Orders (Doc. 360) is **DENIED**.  The July 17, 2025 Order and the August 18, 2025 Orders (Docs. 334, 347, 348, 349) are **affirmed**.

Dated this 28th day of April, 2026.

Honorable Diane J. Humetewa
United States District Judge